# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., <br><br> **Plaintiffs,** <br><br> v. <br><br> **Broadcom Inc.** <br> **Brocade Communications Systems LLC** <br> **Extreme Networks, Inc.** <br><br> **Defendants.** | §§§§§§§§§§§§§§§ <br><br> **Jury Demand** |

**COMPLAINT FOR BREACH OF CONTRACT AND COPYRIGHT INFRINGEMENT**

Plaintiffs SNMP Research, Inc. and SNMP Research International, Inc. (collectively, "Plaintiffs") bring this action to address breaches of contract and willful acts of copyright infringement that have damaged Plaintiffs and netted Defendants massive returns believed to be in the hundreds of millions of dollars.

## I. INTRODUCTION

1. In 1988, University of Tennessee administrator and computer science professor Dr. Jeffrey Case and one of his graduate students, Ken Key, started a company that was Plaintiffs' forerunner. Based in Knoxville, Dr. Case was instrumental in developing technology that manages devices used in computer networks such as the Internet. Dr. Case and Mr. Key began the development of a software-based management system that grew to become today's market leader.

2. One of the foundational technologies of modern computer networks is the Simple Network Management Protocol (herein, "SNMP") from which Plaintiffs take their names. Dr. Case was instrumental in creating this protocol, which is a way for connected devices to communicate by sending and responding to messages. For example, a network-connected laser

printer can communicate with a network-connected computer using SNMP to pass messages regarding the printer's status (*e.g.*, needs paper, paper jam).

3. Since the protocol's creation in the early 1990s with the help of Dr. Case, SNMP has become ubiquitous, and the vast majority of managed network computing devices in the world use SNMP.

4. Plaintiffs' technology is an implementation of SNMP. It is used in network equipment, network-connected computers and servers, telephone systems, electronic gaming, and by the United States military, among many other uses and users.

5. Although there are other companies who offer SNMP software, Plaintiffs' SNMP software is in heavy demand by many companies and government agencies and has been a market leader for many years.

6. Like many technology companies, Plaintiffs' primary asset is their intellectual property embedded in their software, including copyright protection.

7. On or about March 10, 2001, Plaintiffs licensed some of their copyrighted software to Defendant Brocade Communications Systems LLC ("Brocade"), formerly known as Brocade Communications Systems, Inc. A copy of the license agreement (herein, "License Agreement"), as amended, is attached as Exhibit A (filed under seal).

8. The License Agreement set clear mandates on, among other things, which software was licensed, how it could be used internally by Brocade, and how it could be reproduced or transferred externally. It contained express limitations with respect to use of the human-readable "source code" that makes up the licensed software. Among other things, the License Agreement expressly forbade Brocade from transferring or disclosing "Source" materials, which were defined to include source code and related matter.

9. Brocade breached the License Agreement by, among other things, disclosing

Plaintiffs' source code to Extreme Networks, Inc. ("Extreme").

10. Brocade's breaches rendered the License Agreement subject to Plaintiffs' express right to terminate Brocade's rights under the License Agreement.

11. Plaintiffs notified Brocade of its breach and gave Brocade an opportunity to cure, but Brocade just stonewalled Plaintiffs.

12. In response, Plaintiffs terminated Brocade's rights under the License Agreement.

13. Brocade never disputed that it had in fact breached the License Agreement nor that Plaintiffs had the right to terminate Brocade's rights under it. Yet, Brocade has continued to reproduce, prepare derivative works based upon, and publicly distribute Plaintiffs' copyrighted software as if Brocade still had license rights. This includes but is not limited to the creation of new Brocade products.

14. Brocade's unauthorized disclosure of the source code, as well as Brocade's continued use, reproduction, preparation of derivative works based upon, and public distribution of products containing Plaintiffs' copyrighted software constitute a breach of the License Agreement. It also constitutes copyright infringement and material contribution to or inducement of infringement by Brocade's partners, resellers, and/or customers.

15. Broadcom Inc. ("Broadcom"), which is now Brocade's ultimate parent, has shared (and is sharing) in the profits derived from Brocade's copyright infringement, which renders Broadcom a "practical partner" of Brocade. Broadcom is jointly and severally liable for the profits derived from Brocade's infringing conduct.

16. In addition, the entity to whom Brocade improperly transferred and disclosed Plaintiffs' software and source code, Extreme, is also engaging in unauthorized reproduction and public distribution of products containing Plaintiffs' copyrighted software, including but not limited to the creation of new Extreme products. Extreme is thus liable for copyright infringement

as a direct infringer, and Brocade is liable as a contributory infringer.

17. Defendants knew their acts constituted a breach of the Brocade License Agreement and an infringement of Plaintiffs' copyrighted works. Yet Defendants proceeded anyway and continue to this day. They should now be held to account for the damage they have caused Plaintiffs and the amounts that Defendants have received from their unauthorized use, transfer, reproduction, preparation of derivative works based upon, and public distribution of Plaintiffs' software.

## II. PARTIES

18. Plaintiff SNMP Research, Inc. ("SNMP Research") is a Tennessee corporation with its principal place of business in Knoxville, Tennessee.

19. Plaintiff SNMP Research International, Inc. ("SNMP International") is a Tennessee corporation with its principal place of business in Knoxville, Tennessee.

20. Defendant Broadcom holds itself out as a Delaware corporation with a principal place of business in San Jose, California.

21. Defendant Brocade holds itself out as a Delaware limited liability company with a principle place of business in San Jose, California.

22. Defendant Extreme holds itself out as a Delaware corporation with a principal place of business in San Jose, California.

## III. JURISDICTION AND VENUE

23. The acts in dispute in this case violate Plaintiffs' exclusive rights under the Copyright Act, 17 U.S.C. § 101 et. seq.

24. This Court has subject matter jurisdiction over the copyright cause of action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338. This Court has supplemental jurisdiction over Plaintiffs' state law claim under 28 U.S.C. § 1367.

25. Personal jurisdiction exists over Brocade because it entered into the License Agreement pursuant to which Brocade expressly submitted to jurisdiction in Knoxville, Tennessee. Specifically, Brocade agreed that "█████████████████████████████ █████████," it would be "█████████████████████████████████████████████████" and further "█████████████████████████████████████████." *See* Exhibit A. Brocade is also registered to do business in this State.

26. Personal jurisdiction exists over Broadcom because Broadcom has a history of dealings with Plaintiffs including at least one agreement executed with SNMP International—in which Broadcom consented to the jurisdiction of the Federal courts in Knox County, Tennessee, U.S.A.—plus extensive negotiations with Plaintiffs in which, among other things, Broadcom representatives spoke on behalf of Brocade and represented the ability to obtain a license agreement on behalf of Brocade. All of the foregoing demonstrate Broadcom's intent to form a long-term relationship with Tennessee through an ongoing business relationship with Plaintiffs. It was also reasonably foreseeable to Broadcom that it would become involved in the present dispute in this District given its close relationship to and dealings with Brocade concerning Plaintiffs' copyrighted software, and given that Brocade is bound by the exclusive jurisdiction and venue clause set forth in the License Agreement that is central to this dispute. Upon information and belief, Broadcom is also actively marketing, selling, offering to sell, licensing, and/or offering to license hardware, software, and/or services directly or indirectly through its distribution channels to business consumers in this District, including, without limitation, products containing the software at issue in this case.

27. Personal jurisdiction exists over Extreme because Extreme has a history of dealings with Plaintiffs including at least one agreement executed with SNMP International—in which

Extreme submitted to the jurisdiction of the Federal courts in Knox County, Tennessee—and also extensive negotiations with Plaintiffs concerning the copyrighted software underlying the present dispute, all of which demonstrate Extreme's intent to form a long-term relationship with Tennessee through an ongoing business relationship with Plaintiffs. It was also reasonably foreseeable to Extreme that it would become involved in the present dispute in this District given its September 13, 2017 Consent to Assignment letter whereby Extreme purported to "assume all of the rights, duties and obligations required under" the License Agreement that is central to this dispute, and which contains the exclusive jurisdiction and venue clause described in paragraph 25. Furthermore, Extreme is registered to do business in this State. On information and belief, Extreme is also actively marketing, selling, offering to sell, licensing, and/or offering to license hardware, software, and/or services directly or indirectly through its distribution channels to business consumers in this District, including, without limitation, products containing the software at issue in this case.

28. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants are subject to personal jurisdiction in this District.

### IV. FACTUAL BACKGROUND

**A.    Plaintiffs And The Copyrighted Software At Issue In This Case**

29. Plaintiffs have expended substantial creativity, time, labor, and money to develop, author, market, and license the software which Defendants are wrongfully exploiting.

30. SNMP Research is primarily a research and development company that creates, licenses, and supports products based on SNMP.

31. SNMP International is primarily responsible for sales, marketing and sublicensing software under license from SNMP Research. At all times relevant to this Complaint, SNMP International operated under a license by SNMP Research for SNMP International to license the

software and intellectual property at issue in this case.

32. Dr. Case owns and runs both SNMP Research and SNMP International.

33. SNMP Research has registered the copyrights for the software at issue in this case (collectively, "Copyrights") set forth in Table 1. The registration certificates are attached as collective Exhibit B.

**Table 1 Copyright Registration Certificates**

| Company | Product | Registration Date | Registration Number |
|---|---|---|---|
| SNMP Research, Inc. | NETMON, Associated Applications, and Libraries Version 15 | January 25, 2011 | TXu 1-706-718 |
| SNMP Research, Inc. | NETMON, Associated Applications, and Libraries Version 15.2 | July 20, 2011 | TXu 1-772-248[1] |
| SNMP Research, Inc. | NETMON, Associated Applications, and Libraries Version 15.3 | July 20, 2011 | TXu 1-772-250 |
| SNMP Research, Inc. | NETMON, Associated Applications, and Libraries Version 15.4 | February 3, 2011 | TXu 1-738-956 |
| SNMP Research, Inc. | NETMON, Associated Applications, and Libraries Version 16 | February 3, 2011 | TXu 1-707-158 |
| SNMP Research, Inc. | NETMON, Associated Applications, and Libraries Version 16.2 | February 3, 2011 | TXu 1-738-954 |
| SNMP Research, Inc. | NETMON, Associated Applications, and Libraries Version 17 | February 3, 2011 | TXu 1-707-157 |
| SNMP Research, Inc. | NETMON, Associated Applications, and Libraries Version 17.2 | February 3, 2011 | TXu 1-738-958 |

---

[1] The first page of this registration certificate provides that the registration number is "TXu 1-722-248," but subsequent pages provide that the registration number is "TXu 1-772-248." *See* Exhibit B.

B. **The License Agreement**

34. On March 10, 2001, SNMP International entered into the License Agreement with Brocade. The License Agreement was modified via Amendment 1 dated December 8, 2004, Amendment 2 dated October 10, 2006, Amendment 3 dated April 30, 2010, Amendment 4 dated June 29, 2015, and Amendment 5 dated June 30, 2015. *See* Exhibit A.

35. The License Agreement defined "Source" to include "███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" Exhibit A, § 1.

36. The License Agreement granted limited licenses to Brocade with respect to particular portions of Plaintiffs' software (herein, the "Software"). Among other things, the License Agreement gave Brocade (i) "████████████" and (ii) "████████████" Exhibit A, §§ 2, 3.

37. Under the License Agreement, rights licensed by SNMP International are limited with respect to use. Therefore, if a licensee, such as Brocade, wants to use the licensed software in a new way outside the scope of the existing license, a new license or written modification is required.

38. The License Agreement expressly provides that Brocade's license rights thereunder, as well as the agreement itself, are to be "████████" Exhibit A, §§ 2, 3; *see also* Exhibit A, at Amendment 3, § 7.

39. Brocade recognized in the License Agreement that the licensed software was developed "████████████████████████████████" (Exhibit A, § 8), and the License Agreement expressly forbade, in multiple provisions, the disclosure of Source material including source code:

**Table 2 Select License Agreement Prohibitions On Disclosure**

| |
|---|
| "█████████████████████████████████████████████████████████████████████████████████" Exhibit A, § 3. |
| "█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" Exhibit A, § 8. |
| "█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" Exhibit A, § 8. |
| "█████████████████████████████████████████████████████████████████████████████" Exhibit A, § 24(d). |
| "█████████████████████████████████████████████████████████████████████████████████████" Exhibit A, at Amendment 3, § 4. |
| "█████████████████████████████████████████████████████████████████████████████████████████████████" Exhibit A, at Amendment 3, § 6. |
| "█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" Exhibit A, at Amendment 3, § 6. |
| "█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" Exhibit A, at Amendment 3, § 6. |

40. The License Agreement also delineates certain types of breaches that constitute defaults. Specifically, the relevant portion of its "Default" provision reads in full as follows:





Exhibit A, § 16.

## C. Brocade's Breach Of The License Agreement And Defendants' Acts Of Infringement

41. The software licensed under the License Agreement was incorporated into at least two of Brocade's product lines: the Brocade Fibre Channel SAN Switching products and the Brocade IP Networking business (a/k/a Data Center) products.

42. According to Broadcom and Brocade, in or about 2017, Broadcom acquired Brocade's Fibre Channel SAN Switching business and Brocade's IP Networking business was divested.

43. Either as part of or proximate to the Broadcom-Brocade transaction, Extreme acquired Brocade's data center switching, routing, and analytics business for $55 million in cash and additional potential performance-based payments to Broadcom.

44. Brocade and Extreme sought SNMP International's consent to permit an "assignment" from Brocade to Extreme.

45. SNMP International declined to provide its consent and asked for additional details on the assignment to Extreme and intended subsequent uses being proposed.

46. Despite the lack of consent, Brocade nonetheless disclosed Plaintiffs' source code

provided under the License Agreement to Extreme and transferred to Extreme at least a portion of Brocade's business unit utilizing, licensing and/or offering to license, providing services and/or offering to provide services, and publicly distributing/selling products containing Plaintiffs' copyrighted software in binary form.

47. After its transaction with Brocade/Broadcom, Extreme began reproducing and publicly distributing products that contained Plaintiffs' copyrighted software and derivative works. Extreme did so even though it admitted it had no license from Plaintiffs. Extreme also admitted that it used the software the same way Brocade used it for its Data Center business and that Extreme needed to license Plaintiffs' software to cover the same license that Brocade had with SNMP International.

48. Extreme's reproduction and public distribution infringes SNMP Research's Copyrights.

49. Extreme's infringing products include products within the following product families: SLX 9140 Family; SLX 9240 Family; SLX 9540 Family; SLX 9850 Family; SLX 9030 Family; SLX 9640 Family; SLX 9150 Family; SLX 9250 Family; VDX 6740 Family; VDX 6940 Family; and VDX 8770 Family. Additional infringing products may be uncovered during discovery.

50. Extreme's unauthorized reproduction, preparation of derivative works based upon, and public distribution of products containing Plaintiffs' copyrighted software has induced, caused, and/or materially contributed to Extreme's partners', resellers', and/or customers' infringement of Plaintiffs' copyrighted software.

51. On June 4, 2019, SNMP International sent Brocade a written letter informing Brocade that it was in breach of the License Agreement ("Notice of Breach").

52. Because Brocade's breaches were of "███████████████████████████

■■■■■■■" of the License Agreement, Brocade had five days to cure the breach. *See* Exhibit A, § 16(a).

53. The Notice of Breach informed Brocade of the five-day cure period and asked Brocade to contact Plaintiffs' legal counsel "immediately so we can remedy the situation."

54. Brocade stonewalled Plaintiffs for weeks, despite Plaintiffs' repeated requests for Brocade to issue a substantive response.

55. Plaintiffs repeatedly wrote to Brocade expressly stating that Brocade had breached the License Agreement by transferring and/or disclosing the software to Extreme without the right to do so.

56. Brocade did not contend that it was not in fact in breach.

57. Instead, Brocade continued to delay.

58. After waiting 55 days for a cure that would never occur, on July 25, 2019, Plaintiffs sent Brocade a written letter terminating Brocade's internal use and redistribution rights set forth in the License Agreement (the "Notice of Termination").

59. The Notice of Termination reminded Brocade of its post-termination obligations, including that "Brocade immediately return all copies of the Licensed Modules and Derivative Works, as those terms are defined in the March 2001 License Agreement."

60. The Notice of Termination also stated that any distribution or use of the formerly licensed software would constitute copyright infringement.

61. Brocade did not contend that the termination was improper.

62. Yet Brocade still did not return (and to this day has not returned) all copies of the Licensed Modules and Derivative Works (as defined in the License Agreement).

63. Instead, Brocade has simply ignored the fact that its license rights have been terminated and has just kept right on reproducing and publicly distributing the copyrighted

software and derivative works (and/or licenses thereto) with no license to do so, thereby infringing SNMP Research's Copyrights.

64. Brocade's infringing products include products within the following product families: X6 Director Family; 6520 Family; 6543 Family; 6558 Family; 6559 Family; 7840 Family; 6510 Family; 6505 Family; 6547 Family; G610 Family; G620 Family; G630 Family; MXG610s Family; 310 Family; 320 Family; 340 Family; 360 Family; 5430 Family; 5460 Family; 5470 Family; 6542 Family; M6505 Family; 7810 Family; G648 Family; G649 Family; G720 Family; and X7 Director Family. Additional infringing products may be uncovered during discovery.

**D. Broadcom Is Brocade's Practical Partner**

65. A Broadcom press release announcing the Brocade acquisition states "Broadcom, with the support of Brocade, plans to divest Brocade's IP Networking business, consisting of wireless and campus networking, data center switching and routing, and software networking solutions." *See* https://www.broadcom.com/company/news/product-releases/2218429. Upon information and belief, Broadcom profited from Brocade's disclosure of Plaintiffs' source code and eventual transfer, reproduction and/or public distribution of products containing the copyrighted software to Extreme, and worked substantially and continuously with Brocade to implement the disclosure, transfer, reproduction, and/or public distribution of products containing the copyrighted software to Extreme.

66. Broadcom shared and continues to share in the profits with Brocade, a wholly-owned subsidiary limited liability company, attributable to the reproduction and public distribution of products containing Plaintiffs' copyrighted software and derivative works to Extreme and to Brocade's and Broadcom's customers, resellers, and partners.

67. Based on the foregoing, Broadcom is a practical partner of Brocade and is therefore

liable for all of Brocade's profits attributable to Brocade's infringing acts.

# FIRST CAUSE OF ACTION

## (Breach of Contract – License Agreement)

## (Against Brocade)

68. Plaintiffs reallege and incorporate herein the allegations contained within paragraph 1 through paragraph 67.

69. SNMP International and Brocade had a valid and binding written contract, the License Agreement. *See* Exhibit A.

70. SNMP International adequately performed its obligations under the License Agreement.

71. Brocade breached the License Agreement by improperly disclosing confidential and Source material to Extreme and failing to comply with its post-termination obligations. The breached sections of the contract include, without limitation, Sections 2, 3, 8 16, 28, and Amendment 3 Section 4, all as discussed in more detail in Sections IV.B and C, above.

72. Brocade's breaches are material and are the legal cause of substantial damage to SNMP International for which SNMP International seeks monetary damages in an amount to be determined at the time of trial.

73. Section 16 of the License Agreement expressly provides that SNMP International is entitled to seek an injunction against any unauthorized use or distribution of the licensed software post-termination. SNMP International also seeks, consistent with Section 16 of the License Agreement, an order enjoining Brocade from continuing to use or distribute the copyrighted software, as well as an order directing Brocade to comply with its post-termination obligations under Section 16 of the License Agreement.

74. SNMP International also seeks its expenses, including attorneys' fees, pursuant to

Section 17 of the License Agreement.

## SECOND CAUSE OF ACTION

**(Copyright Infringement – 17 U.S.C. § 501)**

**(Against Brocade and Broadcom)**

75. Plaintiffs reallege and incorporate herein the allegations contained within paragraph 1 through paragraph 74.

76. Plaintiff SNMP Research is the registered owner of the valid Copyrights listed in Table 1.

77. As set forth in Sections IV.B and C above, Brocade, without authorization, copied, reproduced, prepared derivative works based upon, and publicly distributed Plaintiffs' copyrighted software.

78. Brocade's unauthorized acts constitute copyright infringement.

79. Brocade's copyright infringement has been and continues to be willful and with full knowledge of SNMP Research's Copyrights.

80. As a direct and proximate result of Brocade's conduct, SNMP Research has suffered and will continue to suffer irreparable harm, for which it has no adequate remedy at law.

81. As a direct and proximate result of the infringement by Brocade set forth herein, SNMP Research is entitled to actual damages and Brocade's profits attributable to its infringement.

82. Alternatively, SNMP Research is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), and such other amounts as may be proper under 17 U.S.C. § 504(c).

83. Brocade and Broadcom are jointly and severally liable for any recovery of actual damages, profits, or statutory damages.

84. SNMP Research is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

# THIRD CAUSE OF ACTION

## (Copyright Infringement – 17 U.S.C § 501)

## (Against Extreme)

85. Plaintiffs reallege and incorporate herein the allegations contained within paragraph 1 through paragraph 84.

86. Plaintiff SNMP Research is the registered owner of the valid Copyrights listed in Table 1.

87. As set forth in Sections IV.B and C above, Extreme, without authorization, copied, reproduced, prepared derivative works based upon, and publicly distributed Plaintiffs' copyrighted software.

88. Extreme's unauthorized acts constitute copyright infringement.

89. Extreme's copyright infringement has been and continues to be willful, and with full knowledge of SNMP Research's Copyrights.

90. As a direct and proximate result of Extreme's conduct, SNMP Research has suffered and will continue to suffer irreparable harm, for which it has no adequate remedy at law.

91. As a direct and proximate result of the infringement by Extreme set forth herein, SNMP Research is entitled to actual damages and Extreme's profits attributable to its infringement.

92. Alternatively, SNMP Research is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), and such other amounts as may be proper under 17 U.S.C. § 504(c).

93. SNMP Research is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

# FOURTH CAUSE OF ACTION

(Copyright Infringement – 17 U.S.C. § 501)

(Against Brocade and Broadcom)

Contributory Copyright Infringement

94. Plaintiffs reallege and incorporate herein the allegations contained within paragraph 1 through paragraph 93.

95. Plaintiff SNMP Research is the registered owner of the valid Copyrights listed in Table 1.

96. As set forth in Sections IV.B and C above, Extreme, without authorization, copied, reproduced, prepared derivative works based upon, and publicly distributed Plaintiffs' copyrighted software.

97. Extreme's unauthorized acts constitute copyright infringement.

98. Brocade knew or had reason to know that Extreme's unauthorized acts constituted copyright infringement.

99. Brocade induced, caused, and/or materially contributed to Extreme's copyright infringement.

100. As a direct and proximate result of Brocade's conduct, SNMP Research has suffered and will continue to suffer irreparable harm, for which it has no adequate remedy at law.

101. As a direct and proximate result of the contributory infringement by Brocade set forth herein, SNMP Research is entitled to actual damages and Brocade's profits attributable to its infringement.

102. Alternatively, SNMP Research is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), and such other amounts as may be proper under 17 U.S.C. § 504(c).

103. Brocade and Broadcom are jointly and severally liable for any recovery of actual

damages, profits, or statutory damages.

104. SNMP Research is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

## **PRAYER FOR RELIEF**

WHEREFORE, **PLAINTIFFS PRAY** FOR THE FOLLOWING RELIEF:

1. For judgment in favor of SNMP International for all damages sustained as a result of Brocade's breach of contract, in an amount to be proven at trial;

2. For judgment of copyright infringement on all copyright counts and an order that SNMP Research is entitled to all actual damages it has suffered as well as all of Broadcom's, Brocade's, and Extreme's profits attributable to the copyright infringement, or in the alternative, maximum statutory damages with respect to each of SNMP Research's copyrighted works, plus full costs and attorneys' fees as provided for by 17 U.S.C. § 505;

3. Equitable relief including enjoining Broadcom, Brocade, and Extreme, their officers, agents, servants, employees, parent and subsidiary companies, assignees and successors in interest, and those persons and/or entities in concert or participation with Defendants from: reproducing, preparing derivative works based upon, and publicly distributing Plaintiffs' copyrighted software or derivative works and from further disclosing and/or distributing source material, and to deliver to the Court for destruction or other reasonable disposition all such materials and means for accomplishing the same in Defendants' possession, custody, or control;

4. For an award of reasonable attorneys' fees, costs, and expenses;

5. For pre-judgment and post-judgment interest, and any interest as required under the terms of the License Agreement;

6. For such further and other relief that this Court deems just and proper; and

7. For a trial by jury.

# DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure Rule 38(b), and otherwise, Plaintiffs respectfully demand a jury trial on all issues raised in this Complaint.

**Dated: October 26, 2020**  Respectfully submitted,

By: */s/ Cheryl G. Rice*

John L. Wood, Esq. (BPR #027642)
Cheryl G. Rice, Esq. (BPR #021145)
Rameen J. Nasrollahi, Esq. (BPR #033458)
EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
900 S. Gay Street, Suite 1400
P.O. Box 2047
Knoxville, TN 37902
(865) 546-0500 (phone)
(865) 525-5293 (facsimile)
jwood@emlaw.com
crice@emlaw.com
rnasrollahi@emlaw.com

Morgan Chu* (CA Bar. No. 70446)
David Nimmer* (CA Bar. No. 97170)
A. Matthew Ashley* (CA Bar. No. 198235)
Olivia L. Weber* (CA Bar. No. 319918)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
(310) 277-1010 (phone)
(310) 203-7199 (facsimile)
mchu@irell.com
dnimmer@irell.com
mashley@irell.com
oweber@irell.com

*Motion for Admission Pro Hac Vice Forthcoming*

*Attorneys for Plaintiffs
SNMP Research International, Inc.
SNMP Research, Inc.*