# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF TENNESSEE

### AT GREENVILLE

| | |
|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., | Case No. 3:20-cv-00451 |
| Plaintiffs, | |
| v. | |
| BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; and EXTREME NETWORKS, INC. | |
| Defendants. | |

---

**MEMORANDUM OF FACTS AND LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND/OR TO TRANSFER VENUE**

---

Plaintiffs filed this copyright infringement action against nonresident Defendants Broadcom Inc. ("Broadcom"), Brocade Communications Systems LLC ("Brocade"), and Extreme Networks, Inc. All Defendants reside in San Jose, California. (Compl. ¶¶ 20-22.) This case should be dismissed or transferred to the Northern District of California because this Court lacks personal jurisdiction over Broadcom, and thus venue is not proper as to all Defendants. Moreover, Plaintiffs' copyright infringement claims should be dismissed because Plaintiffs' copyright registrations contain material inaccuracies and are therefore invalid. Finally, Plaintiffs' breach of contract claim must be dismissed because it is preempted by the Copyright Act.

On a motion to dismiss for lack of personal jurisdiction, "[j]urisdiction of a case must be

5857416

established from the face of the complaint and the plaintiff bears the burden of establishing personal jurisdiction over each defendant[.]" *Bowlin v. DTR Tennessee, Inc*., 2014 WL 12781799, at *2 (E.D. Tenn. June 9, 2014) (Greer, J.)  As set forth below, Plaintiffs' allegations are impermissibly vague and do not establish Broadcom engaged in any forum-related activities, let alone any forum-related activities that gave rise to and have a substantial connection with their claims.  Thus, this Court lacks personal jurisdiction over Broadcom.

Because Broadcom is not subject to personal jurisdiction in Tennessee, venue is improper as to all Defendants.  When a plaintiff asserts a cause of action for copyright infringement, venue is determined under 28 U.S.C. § 1400(a).  Under 28 U.S.C. § 1400(a), copyright actions may be instituted in the district in which "the defendant or his agent resides or may be found."  It is "widely accepted that, for the purposes of this venue provision, a defendant is 'found' wherever personal jurisdiction can be properly asserted against it."  *Bridgeport Music, Inc. v. Agarita Music,* Inc., 182 F. Supp. 2d 653, 659 (M.D. Tenn. 2002).  Thus, because this Court lacks personal jurisdiction over Broadcom, venue is also improper under 28 U.S.C. § 1400(a).

The Sixth Circuit has explained that "under § 1406, if a case is brought in an improper venue and an interested party timely objects, a district court has only two options: (1) dismiss the case, or (2) transfer the case to a jurisdiction of proper venue, if it be in the interest of justice." *Thompson v. Greenwood*, 507 F.3d 416, 420 (6th Cir. 2007).  "In cases with multiple defendants, venue must be proper with respect to *all* defendants."  *Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000).  Thus, the Court should either dismiss the case or, in the alternative, transfer it in its entirety to the United States District Court for the Northern District of California, where all Defendants are subject to personal jurisdiction and venue is proper.  *See* 28 U.S.C. §§ 1406(a), 1404(a), 1631.

- 2 -

If the Court does not dismiss or transfer this case on venue and/or personal jurisdiction grounds, Plaintiffs' claims for copyright infringement and contributory copyright infringement against Defendants still must be dismissed because it is evident from the face of Plaintiffs' Complaint that its copyright registrations are invalid pursuant to 17 U.S.C. § 411. Plaintiffs' Complaint shows that the copyrights at issue in this case were registered as unpublished in 2011. (Compl. ¶ 33, Table 1, and Ex. B (showing registration numbers with the prefix "TXu," which applies to unpublished works)). But Plaintiffs allege they entered into the original license agreement with Brocade ten years earlier, in 2001, and they attach the license agreement and subsequent amendments to the Complaint revealing the same. (Compl. ¶ 34, Ex. A.)

It is well established that software is "published" when it is distributed pursuant to a license agreement. *See, e.g.*, U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices* (3d ed. 2017) § 612.2 ("Software is distributed when copies are distributed by purchase or license[.]"); *Bruhn NewTech, Inc. v. United States*, 144 Fed. Cl. 755, 811 (2019); *see also McLaren v. Chico's FAS, Inc.*, 2010 WL 4615772, at *2 (S.D.N.Y. Nov. 9, 2010). Thus, Plaintiffs knowingly included inaccurate information on their applications for copyright registration, and the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration. 17 U.S.C. § 411(b); *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 925 F.3d 1140, 1142-48 (9th Cir. 2019), cert. denied, 140 S. Ct. 1294 (2020). In such situations, claims for copyright infringement must be dismissed. *Id.*; *see also McLaren*, 2010 WL 4615772, at *4 (granting motion to dismiss with prejudice because copyright registration was shown to be invalid).

Finally, the Court should dismiss Plaintiffs' breach of contract claim against Brocade as preempted by the Copyright Act. A state law claim is preempted by the Copyright Act if: (1)

5857416

the work involved is within the scope of the subject matter of copyright; and (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright. *See Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001); 17 U.S.C. § 301. The breach of contract claim here is based on the alleged unauthorized distribution of, preparation of derivative works based upon, and reproduction of Plaintiffs' software and source code. (*See* Compl. ¶ 14.) As such, the claim is preempted by the Copyright Act.

## I. BACKGROUND

On March 10, 2001, Brocade Communications Systems LLC ("Brocade") and SNMP Research International, Inc. ("SNMPRI") entered into a license agreement for SNMPRI's software, which was amended five times over the subsequent 14 years (hereafter, the "License Agreement"). (Compl. ¶ 34.) As of June 2015, Brocade had fully paid for the license and no further amounts were due and payable. (*Id.*, Ex. A at 40-41 (Amendment 5 ¶ 9) ███████

██████████████████████████████████████████

████████████████████████████████████████

█████████████████████████ Plaintiffs allege that their software was incorporated into two of Brocade's product lines: the Brocade Fibre Channel SAN Switching products and the Brocade IP Networking business (a/k/a Data Center) products. (*Id.* ¶ 41.) In their copyright registrations, Plaintiffs indicated that their copyright claims included "text, compilation, editing, computer program, [and] artwork." (Compl. Ex. B.)

In September 2017, Plaintiffs allege that Brocade and Extreme notified Plaintiffs that Brocade intended to divest its IP Networking (a/k/a Data Center) business to Extreme Networks Inc. ("Extreme") (*Id.* ¶¶ 27, 43-44.) Plaintiffs further allege that Brocade and Extreme requested SNMPRI's consent to an assignment of Brocade's license to Extreme for the products that would

- 4 -

be transferred pursuant to the transfer of ownership.  (*Id.* ¶¶ 27, 44.)  Plaintiff alleges that it declined to consent to the assignment.  (*Id.* ¶ 45.)  Plaintiffs allege that Brocade distributed their source code and software to Extreme through the transfer of ownership, infringing their copyrights and breaching the License Agreement.  (Compl. ¶¶ 43, 46, 55.)  After Brocade's divestiture to Extreme, Broadcom Inc. ("Broadcom") acquired Brocade.  (*Id.* ¶ 42; Declaration of Mark Brazeal ("Brazeal Decl.") ¶ 4.)

Plaintiffs allege they waited nearly two years after receiving the assignment notice from Extreme and Brocade to send notices of breach and termination to Brocade.  (*Id.* ¶¶ 51, 58.)  Then, more than a year later, Plaintiffs filed this lawsuit without warning.  Broadcom, Brocade, and Extreme are all incorporated in Delaware with their principal places of business in San Jose, California.  (*Id.* ¶¶ 20-22.)

## II.    ARGUMENT

For the reasons set forth below, this case must be either dismissed or transferred to the Northern District of California where all Defendants reside.  First, this Court lacks personal jurisdiction over Broadcom.  Second, because copyright infringement actions can only be brought in a district in which the court has personal jurisdiction over the defendant, venue in Tennessee is improper under 28 U.S.C. § 1400(a).  Since venue must be proper as to all Defendants, the Court should either (1) dismiss the case in its entirety so that Plaintiffs may refile against all defendants in the appropriate jurisdiction; or (2) transfer the case pursuant to 28 U.S.C. § 1406(a) to the Northern District of California, where personal jurisdiction exists and venue is proper as to all defendants.  If the Court does not dismiss or transfer this case, Plaintiffs' claims for copyright infringement and contributory copyright infringement must be dismissed because their copyright registrations are invalid.  Further, Plaintiffs' claim for breach of contract

5857416

must be dismissed because it is preempted by the Copyright Act.

## A.  Plaintiffs Cannot Establish Personal Jurisdiction Over Broadcom.

This Court lacks personal jurisdiction over Broadcom.  "Jurisdiction of a case must be established from the face of the complaint and the plaintiff bears the burden of establishing personal jurisdiction over each defendant through the entirety of the action."  *Bowlin v. DTR Tennessee, Inc*., 2014 WL 12781799, at *2 (E.D. Tenn. June 9, 2014) (Greer, J.).  If the complaint makes no allegations supporting personal jurisdiction, plaintiffs fail to carry their burden.  *Malone v. Stanley Black & Decker, Inc*., 965 F.3d 499, 502 (6th Cir. 2020) (citation omitted).  For a complaint to make out a prima facie showing of jurisdiction, plaintiff must "establish, with reasonable particularity, sufficient contacts between the defendant and the forum state to satisfy the relevant long-arm statute and the Due Process Clause."  *Id*. at 504.

Tennessee's long-arm statute and federal due process requirements are coterminous and personal jurisdiction is proper "as long as the exercise of personal jurisdiction comports with due process."  *Roundtree-Chism v. Dunn*, 2017 WL 6016385, at *1 (6th Cir. Nov. 29, 2017).  Under federal law, personal jurisdiction can be either general or specific.  *See id*.  Plaintiffs cannot establish either as to Broadcom.

### 1.  Plaintiffs Cannot Establish General Jurisdiction over Broadcom.

Plaintiffs have failed to make a prima facie showing of general jurisdiction over Broadcom.  Absent "exceptional" circumstances not present here, courts have general jurisdiction over corporations only in: (1) the corporation's state of incorporation; or (2) the state where the corporation has its principal place of business.  *Daimler AG v. Bauman*, 571 U.S. 117, 136-39 & n.19 (2014).  A corporation is not subject to general jurisdiction in a state simply because it "engages in a substantial, continuous, and systematic course of business" there.  *Id*. at

- 6 -

137-38. Rather, the corporation's contacts must be "so continuous and systematic [as] to render the foreign corporation essentially *at home* in the forum state . . . ." *Bowlin*, 2014 WL 12781799, at \*3 (emphasis added).

Plaintiffs allege here that Broadcom is "a Delaware corporation with a principal place of business in San Jose, California." Compl. ¶ 20. Plaintiffs do not allege that Broadcom's affiliations with Tennessee are so continuous and systematic that Broadcom could fairly be considered "at home" in Tennessee. *See id*. ¶ 26. Nor could they. *See* Brazeal Decl. ¶ 2. As such, Plaintiffs have not and cannot meet their burden to make a prima facie showing that the Court has general jurisdiction over Broadcom.

2.  Plaintiffs Cannot Establish Specific Jurisdiction Over Broadcom.

Plaintiffs also have not made a prima facie showing of specific jurisdiction over Broadcom. "Specific jurisdiction is satisfied when there is a continuous and systematic activity from which a suit arises out of or is related to a defendants contact with the forum." *Bowlin*, 2014 WL 12781799, at \*3 (citations omitted). The plaintiff's "cause of action must be proximately caused by the defendant's contacts with the forum state." *Beydoun v. Wataniya Rests. Holding, Q.S.C*., 768 F.3d 499, 507-08 (6th Cir. 2014). Thus, "the cause of action must . . . have a substantial connection with the defendant's in-state activities." *Id*. at 507 (internal citation and quotation marks omitted).

"Three criteria are required to show such jurisdiction arising from contact with a forum and failure to meet any one criterion is a failure to establish personal jurisdiction." *Bowlin*, 2014 WL 12781799, at \*3. First, the person or entity must have purposely availed themselves or caused consequences within the forum. *Id*. Second, the matter before the court must have arisen from such activities in the forum. *Id*. Third, the consequences caused by the defendant's

5857416

activities in the forum must have "a substantial enough connection" with the state to make exercise over the defendant reasonable. *Id*. In showing each of these criteria, "if allegations of jurisdictional facts are challenged, the plaintiff may present competent proof in support of their allegations." *Id*. A plaintiff must present factual allegations that suggest "with reasonable particularity" the "possible existence of the requisite contacts between the defendant and the forum state." *Id*. (citations omitted).

Here, Plaintiffs' allegations fall far short of establishing specific jurisdiction over Broadcom. Critically, Plaintiffs do not allege that its claims against Broadcom arise out of or were caused by Broadcom's activities in Tennessee. Instead, Plaintiffs merely point to the fact that Broadcom has executed one agreement[1] with SNMPRI, but they do not allege the agreement has anything to do with this case (and it does not). *See* Compl. at ¶ 26; Brazeal Decl. ¶¶ 6-7 & Ex. A. Because the agreement is unrelated to the dispute at issue, it is insufficient to confer specific jurisdiction over Broadcom. *See Daimler*, 571 U.S. at 127 (explaining that specific jurisdiction only exists where the suit arises out of or relates to the defendant's contacts with the forum); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir. 1996) ("merely entering into a contract with [plaintiff] would not, without more, establish that [defendant] had minimum contacts" with forum state); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997) ("[I]t is only the dealings *between the parties in regard to the disputed contract* that are relevant to minimum contacts analysis.") (internal quotation marks omitted); *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 685 (S.D. Tex. 2014) (holding that the plaintiffs fail to "show how they can establish personal jurisdiction over Defendants based on

---

[1] Plaintiffs do not allege that Broadcom is a party to the License Agreement between Brocade and Plaintiffs that is the subject of Plaintiffs' breach of contract cause of action against Brocade. (Compl. ¶ 26, Ex. A.)

- 8 -

unrelated contracts").

Moreover, Exhibit A to the Declaration of Mark Brazeal does not contain a forum selection clause, as Plaintiffs suggest. And even if Plaintiffs contend that a forum selection clause in the underlying license agreement between CA, Inc. and SNMP Research International, Inc. is binding on Broadcom, a forum selection clause in an unrelated agreement would not confer specific jurisdiction over Broadcom in *this* case. *See Zep, Inc. v. First Aid Corp.*, 2010 WL 1195094, at *6 (N.D. Ill. Mar. 19, 2010) (citing the proposition that a "forum selection clause in [an] unrelated contract does not confer specific jurisdiction over lawsuit arising from another contract"); *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 922 F. Supp. 1334, 1377 (N.D. Iowa 1996), aff'd, 119 F.3d 688 (8th Cir. 1997) ("Plainly, application of a forum selection clause in a contract that is wholly unrelated to the events giving rise to the lawsuit would be both unjust and unreasonable.").

Next, Plaintiffs vaguely allege that Broadcom has engaged in unidentified "extensive negotiations" with Plaintiffs in which, among other things, "Broadcom representatives spoke on behalf of Brocade and represented the ability to obtain a license agreement on behalf of Brocade." Compl. ¶ 26. Plaintiffs do not identify the date of these negotiations, who participated in them, where they took place, or the subject matter of the negotiations. *Id*. Thus, it is unclear to what "extensive negotiations" Plaintiffs are referring. Even so, Plaintiffs do not allege such negotiations had any connection to Tennessee or that their claims against Broadcom in this dispute arise out of or were proximately caused by such negotiations. *Id*. Such vague allegations do not establish personal jurisdiction over Broadcom.

Moreover, if Plaintiffs are referring to efforts made to resolve the current dispute before Plaintiffs unexpectedly filed this lawsuit, Broadcom does not know which Broadcom Inc.

- 9 -

employees Plaintiffs are referring to and is not aware of any such discussions taking place in Tennessee. Brazeal Decl. ¶ 8. Furthermore, even if such discussions had taken place in Tennessee, and even if Broadcom Inc. employees had participated in them, such discussions still would not confer specific jurisdiction over Broadcom. *See Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 796 (6th Cir. 1996) ("[W]e do not believe that Tryg International's action in sending a representative to Ohio to negotiate a settlement renders the exercise of personal jurisdiction appropriate in this case."); *Am. Elec. Power Serv. Corp. v. EC & C Techs., Inc.*, 2002 WL 31409846, at *4 (S.D. Ohio July 26, 2002) ("[S]ettlement negotiations are not a basis for personal jurisdiction.").

Plaintiffs also assert "[u]pon information and belief," that "Broadcom is also actively marketing, selling, offering to sell, licensing, *and/or* offering to license hardware, software, *and/or* services directly *or* indirectly through its distribution channels to business consumers in this District, including, without limitation, products containing the software at issue in this case." Compl. ¶ 26 (emphases added). As an initial matter, Plaintiffs' liberal use of "and/or" in this context renders this allegation impermissibly vague. *Patterson v. Novartis Pharm. Corp.*, 451 F. App'x 495, 497-98 (6th Cir. 2011) (holding plaintiff "pled herself out of relief" by using "and/or" because the court could not infer anything more than a possibility that a particular activity occurred).

Moreover, Broadcom Inc. is a parent holding company and not a sales operating entity, and thus does not sell or engage in any product development containing the software at issue in this case anywhere in the United States. Brazeal Decl. ¶ 5. Thus, Broadcom does not deal in any products related to this litigation in Tennessee. *Id*. But even if this allegation were comprehensible and true (it is not), Plaintiffs do not allege that any such purported marketing or

- 10 -

sale of products containing Plaintiffs' software was infringing or form the basis of their claims against Broadcom. Plaintiffs' copyright claims are based on Brocade's purported sales, not Broadcom's. *See* Compl. ¶¶ 75-84, 94-104; *see also* Brazeal Decl. ¶ 4 (explaining that Broadcom acquired Brocade in November 2017 *after* Brocade's alleged divestiture to Extreme). And even if Broadcom did distribute, market, or sell products unrelated to this litigation in Tennessee, such contacts would not establish specific jurisdiction over Broadcom. *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (explaining that "when there is no . . . connection" between the underlying controversy and the defendant's activity in the forum state, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State"); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 931 n.6 (2011) ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales."); *CompuServe, Inc.*, 89 F.3d at 1265 (defendants' "injection of his software product into the stream of commerce, without more, would be at best a dubious ground for jurisdiction.")

Finally, Plaintiffs suggest it was reasonably foreseeable to Broadcom that it would become involved in the present dispute in Tennessee because of "its close relationship to and dealings with Brocade," and because "Brocade is bound by the exclusive jurisdiction and venue clause set forth in the License Agreement that is central to this dispute." Compl. at ¶ 26. In essence, Plaintiffs attempt to circumvent the requirement that personal jurisdiction be established as to " 'each defendant independently,' " *Beydoun*, 768 F.3d at 504, by piggybacking off of this Court's jurisdiction over Brocade. This Plaintiffs cannot do. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (holding that the "assertion of jurisdiction over [one defendant] based solely on the activities of [another defendant] . . . is plainly unconstitutional" as due process requirements

- 11 -

"must be met as to each defendant over whom a . . . court exercises jurisdiction"); *Brown v. Twentieth Century Fox Home Entm't*, 2015 WL 5081125, at *6 (E.D. Ky. Aug. 27, 2015) ("Plaintiff must establish the Court's jurisdiction over each individual defendant and cannot impute a co-defendant's contacts with the forum State to create jurisdiction over the other defendants.").

Moreover, mere knowledge that an agreement between others contains a forum selection clause does not mean that a non-party to that agreement could reasonably expect to be haled into a Tennessee court. *See Intera Corp. v. Henderson*, 428 F.3d 605, 617-19 (6th Cir. 2005) (holding corporate officers' knowledge that the license agreement between the corporate entities contained a choice-of-law and forum selection provision did not show that they deliberately affiliated themselves with Tennessee or could reasonably expect to become embroiled in possible litigation in Tennessee). The "purposeful availment" requirement is only satisfied "when the *defendant's* contacts with the forum state 'proximately result from actions by the *defendant himself* that create a "substantial connection" with the forum State,' and when the defendant's conduct and connection with the forum are such that he 'should reasonably anticipate being haled into court there.' " *CompuServe, Inc.*, 89 F.3d at 1263 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)) (emphases added).

In sum, Plaintiffs have failed to allege jurisdictional facts in the Complaint sufficient to establish personal jurisdiction over Broadcom. Accordingly, the motion to dismiss pursuant to Rule 12(b)(2) should be granted. *Bowlin*, 2014 WL 12781799, at *3. Alternatively, if the Court finds that it would be in the interest of justice to do so, this action should be transferred to the Northern District of California where all Defendants reside pursuant to 28 U.S.C. § 1631.

### B. This District Is Not a Proper Venue for Plaintiffs' Claims

5857416

Because this Court does not have personal jurisdiction over Broadcom, the Eastern District of Tennessee is an improper venue for all Defendants. This Court should therefore dismiss this case or, in the alternative, transfer it to the Northern District of California where all Defendants reside. *See* 28 U.S.C. § 1406; 28 U.S.C. § 1631.

Plaintiffs allege two causes of action for copyright infringement against Broadcom. The copyright venue statute provides that "[c]ivil actions, suits, or proceedings arising under any Act of Congress relating to copyrights . . . may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). Under this statute, it is well established that "the propriety of venue turns on whether the defendant is subject to personal jurisdiction." *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 996 (D.C. Cir. 2014); *Eight Mile Style, LLC v. Spotify USA Inc.*, 2020 WL 1640425, at *8 (M.D. Tenn. Apr. 2, 2020) (same).

Thus, because this Court lacks personal jurisdiction over Broadcom, venue is improper in the Eastern District of Tennessee under 28 U.S.C. § 1400(a). The Sixth Circuit has explained that "under § 1406, if a case is brought in an improper venue and an interested party timely objects, a district court has only two options: (1) dismiss the case, or (2) transfer the case to a jurisdiction of proper venue, if it be in the interest of justice." *Thompson v. Greenwood*, 507 F.3d 416, 420 (6th Cir. 2007); 28 U.S.C. § 1406; *see also* 28 U.S.C. § 1631. In cases with multiple defendants, "venue must be proper with respect to all defendants." *Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000); *see also Lea v. Warren Cnty.*, 2017 WL 4216584, at *2 (6th Cir. May 4, 2017) (affirming district court's dismissal of case where venue was proper for some, but not all, defendants).

Here, because venue is improper under 28 U.S.C. 1400(a), this Court should dismiss this case and allow Plaintiffs to file it in a proper forum. *Lea*, 2017 WL 4216584 at *2; *see also*

5857416

*Stanifer v. Brannan*, 564 F.3d 455, 460 (6th Cir. 2009) (noting that district courts "often dismiss a case, rather than transfer it under Section 1406(a), if the plaintiff's attorney could have reasonably foreseen that the forum in which the suit was filed was improper and [the court decides] that similar conduct should be discouraged").

Alternatively, if the Court decides that it is in the interest of justice to transfer the case, rather than dismiss it, the case should be transferred to the Northern District of California where all Defendants reside and are subject to jurisdiction and venue is proper. While severance under Federal Rule of Civil Procedure 21 is occasionally appropriate in actions in which venue is improper as to some but not all defendants, it would not be appropriate where, as here, claims against Defendants arise from the same transaction or occurrence and present common questions of fact and law. Having two concurrent actions for a single dispute could result in conflicting and inconsistent rulings—a highly undesirable outcome that is not in the interest of justice. Thus, severing the claims would be inefficient for all parties and the court system. *See Kramer v. Textron Aviation, Inc*., 2020 WL 4760191 at *5 (E.D. Tenn. Jan. 28, 2020); *see also Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 296 (3d Cir. 1994) ("When the conduct of a co-defendant as to whom venue is proper is central to the issues raised by the plaintiff against those subject to transfer, the grant of a severance would not ordinarily be consistent with the sound exercise of discretion."). The Court should therefore either dismiss the action or transfer the case in its entirety to the Northern District of California.

In the event this Court determines that it has personal jurisdiction over Broadcom and venue is proper, Broadcom and Brocade nevertheless request that the Court transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404 for the convenience of the parties and witnesses and in the interests of justice. Broadcom and Brocade join in arguments

- 14 -

made by Extreme in support of its motion to transfer pursuant to 28 U.S.C. § 1404 and

incorporate them by reference here.  Broadcom and Brocade both reside in the Northern District

of California as do relevant witnesses who are employees and former employees of Brocade.  *See*

Declaration of John Rondoni ¶¶ 3-5.

### C.  Plaintiffs' Copyright Registrations Are Invalid.

Plaintiffs' claims for copyright infringement must be dismissed because Plaintiffs'

copyright registrations for its software are invalid under 17 U.S.C. § 411(b).  "A copyright-

infringement claim must establish: (1) ownership of a valid copyright, and (2) the fact that the

defendant copied protectable elements of the work."  *RJ Control Consultants, Inc. v. Multiject,*

*LLC*, 2020 WL 6878106, at *4 (6th Cir. Nov. 23, 2020) (internal quotation marks omitted).

Because it is clear from the caselaw and the facts alleged in the Complaint that Plaintiffs'

copyright registrations are invalid, the Court should dismiss Plaintiffs' claims for copyright

infringement.  Alternatively, at a minimum, the Court should refer the issue under 17 U.S.C.

§ 411(b)(2) to the Register of Copyrights to determine whether it would have refused Plaintiffs'

copyright registration had it known about the inaccuracies in Plaintiffs' application.

### 1.  Plaintiffs' Software Products Are Registered as Unpublished Works.

Plaintiffs registered their software products as unpublished works.  Each of the copyright

registration numbers alleged by Plaintiffs begins with the prefix "TXu."  *See* Compl. at ¶ 33,

Table 1, Ex. B.  This indicates that those copyrights were registered as unpublished works.  *See*

*Family Dollar Stores, Inc. v. United Fabrics Int'l., Inc*., 896 F.Supp.2d 223, 225 (S.D.N.Y.

2012) ("The 'u' represents that the works are unpublished."); U.S. Copyright Office,

*Compendium of U.S. Copyright Office Practices* §§ 1802.8(A)(2), 2306.4 (3d ed. 2017); U.S.

Copyright Office, https://www.copyright.gov/eco/help-supplementary.html (explaining that

- 15 -

published registration numbers begin "with a prefix of TX, VA, PA, or SR" whereas unpublished

registration numbers begin "with a prefix of TXu, VAu, PAu, or SRu"); *see also* 37 C.F.R.

§ 202.3. In the event Plaintiffs dispute that their copyright registrations are for unpublished

works, the Court may take judicial notice of the meaning of the prefixes used with copyright

registration numbers. *See Application of Yardley*, 493 F.2d 1389, 1393 (C.C.P.A. 1974).

      2.   <u>Plaintiffs' Software Products Were Already Published When Plaintiffs</u>
           <u>Registered Them as Unpublished Works.</u>

Plaintiffs admit in their Complaint that they licensed their software to Brocade in 2001 –

ten years before they registered the software products as unpublished works with the Copyright

Office in 2011. *See* Compl. at ¶¶ 33-34; *id.* Ex. A. The Copyright Act defines "publication" to

mean "the distribution of copies . . . of a work to the public by sale or other transfer of

ownership, or by rental, lease, or lending." 17 U.S.C. § 101. In the software context, issuing a

"license" constitutes "distribution" and thus publication. Section 612.2 of the U.S. Copyright

Office's Compendium of U.S. Copyright Office Practices entitled "What Constitutes

Publication?" explicitly lists licensing software as an example of publishing a work. *See* U.S.

Copyright Office, *Compendium of U.S. Copyright Office Practices* § 612.2 (3d ed. 2017)

("Software is distributed when copies are distributed by purchase or license, whether in CD-

ROM format or online . . . ."). "Courts routinely cite the Compendium as a prominent authority

on copyright law, giving it weight beyond that of a typical secondary source." *Urban Textile,*

*Inc. v. Rue 21, Inc.*, 2017 WL 1201751, at *2 n.1 (C.D. Cal. Mar. 31, 2017), aff'd, 764 F. App'x

603 (9th Cir. 2019) (citations omitted).

In *Daimler-Chrysler Servs. N. Am., LLC v. Summit Nat., Inc.*, 289 F. App'x 916 (6th Cir.

2008), the Sixth Circuit considered whether licensing software constituted publication under the

Copyright Act. The case turned on whether the licensed software had been "published" because,

5857416

under the Copyright Act in effect at that time, a copyright notice was required for publicly distributed works to be protected and the plaintiff's software lacked such notice. *Id*. at 922-23. Referring to the Copyright Act's definition of "publication," the Sixth Circuit held that because the software had been advertised and licensed to customers, it had been published, and therefore distributed publicly, under the Copyright Act. *Id*. Other courts to confront this issue have arrived at the same conclusion. *See Bruhn*, 144 Fed. Cl. at 811 (recognizing that computer software products are published when distributed by license); *McLaren v. Chico's FAS, Inc.*, 2010 WL 4615772, at *2 (S.D.N.Y. Nov. 9, 2010) (concluding that the licensing of an illustration " 'published' the drawing within the meaning of the Copyright Act").

It is undisputed from the face of the Complaint and the attached license agreement that Plaintiffs licensed their software to Brocade in 2001. Thus, Plaintiffs published their work prior to applying for an unpublished copyright. *See Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd*., 288 F. Supp. 2d 544, 556 (S.D.N.Y. 2003) ("A distribution of a work to [even] one person constitutes a publication.").

3. Plaintiffs Knowingly Included Inaccurate Information in the Registrations That Would Have Caused the Register of Copyrights to Refuse Registration.

Under 17 U.S.C. § 411(b)(1), a certificate of registration does not satisfy the requirements of instituting a civil action for infringement when "(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1); *see also Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 959 F.3d 1194, 1197 (9th Cir. 2020) ("[P]ossession of a registration certificate does not satisfy the Copyright Act's registration requirement if the registrant secured the registration by knowingly including inaccurate information in the application for copyright

5857416

registration that, if known by the Register of Copyrights, would have caused it to deny registration.").  Plaintiffs' copyright registrations are invalid under 17 U.S.C. § 411(b).

> i.  *Plaintiffs included inaccurate information on their copyright application with knowledge that it was inaccurate.*

Plaintiffs knowingly submitted their applications for copyright registration with inaccurate information.  In *Gold Value International Textile, Inc. v. Sanctuary Clothing, LLC*, 925 F.3d 1140 (9th Cir. 2019), cert. denied, 140 S. Ct. 1294 (2020), the plaintiff Fiesta alleged that the defendant infringed its copyright on unpublished fabric designs.  *Id*. at 1142-43.  As it turned out, Fiesta had sold fabric bearing one of the designs "to a limited group of existing and potential customers for the limited purpose of securing full production contracts for hundreds or thousands of yards of fabric."  *Id*. at 1142 (internal quotation marks omitted).  The district court referred the matter to the Register of Copyrights pursuant to 17 U.S.C. § 411(b)(2), which confirmed that the Copyright Office would have denied the application had it known the design was previously published.  *Id*. at 1143.  The district court declared Fiesta's copyright registration to be invalid "[b]ecause Fiesta knew that the fabric had previously been sold" and thus Fiesta "included inaccurate information in its copyright application with knowledge that it was inaccurate."  *Id*.

On appeal, Fiesta argued that "it did not know that the sale of samples to its customers constituted publication as a matter of law under the Copyright Act, and therefore, it did not have the requisite knowledge or fraudulent intent."  *Id*. at 1146.  The Ninth Circuit summarily rejected this argument, explaining that "the term 'knowingly' does not necessarily have any reference to a culpable state of mind or to knowledge of the law.  As Justice Jackson correctly observed, 'the knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law.'"  *Id*. at 1147 (citing *Bryan v. United States*, 524 U.S. 184, 192 (1998));

*see also id.* at 1146 ("The district court characterized Fiesta's position as one of 'ignorance of the law,' which is 'no excuse' . . . .").

The court further concluded that "the plain language of § 411(b) . . . does not require a showing of fraud, but only that the claimant included inaccurate information on the application 'with knowledge that it was inaccurate.'" *Id.* at 1147. Because "Fiesta was admittedly aware of the facts regarding its fabric sales[,] its inclusion of designs that it knew had been sold, and therefore published, in an unpublished collection cannot be characterized as an inadvertent or good faith mistake." *Id.* at 1148. Ultimately, the Ninth Circuit affirmed the invalidation of Fiesta's copyright registration and dismissal of Fiesta's copyright infringement claims. *Id.*; *see also Unicolors*, 959 F.3d at 1198 (reaffirming *Gold Value*'s holding that there is no "intent-to-defraud requirement" to invalidating a copyright registration).

The Ninth Circuit's decisions are consistent with those of other courts addressing this issue. *See Bruhn NewTech, Inc.*, 144 Fed. Cl. at 815 ("An applicant for a copyright registrant will have knowledge of inaccurate information in a copyright application when the applicant is 'aware' of the facts underlying the inaccuracy."); *id.* at 796 ("The language in 17 U.S.C. § 411(b) does not require a showing of willfulness or fraud. Therefore, the court need not resort to the legislative history to interpret 17 U.S.C. § 411(b) because the language in 17 U.S.C. § 411(b) is unambiguous."); *Nason Homes, LLC v. Singletary Constr., LLC*, 2016 WL 6952257, at *6 (M.D. Tenn. Jan. 29, 2016) (holding fraud not necessary to invalidate registration).

In the present matter, Plaintiffs knew they had licensed out their software prior to registering the copyright. The complaint alleges that SNMP International entered into a license agreement with Brocade in 2001 and several amendments thereafter. Compl. at ¶ 34. Copies of the license agreement and amendments thereto are appended to the complaint and signed by

- 19 -

SNMP International's chief executive officer.  Compl. Ex. A at 13.  Thus, Plaintiffs included inaccurate information on their copyright application with knowledge that it was inaccurate by indicating that their software was unpublished at the time of registration in 2011.

ii. *The Register of Copyrights would have refused registration.*

Had the Register of Copyrights known that Plaintiffs' software products were published when Plaintiffs submitted their copyright application, she would have refused registration of Plaintiffs' unpublished copyright.  In *Gold Value*, the plaintiff Fiesta indicated on its copyright application for an unpublished collection of works that its designs were unpublished.  925 F.3d at 1142.  But one of the designs in that collection, 1461 Design, had previously been sampled.  *Id*. at 1142-43.  The district court "submitted an inquiry to the Copyright Office regarding whether the Register of Copyrights would have rejected Fiesta's application if it had known of the inaccuracy."  *Id*. at 1143.  The Register responded that " 'had the Office been aware that the 1461 Design had been previously published, the Office would have refused registration of that work using the unpublished collections option because the work was registered as unpublished when in fact it had been published.' "  *Id*.  The district court then dismissed Fiesta's claims with prejudice, and the Ninth Circuit affirmed that decision.  *Id*. at 1143, 1148; *see also Bruhn*, 144 Fed. Cl. at 818 (Register indicated it would have refused registrations if it had known registrations listed inaccurate nation of first publication and completion dates); *SellPoolSuppliesOnline.com LLC v. Ugly Pools Arizona Inc.*, 2018 WL 4565900, at *14 (D. Ariz. Sept. 24, 2018) (Register indicated that it would have refused registration if it had known registration listed inaccurate publication date); *Urban Textile*, 2017 WL 1201751, at *2 ("The Court finds that Urban published the works prior to registering them as part of unpublished collections, therefore making the registrations invalid."); *Determined Prods., Inc. v. Koster*, 1993

- 20 -

WL 120463, at *1 (N.D. Cal. Apr. 13, 1993) ("Wrongly identifying a number of published individual works as an unpublished collection is a fundamental registration error, which deprives this court of jurisdiction over the copyright claim.").

Here, consistent with the Register of Copyrights' advice to the courts in *Gold Value* and the Copyright Office's guidelines, the Copyright Office would have refused registration of Plaintiffs' copyrights had it known that Plaintiffs' works were previously published.

>   4.   The Court Should Refer the Matter to the Register of Copyrights and Dismiss Plaintiffs' Copyright Infringement Claims.

Because Plaintiffs' copyright registrations are invalid, they cannot sustain causes of action for copyright infringement and contributory copyright infringement as a matter of law. 17 U.S.C. § 411(a) (valid registration is a precondition for instituting a civil action for copyright infringement). The process of determining invalidation is governed by 17 U.S.C. § 411(b)(2) and 37 C.F.R. § 205.14. Section 411(b)(2) requires that [i]n any case in which inaccurate information described under paragraph (1) is alleged, the court *shall* request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(2) (emphasis added); *see also* 37 C.F.R. § 205.14 (the request should be sent to the General Counsel of the Copyright Office via email to 411filings@copyright.gov). Thus, the Court is required to request the Register to advise whether the inaccurate information contained in Plaintiffs' registrations, if known, would have caused the Register to refuse registration.

If the Register indicates that she would have refused registration, the Court must dismiss Plaintiffs' copyright infringement and contributory copyright infringement claims. The Court may do so at this stage because all the facts necessary for such a dismissal are apparent on the face of the Complaint. *See McLaren*, 2010 WL 4615772, at *2-4 (dismissing the complaint with prejudice

because "[b]ased on the allegations of the complaint alone, it cannot be disputed that McLaren published some of the illustrations in the Collection"); *Rawls v. Paradise Artists, Inc*., 2020 WL 1493610, *6-7 (M.D. Tenn. March 27, 2020 ) (dismissing claims and holding plaintiff could not cure its registration failure by amending its pending complaint); *Xclusive-Lee, Inc. v. Hadid*, 2019 WL 3281013, at *4-5 (E.D.N.Y. July 18, 2019) (dismissing copyright infringement and contributory infringement claims for lack of valid registration).

### D.  Plaintiffs' Breach of Contract Claim Is Preempted by the Copyright Act.

The Court should dismiss Plaintiffs' claim for breach of contract against Brocade because it is preempted by the Copyright Act.  *See* 17 U.S.C. § 301.  In the Sixth Circuit, a "state common law or statutory claim is preempted [by the Copyright Act] if: (1) the work is within the scope of the 'subject matter of copyright,' as specified in 17 U.S.C. §§ 102, 103; and, (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106."  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001).  As to the second prong, the *Wrench* court elaborated that "[e]quivalency exists if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights.  Conversely, if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display in order to constitute a state-created cause of action, there is no preemption, provided that the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim."  *Id.* at 456 (internal citation omitted).

Here, the subject of the contract—computer software—generally falls within the subject matter of the Copyright Act.  *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 779 (9th Cir. 2002) ("Computer programs are works of authorship entitled to protection under

the Copyright Act.").  This is true even if it turns out that Plaintiffs' specific software products are ultimately not protected by copyright.  *See ATC Distribution Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 713 (6th Cir. 2005).

Regarding equivalency, the Sixth Circuit has expressly recognized that breach of contract claims are subject to preemption under certain circumstances.  *See Wrench LLC*, 256 F.3d at 457 ("[W]e do not embrace the proposition that all state law contract claims survive preemption simply because they involve the additional element of promise."); *see also Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 48-49 (2nd Cir. 2019) ("[P]reemption cannot be avoided simply by labeling a claim 'breach of contract.'") (citation omitted).  For example, if the promise in the contract "amounts only to a promise to refrain from reproducing, performing, distributing or displaying the work, then the contract claim is preempted.  The contrary result would clearly violate the rule that state law rights are preempted when they would be abridged by an act which in and of itself would infringe one of the exclusive rights of § 106." *Wrench LLC*, 256 F.3d at 457-58.

Here, the rights Plaintiffs seek to vindicate through their breach of contract claim are identical to those rights exclusively protected by the Copyright Act.  Plaintiffs allege that "Brocade's unauthorized disclosure of the source code, as well as Brocade's continued use, reproduction, preparation of derivative works based upon, and public distribution of products containing Plaintiffs' copyrighted software constitute a breach of the License Agreement." Compl. ¶ 14.  Plaintiffs expressly allege these *exact* same acts "constitute[] copyright infringement and material contribution to or inducement of infringement by Brocade's partners, resellers, and/or customers."  *Id*.; *see also id*. ¶ 71 (indicating conduct supporting breach of contract is described in Sections IV.B and C of the Complaint); *id*. ¶ 77 (indicating same

- 23 -

5857416

conduct constitutes copyright infringement: "As set forth in Sections IV.B and C above, Brocade, without authorization, copied, reproduced, prepared derivative works based upon, and publicly distributed Plaintiffs' copyrighted software."); *id*. ¶¶ 43, 46 (under heading for breach of contract *and* copyright infringement, Plaintiffs allege that Brocade distributed source code and software to Extreme through transfer of ownership); *id*. ¶ 55 ("Plaintiffs repeatedly wrote to Brocade expressly stating that Brocade had breached the License Agreement by *transferring and/or disclosing* the software to Extreme without the right to do so.") (emphasis added).

These actions are undeniably exclusive rights expressly protected by the Copyright Act. *See* 17 U.S.C. § 106 (listing the exclusive rights as the right to (1) reproduce; (2) prepare derivative works; and (3) distribute copies by sale or transfer of ownership). Moreover, unlike in *Wrench*, Plaintiffs' breach of contract claim is not based on a breach of Brocade's "promise to pay." In *Wrench*, the Sixth Circuit held that because the breach of contract claim was based on a breach of "an actual promise to pay" for the copyrighted work, the claim was not preempted. *See Wrench LLC*, 256 F.3d at 456. The court explained that the promise to pay was the "extra element" that changed "the nature of the action so that it is qualitatively different from a copyright infringement claim." *Id.*

Here, it is undisputed that Brocade fully paid for the license in 2015. *See* Compl. Ex. A, Amendment 5, ¶ 9. Thus, Plaintiffs' breach of contract claim is based solely on a "promise to refrain from reproducing, performing, distributing or displaying" the allegedly copyrighted works, not a breach of a promise to pay. *Wrench LLC*, 256 F.3d at 457. Because the "extra element" of promise to pay is missing, Plaintiffs' contract claim is preempted. *Id*. at 459.

The Second Circuit addressed this very question in *Universal Instruments Corp. v. Micro Systems Engineering, Inc*., 924 F.3d 32 (2nd Cir. 2019). In *Universal*, like here, the plaintiff did

- 24 -

not allege that defendants violated the agreement by failing to pay for use of the intellectual property. *Id*. at 49. Rather, Universal's contract claim was based on an allegation that defendants' use of the source code exceeded the scope of the license contained in the agreement. *Id*. The Second Circuit concluded that the claim did not include an "extra element" that was different from Universal's copyright infringement claim. *Id*. The same conclusion should apply here where Plaintiffs' contract claim amounts to nothing more than allegations that Brocade's use of Plaintiffs' software and source code exceeded the scope of the license.

Accordingly, the Court should dismiss Plaintiffs' breach of contract claim in its entirety as preempted by the Copyright Act. Alternatively, if the Court concludes that there is an "extra" element to Plaintiffs' contract claim that is not protected by the Copyright Act with respect to some but not all of Plaintiffs' breach of contract allegations, the Court should still dismiss the claim to the extent it is preempted. *See ATC Distribution Grp., Inc*., 402 F.3d at 713-14 (finding that a state law claim for misappropriation was "partially preempted").

## III.    CONCLUSION

For the foregoing reasons, the Court should either dismiss the case for lack of jurisdiction and venue or, alternatively, transfer the case in its entirety to the Northern District of California. The Court should also dismiss Plaintiffs' claims for copyright infringement and breach of contract.

Dated:  December 22, 2020                    HUESTON HENNIGAN LLP


                                             By:    */s/ Alison Plessman*
                                                    Alison Plessman
                                                    Attorneys for Defendants
                                                    Broadcom Corporation
                                                    Brocade Communications Systems LLC

- 25 -