# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., | § § § | Case No. 3:20-cv-00451 |
| Plaintiffs, | § § | |
| v. | § | <u>Jury Demand</u> |
| | § | |
| BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; AND EXTREME NETWORKS, INC. | § § § § | |
| Defendants. | § § | |

---

**PLAINTIFFS' OPPOSITION TO DEFENDANTS BROADCOM INC.'S AND BROCADE COMMUNICATIONS SYSTEMS LLC'S JOINT MOTION TO DISMISS PLAINTIFFS' COMPLAINT OR, ALTERNATIVELY, TO TRANSFER VENUE**

---

1889214v12

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...........................................................................................................1

II.    LEGAL STANDARD.................................................................................................3

III.   THIS COURT HAS PERSONAL JURISDICTION OVER BROADCOM ...................4

    A.     Broadcom Is Subject To The Agreement's Forum-Selection Clause ..................5

    B.     Broadcom Also Satisfies The *Mohasco* Test For Specific Jurisdiction...............7

        1.     The Purposeful Availment Factor Is Met...................................................7

        2.     The "Arising From" And "Reasonable" Factors Are Also Met .............10

    C.     Venue Is Proper In This District .......................................................................11

    D.     In The Alternative, Plaintiffs Request Leave To Amend After
        Discovery ..........................................................................................................11

IV.    DEFENDANTS' INVALIDITY ASSERTION IS MERITLESS AND IS A
    FACT ISSUE ...........................................................................................................12

    A.     Plaintiffs' Registration Certificates Are Presumptively Valid, And
        Nothing Supports The Required Finding Of Fraud Necessary To
        Invalidate Them ................................................................................................13

    B.     SNMP Research's Alleged Knowledge Of The Brocade License Does
        Not Equate With Either Fraud Or Lack Of "Good Faith" And Was Not
        Even "Inaccurate" ............................................................................................17

    C.     Defendants Have Not Met Their Burden To Justify A § 411(b)(2)
        Referral ............................................................................................................22

V.     THE BREACH OF CONTRACT CLAIM IS NOT PREEMPTED..............................23

-i-
1889214v12

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Advisers v. Wiesen-Hart, Inc.*,
   238 F.2d 706 (6th Cir. 1956) ...............................................................................14, 15, 16, 18

*Air Products and Controls, Inc. v. Safetech Int'l*,
   503 F.3d 544 (6th Cir. 2007) ...........................................................................................7

*Ampro Industr., v. Dr. Farrah Gray Pub.*,
   No. 12-2696, 2013 WL 5426257 (W.D. Tenn. Sept. 26, 2013) ...............................................8

*Archie MD v. Elsevier, Inc.*,
   261 F. Supp. 3d 512 (S.D.N.Y. 2017)............................................................................21

*Atonio v. Wards Cove Packing*,
   810 F.2d 1477 (9th Cir. 1987) ......................................................................................17

*Baker v. LeBoeuf, Lamb, Leiby & Macrae*,
   105 F.3d 1102 (6th Cir. 1997) ........................................................................................5

*Big Guy's Pinball v. Lipham*,
   No. 14-CV-14185-VAR, 2015 WL 4209042 (E.D. Mich. July 10, 2015) ..............................7

*Brittney Gobble Photography v. Wenn Ltd.*,
   No. 3:16-cv-306-HSM, 2017 WL 10188859 (E.D. Tenn. Sept. 5, 2017)..............................25

*Bruhn Newtech, Inc. v. U.S.*,
   144 Fed. Cl. 755 (Fed. Cl. 2019) ..............................................................................16, 18

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985).......................................................................................................7

*Carnival Cruise Lines v. Shute*,
   499 U.S. 585 (1991).......................................................................................................4

*City of Morristown v. AT&T Corp.*,
   206 F. Supp. 3d 1321 (E. D. Tenn. 2016).........................................................................15

*CJ Advert., LLC v. Whitehardt, Inc.*,
   3:10-0214, 2010 WL 3260068 (M.D. Tenn. Aug. 18, 2010)...................................................9

*Daimler-Chrysler Servs. v. Summit Nat'l, Inc.*,
   289 Fed. App'x 916 (6th Cir. Aug. 20, 2008).......................................................................20

*DBT Group v. FMC Corp.*,
   2001 WL 1105077 (N.D. Ill. Sept. 19, 2001) .....................................................................19

Case 3:20-cv-00451-CEA-DCP   Document 51   Filed 01/26/21   Page 3 of 33   PageID #: 956
1889214v12

*DeliverMed Holdings, LLC v. Schaltenbrand*,
　　734 F.3d 616 (7th Cir. 2013) ................................................22

*Eckes v. Card Prices Update*,
　　736 F.2d 859 (2d Cir. 1984) ...........................................14, 16

*Energy Intel. Grp. v. Kayne Anderson*,
　　948 F.3d 261, 277-78 (5th Cir. 2020) ..............................22

*Expediters Int'l v. Direct Line Cargo Mgmt*,
　　995 F. Supp. 468 (D.N.J. 1998) ......................................24

*Frerck v. John Wiley & Sons, Inc.*,
　　11-CV-2727, 2014 WL 3512991 (N.D. Ill. July 14, 2014) ...................13

*Gold Value v. Sanctuary Clothing*,
　　925 F.3d 1140 (9th Cir. 2019) ........................................16, 18

*Green v. Bock Laundry Mach. Co.*,
　　490 U.S. 504 (1989) ....................................................15

*Harris v. Emus Records Corp.*,
　　734 F.2d 1329 (9th Cir. 1984) ..........................................14

*Hart v. Massanari*,
　　266 F.3d 1155 (9th Cir. 2001) ..........................................17

*Hodge v. Craig*,
　　382 S.W.3d 325 (Tenn. 2012) ...........................................16

*Holtzman v. Village Green Mgmt. Co. LLC*,
　　No. 2:19-CV-11150-TGB, 2020 WL 264331 (E.D. Mich. Jan. 17, 2020) ...........11

*Hubco Data Prod. v. Mgmt. Assistance Inc.*,
　　1983 WL 1130 (D. Idaho Feb. 3, 1983) ................................19

*Ingram Barge v. Americas Styrenics*,
　　No. 3:15-CV-0507-AAT, 2015 WL 5228154 (M.D. Tenn. Sept. 8, 2015) ...........10

*L.A. Printex Indust. v. Aeropostale, Inc.*,
　　676 F.3d 841 (9th Cir. 2012) .........................................16, 17

*Lamps Plus v. Seattle Lighting Fixture*,
　　345 F.3d 1140 (9th Cir. 2003) ..........................................14

*Lynn v. Sure-Fire Music Co., Inc.*,
　　237 Fed. App'x 49, 54 (6th Cir. 2007) ................................25

*Malone v. Stanley Black & Decker*,
　　965 F.3d 499 (6th Cir. 2020) ...........................................12

*McLaren v. Chico's FAS, Inc.,*
2010 WL 4615772 (S.D.N.Y. Nov. 9, 2010) .................................................................20, 21

*Meco Corp. v. MRMC, Inc.,*
2005 WL 2139411 (E.D. Tenn. Aug. 26, 2005) *adopted*, No. 2:04 CV 431-RG,
2005 WL 2387727 (E.D. Tenn. Sept. 28, 2005) ...........................................................................3

*Medtronic, Inc. v. Endologix, Inc.,*
530 F. Supp. 2d 1054 (D. Minn. 2008) .........................................................................................6

*Metro. Reg'l Info. v. Am. Home Realty,*
948 F. Supp. 2d 538 559 (D. Md. 2013) .........................................................................20, 21

*Midlantic Nat'l Bank v. New Jersey Dept. of Env't. Prot.,*
474 U.S. 494 (1986) .................................................................................................................14

*Moneygram Payment Sys., v. Enter. Payment Sols.,*
LLC, 1:05-CV-172-HSM, 2008 WL 11342576 (E.D. Tenn. Jan. 18, 2008) .........................24

*Mor-Dall Enters. v. Dark Horse Distillery,*
16 F. Supp. 3d 874 (W.D. Mich. 2014) .......................................................................................8

*Nason Homes v. Singletary Constr.,*
No. 3:14-cv-1656, 2016 WL 6952257 (M.D. Tenn. Jan. 29, 2016) .................................17, 18

*Nelson-Salabes, Inc. v. Morningside Dev., LLC,*
284 F.3d 505 (4th Cir. 2002) ......................................................................................................6

*One Treasure Ltd. v. Richardson,*
202 Fed. Appx. 658 (5th Cir. 2006) .........................................................................................14

*Original Appalachian Artworks v. Toy Loft, Inc.,*
684 F.2d 821 (11th Cir. 1982) ..................................................................................................14

*Palnik v. Westlake Ent.,*
344 Fed. App'x 249 (6th Cir. 2009) ........................................................................................3, 8

*Power & Tele. Supply v. SunTrust Banks,*
447 F.3d 923 (6th Cir. 2006) ....................................................................................................16

*PRC Realty Sys. v. Nat'l Ass'n of Realtors, Inc.,*
766 F. Supp. 453 (E.D. Va. 1991) ............................................................................................19

*Red Strokes Ent., Inc. v. Sanderson,*
3:12-CV-0008-AAT, 2012 WL 1514892 (M.D. Tenn. May 1, 2012) .........................................4

*Roberts v. Gordy,*
877 F.3d 1024 (11th Cir. 2017) .....................................................13, 14, 16, 17, 21, 22

*Ross, Brovins & Oehmke, v. Lexis/Nexis*,
    348 F. Supp. 2d 845 (E.D. Mich. 2004).........................................................................25

*Schenck v. Orosz*,
    105 F. Supp. 3d 812 (M.D. Tenn. 2015)..........................................................15, 18, 22

*Scotts Co. v. Aventis S.A.*,
    145 Fed. App'x 109 (6th Cir. 2005) .........................................................................3, 10, 11

*Shaffer v. Interbank FX*,
    No. 3:12-CV-231-TWP, 2013 WL 53979 (E.D. Tenn. Jan. 3, 2013).......................5

*Sony/ATV Music Pub. LLC v. CAVS USA, Inc.*,
    No. 3:08-0265, 2009 WL 2177110 (M.D. Tenn. July 21, 2009)............................11

*Southern Mach. Co. v. Mohasco Industr.*,
    401 F.2d 374 (6th Cir. 1968) ................................................................................2, 7

*Stone Surgical, LLC v. Stryker Corp.*,
    858 F.3d 383 (6th Cir. 2017) ...................................................................................4

*Stromback v. New Line Cinema*,
    384 F.3d 283 (6th Cir. 2004) ..........................................................................23, 24

*Theunissen v. Matthews*,
    935 F.2d 1454 (6th Cir. 1991) .................................................................................3

*Estate of Thomson v. Toyota Motor*,
    545 F.3d 357 (6th Cir. 2008) ...................................................................................3

*U.S. v. Belevin-Ramales*,
    458 F. Supp. 2d 409 (E.D. Ky. 2006) ...................................................................14

*U.S. v. Brandel*,
    2019 WL 2110504 (D. Nev. May 14, 2019)..........................................................17

*Unicolors, Inc. v. H&M Hennes & Mauritz*,
    959 F.3d 1194 (9th Cir. 2020) ..................................................................16, 17, 18

*Unicolors, Inc. v. Urban Outfitters, Inc.*,
    853 F.3d 980 (9th Cir. 2017) .................................................................................17

*Varsity Brands, Inc. v. Star Athletica, LLC*,
    799 F.3d 468 (6th Cir. 2015), *aff'd on other grounds*, 137 S. Ct. 1002 (2017)......................13

*Wiedo v. Securian Life Ins.*,
    2020 WL 5219536 (E.D. Ky. Sept. 1, 2020) ..........................................................5

*Wilson v. 5 Choices, LLC*,
    776 Fed. App'x 320 (6th Cir. 2019) ........................................................................5

*Winget v. JP Morgan Chase Bank,*
   537 F.3d 565 (6th Cir. 2008) ................................................................4

*Winston v. Zaehringer,*
   No. 1:19-CV-2160-JRG, 2020 WL 3259531 (E.D. Tenn. June 16, 2020) ..................3, 4, 7

*Wireless Props. v. Crown Castle Intern.,*
   No. 1:10-CV-269-HSM, 2011 WL 3420734 (E.D. Tenn. Aug. 4, 2011) ................5

*Wrench LLC v. Taco Bell Corp.,*
   256 F.3d 446 (6th Cir. 2001) ....................................................23, 24, 25

**Statutes**

17 U.S.C. § 301(a) ................................................................23

17 U.S.C. § 411(b)(1) ..........................................................13, 15

17 U.S.C. § 411(b)(2) ..........................................................15, 22

28 U.S.C. § 1400(a) ..............................................................11

**Other Authorities**

Annual Report of the Register of Copyrights, Fiscal Year Ending September 30,
   2009 ..................................................................14, 16

Copyright Office Practices, Second Compendium ¶ 905.02 ............................19

Copyright Office Practices, Third Compendium ¶ 1905.1 ..............................20

Copyright Office Practices, Third Compendium ¶ 612.2 ....................17, 18, 19, 20

H.R. Rep. 94-1476, 94th Cong., 2d Sess. 138 (1976) ................................19

Kaplan, *Publication in Copyright Law: The Question of Phonograph Records,*
   103 U. PA. L. REV. 469, 488-89 (1955) ..........................................22

Menell, *In Search of Copyright's Lost Ark: Interpreting the Right to Distribute in
   the Internet Age* ................................................................22

Nimmer, *Copyright Publication*, 56 COLUM. L. REV. 185, 185 (1956) ..................22

Plaintiffs SNMP Research, Inc. ("SNMP Research") and SNMP Research International, Inc. ("SNMP International") (collectively "Plaintiffs") submit this Memorandum of Law in Opposition to Defendants Broadcom Inc.'s ("Broadcom") and Brocade Communications LLC's ("Brocade") Joint Motion to Dismiss Plaintiffs' Complaint or, Alternatively, to Transfer Venue ("Motion"). Dkt. 40-1 ("Mot."). Defendant Extreme Networks, Inc. has joined in Broadcom's and Brocade's Motion. Broadcom and Brocade are referred to herein collectively with Extreme as "Defendants."

## I.  INTRODUCTION

Brocade intentionally disclosed Plaintiffs' source code to defendant Extreme in blatant breach of the confidentiality obligations of a license agreement between Brocade and SNMP International dated March 10, 2001 ("Agreement"). Extreme then unlawfully benefitted from Plaintiffs' software by reproducing and publicly distributing products containing Plaintiffs' copyrighted software (as well as derivative works) and continues to do so to this day. Brocade has done so as well, and continues to do so, despite the fact that SNMP International terminated Brocade's use and redistribution rights under the Agreement due to its breaches. Defendant Broadcom wholly owns and controls Brocade and has profited, and continues to profit, from Brocade's infringement; consequently, under settled copyright law, Broadcom is jointly and severally liable with Brocade as its "practical partner." Defendants collectively have netted hundreds of millions of dollars due to their breaches and willful infringement. None of this is challenged in Defendants' Motion. Instead, Defendants raise a host of technical arguments that are not only meritless but also wholly premature at the pleading stage.

**Personal Jurisdiction**. Only Broadcom challenges personal jurisdiction. In doing so, it ignores that the Agreement central to this case contains a mandatory forum-selection clause providing "sole and exclusive jurisdiction and venue [] in the State and Federal courts in Knox County, Tennessee" for "actions arising out of or related to the subject matter of this Agreement." Dkt. 1 ("Cmplt.") ¶ 25. The forum-selection clause constitutes consent to jurisdiction. And while Broadcom

is not a signatory to the Agreement, Broadcom is still bound by its forum-selection clause because Broadcom's actions made it reasonably foreseeable that it would become involved in a dispute related to the Agreement. Those actions include "work[ing] substantially and continuously with Brocade" to disclose Plaintiffs' source code to Extreme (Cmplt. ¶ 65), sharing in Brocade's profits from infringement (Cmplt. ¶¶ 65-67, 78, 83, 103), and speaking on behalf of Brocade during "extensive negotiations" with Plaintiffs wherein Broadcom attempted to broker a new license to replace the Agreement (Cmplt. ¶ 26). Because it was foreseeable to Broadcom that it would become embroiled in a dispute between Plaintiffs and Brocade related to the Agreement, the mandatory forum-selection clause applies to Broadcom. Separately, personal jurisdiction exists as to Broadcom pursuant to the test in *Southern Mach. Co. v. Mohasco Industr.*, 401 F.2d 374, 381 (6th Cir. 1968) ("*Mohasco*").

      **Invalidity**. SNMP Research's registration certificates are presumptively valid under copyright law. Defendants challenge them on the purported bases that, when SNMP Research registered its software with the Copyright Office, SNMP Research allegedly (i) "incorrectly" registered them as unpublished when it (ii) "knew" they were published. Neither assertion is true. Defendants' contention that the software was published turns on the fact that the Agreement existed at the time of registration, but Defendants' cited authority does not support their contention that this was publication. Moreover, under binding Sixth Circuit precedent that Defendants ignore, the issue of invalidity does not turn on mere "incorrectness"; it turns on whether SNMP Research **defrauded** the Copyright Office. Nothing in the Complaint remotely satisfies that standard which is inherently fact- and credibility-intensive. Indeed, there is no evidence before the Court at all regarding SNMP Research's state of mind at the time of registration. Consequently, Defendants' invalidity argument is both wrong and premature.

      **Preemption**. The sole attack on the breach of contract claim (Count One) is that it is supposedly preempted by copyright law. However, breach of contract claims generally are not preempted by copyright law because they contain an "extra element" that is not required to prove a

copyright claim, which is the Sixth Circuit standard for determining whether preemption applies. Count One falls plainly within that general rule. The Agreement contains an express duty of confidentiality, which Brocade breached. Indeed, Brocade's breach of confidentiality via unauthorized disclosure of Plaintiffs' source code to Extreme is a central allegation in this case that has nothing to do with copyright law. This alone means there is no preemption. However there is an additional bar to preemption, as well. As the Sixth Circuit has recognized, when a contract requires <u>payment</u> for exploitation of a work (*i.e.*, it doesn't simply preclude unauthorized use of the work), then that bargained-for right to payment constitutes the required "extra element." Here, there is just such a bargained-for payment provision. Finally, the Sixth Circuit has recognized that preemption is an inherently fact-driven issue. That in turn renders preemption, like alleged fraud on the Copyright Office, inappropriate for determination on the pleadings in this case.

For all of these reasons, this Court should deny Defendants' Motion in its entirety.

## II.     LEGAL STANDARD

Broadcom seeks dismissal under Rule 12(b)(2), and all Defendants seek dismissal under Rules 12(b)(3) and 12(b)(6). In a Rule 12(b)(2) challenge based on the complaint and written submissions, a plaintiff's burden "is relatively slight." *Winston v. Zaehringer*, No. 1:19-CV-2160-JRG, 2020 WL 3259531, at *4 (E.D. Tenn. June 16, 2020) (quoting *Estate of Thomson v. Toyota Motor*, 545 F.3d 357, 360 (6th Cir. 2008)). Well-pleaded factual allegations, regardless of whether they are disputed by a controverting affidavit, are assumed true. *Theunissen v. Matthews*, 935 F.2d 1454, 1460 (6th Cir. 1991). "[D]efendants' affidavits contradicting the facts are irrelevant," *Palnik v. Westlake Ent.*, 344 Fed. App'x 249, 251 (6th Cir. 2009), and the court does not consider or weigh defendants' "controverting assertions." *Scotts Co. v. Aventis S.A.*, 145 Fed. App'x 109, 112 (6th Cir. 2005). In a 12(b)(2) or (b)(3) challenge, the court may consider affidavits, including plaintiff's, without converting it to a summary judgment motion. *See Meco Corp. v. MRMC, Inc.*, 2005 WL 2139411, at *2 (E.D.

Tenn. Aug. 26, 2005), *adopted*, No. 2:04 CV 431-RG, 2005 WL 2387727 (E.D. Tenn. Sept. 28, 2005).

In a Rule 12(b)(3) challenge, "the court may examine facts outside of the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Red Strokes Ent., Inc. v. Sanderson*, 3:12-CV-0008-AAT, 2012 WL 1514892, at *11 (M.D. Tenn. May 1, 2012) (internal quotation marks omitted).

A Rule 12(b)(6) motion is determined by the face of the complaint. *Winget v. JP Morgan Chase Bank*, 537 F.3d 565, 576 (6th Cir. 2008). The court accepts the complaint's allegations as true and construes them in the light most favorable to the plaintiff. *Winston*, 2020 WL 3259531, at *10.

## III. THIS COURT HAS PERSONAL JURISDICTION OVER BROADCOM

The Agreement contains a mandatory forum-selection clause which provides that, for any "actions arising out of or related to the subject matter of the Agreement," there is "sole and exclusive jurisdiction and venue lying in the State and Federal courts in Knox County, Tennessee." Cmplt. ¶ 25; Agreement (Cmplt. Ex. A) at Amend. 3 § 13. A mandatory forum-selection clause constitutes a waiver of personal jurisdiction challenges. *Stone Surgical, LLC v. Stryker Corp.*, 858 F.3d 383, 388 (6th Cir. 2017). And because Broadcom (which wholly owns Brocade) has participated in effectuating Brocade's breach of the Agreement and has knowingly profited from Brocade's willful acts of infringement (which continue to this day), Broadcom is just as bound by the Agreement's forum-selection clause as is Brocade. For this reason, Broadcom's personal jurisdiction challenge fails. *See Carnival Cruise Lines v. Shute*, 499 U.S. 585, 589 (1991) (declining to reach constitutional arguments when personal jurisdiction was resolved on basis of forum-selection clause). In addition, Broadcom satisfies the constitutional standard for specific jurisdiction set forth in *Mohasco* by engaging in willful copyright infringement directed at this District, directing distribution and licensing efforts at this District and nationwide, and forming or attempting to form long-term contracts in Tennessee.

## A. Broadcom Is Subject To The Agreement's Forum-Selection Clause

In light of Broadcom's close relationship to Brocade, intimate connection to the facts underlying the present dispute, and profiting from the actions of infringement, it was foreseeable to Broadcom that it would become party to a dispute between Plaintiffs and Brocade—all of which render it fair and reasonable to subject Broadcom to the forum-selection clause in the Agreement.

A non-signatory is bound by a forum-selection clause where the non-signatory is "closely related to the dispute such that it becomes foreseeable that it will be bound." *Baker v. LeBoeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102, 1106 (6th Cir. 1997) (internal quotation marks omitted); *see Wilson v. 5 Choices, LLC*, 776 Fed. App'x 320, 329 (6th Cir. 2019) (binding "closely related" non-signatory defendant to forum-selection clause). In determining foreseeability, courts take a "common sense" approach that "places emphasis on whether it should have been reasonably foreseeable to the non-signatory that situations might arise in which the non-signatory would become involved in the relevant contract dispute." *Regions Bank*, 2010 WL 908753, at *6. This foreseeability rule has been applied to non-signatories in a wide variety of contexts. *See, e.g.*, *Wireless Props. v. Crown Castle Intern.*, No. 1:10-CV-269-HSM, 2011 WL 3420734, at *5 (E.D. Tenn. Aug. 4, 2011) (foreseeable that non-signatory parent company could become involved in dispute between signatory subsidiary and plaintiff); *Wiedo v. Securian Life Ins.*, 2020 WL 5219536, at *6–7 (E.D. Ky. Sept. 1, 2020) (non-signatory insurer bound in dispute between signatory employer and employee); *Shaffer v. Interbank FX*, No. 3:12-CV-231-TWP, 2013 WL 53979, at *1–2 (E.D. Tenn. Jan. 3, 2013) (binding non-signatory investors in dispute over accounts subject to forum selection clause).

Broadcom meets this standard. Broadcom "worked substantially and continuously with Brocade to implement" the improper disclosure of Plaintiffs' source code to Extreme, which was a breach of the Agreement. Cmplt. ¶ 65. Indeed, despite the fact that Broadcom/Brocade submitted the declaration of Mark Brazeal, Dkt. 42-1 ("Brazeal Decl."), in support of their Motion, Mr. Brazeal does

not dispute that Broadcom and Brocade caused this unauthorized disclosure and that the disclosure breached the Agreement. Thus, Broadcom is intimately tied to a central aspect of this case, namely willful violation of the Agreement's confidentiality provisions.

Moreover, Broadcom wholly owns and thus ultimately controls Brocade and shares in Brocade's profits from its infringement. Cmplt. ¶¶ 65-67, 78, 83, 103. Once again, Mr. Brazeal's declaration fails to dispute that Broadcom wholly owns Brocade and shares in the profits from Brocade's alleged infringement. Under settled copyright law, Broadcom is thus jointly and severally liable for Brocade's infringement pursuant to the "practical partner" doctrine. *See id.* ¶¶ 15, 65–67; *see also Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 517 (4th Cir. 2002) ("When a court finds the existence of a partnership or a 'practical partnership,' the 'partners' thereof are jointly and severally liable for any profits that they collectively derived from the acts of . . . infringement.").

Broadcom also took part in "extensive negotiations" with Plaintiffs during which Broadcom representatives spoke on behalf of Brocade in order to broker a new license agreement to replace the Agreement. Cmplt. ¶ 26; *see also* Declaration of Dr. Jeffrey Case ("Case Decl.") ¶¶ 27-29 and Exs. D-G thereto.[1] In addition, Broadcom and Brocade have hired the same counsel in this case and are submitting joint filings, including identifying supposedly important witnesses without differentiating whether they work(ed) for Broadcom or Brocade. *See* Declaration of A. Matthew Ashley ¶ 4 and Exhibit A thereto; *see also Medtronic, Inc. v. Endologix, Inc.*, 530 F. Supp. 2d 1054, 1057 (D. Minn. 2008) (non-signatory defendant subject to forum-selection clause where "Defendants clearly share[d] a common interest" otherwise "they could not be represented by the same counsel.").[2]

---

[1] Broadcom does not dispute this. Instead it argues that: (i) participant details were not provided, Mot. at 9 (citing no authority); and (ii) the conversations were all settlement negotiations, Mot. at 10 (which is not correct and which cannot override the Complaint's allegations). In any event, Dr. Case provides more detail regarding the participants in his declaration. Case. Decl. ¶¶ 27-29; Exs. D-G.

[2] It is also worth noting that while Broadcom and Brocade filed a joint Certificate of Interested Parties, they were careful not to identify who owned Brocade. *See* Dkt. 43. Apparently, they do not wish to disclose the "several layers" vaguely incanted in Mr. Brazeal's declaration (¶ 4).

**B.     Broadcom Also Satisfies The *Mohasco* Test For Specific Jurisdiction**

Under *Mohasco*, specific jurisdiction exists if:  (1) Broadcom "purposefully availed" itself of Tennessee or caused a consequence here; (2) the causes of action "arise from" Broadcom's activities; and (3) Broadcom's actions in Tennessee or the consequences caused by its actions directed toward Tennessee are substantial enough to make jurisdiction "reasonable."  401 F.2d at 381.  On a motion to dismiss, Plaintiffs' burden under *Mohasco* is "relatively slight."  *Winston*, 2020 WL 3259531, at *4.

**1.     The Purposeful Availment Factor Is Met**

"Purposeful availment" is satisfied where a defendant invokes the "privilege of acting in the forum state or causing a consequence in the forum state," *Mohasco*., 401 F.2d at 381, and "random, fortuitous, or attenuated" contacts are insufficient.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).  Broadcom satisfies this standard for three reasons.

First, when a defendant directs tortious conduct into the forum state of the injured plaintiff, it supports a finding of purposeful availment.  *Air Products and Controls, Inc. v. Safetech Int'l*, 503 F.3d 544, 552 (6th Cir. 2007) ("The existence of intentional tortious conduct [] enhances a party's other contact with the forum state for purposes of a purposeful availment analysis.").  Broadcom "substantially and continuously [worked] with Brocade to implement the disclosure, transfer, reproduction, and/or public distribution of products containing the copyrighted software to Extreme," Cmplt. ¶¶ 65-66, and "Defendants knew their acts constituted a breach of the Brocade License Agreement and an infringement of Plaintiffs' copyrighted works," Cmplt. ¶ 17.  Moreover, as demonstrated above, Broadcom is liable for Brocade's acts of infringement as Brocade's "practical partner."  These allegations, which must be taken as true, show that Broadcom partnered with Brocade to knowingly breach the Agreement and to willfully engage in copyright infringement, thereby injuring Plaintiffs who reside in this District with their co-founder (all of which Broadcom knew).  Such conduct supports a finding of purposeful availment.  *See Big Guy's Pinball v. Lipham*, No. 14-CV-

14185-VAR, 2015 WL 4209042, at *3 (E.D. Mich. July 10, 2015) ("effects test" satisfied when injury from willful copyright infringement was felt by plaintiff in forum state where plaintiff was headquartered and where its founders resided); *Mor-Dall Enters. v. Dark Horse Distillery*, 16 F. Supp. 3d 874, 881–82 (W.D. Mich. 2014) ("effects test" satisfied when defendant used a trade name that it knew was protected by a federal trademark but nonetheless sold infringing products in the forum state).

     <u>Second</u>, the Complaint alleges on information and belief that Broadcom is "actively marketing, selling, offering to sell, licensing, and/or offering to license hardware, software, and/or services directly or indirectly through its distribution channels to business consumers in this District, including, without limitation, products containing the software at issue in this case." Cmplt. ¶ 26.[3] Direct knowledge of nationwide distribution or distribution in Tennessee are sufficient to show purposeful availment. *See Ampro Industr., v. Dr. Farrah Gray Pub.*, No. 12-2696, 2013 WL 5426257, at *5 (W.D. Tenn. Sept. 26, 2013) (purposeful availment where "distribution activities are carried out with direct knowledge that products are distributed nationwide."). Moreover, allegations on information and belief suffice at this stage given that the information is in the hands of Broadcom and Brocade (and is the subject of current discovery). *Palnik*, 344 Fed. App'x at 252 ("A party and her attorney can, on knowledge, information, and belief, assert specifically that the existence of the necessary distribution relationship will likely have evidentiary support after a reasonable opportunity for discovery . . . such an assertion will be assumed true for the purposes of the party's prima facie case for jurisdiction notwithstanding . . . contrary assertions from the defendant.") (internal quotations and citations omitted).

     Here again, the Brazeal Declaration is far more informative in what it fails to say than in what it actually says. For instance, while asserting that Broadcom is "not a <u>sales</u> operating entity" and that it

---

[3] Defendants argue that there is no infringement claim against Broadcom for its own products, Mot. at 11, but Brocade's products are Broadcom's products. Cmplt. ¶¶ 65-67, 83, 103; *see* https://www.broadcom.com/products/fibre-channel-networking, last visited January 25, 2021 ("With Brocade Fibre Channel technology-based directors and switches from Broadcom, you've got the firepower to deliver high-performance connectivity across the data center and across the globe").

"does not <u>sell</u> or engage in any <u>product development</u> containing the software at issue in this case," Brazeal Decl. ¶ 5 (emphasis added), Mr. Brazeal never disputes that Broadcom markets, licenses, or offers to market or license products (including Brocade's products) containing the software at issue in this case or that Broadcom assists Brocade in doing so. *See* Cmplt. ¶ 26. Nor does Mr. Brazeal dispute the allegations as to Brocade's activities directed at Tennessee, or the allegations that show Broadcom is Brocade's "practical partner" in those infringing acts directed at Tennessee. Mr. Brazeal states that there "are several layers" between Brocade and Broadcom (Brazeal Decl. ¶ 4), but Defendants cite no authority holding "layers" relevant to the practical partner analysis under copyright law.

<u>Third</u>, Plaintiffs allege that Broadcom intended to form a long-term relationship with Tennessee through its ongoing business relationship with Plaintiffs. *See CJ Advert., LLC v. Whitehardt, Inc.*, 3:10-0214, 2010 WL 3260068, at \*5 (M.D. Tenn. Aug. 18, 2010) (finding purposeful availment in light of lengthy business relationship). Broadcom, both itself and through its subsidiaries, has a long-term relationship with Plaintiffs. One wholly-owned Broadcom subsidiary entered into a contract with SNMP International, and that contract contains a mandatory forum-selection clause making Knox County the exclusive jurisdiction and venue to resolve contract disputes. *See* Cmplt. ¶ 26; Case Decl. ¶ 32 Ex. J ("For actions arising out of or related to the subject matter of this Agreement, as amended, the parties hereby agree to be subject to sole and exclusive jurisdiction and venue lying in the State and Federal courts in Knox County, Tennessee"). Broadcom later signed an amendment to that contract expressly making Broadcom a "Party," which necessarily extends to that forum-selection clause. *See* Cmplt. ¶ 26; *see also* Exhibit A to Brazeal Decl., Dkt. 42-2.[4]

---

[4] Defendants argue that the "amendment" Broadcom signed does not itself contain the forum-selection clause and that Broadcom had no "licensee" rights under the contract (Mot. at 8-9), but neither point is relevant. The amendment did not have to recite the underlying contract's forum-selection clause, as it (i) expressly recognized that the underlying contract was part of the Parties' "complete and entire understanding"; and (ii) expressly identified Broadcom as a "Party." Moreover, the limitation of "Licensee" rights to one Broadcom subsidiary (versus Broadcom's entire family) doesn't make Broadcom itself any less of a party to the contract and thus bound by its forum-selection clause.

Defendants' contention that this contract is "irrelevant" just because it is not the subject of the instant contract claim is wrong. A "prior contract may be relevant to the extent that it lengthens the ongoing relationship between [defendant] and [plaintiff] and strengthens the evidence of [defendant's] intent to form a long-term relationship with the forum state through a series of contracts with [plaintiff]." *Ingram Barge v. Americas Styrenics*, No. 3:15-CV-0507-AAT, 2015 WL 5228154, at *4 n.8 (M.D. Tenn. Sept. 8, 2015). Indeed, yet another Broadcom subsidiary (this one is called "Broadcom Corporation") entered into yet another contract with SNMP International that also contains a mandatory forum-selection clause requiring suits in Knox County, and that contract has been in place for years. Case Decl. ¶ 31, and Ex. I thereto.[5] Indeed, Plaintiffs' notice of default referenced in the Complaint (at ¶ 51) identified breach of this contract as well as breach of the Agreement. All of this shows Broadcom intended "to form a long term relationship with the forum state through a series of contracts" with Plaintiffs. *Ingram*, 2015 WL 5228154, at *4 n.8.

Finally, as noted above, Broadcom representatives spoke on behalf of Brocade in connection with obtaining a replacement license for the Agreement. *See* Cmplt ¶ 26. That, too, supports a finding of purposeful availment. *See Ingram,* at *4 (finding purposeful availment where "contract negotiations . . . were conducted in anticipation of a long-term future relationship and in the aftermath of a long-term prior business relationship (irrespective of whether an enforceable contract was ultimately formed)").

In summary, Plaintiffs have satisfied their "slight" burden to show purposeful availment.

### 2. The "Arising From" And "Reasonable" Factors Are Also Met

Plaintiffs have also satisfied *Mohasco*'s other factors. With respect to the second factor, a "lenient standard . . . applies when evaluating the arising from criterion." *Scotts*, 145 Fed. App'x at 115 (internal quotation marks omitted). It is satisfied here because, as set forth above, Plaintiffs' claims are

---

[5] Based on Broadcom's public statements, "Broadcom Corporation" was, at various times, either a subsidiary of Broadcom Inc. or a predecessor to it. Ashley Decl. ¶¶ 2, 6.

substantially connected to and "made possible" by Broadcom's misconduct, alleged marketing and licensing in this District, and prior negotiations with Plaintiffs. *Id.* With respect to the third factor ("reasonableness"), when the first two factors are satisfied "a presumption arises that the exercise of jurisdiction would be reasonable under the third factor." *Id.* (internal quotation marks omitted). Moreover, "it cannot be disputed" that Tennessee has an interest in resolving a suit brought by Tennessee residents to redress injury suffered in Tennessee, and jurisdiction is therefore reasonable. *Id.*

### C. Venue Is Proper In This District

Under the copyright venue statute, 28 U.S.C. § 1400(a), venue is proper in any judicial district where the defendant is subject to personal jurisdiction. *Sony/ATV Music Pub. LLC v. CAVS USA, Inc.*, No. 3:08-0265, 2009 WL 2177110, at *8 (M.D. Tenn. July 21, 2009). Consequently, venue is proper in this District for all three Defendants.

As for Brocade, it agreed to a mandatory forum-selection clause in this District and so personal jurisdiction lies exclusively here (which is why Brocade never challenges personal jurisdiction); that in turn means venue is proper as to Brocade under the copyright statute. *Holtzman v. Village Green Mgmt. Co. LLC*, No. 2:19-CV-11150-TGB, 2020 WL 264331, at *10 (E.D. Mich. Jan. 17, 2020) ("a mandatory clause creates an exclusive forum for litigation under the contract"). As for Extreme, it also does not contest personal jurisdiction in this District, so by definition it cannot contest venue here. Consequently, for two of the three Defendants, there is no dispute that venue is proper in this District as to them. And for the reasons set forth above, Broadcom's challenge to jurisdiction should be rejected. *See* § III.B.1 *supra*. Consequently, Broadcom, too, is subject to venue in this District.

### D. In The Alternative, Plaintiffs Request Leave To Amend After Discovery

As discussed in Plaintiffs' opposition to Extreme's Motion (Dkt. 39), if the Court concludes on the current record that there is no jurisdiction over Broadcom, Plaintiffs respectfully request leave to amend to add jurisdictional allegations after receiving Defendants' substantive responses to pending

jurisdictional discovery and potential follow-up discovery. *See Malone v. Stanley Black & Decker*, 965 F.3d 499, 506 (6th Cir. 2020) (jurisdictional discovery warranted where defendant "may very well have made the necessary contacts" but plaintiffs "cannot know that without discovery"); *see* Ashley Decl. ¶¶ 2-4, 12. If the Court thereafter concludes there is no jurisdiction, then rather than transfer this case to California where it simply does not belong, this Court should dismiss Broadcom without prejudice as a last resort (given that it may lead to future disputes over issues like the statute of limitations).

## IV.    DEFENDANTS' INVALIDITY ASSERTION IS MERITLESS AND IS A FACT ISSUE

The United States Copyright Office has issued to SNMP Research copyright registration certificates that are presumptively valid. Defendants challenge SNMP Research's registrations on the purported bases that (1) SNMP Research's software was incorrectly registered with the Copyright Office as unpublished in 2011, and (2) SNMP Research had knowledge at the time of registration that the information was inaccurate. Neither of these assertions is true. Defendants' contention that the software was published turns on the fact that a license (*i.e.*, the Agreement) existed with Brocade in 2011. Mot. at 16-17. But, as demonstrated below, Defendants' cases fail to support their contention.

More importantly, even if Defendants were correct that SNMP Research's copyright registrations contained inaccurate information (and Defendants are not correct), under binding Sixth Circuit precedent that the Motion ignores, Defendants' invalidity contention turns on whether SNMP Research defrauded the Copyright Office. There is absolutely nothing in the Complaint satisfying that exacting standard; indeed, Defendants' motion fails even under the erroneous standard that Defendants' cases employ (namely, that SNMP Research lacked "good faith" in dealing with the Copyright Office). Given that this case is still at the pleading stage, there is no evidence at all before the Court regarding SNMP Research's state of mind at the time of registration, including the testimony of the person who actually dealt with the Copyright Office. Consequently, Defendants' invalidity argument and their "alternative" request for a referral to the Copyright Office are both meritless and woefully premature.

## A. Plaintiffs' Registration Certificates Are Presumptively Valid, And Nothing Supports The Required Finding Of Fraud Necessary To Invalidate Them

Registration with the Copyright Office is not a condition of copyright protection, but a copyright plaintiff must register his or her copyright in order to bring an infringement lawsuit. *Roberts v. Gordy*, 877 F.3d 1024, 1028 (11th Cir. 2017) ("A copyright inheres in authorship . . . While registration is a prerequisite to an infringement suit . . . a registration is not a condition of copyright protection.") (citations omitted). If the Copyright Office issues a certificate of registration, as occurred here (Cmplt. ¶ 33, Ex. B thereto), then the registration is presumptively valid. *Varsity Brands, Inc. v. Star Athletica, LLC*, 799 F.3d 468, 477 (6th Cir. 2015), *aff'd on other grounds*, 137 S. Ct. 1002 (2017).

Defendants argue that SNMP Research's copyright registrations contained an inaccuracy, but as demonstrated in § IV.B., below, Defendants' cited authority fails to support their assertion. Moreover, a registration certificate is valid "regardless of whether the certificate contains any inaccurate information." 17 U.S.C. § 411(b)(1) (emphasis added). By amending Section 411, "Congress codified the result in the majority of cases that had previously decided that copyright registration should not be a trap for the unwary and that copyright infringers are not permitted to defeat registrations on technicalities." *Frerck v. John Wiley & Sons, Inc.*, 11-CV-2727, 2014 WL 3512991, at *3 (N.D. Ill. July 14, 2014). Congress incorporated that language into the statute precisely to make explicit that copyright cases must be decided on their own merits, not thrown out based on purported technical errors during the registration process. Correlatively, a registration certificate may be held invalid only if it contains inaccurate information and two supplementary conditions are each satisfied:

(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and

(B) the inaccuracy of the information, if known, would have caused the Register of the Copyright to refuse registration.

17 U.S.C. § 411(b)(1) (emphasis added). As the Copyright Office has instructed, the purpose of the

amendment to Section 411 was "to codify the doctrine of <u>fraud</u> on the Copyright Office in the registration process." Annual Report of the Register of Copyrights, Fiscal Year Ending September 30, 2009 (herein, "Copyright Office 2009 Report"), 12-13 (2009) (emphasis added), https://www.copyright.gov/reports/annual/2008/ar2008.pdf. Judicial decisions are in accord. *See, e.g., Roberts*, 877 F.3d at 1029 ("This statute, which Congress modified in 2008, codifies the defense of fraud on the copyright office.").

While the Sixth Circuit has not had occasion to apply Section 411(b) after its 2008 amendment, it previously adopted the Fraud-on-the-Copyright-Office doctrine that the 2008 amendment codified. Specifically, it held that "an innocent misstatement, or a clerical error, in the affidavit and certificate of registration, <u>unaccompanied by fraud</u> or intent to extend the statutory period of copyright protection, does not invalidate the copyright, nor is it thereby rendered incapable of supporting an infringement action." *Advisers v. Wiesen-Hart, Inc.*, 238 F.2d 706, 708 (6th Cir. 1956) (emphasis added).[6]

Because nothing in Section 411(b) purports to abrogate *Advisers*, the case remains <u>controlling precedent</u> in the Sixth Circuit. *See Midlantic Nat'l Bank v. New Jersey Dept. of Env't. Prot.*, 474 U.S. 494, 501 (1986) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific"); *U.S. v. Belevin-Ramales*, 458 F. Supp. 2d 409, 411 (E.D. Ky. 2006) (commenting on 1952 amendment to statute that

---

[6] *Advisers* represents the consensus opinion among the circuits. *See, e.g., Eckes v. Card Prices Update*, 736 F.2d 859, 862 (2d Cir. 1984) ("[W] e agree with the district court that the presumption . . . was not overcome because of fraud."); *One Treasure Ltd. v. Richardson*, 202 Fed. Appx. 658, 661 (5th Cir. 2006) ("Even if Richardson is correct that the works are derivative, failure to register them as such . . . does not invalidate a registration without fraudulent intent."); *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984) ("Absent intent to defraud and prejudice, inaccuracies in copyright registrations do not bar actions for infringement."); *Lamps Plus v. Seattle Lighting Fixture*, 345 F.3d 1140, 1145 (9th Cir. 2003) (claimant must have "intended to defraud the Copyright Office by making the misstatement."); *Original Appalachian Artworks v. Toy Loft, Inc.*, 684 F.2d 821, 828 (11th Cir. 1982) (rejecting Fraud-on-the-Copyright-Office defense on the basis that "cases establish that omissions or misrepresentations in a copyright application can render the registration invalid, [only when there] has been intentional or purposeful concealment of relevant information. Where this element of 'scienter' is lacking, courts generally have upheld the copyright.").

failed to "contain any language which would warrant a holding that [the 1928 decision in] *Susnjar* has been abrogated or implicitly overruled. . . . While the Sixth Circuit may well one day revisit its decision in *Susnjar*, this Court cannot perform that function."). Indeed, the Middle District of Tennessee recently applied *Advisers* to the Section 411(b) inquiry in a well-reasoned published decision. "[U]nder the Sixth Circuit standard—articulated decades before § 411(b)(2) was enacted—an innocent misstatement or clerical error in the application and certificates of registration, if unaccompanied by fraud, does not invalidate the copyright or render the certificate . . . incapable of supporting an infringement action." *Schenck v. Orosz*, 105 F. Supp. 3d 812, 819 (M.D. Tenn. 2015) (quoting *Advisers*). This Court thus remains bound by the Sixth Circuit law as enunciated in *Advisers*.

The Motion never mentions *Advisers* or *Schenck* or the Copyright Office's own pronouncement that Section 411(b) codified the doctrine of Fraud on the Copyright Office. *A fortiori*, it does not even attempt to make the required showing that *Advisers* has somehow been abrogated. *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 521 (1989) ("A party contending that legislative action changed settled law has the burden of showing that the legislature intended such a change."). Nor do Defendants contend, much less demonstrate from the face of the Complaint, that SNMP Research defrauded or purposefully concealed anything from the Copyright Office. Instead, Defendants cite cases—all but one from outside the Sixth Circuit—which hold that, because Section 411(b)(1) does not employ the word "fraud," then the "knowing" misstatement language that the statute employs is somehow inconsistent with the Fraud-on-the-Copyright-Office doctrine. Mot. at 19. None of Defendants' authority helps them, much less permits departure from *Advisers,* which is controlling.

First, the language of Section 411(b)—*i.e.*, providing "inaccurate information . . . with knowledge that it was inaccurate"— is congruent with fraudulent or deceptive behavior. Making a statement with knowledge of falsity is the very essence of fraudulent scienter. *See, e.g.*, *City of Morristown v. AT&T Corp.,* 206 F. Supp. 3d 1321, 1331 (E. D. Tenn. 2016) (elements of fraud include

that party making false representation "either knew that the representation was false or did not believe it to be true . . .") (quoting *Hodge v. Craig,* 382 S.W.3d 325, 342-43 (Tenn. 2012)); *Power & Tele. Supply v. SunTrust Banks*, 447 F.3d 923, 931 (6th Cir. 2006) (fraudulent state of mind includes misrepresentation made "knowingly"). Indeed, Section 411(b)'s "knowledge" language closely tracks established precedent prior to the 2008 amendment that used the phrase "knowing failure to advise the Copyright Office of facts" as synonymous with "fraud," and this authority expressly relied on *Advisers*. *See Eckes*, 736 F.2d at 861 ("Only the <u>knowing failure to advise the Copyright Office of facts</u> which might have occasioned a rejection of the application constitute[s] reason for holding the registration invalid . . . Accordingly, we agree with the district court that the presumption . . . was not overcome because of <u>fraud</u>.") (emphasis added) (relying on *Advisers* and other circuit authority).

Consequently, the cases on which Defendants rely—*Gold Value v. Sanctuary Clothing,* 925 F.3d 1140 (9th Cir. 2019), and its sequels[7]—miss the mark by myopically focusing on the lack of the word "fraud" in Section 411(b) when the words the statute actually uses (*i.e.* knowingly providing inaccurate information) mean essentially the same thing as fraud. *See* Copyright Office 2009 Report, at 9 (Section 411 was amended "to create a new procedure . . . that requires courts to seek the advice of the Copyright Office <u>on issues that may involve fraud on the Copyright Office</u>.") (emphasis added); *Roberts,* 877 F.3d at 1030 ("The scienter necessary for invalidating a registration is also clear and well settled . . . the applicant must have the required scienter of intentional or purposeful concealment.").

Moreover, the Ninth Circuit cases on which Defendants rely flatly contradict prior Ninth Circuit authority. The Ninth Circuit authority decided after the 2008 amendment but predating *Gold Value* (2019) and *H&M Hennes* (2020) follows *Advisers, Roberts*, and the Copyright Office in expressly holding that the correct standard under amended Section 411(b) is fraud. *See L.A. Printex*

---

[7] *See Bruhn Newtech, Inc. v. U.S.,* 144 Fed. Cl. 755, 800-801 (Fed. Cl. 2019) (relying on *Gold Value*); *Unicolors, Inc. v. H&M Hennes & Mauritz*, 959 F.3d 1194, 1198 (9th Cir. 2020) ("we recently clarified that there is no such intent-to-defraud requirement") (citing *Gold Value*).

*Indust. v. Aeropostale, Inc.*, 676 F.3d 841, 853 (9th Cir. 2012) (no invalidation unless "the claimant intended to defraud the Copyright Office by making the misstatement."); *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 991 (9th Cir. 2017) (no invalidation "because Unicolor's exclusion of QQ-692 was inadvertent and not fraudulent"). Under Ninth Circuit law, it is the decision of the <u>earlier</u> panel that governs. *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) (first panel decision "sets the law"); *Atonio v. Wards Cove Packing*, 810 F.2d 1477, 1478–79 (9th Cir. 1987) (*en banc* required to overrule or abrogate prior panel); *U.S. v. Brandel*, 2019 WL 2110504, at *9 (D. Nev. May 14, 2019) (where subsequent panel deviates from an established rule, original panel decision remains "valid binding precedent.") (citing *Hart*).[8] Consequently, Ninth Circuit authority, properly construed, accords with Sixth Circuit law as well as that of other jurisdictions, such as the Eleventh Circuit in *Roberts*.

Defendants also cite an unpublished case for the proposition that fraud is not required to invalidate a copyright registration. Mot. at 19 (citing *Nason Homes v. Singletary Constr.*, No. 3:14-cv-1656, 2016 WL 6952257 (M.D. Tenn. Jan. 29, 2016)). That case involved a plaintiff who falsely claimed it owned a copyright based on a non-existent contract with the true author. *Id.* at *6. No facts remotely resembling that situation are extant on the face of the current Complaint. Moreover, that stray ruling cannot overrule binding Sixth Circuit precedent.

### B. SNMP Research's Alleged Knowledge Of The Brocade License Does Not Equate With Either Fraud Or Lack Of "Good Faith" And Was Not Even "Inaccurate"

Defendants' argument hinges on SNMP International having entered into the Agreement with Brocade prior to registration. According to Defendants, under ¶ 612.2 of the Copyright Office's current Compendium (the "Third Compendium"),[9] the issuance of that "license" to Brocade constituted

---

[8] Westlaw underlines the proposition by stating that "abrogation" of the rule in *L.A. Printex* was recognized in, *inter alia*, *Unicolors v. H&M Hennes*. Given the inability of a later panel to abrogate an earlier Ninth Circuit ruling, the prior Ninth Circuit decisions remain operative.

[9] Section 612.2 of the Third Compendium reads: "Software is distributed when copies are distributed by purchase or license[.]"

"publication," and because SNMP Research knew the license existed at the time of registration, SNMP Research's failure to register its work as "published" constituted a knowing inaccuracy. Mot. at 15-19. The argument fails on multiple levels.

**First**, as just demonstrated, the line of cases on which Defendants rely is inapposite. Yet even Defendants' authorities recognize that there can be no relief against claimants who provide "inaccurate" information in "good faith" (which would be relevant if SNMP Research said anything inaccurate to the Copyright Register in 2011, which it didn't).[10] Because both fraud and good faith are inherently fact- and credibility-driven inquiries, a motion to dismiss cannot resolve the necessary issues. That is why the cases on which Defendants chiefly rely involved evidence as to the copyright registrant's mindset and were resolved either at trial (*Bruhn* and *H&M Hennes*) or on summary judgment (*Gold Value*). In contrast, there is no evidence at all in the record at bar as to SNMP Research's state of mind during the registration process.

**Second**, Defendants have cited the wrong Compendium. The Third Compendium, first released in 2014, did not even exist at the time of SNMP Research's 2011 registration, and:

> information can only be "inaccurate" if it violated the Copyright Office's prevailing standards at the time the Register approved the application. Unless the defendants can make a good faith fact-based contention that plaintiffs violated the unit of publication rule in effect at the time (*i.e.* under the Second Compendium), it is difficult to see how the defendants could prevail on this argument.

*Schenck*, 105 F. Supp. 3d at 820. Indeed, the Third Compendium acknowledges its inapplicability to cases such as the one at bar. *Compendium of U.S. Copyright Office Practices* at p. 5 (3d ed. 2017) ("As a general rule, Compendium II continues to be the relevant administrative manual for registrations, renewals, and recordations issued by the Office between January 1, 1978 and December 22, 2014.").

---

[10] *Gold Value*, 925 F.3d at 1147 (distinguishing facts in its case "from others in which a claimant's good faith or inadvertent mistake did not constitute a knowing inaccuracy"); *Bruhn*, 144 Fed. Cl. at 800 ("Fiesta was admittedly aware of the facts regarding its fabric sales . . . [its conduct] cannot be characterized as an inadvertent or good faith mistake.") (quoting *Gold Value*); *see also Nason Homes*, 2016 WL 6952257, *6 (*"But *Advisors [sic] Inc.*, was limited to instances in which there was an innocent mistake . . ."*) (internal quotation marks omitted).

The operative Compendium at the time of SNMP Research's 2011 registration was the Second Compendium, and it did not contain the language (or equivalent language) in ¶ 612.2 of the Third Compendium on which Defendants rely. In fact, the Second Compendium provided no discussion <u>at all</u> as to whether or when licensing of software constituted "publication" to the general public. Thus, there was no statute, regulation or even a Compendium provision setting forth the law, rule, or even the standard on publication of computer software for SNMP Research to "know" back in 2011.

Indeed, what little that SNMP Research could have gleaned from the Second Compendium is entirely consistent with SNMP Research's registration of its software as unpublished. The Second Compendium provided that: "In order for publication to occur by the distribution of copies or phonorecords, such distribution must be 'to the public' rather than a more limited distribution. Generally, members of the public are persons who are under <u>no implied or express restriction with respect to disclosure of the work's contents</u>. *See* H.R. Rep. 94-1476, 94th Cong., 2d Sess. 138 (1976)." Second Compendium ¶ 905.02 (emphasis added). A review of extant case law would have led to the same conclusion. *See, e.g.*, *PRC Realty Sys. v. Nat'l Ass'n of Realtors, Inc.*, 766 F. Supp. 453, 461 (E.D. Va. 1991) ("The work was not made available to the general public without restriction . . . [and] occurred under tightly restricted terms, *e.g.*, confidentiality and restrictions on sublicensure to a competitor, and on release of source codes. This is not publication.").[11] The Agreement contains numerous "express restriction[s] with respect to disclosure of the work's contents." *See, e.g.,* Agreement (Cmplt. Ex. A) § 2 (limiting "internal use rights" to the "Brocade Fabric operating system and the PowerPC hardware platform"); § 3 (same limitation regarding binary "redistribution rights,"

---

[11] *See also DBT Group v. FMC Corp.,* 2001 WL 1105077, *4 (N.D. Ill. Sept. 19, 2001) (denying motion to dismiss asserting that software license agreement was a "publication" because "[i]nformation that is distributed to parties who are restricted in their use of the information is unpublished whether it is sold, leased, or given"); *Hubco Data Prod. v. Mgmt. Assistance Inc.,* 1983 WL 1130, *6 (D. Idaho Feb. 3, 1983) ("The operating systems were only offered to owners of MAI computers. Under these circumstances, the distribution would remain limited and it would not constitute a general distribution to the public invalidating copyright protection.").

and also prohibiting disclosure of source code).  Consequently, far from being a "knowing" misstatement for SNMP Research to have registered its software as unpublished, that course of action complied with the Copyright Office's own guidance at the time of registration.

**Third**, even if SNMP Research's knowledge in 2011 were to be judged by a Compendium issued three years later, it still would not show that SNMP Research made a knowingly incorrect statement.  The Third Compendium itself provides that "publication occurs when one or more copies or phonorecords are distributed to a member of the public <u>who is not subject to any express or implied restrictions concerning the disclosure of the content of the work</u>."  Third Compendium ¶ 1905.1 (emphasis added.)  As demonstrated above, the Agreement contains numerous "express restrictions" on disclosure, so SNMP Research's registration of its software as unpublished is consistent with ¶ 1905.1. It is also consistent with case law issued just prior to the Third Compendium.  *See Metro. Reg'l Info. v. Am. Home Realty*, 948 F. Supp. 2d 538 559 (D. Md. 2013) (computer database properly registered as unpublished because it was "only made available to subscribers under restrictive licensing terms"). Furthermore, Defendants have not provided (because they cannot) any evidence that SNMP Research "knew" licensing constituted publication.

Defendants cite case law that does not support them.  One unpublished case held that a software program that "was aggressively marketed through mass mailings, solicitations, and advertisements in trade journals" constituted publication.  *Daimler-Chrysler Servs. v. Summit Nat'l, Inc.,* 289 Fed. App'x 916, 923 (6th Cir. Aug. 20, 2008).  That ruling does not hold that any license, regardless of its terms, constitutes "publication" as a matter of law.  Moreover, *Daimler* was analyzing a "notice" requirement applicable to pre-1988 published works that no longer applies.  *Id.*  Similarly, Defendants cite an unpublished decision by Judge Rakoff holding that the licensing of a mannequin illustration for the express purpose of creating mannequins from that illustration for public consumption constituted publication.  *McLaren v. Chico's FAS, Inc.*, 2010 WL 4615772, at *2

(S.D.N.Y. Nov. 9, 2010). However, unlike the Agreement, there is no indication in *McLaren* of any restrictions on disclosure in the license at issue in that case. Much more salient is a published decision by Judge Rakoff (which Defendants ignore) involving a computer animation technology license. At the time of registration in 2005, the opinion held it was unclear whether "licensing" of any kind constituted publication. *Archie MD v. Elsevier, Inc.*, 261 F. Supp. 3d 512, 520 (S.D.N.Y. 2017); *see also Metro. Reg'l*, 948 F. Supp. at 559 (holding computer database distributed by restrictive license "is not distributed by rental, lease, or lending" so is not "publication"). In addition, Judge Rakoff held that:

> knowledge of the fact that the animations were licensed does not entail that the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate. <u>That conclusion would require another premise: that Levine knew licensing constituted publication</u>.

*Archie*, 261 F. Supp. 3d at 520 (emphasis added) (denying defense summary judgment motion).

Also instructive is the Eleventh Circuit decision in *Roberts,* where three plaintiffs made numerous errors on their copyright registration certificates, including identifying a work as unpublished when it was in fact published. 877 F.3d at 1027. The district court granted summary judgment for the defendants on invalidity grounds, relying in part on a Copyright Office letter that characterized the errors as material to registration. The Eleventh Circuit reversed, holding that the plaintiffs were "skilled in poetry and rhythm—not necessarily in proper copyright procedures." *Id.* at 1030. In finding that the district court erred in holding that there was a "knowing" submission of inaccurate information to the Copyright Office, the Eleventh Circuit invoked numerous fact-intensive considerations that the district court had not taken into proper account. Included was that the defendants had "never proffered any argument or theory as to why Appellants would attempt to deceive the Copyright Office," a deficiency which is equally applicable here. *Id.* at 1030. Despite the fact that the Copyright Office had stated that it "would have refused" the registrations had it known of some of the errors, the Eleventh Circuit held not only that summary judgment for the defendants was inappropriate, but also that the plaintiffs' numerous errors, including as to publication, were "good faith inaccuracies" that

"should not preclude the undisputed authors from copyright protection." *Id.* at 1031.[12] So too here.

## C. Defendants Have Not Met Their Burden To Justify A § 411(b)(2) Referral

17 U.S.C. § 411(b)(2) provides that "[i]n any case in which inaccurate information . . . is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." But a bare allegation fails to invoke that mechanism; as the Seventh Circuit has wisely counseled:

> Given its obvious potential for abuse, we must strongly caution both courts and litigants to be wary of using this device in the future. . . . **[C]ourts can demand that the party seeking invalidation first establish that the other preconditions to invalidity are satisfied before obtaining the Register's advice on materiality**. In other words, a litigant should demonstrate that (1) the registration application included inaccurate information; and (2) the registrant knowingly included the inaccuracy in his submission to the Copyright Office. Aside from minimizing the risk that parties would use this provision as a delay tactic, this approach has the added benefit of an endorsement from the Register.

*DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 625 (7th Cir. 2013) (emphasis added) (citing Response of the Register of Copyrights to Request Pursuant to 17 U.S.C. § 411(b)(2) at 12, *Olem Shoe*, No. 1:099-cv-23494). The Fifth Circuit holds the same. *Energy Intel. Grp. v. Kayne Anderson*, 948 F.3d 261, 277-78 (5th Cir. 2020) (following *DeliverMed Holdings*). In addition, the Middle District of Tennessee has ruled that a referral is not necessary unless "there is an evidentiary basis" for each element under Section 411(b). *Schenck*, 105 F. Supp. 3d at 823. This Court should follow the approach of those authorities by withholding any referral until such time, if ever, as Defendants have first demonstrated fraud on the Copyright Office.

---

[12] Even courts have grave difficulty navigating "the complex jurisprudence relating to 'publication'." Peter S. Menell, *In Search of Copyright's Lost Ark: Interpreting the Right to Distribute in the Internet Age*, 59 J. Copr. Soc'y 201, 233 (2011). And this problem is a longstanding one. *See, e.g.,* Benjamin Kaplan, *Publication in Copyright Law: The Question of Phonograph Records*, 103 U. PA. L. REV. 469, 488-89 (1955) ("The concept of publication has been seriously distorted and now bedevils much of the law of copyright."); Melville B. Nimmer, *Copyright Publication*, 56 COLUM. L. REV. 185, 185 (1956) ("The concept of publication has acquired an importance and complexity in the American law of copyright far greater than in any foreign jurisdiction. It has, indeed, become a legal word of art, denoting a process much more esoteric than is suggested by the lay definition of the term.").

## V. THE BREACH OF CONTRACT CLAIM IS NOT PREEMPTED

Defendants seek dismissal of the breach of contract claim against Brocade (Count One) on the sole basis that it is supposedly preempted by copyright law.[13]  That challenge flies in the face of the general rule that the "vast majority" of breach of contract claims are not preempted by copyright law. *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 458 (6th Cir. 2001).  That general rule applies to Count One for two independent reasons:  First, the Agreement contains an express duty of confidentiality that was breached.  Second, Brocade promised to pay for its use and distribution of the Software.[14]  Binding precedent renders each of these circumstances a separate basis to reject preemption.

Preemption under 17 U.S.C. § 301(a) contains two requirements: a "subject matter requirement" and an "equivalency requirement."  *Wrench*, 256 F.3d at 453.  "The subject matter requirement of Section 301 is satisfied if a work fits within the general subject matter of Sections 102 and 103 of the Copyright Act."  *Stromback v. New Line Cinema*, 384 F.3d 283, 300 (6th Cir. 2004).  Although Plaintiffs will here assume, *arguendo*, that the subject matter requirement is satisfied, failure to satisfy the equivalency requirement dooms Defendants' motion.

**The Extra Element Of A Duty Of Confidentiality.**  Under Sixth Circuit law, "if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display in order to constitute a state-created cause of action, there is no preemption, provided that the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim."  *Wrench*, 256 F.3d at 456.  A claim requiring "proof of a confidential relationship" and breach of that confidential relationship constitutes just such an extra element. *Stromback*, 384 F.3d at 304 (rejecting copyright law preemption of trade secret claim based on breach

---

[13] The parties to the breached Agreement are SNMP International and Brocade.  SNMP International does not own the copyright, but licenses it from the copyright owner, SNMP Research.

[14] SNMP International terminated Brocade's "internal use and redistribution rights," but did not terminate the Agreement itself, which obligates Brocade to pay, post-default, "any amount received" for its unauthorized use.  *See* Cmplt. ¶ 58 & Ex. A § 16.

of confidential relationship). This District has applied *Wrench* and *Stromback* to deny preemption of a breach of contract claim involving unauthorized disclosure of computer software code and "selling the software and derivatives thereof." *Moneygram Payment Sys., v. Enter. Payment Sols.*, LLC, 1:05-CV-172-HSM, 2008 WL 11342576, at *2-3 (E.D. Tenn. Jan. 18, 2008) ("[T]he contract at issue provides an extra element—nondisclosure—which changes the nature of Plaintiff's claim from one of infringement to one of confidentiality.");[15] *see also Gail Green Licensing v. Accord, Inc.,* 2006 WL 2873202, at *6 (N.D. Ill. Oct. 5, 2006) (breach of confidentiality agreement not to disclose copyrighted work was not preempted); *Expediters Int'l v. Direct Line Cargo Mgmt*, 995 F. Supp. 468, 483–84 (D.N.J. 1998) (breach of software license and confidentiality agreement was not preempted). Those are precisely the circumstances in this case.

The Complaint alleges that Brocade has a duty of confidentiality under the Agreement: "[T]he License Agreement expressly forbade, in multiple provisions, the disclosure of Source material including source code[.]" Cmplt. ¶ 39 (quoting multiple provisions). The Complaint further alleges that "Brocade breached the License Agreement by improperly disclosing confidential and Source material to Extreme . . ." *id.* ¶ 71; *see also id.* ¶ 46 ("Brocade nonetheless disclosed Plaintiffs' source code provided under the License Agreement to Extreme . . ."). Under *Wrench, Stromback,* and *Moneygram,* the instant breach of contract claim represents a paradigmatic case of <u>non</u>-preemption.

**The Extra Element Of A "Promise To Pay."** In addition, Sixth Circuit law recognizes a "promise to pay" in a contract as an "extra element" precluding preemption:

> An extra element is required instead of or in addition to the acts of reproduction, performance, distribution, or display, in order to constitute the state-created cause of action [for breach of contract]. <u>This extra element is the promise to pay.</u> This extra element does change the nature of the action so that it is qualitatively different from a copyright infringement claim. <u>The qualitative difference includes the requirement of proof of an</u>

---

[15] The contract in *Moneygram* provided that the defendants "will have no right whatsoever to sell, transfer, assign, or otherwise disclose the Software or any component or derivative thereof to any person or entity other than the [plaintiff]," and the plaintiff alleged that the defendants "breached the above-quoted Agreement by disclosing and selling the software, or derivatives thereof." *Moneygram,* 2008 WL 11342576, *2. The court denied defendants' motion for judgment on the pleadings.

enforceable promise and a breach thereof which requires, *inter alia*, proof of mutual assent and consideration, as well as proof of the value of the work and appellee's use thereof.

*Wrench*, 256 F.3d at 456 (emphasis added); *see also Lynn v. Sure-Fire Music Co., Inc.*, 237 Fed. App'x 49, 54 (6th Cir. 2007) ("Lynn must prove the formation and breach of an enforceable written contract which she would not be obligated to prove if these claims were merely for copyright infringement"); *Ross, Brovins & Oehmke, v. Lexis/Nexis*, 348 F. Supp. 2d 845, 862 (E.D. Mich. 2004) (no preemption of software developer's breach of contract claim over contractual counter-party's use and exploitation of software without payment). The Agreement includes just such "a promise to pay." Indeed, the facts here are even stronger than in *Wrench,* because here the promise to pay is not just "implied in fact," it is expressly set forth in the contract and encompasses not only a promise to pay for authorized use or distribution but also to pay for unauthorized use or distribution. Agreement (Cmplt. Ex. A) § 24 (payment for authorized use); *id.* § 16 ("In the event of unauthorized use or distribution of the Licensed Modules or Derivative Works, SNMP shall have the right in addition to its other remedies to recover from Licensee an amount not less than the sum that SNMP would have charged the person or persons obtaining the benefit of such unauthorized use of the Licensed Modules or Derivative Works plus any amount received by Licensee on account of such unauthorized use.") (emphasis added); Cmplt. ¶ 71 (asserting breach of Agreement § 16). Again, *Wrench* renders the breach of contract claim a classic instance of non-preemption.

Finally, "given the Sixth Circuit's instruction that the preemption analysis is necessarily a fact-based inquiry," *Brittney Gobble Photography v. Wenn Ltd.*, No. 3:16-cv-306-HSM, 2017 WL 10188859, * 12-13 (E.D. Tenn. Sept. 5, 2017) (denying motion to dismiss), this Court should reserve judgment on preemption until the facts in this case have been developed.

For the reasons specified above, Plaintiffs request that Defendants' motion be denied.

Respectfully submitted,


Dated:  January 26, 2021          By: /s/ John L. Wood
                                  John L. Wood, Esq. (BPR #027642)
                                  Cheryl G. Rice, Esq. (BPR #021145)
                                  Rameen J. Nasrollahi, Esq. (BPR #033458)
                                  EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
                                  900 S. Gay Street, Suite 1400
                                  P.O. Box 2047
                                  Knoxville, TN 37902
                                  (865) 546-0500 (phone)
                                  (865) 525-5293 (facsimile)
                                  jwood@emlaw.com
                                  crice@emlaw.com
                                  rnasrollahi@emlaw.com


Dated:  January 26, 2021          By: /s/ A. Matthew Ashley
                                  A. Matthew Ashley (CA Bar. No. 198235)
                                  Morgan Chu (CA Bar. No. 70446)
                                  David Nimmer (CA Bar. No. 97170)
                                  Olivia L. Weber (CA Bar. No. 319918)
                                  IRELL & MANELLA LLP
                                  1800 Avenue of the Stars, Suite 900
                                  Los Angeles, California 90067-4276
                                  (310) 277-1010 (phone)
                                  (310) 203-7199 (facsimile)
                                  mchu@irell.com
                                  dnimmer@irell.com
                                  mashley@irell.com
                                  oweber@irell.com

                                  *Attorneys for Plaintiffs*
                                  *SNMP Research International, Inc.*
                                  *SNMP Research, Inc.*