# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC.,** | § § § | **Case No. 3:20-cv-00451** |
| **Plaintiffs,** | § § § | |
| **v.** | § | <u>**Jury Demand**</u> |
| | § | |
| **BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; AND EXTREME NETWORKS, INC.** | § § § § | |
| **Defendants.** | § § § | |

---

**PLAINTIFFS' OPPOSITION TO DEFENDANT EXTREME NETWORKS, INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT OR, ALTERNATIVELY, TO TRANSFER VENUE**

---

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .............................................................................................. 1

II.   FACTS ............................................................................................................... 3

    A.     Plaintiffs And The Software At Issue In This Case.................................... 3

    B.     The Agreement ........................................................................................... 3

    C.     Brocade's Breach And Defendants' Copyright Infringement ..................... 4

    D.     Extreme's Admission Of Infringement And Broadcom's Attempt To Broker A New License To Replace The Breached Agreement ............................... 5

III.   VENUE IS PROPER IN THIS DISTRICT ........................................................ 6

    A.     Venue Is Proper As To Each Defendant.................................................... 7

    B.     Even If This Court Lacked Jurisdiction Over Broadcom (And It Does Not), Venue Is Still Proper As To Brocade And Extreme .................................... 8

    C.     In The Alternative, Plaintiffs Request Leave To Amend After Discovery, And Only If That Fails, Dismissal Of Broadcom Without Prejudice ......................... 9

IV.   DEFENDANTS HAVE NOT SATISFIED THEIR HEAVY BURDEN TO JUSTIFY TRANSFER ON CONVENIENCE GROUNDS ................................ 10

    A.     Legal Standard........................................................................................ 11

    B.     Defendants Have Not Met Their Burden To Justify Transfer ................... 12

        1.     The Convenience Of The Parties ................................................. 13

        2.     The Convenience Of The Witnesses ........................................... 16

        3.     The Accessibility Of Evidence .................................................... 19

        4.     Availability Of Process To Compel Attendance Of Unwilling Witnesses ................................................................................... 20

        5.     Cost Of Obtaining Willing Witnesses .......................................... 21

        6.     Practical Problems Associated With Trying The Case Most Expeditiously And Inexpensively .............................................. 22

        7.     Interests Of Justice...................................................................... 22

V.    CONCLUSION................................................................................................. 23

# TABLE OF AUTHORITIES

**Cases**  **Page(s)**

*Atlantic Marine Constr. Co. v. U.S. Dist. Court for Western Dist. of Tex.*,
 571 U.S. 49 (2013) ........................................................................................... *passim*

*Avery Dennison Corp. v. Alien Tech. Corp.*,
 632 F. Supp. 2d 700 (N.D. Ohio 2008) ................................................................. 15

*Bridgeport Music, Inc. v. Agarita Music, Inc.*,
 182 F. Supp. 2d 653 (M.D. Tenn. 2002) ................................................................. 6

*CapitalPlus Eq., LLC v. Espinosa Group, Inc.*,
 No. 3:18-CV-00010, 2018 WL 11241973 (E.D. Tenn. Aug. 2, 2018) ..................... 12

*Corden v. Lloyd, Gerstner & Partners, LLC*,
 No. 3:14-CV-103-PLR, 2015 WL 13264202 (E.D. Tenn. May 5, 2015) ............ 14, 15

*DBS Corp. v. Reid Cons.Co., Inc.*,
 1:10-CV-154-SKL, 2010 WL 3806415 (E.D. Tenn. Sept. 23, 2010) ..................... 12

*Domino's Pizza PMC v. Caribbean Rhino, Inc.*,
 453 F. Supp. 2d 998 (E.D. Mich. 2006) ................................................................. 12

*Duha v. Agrium, Inc.*,
 448 F.3d 867 (6th Cir. 2006) ................................................................................. 21

*Eight Mile Style, LLC v. Spotify USA Inc.*,
 No. 3:19-CV-0736-AAT, 2020 WL 1640425 (M.D. Tenn. Apr. 2, 2020) ............... 6

*Ford v. Syneron, Inc.*,
 No. 2:08-CV-272, 2009 WL 10674885 (E.D. Tenn. Feb. 19, 2009) ..................... 22

*Hamm v. Wyndham Resort Dev. Corp*,
 No. 3:19-CV-00426, 2020 WL 5995050 (M.D. Tenn. Oct. 9, 2020) ...................... 7

*Hoffman v. Blaski*,
 363 U.S. 335 (1960) ............................................................................................. 11

*Invisible Fence, Inc. v. Fido's Fences, Inc.*,
 687 F. Supp. 2d 726 (E.D. Tenn. 2009) ........................................... 16, 18, 20, 21

*J-Channel Indus. Corp. v. Home Depot USA, Inc.*,
 No. 3:13-CV-606-JRG, 2014 WL 12780317 (E.D. Tenn. May 30, 2014) ....... 2, 12, 15, 20

*J4 Promotions, Inc. v. Splash Dogs, LLC*,
 08 CV 977, 2009 WL 385611 (N.D. Ohio Feb. 13, 2009) .................................... 23

*KANL, LLC v. Savage Sports Corp.*,
No. 3:13-CV-265-TAV, 2014 WL 1745443 (E.D. Tenn. Apr. 30, 2014) ........................12, 17

*King v. Taylor*,
694 F.3d 650 (6th Cir. 2012) ..................................................................7

*Lea v. Warren County*,
16-5329, 2017 WL 4216584 (6th Cir. May 4, 2017)........................................8, 9

*Maberry v. Nuclear Fuel Servs., Inc.*,
No. 3:13-CV-499-TAV, 2013 WL 5560318 (E.D. Tenn. Oct. 7, 2013)..........................14, 15

*Malone v. Stanley Black & Decker*,
965 F.3d 499 (6th Cir. 2020) ..................................................................9

*McKee Foods Kingman v. Kellogg Co.*,
474 F. Supp. 2d 934 (E.D. Tenn. 2006)........................................................11, 12

*Means v. U.S. Conf. of Catholic Bishops*,
836 F.3d 643 (6th Cir. 2016) ..................................................................11

*Moses v. Business Card Express, Inc.*,
929 F.2d 1131 (6th Cir. 1991) ................................................................12, 18, 21

*Overland, Inc. v. Taylor*,
79 F. Supp. 2d 809 (E.D. Mich. 2000)..........................................................8, 9

*Palnik v. Westlake Ent.*,
344 Fed. App'x 249 (6th Cir. 2009) ............................................................9

*Sec. Watch, Inc. v. Sentinel Sys., Inc.*,
176 F.3d 369 (6th Cir. 1999) ..................................................................7

*Shaibi*,
2020 WL 1539936 (W.D. Ky. Mar. 31, 2020) ..................................................22, 23

*Stone Surgical, LLC v. Stryker Corp.*,
858 F.3d 383 (6th Cir. 2017) ..................................................................7

*Union Planters Bank, N.A. v. EMC Mortg. Corp.*,
67 F. Supp. 2d 915 (W.D. Tenn. 1999)..........................................................8

*Wilson v. 5 Choices, LLC*,
776 Fed. Appx. 320 (6th Cir. 2019)............................................................23

**Page(s)**

**Statutes**

17 U.S.C. § 507(b) ..................................................................................................10

28 U.S.C. § 1391(b)(2) ..............................................................................................9

28 U.S.C. § 1400(a) ...........................................................................................1, 6, 9

28 U.S.C. § 1404 .....................................................................................................11

28 U.S.C. § 1404(a) .................................................................................1, 10, 12, 23

28 U.S.C. § 1406 .......................................................................................................1

-iv-

NOW COME Plaintiffs SNMP Research, Inc. ("SNMP Research") and SNMP Research International, Inc. ("SNMP International") (collectively, "Plaintiffs") who submit the following Memorandum of Law in Opposition to Defendant Extreme Networks, Inc.'s ("Extreme") Motion to Dismiss or, in the Alternative, to Transfer to the Northern District of California. Dkt. 39 ("Motion" or "Mot."). Defendants Broadcom Inc. ("Broadcom") and Brocade Communications Systems LLC ("Brocade") have joined in Extreme's Motion, *see* Dkt. 40-1, and are referred to herein collectively with Extreme as "Defendants."

## I.      INTRODUCTION

Each Plaintiff is a longstanding Tennessee entity with principal operations in the greater Knoxville, Tennessee area. This case centers around a license agreement between Brocade and SNMP International dated March 10, 2001, as amended ("Agreement").[1] Although the Motion never even mentions it, the Agreement contains a mandatory forum selection clause providing for exclusive jurisdiction and venue in this District for disputes arising out of or relating to the Agreement. Defendants ask this Court to dismiss this case or transfer it to the Northern District of California on the purported grounds that this District is an "improper" venue under 28 U.S.C. § 1406 and an "inconvenient" forum under 28 U.S.C. § 1404(a). This District is neither improper nor inconvenient, and the Court should deny the Motion in its entirety.

This District Is A Proper Venue. All parties agree that the governing venue statute for this case is 28 U.S.C. § 1400(a). Under Section 1400(a), in any action asserting copyright infringement (which is asserted against every Defendant), if there is personal jurisdiction over a defendant, then venue is proper as to that defendant. Here, neither Brocade nor Extreme challenges personal jurisdiction. Consequently, as a matter of law, venue is proper as to both of them under the copyright venue statute.

---

[1] An under seal copy of the Agreement is of record in this matter attached as Exhibit A to the Complaint. Dkt. 1 ("Cmplt."), Ex. A.

.

Brocade and Extreme do not argue otherwise. Instead, they rely on Broadcom's argument (in another motion to dismiss filed by Broadcom and Brocade the same day as the Motion) that personal jurisdiction is allegedly lacking as to Broadcom. However, as demonstrated in Plaintiffs' opposition to that motion (filed concurrently with this opposition brief), Broadcom's personal jurisdiction argument fails. As a result, venue is proper as to each Defendant. Moreover, even if this Court were to find that it has no personal jurisdiction over Broadcom, Defendants are incorrect when they contend that such lack of personal jurisdiction over Broadcom would somehow render venue "improper" with respect to Extreme and Brocade. It does not. Instead, if after discovery this Court were to find lack of personal jurisdiction (and thus venue) as to Broadcom, then the proper result would be to dismiss the claims against Broadcom without prejudice, not to ship this entire case to California where it clearly does not belong and which would undermine SNMP International's bargained-for right to have disputes relating to the Agreement decided in this District.

 <u>This District Is Not An "Inconvenient" Venue</u>. As this Court has held in the very authority the Motion cites for the governing standard, Plaintiffs' choice of forum is to be given great deference and substantial weight, and "[u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *J-Channel Indus. Corp. v. Home Depot USA, Inc.*, No. 3:13-CV-606-JRG, 2014 WL 12780317, at *2 (E.D. Tenn. May 30, 2014) (emphasis added). To satisfy their burden of showing a significant balance of hardships in their favor, Defendants must adduce evidence—not rhetoric simply mimicking the language of the factors—satisfying the convenience factors. Defendants have not done so. Indeed, although it is not Plaintiffs' burden to prove convenience, Plaintiffs demonstrate that, if anything, the convenience factors strongly favor this District. In addition to this District being the mandatory forum set forth in the Agreement on which this case centers, it is also the location of significant evidence and where the most significant witness in this case—Dr. Jeffrey Case, the owner of Plaintiffs—resides. Unlike Defendants, who simply list witnesses

without identifying why they are purportedly important or how they or Defendants will purportedly be harmed by coming to trial in this District, Dr. Case has submitted a declaration explaining the significant burden that would be imposed by leaving his small businesses for a trial in California, which all parties have estimated will take three weeks. *See* Dkt. 46 at 5. Dr. Case's absence would pose a substantial risk of harm to Plaintiffs, who are local businesses rather than billion dollar public companies like Defendants.

For all of these reasons and those discussed below, the Motion should be denied.

## II. FACTS

### A. Plaintiffs And The Software At Issue In This Case

Plaintiffs SNMP Research and SNMP International are Tennessee corporations formed in Tennessee in 1990 and 1994, respectively. Declaration of Dr. Jeffrey Case concurrently filed in support of Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Case Decl.") ¶¶ 2-3; Cmplt. ¶¶ 18-19. Both have made their primary offices and principal places of business in Knox County, Tennessee since they were formed. Case Decl. ¶¶ 5, 11-12. All employees of SNMP Research and SNMP International reside in the greater Knoxville area, as does Dr. Case, the President and owner of both entities. *Id.* ¶ 7. Plaintiffs own, develop, market, license and provide support for their software and related products that are integral to the monitoring of networking equipment such as switches and routers. *Id.* ¶ 11; Cmplt. ¶ 4. Plaintiffs' software and related documents are located in Knox County, Knoxville, Tennessee. Case Decl. ¶ 12.

### B. The Agreement

This case centers around the Agreement between Brocade and SNMP International. The Agreement authorized Brocade's limited use of portions of SNMP Research's copyrighted software[2]

---

[2] SNMP Research registered the copyrights for the software at issue in this case in 2011. *See* Cmplt. Ex. B (Dkt. 1-6).

.

and included terms setting forth how Brocade could internally use the copyrighted software and source code, as well as limitations for how the software could be reproduced or transferred externally. *See, e.g.*, Agreement §§ 3, 8, 24; Cmplt. ¶ 39. The Agreement also contained express confidentiality provisions and limitations with respect to, among other things, the human-readable "source code" that makes up the licensed software and, in pertinent part, expressly forbade Brocade from transferring or disclosing "Source" materials to any third party, which include source code and related matter. Agreement §§ 3, 24 & Amendment 3 §§ 4, 6; Cmplt. ¶ 39.

The Agreement contains a mandatory forum selection clause which reads in pertinent part:

> For actions arising out of or related to the subject matter of this Agreement, as amended, the parties hereby agree to be subject to sole and exclusive jurisdiction and venue lying in the State and Federal courts in Knox County, Tennessee, U.S.A.[.]

Agreement Amendment 3 § 13.

### C. Brocade's Breach And Defendants' Copyright Infringement

Brocade knowingly breached the Agreement by disclosing Plaintiffs' source code to Extreme. Cmplt. ¶¶ 44-46. Extreme has since continued to incorporate Plaintiffs' software into numerous products, including newly-developed products developed post-disclosure, that it sells in the marketplace without the consent of SNMP International. *Id.* ¶¶ 47-50. Despite the termination of its internal use and distribution rights under the Agreement,[3] Brocade has also continued to incorporate Plaintiffs' software into numerous products it sells in the marketplace, including newly-developed products developed post-termination, without the consent of SNMP International. *Id.* ¶¶ 62-64.

Broadcom wholly owns Brocade and shares in the profits that Brocade has derived and is deriving from its infringing activities. *Id.* ¶¶ 65-67. This renders Broadcom liable for Brocade's

---

[3] Plaintiffs did not terminate the Agreement They terminated Brocade's internal use and distribution rights under it (Cmplt. ¶ 58), thereby triggering several rights under the Agreement, including but not limited to the express right to compensation for the unauthorized use and distribution. Agreement § 16(a)(ii).

.

infringement based on copyright law's "practical partner" doctrine. *Id.* ¶ 67. Broadcom and Brocade submitted the declaration of Mark Brazeal (Dkt. 42-1), Broadcom's Chief Legal Officer, in support of their Joint Motion to Dismiss Plaintiffs' Complaint, or Alternatively, to Transfer Venue." (Dkt. 42, "Broadcom Mot."). In his declaration, Mr. Brazeal does not dispute that Brocade is distributing the allegedly infringing products identified in the Complaint or that those products contain Plaintiffs' software or derivative works thereof. *Compare* Cmplt. ¶ 63, *with* Brazeal Decl. Mr. Brazeal also does not dispute that Broadcom wholly owns Brocade and has shared, and continues to share, in the profits Brocade derives from those distributions. *Compare* Cmplt. ¶¶ 65-67, *with* Brazeal Decl. He also does not dispute that, in light of these circumstances, Broadcom constitutes a practical partner of Brocade. *Compare* Cmplt. ¶¶ 65-67, *with* Brazeal Decl.[4]

### D. Extreme's Admission Of Infringement And Broadcom's Attempt To Broker A New License To Replace The Breached Agreement

On April 18, 2018, Plaintiffs wrote to Extreme and stated that:

> [t]he license between Brocade and SNMP Research is not assignable without SNMP Research's consent and SNMP Research has not provided that consent. If Extreme is using or distributing SNMP Research software it obtained from Brocade then it is doing so without a license. I would be glad to have a call at your earliest convenience to understand how Extreme is using the SNMP Research software so I can discuss an assignment with my client.

Case Decl. ¶ 24; Ex. A thereto (April 18, 2018 Wood-Sipes email). On that same day, Extreme responded that "Extreme is using the software the same way Brocade used it for its Data Center business." Case Decl. ¶ 25; Ex. B (April 18, 2018 Sipes-Wood email) thereto. There is thus no dispute that Extreme has infringed (and is continuing to infringe) SNMP Research's copyrights in the software at issue. Extreme also confirmed that, despite the fact that Extreme was now using Plaintiffs' software, Brocade was still using Plaintiffs' software too. Case Decl. ¶ 26; Ex. C (Sept. 18, 2018 Wood-Sipes

---

[4] When "brocade.com" is typed into the Google search engine's website address bar, it leads to a page redirecting to the website address "broadcom.com". Declaration of A. Matthew Ashley concurrently-filed in support of Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Ashley Decl.") ¶ 5.

email) ("Thanks for speaking with me yesterday. You confirmed on our call that Brocade is still using the SNMP Research software in some of the Brocade products."). Around that time, Extreme and Broadcom began communicating with SNMP International to try to "manage the SNMP license," which was a reference to the Agreement. Case Decl. ¶ 28; Ex. D.

SNMP International ultimately terminated Brocade's internal use and distribution rights under the Agreement after Brocade refused to cure its breach. Cmplt. ¶¶ 58-61. Despite SNMP International's demand that Brocade return all copies of Plaintiffs' product as Brocade was required to do under the terms of the Agreement, Brocade has refused to do so; instead, it has continued to sell products containing Plaintiffs' software, including newly-created Brocade products . Cmplt. ¶¶ 13, 51-64, 71, 73.

## III.    VENUE IS PROPER IN THIS DISTRICT

Under the copyright venue statute, venue is appropriate anywhere that there is personal jurisdiction. 28 U.S.C. § 1400(a); *Eight Mile Style, LLC v. Spotify USA Inc.*, No. 3:19-CV-0736-AAT, 2020 WL 1640425, at *8 (M.D. Tenn. Apr. 2, 2020) ("The court's analysis of personal jurisdiction is [] determinative under § 1400(a)"). Defendants agree that this is the governing standard. *See* Broadcom Mot. at 2 ("When a plaintiff asserts a cause of action for copyright infringement, venue is determined under 28 U.S.C. § 1400(a). . . . It is 'widely accepted that, for the purposes of this venue provision, a defendant is found wherever personal jurisdiction can be properly asserted against it.'") (quoting *Bridgeport Music, Inc. v. Agarita Music, Inc.*, 182 F. Supp. 2d 653, 659 (M.D. Tenn. 2002)).

As demonstrated below, this standard is satisfied as to each Defendant, and neither Brocade nor Extreme contests personal jurisdiction. Instead, Defendants argue that because jurisdiction (and thus venue) is allegedly lacking as to Broadcom, then venue is purportedly "improper" as to Brocade and Extreme, and the case therefore should be dismissed or transferred to California. However, Broadcom's jurisdictional challenge is meritless, and once it is dispensed with, there are no challenges

.

at all to the propriety of venue in this Court.  Moreover, even if jurisdiction (and thus) venue were

lacking as to Broadcom, that would not render venue "improper" as to Brocade or Extreme, nor would

it justify transferring Plaintiffs' case against Brocade or Extreme to California.

A.     **Venue Is Proper As To Each Defendant**

Brocade.  Venue is proper as to Brocade for two reasons.  First, Brocade has not challenged the

personal jurisdiction of this Court and therefore concedes it.  *Hamm v. Wyndham Resort Dev. Corp*,

No. 3:19-CV-00426, 2020 WL 5995050, at *3 (M.D. Tenn. Oct. 9, 2020) (a defendant who fails to

raise lack of personal jurisdiction in a Rule 12 motion "forever 'waives'" that defense) (quoting *King v.*

*Taylor*, 694 F.3d 650, 656 (6th Cir. 2012)).  Given this concession, venue is proper in this Court under

the copyright venue statute, which turns solely on the presence of personal jurisdiction.  Second, the

Agreement between Brocade and plaintiff SNMP International contains a mandatory forum selection

clause:

> For actions arising out of or related to the subject matter of this Agreement, as amended,
> the parties hereby agree to be subject to sole and exclusive jurisdiction and venue lying in
> the State and Federal courts in Knox County, Tennessee, U.S.A.[.]

Agreement Amendment 3, § 13.[5]  This mandatory forum selection clause constitutes a waiver of any

potential challenge by Brocade to personal jurisdiction; and given that venue here hinges on personal

jurisdiction, Brocade has thus waived the right to challenge venue.  *See Stone Surgical, LLC v. Stryker*

*Corp.*, 858 F.3d 383, 388 (6th Cir. 2017) (mandatory forum selection clause waives any challenge to

personal jurisdiction).

Extreme.  Venue is also proper as to Extreme.  Like Brocade, Extreme has not challenged the

personal jurisdiction of this Court and therefore concedes it.  Venue as to Extreme is thus proper under

---

[5] Courts have interpreted the language "arising out of or related to the agreement" broadly.  *See, e.g.*,
*Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 372 (6th Cir. 1999) ("arising out of or relating to"
is a "provision [] very broad in scope.").  Here, the dispute not only arises out of or relates to the
Agreement; the Agreement is the centerpiece of this dispute.  *See, e.g.*, Cmplt. ¶¶ 41-63.

.

the copyright venue statute.

Broadcom.  Unlike Extreme and Brocade, who concede personal jurisdiction (and thus proper venue as to them), Broadcom challenges personal jurisdiction.  Broadcom's jurisdictional challenge, however, is meritless.  This is demonstrated in Plaintiffs' concurrently-filed Opposition to Broadcom and Brocade's Motion ("Opp. To Broadcom Mot.").  Once Broadcom's jurisdictional challenge is rejected, as it should be, then venue in this Court is, by definition, proper as to Broadcom.

And given that Brocade and Extreme's only challenge to the propriety of venue is that "the Eastern District of Tennessee is an improper venue owing to the lack of personal jurisdiction over Defendant Broadcom" (Mot. at 3 (emphasis added)), once Broadcom's jurisdictional challenge is rejected, all Defendants' "improper" venue challenges fail as well.

**B.      Even If This Court Lacked Jurisdiction Over Broadcom (And It Does Not), Venue Is Still Proper As To Brocade And Extreme**

According to Defendants, if personal jurisdiction as to Broadcom is lacking, that somehow renders venue as to Extreme and Brocade "improper."  *See* Broadcom Mot. at 13.  Defendants are incorrect.

None of the authority Defendants cite holds that venue which is statutorily proper as to a defendant under the copyright venue statute (as is indisputably the case here with respect to Brocade and Extreme) somehow becomes "improper" just because jurisdiction or venue is allegedly lacking as to a different defendant.  *See* Broadcom Mot. at 13.  Indeed, the law is directly contrary to Defendants' assertion.  *See, e.g.*, *Union Planters Bank, N.A. v. EMC Mortg. Corp.*, 67 F. Supp. 2d 915, 920 n.10 (W.D. Tenn. 1999) ("A defendant . . . cannot object to venue concerning a co-defendant") (citations omitted).  Instead, the cases Defendants cite stand for the unremarkable proposition that, if a plaintiff sues a group of defendants but venue is improper as to one of them, then the court will not be able to maintain the case against the defendant for whom venue is improper.  *See Overland, Inc. v. Taylor*, 79 F. Supp. 2d 809, 811 (E.D. Mich. 2000); *Lea v. Warren County*, 16-5329, 2017 WL 4216584, at *2

(6th Cir. May 4, 2017). However, that is <u>not</u> the same as saying that lack of jurisdiction (and thus venue) as to one defendant somehow renders venue improper for any other defendant.[6]

### C. In The Alternative, Plaintiffs Request Leave To Amend After Discovery, And Only If That Fails, Dismissal Of Broadcom Without Prejudice

If the Court concludes on the current record that it lacks jurisdiction over Broadcom, Plaintiffs respectfully request leave to amend to add jurisdictional allegations after receiving substantive responses to pending jurisdictional discovery and potential follow-up discovery. *See Malone v. Stanley Black & Decker*, 965 F.3d 499, 506 (6th Cir. 2020) (jurisdictional discovery warranted where defendant "may very well have made the necessary contacts" but plaintiffs "cannot know that without discovery"); *see also Palnik v. Westlake Ent.*, 344 Fed. App'x 249, 252 (6th Cir. 2009) ("A party and her attorney can, on knowledge, information, and belief, assert specifically that the existence of the necessary distribution relationship will likely have evidentiary support after a reasonable opportunity for discovery . . . such an assertion will be assumed true for the purposes of the party's prima facie case for jurisdiction notwithstanding . . . contrary assertions from the defendant.") (internal quotations and citations omitted). The opportunity for discovery is particularly important in connection with a party like Broadcom that appears to have dozens of entities through which it operates and has been less than forthcoming in disclosing its ownership or operations. *See, e.g.*, Ashley Decl. ¶¶ 2-4.[7] To date,

---

[6] *Lea* applied 28 U.S.C. § 1391(b)(2), a different venue statute (*i.e.*, not the copyright venue statute all parties agree applies here) which looks to "where a substantial part of the events giving rise to the claim occurred or a substantial part of subject property is located." *Lea* held that a dispute over real property belonged in Kentucky because that was where the property and other litigation over it was located, and where most of the defendants resided as well as where the plaintiff himself resided during the relevant time period. 2017 WL 4216584, at *2. *Overland* also applied § 1391(b)(2), transferring a case where none of the events at issue took place in plaintiff's chosen forum and where venue in that forum was improper as to "at least four of the five Defendants" in the case. 79 F. Supp. 2d 809 at 812. Consequently, neither *Overland* nor *Lea* stand for the proposition that <u>statutorily proper venue</u> as to two defendants under 28 U.S.C. § 1400(a) can become "improper" due to alleged lack of venue as to a third defendant.

[7] For instance, even Broadcom's counsel of record has conflated the various Broadcom entities, appearing on behalf of defendant Broadcom (i.e. Broadcom Inc.) but signing pleadings as counsel for "Broadcom Corporation" (which apparently is one of Broadcom's many subsidiaries). Ashley Decl. ¶ 6. It is not clear whether Broadcom Corporation is among the "several layers" cryptically referenced

.

however, Defendants' responses to the jurisdictional discovery propounded on them (indeed all discovery propounded on them) have been entirely objections; no substantive response to a single discovery request has been provided yet by any Defendant. See Ashley Decl. ¶ 12.

After an opportunity at discovery and amendment of the Complaint, if the Court still finds that there is no jurisdiction (and thus venue) as to Broadcom, then the Court should not transfer this case to California where the case simply does not belong. Instead, as a last resort (given that it may lead to future disputes over issues like the statute of limitations),[8] this Court should dismiss Broadcom without prejudice. That would eliminate any issue over allegedly improper jurisdiction/venue as to Broadcom in a case where neither jurisdiction nor venue is challenged by the remaining defendants and where the pivotal contract at issue in the case expressly calls for adjudication to take place in this District.

## IV. DEFENDANTS HAVE NOT SATISFIED THEIR HEAVY BURDEN TO JUSTIFY TRANSFER ON CONVENIENCE GROUNDS

Defendants have also moved to transfer venue under 28 U.S.C. § 1404(a). In the Motion, Defendants contend that litigating against Plaintiffs in this Court would be "inconvenient" for them. However, as demonstrated above, the Agreement on which this case centers contains a forum selection clause mandating jurisdiction and venue solely in this District. Thus, Brocade has "waive[d] the right to challenge the preselected forum as inconvenient or less convenient for [itself] or [its] witnesses, or for [its] pursuit of the litigation." *Atl. Marine Const. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 64 (2013) (citations omitted); *see also id.* ("As a consequence, a district court may consider arguments about public-interest factors only. Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases."). The Court should

_____

in Mr. Brazeal's declaration.

[8] The Complaint contains assertions dating back to 2017 and the Copyright Act has a three year statute of limitations 17 U.S.C. § 507(b). Consequently, a dismissal could lead to an unnecessary dispute over its purported effect on the statute of limitations.

.

"hold[] the parties to their bargain." *Id.* at 66 (emphasis added).

Broadcom and Extreme have also <u>both</u> entered into contracts with plaintiff SNMP International with respect to software wherein Broadcom and Extreme agreed that this District would be the sole and exclusive jurisdiction to resolve disputes between them and SNMP International arising out of or relating to those contracts. *See* Case Decl. ¶¶ 30-32 & Exs. H-J. To be clear, Plaintiffs have not sued Broadcom and Extreme for breach of those contracts. Consequently, Plaintiffs do not contend that the mandatory forum selection clauses in those contracts bind Broadcom and Extreme in this case in the same way that the Agreement's forum selection clause binds Brocade. Nevertheless, it is incongruous (to put it mildly) that while Extreme and Broadcom bemoan the purported "inconvenience" of litigating against SNMP International in this District, they have meanwhile promised SNMP International to do just that in other contracts with SNMP International. Presumably, when making those binding contractual promises, Broadcom and Extreme analyzed the purported "inconveniences" to them and decided that doing business with SNMP International was worth it. *See Atlantic Marine,* 571 U.S. at 64 ("[W]hatever 'inconvenience' [the parties] would suffer by being forced to litigate in the contractual forum as [they] agreed to do was clearly foreseeable at the time of contracting.") (citations omitted).

In any event, even putting aside the fact that every Defendant in this case has contractually agreed with SNMP International to exclusively resolve disputes in this District, Defendants have not come close to meeting their heavy burden of justifying a change in venue under Section 1404.

### A. Legal Standard

The party moving to transfer venue pursuant to 28 U.S.C. § 1404 bears the burden of demonstrating why a change of venue should be granted. *Means v. U.S. Conf. of Catholic Bishops*, 836 F.3d 643, 652 n.7 (6th Cir. 2016). This burden is "significant" and a plaintiff's choice of forum will only be disturbed if "the defendant makes substantial showings of convenience and justice." *McKee Foods Kingman v. Kellogg Co.*, 474 F. Supp. 2d 934, 936 (E.D. Tenn. 2006) (citing *Hoffman v. Blaski,*

.

363 U.S. 335, 365–66 (1960)).

A transfer is not appropriate where the result is to "merely shift inconvenience between the parties." *McKee Foods Kingman*, 474 F. Supp. 2d at 942. Moreover, the Plaintiff's choice of forum is to be given deference and substantial weight, *KANL, LLC v. Savage Sports Corp.*, No. 3:13-CV-265-TAV, 2014 WL 1745443, at *4 (E.D. Tenn. Apr. 30, 2014), and "[u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *J-Channel Indus.*, 2014 WL 12780317, at *2 (emphasis added). This is particularly true when the plaintiff is a forum resident. *DBS Corp. v. Reid Cons.Co., Inc.*, 1:10-CV-154-SKL, 2010 WL 3806415, at *4 (E.D. Tenn. Sept. 23, 2010) ("Deference to the plaintiff's choice of forum is highest where, as here, the plaintiff resides in the chosen district."). In addition, a forum selection clause is given "controlling weight in all but the most exceptional cases." *Atlantic Marine*, 571 U.S. at 63.

In addition to giving great weight to the plaintiff's choice of forum, courts generally consider the private interests of litigants and the public's interest in the administration of justice. "Within the Sixth Circuit, district courts generally consider the following factors:

> (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the accessibility of evidence; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practice problems associated with trying the case most expeditiously and inexpensively; and (7) the interests of justice.

*J-Channel Industries,* 2014 WL 12780317, at *2 (citing *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1136-37 (6th Cir. 1991)). Plaintiffs address each of these factors below.

### B.     Defendants Have Not Met Their Burden To Justify Transfer

Before turning to the convenience factors, the first requirement of the Section 1404(a) analysis is that the Court must determine whether the action might have been brought in the transferee district. *CapitalPlus Eq., LLC v. Espinosa Group, Inc.*, No. 3:18-CV-00010, 2018 WL 11241973, at *3 (E.D. Tenn. Aug. 2, 2018) ("The threshold consideration is whether the action is one that could have

originally been brought in the proposed transferee district court."). Defendants bear the burden of proof on this issue. *Domino's Pizza PMC v. Caribbean Rhino, Inc.*, 453 F. Supp. 2d 998, 1008 (E.D. Mich. 2006) (denying 1404(a) motion where defendants failed to show that case might have been brought in the transferee district). While Defendant Extreme admits that it "is subject to jurisdiction" in the Northern District of California, *see* Mot. at 4; *see also* Dkt. 38-1 ("Lam Decl.") ¶ 3, Broadcom and Brocade are conspicuously silent (despite their joinder in the Motion) and instead have Extreme express what it purportedly "understands" on that straightforward issue. Mot. at 4; *see* Broadcom Mot. at 15. If it is Brocade and/or Broadcom's intent to secure a transfer of this case to the Northern District of California while attempting to preserve the ability to argue to that court that this suit cannot be brought there either (because of the Agreement's forum selection clause mandating that suit be brought here, or otherwise), this Court should not permit it.

As for the convenience factors themselves, Defendants have offered conclusory legal argument and three skeletal declarations that, at best, show that it would be more "convenient" for Defendants themselves to proceed in the Northern District of California than in this District. That does not come close to satisfying Defendants' burden to disturb Plaintiffs' choice to file in this District, where Plaintiffs reside, where the key witness in this case resides, where much of the evidence in this case is extant, and where the key Agreement in the case states that disputes arising out of or related to it shall be decided.

### 1.     The Convenience Of The Parties

Brocade submits the declaration of John Rondoni (Dkt. 40-4, "Rondoni Decl."), which states that "Brocade has its headquarters in San Jose, California. It would therefore be far more convenient for Brocade to litigate this matter in the Northern District of California." Rondoni Decl. ¶ 2. However, as noted above, Brocade "waive[d] the right to challenge the preselected forum as inconvenient or less convenient for [itself] or [its] witnesses, or for [its] pursuit of the litigation." *Atlantic Marine*, 571 U.S.

at 64 (citations omitted).  As the Supreme Court has held, "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or their pursuit of the litigation.  <u>A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum</u>."  *Id.* (emphasis added).  Consequently, Brocade's claim that it or its witnesses would be inconvenienced by remaining in this District is entitled to zero weight, as is the case with every other private interest factor in the equation (the rest of which are discussed in the sections below).

The proffers by Broadcom and Extreme fare no better.  Broadcom offers the declaration of Mark Brazeal (its Chief Legal Officer), but that declaration does not contain any evidence that litigating in this District would be inconvenient for Broadcom, which obviously has enormous resources to defend itself in virtually any court.  Extreme offers the declaration of Peter Lam (its Senior Director of Intellectual Property), but that declaration does not contain any evidence that litigating in this District would be inconvenient for Extreme.  *See* Dkt. 38-1 ("Lam Decl.") ¶¶ 1-7.  Instead, Mr. Lam just gives a list of "certain individuals who I understand had some involvement in events or communications discussed" in the Complaint and "therefore <u>may have</u> information and/or documents relevant to the litigation of this matter," (emphasis added) and asserts they <u>might</u> reside in California. *Id.* ¶ 6. Witnesses living outside a judicial district is commonplace in any large, complex case, and it does not demonstrate any inconvenience to Extreme—certainly not sufficient to disrupt Plaintiffs' choice of forum.

Defendants argue that (i) they would have to fly 2,000 miles to get to this District from California, (ii) "[t]he only countervailing consideration is that Plaintiffs prefer this venue because they are located here," and (iii) "the fact that the conduct pertinent to the claims occurred in California, not in this District, militates against the weight that otherwise would be accorded to that choice of forum." Mot. at 7 (citing *Corden v. Lloyd, Gerstner & Partners, LLC*, No. 3:14-CV-103-PLR, 2015 WL

.

13264202, at *3 (E.D. Tenn. May 5, 2015), and *Maberry v. Nuclear Fuel Servs., Inc.*, No. 3:13-CV-499-TAV, 2013 WL 5560318, at *2 (E.D. Tenn. Oct. 7, 2013)). None of these arguments has any merit.

First, Plaintiffs' "preference" for this forum—which as demonstrated above is entitled to great weight—is not the "only countervailing consideration." Among other things, the contract upon which this case is centered has a mandatory forum selection clause favoring this District, which is precisely the opposite situation from the case law that Defendants cite. *See Cordon*, 2015 WL 13264202, at *4 ("The Agreement at issue . . . does not contain a Tennessee choice of forum provision").[9] Moreover, Plaintiffs and the key witness in this case will be severely inconvenienced if this case is transferred to California, as demonstrated in more detail below and the sections that follow.

Second, the "conduct pertinent to the claims" (Mot. at 7) did not just occur in California. For one thing, <u>as no Defendant denies</u>, the alleged acts of infringement occurred at least in part in this District. *See J-Channel*, 2014 WL 12780317, at *3 (denying transfer in part because "plaintiff alleges that some of the offending conduct, *i.e.*, the infringement, occurred in this district.").[10] In addition, infringement is not the only issue in this case. Tennessee is where the intellectual property at issue in this case was developed. *Avery Dennison Corp. v. Alien Tech. Corp.*, 632 F. Supp. 2d 700, 719 (N.D. Ohio 2008) (denying transfer where "inventors and documents relat[ed] to the invention and the patent

---

[9] Defendants' citation to *Maberry* is even more misplaced. In that case, the court recognized the standard rule that "considerable weight" is given to the Plaintiffs' choice of forum and that the balance of conveniences must "be strongly in favor of a transfer before such will be granted." *Maberry*, 2013 WL 5560318, at *2. The Court did not apply that standard rule because, completely unlike here: "all three of [the] considerations limiting the weight to be accorded to plaintiff's choice of forum are applicable: (1) plaintiff's chosen forum was the Circuit Court for Knox County, not this Court; (2) none of the conduct plaintiff complains of occurred in the Northern Division; and (3) plaintiff does not reside in the Northern Division."). *Id.* at *5. And in *Maberry*, the Court did not send the plaintiff across the country (as Defendants ask here), it sent them from the Northern Division to the Northeastern Division. *Id.*

[10] *See* Cmplt. ¶¶ 26-27; *see also* Mot. at 5 (referencing allegations of infringement in Tennessee, not denying them, and then noting that "Extreme sells its products throughout the United States");

application process" were key in light of certain asserted defenses in that case). Moreover, the Agreement underlying the present action was "entered into in the State of Tennessee," Cmplt. Ex. A at Amend. 5.

Third, the distance between California and this District does not change depending upon who is doing the flying. If coming from California to this District is an "inconvenience" to Defendants, then going from this District to California is an "inconvenience" to Plaintiffs. *See Invisible Fence, Inc. v. Fido's Fences, Inc.*, 687 F. Supp. 2d 726, 741 (E.D. Tenn. 2009) (noting that unless parties reside in the same forum, litigation will always be more costly for one party).

Indeed, the present Motion entirely ignores the convenience of Plaintiffs. As Dr. Case notes in his declaration, he is the owner of and runs both Plaintiffs, which are small local businesses. Case. Decl. ¶¶ 2-7. He takes an active role in their affairs, which require his daily attention. *Id.* ¶ 13. This involves hands-on work at his business premises. *Id.* ¶¶ 15-16. The parties to this case have estimated that the trial of this complex case will take three weeks. *See* Dkt. 46 at 5. With travel, that would require Dr. Case to be across the country away from his businesses for nearly a month. Doing so would pose a substantial hardship not only on Dr. Case (as described below in the convenience of the witnesses factor), it would also pose a substantial risk to the proper operation of his businesses. *Id.* ¶¶ 14-17. While Dr. Case can conduct some of his activities remotely, there are often times when that is not the case, and by far the norm is for Dr. Case to be hands-on and at his business premises so that he can trouble-shoot issues as they arise. *Id.* ¶ 14. Given Dr. Case's importance to the operation of his small, local businesses, the convenience of the parties factor weighs heavily in favor of keeping this case in this District.

## 2. The Convenience Of The Witnesses

As demonstrated above, as to Brocade, this factor favors Plaintiffs as a matter of law. *Atlantic Marine*, 571 U.S. at 64. In addition, Defendants (Brocade included) have not identified <u>any</u> actual facts

or evidence remotely showing true inconvenience for any witness. As this District has held:

> In order to show that another district is more convenient for witnesses, a party must do more than simply assert that another forum would be more appropriate for the witnesses; he must show that the witnesses will not attend or will be severely inconvenienced if the case proceeds in the forum district.

*KANL*, 2014 WL 1745443, at *3 (emphasis added) (citations and internal quotation marks omitted). Defendants do not identify a single witness who has stated or even implied she or he will not attend trial in this District. Nor have Defendants identified a single witness who claims (or even who Defendants claim) will be "severely inconvenienced" if the case proceeds in this District.

Nor have Defendants demonstrated that any of the witnesses they identified have information that is truly significant (as opposed to just potentially relevant) to a disputed issue in this case. Brocade identifies two current employees, but Brocade never identifies why these witnesses are needed and what disputed issues they will address. And when identifying "former employees," Brocade doesn't even claim they have information needed to resolve a disputed issue in the case: the most Brocade can say is that they "may have relevant information." For instance, Brocade says "Zahid Hussain" was a "signatory" to the Agreement. Rondoni Decl. ¶ 3). Mr. Hussain was a signatory to a single amendment to the Agreement, *see* Cmplt. Ex. A at Amend. 2; moreover, no one has disputed the authenticity of the Agreement. There is no explanation for why Mr. Hussain is important, much less whether Mr. Hussain is needed for trial with respect to that information, or whether he has refused to attend trial or claimed any inconvenience (much less the required "severe inconvenience") if he does for some reason need to attend trial.

Broadcom's declaration is even more deficient on this subject. Other than the declarant himself (Mr. Brazeal), Broadcom doesn't list any witnesses at all, much less anyone who has refused to attend trial in this District or who would be severely inconvenienced in doing so. Even Mr. Brazeal himself, despite putting in a declaration in support of Defendants' request for a transfer, never even touches on the topic of inconvenience.

.

Extreme's declaration (Mr. Lam) fares no better. Mr. Lam states "I am aware of certain individuals who I understand had some involvement in events or communications discussed in SNMP's allegations in the Complaint, and therefore may have information and/or documents relevant to the litigation of this matter." Lam Decl. ¶ 6 (emphasis added). With all of the equivocation, it is not clear which of the listed witnesses is important to this case. Apparently neither Mr. Lam nor Extreme has spoken to them or else they would know where they live (and not have to guess or review LinkedIn profiles). *Id.* Moreover, like the other Defendants, Extreme does not identify any disputed issue of fact that any of these witnesses are needed to resolve. Extreme does identify one relevant witness: Jennifer Sipes, as she admitted infringement. Case Decl. ¶¶ 25-26; Ex. B (April 18, 2018 Sipes-Wood email) ("Extreme is using the software the same way Brocade used it for its Data Center business."). But Ms. Sipes was a former Senior Counsel at Extreme who presumably will come to trial if asked, and as the party moving to transfer, it was incumbent on Extreme to show evidence of her unwillingness to do so if that were truly the case. Even then, she could simply be deposed and the testimony played at trial. *See Invisible Fence*, 687 F. Supp. 2d at 741 ("[W]ith regard to testimony by any non-party witnesses at trial, '[t]here is no reason why the testimony of witnesses could not be presented by deposition[.]'") (quoting *Moses*, 929 F.2d at 1138).

Thus, Defendants have not met their burden to show this factor weighs in their favor at all, much less substantially so. In fact, the opposite is true. Dr. Case is obviously a critical witness in this case. He was instrumental in creating the Simple Network Management Protocol ("SNMP"). Cmplt. ¶ 2. He owns and runs both Plaintiffs. Case Decl. ¶¶ 2-4. His work, and the product of his work, is located with him here in this District. *Id.* ¶¶ 5-7. He is expected to present testimony regarding, *inter alia*, the development of the SNMP standard and its use in the market; Plaintiffs' software and the copyrights at issue; Plaintiffs' business practices relevant to the software and copyrights at issue; Plaintiffs' relationship with Defendants; and the Agreement—including the breach by Brocade, SNMP

.

International's termination of Brocade's internal use and distribution rights, and subsequent events. He is also expected to testify regarding Defendants' copyright infringement and associated damages. Ashley Decl. ¶ 9. Moreover, Defendants assert that SNMP Research's copyright registrations are invalid because Dr. Case allegedly made a knowingly "inaccurate" statement to the Copyright Office. *See* Broadcom Mot. at 15-21. As Plaintiffs demonstrate in their opposition to Broadcom's Motion, that defense turns on whether Dr. Case committed <u>fraud</u> on the Copyright Office (which he absolutely did not). *See* Plaintiffs' Opp. To Broadcom Mot. at § IV.

Consequently, by anyone's definition, Dr. Case is a witness of supreme importance to this case. And as Dr. Case notes in his declaration, moving this case to California would be a significant inconvenience to him and a risk to his companies. Case Decl. ¶¶ 14-18. It would be a substantial hardship on him to travel to California for a three-week trial—which Dr. Case intends to attend in full, as this is a critical case for him and his businesses. Case Decl. ¶ 16. In addition, there are two other important witnesses—David Reid, who would provide testimony concerning the development of the software at issue and the copyrights for the software at issue, and Steve Blizzard, who would provide testimony concerning Plaintiffs' business practices related to the software. Ashley Decl. ¶¶ 10-11. Their absence would impose a substantial hardship to Plaintiffs. Case Decl. ¶ 18.

Under these circumstances, not only do the interests of witnesses not favor shipping this case to California, they substantially favor maintaining the case in this District.

### 3. The Accessibility Of Evidence

No Defendant claims any evidence will become inaccessible if this case stays in this District. Brocade vaguely states the conclusion that "[e]vidence relevant to this case is also located in San Jose, California, including documents relating to Brocade's divestiture to Extreme, Brocade's products, and Brocade's use of software licensed by SNMP Research International, Inc." Rondoni Decl. ¶ 4. However, purported inconvenience to Brocade is irrelevant given Brocade's agreement to the forum

selection clause in the Agreement. *Atlantic Marine*, 571 U.S. at 64.[11] Broadcom's and Extreme's evidentiary showing on this factor is non-existent. Their declarations (Mr. Brazeal and Mr. Lam) say <u>nothing</u> about accessibility of evidence. Finally, Defendants' legal argument is just as anemic. The sum total of it is the following *ipse dixit*: "Not only are the relevant witnesses (and any documents or other evidence they may possess) located in California, but all of the Defendants are as well." Mot. at 6-7.

Defendants ignore that this case involves SNMP Research's copyrighted and other protected works. Those works, including numerous documents in hard copy form, are kept in this District. Case Decl. ¶ 12. Defendants also ignore that they have attacked Dr. Case's communications with the Copyright Office as a basis to attempt to invalidate the copyright registrations. The materials reflecting those communications with the Copyright Office (which include documents in hard copy form) likewise originated in this District and are kept in this District. *Id.*. So, while Defendants blithely proclaim that "the conduct pertinent to the claims occurred in California" (Mot. at 6), they are just wrong.

The only evidence before this Court demonstrates that the accessibility of evidence factor favors staying in this District.

### 4.    Availability Of Process To Compel Attendance Of Unwilling Witnesses

As with the other private interest factors, Brocade has waived its ability to contest its private interests in light of the forum selection clause, and as to Brocade, this factor as a matter of law favors remaining in the District. In any event, Defendants' submissions fail to establish that any of the "potential" witnesses they list are unwilling to attend trial in Tennessee. *See* Mot. at 5–6, Lam Decl.

---

[11] Moreover, Mr. Rondoni does not even identify the scope of "evidence" and "documents" he references or whether they are hard copy or electronic. *See, e.g., J-Channel*, 2014 WL 12780317, at *6 ("Many of Silver Line's documents are maintained in electronic format, making their production relatively easy.").

¶¶ 6-7; Rondoni Decl. ¶¶ 3-5. It is therefore "not clear that [any] witnesses would refuse to cooperate; to the extent they volunteer to appear to testify in this forum, a subpoena is not necessary." *Invisible Fence*, 687 F. Supp. 2d at 741. In addition, "with regard to testimony by any non-party witnesses at trial, '[t]here is no reason why the testimony of witnesses could not be presented by deposition,' *Moses*, 929 F.2d at 1138; *see also* Fed. R. Evid. 804(a)(5), (b)(1), and these depositions may be taken within 100 miles of where the deponent 'resides, is employed, or regularly transacts business in person[.]'" *Id.* (quoting Fed. R. Civ. P. 45(c)(3)(A)(ii)); *see also Duha v. Agrium, Inc.*, 448 F.3d 867, 877 (6th Cir. 2006) ("[A] district court should not attach much weight to the compulsory process factor" where defendant "did not allege, much less carry its burden to show" that "unwilling witnesses exist."). Accordingly, Defendants have failed to carry their burden to show that the availability of compulsory process supports transfer.

### 5.     Cost Of Obtaining Willing Witnesses

Again, Brocade has waived any ability to argue that the cost of obtaining willing witnesses supports transfer, and as to Brocade this factor as a matter of law favors remaining in this District. In addition, no Defendant even contends—much less offers evidence showing—that the cost of obtaining willing witnesses warrants transfer. In any event, "arguments that [a defendant] cannot bear the costs are of little import" because "[u]nless all parties reside in the selected jurisdiction, any litigation will be more expensive for some than for others." *Invisible Fence*, 687 F. Supp. 2d at 741 (quoting *Moses*, 929 F.2d at 1139). Indeed the cost of sending multiple witnesses to testify at trial in California would be just as expensive for Plaintiffs as it would be for Defendants to send multiple witnesses to testify in Tennessee. Nor do the differences in company size and revenue remotely justify placing this burden on Plaintiffs' shoulders, given that they are small companies with less than 20 employees between them. Case Decl. ¶ 6. In contrast, Broadcom and Extreme are massive public companies that reported total revenues in 2019 of $23 billion and $948 million, respectively. Ashley Decl. ¶¶ 7-8, Exs. B-C.

### 6. Practical Problems Associated With Trying The Case Most Expeditiously And Inexpensively

Extreme offers no argument as to this private interest factor and neither does Broadcom.[12]  *See* Mot. at 4–7.  In particular, they fail to identify a single "practical problem" here that would make trial in California comparatively "easy, expeditious and inexpensive."  *Atlantic Marine*, 571 U.S. at 62 n.6.  If Extreme and Broadcom are implying that the arguments they offered in support of the party and witness convenience factors satisfy this factor too, those arguments fail for the same reasons set forth above.  Moreover, even at this early stage, allowing the case to remain here "is still more expeditious and efficient than transfer to another court."  *Shaibi v. Louisville & Indiana R.R. Co.*, No. 3:19-cv-928, 2020 WL 1539936, at *7 (W.D. Ky. Mar. 31, 2020).

### 7. Interests Of Justice

The interests of justice is a factor that concerns public interests such as administrative difficulties arising from court congestion and the "local interest in having localized interests decided at home."  *Ford v. Syneron, Inc.*, No. 2:08-CV-272, 2009 WL 10674885, at *4 (E.D. Tenn. Feb. 19, 2009).  This is the only factor that Brocade is permitted to raise in favor of transfer.  *Atlantic Marine*, 571 U.S. at 64 ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses" and so "a district court may consider arguments about public-interest factors only.").  The public interest "will rarely" warrant overturning the parties' choice of forum in a forum selection clause, and so "the practical result is that forum-selection clauses should control except in unusual cases," which "will not be common."  *Id.*

Defendants utterly fail to carry their burden to demonstrate this is one such rare case.

---

[12] As noted, Brocade has executed a forum selection clause with SNMP International and so has waived as a matter of law its ability to identify any "practical problems" associated with trying the case here.

.

Defendants re-introduce the same arguments they made in support of the private interest factors (the same private interest factors that Brocade cannot assert as a matter of law), *see* Mot. at 6-7, and completely ignore the forum selection clause that Brocade signed. Setting aside this threshold failing, Defendants offer no evidence or argument to show that the court congestion in California is somehow better than any congestion that might exist here, nor do they make any argument that local interests are better decided in a forum 2,000 miles away from where Plaintiffs reside and where Plaintiffs were injured.[13] For the reasons set forth *supra,* Defendants' cited authority is inapposite. *See* Mot. at 7. Indeed, there is "clearly a local interest in the resolution of this dispute as it involves potential tortious conduct against a [forum] resident." *J4 Promotions, Inc. v. Splash Dogs, LLC*, 08 CV 977, 2009 WL 385611, at \*24 (N.D. Ohio Feb. 13, 2009). And Defendants must do far more than argue that there is "little, if any, material prejudice to Plaintiffs in litigating in the proposed transferee forum," Mot. at 7, particularly in light of the forum selection clause and the showings Plaintiffs have made (even when it was not their burden to make them) in connection with the private interest factors discussed above.[14] *See J4 Promotions, LLC*, 2009 WL 385611, at \*24. Given these deficiencies, Defendants have failed to demonstrate that the public interest factors support transfer.

## V.    CONCLUSION

Venue is proper in this District as to all Defendants, and Defendants have not come close to meeting their heavy burden justifying a Section 1404(a) transfer to California. This Court therefore should deny the Motion in its entirety.

---

[13] As the Sixth Circuit recently noted in a case involving signatories and non-signatories to a forum selection clause, "if one forum is proper, it makes more sense for that forum to be the forum designated in Plaintiffs' contracts." *Wilson v. 5 Choices, LLC*, 776 Fed. Appx. 320, 328 (6th Cir. 2019).

[14] Extreme also states that four of Plaintiffs' attorneys are located in Southern California, Mot. at 7 & n.4, but they neglect to note that Plaintiffs have also retained co-counsel in Knoxville, Tennessee. In any event, the location of anyone's counsel is wholly irrelevant to the Section 1404(a) factors. *Shaibi*, 2020 WL 1539936, at \*4 n.4 ("The convenience of counsel is not an appropriate consideration under the 1404(a) factors.").

.

Respectfully submitted,


Dated:  January 26, 2021            By: /s/ John L. Wood
    John L. Wood, Esq. (BPR #027642)
    Cheryl G. Rice, Esq. (BPR #021145)
    Rameen J. Nasrollahi, Esq. (BPR #033458)
    EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
    900 S. Gay Street, Suite 1400
    P.O. Box 2047
    Knoxville, TN 37902
    (865) 546-0500 (phone)
    (865) 525-5293 (facsimile)
    jwood@emlaw.com
    crice@emlaw.com
    rnasrollahi@emlaw.com


Dated:  January 26, 2021            By: A. Matthew Ashley
    A. Matthew Ashley  (CA Bar. No. 198235)
    Morgan Chu (CA Bar. No. 70446)
    David Nimmer (CA Bar. No. 97170)
    Olivia L. Weber (CA Bar. No. 319918)
    IRELL & MANELLA LLP
    1800 Avenue of the Stars, Suite 900
    Los Angeles, California 90067-4276
    (310) 277-1010 (phone)
    (310) 203-7199 (facsimile)
    mchu@irell.com
    dnimmer@irell.com
    mashley@irell.com
    oweber@irell.com

    *Attorneys for Plaintiffs*
    *SNMP Research International, Inc.*
    *SNMP Research, Inc.*