# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., | § § § § | Case No. 3:20-cv-00451 |
| Plaintiffs, | § § | |
| v. | § § | <u>Jury Demand</u> |
| BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; AND EXTREME NETWORKS, INC. | § § § § § | |
| Defendants. | § § § | |

---

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' JOINT MOTION TO STAY DISCOVERY AND FOR A PROTECTIVE ORDER

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   FACTS .................................................................................................................. 3

      A.     The Complaint ............................................................................................ 3

             1.      Plaintiffs And Their Software .................................................... 3

             2.      The Agreement .......................................................................... 3

             3.      Brocade's Breach And Defendants' Copyright Infringement........................ 4

      B.     Broadcom And Brocade's Motion To Dismiss Or To Transfer Venue..................... 5

      C.     Extreme's Motion To Dismiss Or, In The Alternative, To Transfer To The Northern District Of California ................................................................. 7

      D.     Relevant Proceedings To Date And The Meet And Confer Process Over This Motion ................................................................................................ 8

             1.      Rule 26(f) Planning Conference And Plaintiffs' Written Discovery............. 8

             2.      Defendants' Request For An "Extension" And Plaintiffs' Response............. 8

             3.      The Motion At Issue And Defendants' Responses To Plaintiffs' Written Discovery ................................................................. 10

             4.      The ESI Protocol And Plaintiffs' Proposed Protective Order..................... 10

III.   ARGUMENT ....................................................................................................... 12

      A.     The Motion To Stay Should Be Denied................................................... 12

             1.      This Case Does Not Present The "Rare" Justification For A Stay Of Discovery Based On The Filing Of A Motion To Dismiss ......................... 12

             2.      Defendants Will Not Suffer Prejudice From Discovery, And Plaintiffs Will Suffer Prejudice If Discovery Is Stayed.............................. 16

      B.     The Motion For A Protective Order Should Be Denied......................................... 20

IV.   CONCLUSION ................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen-Hughes v. Wyndham Worldwide Operations, Inc.*,
   3:19-MC-25-TAV-DCP, 2019 WL 4861891 (E.D. Tenn. Oct. 2, 2019) ............................... 20

*Anderson v. U.S. Attorneys Office*,
   1992 WL 159186 (D.D.C. June 19, 1992) ................................................................ 14, 22, 23

*Avery Outdoors LLC v. Outdoors Acquisition Co., LLC*,
   No. 16-CV-2229-SHL-TMP, 2016 WL 10519034 (W.D. Tenn. Nov. 17,
   2016) ................................................................................................................................... 20

*Bangas v. Potter*,
   145 F. App'x 139 Cir. 2005 ................................................................................................. 13

*Charvat v. NMP, LLC*,
   No. 2:09-cv-209-TPK, 2009 WL 3210379 (S.D. Ohio. Sept. 30, 2009) .......................... 15, 17

*Chavous v. D.C. Fin. Responsibility & Mgmt.*,
   201 F.R.D. 1 (D.D.C. 2001) ................................................................................................ 14

*Cockrill v. Mortgage Elec.*,
   2013 WL 1966304 (M.D. Tenn. May 10, 2013),
   *adopted,* 2013 WL 2385134 (M.D. Tenn. May 30, 2013) .................................................... 23

*Doe v. Anderson*,
   2016 WL 3230679 (E.D. Mich. June 13, 2016) .................................................................. 22

*Fausz v. NPAS, Inc.*,
   3:15-CV-00145-CRS, 2017 WL 11483897 (W.D. Ky. Jan. 13, 2017) ............................ 21, 23

*Frank v. Dana Corp.*,
   2007 WL 1748887 (N.D. Ohio Jun. 18, 2007) .................................................................... 14

*FTC v. E.M.A. Nationwide, Inc.*,
   767 F.3d 611 (6th Cir. 2014) .............................................................................................. 13

*Gettings v. Bldg. Laborers Local 310*,
   349 F.3d 300 (6th Cir. 2003) .............................................................................................. 13

*Gilbert v. Ferry*,
   401 F.3d 411 (6th Cir. 2005) .............................................................................................. 13

*Gray v. First Winthrop*,
   133 F.R.D. 39 (N.D. Cal. 1990) .......................................................................................... 15

*Greenbush Brewing Co. v. Michigan Liquor Control Commn.*,
1:19-CV-536, 2019 WL 7582856 (W.D. Mich. Nov. 20, 2019) .................................21, 22, 23

*Gulf Oil Co. v. Bernard*,
452 U.S. 9 (1981) ...................................................................................................................20

*Hahn v. Star Bank*,
190 F.3d 708 (6th Cir. 1999) ................................................................................................13

*Hickman v. Taylor*,
329 U.S. 495 (1947) ...............................................................................................................23

*Home Fed. Bank of Tenn. v. Home Fed. Bank Corp.*,
Case No. 3:18-CV-379-JRG-DCP, 2019 WL 11670621 (E.D. Tenn. Sept. 18,
2019) ..................................................................................................................................20, 25

*Hoops Enterprise, LLC v. Software and Info. Indus. Ass'n.*,
No.: 1-11-CV-318-HSM, 2012 WL 12884468 (E.D. Tenn. Sept. 27, 2012) .........................14

*Innovation Ventures, LLC v. Aspen Fitness Products, Inc.*,
No. 11-cv-13537-SJM, 2013 WL 12181722 (E.D. Mich. Oct. 18, 2013)...............................23

*Karafiat v. O'Mally*,
54 Fed. Appx. 192 (6th Cir. Dec. 17, 2002) ........................................................................13

*Lakatos v. Canberra Industries, Inc.*,
Case No. 3:14-CV-73-PLR-CCS, 2014 WL 12948741
(E.D. Tenn. Oct. 29, 2014) ...............................................................................................12, 21

*Lani v. Schiller Kessler & Gomez, PLLC*,
2017 WL 3092098 (W.D. Ky. Apr. 4, 2017).........................................................................16

*Malone v. Cavalry Portfolio Serv.*,
2015 WL 13548455 (W.D. Ky. May 7, 2015) ......................................................................14

*Malone v. Stanley Black & Decker*,
965 F.3d 499 (6th Cir. 2020) ................................................................................................18

*Mays v. Tennessee Valley Auth.*,
No.: 3-09-CV-6-HBG, 2009 WL 10668710 (E.D. Tenn. Dec. 15, 2009) .........................15, 19

*Melton v. Blankenship*,
2007 WL 9718925 (W.D. Tenn. Dec. 14, 2007) ..................................................................14

*Nemir v. Mitsubishi Motors Corp.*,
381 F.3d 540 (6th Cir. 2004) ................................................................................................20

*Nissan N. Am., Inc. v. DeltaWing Project 56, LLC*,
   2015 WL 7756146 (M.D. Tenn. Dec. 1, 2015) ........................................................ 16

*Nix v. Sword*,
   11 Fed. App'x 498 (6th Cir. 2001) ........................................................................ 20

*Ohio Bell Tel. Co., Inc. v. Glob. NAPs Ohio, Inc.*,
   2:06-CV-0549, 2008 WL 641252 (S.D. Ohio Mar. 4, 2008) ................................. 16

*Rothstein v. Steinberg*,
   2008 WL 5716138 (N.D. Ohio Jun. 9, 2008) ................................................ 15, 17, 20

*Tarazi v. Oshry*,
   2:10-CV-793, 2011 WL 3608119 (S.D. Ohio Aug. 15, 2011) ............................... 25

*Toho Tenax Am., Inc. v. Linde, Inc.*,
   No. 3:12-CV-157-TAV-HBG, 2014 WL 2574767 (E.D. Tenn. June 9, 2014)..... 12, 16, 18, 21

*Travelers Cas. & Sur. Co. of Am. v. Pascarella*,
   No. 1:10-CV-157-CLC-SKL, 2010 WL 11494066 (E.D. Tenn. Dec. 13, 2010) ................... 12

*Wyser-Pratte Mgmt., v. Telxon Corp.*,
   413 F.3d 553 (6th Cir. 2005) ................................................................................ 14

*Yuhasz v. Brush Wellman, Inc.*,
   341 F.3d 559 (6th Cir. 2003) ................................................................................ 13

**Statutes**

28 U.S.C. § 1400 .................................................................................................. 7, 16

**Rules**

Fed. R. Civ. P. 26(c) ................................................................................ 20, 21, 22, 23

Fed. R. Civ. P. 26(d)(1) ................................................................................ 8, 12, 23

Fed. R. Civ. P. 26(f) .............................................................................................*passim*

Plaintiffs SNMP Research, Inc. ("SNMP Research") and SNMP Research International, Inc. ("SNMP International") (collectively "Plaintiffs") submit this Memorandum of Law in Opposition to the Joint Motion to Stay Discovery and for Protective Order, Dkt. 47-1 ("Motion" or "Mot.") filed by Defendants Broadcom Inc. ("Broadcom"), Brocade Communications LLC ("Brocade") and Extreme Networks, Inc. ("Extreme" and collectively with Broadcom and Brocade, "Defendants").

## I.      INTRODUCTION

This District repeatedly has held that the mere pendency of a potentially dispositive motion is insufficient to support a stay of discovery, and although it is within a district court's discretion to grant such a stay, it is not the norm but instead a "rare" occurrence.  This is consistent with Judge Greer's standard form scheduling order which states that "[t]here shall be no stay of discovery pending disposition of any motion absent a showing of good cause."  Defendants' motions to dismiss are nothing special, indeed, such motions are filed in virtually every complex civil litigation.  Consequently, this case does not present the "rare" circumstances which would justify putting an indefinite hold on discovery.

If anything, this case presents an even stronger case for applying the default rule in this District that discovery should proceed during the pendency of a motion to dismiss.  The parties made the following <u>joint</u> representation to this Court:

> [D]iscovery could require review of material, including electronically stored information and material, created a number of years ago including but not limited to the potential need for expert witnesses to engage in the time consuming and tedious task of evaluating thousands of lines of computer source code.  The parties reasonably believe that a significant volume of material may need to be searched.  As a result of the potential difficulties inherent in such a process, the parties have agreed <u>that to afford adequate time to complete this process</u>, the matter will take longer to be ready for trial than the standard 18 months from the filing of the Rule 26(f) report that this Court typically expects.  The parties believe that a trial commencing 22 months from the filing of the Rule 26(f) report is appropriate.

Dkt. 46 at 4 (emphasis added).  Thus, the parties agree that discovery in this case is going to take a lot of time and effort and that the time built into the parties' jointly-proposed schedule to the Court is

necessary to accomplish that discovery in time for trial. Consequently, while Defendants <u>now</u> state that the proposed trial date is "still two years away" as if that somehow supports delay, Defendants <u>previously</u> represented to this Court that all of this time was needed because of the expected breadth and complexity of discovery in this large, complex case. That of course doesn't support a delay of discovery; it supports just the opposite.

As for Defendants' purported "prejudice," it is not prejudice to do what the Federal Rules of Civil Procedure expressly require all parties to do: participate in discovery once the Rule 26(f) conference is completed (as it was on December 23, 2020). Nor is the "breadth" of the discovery served on Defendants somehow overwhelming or unique. Indeed, Defendants state in their Motion that broad discovery in copyright cases is the norm, and Defendants represented to this Court that they expected broad and expansive discovery in this case and that is why they built in time for it in the proposed trial date. Defendants also complain that they need an ESI protocol and Protective Order for confidential information. But there is now an ESI protocol in place (Dkt. 52), and if not for Defendants' delay, there would be a Protective Order in place as well. Defendants' grounds are nothing more than hollow excuses that do not justify a wholesale stay of discovery.

Defendants' only remaining argument is that they are somehow "prejudiced" because they cannot simultaneously propound their own discovery on Plaintiffs while Defendants' motions to dismiss are pending (or else they might risk "waiver"). Mot. at 15-17. First, whether and when to propound their own written discovery in light of their own asserted defenses (and possibility of waiver) is a strategic litigation choice that Defendants are making. More importantly, Defendants' claim of "prejudice" cannot be squared with Defendants' own arguments in this Motion. Specifically, according to the Motion: (i) Defendants will prevail (or are supposedly very likely to prevail) on their motions to dismiss, and (ii) there is plenty of time for all discovery to be completed even if it is only started after Defendants' motions to dismiss are decided. But if Defendants' argument is accepted, then they cannot

be prejudiced by not propounding their own discovery between now and the decision on their motions to dismiss. After all, according to Defendants, they will either win those motions (meaning no discovery at all is necessary) or Defendants can begin and complete all of their discovery after the ruling on the motions to dismiss. Either Defendants' claims of prejudice are wrong, or the assumptions underlying their Motion are wrong; both cannot be true.

Defendants' Motion should be denied.

## II.     FACTS

### A.     The Complaint

Plaintiffs filed the Complaint on October 26, 2020. Dkt. 1. Below is a high level overview of Plaintiffs' allegations.

#### 1.     Plaintiffs And Their Software

One of the foundational technologies of modern computer networks is the Simple Network Management Protocol (herein "SNMP") from which Plaintiffs take their names. Cmplt. ¶ 2. Dr. Jeffrey Case, the owner of both Plaintiffs, was instrumental in creating this protocol, which is a way for connected devices to communicate by sending and responding to messages. For example, a network-connected laser printer can communicate with a network-connected computer using SNMP to pass messages regarding the printer's status (*e.g.*, "needs paper," "paper jam"). *Id.*

Plaintiffs are Tennessee corporations whose primary offices and principal places of business are (and have been since the early 1990s) in Knox County, Tennessee. Dr. Case also resides in Knox County. Plaintiffs' technology is an implementation of SNMP. *Id.* ¶ 4. It is used in network equipment, network-connected computers and servers, telephone systems, and electronic gaming, among other things. *Id.*

#### 2.     The Agreement

On or about March 10, 2001, SNMP International licensed some of Plaintiffs' copyrighted

software to Brocade (herein the "Agreement").  Cmplt. ¶ 7.[1]  An under seal copy of the Agreement is of record in this matter attached as Exhibit A to the Complaint.  Dkt. 1 ("Cmplt."), Ex. A.

The Agreement sets clear mandates on, among other things, which software is licensed, how it can be used internally by Brocade, and how it can be reproduced or transferred externally.  Cmplt. ¶ 8. It also contains express limitations with respect to use of the human-readable "source code" that makes up the licensed software.  Among other things, the Agreement expressly forbids Brocade from transferring or disclosing "Source" materials, which are defined to include source code and related matter.  *Id.*; *see also* Agreement §§ 3, 8, 24; Cmplt. ¶ 39.  The Agreement also contains a mandatory forum selection clause designating sole and exclusive jurisdiction and venue in the state and federal courts in Knox County, Tennessee.  *See* Agreement Amendment 3 § 13.

### 3. Brocade's Breach And Defendants' Copyright Infringement

Brocade knowingly breached the Agreement by disclosing Plaintiffs' source code to Extreme. Cmplt. ¶¶ 44-46.  Plaintiffs notified Brocade of its breach and provided it with an opportunity to cure. *Id.* ¶¶ 51-53.  Brocade did not deny it had breached; nor did it cure its breach.  *Id.* ¶¶ 51-58. Consequently, SNMP International terminated Brocade's internal use and redistribution rights under the Agreement.  *Id.* ¶ 58-60.  Brocade did not contend that the termination was improper.  *Id.* ¶ 61. Despite the termination of its internal use and distribution rights under the Agreement, Brocade has continued to incorporate Plaintiffs' software into numerous products it sells in the marketplace, including newly-developed products developed post-termination, all without the consent of SNMP International.  *Id.* ¶¶ 62-64.

Broadcom wholly owns Brocade and shares in the profits that Brocade has derived and is deriving from its infringing activities.  *Id.* ¶¶ 65-67.  This renders Broadcom liable for Brocade's

---

[1] The parties to the Agreement are SNMP International and Brocade.  SNMP International does not own the copyright, but licenses it from the copyright owner, SNMP Research.

infringement based on copyright law's "practical partner" doctrine. *Id*. ¶¶ 67, 103.

After improperly obtaining Plaintiffs' source code from Brocade, Extreme incorporated Plaintiffs' software into numerous products, including newly-developed products developed post-disclosure, that Extreme sells in the marketplace without Plaintiffs' consent. *Id*. ¶¶ 47-50, 85-93. This constitutes copyright infringement. *Id.*

Defendants have netted massive returns from their breaches and copyright infringement believed to be in the hundreds of millions of dollars to date (and continuing to grow). *See id.* at p. 1, at opening paragraph.

## B. Broadcom And Brocade's Motion To Dismiss Or To Transfer Venue[2]

After being served with the Complaint, Defendants requested a three-week extension to respond, and Plaintiffs agreed to it. Ashley Decl. ¶ 2. Defendants subsequently requested an additional two-week extension, and Plaintiffs agreed to that as well. Ultimately, all Defendants responded to the Complaint by filing motions to dismiss and/or transfer.

Broadcom and Brocade have filed a Motion to Dismiss Plaintiffs' Complaint And/Or To Transfer Venue (Dkt. 40-1) (herein "Broadcom Motion"), which Extreme has joined. Dkt. 39. In the Broadcom Motion, Defendants do not challenge the pleaded facts set forth in Section II.A., above. Instead, Defendants raise three arguments: 1) Broadcom—and Broadcom alone—argues that there is no personal jurisdiction over it, *see* Dkt. 40-1 at 6-12; 2) Defendants argue that, because jurisdiction is allegedly lacking as to Broadcom, that somehow means venue is "improper" as to all Defendants, *see* Dkt. 40-1 at 12-15; 3) Defendants argue that SNMP Research's copyright registrations are "invalid" because SNMP Research allegedly gave the Copyright Office "inaccurate" information and "knew" of the inaccuracy at the time, *see* Dkt. 40-1 at 15-22; and 4) Brocade argues that the breach of contract

---

[2] The descriptions here and in Section II.C are not meant to be a complete delineation of all arguments in the parties' motions and oppositions. Instead, the descriptions herein provide the general contours of the parties' arguments to give the overall context in which Defendants' current Motion is made.

claim against it is "preempted" by copyright law, *see* Dkt. 40-1 at 22-25.

In their Opposition to the Broadcom Motion (Dkt. 48), Plaintiffs explain why each of these arguments fails. With respect to Broadcom's personal jurisdiction argument, Plaintiffs demonstrate that Broadcom is bound by the forum selection clause in the Agreement. Dkt. 48 at 4-6. Plaintiffs demonstrate that this is the case even though Broadcom is a nonsignatory because Broadcom's actions made it reasonably foreseeable that it would become involved in a dispute related to the Agreement, which is the pertinent standard. *Id.* Those actions include working substantially and continuously with Brocade to disclose Plaintiffs' source code to Extreme, sharing in Brocade's profits from infringement, and speaking on behalf of Brocade during extensive negotiations with Plaintiffs wherein Broadcom attempted to broker a new license to replace the Agreement. *Id.* at 6. Plaintiffs also demonstrate that Broadcom's contacts satisfy the Sixth Circuit test for specific jurisdiction. *Id.* at 7-11.

With respect to Defendants' copyright registration invalidity argument, Plaintiffs demonstrate that there is no basis to hold that SNMP Research provided any inaccurate information to the Copyright Office (in fact, SNMP Research's conduct was consistent with the pertinent Copyright Office guidance and relevant case law). Plaintiffs further demonstrate that the Sixth Circuit standard for invalidating a registration (which the Broadcom Motion ignores) is not merely that inaccurate information is provided but that the registrant <u>defrauded</u> the Copyright Office. *Id.* at 12-17. Plaintiffs show that Defendants have not come close to meeting this standard. Instead, they ignore the standard entirely, and ignore the fact that the presence or absence of fraud cannot be decided at the pleading stage. *Id.* at 17-22.

With respect to Brocade's "preemption" argument, Plaintiffs demonstrate that, under binding Sixth Circuit precedent, the breach of contract claim against Brocade is not preempted by copyright law because the breach of contract claim contains an "extra element," which is the Sixth Circuit standard. Indeed, Plaintiffs' breach claim against Brocade contains at least two "extra" elements under Sixth Circuit precedent: (i) the contractual requirement of confidentiality and the breach of that

confidentiality requirement through disclosure of Plaintiffs' source code; and (ii) the contractual requirement of payment. Both of these "extra" elements render preemption inapplicable, just as it normally is with respect to breach of contract claims. *Id.* at 23-25.

The reply brief in support of the Broadcom Motion has not yet been filed.

## C. Extreme's Motion To Dismiss Or, In The Alternative, To Transfer To The Northern District Of California

Extreme filed a Motion to Dismiss Or, In The Alternative, To Transfer To The Northern District of California (Dkt. 39) (herein "Extreme Motion"), which Broadcom and Brocade joined. The Extreme Motion does not challenge the Complaint's pleaded facts discussed in Section II.A., above. Instead, Defendants raise two arguments: 1) Defendants incorporate by reference the argument in the Broadcom Motion that personal jurisdiction over Broadcom is supposedly lacking, and then contend that based on that, venue is supposedly "improper" as to all Defendants (this argument is also made in the Broadcom Motion), *see* Dkt. 39 at 2-3; *see also* Dkt. 40-1 at 12-15; and 2) Defendants claim this District is "inconvenient" for them and seek transfer under 28 U.S.C. § 1404(a), *see* Dkt. 39 at 3.

In their Opposition to the Extreme Motion (Dkt. 49), Plaintiffs show why each of these arguments fails. For instance, Plaintiffs demonstrate that if Broadcom's personal jurisdiction argument is rejected (as it should be), then there is no argument by <u>any</u> Defendant that venue is "improper" here. *See* Dkt. 49 at 6-8.[3] Plaintiffs further demonstrate that, even if jurisdiction (and thus venue) were lacking as to Broadcom, that would not somehow render venue improper as to Brocade or Extreme. *See* Dkt. 49 at 8-9. Indisputably, Brocade expressly agreed that the sole and exclusive jurisdiction and venue for resolving any disputes arising out of or related to the Agreement would be <u>in this District</u>. *Id.* at 7; Agreement Amendment 3 § 13. Finally, Plaintiffs demonstrate that Defendants have not come

---

[3] Under the copyright venue statute, venue is appropriate anywhere that there is personal jurisdiction. 28 U.S.C. § 1400(a). All parties agree that this is the venue statute governing this case. Broadcom Mot. (Dkt. 40-1) at 2; Extreme Mot. (Dkt. 39) at 4; Plaintiffs' Opp. to Extreme Mot. (Dkt. 49) at 1.

close to meeting their "significant" burden of making a "substantial showing" of inconvenience (using the terminology employed by this District) to override the considerable deference given to a plaintiff's choice of forum—and in particular a forum plaintiff's choice of its own home forum. Dkt. 49 at 11-12.

### D. Relevant Proceedings To Date And The Meet And Confer Process Over This Motion

#### 1. Rule 26(f) Planning Conference And Plaintiffs' Written Discovery

Plaintiffs requested that the parties' Rule 26(f) planning conference be held in early December. Ashely Decl. ¶ 3. In order to accommodate Extreme's counsel's schedule, Plaintiffs agreed to conduct the Rule 26(f) planning conference on December 13, 2020, instead. *Id.*; Ex. A. On December 12, 2020, counsel for Broadcom and Brocade suddenly claimed that because they were allegedly concerned about potential "waiver" issues, they now refused to participate in the December 13 conference they had previously agreed to, and they would not agree to participate in any Rule 26(f) conference until after their motion to dismiss or transfer was on file. *Id.* ¶ 4; Ex. B. Plaintiffs agreed not to argue waiver. And while Plaintiffs did not believe the demanded delay was proper, Plaintiffs nevertheless agreed to push the conference to the day after Defendants' motions were to be filed (December 22, 2020). *Id.* ¶ 4; Ex. B. On December 23, 2020, the parties had their Rule 26(f) conference. This triggered Plaintiffs' right to serve discovery, Fed. R. Civ. P. 26(d)(1), which Plaintiffs served on December 26, 2020. *Id.* ¶ 5.

#### 2. Defendants' Request For An "Extension" And Plaintiffs' Response

On January 5, 2021, the evening before the parties' Joint Rule 26(f) Report was due to be filed, Defendants sent Plaintiffs an email stating that Defendants were now concerned that filing a Joint Rule 26(f) Report, serving initial disclosures and/or participating in written discovery might constitute a waiver of defenses. Ashley Decl. ¶ 6, Ex. C. Defendants asked Plaintiffs to agree not to argue such a waiver. Plaintiffs agreed that they would not argue that Defendants would waive any defenses by filing a Joint Rule 26(f) Report, serving initial disclosures or responding to Plaintiffs' discovery. But

Plaintiffs stated they were not willing to agree to waive arguments they may have with respect to Defendants' propounding their own discovery, and stated that whether and when Defendants chose to propound their own discovery was Defendants' own strategic litigation choice. *Id.*

In their January 5, 2021 email, Defendants also asked for a 30-day extension of time to respond to Plaintiffs' written discovery purportedly because it was "extensive" and served "over the holidays." Ashley Decl. ¶ 7, Ex. C. In response to Defendants' request, Plaintiffs wrote:

> With respect to Defendants' request for a 30-day extension on all discovery that Plaintiffs served (which we served on December 26 because Broadcom refused to conduct the Rule 26f meeting any time before December 23), we are willing to agree to it. However, we expect to receive substantive responses and documents (not just objections) on February 24, 2021. This is particularly important given that some of the discovery is relevant to a jurisdictional challenge.

*Id.* Defendants would not agree to provide substantive responses and documents as opposed to pure objections. *Id.* ¶ 8. Moreover, in the course of the continued dialogue in this email exchange, it became clear that what Defendants intended to do was treat the mere filing of their motion to stay discovery (*i.e.*, the instant Motion) as having mooted the need to respond to Plaintiffs' discovery while that motion to stay discovery was pending. *Id.* ¶¶ 9-10, Ex. C (see highlighted excerpts). Plaintiffs made their position on this subject clear, namely, that it would be improper for Defendants to not provide substantive responses solely because Defendants had made a motion to stay discovery, as this would in effect mean Defendants were unilaterally granting themselves an interim stay of discovery. *Id.* ¶¶ 7, 9, 11, 13, Ex. C (see highlighted excerpts). Defendants asked for authority in support of Plaintiffs' position, and Plaintiffs provided it. *Id.* ¶ 10-11, Ex. C at pp. 1-2. Defendants provided no countervailing authority and did not further respond. *Id.* ¶ 12.

Moreover, Defendants also made clear that their request for a 30-day extension was <u>not</u> because they needed the extra time to actually work on the discovery responses. Instead, Defendants admitted that they intended to use the 30 extra days (in addition to the 30 days provided by Federal Rules) to simply wait and see whether this Court had ruled on their motion to stay discovery, and if not,

Defendants would simply serve objections at the end of the additional 30-day period. *See* Ashley Ex. C; *see* Ashley Decl. ¶¶ 10-11, 13. In other words, while Defendants framed their request as one for a 30-day "extension" necessitated by the "holidays," it in reality was Defendants' plan to do nothing until this Court ruled on their motion to stay discovery. Plaintiffs stated this multiple times to Defendants, and if this was not Defendants' intention, they had multiple opportunities to make it clear; however, they never did. *Id.* Plaintiffs have no problem providing legitimate extensions (for instance, as noted above, Plaintiffs provided Defendants with five extra weeks to respond to the Complaint). *Id.* ¶ 2. However, because Defendants would not commit to using their requested "extension" <u>to actually do work on the discovery and actually provide the responses when that work was done</u>, Plaintiffs did not agree to the request. *Id.* ¶¶ 8, 10-11.

3. **The Motion At Issue And Defendants' Responses To Plaintiffs' Written Discovery**

On January 16, 2021, Defendants filed the instant Motion. Defendants requested that "this motion be treated on an expedited basis and heard prior to January 25, 2021, if possible, as the response date for the voluminous discovery served by Plaintiffs is January 25, 2021 and they have refused to grant an extension." Dkt. 47 at 2. On January 25, 2021, Defendants served their responses to all of Plaintiffs' written discovery. <u>Not a single substantive response or document, or a commitment to produce a single document, was provided by any Defendant</u>. Ashley Decl. ¶ 14. Instead, Defendants submitted over 700 pages consisting <u>entirely</u> of boilerplate objections. *Id.* In essence, Defendants have improperly granted themselves an interim stay of discovery via a charade of repetitive, boilerplate objections across the board.

4. **The ESI Protocol And Plaintiffs' Proposed Protective Order**

Defendants argue in the Motion that: "Plaintiffs' propounded discovery is extremely overbroad and seeks sensitive and proprietary business information before the parties have even agreed to a protective order or electronic discovery protocol." Mot. at 4. It also argues that Defendants need to

review Plaintiffs' source code to answer some of the discovery. *Id.* at 15.

Plaintiffs provided Defendants a proposed ESI Protocol on December 11, 2020. After over a month of delay and just one global revision to that draft by Defendants (to permit occasional use of TIFFs instead of PDFs), an ESI Protocol is now in place. Dkt. 52; Ashley Decl. ¶ 15.

Plaintiffs sent Defendants a draft Protective Order governing confidential information on January 16, 2021. Ashley Decl. ¶ 16. After not hearing from them on it for a week, Plaintiffs emailed Defendants on January 24, 2021, and asked them for their comments the following week. *Id.*, Ex. D. When several days passed and Defendants still had not sent Plaintiffs their proposed revisions to the draft Protective Order, Plaintiffs again requested Defendants' proposed edits. *Id.* ¶¶ 16-17, Ex. D. As of the filing of this opposition brief, more than two weeks have passed since Plaintiffs provided a draft Protective Order to Defendants, and Defendants still have yet to send Plaintiffs any proposed revisions to it. *Id.* ¶ 19.

As for Defendants' purported need to review Plaintiffs' source code before answering discovery, Defendants have Plaintiffs' source code, which is why they are being sued for copyright infringement. Nevertheless, to address these purported concerns, Plaintiffs included in the draft protective order a provision calling for an exchange of source code with numerous confidentiality protections, which is what Broadcom and Brocade's counsel had suggested at the parties' Rule 26(f) conference. Ashley Decl. ¶ 18, Ex. D. Plaintiffs then proposed that the parties exchange source code by January 29th. *Id.* ¶ 16, Ex. D. Defendants claimed that they feared "waiver" of defenses by even negotiating protective order provisions, so Plaintiffs agreed not to argue waiver for that. *Id.* ¶ 17, Ex. D. Then, Defendants still refused to exchange source code, now claiming that they needed to involve "experts," did not want to risk "waiver, etc.," and "it is premature to do so before we know what issues will remain after the motion to dismiss[.]" *Id.* ¶ 18, Ex. D. To date, Defendants have steadfastly refused to agree to a date for an exchange of source code or even to provide a single edit to the source

code protection provisions of the draft Protective Order. *Id.* ¶ 19.

## III. ARGUMENT

### A. The Motion To Stay Should Be Denied

#### 1. This Case Does Not Present The "Rare" Justification For A Stay Of Discovery Based On The Filing Of A Motion To Dismiss

As this District has held, "the fact that a party has filed a case-dispositive motion is usually deemed insufficient to support a stay of discovery." *Toho Tenax Am., Inc. v. Linde, Inc.*, No. 3:12-CV-157-TAV-HBG, 2014 WL 2574767, at *2 (E.D. Tenn. June 9, 2014) (citations omitted) (denying motion to stay discovery). Consequently, a "stay of discovery based on the mere filing of a dispositive motion is rare." *Travelers Cas. & Sur. Co. of Am. v. Pascarella*, No. 1:10-CV-157-CLC-SKL, 2010 WL 11494066, at *1 (E.D. Tenn. Dec. 13, 2010) (citations omitted) (denying motion to stay discovery). This is consistent with Judge Greer's standard form scheduling order posted to the Court's website, which provides that "[t]here shall be no stay of discovery pending disposition of any motion absent a showing of good cause." J. Greer, Standard Form Scheduling Order § 8(d) (emphasis added); *see also Lakatos v. Canberra Indust., Inc.*, Case No. 3:14-CV-73-PLR-CCS, 2014 WL 12948741, at *1 (E.D. Tenn. Oct. 29, 2014) ("Defendant's filing of a Motion to Dismiss . . . does not amount to good cause supporting a stay of discovery in this case"). It is also consistent with the fact that the Federal Rules of Civil Procedure contain no provision staying discovery merely because a party files a motion to dismiss that it contends could be "dispositive" (a commonplace contention in civil litigation). Instead, discovery is automatically triggered by the parties' Rule 26(f) conference, which as demonstrated above, took place on December 23, 2020. *See* Fed. R. Civ. P. 26(d)(1).

There is nothing about Defendants' pending motions to dismiss that renders this case the "rare" exception for departing from the norm in this District (and elsewhere for that matter) that discovery proceeds while a court considers a motion to dismiss. For instance, while Defendants profess their confidence in their motions to dismiss, that is hardly a unique circumstance. And Judge Greer, not

Defendants, will decide the outcome of Defendants' motions to dismiss. Defendants also complain that they will incur discovery costs while their motions to dismiss are pending, but that is true in every case where a dispositive motion is filed and discovery is not stayed. If that were sufficient to constitute "good cause" to stay discovery, then discovery stays would be automatic—not "rare"—anytime someone filed a "potentially dispositive" motion to dismiss.

Defendants' proffered authority does not support a different result. Defendants cite Sixth Circuit authority holding that a district judge has discretion to stay cases pending resolution of dispositive motions, but no one contends otherwise.[4] The salient question is not whether this Court has the discretion to stay, but instead whether it should exercise that discretion to deviate from the consistently-applied approach in this District that discovery proceeds during a motion to dismiss. Defendants' proffered authority on that point is inapposite. *See, e.g.*, *Gilbert v. Ferry*, 401 F.3d 411, 416 (6th Cir. 2005) (affirming stay of discovery "after the filing of the parties' <u>motions for summary judgment</u>" and after "Plaintiffs [] had a considerable opportunity to secure and present evidence of jurisdiction") (emphasis added); *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999) (affirming stay of discovery when *pro se* plaintiff "did not state any need for discovery until . . . a month after the district court had granted summary judgment in favor of [defendant]"); *Karafiat v. O'Mally*, 54 Fed. Appx. 192 (6th Cir. Dec. 17, 2002) (affirming stay of discovery pending a ruling on a motion to dismiss an obviously-deficient *pro se* complaint); *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003) (noting that plaintiff could not invoke discovery to obtain facts needed to state a claim of government fraud under Rule 9(b)).[5] Notably, Defendants cite only one case from this District and

---

[4] The Sixth Circuit similarly has upheld (in authority cited by Defendants) a district court's exercise of its discretion <u>not</u> to stay discovery pending resolution of a dispositive motion. *See FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 628 (6th Cir. 2014).

[5] Defendants' cases are readily distinguishable. *See Bangas v. Potter*, 145 F. App'x 139, 142 6th Cir. 2005) (affirming stay where discovery "would have no bearing on the allegations" given that the sole remaining defendant could not be sued as a matter of law under Title VII); *Gettings v. Bldg. Laborers Local 310*, 349 F.3d 300, 305 (6th Cir. 2003) (failure to file Rule 56(f) affidavit permitted "staying

that case provided no discussion as to why it was granting a stay and also expressly noted that "the parties are on notice that the Court may order a period of limited discovery as to the jurisdictional questions." *Hoops Enterprise, LLC v. Software and Info. Indus. Ass'n.*, No.: 1-11-CV-318-HSM, 2012 WL 12884468, at *2 (E.D. Tenn. Sept. 27, 2012).

Defendants also argue that copyright cases often involve significant amounts of discovery. Mot. at 9. But if Congress had wanted discovery to be stayed pending a ruling on a motion to dismiss in copyright cases, then Congress could and would have provided for such a stay, as Congress did in connection with Securities Exchange Act claims, for instance. *See, e.g.*, *Wyser-Pratte Mgmt.*, *v. Telxon Corp.*, 413 F.3d 553, 559 (6th Cir. 2005) (noting that motions to dismiss trigger "an automatic stay of discovery" under the Private Securities Litigation Reform Act). However, Congress did <u>not</u> do so with respect to the Copyright Act, so there is no copyright exception to the default rule that discovery proceeds while a motion to dismiss is pending.

The fact that this case is complex and that the parties agree that there is much discovery to do (*see* Dkt. 46 at 4) counsels in favor of <u>not</u> staying discovery. The parties' jointly-proposed discovery cutoff to Judge Greer is less than a year away (*id.*), and Judge Greer may ultimately set even earlier deadlines than the parties have proposed. There is thus no reason to put all discovery on an indefinite hold simply because Defendants have filed motions to dismiss. In similar circumstances, this District

---

discovery pending resolution" of summary judgment motion); *Malone v. Cavalry Portfolio Serv.*, 2015 WL 13548455, at *3 (W.D. Ky. May 7, 2015) (staying discovery in Fair Debt Collection Practices Act case where parties had exchanged one round of discovery and stay would "not have any prejudicial effect" on the plaintiff); *Melton v. Blankenship*, 2007 WL 9718925, at *2 (W.D. Tenn. Dec. 14, 2007) (imposing stay where briefing was ordered to determine whether malicious prosecution claim could even constitute a predicate crime for a RICO violation); *Frank v. Dana Corp.*, 2007 WL 1748887, at *2 (N.D. Ohio Jun. 18, 2007) (staying discovery pursuant to the Private Securities Litigation Reform Act, which mandates it); *Chavous v. D.C. Fin. Responsibility & Mgmt.*, 201 F.R.D. 1, 3 n.4 (D.D.C. 2001) ("'bald assertion' by a defendant that its motion to dismiss will be granted . . . is generally insufficient" to stay discovery, but stay was warranted on summary judgment motion and in light of "significant privilege issues" posed by the discovery requests); *Anderson v. U.S. Attorneys Office*, 1992 WL 159186, at *1 (D.D.C. June 19, 1992) ("Issues of immunity are involved in the instant matter, requiring further consideration of a stay on discovery").

has held:  "Rule 1 instructs that the Court shall strive for speedy disposition of matters.  <u>To halt discovery in this matter completely would be to delay what may prove to be a prolonged legal battle and to deny the Plaintiffs speedy disposition of their prayers for relief.</u>"  *Mays v. Tennessee Valley Auth.*, No.: 3-09-CV-6-HBG, 2009 WL 10668710, at *3 (E.D. Tenn. Dec. 15, 2009) (emphasis added) (denying motion to stay discovery).  Similarly, the fact that Defendants' motions to dismiss are hotly contested (as compared to the obviously-deficient *pro se* complaints in several of Defendants' cases) further undermines Defendants' position.  *See id.* ("As indicated by the extensive briefing and dozens of lawyers actively involved in this matter, the issues involved in the dispositive motions now under consideration may take many more months to resolve, and completely halting discovery during that time appears ill-advised.").  As one court within the Sixth Circuit has aptly noted (quoting the very district where Defendants seek to transfer this case):

> <u>Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect.  In fact, such a motion [to stay discovery] is directly at odds with the need for expeditious resolution of litigation</u>. . . Furthermore, a stay of the type requested by defendants where a party asserts that dismissal is likely would require the court to make a preliminary finding of the likelihood of success on the motion to dismiss.  This would circumvent the procedures for resolution of such a motion.

*Rothstein v. Steinberg*, 2008 WL 5716138, at *4 (N.D. Ohio Jun. 9, 2008) (quoting *Gray v. First Winthrop*, 133 F.R.D. 39, 40 (N.D. Cal. 1990)) (denying motion to stay discovery) (emphasis added).

Defendants' final argument is that a stay of discovery is "particularly warranted here because Defendants also move to dismiss for improper venue and for lack of personal jurisdiction over Broadcom."  Mot. at 10.  But Defendants have it precisely backwards:  "<u>Because these types of motions do not go to the merits of the case, but only to the forum in which it proceeds, there is even less reason to stay discovery pending their outcome.</u>  Any discovery taken while such a motion is pending would, of course, be available for the parties to use if the case is dismissed other than on the merits and then refiled in a Court where subject matter or personal jurisdiction is proper."  *Charvat v. NMP, LLC*,

No. 2:09-cv-209-TPK, 2009 WL 3210379, at *2 (S.D. Ohio. Sept. 30, 2009) (emphasis added) (denying motion to stay discovery); *see also Toho Tenax*, 2014 WL 2574767, at*2 (denying motion to stay discovery in the face of a motion to dismiss based on both 12(b)(6) and 12(b)(2) and stating that "it strikes the Court that discovery bearing upon the merits of this dispute may also be relevant to the issue of jurisdiction."); *Ohio Bell Tel. Co., Inc. v. Glob. NAPs Ohio, Inc.*, 2:06-CV-0549, 2008 WL 641252, at *2 (S.D. Ohio Mar. 4, 2008) (jurisdictional issue raised in motion to dismiss did not warrant "a free pass on [defendants'] discovery obligations").[6] Moreover, the only Defendant who has challenged personal jurisdiction is Broadcom, so there is no reason to delay discovery as to the other Defendants (Extreme and Brocade) based on Broadcom's jurisdictional challenge. And even as to Broadcom, delay would make little sense given that Broadcom is represented by the same counsel as Brocade.

For all of these reasons, this Court should follow the consistent approach in this District and deny Defendants' motion to stay discovery.

### 2. Defendants Will Not Suffer Prejudice From Discovery, And Plaintiffs Will Suffer Prejudice If Discovery Is Stayed

None of Defendants' cries of "prejudice" has any merit, and Plaintiffs will suffer prejudice if discovery is stayed.

First, Defendants will not risk any "waiver" by responding to Plaintiffs' discovery, because as Defendants admit, Plaintiffs have already agreed not to assert any such waiver. Instead, Defendants

---

[6] Defendants cite *Lani v. Schiller Kessler & Gomez, PLLC*, 2017 WL 3092098, at *2 (W.D. Ky. Apr. 4, 2017) and *Nissan N. Am., Inc. v. DeltaWing Project 56, LLC*, 2015 WL 7756146, at *2 (M.D. Tenn. Dec. 1, 2015). Mot. at 10. However, unlike in *Lani*, two of three Defendants (Brocade and Extreme) do not contest personal jurisdiction and therefore have conceded venue under the applicable copyright venue statute (28 U.S.C. § 1400). Moreover, the plaintiff in *Lani* never even requested discovery whereas here, Plaintiffs have expressly requested jurisdictional discovery if Judge Greer concludes that personal jurisdiction over Broadcom is lacking on the face of the complaint. *See* Dkt. 48 at 11-12. *Nissan* is likewise distinguishable. In that case, the defendants asked for a stay of proceedings in light of a prior, pending state lawsuit involving some of the same litigants. Thus, without a stay, there was a "risk of having to conduct discovery twice." *Nissan*, 2015 WL 7756146, at *2. In addition, the court authorized the Magistrate Judge to "lift the discovery stay for the limited purpose of discovery relating to the pending jurisdictional issues, if appropriate." *Id.*

complain about the cost of participating in discovery. However, cost is not "prejudice," it is a normal aspect of everyday civil discovery practice. Indeed, in every case in which a defendant ultimately prevails (either at the pleading stage, on summary judgment, or at trial), that defendant will have incurred discovery costs despite having won the case. That does not justify assuming in advance that a defendant will win the case in the future and therefore denying the discovery that the Federal Rules expressly approve upon completion of the parties' Rule 26(f) conference. What's more, given their massive size and resources, it will not be a financial distress on Defendants just to respond to interrogatories, requests for admission, and requests for production of documents.[7]

Defendants argue that discovery will be "mooted" if Defendants were to prevail on their motions to dismiss. That is both wrong and not a basis for a finding of prejudice here. First, the argument improperly assumes what it is trying to prove—namely that Defendants will in fact win their motions. Defendants cannot render that ruling, only Judge Greer can, and this Court should not pre-judge those motions in the context of a motion to stay. *Rothstein*, 2008 WL 5716138, at *4 ("[A] stay of the type requested by defendants where a party asserts that dismissal is likely would require the court to make a preliminary finding of the likelihood of success on the motion to dismiss. This would circumvent the procedures for resolution of such a motion.") (internal quotation marks and citations omitted). Moreover, because much of Defendants' motion practice is dedicated to arguing about jurisdiction and venue, Defendants could "win" their motions by simply having some or all of this case ultimately decided in another venue. But that would not mean discovery on the merits of the case would be wasted. *See Charvat,* 2009 WL 3210379, at *2 ("Any discovery taken while such a motion

---

[7] *See, e.g.*, Broadcom, Inc. Form 10-K for the fiscal year ended November 1, 2020, *see* https://www.sec.gov/Archives/edgar/data/0001730168/000173016820000226/avgo-20201101.htm, last visited January 29, 2021 (identifying "total net revenue" of over $23 billion); Extreme Networks, Inc. Form 10-K for the fiscal year ended June 30, 2020, *see* https://www.sec.gov/Archives/edgar/data /0001078271/000156459020042032/extr-10k_20200630.htm, last visited January 29, 2021 (identifying "[n]et revenues of $948.0 million").

17

is pending would, of course, be available for the parties to use if the case is dismissed other than on the merits and then refiled in a Court where subject matter or personal jurisdiction is proper.").**8**

Defendants also complain about the supposed breadth of the written discovery propounded on them. However, Defendants' blunderbuss "relevance" and "overbreadth" attacks on the entirety of written discovery served on them are inappropriate and fail to satisfy Defendants' burden to show particularized grounds for a protective order. Even putting that deficiency aside, Defendants have: (i) acknowledged that discovery in copyright cases is usually broad (Mot. at 9), and (ii) submitted a joint Rule 26(f) report to the Court representing that the Court needed to set a trial date 22 months out because of the expected extensive breadth and complexities of discovery (Dkt. 46 at 4). Consequently, even if Plaintiffs' discovery to Defendants is broad, that is consistent both with the nature of this action and Defendants' own representations to this Court.

Defendants also argue that they are somehow "prejudiced" because they purportedly cannot simultaneously proceed by propounding their own discovery on Plaintiffs while Defendants' motions to dismiss are pending. Mot. at 15-17. Why, say Defendants? Because Defendants claim that before they can propound any discovery of their own, Plaintiffs must first agree to forego any arguments they may have that Defendants' actions in pursuing discovery waive in whole or in part their jurisdiction and venue arguments. *See* Mot. at 15-17. Defendants' prejudice argument is meritless. First, there is no requirement under the Federal Rules of Civil Procedure that, in order for Plaintiffs to serve discovery and obtain the responses required by the Federal Rules, Plaintiffs must first waive substantive defenses

---

**8** Moreover, the jurisdictional discovery is not only proper in its own right, *Malone v. Stanley Black & Decker*, 965 F.3d 499, 506 (6th Cir. 2020) (jurisdictional discovery warranted where defendant "may very well have made the necessary contacts" but plaintiffs "cannot know that without discovery"); here, it also bears upon the merits of the case. For instance, one basis for jurisdiction is that Broadcom directed intentionally tortious activity, *i.e.*, copyright infringement, into Tennessee and this District. *See* Dkt. 48 (Plaintiffs' Opposition to Broadcom Motion) at 7-8. This obviously overlaps with Plaintiffs' copyright infringement claim. *See Toho Tenax*, 2014 WL 2574767, at*2 ("[D]iscovery bearing upon the merits of this dispute may also be relevant to the issue of jurisdiction.").

in advance that they may have based on the strategic litigation choices of Defendants.

Second, the arguments that Defendants proffer in their attempt to secure a stay of discovery flatly contradict Defendants' cries of "prejudice" from supposed "one-sided" discovery. Specifically, <u>it is Defendants' own position</u>, as expressed to this Court in their Motion, that:

    (1) Defendants will prevail (or are supposedly very likely to prevail) on their motions to dismiss;[9] and

    (2) Even with a stay, there is supposedly plenty of time to complete all discovery after Defendants' motions to dismiss are decided.[10]

Consequently, under Defendants' own proffered worldview in their Motion, there would be no reason for them to conduct discovery simultaneously with Plaintiffs. After all, according to Defendants, any discovery they were to propound on Plaintiffs now would be "mooted" by Defendants' win-to-come on their motions to dismiss. Moreover, even if that win never comes, according to Defendants, there will be plenty of time for them to conduct all of their discovery after their motions to dismiss are decided. Consequently, under Defendants' own story to this Court, they cannot possibly be "prejudiced" by not being able to conduct discovery simultaneously with Plaintiffs between now and the ruling on Defendants' motion to dismiss.

Plaintiffs, on the other hand, have been consistent in their positions before this Court. Plaintiffs informed this Court that discovery in this case was going to be complicated and take substantial time to complete, and Defendants not only took no issue with that statement, they jointly made this representation to the Court. Dkt. 46 at 4. To Plaintiffs, that means <u>getting to work now as the Federal Rules automatically provide</u>, not engaging in indefinite delay as Defendants request. Indeed, delay alone constitutes prejudice to Plaintiffs. *See Mays*, 2009 WL 10668710, at *3 ("To halt discovery in

---

[9] *See, e.g.,* Mot. at 6 ("Defendants should not be forced to participate in expansive one-sided discovery <u>that will be mooted by their motions to dismiss</u>") (emphasis added);

[10] *See* Mot. at 7 ("[A]ny potential trial should not proceed until November 2022, giving Plaintiffs ample time to conduct the discovery they need if the motions to dismiss are denied.").

this matter completely would be to delay what may prove to be a prolonged legal battle and to deny the Plaintiffs speedy disposition of their prayers for relief.") (denying motion to stay discovery); *Rothstein*, 2008 WL 5716138, at *4 ("In fact, such a motion [to stay discovery] is directly at odds with the need for expeditious resolution of litigation.") (citations omitted) (denying motion to stay discovery). That delay would be particularly inappropriate when the parties have jointly represented to the Court that they need the time they have requested of the Court to complete their discovery.

### B.    The Motion For A Protective Order Should Be Denied

Defendants move under Federal Rule of Civil Procedure 26(c) for a "protective order," but the relief they seek is the same as their motion to stay discovery, namely, a prohibition on all discovery until their motions to dismiss are decided. That request fails for all of the reasons already discussed above, and for the additional and related reasons discussed below specifically in relation to Rule 26(c).

Federal Rule of Civil Procedure 26(c) authorizes a protective order "only under circumstances 'which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense,' the potential for which must be illustrated with 'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 550 (6th Cir. 2004) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 9, 102 n.16 (1981)). This Rule requires "good cause" to obtain a protective order, and "[t]he burden of establishing good cause for a protective order rests with the movant." *Allen-Hughes v. Wyndham Worldwide Operations, Inc.*, 3:19-MC-25-TAV-DCP, 2019 WL 4861891, at *3 (E.D. Tenn. Oct. 2, 2019) (quoting *Nix v. Sword*, 11 Fed. App'x 498, 500 (6th Cir. 2001)). "[T]o show good cause, a movant . . . must articulate <u>specific facts showing clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements</u>." *Home Fed. Bank of Tenn. v. Home Fed. Bank Corp.*, Case No. 3:18-CV-379-JRG-DCP, 2019 WL 11670621, at *4 (E.D. Tenn. Sept. 18, 2019) (quoting *Avery Outdoors LLC v. Outdoors Acquisition Co., LLC*, No. 16-CV-2229-SHL-TMP,

20

2016 WL 10519034, at *3 (W.D. Tenn. Nov. 17, 2016)) (emphasis added).

Defendants have simply made conclusory statements of purported injury and have not articulated any unjustifiable burden that would befall them absent a protective order. By Defendants' assessment, a protective order staying all discovery is warranted here because (i) they have raised potentially dispositive arguments in their motions to dismiss, and so a protective order would promote judicial economy and avoid unnecessary expense (Mot. at 8-11); (ii) Plaintiffs would not be prejudiced because discovery is "unnecessary" to decide the motions to dismiss, and even if the Court denies the motions, the parties have "nearly two years to complete discovery" (Mot. at 11-13); and (iii) Defendants would be prejudiced because they would be "forced to respond to hundreds of overly broad, expensive, and sensitive discovery requests that may all be moot" (Mot. at 13). None of these assertions comes close to demonstrating the "good cause" required under Rule 26(c)(1).

"Because entry of a protective order is contrary to the basic policy in favor of broad discovery, the party that seeks a protective order has a heavy burden to make a strong showing why discovery should be denied." *Fausz v. NPAS, Inc.*, 3:15-CV-00145-CRS, 2017 WL 11483897, at *5 (W.D. Ky. Jan. 13, 2017). Accordingly, the fact that there are pending motions to dismiss does not show the requisite good cause for a protective order. *See Greenbush Brewing Co. v. Michigan Liquor Control Commn.*, 1:19-CV-536, 2019 WL 7582856, at *1 (W.D. Mich. Nov. 20, 2019) ("[t]he mere filing of a dispositive motion does not warrant the issuance of a stay"); *Lakatos*, 2014 WL 12948741, at *1 ("Defendant's filing of a Motion to Dismiss . . . does not amount to good cause supporting a stay of discovery in this case") (emphasis added); *Toho Tenax*, 2014 WL 2574767, at *2 ("The fact that a party has filed a case-dispositive motion is usually deemed insufficient to support a stay of discovery.") (internal quotation marks omitted). In *Greenbush*, the court rejected the very same argument that Defendants make here. In particular, the court denied the defendants' contention that a protective order was warranted because "their motion to dismiss will resolve the entire case on the pleadings." 2019

WL 7582856, at *1.  The court held:

> Because the parties' arguments on the instant motion rely solely on the presence of the motion to dismiss, the arguments now before the Court are necessarily intimately connected with the merits of the case.  To decide this motion based on Defendants' argument that their motion to dismiss will ultimately prevail would require this Court to make a preliminary determination on the merits.  The Court declines to make such a determination at this time.

*Id.*  Defendants' invocation of their pending motions to dismiss does not satisfy their burden to articulate specific facts showing clearly defined and impending serious injury resulting from Plaintiffs' discovery.

Other courts in the Sixth Circuit have rejected requests for protective orders on the same grounds, and Defendants offer no justification to depart from this well-reasoned authority.  In *Doe v. Anderson*, the court denied a stay where the protective order would have required the court to make a preliminary finding of success of the pending motion, and where the requested stay "could have an impact on the progression of the case and could necessitate an extension of the discovery period."  2016 WL 3230679, at *1 (E.D. Mich. June 13, 2016) (denying stay premised on potential "dismissal of some or all of the Defendants," reasoning that the contested legal issue was "fairly debatable" and "not a frivolous question.").  In "a complex case like this" (Mot. at 15) where the parties' requested fact-discovery period expires in less than a year, each day that Defendants delay responding to the propounded discovery impacts the progression of the case, particularly in light of the fact that the parties have agreed this case will involve "a significant volume of material" that "may need to be searched," including "the time consuming and tedious task of evaluating thousands of lines of computer source code."  Dkt. 46 at 4.

In addition to *Greenbush* and *Anderson*, another court has decisively rejected the argument that a pending motion to dismiss excuses compliance with discovery requests.  The court in *Cockrill v. Mortgage Elec.* concluded that such an argument constitutes "[i]dle speculation" that "does not satisfy Rule 26(c)'s good cause requirements" and could "be said to apply to any reasonably large civil

litigation." 2013 WL 1966304, at *2–3 (M.D. Tenn. May 10, 2013) (internal quotation marks omitted), *adopted*, 2013 WL 2385134 (M.D. Tenn. May 30, 2013). If courts adopted the position Defendants urge this Court to adopt—this rule "would undercut the Federal Rules' liberal discovery provisions" and would be "directly at odds with the need for expeditious resolution of litigation." *Id.* at *2 (internal quotation marks omitted). As in *Cockrill*, Defendants' arguments for their sought-after protective order "are not persuasive, are conclusory, and could be made in virtually any case in which a defendant has filed a Motion to Dismiss." *Id.* at *3.

Nor would Defendants' requested protective order promote judicial economy and avoid unnecessary expense. Mot. at 8-11. The Federal Rules of Civil Procedure entitled Plaintiffs to serve discovery at the close of the parties' Rule 26(f) conference. *See* Fed. R. Civ. Proc. 26(d)(1). "Good cause will not be shown merely because the disputed discovery may be inconvenient or expensive." *Fausz*, 2017 WL 11483897, at *5 (denying protective order). In *Greenbush*, the court rejected an argument premised on purported injury from having to respond to discovery. In particular, the court noted that the defendants "have failed to show that they will suffer a 'clearly defined and serious injury' if they respond to [p]laintiffs' discovery," reasoning that the defendants "have not identified any undue burden that would be imposed by [p]laintiffs' requested discovery, nor have they explained how [p]laintiffs' requests might prejudice them. <u>Beyond the standard time and expense required to respond to discovery requests, [d]efendants have not explained what injury they are at risk of suffering</u>." *Greenbush*, 2019 WL 7582856, at *1 (emphasis added). Just so here. Even a quick review of SNMP Research's discovery shows that its requests are anything but "premature, overbroad, irrelevant, and unduly burdensome" (Mot. at 7).[11]

---

[11] Defendants also assert, without adequate explanation, that SNMP Research's discovery requests "are clear 'fishing expeditions,'" Mot. at 14, n.3. "Defendants cannot justify a protective order merely by 'raising the cry of fishing expedition.'" *Innovation Ventures, LLC v. Aspen Fitness Products, Inc.*, No. 11-cv-13537-SJM, 2013 WL 12181722, at *5 (E.D. Mich. Oct. 18, 2013) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507-508 (1947)).

For example, Defendants purport to attack SNMP Research's requests for admission, reasoning that the request to admit that Defendants' products contain a certain version of Plaintiffs' software is "premature and overbroad" because "Defendants have had no opportunity to inspect *any* version of Plaintiffs' software, let alone the specific versions that were submitted to the United States Copyright Office forming the basis of their claims." Mot. at 14. But "SNMP Research Software" was defined to include "(i) software provided by SNMP Research to Brocade, (ii) software licensed by SNMP Research to Brocade, or (iii) any software created by SNMP Research which is or was in the possession of [Defendants]." *See, e.g.*, Exs. C & F to the Declaration of Alison Plessman ("Plessman. Decl.") at 2. Accordingly, the notion that it is "premature and overbroad" for Defendants to admit whether they ever "received" SNMP Research Software (Plessman Decl., Exs. C & F, RFA No. 1) or "inserted, added, or otherwise incorporated SNMP Research Software" into their products (*id.*, Exs. C & F, RFA No. 3) strains credulity, particularly given that Brocade indisputably received SNMP Research Software pursuant to the Agreement (Cmplt. ¶ 7) and then disclosed the source code provided under the Agreement to Extreme (Cmplt. ¶ 46). In light of Defendants' own conduct, these requests for admissions are timely, targeted, and highly relevant.

Defendants also generically argue that SNMP Research's requests for production seeking "All Source Code" and "All financial Documents" are overbroad and irrelevant, yet Defendants' only explanation is that these requests seek "detailed proprietary information regarding Defendants' products, technology, sales, and finances." Mot. at 14. Defendants entirely fail to articulate a clearly defined and serious injury resulting from this requested discovery, and they do not explain how producing "All Source Code, including all versions, for each Product" that Defendants identify as containing SNMP Research Software is overbroad or irrelevant. Plessman. Decl., Ex. D, RFP No. 26; *see also* Plessman Decl., Ex. B, Interrogatory Nos. 1-2 (requesting Broadcom to identify its products containing SNMP Research's Software). Given the allegations in the Complaint and the causes of

24

action asserted, these requests are highly relevant and tailored to the specific issues in this case. Nowhere do Plaintiffs simply request all of Defendants' source code or all of their financial documents, without limitation, as Defendants would have this Court believe.

In sum, Defendants' assertions that Plaintiffs' discovery is "in no way tailored or limited to the issues raised in Defendants' motions to dismiss" and their assertion that responding "would be extremely costly, time consuming, and wasteful" (Mot. at 13) are merely conclusory and devoid of "specific facts showing clearly defined and serious injury resulting from the discovery sought." *Home Fed. Bank of Tenn.*, 2019 WL 11670621, at *4 (internal quotation marks omitted). Accordingly, their failure to "identify the objectionable discovery requests" and failure to "articulate the specific injury that would likely result from those particular requests" is insufficient to obtain a protective order. *Tarazi v. Oshry*, 2:10-CV-793, 2011 WL 3608119, at *3 (S.D. Ohio Aug. 15, 2011). In fact, Defendants "cite[] to no authority that requires, or even permits, the Court to issue a protective order under these circumstances," *id.*, and the Court should therefore deny Defendants' conclusory and improper request.

## IV.  CONCLUSION

For all of the foregoing reasons, this Court should deny Defendants' Motion.

Respectfully submitted,


Dated: January 31, 2021            By: /s/ Cheryl G. Rice
                                        John L. Wood, Esq. (BPR #027642)
                                        Cheryl G. Rice, Esq. (BPR #021145)
                                        Rameen J. Nasrollahi, Esq. (BPR #033458)
                                        EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
                                        900 S. Gay Street, Suite 1400
                                        P.O. Box 2047
                                        Knoxville, TN 37902
                                        (865) 546-0500 (phone)
                                        (865) 525-5293 (facsimile)
                                        jwood@emlaw.com
                                        crice@emlaw.com
                                        rnasrollahi@emlaw.com


Dated: January 31, 2021            By: /s/ A. Matthew Ashley
                                        A. Matthew Ashley  (CA Bar. No. 198235)
                                        Morgan Chu (CA Bar. No. 70446)
                                        David Nimmer (CA Bar. No. 97170)
                                        IRELL & MANELLA LLP
                                        1800 Avenue of the Stars, Suite 900
                                        Los Angeles, California 90067-4276
                                        (310) 277-1010 (phone)
                                        (310) 203-7199 (facsimile)
                                        mchu@irell.com
                                        dnimmer@irell.com
                                        mashley@irell.com

                                        *Attorneys for Plaintiffs*
                                        *SNMP Research International, Inc.*
                                        *SNMP Research, Inc.*