IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

```
------------------------------------------------------------ x
                                                             :
SNMP RESEARCH, INC. and SNMP                                 :    Case No. 3:20-cv-00451-JRG-DCP
RESEARCH INTERNATIONAL, INC.,                                :
                                                             :    U.S. District Judge J. Ronnie Greer
                          Plaintiffs,                        :
                                                             :
                v.                                           :
                                                             :
BROADCOM INC.; BROCADE                                       :
COMMUNICATIONS SYSTEMS LLC; and                              :
EXTREME NETWORKS, INC.,                                      :
                                                             :
                          Defendants.                        :
------------------------------------------------------------ x
```

**DEFENDANT EXTREME NETWORKS, INC.'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE,
<u>TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA</u>**

Extreme respectfully submits this reply memorandum of law in further support of the motion to dismiss or, in the alternative, to transfer to the more convenient forum of the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a).[1]

Cognizant of Local Rule 7.1(c)'s direction that reply briefs "shall not be used to reargue the points and authorities included in the opening brief," Extreme briefly addresses certain points and authorities in Plaintiffs' opposition brief pertaining specifically to the § 1404(a) transfer motion (ECF No. 49 (cited herein as "Transfer Opp.")). Accordingly, that Extreme does not specifically address particular positions or arguments raised by Plaintiffs in that filing or in Plaintiffs' separate response to Broadcom and Brocade's moving papers (ECF No. 48) should not be construed as an admission that those positions have merit. Extreme joins the arguments set forth in the contemporaneously submitted reply filings by Broadcom and Brocade concerning dismissal or transfer of the action pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6), and 28 U.S.C. § 1406.

## I. PLAINTIFFS' CONTENTION THAT BROADCOM AND BROCADE WOULD CHALLENGE VENUE IN THE NORTHERN DISTRICT OF CALIFORNIA IS BASELESS AND CONTRADICTED BY THOSE DEFENDANTS' MOTION

Plaintiffs agree that the threshold determination for the Court on the § 1404(a) motion is whether the action could have been brought in the proposed transferee court. (Transfer Opp. at 12-13.) While that issue should not be controversial—as explained in Extreme's opening brief, jurisdiction and venue plainly lie in the Northern District of California—Plaintiffs attempt to sow doubt by stating that "Broadcom and Brocade are conspicuously silent (despite their joinder in the [transfer] Motion)" with respect to the propriety of that other venue. (*Id.*) Plaintiffs then

---

[1] Unless otherwise noted, capitalized terms shall have the same meaning as in Extreme's opening brief. (*See* ECF No. 39.)

speculate that Broadcom and Brocade could acquiesce to the transfer now only to "preserve the ability to" challenge jurisdiction and venue in the California court. (*Id.*)

Had Plaintiffs reviewed the Broadcom-Brocade submission more carefully, however, they would not have expressed concerns. Far from being "silent," both co-Defendants plainly request a transfer (in the alternative to dismissal) "to the Northern District of California, **where personal jurisdiction exists and venue is proper as to all defendants.**" (ECF No. 40-1, at 5 (emphasis added)); *see also id.* at 14 ("Alternatively, if the Court decides that it is in the interest of justice to transfer the case, rather than dismiss it, the case should be transferred to the Northern District of California where all Defendants reside and are subject to jurisdiction and venue is proper."). The threshold requirement for the § 1404(a) transfer analysis is thus undisputedly satisfied.

II. **PLAINTIFFS' ARGUMENTS THAT "MUCH" EVIDENCE AND "KEY" WITNESSES ARE LOCATED IN THIS DISTRICT ARE NEITHER ACCURATE NOR CONSISTENT WITH PLAINTIFFS' ALLEGATIONS AND CONDUCT**

The crux of Plaintiffs' argument that the convenience of the parties and witnesses weigh against transfer is that this District is where "the key witness in this case resides" and "much of the evidence in this case is extant." (Transfer Opp. at 13.) But these statements ignore the centrality of events and individuals located in California to the principal issues in this litigation, and are undercut by Plaintiffs' own allegations and discovery positions. In fact, it is clear that most of the relevant evidence and witnesses—and *all* of the pertinent non-party witnesses identified to date—will be located outside the Eastern District of Tennessee. In that regard, **Plaintiffs notably fail to identify even a single non-party witness that is located in or around this District** despite the convenience of non-party witnesses being a critical—if not the most important—factor in the § 1404(a) transfer analysis. *See Boys v. Mass Mut. Life Ins. Co.*, 2013 WL 3834010, at *5 (E.D. Tenn. July 24, 2013) ("The convenience of witnesses, particularly

3

nonparty witnesses, is often of paramount importance"); *Stewart v. Am. Eagle Airlines, Inc.*, 2010 WL 4537039, at *2 (M.D. Tenn. Nov. 3, 2010).

As previously noted—and as Plaintiffs do not dispute—the allegations in this litigation center on the sale and acquisition of a data center business between two companies located in *California*, and the purportedly infringing products developed and sold by each of the parties to that transaction. Broadcom is also located in California. Defendants therefore identified several witnesses, including former employees of Defendants (non-parties) who appear to continue to be located in California, that were involved in the transactions, communications, and events as alleged by Plaintiffs in the Complaint, and as such are most likely to have information relevant to the merits of the litigation. (*See* ECF No. 39 at 5-6; ECF No. 40-1 at 14-15.)

By contrast, potentially relevant connections between Defendants' conduct challenged in this litigation and the current forum are sparse, at best. There is no allegation from Plaintiffs that any aspect of the acquisition or development of the purportedly infringing products occurred in Tennessee. The only "conduct pertinent to the claims" that Plaintiffs appear to assert is that some quantity of products were sold by Defendants into this forum, just as Defendants' (like Plaintiffs') products are sold throughout the United States. (Transfer Opp. at 15.) Such sales, however, would have no bearing on the convenience analysis because they would not materially impact discovery or a trial; they do not impact the merits issue concerning whether the products are infringing, and would require no witnesses or other evidence located in Tennessee to establish their existence. In short, there simply is no reason to suspect that Defendants would have any relevant evidence or witnesses located in this District, which combined with Plaintiffs' failure to identify any non-party witnesses in this District weighs strongly in favor of transfer.

Faced with the reality that their Complaint principally focuses on events occurring in California and that individuals and evidence outside of this District would be critical, Plaintiffs make two arguments, neither of which has any merit.

*First*, Plaintiffs chide Defendants for not providing more definitive information about the non-party witnesses who are likely to have information about the allegations in the Complaint, accusing Extreme's declarant, Peter Lam, for example, of "equivocation" because he states that he "understand[s]" that certain individuals had involvement in issues and thus "may have" information relevant to the issues in the case. (Transfer Opp. at 18.) That criticism is misguided, however, particularly at this early stage of the proceedings. Defendants have reviewed the allegations in the Complaint as well as Plaintiffs' copious discovery requests,[2] and have identified those individuals who were involved in the subject matter thereof, including individuals who are no longer with the companies. That Mr. Lam cannot definitively declare under penalty of perjury what those other individuals may know or recall based on their involvement is not "equivocation;" if it were, then so would be Plaintiffs' own Rule 26(a) initial disclosures that identify all witnesses (including Plaintiffs' own personnel) as individuals who "*may have* discoverable information" (*see* Declaration of Jordan Feirman ("Feirman Decl.") Ex. A), and the declaration from Plaintiffs' outside counsel in opposition to the current motion stating that he merely "anticipate[s]" that certain witnesses will be "important" in the litigation. (ECF No. 48-14, ¶¶ 10-11.) Such appropriately cautious language does not suggest that the individuals being identified are not pertinent.

---

[2] Plaintiffs state that Defendants have yet to provide "substantive" responses to discovery requests. (Transfer Opp. at 10.) To be clear, Defendants have provided fulsome and detailed objections to all requests in an effort to respond in good faith without risking waiver and other undue prejudice resulting from Plaintiffs' unreasonable litigation positions, which are detailed in Defendants' pending motion to stay discovery and for a protective order. (ECF No. 47.)

Moreover, Plaintiffs' suggestion that the witnesses outside this forum are not important or would not bear on "any disputed issue of fact" (Transfer Opp. at 18) rings hollow insofar as Plaintiffs' disclosures and opposition filings identify several of the same California-based witnesses—*e.g.*, Jennifer Sipes, Larry Fitterer, and Martin Skagen—as well as other current *and former* Extreme, Broadcom, and Brocade "employees and agents . . . who Plaintiffs believe have knowledge of the facts concerning this action. (*See* Feirman Decl. Ex. A (emphasis added).)[3] Plaintiffs' *ipse dixit* that Defendants cannot show that any of the proposed witnesses would be "truly significant" is thus not credible. (Transfer Opp. at 17.)

Similarly misguided is Plaintiffs' suggestion that Defendants were bound to conduct an extensive investigation concerning the current location of former employees and specifically ask them whether they are willing to travel across the country for a litigation concerning companies that they no longer work for. (Transfer Opp. at 18.) Defendants reasonably utilized publicly available information to determine where these individuals are located, and Plaintiffs have no basis to dispute the accuracy of that information, speculating only that one such former employee "presumably will come to trial if asked." (*Id.* at 18.) The decision in *KANL, LLC v. Savage Sports Corp.*, 2014 WL 1745443 (E.D. Tenn. Apr. 30, 2014), does not require Defendants to have done more; the court in that case did not require the defendants to investigate whether pertinent non-party witnesses would refuse to travel to Tennessee. Rather, the court *granted* the motion to transfer for the very reason that it was important that the defendants' key non-party witness "be within the subpoena power of the forum court as he is no longer employed by defendant." *Id.* at *4. Similarly, here, Defendants have demonstrated that pertinent witnesses—

---

3  Another of the former Extreme employees listed in Plaintiffs' initial disclosures is Janet Miller, a Contracts Manager at Extreme until September 2019 who also appears to still be located in California. *See* https://www.linkedin.com/in/janet-miller/.

6

including those identified in Plaintiffs' disclosures—likely are located in California, and certainly no one has contended that they are located within the subpoena power of this Court.

*Second*, Plaintiffs attempt to bolster the importance of their own personnel located in Tennessee, referring to Dr. Jeffrey Case and two other individuals who could testify concerning the SNMP software allegedly at issue. (Transfer Opp. at 19.) While Defendants have no reason to dispute Dr. Case's knowledge and understanding of the software he developed, the suggestion that he is "the key witness" or of "supreme importance" in this case is inapt. As noted, the "key" conduct at issue based on the allegations in the Complaint is that of the California-based Defendants and of non-party witnesses located there. Plaintiffs also focus on the issue of Dr. Case's state of mind in connection with the validity of Plaintiffs' copyright registrations (Transfer Opp. at 19), but as set forth in the contemporaneously submitted reply filing by Broadcom and Brocade, whether Dr. Case had fraudulent intent when registering copyrights is not material to that issue.

As for the other two witnesses put forth by Plaintiffs, the descriptions of their anticipated testimony are vague, and it is far from clear why they are any more integral to this case than any relevant current or former employee of the Defendants who reside in California. Plaintiffs' witnesses are generically identified as having knowledge "concerning the development of the software" and "Plaintiffs' business practices related to the software." (Transfer Opp. at 19.) These vague categories also overlap with the categories already listed for Dr. Case. (*Compare* ECF No. 48-14 ¶ 9 *with id.* at ¶¶ 10-11.)

In light of the foregoing, Plaintiffs' contention that "much" of the relevant evidence resides in the Eastern District of Tennessee is unsupported. And even if "much" evidence was located in this forum, it is clear that far more evidence and the majority of the witnesses are

7

Case 3:20-cv-00451-CEA-DCP   Document 55   Filed 02/02/21   Page 7 of 12   PageID #: 1205

including those identified in Plaintiffs' disclosures—likely are located in California, and certainly no one has contended that they are located within the subpoena power of this Court.

*Second*, Plaintiffs attempt to bolster the importance of their own personnel located in Tennessee, referring to Dr. Jeffrey Case and two other individuals who could testify concerning the SNMP software allegedly at issue. (Transfer Opp. at 19.) While Defendants have no reason to dispute Dr. Case's knowledge and understanding of the software he developed, the suggestion that he is "the key witness" or of "supreme importance" in this case is inapt. As noted, the "key" conduct at issue based on the allegations in the Complaint is that of the California-based Defendants and of non-party witnesses located there. Plaintiffs also focus on the issue of Dr. Case's state of mind in connection with the validity of Plaintiffs' copyright registrations (Transfer Opp. at 19), but as set forth in the contemporaneously submitted reply filing by Broadcom and Brocade, whether Dr. Case had fraudulent intent when registering copyrights is not material to that issue.

As for the other two witnesses put forth by Plaintiffs, the descriptions of their anticipated testimony are vague, and it is far from clear why they are any more integral to this case than any relevant current or former employee of the Defendants who reside in California. Plaintiffs' witnesses are generically identified as having knowledge "concerning the development of the software" and "Plaintiffs' business practices related to the software." (Transfer Opp. at 19.) These vague categories also overlap with the categories already listed for Dr. Case. (*Compare* ECF No. 48-14 ¶ 9 *with id.* at ¶¶ 10-11.)

In light of the foregoing, Plaintiffs' contention that "much" of the relevant evidence resides in the Eastern District of Tennessee is unsupported. And even if "much" evidence was located in this forum, it is clear that far more evidence and the majority of the witnesses are

7

Case 3:20-cv-00451-CEA-DCP   Document 55   Filed 02/02/21   Page 7 of 12   PageID #: 1205

including those identified in Plaintiffs' disclosures—likely are located in California, and certainly no one has contended that they are located within the subpoena power of this Court.

*Second*, Plaintiffs attempt to bolster the importance of their own personnel located in Tennessee, referring to Dr. Jeffrey Case and two other individuals who could testify concerning the SNMP software allegedly at issue. (Transfer Opp. at 19.) While Defendants have no reason to dispute Dr. Case's knowledge and understanding of the software he developed, the suggestion that he is "the key witness" or of "supreme importance" in this case is inapt. As noted, the "key" conduct at issue based on the allegations in the Complaint is that of the California-based Defendants and of non-party witnesses located there. Plaintiffs also focus on the issue of Dr. Case's state of mind in connection with the validity of Plaintiffs' copyright registrations (Transfer Opp. at 19), but as set forth in the contemporaneously submitted reply filing by Broadcom and Brocade, whether Dr. Case had fraudulent intent when registering copyrights is not material to that issue.

As for the other two witnesses put forth by Plaintiffs, the descriptions of their anticipated testimony are vague, and it is far from clear why they are any more integral to this case than any relevant current or former employee of the Defendants who reside in California. Plaintiffs' witnesses are generically identified as having knowledge "concerning the development of the software" and "Plaintiffs' business practices related to the software." (Transfer Opp. at 19.) These vague categories also overlap with the categories already listed for Dr. Case. (*Compare* ECF No. 48-14 ¶ 9 *with id.* at ¶¶ 10-11.)

In light of the foregoing, Plaintiffs' contention that "much" of the relevant evidence resides in the Eastern District of Tennessee is unsupported. And even if "much" evidence was located in this forum, it is clear that far more evidence and the majority of the witnesses are

located elsewhere, with the Northern District of California a far more convenient forum. *See, e.g.*, *Corden v. Lloyd, Gerstner & Partners, LLC*, 2015 WL 13264202, at *3 (E.D. Tenn. May 5, 2015) (transferring venue to New Jersey where all of the defendants' witnesses were based in New Jersey and plaintiff was the only party witness located in Tennessee); *Zhongshan Rising Dragon Foreign Tech. Co. v. B&S Plastics, Inc.*, 2012 WL 13018281, at *4 (E.D. Tenn. June 21, 2012) (transferring venue to California and finding that "flying one person . . . out from Tennessee to California is more logical and efficient than flying dozens of people essential to this case or directly implicated in the alleged infringement from California to Tennessee"); *Temple v. Circuit City Stores, Inc.*, 2006 WL 2796483, at *4 (E.D. Tenn. Sept. 27, 2006) (transferring venue where "the inconvenience falls far more heavily on the defendants and their witnesses" because "there will be few, if any, Tennessee witnesses").

### III. THE INCONVENIENCE TO DEFENDANTS OF LITIGATING IN THIS FORUM OUTWEIGHS ANY INCONVENIENCE TO PLAINTIFFS IN LITIGATING IN THE NORTHERN DISTRICT OF CALIFORNIA

In the prior submissions, Defendants showed how litigating this matter in the Eastern District of Tennessee would be inconvenient for them, particularly in light of the likely evidence being overwhelmingly located far from this forum. (*See* ECF No. 39 at 5-6; ECF No. 38-1 ¶¶ 3-4; ECF No. 40-1 at 14-15; ECF No. 40-4 ¶ 2.) Although Plaintiffs incorrectly challenge the sufficiency of those submissions, they do not really dispute that litigation by three California companies far away from their headquarters would be inconvenient, and instead argue that Defendants can well afford that inconvenience. (*See* Transfer Opp. at 21.) But Plaintiffs do not suggest that they are materially lacking in funds themselves. Although Plaintiffs are private companies without much visibility into their specific finances, as they allege in the Complaint, they are responsible for "[o]ne of the foundational technologies of modern computer networks" and "today's market leader." (Complaint ¶¶ 1-2.) Nor is there any legitimate distinction to be

8

made between Defendants' operations and Plaintiffs' "local businesses." (Transfer Opp. at 16.) Just as Plaintiffs argue that Defendants do business in this District by selling products and entering into agreements in Tennessee (*see id*. at 15-16; ECF No. 48 at 8), Plaintiffs engage in sales and license activities across the country, including in California; as alleged in the Complaint, "the vast majority of managed network computing devices in the world use SNMP." (Complaint ¶ 3.) Indeed, the name of one of the Plaintiffs is literally "SNMP Research *International*, Inc."

Plaintiffs also assert that problems could be caused by Dr. Case's absence from his businesses for the pendency of a trial that may last up to three weeks. (Transfer Opp. at 16.) But there is no reason why Dr. Case would be required to attend the entire trial; he would be electing to do so notwithstanding his retention of highly qualified California-based counsel.[4] (ECF No. 48-1 ¶ 16.) In addition, Plaintiffs continue to weigh the inconvenience of one witness against the numerous witnesses among the three California-based Defendants who would be inconvenienced by litigation in this District.

### IV. FORUM SELECTION CLAUSES IN AGREEMENTS UNRELATED TO THIS LITIGATION ARE COMPLETELY IRRELEVANT

For the reasons set forth in the reply filed by Broadcom and Brocade, Broadcom and Extreme are not bound by the forum selection clause in the License Agreement alleged to have

---

[4] Plaintiffs argue that the "convenience of counsel" does not factor in the § 1404(a) transfer analysis, but courts within the Sixth Circuit have recognized otherwise. *See, e.g.*, *Sacklow v. Saks Inc.*, 377 F. Supp. 3d 870, 879 (M.D. Tenn. 2019) (transferring venue to New York and finding that the inconvenience to plaintiffs' counsel would be minimal). Plaintiffs' argument also misses the point. Defendants are not arguing that transfer is warranted because any of their outside counsel would find litigation in California more convenient. Rather, that Plaintiffs retained counsel in California to file this lawsuit is a further reflection of the fact that litigation in the Northern District of California would not be inconvenient for them. *See id.* ("Any inconvenience that plaintiffs' counsel – who are spread throughout the country and have represented that they are willing to travel to New York for discovery in any event – might encounter in litigating in New York as opposed to Nashville is minimal").

been breached in this litigation. Plaintiffs thus resort to the creative argument that *other agreements* with Plaintiffs *that are not implicated by this litigation* but contain forum selection clauses somehow suggest that both defendants "decided that doing business with SNMP International" was, as a general matter, "worth" the "inconveniences" of potentially litigating in the Eastern District of Tennessee. (Transfer Opp. at 11.) Plaintiffs cite no authority suggesting that forum selection clauses in agreements that are unrelated to a litigation, concerning different circumstances, are relevant when analyzing the propriety of transferring venue. *See Am. Greetings, Corp. v. Cookie Jar Entm't, Inc.*, 2009 WL 3713686, at *7 (N.D. Ohio Nov. 3, 2009) (declining to consider inapplicable forum selection clauses in venue transfer analysis).

Needless to say, the fact that Defendants may have agreed to litigate disputes in the Eastern District of Tennessee in different contexts does not suggest that they would or have agreed to do so in this case, let alone that it is not inconvenient for Defendants to litigate in this forum at this time. Nor does it make any sense to assume, as Plaintiffs do, that the inconveniences created by being forced to litigate in this forum in this case were "foreseeable at the time of contracting" with respect to a separate and distinct agreement to which neither Broadcom nor Extreme were parties. (Transfer Opp. at 11 (quoting *Atlantic Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 64 (2013)).) Any dispute hypothetically arising under those separate agreements would involve, *inter alia*, different software, different terms and conditions, and different individuals who may have relevant information, thus impacting the convenience factors dramatically.[5] Certainly it was not reasonably foreseeable to

---

5    Moreover, the notion that Extreme would have "analyzed" the convenience issue specifically when entering into the specified separate agreement with Plaintiffs is belied by the fact that Extreme was not the original party to that agreement, and only assumed rights and obligations under that agreement over 15 years after its initial execution. (*See* ECF No. 48-11.) Thus, Plaintiffs could not allege that Extreme was involved in negotiating the agreement's forum selection clause. *See H.H. Franchising*
*(cont'd)*

10

the parties entering into those contracts at the time that they would be litigating a separate dispute extrinsic to those contracts in the Eastern District to Tennessee. Plaintiffs' attempt to bootstrap Broadcom and Extreme to this litigation by invoking unrelated agreements therefore should be rejected.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Extreme's moving brief, the Complaint should be dismissed and, in the alternative, any surviving claims should be transferred to the Northern District of California.

DATED: Palo Alto, California
February 2, 2021

Respectfully Submitted,

**SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP**

By: /s John M. Neukom
John M. Neukom (*admitted pro hac vice*)
515 University Avenue, Suite 1400
Palo Alto, California 94301
john.neukom@skadden.com
(650) 470-4500

Jordan A. Feirman (*admitted pro hac vice*)
One Manhattan West
New York, New York 10001
jordan.feirman@skadden.com
(212) 735-3000

*Attorneys for Extreme Networks, Inc.*

---

*Sys., Inc. v. Brooker-Gardner*, 2015 WL 4464774, at *3 (S.D. Ohio July 21, 2015) (finding that an important factor is whether the non-signatory was "involve[d] in the negotiations").

# **CERTIFICATE OF SERVICE**

       I hereby certify that Extreme Networks, Inc.'s Reply Memorandum in Further Support of Its Motion to Dismiss or, in the Alternative, to Transfer to the Northern District of California, and the Declaration of Jordan A. Feirman in Further Support of Defendant Extreme Networks, Inc.'s Motion to Dismiss or Transfer are being served on all counsel of record in the above-captioned litigation via electronic filing and email on this 2nd day of February, 2021.

                                      */s John M. Neukom*
                                      John M. Neukom

                                      SKADDEN, ARPS, SLATE,
                                        MEAGHER & FLOM LLP
                                      515 University Avenue, Suite 1400
                                      Palo Alto, California 94301
                                      (650) 470-4500