# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF TENNESSEE

# AT KNOXVILLE

| | |
|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., | Case No. 3:20-cv-00451 |
| Plaintiffs, | |
| v. | |
| BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; and EXTREME NETWORKS, INC. | |
| Defendants. | |

## REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND/OR TO TRANSFER VENUE

- 1 -

5857416

TABLE OF CONTENTS

Page

A.    The Court Lacks Personal Jurisdiction Over Broadcom.......................................2

B.    Venue Is Improper as to All Defendants...............................................................12

C.    Plaintiffs' Copyright Registrations Are Invalid..................................................13

      1.    Plaintiffs' Copyright Certificates Are Not Presumptively
            Valid..................................................................................................14

      2.    Fraudulent Intent Is Not Required Under 17 U.S.C. 411(b)..................14

      3.    Plaintiffs' Registrations Are Inaccurate and § 411(b)
            Requires Knowledge of Facts, Not Knowledge of Law .........................18

      4.    The Software Was Licensed for Worldwide Distribution .....................21

      5.    The Register Would Have Refused Registration ...................................22

      6.    The Court Must Refer the Matter to the Register of
            Copyrights..............................................................................................22

D.    Plaintiffs' Breach of Contract Claim Is Preempted ...........................................22

Case 3:20-cv-00451-CEA-DCP   Document 56   Filed 02/02/21   Page 2 of 32   PageID #: 1223

5857416

Page(s)

**Cases**

*Advisers, Inc. v. Wiesen-Hart, Inc.*,
238 F.2d 706 (6th Cir. 1956) ................................................................. 16, 17

*Ampro Industr. v. Dr. Farrah Gray Pub.*,
2013 WL 5426257 (W.D. Tenn. Sept. 26, 2013) ............................................ 5

*Arcadia Biosciences, Inc. v. Vilmorin & Cie*,
356 F. Supp. 3d 379 (S.D.N.Y. 2019) .......................................................... 9

*Archie MD, Inc. v. Elsevier, Inc.*,
261 F. Supp. 3d 512 (S.D.N.Y. 2017) ..................................................... 19, 21

*ATC Distribution Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*,
402 F.3d 700 (6th Cir. 2005) ....................................................................... 25

*Baker v. LeBoeuf, Lamb, Leiby & Macrae*,
105 F.3d 1102 (6th Cir. 1997) ................................................................. 9, 11

*Beydoun v. Wataniya Rests. Holding, Q.S.C.*,
768 F.3d 499 (6th Cir. 2014) ......................................................................... 2

*Bowlin v. DTR Tennessee, Inc.*,
2014 WL 12781799 (E.D. Tenn. June 9, 2014) .......................................... 3, 6

*Brandon v. Buffaloe & Assocs., PLC*,
2013 WL 11521679 ................................................................................. 6, 7

*Brown v. Quince Nursing and Rehabilitation Center, LLC*,
2020 WL 4873670 (W.D. Tenn. August 19, 2020) ...................................... 3, 4

*Bruhn NewTech, Inc. v. United States*,
144 Fed. Cl. 755 (2019) ............................................................ 15, 16, 17, 19

*C.H. By & Through Shields v. United States*,
818 F. App'x 481 (6th Cir. 2020) .................................................................. 3

*Chrysler Corp. v. Fedders Corp.*,
643 F.2d 1229 (6th Cir. 1981) ...................................................................... 3

*Cox v. Koninklijke Philips, N.V.*,
647 F. App'x 625 (6th Cir. 2016) .................................................................. 3

*D.C.I. Computer Sys., Inc. v. Pardini*,
978 F.2d 1265 (9th Cir. 1992) ................................................................. 20, 21

- ii -

*Daimler-Chrysler Servs. N. Am., LLC v. Summit Nat., Inc.*,
    289 F. App'x 916 (6th Cir. 2008) ...................................................................... 19, 20, 21

*Dayhoff Inc. v. H.J. Heinz Co.*,
    86 F.3d 1287 (3d Cir. 1996) ........................................................................................ 12

*Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*,
    545 F.3d 357 (6th Cir. 2008) ........................................................................................ 3

*Feldman Law Grp. P.C. v. Liberty Mut. Ins. Co.*,
    819 F. Supp. 2d 247 (S.D.N.Y. 2011) ......................................................................... 18

*Gail Green Licensing & Design Ltd. v. Accord, Inc.*,
    2006 WL 2873202 (N.D. Ill. Oct. 5, 2006) ................................................................. 25

*Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*,
    925 F.3d 1140 (9th Cir. 2019) ................................................................ 15, 17, 18, 19

*Gordon v. Greenview Hosp., Inc.*,
    300 S.W.3d 635 (Tenn. 2009) ....................................................................................... 4

*H.H. Franchising Sys., Inc. v. Brooker-Gardner*,
    2015 WL 4464774 (S.D. Ohio July 21, 2015) .............................................................. 9

*Harris v. Lloyds TSB Bank, PLC*,
    281 Fed. App'x 489 (6th Cir. 2008) .............................................................................. 8

*Highway Commercial Servs., Inc. v. Zitis*,
    2008 WL 1809117 (S.D. Ohio Apr. 21, 2008) ............................................................. 9

*Hitachi Med. Sys. Am., Inc. v. St. Louis Gynecology & Oncology, LLC*,
    2011 WL 711568 (N.D. Ohio Feb. 22, 2011) ........................................................... 9, 11

*Hudson v. Reno*,
    130 F.3d 1193 (6th Cir. 1997) ..................................................................................... 15

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    582 F.3d 156 (1st Cir. 2009) ....................................................................................... 14

*In re Sallee*,
    286 F.3d 878 (6th Cir. 2002) ....................................................................................... 18

*Ingram Barge v. Americas Styrenics*,
    2015 WL 5228154 n.8 (M.D. Tenn. Sept. 8, 2015) ...................................................... 8

5857416

Page(s)

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*,
    559 U.S. 573 (2010)................................................................................................... 19

*Keel v. Tilton*,
    2009 WL 1035362 (E.D. Cal. Apr. 17, 2009)............................................................. 17

*Lea v. Warren County*,
    2017 WL 4216584 (6th Cir. May 4, 2017) ........................................................... 12, 13

*McLaren v. Chico's FAS, Inc.*,
    2010 WL 4615772 (S.D.N.Y. Nov. 9, 2010)............................................................... 20

*Medtronic, Inc. v. Endologix, Inc.*,
    530 F. Supp. 2d 1054 (D. Minn. 2008)....................................................................... 11

*Molina-Crespo v. U.S. Merit Sys. Prot. Bd.*,
    547 F.3d 651 (6th Cir. 2008) ...................................................................................... 19

*Nason Homes, LLC v. Singletary Constr., LLC*,
    2016 WL 6952257 (M.D. Tenn. Jan. 29, 2016)................................................ 16, 17, 18

*Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*,
    91 F.3d 790 (6th Cir. 1996) .......................................................................................... 8

*Nelson-Salabes, Inc. v. Morningside Dev., LLC*,
    284 F.3d 505 (4th Cir. 2002) ........................................................................................ 6

*Palmer/Kane LLC v. Rosen Book Works LLC*,
    188 F. Supp. 3d 347 (S.D.N.Y. 2016).......................................................................... 15

*Parker v. Winwood*,
    938 F.3d 833 (6th Cir. 2019) ................................................................................ 2, 5, 6

*Universal Instruments Corp. v. Micro Systems Engineering, Inc.*,
    924 F.3d 32 (2nd Cir. 2019)................................................................................... 24, 25

*Real View, LLC v. 20-20 Techs., Inc.*,
    789 F. Supp. 2d 268 (D. Mass. 2011) .......................................................................... 23

*Regions Bank v. Wyndham Hotel Mgmt., Inc.*,
    2010 WL 908753 (M.D. Tenn. Mar. 12, 2010) ........................................................... 11

*Richelson v. Liberty Ins. Corp.*,
    796 F. App'x 277 (6th Cir. 2020) ............................................................................... 18

5857416

Page(s)

*Roberts v. Gordy*,
877 F.3d 1024 (11th Cir. 2017) ................................................................. 17

*Roche v. CitiMortgage, Inc.*,
2019 WL 1752600 (6th Cir. Feb. 21, 2019) ............................................... 18

*Ross, Brovins & Oehmke, P.C. v. Lexis/Nexis*,
348 F. Supp. 2d 845 (E.D. Mich. 2004)..................................................... 25

*S. Mach. Co. v. Mohasco Indus., Inc.*,
401 F.2d 374 (6th Cir. 1968) ....................................................................... 2

*Schenck v. Orosz*,
105 F. Supp. 3d 812 (M.D. Tenn. 2015)..................................................... 17

*SellPoolSuppliesOnline.com LLC v. Ugly Pools Arizona Inc.*,
2018 WL 4565900 (D. Ariz. Sept. 24, 2018).............................................. 15

*Shaffer v. Interbank FX*,
2013 WL 53979 (E.D. Tenn. Jan. 3, 2013)................................................. 11

*Smith v. BAC Home Loans Servicing, LP*,
552 F. App'x 473 (6th Cir. 2014)............................................................... 18

*St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*,
573 F.3d 1186 (11th Cir. 2009) ................................................................. 17

*Sullivan v. Stroop*,
496 U.S. 478 (1990)................................................................................... 15

*Susnjar v. United States*,
27 F.2d 223 (6th Cir. 1928) ....................................................................... 17

*ThorWorks Indus. v. E.I. DuPont De Nemours & Co.*,
606 F. Supp. 2d 691 (N.D. Ohio 2008)....................................................... 11

*Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,
959 F.3d 1194 (9th Cir. 2020) ................................................................... 22

*United States v. Belevin-Ramales*,
458 F. Supp. 2d 409 (E.D. Ky. 2006) ........................................................ 17

*Walden v. Fiore*,
571 U.S. 277 (2014).................................................................................... 4

Case 3:20-cv-00451-CEA-DCP   Document 56   Filed 02/02/21   Page 6 of 32   PageID #: 1227
5857416

Page(s)

*Walker v. Evans*,
2012 WL 917772 (E.D. Mich. Mar. 19, 2012) ............................................................ 22

*Wiedo v. Securian Life Ins. Co.*,
2020 WL 5219536 (E.D. Ky. Sept. 1, 2020) ............................................................... 11

*Wilson v. 5 Choices, LLC*,
776 F. App'x 320 (6th Cir. 2019) .............................................................................. 11

*Winston v. Zaehringer*,
2020 WL 3259531 (E.D. Tenn. June 16, 2020) ............................................................ 8

*Wireless Properties, LLC v. Crown Castle Int'l Corp.*,
2011 WL 3420734 (E.D. Tenn. Aug. 4, 2011) ....................................................... 9, 11

*Wrench LLC v. Taco Bell Corp.*,
256 F.3d 446 (6th Cir. 2001) .................................................................................... 24

**Statutes**

17 U.S.C. 411(b) ........................................................................................... passim

§ 411(b)(1)(A) and (B) .................................................................................... 15

§ 411   17

17 U.S.C. § 101 ................................................................................................... 20

17 U.S.C. § 410 ................................................................................................... 14

17 U.S.C. § 411(b)(1) .......................................................................................... 14

17 U.S.C. § 411(b)(2) ............................................................................. 1, 17, 22

18 U.S.C. § 1341 ................................................................................................. 18

28 U.S.C. § 1404 ................................................................................................. 13

8 U.S.C. § 1324(a)(1)(A)(iii) ............................................................................. 17

Pub. L. No. 110-403, § 101, 122 Stat. 4256, 4257 (2008) ................................. 14

5857416

Plaintiffs' opposition fails to show that their claims arise from any Tennessee-related activity by Broadcom or that Broadcom has purposefully availed itself of this forum. They have therefore failed to meet their prima facie burden and the Court must find that it lacks personal jurisdiction over Broadcom. Moreover, because this Court lacks personal jurisdiction over Broadcom, venue is improper for all Defendants. The case therefore should be dismissed or transferred to the Northern District of California where all Defendants reside.

Plaintiffs also ignore the plain language of 17 U.S.C. § 411(b), as amended in 2008, and instead rely on outdated case law to defend their materially inaccurate copyright registrations. Plaintiffs do not seriously dispute that licensing software constitutes "publication" under the Copyright Act, nor could they. Instead, they argue Defendants must show Plaintiffs intended to "defraud" the Copyright Office when they filed their inaccurate registrations, which described their long-licensed software as "unpublished." But on its face, Section 411(b) requires only "knowledge" of the relevant facts, not an intent to defraud. Plaintiffs' own allegations demonstrate that they had already licensed the alleged software for ███████ distribution to third parties for nearly a decade when they registered the software as "unpublished." Plaintiffs' registrations are unquestionably invalid and their copyright claims must be dismissed. At a minimum, Section 411(b) is clear that "[i]n any case in which inaccurate information…is *alleged*, the court *shall* request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(2) (emphasis added).

Finally, Plaintiffs have failed to rescue their breach of contract claim from their own allegations. While they are correct that breach of contract claims often are not preempted by the Copyright Act, that is not always the case. Here, Plaintiffs expressly allege that *identical* conduct

- 1 -

5857416

supports both their breach of contract claim and copyright infringement claims. *See, e.g.*, Compl. ¶ 14. Thus, there are no "extra elements" that render Plaintiffs' breach of contract claim qualitatively different from their copyright claims. Under such circumstances, the Court must find preemption.

**A. The Court Lacks Personal Jurisdiction Over Broadcom.**

Plaintiffs do not contest that this Court lacks general jurisdiction over Broadcom and have thus forfeited this point. *Parker v. Winwood*, 938 F.3d 833, 839 (6th Cir. 2019) (assuming no general personal jurisdiction where it was not argued). Plaintiffs also fail to sufficiently allege this Court has specific jurisdiction over Broadcom.

       1.      <u>Plaintiffs' Allegations Do Establish Specific Jurisdiction over Broadcom</u>.

Plaintiffs' approach to specific jurisdiction is clear. They believe that if they mention enough pseudo-contacts with Tennessee or with Plaintiffs, all of which are unrelated to this litigation, the Court will be confused into finding personal jurisdiction where there is none. Unfortunately for Plaintiffs, that is not how due process works. In the Sixth Circuit, three criteria must be satisfied for contacts to give rise to personal jurisdiction: (1) the defendant must purposefully avail himself of the forum state; (2) the claims must arise from the defendant's activities there; and (3) the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). Critically, the "cause of action must be *proximately caused* by the defendant's contacts with the forum state." *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 507-08 (6th Cir. 2014) (emphasis added). Thus, "the cause of action must . . . have a substantial connection with the defendant's in-state activities." *Id.* at

5857416

507 (internal citation and quotation marks omitted).[1]

        a.      <u>Plaintiffs Do Not Allege Alter Ego</u>.

Throughout their motion, Plaintiffs elide the conduct of Broadcom with that of various other legal entities, including its subsidiaries. But they fail to contend, as they must, that they are seeking to pierce the corporate veil between these entities or that Broadcom and Brocade are alter egos of one another. *See, e.g.*, *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008) (critiquing plaintiffs who attempted to blur the lines between separate legal entities without arguing for an "alter-ego theory of personal jurisdiction" to pierce the veil).

It is well settled that "[d]eriving substantial revenue from a subsidiary that is subject to the jurisdiction of the court in the forum state, alone, is not enough for a court to have jurisdiction over that subsidiary's parent company." *Brown v. Quince Nursing and Rehabilitation Center, LLC*, 2020 WL 4873670, \*7 (W.D. Tenn. August 19, 2020) (citing *Cox v. Koninklijke Philips, N.V*., 647 F. App'x 625, 629 (6th Cir. 2016)). Rather, a non-resident parent corporation is amenable to suit in the forum state only if the plaintiff alleges an "alter-ego theory of personal jurisdiction," which Plaintiffs have not even attempted to do.[2] *Estate of Thomson*, 545 F.3d at 362. Plaintiffs therefore

---

[1] Plaintiffs are also not entitled to jurisdictional discovery. Jurisdictional discovery should not be granted where Plaintiffs fail to allege even prima face facts sufficient to establish personal jurisdiction. *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981) (affirming district court's denial of discovery where plaintiff failed to allege facts that suggest discovery would support personal jurisdiction). Jurisdictional discovery is only available to plaintiffs who explain with particularity what supportive evidence it could reveal. *Bowlin v. DTR Tennessee, Inc.*, 2014 WL 12781799, at \*3 (E.D. Tenn. June 9, 2014) (Greer, J.) (requiring "reasonable particularity" about possible jurisdictional evidence (citation omitted)); *C.H. By & Through Shields v. United States*, 818 F. App'x 481 (6th Cir. 2020) (holding that "merely assert[ing] the need for discovery" is not enough (quotation marks omitted)). Jurisdictional discovery in this case would amount to nothing more than an expensive and time-consuming fishing expedition.

[2] Under Tennessee law, the Court has personal jurisdiction over an entity defendant under the alter-

(Continued...)

5857416

must allege relevant conduct by Broadcom Inc. that is distinct from the conduct of its subsidiaries, and they have failed to do so.

      b.      <u>Plaintiffs Fail to Allege Purposeful Availment or that this Case Arises from Broadcom's Activities in Tennessee</u>.

To establish specific jurisdiction over a defendant, it is fundamental that an action must arise from the defendant's forum-related conduct. *Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("[T]he relationship must arise out of contacts that the defendant *himself* creates with the forum State," not "contacts between the plaintiff (or third parties) and the forum State."). Tellingly, Plaintiffs almost entirely ignore the "arising from" requirement for specific jurisdiction in their opposition.[3]  Plaintiffs address this critical requirement in only *one* conclusory sentence with no supporting facts: "Plaintiffs' claims are substantially connected to and 'made possible' by Broadcom's misconduct, alleged marketing and licensing in this District, and prior negotiations with Plaintiffs." Opp. at 17-18.  But Plaintiffs do not explain what "misconduct" they are referring to, how any "prior negotiations with Plaintiffs" gave rise to their claims, or how these negotiations or "misconduct" relate in any way to Tennessee.   Moreover, as explained in Defendants' motion to dismiss, Plaintiffs' conclusory allegation, made on "information and belief," that Broadcom marketed and licensed unidentified "products" in this District is insufficient to establish specific jurisdiction over Broadcom.  *Id*.  Indeed, even if this were true, Plaintiffs do not allege, as they must, that Broadcom's purported marketing and licensing of such unidentified products forms the

ego theory if a plaintiff demonstrates: "(1) that the subsidiary corporation is a sham or dummy[;] (2) that the two corporations are, in fact, identical and indistinguishable[;] or (3) that the subsidiary corporation is merely an instrumentality, agent, conduit, or adjunct of the parent corporation[.]" *Brown*,  2020 WL 4873670, at *8 (citing *Gordon v. Greenview Hosp., Inc*., 300 S.W.3d 635, 652 (Tenn. 2009)).  Plaintiffs do not allege, let alone demonstrate, that any of these factors exist here.

[3] They also almost entirely ignore the "reasonableness" requirement for jurisdiction.

5857416

basis of the copyright claims alleged in the Complaint.[4]

Plaintiffs have also failed to meet their prima facie burden to establish that Broadcom has "purposefully availed" itself of this forum. The Sixth Circuit has made clear that the defendant's interaction with the forum must be intentional and specific. In *Parker v. Winwood*, 938 F.3d 833, 839 (6th Cir. 2019), the plaintiffs argued that the defendant's alleged copyright infringement provided personal jurisdiction in the Tennessee forum because the defendant, by infringing, harmed the plaintiffs, who were Tennessee residents. The court held that this mistakenly focused on the plaintiffs', and not the defendant's, connection with the forum. *Id.* at 840. A firm does not purposefully avail itself of a forum state if he is merely aware that he is contributing to nationwide commerce. *Id.* at 840-41. Instead, the firm must do something "specifically directed" to the copyright infringement in Tennessee. *Id.* To the extent Plaintiff relies on *Ampro Industr. v. Dr. Farrah Gray Pub.*, 2013 WL 5426257 (W.D. Tenn. Sept. 26, 2013) to suggest the opposite, *Parker* controls. *See* Opp. at 8.

Curiously, Plaintiffs first contend Broadcom purposefully availed itself of this forum because, "[u]pon information and belief," Broadcom somehow profited from and was involved with Brocade's transfer of the software to Extreme. Opp. at 13.; Compl. ¶¶ 65-66. But Plaintiffs do not allege that Brocade's divestiture to Extreme (both California companies) involved Tennessee in any way. *Id.* Plaintiffs also completely ignore the undisputed, publicly available, and fatal fact that Broadcom acquired Brocade *after* Brocade's divestiture to Extreme. Brazeal

---

[4] Plaintiffs allege only, on information and belief, that Broadcom markets and licenses products in this District, including "products containing the software at issue in this case." But even if this were true (it is not), specific jurisdiction cannot be established simply because Broadcom markets and licenses unidentified products containing the same SNMP software at issue in this case. Plaintiffs tellingly and fatally do not allege, as they must, that Broadcom's alleged marketing and licensing of products in this District form the basis of their claims. Moreover, as the Declaration of Mark Brazeal makes clear, Broadcom Inc. is a *holding* company and engages in no such activities. Brazeal Decl. ¶ 5.

- 5 -

¶ 4. Moreover, this is a conclusory allegation, and the Complaint alleges <u>no</u> facts to support it. *See Brandon v. Buffaloe & Assocs., PLC*, 2013 WL 11521679, at *1 n. 1 (E.D. Tenn. Sept. 4, 2013) (Greer, J.) (rejecting a pleading because "[a]n allegation made 'on information and belief' is not a factual allegation but rather a conclusory allegation," which is insufficient to plead a fact); *Bowlin v. DTR Tennessee, Inc.*, 2014 WL 12781799, at *1 (E.D. Tenn. June 9, 2014) (Greer, J.) (noting that "[a]n allegation made 'on information and belief' is not a factual allegation but rather a conclusory allegation, representing nothing more than plaintiff's 'belief' that these allegations are true.")

Plaintiffs' unsupported allegations of a "practical partnership" similarly do not establish purposeful availment. Plaintiffs provide no support for the proposition that being a "practical partner" for purposes of copyright liability is in any way relevant to whether a court has specific jurisdiction over a defendant. Rather, Plaintiffs merely discuss the "practical partner" doctrine as it relates to joint-and-several liability for copyright infringement. Opp. at 13-14. These are entirely separate legal issues. *See generally, e.g.*, *Parker*, 938 F.3d 833 (finding no specific jurisdiction in Tennessee despite defendant's alleged liability for copyright infringement). To "support" their point, Plaintiffs cite only unpublished Michigan cases that discuss specific jurisdiction principles generally and do not discuss the "practical partnership" doctrine at all. *Id.* As discussed above, the Sixth Circuit applies an alter ego test, not a "practical partner" test, to establish personal jurisdiction over a parent corporation. Plaintiffs also provide no legal support for their assertion that a parent company deriving revenue from its subsidiary somehow renders the parent and subsidiary "practical partners" for purposes of copyright liability: the one case Plaintiffs rely on does not involve a parent/subsidiary relationship and is inapposite. *Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 517 (4th Cir. 2002).

- 6 -

5857416

Plaintiffs also contend that Broadcom (a holding company) purposefully availed itself of a Tennessee forum by marketing and licensing unidentified products in this District. But, as explained above, Plaintiffs allege no facts to support this conclusory allegation (nor could they), and have not alleged that their claims in this case arise from any such activities (as they must). Plaintiffs weakly assert that "Brocade's products are Broadcom's products" and cite to a website referencing Brocade's products. *See* Opp. at 15 n.3. But Plaintiffs do not explain how the products on the website are related to the alleged infringement or how this website demonstrates that Brocade's products are Broadcom's products beyond the normal parent/subsidiary relationship. *Brandon*, 2013 WL 11521679, at *1 n.1 (rejecting factual pleadings that are merely conclusory assumptions).

Finally, Plaintiffs contend that Broadcom has purposefully availed itself of this forum because "Broadcom, both itself and through its subsidiaries, has a long-term relationship with Plaintiffs." Opp. at 16. But again, Plaintiffs cannot establish personal jurisdiction over Broadcom based on Plaintiffs' relationship with different legal entities. Only Broadcom's contacts with the forum are relevant. For Broadcom, Plaintiffs point to only two things: (1) an amendment to an unrelated license agreement signed by Broadcom; and (2) "extensive negotiations with Plaintiffs in which, among other things, Broadcom representatives spoke on behalf of Brocade and represented the ability to obtain a license agreement on behalf of Brocade." *See* Opp. at 16-17; Complt. ¶ 26. But, as discussed in Defendants' motion to dismiss, an amendment to an unrelated agreement is insufficient to establish personal jurisdiction over Broadcom. Mot. at 8; Brazeal Decl. at 2.

Likewise, Plaintiffs do not allege their "extensive negotiations" with individuals whom they believed to be Broadcom employees had any connection to Tennessee or this case. Compl.

- 7 -

5857416

¶ 26.  In their opposition, Plaintiffs attach four communications showing nothing more than employees of Broadcom subsidiaries responding to Plaintiffs in an effort to resolve the present dispute.  Such communications in no way show Broadcom "purposefully availed" itself of a Tennessee forum.  *See* Case Decl. Ex. D-G; Declaration of Jack Rondoni ("Rondoni Decl.") ¶ 3 (identifying Martin Skagen is a Brocade employee).  If such a meager showing were sufficient to establish personal jurisdiction, a defendant would be subject to personal jurisdiction anywhere a plaintiff resides simply by engaging in discussions with the plaintiff in an effort to resolve the dispute.  This, of course, is not and should not be the law.  *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 796 (6th Cir. 1996) (finding absurd the notion of exerting personal jurisdiction over a defendant who entered the forum in order to resolve the dispute).  Moreover, there is no purposeful availment when a defendant's communications were in response to communications initiated by the plaintiff, as they were in this case.  *See Harris v. Lloyds TSB Bank, PLC*, 281 Fed. App'x 489, 495 (6th Cir. 2008); *see also* Case Decl. Ex. D-G.[5]

       c.      The Forum-Selection Clause Does Not Apply to Broadcom.

Plaintiffs argue that the Court has personal jurisdiction over Broadcom because it is subject to the forum-selection clause in the License Agreement.  Plaintiffs are wrong.  "The 'cardinal rule' of contract interpretation" is effectuating the contracting parties' intent, and "[w]ithout a forum selection clause between the Parties, it cannot be assumed that the Parties intended for a forum selection clause to bind them."  *Winston v. Zaehringer*, 2020 WL 3259531,

---

[5] Plaintiffs' reliance on *Ingram Barge v. Americas Styrenics*, 2015 WL 5228154, at *4 n.8 (M.D. Tenn. Sept. 8, 2015) is misplaced.  In *Ingram*, the court held that a firm that solicited proposals from, and engaged in lengthy negotiations with, a Tennessee firm for a three-year service contract could be haled into a Tennessee court for a contract action arising from that contract.  But here, Broadcom was not a party to the License Agreement and the "negotiations" alleged by Plaintiffs involved efforts to resolve the current dispute after it was raised by Plaintiffs.  *See* Case Decl. Ex. D-G.

- 8 -

at \*8 (E.D. Tenn. June 16, 2020) (Greer, J.) (citation omitted); *Highway Commercial Servs., Inc. v. Zitis*, 2008 WL 1809117 at \*5 (S.D. Ohio Apr. 21, 2008) (same).

To get around this rule, Plaintiffs assert that a non-signatory is bound by a forum-selection clause when the non-signatory is "closely related to the dispute such that it becomes foreseeable that it will be bound." Opp. at 12 (quoting *Baker v. LeBoeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102, 1106 (6th Cir. 1997)). But "closely related" in this context is generally understood to capture "shareholders, officers, and directors of a corporation," and not separate legal entities. *Highway Commercial Servs., Inc.*, 2008 WL 1809117 at \*4.

Moreover, it was not foreseeable that Broadcom would be bound to a forum-selection clause in a license agreement that Brocade and SNMP Research International executed several years prior to Broadcom's acquisition of Brocade. Plaintiffs do not allege that Broadcom was involved in negotiating the License Agreement. *See, e.g.*, *H.H. Franchising Sys., Inc. v. Brooker-Gardner*, 2015 WL 4464774, at \*3 (S.D. Ohio July 21, 2015) (assigning significant weight to a non-signatory's "involvement in the negotiations").[6] Nor do Plaintiffs allege that Broadcom is the alter ego of Brocade or that the License Agreement was assigned to Broadcom as part of the acquisition. *See Arcadia Biosciences, Inc. v. Vilmorin & Cie*, 356 F. Supp. 3d 379, 390 (S.D.N.Y. 2019) (explaining that it is "axiomatic" that a non-signatory is not bound by a forum-selection clause unless the contract was signed by its agent, the contract was assigned to it, or it is an alter ego of the party, and holding that a non-signatory could not be bound when it became an affiliate

---

[6] *See also Wireless Properties, LLC v. Crown Castle Int'l Corp.*, 2011 WL 3420734, at \*5 (E.D. Tenn. Aug. 4, 2011) (holding that a non-signatory was bound to a forum-selection clause in an agreement which it participated in negotiating); *Hitachi Med. Sys. Am., Inc. v. St. Louis Gynecology & Oncology, LLC*, 2011 WL 711568, \*11 (N.D. Ohio Feb. 22, 2011) (holding that a non-signatory could not ratify, and thus be bound, by a forum-selection clause that was signed before the non-signatory had acquired the signatory).

5857416

of the signatory *only after* the agreement was signed).

Plaintiffs instead contend that Broadcom should be bound by the forum-selection clause in the License Agreement because Broadcom purportedly took part in "extensive negotiations" with Plaintiffs during which "Broadcom representatives spoke on behalf of Brocade in order to broker a new license agreement to replace the Agreement." Opp. at 13; Compl. ¶ 26. But, even accepting Plaintiffs allegations as true, such negotiations have no bearing whatsoever on whether Broadcom is bound by the forum-selection clause in the License Agreement. Plaintiffs do not allege a new license agreement pertaining to this case was ever agreed to, or that it contained a forum-selection clause, or that Broadcom was a signatory to any such new agreement.

Plaintiffs also contend that the forum-selection clause in the License Agreement should apply to Broadcom because it shares profits with Brocade or because Broadcom is Brocade's "practical partner." But again, the "practical partner" doctrine has nothing to do with personal jurisdiction or the applicability of forum-selection clauses. Similarly, any suggestion that Broadcom is bound by the forum-selection clause in the License Agreement because Broadcom somehow benefited financially from Brocade's divestiture to Extreme, which undisputedly occurred before Broadcom even acquired Brocade, is nonsensical.

Plaintiffs next argue that because Broadcom and Brocade share counsel in this dispute, Broadcom is somehow bound by the forum-selection clause in the License Agreement.[7] Opp. at 13. Plaintiffs again cite no applicable legal support for this illogical jump. The out-of-circuit district court opinion Plaintiffs cite is inapposite and in no way suggests that non-signatories to a contract are bound by a forum-selection clause any time they share counsel with a signatory.

---

[7] Plaintiffs even go so far as to contend Broadcom should be bound by the forum-selection clause in the License Agreement because Brocade's ownership was not discussed in the Corporate Disclosure Statement filed in this case. But Brocade is not a corporation.

*Medtronic, Inc. v. Endologix, Inc.*, 530 F. Supp. 2d 1054 (D. Minn. 2008).

The other cases cited by Plaintiffs are either irrelevant or support Broadcom's position. For example, *Baker v. LeBoeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102, 1106 (6th Cir. 1997), held that the forum-selection clause was *not* enforceable against the non-signatory. And *Wilson v. 5 Choices, LLC*, 776 F. App'x 320 (6th Cir. 2019), involved facts very different from those alleged here. The court in *Wilson* found that all the defendants were closely related to the contractual dispute because they had unlawfully conspired to defraud the plaintiff signatories through the contract at issue. Further, the signatory plaintiffs were attempting to evade the forum-selection clause that they had agreed to, and the court refused to allow them to name non-signatory defendants as a "loophole" to the plaintiffs' own agreement. *Id.* at 328-29.[8]

Meanwhile, Plaintiffs overlook more factually analogous cases that have found insufficient relationships between the non-signatory party and the contractual dispute. *See, e.g.*, *ThorWorks Indus. v. E.I. DuPont De Nemours & Co.*, 606 F. Supp. 2d 691, 697 (N.D. Ohio 2008) (refusing to enforce forum-selection clause against non-signatory that was "a separate corporate and legal entity"); *Hitachi Med. Sys. Am., Inc. v. St. Louis Gynecology & Oncology, LLC*, 2011 WL 711568,

---

[8] The district court opinions that Plaintiffs rely on further illustrate why Broadcom is not bound by the forum-selection clause in the License Agreement. *See Wireless Props., LLC v. Crown Castle Int'l Corp.*, 2011 WL 3420734, at *5 (E.D. Tenn. Aug. 4, 2011) (unpublished op.) (claims in the suit were "related to the negotiation process for the contract at issue," a negotiation process in which the defendants were directly involved; also, *defendants* (as non-signatories) requested that the court *enforce* the forum-selection clause); *Shaffer v. Interbank FX*, 2013 WL 53979 (E.D. Tenn. Jan. 3, 2013) (challenging venue and not personal jurisdiction and involving only parties who *had* signed forum-selection clauses); *Wiedo v. Securian Life Ins. Co.*, 2020 WL 5219536 (E.D. Ky. Sept. 1, 2020) (mem. op.) (not a challenge to personal jurisdiction, and the non-signatory defendant had agreed to insure one of the signatories for benefits under the contract that contained the forum-selection clause); *Regions Bank v. Wyndham Hotel Mgmt., Inc.*, 2010 WL 908753, at *7 (M.D. Tenn. Mar. 12, 2010) (unpublished) (holding that the clause applied to a non-signatory to whom the contract *had been assigned* and where that contract was incorporated by reference into another agreement to which the non-signatory party had joined).

- 11 -

5857416

at *8-9 (N.D. Ohio Feb. 22, 2011) (noting a non-signatory that purchased a signatory was not necessarily a successor entity to the agreement and thus was not bound to the clause). Plaintiffs concede that Broadcom is a separate corporate and legal entity from Brocade, and do not assert the License Agreement was assigned to Broadcom. Thus, there is no basis to subject Broadcom to the forum-selection clause in the License Agreement as an end run to personal jurisdiction. *See Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1297 (3d Cir. 1996) (holding that parties "should not by reason of their corporate relationship" with a signatory be able to enforce "forum selection clauses, for there is no more reason to disregard the corporate structure with respect to such claims as there would be to disregard it with respect to other legal matters").

### B.  Venue Is Improper as to All Defendants.

Plaintiffs essentially concede that, if the Court concludes that there is no personal jurisdiction over Broadcom, then venue as to Broadcom is improper. Opp. at 18 (only arguing that venue is proper because personal jurisdiction is proper). If venue is improper as to Broadcom, then venue as to the entire case is improper. In their opposition to Extreme's motion to dismiss, Plaintiffs claim that the cases cited by Defendants only hold that individual defendants for whom venue is improper should be dismissed from the case. [9] Not so. *See, e.g., Lea v. Warren County*, 2017 WL 4216584, at *2 (6th Cir. May 4, 2017) (dismissing the entire case for refiling in the appropriate jurisdiction). It is well settled that if venue is improper one for defendant, it is improper for all, and the case must be dismissed or transferred. *See* Mot. at 14. Broadcom and

---

[9] Plaintiffs urge the Court to dismiss Broadcom from the case if the Court finds no jurisdiction. The implication is that Plaintiffs would seek to file a parallel litigation against Broadcom in the Northern District of California (or another jurisdiction where Broadcom is subject to jurisdiction). It would be inefficient and inconvenient to conduct two parallel litigations in separate forums. Instead, the Court should dismiss the entire case or transfer it to a venue that is proper to all defendants.

5857416

Brocade also join in arguments made by Extreme in its reply in support of its motion to transfer pursuant to 28 U.S.C. § 1404 and incorporate them by reference here. Both Broadcom and Brocade would be significantly inconvenienced if its executives and employees had to participate in a three-week trial 2,000 miles away from their homes and workplaces.[10]

## C. Plaintiffs' Copyright Registrations Are Invalid.

Plaintiffs' copyright infringement claims must be dismissed because their copyright registrations are invalid. The Complaint's allegations make clear that Plaintiffs incorrectly registered their software as unpublished works even though they had distributed their software prior to registration. Mot. at 16-20. Plaintiffs concede that (1) SNMP Research's software was registered with the Copyright Office as unpublished in 2011 (Compl. ¶ 33); (2) nearly ten years prior to that registration, SNMP Research International ("SNMPRI") allegedly licensed the same software to Brocade (*id*. ¶ 34);[11] (3) the license agreement granted Brocade a "████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████" (*id*. Ex. A § 3);[12] and (4) Plaintiffs had full knowledge that they had licensed out their software (*id*. Ex. A (license agreement signed by CEO of SNMP Research International and dated in 2001). Thus, on the face of the Complaint, Plaintiffs' copyright registrations are invalid. The Court should hold that their copyright registrations are invalid as a

---

[10] Plaintiffs also misrepresent to the Court that Broadcom and Brocade were "conspicuously silent" as to whether jurisdiction is proper as to them in the Northern District of California. This is false. *See* Mot. at 2 ("Thus, the Court should either dismiss the case or, in the alternative, transfer it in its entirety to the United States District Court for the Northern District of California, where all Defendants are subject to personal jurisdiction and venue is proper."); *see also id*. at 14.

[11] Although not necessary to decide this motion, the exhibits submitted in connection with Plaintiffs' opposition show Plaintiffs also licensed their software to others (*see* Case Decl. Ex. H-J).

[12] Plaintiffs have previously moved to seal the License Agreement. *See* Dkt. No. 2.

- 13 -

5857416

matter of law or submit a referral to the Copyright Office.

      1.    <u>Plaintiffs' Copyright Certificates Are Not Presumptively Valid.</u>

Plaintiffs tellingly begin their validity argument by stating "[t]he United States Copyright Office has issued to SNMP Research copyright certificates that are <u>presumptively valid</u>." Opp. 9, 19-20. But this begs the question. As Plaintiffs understood when they registered their copyrights as "unpublished" in 2011, the presumption of validity applies only if the work was registered within five years after first publication. *See* 17 U.S.C. § 410. Thus, if Plaintiffs' copyrights had been registered as "published" in 2011, the presumption of validity would not apply because they were first published in 2001 (or earlier).

      2.    <u>Fraudulent Intent Is Not Required Under 17 U.S.C. 411(b).</u>

Plaintiffs argue that a finding of fraud is required to invalidate their copyright registrations. Opp. at 20-24. They are wrong. Congress enacted the Prioritizing Resources and Organization for Intellectual Property Act of 2008 to, *inter alia*, set forth the standard under which the validity of copyright registrations could be challenged. *See* Pub. L. No. 110-403, § 101, 122 Stat. 4256, 4257 (2008). This standard is codified at 17 U.S.C. § 411(b), which provides that the registration requirement for civil infringement actions is satisfied by a certificate of registration "unless—

    (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and

    (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration."

17 U.S.C. § 411(b)(1). The statute does not require a finding of intention to defraud the Copyright Office—even though Congress is surely aware of what fraud is and how to draft legislation requiring fraudulent intent. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 175 (1st Cir. 2009) ("[T]here can be no question that Congress was aware of the

- 14 -

existence of state law liability schemes so ubiquitous as common law fraud . . . .").

Because the language of § 411(b) is clear, the Court need not look any further in discerning the meaning of the statute. *Hudson v. Reno*, 130 F.3d 1193, 1199 (6th Cir. 1997), abrogated on other grounds by *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843 (2001) (internal citations and quotation marks omitted); *Sullivan v. Stroop*, 496 U.S. 478, 482 (1990). Even beyond the statute's text, this interpretation is confirmed by the congressional record. No committee report or congressional hearing indicates that Congress intended to impose a requirement of fraudulent intent. The word "fraud" does not appear in the text of the House Judiciary Committee's Report on the legislation or the congressional hearings on this legislation. H.R. Rep. No. 110-617, at 24 (2008); *see Prioritizing Resources and Organization for Intellectual Property Act: Hearings on H.R. 4279 Before the Subcomm. on Courts, the Internet, and Intellectual Property*, 110th Cong. (2007).

The Ninth Circuit adhered to the statute's plain language in holding that "§ 411(b) . . . does not require a showing of fraud, but only that the claimant included inaccurate information on the application 'with knowledge that it was inaccurate.' " *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 925 F.3d 1140, 1147 (9th Cir. 2019), cert. denied, 140 S. Ct. 1294, 206 L. Ed. 2d 375 (2020).[13] Other courts have agreed.[14] *See* Opp. at 21 n.6.

---

[13] Plaintiffs raise a peculiar argument that the Ninth Circuit's decision in *Gold Value* is not good law in the Ninth Circuit because one panel of the circuit court cannot overturn the decision of an earlier panel. Opp. 16-17. But *Gold Value* does not purport to overrule prior Ninth Circuit panels. Rather, it distinguished them as having not considered the question of whether fraud is a requirement for copyright registration invalidation. *Gold Value*, 925 F.3d at 1147.

[14] *See Bruhn NewTech, Inc. v. United States*, 144 Fed. Cl. 755, 802 (2019) ("[T]his court concludes that 17 U.S.C. § 411(b) does not require a showing of fraud or willfulness to invalidate a copyright registration for purposes of filing a copyright infringement claim."); *SellPoolSuppliesOnline.com LLC v. Ugly Pools Arizona Inc.*, 2018 WL 4565900, at *12 (D. Ariz. Sept. 24, 2018), aff'd, 804 F. App'x 668 (9th Cir. 2020) ("The Court, therefore, concludes that it is not necessary to show fraud on the copyright office for § 411(b)(1)(A) and (B) to apply . . . ."); *Palmer/Kane LLC v. Rosen*
(Continued...)

- 15 -

Plaintiffs invite the Court to reject this plain meaning and impose a requirement of fraudulent intent for several reasons, each of which is unavailing. Plaintiffs primarily argue that the statute is inconsistent with Sixth Circuit precedent holding that errors in copyright registrations do not invalidate registrations where such errors are "unaccompanied by fraud . . . ." *Advisers, Inc. v. Wiesen-Hart, Inc.*, 238 F.2d 706, 708 (6th Cir. 1956). This common law rule pre-dates the statute at issue by 52 years and thus does not address or interpret 17 U.S.C. § 411(b). But, according to Plaintiffs, "[b]ecause nothing in section 411(b) purports to abrogate *Advisers*," *Advisers* remains good law. Opp. at 21.

But § 411(b) sets forth the precise standard for determining the validity of an inaccurate copyright registration. To the extent *Advisers* requires a showing of fraud even when a registration contains material inaccuracies, that common law rule would conflict with the plain language of the statute, and thus *Advisers* no longer controls. *See Bruhn NewTech, Inc. v. United States*, 144 Fed. Cl. 755, 797 (2019) (concluding that *Advisers* has been superseded by statute). Lower courts in this circuit have avoided the conflict by limiting *Advisers* to its facts. In *Nason Homes, LLC v. Singletary Constr., LLC*, 2016 WL 6952257 (M.D. Tenn. Jan. 29, 2016), for instance, the court held that the "[d]efendant does not need to show fraud in order to invalidate Plaintiff's copyright registration." *Id.* at *6. The court further explained that *Advisers* applied only to clerical errors that would not have affected whether the registration was granted. *Id.*

_____

*Book Works LLC*, 188 F. Supp. 3d 347, 352 (S.D.N.Y. 2016) ("Nor is plaintiff correct that the statute requires a showing of fraudulent intent on the part of the applicant."). In contrast, virtually all cases cited by Plaintiffs pre-date the statute. Plaintiffs' reliance on the 2008 Annual Report from the Copyright Office is misplaced as that is not authoritative and does not purport to have interpreted the statutory language. *See Bruhn*, 144 Fed. Cl. at 789-99 (declining to follow the 2008 Annual Report of the Register of Copyrights because it does "not explain how . . . the current version of 17 U.S.C. § 411(b) . . . 'codified the doctrine of fraud on the Copyright Office.' Nor did the Register of Copyrights cite to any legislative material to support its statement . . . . Moreover, the Register of Copyrights also did not define its understanding of 'the doctrine of fraud on the Copyright Office' . . . .") (internal citations omitted).

5857416

Here, as in *Nason*, Plantiffs' inaccuracy is not clerical because it would have caused the Copyright Office to reject the registration—a point that Plaintiffs do not dispute. *See* Section C(5)*, infra.* Neither a material inaccuracy nor § 411(b) was considered in *Advisers*, so as in *Nason*, this case is distinguishable on its facts and *Advisers* does not apply.[15] This court can either decline to follow *Advisers* or distinguish this case on its facts, but it must follow § 411(b).[16]

Plaintiffs also argue that the requirements of § 411(b) are the same as those for fraud. [17]

---

[15] Plaintiffs cite to *United States v. Belevin-Ramales*, 458 F. Supp. 2d 409 (E.D. Ky. 2006) for the proposition that a district court cannot consider the effect of new legislation on an issue previously addressed by a circuit court. The issue in *Belevin-Ramales* pertained to the proper definition of "harbor" under 8 U.S.C. § 1324(a)(1)(A)(iii). *Id*. at 409. In an earlier case, *Susnjar v. United States*, 27 F.2d 223 (6th Cir. 1928), the Sixth Circuit had defined the term harbor as used in a prior version of 8 U.S.C. § 1324(a)(1)(A)(iii). An amendment to the statute altered the penalties for the crime but left the definition of harbor untouched. *Id*. at 410. Thus, the *Belevin-Ramales* court explained that "the 1952 amendments [do not] contain any language which would warrant a holding that *Susnjar* has been abrogated or implicitly overruled." *Id*. at 411. Thus, the district court did not revisit *Susnjar* because the definitions of harbor were the same. *Belevin-Ramales* is not analogous to the present case where 17 U.S.C. § 411(b) provides for a standard different than that set forth in *Advisers*.

[16] Although Plaintiffs rely on *Schenck v. Orosz*, 105 F. Supp. 3d 812 (M.D. Tenn. 2015) to argue that other courts in this district have concluded that *Advisers* requires a finding that § 411(b) requires an intent to defraud, they overstate the opinion. In *Schenk*, the court did not "apply" *Advisers* but instead, after summarizing the holding of *Advisers*, noted that "[t]he parties have not yet cited, nor has the court located, any Sixth Circuit opinion addressing how the statutory of presumption of validity and the *Advisers* standard intersect with § 411(b)(2)'s referral requirement." *Id*. at 819. No party argued that *Advisers* had been abrogated by § 411 and "[i]t is axiomatic that cases do not stand for propositions not considered therein." *Keel v. Tilton*, 2009 WL 1035362, at *5 (E.D. Cal. Apr. 17, 2009), aff'd, 487 F. App'x 394 (9th Cir. 2012).

[17] The only appellate decision cited by Plaintiffs addressing 17 U.S.C. § 411(b) after it was amended in 2008 is *Roberts v. Gordy*, 877 F.3d 1024 (11th Cir. 2017). But that decision relies entirely on prior Eleventh Circuit decisions to conclude that a showing of fraud is still required to invalidate a copyright registration. *Id*. at 1029. While one of those prior circuit court decisions was decided after the 2008 amendments to the statute (*St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186 (11th Cir. 2009)), the question of whether the common law fraud requirement was still in effect despite the 2008 amendments was never addressed in that decision. *See St. Luke's*, 573 F.3d at 1201-02. Thus, neither *Roberts* nor the opinion it relies on has ever attempted to reconcile the common law fraud requirement with the plain meaning of 17 U.S.C. § 411(b) after it was amended in 2008. Both *Bruhn* and *Gold Value* found *Roberts*' analysis perfunctory and unpersuasive. *See Bruhn*, 144 Fed. Cl. at 800; *Gold Value*, 925 F.3d at 1147 n.4.

- 17 -

Opp. at 22-24. But the statute requires only "knowledge," not an intent to defraud.[18] It is well settled in the Sixth Circuit that fraudulent intent includes *an intent to mislead or deceive*, which nowhere appears in the statute.[19] Plaintiffs fail to explain how this critical element of fraudulent intent can simply be read into 17 U.S.C. § 411(b). *See Feldman Law Grp. P.C. v. Liberty Mut. Ins. Co.*, 819 F. Supp. 2d 247, 261 (S.D.N.Y. 2011), aff'd, 476 F. App'x 913 (2d Cir. 2012) ("[T]he sine qua non of actionable fraud is the showing of a deception.").[20] The Court should reject Plaintiffs' effort to graft onto the statute a requirement of fraudulent intent.[21]

       3.    <u>Plaintiffs' Registrations Are Inaccurate and § 411(b) Requires Knowledge of Facts, Not Knowledge of Law</u>.

Plaintiffs' copyright registrations are inaccurate because the software was registered as unpublished even though Plaintiffs' allegations show it had been published for nearly a decade at the time of registration in 2011. *See* Mot. at 16-20. The software was licensed to Brocade for

---

[18] Plaintiffs contend that making a statement with knowledge of falsity is the "very essence of fraudulent scienter." Opp. at 22. But the mere fact that fraud-based claims often include a knowledge element does not make "knowledge of falsity" and "intent to defraud" one and the same. Indeed, what Plaintiffs fail to acknowledge is that "knowledge of falsity" and "intent to deceive" are distinct elements in common law fraud. *See Richelson v. Liberty Ins. Corp.*, 796 F. App'x 277, 283 (6th Cir. 2020) (fraud under Ohio law); *Roche v. CitiMortgage, Inc.*, 2019 WL 1752600, at *3 (6th Cir. Feb. 21, 2019) (fraud under Michigan law); *Smith v. BAC Home Loans Servicing, LP*, 552 F. App'x 473, 477 (6th Cir. 2014) (fraud under Tennessee law); *In re Sallee*, 286 F.3d 878, 895-96 (6th Cir. 2002) (fraud under Kentucky law). Thus, a court cannot just read an "intent to deceive" requirement into the statute where it does not exist. Moreover, when Congress intends to enact a fraud-based claim, it knows now to do so. *See* 18 U.S.C. § 1341 (mail fraud) ("Whoever, having devised or intending to devise any scheme or artifice to defraud . . . .").

[19] *See, e.g., Richelson v. Liberty Ins. Corp.*, 796 F. App'x 277, 283 (6th Cir. 2020) (holding a plaintiff asserting a fraud-based claim must prove, among other things, an intent to mislead).

[20] While not necessary to resolve this motion, Defendants note that Plaintiffs had incentives to mislead the Copyright Office. For example, a copyright certificate only grants a party the presumption of validity if the registration is made within five years of publication.

[21] Nor does the copyright statute require Defendants to make a showing regarding Plaintiffs' lack of good faith or state of mind, as Plaintiffs contend. Plaintiffs mischaracterize the term "good faith" as used in these cases to mean a requirement regarding state of mind. But the courts use this term to describe a situation where the inaccuracy was the result of a simple oversight or clerical error. *See Gold Value*, 925 F.3d at 1148; *Nason Homes*, 2016 WL 6952257, at *6.

- 18 -

5857416

"██████████ distribution in 2001.  *See* Section C(4), *infra*; Compl. Ex. A § 3.  Plaintiffs do not seriously contend that licensing software does not constitute publication.[22]  Instead, Plaintiffs contend they did not know that their application was inaccurate.[23]  In their view, knowledge under the statute means "knowledge of the law" not "knowledge of the facts."  *See* Opp. at 27.

It is well settled, however, that "the knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law."  *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 585 (2010) (internal quotations marks omitted); *Molina-Crespo v. U.S. Merit Sys. Prot. Bd.*, 547 F.3d 651, 662 (6th Cir. 2008) ("This Court has held, however, that, even in civil suits, 'ignorance of the law' does not excuse the failure to follow it.").  In the specific context of 17 U.S.C. § 411(b), courts have also rejected an ignorance-of-the-law defense.[24]

Thus, as discussed in Defendants' opening motion, Plaintiffs had the requisite factual knowledge under Section 411(b) because they knew their software had been licensed before 2011.

---

[22] Even the sources Plaintiffs rely on state that licensing constitutes publication.  *See* U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices* § 612.2 (3d ed. 2017) (hereafter "Third Compendium") ("Software is distributed when copies are distributed by purchase or license, whether in CD-ROM format or online . . . ."); *Archie MD, Inc. v. Elsevier, Inc*., 261 F. Supp. 3d 512, 517 (S.D.N.Y. 2017) ("The Court, however, concludes that Archie's licensing and delivery of the Work to Elsevier . . . satisfies the 'distribution' prong.  The transfer of a digital copy of a work may amount to distribution and therefore publication.").

[23] In *Archie*, the court did not find knowledge because "it is apparent that whether the Work had been published by virtue of its licensing to Elsevier was an unsettled legal question at the time" of registration.  *Archie*, 261 F. Supp. 3d at 520.  But the *Archie* parties failed to alert the court of the contrary authority.  Moreover, the applicant had registered its copyright in 2005—before *McLaren* and *Daimler-Chrysler Servs. N. Am., LLC v. Summit Nat., Inc.*, 289 F. App'x 916 (6th Cir. 2008) had been decided.  *Id*. at 514.

[24] *See Gold Value*, 925 F.3d at 1147 ("[T]he term 'knowingly' does not necessarily have any reference to a culpable state of mind or to knowledge of the law.  As Justice Jackson correctly observed, 'the knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law.'"); *Bruhn NewTech, Inc.*, 144 Fed. Cl. at 815 ("An applicant for a copyright registrant will have knowledge of inaccurate information in a copyright application when the applicant is 'aware' of the facts underlying the inaccuracy.").

- 19 -

5857416

Mot. at 18-19. They also had knowledge of the law because, in 2011, the Copyright Act defined publication exactly as it does today: the "distribution of copies or phonorecords of a work to the public *by sale or other transfer of ownership, or by rental, lease, or lending*." 17 U.S.C. § 101 (emphasis added). And three years prior to Plaintiffs' registration, the Sixth Circuit held that licensing software to customers (even customers within a limited industry) meant that the software had been publicly distributed. *See Daimler-Chrysler Servs. N. Am., LLC v. Summit Nat., Inc.*, 289 F. App'x 916, 923 (6th Cir. 2008). Plaintiffs brush this case aside (even though it is squarely on point) because it concerns a copyright notice requirement no longer in effect. Opp. at 27. That is a meaningless factual distinction. The legal question before the court in *Daimler-Chrysler* was whether licensing of a software program constituted publication under the Copyright Act, which is precisely the issue here. The licenses in that case even stated that the software was a confidential trade secret and expressly limited disclosure to third parties. *Daimler-Chrysler*, 289 F. App'x at 918.[25] In sum, there is no meaningful distinction between this case and *Daimler-Chrysler*.[26]

Furthermore, while the Second Compendium does not explicitly state that licensing software constitutes publication like the Third Compendium does, it also allows for licensing software to constitute publication. The Compendium does not cover the universe of registration errors, nor is it the law. U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices*,

---

[25] *See also Daimler-Chrysler Servs. N. Am., LLC v. Summit Nat., Inc.*, No. 07-1357, Appellant's Final Brief, Dkt. No. 38 at 53 (6th Cir., filed May 9, 2002) (explaining that the license agreements to other customers, "like the one in this case, stated that ALAS was a confidential trade secret and expressly limited disclosure to third parties") (available at 2007 WL 4919863).

[26] The Sixth Circuit was not alone. *See, e.g., D.C.I. Computer Sys., Inc. v. Pardini*, 978 F.2d 1265, 1265 (9th Cir. 1992) ("We uphold the district court's finding that D.C.I. 'published' the computer software by distributing the program to automobile dealers *pursuant to a trade secret licensing agreement* and was thereby divested of copyright protection.") (emphasis added); *McLaren v. Chico's FAS, Inc.*, 2010 WL 4615772, at *2 (S.D.N.Y. Nov. 9, 2010) (holding illustrations had been published because they had been previously licensed)

- 20 -

5857416

Preface at 1 (2d ed. 1998) ("The Compendium is a manual intended primarily for the use of the staff of the Copyright Office as a general guide to its examining and related practices. It is not a book of rules that is meant to provide a ready-made answer to all questions that arise."). Plaintiffs identify no relevant amendments concerning the definition of publication under the Copyright Act or the copyright regulations between 2011 and today. As the *Daimler-Chrysler* case and others show, licensing software constituted publication in 2011 just as much as it does today.

### 4. The Software Was Licensed for Worldwide Distribution.

Plaintiffs claim that, even if licensing generally constitutes publication under the Copyright Act, their license does not because the License Agreement includes restrictions with respect to disclosure. Opp. at 26-27. But as discussed above, this is not the law. *See Daimler-Chrysler*, 289 F. App'x at 918; *D.C.I. Computer Sys., Inc.*, 978 F.2d at 1265. Moreover, Plaintiffs fail to mention that the License Agreement grants Brocade a "████████████████████
████████████████████████████████████████████████
███████████████████████████████████████████████."
Compl. Ex. A § 3 (emphases added).[27] Plaintiffs have alleged that this same software is covered by their copyright registrations and forms the basis of its copyright infringement claims. *See* Compl. ¶ 33 ("SNMP Research has registered the copyrights for the software at issue in this case . . . ."); ¶¶ 47, 50, 88 (alleging copyright infringement based on Extreme's distribution of Plaintiffs' software); ¶¶ 63, 78 ("Brocade has…kept right on reproducing and *publicly distributing the copyrighted software* and derivative works . . . with no license to do so, thereby infringing

---

[27] In *Archie*, a case relied upon by Plaintiffs, the court concluded that licensing the software constituted publication, and the license at issue contained a similar provision. *See Archie*, 261 F. Supp. 3d at 517 (agreement granted "a worldwide . . . license to use, reproduce, publish, transmit, and distribute the [Work]").

- 21 -

SNMP Research's Copyrights.") (emphasis added). Plaintiffs want to have their cake and eat it too. They claim that their software is unpublished so as to ensure the presumption of validity applies when they sue their customers, but then claim customers like Brocade widely and publicly distributed their software to maximize their infringement damages. They cannot have it both ways.

5.     <u>The Register Would Have Refused Registration.</u>

Defendants cited numerous cases holding that the Register of Copyrights would have refused registration of a copyright because the applicant inaccurately stated whether the work had been published. Mot. at 20-21. Plaintiffs failed to respond to this argument and have thus forfeited any argument in opposition. *See Walker v. Evans*, 2012 WL 917772, at *8 (E.D. Mich. Mar. 19, 2012), aff'd sub nom. *Walker v. Detroit Pub. Sch. Dist.*, 535 F. App'x 461 (6th Cir. 2013).

6.     <u>The Court Must Refer the Matter to the Register of Copyrights.</u>

Contrary to Plaintiffs' assertions, under the plain language of 17 U.S.C. § 411(b)(2), "[i]n any case in which inaccurate information . . . is *alleged*, the court *shall* request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(2) (emphases added). Courts have interpreted this referral process as mandatory. *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 959 F.3d 1194, 1200 (9th Cir. 2020). But even if the Court concludes that a threshold must be met to refer the matter to the Register of Copyrights, there can be no question that Defendants have crossed that threshold.

**D.**     **<u>Plaintiffs' Breach of Contract Claim Is Preempted</u>**.

Plaintiffs seek to vindicate the same rights in their breach of contract claim as they do in their copyright infringement claim. While Plaintiffs are correct that breach of contract claims are often not preempted by copyright law, that is not the case where, as here, Plaintiffs expressly allege

- 22 -

that both counts spring from the same conduct. Plaintiffs argue that their claim survives preemption because there are two "elements" that make their breach of contract claim qualitatively different from their copyright claims—the duty of confidentiality and the promise to pay. The Court should reject these arguments.

In the software context, the "duty of confidentiality" often merges with the Copyright Act's duty to prevent unauthorized disclosure. That is the case here. *See* Compl. ¶ 14 ("Brocade's *unauthorized disclosure of the source code*, as well as Brocade's continued use, reproduction, preparation of derivative works based upon, and public distribution of products containing Plaintiffs' copyrighted software <u>constitute a breach of the License Agreement</u>. <u>It also constitutes copyright infringement</u> and material contribution to or inducement of infringement by Brocade's partners, resellers, and/or customers.) (emphasis added). Moreover, Plaintiffs claim only that the duty of confidentiality was breached by Defendants disclosing the software without authorization. On these allegations, Plaintiffs have failed to assert that any breach of a contractual duty of confidentiality is not identical to their claim for copyright infringement for unauthorized disclosure. And, in fact, Plaintiffs themselves allege they are the same. Compl. ¶ 14; *Real View, LLC v. 20-20 Techs., Inc.*, 789 F. Supp. 2d 268, 273 (D. Mass. 2011) (in copyright preemption "courts focus not upon the label affixed to the state cause of action, but rather upon 'what the plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced' "); *Wolff v. Institute of Elec. & Elecs. Eng'rs, Inc.*, 768 F. Supp. 66, 69 (S.D.N.Y. 1991) ("In the case at bar, IEEE breached its contract with plaintiffs . . . by infringing plaintiffs' copyright. It is difficult to see how the resulting claims are qualitatively different. Accordingly the breach of contract claim is preempted.").

- 23 -

5857416

Plaintiffs' "promise to pay" argument similarly fails. The Complaint nowhere alleges that Defendants violated the License Agreement by failing to pay for using Plaintiffs' intellectual property. But Plaintiffs point to two provisions in the License Agreement to support their new argument. The first is the provision regarding payment for authorized use of the software set forth in the original License Agreement. *See* Compl. Ex. A § 24. But this provision does not apply because it was superseded by Amendment 5 to the License Agreement when Brocade fully paid for the license. *See* Mot. at 24; Compl. Ex. A, Amendment 5 § 9 (█████████████████████ ███████████████████████████████████████████████ Plaintiffs tellingly fail to address the fact that Brocade has indisputably fully paid for the license and, thus, a "promise to pay" is not an aspect of their breach of contract claim. The natural conclusion to draw from Plaintiffs' silence is that they lack any credible response on this point.

Plaintiffs also cite a provision concerning remedies for "████████████████████ and claim that it also constitutes a "promise to pay." *See* Opp. at 32; Compl. Ex. A § 16 (a)(ii). But Plaintiffs engage in circular reasoning here. If a party's liability for damages stemming from unauthorized use and distribution constituted a "promise to pay," then no breach of contract claim would ever be preempted by the Copyright Act. But that is not the law in the Sixth Circuit. *See Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 457 (6th Cir. 2001) ("[W]e do not embrace the proposition that all state law contract claims survive preemption simply.") Indeed, to the extent Plaintiffs' breach of contract claim is based on Defendants' "████████████████████ such conduct is unquestionably preempted by the Copyright Act.

Plaintiffs also ignore Defendants' citation to *Universal Instruments Corp. v. Micro Systems Engineering, Inc*., 924 F.3d 32 (2nd Cir. 2019), where the plaintiff did not allege that defendants violated the agreement by failing to pay for use of the intellectual property, just as Plaintiffs did

- 24 -

5857416

not allege a failure to pay here. *Id.* at 49. Rather, Universal's contract claim was based on an allegation that defendants' use of the source code exceeded the scope of the license contained in the agreement. *Id.* The Second Circuit concluded that the claim did not include an "extra element" that was different from Universal's copyright infringement claim. *Id.* The same conclusion should apply here where Plaintiffs' contract claim amounts to nothing more than allegations that Brocade's use of Plaintiffs' software and source code exceeded the scope of the license.[28]

At a minimum, the Court should that Plaintiffs' claims are partially preempted by the Copyright Act. Plaintiffs concede that breach of contract claims can be at least *partially* preempted to the extent they overlap with claims for copyright infringement. *See* Mot. at 25 (citing to *ATC Distribution Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 713 (6th Cir. 2005)). Accordingly, the Court should, at a minimum, dismiss Plaintiffs' breach of contract claim to the extent it is preempted by their copyright infringement claim.

Dated: February 2, 2021                    HUESTON HENNIGAN LLP

By:       */s/ Alison Plessman*
            Alison Plessman
            Attorneys for Defendants
            Broadcom, Inc.
            Brocade Communications Systems LLC

---

[28] The cases cited by Plaintiffs are distinguishable. None of the cases relied on for their confidentiality argument involves plaintiffs who affirmatively pleaded that the identical conduct gave rise to their claim for breach of contract and their copyright infringement claims. *See, e.g.*, *Gail Green Licensing & Design Ltd. v. Accord, Inc.*, 2006 WL 2873202, at *6 (N.D. Ill. Oct. 5, 2006) ("Plaintiffs allege that Defendants breached their duty of confidentiality as provided by the Agreement because Defendants disclosed Plaintiffs' copyrighted works, *as well as other confidential information*.") (Emphasis added). And regarding the "promise to pay," the only on-point case Plaintiffs mention concerns breach of contract premised on the failure to pay the actual license fees—not, as Plaintiffs argue here, the failure to pay damages for breach based on unauthorized use and distribution. *See Ross, Brovins & Oehmke, P.C. v. Lexis/Nexis*, 348 F. Supp. 2d 845, 862 (E.D. Mich. 2004).

- 25 -

5857416