UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TENNESSEE

AT KNOXVILLE

| | |
|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., <br><br> Plaintiffs, <br> v. <br><br> BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; and EXTREME NETWORKS, INC. <br><br> Defendants. | Case No. 3:20-cv-00451 |

**JOINT REPLY IN SUPPORT OF DEFENDANTS'
JOINT MOTION TO STAY DISCOVERY AND FOR A PROTECTIVE ORDER**

# TABLE OF CONTENTS

Page(s)

I. The Court Should Stay Discovery and Grant a Protective Order ...................................... 1

    A. One-Sided Discovery Is Antithetical to the Judicial Process and Fundamentally Unfair ........................................................................................ 3

    B. Defendants Will Suffer Prejudice Absent a Stay and Protective Order ............................................................................................................... 5

    C The Prejudice to Plaintiffs Is Illusory ................................................... 11

    D. Absent a Stay, the Parties and Court Will Become Embroiled in Needless and Costly Discovery Disputes and Further Motion Practice ................................................................................................... 14

II. Conclusion ................................................................................................... 15

Page(s)

**Cases**

*Agilysys, Inc. v. Hall*,
　　2016 WL 10988769 (N.D. Ga. Nov. 22, 2016) ................................................................. 4

*Bowlin v. DTR Tennessee, Inc.*,
　　2014 WL 12781799 (E.D. Tenn. June 9, 2014) ................................................................ 6

*Burger King Corp. v. Rudzewicz*,
　　471 U.S. 462 (1985) .......................................................................................................... 4

*Charvat v. NMP, LLC*,
　　2009 WL 3210379 (S.D. Ohio Sept. 30, 2009) ......................................................... 11, 12

*Cockrill v. Mortgage Elec. Registration Sys.*,
　　2013 WL 1966304 (M.D. Tenn. May 10, 2013) ............................................................... 9

*Doe v. Anderson*,
　　2016 WL 3230679 (E.D. Mich. June 13, 2016) .............................................................. 12

*Ferguson v. Countrywide Credit Industries, Inc.*,
　　298 F.3d 778 (9th Cir. 2002) ............................................................................................. 4

*FTC v. E.M.A. Nationwide, Inc.*,
　　767 F.3d 611 (6th Cir. 2014) ............................................................................................. 5

*Gettings v. Building Laborers Local 310 Fringe Benefits Fund*,
　　349 F.3d 300 (6th Cir. 2003) ........................................................................................... 10

*Greenbush Brewing Co. v. Michigan Liquor Control Comm'n*,
　　2019 WL 7582856 (W.D. Mich. Nov. 20, 2019) .............................................................. 9

*Home Fed. Bank of Tenn. v. Home Fed. Bank Corp.*,
　　2019 WL 11670621 (E.D. Tenn. Sept. 18, 2019) ............................................................. 9

*In re Apple Inc.*,
　　979 F.3d 1332 (Fed. Cir. 2020) ......................................................................................... 4

*In re Suarez*,
　　2008 WL 4310098 (Tex. Ct. App. Aug. 28, 2008) ........................................................... 3

*Inland Am. (LIP) SUB, LLC v. Lauth*,
　　*2010 WL* 670546 (S.D. Ind. Feb. 19, 2010) ..................................................................... 4

*Innovation Ventures, LLC v. Aspen Fitness Prods., Inc.*,
　　2013 WL 12181722 (E.D. Mich. Oct. 18, 2013) .............................................................. 6

## TABLE OF AUTHORITIES

Page(s)

*International Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ............................................................................................................. 4

*Lakatos v. Canberra Indus., Inc.*,
    2014 WL 12948741 (E.D. Tenn. Oct. 29, 2014) .................................................................. 9

*Malone v. Stanley Black & Decker, Inc.*,
    965 F.3d 499 (6th Cir. 2020) ............................................................................................... 6

*Matthews v. Mariner*,
    2009 WL 426056 (S.D. Ind. Feb. 19, 2009) ........................................................................ 4

*Mays v. Tennessee Valley Auth.,*
    2009 WL 10668710 (E.D. Tenn. Dec. 15, 2009) ......................................................... 12, 13

*Momenta Pharms., Inc. v. Teva Pharms. Industries Ltd.*,
    765 F. Supp. 2d 87 (D. Mass. 2011) .................................................................................. 13

*Raceday Ctr., LLC v. RL BB Fin., LLC*,
    2014 WL 11511063 (E.D. Tenn. Apr. 30, 2014) ................................................................. 1

*Rorrer v. City of Stow*,
    743 F.3d 1025 (6th Cir. 2014) ............................................................................................. 3

*Rothstein v. Steinberg*,
    2008 WL 5716138 (N.D. Ohio June 9, 2008) ................................................................... 10

*St. Louis Grp., Inc. v. Metals and Additives Corp., Inc.,*
    275 F.R.D. 236 (S.D. Tex. 2011) ........................................................................................ 4

*Tarazi v. Oshry*,
    2011 WL 3608119 (S.D. Ohio Aug. 15, 2011) ................................................................... 9

*Texas Dep't of Pub. Safety Officers Ass'n v. Denton*,
    897 S.W.2d 757 (Tex. 1995) ............................................................................................... 3

*United States ex rel. Martin v. Life Care Ctrs. of Am., Inc.*,
    912 F. Supp. 2d 618 (E.D. Tenn. 2012) .............................................................................. 3

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ............................................................................................................. 4

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ............................................................................................................. 4

# TABLE OF AUTHORITIES

Page(s)

*Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.*,
   413 F.3d 553 (6th Cir. 2005) ........................................................................................ 10

**Statutes**

28 U.S.C. § 1400 ................................................................................................................. 2, 4

**Rules**

Rule 26(f) ........................................................................................................................ 12, 13

Fed. R. Civ. Pro. 12(b)(6) ....................................................................................................... 10

Fed. R. Civ. P. 12(f) ................................................................................................................. 1

Fed. R. Civ. P. 26(c) .............................................................................................................. 10

Fed. R. Civ. P. 26(c)(1) ............................................................................................................ 1

Defendants Broadcom Inc. ("Broadcom"), Brocade Communications Systems LLC ("Brocade"), and Extreme Networks, Inc. ("Extreme") respectfully submit this Joint Reply to Plaintiffs SNMP Research, Inc. and SNMP Research International, Inc.'s Opposition to the Joint Motion to Stay Discovery and for a Protective Order (the "Stay Motion"). (ECF No. 54 (cited herein as "Opp.").)[1] Defendants urge this Court to grant Defendants' motion for a protective order and stay of discovery pending its disposition of their motions to dismiss. (ECF No. 47 & 47-1.) Plaintiffs have every right to litigate vigorously, but they must litigate fairly, and they have not done that. The Court can and should stop Plaintiffs from abusing its process.

**I.    The Court Should Stay Discovery and Grant a Protective Order.**

As Plaintiffs acknowledge, this Court has discretion to stay discovery pending the outcome of a dispositive motion, and to grant a protective order to protect a party from whom discovery has been sought from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Contrary to Plaintiffs' mischaracterizations of the current posture, this case presents ample grounds for a stay and protective order. As explained in Defendants' opening motion, Defendants' motions to dismiss are not only dispositive, but also present jurisdictional and

---

[1] Defendants note that much of Plaintiffs' opposition to this discovery motion—particularly pages 1-8—amounts to an unauthorized sur-reply to Defendants' motions to dismiss. Local Rule 7.1(c)-(d). Plaintiffs already devoted well over 25 pages to addressing the motions to dismiss in their actual opposition papers to those motions. *See* ECF Nos. 48-49; Local Rule 7.1(b). Accordingly, Defendants respectfully suggest that the unauthorized sur-reply material should be stricken. Fed. R. Civ. P. 12(f); *Raceday Ctr., LLC v. RL BB Fin., LLC*, 2014 WL 11511063, at *1 (E.D. Tenn. Apr. 30, 2014) (Greer, J.). Insofar as Plaintiffs rehash their prior speculation that Broadcom has sufficient contacts with Tennessee to warrant an exercise of personal jurisdiction (Opp. at 18 n.8), Defendants incorporate by reference their Motions to Dismiss, briefs in support, and Replies.

venue challenges.² If the motion is granted, Plaintiffs' expansive and burdensome discovery will be moot and/or subject to the supervision of another court.

But Plaintiffs' unusual and unreasonable litigation positions present an additional, particularly compelling reason for a stay and protective order. Plaintiffs would force Defendants to forgo pursuing their own discovery while Plaintiffs' (extremely overbroad and highly objectionable) discovery from Defendants proceeds immediately. That much is confirmed by the fact that, even in their opposition, Plaintiffs have refused to disclaim that they will argue Defendants would waive their jurisdictional and venue defenses by serving their own discovery despite having no explanation for why they would insist on that aside from putting Defendants into a catch-22 (potentially suggesting their awareness that those defenses have a great deal of merit).

Plaintiffs see nothing wrong with putting Defendants in this lose-lose position, recasting it as the product of a "strategic litigation choice that Defendants are making." (Opp. at 2.) But what is lost in that self-serving description is that the "choice" is between the proverbial rock and a hard place, and it has been unfairly foisted upon Defendants. Defendants should not be compelled to cater to expansive one-sided discovery, putting themselves at a distinct litigation disadvantage, simply to preserve their jurisdictional and venue defenses in their pending motions to dismiss.³ Defendants proposed a reasonable compromise that was more than fair to Plaintiffs and would

---

² Plaintiffs assert that Brocade and Extreme "do not contest personal jurisdiction and therefore have conceded venue under the applicable copyright venue statute (28 U.S.C. § 1400)." (Opp. at 16 n.6.) But Plaintiffs misunderstand the law. As set forth in the motions to dismiss, because this Court lacks personal jurisdiction over Broadcom, venue is improper under § 1400. And where venue is improper for one Defendant, it is improper for all Defendants and the action as a whole.

³ If the Court is not inclined to grant the Stay Motion, Defendants at least seek confirmation that Defendants' participation in these proceedings while the motions to dismiss are pending, including their participation in discovery on equal footing, does not constitute a waiver.

- 2 -

have avoided motion practice, but Plaintiffs refused, plainly retaliating against Defendants for asserting their jurisdictional and venue challenges.

Absent a stay, Plaintiffs will continue to pressure Defendants into surrendering those defenses or continue their scorched earth, unliteral discovery. The discovery that Plaintiffs have already sought is grossly overbroad, burdensome, irrelevant, and often incoherent. Granting a stay and protective order will not only advance judicial economy and conserve resources, but it will also restore fairness to these proceedings.

### A. One-Sided Discovery Is Antithetical to the Judicial Process and Fundamentally Unfair.

As the Sixth Circuit remarked not too long ago, "one-sided discovery restrictions… compromise the appearance of justice." *Rorrer v. City of Stow*, 743 F.3d 1025, 1050 (6th Cir. 2014) (citation and quotation marks omitted). Accordingly, in False Claims Act litigation, the use of the *qui tam* review period to "conduct[] one-sided discovery for months or years while the case is under seal" has been condemned by another judge in this Court as "significant overreach" that "approach[es] the abusive," *United States ex rel. Martin v. Life Care Ctrs. of Am., Inc.*, 912 F. Supp. 2d 618, 623-24 (E.D. Tenn. 2012); in civil proceedings in which one party asserts the Fifth Amendment to avoid discovery from the opposing party, the court has discretion to limit that party's own discovery "to ensure that the civil proceeding remains fair," *In re Suarez*, 2008 WL 4310098, at *2 (Tex. Ct. App. Aug. 28, 2008) (citing *Texas Dep't of Pub. Safety Officers Ass'n v. Denton*, 897 S.W.2d 757, 760 (Tex. 1995)); and on motions to compel arbitration, the existence of

- 3 -

one-sided discovery is a key factor suggesting that an arbitration agreement is unconscionable, *Ferguson v. Countrywide Credit Industries, Inc.*, 298 F.3d 778, 786-87 (9th Cir. 2002).[4]

As noted, Plaintiffs deride Defendants' predicament as the product of a "strategic choice" — i.e., the price of bringing personal jurisdiction and venue challenges. But personal jurisdiction is not just another affirmative defense. It is a constitutional doctrine protecting "'traditional conception[s] of fair play and substantial justice' embodied in the Due Process Clause of the Fourteenth Amendment." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). Because of the importance of jurisdictional fairness, "[a] judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). The federal venue statutes are similarly designed to "promote the … goals of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 623 (1964). Accordingly, the copyright statutes have expressly limited where copyright infringement actions may be brought. 28 U.S.C. § 1400. Based on the copyright/patent venue statute, "once a party files a transfer motion, disposing of that motion should unquestionably take top priority" because a court "must first address whether it is a proper and convenient venue before addressing any substantive portion of the case." *In re Apple Inc.*, 979 F.3d 1332, 1337-38 (Fed. Cir. 2020) (citation

---

[4] *See also Agilysys, Inc. v. Hall*, 2016 WL 10988769, at *2 (N.D. Ga. Nov. 22, 2016) (denying Plaintiff's motion for expedited discovery "while Defendants are restricted from doing so"); *St. Louis Grp., Inc. v. Metals and Additives Corp., Inc.*, 275 F.R.D. 236, 242 (S.D. Tex. 2011) ("Defendants have not presented the Court with a compelling reason to deviate from the normal course of discovery by ordering one-sided discovery to begin just prior to the commencement of formal discovery."); *Inland Am. (LIP) SUB, LLC v. Lauth*, 2010 WL 670546, at *2 (S.D. Ind. Feb. 19, 2010) (describing defendant's request for a "one-sided discovery stay" as "the type of gamesmanship that has no place in litigation in federal court"); *Matthews v. Mariner*, 2009 WL 426056, at *2 (S.D. Ind. Feb. 19, 2009) (explaining that one-sided discovery "would likely prejudice or tactically disadvantage" the other side").

and quote marks omitted). Defendants should not be forced to stand idly by for an unknown period of time to protect their constitutional and statutory rights while Plaintiffs proceed unrestrained.

**B. Defendants Will Suffer Prejudice Absent a Stay and Protective Order.**

Plaintiffs argue that discovery must begin as soon as possible because they need broad discovery for their copyright claims. (Opp. at 2-3.) But that is exactly the point: without a stay or protective order pending resolution of the motions to dismiss, Defendants will suffer significant prejudice from having to engage in expensive, extremely burdensome, and one-sided discovery that may not be necessary at all. Moreover, the Court likely will be called on to mediate discovery disputes regarding this overbroad discovery in a case that may not even be litigated here or anywhere.

Plaintiffs brush off Defendants' concerns claiming that "every case where a dispositive motion is filed and discovery is not stayed" will involve discovery costs while such motions are pending. (Opp. at 13; *see also id.* at 23.) Plaintiffs then quote from cases reciting the basic and uncontroversial principle that a discovery stay is not *always* warranted even if the pending motion to dismiss is dispositive.[5] But Defendants do not contend otherwise. Instead, Defendants argue that a stay is warranted under the facts presented in *this* case. Plaintiffs' discovery goes well beyond the "norm" for this stage of the litigation, or any stage of the litigation. To date, Plaintiffs have served 255 requests for production, 63 interrogatories, and 164 requests for admission. *See* Declaration of Alison Plessman ("Plessman Decl.") ¶ 7. The *objections alone* to the first set of

---

[5] Of particular note, Plaintiffs claim that "[t]he Sixth Circuit … has upheld (in authority cited by Defendants) a district court's exercise of its discretion not to stay discovery pending resolution of a dispositive motion." (Opp. at 13 n.4 (citing *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611 (6th Cir. 2014)).) But there was no motion to stay discovery in that case. *See* 767 F.3d at 626-29 (describing defendants' motion to stay civil proceedings because they might be indicted).

- 5 -

that discovery took 725 pages. *Id.* ¶ 5. To even answer the requests as framed by Plaintiffs, Defendants may need to hire experts to engage in a costly review of Plaintiffs' software and source code, among other things.

Moreover, Plaintiffs' discovery requests are brazenly premature, overbroad, and irrelevant, among other deficiencies. Confirming that they actually have no factual basis to assert that this Court has jurisdiction over Broadcom, Plaintiffs decided for themselves that they are entitled to expansive jurisdictional discovery without (1) a court first finding that they established their prima facie case for jurisdiction; (2) a court order permitting jurisdictional discovery and setting forth the boundaries of such discovery; and (3) any attempt to explain with particularity what supportive evidence such discovery could reveal. *See Bowlin v. DTR Tennessee, Inc.*, 2014 WL 12781799, at *3 (E.D. Tenn. June 9, 2014). Plaintiffs even argue that jurisdictional discovery is warranted *even if they cannot set forth a prima facie case—i.e.*, "if Judge Greer concludes that personal jurisdiction over Broadcom is lacking on the face of the complaint." (Opp. at 16 n.6.)[6] Plaintiffs note that "Defendants cannot justify a protective order merely by 'raising the cry of fishing expedition,'" (Opp. at 23 n.11 (quoting *Innovation Ventures, LLC v. Aspen Fitness Prods., Inc.*, 2013 WL 12181722, at *5 (E.D. Mich. Oct. 18, 2013))), but this is the very definition of a fishing expedition.

Plaintiffs' merits discovery fares no better. To begin, Plaintiffs' definitions and instructions are close to limitless. Plaintiffs defined each Defendant to include *all* predecessors,

---

[6] Plaintiffs cite *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499 (6th Cir. 2020), for the proposition that "jurisdictional discovery is … proper in its own right" (Opp. at 18 n.8), but *Malone* does not support Plaintiffs' position. There, the plaintiffs *had* made a prima facie showing of personal jurisdiction. 965 F.3d at 504-05. *Malone* did not endorse jurisdictional discovery in cases where "personal jurisdiction … is lacking on the face of the complaint." (Opp. at 16 n.6.)

- 6 -

successors, agents, and affiliates (among others), defined SNMP Research to include unidentified and unknown entities and individuals other than Plaintiffs themselves, and defined SNMP Research Software to include unidentified software that is not even at issue in this dispute.[7] Plaintiffs thus did themselves a disservice in their overreaching—in an effort to make their requests as broad as possible, they rendered them incoherent and absurd. Under Plaintiffs' definitions, Broadcom is defined to include Brocade and vice versa (along with *dozens* of other non-party affiliated entities who have nothing to do with this case). (Definition Nos. 3-5 (all requests); *see also* RFA Nos. 24-39, 41-60 to Brocade & No. 29 to Broadcom (nonsensical requests asking about the Broadcom and Brocade relationship even though Plaintiffs expressly defined both entities to include the other).) Similarly, "SNMP Research" is defined as both Plaintiff entities, but also "their predecessors and predecessors-in-interest, including all divisions and subsidiaries" and "all … Persons acting or purporting to act on behalf of one or more of them"—a definition that necessarily requires Defendants to propound their own discovery in order to apply it correctly or narrow it appropriately. (Definition No. 2 (all requests).) As the cherry on top, "SNMP Research Software" is defined as "(i) software provided by SNMP Research to Brocade, (ii) software licensed by SNMP Research to Brocade, or (iii) any software created by SNMP Research which is or was in the possession of" Brocade (Definition No. 7 to Brocade), "Brocade and/or Broadcom" (Definition No. 7 to Broadcom), and "Extreme" (Definition No. 7 to Extreme)—*regardless of whether that software is actually at issue in this action*. Contrary to Plaintiffs' position (Opp. at 24), this definition of "SNMP Research Software" piles overbreadth on overbreadth. As such, the

---

[7] In all the discovery requests to each Defendant, "SNMP Research" is Definition No. 2, Defendants are Definition Nos. 3-5, and "SNMP Research Software" is Definition 7. Plaintiffs further expand on their definition of "Broadcom Inc." in Instruction No. 5 of their RFAs, Instruction No. 2 of their RFPs, and Instruction No. 4 of their Interrogatories to each Defendant.

- 7 -

Case 3:20-cv-00451-CEA-DCP   Document 59   Filed 02/08/21   Page 12 of 20   PageID #: 1299
5897058

definition of "SNMP Research Software" is grossly overbroad and requires Defendants to propound their own discovery in order to make heads or tails of it.

But it does not stop there. Plaintiffs have also served up a multitude of requests that are premature, overbroad, and unanswerable. For example, Plaintiffs demand "[a]ll Documents and things that [Defendants] may seek to use at trial in this action." (RFP No. 51 to Broadcom; No. 54 to Brocade; No. 46 to Extreme.) Plaintiffs further demand, "[a]ll [Defendant] Products that contain, use or are otherwise associated with SNMP Research Software[,] … includ[ing] any [Defendant] Products that have *ever at any time* fit the above description, whether in current distribution or not" (Interrogatory No. 1 to Broadcom, Brocade, and Extreme (emphasis added)) and "[a]ll Source Code, including all versions, for each Product Identified in response to Interrogatory numbers 1 and 2" (RFP No. 28 to Broadcom; No. 26 to Brocade; No. 19 to Extreme). Under Plaintiffs' definitions, requests like these (which are incorporated into many of the other requests) ostensibly require Defendants to provide voluminous information that is irrelevant to the claims in this case, including information from Brocade's and Broadcom's *dozens of non-party affiliates*. They also seek voluminous information regarding the entire history of Brocade's 20-year business relationship with Plaintiffs even though such information is not relevant to their claims. And, as noted above, the vague and grossly overbroad definitions of "SNMP Research" and "SNMP Research Software" extend well beyond the software identified in Plaintiffs' Complaint and do not even appear limited to software owned by Plaintiffs. (*See* Instruction Nos. 2 & 7 (all requests).) Requests like these are also unanswerable before Defendants have had an opportunity to serve their own discovery, including regarding the software and source code alleged

in the Complaint (and, under Plaintiffs' expansive definitions, much more).[8]  Since Plaintiffs have taken the unreasonable position that Defendants are not allowed to serve their own discovery without risking waiver of their jurisdictional and venue defenses, discovery is necessarily at a standstill even without a stay.

Moreover, most, if not all, of Plaintiffs' discovery requests seek highly confidential information that would be foolhardy and outright dangerous to disclose to *anyone* without a protective order in place if such information exists.  (*See, e.g.*, Interrogatory Nos. 6, 9-14, and 20 to Brocade and Broadcom, which demand financial data, seller and reseller information, contracts with other Defendants or third parties, and contacts with, *inter alia*, U.S. nuclear laboratories; Interrogatory Nos. 6, 9-13 to Extreme (demanding analogous information).)[9]

Plaintiffs insinuate that Defendants' objections are "blunderbuss … attacks," but their own shotgun approach to discovery did them no favors.  (Opp. at 18.)  Defendants expended substantial time and effort to respond to every single one of the discovery requests in good faith

---

[8] In most of the cases cited by Plaintiffs, the movant did not specify its discovery burden at all *See, e.g.*, *Lakatos v. Canberra Indus., Inc.*, 2014 WL 12948741 (E.D. Tenn. Oct. 29, 2014) (cited in Opp. at 12, 21) (*see* No. 3:14-cv-73 ECF No. 27-28); *Greenbush Brewing Co. v. Michigan Liquor Control Comm'n*, 2019 WL 7582856, at *1 (W.D. Mich. Nov. 20, 2019) (cited in Opp. at 21-22); *Cockrill v. Mortgage Elec. Registration Sys.*, 2013 WL 1966304, at *1 (M.D. Tenn. May 10, 2013) (cited in Opp. at 22-23); *Home Fed. Bank of Tenn. v. Home Fed. Bank Corp.*, 2019 WL 11670621 (E.D. Tenn. Sept. 18, 2019) (cited in Opp. at 25) (*see* No. 3:18-cv-379 ECF No. 64, at 9-10); *Tarazi v. Oshry*, 2011 WL 3608119, at *3 (S.D. Ohio Aug. 15, 2011) (cited in Opp. at 25).

[9] Plaintiffs note that they circulated a draft protective order on January 16.  (Opp. at 11.)  But they conveniently omit that they only initiated negotiations on this protective order shortly after Defendants filed their motion to stay, Plessman Decl. ¶¶ 3-4, even though they propounded their discovery requests several weeks prior.  Although Defendants necessarily have had to focus on responding to Defendants' voluminous discovery, the motion to dismiss briefing, and the instant motion, Defendants are carefully reviewing the terms of Plaintiffs' draft protective order to determine what provisions may be necessary to protect their interests, including regarding highly sensitive source code and financial information.  But, in the meantime, they cannot be expected to hand over highly confidential information without a protective order in place.

notwithstanding the pending motion to stay and the bind they were put in due to Plaintiffs' overaggressive positions. Specific, considered, and exhaustive objections to definitions and individual requests are not "boilerplate." (Opp. at 10.) If some of Defendants' responses appear duplicative, it is because Plaintiffs' discovery requests were duplicative and suffered from the same deficiencies.

Having unconvincingly misframed the issue, Plaintiffs fall back on the highly generalized assertion that "if Congress had wanted discovery to be stayed pending a ruling on a motion to dismiss in copyright cases, then Congress could and would have provided for such a stay, as Congress did in connection with Securities Exchange Act claims." (Opp. at 14 (citing *Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 559 (6th Cir. 2005)).) Leaving aside the fact that the law already vests the decision to stay discovery in the sound discretion of the trial court, *Gettings v. Building Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 304 (6th Cir. 2003)—a fact Plaintiffs concede (*see* Opp. at 13)—it is an illogical leap to suggest Congress's decision to provide for *automatic* stays as a matter of course in particular cases means that Congress disapproves of *discretionary* stays in all other cases regardless of the circumstances in each case.[10]

Plaintiffs also argue that discovery in this jurisdiction would not be a waste because "[a]ny discovery taken while … a motion [challenging jurisdiction] is pending would, of course, be

---

[10] Plaintiffs likewise mistakenly rely on *Rothstein v. Steinberg*, 2008 WL 5716138, at *4 (N.D. Ohio June 9, 2008), where the court explained that "[h]ad the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect." (Opp. at 15.) Defendants do not suggest, and do not need to suggest, that any dispositive motion automatically stays discovery. Those same Federal Rules give this Court authority to stay discovery for good cause, Fed. R. Civ. P. 26(c), and as Plaintiffs themselves concede, "no one contends otherwise." (Opp. at 13.) In any event, the "dispositive" motion in *Rothstein* "ha[d] no potential to resolve the entire case." 2008 WL 5716138, at *4. Here, Defendants' fully-briefed motions to dismiss can end this case today.

- 10 -

Case 3:20-cv-00451-CEA-DCP   Document 59   Filed 02/08/21   Page 15 of 20   PageID #: 1302
5897058

available for the parties to use if the case is dismissed other than on the merits and then refiled in a Court where subject matter or personal jurisdiction is proper." (Opp. at 15 (quoting *Charvat v. NMP, LLC*, 2009 WL 3210379, at *2 (S.D. Ohio Sept. 30, 2009)).) This argument misses the mark. Not only does it fail to solve the inherent unfairness of one-sided discovery, but it also ignores that Defendants' motions to dismiss are based on merits, jurisdictional, *and* venue grounds, which only intensifies the need for a stay and protective order. (Stay Mot. Br. at 8-11.)

Finally, Plaintiffs curiously contend that Defendants' belief that they will prevail on their motions to dismiss is somehow at odds with their claims of prejudice. (Opp. at 19.) This makes no sense. While Defendants believe their motions to dismiss should be granted, that does not mean they will suffer no prejudice if Plaintiffs are permitted to engage in unlimited and overbroad one-sided discovery while their motions are pending. Moreover, Defendants' belief that they are likely to prevail on their motions to dismiss is exactly why they believe a motion to stay and for a protective order is warranted. If discovery proceeds at all, however, it should proceed on equal and fair terms.

### C. The Prejudice to Plaintiffs Is Illusory.

By contrast, Plaintiffs struggle to give definition to the prejudices and calumnies that supposedly will befall them if a stay of discovery is granted. That is because there are none. Plaintiffs state that the Federal Rules do not require "that, in order for Plaintiffs to serve discovery…Plaintiffs must first waive substantive defenses in advance that they may have based on the strategic litigation choices of Defendants." (Opp. at 18-19.) But this is a non sequitur, as staying discovery will not require Plaintiffs to waive their claim that this Court has jurisdiction over Broadcom or that venue is proper. Nor would they have waived any such right by stipulating to the normally noncontroversial proposition that mutual discovery can proceed while the motions

- 11 -

to dismiss are pending without Defendants' waiving their jurisdictional and venue defenses. Indeed, Plaintiffs had no problem stipulating to that with respect to Defendants' responding to discovery propounded *by them*, the service of initial disclosures, and the filing of the Rule 26(f) report.

It is clear Plaintiffs' position has nothing to do with their own "waiver" concerns. They simply want to have their cake and eat it too. Plaintiffs urge that "[t]o halt discovery in this matter completely would be to delay what may prove to be a prolonged legal battle and to deny the Plaintiffs speedy disposition of their prayers for relief." (Opp. at 15 (quoting *Mays v. Tennessee Valley Auth.*, 2009 WL 10668710, at *3 (E.D. Tenn. Dec. 15, 2009)).) Plaintiffs rely on *Mays v. TVA*, but that case is readily distinguishable, and presented circumstances not remotely present here.[11] The *Mays* court declined to stay merits and class certification discovery relating to the failure of a retaining dike that spilled "[m]illions of cubic meters of ash waste" into the Emory River. 2009 WL 10668710, at *1. Early in the case, the TVA had expressly agreed with opposing counsel that merits and class certification discovery could begin after briefing concluded on the TVA's dispositive motion on the FTCA's discretionary function exception. *Id.* at *1-2. Five months later, the TVA moved to stay discovery—just a few days before discovery was to begin. *Id.* at *2. Incensed by the TVA's dilatory conduct, the court denied the stay, explaining (as Plaintiffs quote) that the TVA was trying to "delay what may prove to be a prolonged legal battle and … deny the Plaintiffs speedy disposition for their prayers for relief." *Id.* at *3. Accordingly,

---

[11] The other cases cited by Plaintiffs involved absolutely run-of-the-mill discovery requests that posed minimal burdens on the moving parties—worlds apart from the discovery sought and positions taken by Plaintiffs in this litigation. *See Charvat,* 2009 WL 3210379 (cited in Opp. at 15-16) (11 interrogatories, 9 document requests, and 2 depositions, *see* No. 2:09-cv-209 ECF No. 23 at 1-3); *Doe v. Anderson*, 2016 WL 3230679 (E.D. Mich. June 13, 2016) (cited in Opp. at 22) (43 total interrogatories and requests and 2 depositions, *see* No. 2:15-cv-13852 ECF No. 47, at 1).

the instant case is doubly distinguishable from *Mays*. First, Plaintiffs have no reliance interests at stake, as Defendants made it clear at the Rule 26(f) conference that they believed a stay was warranted and offered a reasonable compromise. And second, a discovery stay in this case would actually *deter* abuse of this Court's process, because Plaintiffs have rejected that compromise for no discernible reason.

Indeed, if Plaintiffs truly cared about moving this case forward, they would have agreed to Defendants' reasonable proposal at the outset. *See Momenta Pharms., Inc. v. Teva Pharms. Industries Ltd.*, 765 F. Supp. 2d 87, 89 (D. Mass. 2011) (denying request for one-sided expedited discovery when defendant proposed "mutual and limited discovery" and plaintiff refused). And while Plaintiffs have repeatedly recited that the Federal Rules permit service of discovery after the Rule 26(f) conference (Opp. at 2, 8, 12, 17, 19, 23) and argued that they need broad discovery, (Opp. at 1-2, 18-20), they have not adequately explained why staying discovery while the motions to dismiss are pending would delay a trial date that was proposed *with the possibility of a stay in mind*. As Defendants explicitly warned *on the very first page* of the Rule 26(f) report, "Defendants further reserve any right they might have to seek a stay of discovery and/or a protective order pending resolution of their motions." (ECF No. 46 at 1 n.1; *see also id.* at 3.) The lengthy schedule set forth for these proceedings—including a fact discovery cutoff that is nearly a full year from now (and over a year from the date of the 26(f) report)—already accounted for the possibility of a stay, and a stay pending resolution of the motions to dismiss is not inconsistent with the notion that there may be a substantial volume of material pertinent to the case, thus requiring more than the standard 18 months to trial.

Plaintiffs turn this around and argue that Defendants will suffer no prejudice from the one-sided discovery because Defendants' will have plenty of time to begin their own discovery after

the motions to dismiss are decided. (Opp. at 19.) But Plaintiffs again ignore the inherent inequity of giving Plaintiffs free rein over the discovery process for an unknown period of time and the undeserved tactical advantages they will gain as a result. Moreover, as noted above, Defendants are not able to respond to much of Plaintiffs' discovery until they learn the factual basis and scope of Plaintiffs' claims through discovery of their own. Thus, Plaintiffs' unreasonable position that only they should be able to propound discovery will ultimately slow down the case, not speed it up.

This case is a classic example of the old maxim, "Just because you can doesn't mean you should." Plaintiffs' conduct may be permissible under the Federal Rules, but those same rules grant this Court the authority to curb abuses of the discovery process when they arise.

**D. Absent a Stay, the Parties and Court Will Become Embroiled in Needless and Costly Discovery Disputes and Further Motion Practice.**

Defendants jointly moved to stay discovery and for a protective order on January 16, 2021. (ECF No. 47.) But in a good faith attempt to respond to Plaintiffs' discovery requests, Defendants served Plaintiffs with comprehensive and detailed objections on January 25, 2021. Plessman Decl. ¶ 5. As described above, the discovery requests were overbroad and objectionable for a wide variety of reasons—and not just because a motion for a protective order was pending. Accordingly, every single one of Defendants' objections rested on additional grounds besides the pendency of the Stay Motion and the Motions to Dismiss.

Without a stay or protective order, Plaintiffs will continue to take advantage of their one-sided free rein and serve additional grossly overbroad and burdensome discovery. Indeed, notwithstanding the pending motion for a protective order and stay, Plaintiffs served a *second* set of discovery requests on Defendants on January 29, which heedlessly incorporated all the

- 14 -

Case 3:20-cv-00451-CEA-DCP Document 59 Filed 02/08/21 Page 19 of 20 PageID #: 1306
5897058

objectionable definitions and instructions that Defendants had already highlighted four days prior in their objections.[12] Plessman Decl. ¶ 6. Because the requests already served are objectionable on many levels, not simply because two motions to dismiss are pending, the parties and the Court will inevitably become embroiled in further discovery disputes and further motion practice absent a stay and protective order.

## II. Conclusion

For the foregoing reasons, the Court should stay discovery and enter a protective order pending its disposition of Defendants' Motions to Dismiss and/or Transfer.

Dated: February 8, 2021                    HUESTON HENNIGAN LLP


By:    */s/ Alison Plessman*
       Alison Plessman
       Attorneys for Defendants
       Broadcom, Inc.
       Brocade Communications Systems LLC


SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP


By:    */s/ Jordan Feirman*
       Jordan Feirman
       Attorneys for Defendant
       Extreme Networks, Inc.

---

[12] For the reasons set forth herein and in Defendants' opening motion, the stay and protective order requested should also cover this second set of discovery requests and any other discovery that may be served while the motions to dismiss are pending.

- 15 -