# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., | § § § | Case No. 3:20-cv-00451 |
| Plaintiffs, | § § | |
| v. | § § | **Jury Demand** |
| BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; AND EXTREME NETWORKS, INC. | § § § § | |
| Defendants. | § § | |

---

## PLAINTIFFS SNMP RESEARCH, INC. AND SNMP RESEARCH INTERNATIONAL, INC.'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL DISCOVERY RESPONSES

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................... 1

II. FACTS AND PROCEDURAL POSTURE .................................................... 3

III. ARGUMENT ................................................................................................ 6

    A. DEFENDANTS' PENDING MOTION TO STAY DISCOVERY DOES NOT EXCUSE THEM FROM THEIR CURRENT DISCOVERY OBLIGATIONS ................................................................ 6

    B. DEFENDANTS' FAILURE TO PARTICIPATE IN DISCOVERY AND USE OF IMPROPER OBJECTIONS JUSTIFY AN ORDER COMPELLING SUBSTANTIVE RESPONSES AND A WAIVER OF DEFENDANTS' OBJECTIONS .......................................................... 8

    C. PLAINTIFFS' DISCOVERY REQUESTS ARE RELEVANT AND PROPER, AND DEFENDANTS' OBJECTIONS ARE MERITLESS ............ 12

        1. Plaintiffs' Discovery Requests Are Relevant And Proper ..................... 12

        2. Defendants' Objections Are Meritless And A Ploy To Delay And Obstruct Discovery ................................................................. 17

            a. The "General Objections" Are Improper ................................... 17

            b. The "Specific Objections" Are Improper ................................... 18

            c. All Of The Objections Are Simply Designed To Delay Discovery ................................................................................... 20

IV. CONCLUSION ........................................................................................... 24

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adkisson v. Jacobs Engineering Group, Inc.*,
No. 3:13-CV-505-TAV-HBG, 2020 WL 8254452 (E.D. Tenn. Dec. 10, 2020) .....................12

*Alston v. Beckton*,
2014 WL 338804 (M.D.N.C. Jan. 30, 2014) ...........................................................................7

*Apple v. Eastman Kodak Co.*,
2011 WL 334669 (N.D. Cal. Feb. 1, 2011) .............................................................................7

*Brittney Gobble Photography, LLC v. Wenn Limited*,
No. 3:16-cv-306, 2019 WL 2446997 (E.D. Tenn. Feb. 19, 2019)..........................................15

*Conti v. Pidgeon*,
2007 WL 9752101 (E.D. Mich. Sept. 21, 2007)....................................................................10

*FCA Constr. Co. v. Durchslag*,
2012 WL 13018606 (D. Minn. Sept. 11, 2012) .....................................................................10

*Gale v. O'Donohue*,
824 Fed. App'x 304 (6th Cir. 2020) .....................................................................................10

*HRC-Hainan Holding Co., LLC v. Yihan Hu*,
19-MC-80277-TSH, 2020 WL 1643786 (N.D. Cal. Apr. 2, 2020) .........................................7

*Johnson v. Kraft Foods*,
238 F.R.D. 648 (D. Kansas 2006).........................................................................................23

*Jones v. Am. River Transp. Co.*,
2020 WL 7865326 (W.D. Tenn. Jun. 17, 2020) .............................................................11, 18

*Kraus v. Alcatel-Lucent*,
2019 WL 3304696 (E.D. Penn. July 22, 2019)......................................................................10

*Loyless v. Oliveira*,
No. 1:09-cv-239, 2011 WL 13308425 (E.D. Tenn. Jun. 24, 2011) ..........................................8

*Morgan v. AMISUB (SFH), Inc.*,
2020 WL 4274586 (W.D. Tenn. July 24, 2020) .....................................................6, 10, 11, 18

*National Corp. Tax Credit Funds III v. Potashnik*,
2008 WL 11339608 (C.D. Cal. June 16, 2008) .......................................................................7

*Neale v. Coloplast Corp.*,
No. 1:18-cv-00274-TRM, 2020 WL 6948361 (E.D. Tenn. Nov. 02, 2020)...............12, 18, 23

*Nelson-Salabes, Inc. v. Morningside Dev., LLC*,
  284 F.3d 505 (4th Cir. 2002) ................................................13

*Ross v. City of Memphis*,
  02-2454 MI/AN, 2005 WL 8157421 (W.D. Tenn. Jan. 13, 2005) ...........................................7

*Siser N. Am., Inc. v. Herika G. Inc.*,
  325 F.R.D. 200 (E.D. Mich. 2018) ...............................................9, 11

*Sobol v. Imprimis Pharm.*,
  2017 WL 5035837 (E.D. Mich. Oct. 26, 2017) ........................................10, 18, 22

*Standard Chlorine of Del. v. Sinibaldi*,
  821 F. Supp. 232 (D. Del. 1992)................................................7

*Strategic Mktg. & Research Team v. Auto Data Solutions, Inc.*,
  2017 WL 1196361 (E.D. Mich. Mar. 31, 2017) ........................................9, 11, 17

*Surmanian v. QAD Inc.*,
  2008 WL 11387061 (N.D. Cal. Oct. 6, 2008)........................................10

*Tinsley v. Kemp*,
  750 F. Supp. 1001 (W.D. Mo. 1990) ................................................8

*Wells Fargo Bank v. Iny*,
  2014 WL 1796216 (D. Nev. May 6, 2014) ................................................7

*Wesley Corp. v. Zoom T.V. Prod., LLC*,
  No. 17-10021, 2018 WL 372700 (E.D. Mich. Jan. 11, 2018) ................................9, 11, 18, 19

*Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc.*,
  707 F. Supp. 1429 (D. Del. 1989)................................................8

**Statutes**

17 U.S.C. § 504................................................15

**Rules**

Committee Notes to Fed. R. Civ. P. 37(d) ................................................6

Fed. R. Civ. P. 26(c)(1)................................................8

Fed. R. Civ. P. 33(b)(3)................................................11

Fed. R. Civ. P. 34(b)(2)(c) ................................................11

Fed. R. Civ. P. 36(a)(4)................................................12

**Page(s)**

Fed. R. Civ. P. 37(a)(1).................................................................................................8

Fed. R. Civ. P. 37(a)(4).................................................................................................8

Plaintiffs SNMP Research, Inc. ("SNMP Research") and SNMP Research International, Inc. ("SNMP International") (collectively, "Plaintiffs") respectfully submit this Memorandum of Law in support of their Motion to Compel Discovery Responses ("Motion" or "Mot.") from Defendants Broadcom Inc. ("Broadcom"), Brocade Communications Systems LLC ("Brocade") and Extreme Networks, Inc. ("Extreme" and collectively with Broadcom and Brocade, "Defendants").

## I.      INTRODUCTION

Defendants have refused to provide <u>a single substantive discovery response</u> to any of the written discovery served on them.  Indeed, as demonstrated below, Defendants concede that they have refused to provide any "meaningful, substantive" (Defendants' own words) responses to Plaintiffs' written discovery.  They have also refused to agree to, or even to negotiate, a protective order governing confidential information.  Yet, they use the lack of a protective order as a purported basis for refusing to provide substantive discovery responses.  On top of all of this, Defendants have also refused to meet and confer with Plaintiffs over the deficiencies in Defendants' discovery responses, stating that they will not do so until the Court has ruled on Defendants' motion to stay discovery.  None of this conduct is appropriate.  This case has been pending since October 2020 and, despite Plaintiffs' best efforts, not one Defendant has provided any valid response to discovery.  This Court should compel Defendants to provide proper, substantive responses to all of Plaintiffs' outstanding discovery requests without further delay and find that Defendants' objections have been waived except for objections as to privilege and attorney work product (or at the very least find that Defendants' general and boilerplate objections are waived).

On January 16, 2021, Defendants filed a Joint Motion to Stay Discovery and for a Protective Order, Dkt. 47-1 ("Motion to Stay"), wherein they argued that the Court should stay discovery until Defendants' motions to dismiss or to transfer this case are decided.  Since that time, Defendants have attempted to use the mere pendency of that Motion to Stay as a basis to shirk their discovery

obligations. As demonstrated below, such behavior is patently inappropriate, as it essentially amounts to Defendants unilaterally granting their own motion to stay discovery, thereby usurping the role of this Court.

Defendants' conduct reveals that they have no intention of ever properly responding to discovery so long as the Motion to Stay is pending. Defendants pretend that they did in fact respond to Plaintiffs' discovery, but their written "responses" consist entirely of objections—not a single substantive response is provided by a single defendant to a single request. That is not properly responding under the Federal Rules of Civil Procedure, and similar tactics by other defendants have been held to constitute sanctionable discovery misconduct. Moreover, Defendants' refusal to meet and confer over their objections demonstrates that Defendants are intentionally avoiding resolving the "objections" that they raise because, by doing so, Defendants are unilaterally stalling discovery until their Motion to Stay is decided. This flouts Defendants' obligations under the Federal Rules of Civil Procedure.

Nor are Defendants' objections well taken. Among other things, Defendants universally fail to disclose whether documents or information are being withheld on the basis of an objection, and if so, which objection(s). Defendants also fail to provide partial responses when only a portion of the discovery request is objected to, and Defendants incorporate by reference a long litany of "general objections," something that has repeatedly been held improper. Defendants also employ boilerplate objections that evince an obvious effort to avoid discovery at every turn. Each of these failings is improper and grounds not only for compelling proper responses but also for a finding of waiver of objections. When these failings are combined and considered alongside Defendants' utter refusal to cooperate in discovery, they amply justify granting this Motion.

Defendants' discovery misconduct and purposeful delay should not be tolerated. This would be true in any case, but it is particularly true here given that Defendants represented to the Court in a

joint submission that this case will involve extensive discovery that will take many months to complete. *See* Dkt. 46 at 6 ("[D]iscovery could require review of material, including electronically stored information and material, created a number of years ago including but not limited to the potential need for expert witnesses to engage in the time consuming and tedious task of evaluating thousands of lines of computer source code."). Defendants' delay of that discovery based on what is, in essence, their unilateral granting of their own Motion to Stay is thus improper and prejudicial to Plaintiffs. The prejudice is further exacerbated by the fact that Defendants' copyright infringement is ongoing.

In summary, the Court should grant this Motion and order Defendants to provide proper, substantive responses to Plaintiffs' outstanding discovery requests without further delay and find that Defendants have waived their objections other than as to the attorney-client privilege or work product protection (or at the very least waived their improper "general" and boilerplate objections, discussed more below).

## II.    FACTS AND PROCEDURAL POSTURE

In Plaintiffs' opposition (Dkt. 54) to Defendants' Motion to Stay, Plaintiffs set forth: (i) the key allegations in the Complaint; (ii) the parties' meet and confer discussions over Defendants' Motion to Stay pending resolution of Defendants' motions to dismiss or to transfer this case to the Northern District of California; and (iii) the parties' negotiations over a Protective Order governing confidential information. Plaintiffs incorporate that discussion herein by reference. *See* Dkt. 54 at pp. 3-12; *see also* Dkt. 54-1 at ¶¶ 3-12. Some of that discussion is highlighted below, as are additional facts and procedural developments relevant to the instant Motion.

On December 26, 2020, Plaintiffs served written discovery on each Defendant, including Plaintiffs' First Set of Interrogatories served on each Defendant ("Interrogatories"), *see* Exs. A, D, G to Wood Decl. (unless otherwise indicated, all references to "Ex. __" herein shall be to exhibits to the Wood Decl.); Plaintiffs' First Set of Requests for Production served on each Defendant ("Document

Requests"), *see* Exs. B, E, H; and Plaintiffs' First Set of Requests for Admission served on each Defendant ("RFAs"), *see* Exs. C, F, I (collectively hereafter, "Plaintiffs' Discovery"). Wood Decl. ¶¶ 2-13. Plaintiffs would have served the discovery earlier; however, Defendants Broadcom and Brocade refused to conduct the mandatory Rule 26(f) conference of counsel until December 23, 2020. *See* Dkt. 54-1 at ¶ 5.

Defendants requested that Plaintiffs agree to extend Defendants' deadline to respond to Plaintiffs' Discovery until after this Court ruled on Defendants' Motion to Stay. *See* Dkt. 54-1 at ¶¶ 9-10. Plaintiffs declined, noting that this would have the same effect as Defendants essentially granting their own Motion to Stay Discovery. *See* Dkt. 54-1 at ¶ 9. Defendants then requested, in the "alternative," thirty additional days to respond. However, when Plaintiffs asked for assurances that Defendants would use those additional thirty days to actually work on responding to the written discovery as opposed to simply using that time to wait out a ruling on their Motion to Stay, Defendants would not provide any such assurance. *See id.* at ¶ 9. Indeed, Defendants made it clear that they would not be doing work on the discovery responses but instead would use their requested thirty-day extension to simply wait for a ruling on their Motion to Stay, and if that did not occur within the extra thirty days provided, Defendants would just serve objections and not provide substantive responses or produce documents. *See id.* at ¶¶ 9-10. Consequently, Plaintiffs did not agree to the requested "alternative" extension either.

During the meet and confer process over Defendants' request for an extension of time to respond to Plaintiffs' Discovery, Plaintiffs made clear to Defendants that if Defendants did not provide proper, substantive discovery responses but instead relied on their pending Motion to Stay to avoid doing so, Plaintiffs would seek all available remedies, including but not limited to a waiver of all objections other than as to privilege and work product protection. *See* Dkt. 54-4 at 2. Defendants asked for Plaintiffs to provide written authority in support of Plaintiffs' position, which Plaintiffs did.

*See* Dkt. 54-1 at ¶¶ 10, 11, Dkt. 54-4 at 2-3. Defendants never responded. *See* Dkt. 54-1 at ¶ 12.

In Defendants' Motion to Stay, they claimed an inability to provide substantive discovery responses and documents because there was no Protective Order in place and because Defendants claimed they needed to see Plaintiffs' source code to answer some of the discovery. On January 16, 2021, Plaintiffs provided Defendants with a draft Protective Order. *See* Wood Decl. ¶ 14. Despite repeated requests for Defendants to provide any edits they may have to that draft Protective Order, as of the date of the filing of this Motion, Defendants have provided none. Wood Decl. ¶¶ 14-15. On January 24, 2021, Plaintiffs also offered to exchange source code but Defendants refused. *See* Wood Decl. ¶ 14; *see also* Dkt. 54-1 at ¶¶ 16-19. Plaintiffs offered to exchange it on a later date, but Defendants refused that as well. *Id.*

On January 25, 2021, Defendants served purported "Responses" to Plaintiffs' written discovery that consisted <u>solely</u> of objections.[1] Not a single substantive response was provided by any Defendant as to any discovery request. Wood Decl. ¶ 31. Not a single document was produced, nor was a single commitment to produce any document(s) provided. *Id.* Moreover, the vast majority of the objections appear to be largely cut-and-pastes of the same, or virtually the same, rote objections, repeated over-and-over for large groups of discovery requests often with just a minor word change here and there. *See* Exs. L-T.

On January 28 and 29, 2021, Plaintiffs emailed counsel for each Defendant noting Plaintiffs' disagreement with Defendants' approach to Plaintiffs' Discovery and asked each Defendant to meet and confer with Plaintiffs over the responses. Wood Decl. ¶¶ 26, 27. Every Defendant waited several days to respond, and then refused to meet and confer at all claiming that it made no sense to meet and confer given Defendants' pending Motion to Stay. Wood Decl. ¶¶ 28-30, Exs. U-V thereto.

_____

[1] For ease of reference herein, Plaintiffs will refer to Defendants' written discovery responses as Responses even though they are in effect not responses at all but just a disguised attempt to punt on discovery until after Defendants secure a ruling on their Motion to Stay.

Specifically, on February 1, 2021, Extreme's counsel wrote: "For the reasons set forth in our objections and in the stay motion (including Defendants' concerns about ongoing one-sided discovery), **a meet and confer does not make sense at this time**." Ex. V (emphasis added). On the same day, Broadcom and Brocade's counsel wrote: "**We believe meeting and conferring regarding the specific discovery requests should be postponed until the motion to stay and for a protective order is resolved**." Ex. U (emphasis added). As a result, Plaintiffs certify they have in good faith attempted to confer with the Defendants in an effort to resolve this dispute without court action.

## III.    ARGUMENT

Defendants invoke their pending Motion to Stay as if it somehow absolves them of their obligation to provide proper, timely, and <u>substantive</u> responses to written discovery, as well as to cooperate in discovery with respect to agreeing to a protective order and resolving discovery disputes. Defendants are wrong. Settled law provides that Defendants' Motion to Stay does not excuse them from any of their discovery obligations. Consequently, there is no justification for Defendants' universal failure to: provide a single substantive discovery response or document; negotiate a protective order; and meet and confer over disputes regarding Defendants' discovery responses. In addition, Defendants compound their failure to cooperate in discovery by repeatedly employing improper objections that flout the Federal Rules of Civil Procedure and established case law within the Sixth Circuit.

### A.    DEFENDANTS' PENDING MOTION TO STAY DISCOVERY DOES <u>NOT</u> EXCUSE THEM FROM THEIR CURRENT DISCOVERY OBLIGATIONS

A pending motion to stay discovery—whether characterized as a motion to "stay" or for a "protective order"—does <u>not</u> excuse a party from participating in discovery, including providing timely and proper discovery responses while that motion is pending. *See* Committee Notes to Fed. R. Civ. P. 37(d) ("[F]iling of a motion under Rule 26(c) is not self-executing—the relief authorized under that rule depends on obtaining the court's order to that effect."); *see also Morgan v. AMISUB (SFH), Inc.,*

2020 WL 4274586, at *6 (W.D. Tenn. July 24, 2020) ("The fact that Morgan moved for a protective

order does not by itself substantially justify her failure to comply with the Federal Rules of Civil

Procedure.") (granting motion to compel); *Standard Chlorine of Del. v. Sinibaldi*, 821 F. Supp. 232,

261 (D. Del. 1992) ("Defendants improperly assume that their filing of a motion for a protective order

permitted them to disregard Standard's discovery requests . . .Defendants' assumption is incorrect.")

(denying motion for protective order); *Alston v. Beckton*, 2014 WL 338804, *2 (M.D.N.C. Jan. 30,

2014) ("[T]he mere filing of a motion to stay [discovery] does not effect a stay.") (denying motion for

extension of time for discovery); *Ross v. City of Memphis*, 02-2454 MI/AN, 2005 WL 8157421, at *2

(W.D. Tenn. Jan. 13, 2005) ("[T]he mere act of filing a motion for protective order does not relieve a

party" of its discovery obligations.) (imposing discovery sanctions). Consequently, Defendants' "stay

motion by itself didn't do anything. A motion is just a request for a court order. The filing of a motion

to stay discovery does not automatically relieve the movant from continuing to comply with its

discovery obligations." *HRC-Hainan Holding Co., LLC v. Yihan Hu*, 19-MC-80277-TSH, 2020 WL

1643786, at *2 (N.D. Cal. Apr. 2, 2020) (imposing discovery sanctions).[2]

Indeed, Defendants' refusal to provide substantive responses to discovery based on the mere

fact that they have made a Motion to Stay means Defendants have essentially granted their own motion

to stay and ignored their legal obligations based on their own *ipse dixit*. As one court has aptly put it:

> Defendant's argument assumes that the moment it has filed a motion to stay discovery
> on the damages issue it need no longer obey basic discovery rules. Defendant is in
> effect granting itself a stay of discovery. Simple logic teaches that defendant has put

---

[2] *See also, e.g., Wells Fargo Bank v. Iny*, 2014 WL 1796216, at * 3 (D. Nev. May 6, 2014) (rejecting
defendants' argument that discovery was "premature" because they had moved for summary judgment
and to stay discovery, holding that "the filing of a motion to stay discovery does not automatically
relieve the movant from continuing to comply with discovery obligations.") (denying motion to quash
subpoena); *Apple v. Eastman Kodak Co.*, 2011 WL 334669, at * 2 (N.D. Cal. Feb. 1, 2011) (rejecting
defendants' argument that discovery was "premature" because they had moved to dismiss the
complaint and stay discovery, holding that "this reasoning 'assumes that the moment [the defendant]
has filed a motion to stay discovery . . . it need no longer obey basic discovery rules.'") (granting motion
to compel) (internal quotation marks and citations omitted); *National Corp. Tax Credit Funds III v.
Potashnik*, 2008 WL 11339608, at *1 (C.D. Cal. June 16, 2008) ("That defendants have sought a stay
is insufficient to avoid their discovery obligations.") (granting motion to compel).

the presumption on the wrong side:  unless and until it is granted a stay, defendant should be required to conduct discovery as if no motion had been filed at all.

*Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc.*, 707 F. Supp. 1429, 1441 (D. Del. 1989) (granting motion to compel); *see* also *Tinsley v. Kemp*, 750 F. Supp. 1001, 1013 (W.D. Mo. 1990) ("[B]y refusing to comply with discovery merely because a motion to stay is pending, a party effectively is granting its own motion to stay—even before the court has ruled.  Such a phenomenon would reduce a court's orders to useless and senseless formalities.") (granting motion to compel).

In short, the fact that Defendants moved to stay discovery did <u>nothing</u> to absolve them of their obligation to properly participate in discovery, which they have steadfastly refused to do.

## B. DEFENDANTS' FAILURE TO PARTICIPATE IN DISCOVERY AND USE OF IMPROPER OBJECTIONS JUSTIFY AN ORDER COMPELLING SUBSTANTIVE RESPONSES AND A WAIVER OF DEFENDANTS' OBJECTIONS

Once Defendants' invocation of their Motion to Stay is put aside (as it must be), this Court is left with:  (i) Defendants' across-the-board objections to written discovery with not a single substantive response provided nor a single document produced; (ii) Defendants' refusal to even respond to Plaintiffs' attempt to negotiate a Protective Order (even while Defendants use the lack of a Protective Order as an excuse for not responding to written discovery); and (iii) Defendants' refusal to meet and confer over their discovery responses.

A failure to respond to discovery constitutes a failure to cooperate in discovery.  *See, e.g.*, *Loyless v. Oliveira*, No. 1:09-cv-239, 2011 WL 13308425 (E.D. Tenn. Jun. 24, 2011) (granting a motion to compel and discovery sanctions for defendant's refusal to respond to discovery other than a blanket denial of requests for admissions).[3]  Moreover, "an evasive or incomplete disclosure, answer or response must be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).  Here,

---

[3] *See also* Fed. R. Civ. P. 26(c)(1); 37(a)(1) (requiring meet and confer over discovery disputes and protective orders).

Defendants' discovery responses are undeniably evasive and incomplete given that none of the three Defendants has provided a single substantive response to any of the written discovery served on Defendants. Their "responses" are thus the equivalent of no response at all. *See Siser N. Am., Inc. v. Herika G. Inc.,* 325 F.R.D. 200, 210 (E.D. Mich. 2018) ("Evasive and incomplete answers to discovery requests are tantamount to no answer at all."); *Wesley Corp. v. Zoom T.V. Prod., LLC*, No. 17-10021, 2018 WL 372700, at *2 (E.D. Mich. Jan. 11, 2018) ("To date, Defendants have not produced a single document. Instead, Defendants repeat the same objection to nearly every request for production.") (issuing discovery sanctions and deeming objections waived); *Strategic Mktg. & Research Team v. Auto Data Solutions, Inc.,* 2017 WL 1196361, at *2-*3 (E.D. Mich. Mar. 31, 2017) (finding waiver of objections and granting motion to compel where party did not "produce a single document" and instead provided boilerplate, generalized objections).

Defendants are not bashful about their approach. They argue in their Motion to Stay: "[E]ven a cursory review of the several hundred requests that Plaintiffs have already served on Defendants demonstrates that **responding to them in any meaningful, substantive way** will be an extremely arduous and costly process and one that will require the production of sensitive and proprietary information." Motion to Stay, Dkt. 47-1 at 15 (emphasis added); *see also id.* at 13 ("[I]t would be extremely costly, time consuming, and wasteful **for Defendants to respond meaningfully**.") (emphasis added). Thus, Defendants concede that they have not responded to any of the discovery requests "in any meaningful, substantive way." Similarly, in its discovery responses, Defendant Extreme admits that it is "not providing such substantive responses now" but then argues that this "should not be construed as indicating that Extreme has taken no action to determine whether any responsive information exists or that Extreme has taken no steps to respond to discovery requests in good faith." *See* Ex. R at ¶ 3 (emphasis added); *see also*; Ex. S at ¶ 3; Ex. T at ¶ 3. However, a unilateral refusal to provide meaningful, substantive responses is the opposite of good faith discovery

conduct. *See, e.g., Conti v. Pidgeon*, 2007 WL 9752101, at * 2 (E.D. Mich. Sept. 21, 2007) (imposing

discovery sanctions because the defendant "failed to provide meaningful discovery responses"); *Kraus*

*v. Alcatel-Lucent*, 2019 WL 3304696, at *2 (E.D. Penn. July 22, 2019) (granting motion to compel and

stating that "I reiterate that vague allusions in an objection are not a substitute for a meaningful

discovery response."); *FCA Constr. Co. v. Durchslag*, 2012 WL 13018606, at *4 (D. Minn. Sept. 11,

2012) (imposing discovery sanctions for defendant's "failure to produce documents or to provide any

other meaningful substantive discovery responses"); *Surmanian v. QAD Inc.*, 2008 WL 11387061, at

*7 (N.D. Cal. Oct. 6, 2008) (granting motion to compel and imposing discovery sanctions on party for

"not providing meaningful responses to . . . discovery").

      In addition to refusing to provide any "meaningful, substantive responses," negotiate a

protective order, or meet and confer over discovery disputes, Defendants also repeatedly employ

improper objections in their discovery responses. For instance, as discussed in more detail, *infra,* at

Section III.C, Defendants repeatedly incorporate by reference a long litany of "general objections"

despite the fact that courts within the Sixth Circuit have held that this is improper and should be treated

as a waiver of the objections. *See, e.g., Sobol v. Imprimis Pharm.*, 2017 WL 5035837, at *4 (E.D.

Mich. Oct. 26, 2017) ("[I]ncorporating all of the General Objections into each response violates Rule

34(b)(2)(B)'s specificity requirements….") (finding waiver of objections and granting motion to

compel); *Morgan,* 2020 WL 4274586, at *4 ("[G]eneral objections violate the specificity requirement

of Rule 33[.]") (citations omitted) (finding waiver of objections and granting motion to compel).

Moreover, even when supposedly making "specific" objections, Defendants often employ boilerplate

objections (also discussed more, *infra*, in Section III.C). Both the Sixth Circuit and courts within it

repeatedly have held boilerplate objections are improper and amount to a waiver of the objections. *See*

*Gale v. O'Donohue*, 824 Fed. App'x 304, 312 n. 5 (6th Cir. 2020) ("By no means do we . . . condone

parties' use of boilerplate objections during discovery[.]") (citations omitted); *Morgan,* 2020 WL

4274586, at *4 ("Boilerplate objections are legally meaningless and amount to a waiver of an objection."); *Jones*, 2020 WL 7865326, at *2 (same); *Siser,* 325 F.R.D. at 210 ("Boilerplate or generalized objections are tantamount to no objection at all and will not be considered by the Court.") (citations omitted); *Strategic Marketing*, 2017 WL 1196361, at *2 (same).

Defendants also <u>never</u>—in any instance—identify whether any documents or information are being withheld on the basis of their objections, much less do Defendants provide this information on an objection-by-objection basis as the Federal Rules require.  This is improper and also renders the objections waived.  *Wesley*, 2018 WL 372700, at *4 ("[A]n objection must state whether any responsive materials are being withheld on the basis of that objection.  When objections lack specificity, they lack effect:  an objection that does not explain its grounds (and the harm that results from responding) is forfeited.") (finding waiver of objections, granting motion to compel, and issuing discovery sanctions); *see also Jones v. Am. River Transp. Co.*, 2020 WL 7865326, at *2 (W.D. Tenn. Jun. 17, 2020) ("Jones's boilerplate objections and responses also violate Rule 34(b)(2)(C)'s requirement to indicate whether any responsive materials are withheld on the basis of an objection. Accordingly, the objections described above are deemed waived.") (granting motion to compel); *Strategic Mktg.,* 2017 WL 1196361, at *2 ("If an objection is lodged, the objecting party must state whether any responsive materials are being withheld on the basis of that objection[.]") (internal quotation marks and citations omitted).

In addition, even when Defendants' objections do not encompass the entirety of a request, Defendants still never provide even a partial response or agree to produce a single document.  This violates the Federal Rules governing document requests, interrogatories, and requests for admission. *See Morgan,* 2020 WL 4274586, at *4 ("An objection to part of a [document] request must specify the part and permit inspection of the rest . . . [E]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.") (quoting Fed. R. Civ. P. 34(b)(2)(c) and

33(b)(3)); *see also* Fed. R. Civ. P. 36(a)(4) ("A denial [of an RFA] must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.").

Given these many failings in Defendants' discovery responses and their refusal to cooperate in discovery in general, this Court should order Defendants to provide proper, substantive responses to Plaintiffs' Discovery without further delay or objections other than as to attorney-client privilege or the work product protection.

### C.  PLAINTIFFS' DISCOVERY REQUESTS ARE RELEVANT AND PROPER, AND DEFENDANTS' OBJECTIONS ARE MERITLESS

Defendants' complete failure to cooperate in discovery and their improper use of objections renders it unnecessary for this Court to analyze the disputed discovery on a request-by-request basis. Nevertheless, despite Defendants' conclusory assertions to the contrary, Plaintiffs' discovery requests are relevant and proper. In contrast, Defendants' objections are improper, and Defendants' refusal to meet and confer on the objections amply demonstrates that the "objections" are just a disguised attempt to unilaterally force a stay of discovery.

### 1.  Plaintiffs' Discovery Requests Are Relevant And Proper

As this District repeatedly has held, "[r]elevance for discovery purposes is extremely broad." *Neale v. Coloplast Corp.*, No. 1:18-cv-00274-TRM, 2020 WL 6948361, at *2 (E.D. Tenn. Nov. 02, 2020); *Adkisson v. Jacobs Engineering Group, Inc.,* No. 3:13-CV-505-TAV-HBG, 2020 WL 8254452, at *3 (E.D. Tenn. Dec. 10, 2020) (The "scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad.") (internal quotation marks and citations omitted). "Relevance has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Neale*, 2020 WL 6948361, at *2. As demonstrated below, Plaintiffs' Discovery undeniably meets the broad standard for discovery relevance. In fact, Plaintiffs' Discovery is directed to core aspects of Plaintiffs' claims as well as

Defendants' asserted jurisdiction and venue defenses.

This case centers on Brocade's breach of a computer software license agreement that Brocade and SNMP International entered into on March 10, 2001, as amended (herein, the "Agreement"). *See* Plaintiffs' Opposition to Defendants' Motion to Stay (Dkt. 54) at pp. 3-5. The Agreement sets clear mandates on which copyrighted software is licensed, how it can be used internally by Brocade, and how it can be reproduced or transferred externally. And it expressly forbids Brocade from transferring or disclosing the human-readable "source code" that makes up the licensed software. Cmplt. ¶ 8. Brocade intentionally breached the Agreement by disclosing Plaintiffs' source code to Extreme. *Id*. ¶¶ 9, 44-46. As a result, SNMP International terminated Brocade's internal use and redistribution rights under the Agreement. *Id*. ¶¶ 58-60. Yet Brocade has continued to incorporate Plaintiffs' software into numerous products it sells in the marketplace, including newly developed products developed post-termination, all without the consent of SNMP International. *Id*. ¶¶ 62-64. After improperly obtaining Plaintiffs' source code from Brocade, Extreme also incorporated Plaintiffs' software into numerous products that Extreme sells in the marketplace without Plaintiffs' consent. *Id*. ¶¶ 47-50, 85-93. This constitutes copyright infringement and it is ongoing to this day. *Id.*

Largely based on Defendants' pre-suit admissions, the Complaint identifies numerous of Defendants' specific products and product lines that contain the copyrighted software. *Id.* ¶ 49, 64. However, Extreme and Brocade are obviously privy to inside information about their own products (particularly new products) that is unavailable to Plaintiffs. So, too, is Broadcom, which wholly owns and controls Brocade and is liable as Brocade's "practical partner" under copyright law. *See id.* ¶¶ 15, 65–67; *see also Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 517 (4th Cir. 2002) ("When a court finds the existence of a partnership or a 'practical partnership,' the 'partners' thereof are jointly and severally liable for any profits that they collectively derived from the acts of . . . infringement.").

As for precisely which "Broadcom" entity is doing what—that is largely shrouded in secrecy. For instance, Brocade has refused to file a certificate of interested parties disclosing who owns it. Wood Decl. ¶ 32. And even though this case has been brought against Broadcom Inc., Broadcom Inc.'s counsel has signed filings on behalf of "Broadcom Corporation" on multiple occasions. *See, e.g.,* Dkt. 27 at 2; Dkt. 33 at 2; Dkt. 40 at 2; Dkt. 41 at 5; Dkt. 47 at 2. Broadcom Corporation is one of Broadcom Inc.'s "dozens" (Defendants' word) of subsidiaries. And while Broadcom submitted a Broadcom executive's declaration discussing Broadcom's relationship with Brocade, the sum total of that discussion was that "several layers" exist between Broadcom Inc. and Brocade. Dkt. 40-2 (Brazeal Declaration) ¶ 4. None of the companies making up those layers was identified, nor were their respective roles in distributing Plaintiffs' software. Indeed, Brocade has even refused to admit (in response to Plaintiffs' RFAs) that Brocade is a wholly owned subsidiary, directly or indirectly, of Broadcom Inc., despite their prior written representation that this was in fact the case.[4] In short, Broadcom and Brocade have been, and are still, playing a shell game as to which Broadcom entity did what with Plaintiffs' copyrighted software ("SNMP Research Software").

It is with respect to the above allegations that Plaintiffs' Discovery is directed. For instance, in the discovery propounded on Broadcom and Brocade, Plaintiffs seeks information regarding:

(i)      Broadcom and/or Brocade's transfer of SNMP Research Software to Extreme.

        *See* Ex. A at 11; Ex. B at 12, 50, 54-66; Ex. C at 21-29.[5]

(ii)     Which of Defendants' products contain Plaintiffs' copyrighted software or any

---

[4] *Compare* Ex. W (Aug. 1, 2019 letter from Simone Yew, Associate General Counsel, Broadcom, Inc., to Katy Motley, General Counsel, Extreme Networks, Inc.) ("I refer to the Asset Purchase Agreement between Brocade Communications Systems, Inc. ('Brocade'), a wholly owned subsidiary of Broadcom, Inc. ('Broadcom') . . .") *with* Ex. Q Responses 24-27 (Brocade RFA responses refusing to admit that Brocade is, or ever was, a wholly owned subsidiary of Broadcom, Inc.).

[5] For ease of reference and to avoid clutter, the citations herein are to discovery requests to Broadcom. With respect to Interrogatories and Document Requests, the discovery directed to Brocade is virtually identical to Broadcom's as are Broadcom and Brocade's objections. A chart setting forth the Brocade discovery that corresponds to the Broadcom discovery is at Ex. Y.

version or portion of that software.  *See* Ex. A at 1-4; Ex. B at 1-5; Ex. C at 1-20, 30, 31.

(iii)    When, where, to whom and in what quantity Defendants have used or distributed products containing SNMP Research Software.  *See* Ex. A at 5-6, 10, 12; Ex. B at 6-7, 11, 13, 31-37, 40, 43, 46-47, 70; Ex. C at 32.

(iv)    The individuals involved with, and/or who have knowledge of, the inclusion of SNMP Research Software in Defendants' products or the use or distribution of those products.  *See* Ex. A at 7-8; Ex. B at 8-9.

(v)    Defendants' revenues, costs, and profits associated with products containing SNMP Research Software or related products.[6]  *See* Ex. A at 9, 14; Ex. B at 10, 15, 38-39, 44-45, 49, 52-53, 67-69.

(vi)    The organizational documents for, and the relationship between, Defendants.  *See* Ex. B at 52-53, 85-91.

(vii)    Broadcom's jurisdictional defense, and all Defendants' venue defense.  *See* Ex. A at 13, 15-22; Ex. B at 14, 16-23, 71, 73-84; Ex. C at 32-47.

(viii)    Defendants' document preservation.  *See* Ex. B at 41-42.

(ix)    The manuals, install images, source code, and build environment for Defendant's infringing products.  *See* Ex. B at 24–30.

---

[6] Under the Agreement, for "any unauthorized use or distribution" of the SNMP Research Software, Brocade must pay SNMP International "an amount no less than the sum that SNMP [International] would have charged the person or persons obtaining the benefit of such unauthorized use . . . plus any amount received by [Brocade] on account of such unauthorized use."  Cmplt. Ex. A at p. 8, § 16(a)(ii). Separately, under copyright law, Plaintiffs are entitled to recover "(1) the copyright owner's actual damages and any additional profits of the infringer, or (2) statutory damages." *Brittney Gobble Photography, LLC v. Wenn Limited*, No. 3:16-cv-306, 2019 WL 2446997, at *6 (E.D. Tenn. Feb. 19, 2019)) (citing 17 U.S.C. § 504).

(x)     The Agreement and documents related to it.  *See* Ex. B at 48, 72; Ex. C at 48-51.

All of the above-described discovery requests propounded on Broadcom and Brocade are thus relevant to the claims and defenses in this action.  The same holds true for defendant Extreme. Plaintiffs' Discovery propounded on Extreme seeks information regarding the following:

(i)     Broadcom and/or Brocade's transfer of SNMP Research Software to Extreme. *See* Ex. G at 13-16; Ex. H at 13-14, 24, 26, 44-45, 47-65, 67; Ex. I at 24-33.

(ii)    Which of Defendants' products contain Plaintiffs' copyrighted software or any version or portion of that software.  *See* Ex. G at 1-3, 10, 11; Ex. H at 1-3, 10, 11, 16, 22-23, 28, 37; Ex. I at 1-20.

(iii)   When, where, to whom and in what quantity Defendants have used or distributed products containing SNMP Research Software.  *See* Ex. G at 2-3, 5, 10, 12; Ex. H at 2-3, 5, 10, 12, 17, 41-42*;* Ex. I at 33-36.

(iv)    The individuals involved with, and/or who have knowledge of, the inclusion of SNMP Research Software in Defendants' products or the use or distribution of those products.  *See* Ex. G at 4, 7, 15, 16*;* Ex. H at 4, 7-8, 24-25.

(v)     Defendants' revenues, costs, and profits associated with the products containing SNMP Research Software or related products.  *See* Ex. G at 6, 9; Ex. H at 6, 9, 29-30.

(vi)    The organizational documents for, and the relationship between, Defendants. *See* Ex. H at 34-35.

(vii)   Extreme's venue defense.  *See* Ex. I at 35-43.

(viii)  Defendants' document preservation.  *See* Ex. H at 32-33.

(ix)    The manuals, install images, source code and build environment for

Defendant's infringing products.  *See* Ex. H at 15, 18-21.

(x)     The Agreement and documents related to it.  *See* Ex. H at 27, 31, 66; Ex. I at
        21-23, 44-45.

(xi)    Plaintiffs' Damages.  *See* Ex. H at 36, 38-40, 47.

All of the above-described discovery requests propounded on Extreme are thus relevant to the claims and defenses in this action.  Indeed, this discovery and the discovery propounded on Broadcom and Brocade go to the very heart of the claims and defenses in this action.  And at the very least, the requested information meets the extremely broad standard for relevance that governs discovery.

### 2.     Defendants' Objections Are Meritless And A Ploy To Delay And Obstruct Discovery

As demonstrated above, this Court need not address Defendants' objections individually because Defendants have already admitted that they have not provided "meaningful, substantive" discovery responses, which is what the Federal Rules require.  Nevertheless, even if this core failing were put aside (and it should not be), Defendants' objections are patently meritless and most certainly do not justify a total failure to meaningfully and substantively respond to a single discovery request.  *See Strategic Mktg.,* 2017 WL 1196361, at *2 ("The burden . . . rests with the party objecting to the motion to compel to show in what respects the discovery requests are improper.").  In addition, while Defendants repeatedly proclaim in their Motion to Stay that they provided "700 pages" of discovery responses, that is only because Defendants incessantly repeat the same, meaningless boilerplate and general objections and raise "vague and ambiguous" objections to virtually any word in the English language employed in Plaintiffs' Discovery.  Consequently, the verbosity of Defendants' objections does not make them proper.

### a.     The "General Objections" Are Improper

In every single response, each Defendant incorporates its "General Objections," which span

between 6-9 pages in length (depending upon the Defendant and the particular discovery request).[7]

Moreover, Defendants never identify whether documents or information are being withheld based on these General Objections, and if so, which documents and information are being withheld based on which objections. Exs. L-T. As demonstrated above, this is improper, and the "General Objections" are thus waived. *See Sobol.,* 2017 WL 5035837, at *4; *Morgan,* 2020 WL 4274586, at *4.

### b. The "Specific Objections" Are Improper

Defendants use the term "Specific Objections," so this Motion will employ the same term. However, Defendants' "Specific Objections" are largely just boilerplate. For instance, a significant number of Extreme's responses contain the boilerplate objection: "Extreme objects to this Request as overly broad, unduly burdensome, and seeking information neither relevant nor proportional to the needs of this case." *See* Ex. S at 15–31, 36–39, 41. However, "[t]he mere statement by a party that an interrogatory or request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection." *Neale*, 2020 WL 6948361, at *2 (citations omitted); *see also Wesley*, 2018 WL 372700, at *3-4 (finding similar objections constituted "boilerplate" and noting that "[l]awyers who purport to preserve an objection by including it in a boilerplate statement must be prepared to face the fact that the result of a substance free objection is generally the opposite of preservation, i.e., forfeiture."); *Jones*, 2020 WL 7865326, at *2 (Objection that "this interrogatory is overbroad and may seek information which is protected, privileged, and not otherwise discoverable" was "meaningless boilerplate" and "amount[ed] to a waiver of an objection."). Moreover, when Extreme makes assertions of "overly broad and unduly burdensome" for a specific word or phrase in a request, Extreme never demonstrates any such undue burden, never responds to any portion of any

---

[7] Extreme begins each discovery response with: "In addition to the General Objections, including without limitation the objection to all Requests due to the pending discovery posture and motions . . . ." *See* Exs. R-T. Each Broadcom and Brocade response states that the "General Objections" "apply to all of" Plaintiffs' Discovery "and are incorporated by reference into each specific answer as if fully set forth therein." *See* Exs. L-Q.

request, nor indicates whether it is withholding documents on the basis of this objection or any other objection, all of which the Federal Rules require.

Broadcom and Brocade are even worse than Extreme. In their "Specific Objections," they simply regurgitate most, if not all, of the pages-upon-pages of General Objections they list at the front of their responses. These objections, which are in almost every response, and should all be found improper, are as follows:

a. As framed [the request] seeks information that is irrelevant and not proportional to the needs of the case.

b. Premature because it first requires a review of information in SNMP's possession, including software and/or source code.

c. Seeks premature expert discovery, analysis, and opinion.

d. Requires disclosure of confidential and proprietary information of Broadcom and third parties.

e. No protective order has been agreed to or entered.

f. This [request] is the subject of the Motion to Stay and for a Protective Order that is pending before the Court.

g. The Court lacks personal jurisdiction over Broadcom.

h. This jurisdiction is an improper venue.

i. To the extent the information is not in Broadcom's possession, custody or control and is in the possession, custody, or control of third parties.

j. To the extent the information is already in Plaintiffs' possession.

k. To the extent it seeks disclosure of information, documents or tangible things that is protected by any applicable privilege or protection, including without limitation the attorney-client privilege, the attorney work product doctrine, the joint client privilege, the joint defense or common interest privilege, the constitutional right to privacy, the tax privilege, and the Federal Rules of Civil Procedure.

*See* Exs. L-Q; *see also Wesley*, 2018 WL 372700, at \*4 ("A boilerplate objection is one that is invariably general; it includes, by definition, ready-made or all-purpose language that will fit in a variety of documents. Thus, an objection to a discovery request is boilerplate when it merely

states the legal grounds for the objection without (1) specifying how the request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond to the request.") (citations omitted) (finding waiver of boilerplate objections).  Additionally, Broadcom and Brocade "object" based on Defendants' pending Motion to Stay, which as demonstrated above is <u>not</u> a basis to refuse to provide meaningful and substantive discovery responses.  If it were, a defendant could simply issue its own order staying discovery (in effect) by "objecting" via reference to its pending motion to stay discovery.

**c.**      **All Of The Objections Are Simply Designed To Delay Discovery**

In order to justify their non-response to discovery, Defendants attempt to classify Plaintiffs' Discovery with sweeping (and conclusory) generalizations that the discovery is premature, overbroad, irrelevant, and unduly burdensome.  *See, e.g.,* Motion to Stay, Dkt. 47 at 7, 14.  Yet Defendants' basis for their "premature" objection is that their Motion to Stay and motions to dismiss/transfer are pending, neither of which make the discovery requests "premature."  Defendants object to each request as requiring "premature expert discovery" and vaguely allude to the supposed need to use "experts" to answer some discovery requests (*see* Boilerplate objection c above; *see, e.g.,* Motion to Stay, Dkt. 47-1 at 7, 15), but Defendants never explain which "expertise" these two sophisticated, billion-dollar, public technology companies are supposedly lacking or why they cannot consult with whomever they need to consult with now, as opposed to after their Motion to Stay and/or motions to dismiss are decided.

As for supposed overbreadth, burdensomeness, and relevance, Defendants never explain how <u>any</u> of the topics of discovery that Plaintiffs have inquired into are immaterial to Plaintiffs' breach of contract and copyright infringement claims, the damages and revenues associated with the breaches, and the damages, revenues and profits associated with the copyright infringement.  Nor do they explain why responding to the discovery is somehow so burdensome that not a single "meaningful, substantive" response can be provided.  Instead, Defendants repeatedly make conclusory arguments to

the effect that Plaintiffs' Discovery "is not tailored to information needed to respond to Defendants' motions to dismiss." *See* Motion to Stay (Dkt. 47-1) at 4, 7. But a plaintiff's discovery is not limited to the topics a defendant chooses to challenge in a motion to dismiss (and in any event, Plaintiffs' discovery does inquire into Defendants' jurisdiction and venue challenges).

Broadcom complains that all discovery requests that mention the defined term "Broadcom" are overly broad (*see*, Exs. L, ¶ 21, Ex. M, ¶ 23), but Broadcom never explains why that constitutes an undue burden. Presumably, Broadcom knows which of its subsidiaries are selling which of its products and which software is in which product. And if Broadcom is complaining that its subsidiaries <u>are engaged in copyright infringement as to Plaintiffs' software</u>, then providing information as to that infringement is not "burdensome"; it is a necessary consequence of widespread infringement by Broadcom and the companies that it owns and controls.

Furthermore, the definition of "Broadcom" has to include subsidiaries and affiliates given the secrecy surrounding Broadcom's structure and Broadcom and Brocade's precise affiliation over time. Moreover, in their eagerness to challenge the defined terms, Broadcom and Brocade apparently failed to realize that many of the requests which they impugn for supposedly using the defined terms, in fact don't use them. Instead, many of them identify Defendants <u>by their precise corporate name</u> (i.e. "Broadcom Inc." and "Brocade Communications Systems, LLC") so the requests clearly pertain to Broadcom Inc. and Brocade Communications Systems LLC, not any other company or family of companies. *See,* Ex. L at Interrogatory No. 22; Ex. M at Request Nos. 52, 53, 54, 67-76, 82, 89, and 91; Ex. P at Request Nos. 55-57, 69-75. Defendants would have realized this if they were reading the discovery requests fairly with an eye to attempting to respond (either in whole or in part), as opposed to searching for ways to find fault so that they could manufacture an excuse to not respond.

Similarly, while Defendants feign confusion over what the term "SNMP Research Software" encompasses, they were not so confused just last year when they were asking for a replacement license

to protect themselves from copyright infringement. *See, e.g.,* Wood Decl. ¶ 33, and Ex. X (Feb. 21, 2020 email from John Wood (of Plaintiffs) to Tara Flanagan (of Extreme): "If you are referring to the SNMP software that Extreme received from Brocade then it is my understanding that Extreme is using SNMP software it received from Brocade without a license."); (Feb. 27, 2020 email from Tara Flanagan to John Wood: "[A]s you noted below, <u>Extreme needs to license SNMP software to cover the Brocade license that Brocade had with SNMP for the SLX and NOS-related Extreme software</u>.") (emphasis added). In any event, there should be no confusion, as Plaintiffs' Discovery defines "SNMP Research Software" with three elements to cover the possible ways that Defendants could have obtained SNMP Research Software.[8] And if Defendants truly were confused, and not just trying to manufacture a reason not to respond, then Defendants would not have refused to meet and confer over the supposedly confusing definition.

Defendants also attempt to set up road blocks to discovery. One of Broadcom's boilerplate objections in virtually every response is that the Plaintiffs' Discovery seeks Defendants' "confidential" or "proprietary" information. Yet, as demonstrated above, Plaintiffs sent Defendants a draft Protective Order a month ago, and Defendants have sat on it, refusing to provide any suggested edits but also not agreeing to entry of it. *See* Wood Decl. ¶ 14; Ex. J; *see Sobol,* 2017 WL 5035837, at *5 (finding waiver of objections and noting that defendant had "caused one of the obstacles that it claims now creates a burden for it"). Another boilerplate objection in most of Broadcom's and Brocade's responses is that they supposedly need to see Plaintiffs' source code to answer certain discovery (the truth is Defendants do not; they already have it and are using it to infringe). Yet, again, Defendants have repeatedly refused to exchange source code or even agree on a future date for an exchange. *See*

---

[8] Plaintiff's discovery defines SNMP Research Software as "any of the following: (i) software provided by SNMP Research to Brocade, (ii) software licensed by SNMP Research to Brocade, or (iii) any software created by SNMP Research which is or was in the possession of [Brocade and/or Broadcom, Extreme]." *See* Exs. A-I.

Wood Decl. ¶ 15; *see also* Dkt. 54-1 at ¶¶ 16-19.

Finally, Broadcom and Brocade in particular engage in semantic games, complaining that virtually every word used in Plaintiffs' Discovery requests is "vague and ambiguous." This improper practice is employed in virtually every response to every discovery request. Exs. L-Q; *see Neale*, 2020 WL 6948361, at *4 ("Discovery is not a game of semantics.") (rejecting "vagueness" objection and granting motion to compel); *Johnson v. Kraft Foods*, 238 F.R.D. 648, 655 (D. Kansas 2006) ("A party responding to discovery requests should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized[…].") (internal quotation marks and citations omitted). For example, Plaintiffs asked Brocade to "Admit Version 16.2.0.9 of the SNMP Research Software was shipped in Your Products." According to Broadcom and Brocade, neither one understands what "shipped in" means because it is "undefined." Ex. N at 9-20, Ex. Q at 9–20. Broadcom and Brocade also claim confusion as to what the words "received," "inserted," "discussed," "terms," "added," "incorporated," "compiled," "transfer," "permission," and "consent" mean. Wood Decl. ¶ 26.[9]

Broadcom and Brocade do not limit their "vague and ambiguous" objections to simple words, they also claim phrases are so confusing they cannot respond at all. For instance, Plaintiffs asked Brocade to: "Admit that, prior to the transfer taking place, You discussed with Broadcom Inc. the terms by which SNMP Research Software would be transferred (by disclosure, license, sale or otherwise) to Extreme." Ex. Q at RFA No. 28. Brocade refused to answer other than objecting, including objecting to "the vague and undefined terms 'prior to the transfer taking place'" and "would be transferred (by disclosure, license, sale, or otherwise)". *Id.* Broadcom and Brocade also claim not to understand what it means to be "involved in the advertising or marketing" of products, or what the words "describe

---

[9] Extreme also makes "vague and ambiguous" objections that are meritless. For instance, Plaintiffs asked Extreme to: "Admit that You are relying, either in whole or in part, on the License Agreement as part of Your defense of this action." Ex. T at 44. Extreme claimed that "relying" was too ambiguous. *Id.*

Broadcom's involvement" means. *See* Ex. L at 18–20; Ex. M at 19; and Ex. O at 18.

In short, all of these deficiencies demonstrate that Defendants' "objections" are a ruse. They are not employed to actually address any real deficiency (much less one that could not be cured via meeting and conferring). Instead, these "objections" are Defendants' attempt to unilaterally impose a *de facto* stay of discovery. Such misconduct can and should have real consequences.

## IV. CONCLUSION

This Court should compel Defendants to respond to all of the outstanding discovery without further delay. The Court should also hold that all of Defendants' objections to the discovery requests, other than as to attorney-client privilege or work product protection, are deemed waived (and at the very least find that Defendants' general and boilerplate objections are waived).

Respectfully submitted,


Dated: February 15, 2021          By: /s/ *John L. Wood*
                                  _____
                                  John L. Wood, Esq. (BPR #027642)
                                  Cheryl G. Rice, Esq. (BPR #021145)
                                  Rameen J. Nasrollahi, Esq. (BPR #033458)
                                  EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
                                  900 S. Gay Street, Suite 1400
                                  P.O. Box 2047
                                  Knoxville, TN 37902
                                  (865) 546-0500 (phone)
                                  (865) 525-5293 (facsimile)
                                  jwood@emlaw.com
                                  crice@emlaw.com
                                  rnasrollahi@emlaw.com


Dated: February 15, 2021          By: /s/ *A. Matthew Ashley*
                                  _____
                                  A. Matthew Ashley (CA Bar. No. 198235)
                                  Morgan Chu (CA Bar. No. 70446)
                                  David Nimmer (CA Bar. No. 97170)
                                  IRELL & MANELLA LLP
                                  1800 Avenue of the Stars, Suite 900
                                  Los Angeles, California 90067-4276
                                  (310) 277-1010 (phone)
                                  (310) 203-7199 (facsimile)
                                  mchu@irell.com
                                  dnimmer@irell.com
                                  mashley@irell.com

                                  *Attorneys for Plaintiffs*
                                  *SNMP Research International, Inc.*
                                  *SNMP Research, Inc.*