# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF TENNESSEE

# AT KNOXVILLE

| | |
|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC.,<br><br>     Plaintiffs,<br>v.<br><br>BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; and EXTREME NETWORKS, INC.<br><br>     Defendants. | Case No. 3:20-cv-00451 |

## BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES

5857416

Within days of responding to the Complaint, Defendants were served with *hundreds* of discovery requests propounded by Plaintiffs. These requests were in no way appropriately tailored to the issues in the case and were defective in numerous respects. For that reason and others (including Plaintiffs' attempt to unduly force Defendants into an unfair disadvantage during discovery), Defendants moved for a protective order from this overbroad discovery and a stay of discovery while Defendants' motions to dismiss are pending. Despite this, Plaintiffs filed the present motion, which largely rehashes the same arguments already fully briefed in connection with the motion to stay and for a protective order. Plaintiffs' redundant motion is a waste of the parties' and the Court's time and amounts to an improper sur-reply brief.

To make matters worse, Plaintiffs' motion is short on substance and brimming with feigned outrage. It describes Defendants' objections as "rote," "sweeping," "boilerplate," "conclusory," "generalized," "meritless," and the "equivalent of no response at all." But saying something over and over again does not make it so. In fact, Defendants' objections are quite specific as they explain, in detail, why Plaintiffs' requests are overbroad, irrelevant, and not proportional to the needs of the case, as well as why the requests are deficient in other respects. Plaintiffs do not substantively engage with these explanations in any way, instead relying on their own generalities for why these objections are improper.

Plaintiffs admit they do not want "this Court to analyze the disputed discovery on a request-by-request basis." Plaintiffs' Motion to Compel, Dkt. No. 60-1 (hereafter "Mot."), at 17.[1] Instead, Plaintiffs argue that Defendants' objections (save for their privilege objections) should be deemed waived. Such an extraordinary measure lacks any basis in the law,

---

[1] Pin cites for filed documents are to the page numbers inserted at the bottom of each page by the ECF system.

5857416

particularly when Defendants timely sought guidance and protection from the Court regarding these very requests.

Ultimately, Plaintiffs lie in a bed of their own making by serving grossly overbroad discovery requests and unreasonably insisting that only they may serve discovery in this case. As described in Defendants' motion to stay discovery and for protective order, Defendants justifiably sought Plaintiffs' assurance that they would not argue waiver if discovery were to proceed while the motions to dismiss are pending given cases in the Sixth Circuit finding that a party can risk waiving its jurisdictional and venue arguments by participating in discovery under certain circumstances. Plaintiffs refused to agree, however, arguing only they should be permitted to propound discovery. To this day, Plaintiffs have failed to articulate any *legitimate* justification (other than sheer gamesmanship) for why they think discovery should proceed in this one-sided manner. Moreover, because of Plaintiffs' hyper-aggressive position on waiver, which it refuses to reconsider, the parties cannot meaningfully meet and confer as to these discovery requests until the Court has resolved the disputes set forth in the motion for a stay and for a protective order. This renders Plaintiffs' motion to compel premature.

The Court should deny Plaintiffs' motion to compel and require that Plaintiffs redraft their discovery after the motions to dismiss are decided so that it is proportional to the needs of the case and not just a mere tool designed to harass Defendants. Alternatively, the Court should deny the motion as premature and order the parties to meet and confer once the Court has resolved Defendants' motion to stay and for a protective order.

## I. BACKGROUND

Defendants moved to dismiss the Complaint on December 22, 2020. *See* Defendants' Motions to Dismiss, Dkt. Nos. 38, 40. Four days later, on December 26, 2020, Plaintiffs

5857416

propounded hundreds of discovery requests on all Defendants.  At this time, the parties had not yet agreed to an electronic discovery protocol and had not even began negotiating a protective order governing the use and disclosure of confidential and proprietary information exchanged during discovery.  *See* Declaration of Alison Plessman ("Plessman Decl.") at ¶ 8.

Defendants moved to stay the litigation and for a protective order against Plaintiffs' discovery.  *See* Motion to Stay and for a Protective Order (hereafter "Mot. for Protective Order"), Dkt. No. 47.  In that motion, Defendants explained that, *inter alia*:  (1) "discovery should be stayed because Defendants' motions to dismiss raise dispositive issues as to all of Plaintiffs' claims"; (2) "Defendants will be prejudiced if discovery proceeds because . . . Plaintiffs have made clear that they will argue Defendants' service of their own discovery while the motions to dismiss are pending constitutes a waiver of Defendants' personal jurisdiction and improper venue defenses"; and (3) that Plaintiffs' written discovery was, *inter alia*, premature, overbroad, and unduly burdensome, and that Defendants could not respond before a protective order was entered in the case.  *See* Memorandum of Facts and Law in Support of Mot. for Protective Order (hereafter "Protective Order Memo."), Dkt. No. 47-1, at 7.  Only after Defendants filed their motion for a stay and protective order did Plaintiffs initiate negotiations for a protective order.  Plessman Decl. at ¶ 12.

On January 25, 2021, Defendants served their responses to Plaintiffs' discovery.  *See* Declaration of John L. Wood (hereafter "Wood Decl."), Dkt. No. 60-2, Exs. L-T.  Contrary to Plaintiffs' self-serving mischaracterizations, those responses consisted of detailed objections explaining why the discovery requests were defective, as explained below.

## II.    ARGUMENT

The motion to compel misrepresents the facts and Defendants' position in many respects.

5857416

It argues that (1) Defendants somehow have excused themselves from their discovery obligations based solely on their motion to stay; (2) Plaintiffs' discovery requests are proper under the Federal Rules of Civil Procedure; (3) Defendants' discovery objections are "boilerplate;" and (4) the Court should deem virtually all of Defendants' objections irrevocably waived, giving Plaintiffs *carte blanche* to insist on burdensome and irrelevant responses to their hundreds of overbroad and highly problematic discovery requests. Plaintiffs are wrong on all counts, and thus the Court should deny the motion to compel in its entirety.

### a. Plaintiffs' Motion to Compel Mischaracterizes Defendants' Position.

Plaintiffs' motion is wrong on the facts and law.

First, Defendants have not refused to participate in the discovery process. Though Defendants believed that a discovery stay was appropriate while the motions to dismiss were pending, they nonetheless agreed to participate in discovery so long as Plaintiffs agreed that such participation would not waive the jurisdictional, venue, and other arguments comprehensively briefed in the pending motions to dismiss.[2] Plessman Decl. at ¶ 9. Plaintiffs refused, brazenly arguing that they should be permitted to conduct unilateral discovery[3] and threatening that if Defendants served any discovery of their own, they would claim that Defendants' jurisdictional and venue arguments were waived and that the motions to dismiss should be denied on that basis. *Id*. at ¶ 10. Plaintiffs' "strategic" position on this issue is responsible for the current discovery impasse—not, as Plaintiffs repeatedly claim, the pending motion to stay. The record indisputably establishes that Defendants were willing to forego staying discovery so long as

---

[2] This argument is thoroughly addressed in Defendants' motion to stay and for a protective order. *See* Dkt. No. 47-1.

[3] Plaintiffs only agreed to forego any waiver arguments for responses submitted to their discovery requests.

5857416

doing so would not jeopardize the pending the motions to dismiss. And, perhaps most importantly, Defendants *have participated in discovery* by responding to Plaintiffs' requests with detailed objections addressing all the defects in Plaintiffs' requests, which vastly exceed the proper scope of discovery under the Federal Rules of Civil Procedure.[4]

Second, Defendants did not refuse to assure Plaintiffs that they "would use [the] additional thirty days to actually work on responding to the written discovery." Mot. at 9. Rather, Defendants made clear that they would use that additional time to provide meaningful responses but could not guarantee that Defendants would not submit well-founded objections. Plessman Decl. at ¶¶ 15-16 & Ex. A (explaining that "the extension will at least increase the likelihood that you will receive meaningful responses if warranted as opposed to only objections").

Third, it is not true that Defendants have refused to meet and confer on discovery. Rather, Defendants met and conferred with Plaintiffs regarding discovery prior to filing the motion for a protective order. *Id*. at ¶¶ 9-10. When Plaintiffs requested an additional meet and confer after the motion had been filed and Defendants had served their discovery responses, Defendants responded that they would be willing to meet and confer if Plaintiffs were also

---

[4] Plaintiffs repeatedly claim that "Defendants concede that they have refused to provide any 'meaningful, substantive' . . . responses to Plaintiffs' written discovery." Mot. at 6, 14. Plaintiffs twist Defendants' words and remove them from their proper context. In their motion for a protective order, Defendants pointed out that "even a cursory review of the several hundred requests that Plaintiffs have already served on Defendants demonstrates that responding to them in any meaningful, substantive way will be an extremely arduous and costly process and one that will require the production of sensitive and proprietary information." Protective Order Memo. at 15. Defendants stand by this statement. Given how premature and overbroad Plaintiffs' requests were, as well as Plaintiffs' refusal to forego waiver arguments and provide even an initial extension for responses to these requests, it was not possible for Defendants to provide substantive *answers* to their requests, including a voluminous and costly production of documents, by January 25, 2021. That does not mean that Defendants did not provide meaningful and substantive *objections* to the discovery requests; nor does it mean that Defendants refused to ever provide answers if the discovery requests are properly narrowed and reframed after the motions to dismiss are resolved and the parties further meet and confer.

- 5 -

"willing to reconsider [their] position." *Id.* at ¶¶ 18-21 & Ex. B. Plaintiffs never responded. *Id.* at ¶ 20. Thus, it is clear Plaintiffs were not, in fact, willing to reconsider their position, rendering additional meet and confers not only futile until the pending motions are resolved, but also likely a trap for Plaintiffs to later claim waiver. While Plaintiffs make it seem like Defendants have refused to meet and confer, the reality is Plaintiffs' unwillingness to reconsider their position on discovery has prevented any meaningful meet and confers from taking place.

### b. Defendants Do Not Claim the Filing of a Motion to Stay Alone Excuses Them from Discovery.

Plaintiffs claim that Defendants have "refus[ed] to provide substantive responses to discovery based on the mere fact that they have made a Motion to Stay." Mot. at 12. This is not true for at least two reasons.

First, Defendants *did* respond to Plaintiffs' discovery with detailed, specific objections explaining why Plaintiffs' requests were defective. Additionally, Defendants did not simply move to stay discovery; they also moved for a protective order arguing that Plaintiffs' discovery requests were defective in numerous respects. *See* Protective Order Memo. at 11-13. As discussed in that motion, those defects render Plaintiffs' requests, *inter alia*, premature, overbroad, and unduly burdensome. *See id.* at 13-15. Federal Rule of Civil Procedure 26(c)(1) permits "[a] party or any person from whom discovery is sought [to] move for a protective order . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

Nevertheless, Plaintiffs argue Defendants should be required to provide substantive *answers* concerning the subject matter of each and every discovery request, despite Defendants' detailed objections, before the Court has decided whether protection from those requests is warranted. Plaintiffs accuse Defendants of "essentially granting their own motion to stay . . .

- 6 -

based on their own *ipse dixit*." Mot. at 12. But it is Plaintiffs who, based on their belief that Defendants' discovery objections are meritless, seek to usurp this Court's role as decisionmaker and effectively deny Defendants' motion for a protective order by requiring Defendants to provide substantive answers to discovery while that motion is pending. Nothing in the discovery rules or caselaw suggests that serving well-founded objections to discovery requests constitutes a failure to respond. In fact, the discovery rules expressly contemplate that a party may respond to discovery requests in one of two ways: provide substantive answers or object. *See* Fed. R. Civ. P. 33(b), 34(b)(2), 36(a). Defendants did the latter.

Moreover, courts in this circuit have recognized that a party need not substantively respond to or otherwise participate in discovery at all while a motion requesting protection from that discovery is pending. In *Beal through Putnam v. Walgreen Co.*, 2005 WL 8157674 (W.D. Tenn. Nov. 14, 2005), the defendant filed a motion for a protective order concerning a noticed deposition and written discovery on the same day the defendant was scheduled to appear for a deposition. *Id*. at *2. The plaintiffs argued that the defendants' failure to appear at the deposition rendered the motion for a protective order moot. *Id*. The court rejected this argument: "Walgreen's October 7, 2005 motion for protective order was not rendered moot by Walgreen's failure to appear at the deposition. The Federal Rules of Civil Procedure allow a party from whom discovery is sought to file a motion for protective order. The rules further provide that a pending motion for a protective order excuses a party's failure to appear at a properly noticed deposition. Walgreen's conduct with respect to filing its motion and declining to appear for the deposition was therefore proper . . . ." *Id*. (internal citations omitted); *see also Cozzens v. City of Lincoln Park*, 2009 WL 152138, at *3 (E.D. Mich. Jan. 21, 2009) ("A party may not excuse its failure to respond to interrogatories or to produce documents on the grounds

- 7 -

that the request is objectionable *unless the party has a pending motion under Rule 26(c)*.")
(emphasis added).

Second, Defendants have never contended that a pending motion to stay discovery on its
own always justifies not responding to discovery requests. But the circumstances here are
unique. Because there are cases in the Sixth Circuit suggesting that participation in discovery
may result in waiver of jurisdictional and venue arguments under certain circumstances,
Defendants sought assurance from Plaintiffs that participating in discovery would not jeopardize
their defenses. Plaintiffs would not agree. To compel Defendants to choose between risking
waiver of their defenses or participating in one-sided discovery raises serious due process
concerns.

The cases relied on by Plaintiffs are inapposite, as they do not involve these same
circumstances where a party would risk waiving its defenses by participating in discovery and/or
be forced to participate in one-sided discovery. Moreover, in none of the cases cited by Plaintiffs
did the responding party fully respond to the discovery requests with detailed objections. Rather,
in each case the responding party either failed to respond entirely or responded only by objecting
on the basis of the motion to stay. *See* Mot. at 12-13 & n.2; *Morgan v. AMISUB (SFH), Inc*.,
2020 WL 4274586, at *3 (W.D. Tenn. July 24, 2020) ("Morgan's only response to the requests
for production was her email to counsel for AMISUB on April 8, 2020, in which Morgan
objected to 'all production of documents request[ed].' "); *Nat'l Corp. Tax Credit Funds III v.
Potashnik*, 2008 WL 11339608, at *1 (C.D. Cal. June 16, 2008) ("There is no dispute that
defendants never objected to the discovery or deposition notices or obtained a stay prior to the
date set for responding to the subject discovery requests or deposition notices."); *Standard
Chlorine of Delaware, Inc. v. Sinibaldi*, 821 F. Supp. 232, 261 (D. Del. 1992) ("Standard's

5857416

discovery request was served on Mantas Defendants on June 24, 1992. Mantas Defendants failed to respond to said request until on or around September 28, 1992, when they filed their motion for a protective order.").  Here, in contrast, Defendants considered the substance of each discovery request and objected on the basis of each request's defects—not, as Plaintiffs insist, merely because a motion to stay was pending.  Plaintiffs only pretend that these objections do not exist, dismissing them as "boilerplate."  But as discussed below, *see* Section II(d), *infra*, this is not true.

### c. Plaintiffs' Requests Are Overbroad and Not Proportional to the Needs of the Case.

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and *proportional to the needs of the case . . . .*"  (Emphasis added.)  The Sixth Circuit has recently opined on Rule 26's proportionality standard:  "In 2015, Rule 26 of the Federal Rules of Civil Procedure was amended to . . . permit[] discovery only of information 'relevant to any party's claim or defense and proportional to the needs of the case.'  . . .  Instead of facilitating costly and delay-inducing efforts to look under every stone in an e-discovery world populated by many stones, the new rule 'crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.' "  *Helena Agri-Enterprises, LLC v. Great Lakes Grain, LLC*, 2021 WL 486880, at *8 (6th Cir. Feb. 10, 2021); *id*. (explaining that the "new rule sought 'to chang[e] the existing mindset that relevance is enough, restoring proportionality as the collective responsibility of the parties and the court' ").

Plaintiffs' written discovery is far from proportional to the needs of this case.  For efficiency, Defendants provide in this brief several examples of the ways in which Plaintiffs' discovery requests are highly problematic and objectionable on numerous grounds, but

5857416

respectfully refer the Court to Defendants' objections themselves (*see* Wood Decl. Exs. L-T) for a complete listing of these issues.

                        i.   <u>Plaintiffs' Definitions Are Overbroad</u>.

Nearly all of Plaintiffs' discovery requests incorporate grossly overbroad defined terms. For example, Plaintiffs' discovery requests define "SNMP Research Software" to mean: "(i) software provided by SNMP Research to Brocade, (ii) software licensed by SNMP Research to Brocade, or (iii) any software created by SNMP Research which is or was in the possession of" either Broadcom, Brocade, or Extreme. *See, e.g.*, Wood Decl. Ex. A, Dkt. No. 60-3 (hereafter "Plaintiffs' First Set of Interrogatories to Broadcom") at 2-4.[5] This definition, in turn, includes several other overbroad defined terms, including SNMP Research, Brocade, Broadcom, and Extreme. The term "SNMP Research" is defined to mean "SNMP Research, Inc. and SNMP Research International, Inc. their predecessors and predecessors-in-interest, including all divisions and subsidiaries, and the officers, directors, employees, agents, attorneys, accountants, and representatives of each of the foregoing, including all other Persons acting or purporting to act on behalf of one or more of them." *Id*. at 1. The terms Brocade, Broadcom, and Extreme are similarly each defined as including their "predecessors, predecessors-in-interest, successors, successors-in-interest, affiliated entities, including all divisions and subsidiaries, and the officers, directors, employees, agents, attorneys, accountants, and representatives, including all other Persons or entities acting or purporting to act on behalf of it." *Id*. at 3.

To make matters worse, Broadcom and Brocade are defined to include one another, rendering many requests nonsensical. Moreover, Broadcom Inc. is a parent holding company

_____

[5] While these objections were raised in each set of discovery responses, for the purposes of this opposition brief and for ease of exposition, Defendants will only cite to a single set. Defendants respectfully refer the Court to the responses and objections themselves for additional detail.

which, directly and indirectly, owns dozens of other companies and corporations, none of which have anything to do with this case. *See generally* Compl. (raising no allegations that any Broadcom Inc. affiliate other than Brocade is relevant to this case).

Thus, the definition of "SNMP Research Software" includes all software that has ever been provided by Plaintiffs (and other unidentified individuals and entities) to all affiliates of all Defendants regardless of their relevance to this case. Plaintiffs have sued for copyright infringement and breach of a license agreement as to the specific copyrighted software listed in Table 1 of the Complaint and based on one license agreement with Brocade. *See* Compl. ¶ 33. Including all software provided by unidentified individuals and entities that make up "SNMP Research" to all affiliates of Defendants is necessarily not "proportional to the needs of the case" because this case only concerns the software that is the subject of the license agreement with Brocade and that is registered with the Copyright Office—not any and all software that may have been provided by "SNMP Research" to dozens of other entities. This is not just a mere technicality. Plaintiffs lack any legal claim for copyright infringement for any software not registered with the Copyright Office or for any software that is beyond the scope of the License Agreement. *See* 17 U.S.C. § 411(a) ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title.").[6]

---

[6] Plaintiffs definition of "Partner Product," which is incorporated into several discovery requests, is similarly overbroad. It is defined to mean "each Product of a third party that now, or has ever, whether in current distribution or not, contains, uses or is otherwise associated with SNMP Research Software either as manufactured or as a result of a software or firmware installation or update where the SNMP Research Software was obtained from" either Broadcom, Brocade, or Extreme, depending on which Defendant the request was propounded on. This definition incorporates the overbroad definitions of SNMP Research Software and either Broadcom, Brocade, or Extreme. The definition also includes no time limitation, is not limited to the software at issue in this case, and it is unclear how Plaintiffs' software can be "otherwise associated" with
(Continued...)

Plaintiffs ignore Defendants' overbreadth and vagueness objections, only noting that "Defendants feign confusion over what the term" means and that "there should be no confusion as Plaintiffs' Discovery defines 'SNMP Research Software' with three elements to cover the possible ways that Defendants could have obtained SNMP Research Software." Mot. at 26-27. But Defendants objections are not based on mere "confusion" (although several requests *are* nonsensical on their face). Rather, Defendants object because the terms in the discovery requests are defined to include software and entities not at issue in this case. *See, e.g.*, Wood Decl. Ex. L (Dkt. No. 60-14) ("Broadcom's Responses to Plaintiffs' First Set of Interrogatories") at 9-10.

Plaintiffs attempt to justify their overbroad definition of Broadcom by accusing Broadcom of "playing a shell game as to which Broadcom entity did what with Plaintiffs' copyrighted software." Mot. at 19. But this makes no sense and is not alleged in the Complaint. The only Broadcom subsidiary involved in this case is Brocade, which Plaintiffs allege improperly distributed the licensed software to Extreme. Plaintiffs have also sued Broadcom Inc. on the basis that it is the parent holding company of Brocade—a position that Broadcom maintains is insufficient to confer jurisdiction or extend liability to it. Plaintiffs' new assertions that various unnamed Broadcom entities are engaged in widespread distribution of Plaintiffs' software (*see* Mot. at 19) are not alleged *anywhere* in the Complaint.[7] Plaintiffs have no valid

---

a product separate from being contained in or used by the product. Plaintiffs' other defined terms are similarly overbroad.

[7] Plaintiffs make much of the fact that Brocade has not filed a corporate disclosure statement under Federal Rule of Civil Procedure 7.1. *See* Mot. at 19. Defendants already explained to Plaintiffs that Brocade is not a corporation, and thus need not file a corporate disclosure statement. Plessman Decl. at ¶ 23. Defendants offered to reconsider their position on this if Plaintiffs could provide *any* authority stating that non-corporate entities must submit corporate disclosure statements. *Id*. To date, Plaintiffs have failed to do so. *Id*. Moreover, the entire purpose of Rule 7.1's disclosure statement is to inform the Court of any circumstances that may call for disqualification due to a financial conflict of interest. *See* Fed. R. Civ. P. 7.1 advisory committee notes. It is not, as Plaintiffs assert, part of any discovery they are entitled to.

- 12 -

5857416

reason for casting such a wide net with this discovery, offering only vague allusions to the "secrecy" of Broadcom's corporate structure. This is the very definition of a fishing expedition. *See* FISHING EXPEDITION, Black's Law Dictionary (11th ed. 2019) ("An attempt, through broad discovery requests or random questions, to elicit information from another party in the hope that something relevant might be found; esp., such an attempt that exceeds the scope of discovery allowed by procedural rules.").

Plaintiffs also complain that "Broadcom never explains why [the overbroad definition] constitutes an undue burden." Mot. at 26. It should be self-evident that defining a party to include dozens of non-party entities and individuals is overbroad and burdensome, particularly given that Plaintiffs seek information regarding software not at issue in this case.[8]  Expanding discovery obligations in such an extraordinary way costs money, takes time, distracts employees from their duties, and invades parties' privacy rights. These non-party entities and individuals have nothing to do with the present litigation and discovery from them is not proportional to the needs of the case.

In sum, Plaintiffs fail to substantively respond to Defendants' overbreadth objections for one simple reason: They lack any legitimate basis for requesting discovery regarding software and entities beyond the scope of this litigation.

        ii.  <u>Plaintiffs' Written Discovery Is Overbroad in Many Other Respects</u>.

Because the above overbroad definitions are incorporated into the vast majority of

---

[8] Plaintiffs argue that "many" of their requests reference Broadcom Inc. (instead of "Broadcom") and Brocade Communications Systems LLC (instead of "Brocade"). Mot. at 26. In Plaintiffs' view, these requests were only directed to the individual entities and not the large, group entities defined in the requests. *Id*. This distinction is entirely unclear from the discovery requests as Plaintiffs never specify in their instructions that they are using "Broadcom" differently from "Broadcom Inc." and "Brocade" differently from "Brocade Communications Systems LLC." Moreover, these different terms do not appear in "many" of the requests as Plaintiffs claim. Rather, they are only used in 5% of the requests.

- 13 -

Plaintiffs' discovery requests, those requests are rendered not proportional to the needs of the case by virtue of those definitions. But even setting aside these definitions, Plaintiffs' discovery requests would *still* be overbroad.

Plaintiffs "summarize" their requests for the Court to make them sound reasonable but conveniently omit the many respects in which Plaintiffs' requests seek information and documents not proportional to the needs of the case. *See* Mot. at 19-22. For instance, Plaintiffs request: (1) "[a]ll communications concerning SNMP Research" (Wood Decl. Ex. B (hereafter "Plaintiffs' First Set of Document Requests on Broadcom") (Dkt. No. 60-4) at 13)); (2) "all internal Communications in which there was any discussion of Communication whatsoever concerning" the rights to use SNMP Research Software and the payment obligations for such use (Plaintiffs' First Set of Interrogatories to Broadcom at 9); (3) all source code for every product containing SNMP Research Software (not just the source code for the incorporated SNMP Research Software—the source code for the *entire* product) (Plaintiffs' First Set of Document Requests on Broadcom at 11); (4) instructions for how to build every product containing SNMP Research Software as well as the build environment (note again—not just the components containing SNMP Research Software, but instructions for how to build the *entire* product) (*id*.); (5) all financial documents concerning all profits and losses, including for products that did not contain SNMP Research Software (*id*. at 13). The overbreadth of these requests is compounded by the fact that the definitions of the parties and of SNMP Research Software are themselves incredibly overbroad. For instance, Broadcom Request for Production No. 45, which requests "[a]ll financial Documents concerning Broadcom's profits and losses," effectively asks for *all* financial documents from *every* Broadcom entity (as noted, many dozens of other companies and corporations) even though none other than Brocade has anything to do with this case. *Id*.

- 14 -

These requests are outrageously overbroad and make clear that, in their rush to serve written discovery by Christmas weekend, Plaintiffs did not even attempt to tailor their requests to the information actually needed to prosecute their case. Rather, their goal was to burden Defendants with these requests and ultimately have Defendants perform the work of sifting through them to determine what is relevant to the case. Plaintiffs' transparent efforts to burden Defendants is further evidenced by their refusal to provide even an initial extension to respond to the requests, which, as a practical matter, could not be substantively responded to in the 30-day timeframe Plaintiffs demanded. It is no mystery why Plaintiffs tell the Court that "it is unnecessary for this Court to analyze the disputed discovery on a request-by-request basis," (Mot. at 17) as Plaintiffs know that their requests cannot withstand even the slightest judicial scrutiny. Not only should the court deny Plaintiffs' motion to compel, but it should require Plaintiffs to re-draft their discovery requests in a manner that is tailored to the needs of this litigation and to properly meet and confer with Defendants once the motions to dismiss are resolved. Alternatively, the Court should deny the motion to compel as premature, as the parties have yet to meet and confer regarding these requests.[9]

### d. Defendants' Objections Are Proper.

Defendants' objections to Plaintiffs' written discovery are proper and should be sustained.

Plaintiffs insist that Defendants' objections are baseless but Plaintiffs cannot articulate why. They fault Defendants' "general objections" because they are incorporated by reference into each response and not reiterated in full as to each request. Mot. at 22-23. But then they also complain that the "specific objections" should be ignored because the same or similar objections

---

[9]As noted, Plaintiffs claim that Defendants have refused to meet and confer on these requests but the truth is that Plaintiffs' refusal to reconsider its position on discovery has rendered any attempt to meet and confer on discovery futile.

are made in response to most of Plaintiffs' requests. *Id.* at 23-25. In other words, Plaintiffs want Defendants to reiterate each "general objection" in their responses to each request but also dislike it when Defendants repeat objections too many times. The takeaway is clear: Plaintiffs want the Court to ignore Defendants' objections regardless of their form or content.

Lacking any consistent, substantive argument, Plaintiffs resort to generalities about the objections being "boilerplate." But Plaintiffs misunderstand this term, as boilerplate means "[r]eady-made or all-purpose language that will fit in a variety of documents." Black's Law Dictionary (11th ed. 2019). Defendants' objections are not boilerplate as they are tailored to each request. To the extent that Defendants have repeated any given objection, it is only because many of Plaintiffs' requests contain the same defects. Each of Defendants' objections has merit.

i.  Defendants' Objections as to Overbreadth and Relevance Are Proper.

As already discussed, Plaintiffs' written discovery is overbroad and irrelevant in many ways, particularly since they seek information from non-party entities about software that is not at issue in this case. For the reasons stated in Section II(c), *supra*, Defendants' objections concerning relevance, overbreadth, and proportionality should be sustained. And importantly, Plaintiffs fail to meet their burden of explaining why their requests are relevant. *See GCA Servs. Grp., Inc. v. ParCou, LLC*, 2016 WL 7192175, at *3 (W.D. Tenn. Dec. 12, 2016) ("Once a party raises an objection to discovery based on relevance, 'the burden shifts to the party seeking the information to demonstrate that the requests are relevant to the subject matter involved in the pending action.' ").

ii.  Broadcom's Personal Jurisdiction Objection and Defendants' Improper Venue Objections Should Be Sustained.

Broadcom objected to each discovery request on the basis that there is no personal jurisdiction over Broadcom in this action, and Plaintiffs raise no specific argument as to why this

- 16 -

objection is improper. Broadcom has maintained throughout this litigation that it is not subject to jurisdiction in this Court and has only specially appeared in this matter to contest personal jurisdiction. *See* Dkt. Nos. 24-26 ("The attorney has specified this as a special notice of appearance to make clear that no defenses are waived, including any defense of lack of personal jurisdiction, by the filing of this notice."). Broadcom's objection to discovery based on its constitutional due process rights are not frivolous as Plaintiffs claim. In fact, the Sixth Circuit has expressly found such an objection appropriate where a defendant seeks to maintain its personal jurisdiction defense. In *Parchman v. SLM Corp*., 896 F.3d 728 (6th Cir. 2018), the plaintiff argued that the defendant had waived the defense of lack of personal jurisdiction by participating in written discovery. *Id*. at 734. The Sixth Circuit disagreed, explaining that the defendant, in its responses to the plaintiff's written discovery, "did not provide any substantive information and objected to the interrogatories and requests for production on a number of grounds including that 'this Court lacks personal jurisdiction over NSI with respect to claims made by Carlin.' " *Id*. at 735. Because of this objection and the lack of substantive responses to the written discovery, there was no waiver of the defendant's defense. *Id*.

The same holds true for Defendants' objections as to improper venue. *See Trafigura Beheer B.V. v. M/T PROBO ELK*, 266 F. App'x 309, 313 (5th Cir. 2007) (holding that defendants had not waived defense of improper venue, in part because "defendants objected to discovery based on improper venue").

      iii.   <u>Defendants' Objections Regarding Prematurity Are Proper</u>.

Defendants' objections that Plaintiffs' written discovery is premature should be sustained. Before Defendants can substantively respond to many of Plaintiffs' requests, they must first examine the source code that Plaintiffs submitted to the Copyright Office to determine which

- 17 -

software forms the basis of Plaintiffs' claims. This necessarily requires the retention of experts and access to Plaintiffs' software and copyright applications, which Plaintiffs have not yet provided.[10] On this point, Plaintiffs resort to their familiar response (in furtherance of their transparent "David and Goliath" narrative) that Defendants are "billion-dollar" companies that possess the sophistication to perform this analysis. Mot. at 27. But this response ignores the main thrust of the objection, which is that Defendants cannot respond to these requests at this early stage of the litigation (prior to receiving discovery from Plaintiffs) and certainly not within the 30-day window that Plaintiffs demanded.

As to Plaintiffs' requests for admission, such requests are patently premature. "Requests for Admissions are intended to narrow the factual issues of a case" in preparation for trial. *Advantage Industial Sys., LLC v. Aleris Rolled Prod., Inc.*, 2020 WL 4432415, at *14 (W.D. Ky. July 31, 2020). Plaintiffs have already served hundreds of requests for admission, which ask that Defendants admit, among other things: (1) which versions of Plaintiffs' software are incorporated into their products; and (2) what defenses Defendants intend to rely on at trial. Wood Decl. Ex. C (Dkt. No. 60-5) at 5-8, 12. It is unreasonable to expect Defendants to know the answers to these requests before Defendants have even been permitted to propound their own discovery or inspect Plaintiffs' software. These requests are premature at this stage of the litigation.

        iv.    <u>Defendants' Objections Regarding the Lack of a Protective Order Should Be Sustained</u>.

---

[10] Plaintiffs contend that they offered their source code for review, but this offer was mere pretense. Such a review would be meaningless before experts have been retained and other discovery is completed, which Plaintiffs will not allow due to their position on waiver. Moreover, Plaintiffs only offered its source code (though not its copyright applications) after Defendants had already served their objections to the discovery and never indicated that their threat of waiver would not apply to this source code review. Finally, Plaintiffs stated that the source code exchange would need to occur within five days—a patently unreasonable timeframe. Plessman Decl. at ¶¶ 24-27 & Ex. C.

- 18 -

Plaintiffs' discovery requests seek, among other things, Defendants' highly confidential source code for all products incorporating SNMP Research Software, the entirety of Defendants' financial records for the last three years, and all contracts and agreements with Defendants' customers. This confidential and proprietary information was requested even though the parties have yet to enter into a protective order in the case. Plaintiffs did not negotiate the protective order until weeks after they had propounded their written discovery—and only after Defendants raised the issue with the Court. Plessman Decl. at ¶ 14. Since then, Defendants have reviewed the terms and have proposed significant edits to Plaintiffs. *Id*. at ¶ 22. Plaintiffs complain that this process has taken time but the issues addressed by the protective order—particularly who can be permitted to view Defendants' proprietary source code and how the source code should be provided—are sensitive and complex. Although Defendants expect the parties will ultimately reach resolution on the protective order, the point remains that the protective order could not have been in place by January 25, which is when Plaintiffs demanded they receive the sensitive documents.

                    v.    Defendants' Objections Regarding Vagueness and Ambiguity Are Proper.

Defendants raise numerous objections concerning vague and ambiguous terms Plaintiffs incorporate into their requests. When considered in context, Defendants believe these terms render Plaintiffs' requests difficult or impossible to understand, particularly given the vague and ambiguous defined terms that are incorporated into such requests. For instance, Interrogatory No. 1 asks each Defendant to identify products "that contain, use or are otherwise associated with SNMP Research Software." Plaintiffs' First Set of Interrogatories to Broadcom at 6. Even putting aside the vague and ambiguous and overbroad term "SNMP Research Software," Defendants do not understand what it means for a product to be "otherwise associated" with SNMP Research

Software if the product does not contain or use that software. This same phrase is incorporated into Interrogatory No. 2 through the definition of "Partner Product." *Id*. at 4, 6. And each of these interrogatories are incorporated into dozens of other requests. *Id*. at 7-11; *see also* Plaintiffs' First Set of Document Requests on Broadcom at 7, 10-13, 17-20.

Plaintiffs also repeatedly use the term "indirect" ambiguously—asking, for instance, for all documents pertaining to Defendants' "indirect" profits (Plaintiffs' First Set of Interrogatories to Broadcom at 9; Plaintiffs' First Set of Document Requests on Broadcom at 14); for all instances where a party acted as an agent "indirectly" for another party (Plaintiffs' First Set of Interrogatories to Broadcom); and for documents pertaining to a party's "indirect" involvement in various activities (Plaintiffs' First Set of Interrogatories to Broadcom at 10-11; Plaintiffs' First Set of Document Requests on Broadcom at 16-18). But again, it is unclear what this term means in these contexts. Plaintiffs must properly meet and confer regarding the meaning of their requests once the pending motions are resolved.

vi.    Defendants' Objections Regarding Duplicative Requests Are Proper.

Defendants object that many of Plaintiffs' requests are duplicative. For instance, Plaintiffs request from all Defendants: (1) "All Communications concerning actual or potential use of SNMP Research Software"; (2) "All Communications concerning the actual or potential removal of SNMP Research Software"; (3) "All Communications concerning the actual or potential infringement" of SNMP Research Software; and (4) "All Communications [with] any third party concerning SNMP Research, SNMP Research Software, or this litigation." Plaintiffs' First Set of Document Requests on Broadcom at 11-12. But then Plaintiffs separately request "All Communications concerning SNMP Research or the SNMP Research Software." *Id*. Such duplicative requests are improper as they serve no purpose other than to harass Defendants. *See*

- 20 -

*Askew v. George Matick Chevrolet, Inc*., 2019 WL 2714771, at *2 (E.D. Mich. Feb. 4, 2019)

("[U]nder Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure the Court must limit discovery

requests if they are 'unreasonably cumulative or duplicative' . . . ."); *Wolverine World Wide, Inc.*

*v. Am. Ins. Co*., 2020 WL 8340140, at *3 (W.D. Mich. Feb. 28, 2020) ("A . . . court [may] limit

the frequency or extent of discovery if it determines that the discovery sought is unreasonably

cumulative or duplicative.") (internal quotation marks omitted).

> vii.    <u>Defendants' Objections Regarding Attorney-Client Privilege Are Proper</u>.

Many of Plaintiffs' requests impermissibly seek information protected by the attorney-

client privilege.  For instance, Plaintiffs ask each Defendant for (1) "[a]ll internal Communications

. . . that Relate to any Communication received by SNMP Research concerning the breach of the

License Agreement or alleged acts of infringement; (2) "[a]ll Communications concerning the

actual or potential infringement . . . of SNMP Research Software"; (3) "[a]ll Communications

[with] any third party concerning . . . this litigation"; and (4) "[a]ll Documents Relating to any

attempt . . . to cure breach(es) of the License Agreement."  Plaintiffs' First Set of Interrogatories to

Broadcom at 8; Plaintiffs' First Set of Document Requests on Broadcom at 11-12, 14.  This

objection is proper.

**e.  Defendants Have Not Waived Their Specific Objections.**

Plaintiffs argue that Defendants' specific objections should be deemed to be waived

because they are "boilerplate."  Mot. at 13-17.  But as Defendants have already shown, *see*

Section II(d), *supra*, Defendants' objections to Plaintiffs' overbroad discovery requests have

merit—they are not frivolous or boilerplate.  Each of the cases cited by Plaintiffs involve

*actually* boilerplate discovery responses.  *See, e.g.*, *Strategic Mktg. & Research Team, Inc. v.*

*Auto Data Sols., Inc.*, 2017 WL 1196361, at *3 (E.D. Mich. Mar. 31, 2017) (deeming the

- 21 -

following objection boilerplate: "SMART objects because the interrogatory seeks information which is not relevant to any party's claim or defense" (*see* Dkt. No. 10-8 at 10)); *Siser N. Am., Inc. v. Herika G. Inc.*, 325 F.R.D. 200, 203 (E.D. Mich. 2018) (deeming the following objection boilerplate: "Objection. Overly broad and unduly burdensome." (*see* Dkt. No. 31 at 2)); *Jones v. Am. River Transportation Co., LLC*, 2020 WL 7865326, at *2 (W.D. Tenn. June 17, 2020) (deeming the following objection boilerplate: "Objection. This Interrogatory is overly broad and may seek information which is protected, privileged, and not otherwise discoverable"). These objections are nothing like those contained in Defendants' discovery responses, which clearly set forth *why* Defendants find the requests, *inter alia*, irrelevant, overbroad, premature, and unduly burdensome.[11]

More importantly, Plaintiffs misrepresent the cases they rely on. Plaintiffs claim that in the following cases the court held that a party's objections were deemed "waived": *Wesley Corp. v. Zoom T.V. Prod., LLC*, 2018 WL 372700 (E.D. Mich. Jan. 11, 2018); *Strategic Mktg. & Research Team, Inc. v. Auto Data Sols., Inc.*, 2017 WL 1196361 (E.D. Mich. Mar. 31, 2017); *Gale v. O'Donohue*, 824 F. App'x 304 (6th Cir. 2020); and *Morgan v. AMISUB (SFH), Inc.*, 2020 WL 4274586 (W.D. Tenn. July 24, 2020). But none of these cases hold as such. Neither *Gale* nor *Strategic Marketing* even address the issue of waiver. And the other cases do not find the objections waived. Rather, in *Wesley Corp.*, the court provides the defendants an opportunity to amend their discovery responses (*see* 2018 WL 372700 at *5) and in *Morgan* the court

---

[11] Plaintiffs claim that "Defendants never explain how <u>any</u> of the topics of discovery that Plaintiffs have inquired into are immaterial to Plaintiffs' breach of contract and copyright infringement claims, the damages and revenues associated with the breaches, and the damages, revenues and profits associated with the copyright infringement. Nor do they explain why responding to the discovery is somehow so burdensome . . . ." Mot. at 25. As demonstrated throughout this brief, this assertion is simply not true. And, in any event, the proper response is to meet and confer about these issues once the pending motions are resolved, not rush to file a motion to compel that rehashes the arguments that have already been briefed.

- 22 -

overruled the objections on their merits (*see* 2020 WL 4274586, at *4).

Plaintiffs further argue that the objections to the Requests for Production should be waived because Defendants do not specify whether any documents are being withheld on the basis of their objections. As an initial matter, this requirement is only implicated where a party objects to a request *and* produces some documents responsive to the request. *See* Fed. R. Civ. P. 34(b)(2)(C) advisory committee note to 2015 amendment ("This amendment should end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections."). But more importantly, Defendants' chief complaint regarding the discovery requests are that they are overbroad and confusing, and thus conducting searches for documents responsive to the requests would be unduly burdensome. As such, Defendants cannot state yet whether responsive documents are being withheld until the requests are more narrowly drawn.

And again, the cases cited by Plaintiffs do not support their position. *See* Mot. at 16. None of these cases held that objections were waived *because* a party did not state whether documents were being withheld. *See, e.g.*, *Jones v. Am. River Transportation Co., LLC*, 2020 WL 7865326, at *2 (W.D. Tenn. June 17, 2020) (noting that the plaintiff's objections did not indicate whether responsive materials were being withheld but finding waiver because the objections lacked specificity).

Finally, Plaintiffs complain that Defendants' objections should be deemed waived because they do not provide partial responses. Mot. at 26-27. But Defendants' objections were not partial—they were directed to the entirety of each request. As to the requests for admission, Plaintiffs misread Federal Rule of Civil Procedure 36, which requires that parties either answer

5857416

the request (with an admission or denial) or object to the request. *See* Fed. R. Civ. P. 36(a)(4)-(5).  Because Defendants objected to the requests, Plaintiffs quoted language about partial answers or denials does not apply.

## III.     CONCLUSION

Plaintiffs have made their position abundantly clear—they do not want Defendants to propound their own discovery, they do not want to draft tailored discovery requests, and they want to be given permission to ignore wholesale Defendants' well-founded objections, which they refer to as "roadblocks."  Unfortunately for Plaintiffs, this position is entirely unreasonable.  The Court should deny the motion to compel, sustain Defendants' objections, and—pending the outcome of Defendants' motion to dismiss or transfer—require Plaintiffs to redraft their discovery so that it is proportional to the needs of the case.  Alternatively, the Court should deny the motion and order the parties to meet and confer regarding these requests once the Court has ruled on the waiver issue presented in Defendants' motion for a stay and protective order.


Dated:  March 1, 2021                          HUESTON HENNIGAN LLP


                                               By:      */s/ Alison Plessman*
                                                        Alison Plessman
                                                        Attorneys for Defendants
                                                        Broadcom, Inc.
                                                        Brocade Communications Systems LLC

5857416