## IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., | § § § § | Case No. 3:20-cv-00451 |
| Plaintiffs, | § § | |
| v. | § § | **Jury Demand** |
| BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; AND EXTREME NETWORKS, INC. | § § § § § | |
| Defendants. | § § § | |

**PLAINTIFFS SNMP RESEARCH, INC. AND SNMP RESEARCH INTERNATIONAL, INC.'S REPLY IN SUPPORT OF THEIR MOTION TO COMPEL DISCOVERY RESPONSES**

# TABLE OF CONTENTS

|      |                                                                                                                                                                 | Page |
|------|-----------------------------------------------------------------------------------------------------------------------------------------------------------------|------|
| I.   | INTRODUCTION ....................................................................................................... | 1    |
| II.  | DEFENDANTS' MOTION TO STAY DISCOVERY DID NOT ENTITLE THEM TO IMPOSE THEIR OWN INTERIM STAY OF DISCOVERY ....................... | 2    |
| III. | DEFENDANTS HAVE NOT COOPERATED IN DISCOVERY, AND THEIR PROFFERED EXCUSES ARE MERITLESS AND MISLEADING ................ | 4    |
|      | A. Defendants Refused To Meet And Confer Over The Written Discovery Responses........................................................................................... | 4    |
|      | B. Defendants Refused to Negotiate A Protective Order Or Terms For Source Code Production ............................................................................. | 5    |
| IV.  | DEFENDANTS' PROFFERED OBJECTIONS ARE BOTH WAIVED AND MERITLESS................................................................................................... | 6    |
|      | A. Discovery Relevancy ........................................................................................ | 7    |
|      | B. Defendants' "Undue Burden" And "Proportionality" Objections ........................ | 8    |
|      | C. Defendants' "Vague and Ambiguous" And "Cumulative" Objections .............. | 11   |
|      | D. Defendants' Universal Failure To Follow Well-Established Rules Governing Objections To Written Discovery ....................................................... | 12   |
| V.   | CONCLUSION.......................................................................................................... | 14   |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Askew v. George Matick Chevrolet*,
   2019 WL 2714771 (E.D. Mich. Feb. 4, 2019) ..........................................................................11

*Beal v. Walgreen Co.*,
   2005 WL 815674 (W.D. Tenn. Nov. 14, 2005) ..........................................................................2

*Brothers Trading Co. v. Goodman Factors*,
   2016 WL 9781140 (S.D. Oh. March 2, 2016) ........................................................................8, 9

*Cozzens v. City of Lincoln Park*,
   2009 WL 152138 (E.D. Mich. Jan. 21, 2009) .........................................................................2, 7

*Groupwell Int'l. (HK) Ltd. v. Gourmet Exp.*,
   LLC, 277 F.R.D. 348 (W.D. Ky. 2011) ..................................................................................7, 8

*Helena Agri-Enterpr. v. Great Lakes Grain*,
   2021 WL 486880 (6th Cir. 2021) ...............................................................................................9

*In re Heparin Prod. Liability Litigation*,
   273 F.R.D. 399 (N.D. Ohio 2011) ..............................................................................................8

*Home Fed. Bank of Tennessee v. Home Fed. Bank Corp.*,
   No. 3:18-CV-379-JRG-DCP, 2019 WL 11670621 (E.D. Tenn. Sep. 18, 2019) ....................8, 9

*Neale v. Coloplast Corp.*,
   No. 1:18-cv-00274-TRM, 2020 WL 6948361 (E.D. Tenn. Nov. 02, 2020) ..............................7

*Oleson v. Kmart Corp.*,
   175 F.R.D. 560 (D. Kan. 1997) ..................................................................................................9

*Sobol v. Imprimis Pharm.*,
   2017 WL 5035837 (E.D. Mich. Oct. 26, 2017) .........................................................................7

*Strategic Mktg. & Research Team v. Auto Data Solutions, Inc.*,
   2017 WL 1196361 (E.D. Mich. Mar. 31, 2017) ........................................................................8

*Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc.*,
   707 F. Supp. 1429 (D. Del. 1989) ..............................................................................................2

*William Powell Co. v. National Indem.*,
   2017 WL 1326504 (S.D. Ohio April 11, 2017) .........................................................................9

*Wolverine World Wide, Inc. v. American Ins. Co.*,
   2020 WL 8340140 (W.D. Mich. Feb. 28, 2020) ......................................................................11

|  | **Page** |
|---|---|
| **Rules** | |
| Fed. R. Civ. P. 37 | 2 |
| Fed. R. Civ. P. 37(d) advisory committee's note to 1993 amendment | 2 |

Plaintiffs SNMP Research, Inc. ("SNMP Research") and SNMP Research International, Inc. ("SNMP International") (collectively, "Plaintiffs") respectfully submit this reply in support of their Motion to Compel Discovery Responses ("Motion" or "Mot."; Dkt. 60, 60-1).[1]

## I. INTRODUCTION

Plaintiffs' Motion demonstrates that Defendants have: (i) refused to meet and confer over their written discovery responses; (ii) objected based on the lack of a protective order while refusing to negotiate that order; (iii) objected on the ground that source code must be exchanged, while refusing to exchange source code; and (iv) filed discovery "responses" consisting solely of objections, which Defendants have already conceded do not constitute "responding to [the discovery] in any meaningful, substantive way" (Defendants' words). The law requires that Defendants provide "meaningful, substantive" responses and cooperate in discovery, and Defendants' attempt in the Opposition[2] to portray themselves as having done so is simply an attempted sleight of hand.

Not only is Defendants' lack of cooperation in discovery clear from the written record, the reason behind it is also clear. Defendants are doing everything they can to avoid providing a single answer to a single discovery request, or producing a single document, until the Court rules on their pending motions to dismiss and joint motion to stay discovery or for a protective order ("Motion to Stay Discovery") *see* Dkt. 47. Defendants have thus improperly granted themselves an interim stay of discovery. The result of Defendants' discovery misconduct is that while this case is approaching five months since it was initially filed, no protective order is in place, no provisions for the exchange and review of source code have been reached, and no answer to a single discovery request Plaintiffs need to prepare their case has been provided. This Court should not condone such behavior and should grant

---

[1] Plaintiffs' citations herein to "Motion" or "Mot." are to the brief in support of the Motion. Dkt. 60-1.

[2] Defendants Broadcom Inc. ("Broadcom") and Brocade Communications Systems LLC ("Brocade") filed the Opposition, Dkt. 62, which Defendant Extreme Networks, Inc. ("Extreme" and collectively with Broadcom and Brocade, "Defendants") later joined by Notice (Dkt. 63).

Plaintiffs' Motion in its entirety.

## II. DEFENDANTS' MOTION TO STAY DISCOVERY DID NOT ENTITLE THEM TO IMPOSE THEIR OWN INTERIM STAY OF DISCOVERY

The Motion cited extensive authority holding that a pending motion to stay discovery, whether coined as a motion to stay or for a protective order, does <u>not</u> excuse a party from properly responding to and cooperating in discovery. Mot. at 6-8 (citing ten cases and Committee Notes to Fed. R. Civ. P. 37). Defendants half-heartedly claim that the law provides otherwise, citing two unreported cases that, to Plaintiffs' knowledge, have never been cited by any court for the proposition for which Defendants cite them. In any event, the cases are distinguishable,[3] and they certainly do not override the great weight of authority cited in the Motion. Indeed, Defendants' argument is flatly contradicted by the Federal Rules, something the Opposition never addresses. *See* Fed. R. Civ. P. 37(d) advisory committee's note to 1993 amendment ("<u>[F]iling of a motion under Rule 26(c) is not self-executing—the relief authorized under that rule depends on obtaining the court's order to that effect</u>.") (emphasis added).

Defendants argue that the situation here is somehow not subject to the authority cited in the Motion because Defendants "would risk waiving [their] defenses by participating in discovery and/or be forced to participate in one-sided discovery." Opp. at 8. However, Plaintiffs' authority does not turn on the purported merits (or here, lack thereof) of a motion to stay discovery. It turns on the "simple logic" that a motion has no effect until it is ruled upon, so a party cannot behave as if the motion has already been granted. *See* Mot. at 7-8 (quoting, among other authority, *Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc.*, 707 F. Supp. 1429, 1441 (D. Del. 1989)

---

[3] In *Cozzens v. City of Lincoln Park*, the court's reference to what the pendency of a protective order <u>might</u> have excused is dicta, as the court expressly recognized that the "plaintiffs did not file a motion for a protective order." 2009 WL 152138, at *3 (E.D. Mich. Jan. 21, 2009). Moreover, unlike Defendants here, the party opposing discovery met and conferred with the other side and, by the time the motion to compel was decided, had provided substantive responses and produced documents. *Id.* at *1-2. And in *Beal v. Walgreen Co.*, unlike here, the discovery at issue <u>required leave of court to propound</u>, which the plaintiff failed to secure before propounding its discovery. 2005 WL 8157674, at *3 (W.D. Tenn. Nov. 14, 2005).

10918443 - 2 -
Case 3:20-cv-00451-CEA-DCP   Document 65   Filed 03/08/21   Page 6 of 19   PageID #: 2368

("Defendant's argument assumes that the moment it has filed a motion to stay discovery on the damages issue it need no longer obey basic discovery rules.  Defendant is in effect granting itself a stay of discovery.  Simple logic teaches that defendant has put the presumption on the wrong side:  unless and until it is granted a stay, defendant should be required to conduct discovery as if no motion had been filed at all.")).

As for the "risk" of "waiving defenses," Defendants already secured Plaintiffs' agreement not to argue such waiver based upon Defendants' responding to discovery,[4] so the purported risk of "waiving defenses" is a non-issue.  So, too, is Defendants' repeated refrain that they are somehow being "forced to participate in one-sided discovery."[5]  Indeed, Defendants have represented to this Court that they will (or are very likely to) win their motions to dismiss, and have also conceded that if they do not, they will have ample time to conduct all discovery after their motions to dismiss are decided.  *See* Dkt. 47-1 at 7, 12, 13.[6]  Based on their own representations to this Court, there would be no reason for Defendants to serve any offensive discovery until their motions to dismiss are decided.  Plaintiffs have repeatedly pointed out the incongruity of Defendants' representations, and Defendants have never provided a coherent response to it.

Finally, it is Defendants' stated position that they have in fact responded to the written discovery at issue in this Motion, and that they have done so appropriately.  This renders academic

---

[4] *See, e.g.,* Dkt. 46 (January 6, 2021 Joint Report of the Parties' Planning Meeting) at n. l ("Before agreeing to submit this joint report, to serve initial disclosures, or to respond to discovery that Plaintiffs have propounded, Defendants asked Plaintiffs to agree that Plaintiffs will not argue that Defendants have waived any jurisdictional or venue based defenses by submitting this joint report, serving initial disclosures, or responding to discovery that Plaintiffs have propounded.  Plaintiffs have agreed not to argue for such a waiver.").

[5] Contrary to Defendants' rhetoric, Plaintiffs have never "insisted" (Opp. at 2) that Defendants not serve discovery or that discovery be "one-sided."  Defendants can do their own risk/reward analysis as to whether and when to serve their own offensive discovery.  And Plaintiffs are not required to agree to forego potential arguments as to Defendants' defenses just to be able to serve discovery expressly permitted under the Federal Rules of Civil Procedure.

[6] "[A]ny potential trial should not proceed until November 2022, giving Plaintiffs ample time to conduct the discovery they need if the motions to dismiss are denied."  Dkt. 47-1 at 7.

Defendants' (incorrect) argument that they could have chosen not to respond at all. Once Defendants "responded," they had an obligation to do so properly.

### III. DEFENDANTS HAVE NOT COOPERATED IN DISCOVERY, AND THEIR PROFFERED EXCUSES ARE MERITLESS AND MISLEADING

No matter how much spin they employ, Defendants cannot undo a clear written record showing that they have not cooperated in discovery.

#### A. Defendants Refused To Meet And Confer Over The Written Discovery Responses

The Motion demonstrates that after Defendants filed their Motion to Stay Discovery, Defendants served written discovery responses that Plaintiffs contended were deficient, but that when Plaintiffs sought to meet and confer over those written discovery responses, Defendants refused. *See* Mot. at 5; Declaration of John L. Wood in Support of Plaintiffs' Motion to Compel, Dkt. 60-2 ("Wood Decl.") ¶¶ 28-30; Exs. U-V thereto. In their Opposition, Defendants argue that:

> it is not true that Defendants have refused to meet and confer on discovery. Rather, Defendants met and conferred with Plaintiffs regarding discovery prior to filing the motion for a protective order. [citing Plessman Decl. ¶¶ 9-10]. When Plaintiffs requested an additional meet and confer after the motion had been filed and Defendants had served their discovery responses, Defendants responded that they would be willing to meet and confer if Plaintiffs were also "willing to reconsider [their] position."

Opp. at 5-6 (citing Plessman Decl. ¶¶ 18-21 and Ex. B). Defendants' argument is semantic. The issue is not whether the parties met and conferred over Defendants' Motion to Stay Discovery; all parties agree that meet and confer occurred. Instead, what matters here is that Defendants refused, and continue to refuse, to meet and confer <u>over the alleged deficiencies in their written discovery responses</u>. To make this crystal clear, below are quotations from the Parties' email exchanges on this subject:

> Plaintiffs' request to Extreme: "Jordan, We request a meet and confer to discuss Extreme's objections to Plaintiffs discovery. We are available next Tuesday from 8-11:30 am PT, and any time before 3pm PT on Wednesday. Please let us know what time works for you."

> Extreme's response: "… For the reasons set forth in our objections and in the stay motion (including Defendants' concerns about ongoing one-sided discovery), a meet and confer does not makes sense at this time. Of course, if you had any particular

responses, clarifications, or revised requests that you anticipated raising with us, submitting those to us in writing in advance could help ensure that any meet and confer would be more productive if/when it occurs."

***

Plaintiffs' request to Broadcom/Brocade: "Alison, We request a meet and confer to discuss Brocade/Broadcom's objection to Plaintiff's discovery. We are available next Tuesday from 8-11:30 am PT, and anytime before 3pm PT on Wednesday. Please let us know what time works for you."

Broadcom/Brocade's response: "… If you want to meet and confer about the basis of the motion to stay and for a protective order, and are willing to reconsider your position, we are willing to meet and confer about that. But we believe meeting and conferring regarding the specific discovery requests should be postponed until the motion to stay and for a protective order is resolved."

Wood Decl. ¶¶ 26-31, Exs. U, V thereto.

Defendants also argue that meeting and conferring over their written discovery responses was "likely a trap for Plaintiffs to later claim waiver." Opp. at 6. In fact, as noted above, Defendants had already requested and received Plaintiffs' agreement that they would not argue Defendants' responding to discovery waived any of their jurisdiction/venue arguments.**7** A purported risk of waiver was not the basis for Defendants' refusal to meet and confer. Instead, Defendants refused to meet and confer because they do not want to resolve the issues their objections raise. To do so would mean that Defendants actually have to provide real responses to discovery and can no longer stonewall it.

> B. <u>Defendants Refused to Negotiate A Protective Order Or Terms For Source Code Production</u>

Plaintiffs' Motion demonstrated that, while Defendants interpose objections asserting the need for a protective order governing sensitive information, including source code, Defendants steadfastly refused for weeks to even comment on the draft protective order Plaintiffs sent to Defendants, which included provisions on source code exchange. *See* Mot. at 5; Wood Decl. ¶¶ 14-15. In response, Defendants claim that they "have reviewed the terms [of the draft protective order] and have proposed

---

**7** *See, supra,* note 4.

significant edits to Plaintiffs." Opp. at 19. However, Defendants omit that they did not send their "proposed significant edits" until Saturday, February 27, two days before the due date for their Opposition to this Motion (and six weeks after Plaintiffs first provided a draft protective order to them). *See* Supplemental Declaration of John L. Wood In Support of Plaintiffs' Motion to Compel ("Wood Supp. Decl.") ¶ 3. Moreover, while Defendants contend that their delay was due to source code provisions (Opp. at 19), they neglect to disclose that their "proposed significant edits" included striking the entirety of the source code production section of the draft protective order and stating: "<u>Remove for now and negotiate separate agreement regarding source code</u>." Wood Supp. Decl. ¶ 3; Ex. A thereto (emphasis added). And, while Defendants struck the entire source code production section of the draft protective order, they did not propose <u>any</u> alternative source code protection provisions. *Id.* at 5.[8] Yet, Defendants continue to insist they cannot proceed in discovery without an exchange of source code.[9]

## IV. DEFENDANTS' PROFFERED OBJECTIONS ARE BOTH WAIVED AND MERITLESS

Confronted with their admissions that they have failed to provide "meaningful, substantive" responses to the discovery at issue, Mot. at 9, Defendants argue in a footnote that they "stand by this statement." Opp. at 5 n.4. They then argue that when they made this admission, Defendants only meant to say that they had failed to provide meaningful, substantive "*answers*" to written discovery. *Id.* (emphasis in original). But that is precisely the problem with Defendants' discovery responses. There is simply no reasonable basis for Defendants to have refused to provide a single substantive answer to a single discovery request or to refuse to meet and confer over their objections. Defendants' own proffered authority confirms that "[f]or the purpose of evaluating the propriety of a response to a

---

[8] Plaintiffs have responded to all of Defendants' proposed edits (accepting most of them in order to move this case along), and did so less than a week after receiving Defendants' proposed edits. *Id.* at 4.

[9] According to Defendants, they must first serve and obtain responses to their own discovery (they do not say when this will occur), and only after that can they respond to much of Plaintiffs' already-propounded discovery. Opp. at 18. Not surprisingly, Defendants cite no authority for this proposition.

10918443
- 6 -
Case 3:20-cv-00451-CEA-DCP   Document 65   Filed 03/08/21   Page 10 of 19   PageID #: 2372

discovery request, <u>an evasive or incomplete disclosure is treated as a failure to disclose, answer or respond</u>," *Cozzens,* 2009 WL 152138, at *2 (emphasis added); *see also* Mot. at 8. And a failure to respond to discovery results in a waiver of objections. *Sobol v. Imprimis Pharm.,* 2017 WL 5035837, at *4 (E.D. Mich. Oct. 26, 2017). This is particularly true when, as is the case here, the objecting party has "caused [] the obstacles" that it purports to use as an excuse to avoid discovery. *Id.* at *5. Consequently, Defendants have waived their objections except for objections as to attorney-client and work product privilege. In any event, as demonstrated below and in the Motion, Defendants' objections fail on the merits as well.

### A. Discovery Relevancy

Relevance for purposes of discovery is "extremely broad," Mot. at 12 (citing authority), and the Opposition does not argue otherwise. *See, e.g., Groupwell Int'l. (HK) Ltd. v. Gourmet Exp.*, LLC, 277 F.R.D. 348, 360 (W.D. Ky. 2011) ("[A] request for discovery should be considered to be seeking relevant information if there is *any* possibility that the information sought may be relevant to the claim or defense of any party in the action.") (emphasis in original and citations omitted). The Motion met Plaintiffs' burden of establishing relevance of the discovery requests at issue with its brief explanation of this case and delineated categories of relevant issues for discovery that each request falls within. Mot. at 13-17. The Opposition does not dispute that the discovery requests fall within the Motion's delineated categories, nor does the Opposition identify a single category (or a single request for that matter) that fails to meet the "extremely broad" (*Neale v. Coloplast Corp.*, No. 1:18-cv-00274-TRM, 2020 WL 6948361, at *2 (E.D. Tenn. Nov. 02, 2020)) standard for discovery relevance.

Instead, Defendants attack definitions employed in some of the requests and argue that, given the way Defendants interpret those definitions, the requests are "overbroad" and would potentially encompass "irrelevant" information. *See, e.g.,* Opp. at 16. However, even if Defendants' assertions were correct, they would not render an entire discovery request—much less every discovery request

that has been propounded—"irrelevant" for discovery purposes. Defendants still should have answered the part of each request they did not contend was "irrelevant" or "overbroad" and then met and conferred with Plaintiffs over the definitions to achieve a mutually agreeable compromise.

Consequently, the burden is on Defendants to justify their complete failure to provide even a single answer to a single discovery request. *Strategic Mktg. & Research Team v. Auto Data Solutions, Inc.*, 2017 WL 1196361, at *2-*3 (E.D. Mich. Mar. 31, 2017) ("The burden . . . rests with the party objecting to the motion to compel to show in what respects the discovery requests are improper."); *see also Brothers Trading Co. v. Goodman Factors*, 2016 WL 9781140, at *1 (S.D. Oh. March 2, 2016) ("Several decisions issued by district courts in the Sixth Circuit have found that the burden is on the resisting party to demonstrate with specificity that a discovery request is unduly burdensome or that the discovery sought is not discoverable under the Federal Rules."). As demonstrated below, Defendants have not come close to meeting that burden.

B. Defendants' "Undue Burden" And "Proportionality" Objections

Much of Defendants' Opposition is dedicated to attacking the discovery requests for allegedly being unduly burdensome and not "proportional" to what is at stake in this case. *See, e.g.,* Opp. at 9. But the Opposition is devoid of the required <u>affidavits and evidence</u> supporting these objections. *See Home Fed. Bank of Tennessee v. Home Fed. Bank Corp.*, No. 3:18-CV-379-JRG-DCP, 2019 WL 11670621, at *2 (E.D. Tenn. Sep. 18, 2019) ("A responding party must show specifically how each discovery request is burdensome and oppressive by submitting affidavits or offering evidence revealing the nature of the burden.") (granting motion to compel) (quoting *Groupwell*, 277 F.R.D. at 358); *In re Heparin Prod. Liability Litigation*, 273 F.R.D. 399, 410-11 (N.D. Ohio 2011) ("A responding party must show specifically how each discovery request is burdensome and oppressive by submitting affidavits or offering evidence revealing the nature of the burden. . . . As [the responding party] has not substantiated its claim that the requests are unduly burdensome, this objection may be deemed

waived.") (granting motion to compel).**10**

Defendants provide no affidavit or other evidence showing how much time or effort it would supposedly take them to respond to the discovery requests they attack as burdensome or disproportionate. *See Oleson v. Kmart Corp.*, 175 F.R.D. 560, 565 (D. Kan. 1997) ("[A]n unsubstantiated allegation that a substantial period of time would be required to respond to the request does not carry the objecting party's burden."). For example, Defendants complain that the defined term "SNMP Research Software" "includes all software that has ever been provided by Plaintiffs (and other unidentified individuals and entities) to all affiliates of all Defendants regardless of their relevance to this case." Opp. at 11. If Defendants have distributed Plaintiffs' software to multiple entities, then such unauthorized distribution and unauthorized use by other entities is relevant and discoverable, and Defendants should not be able to hide their unauthorized use and distribution of Plaintiffs' software behind a shell game of various entities. If Defendants do have authorized use of Plaintiffs' software, then Plaintiffs will gladly exclude such authorized use from the scope of discovery (and have already done so),**11** but Defendants have yet to present Plaintiffs with any additional uses of Plaintiffs' software that Defendants believe are permissible.

Nor do Defendants dispute the Motion's demonstration that Defendants know exactly which software they are using in exactly which products (down to the family names and product names and numbers), as shortly before Plaintiffs filed this action, Defendants requested a license from Plaintiffs for the software (tailored to specific products and platforms). *Compare* Mot. at 21-22; *with* Opp.

---

**10** Defendants cite *Helena Agri-Enterpr. v. Great Lakes Grain,* 2021 WL 486880 (6th Cir. 2021) for the proposition that the federal rules include a proportionality requirement. There is no dispute that they do. However, as the party resisting discovery on proportionality and burden grounds, it is Defendants' burden to show disproportionality and to do so with affidavits and evidence, not rhetoric. *See, e.g., Home Fed.,* 2019 WL 11670621, at *2; *Brothers Trading*, 2016 WL 9781140, at *1-2; *William Powell Co. v. National Indem.*, 2017 WL 1326504, at * 5 (S.D. Ohio April 11, 2017).

**11** *See* Definition of SNMP Research Software, Ex. A to Wood Decl., which excludes SNMP Research Software "rightfully distributed to a Broadcom customer under the Amended and Restated Key Distribution Agreement. . . ."

- 9 -

(never disputing this showing). In response, Defendants argue that their objections "are not based on mere confusion" but instead "Defendants object because the terms in the discovery requests are defined to include software and entities not at issue in this case." Opp. at 12. Even assuming, for the sake of argument only, the truth of this, Defendants at the very least could (and should) have responded to the discovery requests with the same understanding they employed when asking Plaintiffs for a license, and the parties could have met and conferred to further refine definitions if and as needed.

Defendants also complain that the definitions of "SNMP," "Broadcom" and "Brocade" are overbroad and argue that responding to requests employing those terms would be unduly burdensome and disproportionate. But again, if this were truly the issue, then Defendants should have met and conferred over it to resolve it via compromise. They refused to do so. And yet again, Defendants have not submitted any <u>affidavit or evidence</u> showing how any of what they complain about leads to an undue or disproportionate burden. For instance, while Defendants repeatedly invoke that Broadcom Inc. has "dozens of subsidiaries," they offer no affidavit or other evidence that Defendants are unaware of which of those "dozens of subsidiaries" are actually using Plaintiffs' software and in which products, or of which ones have the documents to show it.[12] Defendants also offer no affidavit or evidence as to which, if any, of those "dozens of subsidiaries" have documents that would need to be searched and how much effort it would take to do so compared to what is at stake in this case (which is hundreds of millions of dollars in disputed revenues).

All this amply demonstrates that while Defendants have struggled to find fault with definitions and phrases, they have not met their burden to show with affidavits and evidence that any of what they complain about in legal argument creates an undue or disproportionate burden. Consequently, the

---

[12] While Broadcom chastises Plaintiffs for including Broadcom Inc.'s subsidiaries in the defined term "Broadcom," Broadcom does the very same thing publicly. Its homepage states: "Copyright © 2005-2021 Broadcom. All Rights Reserved. **The term 'Broadcom' refers to Broadcom Inc. and/or its subsidiaries**." *See* www.broadcom.com (bottom of home page) (emphasis added).

10918443 - 10 -
Case 3:20-cv-00451-CEA-DCP Document 65 Filed 03/08/21 Page 14 of 19 PageID #: 2376

objections fail.

### C. Defendants' "Vague and Ambiguous" And "Cumulative" Objections

The Motion identified over a dozen examples of Defendants objecting on "vague and ambiguous" grounds to simple and straightforward words and phrases. Mot. at 23-24. The Opposition does not address <u>any</u> of them. More importantly, if Defendants truly were confused over any words and phrases that the discovery requests employ, the proper response would have been to meet and confer with Plaintiffs over it, which Defendants refused to do.

The Opposition refers to Defendants' objections on "cumulative" and "duplicative" grounds, pointing to an instance in which Plaintiffs were specific in four requests and then more general in a fifth request on the same subject. Opp. at 20-21. That is hardly unusual in written discovery, and it is not remotely inappropriate. Indeed, it should be helpful to Defendants to have specificity where Plaintiffs can provide it, even if Plaintiffs also have a more general request on the same subject. This certainly was no basis for Defendants to refuse to provide <u>any</u> answers to <u>any</u> of Plaintiffs' discovery requests.

As for Defendants' proffered authority on this subject, it demonstrates that Defendants' "cumulative" and "duplicative" objections are misplaced. In *Askew v. George Matick Chevrolet*, the court denied a motion to compel because the discovery response at issue "referred Plaintiff to their previous discovery responses, as well as to other responsive documents <u>already produced during [the] litigation</u>." 2019 WL 2714771, at *3 (E.D. Mich. Feb. 4, 2019) (emphasis added); *see also Wolverine World Wide, Inc. v. American Ins. Co.*, 2020 WL 8340140, at *3 (W.D. Mich. Feb. 28, 2020) (denying motion for protective order when "all of the information sought by Defendants has already been the subject of three previous sets of discovery . . . <u>and can be obtained from the unredacted invoices Plaintiff was ordered to produce</u>.") (emphasis added). In contrast here, Defendants' "cumulative" objections point to nothing, and Defendants have produced nothing in this litigation.

### D. Defendants' Universal Failure To Follow Well-Established Rules Governing Objections To Written Discovery

In addition to all of the deficiencies noted above, Defendants have violated several well-established rules for objecting to written discovery, including: (i) listing "General Objections" and then incorporating them by reference into each and every discovery response (Mot. at 10-11, 17-18); (ii) asserting boilerplate objections; (iii) failing to provide partial responses when only part of a request is objectionable (*id.* at 11-12); and (iv) failing to identify when responses/documents are being withheld based on an objection (*id.* at 11). The Opposition does not dispute the existence of the rules, nor does it argue that Defendants have complied with them. Instead, Defendants offer hollow excuses.

For instance, Defendants argue that they should not be "fault[ed]" for their universal incorporation of all of their "General Objections" into every single response, given that "the same or similar objections are made in response to most of Plaintiffs' requests." Opp. at 15-16. However, Defendants cite no authority that this somehow renders their use of General Objections proper. The General Objections are thus waived (including any repetition of them in the purportedly "specific" responses). *See* Mot. at 10-11, 17-18.[13]

Defendants also argue that their boilerplate objections are not as egregious as some of the boilerplate objections in the cases the Motion cites. However, even if true, this does not mean Defendants' objections are not also boilerplate, and Defendants ignore the showing the Motion made as to the objections (*see* Mot. at 18-20). Defendants also struggle to "differentiate" various cases cited in the Motion regarding waiver. Yet Defendants never dispute that courts within the Sixth Circuit *repeatedly* have stated that boilerplate and general objections are tantamount to no objection at all and are deemed waived. *See* Mot. at 11, 15-16, 23-24.

Similarly, Defendants argue that because they have refused to provide any answers at all or

---

[13] The Opposition argues, albeit incorrectly, that "Defendants have not waived their specific objections." *See* Opp. at 21. It contains no such argument for Defendants' "general objections."

produce any documents at all, there is no harm from their failure to follow the rule requiring an objecting party to state whether it is withholding documents based on a particular objection. *Compare* Mot. at 11; *with* Opp. at 23. Accepting that argument would mean that parties who provide meaningful, substantive answers to discovery and produce documents would be held to a higher standard than parties who shirked their discovery obligations entirely.

Moreover, Defendants are wrong when they claim that it does not matter which objections are leading to Defendants' refusal to provide substantive answers and documents. This is particularly true given Defendants' approach to incorporating General Objections into all their responses and then listing so many "specific" objections as well. Taking just one example (Broadcom's response to Plaintiffs' first set of requests for production), for each and every request, Plaintiffs and the Court are left to guess whether Broadcom has refused to answer or produce documents because the request is purportedly "vague," "not relevant," "cumulative," "compound," "not reasonably particular," "unduly burdensome," or "premature"; or because the information sought is "not in [Broadcom's] possession, custody or control," or subject to the "attorney-client privilege," "attorney work product," "joint client privilege," "joint defense or common interest privilege," "constitutional right to privacy," or "tax privilege"; or instead because the request seeks "premature expert discovery" or "a legal conclusion"; or instead because responsive information is "protected by the California, Tennessee, or United States Constitutions, or applicable state or federal statutes"; or instead because responding "require[s] [Defendants] to reveal confidential, sensitive and propriety information." *See, e.g.,* Ex. M to Wood Decl. at 3, Dkt. 60-15.

As for the rule requiring Defendants to respond to part of a request if possible, *see* Mot. at 11-12, Defendants' only counter is that "Defendants' objections were not partial—they were directed to the entirety of each request." Opp. at 23. That is precisely the problem. It is simply not credible that there was not <u>a single part of even one discovery request</u> to which Defendants could have provided at

least a partial response (or produced at least some documents) as the Federal Rules expressly require.

## V. CONCLUSION

Defendants have usurped the role of the Court by essentially granting themselves an interim stay. Their "responses" to the written discovery are meaningless and violate numerous settled rules. Their refusal to meet and confer and to promptly negotiate a protective order and source code production are improper and evince an obvious goal to delay no matter what. This Court should put a halt to this discovery misbehavior and grant Plaintiffs' Motion.

Respectfully submitted,

Dated: March 8, 2021  By: /s/ *John L. Wood*
John L. Wood, Esq. (BPR #027642)
Cheryl G. Rice, Esq. (BPR #021145)
Rameen J. Nasrollahi, Esq. (BPR #033458)
EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
900 S. Gay Street, Suite 1400
P.O. Box 2047
Knoxville, TN 37902
(865) 546-0500 (phone)
(865) 525-5293 (facsimile)
jwood@emlaw.com
crice@emlaw.com
rnasrollahi@emlaw.com

Dated: March 8, 2021  By: /s/ *A. Matthew Ashley*
A. Matthew Ashley (CA Bar. No. 198235)
Morgan Chu (CA Bar. No. 70446)
David Nimmer (CA Bar. No. 97170)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
(310) 277-1010 (phone)
(310) 203-7199 (facsimile)
mchu@irell.com
dnimmer@irell.com
mashley@irell.com

*Attorneys for Plaintiffs*
*SNMP Research International, Inc.*
*SNMP Research, Inc.*