# EXHIBIT F

# SNMP RESEARCH, INC., et al.vs. BROADCOM INC., et al.

## TRANSCRIPT OF PROCEEDINGS

## March 17, 2021

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE

SNMP RESEARCH, INC. and SNMP
RESEARCH INTERNATIONAL, INC.,

    Plaintiffs,

vs.    Case No. 3:20-CV-00451
    Jury Demand
BROADCOM INC.
BROCADE COMMUNICATIONS SYSTEMS
LLC, EXTREME NETWORKS, INC.,

    Defendants.

TELEPHONE CONVERSATION

BE IT REMEMBERED that the above-captioned
cause came on for hearing, on this, the 17th day of
March 2021, beginning at 6:05 p.m. EST, when and
where the following proceedings were had, to wit:

Elite-Brentwood Reporting Services
www.elitereportingservices.com
Deborah H. Honeycutt, LCR, Associate Reporter
P.O. Box 292382
Nashville, Tennessee 37229
(615)595-0073

---

**Page 2**

A P P E A R A N C E S

For the Plaintiffs:
MR. JOHN L. WOOD
MS. CHERYL G. RICE
Attorneys at Law
Egerton, McAfee, Armistead & Davis, P.C.
1400 Riverview Tower
900 South Gay Street
P.O. Box 2047
Knoxville, Tennessee 37902
(865)546-0500
jwood@emlaw.com
crice@emlaw.com

MR. A. MATTHEW ASHLEY
Attorney at Law
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
(310)277-1010
mashley@irell.com

For the Defendants/Broadcom Corporation, Brocade
Communications Systems LLC:
MS. ALISON L. PLESSMAN
MR. SALVATORE BONACCORSO
Attorneys at Law
Hueston Hennigan LLP
523 West 6th Street, Suite 400
Los Angeles, California 90014
(213)7888-4592
aplessman@hueston.com
sbonaccorso@hueston.com

---

**Page 3**

    * * *

P R O C E E D I N G S

    (WHEREUPON, the above-captioned matter
was heard via videoconference as follows:)

    MR. WOOD: This is John Wood with
Egerton McAfee. And I think we finished talking
about the protective order yesterday as much as we
could, and we were going to start on Broadcom's
responses and objections to SNMP's second set of
requests for production. I think the first request
number is request for production number 92.

    So our thought was maybe, to streamline
this a little bit, if you could let us know which
objections are you relying on to withhold documents?
Maybe we could focus on talking about those. Since
those are the ones holding up getting produced.

    MS. PLESSMAN: Just to be clear, you
asked for the meet and confer. My understanding was
that you are going to be making a proposal. You
have an objection so we are in listening mode. You
haven't sent us a letter. You haven't sent any sort
of meet and confer letter, saying why your requests
are proper. You asked for it. I think you should,
first of all, explain whether or not the threshold
issue -- have you -- are you, in fact, going to

---

**Page 4**

agree that, you know, to change your position with
respect to the waiver issue and one-sided discovery.
I think that's kind of the threshold for all of us.
    And then were expecting that you
would have, you know -- basically, respond to our
objections and provide case law if you think that
your requests are proper and then we can consider
that and respond to it. But we've already filed --
(inaudible)
    MR WOOD: I think you cut out. And
Court Reporter, that was Alison Plessman. We'll
just wait. Looks like she dropped off. We'll wait
for her to call back in.
    (Short break.)
    MS. PLESSMAN: Can you hear me okay?
For some reason my call just dropped. I don't know
why.
    MR. WOOD: Yeah. Why don't you go
ahead. And we just kind of put everything on pause
since you dropped. Go ahead and finish up.
    MS. PLESSMAN: Yes. I was going to say
we haven't -- we've already served our objections.
We've filed a motion for a protective order. We
filed a motion to save discovery and our positions
are as we set forth. We are not changing our

1 positions as stated in the motions and in our
2 objections.
3 But if you requested to meet and confer
4 and offered to discuss whether or not you're going
5 to reconsider your position on the waiver issue, we,
6 obviously, are willing to listen to that.
7 But just your opening question, we're
8 not here today to start negotiating against
9 ourselves. And normally you would have sent a meet
10 and confer letter laying out your position with
11 supporting case law and to -- since you have the
12 burden to support the appropriateness of your
13 request. That's what we were expecting to hear. So
14 I want to make that clear, that we're not -- we're
15 not changing our position with respect to what's
16 already been fully set forth.
17 Obviously, we'll consider what you have
18 to say today. But as I indicated in that email,
19 since we don't have any idea what that is or whether
20 or not you are actually going to change your
21 position on the one side of discovery issue, that is
22 to us -- that is a threshold issue.
23 MR WOOD: Matt, do you want to jump in?
24 MR. ASHLEY: Yes. Can you guys hear me?
25 THE REPORTER: Yes, sir.

1 MR. ASHLEY: Good. This is Matt Ashley.
2 So, Alison, what happened was we sent a meet and
3 confer letter to you asking if you wanted to have a
4 meet and confer over the second request for
5 production. I thought you responded yes but you
6 also wanted us to meet and confer with you over the
7 already-filed motion to stay and for a protective
8 order. We are happy to do that, but we don't view
9 those as antithetical to each other. You can do
10 both.
11 Are you saying that you won't meet and
12 confer over the second set of RFPs today?
13 MS. PLESSMAN: Well, to me they're not
14 separate issues. Because our objections are that --
15 include that we have a pending motion for protective
16 order and to stay discovery and so -- and you
17 haven't sent a letter. You could always send a
18 letter to meet and confer in advance and lay out
19 your position with respect to the specific
20 objections but you haven't done that.
21 So all we're saying is we're happy to
22 hear you out but we're assuming that you're going to
23 have as part of this some different position on the
24 waiver issue because all of those things have
25 been -- have been briefed. There's -- you know,

1 we're happy to talk through if you want to give
2 supporting case law for your request and why you
3 think all of our objections aren't valid. But we're
4 never -- I don't know what you -- I don't know how
5 you are separating those two things in your mind
6 because one of our objections is, in fact, that
7 we've got these motions pending. So we can't really
8 separate them.
9 MR. ASHLEY: Well, I think you can. I
10 think you guys have a motion to stay and for
11 protective order. The parties met and conferred
12 before that was filed. The parties disagree on that
13 issue. And it's fully briefed.
14 We also have the request for production
15 of sales. We have propounded them. It's
16 defendants' positions that they have provided
17 substantive responses consisting of objections so we
18 are trying to work out the issues with respect to
19 those objections.
20 I don't think either party has to
21 concede any position on the motion to stay and for
22 protective order. And it sounds like you are
23 willing to meet and confer on the requests for
24 production. You just want us to send you a meet and
25 confer letter. But I don't think there's any

1 requirement that we do that before we actually just
2 start talking through what the issues are.
3 I think what John was trying to do was
4 John was just trying to short circuit this because
5 there are quite a few objections and some of them
6 might not be as big an issue as others.
7 So, for instance, you incorporate by
8 reference general objections. Those general
9 objections cover a very wide array of objections,
10 many of which might not be applicable to request for
11 production number 92. So we just wanted to narrow
12 the field so to speak. And then we might be able to
13 reach agreement on some of these issues. And if we
14 don't, then I guess the parties could exchange
15 letters. But I thought right now the point of
16 meeting and conferring is to be efficient so we
17 could streamline the objections that are truly at
18 issue, try to reach an agreement on them. And if we
19 don't, if you'd like us to exchange letters, I
20 suppose we could but we may not have to because we
21 might reach agreement.
22 MS. PLESSMAN: Yeah. You can assume for
23 the purposes of this discussion that at this point
24 we're standing on all of our objections because we
25 don't have any reason not to.

1    So my expectation when somebody asks for
2  a meet and confer in response to another party's
3  motions and full objections is to come and say this
4  is why you're wrong and we're willing to listen to
5  that. But because we don't know what that is, I
6  guess my easy answer would be at this point we're
7  standing on all of our objections rather than trying
8  to go through and say, no, this one we didn't really
9  mean or this one we care about less. We put them in
10  there for a reason.
11    MR. ASHLEY: We could do that. We could
12  go general objection number one and start with that.
13  Some of these just don't seem – oh, I'm sorry. Go
14  ahead.
15    THE REPORTER: Is this Matt?
16    MR. ASHLEY: This is Matt. Yes, I'm
17  sorry. I guess we could do that. We could just
18  start. There's a lot of general objections and
19  there's a lot of objections written here that just
20  on their face don't look like they're the type that
21  would withhold production of documents but we're
22  willing to do that.
23    So I guess we could just start with the
24  first general objection if that's how you want to do
25  it. It doesn't seem very efficient.

1    MS. PLESSMAN: What I'm really looking
2  for is just what is your – what is – rather
3  than – I feel like you're flipping the burden on us
4  and we have a motion for a protective order. We've
5  served our objections and now you want us to provide
6  the basis as I believe we already have.
7    But if you disagree, I would say then
8  I – I'm – then we're here to listen to what you
9  have to say about our objections. But to go through
10  and have for me to be the one going on speaking and
11  going through objection by objection when we've
12  already I think pretty fully explained and objected
13  to each request, that's what I'm – that's what I'm
14  responding to. I mean, especially you guys are, in
15  this sort of like informal type of conversation, you
16  guys are requesting a court reporter, and then
17  asking me to be the only one speaking, and you guys
18  are the ones that requested the meet and confer.
19    So I'm assuming you have a position and
20  you have a response in support for your, you know,
21  legal support for your request and we're willing to
22  listen. And I also was assuming and understood that
23  you are willing to reconsider a huge piece of this
24  which is that we shouldn't have to engage in
25  one-sided discovery which includes extensive

1  discussions and meet and confers and responding to
2  motions to compel. And that's exactly why you file
3  a motion for a protective order.
4    So I think that is – that's an
5  important issue to discuss because if you're not
6  really willing to reconsider that, that makes
7  this – and then you ask us to go through item by
8  item and further support the objections that we've
9  already set forth without giving us anything in
10  response, that just doesn't – again, that just
11  doesn't seem fair.
12    MR. ASHLEY: Well, we could start
13  with – I know that you raised the issue of whether
14  or not defendants or the plaintiffs would discuss
15  with defendants reconsideration with respect to the
16  already briefed motion to stay and for a protective
17  order.
18    It sounds like from what you said
19  earlier defendants' position on that is firm. We
20  did meet and confer with you on that. But if
21  there's something new that you want to raise that
22  hasn't already been raised in the briefing – I
23  think it's been pretty extensively briefed but if
24  there's something new that you would like us to
25  factor in in connection with your request that we

1  reconsider our position, we're happy to consider.
2    MS. PLESSMAN: Well, I mean, the issue
3  is that it's – it is an impediment to be able to
4  move forward and so that – it simply – are you –
5  given – given where we are, are you willing to, in
6  an effort to move things forward, while we wait for
7  these motion to dismiss to be resolved, are you
8  willing to change your position regarding the
9  argument that you're entitled to reserve – or not
10  entitled, but that you are reserving your right to
11  argue that we are waiving jurisdictional and venue
12  defenses by engaging in our own discovery? Has your
13  position changed on that?
14    MR. ASHLEY: No, our position hasn't
15  changed. It's fully briefed and I think we've met
16  and conferred on that already. But you had proposed
17  that we would consider it and I just asked whether
18  or not there's anything new beyond what's been
19  briefed and what we've already discussed that you
20  would like us to consider in connection with that?
21  If not, yeah, our position is the same. It's
22  actually fully briefed and teed up for the court.
23    MS. PLESSMAN: Okay. Well, I think that
24  that was – I think that was a little bit misleading
25  because I think it was clear from our request that

1  that was an important consideration for -- that that
2  is -- that's an important consideration and that I
3  view those things as being part of the same
4  conversation as far as meeting and conferring
5  regarding our objections and that -- and that
6  particular issue.
7      I took your email to mean that you were
8  actually considering changing your position, not
9  just that you would, you know, require some -- I
10 don't even know what -- additional information. But
11 I guess that's clear. So it sounds like you're
12 continuing to take the position that you will argue
13 waiver if we engage in our own discovery?
14     MR. ASHLEY: So to make it really clear,
15 we're not taking any positions with respect to
16 waiver. You have asked previously whether or not we
17 would agree that if you propounded your own
18 discovery and there was a potential for waiver based
19 on that, we would agree not to assert that argument
20 and we're not agreeing to that and we're still not.
21 It sounds like both parties are not willing to
22 reconsider their position on the motion to stay and
23 for a protective order.
24     So given that we've reached that point,
25 are you now willing to meet and confer on the actual

1  second set of RFPs, specifically, the objections
2  that you have raised other than that?
3      MS. PLESSMAN: Well, I mean, I'm not --
4  and that's what I am -- we are willing to hear your
5  response to our objections. But we have already
6  laid out our position and so -- and that's what I
7  indicated in my email. We don't know -- we didn't
8  know what your proposal was going to be. We don't
9  know what you're -- whether or not you're -- you
10 would have a specific thing you want to meet and
11 confer about with respect to our request and we're
12 willing to listen.
13     But the idea that we're going to waive,
14 just to say our pending motions that we're taking
15 those off the table and we're going to just move
16 forward, that is not our position as long as you
17 maintain that you're entitled to this one-sided
18 discovery, that's going to be a big impediment.
19     But that doesn't mean that you can't
20 explain your requests and provide support for them
21 and at some point when we get to -- it gets to that,
22 we obviously will take into consideration your
23 explanations of the request. Maybe, for example, we
24 have interpreted them incorrectly or do you mean "X"
25 and we thought you meant "Y"? It could be helpful

1  information to know and, obviously, we are willing
2  to listen to it.
3      So I just -- you asked to meet and
4  confer so we don't know what you have in mind, I
5  guess, if you're not willing to change your position
6  at all. It's just a little bit confusing.
7      MR. ASHLEY: Yeah. I'm not sure what's
8  confusing about it. But what we are trying to do is
9  have a dialogue about the requests and the
10 objections to narrow the issues in dispute on the
11 objections and try to resolve them if we can.
12     So, for instance, if there really is
13 something about this request that's confusing to
14 defendants, we would like to try to clarify. If
15 there's something about this request that's truly
16 unduly burdensome to defendants, we'd like to know
17 how so and then try to reach a compromise where we
18 can alleviate that burden.
19     If there is something else, we would
20 just have to guess. Like you've incorporated by
21 reference the tax privilege as an objection to
22 request number 92. If you're not withholding
23 documents based on that, I don't think we have to
24 discuss it. But that would be something that we
25 would say, okay, what is the basis for that and why

1  can't you produce documents that aren't tax
2  privileged.
3      But given the number of objections, it's
4  just going to be inefficient going item by item, but
5  if you'd like to do that we can. But I don't want
6  to do it where you're saying you're just going to
7  hear what we say and then we're not going to work to
8  resolve the issue so that you can provide responses.
9  That's the point of a meet and confer.
10     MS. PLESSMAN: I understand. But what
11 you're basically saying is that you asked for a meet
12 and confer and then you want us to explain all of
13 the objections that I feel are clear and we've laid
14 out. A lot of these objections we've actually fully
15 briefed. So I think that since you have requested a
16 meet and confer, I would ask that you set forth why
17 you believe our objections lack merit, why you
18 believe that your request is appropriate. We --
19 your -- again, it's just a matter of we've already
20 laid out our position and so now we'd like to hear
21 yours as part of the meet and confer that you
22 requested.
23     And I feel like you are instead asking
24 us to go through and be the only ones, again, trying
25 to explain our objections which I believe are

1  already clear and have often -- we've already
2  explained and briefed.
3      So why don't you, rather than going back
4  and forth about that, I think it would be more
5  productive for you to explain your reaction to our
6  objections and which ones you feel lack merit or
7  which ones you don't understand and then we can
8  consider those and try to figure out a response. So
9  we don't know what your response is yet.
10     MR. ASHLEY: John, maybe you can just
11 start with the definitions. That was sort of the
12 focal point, I think, of the briefing and then we
13 can move from there to see if there's some other
14 objection that we're not focusing on is somehow a
15 roadblock. Make sense?
16     MR WOOD: I was going to suggest -- and
17 we are kind of doing this on the fly -- but maybe we
18 start with, I think, the easiest one and see if we
19 can -- which is request for production number 96. I
20 think you had the fewest objections there and it
21 seems like we ought to be able to resolve that such
22 that you can produce that document. This is John
23 Wood.
24     So Alison, we're not -- and then maybe
25 we do go back and look at the definitions and go

1  through that. But it looks like your main objection
2  to request number 96 is simply that we have no
3  protective order.
4      So could we agree that once we get the
5  protective order in place, will you then be in a
6  position to produce that document?
7      MS. PLESSMAN: Yeah. And we also,
8  obviously, object because there's a pending motion
9  to stay and for a protective order which is sort of
10 my original point. It doesn't sound like that issue
11 has gone away so that still exists.
12     The other issue here is I thought that
13 Extreme was going to be on the call and so that,
14 obviously, this request of the issue is
15 confidential -- confidential information as between
16 the two parties. So I think it has to be -- that
17 has to be a conversation with both of us because it
18 implicates both of us.
19     But, in general, you are correct. It
20 has -- the primary objection here is the lack of a
21 protective order and then the attending motion to
22 stay and protective order. But then the position
23 with respect to confidentiality is an issue that I
24 would want to make sure that Extreme agrees with any
25 position that we would take on that.

1      MR. WOOD: So we have a protective order
2  that allows you to produce confidential and highly
3  confidential information, a protective order will.
4      Let's just say if Extreme doesn't object
5  to that, are you still going to refuse to produce
6  the document until the motion to stay and for a
7  protective order is resolved? Is that what your
8  objection means? As long as that motion is in
9  place, you're not going to produce any documents?
10 This is John Wood. Let me repeat my question.
11     So once we get a protective order in
12 place, are you saying that you're still not going to
13 produce any document because the motion to stay and
14 protective order is in place?
15     MS. PLESSMAN: Well, we served our
16 objections and we served a motion for a protective
17 order and so, I mean, that is typically -- it
18 wouldn't make a whole lot of sense if then we went
19 and produced a bunch of documents when we have a
20 motion for a protective order pending.
21     And so maybe -- and, in addition, it's
22 not just our motion. This request in particular
23 focuses on confidential information with Extreme and
24 Extreme isn't, for whatever reason, on the line
25 today. And we have a motion that we filed with them

1  that would equally apply to them.
2      So I think we would need to discuss with
3  Extreme what their position would be with respect to
4  this document. I don't see it -- if all things were
5  resolved, I don't see this particular document being
6  a huge, huge problem down the road. But where we
7  are now, there are. We don't have a protective
8  order and we've got these pending motions and we've
9  got this confidentiality and issues with a joint
10 defendant.
11     So I think we would need to talk to them
12 about it before committing to what we might do down
13 the road once all these issues are resolved. But I
14 don't think that there should be -- this particular
15 document likely wouldn't be something that is going
16 to be a huge fight once those issues are resolved.
17 I think we need to talk to them about it.
18     MR. ASHLEY: This is Matt. Just one
19 thing. Extreme did respond to this request. And
20 they said: Pending entry of an appropriate
21 protective order and resolution of general
22 objections, in particular the aforementioned
23 objections, the propriety of all requests due to the
24 pending discovery posture and motions, Extreme would
25 have no additional objection to this request to the

1 extent that it's seeking non-privileged or otherwise
2 unprotected information.
3 So I don't think they're objecting on
4 confidentiality grounds. I don't know if that
5 resolves the issue.
6 MR. PLESSMAN: That's what I would think
7 that that's what that protective order objection
8 would be addressing. And it sounds like they're
9 also -- that they also reference the pending
10 discovery issue. So I really think they should be
11 involved in the conversation with respect to -- with
12 respect to this request.
13 But I think that the key issues are the
14 protective order and the issues already involved,
15 just like you would normally do. The issues are
16 involved in the conflict or agreement or whatever
17 the confidentiality issue are on the same page. And
18 then also you have the pending motions, obviously.
19 MR. WOOD: This is John Wood again. I
20 think one thing we are trying to figure out, Alison,
21 is which of these objections we really need to
22 respond to. So, for example, it sounds like you're
23 saying you're not withholding this document because
24 of the tax privilege or a constitutional right to
25 privacy or any of that. And so for us -- and you've

1 made that objection on I think almost every single
2 request, similar objection.
3 So we're trying to figure out which ones
4 are really withholding documents so we know what to
5 respond to on and that's why we wanted to talk
6 through it. Because if you really are withholding
7 it based on the tax privilege, we want to understand
8 what you mean by that and how it could be implicated
9 by the tax privilege. Because we don't really even
10 understand your objection.
11 And that's the whole point of the meet
12 and confer. If this is a real objection that you're
13 really withholding documents, we need to talk about
14 it and understand why you're withholding a document
15 based on the tax privilege.
16 MS. PLESSMAN: Yeah. I understand. But
17 what -- I understand you want us to go through and
18 defend all our objections. And I'm saying that is
19 essentially asking us to negotiate against ourselves
20 when we're the only ones that have laid all of this
21 out in writing and you haven't given us what your --
22 you haven't given us support for why the requests
23 are appropriate and why our objections are not
24 appropriate. And I just feel like that -- that is
25 the fair sequence of things. Rather than to ask for

1 a court reporter and then go through and, again, not
2 offer your own support for the request, but having
3 us again through go through and -- and, you know,
4 further explain all of our objections, which if you
5 don't think the tax privilege applies, then you can
6 explain why but -- rather than -- that's where we
7 should be.
8 What I'm saying is that I think even
9 went farther with that. I think the key issues
10 there are involving Extreme in the conversation and
11 the resolution of the protective order and the
12 motion. But part of resolving these issues with
13 Extreme include discussions about various privileges
14 and things that might apply to the particular
15 redaction.
16 But, given that this involves another
17 party and that they're not on the line, it seems
18 like that particular request isn't a good one to
19 focus on. We could easily have them here as well to
20 figure that out. But as an initial matter, I don't
21 think it's -- what we need to do first is get the
22 protective order and motions resolved because those
23 are, again, threshold issues.
24 But I just don't think it's appropriate
25 to ask for a meet and confer and then when we've

1 already fully set forth our position I think pretty
2 clearly and then not -- not begin by providing your
3 support for your request and why you think -- why
4 you think it's clear and appropriate and makes sense
5 and not overbroad and all of those things. And I'm
6 not just talking about the last request. It raises
7 issues with respect to this Extreme who is not here
8 but with respect to the others.
9 MR WOOD: This is John Wood. And just
10 with all due respect, I think you've gotten it
11 somewhat backwards because the rules require you to
12 state with specificity why you have the objection.
13 You can't just say I object because of a
14 constitutional right to privacy. You have to
15 explain why you object. Then we're able to respond.
16 If we don't know the reason -- you keep saying
17 you've laid out all your reasons but you actually
18 haven't. You just say constitutional right to
19 privacy, tax privilege, the Federal Rules of Civil
20 Procedure.
21 So are we supposed to go through every
22 single federal rule and explain why it doesn't
23 apply? It's your burden to state with specificity
24 why these objections apply and you haven't done
25 that. We're trying to meet and confer to get some

1  clarity on which objections are real and which ones
2  aren't so we know how to respond so we can clear
3  this up.
4      MS. PLESSMAN: Yeah. And I'm saying
5  that for the purposes of the -- you asked to meet
6  and confer and so we've laid out our objections.
7  And, obviously, we wouldn't have served them if we
8  didn't think that they were appropriate and
9  sufficient.
10      So what I'm saying is that if you don't
11  think they are then, as you just laid out, that's
12  fine, I could respond, so we will consider that.
13  But that's the sort of thing that I'm talking about.
14  If you don't think that our objections with respect
15  to "X", "Y", and "Z" is appropriate, tell us why and
16  we'll consider that, consider whether or not we'll
17  amend our responses.
18      But our position is that our objections
19  are appropriate. And so I understand that you might
20  disagree but that's what we're meeting and
21  conferring about, to find out where you disagree and
22  what you think is insufficient and what you don't
23  think is a valid basis and then you can provide
24  support for that and that's fine. That's what I
25  would expect.

1      MR WOOD: This is John Wood again.
2  Alison, we can't provide support for something when
3  we don't understand the reason for your objection.
4      So back to the tax privilege, how does
5  the tax privilege relate to this unredacted version
6  letter from Simone New (phonetic) to Katie Moby
7  (phonetic)? We don't know. We don't know how to
8  respond. If you want to tell us right now, we can
9  take that into consideration and we'll respond. But
10  without that information, we don't know.
11      Which one of the Federal Rules of Civil
12  Procedure do you think is keeping you from providing
13  that document? We want to work with you to work
14  this out, and I feel like you're really you're not
15  working with us at all.
16      MS. PLESSMAN: Well, I disagree. I
17  think we should just start by you laying out your
18  position for the -- with the central objections and
19  what specifically have you done and go through and
20  say you don't understand this, you don't understand
21  that, you don't understand this.
22      Rather than putting me on the spot when
23  you haven't identified what you don't understand and
24  what you think is appropriate and then making me
25  answer, I think you should go through and tell us

1  what it is that you don't understand, identify where
2  you think our objections are inappropriate, and then
3  we can consider that. But we don't know that yet.
4  That's the problem.
5      And I agree with you, Matt, that you're
6  not required to necessarily send a letter in
7  advance, but that is one of the advantages of doing
8  it because then we're not in the situation where you
9  go into a call basically where you insist on
10  having a court reporter and identify your problems
11  or objections for the first time and then ask us to
12  explain and support them rather than the other way
13  around, where you explain what it is you don't
14  understand and what we, you know -- what you would
15  request that we provide additional information on or
16  where you would request that we amend our objections
17  where it doesn't make sense to you. Those are the
18  kinds of things that we can consider, but -- but
19  that's not what I'm hearing you do.
20      MR. WOOD: Well, I --
21      MS. PLESSMAN: Just looking at number
22  one, if you don't want to -- if there is some
23  objection, it kind of works both ways. If there's
24  some objections that you get, that you think makes
25  sense, then you're willing to clarify them, that's

1  something else that we would have expected you to
2  offer and meet and confer to say we know that you
3  have an issue with this term or this definition and
4  so we'll amend our request to make that clear or
5  whatever. Those kinds of things. Or if there are
6  objections that are particularly confusing or if
7  this is something that may have a basis in the law
8  or it violates the rules, you can identify those and
9  we can look into it. We're happy to consider all of
10  those arguments.
11      But it just -- it feels a little bit
12  like what you are trying to do is turn this into
13  some sort of a document game where what you really
14  want to do is file another motion and you have a
15  court reporter on and I am the only one actually
16  speaking. I'm not sure how to resolve that.
17      MR. WOOD: Well, I'm not sure we're
18  actually making any progress. It seems clear to
19  me -- this is John Wood. What seems clear to me,
20  you're not willing to talk through any of these
21  right now.
22      MS. PLESSMAN: Well, that's not true at
23  all. I'm actually saying -- I'm just asking you to
24  explain what it is about our objections and which
25  aspect of our objections you think are inappropriate

1    or confusing or aren't supported by the law. And it
2    sounds really like that you guys are the ones that
3    don't want to do that. And I just -- I try and make
4    a little bit on -- I have never had anyone
5    propose -- the nature of these meet and confers are
6    supposed to be -- it's just -- it's -- what this
7    really feels like is that you wanted to have a court
8    reporter on to set up some sort of motion to compel
9    rather than actually set forth your positions with
10   respect to our objections and describe what it is
11   that you either agree with or disagree with with
12   respect to our objections.
13        And I just think that that -- that is
14   not -- that is not what meet and confers are
15   supposed to be, where the party that's filed a
16   motion for a protective order, a motion to stay,
17   filed full objections, and then now the only ones
18   then, again, explaining each objection that we
19   already think is appropriate without hearing from
20   you first as to why you think that they're not.
21        MR. WOOD: Well, the reason we have the
22   court reporter is because we had an issue on a
23   previous meet and confer where we completely heard
24   two different things and so we are trying to avoid
25   that problem.

1        We already have a motion to compel on
2    file. We don't need anything else. That motion to
3    compel is fully briefed so I'm not sure what you're
4    talking about there.
5        We're trying to keep things clear and we
6    really are trying to work this out so we can move
7    forward and have documents produced in the case
8    and that's our goal is to move discovery along
9    and -- but I don't think we are making any progress.
10   So I think for now we -- I think we're probably done
11   with this call.
12        MS. PLESSMAN: I guess I just want the
13   record to be clear then. Are you not -- are you not
14   willing to explain what you believe is -- which
15   objections you believe have merit and which don't or
16   offer any sort of compromise? Because that's what I
17   would expect. That's what I would have expected
18   when you requested to meet and confer. And I just
19   want that to be clear.
20       MR WOOD: Well, let's do one then. We
21   do not think the tax privilege states with
22   specificity the reason why you're withholding
23   documents based on the tax privilege. We think
24   that's in violation of the rules.
25       And so if you would like to explain why

1    the tax privilege is applicable here, then we would
2    like to consider it, but you didn't state anything.
3    So you're asking us to respond to something you
4    didn't state. And we could go down each one that
5    you didn't state with specificity. If you'd like to
6    respond to that one, we're happy to discuss it with
7    you.
8        MS. PLESSMAN: Yeah. That's -- that's
9    the sort of thing that if there are other things,
10   like the tax privilege or other objections that you
11   feel like we need to further explain and if there's
12   some basis in the law or in the rules that you think
13   that we need to further state "X", "Y", and "Z" on
14   any given thing, that we're willing to listen to
15   that.
16       So you mentioned the tax privilege, so
17   we are willing to look into that and see whether or
18   not we can either remove that objection or whether
19   or not we need to provide additional specificity,
20   and we'll consider that.
21       MR. WOOD: When will you get back to us
22   on that, Alison?
23       MS. PLESSMAN: Well, why don't we go
24   through the rest of your issues. Again, part of
25   this is considering all of this in connection with

1    the pending motions and what your expectations are
2    and what you're offering in response and what your
3    position is with respect to these, rather than just
4    one-off issues on the tax privilege.
5        I think we should just go through and if
6    you have particular objections like that -- or not
7    objections, but responses to our objections, if you
8    really want to understand the basis of a particular
9    objection or wonder if -- or propose that we remove
10   it, that's what we would like to hear.
11       MR. ASHLEY: Well, maybe to make this a
12   little bit more organized, since we're on 96, start
13   with number 96. And your first objection we've
14   already discussed -- this is Matt, by the way -- and
15   that is that Broadcom wants a protective order
16   governing confidential information which I think we,
17   other than the source code provision, pretty much
18   agreed to yesterday. So that should resolve the
19   objection based on disclosure of confidential and
20   proprietary information. That's the very first
21   objection in RFP 96. Does that sound right, Alison?
22       MS. PLESSMAN: Well, yes. I mean, we
23   don't -- I don't know what you mean "does that sound
24   right?" We talked about the protective code
25   yesterday. I think we've made significant progress

1  and we're – we should be able to reach agreement on
2  that fairly soon, I hope. I don't think that there
3  are going to be huge outstanding issues. We don't
4  have it in place yet. I imagine there might be
5  some – some additional work on it, but that is one
6  of the bases, and I think I've already explained
7  with respect to this issue this is something that I
8  think Extreme should be involved in because this
9  is – this involved, again, a pending – a document
10  that includes that there are confidentiality issues
11  with Extreme and I think they should be involved in
12  the conversation. So I think it makes sense to
13  focus on the other requests.
14       MR. ASHLEY: You brief this request, so
15  can we go to the next objection. The next objection
16  is "Broadcom further objects to this request to the
17  extent the documents sought are not in Broadcom's
18  possession, custody, or control, and are in the
19  possession, custody, or control of third parties."
20  Again, this is Matt. Our position is that it's a
21  letter sent from Broadcom so it's in Broadcom's
22  possession, custody, or control.
23       So can we agree that that's not an
24  objection upon which you guys are basing withholding
25  a document?

1       MS. PLESSMAN: Well, yeah. I mean, I
2  would have to actually look at the – I would have
3  to actually look at the letter. I don't know that
4  if it's – I would have to look at who was
5  actually – who Simone actually worked for. I don't
6  recall.
7       MR. ASHLEY: So that objection is still
8  in play?
9       MS. PLESSMAN: Yeah. I mean, like I
10  said, we're willing to reconsider it and go – and
11  go look and see if that's – if that's a basis that
12  can be removed. But I don't really think this is
13  going to be – I don't think that this document in
14  the end will be an issue once all the other – all
15  the motions and the protective order in place and I
16  have an opportunity to talk to Extreme about it. I
17  don't expect it to be a huge impediment, but I do
18  want to be able to talk to them first.
19       MR. ASHLEY: We covered that. I'm just
20  making sure I'm narrowing the issues. So I
21  understand that you want to talk to Extreme. I'm
22  just asking about the possession, custody, or
23  control. And that's something else you need to look
24  into as well, whether Broadcom actually had
25  possession, custody, or control of that letter?

1       MS. PLESSMAN: Well, yeah. I need to –
2  I just need to take a look at it. I don't remember
3  who Simone is or who she worked for. But I would
4  have to go back and look at it.
5       MR. ASHLEY: Okay. And then the next
6  objection is the reference to the motion to stay and
7  the motion for a protective order which is pending,
8  and I think we've already discussed that.
9       The next objection is with respect to
10  lack of personal – alleged lack of personal
11  jurisdiction. The parties actually disagree on
12  that.
13       But are you withholding documents on the
14  basis of that objection? We don't think that's
15  appropriate.
16       MS. PLESSMAN: We have a pending motion
17  to stay. All of these issues have been briefed, so
18  I don't think we need to revisit this ground. We
19  have a pending motion to stay. We have a pending
20  motion for a protective order. We have a pending
21  motion to compel. So I think those are – you know
22  our position on them well.
23       MR. ASHLEY: But what I don't know is
24  whether or not Broadcom is actually withholding this
25  document on the basis that it is asserting a

1  personal jurisdiction defense? Is it doing that?
2       MS. PLESSMAN: Well, and that's part of
3  the motion to stay. The motion to stay discovery in
4  part.
5       MR. ASHLEY: Is that yes? I just don't
6  know. I can't tell whether –
7       MS. PLESSMAN: And motion for a
8  protective order. So yeah, that would all be –
9  again, this has all been briefed. I don't want to
10  revisit arguments that have already been briefed.
11  Again, I feel like this is ground well covered.
12       If you want to go through and explain
13  what you have a problem with and where you think the
14  objections are improper, that's fine. But to make,
15  you know – to go into this, like, rehashing things
16  that have already been briefed, unless you're
17  changing your position or you want to ask us here
18  have you considered this case or this law, other
19  than what we've already set forth fully and briefed,
20  otherwise we're just sort of spinning our wheels on
21  things that we've already laid out in items
22  completely.
23       MR. ASHLEY: Well, I don't think the
24  brief addressed this issue. Broadcom asked
25  plaintiffs to agree that Broadcom responding to our

1  written discovery, that the plaintiffs would not
2  argue that that waived Broadcom's personal
3  jurisdiction defense and we gave that agreement and
4  the parties informed the court of that agreement.
5           And all I'm asking is whether or not
6  Broadcom is actually withholding this document on
7  the basis that Broadcom is asserting a personal
8  jurisdiction defense? And I don't think that's been
9  briefed. I think it's a pretty simple question.
10          MS. PLESSMAN: Yes, I think it has been
11 briefed. It has been briefed. It's part of the
12 issue again. This is not -- we're not -- we're not
13 covering any new ground here. It has been
14 addressed. The one-sided discovery issue has been
15 gone -- we've gone over that. It's not simply an
16 issue, as you know, of you agreeing that if we
17 respond to your hundreds of requests that you won't
18 argue waiver. It's the fundamental unfairness of
19 your position and that is the subject of a motion so
20 and that has been briefed.
21          So why don't we focus on some of the new
22 topics and whether or not you have particular -- if
23 you want to support requests for production
24 number 92 and why you think it's clear and why you
25 don't think it's overbroad and what -- other than

1  these pending motions, what is it that you either
2  disagree with in terms of our objections or agree
3  with? And are you willing to amend any of these
4  requests, that kind of thing. Again, it just -- it
5  just feels as if you're trying to put me on the spot
6  rather than setting forth your position on these
7  requests and supporting your requests, you know. I
8  just think, for some reason -- I don't know why
9  we're resisting or why you're resisting just going
10 through starting with request for production number
11 92 and telling us what you think is wrong and why
12 you think we should amend them.
13          MR. ASHLEY: I was just going to finish
14 up 96 since we were on it. We'll certainly turn to
15 92.
16          MS. PLESSMAN: I really think Extreme
17 should be part of that conversation, I don't think
18 it's worth spending a lot of time on that particular
19 request.
20          MR. ASHLEY: Okay. Would you like to
21 then go to 92, then?
22          MS. PLESSMAN: Sure.
23          MR. ASHLEY: Okay. So there's a lot of
24 objections. There's like two pages worth. But the
25 request says, quote: All documents that give

1  Broadcom, Inc. the right to use, copy, license,
2  sell, transfer, prepare derivative works of, or
3  distribute SNMP Research software.
4           And one of your objections is that the
5  terms transfer and distribute are vague, and we
6  don't understand why those words are vague.
7           MS. PLESSMAN: So how do you define it?
8  I think that's the easiest way.
9           MR. ASHLEY: We could agree that you
10 could look it up in the dictionary.
11          MS. PLESSMAN: Is that your proposal,
12 that you amend the request so that the definitions
13 are whatever they are in the Webster's Dictionary?
14          MR. ASHLEY: I do not define terms.
15 They're just words in the English language and
16 that's generally how you define them, by the
17 dictionary.
18          MS. PLESSMAN: Okay. Well, that's -- if
19 that's what you're proposing and it's just a
20 dictionary definition without any further
21 explanation of how those terms might have meaning in
22 the particular context here and what you're looking
23 for, I don't know that that -- I don't know that
24 that provides any additional clarity, but I suppose
25 we can look up what the definition is and see if

1  that helps. But I don't think that that really
2  explains what we're looking for in particular.
3           MR WOOD: This is John Wood again.
4  Alison, what would help us, we need to understand
5  why you think transfer is vague. What is it you
6  can't understand? What do you think it implies
7  that's causing you to not be able to figure out
8  which document to produce? Because your response
9  doesn't explain why transfer is vague. And so --
10 and we don't understand it because it seems like a
11 common word to us that's usually used in the English
12 language, much like any of the other words in here.
13          So you've got to explain to us why you
14 think it's vague or we can't -- we can't engage with
15 you to resolve this objection. Or you can just
16 remove it.
17          MS. PLESSMAN: Why don't you give me an
18 example of what you would think would constitute
19 Broadcom's -- let me see -- what kind of document
20 would give Broadcom the right to transfer software
21 but not use, copy, sell, or distribute. Like what
22 would that -- what kind of document are you talking
23 about that would encompass that?
24          MR WOOD: This is John Wood again.
25 First of all, that's not at all what we're saying,

1  that it would only be that one thing, but you,
2  obviously, could have a license agreement that gives
3  you only one right, but we're saying it's any of
4  those things, right? A document that gives you the
5  right to do any of those things, not just one.
6      MS. PLESSMAN: Right. But how are you
7  thinking of transfer? How is transfer distinct from
8  the other words?
9      MR WOOD: Are you saying that your
10  confusion is you think the word use and transfer are
11  the same?
12      MS. PLESSMAN: I'm just wondering – I'm
13  wondering what you mean by it. What kind of
14  document – the request is – picking up the other
15  words, it would be all documents that give Broadcom,
16  Inc. the right to transfer your software to
17  unidentified – transfer where? To who? I don't
18  know what you mean by that. What kind of document
19  are you contemplating that would give Broadcom the
20  right to transfer software? Is that – are you
21  looking for –
22      MR. WOOD: The license agreement.
23      MR. PLESSMAN: Are you proposing that
24  this request be read to say – identify all license
25  agreements concerning –

1      MR WOOD: No.
2      MS. PLESSMAN: – SNMP user software?
3      MR. WOOD: No. It's any document that
4  gives you those rights. You could – I mean, we may
5  call it the license agreement. You could call it
6  something else. We're not trying to name the
7  document. It's about the rights that you have in
8  the document.
9      MS. PLESSMAN: Okay. I mean, so the
10  license is already here. So that's one of the other
11  words. I guess when you say transfer, are you
12  handing software to somebody physically or
13  transferring the rights or –
14      MR WOOD: Our request specifically talks
15  about transferring the software.
16      MS. PLESSMAN: Right. And then the
17  soft- – software has an extremely broad definition
18  which we have discussed.
19      Is there something specifically that you
20  are contemplating, the right to – are you saying
21  the right for Broadcom to give software to somebody
22  else? There's no other person here. It doesn't say
23  to somebody or anything.
24      So is that what you're trying to get at,
25  the right? What gives Broadcom and all of its

1  affiliates the right to give the software to
2  somebody else? Is that what you mean by transfer?
3      MR WOOD: Yeah. Would that make it
4  clear, if we made it clear that we were talking
5  about transfer or distribute to someone else? We
6  certainly weren't talking about Broadcom
7  transferring it to themselves. So, I mean – John
8  Wood again.
9      MR. PLESSMAN: Sorry. That's – you
10  could transfer – you could transfer software from
11  my desk to another room. You could – it's not –
12  transfer in and of itself could mean a lot of
13  different things. You could – transfer could just
14  mean moving.
15      MR WOOD: Okay. Well, that – this is
16  John Wood. So would that make it clearer if we said
17  transfer to a third party? Would that clear up this
18  objection?
19      MS. PLESSMAN: And do you mean by
20  physically transfer, like a physical copy of the
21  software? Is that what you're saying?
22      MR WOOD: Yeah, you're actually
23  transferring the software. Right.
24      MS. PLESSMAN: Yes. So not the right to
25  but actually physically like there's a physical

1  object and you are physically transferring and
2  moving – giving that to somebody else? And that's
3  not – that's somehow exclusive of selling it to
4  them or licensing or distributing that to them? I
5  mean, that's one question.
6      How is distribute and transfer different
7  in your mind?
8      MR WOOD: Well, they can be – this is
9  John Wood again. They could be the same thing. You
10  could think of that as two different things.
11  Sometimes distribution is not the same as transfer.
12  But I don't think there's a big difference here.
13      MS. PLESSMAN: Well, I guess that – I
14  mean, that's part of the – they are both new. So
15  there should be some – there should be some.
16      THE REPORTER: I can't hear. There
17  should be some ...
18      MS. PLESSMAN: I was going to say since
19  those terms are used, I would think that they were
20  intended to have two different meanings. And I'm
21  not sure if we're talking about Broadcom physically
22  giving a copy of software to somebody, to a third
23  party, how is that different? What's the difference
24  in that – if that's the definition you're thinking
25  of, what's the difference between transfer and

1 distribute?
2 MR WOOD: Let's finish the first thing
3 first.
4 So first I asked you if we said transfer
5 to a third party would that clear up your issue with
6 transfer? And I don't think I ever got an answer to
7 that. So before we --
8 MS. PLESSMAN: Yea. I think that
9 that -- that adding on a specific, you know, as
10 opposed to this transferring it to a third party
11 does clarify it but without knowing the difference
12 between what you mean between transfer and
13 distribute, I think that's still -- that's an added
14 -- that adds further clarification but I still don't
15 know what you're getting at between transfer and
16 distribute and how they are different.
17 MR WOOD: Well, so if we removed one of
18 those words, would that resolve your issue?
19 MS. PLESSMAN: Well, potentially. Like
20 I'm saying, we're going to remove distribute?
21 MR WOOD: Yeah, or -- or transfer. I'm
22 just saying if your issue is there's two words
23 there, I'm just asking if we remove one would that
24 resolve your issue?
25 MS. PLESSMAN: Well, I mean, I guess are

1 you saying that they are the same thing? Like say
2 you remove transfer but you leave distribute, then I
3 don't know that you're attributing the same meaning
4 to distribute as what you've just explained you mean
5 by transfer or an actual physical transfer like
6 almost like a physical transfer between one person
7 and another.
8 MR WOOD: Okay. I'm just -- we're
9 willing to simplify the request if it'll remove the
10 ambiguity so that you can then answer it, and so I'm
11 offering to remove one of those words. I'm asking
12 you if that will resolve your issue? I'm trying to
13 figure out if there's anything that will resolve
14 your issue.
15 MS. PLESSMAN: I mean, just to be clear,
16 because I feel like there's confusion, there's
17 always the overarching issue of the pending motions
18 and the one-sided discovery.
19 But with respect to these additional
20 line item issues, I think it would -- explaining
21 what you mean by those words helps. But like, for
22 example, you took out transfer but left in
23 distribute but you haven't told me what you mean by
24 distribute, or what the difference between the two
25 is. If you said by distribute, I mean a physical or

1 one -- one individual at Broadcom physically handing
2 off the software to a third party and that's what I
3 mean by distribute, then I think that would clarify
4 the terms. But I guess I haven't heard -- I haven't
5 heard that. Is that how you -- what you mean by
6 distribute? Is that --
7 MR WOOD: We can propose something on
8 that. Unfortunately, we are already almost 20
9 minutes over the time I booked, and I have another
10 engagement I have to go to. But I think we were
11 starting to make progress, maybe. I feel like we
12 need to schedule about three hours maybe, instead of
13 I've been trying to schedule an hour, hour and a
14 half, and that's just not enough. Because we are
15 happy to talk through all of these with you, Alison,
16 and try and work them out.
17 MS. PLESSMAN: Yeah.
18 MR WOOD: Why don't we send an email and
19 we'll try in the next couple of days schedule a
20 longer block of time so we can get through because
21 it's taken us 30 minutes just to talk about transfer
22 and distribute.
23 MS. PLESSMAN: I agree. I think what
24 makes sense is for you to send a letter explaining
25 what you actually think is improper about our

1 objections so that we know what they are. And this
2 is exactly the sort of thing that we want to avoid
3 by filing a motion for a protective order, a motion
4 to stay, not spending three hours and we think that
5 the discovery is completely inappropriate in the
6 first place.
7 So that's -- it's -- we're not going to
8 spend hours upon hours when you could just as easily
9 have initially set forth your position and we can go
10 through this just more efficiently rather than --
11 because going into the call, we don't know whether
12 or not you agree and understand our objections or
13 have a problem with every single one of them or are
14 willing to make an adjustment here or there, and we
15 end up just wasting a lot of time because we're
16 coming in without -- I mean, we didn't even -- we
17 didn't even understand going into the call that you
18 weren't really going to reconsider your position
19 with respect to waiver. So I just -- I don't want
20 to waste three hours when we could -- we could
21 streamline some of this.
22 My understanding what was your actual --
23 what you actually have a problem with with respect
24 to our objections. And if it's every single
25 objection you disagree with, then that should be an

1 easy letter to write. But if there are specific
2 objections that you really want to understand or you
3 have case law saying that this particular objection
4 is inappropriate, I think it will make it a lot more
5 efficient to get that in advance than to sit here
6 with the court reporter and try to do this on the
7 fly when I have no idea what your -- what your
8 issues are.
9          MR WOOD: Well, we'll talk about that
10 and get back to you. This is John Wood. Okay.
11          MS. PLESSMAN: Okay. Thanks.
12          MR WOOD: Thank you for the call and
13 your time.
14          MS. PLESSMAN: Okay. Thank you.
15          MR WOOD: Thank you.
16          MR. ASHLEY: Thank you. Bye bye.
17          (WHEREUPON, the foregoing proceedings
18 were concluded at 7:23 p.m.)
19
20
21
22
23
24
25

1          REPORTER'S CERTIFICATE
2
STATE OF TENNESSEE
3
COUNTY OF DAVIDSON
4
5     I, Deborah H. Honeycutt, Licensed Court
6 Reporter, with offices in Hermitage, Tennessee,
7 hereby certify that I reported the foregoing
8 hearing of a telephonic conversation by machine
9 shorthand to the best of my skills and abilities,
10 and thereafter the same was reduced to typewritten
11 form by me. I am not related to any of the parties
12 named herein, nor their counsel, and have no
13 interest, financial or otherwise, in the outcome of
14 the proceedings.
15     I further certify that in order for this
16 document to be considered a true and correct copy,
it must bear my original signature, and that any
unauthorized reproduction in whole or in part
17 and/or transfer of this document is not authorized,
will not be considered authentic, and will be in
18 violation of Tennessee Code Annotated 39-14-104,
Theft of Services.
19
20
21
     _____
22 Deborah H. Honeycutt, LCR
     Elite-Brentwood Reporting Services
23 Associate Reporter
     Notary Public State of Tennessee
24
     My Notary Public Commission Expires: 07/09/24
25 LCR # 472 - Expires: June 30, 2022

**2**

**20** 47:8

**3**

**30** 47:21

**7**

**7:23** 49:18

**9**

**92** 8:11 15:22 37:24 38:11,15,21

**96** 17:19 18:2 32:12,13, 21 38:14

**A**

**actual** 13:25 46:5 48:22

**added** 45:13

**adding** 45:9

**addition** 19:21

**additional** 13:10 20:25 27:15 31:19 33:5 39:24 46:19

**addressed** 36:24 37:14

**addressing** 21:8

**adds** 45:14

**adjustment** 48:14

**advance** 6:18 27:7 49:5

**advantages** 27:7

**affiliates** 43:1

**aforementioned** 20:22

**agree** 4:1 13:17,19 18:4 27:5 29:11 33:23 36:25 38:2 39:9 47:23 48:12

**agreed** 32:18

**agreeing** 13:20 37:16

**agreement** 8:13,18,21 21:16 33:1 37:3,4 41:2, 22 42:5

**agreements** 41:25

**agrees** 18:24

**ahead** 4:19,20 9:14

**Alison** 4:11 6:2 17:24 21:20 26:2 31:22 32:21 40:4 47:15

**alleged** 35:10

**alleviate** 15:18

**already-filed** 6:7

**ambiguity** 46:10

**amend** 25:17 27:16 28:4 38:3,12 39:12

**antithetical** 6:9

**applicable** 8:10 31:1

**applies** 23:5

**apply** 20:1 23:14 24:23, 24

**appropriateness** 5:12

**argue** 12:11 13:12 37:2, 18

**argument** 12:9 13:19

**arguments** 28:10 36:10

**array** 8:9

**Ashley** 5:24 6:1 7:9 9:11,16 11:12 12:14 13:14 15:7 17:10 20:18 32:11 33:14 34:7,19 35:5,23 36:5,23 38:13, 20,23 39:9,14 49:16

**asks** 9:1

**aspect** 28:25

**assert** 13:19

**asserting** 35:25 37:7

**assume** 8:22

**assuming** 6:22 10:19, 22

**attending** 18:21

**attributing** 46:3

**avoid** 29:24 48:2

**B**

**back** 4:13 17:3,25 26:4 31:21 35:4 49:10

**backwards** 24:11

**based** 13:18 15:23 22:7,15 30:23 32:19

**bases** 33:6

**basically** 4:5 16:11

**basing** 33:24

**basis** 10:6 15:25 25:23 28:7 31:12 32:8 34:11 35:14,25 37:7

**begin** 24:2

**big** 8:6 14:18 44:12

**bit** 12:24 15:6 28:11 29:4 32:12

**block** 47:20

**booked** 47:9

**break** 4:14

**briefed** 6:25 7:13 11:16,23 12:15,19,22 16:15 17:2 30:3 35:17 36:9,10,16,19 37:9,11, 20

**briefing** 11:22 17:12

**broad** 42:17

**Broadcom** 32:15 33:16,21 34:24 35:24 36:24,25 37:6,7 39:1 40:20 41:15,19 42:21, 25 43:6 44:21 47:1

**Broadcom's** 33:17,21 37:2 40:19

**bunch** 19:19

**burden** 5:12 10:3 15:18 24:23

**burdensome** 15:16

**bye** 49:16

**C**

**call** 4:13,16 18:13 27:9 30:11 42:5 48:11,17 49:12

**care** 9:9

**case** 4:6 5:11 7:2 30:7 36:18 49:3

**causing** 40:7

**central** 26:18

**change** 4:1 5:20 12:8 15:5

**changed** 12:13,15

**changing** 4:25 5:15 13:8 36:17

**circuit** 8:4

**Civil** 24:19 26:11

**clarification** 45:14

**clarify** 15:14 27:25 45:11 47:3

**clarity** 25:1 39:24

**clear** 5:14 12:25 13:11, 14 16:13 17:1 24:4 25:2 28:4,18,19 30:5,13,19 37:24 43:4,17 45:5 46:15

**clearer** 43:16

**code** 32:17,24

**committing** 20:12

**common** 40:11

**compel** 11:2 29:8 30:1, 3 35:21

**completely** 29:23 36:22 48:5

**compromise** 15:17 30:16

**concede** 7:21

**concluded** 49:18

**confer** 5:3,10 6:3,4,6, 12,18 7:23,25 9:2 10:18 11:20 13:25 14:11 15:4 16:9,12,16,21 22:12 23:25 24:25 25:6 28:2 29:23 30:18

**conferred** 7:11 12:16

**conferring** 8:16 13:4 25:21

**confers** 11:1 29:5,14

**confidential** 18:15 19:2,3,23 32:16,19

**confidentiality** 18:23 20:9 21:17 33:10

**confidentially** 21:4

**conflict** 21:16

**confusing** 15:6,8,13 28:6 29:1

**confusion** 41:10 46:16

**connection** 11:25 12:20 31:25

**consideration** 13:1,2 14:22 26:9

**considered** 36:18

**consisting** 7:17

**constitute** 40:18

**constitutional** 21:24 24:14,18

**contemplating** 41:19 42:20

**context** 39:22

**continuing** 13:12

**control** 33:18,19,22 34:23,25

**conversation** 10:15 13:4 18:17 21:11 23:10 33:12 38:17

**copy** 39:1 40:21 43:20 44:22

**correct** 18:19

**couple** 47:19

**court** 4:11 10:16 12:22 23:1 27:10 28:15 29:7, 22 37:4 49:6

**cover** 8:9

**covered** 34:19 36:11

**covering** 37:13

**custody** 33:18,19,22 34:22,25

**cut** 4:10

---

**D**

**days** 47:19

**defend** 22:18

**defendant** 20:10

**defendants** 11:14,15 15:14,16

**defendants'** 7:16 11:19

**defense** 36:1 37:3,8

**defenses** 12:12

**define** 39:7,14,16

**definition** 28:3 39:20, 25 42:17 44:24

**definitions** 17:11,25 39:12

**derivative** 39:2

**describe** 29:10

**desk** 43:11

**dialogue** 15:9

**dictionary** 39:10,13, 17,20

**difference** 44:12,23,25 45:11 46:24

**disagree** 7:12 10:7 25:20,21 26:16 29:11

35:11 38:2 48:25

**disclosure** 32:19

**discovery** 4:2,24 5:21 6:16 10:25 12:12 13:13, 18 14:18 20:24 21:10 30:8 36:3 37:1,14 46:18 48:5

**discuss** 5:4 11:5,14 15:24 20:2 31:6

**discussed** 12:19 32:14 35:8 42:18

**discussion** 8:23

**discussions** 11:1 23:13

**dismiss** 12:7

**dispute** 15:10

**distinct** 41:7

**distribute** 39:3,5 40:21 43:5 44:6 45:1,13,16,20 46:2,4,23,24,25 47:3,6, 22

**distributing** 44:4

**distribution** 44:11

**document** 17:22 18:6 19:6,13 20:4,5,15 21:23 22:14 26:13 28:13 33:9, 25 34:13 35:25 37:6 40:8,19,22 41:4,14,18 42:3,7,8

**documents** 9:21 15:23 16:1 19:9,19 22:4,13 30:7,23 33:17 35:13 38:25 41:15

**dropped** 4:12,16,20

**due** 20:23 24:10

---

**E**

**earlier** 11:19

**easiest** 17:18 39:8

**easily** 23:19 48:8

**easy** 9:6 49:1

**efficient** 8:16 9:25 49:5

**efficiently** 48:10

**effort** 12:6

**email** 5:18 13:7 14:7 47:18

**encompass** 40:23

**end** 34:14 48:15

**engage** 10:24 13:13 40:14

**engagement** 47:10

**engaging** 12:12

**English** 39:15 40:11

**entitled** 12:9,10 14:17

**entry** 20:20

**equally** 20:1

**essentially** 22:19

**exchange** 8:14,19

**exclusive** 44:3

**exists** 18:11

**expect** 25:25 30:17 34:17

**expectation** 9:1

**expectations** 32:1

**expected** 28:1 30:17

**expecting** 4:4 5:13

**explain** 14:20 16:12,25 17:5 23:4,6 24:15,22 27:12,13 28:24 30:14, 25 31:11 36:12 40:9,13

**explained** 10:12 17:2 33:6 46:4

**explaining** 29:18 46:20 47:24

**explains** 40:2

**explanation** 39:21

**explanations** 14:23

**extensive** 10:25

**extensively** 11:23

**extent** 21:1 33:17

**Extreme** 18:13,24 19:4, 23,24 20:3,19,24 23:10, 13 24:7 33:8,11 34:16, 21 38:16

**extremely** 42:17

---

**F**

**face** 9:20

**fact** 7:6

**factor** 11:25

**fair** 11:11 22:25

**fairly** 33:2

**farther** 23:9

**federal** 24:19,22 26:11

**feel** 10:3 16:13,23 17:6 22:24 26:14 31:11 36:11 46:16 47:11

**feels** 28:11 29:7 38:5

**fewest** 17:20

**field** 8:12

**fight** 20:16

**figure** 17:8 21:20 22:3 23:20 40:7 46:13

**file** 11:2 28:14 30:2

**filed** 4:8,23,24 7:12 19:25 29:15,17

**filing** 48:3

**find** 25:21

**fine** 25:12,24 36:14

**finish** 4:20 38:13 45:2

**firm** 11:19

**flipping** 10:3

**fly** 17:17 49:7

**focal** 17:12

**focus** 23:19 33:13 37:21

**focuses** 19:23

**focusing** 17:14

**foregoing** 49:17

**forward** 12:4,6 14:16 30:7

**full** 9:3 29:17

**fully** 5:16 7:13 10:12 12:15,22 16:14 24:1 30:3 36:19

**fundamental** 37:18

---

**G**

**game** 28:13

**gave** 37:3

**general** 8:8 9:12,18,24 18:19 20:21

**generally** 39:16

**give** 7:1 38:25 40:17,20 41:15,19 42:21 43:1

**giving** 11:9 44:2,22

**goal** 30:8

**good** 6:1 23:18

**governing** 32:16

**ground** 35:18 36:11 37:13

**grounds** 21:4

**guess** 8:14 9:6,17,23 13:11 15:5,20 30:12 42:11 44:13 45:25 47:4

**guys** 5:24 7:10 10:14, 16,17 29:2 33:24

---

**H**

**half** 47:14

**handing** 42:12 47:1

**happened** 6:2

**happy** 6:8,21 7:1 12:1 28:9 31:6 47:15

**hear** 4:15 5:13,24 6:22 14:4 16:7,20 32:10

44:16

**heard** 29:23 47:4,5

**hearing** 27:19 29:19

**helpful** 14:25

**helps** 40:1 46:21

**highly** 19:2

**hope** 33:2

**hour** 47:13

**hours** 47:12 48:4,8,20

**huge** 10:23 20:6,16 33:3 34:17

**hundreds** 37:17

---

**I**

**idea** 5:19 14:13 49:7

**identified** 26:23

**identify** 27:1,10 28:8 41:24

**imagine** 33:4

**impediment** 12:3 14:18 34:17

**implicated** 22:8

**implicates** 18:18

**implies** 40:6

**important** 11:5 13:1,2

**improper** 36:14 47:25

**inappropriate** 27:2 28:25 48:5 49:4

**inaudible** 4:9

**include** 6:15 23:13

**includes** 10:25 33:10

**incorporate** 8:7

**incorporated** 15:20

**incorrectly** 14:24

**individual** 47:1

**inefficient** 16:4

**informal** 10:15

**information** 13:10 15:1 18:15 19:3,23 21:2 26:10 27:15 32:16,20

**informed** 37:4

**initial** 23:20

**initially** 48:9

**insist** 27:9

**instance** 8:7 15:12

**insufficient** 25:22

**intended** 44:20

**interpreted** 14:24

**involved** 21:11,14,16 33:8,9,11

**involves** 23:16

**involving** 23:10

**issue** 4:2 5:5,21,22 6:24 7:13 8:6,18 11:5, 13 12:2 13:6 16:8 18:10,12,14,23 21:5,10, 17 28:3 29:22 33:7 34:14 36:24 37:12,14, 16 45:5,18,22,24 46:12, 14,17

**issues** 6:14 7:18 8:2,13 15:10 20:9,13,16 21:13, 14,15 23:9,12,23 24:7 31:24 32:4 33:3,10 34:20 35:17 46:20 49:8

**item** 11:7,8 16:4 46:20

**items** 36:21

---

**J**

**John** 8:3,4 17:10,22 19:10 21:19 24:9 26:1 28:19 40:3,24 43:7,16 44:9 49:10

**joint** 20:9

**jump** 5:23

**jurisdiction** 35:11 36:1 37:3,8

**jurisdictional** 12:11

---

### K

**Katie** 26:6

**keeping** 26:12

**key** 21:13 23:9

**kind** 4:3,19 17:17 27:23 38:4 40:19,22 41:13,18

**kinds** 27:18 28:5

**knowing** 45:11

---

### L

**lack** 16:17 17:6 18:20 35:10

**laid** 14:6 16:13,20 22:20 24:17 25:6,11 36:21

**language** 39:15 40:12

**law** 4:6 5:11 7:2 28:7 29:1 31:12 36:18 49:3

**lay** 6:18

**laying** 5:10 26:17

**leave** 46:2

**left** 46:22

**legal** 10:21

**letter** 5:10 6:3,17,18 7:25 26:6 27:6 33:21 34:3,25 47:24 49:1

**letters** 8:15,19

**license** 39:1 41:2,22,24 42:5,10

**licensing** 44:4

**listen** 5:6 9:4 10:8,22 14:12 15:2 31:14

**long** 14:16 19:8

**longer** 47:20

**lot** 9:18,19 16:14 19:18 38:18,23 43:12 48:15 49:4

---

### M

**made** 22:1 32:25 43:4

**main** 18:1

**maintain** 14:17

**make** 5:14 13:14 17:15 18:24 19:18 27:17 28:4 29:3 32:11 36:14 43:3, 16 47:11 48:14 49:4

**makes** 11:6 24:4 27:24 33:12 47:24

**making** 26:24 28:18 30:9 34:20

**Matt** 5:23 6:1 9:15,16 20:18 27:5 32:14 33:20

**matter** 16:19 23:20

**meaning** 39:21 46:3

**meanings** 44:20

**means** 19:8

**meant** 14:25

**meet** 5:3,9 6:2,4,6,11, 18 7:23,24 9:2 10:18 11:1,20 13:25 14:10 15:3 16:9,11,16,21 22:11 23:25 24:25 25:5 28:2 29:5,14,23 30:18

**meeting** 8:16 13:4 25:20

**mentioned** 31:16

**merit** 16:17 17:6 30:15

**met** 7:11 12:15

**mind** 7:5 15:4 44:7

**minutes** 47:9,21

**misleading** 12:24

**Moby** 26:6

**motion** 4:23,24 6:7,15 7:10,21 10:4 11:3,16 12:7 13:22 18:8,21 19:6,8,13,16,20,22,25 23:12 28:14 29:8,16 30:1,2 35:6,7,16,19,20,

21 36:3,7 37:19 48:3

**motions** 5:1 7:7 9:3 11:2 14:14 20:8,24 21:18 23:22 32:1 34:15 38:1 46:17

**move** 12:4,6 14:15 17:13 30:6,8

**moving** 43:14 44:2

---

### N

**narrow** 8:11 15:10

**narrowing** 34:20

**nature** 29:5

**necessarily** 27:6

**negotiate** 22:19

**negotiating** 5:8

**non-privileged** 21:1

**number** 8:11 9:12 15:22 16:3 17:19 18:2 27:21 32:13 37:24 38:10

---

### O

**object** 18:8 19:4 24:13, 15 44:1

**objected** 10:12

**objecting** 21:3

**objection** 9:12,24 10:11 15:21 17:14 18:1, 20 19:8 20:25 21:7 22:1,2,10,12 24:12 26:3 27:23 29:18 31:18 32:9, 13,19,21 33:15,24 34:7 35:6,9,14 40:15 43:18 48:25 49:3

**objections** 4:6,22 5:2 6:14,20 7:3,6,17,19 8:5, 8,9,17,24 9:3,7,18,19 10:5,9 11:8 13:5 14:1,5 15:10,11 16:3,13,14,17, 25 17:6,20 19:16 20:22, 23 21:21 22:18,23 23:4 24:24 25:1,6,14,18

26:18 27:2,11,16,24 28:6,24,25 29:10,12,17 30:15 31:10 32:6,7 36:14 38:2,24 39:4 48:1,12,24 49:2

**objects** 33:16

**offer** 23:2 28:2 30:16

**offered** 5:4

**offering** 32:2 46:11

**one-off** 32:4

**one-sided** 4:2 10:25 14:17 37:14 46:18

**opening** 5:7

**opportunity** 34:16

**opposed** 45:10

**order** 4:23 6:8,16 7:11, 22 10:4 11:3,17 13:23 18:3,5,9,21,22 19:1,3,7, 11,14,17,20 20:8,21 21:7,14 23:11,22 29:16 32:15 34:15 35:7,20 36:8 48:3

**organized** 32:12

**original** 18:10

**outstanding** 33:3

**overarching** 46:17

**overbroad** 24:5 37:25

---

### P

**p.m.** 49:18

**pages** 38:24

**part** 6:23 13:3 16:21 23:12 31:24 36:2,4 37:11 38:17 44:14

**parties** 7:11,12 8:14 13:21 18:16 33:19 35:11 37:4

**party** 7:20 23:17 29:15 43:17 44:23 45:5,10 47:2

**party's** 9:2

pause 4:19

pending 6:15 7:7 14:14
18:8 19:20 20:8,20,24
21:9,18 32:1 33:9 35:7,
16,19,20 38:1 46:17

person 42:22 46:6

personal 35:10 36:1
37:2,7

phonetic 26:6,7

physical 43:20,25
46:5,6,25

physically 42:12
43:20,25 44:1,21 47:1

picking 41:14

piece 10:23

place 18:5 19:9,12,14
33:4 34:15 48:6

plaintiffs 11:14 36:25
37:1

play 34:8

Plessman 4:11,15,21
6:13 8:22 10:1 12:2,23
14:3 16:10 18:7 19:15
21:6 22:16 25:4 26:16
27:21 28:22 30:12 31:8,
23 32:22 34:1,9 35:1,16
36:2,7 37:10 38:16,22
39:7,11,18 40:17 41:6,
12,23 42:2,9,16 43:9,
19,24 44:13,18 45:8,19,
25 46:15 47:17,23
49:11,14

point 8:15,23 9:6 13:24
14:21 16:9 17:12 18:10
22:11

position 4:1 5:5,10,15,
21 6:19,23 7:21 10:19
11:19 12:1,8,13,14,21
13:8,12,22 14:6,16 15:5
16:20 18:6,22,25 20:3
24:1 25:18 26:18 32:3
33:20 35:22 36:17
37:19 38:6 48:9,18

positions 4:24 5:1 7:16
13:15 29:9

possession 33:18,19,
22 34:22,25

posture 20:24

potential 13:18

potentially 45:19

prepare 39:2

pretty 10:12 11:23 24:1
32:17 37:9

previous 29:23

previously 13:16

primary 18:20

privacy 21:25 24:14,19

privilege 15:21 21:24
22:7,9,15 23:5 24:19
26:4,5 30:21,23 31:1,
10,16 32:4

privileged 16:2

privileges 23:13

problem 20:6 27:4
29:25 36:13 48:13,23

problems 27:10

Procedure 24:20 26:12

proceedings 49:17

produce 16:1 17:22
18:6 19:2,5,9,13 40:8

produced 19:19 30:7

production 6:5 7:14,24
8:11 9:21 17:19 37:23
38:10

productive 17:5

progress 28:18 30:9
32:25 47:11

proper 4:7

proposal 14:8 39:11

propose 29:5 32:9 47:7

proposed 12:16

proposing 39:19 41:23

propounded 7:15
13:17

proprietary 32:20

propriety 20:23

protective 4:23 6:7,15
7:11,22 10:4 11:3,16
13:23 18:3,5,9,21,22
19:1,3,7,11,14,16,20
20:7,21 21:7,14 23:11,
22 29:16 32:15,24
34:15 35:7,20 36:8 48:3

provide 4:6 10:5 14:20
16:8 25:23 26:2 27:15
31:19

provided 7:16

providing 24:2 26:12

provision 32:17

purposes 8:23 25:5

put 4:19 9:9 38:5

putting 26:22

___

## Q

question 5:7 19:10
37:9 44:5

quote 38:25

___

## R

raise 11:21

raised 11:13,22 14:2

raises 24:6

reach 8:13,18,21 15:17
33:1

reached 13:24

reaction 17:5

read 41:24

real 22:12 25:1

reason 4:16 8:25 9:10
19:24 24:16 26:3 29:21
30:22 38:8

reasons 24:17

recall 34:6

reconsider 5:5 10:23
11:6 12:1 13:22 34:10
48:18

reconsideration
11:15

record 30:13

redaction 23:15

reference 8:8 15:21
21:9 35:6

refuse 19:5

rehashing 36:15

relate 26:5

remember 35:2

remove 31:18 32:9
40:16 45:20,23 46:2,9,
11

removed 34:12 45:17

repeat 19:10

reporter 4:11 5:25 9:15
10:16 23:1 27:10 28:15
29:8,22 44:16 49:6

request 5:13 6:4 7:2,14
8:10 10:13,21 11:25
12:25 14:11,23 15:13,
15,22 16:18 17:19 18:2,
14 19:22 20:19,25
21:12 22:2 23:2,18
24:3,6 27:15,16 28:4
33:14,16 38:10,19,25
39:12 41:14,24 42:14
46:9

requested 5:3 10:18
16:15,22 30:18

requesting 10:16

requests 4:7 7:23
14:20 15:9 20:23 22:22
33:13 37:17,23 38:4,7

require 13:9 24:11

required 27:6

requirement 8:1

Research 39:3

reserve 12:9

reserving 12:10

resisting 38:9

resolution 20:21 23:11

resolve 15:11 16:8 17:21 28:16 32:18 40:15 45:18,24 46:12, 13

resolved 12:7 19:7 20:5,13,16 23:22

resolves 21:5

resolving 23:12

respect 4:2 5:15 6:19 7:18 11:15 13:15 14:11 18:23 20:3 21:11,12 24:7,8,10 25:14 29:10, 12 32:3 33:7 35:9 46:19 48:19,23

respond 4:5,8 20:19 21:22 22:5 24:15 25:2, 12 26:8,9 31:3,6 37:17

responded 6:5

responding 10:14 11:1 36:25

response 9:2 10:20 11:10 14:5 17:8,9 32:2 40:8

responses 7:17 16:8 25:17 32:7

rest 31:24

revisit 35:18 36:10

RFP 32:21

RFPS 6:12 14:1

rights 42:4,7,13

road 20:6,13

roadblock 17:15

room 43:11

rule 24:22

rules 24:11,19 26:11 28:8 30:24 31:12

— S —

sales 7:15

save 4:24

schedule 47:12,13,19

seeking 21:1

sell 39:2 40:21

selling 44:3

send 6:17 7:24 27:6 47:18,24

sense 17:15 19:18 24:4 27:17,25 33:12 47:24

separate 6:14 7:8

separating 7:5

sequence 22:25

served 4:22 10:5 19:15, 16 25:7

set 4:25 5:16 6:12 11:9 14:1 16:16 24:1 29:8,9 36:19 48:9

setting 38:6

short 4:14 8:4

side 5:21

significant 32:25

similar 22:2

Simone 26:6 34:5 35:3

simple 37:9

simplify 46:9

simply 12:4 18:2 37:15

single 22:1 24:22 48:13,24

sir 5:25

sit 49:5

situation 27:8

SNMP 39:3 42:2

soft- 42:17

software 39:3 40:20 41:16,20 42:2,12,15,17,

21 43:1,10,21,23 44:22 47:2

sort 10:15 17:11 18:9 25:13 28:13 29:8 30:16 31:9 36:20 48:2

sought 33:17

sound 18:10 32:21,23

sounds 7:22 11:18 13:11,21 21:8,22 29:2

source 32:17

speak 8:12

speaking 10:10,17 28:16

specific 6:19 14:10 45:9 49:1

specifically 14:1 26:19 27:9 42:14,19

specificity 24:12,23 30:22 31:5,19

spend 48:8

spending 38:18 48:4

spinning 36:20

spot 26:22 38:5

standing 8:24 9:7

start 5:8 8:2 9:12,18,23 11:12 17:11,18 26:17 32:12

starting 38:10 47:11

state 24:12,23 31:2,4,5, 13

stated 5:1

states 30:21

stay 6:7,16 7:10,21 11:16 13:22 18:9,22 19:6,13 29:16 35:6,17, 19 36:3 48:4

streamline 8:17 48:21

subject 37:19

substantive 7:17

sufficient 25:9

suggest 17:16

support 5:12 10:20,21 11:8 14:20 22:22 23:2 24:3 25:24 26:2 27:12 37:23

supported 29:1

supporting 5:11 7:2 38:7

suppose 8:20 39:24

supposed 24:21 29:6, 15

— T —

table 14:15

taking 13:15 14:14

talk 7:1 20:11,17 22:5, 13 28:20 34:16,18,21 47:15,21 49:9

talked 32:24

talking 8:2 24:6 25:13 30:4 40:22 43:4,6 44:21

talks 42:14

tax 15:21 16:1 21:24 22:7,9,15 23:5 24:19 26:4,5 30:21,23 31:1, 10,16 32:4

teed 12:22

telling 38:11

term 28:3

terms 38:2 39:5,14,21 44:19 47:4

thing 14:10 20:19 21:20 25:13 31:9,14 38:4 41:1 44:9 45:2 46:1 48:2

things 6:24 7:5 12:6 13:3 20:4 22:25 23:14 24:5 27:18 28:5 29:24 30:5 31:9 36:15,21 41:4,5 43:13 44:10

thinking 41:7 44:24

thought 6:5 8:15 14:25 18:12

Case 3:20-cv-00451-CEA-DCP   Document 69-8   Filed 05/19/21   Page 21 of 22   PageID #: 2534

threshold 4:3 5:22 23:23

time 27:11 38:18 47:9, 20 48:15 49:13

today 5:8,18 6:12 19:25

told 46:23

topics 37:22

transfer 39:2,5 40:5,9, 20 41:7,10,16,17,20 42:11 43:2,5,10,12,13, 17,20 44:6,11,25 45:4, 6,12,15,21 46:2,5,6,22 47:21

transferring 42:13,15 43:7,23 44:1 45:10

true 28:22

turn 28:12 38:14

type 9:20 10:15

typically 19:17

**U**

understand 16:10 17:7 22:7,10,14,16,17 25:19 26:3,20,21,23 27:1,14 32:8 34:21 39:6 40:4,6, 10 48:12,17 49:2

understanding 48:22

understood 10:22

unduly 15:16

unfairness 37:18

unidentified 41:17

unprotected 21:2

unredacted 26:5

user 42:2

**V**

vague 39:5,6 40:5,9,14

valid 7:3 25:23

venue 12:11

version 26:5

view 6:8 13:3

violates 28:8

violation 30:24

**W**

wait 4:12 12:6

waive 14:13

waived 37:2

waiver 4:2 5:5 6:24 13:13,16,18 37:18 48:19

waiving 12:11

wanted 6:3,6 8:11 22:5 29:7

waste 48:20

wasting 48:15

ways 27:23

Webster's 39:13

wheels 36:20

wide 8:9

withhold 9:21

withholding 15:22 21:23 22:4,6,13,14 30:22 33:24 35:13,24 37:6

wondering 41:12,13

Wood 4:10,18 5:23 17:16,23 19:1,10 21:19 24:9 26:1 27:20 28:17, 19 29:21 30:20 31:21 40:3,24 41:9,22 42:1,3, 14 43:3,8,15,16,22 44:8,9 45:2,17,21 46:8 47:7,18 49:9,10,12,15

word 40:11 41:10

words 39:6,15 40:12 41:8,15 42:11 45:18,22 46:11,21

work 7:18 16:7 26:13 30:6 33:5 47:16

worked 34:5 35:3

working 26:15

works 27:23 39:2

worth 38:18,24

write 49:1

writing 22:21

written 9:19 37:1

wrong 9:4 38:11

**Y**

Yea 45:8

yesterday 32:18,25