# IN THE UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., | § § § | Case No. 3:20-cv-00451 |
| Plaintiffs, | § § § | |
| v. | § § | **Jury Demand** |
| BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; AND EXTREME NETWORKS, INC. | § § § § | |
| Defendants. | § | |

**PLAINTIFF SNMP RESEARCH, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL RESPONSES FROM EXTREME NETWORKS, INC. TO PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

Plaintiff SNMP Research, Inc. ("SNMP Research" or "Plaintiff"; and collectively with plaintiff SNMP Research International, Inc., "Plaintiffs") respectfully submits this Memorandum of Law in support of its Motion to Compel Responses from Defendant Extreme Networks, Inc. ("Extreme" or "Defendant") to SNMP Research's Second Set of Requests for Production of Documents ("Motion"). Extreme, along with defendants Broadcom Inc. and Brocade Communications Systems LLC, are collectively referred to herein as "Defendants." Concurrently with this Motion, Plaintiff has also moved to compel responses to Broadcom and Brocade's responses to Plaintiff's second set of requests for production propounded on them.

## I. INTRODUCTION

More than half a year has passed since this action was filed, and Extreme has yet to produce a single document or provide a single substantive response to any discovery request. Like the other two Defendants, Extreme has served across-the-board objections to every item of discovery that Plaintiff has ever served. This Motion follows the motion to compel responses to SNMP Research's first set of discovery requests (*see* Dkt. 60) (herein, "First Motion to Compel"). Specifically, this Motion addresses Extreme's responses to SNMP Research's second set of requests for production of documents (herein, "Second RFPs"), wherein Extreme continues much of the same discovery misconduct that it perpetrated with respect to Plaintiff's first set of discovery requests.

The Second RFPs consist of three requests. As with all of its prior discovery responses, Extreme: (i) responded solely with objections; (ii) failed to disclose, in clear violation of Federal Rule of Civil Procedure 34(b)(2)(C), whether documents were being withheld on the basis of any objection, and if so, which objection(s); (iii) failed to substantively answer any portion of any request, even in part; and (iv) took the position that Extreme will not provide any responses other than objections until this Court has ruled on Defendants' pending Motion to Stay Discovery or for a Protective Order (Dkt.

- 1 -

10946663

1967895v1

Case 3:20-cv-00451-CEA-DCP   Document 70-1   Filed 05/19/21   Page 2 of 11   PageID #: 2553

47; herein "Motion to Stay Discovery"), which in essence results in Extreme unilaterally granting itself a stay, rather than permitting this Court to determine the issue on its merits. These failings are improper and are grounds not only for compelling proper responses but also for finding a waiver of objections.

The Court should therefore order Extreme to provide full, complete and substantive responses to the Second RFPs, and find that all of Extreme's objections have been waived.

## II. RELEVANT BACKGROUND

### A. Plaintiff's First Set Of Discovery Requests And Its First Motion To Compel

Rather than reciting procedural and factual background that is repetitive of other filings before this Court, Plaintiff will limit this filing to background specific to Extreme that is relevant to this Motion. Therefore, Plaintiff incorporates herein by reference the factual and procedural discussion in Plaintiffs' opposition (Dkt. 54) to Defendants' currently-pending Motion to Stay Discovery, in which Plaintiffs describe the Complaint, Defendants' motion to dismiss or to transfer this action (upon which Defendants base their Motion to Stay Discovery), and the parties' meet and confer efforts over Defendants' Motion to Stay Discovery. *See* Dkt. 54 at 3-12. Plaintiff's First Motion to Compel also contains a detailed description of the history of Plaintiffs' efforts to conduct discovery in this matter. Plaintiff incorporates by reference its factual and procedural discussion regarding Plaintiff's first sets of discovery requests contained therein. *See* Dkt. 60-1 at 3-6.

### B. SNMP Research's Second RFPs And The Instant Motion

On January 29, 2021, SNMP Research served its Second RFPs on Extreme. *See* Declaration of John Wood ("Wood Decl.") ¶¶ 2-3 and Ex. A. The Second RFPs go to an essential issue in this case: whether Extreme had authorization to perform the disputed acts concerning, *inter alia*, the copying and transfer of SNMP Research's software, whether directly or through third-party contractors. *See id.* and Ex. A at p. 7 (Request Nos. 68 and 69). The Second RFPs also requested an unredacted copy of a letter

- 2 -

sent by Broadcom to Extreme which Broadcom thereafter forwarded to Plaintiffs in redacted form. *Id.* and Ex. A at p. 7 (Request No. 70).

On March 1, 2021, Extreme served its Objections to the Second RFP's, once again making no effort to respond substantively to Plaintiff's discovery. *See id.* ¶¶ 4-6 and Ex. B. Extreme explicitly noted it was providing no substantive response, stating "if the parties are able to reach agreement concerning the proper timing and scope of discovery requests, Extreme shall amend and/or supplement its objections to the Requests with substantive responses . . . ." *See id.* ¶ 5 and Ex. B at p. 3, ¶ 3. Thus, Extreme admits it did not provide a single substantive response to the Second RFPs and did not produce a single document. *See id.* ¶ 6. Moreover, Extreme again raised the vast majority of the General Objections it raised in response to Plaintiff's first set of written discovery[1], and specifically incorporated these General Objections, by reference, "into each and every specific response." *Id.* and Ex. B. p. 5, ¶ 16; *id.* and Ex. B. pp. 6-7.

Plaintiffs asked Extreme to meet and confer over the Second RFPs. *Id.* ¶ 9. During the parties' meet and confer call, Extreme made it clear that it would produce no documents until the Court rules on Defendants' Motion to Stay Discovery. Despite the parties' obvious disagreement over the impact of the pending Motion to Stay Discovery, Plaintiffs still attempted to resolve Extreme's other objections to the Second RFP's. Beyond the General Objections, incorporated by reference into Extreme's "responses" to the Second RFPs, Extreme responded to each of the individual requests within the Second RFP's with "Specific Objections" as follows:

---

[1] Extreme's General Objections number 16 in total and span four pages of its response to the Second RFPs. *See* Wood Decl., Ex. B at pp. 2-6.

## SPECIFIC OBJECTIONS

**DOCUMENT REQUEST NO. 68:**

All Documents that give Extreme the right to use, copy, license, sell, transfer, prepare derivative works of, or distribute SNMP Research Software.

**RESPONSE TO DOCUMENT REQUEST NO. 68:**

In addition to the General Objections, including without limitation the objection to all Requests due to the pending discovery posture and motions and the problematic definitions of "SNMP Research Software" and "Extreme," Extreme objects to this Request as overly broad, ambiguous, compound, and seeking a legal conclusion with respect to documents that "give the right" to Extreme to exploit certain SNMP software allegedly at issue in this litigation. This Request further appears (improperly) to be more akin to a contention interrogatory concerning an ultimate merits issue in the case masquerading as a request for the production of documents.

**DOCUMENT REQUEST NO. 69:**

All Documents that give consultants or contractors of Extreme the right to use, copy, license, sell, transfer, prepare derivative works of, or distribute SNMP Research Software.

**RESPONSE TO DOCUMENT REQUEST NO. 69:**

In addition to the General Objections, including without limitation the objection to all Requests due to the pending discovery posture and motions, and the problematic definitions of "SNMP Research Software" and "Extreme," Extreme objects to this Request as overly broad, ambiguous, compound, and seeking a legal conclusion with respect to documents that "give the right" to "consultants or contractors of Extreme" to exploit software allegedly at issue in this litigation. Extreme further objects to this Request insofar as Extreme does not

- 4 -

> understand what "consultants or contractors" Plaintiffs believe they are referring to, or what relevance any such individuals would have to the matters set forth in the Complaint. If Plaintiffs have any specific allegations concerning particular "consultants or contractors" that they believe are at issue, Plaintiffs can specify them, and Extreme can determine whether such allegations are fairly subsumed within Plaintiffs' Complaint in this action.
>
> **DOCUMENT REQUEST NO. 70:**
>
> An unredacted version of the letter from Simone Yew to Ms. Katy Motley [sic] of Extreme Networks, Inc. dated August 1, 2019.
>
> **RESPONSE TO DOCUMENT REQUEST NO. 70:**
>
> Pending entry of an appropriate protective order, and resolution of the General Objections (in particular the aforementioned objection to the propriety of all Requests due to the pending discovery posture and motions), Extreme would have no additional objection to this Request to the extent that it is seeking non-privileged or otherwise unprotected information.

*See* Wood Decl. and Ex. B at pp. 6-7.

### III.  ARGUMENT

As briefed extensively in prior filings, settled law demonstrates that Defendants' Motion to Stay Discovery does not excuse them from meeting their obligation to provide proper, timely, and substantive responses to written discovery. Moreover, the Second RFPs request material that is relevant and discoverable. The pains to which Extreme goes to avoid reaching compromise with regard to its "specific objections" to the Second RFP's are illustrative of Defendants' entire approach to this litigation—distract, dodge, defer—and illustrate why no discovery progress has been made in this matter despite the fact that it has been pending for over half a year. This Court should strike Extreme's objections and order Extreme to provide full and complete responses forthwith.

- 5 -

**A.      Extreme's Motion To Stay Does Not Relieve It From The Duty To Respond To Discovery**

Extreme's joinder with its co-defendants Broadcom and Brocade in the Motion to Stay Discovery does not grant Extreme the right to refuse to respond substantively to discovery.  *See* First Motion to Compel (Dkt. 60-1) at pp. 6-8; Plaintiff's Motion to Compel Responses to Plaintiff's Second Document Requests from Broadcom and Brocade (Dkt. 69-1) (herein "Second Motion to Compel"), filed contemporaneously herewith, at p. 5 (citing extensive authority prohibiting Defendants' tactic). Indeed, Defendants' refusal to provide substantive responses to discovery based on the mere fact that they filed a Motion to Stay Discovery means Defendants have essentially granted themselves a stay and ignored their legal obligations based on their own *ipse dixit*.  Defendants have done so even though Plaintiffs have specifically agreed not to assert that, by responding to Plaintiffs' discovery, Defendants have waived the jurisdictional and venue defenses asserted in their Motions to Dismiss (Dkts. 39 and 42).  *See* Dkt. 54-1 ¶ 6.  Extreme's refusal to substantively engage in discovery is thus plainly improper.  *See* Second Motion to Compel (Dkt. 69-1 at p. 5).

**B.      Extreme's General Objections Are Improper And Should Be Stricken**

In addition, Extreme's service of across-the-board general objections violates settled rules. Courts within the Sixth Circuit have repeatedly held that submitting "general objections" is an improper tactic and should be treated as a waiver of objections.  *See* Plaintiff's Second Motion to Compel at p. 7.

Even if some portion of any of the three requests which comprise the Second RFPs were in some way objectionable (they are not), Extreme had an obligation to at least provide a partial response or produce some documents to the extent the request was not objectionable.  *See* Fed. R. Civ. P. 34(b)(2)(c) ("An objection <u>must</u> state whether any responsive materials are being withheld on the basis of that objection.  An objection to part of a request <u>must</u> specify the part and permit inspection of the

rest.") (emphasis added). Extreme's failure to do so is just another example of its continued complete disregard for its discovery obligations under the Federal Rules of Civil Procedure.

## C. Extreme's Specific Objections Must Be Stricken And Responses Compelled

### 1. Request Nos. 68 And 69

As noted above, Request Nos. 68 and 69 of the Second RFPs seek highly relevant information. Other than Extreme's general objection regarding the Motion to Stay and the objection regarding the definition of "SNMP Research Software," the parties were able to resolve Extreme's other objections by agreeing to the following revised language:[2]

> RFP 68: "All Documents on which Extreme intends to rely to support claims or defenses, if any, that it has acquired from SNMP Research or another party rights to use, copy, license, sell, transfer, prepare derivative works of, or distribute [SNMP Research] software."

> RFP 69: "All Documents on which Extreme intends to rely to support claims or defenses, if any, that a third party with which Extreme has contracted or partnered to develop or distribute Extreme products incorporating [SNMP Research Software] has independently acquired rights from SNMP Research or another party to utilize or exploit such [SNMP Research Software] in connection with the Extreme products."

*See* Wood Decl. Ex. D at p. 1.

The parties also discussed Extreme's purported concerns with the definition of "SNMP Research Software."[3] Extreme asserted that the phrase "SNMP Research Software," as defined in the Second RFPs, is broader than what is alleged in Plaintiffs' Complaint. Plaintiffs explained that the Complaint encompasses all SNMP Research Software. Extreme next asserted that it would need to see

---

[2] Plaintiffs also agreed to include a standard definition of "affiliate" to resolve Extreme's concern about the definition of "affiliate."

[3] Extreme did not articulate grounds for its specific objection to "SNMP Research Software" in Request No. 68, other than simply noting that the definition of "SNMP Research Software" was "problematic." This is insufficient to constitute a properly stated objection under the Rules, but in an effort to cooperate in discovery, Plaintiffs attempted to work through this issue during the parties' meet and confer.

- 7 -

10946663

1967895v1

Case 3:20-cv-00451-CEA-DCP Document 70-1 Filed 05/19/21 Page 8 of 11 PageID #: 2559

SNMP Research Software in order to determine exactly what "SNMP Research Software" actually is. Plaintiff reminded Extreme that it possesses SNMP Research's Software and that it knows what SNMP Research Software is and exactly what SNMP Research Software it holds. This is because, just prior to this action, Extreme was able to identify the exact SNMP Research Software it was using and even provide the SNMP Research Software version number and copyright notice to confirm it. *See* Wood Decl. ¶¶ 11-13. Extreme also contended that the definition of SNMP Research Software is too broad because it envelopes software covered by a separate license agreement between the parties. But Extreme has already represented that it is not using the SNMP Research Software from that separate license and that the only SNMP Research Software it has in use is the SNMP Research Software Extreme received from Brocade. *See id.* ¶ 13 and Ex. G. In short, Extreme's objections to the definition of "SNMP Research Software" have no merit based on Extreme's past representations.

### 2. Request No. 70

Request No. 70 of the Second RFPs seeks a copy of a letter between Broadcom and Extreme that is relevant to the core issue in this case. Among other things, Broadcom's letter expressly states that: "At SNMPRI's request, we are writing to confirm that Brocade did not transfer, and Extreme did not receive, a license or sublicense under the Agreement to use SNMPRI software in its products." *See id.* ¶¶ 7-8 and Ex. C. A redacted copy of that letter was previously provided to Plaintiffs, and Request No. 70 merely seeks an unredacted copy of the letter.

Extreme's primary objection to producing that letter is the fact that no protective order is in place in this matter. But even though Plaintiffs and Extreme have finally reached agreement on a protective order (albeit one that does not address source code, because Broadcom and Brocade have refused to negotiate the terms of source code exchange), Extreme has stated it defers to Broadcom and Brocade with regard to the protective order. And even after reaching full agreement on the protective

order (again, without source code provisions), Broadcom and Brocade announced that they will only agree to submit the protective order if it includes a provision denying this Court the jurisdiction to enforce it, which is illogical at best. *See* Plaintiff's Second Motion to Compel at p. 4.

Extreme also indicated that it might have privilege objections to Request No. 70. *See* Wood Decl. and Ex. B at p. 7. However, Extreme's counsel admitted during the parties' meet and confer that counsel had not even reviewed the letter in question to determine if any privilege might apply. *Id.* ¶ 9. Surely a privilege objection cannot be raised in good faith absent (a) counsel's review of the communication in question and (b) determination of a good faith basis to raise a privilege objection (and specification of the grounds for the privilege(s) asserted). *See* Fed. R. Civ. P. 26(b)(5)(A) (requiring a party withholding information on privilege grounds to "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed— and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."). Preparing for a meet and confer convened, in part, to address that objection to the production of the letter requested in Request No. 70 would therefore require review of the letter in order to discuss whether any privilege objections to producing the document actually do exist and, if so, their basis.

In short, Extreme's purported reasons for failing to produce the unredacted letter between Katy Motiey (Extreme) and Simone Yew (Broadcom) do not withstand scrutiny, and Extreme should be ordered to produce this document as well.

## IV. CONCLUSION

For the reasons set forth above, and as shall be raised in oral argument, if any, this Court should compel Extreme to substantively respond to Plaintiff's Second RFPs immediately and by a date certain. Plaintiff respectfully requests this Court to also hold that all of Extreme's objections to the Second

- 9 -

10946663
1967895v1

RFPs, including its General Objections, are waived and to award Plaintiff any further relief to which this Court deems Plaintiff entitled under the facts and applicable law.

Respectfully submitted,

Dated: May 19, 2021       By: /s/ *Cheryl G. Rice*
John L. Wood, Esq. (BPR #027642)
Cheryl G. Rice, Esq. (BPR #021145)
Rameen J. Nasrollahi, Esq. (BPR #033458)
EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
900 S. Gay Street, Suite 1400
P.O. Box 2047
Knoxville, TN 37902
(865) 546-0500 (phone)
(865) 525-5293 (facsimile)
jwood@emlaw.com
crice@emlaw.com
rnasrollahi@emlaw.com

Dated: May 19, 2021       By: /s/ *A. Matthew Ashley*
A. Matthew Ashley (CA Bar. No. 198235)
Morgan Chu (CA Bar. No. 70446)
David Nimmer (CA Bar. No. 97170)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
(310) 277-1010 (phone)
(310) 203-7199 (facsimile)
mchu@irell.com
dnimmer@irell.com
mashley@irell.com

*Attorneys for Plaintiffs*
*SNMP Research International, Inc.*
*SNMP Research, Inc.*