# EXHIBIT D

# John L. Wood

| | |
|---|---|
| **From:** | Feirman, Jordan <Jordan.Feirman@skadden.com> |
| **Sent:** | Friday, April 30, 2021 7:02 PM |
| **To:** | John L. Wood |
| **Cc:** | 'Ashley, Matt'; Patrick, Andrew K; Neukom, John (Jay); Cheryl G. Rice; 'Weber, Olivia'; Demers, Leslie A |
| **Subject:** | RE: Meet and Confer [IWOV-ACTIVE.FID215893] |
| **Attachments:** | mg_info.txt |

Hi John,

As an initial matter, I'd like to introduce my colleague Leslie Demers, who will be taking over as point on the day-to-day communications in connection with this litigation. Please direct further correspondence to her/include her on all emails.

With respect to remaining questions concerning RFPs 68 and 69, I believe that our prior discussions and correspondence have advanced the ball substantially. As you know, we have endeavored to work with you in good faith to narrow potential disputes despite our stance that Extreme is not obligated at this time to do so. At this point, we believe that we understand each other's respective positions. Accordingly, I lay out below where Extreme currently stands on those requests, including some modifications that I believe address concerns that you have raised. For any open issues or concerns, we look forward to picking these discussions back up (if appropriate) following the Court's disposition of the pending motions. Otherwise, Extreme's objections stand, and the below should not be interpreted as agreement that discovery should take place or as a commitment to search for or collect documents at this time.

<u>RFP 68</u>: The parties still disagree about the scope of the defined term "SNMP Research Software," although based on the course of dealing between the parties and the allegations in the Complaint, Extreme has an understanding concerning portions of code/software to which SNMP is laying claim. In addition to sharing the concerns raised by Broadcom and Brocade, we continue to believe that the proposed definition and requests incorporating the defined term are overbroad and target irrelevant information, including because the term purports to concern software outside the allegations of infringement in the Complaint—*e.g.*, the definition encompasses *all* SNMP software in Extreme's "possession," but it is my understanding that SNMP and Extreme remain parties to a separate license for software not tied to the product lines acquired from Brocade or otherwise bearing on the issues in this case.

Putting the software definition aside, your construction of the proposed RFP would work as amended: "All Documents on which Extreme intends to rely to support claims or defenses, if any, that it has acquired from SNMP Research or another party rights to use, copy, license, sell, transfer, prepare derivative works of, or distribute" the software.

<u>RFP 69</u>: Once again subject to the resolution of the definition of "SNMP Research Software" (including objections raised by Broadcom and Brocade) we propose as follows: "All Documents on which Extreme intends to rely to support claims or defenses, if any, that a third party with which Extreme has contracted or partnered to develop or distribute Extreme products incorporating [SNMP Research Software] has independently acquired rights from SNMP Research or another party to utilize or exploit such [SNMP Research Software] in connection with the Extreme products." This drafts around the "consultants or contractors" phrase and gets directly at what I understand to be the purpose of the request.

Best,

**Jordan Feirman**
**Skadden, Arps, Slate, Meagher & Flom LLP**
One Manhattan West | New York | 10001
T: 212.735.3067 | F: 917.777.3067
jordan.feirman@skadden.com

**From:** Feirman, Jordan (NYC)
**Sent:** Monday, April 26, 2021 3:00 PM
**To:** 'John L. Wood' <JWood@emlaw.com>
**Cc:** Ashley, Matt <MAshley@irell.com>; Patrick, Andrew K (NYC) <Andrew.Patrick@skadden.com>; Neukom, John (Jay) (PAL) <John.Neukom@skadden.com>; Cheryl G. Rice <CRice@emlaw.com>; Weber, Olivia <oweber@irell.com>
**Subject:** RE: [Ext] RE: Meet and Confer [IWOV-ACTIVE.FID215893]

Hi John,

Thank you for the clarifications. We are continuing to run down these questions (including the continuing dispute concerning the definition of "SNMP Research Software," which I believe you were going to give more thought to as well).

**Jordan Feirman**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**One Manhattan West | New York | 10001**
**T: 212.735.3067 | F: 917.777.3067**
**jordan.feirman@skadden.com**

---

**From:** John L. Wood <JWood@emlaw.com>
**Sent:** Saturday, April 24, 2021 10:39 AM
**To:** Feirman, Jordan (NYC) <Jordan.Feirman@skadden.com>
**Cc:** Ashley, Matt <MAshley@irell.com>; Patrick, Andrew K (NYC) <Andrew.Patrick@skadden.com>; Neukom, John (Jay) (PAL) <John.Neukom@skadden.com>; Cheryl G. Rice <CRice@emlaw.com>; Weber, Olivia <oweber@irell.com>
**Subject:** [Ext] RE: Meet and Confer [IWOV-ACTIVE.FID215893]

Jordan,

I am following up on my email below.

**John L. Wood**
Egerton, McAfee, Armistead & Davis, P.C.
900 S. Gay Street, Suite 1400 Knoxville, TN 37902
Office: (865) 292-2503 | Fax: (865) 525-5293
Website | Map | Bio | Vcard Download | jlw@emlaw.com

**CONFIDENTIALITY NOTICE**: This e-mail transmission and any document, files or previous e-mail messages attached to it, are CONFIDENTIAL and are protected by the attorney-client privilege and/or work product doctrine. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any review, disclosure, copying, dissemination, distribution or use of any of the information contained in, or attached to this e-mail transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please notify us immediately by forwarding this message to the original sender or by telephone at (865)546-0500 and then delete this message and its attachments from your computer system. Thank you.

---

**From:** John L. Wood
**Sent:** Saturday, April 17, 2021 9:32 AM
**To:** 'Feirman, Jordan' <Jordan.Feirman@skadden.com>
**Cc:** Ashley, Matt <MAshley@irell.com>; Patrick, Andrew K <Andrew.Patrick@skadden.com>; Neukom, John (Jay) <John.Neukom@skadden.com>; Cheryl G. Rice <CRice@emlaw.com>
**Subject:** RE: Meet and Confer [IWOV-ACTIVE.FID215893]

Jordan,

Thank you for the response. Our intent is to reach a resolution on all of these issues. To that end we are somewhat disappointed that your email mischaracterizes our discussion in order to avoid reaching a consensus on the outstanding issues.

Regarding the "right to" language in RFP 68 we proposed exactly what you suggested on our call. We are not sure why the language still remains problematic. Your understanding of the definition of affiliate is correct. The only issue remaining with RFP 68 should be the definition of SNMP Research Software. Please confirm that this is the only issue with RFP 68. We do not agree with your characterizations regarding the discussion of SNMP Research Software.

RFP 69: I do not think there is a disagreement here. Your understanding appears correct as long as your use of the word develop was just an example. Our request is related to any rights a consultant or contractor could have to use, copy, license, sell, transfer, prepare derivative works of, or distribute SNMP Research Software. We are fine to add the word develop but we are not ok with limiting the request to develop.

We were not aware that Extreme did not understand the definition of consultant or contractor. We intend the common definition of those words and did not intend to limit the definition to a partner who develops. A consultant or contractor is a person that is not an employee of Extreme but is acting for Extreme to use, copy, license, sell, transfer, prepare derivate works of, or distribute SNMP Research Software.

Let us know when you can give us an answer on the "right to" language in RFP 68 and 69 and confirm that there is no longer an objection regarding consultants or contractors in RFP 69.

Thanks,

**John L. Wood**
Egerton, McAfee, Armistead & Davis, P.C.
900 S. Gay Street, Suite 1400 Knoxville, TN 37902
Office**:** (865) 292-2503 | Fax**:** (865) 525-5293
Website | Map | Bio | Vcard Download| jlw@emlaw.com



**CONFIDENTIALITY NOTICE**: This e-mail transmission and any document, files or previous e-mail messages attached to it, are CONFIDENTIAL and are protected by the attorney-client privilege and/or work product doctrine. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any review, disclosure, copying, dissemination, distribution or use of any of the information contained in, or attached to this e-mail transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please notify us immediately by forwarding this message to the original sender or by telephone at (865)546-0500 and then delete this message and its attachments from your computer system.  Thank you.

**From:** Feirman, Jordan <Jordan.Feirman@skadden.com>
**Sent:** Thursday, April 15, 2021 5:21 PM
**To:** John L. Wood <JWood@emlaw.com>
**Cc:** Ashley, Matt <MAshley@irell.com>; Patrick, Andrew K <Andrew.Patrick@skadden.com>; Neukom, John (Jay) <John.Neukom@skadden.com>
**Subject:** RE: Meet and Confer [IWOV-ACTIVE.FID215893]

Hi John,

Good timing.  I was preparing to send you the response and am just pasting it below instead.  Note:  as a general practice, please include Jay and Andrew on our communications in connection with this litigation (including communications among plaintiffs and all defendants).

3

John – Thank you for your email. I found our meet and confer largely productive and clarifying with respect to several of the parties' respective positions, but was somewhat disappointed to see that your email mischaracterized aspects of our discussions in ways that seemed self-serving. I do not believe it an efficient use of our time or our clients' money to engage in a lengthy back-and-forth where we disagree about every detail regarding our positions and statements. So I will try instead to respond to the most salient points. That I do not specifically respond to a particular point should <u>not</u> be taken as agreement with your description thereof.

**Whether documents will be produced**: For proper context: As I did on our meet and confer, I refer you to Extreme's various discovery documents and court filings laying out our positions with respect to the propriety and timing of discovery. Extreme has sought to cooperate with SNMP in good faith to move the ball forward on several discovery issues, only seeking to ensure that it is not creating material risk of prejudice/waiver of its defenses. I understood you to generally agree with that, recognizing of course that you fundamentally disagree with Extreme's positions concerning the timing of any discovery.

<u>RFP 70</u>: When responding to your specific questions on the call, I explained that Extreme did not have relevance or burden objections to RFP 70, and thus if discovery is ordered to go forward Extreme would anticipate producing the document save for any privilege or similar concerns. I have concerns that your statement that I "could not specifically identify any privilege issues on the call" is misleading and ignores important context. As explained, Extreme has not conducted a specific privilege analysis because it would be putting the cart before the horse given the parties' current positions regarding discovery (and if any document contains privileged information, that would show up subsequently on a privilege log). Further, Extreme would need to understand more from co-defendants to ensure that we are not waiving any potential privileges on their part that, as you suggested, they may believe exists.

<u>RFP 68</u>:
- We will consider your proposed modification to the structure of "All Documents on which Extreme intends to rely for the right to use, copy, license, sell, transfer, prepare derivative works of, or distribute …" For the reasons we discussed, the "right to" language remains problematic, but we can see if there is something workable here.

- Thank you for the proposed definition for "Affiliate." We will take that under advisement as well. Am I right to assume that an "affiliate" within the definition of "Extreme" that you propose "means an entity that controls, is controlled by or is under common control with **Extreme Networks, Inc.**, where "control" refers to ownership or the right to direct more than 50% of the outstanding shares or securities representing the right to vote for the election of directors or other managing authority of another entity"?

- Subject to resolving our other substantive disagreements, I agree that the "use, copy, license…" language should not be problematic.

- I do not believe your summary of our lengthy discussion of the definition of "SNMP Research Software" to be accurate or complete. Among other topics that we addressed, but not set forth in your email, are: (a) the various discovery requests previously served by SNMP that demonstrate the problematic nature of the definition; (b) the possible existence of other agreements related to SNMP software not connected to the alleged infringement or products in this case; (c) my reasonable suggestion that the definition of "SNMP Research Software" be tied in some way to software allegedly used in connection with the data center business/that business's products at the center of the allegations in the pleading; and (d) the notion that SNMP Research knows what it licensed to Brocade, and therefore it would know what "subset" of its software it believes may have been unlawfully "disclosed" to Extreme (as alleged in the Complaint). I nevertheless believe that we are not actually as far apart regarding the substance of the request as it may seem from the parties' caution in agreeing to specific discovery language that either of us believes to be overly broad or too narrow. Extreme will continue to consider your positions, but we cannot divorce the definition of the term from the actual (extremely broad and often irrelevant) requests you have made containing that term. We will revert with any additional thoughts or suggestions on the issue, and respectfully suggest SNMP do the same.

**RFP 69**:
- Your summary does not include a critical part of what I had understood to be your clarification of the request: You explained that the request was intended to seek out documents concerning whether "consultants or contractors" claimed to have *independent* rights to utilize SNMP software—*i.e.*, rights that those consultants or contractors received directly from SNMP or a third party other than Extreme. I had understood you to describe your concern as being that Extreme may attempt to assert a defense of some kind that a party with which Extreme has partnered to develop products containing "SNMP Research Software" has licensed the software rights to that software from elsewhere, and in that circumstance SNMP would need to understand what the source of such rights are. Please clarify.

- I am not aware that "consultants or contractors" was sufficiently defined or clarified (you note our objection but do not provide such clarification in your email). But I had generally understood from our call that it would mean parties with whom Extreme has partnered to develop products that contain the software at issue. Please confirm whether that is your intended definition.

**Protective Order:**
As I explained on the call, Extreme has agreed that it is comfortable with the substance of the Protective Order (excepting the source code inspection provisions that are still being negotiated), subject to any further edits by Broadcom/Brocade and the potential jurisdictional concerns that Broadcom may raise—*i.e.*, that by filing the Order and agreeing that the Court may enforce it, it may constitute a waiver of its jurisdictional defenses (which also impacts the Defendants' improper venue defense). As Broadcom and Brocade have now provided their comments on the document, including what appears to be language concerning that jurisdictional issue, Extreme will review them just as SNMP does. But to be clear: even if it is ultimately determined that the Protective Order (source code inspection provision excepted) cannot be signed and/or filed at this time due to the jurisdictional and venue concerns, Extreme is in favor of finalizing the substance of that Order so that *if* the Court determines it has jurisdiction and discovery goes forward, all that would be left is for the parties to execute and file on the docket. Under those circumstances, there would be no prejudice to SNMP in the short time it would take to sign and file the document.

Regards,

Jordan Feirman
**Skadden, Arps, Slate, Meagher & Flom LLP**
One Manhattan West | New York | 10001
T: 212.735.3067 | F: 917.777.3067
jordan.feirman@skadden.com

---

**From:** John L. Wood <JWood@emlaw.com>
**Sent:** Thursday, April 15, 2021 3:51 PM
**To:** Feirman, Jordan (NYC) <Jordan.Feirman@skadden.com>
**Cc:** Ashley, Matt <MAshley@irell.com>
**Subject:** [Ext] RE: Meet and Confer [IWOV-ACTIVE.FID215893]

Jordan,

I am following up on the email below. Can you let us know if you agree that we have resolved the discovery issues listed below?

John L. Wood
Egerton, McAfee, Armistead & Davis, P.C.
1400 Riverview Tower
900 S. Gay Street
Knoxville, Tennessee 37902
Direct (865) 292-2503
Office (865) 546-0500
Fax (865) 525-5293

**CONFIDENTIALITY NOTICE**: This e-mail transmission and any document, files or previous e-mail messages attached to it, are confidential and are protected by the attorney-client privilege and/or work product doctrine. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any review, disclosure, copying, dissemination, distribution or use of any of the information contained in, or attached to this e-mail transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please notify us immediately by forwarding this message to the original sender or by telephone at (865)546-0500 and then delete this message and its attachments from your computer.

**From:** John L. Wood
**Sent:** Monday, April 12, 2021 5:16 PM
**To:** 'Feirman, Jordan' <Jordan.Feirman@skadden.com>
**Cc:** Ashley, Matt <MAshley@irell.com>
**Subject:** Meet and Confer [IWOV-ACTIVE.FID215893]

Jordan,

Thank you for the meet and confer call Friday afternoon to discuss Extreme's objections to SNMP Research's Second Set of Requests for Production – RFPs 68, 69, and 70. You and Andrew Patrick attended the call on behalf of Extreme. Matt Ashley and I attended the call on behalf of SNMP Research. The call took place from 1:30 – 3:30 ET.

You made it clear that no documents would be produced until the Court rules on Defendants' Motion to Stay Discovery and for a Protective Order. We do not agree with your position. We attempted to resolve the other objections.

RFP 70
We first discussed Extreme's objection to RFP 70. You stated that once the Motion to Stay and for a Protective Order is resolved Extreme will produce the letter requested by RFP 70, subject to any privilege issues (if there are any). You could not specifically identify any privilege issues on the call and you also stated that Extreme will not agree to identify any privilege issues until the Court rules on Defendants' motion to stay discovery.

RFP 68
We then discussed RFP 68 which is "All Documents that give Extreme the right to use, copy, license, sell, transfer, prepare derivative works of, or distribute SNMP Research Software." We discussed your objection to the phrase "give Extreme the right to" and you suggested adding language such as "on which Extreme's intends to rely." We suggest the following change "All Documents on which Extreme intends to rely for the right to use, copy, license, sell, transfer, prepare derivative works of, or distribute SNMP Research Software." Let us know if this resolves your objection to the phrase "give the right" and the objection in the last sentence of Extreme's Response to RFP 68.

We then discussed the reasons for the words "use, copy, license, sell, transfer, prepare derivative works of, or distribute." We explained that we did not know what Extreme would claim it had or had not done with the SNMP Research Software. The conclusion was that the wording could stay the same.

Next we discussed the definition of SNMP Research Software. Your first objection is that the definition is broader than what is alleged in the Complaint. We explained that the copyright registrations specified in the Complaint contain all SNMP Research Software and therefore the SNMP Research Software that Extreme possesses is a subset of the SNMP Research Software described in the Complaint. You also discussed the need to see SNMP Research Software in order to determine exactly what SNMP Research Software is. We explained that Extreme has the SNMP Research Software and was able to determine exactly the Extreme products that need a license for SNMP Research Software. Since Extreme was able to determine its scope of use of SNMP Research Software we cannot understand why it cannot do so now. We understand the objection to "provided by SNMP Research to Brocade" and "licensed by SNMP Research to Brocade" because Extreme is not Brocade, even though we think Extreme knows exactly what SNMP Research Software was licensed to Brocade. If Extreme contends that it does not have knowledge about the software that was provided to Brocade then Extreme would simply not be able to answer on that basis. In case Extreme does know (or can reasonably determine) what was licensed or provided to Brocade we need to keep those descriptions in the definition of SNMP Research Software.

The definition of SNMP Research Software also includes romannette (iii) which states "any software created by SNMP Research which is or was in the possession of Extreme." Ironically, Extreme did not object to this phrase but we spent a long time discussing it on the call. Your contention was that this phrase is too general and you suggested we limit it to the SNMP Research Software that was licensed to Brocade under Amendment 5 of the license agreement between Brocade and SNMP Research. We explained that the problem with this limitation is that we do not know for sure if the SNMP Research Software Extreme received was related to Amendment 5. Also, limiting romannette (iii) would put us squarely in your first objection where you claim Extreme is not a party to the license agreement between Brocade and SNMP Research and therefore is not aware of what is licensed under that agreement. We were frankly surprised at the difficulty we had with this definition because our understanding is that Extreme knows exactly what SNMP Research Software it has. We think Extreme should be able to respond to RFP 68 without any changes to the definition of SNMP Research Software. We ask that Extreme reconsider its position.

We also discussed Extreme's objection to the definition of "Extreme." You requested a definition of the word affiliated. We propose using: "**Affiliate**" means an entity that controls, is controlled by or is under common control with another entity, where "control" refers to ownership or the right to direct more than 50% of the outstanding shares or securities representing the right to vote for the election of directors or other managing authority of another entity.

RFP 69
Finally, we discussed RFP 69. In addition to the objections that were already covered in our discussion on RFP 68, Extreme also objected to "consultants or contractors." We explained that the request in RFP 69 was for any Documents that would allow a consultant or contractor to use, copy, license, sell, transfer, prepare derivative works of, or distribute SNMP Research Software. That explanation appeared to clear up any concerns regarding the words "consultants or contractors." We also propose to modify this request to: "All Documents on which Extreme intends to rely for the right of consultants or contractors to use, copy, license, sell, transfer, prepare derivative works of, or distribute SNMP Research Software."

At the end of the call we discussed the protective order (except Section F). Extreme did not have any objections but would not agree to file the protective order until Broadcom/Brocade agrees to do so.

John L. Wood
Egerton, McAfee, Armistead & Davis, P.C.
1400 Riverview Tower
900 S. Gay Street
Knoxville, Tennessee 37902
Direct (865) 292-2503
Office (865) 546-0500
Fax (865) 525-5293

**CONFIDENTIALITY NOTICE**: This e-mail transmission and any document, files or previous e-mail messages attached to it, are confidential and are protected by the attorney-client privilege and/or work product doctrine. If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that any review, disclosure, copying, dissemination, distribution or use of any of the information contained in, or attached to this e-mail transmission is STRICTLY PROHIBITED. If you have received this transmission in error, please notify us immediately by forwarding this message to the original sender or by telephone at (865)546-0500 and then delete this message and its attachments from your computer.

--------------------------------------------------------------------------------

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

================================================================================