# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., <br><br> Plaintiffs, <br><br> v. <br><br> BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; and EXTREME NETWORKS, INC., <br><br> Defendants. | Case No. 3:20-cv-00451-CEA-DCP <br><br> U.S. District Judge Charles E. Atchley, Jr. |

**EXTREME NETWORKS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO SNMP'S MOTION TO COMPEL RESPONSES FROM DEFENDANT EXTREME NETWORKS, INC. TO PLAINTIFF'S SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

Extreme Networks, Inc. ("Extreme") respectfully submits this memorandum of law in opposition to SNMP Research, Inc.'s (together with SNMP Research International, Inc., "SNMP") Motion to Compel Responses from Extreme to Plaintiff's Second Set of Requests for Production of Documents (ECF No. 70) (the "Second Motion to Compel").[1]

## I.  INTRODUCTION

Extreme regrets that SNMP chose to further burden the Court with yet another attempt to abuse the discovery process – this time, instigating motion practice for the three requests for production from its Second Set of Requests for Production of Documents (ECF No. 70-3) (the "Second Set of Requests"). Specifically, Extreme and defendants Broadcom Inc. ("Broadcom") and Brocade Communications Systems LLC ("Brocade") (together with Extreme and Broadcom, "Defendants") filed a Motion to Stay Discovery and for a Protective Order (ECF No. 47) (the "Motion to Stay") in view of pending motions to dismiss and transfer, which raised, *inter alia*, fatal defects in jurisdiction and venue (ECF Nos. 38, 40). Then, shortly after the Motion to Stay was briefed, SNMP filed a Motion to Compel Discovery Responses (ECF No. 60) (the "First Motion to Compel"),[2] repeating the issues from the Motion to Stay briefing. As detailed in these motions, SNMP has sought to put Defendants in an untenable position, forcing Defendants either to risk jeopardizing the jurisdiction and venue defenses, or to participate in a one-sided discovery process where plaintiffs could propound discovery requests but Defendants could not. The issues regarding the necessity of a stay and the impropriety of a motion to compel in these circumstances are already briefed in these two pending motions.

---

[1]  The abbreviated term where cited herein refers to the brief filed in support of the motion, at ECF No. 70-1.

[2]  The abbreviated term where cited herein refers to the brief filed in support of the motion, at ECF No. 60-1.

Not only does the Second Motion to Compel represent a retread of the issues briefed in the two pending motions, the Motion also recycles much of SNMP's concurrently-filed motion to compel Broadcom and Brocade (ECF No. 69), albeit in an abbreviated fashion.

In recognition of the duplicative nature of SNMP's latest motion, and in an attempt to ease the burden on the Court, Extreme incorporates the arguments set forth in the prior briefing from the Motion to Stay[3] and the First Motion to Compel,[4] as well as the arguments set forth in Broadcom and Brocade's contemporaneously-filed opposition brief. Extreme will focus this Opposition on the issues that are specific to this motion and were not previously addressed – namely, that Extreme's General and Specific Objections to the Second Set of Requests are proper.

## II. BACKGROUND

### A. Briefing on the Parties' Prior Motions Demonstrated Plaintiffs' Unfair Discovery Tactics

As detailed in prior briefing,[5] Defendants filed motions to dismiss based, in part, on defects in jurisdiction and venue. (ECF Nos. 38, 40.) Closely on the heels of these motions, SNMP served hundreds of discovery requests on Defendants. (Opp. to First Mot. to Compel at 3-4.) In view of SNMP's overbroad discovery requests and the pending motions to dismiss, on January 16, 2021, Defendants jointly moved to stay discovery and for a protective order. (ECF No. 47.) In that motion, Defendants explained why a stay and a protective order were proper and warranted, including because (1) the motions to dismiss raised dispositive issues; (2) discovery would unduly prejudice Defendants since SNMP indicated that they would argue that Defendants' service of their

---

[3] Mot. to Stay (ECF No. 47-1); Mot. to Stay Reply (ECF No. 59).

[4] Opp. to First Mot. to Compel (ECF No. 62).

[5] *See, e.g.*, Opp. to First Mot. to Compel at 3-4. Pin cites for filed documents are to the page numbers inserted at the bottom of each page by the ECF system.

2

own discovery constitutes a waiver of their personal jurisdiction and improper venue defenses (potentially dooming the Rule 12 dispositive motions); and (3) discovery was premature, overbroad, and unduly burdensome. (Mot. to Stay at 5.) As to the second point, SNMP self-servingly agreed not to argue that Defendants' *responses* to discovery requests propounded by SNMP waive jurisdiction and venue defenses, but refused to agree that Defendants propounding their own requests similarly does not effect a waiver. (*See, e.g.*, Opp. to First Mot. to Compel at 5-6.) The Motion to Stay extended to the discovery requests that are the subject of SNMP's Second Motion to Compel. (*See* Mot. to Stay Reply at 20 n.12.)

One week after that motion was fully briefed, SNMP filed its First Motion to Compel, demanding further responses to its discovery requests and asking the Court to make an extraordinary finding that all of Defendants' objections to discovery requests have been waived, save for objections as to privilege and attorney work product. (First Mot. to Compel at 6.) Defendants' opposition explained why SNMP's arguments (themselves a rehash of many arguments from the Motion to Stay briefing) lacked merit.[6] Principally, SNMP's First Motion to Compel sought to "usurp this Court's role as decisionmaker and effectively deny Defendants' motion for a protective order by requiring Defendants to provide substantive answers to discovery while that motion is pending." (Opp. to First Motion to Compel at 8.) This approach was all the more inappropriate here, as Defendants could not serve their own discovery without a threat of SNMP arguing that the jurisdiction and venue defenses are waived. (*Id.* at 5-6; *see also* SNMP's Reply Br. on First Mot. to Compel (ECF No. 65) at 7 n.4 (confirming that SNMP will not agree to forgo waiver arguments should Defendants serve discovery).) The briefing further demonstrated

---

[6] Broadcom and Brocade filed the opposition to the First Motion to Compel, and Extreme joined in this opposition. (*See* Notice by Extreme (ECF No. 63).)

3

that the first set of discovery requests were overbroad and not proportional to the needs of the case; that the objections from Defendants' responses to the first set of discovery requests were proper; and that SNMP had no legal support for its bold claim that Defendants waived objections. (Opp. to First Motion to Compel at 10-25.)

### B. Despite the Pending Motions and SNMP's Attempt to Whipsaw Defendants, Extreme Endeavored to Narrow Disputes on SNMP's Second Set of Requests for Production

Plaintiffs' position on waiver of the jurisdictional and venue defenses effectively forced the parties into the current discovery impasse. (*See, e.g.*, Mot. to Stay Reply at 13-14 (explaining why Plaintiffs' unreasonable position on waiver created a "standstill even without a stay").) Nevertheless, SNMP propounded its Second Set of Requests during briefing on the Motion to Stay, which included three requests. (*See* Second Set of Requests at 8.) These requests call for documents that purportedly "give the right" to Extreme (Request No. 68) or consultants or contractors of Extreme (Request No. 69) to exploit certain SNMP software, and an unredacted copy of a letter from Broadcom to Extreme that SNMP appears to have previously received from Broadcom in redacted form (Request No. 70). (*See id.*) Extreme responded to the Second Set of Requests through its Objections. (ECF No. 70-4 ("Objections to the Second Set of Requests").)

Extreme participated in a lengthy telephonic meet and confer with SNMP and shared details on its positions in writing in an effort to "move the ball forward on several discovery issues," despite its position on the timing and propriety of discovery. (ECF No. 70-6 at 5.) Extreme endeavored to work in good faith to narrow potential disputes on SNMP's discovery requests – and did reach agreement on the constructions of certain requests – but was unable to reach an understanding with SNMP on all of the issues underlying these requests. (*See id.*) A gating issue for all requests was Extreme's concerns regarding waiver of Defendants' jurisdictional and venue challenges set forth in the prior briefing. (*See id.* at 6.) In addition, Request Nos. 68-69 invoked

4

a definition of "SNMP Research Software" that was overbroad and targeted irrelevant information, including because the term encompassed software outside of the allegations of infringement. (*See id.* at 5-6.) With regard to Request No. 70, Extreme clarified that it did not have relevance or burden objections, and if discovery were to go forward it would produce that document when appropriate, subject to a subsequent analysis that the unredacted material did not contain any privileged communications . (*See id*. at 5.)

## III.  ARGUMENT

### A.  SNMP's Second Motion to Compel Repeats the Errors in SNMP's First Motion to Compel

SNMP's Second Motion to Compel repeats two principal arguments from its First Motion to Compel, both of which already have been debunked in the briefing on the First Motion to Compel, incorporated herein. In summary, *first*, SNMP argues that Extreme "refus[ed] to provide substantive responses to discovery based on the mere fact that [Extreme] filed a Motion to Stay . . . ." (*Compare* Second Motion to Compel at 7, *with* First Motion to Compel at 12.) This argument ignores that Extreme provided detailed and request-specific objections to SNMP's discovery requests, and in any event, "courts in this circuit have recognized that a party need not substantively respond to or otherwise participate in discovery at all while a motion requesting protection from that discovery is pending." (Opp. to First Mot. to Compel at 7-10 (collecting cases).) What is more, while Extreme has never argued that the pending Motion to Stay alone justifies not responding to requests, the circumstances here are unique. Specifically, "[t]o compel Defendants to choose between risking waiver of their defenses or participating in one-sided discovery raises serious due process concerns." (*Id.* at 9.) Indeed, "forcing defendants to expend resources litigating substantive matters in an inconvenient venue" can frustrate the purpose of the change of venue statute. *In re TracFone Wireless, Inc*., No. 2021-118, 2021 WL 865353, at *2

5

(Fed. Cir. Mar. 8, 2021) (granting mandamus to stay case deadlines until the district court has resolved transfer motion) (citations omitted); *accord In re Google Inc.*, No. 2015-138, 2015 WL 5294800, at *2 (Fed. Cir. July 16, 2015).

*Second*, SNMP argues that Extreme's use of general objections "is an improper tactic and should be treated as a waiver of objections." (*Compare* Second Motion to Compel at 7, *with* First Motion to Compel at 13-17.) As explained in more detail in Defendants' Opposition to the First Motion to Compel, SNMP's caselaw addressed "*actually* boilerplate discovery responses," which Extreme's responses are not. (Opp. to First Mot. to Compel at 22-25 (providing definition of "boilerplate" as "[r]eady-made or all-purpose language that will fit in a variety of documents" (quoting Black's Law Dictionary (11th ed. 2019))).) Moreover, the cases cited in that motion did not address waiver or did not find the objections waived. (*See id*.) SNMP does not provide any new caselaw regarding waiver in its Second Motions to Compel that would support the extraordinary finding that Extreme waived these objections.

Likewise, SNMP's argument that objections should be waived because they do not provide "partial response[s]" (*compare* Second Motion to Compel at 7, *with* First Motion to Compel at 7, 16), fails for the same reason as before: Extreme's objections were not partial; they were directed to the entirety of the requests. And, SNMP's apparent argument that Extreme violated Federal Rule of Civil Procedure 34(b)(2)(C) is flawed in the same way as in the previous motion: this requirement was not implicated by Extreme's objections, especially given that the discovery requests were overbroad and ambiguous, as confirmed by SNMP's lack of on point authority. (*See* Opp. to First Mot. to Compel at 24.)

6

### B. SNMP's Arguments Specific to its Second Set of Requests for Production are Similarly Inapt

As with its responses to SNMP's first set of discovery requests, Extreme's responses to SNMP's Second Set of Requests are appropriate at this juncture. The General and Specific Objections in Extreme's responses to SNMP's Second Set of Requests are proper for the reasons discussed herein and in the incorporated briefing.

#### 1. The General Objections Are Not Boilerplate

While SNMP does not address the substance of the General Objections, SNMP asserts in passing that they are "improper." (Second Mot. to Compel at 7.) However, Extreme's objections are not boilerplate, as the objections are tailored to the requests. For example, certain of the General Objections to the first set of discovery requests are not relevant to all requests in the Second Set of Requests, and have thus been omitted.[7]

The General Objections that remain in the Objections to the Second Set of Requests are proper. For instance:

- The General Objections stemming from the Motion to Stay and clarifying that the service of responses does not constitute a waiver are appropriate for the reasons discussed at length in the previous briefing.[8]

---

[7] (*Compare* ECF No. 60-21 ("Objections to the First Set of Requests") (including, *inter alia*, objections for "impermissibly compound and frequently confusing"), *with* Objections to the Second Set of Requests (omitting that General Objection, among others).)

[8] (*See, e.g.*, Opp. to First Mot. to Compel at 8-10; *see generally* Mot. to Stay; Mot. to Stay Reply.)

*(cont'd)*

7

- The General Objection on relevance and proportionality is well-founded, including because various defined terms encompass entities that are not relevant to the case.[9] In addition, the defined term "SNMP Research Software" extends beyond the issues in the case, including because it covers software other than the software alleged to have been infringed.[10]

- The General Objection on attorney-client privilege, attorney work-product doctrine, and other evidentiary privileges or immunities reflects, in part, that the requests seek legal conclusions such as Extreme's right to use so-called SNMP Research Software. (*See, e.g.*, Second Set of Requests, Request No. 69.)

- The General Objection on confidential and proprietary information is proper, both because of the nature of the requests (seeking all documents on topics such as Extreme's licensing rights), and because the parties have not entered into a protective order. (*See* Opp. to First Mot. to Compel at 19-20.)

---

[9] (*See, e.g.*, Opp. to First Mot. to Compel at 11-17.) As the requests extend beyond those under Extreme's control or authorized to act on Extreme's behalf, it also was appropriate to include General Objections on calling for documents or information not in Extreme's possession, custody, or control, and on imposing discovery obligations beyond those set forth in the relevant rules. (*See* Objections to the Second Set of Requests at 5.)

[10] (*See, e.g.*, Opp. to First Mot. to Compel at 11-17.) In SNMP's reply on its First Motion to Compel, SNMP argued that Defendants are required to submit "affidavit or other evidence showing how much time or effort it would supposedly take them to respond to the discovery requests they attack as burdensome or disproportionate." (SNMP Reply Br. on First Mot.to Compel (ECF No. 65) at 12-13.) But nothing in SNMP's cases supports that affidavits are required where the requests encompass irrelevant information, like the requests here. (*See id.* (citing *Home Fed. Bank of Tenn. v. Home Fed. Bank Corp.*, No. 3:18-CV-379-JRG-DCP, 2019 WL 11670621, at *2 (E.D. Tenn. Sept. 18, 2019) (finding requested information relevant); *Groupwell Int'l (HK) Ltd. v. Gourmet Exp., LLC*, 277 F.R.D. 348, 360 (W.D. Ky. 2011) (same); *In re Heparin Prods. Liab. Litig.*, 273 F.R.D. 399, 409 (N.D. Ohio 2011) (same); *Oleson v. Kmart Corp.*, 175 F.R.D. 560, 565 (D. Kan. 1997) (tying affidavits or evidence to "the nature of the burden" as opposed to arguments concerning irrelevant requests)).)

8

- The General Objection on duplicative and cumulative requests is also proper. For example, in the First Set of Requests for Production, SNMP requests "[a]ll Communications concerning SNMP Research or the SNMP Research Software." (ECF No. 60-10 at 11.) Despite this broad request, SNMP requests in the Second Set of Requests a letter between Broadcom and Extreme addressing "SNMPRI" and "SNMPRI software." (*See* Second Set of Requests, Request No. 70; *see also* ECF No. 70-5.)

### 2. The Specific Objections Demonstrate the Issues with SNMP's Requests

For the first two requests in the Second Set of Requests, SNMP minimizes the outstanding disputes, which remain significant and material despite the significant progress that the parties made through the good faith meet and confer process. These two requests, as propounded by SNMP, provide as follows:

Request number 68

All Documents that give Extreme the right to use, copy, license, sell, transfer, prepare derivative works of, or distribute SNMP Research Software.

Request number 69

All Documents that give consultants or contractors of Extreme the right to use, copy, license, sell, transfer, prepare derivative works of, or distribute SNMP Research Software.

SNMP is correct that there are two outstanding disputes for these requests: the objection regarding the Motion to Stay, and the objection regarding the definition of "SNMP Research Software." (Second Mot. to Compel at 8-9.) Extreme's objection regarding the Motion to Stay is a serious gating issue, for the reasons explained in prior briefing. And Extreme's objection regarding the definition of "SNMP Research Software" is broader and more critical than that described by SNMP. Extreme objects to the definition because it appears to extend to "any software other than

9

the software alleged to have been infringed in the Complaint" (Objections to the Second Set of Requests at 5-6), not just "because it envelops software covered by a separate license agreement between the parties." (Second Mot. to Compel at 9; *see also* ECF No. 70-6 at 2.) Indeed, SNMP appeared to recognize that this definition extends beyond the allegations in the case, and yet refused to tie the definition to the software at the center of the complaint. (*Id.* at 4-8.) For this reason, any "past representations" on what Extreme is or is not using (even as characterized by SNMP) are of no moment. (*See* Second Mot. to Compel at 9.) Further, Extreme has made clear that its objections are "[i]n addition to . . . the concerns raised by Broadcom and Brocade." (ECF No. 70-6 at 2.)

SNMP's motion also misconstrues Extreme's position on the third request in the Second Set of Requests, which provides:

Request number 70

An unredacted version of the letter from Simone Yew to Ms. Katy Motley [sic] of Extreme Networks, Inc. dated August 1, 2019.

SNMP's claim that "Extreme also indicated that it might have privilege objections" to this request but counsel "had not even reviewed the letter in question to determine if any privilege might apply" (Second Mot. to Compel Extreme at 10) ignores Extreme's prior explanation that conducting a specific privilege analysis "would be putting the cart before the horse given the parties' current positions regarding discovery." (ECF No. 70-6 at 5.) Further, as Extreme already explained, it "would need to understand more from co-defendants to ensure that [Extreme is] not waiving any potential privileges on [co-defendants'] part that, as [SNMP] suggested, [co-defendants] may believe exists." (*Id.*) In brief, Request 70 is a non-issue; Extreme has made clear that if discovery moves forward, it would either produce the document or, if it determines there is a privilege

10

concern, redact the document and/or flag privileged materials on a privilege log. SNMP's motion to compel a further response is superfluous.

SNMP also claims that "Extreme's primary objection to producing [the] letter is the fact that no protective order is in place . . . ." (Second Mot. to Compel at 9.) Although SNMP argues that "Plaintiffs and Extreme have finally reached agreement on a protective order" (*id*.), this is subject to potential jurisdictional issues that Broadcom may raise, which would impact the improper venue defense. (*See* ECF No. 70-6 at 6.) This is not a matter of simply "defer[ring] to Broadcom and Brocade" (Second Mot. to Compel at 9), but instead a matter of preventing an argument that Extreme waived litigation defenses. Nevertheless, Extreme has made clear that it is amenable to finalizing the substance of the protective order without signing or filing the document such that SNMP would not be prejudiced should the Court determine that jurisdiction is proper and thereafter order discovery. (*See* ECF No. 70-6 at 6.) At bottom, the risk of defending against an argument that Defendants waived the jurisdictional and venue defenses underlies Extreme's objections to all three requests.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the briefing incorporated herein, SNMP's Second Motion to Compel should be denied.[11]

---

[11] Alternatively, Extreme respectfully requests confirmation that its participation in discovery while the motions to dismiss are pending – through responding to and propounding discovery requests – does not constitute a waiver.

11

DATED: Palo Alto, California
June 2, 2021

Respectfully Submitted,

**SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP**

By: /s John M. Neukom
John M. Neukom (*admitted pro hac vice*)
515 University Avenue, Suite 1400
Palo Alto, California 94301
john.neukom@skadden.com
(650) 470-4500

Jordan A. Feirman (*admitted pro hac vice*)
One Manhattan West
New York, New York 10001
jordan.feirman@skadden.com
(212) 735-3000

*Attorneys for Extreme Networks, Inc.*

12

**CERTIFICATE OF SERVICE**

       I hereby certify that Extreme Networks, Inc.'s Memorandum of Law in Opposition to SNMP's Motion to Compel Responses from Defendant Extreme Networks, Inc. to Plaintiff's Second Set of Requests for Production of Documents, is being served on all counsel of record in the above-captioned litigation via electronic filing on this 2nd day of June, 2021.

                                                 */s/ John M. Neukom*
                                                  John M. Neukom

                                      515 University Avenue, Suite 1400
                                      Palo Alto, California 94301
                                      john.neukom@skadden.com
                                      (650) 470-4500