# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF TENNESSEE

# AT KNOXVILLE

| | |
|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., | Case No. 3:20-cv-00451 |
| Plaintiffs, | |
| v. | |
| BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; and EXTREME NETWORKS, INC. | |
| Defendants. | |

---

**BROADCOM INC. AND BROCADE COMMUNICATIONS SYSTEMS LLC'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL RESPONSES TO PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

5857416

Defendants Broadcom Inc. and Brocade Communications Systems LLC (together, "Defendants"), respectfully submit this memorandum of law in opposition to SNMP Research, Inc's and SNMP Research International, Inc. (collectively, "Plaintiffs") Motion to Compel Responses to Plaintiffs' Second Set of Requests for Production of Documents (ECF No. 69) (the "Second Motion to Compel").

## I.     INTRODUCTION

Ignoring other motions already pending before this Court, including Defendants' motion for a protective order, Plaintiffs have chosen to burden this Court yet again with another motion to compel that simply rehashes the same arguments in a new package. There is no need for this motion, particularly given Plaintiffs' refusal to reconsider their unreasonable stance on one-sided discovery or meaningfully meet and confer regarding Defendants' well-founded, detailed objections. Like their first motion to compel, Plaintiffs' second motion to compel misconstrues the facts and the law, conveniently suggests neither they nor the Court needs to address the "substantive merits" of Defendants' objections, and forgets the parties' discovery standstill is entirely of Plaintiffs' own making.

Defendants have taken great care to follow the rules and avoid delay while also protecting their rights and defenses. Upon receiving Plaintiffs' first discovery requests on December 26, 2020, Defendants offered what they believed to be a routine, non-controversial compromise: namely, that Defendants would forego moving to stay discovery pending resolution of their motions to dismiss (despite having strong grounds to do so) so long as Plaintiffs would agree in return not to argue Defendants waived their jurisdictional defenses by participating in such discovery. Much to Defendants' surprise, Plaintiffs refused and insisted that only Plaintiffs should be able to propound discovery. Plaintiffs also refused to grant Defendants' standard request for a

- 1 -

5857416

brief extension of the deadline to respond to their voluminous discovery requests unless Defendants agreed in advance to waive their objections. Defendants thus had no choice but to seek a protective order and discovery stay from this Court to protect, among other things, their constitutional rights.

Even so, Defendants continued to make efforts to avoid undue delay. Defendants requested an expedited hearing on their motion for a protective order and fully responded to each of Plaintiffs' discovery requests by the deadline. Plaintiffs ignored the motion for a protective order, however, and prematurely filed their first motion to compel covering hundreds of requests, the substance of which the parties had never discussed. To make matters worse, before filing this motion, Plaintiffs falsely suggested they were willing to reconsider their position on one-sided discovery to coax Defendants into participating in a contrived "meet and confer" call they insisted be transcribed by a court reporter. During the call, it quickly became apparent that Plaintiffs did not truly intend to meaningfully meet and confer about anything and were instead simply mining for sound bites to plug into their motion. In fact, while Plaintiffs included a chart in their motion listing some of Defendants' objections (broken up and taken out of context), the parties did not discuss (and have never discussed) the vast majority of them.

Defendants explained in advance of the call that they would be primarily in listening mode during the initial conversation given the pending motion for a protective order and since they had not yet heard Plaintiffs' position regarding any of their objections. Defendants expected Plaintiffs to identify which of Defendants' objections they believed lacked merit and potential areas of compromise, so that Plaintiffs could then look into their concerns and provide a well-considered response. But Plaintiffs refused to do so and instead turned the meet and confer call into a mini cross-examination, defeating the purpose of Defendants' motion for a protective order. After an

- 2 -

5857416

hour of getting nowhere, and in response to Plaintiffs suggesting the parties should set aside another *three hours* to discuss only three requests, Defendants asked Plaintiffs to set forth their concerns and questions in writing prior to any further call, so that the parties could better streamline their discussion and focus on the key issues in dispute. Plaintiffs refused and instead filed this motion without ever meeting and conferring regarding most of Defendants' objections.

This motion to compel—like Plaintiffs' last one—is improper and premature, and the Court should deny it. Alternatively, if the Court ultimately denies Defendants' pending motions to dismiss and the case proceeds in this forum, Defendants respectfully request that this Court order Plaintiffs to meaningfully meet and confer regarding their grossly overbroad, ambiguous, irrelevant, and otherwise improper discovery requests. The parties can then present a more narrowly tailored dispute to this Court, if a dispute continues to exist at all, after the parties have truly exhausted their efforts to compromise.

## II. BACKGROUND[1]

Defendants moved to dismiss the Complaint on December 22, 2020. *See* Defendants' Motions to Dismiss, Dkt. No. 40. Four days later, on December 26, 2020, Plaintiffs propounded hundreds of discovery requests on all Defendants. Declaration of Alison Plessman ("Plessman Decl.") at ¶ 7. Plaintiffs' slapdash discovery requests were defective in numerous respects, not least of which because they sought irrelevant information and were not proportional to the needs of the case in violation of Federal Rule of Civil Procedure 26(b)(1). And even if the requests had

---

[1] Plaintiffs incorporate by reference the relevant factual and procedural background in their motion. They purport to do so to "avoid burdening the Court with a repetitive discussion" (Mot. at 2)—an implicit admission that their motion does nothing but rehash the exact same issues previously presented to the Court. To oppose this motion properly, Defendants believe it necessary to provide the Court with the relevant factual and procedural background, although they regret having to retread the same ground.

5857416

been properly drafted, the parties had not yet agreed to an electronic discovery protocol and had not even began negotiating a protective order governing the use and disclosure of confidential and proprietary information exchanged during discovery. *See* Plessman Decl. at ¶ 8.

Even though Defendants believed a stay of discovery was warranted because the pending motions to dismiss raised dispositive issues, on January 5, 2021, Defendants agreed to proceed with discovery so long as Plaintiffs agreed not to argue that Defendants were submitting themselves to this Court's jurisdiction by virtue of their participation in the discovery process. Plessman Decl. ¶ 9; Declaration of Alison Plessman in Support of Motion to Stay ("Plessman Decl. Mot. to Stay"), Dkt. No. 47-3, Ex. J. Defendants were mindful of Sixth Circuit precedent holding that, under certain circumstances, participation in discovery could result in the waiver of personal jurisdiction and venue defenses. *See Blessing v. Chandrasekhar*, 988 F.3d 889, 899 (6th Cir. 2021) ("The defendant may waive her defense if the district court . . . determines that the defendant's litigation conduct gave the plaintiff a reasonable expectation that the defendant intended to defend the suit on the merits or the conduct cause[d] the court to go to some effort that would be wasted if personal jurisdiction is later found lacking."). Defendants' proposed compromise would have obviated much of the motion practice now before the Court. Defendants also requested a modest 30-day extension to respond to the voluminous discovery Plaintiffs had served over the holidays. Plessman Decl. ¶ 9; Plessman Decl. Mot. to Stay, Dkt. No. 47-3, Ex. J.

As discussed above, Plaintiffs rejected this reasonable proposal. Plessman Decl. ¶ 10; Plessman Decl. Mot. to Stay, Dkt. No. 47-3, Ex. J. Plaintiffs agreed they would not argue waiver based on Defendants' *responses* to Plaintiffs' discovery requests but would not agree Defendants could propound their own discovery without waiving their jurisdictional and venue defenses.

- 4 -

Plessman Decl. at ¶ 10; Plessman Decl. Mot. to Stay, Dkt. No. 47-3, Ex. I. Plaintiffs further refused to provide even a brief extension to their discovery requests unless Defendants agreed in advance to waive their right to object to the requests. Plessman Decl. at ¶¶ 11 & 13; Plessman Decl. Mot. to Stay, Dkt. No. 47-3, Ex. J. Plaintiffs' tactics forced Defendants into a position where they would either risk waiver of their constitutional and statutory rights or forego their own discovery. Either option would unduly prejudice Defendants.

On January 16, 2021, Defendants moved to stay discovery and for a protective order. *See* Motion to Stay and for a Protective Order (hereafter "Mot. for Protective Order"), Dkt. No. 47. In that motion, Defendants argued that, *inter alia*: (1) "discovery should be stayed because Defendants' motions to dismiss raise dispositive issues as to all of Plaintiffs' claims"; (2) "Defendants will be prejudiced if discovery proceeds because . . . Plaintiffs have made clear that they will argue Defendants' service of their own discovery while the motions to dismiss are pending constitutes a waiver of Defendants' personal jurisdiction and improper venue defenses"; and (3) that Plaintiffs' written discovery was, *inter alia*, premature, overbroad, irrelevant, vague, and unduly burdensome, and that Defendants could not respond in any event before a protective order governing the production of confidential information was entered in the case. *See* Memorandum of Facts and Law in Support of Mot. for Protective Order (hereafter "Protective Order Memo."), Dkt. No. 47-1, at 7. To avoid delay, Defendants further moved for an expedited hearing to resolve the issues presented in the motion to stay and for a protective order. *See* Dkt. No. 47.

On January 25, 2021, despite having filed a motion for a protective order, Defendants served their responses to Plaintiffs' discovery in good faith. *See* Declaration of John L. Wood (hereafter "Wood Decl."), Dkt. No. 60-2, Exs. L-T. Contrary to Plaintiffs' self-serving

mischaracterizations, those responses consisted of detailed objections explaining why the discovery requests were defective, as explained below and in detail in Defendants' prior court submissions.

On January 29, 2021, Plaintiffs served their second set of requests for production on Defendants, which are the subject of the present motion. *See* Wood Decl., Dkt. No. 69-2, Exs. A-B. These requests heedlessly incorporated all the objectionable definitions and instructions that Defendants had just highlighted four days prior in their objections. In their reply brief in support of their motion to stay and for a protective order, Defendants explained that these requests suffered from the same defects as Plaintiffs' first set of discovery requests and thus that the "stay and protective order should also cover this second set of discovery requests and any other discovery that may be served while the motions to dismiss are pending." Dkt. No. 59 at 20 n.12. Nevertheless, Defendant timely served their responses to the second set of discovery requests on March 1, 2021. Defendants did not merely refuse to respond based on their pending motions (although they could have), but again set forth carefully considered objections to each of the requests in good faith.

On February 15, 2021, Plaintiffs filed a motion to compel responses to their first set of responses. Dkt. No. 60. That motion has been fully briefed and addresses virtually all of the issues repeated in Plaintiffs' present motion.

Upon receiving Defendants' responses to the second set of discovery requests, Plaintiffs requested to meet and confer despite Defendants' pending motion for a protective order. In the spirit of cooperation, Defendants agreed a call so long as Plaintiffs were "willing to reconsider [their] position regarding one-sided discovery." Plessman Decl. Ex. B. Defendants further explained they would be in listening mode for this first call but were willing to "hear [Plaintiffs']

- 6 -

response to [Defendants'] objections," including whether Plaintiffs were willing to modify any of their requests based on them. *Id.* Plaintiffs agreed they would reconsider their position on one-sided discovery.[2] *Id.*

As Defendants feared, the meet and confer was entirely unproductive. Despite their express agreement to the contrary prior to the call, Plaintiffs' counsel stated that they in fact would not reconsider their position on the issues of waiver and one-sided discovery, noting that "our position hasn't changed. It's fully briefed and I think we've met and conferred on that already . . . . It's actually fully briefed and teed up for the court." Wood Decl., Dkt. No. 69-2 Ex. F at 12:14-16. Defense counsel expressed frustration regarding Plaintiffs' misleading emails leading up to the call, which had suggested exactly the opposite, and explained that Plaintiffs' position on one-sided discovery was, of course, a "threshold issue" for Defendants. Wood Decl., Dkt. No. 69-2 Ex. F at 12:23-13:6; *see also id.* (stating Defendants were not willing to waive the arguments raised in their motion for a protective order).

Plaintiffs also refused to focus on the key issues in dispute or explain why they believed Defendants' objections were improper, despite Defendants advising Plaintiffs in advance of the call that Defendants were planning to be in listening mode since Plaintiffs had not yet set forth their position, including whether they were willing to compromise or modify their requests. Instead, Plaintiffs wasted time insisting that Defendants identify which of their objections were not "real." Wood Decl., Dkt. No. 69-2 Ex. F at 3:12-14; 24:25-25:3. After more than an hour of going around in circles, the parties had not even discussed the vast majority of Defendants'

---

[2] Plaintiffs counterproductively insisted that a court reporter transcribe the call purportedly because the parties had different recollections regarding what was said in passing on a prior call regarding potential COVID-19 issues. As anticipated, having a court reporter on the discovery meet and confer call only impeded the parties' ability to discuss discovery issues informally and reach a compromise.

5857416

objections because Plaintiffs remained fixated on issues like the tax privilege. *See id.* at 9:11-47:7. In the brief moments where the parties were able to focus on the actual language of the requests, however, Plaintiffs were ultimately forced to admit they could not explain the difference between various vague terms used in the requests and acknowledged further explanation or a definition was warranted given the context in which the terms were used. *See, e.g.*, Wood Decl., Dkt. No. 69-2 Ex. F at 47:7-8 ("We can propose something on [the definition for distribute].").

When Plaintiffs started getting stuck and could not explain the meaning of their requests, however, they ended the call and suggested the parties set aside another *three hours* on another day to discuss the three discovery requests at issue again. *Id.* at 47:7-16. Plaintiffs agreed on the call to consider Defendants' request that Plaintiffs lay out their concerns regarding specific objections in writing in advance of any further call, so the parties could engage in a more meaningful and efficient discussion. *Id.* at 47:23-49:10. But Plaintiffs later refused, calling Defendants' reasonable request "another attempt at running out the discovery clock," and declining to propose any alternative for making the next meet and confer a more productive discussion. Plessman Decl. Ex. C. Plaintiffs filed this motion to compel without ever meeting and conferring regarding the vast majority of Defendants' objections or explaining why they believed them to be improper. Plaintiffs also never provided further explanations regarding the meaning of certain terms used in their requests (i.e., distribution), despite suggesting on the call that they would do so.

## III. ARGUMENT

### A. Defendants Do Not (and Have Never) Claimed That a Motion to Stay Discovery Excuses Them from Their Discovery Obligations.

Plaintiffs once again mischaracterize Defendants' position on discovery by claiming that

Defendants have "essentially granted their own motion to stay and ignored their legal obligations." Mot. at 6. As explained in Defendants' prior filings:

> Plaintiffs' 'strategic' position on th[e] issue [of waiver and one-sided discovery] is responsible for the current discovery impasse—not, as Plaintiffs repeatedly claim, the pending motion to stay. The record indisputably establishes that Defendants were willing to forego staying discovery so long as doing so would not jeopardize the pending motions to dismiss. And, perhaps most importantly, **Defendants *have participated in discovery* by responding to Plaintiffs' requests with detailed objections addressing all the defects in Plaintiffs' requests, which vastly exceed the proper scope of discovery under the Federal Rules of Civil Procedure.**

Opp. to First Mot. to Compel at 5-6 (emphasis added). Moreover, Defendants did not simply move to stay discovery; they also moved for a protective order arguing, among other things, that Plaintiffs' discovery requests were defective in numerous respects, as expressly permitted by the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 26(c)(1) permits "[a] party or any person from whom discovery is sought [to] move for a protective order . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

Nevertheless, Plaintiffs argue without support that Defendants should be required to provide substantive *answers* to each and every discovery request before the Court has ruled on Defendants' motion for a protective order, even though Defendants have fully responded to each request with detailed objections. Nothing in the federal rules or case law suggests that serving well-founded objections to discovery requests constitutes a failure to respond. In fact, the discovery rules expressly contemplate that a party may respond to discovery requests in one of two ways: provide substantive answers or provide objections. *See* Fed. R. Civ. P. 33(b), 34(b)(2), 36(a). Defendants did the latter. If Defendants were forced to provide substantive *answers* to every request before the Court ruled on their motion for a protective order, the purpose of the motion would be eviscerated.

5857416

Indeed, Defendants did *more* than they were required to do as they were not obligated to provide any response at all after they filed their motion for a protective order. As previously explained by Defendants, "courts in this circuit have recognized that a party need not substantively respond to or otherwise participate in discovery at all while a motion requesting protection from that discovery is pending." Opp. to First Mot. to Compel at 7-9 (collecting cases); *see also Beal through Putnam v. Walgreen Co.*, 2005 WL 8157674 (W.D. Tenn. Nov. 14, 2005) ("Walgreen's October 7, 2005 motion for protective order was not rendered moot by Walgreen's failure to appear at the deposition. The Federal Rules of Civil Procedure allow a party from whom discovery is sought to file a motion for protective order. The rules further provide that a pending motion for a protective order excuses a party's failure to appear at a properly noticed deposition. Walgreen's conduct with respect to filing its motion and declining to appear for the deposition was therefore proper . . . ."); *Cozzens v. City of Lincoln Park*, 2009 WL 152138, at *3 (E.D. Mich. Jan. 21, 2009) ("A party may not excuse its failure to respond to interrogatories or to produce documents on the grounds that the request is objectionable *unless the party has a pending motion under Rule 26(c)*." (emphasis added)).

This protection is even more critical in a case like this one, which raises serious due process concerns. Without it, Plaintiffs' unreasonable position would force Defendants to choose between participating in unrestrained, one-sided discovery and waiving their jurisdictional and venue defenses. Moreover, federal courts recognize that "forcing defendants to expend resources litigating substantive matters in an inconvenient venue" can frustrate the purpose of the change of venue statute. *See, e.g., In re TracFone Wireless, Inc.*, No. 2021-118, 2021 U.S. App. LEXIS 6689, at *2 (Fed. Cir. Mar. 8, 2021) (granting mandamus to stay case deadlines until the district court has resolved transfer motion) (citations and quotations omitted);

- 10 -

5857416

*accord In re Google Inc.*, No. 2015-138, 2015 U.S. App. LEXIS 16544, at *2 (Fed. Cir. July 16, 2015).

Plaintiffs' position that a motion for a protective order offers no protection to the filing party and should simply be ignored is based on a mischaracterization of the law and discovery rules. In none of the cases cited by Plaintiffs did the responding party respond to the discovery requests with detailed objections. *See, e.g., Morgan v. AMISUB (SFH), Inc.*, 2020 WL 4274586, at *3 (W.D. Tenn. July 24, 2020) ("Morgan's only response to the requests for production was her email to counsel for AMISUB on April 8, 2020, in which Morgan objected to 'all production of documents request[ed].'"). Here, in contrast, Defendants considered the substance of each discovery request and objected on the basis of each request's defects—not, as Plaintiffs insist, merely because a motion to stay was pending. Plaintiffs pretend Defendants' objections do not exist to avoid the inconvenient truth that Defendants fully and timely responded to their discovery requests, even if they were not required to do so.

B. **Defendants Have Not Waived Their Objections to Plaintiffs' Discovery.**

Plaintiffs wrongly contend that Defendants waived their right to object to discovery requests because Defendants' responses are "evasive" and "incomplete." But "evasive" under Federal Rule of Civil Procedure 37(a)(4) is a "failure to disclose, answer, or respond." Plaintiffs' argument again rests on the incorrect premise the Defendants did not provide substantive responses to Plaintiffs' discovery requests. Mot. at 6. They did. As discussed above, a party may substantively respond to discovery requests by providing answers *or* objections. *See* Fed. R. Civ. P. 33(b), 34(b)(2), 36(a).

Plaintiffs also resort to generalities about Defendants' objections being "boilerplate" without seriously addressing Defendants' detailed and tailored objections that describe "with

- 11 -

5857416

specificity" how and why each request is deficient. Mot. at 3. To the extent that Defendants repeat certain objection, it is because those objections are applicable to more than one request. Moreover, the cases Plaintiffs cite are readily distinguishable in and do not support their waiver argument. *See, e.g., Siser N. Am., Inc. v. Herika G. Inc*., 325 F.R.D. 200, 203 (E.D. Mich. 2018) (describing a number of discovery abuses and criticizing defendant's "nonsensical" boilerplate objections even after being ordered by the court to further meet and confer following a motion to compel and refusal to heed court orders with respect to his discovery obligations); *Strategic Mktg. & Research Team, Inc. v. Auto Data Sols., Inc*., 2017 WL 1196361, at *3 (E.D. Mich. Mar. 31, 2017) (noting defendants one-word "broad" and "vague" objections were boilerplate and unsupported, but nevertheless encouraging the parties to work together to narrow the scope and burden of the requests).

Finally, even if Defendants' responses were somehow insufficient—despite their detailed explanations and the pending motion for a protective order—waiver would not be appropriate under the circumstances here. Instead, if the Court determines discovery should proceed in this forum after ruling on Defendants' pending motions, the Court should provide Defendants an opportunity to amend their discovery responses if necessary, as Plaintiffs own cases demonstrate. *See, e.g.*, *Wesley Corp. v. Zoom T.V. Prod., LLC*, 2018 WL 372700, at *5 (E.D. Mich. Jan 11, 2018) (denying motion to compel and allowing defendant an opportunity to amend its discovery responses despite "robotic" and "identical" boilerplate objections that stated only legal grounds for objection in bare terms without specifying how the requests were deficient).

### C. Defendants' General and Specific Objections Are Proper.

Plaintiffs contend Defendants' objections to the second set of discovery requests are improper because they lack "specificity." Mot. at 7-14. Not only have Plaintiffs waived this

- 12 -

argument by failing to meaningfully meet and confer or even send a letter outlining its position regarding most of Defendants' objections, but they are also wrong. The General Objections and Specific Objections in Defendants' responses to Plaintiffs' Second Set of Requests are proper for the reasons discussed herein.

      1.    **Defendants "General Objections" Are Not Boilerplate and Are Tailored to the Requests.**

Without providing any specific examples in their motion to compel and without having met and conferred regarding a single General Objection, Plaintiffs argue in a conclusory manner that Defendants' use of "General Objections" is improper and waived. Mot. at 7. But the *Sobol v. Imprimis Pharm.*, 2017 WL 5035837, at \*4 (E.D. Mich. Oct. 26, 2017)*; Morgan v. AMISUB (SFH), Inc.*, 2020 WL 4274586, at \*6 (W.D. Tenn. July 24, 2020); and *Siser N. Am. V. Herika G. Inc.*, 325 F.R.D. 200, 210 (E.D. Mich. 2018) cases that Plaintiffs cite and selectively quote concern truly boilerplate or generalized objections and do not state as a blanket matter that "General Objections" as typically used by litigants are always improper no matter how specifically phrased or applied. Mot. at 7. Here, Defendants' "General Objections" are not generalized in the sense that they are boilerplate or non-specific. In fact, Defendants' "General Objections" are highly particularized to this case and the requests at issue, and address in detail such issues as Defendants' jurisdictional and venue defenses, Plaintiffs' agreement not argue waiver if Defendants respond to discovery, and Plaintiffs' grossly overbroad and irrelevant definitions of party names. *See, e.g.*, Wood Decl., Dkt. No. 69-2 Ex. D (Broadcom General Objections ¶¶ 1, 2, 4, 5, 6, 17, 19, 20, 22, 23, 24, 25-26, 27, 28, and 32). Nevertheless, had Plaintiffs had identified any or all General Objections they felt were improper prior to filing their motion to compel, the parties may very well have been able to reach a compromise regarding their use and application. But Plaintiffs failed to do so, and should not be permitted to seek

waiver now.

Defendants' other objections are also particularized and proper, as further explained below.

1. The Terms "Transfer," "Distribute," "Consultants" and "Contractors" Are Unduly Vague as Used.

In their motion to compel, Plaintiffs feign incredulity that Defendants could possibly object that the terms "transfer" and "distribute" are vague as used in RFPs 92-95 (to Broadcom) and 87-88 (to Brocade). But Plaintiffs themselves could not explain the difference between the meaning of the two terms in the context of their discovery requests during the parties' meet and confer call and offered to drop one of the terms from the requests, without specifying which one they would keep. *See* Wood Decl., Dkt. No. 69-2 Ex. F at 44:6-44:12, 45:17-47:8. Plaintiffs also clarified that by "transfer," they meant an individual at Broadcom or Brocade physically hands off SNMP Research Software (which in turn is defined in extremely overbroad terms) to a third party as opposed to Broadcom or Brocade transferring the rights to the SNMP Research Software or transferring SNMP Research Software electronically. *Id.* at 42:9-47:8. None of this is in any way apparent from the face of the requests. Moreover, although Plaintiffs initially said transfer and distribute could be the same thing and there was not a "big difference" between the two terms as used, Plaintiffs later could not confirm that distribute meant someone at Broadcom or Brocade physically handing off SNMP Research Software to a third party and offered instead to "propose something on that." *Id.* at 46:21-47:8. But they never did and now pretend these terms are subject to only one meaning.

Although Plaintiffs may not worry about their overly broad and confusing definitions, the nuances of these conferred rights can make a world of difference to Defendants, who are only

- 14 -

required to produce business-sensitive documents that were specifically requested and within the bounds of relevance and other protections from burdensome discovery.

Similarly, Defendants are entitled to object to the vague terms "consultants" and "contractors" as used in RFP 88 (for Brocade) and RFPs 93, 95 (for Broadcom), particularly since the parties have never met and conferred regarding their meaning in the context of these requests and this case. The meaning of these terms depends heavily on context, and their intended, but now unknown, scope could dramatically expand or alter the subject matter for discovery. Indeed, as phrased, the requests require Defendants to draw legal conclusions regarding the contractual rights of third parties who happen to do undefined work for Defendants, which could be entirely unrelated to their contracts concerning SNMP Research Software. Moreover, as phrased, these requests could include documents between *Plaintiffs* and these "consultants" or "contractors" with no involvement from Brocade or Broadcom other than that they happen to be Defendants' consultants or contractors. The requests could also include contractors and consultants that are not subject to Defendants' control and/or implicate any number of third-party confidentiality and privacy rights. And, given the vagueness and overbreadth of the terms, it is not at all clear how this information would be relevant and proportionate to the needs of the case without further limitations.

2.  The Definitions of "Broadcom," "Brocade," "SNMP Research," and "SNMP Research Software" Are Overbroad and Seek Irrelevant Information Not Proportional to the Needs of the Case.

Defendants object to Plaintiffs' second set of requests for production because they incorporate grossly overbroad defined terms. This issue was addressed extensively by Defendants in connection with Plaintiffs' first motion to compel, but Plaintiffs did nothing to fix these terms in their second set of discovery. Plaintiffs' discovery requests defined "SNMP

- 15 -

Research Software" to mean: "(i) software provided by SNMP Research to Brocade, (ii) software licensed by SNMP Research to Brocade, or (iii) any software created by SNMP Research which is or was in the possession of" either Broadcom, Brocade, or Extreme. Wood Decl., Dkt. No. 69-2 Ex. B. at 2-3.

While this may not sound grossly overbroad at first blush, this definition easily could be limited to the SNMP Research software provided to Brocade pursuant to the only license agreement at issue in this case, but it inexplicably is not. Nor is the definition even limited to the copyrighted software listed in the Complaint. Indeed, the definition includes several other defined terms, including SNMP Research, Brocade, Broadcom, and Extreme, which expand the definition exponentially. The term "SNMP Research" is defined to mean "SNMP Research, Inc. and SNMP Research International, Inc. their predecessors and predecessors-in-interest, including all divisions and subsidiaries, and the officers, directors, employees, agents, attorneys, accountants, and representatives of each of the foregoing, including all other Persons acting or purporting to act on behalf of one or more of them." *Id*. at 1-2. The terms Brocade, Broadcom, and Extreme are similarly each defined as including their "predecessors, predecessors-in-interest, successors, successors-in-interest, affiliated entities, including all divisions and subsidiaries, and the officers, directors, employees, agents, attorneys, accountants, and representatives, including all other Persons or entities acting or purporting to act on behalf of it." *Id*. at 2.

As explained in Defendants' previous filings, these overbroad definitions are defined to include software and hundreds of entities and individuals not relevant to this case. Opp. To First Mot. to Compel at 13. Broadcom Inc. is a parent holding company which, directly and indirectly, owns dozens of other companies and corporations, none of which have anything to do with this case. *See generally* Compl. (raising no allegations that any Broadcom Inc. affiliate other than

- 16 -

5857416

Brocade is relevant to this case). The definition of "SNMP Research Software" includes all software that has ever been provided by or created Plaintiffs (and other unidentified individuals and entities associated with them) to all affiliates, employees, representatives, agents, and more of all Defendants regardless of their relevance to this case.

Plaintiffs have not and cannot meet their burden to demonstrate their requests are relevant as framed, particularly in light of these overbroad definitions. *See GCA Servs. Grp., Inc. v. ParCou, LLC*, 2016 WL 7192175, at *3 (W.D. Tenn. Dec. 12, 2016) ("Once a party raises an objection to discovery based on relevance, 'the burden shifts to the party seeking the information to demonstrate that the requests are relevant to the subject matter involved in the pending action.'"). Plaintiffs have sued for copyright infringement and breach of a license agreement as to the specific copyrighted software listed in Table 1 of the Complaint and based on one license agreement with Brocade. *See* Compl. ¶ 33. Including all software provided by unidentified individuals and entities that make up "SNMP Research" to all affiliates of Defendants is irrelevant to the claims and defenses in this case and not "proportional to the needs of the case." This case only concerns the software that is the subject of the license agreement with Brocade and that is registered with the Copyright Office—not any and all software that may have been provided by "SNMP Research" to dozens of other entities. Plaintiffs lack any legal claim for copyright infringement for any software not registered with the Copyright Office or for any software that is beyond the scope of the License Agreement. *See* 17 U.S.C. § 411(a) ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."). Opp. to First Mot. to Compel at 12.

Plaintiffs continue to ignore the substance of Defendants' objections. They claim in a

conclusory manner that their definitions are "simple and straightforward" without any explanation for why they require discovery from entities not party to this case or for software not protected by their copyright. Mot. at 12. They then trot out their usual line that "Defendants do not explain why a search using these terms would be unduly burdensome." *Id*. Not so. Defendants have already made clear why these definitions would be irrelevant and unduly burdensome. *See* Opp. to First Mot. to Compel at 14 ("It should be self-evident that defining a party to include dozens of non-party entities and individuals is overbroad and burdensome, particularly given that Plaintiffs seek information regarding software not at issue in this case. Expanding discovery obligations in such an extraordinary way costs money, takes time, distracts employees from their duties, and invades parties' privacy rights."). They then claim that Defendants offer no explanation for why the definition of SNMP Research Software is beyond the scope of the lawsuit. Mot. at 12. As noted above and explained in prior briefing, "Plaintiffs lack any legal claim for copyright infringement for any software not registered with the Copyright Office or for any software that is beyond the scope of the License Agreement." Opp. to First Mot. to Compel at 12. As such, Plaintiffs cannot simply propound discovery requests for whatever software they want—their requests must concern that software at issue.

Finally, Plaintiffs claim that there is no software "beyond the scope of the lawsuit" because the complaint "lists all of SNMP Research's copyrighted software." Mot. at 12. This is false. Plaintiffs' requests define "SNMP Research" as including "SNMP Research International, Inc." Wood Decl., Dkt. No. 69-2 Ex. B at 1. There are numerous copyrights for source code registered for SNMP Research International, Inc. that are not included in this Complaint. *See, e.g.*, SNMP Research, Inc., Registration Nos. TXu001706718; TXu001772248; TXu001772250; TXu001738956. The definition is also not limited to *copyrighted* software provided by SNMP

Plaintiffs; it simply says "software" and applies to any number of unknown and unidentified entities and individuals associated with Plaintiffs. The definition should be limited to the copyrighted software provided under the license agreement with Brocade (and Brocade alone, not all of its affiliates), to the extent any such copyrighted software exists. There is no reason whatsoever to expand the definition beyond that. There is likewise no reason to expand the definitions of the Defendants and Plaintiffs beyond the entities themselves.

      3.   The Requests Are Premature Because They Require Review of SNMP's Software and Source Code.

Plaintiffs complain that "Defendants already have SNMP Research's software in their possession" and thus Defendants do not need to review SNMP's software or source code before responding to these requests. Mot. at 12. But, again, the requests incorporate the definition of SNMP Research Software, which in turn is vague and overbroad and extends well beyond the software allegedly provided to Brocade under the license agreement. Defendants Brocade and Broadcom cannot identify, for example, what documents might give their unidentified consultants and contractors "the right to use" software that was at some point in time in the possession of unknown affiliates, agents, or representatives of Defendant Extreme Networks. They would need discovery from Plaintiffs, Extreme, and third parties to even begin to answer that irrelevant question. As phrased, and under Plaintiffs' defined terms, this is the type of useless information that could fall under Plaintiffs' requests. Plaintiffs should be ordered to amend their defined terms avoid such absurd and irrelevant fishing expeditions. At the very least, Plaintiffs should be ordered to meet and confer about their defined terms before any discovery is order. They did not do so before filing their motion.

      4.   Plaintiffs' Requests Seek "Premature Expert Discovery, Analysis, and Opinion, As Well As Premature Legal Conclusions and Opinions," and They Are "Argumentative and Call[] for a Legal Conclusion."

5857416

Plaintiffs' requests (RFPs 87 and 88 for Brocade; RFPs 92-95 for Broadcom) require Defendants to make legal conclusions regarding whether various documents provide Defendants or third parties with the "right" to do various things with SNMP Research Software. For example, Request No. 88 to Brocade requires Documents that presumably give certain entities certain rights. Wood Decl., Dkt. No. 69-2 Ex. C at No. 88. Thus, to even make a production, Defendants must determine the legal effect of such documents in consultation with their attorneys and then reveal their legal conclusions through the act of production alone. Defendants are not obligated, and certainly not at this premature stage, to make concessions about what rights are conferred or not conferred by a given document. Similarly, with respect to the same request, Defendants cannot produce responsive documents without making contentions about the rights of consultants or contractors, or the legal boundaries of "SNMP Research Software." For these reasons, courts in the Sixth Circuit have long protected parties from being forced to provide legal conclusions in response to discovery requests. *See, e.g.*, *Gregg v. Loc. 305 IBEW*, 2010 WL 556526, at *4 (N.D. Ind. Feb. 9, 2010) (upholding objections to discovery requests for legal conclusions); *Flint v. Target Corp.*, 2008 WL 2435937, at *2 (W.D. Ky. June 12, 2008) (recognizing an objection to requests for "legal conclusions"). ‼Plaintiffs could instead simply ask for relevant license agreements or otherwise more specifically identify the contracts they are seeking, as they are likely fully aware of their titles.

Plaintiffs' requests also repeatedly use the overbroad term SNMP Research Software. To determine what software falls under term SNMP Research Software and then to identify which documents might give rise to rights relating to such software, technical and copyright expert analysis will likely be required. Defendants are not obligated to "consult with an expert now," while the motions to dismiss and for a protective order are pending and before expert discovery

- 20 -

has begun—or, indeed, before the Court has issued any kind of scheduling order. Again, Plaintiffs did not meet and confer with Defendants regarding these objections.

> 5. <u>Plaintiffs' Requests Call for the "Disclosure of Confidential and Proprietary Information, Documents, and Tangible Things" When No Protective Order Has Been Entered in the Case</u>.

Plaintiffs do not dispute that a protective order must be in place before the parties begin exchanging confidential and proprietary information and documents. As Plaintiffs explain, the parties have worked together to negotiate the terms of a joint protective order so that, in the event Defendants' motion to dismiss is denied, the parties can promptly file it with the Court and discovery may proceed. But Plaintiffs unreasonably insist that the filed protective order include the following affirmative consent to jurisdiction: "Every individual who receives any Designated Material **_agrees to subject himself or herself to the jurisdiction of this Court for the purpose of any proceedings related to performance under, compliance with, or violation of this Order_**."

It should go without saying that Defendants cannot agree to submit to the jurisdiction of the Court for purposes of the protective order while also maintaining their jurisdictional and venue defenses. Yet, in their motion, Plaintiffs go so far as to state, "Defendants have refused to allow Plaintiffs to file the negotiated Protective Order with the Court, Wood Decl. ¶ 20, and cannot use their own failings to excuse failure to comply with discovery requests." Mot. at 12. But Defendants are entitled to protect their jurisdictional and venue defenses. Doing so is not a "failing" or "stall tactic," as Plaintiffs repeatedly claim. *See, e.g.*, Mot. at 1, 4, and 12.

Defendants' waiver concerns are not abstract or hypothetical. Numerous courts have found that personal jurisdiction and venue defenses may be waived by the joint filing of a protective order. *See Plunkett v. Valhalla Inv. Servs., Inc.*, 409 F. Supp. 2d 39, 42 (D. Mass. 2006) (finding waiver of the defendants' "defense of lack of personal jurisdiction and improper

- 21 -

venue" in part because the defendants "entered into a stipulation and protective order with the plaintiff"); *HTC Sweden AB v. Innovatech Prod. & Equip. Co.*, 2010 WL 2163122 (E.D. Tenn. May 27, 2010) (noting that entering into a stipulation and protective order can be evidence of waiver); *Koninklijke Philips*, No. 1:15-cv-1125-GMS, slip op. at 8 (D. Del. July 19, 2017) (finding that defendants' conduct waived any venue defense where defendants "entered into a stipulation and protective order with the plaintiff"). This is particularly true here where Plaintiffs unreasonably insist that Defendants must expressly submit to the Court's jurisdiction by filing a protective order.

      6.   <u>Plaintiffs' Requests Seek Documents That Defendants Do Not Possess or that Plaintiffs Already Possess.</u>

Defendants are entitled to object to the production of documents that are not in their possession, custody, or control or that Plaintiffs can obtain equally or more readily. *See* Fed. R. Civ. P. 34(a)(1) (limiting requests for production to items "in the responding party's possession, custody, or control"). To the extent Plaintiffs' discovery requests seek, for example, contracts between Defendants and Plaintiffs or contracts between Plaintiffs and third parties or contracts between third parties exclusively—but all relating to SNMP Research Software—Plaintiffs should already have the documents in their possession or should seek them from third parties (particularly if they are subject to confidentiality obligations and Defendants are not a party to the agreements). Again, however, Plaintiffs have not yet met and conferred with Defendants regarding the meaning and scope of these requests (other than the brief conversation regarding the meaning of transfer and distribution described above).

      7.   <u>Plaintiffs' Requests Are Subject to Motions to Stay and Jurisdictional Motions.</u>

Defendants have maintained throughout this litigation that they are not subject to jurisdiction or venue in this Court and have asserted jurisdictional and venue defenses in their

- 22 -

motions to dismiss. Defendants have also filed a motion for a protective order and stay of discovery. Defendants are entitled to object to discovery based on their constitutional Due Process rights. In fact, the Sixth Circuit has expressly found such an objection appropriate for defendants seeking to maintain personal jurisdiction defenses. In *Parchman v. SLM Corp.*, 896 F.3d 728 (6th Cir. 2018), the plaintiff argued that the defendant had waived the defense of lack of personal jurisdiction by participating in written discovery. *Id.* at 734. The Sixth Circuit disagreed, explaining that the defendant, in its responses to the plaintiff's written discovery, "did not provide any substantive information and objected to the interrogatories and requests for production on a number of grounds including that 'this Court lacks personal jurisdiction over [defendant]…." *Id.* at 735. Because of this objection and the lack of substantive responses to the written discovery, there was no waiver of the defendant's defense. *Id.* The same holds true for Defendants here. Moreover, federal courts recognize that "forcing defendants to expend resources litigating substantive matters in an inconvenient venue" can frustrate the purpose of the change of venue statute. See, e.g., *In re TracFone Wireless, Inc.*, 2021 U.S. App. LEXIS 6689, at *2 (Fed. Cir. Mar. 8, 2021) (granting mandamus to stay case deadlines until the district court has resolved transfer motion) (citations and quotations omitted); *accord In re Google Inc.*, 2015 U.S. App. LEXIS 16544, at *2 (Fed. Cir. July 16, 2015).

8. <u>Plaintiffs' Requests Seek Information Protected by Privileges, Work Product Protection, and the Constitutional Right to Privacy.</u>

Defendants are entitled to object to requests for production that would require disclosure of work product or privileged materials. Furthermore, Plaintiffs' demand for a privilege log is premature, as Defendants have not yet agreed to produce any documents and have only asserted objections. Defendants privilege review therefore has not even begun. Plaintiffs again ignore that Defendants have filed a motion for a protective order. Moreover, no protective order

5857416

governing the disclosure of confidential information has been entered (for the reasons described above) and this Court has not even had an opportunity to enter a Scheduling Order. Plaintiffs also have not met and conferred with Defendants regarding any such privilege log.

Plaintiffs' requests also seek information covered by the constitutional right to privacy and subject to third-party confidentiality obligations. Such information may also be subject to common interest and joint defense privileges. For example, their requests seek private and/or confidential information about third party contractors and consultants and Defendant Extreme Networks. Wood Decl., Dkt. No. 69-2 Ex. C. (RFP No. 88, 89 (for Brocade)); Ex. D. (RFP at 93, 95, 96 (for Broadcom)). It is up to Plaintiffs to explain why their interest in this private information outweighs their constitutional right to privacy. *See Mann v. University of Cincinnati*, 824 F. Supp. 1190, 1201-02 (S.D. Ohio 1993) (setting out the procedure for determining whether the constitutional right to privacy is overcome). Moreover, to the extent Plaintiffs' requests confidential information about third parties, such information cannot be produced without a protective order in place and their consent. But again, Plaintiffs never met and conferred with Defendants regarding these objections other than the tax privilege.

9. <u>Defendants Have Not Agreed to Produce Any Documents, So Plaintiffs Rule 34(b)(2)(C) Arguments Are Baseless.</u>

Plaintiffs further argue that the objections to the Requests for Production should be waived because Defendants do not specify whether any documents are being withheld on the basis of their objections. Defendants have not agreed to produce any documents at this stage. This requirement is only implicated where a party objects to a request *and* produces some documents responsive to the request. *See* Fed. R. Civ. P. 34(b)(2)(C), Advisory Committee Note to 2015 Amendment ("This amendment should end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting

- 24 -

party uncertain whether any relevant and responsive information has been withheld on the basis of the objections."). Moreover, Plaintiffs' requests are irrelevant, vague, overbroad, and confusing. As such, Defendants cannot yet state whether responsive documents will be withheld based on any given objection until Defendants first agree to produce documents (after the pending motions are decided and only if discovery proceeds in this forum) and even then only after the requests are more narrowly drawn.

## IV.    CONCLUSION

Plaintiffs have repeatedly used the discovery process as a tool to force Defendants to submit to this Court's jurisdiction despite Defendants' clear and consistent position that it will not do so while their motions to dismiss are pending. Plaintiffs' second motion to compel is simply the latest in their series of attempts to punish Defendants for asserting their constitutional and legal rights. For all the reasons set forth above, and to prevent Plaintiffs from taking advantage of Defendants' lawful position before this Court makes a determination on the pending motion for a protective order, Defendants respectfully request that this Court deny Plaintiffs' second motion to compel. For the avoidance of doubt, Defendants do not intend to submit to the Court's jurisdiction by opposing this motion to compel and reserve all of their jurisdictional and venue defenses.

Dated:  June 2, 2021                       HUESTON HENNIGAN LLP


                                           By:    _/s/ Alison Plessman_____
                                                  Alison Plessman
                                                  Attorneys for Defendants
                                                  Broadcom, Inc.
                                                  Brocade Communications Systems LLC

5857416