IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., | § § § § § § § § § § § § § § § | Case No. 3:20-cv-00451 |
| Plaintiffs, | | |
| v. | | **Jury Demand** |
| BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; AND EXTREME NETWORKS, INC. | | |
| Defendants. | | |

## DECLARATION OF OLIVIA L. WEBER IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL RESPONSES FROM DEFENDANT EXTREME NETWORKS, INC.

I, Olivia L. Weber, declare and attest as follows:

1. I am an attorney at the law firm of Irell & Manella LLP, counsel of record for SNMP Research, Inc. ("SNMP Research" or "Plaintiff") and SNMP Research International, Inc. (together, "Plaintiffs" or "SNMP") in this action. I am a member in good standing of the State Bar of California and have been admitted pro hac vice to this Court. I have personal knowledge of the facts set forth in this Declaration and, if called to testify, I could and would testify competently thereto under oath.

2. On April 23, 2018, Jennifer Sipes, of Defendant Extreme Networks, Inc. ("Extreme"), emailed John Wood, counsel for SNMP, in which she provided a "Brocade product list with SNMP Research software," and identified the following products: Brocade VDX 8770 Series; Brocade VDX 6710 Series; Brocade VDX 6720 Series; Brocade VDX 6730 Series; Brocade VDX 6740 Series; Brocade VDX 6940 Series; Brocade SLX 9850 Series; Brocade SLX 9540 Series; Brocade SLX 9140 Series; Brocade SLX 9240 Series. A copy of this email chain is attached hereto as Exhibit A. The quoted text is on page 7 of Exhibit A.

3. On August 23, 2018, Jennifer Sipes, of Extreme, emailed John Wood, in which she stated that "We use this SNMP for VDX and SLX product lines." *See* Exhibit A.

4. On February 27, 2020, Tara Flanagan, of Extreme, emailed John Wood, counsel for SNMP, stating "as you noted below, Extreme needs to license SNMP software to cover the Brocade license that Brocade had with SNMP for the SLX and NOS-related Extreme software." A copy of this email chain is attached hereto as Exhibit B.

5. On June 5, 2020, Tara Flanagan, of Extreme, emailed John Wood, counsel for SNMP, and stated that "[y]es, we have identified the products using the SNMP Research sw [sic] and the business team is now trying to calculate the shipments." On June 11, 2018, Paul Segalini, of Extreme, emailed John Wood, counsel for SNMP, and stated that "[f]or the Brocade products, we have pulled the list of the products (see attached SKU list) using SNMP software, and have calculated the shipments made by year going back to 2017. Please see the yearly summary below and the more detailed SKU breakdown in the attached Word document." A copy of this email chain is attached hereto as Exhibit C.

6. On December 26, 2020, Plaintiff served written discovery on Extreme. This discovery included: a First Set of Interrogatories ("Interrogatories"), attached hereto as Exhibit D; a First Set of Requests for Production ("RFPs"), attached hereto as Exhibit E; and a First Set of Requests for Admission ("RFAs"), attached hereto as Exhibit F.

7. On January 16, 2021, Defendants Extreme, Broadcom Inc. ("Broadcom"), and Brocade Communications Systems LLC ("Brocade") (collectively "Defendants") filed a motion to stay discovery and for a protective order. Dkt. 47. On January 24, 2021, given Defendants' claim that they could not respond to certain discovery because they had no opportunity to inspect Plaintiff's copy of

the software deposited with the copyright office, Plaintiff proposed an expedited mutual exchange of all parties' software. Neither Extreme nor any other Defendant accepted that offer.

8. On January 25, 2021, Extreme served responses to Plaintiff's written discovery, which consisted solely of objections. *See* Dkts. 60-20, 60-21, 60-22.

9. On January 29, 2021, Plaintiff served its Second Set of Requests for Production ("Second RFPs") on Extreme, attached hereto as Exhibit G.

10. On March 1, 2021, Extreme served its responses to the Second RFPs, which again consisted solely of objections. *See* Dkt. 70-4.

11. Plaintiff met and conferred with Extreme regarding its objections. On April 30, 2021, Jordan Feirman, counsel for Extreme, emailed John Wood, counsel for SNMP, stating that "[t]he parties still disagree about the scope of the defined term "SNMP Research Software," although based on the course of dealing between the parties and the allegations in the Complaint, Extreme has an understanding concerning portions of code/software to which SNMP is laying claim." A copy of this email chain is attached hereto as Exhibit H.

12. On June 25, 2021, the Court issued its order denying the motion to stay discovery and for a protective order. Dkt. 75 at 16. The Court also denied SNMP Research's three pending motions to compel without prejudice, subject to potential refiling after the parties' ability to meet and confer. *Id.* at 17. The same day, Plaintiff's counsel requested an early July meet and confer to discuss Extreme's supplemental responses. On July 8, 2021, Plaintiff and Extreme had their first call. Extreme at that time volunteered that rather than discussing all of its objections during the call, it would produce supplemental responses by July 22, 2021. Extreme stated their supplemental responses would reduce the number of objections (including reducing objections to reflect the Court's recent ruling) and would be "less annoying" to Plaintiff.

13. On July 21, 2021, Extreme informed Plaintiff that it no longer intended to produce supplemental responses on July 22, stating, *inter alia*, that it "would lead to more meaningful responses to continue negotiating . . . ." Plaintiff was surprised, given Extreme's prior statement that it would produce supplemental responses with fewer objections in order to streamline negotiations. Plaintiff requested Extreme to produce responses as promised. A copy of the email chain concerning these communications is attached hereto as <u>Exhibit I</u>.

14. Extreme served supplemental responses on July 22, 2021, which still contained each of the objections from its prior responses, did not identify what documents and information were being withheld based on which objections, and did not acknowledge or address several issues that the parties had previously agreed upon, such as the definition of "affiliates" and the wording of Second RFPs 68 and 69.

15. Plaintiff also initiated four joint meet and confer calls with Extreme, Broadcom, and Brocade on July 15, July 21, July 28, and August 5, 2021. During these calls, Plaintiff repeatedly attempted to reach agreement with Extreme. For example, on July 15, 2021, Plaintiff proposed that to move discovery forward, Extreme could initially respond by limiting the products responsive to the requests to the list of product families identified in the Complaint. Plaintiff proposed this compromise as a way to get discovery started while the parties continued to negotiate the definition of the term "SNMP Research Software." Plaintiff made clear that it was "not waiving its rights to seek information and documents on additional products that are not presently identified in the product families listed in [the Complaint]." Extreme accepted this proposal on July 28, 2021. A copy of the email chain concerning these communications is attached hereto as <u>Exhibit J</u>.

16. On July 28, 2021, Extreme advised for the first time that, contrary to its prior agreement, it would be proceeding "lockstep" with Broadcom and Brocade and, therefore, would

produce substantive supplemental responses on August 27, 2021, alongside Broadcom and Brocade. Extreme agreed to maintain open communication should it have any questions about Plaintiff's requests. *See id.* Plaintiff never received any inquiries.

17. On August 4, 2021, the parties discussed Plaintiff's request for a "build environment" and associated provisions in the draft protective order. All Defendants stated that a build environment would be unnecessary. Plaintiff explained that a build environment would be necessary to rebut any assertion that the allegedly infringing software never made it into Defendants' products shipped to customers, but Defendants still would not agree to a build environment provision.

18. On August 8, 2021, Extreme served its First Set of Requests for Production and First Set of Interrogatories upon Plaintiff. This included a request for all source code for Plaintiff's copyrighted works.

19. Plaintiff first circulated a draft protective order in January 2021, and agreed not to argue that Defendants' negotiating, agreeing to, and/or entering a protective order would constitute a waiver of any defense. After Extreme, Broadcom, and Brocade continued to delay negotiations and refused to consider a source code provision for months, the parties finally concluded the protective order negotiations and filed the order with the Court on September 3, 2021. Dkt. 84-1.

20. On August 27, 2021, Extreme served its Second Supplemental Responses to Plaintiff's Interrogatories (Exhibit K), First and Second Sets of RFPs (Exhibits L and M), and RFAs (Exhibit N). The production was comprised of 125 public documents and a one-page confidential PowerPoint chart listing Extreme's executives. It did not include an unredacted copy of the letter from Broadcom to Extreme (referenced in Plaintiff's Motions as "the Simone Yew letter"), even though Defendants had already agreed they no longer objected to producing it. Extreme's responses continued to repeat the improper "general" objections and the "specific" objections from its initial responses and did not

comply with the parties' stipulated ESI Protocol, Dkt. 52-1, as the documents were not produced as PDFs, metadata for all documents was not included in the delimited load files, and MD5Hash codes were not provided as to each document. For example, the chart listing Extreme's executives contains metadata that Extreme was required to produce, *see id.* at 2 (requiring "Created" date, "Last Modified By," and "Author"), but Extreme did not include that metadata in the delimited load file, which means that when Plaintiff loads this document into its e-discovery platform, Plaintiff will not be able to ascertain when the chart was created or when it was last modified without manually reviewing the properties of each electronic document, despite the parties' agreement that said fields would be included within load files so as to make review of electronic documents more efficient. As another example, the MD5Hash was included for only 7 of the 127 documents produced.

21. On August 31, 2021, Plaintiff contacted Extreme's counsel regarding their availability to meet and confer regarding its second supplemental responses. After Extreme ignored Plaintiff's first five requests for its availability, the parties met and conferred on September 16, 2021.

22. On September 16, 2021, Extreme and Plaintiff discussed (among other things) the disputed term "SNMP Research Software." Extreme stated that this term is not tied to the alleged infringement, and that it did not know what software the term encompasses. Extreme proposed narrowing the definition to encompass only the version of Plaintiff's software that Extreme stated was contained in the Extreme products identified in the complaint. Plaintiff explained that it could not limit "SNMP Research Software" to a particular version of software without investigation of what source code Extreme actually has in its possession, particularly given that Plaintiff does not have any discovery regarding any other products not identified in the complaint. The parties also discussed production of source code, and Extreme continued to insist on a "sequence" where Extreme would inspect Plaintiff's deposit copies first before deciding what code, if any, it would produce to Plaintiff.

A copy of the email chain concerning communications over these issues as well as other issues is attached hereto as Exhibit O.

23. The parties reached agreement on very little during the September 16 call. Extreme agreed to produce an unredacted copy of the one-page letter that Broadcom had sent Extreme by September 23, 2021, to revise the form of production to comply with the form specified in the parties' ESI protocol (although it represented it had produced all metadata), and it agreed that attorney-client privilege does not protect the names of Extreme personnel who searched for Extreme products containing Plaintiff's software. Extreme also stated that it would further investigate certain topics (such as financials), but Extreme would not agree to (a) withdraw any other objections, (b) provide all responsive documents once it concluded its investigation, or (c) produce any supplementation by a date certain. *See* Exhibit O.

24. On September 23, 2021, Extreme produced an unredacted copy of the one-page Simone Yew letter from Broadcom to Extreme, which Broadcom had previously forwarded to Plaintiff in redacted form. A copy of the unredacted letter is attached hereto as Exhibit P.

Executed this 4th day of October, 2021, at Newport Beach, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

/s/ Olivia L. Weber
Olivia L. Weber