# EXHIBIT O

# Weber, Olivia

| | |
|---|---|
| **From:** | Weber, Olivia |
| **Sent:** | Monday, September 20, 2021 5:18 PM |
| **To:** | Demers, Leslie A; Ashley, Matt; 'jwood@emlaw.com'; 'Cheryl G. Rice' |
| **Cc:** | Neukom, John (Jay); 'Alison Plessman'; Salvatore Bonaccorso |
| **Subject:** | RE: SNMP Research, Inc. et al. v. Extreme Networks, Inc. - Second Supplemental Discovery Responses |

Hi Leslie,

I am following up regarding our meet and confer on September 16. I've combined some of the categories set forth in my prior email and noted the most significant points of discussion below.

- **Product requests:** The parties discussed Extreme's basis for limiting its discovery responses to only those product families identified in the complaint, and whether (and when) Extreme intends to provide responses as to other products. Extreme's position is that it cannot answer that question without an understanding as to the term "SNMP Research Software." Extreme agreed that Plaintiffs were not waiving their rights to seek discovery beyond the products identified in the complaint, but posited that at this time, Extreme is solely proceeding on the product families identified in the complaint. Plaintiffs reiterated that if Extreme is aware of other products containing SNMP's software, it must identify those.

   The parties also discussed the request for revenues and costs of any other products and services sold with the products identified in response to Interrogatory 1. Plaintiffs asked why Extreme was not able to respond to that request. Extreme's position is that it was unclear what "sold with" or "as a result of" means, and that it needs more insight. Plaintiffs explained, as they have previously, that products and services might constitute products like a power cord sold with a switch, for example, or additional memory, and so the request seeks all the revenue and costs associated with those add-ons. Extreme understood and promised to investigate but could not commit to production.

- **Definitions:**

    a. **"SNMP Research Software":** The parties discussed the term at length and were not able to reach a solution. Ultimately, Extreme's position remains that it does not know what "SNMP Research Software" refers to and cannot respond to discovery requests that include that term.

    b. **Others:** The parties discussed "consent payment." Plaintiffs explained that they are seeking documents constituting the consent payment identified in SEC filings, in whatever form that payment took. Extreme will look for evidence that the consent payment transpired and then consider and tailor the request. Extreme's position is that it needs two weeks for that investigation.

- **Sequencing of source code:** The parties discussed source code production. Extreme is not willing to produce its source code and continues to demand one-sided inspection of SNMP Research's deposit copies.

- **Production dates:** Plaintiffs asked whether Extreme is willing to provide an end date for the rolling production, or whether it is standing on its response that "it would be irresponsible to commit to an end date when the parties have not yet reached agreement on what exactly SNMP's seventy (70) document requests are seeking, most notably with respect to the definition of SNMP Research Software." Extreme responded that it is standing on that objection. Plaintiffs also asked whether Extreme could provide a timeline for responses that did not include the disputed term "SNMP Research Software," like financials tied to Interrogatory 1 products, licensing communications as to SNMP Research International, and the Simone Yew letter. Extreme agreed to produce the

1

- Simone Yew letter by September 23, and would give more thought to a timeline for producing financials.   Extreme could not commit to any date for production for any other documents that it intends to produce.

- **ESI Protocol**: Plaintiffs asked if Extreme provided all the meta data available.  Extreme's position was that it produced to us all the meta data that it had.

- **Compliance with Rule 34(b)(c)(2):**  Plaintiffs asked if Extreme is standing on its position that "Extreme's responses and objections define the scope of document collection and review that it is conducting."  Extreme confirmed that it is standing on that response given that document production is just beginning and Extreme does not know the scope of responsive documents.   Plaintiffs explained that they still do not understand what documents Extreme may be withholding based on which objections.

- **Compliance with Rule 26(a)(1)**:  Plaintiffs asked Extreme to withdraw its reservation of rights to rely on documents not produced or not responsive to SNMP Research's requests.  Extreme is standing on its objection but agrees to be bound by the response in counsel's September 9, 2021 email, which states that Extreme's "narrow reservation of rights does not create any new right to use such documents; it only reserves whatever rights Extreme may have (e.g., Extreme may rely on documents produced by other parties, or introduce FRE 1006 summaries created outside of the typical document discovery period)."  Plaintiffs' position is that Extreme must delineate the rights it believes it has.

- **Identification of people:** The parties discussed whether and when Extreme will identify persons involved in the search for SNMP Research Software in its products, in light of the fact that Extreme conducted a pre-litigation search for its products incorporating the Software and identified those products to SNMP.  Extreme confirmed that investigation is ongoing and that counsel will provide names if any people are identified, and it agreed that identities of people are not subject to privilege.  Plaintiffs also asked Extreme about its burden in identifying the services division persons that handle customer, debug, and other releases of software, and explained that it is unclear why it would be disproportionate or burdensome to identify a list of names.  Extreme continues to object to this request as disproportionate to the needs of the case.  Plaintiffs asked Extreme to identify the number of people in the services division so that Plaintiffs could better understand the burden, and Extreme is going to check on that number and provide it to Plaintiffs.

- **Identification of entities:** The parties discussed the requests to identify the entity that transferred SNMP Research Software to Extreme and to describe Broadcom's involvement in that transfer.  Plaintiffs stated that the requests only seek Extreme's own knowledge and understanding as to those issues.  Extreme will consider this position, but noted that the transfer was part of a complicated transaction and that a complex corporate family is involved, so it is not a simple determination as to which entities were involved.   The parties also discussed the request to identify products and associated information for the software that was transferred from Brocade, and Plaintiffs clarified that they are seeking to understand what products Extreme received and from which entity.  Extreme understood.  Plaintiffs noted that when Extreme produces the asset purchase agreement schedules/exhibits, those may sufficiently identify the products and thus answer the question.  Extreme could not commit to a date by which it would produce the schedules.

- **Documents relating to certain contracts and payments:**  The parties discussed Extreme's response that it does not intend to produce any documents relating to the "Purchase Agreement," "Consent Agreement," "Separate Sale Agreement," "Release," "Consent Payment," "Data Center Business acquisition," and Extreme's acquisition of assets as contemplated in the Extreme Sale, in light of the breadth of the requests.  Plaintiffs asked Extreme to describe its burden in producing these documents, along with a description or some indicator of the breadth and categories of documents so that Plaintiffs could better understand the burden.  Extreme refused to provide such a description and maintains that the requests are not proportionate to the case.

Best,

Olivia
(949) 760-5146

**From:** Weber, Olivia
**Sent:** Thursday, September 9, 2021 6:48 PM
**To:** 'Demers, Leslie A' <Leslie.Demers@skadden.com>; Ashley, Matt <MAshley@irell.com>; 'jwood@emlaw.com' <jwood@emlaw.com>; 'Cheryl G. Rice' <CRice@emlaw.com>
**Cc:** Neukom, John (Jay) <John.Neukom@skadden.com>; 'Alison Plessman' <aplessman@hueston.com>; Salvatore Bonaccorso <sbonaccorso@hueston.com>
**Subject:** RE: SNMP Research, Inc. et al. v. Extreme Networks, Inc. - Second Supplemental Discovery Responses

Hi Leslie,

Can you please let us know your availability for next week?

Best,

Olivia
(949) 760-5146

**From:** Demers, Leslie A <Leslie.Demers@skadden.com>
**Sent:** Thursday, September 9, 2021 5:15 PM
**To:** Weber, Olivia <oweber@irell.com>; Ashley, Matt <MAshley@irell.com>; 'jwood@emlaw.com' <jwood@emlaw.com>; 'Cheryl G. Rice' <CRice@emlaw.com>
**Cc:** Neukom, John (Jay) <John.Neukom@skadden.com>; 'Alison Plessman' <aplessman@hueston.com>; Salvatore Bonaccorso <sbonaccorso@hueston.com>
**Subject:** RE: SNMP Research, Inc. et al. v. Extreme Networks, Inc. - Second Supplemental Discovery Responses

Hi Olivia,

We have interleaved commentary to the 13 issues you raised in your email below, and numbered the issues for ease of reference.

We are not available during the times you proposed tomorrow, but can be available next week.

Best,
Leslie

\*       \*       \*

1. Paragraph 49 offer. Extreme's statement that the parties agreed that discovery is limited to those products identified in paragraph 49 of the Complaint is incorrect. In an effort to move discovery forward after months of delay, Plaintiffs suggested that Extreme respond to discovery for those products identified in paragraph 49. Plaintiffs never agreed to limit discovery to only those products, which was clearly explained in my emails on July 20th, July 22nd, and August 3rd. **We obviously disagree with your derisive mention of "delay," but will not waste time addressing that here. On SNMP's offer, we understand that SNMP is not "waiv[ing] its rights to seek information and documents on additional products that are not presently identified in the product families listed in" the complaint (July 20 email), but following from that and our discussions, we understand that – at this time – discovery is limited to the product families identified in the complaint. We responded to the requests on that basis.**

2. Definition of "SNMP Research Software." Extreme objected to scores of requests on the basis of this definition, despite Plaintiffs' good faith offer during the July/August meet and confers to allow Extreme to answer the requests

based on the products identified in the complaint, which Extreme accepted.  Extreme's repeated objections are even more egregious in light of its acknowledgement in an April 30, 2021 email from Jordan Feirman to John Wood, which stated that "Extreme has an understanding concerning portions of code/software to which SNMP is laying claim." **As we have discussed on numerous meet and confers, and as laid out in Extreme's supplemental responses, SNMP's definition of SNMP Research Software is not coextensive with the alleged copyrighted works asserted in Table 1 of the Complaint.  The mismatch between the portion of code/software to which SNMP is laying claim and SNMP's definition of SNMP Research Software is driving much of Extreme's concern.  As for Extreme's objections, we implemented SNMP's proposal as best as we could.  It is clear that the parties need to further meet and confer on SNMP's overbroad definition of SNMP Research Software to come up with a workable term.  Given that this is a foundational issue that is present in SNMP's requests to all parties, Extreme believes that the parties need to come to a joint understanding during joint meet and confers.  Despite this issue, Extreme notes that it was able to agree to produce documents or otherwise respond beyond its objection to the term for the vast majority of the document requests.**

3. "Sequencing" of source code.  Extreme has indicated that it will make its source code available for inspection at a "mutually agreed location, date, and time," but that this inspection is "subject to meeting and conferring on the proper sequencing of source code discovery."  For the reasons Plaintiffs have stated, sequencing is improper insofar as Extreme contends it is entitled to a one-sided opportunity to inspect Plaintiffs' code before Plaintiffs can inspect Extreme's code.  Plaintiffs served requests for production of source code more than eight months ago, on December 26, 2020, but Extreme (and all Defendants) have refused to produce their code.  Plaintiffs are entitled to inspect that code without further delay, and in order to move discovery forward, Plaintiffs have repeatedly sought to reach agreement regarding a date for simultaneous exchange of source code.  Plaintiffs intend to meet and confer with Extreme regarding this simultaneous exchange.  **Again, we still need to come to an understanding on what code SNMP believes is at issue in this litigation before we can reach agreement on source code productions.  Extreme believes that this, too, is an issue that affects all parties, and the parties should come to a joint understanding on sequencing of source code productions during a joint meet and confer.**

4. Production dates.  Rule 34 requires Extreme to provide a reasonable date for production to begin and end.  Extreme did not provide any such date.  **As you know, and unlike SNMP, Extreme already began its document productions contemporaneous with serving its supplemental responses.  SNMP has Extreme's start date of production.  With regard to end date of production, it would be irresponsible to commit to an end date when the parties have not yet reached agreement on what exactly SNMP's seventy (70) document requests are seeking, most notably with respect to the definition of SNMP Research Software.  That is especially so given that there is no case schedule in place and no defined document discovery period.  Nevertheless, Extreme is willing to meet and confer with all parties in the litigation on a document production schedule.  Indeed, SNMP seems to appreciate that coordination on end date of production is needed, as SNMP refused to identify an end date to their production in response to Extreme's targeted set of six (6) document requests until getting more detail on Extreme's productions.**

5. Stipulated ESI Protocol.  Extreme stipulated to an ESI protocol but did not adhere to that protocol in its production.  Specifically, meta data was not produced and the files were not provided as pdfs.  **We have loaded PDF copies to the same FTP as before, with the same password as before.  Please let us know if you have any issues accessing the files.  Meta data will be included where reasonably accessible, as per the ESI Protocol.**

6. Compliance with Rule 34(b)(2)(C).  Extreme has continued to rely on all its objections but has not stated whether any responsive materials are being withheld on the basis of their objections.  Extreme's general objection that "[r]esponsive materials, if any, are being withheld based on Extreme's objections set forth herein" is not only waived, it is improper.  Plaintiffs still do not know whether Extreme is withholding documents due to objections, and if so, which objections.  This approach contravenes the letter and spirit of Rule 34.  **Extreme has not waived any objections.  As allowed under the rules, Extreme's responses and objections define the scope of document collection and review that it is conducting. (*See, e.g.*, Fed. R. Civ. P. 34(b)(2)(C) advisory committee's note to 2015 amendment ("An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement**

that the materials have been 'withheld.'").) In any event, Extreme's investigation is ongoing and it does not yet know the entire universe of what exists for every request.

7. Production of documents in compliance with Rule 26(a)(1). Extreme has indicated that it is not waiving any right to rely on documents not produced in this case or that were not responsive to SNMP Research's requests, yet Rule 26(a)(1) requires Extreme to disclose copies of all documents in its possession that it may use to support its claims or defenses. **As indicated in Extreme's response to Request No. 46, Extreme agreed to produce all non-privileged documents in its possession, custody, or control located after a reasonably diligent search that it may seek to use at trial in this litigation. Extreme reserves "any right to rely on documents in this case that were not produced or that were not responsive to these requests." This narrow reservation of rights does not create any new right to use such documents; it only reserves whatever rights Extreme may have (e.g., Extreme may rely on documents produced by other parties, or introduce FRE 1006 summaries created outside of the typical document discovery period).**

8. Identification of people. Extreme did not identify persons involved in the search for SNMP Research Software in its products and said it is not aware of any non-privileged information responsive to this interrogatory. But attorney-client privilege does not protect identities of persons in this instance, and as counsel is aware, Extreme conducted a pre-litigation search for its products incorporating the SNMP Research Software and identified those products to SNMP Research. **Extreme's response notes that its investigation for Interrogatory No. 7 is ongoing, and it will supplement its responses as required when it is able to do so (including identifying relevant name(s)).** In addition, without proper justification, Extreme failed to identify the persons (and their titles and roles) responsible for managing customer, debug, and other releases of software. **Extreme identified the relevant division that handles customer, debug, and other releases of software in its response to Interrogatory No. 4. To get any more particular about the members of an entire division, Extreme needs to know what exactly SNMP is seeking that is actually relevant and proportional to the needs of the case.**

9. Identification of entities. Without proper justification, Extreme refused to identify the entity that transferred the products responsive to Interrogatory 1 and it refused to describe Broadcom's involvement in the transfer of SNMP Research Software to Extreme. **With regard to Interrogatory No. 11, Extreme understands that interrogatory to be directed to information held by Brocade and/or Broadcom, as it seeks the name, model, etc. of products beyond information provided in Interrogatory No. 1. Extreme is willing to discuss this further on a meet and confer, as indicated in its response. With regard to Interrogatory No. 14 on Broadcom's involvement in any transfer, Extreme does not speak on behalf of Broadcom. SNMP can – and, Extreme understands, already did – ask Broadcom about its role. (*See* Broadcom Interrogatory No. 15.)**

10. Extreme Products. Extreme provided release notes for product families in order to answer Interrogatory 1. But, these documents do not fully answer the question. Extreme did not provide release numbers, date of each release, date of first customer shipment, date of end of support, target operating system and processor, software or firmware release version, and operating system and processor for cross development tools. Furthermore, Extreme did not identify all product names, models, and other information that was requested. **As Extreme indicated, its investigation is ongoing and it expects to produce additional business records for this Interrogatory. However, SNMP is incorrect that release numbers and release dates are not provided; the documents produced already identify release numbers and dates of releases. (*See, e.g.*, EXTREME-00004992 – EXTREME-00005051 (18s.1.01a Release, dated March 11, 2019).)** In addition, without proper justification, Extreme simply refused to provide discovery with respect to the revenues/costs of other Extreme products/services sold with or as a result of the products identified in response to Interrogatory 1. **As explained in Extreme's response to Interrogatory No. 9, and as mentioned above, Extreme did not refuse anything without justification; rather, Extreme responded in good faith based on its understanding of the deal reached during meet and confers – i.e., to proceed now with discovery on the products actually identified by SNMP in the complaint.**

11. Other definitions. Despite Extreme's agreement during the meet and confers to keep an open line of communication about any confusion over scope or meaning of terms while it prepared its responses, Extreme nonetheless objects to the terms "Product, "build environment," and "Consent Payment." Extreme also continues to

5

object to plain English terms including but not limited to "receipt," "inserting," "adding," "incorporating," "compiling," "linking," "shipped," "permission," etc.  **Extreme's objections are spelled out in its responses and objections – e.g., paragraph 19 of Extreme's responses and objections to the First Set of RFPs details its objections to "Product," and how "documents" can "constitute" a "Consent Payment" continues to be incomprehensible.  Extreme is willing to meet and confer about any particular questions as to Extreme's positions that are laid out in its responses.**

12.  <u>Documents relating to certain contracts and payments</u>.  Extreme stated that it does not intend to produce documents relating to the "Purchase Agreement," "Consent Agreement," "Separate Sale Agreement," "Release," "Consent Payment," "Data Center Business acquisition," and Extreme's acquisition of assets as contemplated in the Extreme Sale, in light of the breadth of the requests.  Plaintiffs would like to meet and confer with Extreme to better understand Extreme's burden and explore potential ways to tailor these requests.  **Extreme would like to meet and confer with SNMP to better understand how SNMP believes that all documents relating to certain agreements and payments are tailored to the needs of this case.**  *See, e.g.*, *Martinez v. First Class Interiors of Naples, LLC*, No. 3:18-cv-00585, 2020 WL 7027504, at *6 (M.D. Tenn. Nov. 30, 2020) (granting protective order and requiring amendments to expansive requests, including requests that sought "all" information supporting the allegations).

13.  <u>Incomplete Production</u>.  The Asset Purchase Agreement is incomplete.  Extreme produced an Asset Purchase Agreement as document 7951.  None of the schedules and exhibits were produced which were clearly requested under Request 53.  **Extreme's document production is ongoing and – as indicated in its responses – it agreed to produce documents that constitute the March 29, 2017 Purchase Agreement and any amendments as requested.**

Leslie A. Demers
Skadden, Arps, Slate, Meagher & Flom LLP
One Manhattan West | New York | NY | 10001
T: +1.212.7353493 | F: +1.917.777.3493
leslie.demers@skadden.com

---

**From:** Weber, Olivia <oweber@irell.com>
**Sent:** Wednesday, September 8, 2021 2:20 PM
**To:** Demers, Leslie A (NYC) <Leslie.Demers@skadden.com>; Ashley, Matt <MAshley@irell.com>; 'jwood@emlaw.com' <jwood@emlaw.com>; 'Cheryl G. Rice' <CRice@emlaw.com>
**Cc:** Neukom, John (Jay) (PAL) <John.Neukom@skadden.com>; 'Alison Plessman' <aplessman@hueston.com>; Salvatore Bonaccorso <sbonaccorso@hueston.com>
**Subject:** [Ext] RE: SNMP Research, Inc. et al. v. Extreme Networks, Inc. - Second Supplemental Discovery Responses

Hi Leslie,

Thank you for letting us know that Extreme will be prepared to provide Plaintiffs with responses by Thursday.  We look forward to receiving these, although we note that Extreme has never before taken the position that any of the many prior meet and confers were not possible because Plaintiffs did not send a discovery letter prior to the calls.  We propose a meet and confer this Friday at either 9, 10, or 11 PST to discuss the information we receive from Extreme on Thursday as well as to discuss the requests that Extreme volunteered meeting and conferring over in its responses.  This is our fifth request for a time to meet and confer.  We request the courtesy of a response with your availability.

Best,

Olivia
(949) 760-5146

---

**From:** Demers, Leslie A <Leslie.Demers@skadden.com>
**Sent:** Tuesday, September 7, 2021 9:08 PM
**To:** Weber, Olivia <oweber@irell.com>; Ashley, Matt <MAshley@irell.com>; 'jwood@emlaw.com' <jwood@emlaw.com>; 'Cheryl G. Rice' <CRice@emlaw.com>
**Cc:** Neukom, John (Jay) <John.Neukom@skadden.com>; 'Alison Plessman' <aplessman@hueston.com>; Salvatore

6
Case 3:20-cv-00451-CEA-DCP   Document 96-17   Filed 10/04/21   Page 7 of 14   PageID #: 3651

Bonaccorso <sbonaccorso@hueston.com>
**Subject:** RE: SNMP Research, Inc. et al. v. Extreme Networks, Inc. - Second Supplemental Discovery Responses

Hi Olivia,

To be clear, you are presenting us with two choices: (1) schedule a meet and confer before having an opportunity to investigate the items on the agenda for the meet and confer, or (2) divert our resources to opposing another motion to compel. Despite this unproductive ultimatum, we will continue to investigate the items on your agenda and expect to be in a position to revert on the bulk of these issues by Thursday. In the meantime – if it would stop you from burdening the Court with another motion to compel – we can put time on the books to hear any questions you may have. But since you have not given us an opportunity to investigate the issues you just raised, we cannot commit to having responses.

Best,
Leslie

Leslie A. Demers
Skadden, Arps, Slate, Meagher & Flom LLP
One Manhattan West | New York | NY | 10001
T: +1.212.7353493 | F: +1.917.777.3493
leslie.demers@skadden.com

**From:** Weber, Olivia <oweber@irell.com>
**Sent:** Monday, September 6, 2021 8:43 PM
**To:** Demers, Leslie A (NYC) <Leslie.Demers@skadden.com>; Ashley, Matt <MAshley@irell.com>; 'jwood@emlaw.com' <jwood@emlaw.com>; 'Cheryl G. Rice' <CRice@emlaw.com>
**Cc:** Neukom, John (Jay) (PAL) <John.Neukom@skadden.com>; 'Alison Plessman' <aplessman@hueston.com>; Salvatore Bonaccorso <sbonaccorso@hueston.com>
**Subject:** [Ext] RE: SNMP Research, Inc. et al. v. Extreme Networks, Inc. - Second Supplemental Discovery Responses

Hi Leslie,

As I noted, Plaintiffs have no problem with Broadcom/Brocade sitting in on a meet and confer call with Extreme. But we do intend to discuss Extreme's responses on the meet and confer call we requested. To the extent counsel for Broadcom/Brocade would like to weigh in on that discussion, that's fine with us. Also as noted, we do not agree to indefinitely defer our call regarding Extreme's responses until after Broadcom/Brocade serve their discovery responses. A single call to discuss separate responses from Extreme and Broadcom/Brocade—two sets of separately represented Defendants—strikes us as unworkable and inefficient.

Notably, Extreme offered to meet and confer with Plaintiffs in many of their objections, and we intend to discuss those objections in a meet and confer. We nonetheless prepared a non-exhaustive list of additional issues for Extreme's convenience, per your request sent last Thursday (two days after my initial email inquiring as to your availability for a meet and confer). We responded that we would provide a letter, and we prepared one right away—working into the holiday weekend—in order to move discovery forward, given that Extreme was apparently conditioning a meet and confer on the receipt of a letter. We have now provided that to you and ask, for the fourth time, for Extreme's availability for a meet and confer call this week in the hopes of avoiding burdening the Court with a request for assistance.

Best,

Olivia
(949) 760-5146

**From:** Demers, Leslie A <Leslie.Demers@skadden.com>
**Sent:** Monday, September 6, 2021 10:52 AM
**To:** Weber, Olivia <oweber@irell.com>; Ashley, Matt <MAshley@irell.com>; 'jwood@emlaw.com' <jwood@emlaw.com>; 'Cheryl G. Rice' <CRice@emlaw.com>
**Cc:** Neukom, John (Jay) <John.Neukom@skadden.com>; 'Alison Plessman' <aplessman@hueston.com>; Salvatore Bonaccorso <sbonaccorso@hueston.com>
**Subject:** RE: SNMP Research, Inc. et al. v. Extreme Networks, Inc. - Second Supplemental Discovery Responses

Hi Olivia,

Thanks for your note.

At the outset, we do not find it productive to repeatedly attempt to foist meet and confers on us before providing us with an agenda of the issues you would like to discuss. You claim that this "is our third request for your availability," but two days ago – the Saturday of a holiday weekend – was the first time that you told us what you would like to discuss. It would be unproductive to schedule a meet and confer without this information. We are considering the 13 issues raised in your email from Saturday and will revert on the substance as soon as we are able to do so, in the hopes that we can moot or narrow the issues that we would need to discuss (as proposed in my earlier email).

Separately, as to meet/confer attendance, this topic has gotten somewhat odd in recent months, with SNMP seemingly suggesting that (i) various of its meet/confer discussions were with only one defendant versus another, even though all defendants attended, and (ii) SNMP could dictate which defendants participate in which of its meet/confers. To add a little clarity to the topic on behalf of Extreme, Broadcom, and Brocade: As a general matter, all defendants believe counsel for all defendants should attend the meet and confers with SNMP or at least be invited to participate. Many of the discovery requests issued to each defendant are identical and there are many overlapping issues in this case. It is therefore important for all parties to participate in such discussions to the extent feasible. Thus, please invite all defendants to participate in meet and confer discussions going forward. Defendants reserve their rights to decline to participate in a meet and confer discussion if other counsel is not invited to attend or is not available to attend. If there is a compelling reason for a party not to participate in a discussion, we can address that situation when it arises. But the default rule should be that everyone participates.

Thanks,
Leslie

Leslie A. Demers
Skadden, Arps, Slate, Meagher & Flom LLP
One Manhattan West | New York | NY | 10001
T: +1.212.7353493 | F: +1.917.777.3493
leslie.demers@skadden.com

---

**From:** Weber, Olivia <oweber@irell.com>
**Sent:** Saturday, September 4, 2021 12:07 PM
**To:** Demers, Leslie A (NYC) <Leslie.Demers@skadden.com>; Ashley, Matt <MAshley@irell.com>; 'jwood@emlaw.com' <jwood@emlaw.com>; 'Cheryl G. Rice' <CRice@emlaw.com>
**Cc:** Neukom, John (Jay) (PAL) <John.Neukom@skadden.com>; 'Alison Plessman' <aplessman@hueston.com>; Salvatore Bonaccorso <sbonaccorso@hueston.com>
**Subject:** [Ext] RE: SNMP Research, Inc. et al. v. Extreme Networks, Inc. - Second Supplemental Discovery Responses

Hi Leslie,

Below are the global issues that we plan to raise on our meet and confer call with Extreme. Plaintiffs reserve all rights to object to Extreme's discovery responses and objections, and so to the extent an issue is not specifically called out in the list below, we are not waiving our rights to meet and confer over that issue. Please respond back to us with your availability to meet and confer next week. This is our third request for your availability.

Paragraph 49 offer. Extreme's statement that the parties agreed that discovery is limited to those products identified in paragraph 49 of the Complaint is incorrect. In an effort to move discovery forward after months of delay, Plaintiffs suggested that Extreme respond to discovery for those products identified in paragraph 49. Plaintiffs never agreed to limit discovery to only those products, which was clearly explained in my emails on July 20th, July 22nd, and August 3rd.

Definition of "SNMP Research Software." Extreme objected to scores of requests on the basis of this definition, despite Plaintiffs' good faith offer during the July/August meet and confers to allow Extreme to answer the requests based on the products identified in the complaint, which Extreme accepted. Extreme's repeated objections are even more egregious in light of its acknowledgement in an April 30, 2021 email from Jordan Feirman to John Wood, which stated that "Extreme has an understanding concerning portions of code/software to which SNMP is laying claim."

"Sequencing" of source code. Extreme has indicated that it will make its source code available for inspection at a "mutually agreed location, date, and time," but that this inspection is "subject to meeting and conferring on the proper sequencing of source code discovery." For the reasons Plaintiffs have stated, sequencing is improper insofar as Extreme contends it is entitled to a one-sided opportunity to inspect Plaintiffs' code before Plaintiffs can inspect Extreme's code. Plaintiffs served requests for production of source code more than eight months ago, on December 26, 2020, but Extreme (and all Defendants) have refused to produce their code. Plaintiffs are entitled to inspect that code without further delay, and in order to move discovery forward, Plaintiffs have repeatedly sought to reach agreement regarding a date for simultaneous exchange of source code. Plaintiffs intend to meet and confer with Extreme regarding this simultaneous exchange.

Production dates. Rule 34 requires Extreme to provide a reasonable date for production to begin and end. Extreme did not provide any such date.

Stipulated ESI Protocol. Extreme stipulated to an ESI protocol but did not adhere to that protocol in its production. Specifically, meta data was not produced and the files were not provided as pdfs.

Compliance with Rule 34(b)(2)(C). Extreme has continued to rely on all its objections but has not stated whether any responsive materials are being withheld on the basis of their objections. Extreme's general objection that "[r]esponsive materials, if any, are being withheld based on Extreme's objections set forth herein" is not only waived, it is improper. Plaintiffs still do not know whether Extreme is withholding documents due to objections, and if so, which objections. This approach contravenes the letter and spirit of Rule 34.

Production of documents in compliance with Rule 26(a)(1). Extreme has indicated that it is not waiving any right to rely on documents not produced in this case or that were not responsive to SNMP Research's requests, yet Rule 26(a)(1) requires Extreme to disclose copies of all documents in its possession that it may use to support its claims or defenses.

Identification of people. Extreme did not identify persons involved in the search for SNMP Research Software in its products and said it is not aware of any non-privileged information responsive to this interrogatory. But attorney-client privilege does not protect identities of persons in this instance, and as counsel is aware, Extreme conducted a pre-litigation search for its products incorporating the SNMP Research Software and identified those products to SNMP Research. In addition, without proper justification, Extreme failed to identify the persons (and their titles and roles) responsible for managing customer, debug, and other releases of software.

Identification of entities. Without proper justification, Extreme refused to identify the entity that transferred the products responsive to Interrogatory 1 and it refused to describe Broadcom's involvement in the transfer of SNMP Research Software to Extreme.

Extreme Products. Extreme provided release notes for product families in order to answer Interrogatory 1. But, these documents do not fully answer the question. Extreme did not provide release numbers, date of each release, date of first customer shipment, date of end of support, target operating system and processor, software or firmware release

version, and operating system and processor for cross development tools. Furthermore, Extreme did not identify all product names, models, and other information that was requested. In addition, without proper justification, Extreme simply refused to provide discovery with respect to the revenues/costs of other Extreme products/services sold with or as a result of the products identified in response to Interrogatory 1.

Other definitions. Despite Extreme's agreement during the meet and confers to keep an open line of communication about any confusion over scope or meaning of terms while it prepared its responses, Extreme nonetheless objects to the terms "Product, "build environment," and "Consent Payment." Extreme also continues to object to plain English terms including but not limited to "receipt," "inserting," "adding," "incorporating," "compiling," "linking," "shipped," "permission," etc.

Documents relating to certain contracts and payments. Extreme stated that it does not intend to produce documents relating to the "Purchase Agreement," "Consent Agreement," "Separate Sale Agreement," "Release," "Consent Payment," "Data Center Business acquisition," and Extreme's acquisition of assets as contemplated in the Extreme Sale, in light of the breadth of the requests. Plaintiffs would like to meet and confer with Extreme to better understand Extreme's burden and explore potential ways to tailor these requests.

Incomplete Production. The Asset Purchase Agreement is incomplete. Extreme produced an Asset Purchase Agreement as document 7951. None of the schedules and exhibits were produced which were clearly requested under Request 53.

Best,

Olivia
(949) 760-5146

---

**From:** Weber, Olivia
**Sent:** Thursday, September 2, 2021 3:00 PM
**To:** Demers, Leslie A <Leslie.Demers@skadden.com>; Ashley, Matt <MAshley@irell.com>; 'jwood@emlaw.com' <jwood@emlaw.com>; 'Cheryl G. Rice' <CRice@emlaw.com>
**Cc:** Neukom, John (Jay) <John.Neukom@skadden.com>; 'Alison Plessman' <aplessman@hueston.com>; Salvatore Bonaccorso <sbonaccorso@hueston.com>
**Subject:** RE: SNMP Research, Inc. et al. v. Extreme Networks, Inc. - Second Supplemental Discovery Responses

Hi Leslie,

We would be glad to provide you with a letter and we have no problem with Broadcom/Brocade sitting in on a meet and confer call with Extreme. However, we do not agree to defer our meet and confer over Extreme's responses until after Broadcom/Brocade serve their discovery responses at some unknown future date. Moreover, it makes good sense to have separate calls to discuss the disputed issues as to each Defendant's responses, particularly in light of the number of remaining disputed issues made evident in Extreme's responses, and given that a significant number of Extreme's responses combine objections with an offer to continue meeting and conferring. A call to discuss the Extreme responses and a separate call to discuss the Broadcom/Brocade responses therefore strikes us as a much more efficient approach.

Please let us know whether you are available for a call tomorrow between 9 a.m.-2 p.m. Pacific, and we will endeavor to provide you a letter ahead of the call. If you are not available tomorrow, please let us know what dates/times you are available next week.

Best,

Olivia
(949) 760-5146

10

Case 3:20-cv-00451-CEA-DCP   Document 96-17   Filed 10/04/21   Page 11 of 14   PageID #: 3655

**From:** Demers, Leslie A <Leslie.Demers@skadden.com>
**Sent:** Thursday, September 2, 2021 7:57 AM
**To:** Weber, Olivia <oweber@irell.com>; Ashley, Matt <MAshley@irell.com>; 'jwood@emlaw.com' <jwood@emlaw.com>; 'Cheryl G. Rice' <CRice@emlaw.com>
**Cc:** Neukom, John (Jay) <John.Neukom@skadden.com>; 'Alison Plessman' <aplessman@hueston.com>; Salvatore Bonaccorso <sbonaccorso@hueston.com>
**Subject:** RE: SNMP Research, Inc. et al. v. Extreme Networks, Inc. - Second Supplemental Discovery Responses

Hi Olivia,

Thanks for reaching out. As you know, SNMP has served over one hundred discovery requests on Extreme. Extreme supplemented its detailed positions on each of those requests on Friday, and produced over 8000 pages of documents in the first of its rolling productions. We have not yet received a letter or other communication discussing – on a per-request basis – any disagreement with the positions we set forth in those supplements.

To bring some order to our discussions, and to make sure our discussions are productive and efficient, please let us know which of these requests you would like to discuss, or any other global issues on your agenda. For example, should SNMP identify any discrete issue with our responses, we may be able to investigate this with our client in advance of any calls, or otherwise respond in writing and potentially narrow or moot the issues.

Finally, we believe it is most productive to include counsel for all parties in these discussions. To that end, it makes good sense to us to convene after service of Broadcom/Brocade's responses to allow us to engage in joint discussions.

Best,
Leslie

Leslie A. Demers
Skadden, Arps, Slate, Meagher & Flom LLP
One Manhattan West | New York | NY | 10001
T: +1.212.7353493 | F: +1.917.777.3493
leslie.demers@skadden.com

**From:** Weber, Olivia <oweber@irell.com>
**Sent:** Tuesday, August 31, 2021 6:08 PM
**To:** Demers, Leslie A (NYC) <Leslie.Demers@skadden.com>; Ashley, Matt <MAshley@irell.com>; 'jwood@emlaw.com' <jwood@emlaw.com>; 'Cheryl G. Rice' <CRice@emlaw.com>
**Cc:** Neukom, John (Jay) (PAL) <John.Neukom@skadden.com>; 'Alison Plessman' <aplessman@hueston.com>; Salvatore Bonaccorso <sbonaccorso@hueston.com>
**Subject:** [Ext] RE: SNMP Research, Inc. et al. v. Extreme Networks, Inc. - Second Supplemental Discovery Responses

Hi Leslie,

Please let us know if you are available to meet and confer regarding Extreme's second supplemental responses to Plaintiff's first and second sets of discovery. We are available tomorrow between 10 a.m.-2:00 p.m. Pacific, and on Friday between 9 a.m.-2p.m. Pacific.

Best,

Olivia

**Olivia Weber** (she/her)| Irell & Manella LLP | 949.760.5146 | oweber@irell.com

**From:** Demers, Leslie A <Leslie.Demers@skadden.com>
**Sent:** Friday, August 27, 2021 8:31 PM
**To:** Weber, Olivia <oweber@irell.com>; Ashley, Matt <MAshley@irell.com>; 'jwood@emlaw.com' <jwood@emlaw.com>; 'Cheryl G. Rice' <CRice@emlaw.com>
**Cc:** Neukom, John (Jay) <John.Neukom@skadden.com>; 'Alison Plessman' <aplessman@hueston.com>; Salvatore Bonaccorso <sbonaccorso@hueston.com>
**Subject:** SNMP Research, Inc. et al. v. Extreme Networks, Inc. - Second Supplemental Discovery Responses

Dear Counsel:

Thank you for your agreement to treat material labeled as confidential as such pending entry of a protective order. Pursuant to that agreement, please see the attached supplemental discovery responses and production letter.

Best,
Leslie

Leslie A. Demers
Skadden, Arps, Slate, Meagher & Flom LLP
One Manhattan West | New York | NY | 10001
T: +1.212.7353493 | F: +1.917.777.3493
leslie.demers@skadden.com

-------------------------------------------------------------------------------
This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

================================================================================


PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.


-------------------------------------------------------------------------------
This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

===============================================================================

--------------------------------------------------------------------------------
This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

===============================================================================

--------------------------------------------------------------------------------
This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

===============================================================================

--------------------------------------------------------------------------------
This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

===============================================================================