# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., | § § § | Case No. 3:20-cv-00451 |
| Plaintiffs, | § § | |
| v. | § § | <u>Jury Demand</u> |
| BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; AND EXTREME NETWORKS, INC. | § § § § | |
| Defendants. | § § § | |

**PLAINTIFF SNMP RESEARCH, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY RESPONSES FROM DEFENDANT EXTREME NETWORKS, INC.**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................................. 1

II.  FACTS AND RELEVANT PROCEDURAL POSTURE .................................. 4

    A.   THE COMPLAINT .................................................................................. 4

    B.   PLAINTIFF'S DISCOVERY, PRIOR MOTIONS TO COMPEL, AND
        THIS COURT'S PRIOR ORDER ...................................................... 5

    C.   PLAINTIFF'S FURTHER MEET AND CONFER EFFORTS ........................... 6

III. ARGUMENT ...................................................................................................... 8

    A.   EXTREME ASSERTS NUMEROUS OBJECTIONS WITH NO
        BASIS AND FAILS TO IDENTIFY WHETHER IT IS
        WITHHOLDING DOCUMENTS BASED ON THESE OBJECTIONS ............ 8

        1.   EXTREME'S GENERAL OBJECTIONS ARE IMPROPER
            AND SHOULD BE DEEMED WAIVED ................................................ 8

        2.   EXTREME'S RELEVANCY OBJECTIONS ARE
            MERITLESS .............................................................................. 9

        3.   EXTREME'S OVERBREADTH, BURDEN, AND
            PROPORTIONALITY OBJECTIONS ARE MERITLESS .................. 11

    B.   EXTREME DOES NOT IDENTIFY WHETHER IT IS
        WITHHOLDING DOCUMENTS ON AN OBJECTION-BY-
        OBJECTION BASIS .......................................................................... 13

    C.   EXTREME'S REMAINING OBJECTIONS ARE ALSO MERITLESS .......... 14

        1.   EXTREME FEIGNS CONFUSION OVER THE DEFINITION
            OF "SNMP RESEARCH SOFTWARE" .................................. 14

        2.   EXTREME INCORRECTLY REFUSES TO PRODUCE ITS
            SOURCE CODE FOR PRODUCTS CONTAINING
            PLAINTIFF'S SOFTWARE ...................................................... 15

        3.   EXTREME'S OBJECTIONS TO THE MEANING OF PLAIN
            TERMS ARE MERITLESS ...................................................... 17

    D.   EXTREME SHOULD BE ORDERED TO IDENTIFY ALL
        PRODUCTS CONTAINING SNMP RESEARCH SOFTWARE AND
        TO ANSWER ALL ASSOCIATED RFPS ...................................... 19

    E.   EXTREME MUST RESPOND TO THE REQUESTS SEEKING
        IDENTIFICATION OF PEOPLE ...................................................... 21

    F.   EXTREME MUST RESPOND TO THE REQUESTS SEEKING
        IDENTIFICATION OF ENTITIES .................................................... 21

G.    EXTREME SHOULD BE ORDERED TO COMPLY WITH THE STIPULATED ESI PROTOCOL AND TO MAKE ITS PRODUCTIONS WITHIN A DATE CERTAIN .................................................22

H.    EXTREME SHOULD BE ORDERED TO PRODUCE DOCUMENTS AND ANSWER INTERROGATORIES WITHIN TWO WEEKS ...................23

IV.    CONCLUSION...........................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkisson v. Jacobs Eng'g Grp., Inc.*,
No. 3:13-CV-505-TAV-HBG, 2020 WL 8254452 (E.D. Tenn. Dec. 10, 2020) ......................9

*Home Fed. Bank of Tennessee v. Home Fed. Bank Corp.*,
No. 3:18-CV-379-JRG-DCP, 2019 WL 11670621 (E.D. Tenn. Sept. 18, 2019) ...................12

*Johnson v. Kraft Foods N. Am.*,
238 F.R.D. 648 (D. Kansas 2006)............................................................................................18

*Jones v. Am. River Transp. Co.*,
2020 WL 7865326 (W.D. Tenn. Jun. 17, 2020) ...............................................................11, 13

*Morgan, v. AMISUB (SFH), Inc.*,
2020 WL 4274586 (W.D. Tenn. July 24, 2020) ................................................................9, 15

*Neale v. Coloplast Corp.*,
No. 1:18-cv-00274-TRM, 2020 WL 6948361 (E.D. Tenn. Nov. 02, 2020)................9, 11, 18

*Siser N. Am., Inc. v. Herika G. Inc.*,
325 F.R.D. 200 (E.D. Mich. 2018) ....................................................................................8, 13

*Sobol v. Imprimis Pharm.*,
2017 WL 5035837 (E.D. Mich. Oct. 26, 2017) .......................................................................8

*Wesley Corp. v. Zoom T.V. Prod., LLC*,
No. 17-10021, 2018 WL 372700 (E.D. Mich. Jan. 11, 2018) .........................................11, 13

**Rules**

Fed. R. Civ. P. 26(b)(2).............................................................................................................13

Fed. R. Civ. P. 26(e)(1)(A) .......................................................................................................24

Fed. R. Civ. P. 33 .....................................................................................................................15

Fed. R. Civ. P. 34 ........................................................................................................13, 15, 23

Fed. R. Civ. P. 36(a)(4).............................................................................................................15

Fed. R. Civ. P. 37(a)(4).............................................................................................................8

Plaintiff SNMP Research, Inc. ("SNMP Research" or "Plaintiff") respectfully submits this Memorandum of Law in support of its Motion to Compel Discovery Responses ("Motion" or "Mot.") from Defendant Extreme Networks, Inc. ("Extreme").

## I.    INTRODUCTION

Despite the fact that this case has been pending for nearly a year, Extreme's total document production to date consists of <u>two pages</u> of internal Extreme documents and several public documents (such as Extreme's SEC filings) peppered in with that two-page production.  Extreme has indicated that it will produce documents or respond to Interrogatories for several requests but will not specify when this production will take place.  Instead, Extreme has indicated it will respond in a rolling production when it is ready.  Extreme's rolling production in the month since its first production consists of a single one-page document.  Moreover, with only a handful of exceptions, Extreme has refused to respond substantively to Plaintiff's interrogatories and requests for admission.  Instead, in <u>all</u> of its discovery responses (*i.e.*, its responses to Plaintiff's Interrogatories, Plaintiff's Requests for Production and Plaintiff's Requests for Admission), Extreme stands on "general objections" incorporated into every response and meritless "special" objections, never indicating which objections are leading to the withholding of substantive responses and documents.  Extreme does this despite settled law in this Circuit proscribing this approach and full notice from prior briefing that doing this subjects a party to waiver of its objections and despite multiple meet and confer calls aimed at resolving those "special" objections.

Plaintiff has attempted for months to work out its issues with Extreme, but it appears Extreme does not want to reach a resolution and instead prefers to delay and avoid production.  For instance, in order to determine the scope of Extreme's copyright infringement of Plaintiff's software, Plaintiff propounded requests using the defined term "SNMP Research Software."  Extreme claims not to understand what that term encompasses, yet Extreme admitted in writing prior to this litigation (*see*

Exhibit B)[1] that it was using Plaintiff's software in its products. Consequently, after months to prepare

its responses, at the very least, Extreme could and should have meaningfully responded to the discovery

with respect to the product lines and products for which Extreme already has conceded it needed, but

has never obtained, a license.

This Court should grant this Motion in its entirety. Specifically, the Court should:

1) Order that Extreme's general objections, relevancy objections (Category 1 in the table below), and its unsupported burden, overbreadth, and proportionality objections (Category 1) are waived for every request.

2) Order Extreme to identify whether documents or information are being withheld in reliance upon any objection(s) within two weeks of this Court's order or by a date certain.

3) Find that the term "SNMP Research Software" is not ambiguous and compel Extreme to respond to all requests to which it objects based on the definition of "SNMP Research Software" (Category 3 in the table below) within two weeks of this Court's order or by a date certain.

4) Find that Extreme's argument that SNMP Research must produce source code before Extreme produces any source code is without merit and compel Extreme to produce its source code in response to the requests identified in Category 2 in the table below within two weeks of this Court's order or by a date certain.

5) Waive Extreme's objections to the defined terms as identified in Section C.3 and compel Extreme to answer the requests identified in Category 5 within two weeks or by a date certain.

6) Direct Extreme to identify all products containing SNMP Research Software in response to Interrogatory 1 and to answer all associated Requests for Production within two weeks or by a date certain.

7) Direct Extreme to Respond to the requests seeking Identification of People, specified as Category 6 in the table below, within two weeks or by a date certain.

8) Declare that Extreme's objection that it does not have to produce information also held by Broadcom is without merit and compel Extreme to respond to the requests identified as Category 4 in the table below, including producing responsive documents, within two weeks or by a date certain.

9) Compel Extreme to produce its documents in compliance with the ESI Protocol to which it stipulated and filed with the Court (Dkt. 52), including replacing those materials previously produced in a form non-compliant with the ESI Protocol.

---

[1] All references to "Ex. __" herein shall be to exhibits to the Weber Decl.

10) For those requests for which Extreme has promised a response or provided only a partial answer (Category 7), compel Extreme to produce documents and answers within two weeks of this Court's order or by a date certain.

11) That Extreme be ordered to do all of the foregoing within two weeks of this Court's order or by a date certain.

| Category | Request | Deficiency |
|---|---|---|
| 1 | Requests for Production Nos. 1–37, 39-52, 54-55, 57, 59, 61, 63–67<br>Interrogatory Nos. 3-5, 7-10, 12, 15<br>Request for Admission Nos. 35–36, 38–43 | Extreme improperly objects to requests seeking relevant and tailored categories of information. |
| 2 | Requests for Production Nos. 16, 18-20, 45 | Extreme has incorrectly claimed that SNMP Research has to produce source code before Extreme can produce any source code. |
| 3 | Requests for Production Nos. 22–26, 28, 31, 37, 38, 41, 43, 69<br>Request for Admission Nos. 1–37 | Extreme claims that it is unclear what "SNMP Research Software" encompasses |
| 4 | Requests for Production Nos. 47–52<br>Interrogatory Nos. 11, 14 | Extreme incorrectly objects that the information is also held by Broadcom. |
| 5 | Requests for Production Nos. 1–24, 27–31, 36–43, 46, 53, 56, 58, 60, 62, 65<br>Interrogatory Nos. 1–2, 5–7, 9–12, 14<br>Requests for Admission Nos: 1–33. | Extreme improperly objects to plain terms. |
| 6 | Interrogatory Nos. 4, 7 | Extreme must identify individuals |
| 7 | Requests for Production Nos. 1–15, 17, 29–30, 32, 34–36, 39–40, 42, 44, 46, 53, 56, 58, 60, 64–66, 68<br>Interrogatory Nos. 1, 3, 5, 6, 10, 12, 13, 16 | Extreme has promised responses to these requests but is improperly relying on general objections, will not indicate if documents are withheld, and will not agree to a schedule for production.<br>Extreme also provides incomplete responses for certain Interrogatories. |

## II. FACTS AND RELEVANT PROCEDURAL POSTURE

### A. THE COMPLAINT

On October 26, 2020, Plaintiffs[2] filed their Complaint (Dkt. 1; "Cmplt.") asserting breach of contract and copyright infringement over Plaintiff's proprietary computer software, which is an implementation of the Simple Network Management Protocol. This protocol is a way for multiple connected devices to communicate across a network by sending and responding to messages (such as when a printer is out of paper) and is a foundational feature of modern computer networks. *Id.* ¶ 2.

Brocade licensed Plaintiff's software from SNMP International pursuant to a License Agreement dated March 10, 2001, as amended (herein, the "Agreement'). *Id.* ¶ 7. The Agreement sets clear parameters on which software is licensed, how it can be used internally by Brocade, and how it can be reproduced or transferred externally—for example, the Agreement expressly forbids Brocade from transferring or disclosing source code. *Id.* ¶ 8. Plaintiff's software under the Agreement was incorporated into at least two Brocade product lines: the Fibre Channel SAN Switching products and the IP Networking business (herein, the "Data Center") products. *Id.* ¶ 41.

In 2017, Broadcom acquired a portion of Brocade's business while divesting another portion of that business (the Data Center business) to Extreme. *Id.* ¶ 42. In the process, Brocade disclosed Plaintiff's source code to Extreme without permission, thereby breaching the Agreement. *Id.* ¶¶ 44-46. SNMP International notified Brocade of its breach and provided it with an opportunity to cure. *Id.* ¶¶ 51-53. Brocade did not deny that it had breached, nor did it cure its breach. *Id.* ¶¶ 51-58. As a result, SNMP International terminated Brocade's internal use and redistribution rights to Plaintiff's software under the Agreement. *Id.* ¶¶ 62-64.

---

[2] "Plaintiffs" refers to SNMP Research and its co-plaintiff, SNMP Research International, Inc. ("SNMP International").

After gaining Plaintiff's source code from Brocade, Extreme then used Plaintiff's software in numerous Extreme products without SNMP International's consent, and sold those products to Extreme's customers, which constitutes copyright infringement. *Id.* ¶¶ 47-50, 85-93. Extreme has netted massive returns from this copyright infringement. *Id.* at 1.

### B. PLAINTIFF'S DISCOVERY, PRIOR MOTIONS TO COMPEL, AND THIS COURT'S PRIOR ORDER

On December 26, 2020, Plaintiff served written discovery on Extreme, a First Set of Interrogatories ("Interrogatories"), a First Set of Requests for Production ("RFPs"), and a First Set of Requests for Admission ("RFAs"). *See* Exs. D-F. On January 25, 2021, Extreme responded solely with objections, including "general objections" that it incorporated by reference into all of its responses and gave no indication of which documents and information were being withheld based on which objections. *See* Weber Decl. ¶ 8.

On January 29, 2021, Plaintiff served its Second Set of Requests for Production ("Second RFPs") on Extreme. *See* Ex. G. Extreme once again responded solely with objections (including "general" objections incorporated into every response) and once again gave no indication of which documents were being withheld based on which objections.

Plaintiff filed motions to compel discovery from Extreme (Dkts. 60, 70), and on June 25, 2021, the Court issued an order: (i) denying a motion to stay discovery and for a protective order that Defendants (including Extreme) had filed;[3] and (ii) denying Plaintiff's motions to compel without prejudice. Dkt.75 ("Order"). In denying Plaintiff's motions to compel without prejudice, the Court noted that its resolution of Defendants' motion to stay and for a protective order would allow each Defendant to now "meaningfully respond" to Plaintiff's pending discovery requests. Order at 16. The

---

[3] This motion to stay discovery and for a protective order was based on Defendants' assertion that discovery should be stayed pending the Court's resolution of Defendants' motions to dismiss. *See* Dkts. 38, 40, 47.

Court further ruled that the motions to compel would be subject to potential refiling after the parties' met and conferred. *Id.*

## C. PLAINTIFF'S FURTHER MEET AND CONFER EFFORTS

The same day the Court issued its Order, Plaintiff requested an early July meet and confer with Extreme. During a July 8 meet and confer call, Extreme volunteered to produce updated responses to Plaintiff's discovery by July 22 that, it indicated, would reduce the number of objections and, in Extreme's words, would be "less annoying." Weber Decl. ¶ 12. On the eve of Extreme's July 22 production date, Extreme backtracked on its commitment to produce responses that reduced the number of objections, stating that it "would lead to more meaningful responses to continue negotiating. . . ." *Id.* ¶ 13 & Ex. I at 3. Plaintiff responded by stating that Extreme should do what it had agreed to do by the date it had volunteered to do it, specifically, July 22. Ex. I at 2. In response, on July 22, Extreme served "updated" discovery responses ("First Supplemental Responses") that consisted only of objections and contained all of the same objections raised in its prior responses (other than objections relating to the Motion to Stay which had been denied). Weber Decl. ¶ 14. Extreme also continued to incorporate all of its "general objections" into all of its responses, and it again failed to identify whether it was withholding documents and information on an objection-by-objection basis. *Id.*

Plaintiff nevertheless continued to try to reach a compromise with Extreme. Plaintiffs participated in four further meet and confer calls with all Defendants—on July 15, July 21, July 28, and August 5. Weber Decl. ¶ 15.

In particular, given Extreme's professed inability to understand the defined term "SNMP Research Software," solely for purposes of an initial production of documents and information, Plaintiff suggested that Extreme initially tailor its responses to those specific product lines Extreme has already admitted contain SNMP Research Software that are identified in the Complaint, based upon

Extreme's own pre-litigation admissions of infringement. *Id.* ¶ 15; *see also id.* ¶ 5 & Ex. C at 1 (June 5, 2020, email from Paul Segalini, of Extreme, to John Wood, counsel to SNMP) ("For the Brocade products, we have pulled the list of the products (see attached SKU list) using SNMP software, and have calculated the shipments made by year going back to 2017").[4]

Extreme served its second supplemental responses on August 27, 2021. Ex. K ("Second Supp. Response to Interrogatories"), Ex. L ("Second Supp. Response to RFPs"); Ex. M ("Second Supp. Response to Second RFPs"); Ex. N ("Second Supp. Response to RFAs") (collectively, "Second Supplemental Responses"). After more than ninth months to prepare substantive responses, Extreme produced a <u>single</u> non-public document—a one-page chart listing Extreme's nine executives (along with 125 publicly-available documents, including numerous SEC filings).[5] Extreme also again recited the same "general" objections and repeated each of the same "specific" objections raised in its initial responses and its First Supplemental Responses. The result is that Extreme's Second Supplemental Responses still fail to indicate which documents or information Extreme may be withholding based on any particular objections. Moreover, Extreme has refused to produce the source code comprising its products containing software belonging to SNMP Research (even those product lines expressly identified in the Complaint, which again are based on Extreme's own pre-suit admission that those products contain SNMP Research's software). And, Extreme still has not produced any non-public communications or documents pertaining to those products.

After receiving Extreme's Second Supplemental Responses, Plaintiff made six attempts to get Extreme's counsel to agree to a meet and confer date (the first five of which were ignored). Weber

---

[4] Plaintiff reserved all rights and was clear that it was "not waiving its rights to seek information and documents on additional products that are not presently identified in the product families listed in [the Complaint]." Weber Decl. ¶ 15 & Ex. J at 3.

[5] The other non-public document that Extreme has produced—a one-page letter—was produced on September 23, 2021, as part of its "rolling" production. *See infra* n.6, n.12.

Decl. ¶ 21 & Ex. O at 6-11. When Extreme finally agreed to meet, the parties were able to reach agreement on very little,[6] and the majority of the parties' disputes remain. As a result, Plaintiff filed the present Motion. Plaintiff certifies that it has met and conferred with Extreme in good faith prior to filing this Motion.

## III. ARGUMENT

Extreme's "general" objections are meritless and inappropriate under settled precedent and therefore should be deemed waived. Moreover, Extreme's "general" and "specific" objections are plainly insufficient to justify what is basically a wholesale failure to provide meaningful substantive responses or document production. Because Extreme's failure to comply with the discovery pervades virtually the entirety of the propounded discovery, this Motion addresses Extreme's failings by category of the objection.

### A. EXTREME ASSERTS NUMEROUS OBJECTIONS WITH NO BASIS AND FAILS TO IDENTIFY WHETHER IT IS WITHHOLDING DOCUMENTS BASED ON THESE OBJECTIONS

#### 1. EXTREME'S GENERAL OBJECTIONS ARE IMPROPER AND SHOULD BE DEEMED WAIVED

"[A]n evasive or incomplete disclosure, answer or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4); *see Siser N. Am., Inc. v. Herika G. Inc.,* 325 F.R.D. 200, 210 (E.D. Mich. 2018) ("Evasive and incomplete answers to discovery requests are tantamount to no answer at all."). Extreme incorporates by reference into every discovery response a litany of "general objections," despite the fact that courts within the Sixth Circuit have held that this is improper and should be treated as a waiver of the objections. *See, e.g., Sobol v. Imprimis Pharm.,* 2017

---

[6] Specifically, Extreme agreed to produce an unredacted copy of a one-page letter from Broadcom to Extreme, which was undeniably relevant (it confirmed that Brocade did not transfer to Extreme the license to Plaintiff's software, and that this license was material to the transferred business), and which all Defendants had delayed producing for nine months. Extreme also agreed that the attorney-client privilege does not protect the identities of Extreme personnel who have searched for Extreme products containing Plaintiff's software. Weber Decl. ¶ 24.

WL 5035837, at *4 (E.D. Mich. Oct. 26, 2017) ("[I]ncorporating all of the General Objections into each response violates Rule 34(b)(2)(B)'s specificity requirements….") (finding waiver of objections and granting motion to compel); *Morgan, v. AMISUB (SFH), Inc.*, 2020 WL 4274586, at *4 (W.D. Tenn. July 24, 2020) ("[G]eneral objections violate the specificity requirement of Rule 33" and "amount to [] waiver") (internal quotation marks omitted) (finding waiver of objections and granting motion to compel). Extreme knows this, as this specific issue has already been briefed extensively. *See, e.g.,* Dkts. 60-1 at 10-11; 65 at 12-13. This Court should therefore order that all of Extreme's general objections are waived.

## 2. EXTREME'S RELEVANCY OBJECTIONS ARE MERITLESS

Extreme objects to the majority of Plaintiff's discovery on relevance grounds.[7] As this District repeatedly has held, "[r]elevance for discovery purposes is extremely broad." *Neale v. Coloplast Corp.*, No. 1:18-cv-00274-TRM, 2020 WL 6948361, at *2 (E.D. Tenn. Nov. 02, 2020); *Adkisson v. Jacobs Eng'g Grp., Inc.,* No. 3:13-CV-505-TAV-HBG, 2020 WL 8254452, at *3 (E.D. Tenn. Dec. 10, 2020) (the "scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad.") (internal quotation marks and citations omitted). "Relevance has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Neale*, 2020 WL 6948361, at *2. Plaintiff's discovery easily meets this standard because it is directed to core aspects of the breach claim against Brocade and the copyright claim against Extreme.

For instance, the vast majority of the discovery propounded on Extreme seeks information pertaining to Extreme's products, profits on its infringement, use of Plaintiff's copyrighted software,

---

[7] These requests include the following: Second Supp. Response to RFP Nos. 1-21, 28-29, 32-37, 39-42, 44-45, 47, 49, 51, 54-55, 57, 59, 61, 63-65; Second Supp. Response to Interrogatory Nos. 3-5, 7-10, 12, 15; Second Supp. Response to RFA Nos. 35-36, 38-43. Extreme also asserts relevance objections repeatedly in its general objections. Second Supp. Response to RFPs at 2-3; Second Supp. Response to Interrogatories at 2, 4, 6; Second Supp. Response to RFAs at 2, 4.

transfer of that software, and document preservation policies.[8]  Specific examples include:

(i)     Broadcom and/or Brocade's transfer of SNMP Research Software to Extreme. *See* Interrogatory Nos. 11, 14; RFP Nos. 11, 14, 43, 45, 51-65, 67; RFA Nos. 22-33.

(ii)    Which of Extreme's products contain SNMP Research Software or any version or portion of that software. *See* Interrogatory Nos. 1-3, 10, 11; RFP Nos. 1-3, 10, 11, 15-23, 28, 37; RFA Nos. 1-20.

(iii)   When, where, to whom and in what quantity Extreme has used or distributed products containing SNMP Research Software. *See* Interrogatory Nos. 2-3, 5, 10, 12; RFP Nos. 2-3, 5, 10, 12, 41-42*; RFA Nos. 34-36.*

(iv)    The individuals involved with, and/or who have knowledge of, the inclusion of SNMP Research Software in Extreme's products or the use or distribution of those products. *See* Interrogatory Nos. 4, 7-8, 15-16*; RFP Nos. 4, 7-8, 22-25.*

(v)     Extreme's revenues, costs, and profits associated with the products containing SNMP Research Software or related products. *See* Interrogatory Nos. 6, 9; RFP Nos. 6, 9, 29-30, 36, 38-40, 44.

(vi)    Extreme's document preservation. *See* RFP Nos. at 32-33.

(vii)   The manuals, install images, source code, and build environment for Extreme's infringing products. *See* RFP Nos. 15, 18-21.

(viii)  The Agreement and documents related to it. *See* RFP Nos. 27, 31, 66; RFA Nos. 21-23, 44-45.

---

[8] The only requests not included in these categories are:  RFP 46, which requests all documents and things Extreme may seek to use at trial; and Interrogatories 15-16, which ask Extreme to identify the individuals who contributed to answering the interrogatories and each individual with knowledge of those answers.

(ix)     Plaintiff's Damages.  *See* RFP Nos. 36, 38-40, 47.

Each of the above-described categories of discovery requests is relevant to the claims and defenses in this action.

### 3.     EXTREME'S OVERBREADTH, BURDEN, AND PROPORTIONALITY OBJECTIONS ARE MERITLESS

Extreme objects to numerous requests based on bare assertions of burden, overbreadth, and disproportionality.  *See* Second Supp. Response to RFP Nos. 15–31, 36–39, 41.  For example, Extreme repeatedly objects to requests seeking "all Documents Relating to" tailored categories of information on the grounds that the requests are overly broad, unduly burdensome, ambiguous, and/or disproportionate because they seek "innumerable documents" concerning a "very broad" subject matter or are purportedly fishing expeditions.  *See, e.g.*, *id.* No. 1; *see also id.* No. 49.[9]  These objections are meritless.

First, Extreme already raised these objections in its motion for a discovery stay and for a protective order (Dkt. 47-1 at 14; *see also* Dkt. 75 at 5, 8-9), and this Court denied that motion (Dkt. 75).  Second, "[t]he mere statement by a party that an interrogatory or request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection."  *Neale*, 2020 WL 6948361, at *2 (citations omitted); *see also Wesley*, 2018 WL 372700, at *3-4 (similar objections were "boilerplate" and noting that "[l]awyers who purport to preserve an objection by including it in a boilerplate statement must be prepared to face the fact that the result of a substance-free objection is generally the opposite of preservation, i.e., forfeiture."); *Jones*, 2020 WL 7865326, at *2 (objection that "this interrogatory is overly broad and may seek information which is protected, privileged, and not otherwise discoverable" was "legally meaningless" boilerplate" and "amount[s] to a waiver").

---

[9] Extreme lodges these objections with respect to the following requests:  RFP Nos. 1-31, 36-52, 54-55, 57, 59, 61, 63-67; Interrogatory Nos. 1-12, 14-16; *see* Exs. K-L.

Finally, Plaintiff properly tied its "All Documents Relating to" requests (which are customary in federal civil discovery) to specific categories of information, such as:  specific agreements identified in Extreme's SEC filings that were created as part of the unauthorized transfer of SNMP Research Software from Brocade to Extreme which lies at the heart of this case;[10] Extreme's products containing SNMP Research Software (RFP Nos. 1-3, 5, 10-11) and contracts relating to the same (RFP Nos. 12-13); Extreme's revenues, costs, and profits related to its infringing products along with products/services sold with those products (RFP Nos. 6, 9, 29-30); persons with responsibility as to the infringing products and those involved in the search for Extreme products containing Plaintiff's software (RFP Nos. 4, 7-8); the transfer of the software from Broadcom and/or Brocade to Extreme (RFP Nos. 43, 67); and Broadcom's involvement and financial benefit in that transfer (RFP Nos. 14, 47-52, 65).

During the September 16, 2021 meet and confer, Plaintiff asked Extreme to describe its purported burden in responding to these requests.  Weber Decl. ¶ 22 & Ex. O at 2.  Extreme failed to provide any such description, instead simply maintaining that the requests were not proportionate to the needs of the case and that Extreme is a public company with many documents.  *Id.*  This approach does not comply with the Federal Rules.  *See Home Fed. Bank of Tennessee v. Home Fed. Bank Corp.*, No. 3:18-CV-379-JRG-DCP, 2019 WL 11670621, at *2 (E.D. Tenn. Sept. 18, 2019) ("A responding party must show specifically how each discovery request is burdensome and oppressive by submitting affidavits or offering evidence revealing the nature of the burden.  The mere statement by a party that an interrogatory or request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection") (internal quotation marks omitted); Fed. R. Civ. P. 26(b)(2)

---

[10] *See, e.g.*, RFP 57 ("'Separate Sale Agreement' with Brocade, as referenced in the October 3, 2017 'Consent Agreement.'"); RFP 59 ("'Release' Identified in the October 3, 2017 'Consent Agreement.'"); RFP 63 ("All Documents from January 1, 2017 to present Relating to Extreme's acquisition and/or purchase of assets from Brocade as contemplated in the Extreme Sale."); *see also* RFPs 54-55, 61, 64.

advisory committee's note to 2006 amendment ("The responding party must also identify, by category or type, the sources containing potentially responsive information that it is neither searching nor producing. The identification should, to the extent possible, provide enough detail to enable the requesting party to evaluate the burdens and costs of providing the discovery and the likelihood of finding responsive information on the identified sources."). Moreover, as explained above, Plaintiff has tailored these requests to highly relevant categories of information. These targeted requests are proportionate to the case—which involves ill-gotten profits believed to be in the hundreds of millions of dollars. *See, e.g.*, *Siser*, 325 F.R.D. at 211 (compelling "all documents relating to [defendants'] sales of products advertised or sold with plaintiffs' trademarks"); *see also* Cmplt. at 1.

### B. EXTREME DOES NOT IDENTIFY WHETHER IT IS WITHHOLDING DOCUMENTS ON AN OBJECTION-BY-OBJECTION BASIS

Extreme also fails to identify whether any documents or information are being withheld on an objection-by-objection basis as the Federal Rules require. Fed. R. Civ. P. 34(b)(2)(C). In this regard, the only difference between Extreme's prior responses and its Second Supplemental Responses is the following blanket statement: "Responsive materials, if any, are being withheld based on Extreme's objections set forth herein." Second Supp. Response to RFPs at 7. This is improper and renders Extreme's objections—both "general" and "specific"—waived. *Wesley Corp. v. Zoom T.V. Prod., LLC*, No. 17-10021,, 2018 WL 372700, at *4 (E.D. Mich. Jan. 11, 2018) ("[A]n objection must state whether any responsive materials are being withheld on the basis of that objection. When objections lack specificity, they lack effect: an objection that does not explain its grounds (and the harm that results from responding) is forfeited.") (stating that boilerplate objections are "waived" and issuing discovery sanctions); *see also Jones v. Am. River Transp. Co.*, 2020 WL 7865326, at *2 (W.D. Tenn. Jun. 17, 2020) ("Jones's boilerplate objections and responses also violate Rule 34(b)(2)(C)'s requirement to indicate whether any responsive materials are withheld on the basis of an objection. Accordingly, the objections described above are deemed waived.") (granting motion to compel).

Finding waiver is particularly warranted here because Extreme has had multiple chances to change its behavior but failed to do so.

### C. EXTREME'S REMAINING OBJECTIONS ARE ALSO MERITLESS

As demonstrated above, neither Plaintiff nor the Court should have to guess which objections are leading to Extreme's refusals to provide substantive answers or produce documents. Nevertheless, Plaintiff addresses below what appear to be the principal objections on which Extreme relies based on the Parties' meet and confer efforts.

#### 1. EXTREME FEIGNS CONFUSION OVER THE DEFINITION OF "SNMP RESEARCH SOFTWARE"

Extreme claims not to know what the term "SNMP Research Software" encompasses. Weber Decl. ¶ 22.; *see, e.g.*, Second Supp. Response to Interrogatories at 4-5.[11] Plaintiff's discovery defines "SNMP Research Software" as "any of the following":

> (i) software provided by SNMP Research to Brocade, (ii) software licensed by SNMP Research to Brocade, or (iii) any software created by SNMP Research which is or was in the possession of Extreme. The foregoing categories include Source Code, compiled code, binary code, configuration files and data, associated documentation, and Derivative Works thereof.

*See* Interrogatories at 2. There should thus be no confusion over the meaning of this term.

In any event, Extreme knows full well which of its products contain Plaintiff's software. Just last year, Extreme asked Plaintiffs for a license (to protect itself from copyright infringement) and identified the SNMP Research Software it was using as well as the products using it. *See, e.g.*, Ex. B at 1 (Feb. 27, 2020 email from Tara Flanagan, of Extreme, to John Wood, counsel to SNMP) ("[A]s you noted below, Extreme needs to license SNMP software to cover the Brocade license that Brocade had with SNMP for the SLX and NOS-related Extreme software.") (emphasis added); Ex. A at 7 (April 23,

---

[11] Extreme includes this assertion in response to the vast majority of Plaintiff's requests. Second Supp. Response to RFP Nos. 1-15, 22-26, 28-31, 36-41, 43, 47-52, 68-69; Second Supp. Response to Interrogatory Nos. 1-14; Second Supp. Response to RFA Nos. 1-37; *see* Exs. K-N.

2018 email from Jennifer Sipes, of Extreme, to John Wood, counsel to SNMP) ("As discussed, below

is a Brocade product list with SNMP Research software") (identifying the Brocade VDX 8770, VDX

6710, VDX 6720, VDX 6730, VDX 6740, VDX 6940, SLX 9850, SLX 9540, SLX 9140, and SLX

9240 series). Knowing this, Extreme's own counsel has admitted in writing that "based on the course

of dealing between the parties and the allegations in the Complaint, Extreme has an understanding

concerning portions of code/software to which SNMP is laying claim." Weber Decl. ¶ 11 & Ex. H.[12]

In answering Interrogatory 3, Extreme identified 11 product families that contain version 16.2.0.9 of

SNMP Research Software. Second Supp. Response to Interrogatory No. 1. Consequently, Extreme's

eight-month long professed failure to understand a defined term is meritless, and it certainly is not a

basis for a wholesale refusal to answer all discovery that contains the term. *See Morgan,* 2020 WL

4274586, at *4 ("An objection to part of a [document] request must specify the part and permit

inspection of the rest . . . [E]ach interrogatory must, to the extent it is not objected to, be answered

separately and fully in writing under oath.") (quoting Fed. R. Civ. P. 34(b)(2)(c) and 33(b)(3)); *see also*

Fed. R. Civ. P. 36(a)(4) ("A denial [of an RFA] must fairly respond to the substance of the matter; and

when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must

specify the part admitted and qualify or deny the rest.").

> ### 2. EXTREME INCORRECTLY REFUSES TO PRODUCE ITS SOURCE CODE FOR PRODUCTS CONTAINING PLAINTIFF'S SOFTWARE

One of the key alleged breaches in this case is Broadcom and Brocade's disclosure of

Plaintiff's source code to Extreme. Cmplt. ¶ 55. In addition, Extreme's incorporation of Plaintiff's

---

[12] One of the two pages of non-public documents that Extreme has produced in this litigation is a letter between Extreme and Broadcom/Brocade. In that letter, Broadcom represented to Extreme that the License Agreement was a "Shared Contract" as defined in the Asset Purchase Agreement governing the Data Center acquisition. Ex. P. The APA states that a Shared Contract is "material to the operation or conduct of the [Data Center] Business" that Extreme was buying from Broadcom/Brocade, but for which Extreme did not receive a license. *See* Extreme Networks, Inc., Form 8K (Oct. 3, 2017), Ex. 2.1 at 69, https://www.sec.gov/Archives/edgar/data/1078271/000119312517302411/d469088dex21.htm.

source code into its products will show "copying" for purposes of Plaintiff's copyright infringement claim against Extreme. Thus, Extreme's source code for its infringing products is at the center of this case. Because of this, Plaintiff sought production of that source code nine months ago. RFP Nos. 18-21, 45. And for nine months, Extreme has engaged in a song and dance to avoid producing this undeniably relevant information even though it agreed at the outset of this case that source code review would be a "time consuming and tedious task" involving "thousands of lines of computer source code." Dkt. 46 at 4. It first claimed that a Protective Order was required and delayed extensively in agreeing to a protective order that included source code provisions. Dkt, 47-1 at 6, Weber Decl. ¶¶ 7, 19; *see also* Dkt. 93 ¶¶ 17, 26-39. Extreme then claimed it needed to see Plaintiff's source code (despite the fact that the same software is already within Extreme's possession since it possesses Plaintiffs' software and incorporates it into its own products). Extreme appears to be requesting the copy of source code on file with the U.S. Copyright Office. But, when Plaintiffs offered to do a mutual and simultaneous exchange of source code (even though Extreme had not sought discovery of source code from Plaintiffs at the time), Extreme rejected that proposal too. Weber Decl. ¶ 7. Now, Extreme's latest position is that it wants to "sequence" discovery such that Plaintiff must first provide its deposit copy of source code to Extreme (sought by a discovery request Extreme served on SNMP in August of this year) before Extreme will produce its source code to Plaintiff (sought in a discovery request Plaintiff served on Extreme more than nine months ago).[13] Weber Decl. ¶ 22.

Extreme's ever-changing position remains meritless. Its source code is undeniably relevant to this case; indeed, it is central to this case. There is no basis in law or logic for Extreme to unilaterally "sequence" discovery so it can see Plaintiff's deposit copy of source code first and only afterward produce its own source code, particularly given that the "sequence" of discovery in this case is that

---

[13] Extreme demands "sequencing" in response to all source code requests: Second Supp. Response to RFP Nos. 18-20, 45.

Plaintiff issued its discovery request seeking source code eight months before Extreme served a similar request on Plaintiff. Nor is Extreme entitled to condition production of its source code on first unilaterally determining whether it believes its code is infringing. To permit that would allow any infringement defendant to avoid producing proof of infringement simply by denying infringement.

A stipulated Protective Order with strong protections for source code has been entered. Dkt. 93, at ¶¶ 17, 26-39. It took Plaintiff over seven months of negotiating to get Extreme and Broadcom/Brocade to agree to the source code protections contained in the Protective Order. Weber Decl. ¶ 19. It is high time that Extreme finally produce its source code, at the very least for the products that are identified in the Complaint (although Plaintiff maintains that it is entitled to Extreme's source code for any other Extreme products that contain SNMP Research Software as defined above and in the discovery requests).

### 3. EXTREME'S OBJECTIONS TO THE MEANING OF PLAIN TERMS ARE MERITLESS

Extreme also justifies its lack of cooperation in discovery on its professed confusion over common words within the requests such as "received," "inserted," "added," "incorporated," "transfer," "compiling," "shipped," and "permission." RFA Nos. 1-4, 9, 11, 21, 26.[14] None of these terms are vague or ambiguous. For instance, Plaintiff asked Extreme to "Admit You **inserted**, **added**, or otherwise **incorporated** SNMP Research Software in Products that shipped between July 25, 2019 and the present date," RFA No. 4 (emphasis added), and it also asked Extreme to "Admit You **received** Version 16.2.0.9 of SNMP Research Software," RFA No. 2 (emphasis added). There is nothing vague or ambiguous about any of this or the other words Extreme professes it cannot understand.

And, while Extreme committed during its meet and confers to keep an open line of

---

[14] Extreme objects to such allegedly "vague and ambiguous" terms or definitions in each of the following requests: RFPs 1-24, 27-31, 36-43, 46, 53, 56, 58, 60, 62, 65; Interrogatories 1-2, 5-7, 9-12, 14; RFAs 1-33.

communication with respect to any requests it felt needed further clarification prior to its August 27, 2021 supplemental response date, Extreme never once contacted Plaintiff to seek clarification of any of the above terms. Weber Decl. ¶ 16. Regardless, the meaning of these terms is apparent, and Extreme's attempt to avoid discovery based on a professed inability to understand them should be rejected. *See Neale*, 2020 WL 6948361, at *4 ("Discovery is not a game of semantics.") (rejecting "vague[ness]" objection and granting motion to compel); *Johnson v. Kraft Foods N. Am.*, 238 F.R.D. 648, 655 (D. Kansas 2006) ("A party responding to discovery requests should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized[…].") (internal quotation marks and citations omitted).

Extreme also objects to three other terms: "Product," "build environment," and "Consent Payment." None of the objections has merit.

With respect to "Product," Plaintiff defined that term as follows:

> each item that can be or has at any time been able to be separately ordered or distributed or provided as an update to an existing Product, whether sold, leased, licensed, sublicensed, whether enabled or not, whether revenue bearing or not, including, but not limited to, hardware, software, services, or combinations of hardware, software, or services.

Interrogatories at 4. This definition is clear and unambiguous. It is meant to capture not only the products that Extreme has already admitted contain Plaintiff's software, but also any additional products containing Plaintiff's software that Extreme has not yet admitted are infringing. Consequently, Extreme's objections that this definition is "overly broad, unduly burdensome, and ambiguous" are meritless. Second Supp. Response to Interrogatories at 6.

With respect to "build environment," that term is commonly understood in the software industry as the software and hardware tools and instructions that a developer uses to transform source code into a runnable software system incorporated into a shipped product. Extreme claims that Plaintiff's use of this term is "inscrutable," but as a sophisticated public company specializing in

hardware and software for network management, Extreme certainly knows what it is. Extreme also claims Plaintiff seeks "potentially irrelevant information." Second Supp. Response to RFP No. 21. However, at a minimum, the requested build environments are relevant to rebut any assertion by Extreme that the infringing software never made it into the actual products Extreme shipped to customers. Plaintiff asked Extreme whether it was willing to disclaim any such assertion, and Extreme declined to do so. Second Supp. Response to RFA No. 4.

With respect to "Consent Payment," it is a defined term relating to a key transaction at issue in this case. Specifically, in relation to the transaction in which Broadcom/Brocade divested Brocade's Data Center business to Extreme, Extreme's public filings define this term as "an amount in cash equal to $25,000,000 (the 'Consent Payment')" that was paid by Extreme to Broadcom.[15] Plaintiff's discovery seeks all documents constituting the "Consent Payment," which is plainly relevant and unambiguous. RFP No. 62. Consequently, Extreme's objections that "the reference to 'documents constituting' a 'Consent Payment' is insolubly ambiguous" is meritless.

### D. EXTREME SHOULD BE ORDERED TO IDENTIFY ALL PRODUCTS CONTAINING SNMP RESEARCH SOFTWARE AND TO ANSWER ALL ASSOCIATED RFPS

In an effort to at least get Extreme to *begin* its production of information about its Products containing Plaintiff's software, Plaintiff suggested that Extreme's *initial* production of documents and discovery responses to be based solely on the product lines referenced in the Complaint. Weber Decl. ¶ 15. However, Extreme has not only failed to produce that information (other than a handful of publicly available documents and pointing to product families already identified in the Complaint), Extreme now refuses to investigate which additional Extreme products contain Plaintiff's software beyond the precise product lines referenced in the Complaint. Extreme's position fails for at least two

---

[15] *See* Extreme Networks, Inc., Form 8K (Oct. 3, 2017), Ex. 10.1, https://investor.extremenetworks.com/node/17291/html.

reasons.

First, the product lines referenced in the Complaint are based on Extreme's admissions of infringement. However, relevancy for purposes of discovery is not limited solely to the products that a defendant has admitted are infringing. As demonstrated above, the definition of "SNMP Research Software" is unambiguous and is not limited to just the products that Extreme has already admitted contain Plaintiff's software. Any Extreme product that contains SNMP Research Software is relevant to this case and discovery as to all such products is permissible.

Moreover, even for products limited to those identified in the Complaint based on Extreme's own admissions, Extreme failed to produce requested information such as dates of first customer shipment, dates of end of support, the target operating systems and processors, software or firmware release versions, and operating system and processer for cross development tools, nor did Extreme identify all product names, models, material codes, and material descriptions. *See* Second Supp. Response to Interrogatory Nos. 1-2; Ex. O at 5. Extreme indicated its investigation is "ongoing and it expects to produce additional business records for this Interrogatory," (Ex. O at 5), but it never agreed to produce all responsive documents. *See, e.g.*, Second Supp. Response to RFP Nos. 1, 42.

Extreme also did not identify which products or services might have been sold alongside the infringing products identified in the Complaint (an example could be a power supply sold as part of a router that contains the infringing software): *See* Second Supp. Response to Interrogatory No. 9. Extreme's response states that "pursuant to meet and confers with SNMP, discovery is limited to the products identified in paragraph 49 of the Complaint at this time." *Id.* However, Plaintiff never agreed that products or services sold with or as a result of the infringing products are not a proper subject of discovery. And when Plaintiff explained the purpose of this interrogatory in a meet and confer call, Extreme just reverted back to its initial objection, stating that it did not understand what "sold with" or "as a result of" means. Ex. O at 1. Extreme ultimately stated it would further "investigate" but it

would not agree to produce (let alone by a date certain). *Id.*

### E. EXTREME MUST RESPOND TO THE REQUESTS SEEKING IDENTIFICATION OF PEOPLE

Extreme refuses to identify personnel who have searched for Extreme's products containing Plaintiff's software on the grounds that it is "not aware of non-privileged information at this time." Second Supp. Response to Interrogatory No.7; Ex. O at 1. However, prior to this litigation, Extreme admitted to precise product lines containing Plaintiff's software and identified those product lines to Plaintiff (*see* Ex. A at 1) (April 23, 2018 email from Jennifer Sipes, of Extreme, to John Wood, counsel to SNMP) ("We use this SNMP for VDX and SLX product lines."). Extreme never explains how it identified those product lines without searching for that information. Someone at Extreme obviously did the search (and is doing the search to respond to the discovery), and it is Extreme's obligation to disclose that information (which Extreme has already conceded is not privileged).

Plaintiff also asked Extreme to identify the personnel responsible for managing customer support for software, including debugging and additional software releases. Interrogatory No. 4. Extreme refused to do so, instead vaguely referring to "members of Extreme's services division." Second Supp. Response to Interrogatory No. 4. When Plaintiff raised the deficiency of this response in a meet and confer call, Extreme claimed providing any more specificity would be "disproportionate and burdensome." *See id.* & Ex. O at 2. But when asked to describe why it was supposedly disproportionate and burdensome to provide specific employee information (as opposed to referencing a "division" of the company), Extreme provided no details and indicated it would only agree to "check" on the number of people in its services division. Weber Decl. ¶ 22 & Ex. O. Specific individual names are relevant and necessary to determine whom to depose. Extreme should be ordered to provide the requested information.

## F. EXTREME MUST RESPOND TO THE REQUESTS SEEKING IDENTIFICATION OF ENTITIES

Plaintiff requested the following information and documents:

(i)  Products that were transferred to Extreme, as well as, *inter alia*, the entity from whom Extreme obtained the products.  Interrogatory No. 11.

(ii)  A description of Broadcom and/or Broadcom Inc.'s[16] involvement in the transfer of products containing Plaintiffs' software to Extreme, and all documents relating to Broadcom's and/or Broadcom Inc.'s financial interest in that transfer.  Interrogatory No. 14; RFP Nos. 47-52.

Extreme refused to respond on the ground that "it understands th[ese] Request[s] to be seeking information that may be held by Broadcom."  Second Supp. Response to Interrogatory No. 14; Second Supp. Response to RFP Nos. 47-52.  However, as was reiterated to Extreme in a meet and confer call (Ex. O at 2), these requests are only seeking Extreme's knowledge and understanding of Broadcom's involvement in the transfer of Plaintiff's software to Extreme, which Extreme should be able to answer as a participant to the transaction at issue.  *Id.*

## G. EXTREME SHOULD BE ORDERED TO COMPLY WITH THE STIPULATED ESI PROTOCOL AND TO MAKE ITS PRODUCTIONS WITHIN A DATE CERTAIN

This Court has entered a stipulated ESI Protocol which provides that "metadata shall be provided . . . to the extent reasonably accessible and not subject to a justified and proper claim of privilege" and that such metadata shall be included in a delimited load file (*i.e.*, the native file).  Dkt. 52-1 at 1-2.  It requires, among other things, the production of "Md5Hash" and custodian information for all documents, and an "author, last modified by, filename, file extension, created, and last modified date must be provided for all non-email documents."  *Id.*  Extreme's document production does not fully comply with these requirements.  Weber Decl. ¶ 20.  During a meet and confer, Extreme contended otherwise, but it is incorrect.  *Id.*  For example, Extreme produced a PowerPoint,

---

[16] "Broadcom" is a defined term that includes not only the company Broadcom Inc., but also its predecessors, successors, affiliated entities, and subsidiaries.

EXTREME-00007950, and only provided the following metadata: filename, custodian, file extension, and MD5Hash. *Id.* But, the document also contains the "Last Modified Date," "Created" date, "Last Modified By," and "Author," which are all required metadata fields (Dkt. 52-1 at 2), but were not included in the load file. Weber Decl. ¶ 20. The MD5Hash was only included for 7 of the 127 documents produced. *Id.* Plaintiff therefore respectfully requests that the Court order Extreme to comply with the ESI Protocol.

## H.    EXTREME SHOULD BE ORDERED TO PRODUCE DOCUMENTS AND ANSWER INTERROGATORIES WITHIN TWO WEEKS

Extreme has promised to provide documents in response to certain requests and answer certain interrogatories with the following statement: "Subject to and without waiving the foregoing objections, and subject to agreements reached during meet and confers, Extreme will produce, on a rolling basis, non-privileged documents, to the extent that such documents exist, are within Extreme's possession, custody, or control, have not already been produced, and are located after a reasonably diligent search . . . ." Second Supp. Response to RFP No. 1. Extreme has refused to provide a production date for what it would produce, which is in contravention of Federal Rule of Civil Procedure 34. *See* Fed. R. Civ. P. 34(b)(2)(B) ("[P]roduction must [] be completed no later than the time for inspection specified in the request or another reasonable time specified in the response.").[17] Since Extreme's first production on August 27, 2021, Extreme has produced a single one-page document. Extreme's rolling production rate of one document per month is not reasonable.

In addition, Extreme provides incomplete answers to Interrogatories 3 and 16. *See* Second Supp. Response to Interrogatory No. 3 (identifying product families but not specific products

---

[17] Extreme did not provide a date certain by which it would respond to any of the requests for which it indicated it was willing to produce (even while purporting to unilaterally limit its production to less than what is fully responsive to the requests). *See, e.g.*, Second Supp. Response to RFP Nos. 1-15, 17, 29-30, 32, 34-36, 39-40, 42, 44, 46, 53, 56, 58, 60, 64-66, 68; Second Supp. Response to Interrogatory Nos. 1, 3, 5, 6, 10, 12, 13, 16.

containing Plaintiff's software); *id.* No. 16 (failing to identify <u>all</u> individuals with knowledge of information contained in the answers to the Interrogatories). These responses contravene Federal Rule of Civil Procedure 26(e)(1)(A), which requires a party who has responded to an interrogatory to provide a complete response in a "timely manner." Therefore, Plaintiff respectfully requests that this Court compel Defendants to produce documents and answer interrogatories within two weeks or by a date certain.

## IV. CONCLUSION

For all of the foregoing reasons, the Court should grant this Motion in its entirety according to the numbered list set forth in the Introduction, and compel Extreme to respond to all of Plaintiff's discovery within two weeks of the Court's order or a date certain.

Respectfully submitted,

Dated:  October 4th, 2021          By: /s/ Cheryl G. Rice
                                    John L. Wood, Esq. (BPR #027642)
                                    Cheryl G. Rice, Esq. (BPR #021145)
                                    Rameen J. Nasrollahi, Esq. (BPR #033458)
                                    EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
                                    900 S. Gay Street, Suite 1400
                                    P.O. Box 2047
                                    Knoxville, TN 37902
                                    (865) 546-0500 (phone)
                                    (865) 525-5293 (facsimile)
                                    jwood@emlaw.com
                                    crice@emlaw.com
                                    rnasrollahi@emlaw.com


Dated:  October 4th, 2021          By: /s/ A. Matthew Ashley
                                    A. Matthew Ashley (CA Bar. No. 198235)
                                    Morgan Chu (CA Bar. No. 70446)
                                    David Nimmer (CA Bar. No. 97170)
                                    Olivia Weber (CA Bar. No. 319918)
                                    IRELL & MANELLA LLP
                                    1800 Avenue of the Stars, Suite 900
                                    Los Angeles, California 90067-4276
                                    (310) 277-1010 (phone)
                                    (310) 203-7199 (facsimile)
                                    mchu@irell.com
                                    dnimmer@irell.com
                                    mashley@irell.com

                                    *Attorneys for Plaintiffs*
                                    *SNMP Research International, Inc.*
                                    *SNMP Research, Inc.*