# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF TENNESSEE

```
------------------------------------------------------- x
                                                        :
SNMP RESEARCH, INC. and SNMP                            :      Case No. 3:20-cv-00451-CEA-DCP
RESEARCH INTERNATIONAL, INC.,                           :
                                                        :      U.S. District Judge Charles E. Atchley, Jr.
                               Plaintiffs,              :
                                                        :
                    v.                                  :
                                                        :
BROADCOM INC.; BROCADE                                  :
COMMUNICATIONS SYSTEMS LLC; and                         :
EXTREME NETWORKS, INC.,                                 :
                                                        :
                               Defendants.              :
------------------------------------------------------- X
```

## EXTREME NETWORKS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO SNMP'S MOTION TO COMPEL DISCOVERY RESPONSES FROM DEFENDANT EXTREME NETWORKS, INC. AND REQUEST FOR COSTS AND COUNSEL FEES UNDER LOCAL RULE 37.2

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND ...................................................................................................1

      A.    SNMP's Unfair and Abusive Discovery Tactics Continue with this Motion ..........1

      B.    Despite SNMP's Untenable Positions, Extreme Has Diligently Responded
            to Requests ...............................................................................................3

III.  ARGUMENT .........................................................................................................5

      A.    The Court Should Deny SNMP's Motion And Order It To Pay Costs And
            Fees For Failing To Confer In Good Faith ..............................................................5

      B.    Response to SNMP's Item 1: The Court Should Reject SNMP's Abusive
            Attempt to Waive Extreme's Objections to 78 Requests .......................................8

      C.    Response to SNMP's Item 2: Extreme's Responses Properly Identify the
            Parameters of its Search ........................................................................................15

      D.    SNMP's Items 3, 4, and 6: The Parties Are Actively Negotiating the
            Scope of "SNMP Research Software" and Source Code Productions..................16

      E.    Response to SNMP's Item 5: Extreme Did Not Waive its Objections to
            Additional Defined Terms ....................................................................................21

      F.    Response to SNMP's Items 7 and 9: Extreme Already Agreed to Provide
            an Identification of People and Provided Requested Metadata ...........................22

      G.    Response to SNMP's Item 8: Requests as to Extreme's Knowledge of
            Other Entities Are Not Yet Ripe for Decision ......................................................22

      H.    Response to SNMP's Items 10 and 11: SNMP's Demand for Extreme To
            Complete Its Production in Two Weeks Is Outlandish.........................................23

      CONCLUSION.....................................................................................................24

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Abarca Health, LLC v. PharmPix Corp.*,
 806 F. Supp. 2d 483 (D.P.R. 2011) ..................................................................................19

*Banjerjee v. University of Tennessee*,
 No. 3:17-CV-526-HSM-HBG, 2019 WL 1062378 (E.D. Tenn. Mar. 6, 2019) .................5

*Brady v. LTD Parts, Inc.*,
 No. 2:08-0508, 2009 WL 2224172 (M.D. Tenn. July 22, 2009) .......................................6

*GCA Services Group, Inc. v. ParCou, LLC*,
 No. 2:16-cv-02251-STA-CGC, 2016 WL 7192175 (W.D. Tenn. Dec. 12, 2016) ...........10

*Greer v. Home Realty Co. of Memphis Inc.*,
 No. 2:07-cv-02639-SHM-EGB, 2010 WL 6512339 (W.D. Tenn. July 12, 2010) .............7

*Keysight Technologies, Inc. v. Nanomechanics, Inc.*,
 No. 3:15-cv-00232, 2017 WL 10434023 (E.D. Tenn. Apr. 20, 2017) .............................19

*Michael Kors, L.L.C. v. Su Yan Ye*,
 No. 1:18-CV-2684 (KHP), 2019 WL 1517552 (S.D.N.Y. Apr. 8, 2019)...........................7

*Morgan v. AMISUB (SFH), Inc.*,
 No. 18-cv-2042-TLP-tmp, 2020 WL 4274586 (W.D. Tenn. July 24, 2020),
 *report and recommendation adopted*, 2020 WL 4917731
 (W.D. Tenn. Aug. 21, 2020) .........................................................................................8, 9

*Neale v. Coloplast Corp.*,
 No. 1:18-cv-00274-TRM-SKL, 2020 WL 8771652 (E.D. Tenn. Sept. 3, 2020)............5, 6

*Siser North America, Inc. v. Herika G. Inc.*,
 325 F.R.D. 200 (E.D. Mich. 2018) ..............................................................................8, 9

*Sobol v. Imprimis Pharmaceuticals*,
 Civil Action No.: 16-14339, 2017 WL 5035837 (E.D. Mich. Oct. 26, 2017)...............8, 9

*Transamerica Life Insurance. Co. v. Moore*,
 274 F.R.D. 602 (E.D. Ky. 2011).....................................................................................14

*Westdale Recap Properties, Ltd. v. NP/I & G Wakefield Commons, L.L.C.*,
 No. 5:11-CV-659-D, 2013 WL 5424844 (E.D.N.C. Sept. 26, 2013) .................................9

## RULES

Fed. R. Civ. P. 37(a)(1) .................................................................................................5

Case 3:20-cv-00451-CEA-DCP   Document 109   Filed 10/18/21   Page 4 of 29   PageID #: 3783

Extreme Networks, Inc. ("Extreme") respectfully submits this memorandum of law in opposition to SNMP Research, Inc.'s (together with SNMP Research International, Inc., "SNMP") Motion to Compel Discovery Responses from Extreme (ECF No. 96) (the "Third Motion to Compel" or "Third Mot.").[1]

## I.    <u>INTRODUCTION</u>

This latest installment in SNMP's series of aggressive discovery filings consists of premature and manufactured disputes. Midstream in the parties' negotiations—without advance notice to Extreme, and without completing meet-and-confer discussions—SNMP chose to divert Extreme's efforts in collecting information and file its fifth motion to compel in this case (its third against Extreme). As set forth below, each of the 11 perceived deficiencies in Extreme's discovery responses ignores the detailed and specific responses provided to SNMP, the commitment Extreme made on future productions, and ongoing negotiations between the parties. SNMP's gamesmanship should not be rewarded. Its no-notice motion should be denied, and costs and fees imposed to dissuade continued wasteful tactics.

## II.    <u>BACKGROUND</u>

### A.    **SNMP's Unfair and Abusive Discovery Tactics Continue with this Motion**

As set forth in prior briefing and summarized herein,[2] SNMP has been fighting to waive Defendants' defenses or discovery objections since the beginning of the case. Defendants filed motions to dismiss based, in part, on defects in jurisdiction and venue. Closely on the heels of Defendants' motion to dismiss, SNMP served hundreds of discovery requests on Defendants.

---

[1]    The abbreviated term where cited herein refers to the brief filed in support of the motion, at ECF Nos. 96-1 and 101. Page number citations herein correspond to the page numbers of the filed document. Citations to page number generated by the ECF system are noted by "ECF p."

[2]    *See, e.g.*, ECF No. 62 at 2-3; ECF No. 71 at 2-4.

(ECF No. 62 at 2-3.) In view of SNMP's overbroad discovery requests and the pending motions to dismiss, Defendants jointly moved to stay discovery and for a protective order. (ECF No. 47.) In that motion, Defendants explained why a stay and a protective order were warranted, including because discovery would unduly prejudice Defendants since SNMP indicated that they would argue that Defendants' service of their own discovery constitutes a waiver of their personal jurisdiction and improper venue defenses (potentially dooming the pending motions). (ECF No. 47-1 at ECF p. 5.) To put a finer point on this position, SNMP agreed not to argue that Defendants' *responses* to discovery requests propounded by SNMP waive jurisdiction and venue defenses, but not that Defendants propounding their own requests similarly does not effect a waiver. (*See, e.g.*, ECF No. 62 at 4-5.)

One week after that motion was fully briefed, SNMP filed its first motion to compel, demanding further responses to its discovery requests and asking the Court to make an extraordinary finding that all of Defendants' objections to discovery requests had been waived, save for objections as to privilege and attorney work product. (ECF No. 60-1 at 1-3.) Defendants' opposition[3] highlighted the inequity of SNMP's ultimatum, as Defendants could not serve their own discovery without a threat of SNMP arguing that the jurisdiction and venue defenses were waived. (ECF No. 62 at 4-5; *see also* ECF No. 65 at 3 n.4 (confirming, in its reply brief, that SNMP would not agree to forgo waiver arguments should Defendants serve discovery).)

Plaintiffs' position on waiver of the jurisdictional and venue defenses effectively forced the parties into a discovery impasse. Unfazed, SNMP propounded its second set of requests for production to Extreme during briefing on the motion to stay. (*See* ECF No. 96-9 at 7.) Extreme

---

[3] Broadcom and Brocade filed the opposition to SNMP's first motion to compel (ECF No. 62), and Extreme joined in this opposition (ECF No. 63).

2

participated in lengthy meet and confers, but nevertheless, SNMP filed its second motion to compel regarding Extreme's discovery responses based on these requests.

The Court denied all pending discovery motions, including SNMP's two motions to compel directed at Extreme. (ECF No. 75.) In so ruling, the Court agreed that SNMP's position on waiver of defenses risked "severe potential prejudice to Defendants," and expressly found that "Defendants' participation in discovery while their motions to dismiss are pending (including propounding their own discovery) or the entry of a protective order will not be construed as a waiver of their personal jurisdiction or improper venue defenses." (*Id.* at 14.)

**B.     Despite SNMP's Untenable Positions, Extreme Has Diligently Responded to Requests**

Since the Court's order (ECF No. 75), the parties have continued to meet and confer in an effort to narrow SNMP's more than 130 requests propounded on Extreme. A principal gating issue in SNMP's requests is the definition of "SNMP Research Software," which term is repeated across a large number of SNMP's requests. Through meet and confers, Extreme has discovered that the definition of "SNMP Research Software" is not tailored to the allegations of infringement in the Complaint – namely, SNMP believes that this term extends to various, unspecified and supposedly copyrighted works that are ***not*** even identified in the Table that lists its copyright registrations in the Complaint (*viz.*, SNMP is seeking discovery into some unspecified quantity of works that have not been alleged in this case). (*See* ECF No. 96-17 at ECF p. 4-5; Demers Decl.[4] Ex. 1 at ECF p. 4.) Extreme furthermore discovered that SNMP did not even register with the Copyright Office the specific source code it now seeks discovery into. (Demers Decl. Ex. 1 at ECF p. 4.) To further frustrate matters: Despite that SNMP is pursuing copyright infringement claims, SNMP has not

---

[4]     "Demers Decl." as cited herein refers to the Declaration of Leslie A. Demers filed in support of Extreme's opposition to the Third Motion to Compel.

yet provided (and is refusing to provide) Extreme's counsel with the alleged copyrighted works that it is asserting as infringed in this litigation. To be clear, this means that (i) SNMP is asserting specific copyright registrations in this case, (ii) Extreme's counsel does not have copies of the allegedly copyrighted works, and (iii) SNMP is so far refusing to provide such works to Extreme's counsel.

To confront this mismatch between the allegations in the Complaint and the definition of "SNMP Research Software," Extreme reached a compromise agreement with SNMP over the initial rounds of production. Extreme understood this agreement to limit discovery to the specific products listed in paragraph 49 of the Complaint. (*See, e.g.*, ECF No. 96-14 at ¶ 17.)

While considering this proposal on initial rounds of discovery, Extreme had no choice but to serve supplements to its responses. SNMP takes issue with the fact that Extreme provided a supplementation on July 22, while Extreme was considering SNMP's discovery proposal. (Third Mot. at 6.) Extreme explained at the time that the supplementations "will largely commemorate the parties' ongoing and as-of-today unsettled negotiations" over various discovery issues and offered to extend its self-imposed deadline of July 22 for the supplements. (ECF No. 96-11 at ECF pp. 2-3.) Instead, "the tenor of SNMP's" discovery correspondence left Extreme with no choice but to spend time preparing and serving those supplements." (*Id.*)

Extreme has since served additional supplemental responses and produced nearly 9,000 pages of documents. The parties are still grappling with issues created by SNMP's discovery positions – including its refusal to provide notice of the contents of the alleged copyrighted works. (*See, e.g.*, Demers Decl. Ex. 1 at ECF pp. 2-3.) Undeterred by ongoing negotiations and without fulfilling its obligation to meet and confer or even providing notice to Extreme, SNMP filed this Third Motion to Compel.

# III.   ARGUMENT

## A.   The Court Should Deny SNMP's Motion And Order It To Pay Costs And Fees For Failing To Confer In Good Faith

As an initial matter, the Court should deny this motion because SNMP failed to meaningfully attempt to resolve this dispute prior to filing.  Unnecessary discovery motions such as this waste the time and resources of the parties and the Court and are forbidden under the Court's Local Rules.  As a result, and in order to discourage this behavior in the future, the Court should also impose costs and counsel fees in accordance with Local Rule 37.2.

The law provides that a movant must certify in good faith that it has "conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  Fed. R. Civ. P. 37(a)(1).  This certification is not an "empty formality." *Banjerjee v. Univ. of Tenn.*, No. 3:17-CV-526-HSM-HBG, 2019 WL 1062378, at *1 (E.D. Tenn. Mar. 6, 2019).  Rather, "the parties are required to engage in meaningful attempts to resolve discovery disputes prior to filing" a motion to compel. *Id.*  Failure to comply with this requirement constitutes a basis in of itself for denying a motion to compel. *Id.* ("Plaintiff's Motion to Compel . . . could be denied on that basis alone."); *Neale v. Coloplast Corp.*, No. 1:18-cv-00274-TRM-SKL, 2020 WL 8771652, at *2 (E.D. Tenn. Sept. 3, 2020) (denying plaintiff's motion to compel for failing to satisfy the good faith conferral requirement).

Despite paying lip service to the requirement to meet and confer in good faith (Third Mot. at 8), SNMP has failed to satisfy the good faith conferral requirement by filing this motion without any notice that it was coming and in the midst of active negotiations amongst the parties.  As recently as September 22, SNMP acknowledged Extreme's commitment to "give thought to a workable middle ground" on source code production issues, which issues form the basis of part of the present motion.  (*See* Demers Decl. Ex. 1 at ECF pp. 2-3; *infra* Sec. III.A.D.)  These

5

communications show Extreme's willingness to work with SNMP in hopes of resolving the dispute without court intervention. At no point during or after these discussions did SNMP notify Extreme that it planned on filing yet another motion to compel. That SNMP filed this motion in the face of Extreme's willingness to compromise and without attempting to confer is grounds for denying the motion. *See Neale*, 2020 WL 8771652, at *2 (denying plaintiff's motion to compel after plaintiff "made no attempt to initiate additional conferral before the motion was filed . . . even though an opportunity remained for future communication and cooperation to resolve the dispute without court intervention"); *Brady v. LTD Parts, Inc.*, No. 2:08-0508, 2009 WL 2224172, at *1 (M.D. Tenn. July 22, 2009) (denying relief where parties failed to include a certification of meeting and conferring in good faith and the last correspondence between counsel stated that they would "give further considerations to whether there was any more room for compromise").

It unfortunately has become a trend in this litigation for SNMP to run to the Court without meaningfully attempting to resolve disputes between the parties or even providing notice in advance of filing. For instance, under circumstances similar to this one, SNMP filed a "premature and knee-jerk motion to compel" – referring to ECF No. 88 – against Defendants Broadcom Inc. and Brocade Communications Systems LLC ("Broadcom and Brocade") "[w]ithout even attempting to meet and confer or informing Brocade and Broadcom of its plans to file a motion . . . ." (ECF No. 94 at 1.) Broadcom and Brocade highlighted this failure, indicated that SNMP's motion would be mooted by a forthcoming supplementation, and sought fees and costs in responding to the motion. (*Id.* at 5-10.) Rather than withdrawing its motion, SNMP filed a reply brief several days early in an attempt to negate the effect of Brocade and Broadcom's production on their premature motion, and in doing so failed to respond to arguments on prematurity and the

imposition of fees.  (*See* ECF No. 95.)  Thereafter, SNMP conceded that its motion was mooted by the supplementation.  (*See* ECF No. 104.)

SNMP's filing of needless motions shows a disregard for Federal Rule of Civil Procedure 37(a)(1) and Local Rule 37.2, which as discussed above, encourage litigants to resolve disputes on their own so as to avoid the needless burden caused by motions like SNMP's.  *See Greer v. Home Realty Co. of Memphis Inc.*, No. 2:07-cv-02639-SHM-EGB, 2010 WL 6512339, at *1 (W.D. Tenn. July 12, 2010) ("Plaintiffs appear to be willing to make 'an effort to work with [defendant]' regarding his various discovery requests.  Thus, it appears that consultation regarding this motion may yield a resolution without the further expenditure of judicial resources." (citation omitted))  That is all the more important when the case involves low damages figures.  *See, e.g.*, *Michael Kors, L.L.C. v. Su Yan Ye*, No. 1:18-CV-2684 (KHP), 2019 WL 1517552, at *7 (S.D.N.Y. Apr. 8, 2019) ("While counsel have an obligation to zealously advocate, when a case involves relatively low damages, counsel must carefully evaluate how to effectively advocate while keeping the costs of litigation down.").  This latest in the series of misguided filings is evidence of SNMP's intent to do the opposite: its approach drives up costs in contravention of the parties' "critical obligations" to "offer[] meaningful compromises in response to an objectionable document request, avoid[] discovery disputes, and meet[] and confer[] in good faith to resolve disputes without the need for motion practice." *Id.*

In light of the foregoing, the Court should deny SNMP's motion and order it to pay costs and counsel fees as set forth in Local Rule 37.2.

**B. <u>Response to SNMP's Item 1</u>: The Court Should Reject SNMP's Abusive Attempt to Waive Extreme's Objections to 78 Requests[5]**

        1.      With Regard to Waiver of General Objections, SNMP's Third Motion to Compel Repeats the <u>Errors in SNMP's First and Second Motions to Compel</u>

SNMP's Third Motion to Compel asks for the extraordinary remedy of waiver of Extreme's General Objections, all in one paragraph of briefing that repeats arguments and cites inapposite caselaw that Extreme has already rebutted.  (Third Mot. at 8-9.)  While SNMP claims that it is improper to incorporate general objections into discovery responses, as Extreme has already explained (*see, e.g.*, ECF No. 71 at 6), SNMP's caselaw addressed "*actually* boilerplate discovery responses" and does not hold that "General Objections" are always improper.[6]  Extreme's objections here are not boilerplate; rather, they are tailored to the issues in this case.  For instance, these objections address SNMP's improper definitions, such as for "SNMP Research Software," as discussed *infra*.  Moreover, the cases cited in SNMP's motion do not support a finding of waiver

---

[5]    SNMP's list of grievances and demands are enumerated in a list of 11 numbered items, and, confusingly, also in a table with seven categories.  (Third Mot. at 2-3.)  As SNMP's briefing appears to follow the list of 11 numbered items, in an attempt to bring clarity to the briefing, Extreme's Opposition tracks the order of the list, unless noted otherwise, and numbers the issues as identified in that list.

[6]    (*Cf.* Third Mot. at 8-9 (citing *Siser N. Am., Inc. v. Herika G. Inc*., 325 F.R.D. 200, 203 (E.D. Mich. 2018) (deeming the following objection boilerplate: "Overly broad and unduly burdensome." (*see* Dkt. No. 31 at 2)); *Sobol v. Imprimis Pharms*., Civil Action No.: 16-14339, 2017 WL 5035837, at *4 (E.D. Mich. Oct. 26, 2017) (finding "boilerplate set of general objections" to be improper, for responses that did not include any specific objections (*see* Dkt. No. 40-6)); *Morgan v. AMISUB (SFH), Inc.*, No. 18-cv-2042-TLP-tmp, 2020 WL 4274586, at *4 (W.D. Tenn. July 24, 2020) (overruling objections articulated for the only time in an email, including "boilerplate" assertions that interrogatories were "overbroad and unduly burdensome"), *report and recommendation adopted*, 2020 WL 4917731 (W.D. Tenn. Aug. 21, 2020); ECF No. 71 at 6; ECF No. 62 at 21-24; *see also* ECF No. 72 at 13.)

*(cont'd)*

here.[7]  SNMP does not provide any new caselaw regarding waiver in its Third Motion to Compel that would support the "severe consequence of waiver."  *Westdale Recap Props., Ltd. v. NP/I & G Wakefield Commons, L.L.C.*, No. 5:11-CV-659-D, 2013 WL 5424844, at *5 (E.D.N.C. Sept. 26, 2013) (plaintiffs "failed to show that [defendant's] assertion of generalized objections merits the severe consequence of waiver").

> 2.  With Regard to Waiver of Relevancy Objections, SNMP Ignores Extreme's Actual Discovery Responses and Confuses Even Itself

SNMP appears to argue that Extreme's objections to relevancy are waived because "relevance for discovery purposes is extremely broad," and the "vast majority" of SNMP's requests fall into general categories of information that it believes are relevant.  (Third Mot. at 13-15.)  In doing so, SNMP does not grapple with Extreme's actual responses to these requests, and loses track of the responses that it is challenging.  When considering the actual requests and responses, SNMP's arguments fall apart in at least four ways:

*First*, SNMP's motion does not acknowledge that for the majority of the document requests and interrogatories requests listed, Extreme agreed to provide documents and information, and articulated the parameters that would govern its responses where appropriate.[8]  In other words,

---

[7]   (*Cf.* Third Mot at 8-9 (citing *Siser*, 325 F.R.D. at 204, 208 (finding waiver of objections that were not signed by an attorney of record and included statements like: "Objection contained in public record"); *Sobol*, 2017 WL 5035837, at *4 (finding waiver where the only objections provided were "boilerplate"); *Morgan*, 2020 WL 4274586, at *4 (objections listed in an email were "overruled," not waived).)

[8]   As to the Requests for Production listed in this category in the Table on page 3 of the Third Motion to Compel, Extreme has agreed to produce documents for Requests for Production Nos. 1-20, 25-26, 29-30, 32, 34-36, 39-40, 42, 44-46, 53, 56, 58, 60, 64-66.  For the following Requests for Production, Extreme identified issues that prevented it from agreeing to produce documents, such as the inappropriate definition of SNMP Research Software, discussed *infra*: Nos. 21-28, 31, 37-38, 41, 43, 54-55, 57, 59, 61-63, 67.  For Request for Production No. 33,

*(cont'd)*

9

Extreme agrees that at least a portion of the requests seeks relevant information, and has identified that portion. SNMP is thus creating a strawman by suggesting that Extreme contends that no portion of the cited requests is relevant.

*Second*, SNMP's generalized categories of relevant information in its brief do not meet its burden to show that all portions of the requests in those categories seek relevant information. Indeed, SNMP does not rebut any of Extreme's particularized responses by explaining why the requests are relevant. *See, e.g.*, *GCA Servs. Grp., Inc. v. ParCou, LLC*, No. 2:16-cv-02251-STA-CGC, 2016 WL 7192175, at *3 (W.D. Tenn. Dec. 12, 2016) ("Once a party raises an objection to discovery based on relevance, 'the burden shifts to the party seeking the information to demonstrate that the requests are relevant to the subject matter involved in the pending action.'" (citation omitted)). Relevancy may be broad, but it is not boundless. SNMP cannot demand waiver of well-founded relevancy objections without even articulating why they are improper.

These shortcomings of SNMP's motion are best illustrated with an example. SNMP's Request for Production No. 1 seeks "All Documents Relating to SNMP Research's Interrogatory number 1, and Your answers and responses to the same." (ECF No. 96-14 at 7-8.) As Extreme pointed out in its response, this request is "overly broad, unduly burdensome, seek[s] irrelevant information, and [is] ambiguous to the extent that it seeks 'all documents relating to' an

---

Extreme stated that it was presently unaware of any responsive documents, and for Nos. 47-52, Extreme explained that these appeared to be seeking information held by its co-defendants.

As to the Interrogatories listed in this category in the Table, Extreme provided information or agreed to provide information pursuant to Federal Rule of Civil Procedure 33(d) for Interrogatory Nos. 3-5, 10, 12, 15. (ECF No. 99; ECF No. 96-17 at ECF p. 6.) In its supplemental responses to Interrogatory Nos. 7-8, Extreme stated that it was presently unaware of non-privileged information. (ECF No. 99 at 16-18.) For Interrogatory No. 9, Extreme explained its view that this was outside of the parties' agreements reached in meet and confers. (*Id.* at 18-19.)

10

Case 3:20-cv-00451-CEA-DCP   Document 109   Filed 10/18/21   Page 14 of 29   PageID #: 3793

Extreme agrees that at least a portion of the requests seeks relevant information, and has identified that portion. SNMP is thus creating a strawman by suggesting that Extreme contends that no portion of the cited requests is relevant.

*Second*, SNMP's generalized categories of relevant information in its brief do not meet its burden to show that all portions of the requests in those categories seek relevant information. Indeed, SNMP does not rebut any of Extreme's particularized responses by explaining why the requests are relevant. *See, e.g.*, *GCA Servs. Grp., Inc. v. ParCou, LLC*, No. 2:16-cv-02251-STA-CGC, 2016 WL 7192175, at *3 (W.D. Tenn. Dec. 12, 2016) ("Once a party raises an objection to discovery based on relevance, 'the burden shifts to the party seeking the information to demonstrate that the requests are relevant to the subject matter involved in the pending action.'" (citation omitted)). Relevancy may be broad, but it is not boundless. SNMP cannot demand waiver of well-founded relevancy objections without even articulating why they are improper.

These shortcomings of SNMP's motion are best illustrated with an example. SNMP's Request for Production No. 1 seeks "All Documents Relating to SNMP Research's Interrogatory number 1, and Your answers and responses to the same." (ECF No. 96-14 at 7-8.) As Extreme pointed out in its response, this request is "overly broad, unduly burdensome, seek[s] irrelevant information, and [is] ambiguous to the extent that it seeks 'all documents relating to' an

---

Extreme stated that it was presently unaware of any responsive documents, and for Nos. 47-52, Extreme explained that these appeared to be seeking information held by its co-defendants.

As to the Interrogatories listed in this category in the Table, Extreme provided information or agreed to provide information pursuant to Federal Rule of Civil Procedure 33(d) for Interrogatory Nos. 3-5, 10, 12, 15. (ECF No. 99; ECF No. 96-17 at ECF p. 6.) In its supplemental responses to Interrogatory Nos. 7-8, Extreme stated that it was presently unaware of non-privileged information. (ECF No. 99 at 16-18.) For Interrogatory No. 9, Extreme explained its view that this was outside of the parties' agreements reached in meet and confers. (*Id.* at 18-19.)

10

Case 3:20-cv-00451-CEA-DCP   Document 109   Filed 10/18/21   Page 14 of 29   PageID #: 3793

interrogatory and the response(s) thereto.  As phrased, the Request would seek innumerable documents related to a very broad subject matter."  (*Id*. at 8.)  Instead, Extreme's response limited the request to documents "that Extreme relies upon to respond to Interrogatory No. 1."  (*Id.*)

SNMP has not articulated why it is entitled to "All Documents Relating to" that interrogatory, as opposed to documents actually relied upon in the response.  SNMP's brief simply states that this request seeks relevant information because it falls in the general category of seeking "[w]hich of Extreme's products contain SNMP Research Software [remember: a term that SNMP defined so as ***not*** to track SNMP's asserted claims in this case but instead to go beyond it to cover non-asserted but supposedly copyrighted works; and for the sub-set of the materials covered by the term as defined by SNMP that are asserted in this case, such works have not even been made available to Extreme's counsel] or any version or portion of that software."  (Third Mot. at 10.) Extreme does not disagree that it, in part, seeks relevant information, and indeed agreed to produce documents in response to this request.  If SNMP believes it is entitled to more information, SNMP needs to identify that information and demonstrate why it is relevant.  So far, SNMP has not.

***Third***, the two challenged Requests for Admission that SNMP was able to include in its broad categories are plainly irrelevant.  SNMP claims that Requests for Admission Nos. 35-36 seek relevant information because they seek "[w]hen, where, to whom and in what quantity Extreme has used or distributed products containing SNMP Research Software."  (*Id.*)  In actuality, those requests seek admissions relating to personal jurisdiction,[9] which Extreme is not contesting as to Extreme.  (ECF No. 96-16 at 31-33.)

---

[9]   Request for Admission No. 35 seeks an admission that "Extreme distributes Products containing SNMP Research Software to Tennessee," and No. 36 seeks an admission that "Extreme distributes Products containing SNMP Research Software to an area encompassing all or part of the East Grand Division of Tennessee."  While these requests seek irrelevant
*(cont'd)*

11

**Fourth**, SNMP's broad categories confused even SNMP. While SNMP claims that "[t]he only requests not included in these categories are . . . RFP 46 . . . and Interrogatories 15-16" (Third Mot. at 10 n.8), SNMP also was unable to categorize Requests for Admission Nos. 38-43 into a supposedly-relevant group, despite purporting to challenge objections for those requests. (*See id.* at 3, 9 n.7.) Rightly so, as those requests seek admissions relating to "agents" of Extreme and "employees" of Extreme, even though "Extreme has not contended that Extreme is not subject to the personal jurisdiction of the Court in this action." (ECF No. 96-16 at 31-33.)

The general categories are not only underinclusive, but they are also overinclusive. SNMP included requests in its broad categories in the argument portion of its brief that were not included in the table that lists requests for which SNMP seeks waiver of the relevancy objections.[10] Extreme accepts SNMP's characterization of the relief sought as tied to the requests listed in the table, and reserves any right to respond to any arguments SNMP may articulate as to extraneous requests.

 3. With Regard to Waiver of Overbreadth, Burden, and
  Proportionality Objections, SNMP Again Misses the Mark

SNMP's lead argument for waiver of Extreme's overbreadth, burden, and proportionality objections invites a mischaracterization of the Court's prior ruling. SNMP asserts that "Extreme already raised these objections in its motion for a discovery stay and for a protective order . . . and this Court denied that motion." (Third Mot. at 11.) While the Court denied Defendants' motion, the Court did not rule on the propriety of Extreme's objections. (*See* ECF No. 75.) Indeed, that

---

information, they are objectionable for other reasons, including based on the term "SNMP Research Software," as discussed *infra*.

[10] (*See, e.g.*, Third Mot. at 10-11 (listing Requests for Admission Nos. 1-23, 34, 44-45; listing Request for Production Nos. 38, 53, 56, 58, 60, 62; listing Interrogatory Nos. 1-2, 6, 11, 13-14, 16); *id.* at 3 (excluding from "Category 1" Requests for Admission Nos. 1-23, 34, 44-45; excluding from "Category 1" Request for Production Nos. 38, 53, 56, 58, 60, 62; excluding from "Category 1" Interrogatory Nos. 1-2, 6, 11, 13-14, 16.)

12

same ruling also denied SNMP's motions to compel, which requested waiver of these objections. (*Id.* at 16.)

SNMP's second argument again ignores the substance of Extreme's responses. SNMP contends that "[t]he mere statement by a party that an interrogatory or request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection." (Third Mot. at 12 (citation omitted).) Unlike the discovery responses in the caselaw cited by SNMP, Extreme's objections are not "boilerplate," and go beyond a "mere statement" that the request is overbroad. (*Id.* at 11 (quoting caselaw on "boilerplate" objections"); *see also* ECF No. 71 at 8 n.10 (distinguishing additional law that SNMP apparently has now abandoned).)[11]

For example, SNMP's first cited Request for Production seeks "All user guides, manuals, or other instructional Documents Relating to the Products Identified in response to Interrogatory number 1." (ECF No. 96-14 at 19.) SNMP claims that Extreme's response to this request reflects "bare assertions of burden, overbreadth, and disproportionality." (Third Mot. at 11.) Not so. Extreme's response points out that this request is a fishing expedition, and Extreme instead limited the documents it agreed to produce to those documents "that constitute guides, manuals, data sheets, technical specifications, and reference sheets for the products identified in response to Interrogatory No. 1." (ECF No. 96-14 at 19-20.) Extreme's other cited responses similarly are not "boilerplate" objections or a "mere statement" that the request is overbroad.

SNMP attempts to justify its overbroad requests that seek "All Documents Relating to" in two ways. **First**, SNMP claims that these requests are appropriate because they are "properly tied . . . to specific categories of information." (Third Mot. at 12.) But that is not a faithful

---

[11]  It is telling that SNMP asserted that four of Extreme's six Requests for Production were "unduly burdensome" and "unfair," and yet did not provide any affidavit to that effect. (Demers Decl. Ex. 2 at 3-5.)

13

characterization of the 25 cited requests.  For example, one of these "specific" categories is "Extreme's revenues, costs, and profits related to its infringing products along with products/services sold with these products."  (*Id.*)  But within that category are the following requests:

- **Request for Production No. 6:** All Documents Relating to SNMP Research's Interrogatory number 6, and Your answers and responses to the same.

- **Request for Production No. 9:** All Documents Relating to SNMP Research's Interrogatory number 9, and Your answers and responses to the same.

- **Request for Production No. 29:** All Documents Relating to revenue information for each and every Product Identified in response to Interrogatory numbers 1 and 2 dating from the year 2017 and continuing to the present.

- **Request for Production No. 30:** All Documents Relating to profit and loss analysis for all Products Identified in response to Interrogatory numbers 1 and 2 dating from the year 2017 and continuing to the present.

(ECF No. 96-14 at 12, 14, 31-32.)  These requests are not tied to a specific category of information; they are overbroad on their face.  *See, e.g.*, *Transamerica Life Ins. Co. v. Moore*, 274 F.R.D. 602, 609 (E.D. Ky. 2011) ("Generally, a discovery request is considered overly broad or unduly burdensome on its face if it '(1) uses an omnibus term . . . and (2) applies to a general category or group of documents or a broad range of information.'" (citation omitted)).

Nevertheless, Extreme still identified material that it *agreed* to produce for those requests. For Request Nos. 6 and 9, Extreme limited the documents it agreed to produce to those documents that "Extreme relies upon to respond to [that] Interrogatory."  (ECF No. 96-14 at 12, 14-15.)  And for Request Nos. 29 and 30, Extreme limited those documents to documents "sufficient to show" "revenue information" or "profit and loss information" for the products identified in its interrogatory response for the requested years.  (*Id.* at 32-33.)  (To put this into context: This means that Extreme has already agreed to provide revenues, costs, profits, and other obviously relevant financial reporting data for the accused products.  And yet SNMP is moving to compel because it

14

wants all documents "Relating to" the same, which would result in an impractical if not absurd scenario in which a party is forced to disgorge the entirety of its financial files no matter how redundant, voluminous, or irrelevant its contents.) By refusing to address the requests on a request-by-request basis, and by refusing to address Extreme's responses at all, SNMP's brief obfuscates the sheer breadth of the information that they are seeking and elides that Extreme in fact identified material that it agreed to produce. The remainder of requests are similarly broad, and SNMP should be required to justify its requests on a request-by-request basis taking into consideration Extreme's response to the discovery requests.

*Second*, SNMP claims without citation that this case "involves ill-gotten profits believed to be in the hundreds of millions of dollars." (Third Mot. at 13.) To put it very, very mildly: this representation by SNMP is irresponsibly incorrect, and does not square with █████████████ ███████████████. (*See, e.g.*, ECF No. 98 at SNMP-0005000 ███████ █████████████████████████████████████████.)

C.  <u>**Response to SNMP's Item 2**</u>: Extreme's Responses Properly Identify the Parameters of its Search

For Item 2, SNMP takes issue with Extreme supposedly "fail[ing] to identify whether any documents or information are being withheld on an objection-by-objection basis," and asks the Court to waive all of Extreme's objections (presumably even objections predicated on attorney-client privilege or work product) for this reason – again all in one paragraph of briefing. (Third Mot. at 13.) But Extreme already explained its position to SNMP before this motion:

> As allowed under the rules, Extreme's responses and objections define the scope of document collection and review that it is conducting. (*See, e.g.*, Fed. R. Civ. P. 34(b)(3)(C) advisory committee's note to 2015 amendment ("An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been 'withheld.'").)

15

(ECF No. 96-17 at ECF p. 5-6.)  Extreme further explained that its investigation is ongoing and it does not yet have an exhaustive list of everything that exists for each request.  (*Id.*)  This is exemplified, for instance, by the responses reproduced in the previous section – where SNMP's requests were overbroad or sought irrelevant information, Extreme detailed the sensible limits that governed its search for responsive and relevant materials.

SNMP does not respond to this argument, instead relying on caselaw admonishing boilerplate objections.  (Third Mot. at 9.)  Again, because Extreme's objections are not boilerplate, SNMP's cited authorities are inapposite.

   D.    <u>SNMP's Items 3, 4, and 6</u>:  **The Parties Are Actively Negotiating the Scope of "SNMP Research Software" and Source Code Productions**

SNMP raises three issues relating to SNMP's definition of "SNMP Research Software," and more generally, to SNMP's refusal to disclose to counsel for Extreme the alleged copyrighted code that it is asserting in this copyright infringement case.  (*See* Third Mot. at 2 (items 3, 4, and 6); *id.* at 14-17, 19-21.)

By way of background for these disputes, SNMP brought this lawsuit for copyright infringement against Extreme and identified eight (8) specific copyright registrations for the "software at issue in this case" in Table 1 in the Complaint.  (Compl. ¶ 33.)  That Table lists various product names that contain the software that is allegedly registered – e.g., NETMON, Associated Applications, and Libraries Version 15 is supposedly registered under registration number TXu 1-706-718; Version 16 under registration number TXu 1-707-158; and Version 17 under TXu 1-707-157.

Even as of today—nearly 12 months after SNMP filed this case—SNMP has refused to share with Extreme's counsel actual copies of the alleged copyrighted works that (i) it claims are

registered with the Copyright Office (although are not readily accessible by Extreme through the Copyright Office), and (ii) it is asserting against Extreme in this litigation.

SNMP then served hundreds of discovery requests in this case, which included the term "SNMP Research Software," defined as any of the following:

> (i) software provided by SNMP Research to Brocade, (ii) software licensed by SNMP Research to Brocade, or (iii) any software created by SNMP Research which is or was in the possession of Extreme.

(*See* ECF No. 96-9 at 2.) SNMP further defined this term such that "[t]he foregoing categories include Source Code, compiled code, binary code, configuration files and data, associated documentation, and Derivative Works thereof." (*Id.* at 3.) As explained in prior briefing,[12] this definition is not limited to the alleged copyrighted works asserted in the Complaint. In other words, this definition of SNMP Research Software is not at all tailored to the allegations of copyright infringement against Extreme in the Complaint. SNMP admits as much. (*See, e.g.*, Second Mot. to Compel Extreme at 7 ("Extreme assert[s] that the phrase 'SNMP Research Software' . . . is broader than what is alleged in Plaintiffs' Complaint. Plaintiffs explained that the Complaint encompasses all SNMP Research Software.").)

Certain of these discovery requests propounded by SNMP seek discovery into Extreme's source code. SNMP demands that Extreme provide discovery into all source code for a wide range of its products as a condition of Extreme receiving basic, threshold information – the code for the alleged copyrighted works that SNMP is asserting against Extreme.

And, SNMP has since admitted that it did not register the version of code that it provided under the license agreement at issue in this litigation. (*See, e.g.*, Demers Decl. Ex. 1 at ECF p. 4.)

---

[12] (*See, e.g.*, ECF No. 62 at 10-13; ECF No. 71 at 9-10; ECF No. 72 at 15-19.)

To summarize: SNMP is refusing to provide counsel for Extreme with copies of the alleged copyrighted works that it is accusing Extreme of infringing as listed in the Complaint; SNMP has admitted that the relevant code here – the code provided under the license agreement – was not registered with the Copyright Office; SNMP is demanding discovery into Extreme's highly confidential source code (including confidential source code belonging to Extreme and third parties, not alleged by SNMP to be relevant to this case) as a condition of providing Extreme with basic, threshold information on the alleged, asserted copyrighted works; and SNMP is seeking discovery from Extreme relating to software even beyond these alleged, asserted copyrighted works.

Against this backdrop, SNMP's three issues are readily dismissed. SNMP's argument for item 3 on its list, that the definition of SNMP Research Software is not ambiguous, does not hold water. (*Cf.* Third Mot. at 3 (item 3), 10-11.) SNMP could have limited the definition of SNMP Research Software to the alleged, asserted works limited in Table 1 of the Complaint, but it did not do so. Instead, SNMP views this term as including some amorphous set of all of its code, potentially including registered or unregistered works, and in any event unspecified. What is more, SNMP's request to order Extreme to "respond to all requests to which it objects based on [this] definition" within two weeks of the Court's order (*id*. at 24) is absurd. Setting aside that Extreme has provided responses for the listed requests, and setting aside the impracticality of the two-week deadline (discussed *infra*), SNMP's discovery positions prevent Extreme from further answering many requests. For instance, Request for Admission No. 13 asks Extreme to "[a]dmit the SNMP Research Software shipped in Your Products was registered with the Copyright Office through registration TXu 1-706-718." (ECF No. 96-16 at 15-16.) How in the world could Extreme even begin to answer that question, given that neither Extreme nor its outside counsel even knows what

code SNMP registered under TXu 1-706-718?  SNMP could of course help with that problem, by disclosing to counsel for Extreme copies of the allegedly copyrighted works, but SNMP has consistently refused to do so.

SNMP's motion also displays a wrongheaded view of its pre-suit communications with Extreme.  (Third Mot. at 13-14.)  SNMP makes much of these communications, claiming that Extreme "identified the SNMP Research Software it was using as well as the products using it." (*Id.* at 14.)  But it is improper to graft a defined term in a discovery response that was propounded in a litigation brought in federal court onto pre-suit licensing communications which were not (and were not even purported to be) based on any particular copyright registration.  (*See* ECF No. 71 at 10.)

SNMP's argument with regard to item 4 on its list, on the production of source code, similarly falls short.  (Third Mot. at 3 (item 4), 15-16.)  SNMP's refusal to provide a defendant in a copyright infringement dispute with the alleged, asserted copyrighted works is stunning.  That is akin to a plaintiff suing a defendant for patent infringement without sharing the patent numbers; or a trade secret owner suing a defendant for misappropriation without identifying its trade secrets with particularity.[13]  SNMP should not be allowed to hold back the code filed with the Copyright Office here.

---

[13] *See, e.g.*, *Keysight Techs. v. Nanomechanics, Inc*., No. 3:15-cv-00232, 2017 WL 10434023, at *2 (E.D. Tenn. Apr. 20, 2017) ("To open the door to discovery, [plaintiff] has to at least allege which of its trade secrets were misappropriated by [defendant]. In its various filings before the court . . . [plaintiff] still does not identify what trade secrets were misappropriated, or how [defendant] misappropriated its trade secrets."); *see also Abarca Health, LLC v. PharmPix Corp*., 806 F. Supp. 2d 483, 486, 493 (D.P.R. 2011) (denying copyright infringement plaintiffs' "request for production of the entirety of defendants' source code"; "[h]aving as yet failed to flesh out their copyright claim, plaintiffs have not made a proper showing that the needs of the case merit the disclosure of an asset central to defendants' business").

In any event, this issue is not yet ripe for decision. Extreme has engaged with SNMP in meet and confers, and most recently SNMP acknowledged that "Extreme stated it will give thought to a workable middle ground" on source code production issues. (Demers Decl. Ex. 1 at ECF pp. 2-3.) Extreme reserves all of its rights once the parties have fulfilled their meet and confer obligations.

Finally, for SNMP's last issue in this category (item 6 on its list), SNMP tries to back out of the agreement reached during meet and confers. (Third Mot. at 3 (item 6), 19-21.) As an attempted workaround for SNMP's overbroad and strangely ambiguous definition of "SNMP Research Software," the parties agreed that Extreme's initial responses would be tied to the products that SNMP identified in the complaint. No longer satisfied with discovery into the products that SNMP believed it had sufficient basis to include in a complaint filed in federal court, SNMP now chastises Extreme for proceeding on its understanding of that agreement and supposedly failing to investigate "additional Extreme products . . . beyond the precise product lines referenced in the Complaint." (*Id.* at 19.) In any event, SNMP's more recent complaints about information provided for the products that are actually identified in the Complaint fail to take stock of information it ***already received*** from Extreme and that Extreme already agreed to investigate. For instance, SNMP faults Extreme for "fail[ing] to produce requested information such as . . . software or firmware release versions." (*Id.* at 20.) As Extreme explained to SNMP, "SNMP is incorrect that release numbers and release dates are not provided; the documents produced already identify release numbers and dates of releases. (*See, e.g.*, EXTREME-00004992 – EXTREME-00005051 (18s.1.01a Release, dated March 11, 2019)." (ECF No. 96-17 at ECF p. 6.) As to SNMP's request for products "sold with" the products identified in the Complaint, Extreme accepted SNMP's new explanation that it was seeking items such as "power cords" as opposed to

20

separate products, and agreed to investigate. (*See* Third Mot. at 20-21.) These issues thus are not ripe for decision at this time.

      **E.**      **<u>Response to SNMP's Item 5</u>: Extreme Did Not Waive its Objections to Additional Defined Terms**

      SNMP asks this Court to waive Extreme's objections to a litany of vague terms and phrases as used in the requests. The basis for SNMP's demand for a waiver for this category appears to be a mere disagreement with Extreme's positions. Not only are Extreme's objections preserved, but they are also persuasive. To start, Extreme objected to the definition of "Product," which SNMP now states is "meant to capture not only the products that Extreme has already admitted contain Plaintiff's software, but also any additional products containing Plaintiff's software that Extreme has not yet admitted are infringing."[14] (Third Mot. at 18.) This confirms Extreme's interpretation of the ambiguous definition, as Extreme objected to the extent that the definition "purports to concern products that are not alleged to be infringing Plaintiffs' copyrights in this action, products that are merely associated with SNMP software, and/or products sold outside the United States." (ECF No. 96-16 at 5-6.)

      SNMP's motion also confirms that Extreme's objection to "build environment" is proper. Extreme objected to the use of the phrase "build environment" in a request that seeks "[t]he build environment along with instructions for building each Product for all Source Code produced . . . ." (ECF No. 96-14 at 24.) SNMP now claims that "build environment" means "software and hardware tools <u>and instructions</u> that a developer uses to transform source code into a runnable software system . . . ." (Third Mot. at 18 (emphasis added).) SNMP's request for the "build environment along with instructions for building" thus remains ambiguous.

---

[14]   Extreme has not made any admissions on infringement, and expressly reserves these defenses.

21

SNMP feigns confusion at how the phrase "documents constituting a Consent Payment" could be ambiguous. (*Id.* at 19.) How a document could "constitute" a payment remains unclear, but in any event, Extreme had already agreed to assess whether records exist demonstrating that a payment had been made.

For the remaining terms, Extreme's positions are outlined in its discovery responses, and further detailed in the parties' prior briefing. (*See, e.g.*, ECF No. 72 at 14-15 (quoting discussion of "transfer" and "distribute" during a meet and confer).)

F. **Response to SNMP's Items 7 and 9**: Extreme Already Agreed to **Provide an Identification of People and Provided Requested Metadata**

Items 7 and 9 on SNMP's list are for the most part not actually disputed issues. For item 7, SNMP wrongly asserts in its Motion that "Extreme refuses to identify personnel who have searched for Extreme's products containing Plaintiff's software" (Third Mot. at 21) while at the same time acknowledging in e-mail correspondence that Extreme "will provide names if any people are identified." (ECF No. 96-17 at ECF p. 3.) What is more, Extreme's interrogatory responses ***already identify*** the names of personnel that provided factual information for the responses. (ECF No. 99 at 25.) SNMP also claims that it is entitled to the name of every member of Extreme's services division. (*See id.*) While Extreme disagrees as to the relevance of this information, Extreme agreed to investigate further, as SNMP concedes. (*See id.*) With regard to item 9, Extreme provided metadata to the extent reasonably accessible as per the stipulated ESI Protocol, and subsequently provided additional metadata. (Demers Decl. Ex. 3.)

G. **Response to SNMP's Item 8**: **Requests as to Extreme's** **Knowledge of Other Entities Are Not Yet Ripe for Decision**

SNMP has propounded numerous requests on Extreme that seek details of third parties' involvement in various transactions – namely, Broadcom Inc. and its predecessors, successors, affiliated entities, and subsidiaries' involvement in the transfer or products to Extreme. Extreme's

responses emphasized that SNMP can – and in fact, did – pose this question to the actual entity at issue in the request. (Third Mot. at 22.) Nevertheless, SNMP also acknowledged that Extreme was considering SNMP's proposal to answer from Extreme's perspective. (*Id.*; *see also* ECF No. 96-17 at ECF p. 3.) Yet again, SNMP filed this motion too soon.

### H. <u>Response to SNMP's Items 10 and 11</u>: SNMP's Demand for Extreme To Complete Its Production in Two Weeks Is Outlandish

SNMP makes the staggering request that Extreme be ordered to fully complete document production and written discovery responses in two weeks, despite that:

- SNMP served more than one hundred thirty (130) requests on Extreme;

- SNMP views the scope of many requests as nearly boundless;

- SNMP has not provided information required to answer certain of its requests (*e.g.*, the code deposited with the Copyright Office);

- Motions to dismiss or transfer are still pending, the resolution of which may change the scope of the case; and

- In response to Extreme's set of six (6) total Requests for Production, SNMP agreed to produce one category of documents nearly one month after serving its written responses, and unilaterally demanded two months from that point to produce at least the vast majority of those documents. (Demers Decl. Ex. 1 at ECF p. 2.)

SNMP's two-week deadline thus strains credulity. Extreme nevertheless offered to "meet and confer with all parties in the litigation on a document production schedule." (ECF No. 96-17 at ECF p. 5.)

SNMP's description of Extreme's document production efforts is similarly not credible. SNMP claims that Extreme's rolling production rate is one document per month. (Third Mot. at 23.) To the contrary, Extreme has already produced nearly 9,000 pages of documents, including scores of release notes as requested by SNMP, despite that the parties had not even entered a protective order at the time of Extreme's first production.

In its parting shot, SNMP faults Extreme for providing supposedly incomplete answers. The irony of SNMP's position is not lost on Extreme.  In prior motions to compel, SNMP argued that objections should be waived where Extreme did <u>not</u> provide partial responses.  (*See* ECF No. 70-1 at 6; ECF No. 60-1 at 2, 11.)

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the briefing incorporated herein, SNMP's Third Motion to Compel against Extreme should be denied.  SNMP has thrown up hurdles preventing the parties from efficiently moving forward with discovery – propounding hundreds of overbroad requests, threatening waiver at every turn, and diverting the parties' efforts by filing serial motions without providing notice and without fulfilling its meet and confer requirements. SNMP's behavior should not be countenanced.  Extreme respectfully submits that SNMP's motion should be denied and SNMP should bear Extreme's costs and fees.

DATED:    Palo Alto, California
            October 18, 2021

                            Respectfully Submitted,

                            **SKADDEN, ARPS, SLATE,**
                              **MEAGHER & FLOM LLP**

                            By:    /s/ John M. Neukom   
                            John M. Neukom (*admitted pro hac vice*)
                            515 University Avenue, Suite 1400
                            Palo Alto, California 94301
                            john.neukom@skadden.com
                            (650) 470-4500

                            Jordan A. Feirman (*admitted pro hac vice*)
                            Leslie A. Demers (*admitted pro hac vice*)
                            One Manhattan West
                            New York, New York 10001
                            jordan.feirman@skadden.com
                            leslie.demers@skadden.com
                            (212) 735-3000

                            *Attorneys for Extreme Networks, Inc.*

24

**CERTIFICATE OF SERVICE**

I hereby certify that Extreme Networks, Inc.'s Memorandum of Law in Opposition to SNMP's Motion to Compel Responses from Defendant Extreme Networks, Inc. and Request for Costs and Counsel Fees Under Local Rule 37.2, is being served on all counsel of record in the above-captioned litigation via electronic filing on this 18th day of October, 2021.

_/s/ John M. Neukom_
John M. Neukom

515 University Avenue, Suite 1400
Palo Alto, California 94301
john.neukom@skadden.com
(650) 470-4500