# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., | § § § | Case No. 3:20-cv-00451 |
| Plaintiffs, | § § | |
| v. | § § | <u>Jury Demand</u> |
| BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; AND EXTREME NETWORKS, INC. | § § § § | |
| Defendants. | § § § | |

---

## PLAINTIFF SNMP RESEARCH, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY RESPONSES FROM DEFENDANT EXTREME NETWORKS, INC.

Plaintiff SNMP Research, Inc. ("Plaintiff" or "SNMP Research") respectfully submits this reply in support of its Motion to Compel Discovery Responses ("Motion" or "Mot."; Dkt. 96-1) and in response to Defendant Extreme Networks, Inc.'s ("Extreme") Opposition ("Opp."; Dkt. 109).

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ............................................................................................. 1

II.  ARGUMENT ................................................................................................... 2

    A.  EXTREME'S ASSERTION THAT PLAINTIFF DID NOT
    PROPERLY MEET AND CONFER IS MERITLESS ...................................... 2

    B.  EXTREME ASSERTS NUMEROUS OBJECTIONS WITH NO
    BASIS (Item 1) ....................................................................................... 4

        1.  EXTREME'S GENERAL OBJECTIONS ARE IMPROPER
        AND SHOULD BE DEEMED WAIVED ................................. 4

        2.  EXTREME'S RELEVANCY OBJECTIONS ARE
        MERITLESS ......................................................................... 6

        3.  EXTREME'S RESPONSES ON BURDEN, OVERBREADTH,
        AND PROPORTIONALITY UNDERSCORE THAT THESE
        OBJECTIONS ARE MERITLESS ......................................... 9

    C.  EXTREME'S RESPONSES DO NOT INFORM PLAINTIFF OR THE
    COURT AS TO WHETHER INFORMATION HAS BEEN
    WITHHELD ON THE BASIS OF ITS OBJECTIONS (Item 2) ...................... 12

    D.  THE PARTIES' DISPUTES OVER PLAINTIFF'S DEFINITION OF
    "SNMP RESEARCH SOFTWARE" AND REQUESTS FOR
    EXTREME'S SOURCE CODE ARE RIPE FOR THIS COURT'S
    DECISION ................................................................................................ 13

        1.  PLAINTIFF'S DEFINITION OF "SNMP RESEARCH
        SOFTWARE" IS PROPER AND EXTREME SHOULD BE
        ORDERED TO RESPOND TO THE REQUESTS INVOKING
        THAT DEFINITION (Item 3) ............................................... 13

        2.  PLAINTIFF'S REQUESTS FOR EXTREME'S SOURCE
        CODE ARE PROPER (Item 4) .............................................. 15

        3.  EXTREME SHOULD BE ORDERED TO IDENTIFY ALL
        PRODUCTS CONTAINING PLAINTIFF'S SOFTWARE
        AND TO ANSWER ALL ASSOCIATED RFPS (Item 6) .................... 17

    E.  EXTREME'S OBJECTIONS TO COMMONLY-UNDERSTOOD
    TERMS ARE WITHOUT MERIT (Item 5) ........................................ 19

    F.  EXTREME SHOULD BE ORDERED TO RESPOND TO THE
    REQUESTS SEEKING IDENTIFICATION OF PEOPLE AND TO
    PROVIDE REQUIRED METADATA ........................................... 21

        1.  EXTREME MUST MEANINGFULLY AND FULLY
        RESPONSE TO THE REQUESTS SEEKING
        IDENTIFICATION OF PEOPLE (Item 7) ........................... 21

2.   EXTREME MUST PROVIDE REQUIRED METADATA
(Item 9)....................................................................................................21

G.   EXTREME SHOULD BE ORDERED TO RESPOND TO THE
REQUESTS SEEKING IDENTIFICATION OF ENTITIES (Item 8) ..............22

H.   EXTREME SHOULD BE ORDERED TO PRODUCE DOCUMENTS
AND ANSWER INTERROGATORIES WITHIN 2 WEEKS OF THE
COURT'S ORDER OR BY A DATE CERTAIN (Items 10 and 11).................22

III.   CONCLUSION..........................................................................................................23

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abarca Health, LLC v. PharmPix Corp.*,
806 F. Supp. 2d 483 (D.P.R. 2011)....................................................................16

*Adkisson v. Jacobs Eng'g Grp., Inc.*,
No. 3:13-CV-505-TAV-HBG, 2020 WL 8254452 (E.D. Tenn. Dec. 10, 2020) .....................9

*Banerjee v. Univ. of Tennessee*,
No. 3:17-CV-526-HSM-HBG, 2019 WL 1062378 (E.D. Tenn. Mar. 6, 2019) .......................3

*Brady v. LTD Parts, Inc.*,
No. 2:08-0058, 2009 WL 2224172 (M.D. Tenn. July 22, 2009) ...............................3

*Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*,
No. 10-CV-03428-LHK, 2011 WL 7762998 (N.D. Cal. Aug. 16, 2011), Dkt.
86...............................................................................................16

*Greer v. Home Realty Co. of Memphis Inc.*,
No. 2:07-CV-02639-SHM, 2010 WL 6512339 (W.D. Tenn. July 12, 2010)...........................3

*J.S.T. Corp. v. Robert Bosch LLC*,
No. 15-13842, 2018 WL 11358753 (E.D. Mich. Sept. 21, 2018)..............................6

*JGR, Inc. v. Thomasville Furniture Indus., Inc.*,
2005 WL 8168287 (N.D. Ohio Jan. 7, 2005)..............................................3

*Jones v. Am. River Transportation Co., LLC*,
No. 19-CV-2558-SHM-TMP, 2020 WL 7865326 (W.D. Tenn. June 17, 2020).....................5

*Keysight Techs., Inc. v. Nanomechanics, Inc.*,
No. 3:15-CV-00232, 2017 WL 10434023 (E.D. Tenn. Apr. 20, 2017)..................16

*Neale v. Coloplast Corp.*,
No. 1:18-cv-00274-TRM, 2020 WL 6948361 (E.D. Tenn. Nov. 02, 2020)...........................9

*Neale v. Coloplast Corp.*,
No. 118CV00274TRMSKL, 2020 WL 8771652 (E.D. Tenn. Sept. 3, 2020) ..........................3

*Siser N. Am., Inc. v. Herika G. Inc.*,
325 F.R.D. 200 (E.D. Mich. 2018) ....................................................11

*Sobol v. Imprimis Pharms.*,
No. CV 16-14339, 2017 WL 5035837 (E.D. Mich. Oct. 26, 2017) .........................5

*Strategic Mktg. & Rsch. Team, Inc. v. Auto Data Sols., Inc.*,
No. 2:15-CV-12695, 2017 WL 1196361 (E.D. Mich. Mar. 31, 2017) ......................................4

*Westdale Recap Props., Ltd. v. NP/I & G Wakefield Commons, L.L.C.*,
No. 5:11-CV-659-D, 2013 WL 5424844 (E.D.N.C. Sept. 26, 2013) ......................................6

**Statutes**

28 U.S.C. § 1400(a) ......................................................................................................9

**Rules**

Fed. R. Civ. P. 26(b)(2)...............................................................................................11

Fed. R. Civ. P. 34(b)(2)(B) ...........................................................................................8

Fed. R. Civ. P. 34(b)(2)(C) .........................................................................................12

Fed. R. Civ. P. 34(b)(3)(C) .....................................................................................2, 12

**Other Authorities**

https://investor.extremenetworks.com/node/17291/html...............................................20

# I.     INTRODUCTION

It has now been nearly ten months since the opening of discovery and four months since the Court's June 25, 2021 order denying Defendants' request for a stay of discovery.  Dkt. 75.  After more than half-a-dozen meet and confer calls with Extreme spanning many hours, "supplemental" discovery objections, empty promises to "further investigate" and "give thought" to Plaintiff's requests, and a sum total of 176 produced documents (the majority of which are public), the issues identified in Plaintiff's Motion are ripe for decision.

As demonstrated in the Motion, with only a handful of exceptions, Extreme has refused to respond substantively to Plaintiff's requests.  Instead, Extreme continues to stand on its improper "general" objections incorporated into every response, never indicating which objections are leading to the withholding of substantive responses and documents.  Extreme does this despite the parties' numerous meet and confer calls intended to resolve these objections, and despite settled law in this Circuit proscribing this approach and full notice from prior briefing that such conduct subjects Extreme to waiver.  Extreme's general objections are thus waived, and the sole authority that Extreme provides in support of its assertion that it should not face waiver is a decision that was authored prior to the 2015 Federal Rule amendments requiring parties to respond to discovery with specificity.  *See infra* § II.B.1.

Extreme's "specific" objections are likewise without justification and are just tools for delay.  After nearly four months since its request for a stay of discovery was denied, Extreme has continued to double-down on its objections to common-sense and plain terms, to production of source code for its products containing Plaintiff's software, and to other highly-relevant documents and information (such as Extreme's revenues and costs).  For the documents that Extreme has indicated it will produce, Extreme continues to refuse to give any indication (let alone a date certain) of when it will produce these documents or respond to interrogatories.  Moreover, although Extreme has lodged dozens of objections for each request, Plaintiff still does not know "whether any relevant and responsive

information has been withheld on the basis of the objections" because Extreme refuses to indicate which objections, if any, are leading to the withholding of documents. Fed. R. Civ. P. 34(b)(3)(C) advisory committee note to 2015 amendment. Six months are left before Plaintiff's expert disclosures are due (Dkt. 106) and during this remaining time, Plaintiff will need to conduct, *inter alia*, a source code infringement analysis, which Extreme has acknowledged will be a "time consuming and tedious task." Dkt. 46. Plaintiff respectfully requests the Court to grant the Motion in its entirety. Mot. at 2-3.

## II. ARGUMENT

### A. EXTREME'S ASSERTION THAT PLAINTIFF DID NOT PROPERLY MEET AND CONFER IS MERITLESS

Rather than meaningfully respond to Plaintiff's discovery requests, Extreme instead claims that Plaintiff filed the present motion "premature[ly]" (Opp. at 1), "without completing meet-and-confer discussions" (*id.*), and without "meaningfully attempt[ing] to resolve this dispute prior to filing" (*id.* at 5). Contrary to Extreme's rhetoric, Plaintiff has devoted many hours to discussions with Extreme over its responses to the discovery requests during the course of two meet and confer calls in the spring, five meet and confer calls between July 8 and August 5, and an additional meet and confer call on September 16. Dkt. 96-2 ("Weber Decl.") ¶¶ 11-12, 15, 22. Plaintiff also participated in a meet and confer call with Extreme and Defendants Broadcom Inc. ("Broadcom') and Brocade Communications Systems LLC ("Brocade") on September 23, during which the parties discussed source code production.

Plaintiff's discovery is straightforward and seeks highly relevant information[1], yet Extreme's delay and manufactured objections have distracted from and needlessly complicated the discovery process. Extreme asserts that this Motion was filed "in the midst of active negotiations amongst the parties." Opp. at 5. However, the parties do not have any additional meet and confer calls scheduled

---

[1] *See infra* § II.B.2.

nor has Extreme requested any. Throughout the parties' meet and confer calls, Extreme has

repeatedly stated that it will produce documents and "give thought" to Plaintiff's proposals. After

months of these purported promises, it is clear that these statements are nothing more than delay

tactics, and an overarching theme remains constant: Extreme refuses to produce documents or

identify information that should be accessible and refuses to agree to a date certain for production of

documents that it has agreed to produce. Almost ten months after discovery opened and four months

since the Court's order denying Defendants' request to stay discovery, Plaintiff still does not have the

vast majority of documents and information it has requested, including but not limited to the source

code for Extreme's products that Extreme has <u>already admitted</u> contain Plaintiff's software.

Plaintiff's efforts to meet and confer with Extreme plainly comply with both the Federal and

Local Rules. Extreme's request for costs and fees (Opp. at 5-7) is meritless. *See, e.g.*, *JGR, Inc. v.*

*Thomasville Furniture Indus., Inc.*, 2005 WL 8168287, at *2 (N.D. Ohio Jan. 7, 2005) (rejecting

"Defendant's argument that Plaintiff's failure to comply with [the meet and confer requirement]

warrants the denial of its Motion to Compel" and stating that "the Court finds such a contention to be

rather disingenuous considering Defendant's behavior over the course of the discovery process."),

*adopted*, 2005 WL 8168289 (N.D. Ohio Mar. 21, 2005).[2] It is no coincidence that it took filing a

motion to compel against Extreme for Plaintiff to obtain even limited supplemental production and

required metadata, which Extreme served the evening that its Opposition was due, on October 18,

2021. Extreme's delay has needlessly run up the costs in this litigation and imposed burdens on the

---

[2] Extreme's cited authority is plainly inapposite. *See Banerjee v. Univ. of Tennessee*, No. 3:17-CV-526-HSM-HBG, 2019 WL 1062378, at *1 (E.D. Tenn. Mar. 6, 2019) (plaintiff refused to respond to a discovery letter from the defendant); *Neale v. Coloplast Corp.*, No. 118CV00274TRMSKL, 2020 WL 8771652, at *1 (E.D. Tenn. Sept. 3, 2020) (plaintiff "merely had one, five-minute telephone call with [d]efendant" and "made no further attempt to confer prior to seeking judicial intervention."); *Brady v. LTD Parts, Inc.*, No. 2:08-0058, 2009 WL 2224172, at *1 (M.D. Tenn. July 22, 2009) (denying the defendant's motion for a protective order that "[did] not contain the required [meet and confer] certification" and followed a single telephone call); *Greer v. Home Realty Co. of Memphis Inc.*, No. 2:07-CV-02639-SHM, 2010 WL 6512339, at *1 (W.D. Tenn. July 12, 2010) (pro se defendant failed to certify that he met and conferred with the plaintiff).

Court. If any party should pay counsel's costs and fees associated with the present Motion, it is Extreme.

### B. EXTREME ASSERTS NUMEROUS OBJECTIONS WITH NO BASIS (Item 1)[3]

#### 1. EXTREME'S GENERAL OBJECTIONS ARE IMPROPER AND SHOULD BE DEEMED WAIVED

Extreme argues that Plaintiff cites inapposite case law requiring waiver of general objections because Extreme's objections are not "*actually* boilerplate." Opp. at 8 (emphasis in original). Courts within the Sixth Circuit repeatedly have stated that boilerplate or general objections are tantamount to no objection at all and are deemed waived. *See Strategic Mktg. & Rsch. Team, Inc. v. Auto Data Sols., Inc.*, No. 2:15-CV-12695, 2017 WL 1196361, at *2 (E.D. Mich. Mar. 31, 2017) ("Boilerplate or generalized objections are tantamount to no objection at all and will not be considered by the Court."); *see also* Mot. at 8-9; Dkt. 60-1 at 10-11, 17-18; Dkt. 65 at 12-14. To take just a few examples, one objection states that "Extreme objects to the Requests to the extent they seek information that is not relevant to any party's claim or defense and/or is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Dkt. 96-14 ("Second. Supp. Response to RFPs") at 2. Another states that "Extreme objects to the Requests as impermissibly compound and frequently confusing," and yet another states that "Extreme objects to the Requests to the extent that they are overly broad and unduly burdensome." *Id.* at 3. These are boilerplate. *See Jones v. Am. River Transportation Co., LLC*, No. 19-CV-2558-SHM-TMP, 2020 WL 7865326, at *3 (W.D. Tenn. June 17, 2020) ("legally meaningless" general objection stating "[t]his

---

[3] For the Court's reference, Plaintiff has used the same letter in the heading herein that Extreme assigned that topic in its Opposition and Plaintiff has also identified the item number in the Motion.

Request for Production is overly broad and may seek documents which are protected, privileged, and not otherwise discoverable" was waived); *Sobol v. Imprimis Pharms.*, No. CV 16-14339, 2017 WL 5035837, at *4 (E.D. Mich. Oct. 26, 2017) (general objection "that [the requests] are overly broad, burdensome, and oppressive" was waived).

Extreme also argues that within the general objections it included objections that are "tailored to the issues in this case" (*id.* at 8). This argument does not save its general objections, for three reasons. First, Extreme lodged 16 general objections in response to the RFPs, 15 in response to the RFAs, and 17 in response to the Interrogatories, and it vaguely "incorporated [these] by reference into each and every specific response set forth below" (Second Supp. Response to RFPs at 2-6). This indiscriminate and improper approach (*see infra* § II.C) means that Plaintiff never knows which of these objections are leading to the withholding of documents. Second, for the "general" objections that are actually re-stated in Extreme's "specific" objections on a request-by-request basis—*e.g.*, Extreme's objections to the definition of "SNMP Research Software" (Second Supp. Response to RFPs at 3-4), and to the definition of "Product," (Second Supp. Response to RFAs at 5-6)—Plaintiff addressed why these objections fail in its Motion. *See* Mot. at 14-15, 18. For many of Extreme's other "general" objections, it never re-stated them in its "specific" objections on a request-by-request basis (other than by way of its problematic incorporation by reference). In particular, Extreme objects to Plaintiff's definitions of "Identify" (Second Supp. Response to Interrogatories at 6) and "Broadcom" and "Brocade" (*id.* at 4) in its general objections, but Extreme did not re-state these in any of its specific objections to each request (even though it re-stated others, such as its objection to "Product"). Third and finally, Extreme continues to assert general objections to the definitions of "Extreme" (Second Supp. Response to RFPs at 3), "SNMP Research" (Second Supp. Response to RFAs at 4), and "Partner Products" (Second Supp. Response to Interrogatories at 6), yet Plaintiff understood that the parties resolved these disputes after meeting and conferring, *see* Dkt. 96-10 at 1, 3, 7 (Extreme's objection to

the definition of "Extreme" was resolved once the parties agreed on a definition of "affiliate"); *id.* at 1 (counsel for Extreme proposed amended versions of RFPs 68 and 69, both of which used the terms "Extreme" and "SNMP Research," and noted only that the parties "still disagree about the scope of . . . 'SNMP Research Software'"); Dkt. 96-12 at 3-4 (agreeing to a preliminary definition of "Partner Products"); Second Supp. Response to Interrogatory No. 2 ("Extreme understands through meet and confers that SNMP is seeking information relating to products sold through other OEMs under that OEM's brand."). These groundless objections just underscore that Extreme's tactic is to delay meaningfully responding for as long as possible. In sum, even the "general" objections that are not patently boilerplate are improper.

Extreme cites a single case for the assertion that it should not face the "severe consequence of waiver." Opp. at 9 (citing *Westdale Recap Props., Ltd. v. NP/I & G Wakefield Commons, L.L.C.*, No. 5:11-CV-659-D, 2013 WL 5424844, at *5 (E.D.N.C. Sept. 26, 2013)). Not only did the court observe that the defendant in that case "ha[d] not been relying on these stock objections" (*Westdale*, 2013 WL 542844 at *5), more significantly, that decision was authored prior to the 2015 Federal Rule amendments making clear that specificity is now a requirement. *See, e.g.*, *J.S.T. Corp. v. Robert Bosch LLC*, No. 15-13842, 2018 WL 11358753, at *8 (E.D. Mich. Sept. 21, 2018) ("The 2015 amendments to the Federal Rules of Civil Procedure charge parties with propounding and responding to discovery with specificity."). Extreme's improper general objections are waived per post-2015 authority.

This waiver issue has been discussed during the parties' meet and confers and has also been briefed extensively. *See, e.g.,* Dkts. 60-1 at 10-11; 65 at 12-14. Extreme has had ample opportunity to correct its improper general objections and its failure to do so underscores that the appropriate result is to order Extreme's general objections waived.

## 2. EXTREME'S RELEVANCY OBJECTIONS ARE MERITLESS

Extreme asserts several arguments as to why its relevancy objections have merit, but none hold

water.

First, in an attempt to somehow justify its rote relevancy objections, Extreme argues that it "articulated the parameters that would govern its responses where appropriate." Opp. at 9. Extreme cites its response to RFP 25 as one example. *Id.* at 9 n.8. RFP 25 requests "All Communications concerning SNMP Research or the SNMP Research Software." Dkt. 96-7 ("RFPs") No. 25. After incorporating its prior objections (which contain the relevancy objection), Extreme's "supplemental" response states:

> Subject to and without waiving the foregoing objections, and subject to agreements reached during meet and confers, Extreme states that it is unable to produce documents at this time in response to the portion of this Request that incorporates the term "SNMP Research Software," except insofar as any relevant documents are produced in response to other Requests. Nevertheless, Extreme is willing to continue to meet and confer with SNMP regarding this Request.
>
> With regard to the portion of this Request that incorporates the term "SNMP Research," **Extreme will produce, on a rolling basis, non-privileged documents**, to the extent that such documents exist, are within Extreme's possession, custody, or control, have not already been produced, and are located after a reasonably diligent search, **responsive to a reasonable interpretation of this Request**.

Second Supp. Response to RFPs No. 25 (emphasis added). This response does not articulate any parameters that would inform Plaintiff of the grounds upon which Extreme is narrowing or withholding as to relevancy. Extreme's agreement to produce documents "responsive to a reasonable interpretation of this Request" is obviously improper and provides no explanation as to what documents Extreme will provide and on what grounds. Extreme's other responses are also deficient insofar as Plaintiff cannot discern whether Extreme is withholding documents on relevancy grounds—even for those requests that Extreme indicates it is willing to produce documents. *See, e.g.*, Second Supp. Response to RFPs Nos. 1-14 (incorporating all prior objections, including a relevancy objection, and stating that Extreme will only produce documents that it "relies upon" to respond to the correspondingly numbered Interrogatories).

Second, Extreme argues that Plaintiff does not acknowledge that Extreme agreed to provide

documents for "the majority of the document requests." Not only did Plaintiff acknowledge that Extreme offered to provide documents, Section III.H of the Motion requests the Court to order Extreme to provide these documents by a date certain, since Extreme refused to provide a start and end date for this production as the Federal Rules require. *See* Motion at 23-24 (citing Fed. R. Civ. P. 34(b)(2)(B)). Equally as problematic, although Extreme argues that its agreement to produce some documents shows it "agrees that at least a portion of the requests seeks relevant information, and has identified that portion," Opp. at 10, Extreme's generic relevancy objection does not identify why each request is not relevant or which portion is relevant. And if Extreme no longer objects to any portion of a request, then the relevancy objection should be withdrawn.

Third, Extreme argues that "SNMP does not rebut any of Extreme's particularized responses by explaining why the requests are relevant." Opp. at 10. Extreme's relevancy objections are not "particularized." The overwhelming majority of Extreme's relevancy objections are just minor variations of the following empty phrase: "Extreme objects to this Request as overly broad, unduly burdensome, **seeking irrelevant information**, and ambiguous" (Second Supp. Response to RFPs No. 1) (emphasis added), which Extreme sometimes modifies by, *inter alia*, asserting that the requests are irrelevant "including to the extent" they seek "all documents relating to" categories or products not containing Plaintiff's software, or supposedly constitute "fishing expedition[s]." *See* Second. Supp. Responses to RFP Nos. 1-21, 28-29, 32-37, 39-42, 44-45, 47, 49, 51, 54-55, 57, 59, 61, 63-65; Dkt. 96-13 ("Second Supp. Response to Interrogatory") Nos. 3-5, 7-10, 12, 15; Dkt. 96-16 ("Second Supp. Response to RFA") Nos. 35-36. Plaintiff's requests are plainly relevant on their face, as even a cursory review shows the discovery propounded on Extreme seeks information pertaining to Extreme's products, profits on its infringement, use of Plaintiff's copyrighted software, transfer of that software, venue, and document preservation policies, all of which fall within the "extremely broad" category of

relevant materials.[4] *Neale v. Coloplast Corp.*, No. 1:18-cv-00274-TRM, 2020 WL 6948361, at *2

(E.D. Tenn. Nov. 02, 2020); *Adkisson v. Jacobs Eng'g Grp., Inc.,* No. 3:13-CV-505-TAV-HBG, 2020

WL 8254452, at *3 (E.D. Tenn. Dec. 10, 2020) (the "scope of discovery under the Federal Rules of

Civil Procedure is traditionally quite broad.") (internal quotation marks and citations omitted).

Extreme then uses RFP 1 as an example of how Plaintiff purportedly requests irrelevant

information. Opp. at 10-11. But RFP 1 requests "All Documents Relating to" Extreme's products that

contain, use, or are otherwise associated with Plaintiff's software, either as manufactured or as a result

of a software or firmware installation or update. *See* RFP No. 1; Dkt. 96-6 ("Interrogatory") No. 1. A

request for all documents relating to Extreme's products containing Plaintiff's software is obviously

relevant to Plaintiff's copyright infringement claim against Extreme, especially given that "[r]elevance

has been construed broadly to encompass any matter that bears on, or that reasonably could lead to

other matters that could bear on, any issue that is or may be in the case." *Neale*, 2020 WL 6948361, at

*2.[5]

### 3. EXTREME'S RESPONSES ON BURDEN, OVERBREADTH, AND PROPORTIONALITY UNDERSCORE THAT THESE OBJECTIONS ARE MERITLESS

Extreme's burden, overbreadth, and proportionality objections are unsupported. Extreme

argues that Plaintiff ignores the "substance" of Extreme's responses and that its objections are not

---

[4] Plaintiff has previously demonstrated, at great length, the relevance of its discovery. Mot. at 9-11; Dkt. 60-1 at 12-13, 16-17.

[5] Extreme also contends that RFAs 35 and 36 are irrelevant because it is not contesting personal jurisdiction. Dkt. 96-8 ("RFAs") Nos. 35-36. Not so. RFAs 35 and 36 request Extreme to admit that it distributes products containing Plaintiff's software to Tennessee and to all or part of the East Grand Division of Tennessee. These requests are relevant to venue—an issue that Extreme *does* challenge. Dkt. 39. And although Extreme's decision not to contest personal jurisdiction means that it conceded venue under the copyright venue statute (Dkt. 49 at 7), Plaintiff is still entitled to investigate and prepare for Extreme's asserted venue defense. *See, e.g.* 28 U.S.C. § 1400(a) ("Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found.") Plaintiff agrees with Extreme that RFAs 38-43 are no longer necessary.

"boilerplate." Opp. at 13. But as the Motion demonstrated, Extreme makes bare assertions of burden, overbreadth, and proportionality. *See* Second Supp. Response to RFPs Nos. 15–31, 36–39, 41.[6]

Extreme offers its response to RFP 15 as an example of an objection that is not supposedly boilerplate. Opp. at 13. RFP 15 requests "[a]ll user guides, manuals, or other instructional Documents" relating to Extreme's products containing Plaintiff's software, which Plaintiff requested in order to understand how Extreme's products work and the role of Plaintiff's software in those products. Extreme initially responded with the following objection: "Extreme objects to this Request as overly broad, unduly burdensome, seeking irrelevant information, premature, and ambiguous (*e.g.*, 'instructional Documents Relating to' products). The Request is a mere 'fishing expedition' without a legitimate basis." Second Supp. Response to RFPs No. 15 (citations to case law omitted). In turn, Extreme's "supplemental" response incorporated this boilerplate objection, and stated that it would produce "guides, manuals, data sheets, technical specifications, and reference sheets" only for the products identified in the Complaint—rather than for all Extreme products containing Plaintiff's software. *Id.* Extreme's claim that this request is a "fishing expedition," without any justification, is deficient on its face, particularly given the obvious relevancy of these documents and the ease with which Extreme should be able to produce them. Worse, Plaintiff still does not know whether Extreme is withholding responsive material based on this rote objection.[7]

---

[6] Extreme also asserts that Plaintiffs failed to offer an affidavit to support their own burden and overbreadth objections to Extreme's discovery requests. Opp. at 13 n.11. But Plaintiffs explained their grounds for objecting, including, *inter alia*, that Extreme's requests for all licenses relating to SNMP's copyrighted works "would involve, among other things having to give notice to and secure the agreement of many third-party licensees." Dkt. 109-3 at 3. During the September 23, 2021 meet and confer call over Plaintiffs' responses, Plaintiffs further explained why ascertaining and satisfying notice and consent requirements would be unduly burdensome. Despite this enormous burden, due to Extreme's continued insistence for all licenses that Plaintiffs have ever executed, Plaintiffs agreed to produce all licenses yielded after a reasonable search, and voluntarily committed to doing so by December 8, 2021.

[7] In addition, Extreme argues that Plaintiff purportedly mischaracterized the Court's prior ruling as denying Defendants' requested protective order. Opp. at 12-13 (citing Mot. at 11). But the Court did deny the requested protective order in which Extreme raised the very same burden, overbreadth, and

Extreme also characterizes Plaintiff's requests seeking "All Documents Relating to" certain categories of information as "overbroad." Opp. at 13-14. In particular, Extreme argues that RFPs 6, 9, 29, and 30 are examples of requests "not tied to a specific category of information" that are therefore "overbroad on their face." Opp. at 14. But these RFPs seek all documents relating to Extreme's revenues and costs for its products containing Plaintiff's software, including the profitability and financial analysis of each. *See* RFP Nos. 6, 9, 29-30. It is apparent that these requests are directed to highly-relevant categories of financial information pertaining to damages. Moreover, the Opposition failed to address Plaintiff's cited authority wherein a court in this Circuit compelled "all documents relating to [defendants'] sale of products advertised or sold with plaintiffs' [infringed] trademarks." *Siser N. Am., Inc. v. Herika G. Inc.*, 325 F.R.D. 200, 211 (E.D. Mich. 2018). And, while Extreme asserts that it agreed to produce *some* responsive documents for *some* requests, and that Plaintiff improperly wants much more, Opp. at 14-15, Extreme also ignores that during the parties' September 16, 2021 meet and confer, Extreme refused to provide any description of the breadth of documents supposedly implicated by Plaintiff's requests for "all documents relating to" (Dkt. 96-17 at 2), which prevents Plaintiff from understanding Extreme's supposed burden. *See* Mot. at 12-13 (citing Fed. R. Civ. P. 26(b)(2) advisory committee's note to 2006 amendment ("The responding party must also identify, by category or type, the sources containing potentially responsive information that it is neither searching nor producing. The identification should, to the extent possible, provide enough detail to enable the requesting party to evaluate the burdens and costs of providing the discovery and the likelihood of finding responsive information on the identified sources.")).

Extreme's assertion that Plaintiff should go "request-by-request" (Opp. at 15) is unnecessary and inefficient given that its responses are replete with unsupported assertions of burden, overbreadth,

---

proportionality arguments it asserted in its discovery responses. *See* Dkt. 75 at 16 ("Defendants' Joint Motion to Stay Discovery and for a Protective Order [**Doc. 47**] is **DENIED**.").

and disproportionality.  Extreme is merely attempting to delay production for as long as possible.

### C.  EXTREME'S RESPONSES DO NOT INFORM PLAINTIFF OR THE COURT AS TO WHETHER INFORMATION HAS BEEN WITHHELD ON THE BASIS OF ITS OBJECTIONS (Item 2)

Extreme asserts that it has satisfied its obligations under Federal Rule 34(b)(2)(C) because its "responses and objections define the scope of document collection and review that it is conducting." Opp. at 15 (citing Fed. R. Civ. P. 34(b)(2)(C) advisory committee note to 2015 amendment).  If this were truly the case, then it makes no sense why Extreme felt it was necessary to add the following boilerplate general objection that was not included in either of its prior two responses:  "Responsive materials, if any, are being withheld based on Extreme's objections set forth herein."  Second Supp. Responses to RFPs at 7.

Moreover, the advisory committee note to the 2015 amendment states the following about Federal Rule 34(b)(2)(C)'s withholding requirement:

> Rule 34(b)(2)(C) is amended to provide that an objection to a Rule 34 request must state whether anything is being withheld on the basis of the objection. **This amendment should end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections**. The producing party does not need to provide a detailed description or log of all documents withheld, **but does need to alert other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection.  An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been "withheld."**

Extreme's responses do not state which objections are leading to the withholding of documents, nor do their many objections state "the limits" controlling Extreme's search for responsive and relevant materials.  It is notable that Extreme does not provide a single concrete example in this regard, and vaguely refers back to "responses reproduced in the previous section – where SNMP's requests were overbroad or sought irrelevant information."  Opp. at 16.

Extreme further argues that "it does not yet have an exhaustive list of everything that exists for

each request." *Id.* at 16.  But Plaintiff has simply been asking Extreme to state which objections, if any, are leading to the withholding of documents so that Plaintiff can understand which of Extreme's dozens of objections are the critical objections that should be the focus of the parties' discussions.  Extreme has repeatedly refused to provide this information, in service of its attempt to delay meaningful production for as long as possible.  The Court should therefore find waiver of Extreme's objections.

### D. THE PARTIES' DISPUTES OVER PLAINTIFF'S DEFINITION OF "SNMP RESEARCH SOFTWARE" AND REQUESTS FOR EXTREME'S SOURCE CODE ARE RIPE FOR THIS COURT'S DECISION

#### 1. PLAINTIFF'S DEFINITION OF "SNMP RESEARCH SOFTWARE" IS PROPER AND EXTREME SHOULD BE ORDERED TO RESPOND TO THE REQUESTS INVOKING THAT DEFINITION (Item 3)

Extreme's assertion that Plaintiff "admits" that "SNMP Research Software" is "not limited to the alleged copyrighted works" in the complaint is a complete misrepresentation of Plaintiff's position, as is Extreme's argument that Plaintiff has "admitted that it did not register the version of code that it provided under the license agreement at issue in this litigation.  Opp. at 17.[8]  As discussed throughout numerous meet and confer calls and evidenced in written correspondence regarding the same, Plaintiff's definition of "SNMP Research Software" refers to software that is encompassed by the copyrighted works alleged in the Complaint, and it has never "admitted" that it did not register the version of the code provided under the license agreement at issue in this litigation.  *See, e.g.*, Dkt. 96-11 (July 22, 2021 email from Olivia Weber, counsel for Plaintiff, to Leslie Demers, counsel for Extreme) ("Our allegation is that Extreme possesses, uses and distributes SNMP Research software which contains SNMP's copyrighted source code, and that the SNMP Research source code that Extreme possess, uses and distributes has been registered with the copyright office.  Your client has confirmed

---

[8]  These misrepresentations are exactly what Plaintiff was trying to prevent when it sought to have the meet and confer calls transcribed.  *See* Dkt. 96-12 at 5.  Because Broadcom and Brocade objected to having any calls transcribed, and because Extreme has insisted on having joint meet and confer calls with Broadcom and Brocade, Plaintiff was unable to transcribe the calls.  *Id.*

that it is in possession of SNMP Research's copyrighted source code. Your client went so far as to confirm that SNMP Research's copyright notice is present in the source code.").

Extreme's resistance to Plaintiff's simple definition of "SNMP Research Software"—defined to include software provided or licensed by Plaintiff to Brocade, and any software created by Plaintiff that is or was in the possession of Extreme—is just another delay tactic. Extreme should be able to easily answer Plaintiff's requests, presuming the only source code it has from Plaintiff is what it received pursuant to the Data Center acquisition from Brocade. Extreme's apparent proposal to define "SNMP Research Software" as "the alleged, asserted works limited in Table 1 of the Complaint" (Opp. at 18), is unworkable and circular because it would require Plaintiff to prove infringement before it could get any discovery regarding Extreme's use of Plaintiff's software.

Extreme's pre-suit communications underscore the simplicity of the term "SNMP Research Software" and how Extreme's dispute is artificial. Exhibits A, B, and C to the Motion show that Extreme knows exactly how to identify Plaintiff's software in its products and that it knows it needed a license for the same. These exhibits include (but are not limited to) the following emails from Extreme representatives:

- June 5, 2020 email from Tara Flanagan, of Extreme, to John Wood, counsel for Plaintiff: "Yes, we have identified the products using the SNMP Research sw and the business team is now trying to calculate the shipments." Dkt. 96-5 at 2.

- February 27, 2020 email from Tara Flanagan, of Extreme, to John Wood, counsel for Plaintiff: "[A]s you noted below, Extreme needs to license SNMP software to cover the Brocade license that Brocade had with SNMP for the SLX and NOS-related Extreme software." Dkt. 96-4 at 1.

- April 23, 2018 email from Jennifer Sipes, of Extreme, to John Wood, counsel for Plaintiff: "As discussed, below is a Brocade product list with SNMP Research software") (identifying the Brocade VDX 8770, VDX 6710, VDX 6720, VDX 6730, VDX 6740, VDX 6940, SLX 9850,

SLX 9540, SLX 9140, and SLX 9240 series). Dkt. 96-3 at 8.

Only once Extreme's outside counsel became involved did it become unworkable for Extreme's team to locate Extreme's products containing Plaintiff's software. The parties' months-long dispute over the straightforward and common-sense definition of "SNMP Research Software" demonstrates why this foundational issue is ripe for decision.

### 2. PLAINTIFF'S REQUESTS FOR EXTREME'S SOURCE CODE ARE PROPER (Item 4)

It has been nearly four months since the Court issued its order denying Defendants' requested discovery stay, yet Plaintiff still does not have Extreme's source code for its products containing Plaintiff's software. Extreme's behavior should not be tolerated, and its attempts to compare Plaintiff's requests for source code to a patent plaintiff failing to provide a patent number, or a trade secret plaintiff failing to allege the trade secrets with particularity, is a nothing more than a ruse.

Just prior to this litigation, Extreme admitted that it gained possession of Plaintiff's highly confidential software and identified specific products containing that software for which it needed a license but never obtained. Dkt. 96-3 at 8; Dkt. 96-4 at 1; Dkt. 96-5 at 2. Plaintiff has alleged all of this conduct in the Complaint and also identified the copyright registrations encompassing Plaintiff's software in Extreme's possession. Dkt. 1 ¶¶ 33, 41-49. These allegations go above and beyond Plaintiff's pleading burdens, and entitle Plaintiff to inspect Extreme's source code for all products that contain Plaintiff's software.

Extreme's insistence that it should be entitled to view Plaintiff's copyright deposits first, (*i.e.*, via "sequencing of source code discovery" (Second Supp. Response to RFPs No. 20)), would allow Extreme to base its production of its source code on a source code infringement analysis—something that Extreme agreed would be a "time consuming and tedious task" (Dkt. 46)—despite the fact that Extreme waited a month-and-a-half after the Court's order denying a stay of discovery to even request Plaintiff's source code. Extreme's "sequencing" position is also not supported by case law. Indeed,

when Plaintiff's counsel asked Extreme's counsel for such authority during their September 16, 2021

meet and confer, Extreme counsel's had none to provide. Extreme's newly-cited cases do not support

its meritless position that it should be entitled to review SNMP's copyright deposits before it ever

produces a single line of code to Plaintiff.[9] *See* Opp. at 19 n.13. In particular, Extreme cites *Keysight*

*Techs., Inc. v. Nanomechanics, Inc.*, No. 3:15-CV-00232, 2017 WL 10434023 (E.D. Tenn. Apr. 20,

2017), which is inapposite because the court merely agreed that that dismissal of a trade secrets claims

was warranted where the plaintiff "[did] not identify what trade secrets were misappropriated, or how

[defendant] misappropriated its trade secrets." *Id.* at *2. Extreme also cites *Abarca Health, LLC v.*

*PharmPix Corp.*, 806 F. Supp. 2d 483 (D.P.R. 2011), but there, the court declined to allow a competitor

to view source code when the allegedly copied source code was derived in part from a third-party

program that the plaintiff did not own. *Id.* at 492. Here, Plaintiff owns its software and has identified,

by name and number, the copyrighted works at issue, and it has alleged that its copyrighted code was

unlawfully transferred to Extreme. Dkt. 1 ¶¶ 33, 41-50. Plaintiff is entitled to review all source code

for Extreme's products containing Plaintiff's software. *See, e.g., Brocade Commc'ns Sys., Inc. v. A10*

*Networks, Inc.*, No. 10-CV-03428-LHK, 2011 WL 7762998 (N.D. Cal. Aug. 16, 2011), Dkt. 86 at 51

(granting Brocade's request for production of all source code in a copyright, patent, and trade secrets

case, and rejecting the position "that the defendant gets to pick and choose what files of the source code

they want to produce because based on their own opinion they feel like these particular files are the

only ones that are relevant to the plaintiff's patent case or copyright case.").

Moreover, it is incorrect that "SNMP is refusing to provide counsel for Extreme with copies of

the alleged copyrighted works that it is accusing Extreme of infringing as listed in the Complaint. . . . ."

---

[9] Moreover, the parties have already negotiated a detailed source code provision in the governing
protective order that was tendered by joint motion, and entered by the Court as the Agreed Protective
Order. *See* Dkt. 93 at 18-24. Extreme has not articulated (let alone substantiated) any reason why it
would be concerned about producing its "highly confidential source code" (Opp. at 18) to Plaintiff
subject to these provisions.

Opp. at 18. First, Extreme's position is disingenuous because Extreme is in possession of every line of copyrighted source code at issue in this case. To the extent Extreme does need to view Plaintiff's source code, Plaintiff has repeatedly offered to simultaneously exchange source code with Defendants, even though it served its requests in December 2020, and Extreme delayed serving its requests for source code until August 2021.

Extreme's contention that the parties are still "actively negotiating" source code production is simply not true. Extreme's frequent refrain during the parties' numerous meet and confers is to indicate it will consider the proposal(s) presented by Plaintiff and possibly offer alternatives, but Extreme uses that as a deferral tactic and does not agree to Plaintiff's proposal or offer any alternative. Extreme should not be allowed to benefit from its months of delay—both in responding to Plaintiff's requests for source code, and in serving its own requests for Plaintiff's code—and Plaintiff respectfully requests the Court to order Extreme to produce its source code for all products containing Plaintiff's software so that Plaintiff can immediately begin performing the "time consuming and tedious task" of infringement analysis in time for its expert disclosures deadline on April 12, 2022. The issue of source code production is ripe for decision, and Extreme has yet to agree to or offer a "workable middle ground" (Opp. at 20) with respect to this issue discussed throughout nine meet and confer calls.

### 3. EXTREME SHOULD BE ORDERED TO IDENTIFY ALL PRODUCTS CONTAINING PLAINTIFF'S SOFTWARE AND TO ANSWER ALL ASSOCIATED RFPS (Item 6)

Extreme argues that it complied with Plaintiff's offer whereby Plaintiff offered, in order to get production started and reserving all rights, to "preliminarily limit the products responsive to Interrogatories 1 and 2 to the product families identified in the complaint." Dkt. 96-12 at 3. Extreme contorts this offer to mean that *all* of Extreme's initial responses would be tied to the products that SNMP identified in the complaint (not just Interrogatories 1 and 2 and the requests referring to those), and to mean that it need not conduct additional investigation. Opp. at 20. Moreover, Plaintiff's offer

was limited to Extreme's <u>initial</u> responses to Interrogatories 1 and 2, and Plaintiff reserved all rights to seek discovery regarding products not identified in the complaint. After Extreme's August 27 production, Plaintiff sought assurance that Extreme was investigating whether it has products containing Plaintiff's software that are not identified in the complaint, and that it would produce this information. But Extreme refused to assure Plaintiff that it was so investigating and would make any resulting production. Extreme has therefore failed to comply with its discovery obligations. All Extreme products that contain SNMP Research Software are relevant to this case, and discovery as to all such products is permissible. The Court should order Extreme to complete this investigation and production of its products within 2 weeks of the Court's order, or by a date certain.

Extreme also asserts that it provided release numbers and release dates for identified products (Opp. at 20), and SNMP did not contest this in its Motion (Mot. at 20). What Extreme did fail to provide is other critical information, such as dates of first customer shipment, dates of end of support, the target operating systems and processors, software or firmware release versions, and operating system and processer for cross development tools. Nor did Extreme identify all product names, models, material codes, and material descriptions. See Mot. at 20. Extreme completely ignores these failings identified in the Motion and does not respond to them at all. Opp. at 20. The Court should accordingly order Extreme to produce this information.

Last, Extreme asserts that it had agreed to investigate SNMP's request for products "sold with" the products identified in the Complaint. Setting aside the fact that the parties had already discussed this specific request prior to Extreme's supplemental production—and so there was no reason Extreme should have been confused by this request—the Opposition does not address the problem identified in Plaintiff's motion: that although Extreme agreed to investigate, it <u>would not agree to produce</u> (let alone by a date certain). Mot. at 20-21. Extreme's own Opposition makes clear that the only way Extreme will meaningfully (and fully) respond to Plaintiff's discovery requests, and by a date certain, is for the

Court to order Extreme to do so.  Plaintiff respectfully asks the Court to so order.

### E.  EXTREME'S OBJECTIONS TO COMMONLY-UNDERSTOOD TERMS ARE WITHOUT MERIT (Item 5)

None of Extreme's objections to common-sense and plain terms are persuasive.  First, Extreme asserts that Plaintiff's definition of "Product" is "ambiguous" (Opp. at 21), however, this term is straightforward because it refers to all Extreme products, whether sold, leased, or *inter alia*, revenue bearing.  RFPs at 4.  In turn, Plaintiff's discovery uniformly tethers requests for Extreme "Products" to Plaintiff's "SNMP Research Software."  *See, e.g.*, Interrogatory Nos. 1, 3-5; RFPs No. 15-23, 28-31.  So although Extreme argues that the definition of "Products" purportedly concerns products not alleged to be infringing (Opp. at 21), this ignores both the language of Plaintiff's requests and its repeated statement during meet and confer calls that "SNMP Research Software" refers to software that is a subset of the registered works in the complaint.  *See, e.g.*, Dkt. 70-1 at 7.

Second, Extreme asserts that "build environment" is "ambiguous" (Opp. at 21), but its response does not actually explain why it is confused by this definition.  Extreme's failure to offer an explanation as to why it is confused by the meaning of a "build environment" is telling.  This is a commonly-understood term in the software industry (Mot. at 18-19)—a fact that Extreme does not contest—and Extreme (indeed, any software engineer) has no reasonable grounds to argue that this term is "ambiguous."  Moreover, Extreme does not defend its supplemental response that the request for a "build environment" seeks "potentially irrelevant information" (Second Supp. Response to RFPs No. 21).  As Plaintiff explained, Extreme's build environment is relevant to rebut any assertion by Extreme that the infringing software never made it into the actual products Extreme shipped to customers.  Mot. at 18-19; *see also* Second Supp. Response to RFA No. 4 (Extreme stating, *inter alia*, that "it is unable to respond" to Plaintiff's request to "Admit You inserted, added, or otherwise incorporated SNMP Research Software in Products that shipped between July 25, 2019, and the present date.").

Third, Extreme's purported confusion over the request for "documents constituting a Consent

Payment" (Opp. at 22)—which was a defined term relating to a key transaction at issue in this case[10]—speaks for itself, as does Extreme's subsequent agreement "to assess whether records exist demonstrating that a payment had been made" (Opp. at 22). These both show that Extreme knows exactly what this request is getting at.

Last, Extreme incorporates by reference Broadcom's and Brocade's argument in a prior motion to compel regarding why the terms "transfer" and "distribute" are supposedly confusing. *See* Opp. at 22 (citing Dkt. 72 at 14-15.) But as Plaintiff pointed out in its reply to Broadcom's and Brocade's brief, Dkt. 72, a dictionary could be consulted to the extent these plain terms seem vague (which Plaintiff also explained during a meet and confer). Dkt. 73 at 3. In that same reply brief, Plaintiff noted that "Extreme Networks, Inc. has no difficulty understanding what the words 'distribute' and 'transfer' mean," *id.*, and that was because Extreme ultimately had no objections to these terms after its two meet and confer calls with Plaintiff in the spring. *See* Dkt. 70-6 at 1 (April 30, 2021 email from Jordan Feirman, counsel for Extreme, to John Wood, counsel for Plaintiff) ("your construction of the proposed RFP would work as amended: 'All Documents on which Extreme intends to rely to support claims or defenses, if any, that it has acquired from SNMP Research or another party rights to use, copy, license, sell, **transfer**, prepare derivative works of, or **distribute**' the software.") (emphasis added).

In sum, Extreme's objections to plain-English or commonly-understood terms in Plaintiff's requests are meritless. *See* Mot. at 17 n. 14 (citing RFPs 1-24, 27-31, 36-43, 46, 53, 56, 58, 60, 62, 65; Interrogatories 1-2, 5-7, 9-12, 14; RFAs 1-33).

---

[10] *See* Extreme Networks, Inc., Form 8K (Oct. 3, 2017), Ex. 10.1, https://investor.extremenetworks.com/node/17291/html.

### F. EXTREME SHOULD BE ORDERED TO RESPOND TO THE REQUESTS SEEKING IDENTIFICATION OF PEOPLE AND TO PROVIDE REQUIRED METADATA

#### 1. EXTREME MUST MEANINGFULLY AND FULLY RESPONSE TO THE REQUESTS SEEKING IDENTIFICATION OF PEOPLE (Item 7)

Extreme claims that it will identify persons involved in Extreme's searches for Plaintiff's software in its products "if" any people are identified (Opp. at 22), yet, inexplicably, it has still not made any resulting identifications—despite the many pre-suit emails documenting and discussing Extreme's search for Plaintiff's software. *See, e.g.*, Dkts. 96-3, 96-4, 96-5.

As acknowledged in the Motion, Extreme also agreed to "check" regarding the names of the members of Extreme's services division pursuant to Plaintiff's request for Extreme to justify its disproportionality objection. Mot. at 21; Opp. at 22. But Extreme never agreed to identify these members if and when it completed its "investigation" for this list of names, and it has now been more than five weeks since Extreme agreed to investigate. Mot. at 21.

These responses just highlight that Extreme's goal is to delay and not to respond.

#### 2. EXTREME MUST PROVIDE REQUIRED METADATA (Item 9)

Extreme asserts that it provided metadata "to the extent reasonably accessible" per the parties' ESI Protocol, but that it also "subsequently provided additional metadata," which it produced to Plaintiff on October 18, 2021. Opp. at 22. Extreme does not explain why it took a motion to compel to provide additional metadata that are required under the parties' ESI Protocol. Moreover, Extreme still has not provided all metadata for the one-page PowerPoint presentation discussed in the Motion. *See* Mot. at 22-23. Metadata are critical to document review, and because discovery now closes in eight months (and expert disclosures are due in six months), Plaintiff should not have to come to Court to fight for the metadata it is entitled to each time Extreme produces another set of documents.

### G. EXTREME SHOULD BE ORDERED TO RESPOND TO THE REQUESTS SEEKING IDENTIFICATION OF ENTITIES (Item 8)

Extreme makes it clear that it does not want the Court to weigh in regarding the propriety of Plaintiff's requests for *Extreme*'s own knowledge, understanding, and documents related to Broadcom's and other third parties' involvement in the transfer of Plaintiff's software to Extreme. In particular, Extreme argues that this issue is "not yet ripe for decision" and that "SNMP filed this motion too soon" for the mere reason that "Extreme was **considering** SNMP's proposal to answer [these requests] from Extreme's perspective." Opp. at 22-23. Extreme's response ignores that Plaintiff's requests were always centered on Extreme's own knowledge, understanding, and documents regarding Broadcom's and other third parties' involvement in the transfer of Plaintiff's software to Extreme. It also highlights that Extreme is merely "considering" responding to these requests, but that it has not committed to produce anything, let alone by a date certain. Extreme has been "considering" responding for five weeks now. At bottom, Extreme is refusing to substantively respond to these highly relevant requests on the simple ground that "SNMP filed this motion too soon"—four months after the Court's order denying Defendants' requested discovery stay and after more than half-a-dozen meet and confer calls. Again, Extreme is just delaying.

### H. EXTREME SHOULD BE ORDERED TO PRODUCE DOCUMENTS AND ANSWER INTERROGATORIES WITHIN TWO WEEKS OF THE COURT'S ORDER OR BY A DATE CERTAIN (Items 10 and 11)

Extreme asserts that SNMP's request for production within two weeks of the Court's order is a "staggering request." Opp. at 23. Extreme's opposition misrepresents Plaintiff's request which is "within two weeks or a date certain." Extreme has been working on responding to these requests for almost ten months so Plaintiff believes two weeks is a reasonable request but Plaintiff is not demanding a two-week production and ultimately requests a "date certain" be set by the Court as the Federal Rules require. Extreme points to the scope and number of Plaintiff's discovery requests and the fact that Defendants' motions to dismiss and transfer are still pending, the resolution of which may change the

scope of the case. *Id.* But the Court already denied Defendants' motion to stay discovery, and Extreme's reference to the pending motions to dismiss and transfer are nothing more than an improper request for reconsideration.

Moreover, according to Extreme's own discovery responses served January 25, 2021, Extreme's counsel has been working on responding to the requests since that time. Dkt. 60-21 at 3 ("That Extreme is not providing [] substantive responses now should not be construed as indicating that Extreme has taken no action to determine whether any responsive information exists[.]"). Extreme cannot keep delaying meaningful production, particularly now that a scheduling order has been entered. Indeed, when Plaintiff met and conferred on September 16 with Extreme regarding a production schedule, Extreme refused to commit to providing any set of documents or responsive information by a date certain. Dkt. 96-17 at 2. During that same call, Extreme indicated that it was standing on its response that "it would be irresponsible to commit to an end date when the parties have not yet reached agreement on what exactly SNMP's seventy (70) document requests are seeking, most notably with respect to the definition of SNMP Research Software." *Id.* at 1.

Extreme's position demonstrates why a Court order is necessary in order for Plaintiff to receive fulsome, substantive production by a date certain, with enough time to allow Plaintiff to review documents, prepare for depositions, and meet the upcoming expert disclosures deadline.

## III. CONCLUSION

For all of the foregoing reasons and those stated in the Motion, the Court should grant Plaintiff's Motion in its entirety according to the numbered list set forth in the Introduction (Mot. at 2-3) and compel Extreme to respond fully and substantively to all of Plaintiff's discovery within two weeks of the Court's order or by a date certain.

Respectfully submitted,

Dated:  October 25, 2021                By: /s/ *John L. Wood*

                                        John L. Wood, Esq. (BPR #027642)
                                        Cheryl G. Rice, Esq. (BPR #021145)
                                        Rameen J. Nasrollahi, Esq. (BPR #033458)
                                        EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
                                        900 S. Gay Street, Suite 1400
                                        P.O. Box 2047
                                        Knoxville, TN 37902
                                        (865) 546-0500 (phone)
                                        (865) 525-5293 (facsimile)
                                        jwood@emlaw.com
                                        crice@emlaw.com
                                        rnasrollahi@emlaw.com


Dated:  October 25, 2021                By: /s/ *A. Matthew Ashley*

                                        A. Matthew Ashley (CA Bar. No. 198235)
                                        Morgan Chu (CA Bar. No. 70446)
                                        David Nimmer (CA Bar. No. 97170)
                                        Olivia Weber (CA Bar. No. 319918)
                                        IRELL & MANELLA LLP
                                        1800 Avenue of the Stars, Suite 900
                                        Los Angeles, California 90067-4276
                                        (310) 277-1010 (phone)
                                        (310) 203-7199 (facsimile)
                                        mchu@irell.com
                                        dnimmer@irell.com
                                        mashley@irell.com

                                        *Attorneys for Plaintiffs*
                                        *SNMP Research International, Inc.*
                                        *SNMP Research, Inc.*