# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., | § § § | Case No. 3:20-cv-00451 |
| Plaintiffs, | § § | |
| v. | § § | **Jury Demand** |
| BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; AND EXTREME NETWORKS, INC. | § § § § | |
| Defendants. | § § § | |

---

## PLAINTIFF SNMP RESEARCH, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY RESPONSES FROM DEFENDANTS BROADCOM INC. AND BROCADE COMMUNICATIONS SYSTEMS LLC

---

Plaintiff SNMP Research, Inc. ("Plaintiff" or "SNMP Research") respectfully submits this Memorandum of Law in support of its Motion to Compel Discovery Responses ("Motion" or "Mot.") from Defendants Broadcom Inc. ("Broadcom") and Brocade Communications Systems LLC ("Brocade") (collectively, "Defendants").

11045034

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.    FACTS ........................................................................................................ 2

III.   ARGUMENT .............................................................................................. 4

    A.    Defendants Should Produce Documents And Metadata And Answer Interrogatories Within Two Weeks Of The Court's Order Or By A Date Certain. ...................................................................................................... 4

    B.    Defendants Are Misusing Their Objections, Which Prejudices Plaintiff. ............ 5

        1.    Defendants Do Not State Whether They Are Withholding Documents On An Objection-By-Objection Basis. .................................. 5

        2.    Defendants Continue To Assert Boilerplate Objections That Should Be Deemed Waived. ...................................................... 6

    C.    Defendants' Relevancy Objections Are Meritless. ................................................ 9

        1.    Defendants Do Not Substantiate Their Relevancy Objections. ................ 9

        2.    Defendants Improperly Attempt To Narrow The Governing Timeframe To Exclude A Year-And-A-Half Of Relevant Material. ......................................................................................... 11

    D.    Defendants' Objections To Plain Or Defined Terms Are Meritless. .................. 12

        1.    Defendants' Objections To "SNMP Research Software" Are Meritless. ................................................................................... 12

        2.    Defendants Improperly Object To Plain And Unambiguous Terms. ......................................................................................... 14

        3.    Defendants' Objections To The Remaining Defined Terms Have No Basis. ....................................................................... 15

    E.    Defendants Must Produce All Requested Source Code. ..................................... 19

    F.    Defendants Should Be Ordered To Identify All Products Containing Plaintiff's Software And To Answer All Associated Document Requests As Drafted. ......................................................................... 19

    G.    Defendants Should Substantively Respond To Requests Related To Third Parties. ...................................................................................... 22

    H.    Defendants Should Be Ordered To Respond To Interrogatory No. 7 Seeking Identification Of People. ........................................................... 23

    I.    Defendants Should Be Ordered To Respond To Interrogatory No. 15 Seeking Identification Of Entities. .......................................................... 24

J.      Defendants Should Substantively Respond To Each Request To Which
        Their Supplemental Responses Stated They Would "Meet And Confer"
        With Plaintiff. ................................................................................................... 24

IV.    CONCLUSION .................................................................................................... 25

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkisson v. Jacobs Eng'g Grp., Inc.*,
 No. 3:13-CV-505-TAV-HBG, 2020 WL 8254452 (E.D. Tenn. Dec. 10, 2020) ......................9

*Brocade Communications Systems, Inc. v. A10 Networks Inc.*,
 Case No. 10-cv-03428-LHK (N.D. Cal.), Dkt. 139-1, Dkt. 248-12 ...................................8, 17

*Johnson v. Kraft Foods N. Am.*,
 238 F.R.D. 648 (D. Kansas 2006)............................................................................................15

*Jones v. Am. River Transp. Co., LLC*,
 No. 19-CV-2558-SHM-TMP, 2020 WL 7865326 (W.D. Tenn. June 17, 2020).................5, 6

*Neale v. Coloplast Corp.*,
 No. 1:18-cv-00274-TRM, 2020 WL 6948361 (E.D. Tenn. Nov. 02, 2020)................... *passim*

*Siser N. Am., Inc. v. Herika G. Inc.*,
 325 F.R.D. 200 (E.D. Mich. 2018) ...........................................................................................8

*Sobol v. Imprimis Pharms.*,
 No. CV 16-14339, 2017 WL 5035837 (E.D. Mich. Oct. 26, 2017) ......................................4, 6

*Strategic Mktg. & Rsch. Team, Inc. v. Auto Data Sols., Inc.*,
 No. 2:15-CV-12695, 2017 WL 1196361 (E.D. Mich. Mar. 31, 2017) ......................................6

*Vanderbilt Univ. v. Scholastic, Inc.*,
 No. 3:18-CV-00046, 2019 WL 9904449 (M.D. Tenn. Nov. 27, 2019)...................................12

*Wesley Corp. v. Zoom T.V. Prod., LLC*,
 No. 17-10021, 2018 WL 372700 (E.D. Mich. Jan. 11, 2018) ..................................................5

**Rules**

Fed. R. Civ. P. 26(b)(2)..................................................................................................................7

Fed. R. Civ. P. 34 ...................................................................................................................4, 5, 7

# I. INTRODUCTION

Plaintiff has tried to resolve discovery issues with Broadcom and Brocade ("Defendants") over several months through more than a dozen hours of meet and confer calls, during which it has become obvious that Defendants' goal is to delay discovery and provide virtually no substantive responses or documents until their motions to dismiss or transfer are decided. Although Defendants and Plaintiffs appear to have made progress on many requests through the extended meet and confers, for the most part, Defendants still have not produced responsive documents or information. For example, Defendants have agreed to produce documents for approximately 59 separate discovery requests, but have neither produced responsive materials nor agreed on a time frame for making production. Plaintiff submits that the Court must act to prevent further delay and obstruction of the discovery process by granting this Motion, particularly in light of the current Scheduling Order governing this case.

On June 25, 2021, this Court denied Defendants' motion seeking a stay of discovery pending resolution of their motions to dismiss. Despite initially agreeing to provide supplemental discovery responses by August 27, 2021, Defendants did not supplement their responses until after Plaintiff moved to compel (specifically, Defendants provided them on the night Plaintiff's reply brief was due, Dkt. 104). Defendants continue to assert dozens of "general objections" and also incorporate them by reference wholesale into all of their responses. Defendants also continue to assert "specific objections" that are meritless and often backtrack from agreements made in the parties' meet and confer calls. And, Defendants continue to refuse to delineate which objections are leading to the withholding of documents and substantive responses, despite the fact that the Federal Rules require this.

Moreover, to date, Defendants have only produced 127 documents comprised *entirely* of

release notes[1] and one reference manual; which means no documents have been produced in response to the vast majority of Plaintiff's discovery requests. As just one example, Defendants still refuse to produce any source code, even though they have acknowledged before this Court that source code review "will be required" in this case and that such review will be a "time consuming and tedious task." Dkt. 46 at 4. Finally, even with respect to the subset of documents that Defendants have indicated they may one day produce, Defendants refuse to provide a date certain for that production, as the Federal Rules require.

The Court should grant this Motion in its entirety according to the numbered list and categories set forth in the Motion, find Defendants' general objections are waived, and order proper, substantive responses and document production within two weeks of the Court's order or by another date certain determined by this Court. Plaintiff also requests the Court to award it attorneys' fees relating to this Motion in light of Defendants' repeated delay and failure to meaningfully participate in the discovery process.

## II.    FACTS

This case arises from Brocade's intentional, unauthorized transfers of Plaintiff's copyrighted software in connection with its 2017 merger with Broadcom and the sale of its Data Center business to co-Defendant Extreme Networks, Inc. ("Extreme"). Dkt. 1 ("Cmplt.") ¶¶ 41-64.[2] These transfers were done in blatant breach of the confidentiality and consent-to-assignment obligations in the license agreement ("License Agreement") between Brocade and co-Plaintiff SNMP Research International, Inc. ("SNMP International"). *Id.* ¶¶ 36-40. In turn, Extreme unlawfully benefitted from Brocade's breach by reproducing and publicly distributing products containing Plaintiff's software as well as

---

[1] Release Notes are informational documents that are typically released to customers at the time a product is released.

[2] Unless otherwise indicated, capitalized terms are as defined in the Complaint (Dkt. 1).

derivative works. *Id.* ¶¶ 48-50. Brocade also wrongfully benefitted by continuing to reproduce and publicly distribute products containing Plaintiff's software and derivative works, including even after its License Agreement rights were terminated. *Id.* ¶¶ 51-64. It is believed that Brocade and Extreme collectively have netted hundreds of millions of dollars due to their breaches and willful copyright infringement. *Id.* at 1.

Thereafter, the parties engaged in extensive negotiations with Plaintiff. *Id.* ¶¶ 26-27. After these failed, on October 26, 2020, Plaintiff filed the instant case asserting copyright infringement and breach of contract claims, Dkt. 1, and named in the Complaint the very same products identified in the prior negotiations. Plaintiff served discovery on Defendants on December 26, 2020. Weber Decl. ¶ 4. Thereafter, Defendants moved to stay discovery based on pending motions to dismiss, and Plaintiff moved to compel discovery responses. Dkts. 47, 60, 69. The Court denied Defendants' request for a discovery stay on June 25, 2021 and denied Plaintiff's motions to compel without prejudice, but subject to refiling after meeting and conferring in light of the Court's ruling. Dkt. 75 at 17. Plaintiff initiated several meet and confer calls, and Defendants agreed to produce substantive responses by August 27, 2021. Weber Decl. ¶ 11. When Defendants did not provide responses on this date and refused to provide a new date for production, Plaintiff again moved to compel on September 13, 2021. *Id.* ¶¶ 12-13. Defendants produced "supplemental" responses on October 4, 2021, the night Plaintiff's reply brief was due. *Id.* ¶ 15. Those responses are the discovery at issue here.

After receiving Defendants "supplemental" responses, Plaintiff initiated three additional meet and confer calls, held on November 4, 12, and 16. Weber Decl. ¶ 18. The parties discussed, *inter alia*, the scores of requests to which Defendants simply responded that they were willing to meet and confer. *See* Mot. Category 12.[3] The parties were able to make progress on limited issues, *see* Weber Decl.

---

[3] All references to "Categories" shall be to the categories set forth in the accompanying Motion.

¶ 18, but the majority of the parties' disputes remain, including issues that Plaintiff believed were already resolved during prior calls that Defendants resisted having transcribed.[4] Plaintiff therefore moves to compel and certifies that it has met and conferred with Defendants in good faith. *Id.* ¶ 18.

## III. ARGUMENT

### A. Defendants Should Produce Documents And Metadata And Answer Interrogatories Within Two Weeks Of The Court's Order Or By A Date Certain.

Defendants appear to have agreed to produce documents and information for at least 59 of Plaintiff's requests, but have yet to follow through with that production during the more than two months since their October 4 responses. *See* Mot. Category 1. Defendants promised to provide documents with the following statement: "Subject to and without waiving these objections, Brocade responds as follows: Brocade will produce, on a rolling basis, non-privileged documents, to the extent such documents exist, are within Brocade's possession, custody, or control, have not already been produced, and are located after a reasonably diligent search, that are sufficient to show . . . ." Exs. J-K ("Brocade Supp. Resp. to RFPs") No. 1.[5] Yet, Defendants refuse to provide a production date for these documents (even while unilaterally limiting production to less than what is fully responsive to the requests), in violation of the Federal Rules.[6] *See Sobol v. Imprimis Pharms.*, No. CV 16-14339, 2017 WL 5035837, at *4 (E.D. Mich. Oct. 26, 2017) (responses that invoked "rolling basis" production violated Rule 34 by failing to "specify a reasonable time period within which [the defendant] would comply"); Fed. R. Civ. P. 34(b)(2)(B) ("[P]roduction must [] be completed no later than the time for

---

[4] Because the parties had a dispute concerning Defendants' representation about discovery during a December 2020 call, the parties transcribed two meet and confer calls in the Spring of 2021. Weber Decl. ¶ 9. However, when the parties met and conferred after the Court's June 25, 2021 order, Defendants said they would "be primarily in listening and questioning mode" if the calls were transcribed. Dkt. 96-12 at 5.

[5] All references to "Ex. __" herein shall be to the exhibits to the Weber Decl.

[6] These requests include: Brocade Supp. Resp. to RFP Nos. 1-6, 9, 14, 22, 29-31, 36-39, 40, 43-46, 49-50, 52, 54, 59-65, 68, 86-87, 89; Ex. I ("Brocade Supp. Resp. to Interrogatory") Nos. 1, 5, 6, 8-9; Exs. M-N ("Broadcom Supp. Resp. to RFPs") Nos. 33, 41-42, 51, 90, 92, 94, 96.

inspection specified in the request or another reasonable time specified in the response."). A reasonable deadline for production is necessary for Plaintiff to review documents, prepare for depositions, and meet the August 9, 2022 expert disclosures deadline. Defendants also refuse to produce metadata by a date certain—even for the 127 documents already produced, and even though they already stipulated that "metadata shall be provided" with the production. Dkt. 52-1. The Court should order Defendants to produce all responsive documents to the requests in Category 1, along with all metadata that Defendants have already stipulated would accompany document production, within two weeks of the Court's order or by a date certain.

### B. Defendants Are Misusing Their Objections, Which Prejudices Plaintiff.

Defendants have lodged scores of boilerplate objections with no indication of whether any of them actually apply to the request at hand. So, even if Defendants do produce documents as promised, Plaintiff has no way of knowing if Defendants are withholding documents based on an objection.

### 1. Defendants Do Not State Whether They Are Withholding Documents On An Objection-By-Objection Basis.

Defendants still fail to identify whether any documents or information are being withheld on an objection-by-objection basis as the Federal Rules require. Fed. R. Civ. P. 34(b)(2)(C). This is improper, injects inefficiency into the meet and confer process, and renders Defendants' objections—both "general" and "specific"—subject to waiver. *Wesley Corp. v. Zoom T.V. Prod., LLC*, No. 17-10021, 2018 WL 372700, at *4 (E.D. Mich. Jan. 11, 2018) ("[A]n objection must state whether any responsive materials are being withheld on the basis of that objection. When objections lack specificity, they lack effect: an objection that does not explain its grounds (and the harm that results from responding) is forfeited.") (stating that boilerplate objections are "waived" and issuing discovery sanctions); *see also Jones v. Am. River Transp. Co., LLC*, No. 19-CV-2558-SHM-TMP, 2020 WL 7865326, at *2 (W.D. Tenn. June 17, 2020). Finding waiver is warranted here because Defendants have had multiple opportunities to change their behavior, and repeatedly have refused to do so.

Defendants should not be allowed to hide behind their objections. Plaintiff requests that the Court order Defendants to identify whether documents or information are being withheld on an objection-by-objection basis for each of Plaintiff's requests.

2. **Defendants Continue To Assert Boilerplate Objections That Should Be Deemed Waived.**

Defendants lodged dozens of general objections to the RFPs and Interrogatories. *E.g.*, Broadcom Supp. Resp. to RFPs at 4-11, Brocade Supp. Resp. to RFPs at 4-11. Defendants then incorporated these objections wholesale "by reference into each specific answer as if fully set forth therein." Broadcom Supp. Resp. to RFPs at 3; Brocade Supp. Resp. to RFPs at 3. The vast majority of these general objections are just improper boilerplate tantamount to no objection at all. *See* Mot. Category 2; *Strategic Mktg. & Rsch. Team, Inc. v. Auto Data Sols., Inc.*, No. 2:15-CV-12695, 2017 WL 1196361, at *2 (E.D. Mich. Mar. 31, 2017) ("Boilerplate or generalized objections are tantamount to no objection at all and will not be considered by the Court.").[7]

For example, each Defendant "objects to each Request to the extent it is vague, ambiguous, or overbroad," and each Defendant also "objects to each Request to the extent it is unduly burdensome and will cause [Broadcom/Brocade] unwarranted annoyance, embarrassment, or undue expense." Broadcom Supp. Resp. to RFPs at 4, Brocade Supp. Resp. to RFPs at 5. These platitudes are incorporated by reference into each response and vaguely object only "to the extent" each request is supposedly improper. These objections are thus merely generalized, boilerplate assertions. *See Jones*, 2020 WL 7865326, at *2-3 ("legally meaningless" general objection stating "[t]his Request for Production is overly broad and may seek documents which are protected, privileged, and not otherwise

---

[7] The handful of objections that are remotely tailored to this case—Brocade Supp. Resp. to RFP General Objection Nos. 21-29, 31-33, Brocade Supp. Resp. to Interrogatories General Objection Nos. 18-26, 28-30, Broadcom Supp. Resp. to RFP General Objection Nos. 21-29, 31-33, and Ex. L ("Broadcom Supp. Resp. to Interrogatories") General Objection Nos. 19-27, 29-31—are addressed below, and are comprised of Defendants' objections to Plaintiff's definitions and time period.

discoverable" was waived); *Sobol*, 2017 WL 5035837, at *4 (general objection "that [the requests] are overly broad, burdensome, and oppressive" was waived). Defendants have had multiple opportunities to correct this conduct, and their repeated failure to do so should render these general objections waived.

The platitudes in the general objections that are repeated in the "specific" objections fare no better. *See* Mot. Category 3. In particular, Defendants have not substantiated their "specific" burden, overbreadth, or proportionality objections.[8] To take just one example, in response to Plaintiff's request for "[a]ll Documents constituting the 'Consent Payment' Identified in the October 3, 2017 'Consent Agreement,' including any amendments to it," Brocade responded that "[c]onducting a search for documents of such broad scope under SNMP's defined and undefined terms would be unduly burdensome," and that the request seeks documents "not proportional to the needs of the case."[9] Brocade Supp. Resp. to RFP No. 67. Yet, "[a] responding party cannot rely upon a boilerplate objection that simply uses the terms 'undue burden,' or 'overly broad' as if the very terms were self-proving . . . the burden falls upon the responding party to establish the exact nature of such an undue burden in concrete, meaningful terms." *Neale v. Coloplast Corp.*, No. 1:18-cv-00274-TRM, 2020 WL 6948361, *2 (E.D. Tenn. Nov. 02, 2020) (quotation marks and brackets omitted); *id.* at *8 (overruling unsupported assertion that discovery was "not proportional"); *see* Fed. R. Civ. P. 26(b)(2) advisory committee's note to 2006 amendment ("The responding party must [] identify, by category or type, the sources containing potentially responsive information that it is neither searching nor producing . . . to enable the requesting party to evaluate the burdens and costs of providing the discovery"); Fed. R. Civ. P. 34(b)(2)(B) (objecting party must "state with specificity the grounds for objecting to the request").

---

[8] *See* Brocade Supp. Resp. to RFP Nos. 1-88; Brocade Supp. Resp. to Interrogatory Nos. 1-23; Broadcom Supp. Resp. to RFP Nos. 1-95; Broadcom Supp. Resp. to Interrogatory Nos. 1-24.
[9] "Consent Payment" is a defined term in a public document (the Consent Agreement) relating to a key transaction in this case. *See* Extreme Networks, Inc., Form 8K (Oct. 3, 2017), Ex. 10.1, https://investor.extremenetworks.com/node/17291/html.

Even where Defendants assert that Plaintiff's requests are overbroad and burdensome because they request "All Documents Relating to" certain categories of information, these requests (which are customary in federal civil discovery) are proper because Plaintiff tied them to specific categories of information such as: agreements identified in SEC filings that were created as part of the unauthorized transfer of Plaintiff's software from Brocade to Extreme which lies at the heart of this case (*e.g.*, Ex. F ("Brocade RFPs") No. 62); Defendants' products containing SNMP Research Software (*e.g.*, Brocade RFP Nos. 1-3, 5, 10-11) and contracts relating to the same (*e.g.*, Brocade RFP Nos. 12-13); Defendants' revenues, costs, and profits related to its infringing products along with products/services sold with those products (*e.g.*, Brocade RFP Nos. 6, 9, 36-37); persons with responsibility as to the infringing products and those involved in the search for Defendants' products containing Plaintiff's software (Brocade RFP Nos. 4, 7-8); the transfer of the software from Broadcom and/or Brocade to Extreme (Brocade RFP No. 51); and personal jurisdiction and venue (Brocade RFP Nos. 18-21, 74-84). These requests are proper, *see, e.g.*, *Siser N. Am., Inc. v. Herika G. Inc.,* 325 F.R.D. 200, 211 (E.D. Mich. 2018) (compelling "all documents relating to [defendants'] sales of products advertised or sold with plaintiffs' trademarks"), and in any event, Defendants refused to substantiate their objections by describing the categories and volume of responsive documents during the parties' meet and confer calls. Weber Decl. ¶ 18. Moreover, Brocade used this very same type of language in its November 23 discovery requests to Plaintiff, in which it repeatedly sought all documents, communications, and information "relating to" or "concerning" categories of information. *Id.* ¶ 19.[10] Brocade's overbreadth and burden objections to Plaintiff's requests for "All Documents Relating to" are thus not only unsubstantiated, they are disingenuous and should be disregarded.

---

[10] Brocade also repeatedly invoked these types of "All Documents Related to" requests in a separate software copyright infringement case that Brocade prosecuted in another jurisdiction. *See Brocade Communications Systems, Inc. v. A10 Networks Inc.*, Case No. 10-cv-03428-LHK (N.D. Cal.), Dkt. 139-1 at 6, Dkt. 248-12.

### C. Defendants' Relevancy Objections Are Meritless.[11]

#### 1. Defendants Do Not Substantiate Their Relevancy Objections.

Defendants object to nearly all of Plaintiff's discovery on relevancy grounds. Broadcom Supp. Resp. to Interrogatory Nos. 1-22, 24; Broadcom Supp. Resp. to RFP Nos. 1-95; Brocade Supp. Resp. to Interrogatory Nos. 1-21, 23; Brocade Supp. Resp. to RFP Nos. 1-88.[12] As this District has repeatedly held, "[r]elevance for discovery purposes is extremely broad." *Neale*, 2020 WL 6948361, at *2; *Adkisson v. Jacobs Eng'g Grp., Inc.*, No. 3:13-CV-505-TAV-HBG, 2020 WL 8254452, at *3 (E.D. Tenn. Dec. 10, 2020) (the "scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad.") (quotation marks omitted). "Relevance has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Neale*, 2020 WL 6948361, at *2.

Plaintiff's discovery meets this standard because it is directed to core aspects of the breach of contract and copyright infringement claims. These claims arise from Brocade's 2017 merger with Broadcom, the sale of its Data Center business, and the associated unauthorized transfers of Plaintiff's software and subsequent acts of breach and infringement. Specifically, Plaintiff seeks discovery from January 2017 to the present regarding: Defendants' products containing Plaintiff's software; sales and financial information concerning those products; Defendants' transfer and use of Plaintiff's software; Defendants' personal jurisdiction and venue defenses; Defendants' corporate structure, and Defendants' document preservation.[13] This information concerns the scope of breach and

---

[11] Unless otherwise noted, for ease of reference, the citations in this section alone are to Broadcom. With respect to the Interrogatories and RFPs, the discovery directed to Brocade is virtually identical. A chart of the Brocade discovery corresponding to the Broadcom discovery is at Dkt. 60-27.

[12] These objections are included in Category 3 in the Motion.

[13] Specific examples include: (1) the transfer of Plaintiff's software to Extreme, Ex. C ("Broadcom Interrogatories") No. 11; Ex. D ("Broadcom RFPs") at 12, 50, 54-66; (2) which of Defendants' products contain Plaintiff's software or any portion of that software, Broadcom Interrogatory Nos. 1-4; Broadcom RFP Nos. 1-5; (3) when, where, to whom and in what quantity Defendants have used or

infringement, as well as Plaintiff's damages and Defendants' defenses, and so it easily falls within the "extremely broad" category of materials relevant to Plaintiff's claims. *Id.*

Defendants' relevancy objections to this discovery should be overruled. The vast majority of these objections are just minor variations of the following phrase: "The Request as framed seeks Documents that are irrelevant and not proportional to the needs of the case," Broadcom Supp. Resp. to RFP No. 1, to which Defendants sometimes add the generic statement that requests for "All Documents Relating to" certain categories—such as revenue for the infringing products—"seek[] information that is irrelevant to the claims and defenses in this action." Broadcom Supp. Resp. to RFP No. 38.[14] This response is boilerplate because it makes a generalized assertion that the request seeks documents or information "that is irrelevant," but does not identify those documents or information (or identify categories of responsive documents/information). This generalized assertion is also indiscriminately incorporated into virtually all of the discovery responses. When the information sought "appears to be relevant"—as it readily does here—courts are clear that the burden shifts to the objecting party to show "that the information either is not relevant or is so marginally relevant that the presumption of broad disclosure is outweighed by the potential for undue burden or harm." *Neale*, 2020 WL 6948361, at * 3 (quotation marks omitted). Defendants have not made this showing. Nor can they, given that liability will turn on discerning the scope of Brocade's 2017 breach and Defendants' subsequent use of

---

distributed products containing Plaintiff's software, Broadcom Interrogatory Nos. 5-6, 10, 12; Broadcom RFP Nos. 6-7, 11, 13, 31-37, 40, 43, 46-47, 70; (4) the individuals involved with, and/or who have knowledge of, the inclusion of Plaintiff's software in Defendants' products or the use or distribution of those products, Broadcom Interrogatory Nos. 7-8; Broadcom RFP Nos. 8-9; (5) Defendants' revenues, costs, and profits associated with the products containing Plaintiff's software or related products, Broadcom Interrogatory Nos. 9, 14; Broadcom RFP Nos. 10, 15, 38-39, 44-45, 49, 52-53, 67-69; (6) the organizational documents for, and the relationship between, Defendants, Broadcom RFP Nos. 52-53, 85-91; (7) Broadcom's jurisdictional defense and all Defendants' venue defenses, Broadcom Interrogatory Nos. 13, 15-22; Broadcom RFP Nos. 14, 16-23, 71, 73-84; Dkt. 60-5 at 32-47; (8) Defendants' document preservation, Broadcom RFP Nos. 41-42; (9) install images, source code, and build environment for Defendants' infringing products, Broadcom RFP Nos. 24-30; and (10) documents related to the License Agreement underlying this case, Broadcom RFP Nos. 48, 72.

[14] *See also* Broadcom Supp. Resp. to RFP Nos. 2-95; Broadcom Supp. Resp. to Interrogatories Nos. 1-22, 24.

Plaintiff's software, and damages will turn on review of Defendants' sales for the products containing Plaintiff's software.

### 2. Defendants Improperly Attempt To Narrow The Governing Timeframe To Exclude A Year-And-A-Half Of Relevant Material.

Defendants also assert relevancy, proportionality, overbreadth, and burden objections to the governing time frame, January 1, 2017 to present, and attempt to restrict the time frame to the period from July 25, 2019—the date Brocade's rights under the License Agreement were terminated—to the date this lawsuit was filed. *E.g.*, Brocade Supp. Resp. to RFPs at 11.[15] Defendants do not even attempt to support these burden or proportionality objections, despite Plaintiff's repeated efforts to determine what burden issues may exist during meet and confers. Nor do Defendants articulate a basis for why they assert discovery regarding the breach of contract and copyright infringement claims should stop at the date of this lawsuit—indeed, Brocade itself just served discovery in which it repeatedly sought documents such as statements of revenues, profits, costs, and royalties from January 1, 2017 to the present. Weber Decl. ¶ 19. Moreover, Plaintiff's time period is certainly relevant. The unlawful transfers occurred around October 2017. Prior to that, Brocade's predecessor sought (but did not obtain) SNMP International's consent ahead of the Broadcom merger and Extreme sale to "split[]" the License Agreement between Extreme and Brocade and also requested that to the extent the License concerned Brocade assets "acquired and retained by Broadcom," SNMP might consent to further assignment to those Broadcom entities. Ex. A. Plaintiff is also entitled to investigate the scope of the unauthorized transfers of Plaintiff's software and all corresponding damages. Such investigation will include, *inter alia*, the events surrounding Brocade's 2017 merger with Broadcom (which was first documented in a plan of merger dated November 2, 2016), including whether and to what extent

---

[15] The time frame objections include Brocade Supp. Resp. to Interrogatory Nos. 1-2, 4-18, 21; Brocade Supp. Resp. to RFP Nos. 1-53, 55-58, 60, 62-86; Broadcom Supp. Resp. to Interrogatory Nos. 1, 2, 4, 5-18, 21-22; and Broadcom Supp. Resp. to RFP Nos. 1-2, 5, 8-19, 22-38, 41-50, 52-54, 57, 59-65, 71, 73-77, 79-82, 85-86, 89, 91. All of these requests are listed in Category 3 in the Motion.

Brocade shared Plaintiff's software with Broadcom Inc. or other Broadcom subsidiaries, and the events surrounding Brocade's 2017 sale to Extreme (which was first referenced in a March 29, 2017 agreement). Plaintiff's investigation of its claims will also concern information about Defendants' sales of products containing SNMP software to third parties and product-related revenues and costs information that Defendants calculated and/or provided to the government in connection with the 2017 merger and divestiture, as this information is relevant to the calculation of Defendants' revenues and costs, and thus Plaintiff's damages. *See, e.g.*, *Vanderbilt Univ. v. Scholastic, Inc.*, No. 3:18-CV-00046, 2019 WL 9904449, at *13 (M.D. Tenn. Nov. 27, 2019) (rejecting time period and burden objections to request for twenty years of documents regarding revenues for alleged products because these documents "would be relevant to [the] breach of contract claim and damages calculation").

Fundamentally, Plaintiff's requests are reasonable and seek information relevant to its copyright infringement and breach of contract claims, as well as all resulting damages. Defendants fail to acknowledge that "[r]elevance has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Neale*, 2020 WL 6948361, at *2. The Court should overrule Defendants' relevancy objections.

### D. Defendants' Objections To Plain Or Defined Terms Are Meritless.

#### 1. Defendants' Objections To "SNMP Research Software" Are Meritless.

Defendants also incorrectly claim that the definition of Plaintiff's software in this case—the "SNMP Research Software"—is "vague," "ambiguous," and not limited to the copyright registrations identified in the Complaint or to the software in the License Agreement. Broadcom Supp. Resp. to RFPs at 8. Plaintiff's discovery defines "SNMP Research Software" as "any of the following":

(i) software provided by SNMP Research to Brocade, (ii) software licensed by SNMP Research to Brocade, or (iii) any software created by SNMP Research which is or was in the possession of [Brocade and/or Broadcom]. The foregoing categories include Source Code, compiled code, binary code, configuration files

and data, associated documentation, and Derivative Works thereof.[16]
Ex. E ("Brocade Interrogatories") at 2. There should thus be no confusion over the meaning of this defined term.

In any event, Defendants know full well which of their products contain Plaintiff's software. Brocade is party to a License Agreement with Plaintiff concerning the software at issue in this case. Presumably, Brocade knows how to identify which products contain the software that it licensed and received from Plaintiff. This is particularly true given that Extreme has produced a 2019 letter in which the Broadcom entity named in this litigation, Broadcom Inc., represented to Extreme that Brocade's License Agreement with Plaintiff was a "Shared Contract" as defined in the Asset Purchase Agreement governing Extreme's purchase of Brocade's Data Center business. Dkt. 96-18. The Asset Purchase Agreement, in turn, states that a Shared Contract (*e.g.*, the License Agreement) is "**material** to the operation or conduct of the [Data Center] Business"[17] that Extreme had purchased. Surely Brocade can identify the software that was material to the operation of its own business that it sold. Even if that were not enough to show that Defendants should be able to understand this simple definition, prior to this litigation, Defendants were able to identify products that contained Plaintiff's software. *See, e.g.*, Ex. B (March 16, 2020 email attachment from Martin Skagen, of Broadcom, to Dr. Jeff Case, Plaintiff's owner) (identifying Brocade products that needed a license for Plaintiff's software).

Moreover, in answering Interrogatory No. 3—which requests Defendants to identify "what SNMP Research Software" is contained in the products identified in the Complaint—Brocade responded that the products that are "still being sold do not contain Plaintiffs' software or products," but that prior versions of the products' operating system contained a version of Plaintiff's software,

---

[16] The requests served on Broadcom also exclude from the definition of "SNMP Research Software" the software provided to Broadcom Corporation pursuant to a separate license agreement. Broadcom RFPs at 3.

[17] *See* Extreme Networks, Inc., Form 8K (Oct. 3, 2017), Ex. 2.1 at 69, https://www.sec.gov/Archives/edgar/data/1078271/000119312517302411/d469088dex21.htm (emphasis added).

EMANATE/Lite Agent Version 16.2.0.9. Brocade Supp. Resp. to Interrogatory No. 3. Brocade has not explained how it can certify that its products do not currently contain Plaintiff's software, while at the same time professing it cannot ascertain the meaning of "SNMP Research Software" which is simply defined to include any software provided or licensed by Plaintiff to Brocade, or any software created by Plaintiff which is or was in the possession of Defendants.

Finally, Defendants' objection that "SNMP Research Software" is not limited to the copyright registrations identified in the Complaint (*e.g.*, Broadcom Supp. Resp. to RFPs at 8; Brocade Supp. Resp. to RFPs at 8) is just wrong. As discussed repeatedly in prior briefing (*e.g.*, Dkt. 96-1 at 14) and throughout the parties' meet and confer calls, Plaintiff's definition of "SNMP Research Software" refers to software that is encompassed by the copyrighted works alleged in the Complaint. Indeed, the Complaint alleges that the software at issue in this case is copyrighted. *See* Dkt. 1 ¶ 33 ("SNMP Research has registered the copyrights for the software at issue in this case."); *id.* ¶ 77 ("Brocade, without authorization, copied, reproduced, prepared derivative works based upon, and publicly distributed Plaintiffs' copyrighted software."). The Court should overrule Defendants' unfounded objections to the simple definition of "SNMP Research Software." *See* Mot. Category 4.

### 2. Defendants Improperly Object To Plain And Unambiguous Terms.

Defendants profess confusion over plain, easily-understood words within the requests such as "associated with," "concerning," "software system," "customer," "partner," "third party," "otherwise," "services," "reseller," "transfer," and "Consent Payment." Brocade Interrogatory Nos. 5, 7, 10; Brocade Supp. Resp. to RFP Nos. 7, 15, 32, 66.[18] The meaning of these terms is apparent. Defendants can consult (1) a dictionary for the plain English terms (*e.g.*, "concerning"), (2) their SEC filings for

---

[18] Defendants object to such allegedly "vague and ambiguous" terms or definitions in each of the following requests: Broadcom Supp. Resp. to Interrogatory Nos. 1-12, 14-24; Broadcom Supp. Resp. to RFP Nos. 1, 3-13, 15-61, 63-86, 88, 90-95; Brocade Supp. Resp. to Interrogatory Nos. 1-12, 14-23; Brocade Supp. Response to RFP Nos. 3-4, 7, 10-12, 14-72, 74-85, 87-88. These requests are identified in Category 5 in the Motion.

publicly-defined terms (*e.g.*, "Consent Payment"),[19] or (3) their software engineers for commonly-understood software terms (*e.g.*, "software system").  Defendants' attempt to avoid discovery based on a professed inability to understand them should be rejected.  *See Neale*, 2020 WL 6948361, at *4 ("Discovery is not a game of semantics.") (rejecting "vague[ness]" objection and granting motion to compel); *Johnson v. Kraft Foods N. Am.*, 238 F.R.D. 648, 655 (D. Kansas 2006) ("A party responding to discovery requests should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized[…].") (quotation marks omitted).

Moreover, Plaintiff suggested during meet and confer calls that Defendants use the dictionary or commonly understood meaning for such terms and Defendants agreed that they would communicate with Plaintiffs regarding any terms they felt needed further clarification prior to Defendants' August 27, 2021 supplemental response deadline.  Dkt. 96-12 at 1.  Defendants never contacted Plaintiff to seek clarification, and so their objections, which are meritless anyway, should be disregarded, particularly because Brocade repeatedly used many of the same plain terms to which it has objected (*e.g.*, "concerning," "transfer," "otherwise") in its own discovery requests to Plaintiff served on November 23.  Weber Decl. ¶ 19.

### 3. Defendants' Objections To The Remaining Defined Terms Have No Basis.

Defendants also object to straightforward defined terms in their general objections and then repeat these objections in their "specific" responses.  In particular, Defendants object to the terms "Partner Products," "Relating to," "Identify," "Product," and the entity definitions Plaintiff supplied.  Broadcom Supp. Resp. to RFPs at 6-11, Brocade Supp. Resp. to RFPs at 6-11.  None of these objections has merit.

As an initial matter, Defendants object to the definition of "Partner Products" as, *inter alia*,

---

[19] Plaintiff requested "All Documents Relating to the 'Consent Payment' Identified in the October 3, 2017 'Consent Agreement,'" Brocade RFP 66, and "Consent Payment," as noted above, is a defined term in a public document relating to a key transaction in this case.

vague. Broadcom Supp. Resp. to RFPs at 10, Brocade Supp. Resp. to RFPs at 10. But the parties already resolved this dispute. Dkt. 96-12 at 3-4 (preliminarily agreeing to Brocade's definition of "Partner Products"—*i.e.*, "products identified in Paragraph 64 sold under other brands"). Similarly, while Defendants object to Plaintiff's definitions of "Relating to" and "Identify," *e.g.*, Brocade Supp. Resp. to RFPs at 11, Brocade's discovery requests served on November 23 use <u>identical</u> definitions for these terms, indicating that Defendants have no problem understanding them. Ex. P at 4-5.

Defendants also object to the term "Product" as vague, ambiguous, overbroad, irrelevant, and not proportional. Broadcom Supp. Resp. to RFPs at 9; Brocade Supp. Resp. to RFPs at 9-10. Plaintiff defined this term to encompass all of Defendants' products, whether sold, leased, or revenue bearing.[20] In turn, Plaintiff's discovery uniformly tethers requests for "Product" to Plaintiff's "SNMP Research Software." *See, e.g.*, Broadcom Interrogatory Nos. 1, 3-5; Broadcom RFP Nos. 24-33, 37-40. Thus, Plaintiff used the term "Product" to capture the products that Defendants admitted (in pre-litigation discussions) contain Plaintiff's software and any additional products containing Plaintiff's software that Defendants have not openly admitted do so. Consequently, because Plaintiff's requests tailor the term "Product" to Plaintiff's software, Defendants' objections that "Product" is vague, ambiguous, overbroad, irrelevant, and not proportional are meritless. *See, e.g.*, Broadcom Supp. Resp. to Interrogatories at 9-10; Brocade Supp. Resp. to Interrogatories at 9.

Plaintiff also provided clear and common-sense definitions of the named entities. Plaintiff defined each Defendant to include "its predecessors, predecessors-in-interest, successors, successors-in-interest, affiliated entities, including all divisions and subsidiaries, and the officers, directors, employees, agents, attorneys, accountants, and representatives, including all other Persons or entities

---

[20] "Product" means: "each item that can be or has at any time been able to be separately ordered or distributed or provided as an update to an existing Product, whether sold, leased, licensed, sublicensed, whether enabled or not, whether revenue bearing or not, including, but not limited to, hardware, software, services, or combinations of hardware, software, or services." *E.g.*, Brocade RFPs at 4.

acting or purporting to act on behalf of it." *E.g.*, Broadcom RFPs at 2. The plaintiff entities are defined the same, but without reference to successors or affiliated entities. *Id.* at 1-2. Defendants objected because these definitions are purportedly overbroad, not limited to the parties at issue in this case, seek irrelevant information, are not proportional, and are unduly burdensome, compound, nonsensical, and confusing. *E.g.*, Broadcom Supp. Resp. to RFPs at 7-8. Defendants' position is wrong for at least three reasons. First, it is a common feature of civil discovery to define entities to include their predecessors, successors, subsidiaries, and officers. Indeed, in a separate software copyright infringement case Brocade prosecuted in another jurisdiction, Brocade defined the defendant entity to include "directors, officers, parents, subsidiaries, predecessors, successors, assigns, agents, servants, employees, investigators, attorneys, and all other persons and entities representing it or acting on its behalf." *Brocade Communications Systems, Inc.*, Case No. 10-cv-03428-LHK, Dkt. 248-12 at 2.[21]

Second, defining the named entities to include predecessors, successors, affiliates, and subsidiaries is particularly relevant in this case because it centers in part on Defendants' predecessor's conduct related to the 2017 merger and divestiture. In 2017, Brocade Communications Systems, Inc. sold part of its business that contained Plaintiff's copyrighted software to Extreme, but retained for itself another line of products containing Plaintiff's copyrighted software. Dkt. 1 ¶¶ 41-43. Around the same time, it appears that particular Brocade entity was acquired by Broadcom Limited, and soon thereafter became Brocade Communications Systems LLC (the named entity), and Broadcom Limited became Broadcom Inc. (the named entity).[22] Around this same time, Brocade's predecessor sought, but did not receive, Plaintiff's consent to "split[]" its License Agreement between itself and Extreme

---

[21] In Brocade's discovery served on Plaintiff on November 23, it defined "Brocade" and "Broadcom" to include its predecessors and agents, but not successors or subsidiaries. Ex. P at 2.

[22] Dkt. 73 at 2 n.1 ("Broadcom Inc.'s predecessor entity underwent a corporate restructuring and re-domiciliation beginning in November 2017, and thereafter 'Broadcom Limited' became 'Broadcom Inc.'").

and also requested that to the extent the License Agreement related to Brocade assets "acquired and retained by Broadcom [Limited]" (the predecessor to the named entity in this litigation), the License may be subject to further assignment to those Broadcom entities. Ex. A. Plaintiff is entitled to seek discovery as to what happened with its software in relation to that merger and the unauthorized transfers—including whether newly-affiliated Broadcom entities obtained, used, or distributed products containing Plaintiff's software. For the reasons described *supra* at 11-12, Plaintiff is also entitled to discovery regarding, *inter alia*, Broadcom Inc.'s predecessor's involvement in the merger and unlawful transfer of Plaintiff's software—which bears on this Court's personal jurisdiction over Broadcom Inc.

Third, Defendants' responses illustrate why the entity definitions must include predecessors, successors, affiliates, and subsidiaries. Defendants have used the named entities to avoid substantive responses. For instance, Plaintiff requested that Brocade describe Broadcom's involvement in the transfer of Plaintiff's software from Brocade to Extreme. Brocade Interrogatory No. 15. Brocade's response "construe[d] the term 'Broadcom' to mean only the specific entity named as a defendant in this action, Broadcom Inc.," and then responded that Broadcom Inc. (which did not exist at the time of the transfer) is "a holding company and was not involved in any transfer of Plaintiffs' software to Extreme." Brocade Supp. Resp. to Interrogatory No. 15. Similarly, Plaintiff requested all documents constituting the "Brocade Merger" transaction identified at page 17 of Broadcom's 2017 Form 10-K." Broadcom RFP 85. Broadcom "construe[d] the term 'Broadcom' to refer to the specific entity named as a defendant in this action, Broadcom Inc.," (which did not exist at the time its predecessor entity's 2017 Form 10-K was filed), and stated that "[n]o responsive, non-privileged documents exist as there is no 2017 Form 10-K for Broadcom Inc." Broadcom Supp. Resp. to RFP No. 85.

The above examples demonstrate the ways in which Defendants have used the entities like a shell game to avoid providing substantive responses to Plaintiff's discovery. Defendants should not be permitted to hide behind a web of entities in order to withhold responsive information related to, *inter*

*alia*, products containing Plaintiff's copyrighted software. In sum, none of Defendants' objections to Plaintiff's defined terms hold water. The terms are commonly understood and tailored to this case, and Brocade even incorporated many of these objected-to definitions and terms into its own discovery requests. The Court should overrule these objections. *See* Mot. Category 6.

### E. Defendants Must Produce All Requested Source Code.

Plaintiff requested Brocade's source code on December 26, 2020. Brocade RFP Nos. 25-28, 53. Yet, Plaintiff still does not have the source code for the infringing products identified in the Complaint because Brocade refuses to produce it, more than five months after the Court denied its requested discovery stay. All Defendants agreed at the outset of this case that source code review would be a "time consuming and tedious task" involving "thousands of lines of computer source code." Dkt. 46 at 4. Instead of providing the source code, Brocade's "supplemental" responses merely add one line to its prior source code objections: that Brocade "is willing to meet and confer with Plaintiff regarding this request." Brocade Supp. Resp. to RFP Nos. 35-28, 53. Brocade's behavior should not be tolerated. There is no basis in law or logic for Brocade to withhold production of its source code, which is central to showing "copying" in relation to Brocade's disclosure of Plaintiff's code to Extreme, and to Brocade's continued incorporation of Plaintiff's code into its products after SNMP International terminated its rights under the License Agreement. Brocade should be ordered to produce all source code for all products identified in the Complaint and for any other products containing Plaintiff's software that are revealed in discovery. *See* Mot. Category 7.

### F. Defendants Should Be Ordered To Identify All Products Containing Plaintiff's Software And To Answer All Associated Document Requests As Drafted.

Interrogatory 1 requests Defendants to identify all "Products that contain, use, or are otherwise associated with SNMP Research Software," which "includes any [Broadcom/Brocade] Products that have ever at any time fit the above description, whether in current distribution or not." Because Defendants refused to produce information about which products contained Plaintiff's software, during

the Summer 2021 meet and confers, Plaintiff suggested that with respect to Interrogatory 1 and all requests referring to it, Defendants' initial production could contain the products alleged in the Complaint, Dkt. 96-12 at 3—the very same products identified as containing Plaintiff's software in the parties' pre-suit negotiations. Cmplt. ¶¶ 26-27; *see, e.g.*, Ex. B at 26. Defendants accepted Plaintiff's offer. Dkt. 96-12 at 1 (August 3, 2021 email from O. Weber, counsel for Plaintiff, to A. Plessman, counsel for Defendants) ("[Plaintiff] asked whether Broadcom/Brocade had considered our product list proposal whereby, as a preliminary step and reserving all of SNMP's rights, <u>Broadcom/Brocade could limit the products that are responsive to Interrogatory Number 1 to the list of product families identified in the complaint. Alison responded that that proposal makes sense for her clients</u>, subject to not waiving arguments as to copyright infringement.") (emphasis added). Yet Defendants have not only broken this agreement in their responses, now that they have made an "initial" production, they also refuse to investigate which additional products may contain Plaintiff's software beyond the admittedly infringing products identified in the Complaint.

For example, when Broadcom produced its amended objections on October 4, 2021, it responded to Interrogatory 1's request to "Identify all Broadcom Products that contain, use, or are otherwise associated with SNMP Research Software" by narrowing the "Broadcom" definition to "Broadcom Inc.," and then stating that the products listed in the Complaint "are not Broadcom Inc. products." Broadcom Supp. Resp. to Interrogatory No. 1. It then refused to respond to any other product-related request for the same reason. *See, e.g.*, Broadcom Supp. Resp. to Interrogatory No. 3 ("Subject to and without waiving these objections, Broadcom responds as follows: **No products were identified in response to Interrogatory numbers 1 and 2**.") (emphasis added); *see also* Broadcom Supp. Resp. to Interrogatories Nos. 2, 4-16, 18-21. In other words, Broadcom agreed to initially "limit the products that are <u>responsive</u> to Interrogatory Number 1" to the list of admittedly infringing product families in the Complaint (Dkt. 96-12 at 1) (emphasis added), but then subsequently refused to list

those products as responsive in its responses.

Brocade engaged in a similar bait-and-switch to avoid meaningfully responding. For example, in response to Interrogatory 1, Brocade provided a list of certain Brocade products identified in the Complaint. *See* Brocade Supp. Resp. to Interrogatory No. 1. Yet Brocade refused to certify that these products <u>ever</u> contained <u>any</u> of Plaintiff's software, so its response is essentially meaningless. *Id.* ("Brocade does not concede that these products contain any SNMP Research software").

As a second example of Brocade's misconduct, Brocade agreed to respond to Plaintiff's requests based on paragraph 49 where applicable. *See* Dkt. 96-12 at 1. However, it then contravened that agreement by responding to numerous requests in the following manner: in response to Interrogatory 11's request to "Identify all Brocade Products responsive to Interrogatory number 1 that were sold, licensed, transferred, or otherwise disclosed to Extreme," Brocade responded that it would limit its response to the Brocade products identified in paragraph 64 of the Complaint (which were not alleged to be transferred to Extreme), rather than also include the Brocade products actually alleged to be transferred to Extreme, identified separately in paragraph 49 of the Complaint. Brocade Supp. Resp. to Interrogatory No. 11. Brocade thus stated that its products in paragraph 64 "were not sold, licensed, transferred, or otherwise disclosed to Extreme," and avoided taking a position on what happened to the products identified in paragraph 49. *Id.*

As yet a third example, Brocade refused to identify which products or services were sold with, or as a result of, the purchase of the infringing products identified in response to Interrogatory 1 (such as a power supply sold as part of a router that contains the infringing software), along with the attendant revenues and costs. *See* Brocade Supp. Resp. to Interrogatory No. 9. Brocade's response to this request states that "the parties agreed that Brocade would limit its identification of products to the products identified in Paragraph 64 of the Complaint." *Id.* But Plaintiff has never agreed that products or services sold with, or as a result of, the products identified in the Complaint are not a proper subject

of discovery. As demonstrated repeatedly in Plaintiff's emails to Defendants, which Defendants did not refute (and, indeed, never responded to at all), because "many of the other discovery requests rely on the list of products identified pursuant to Rog 1," Dkt. 96-12 at 3, each Defendant "should be able to respond to those other requests if it agrees to a preliminary list of products responsive to Rog 1." *Id.*

Last, now that Defendants have made their "supplemental" production, they made clear during the November meet and confers that they will not presently investigate what other products, besides those alleged in the Complaint, contain Plaintiff's software. Weber Decl. ¶ 18. This just ensures further delay. The products referenced in the Complaint are based on pre-suit admissions of infringement. Yet, relevancy for purposes of discovery is not limited solely to the products that a defendant has admitted are infringing. Defendants have failed to comply with their discovery obligations by refusing (without justification) to investigate what products contain Plaintiff's software. The Court should order Defendants to respond to Interrogatories 1 and 2 by identifying all products containing Plaintiff's software, and to produce all responsive information and documents for all requests referring to Interrogatories 1 and 2. *See* Mot. Category 8.

**G.     Defendants Should Substantively Respond To Requests Related To Third Parties.**

Defendants repeatedly objected to Plaintiff's requests on the ground that they seek confidential information of third parties. *See, e.g.*, Brocade Supp. Resp. to Interrogatory Nos. 9-10, 12-18, 23; Brocade Supp. Resp. to RFP No. 88. When Plaintiff asked whether Defendants are withholding documents or information based on this, Defendants evasively responded that there is nothing they are withholding based "only" on that objection. Ex. O at 4. This is yet another instance where Court intervention is needed. A Protective Order is in place, and Defendants have not articulated any reasonable ground to withhold responsive documents and information within their control on purported third-party confidentiality grounds. Instead, they assert a host of irrelevancies—such as asserting that they do not "track" the requested information. For example, Interrogatory 2 requests both Broadcom

and Brocade to identify the products containing Plaintiff's software that are sold under third party brands ("Partner Products") and to identify those brands. Brocade[23] refused to identify the third parties and asserted that it does not keep track of the information requested, including what third parties do with its products. Brocade Supp. Resp. to Interrogatory No. 2; Ex. O at 4. During the meet and confers, Plaintiff explained (as it has before) that it only seeks identification of Defendants' products containing Plaintiff's software that are sold to third parties and the identity of those third parties, but Brocade refused to revise its response. The Court should overrule Defendants' unsubstantiated third-party confidentiality objections. *See* Mot. Category 9.

### H. Defendants Should Be Ordered To Respond To Interrogatory No. 7 Seeking Identification Of People.

Defendants have refused to identify its personnel who have searched for products containing Plaintiff's software. Brocade Supp. Resp. to Interrogatory No. 7. Defendants refuse to identify these personnel on the remarkable grounds that "no search for products was necessary to respond to these interrogatories since the stipulated products are listed in Paragraph 64." Brocade Supp. Resp. to Interrogatory No. 7; *see also* Broadcom Supp. Resp. to Interrogatory No. 7. This is yet another example of Defendants twisting Plaintiff's good faith suggestion to initially limit certain requests to the infringing products identified in the Complaint, this time to avoid identifying individuals who were involved in searches for products containing Plaintiff's software—which occurred just prior to this litigation.[24] Specific individual names are relevant and necessary to determine whom to depose. Defendants should be ordered to provide this requested information. *See* Mot. Category 10.

---

[23] Broadcom refused to respond to any of the requests to identify products and sales to third parties on the grounds that it was construing the request to cover only "Broadcom Inc.," and that Broadcom Inc. was merely a holding company. *See* Broadcom Supp. Resp. to Interrogatory Nos. 2, 5, 10-11; Broadcom Supp. Resp. to RFP Nos. 2, 6, 11-12, 47, 93, 95. Broadcom should be ordered to respond substantively to these requests using Plaintiff's definition of "Broadcom."

[24] Plaintiff had extensive pre-suit discussions with all Defendants regarding their use of Plaintiff's software, during which Defendants identified the products that contained Plaintiff's software. *See, e.g.,* Weber Decl. ¶ 3.

**I.     Defendants Should Be Ordered To Respond To Interrogatory No. 15 Seeking Identification Of Entities.**

Plaintiff requested a description of Broadcom's[25] involvement in the transfer of products containing Plaintiff's software to Extreme.  Broadcom Interrogatory No. 15; Brocade Interrogatory No. 15.  Brocade responded, *inter alia*, that "[t]he products identified in response to Interrogatory 1 were not transferred to Extreme," but Interrogatory No. 15 does not even refer to Interrogatory No. 1, so Brocade's objection makes no sense.  Brocade Supp. Resp. to Interrogatory No. 15.  Brocade also responded that Plaintiff did not explain "what it means by 'transfer' of 'SNMP Research Software' or what it means by involvement," *id.*, but these objections to plain terms are meritless for the reasons explained above, *supra* at 14-15 (including because Brocade repeatedly used the terms "transfer" and "involved" in its November 23 discovery to Plaintiffs).  Broadcom responded similarly.  *See* Broadcom Supp. Resp. to Interrogatory No. 15.  The Court should order Defendants to fully and substantively respond to this request to describe Broadcom's involvement in the transfer of products containing Plaintiff's software to Extreme.  *See* Mot. Category 11.

**J.     Defendants Should Substantively Respond To Each Request To Which Their Supplemental Responses Stated They Would "Meet And Confer" With Plaintiff.**

Defendants provided "supplemental" responses to scores of requests in which the only addition was a single sentence stating that they would "meet and confer" with Plaintiff.  *See* Broadcom Supp. Resp. to RFP Nos. 34-36, 45, 48-50, 63-64, 71-72, 88; Brocade Supp. Resp. to RFP Nos. 23-24, 26-27, 32-34, 41-42, 53, 58, 66-67, 70-85, 88.[26]  Plaintiff already met and conferred with Defendants over all of these requests in July and August 2021, which request important information and documents concerning, *inter alia*, the License Agreement, Defendants' organizational structures and financial

---

[25] As noted above, "Broadcom" is a defined term that includes not only the company Broadcom Inc., but also its predecessors, successors, affiliated entities, and subsidiaries.

[26] The parties met and conferred on each of these requests and were able to make progress on nine of them, which are not included in this list.  Weber Decl. ¶ 18.

documents, source code for products containing Plaintiff's software, and Broadcom's involvement in Brocade's development and sale of products containing Plaintiff's software.[27] Plaintiff discussed these requests again during the November calls. While Defendants agreed to respond to a limited set of requests, *see* Weber Decl. ¶ 18, the majority of the parties' disputes remain, each of which flows from topics discussed above (*e.g.*, Defendants' objections to plain terms and source code production). Defendants should be ordered to substantively respond to these requests within two weeks of the Court's order or by a date certain. *See* Mot. Category 12.

## IV. CONCLUSION

For all of the foregoing reasons, the Court should grant Plaintiff's Motion in its entirety according to the numbered list and categories set forth therein, and compel Defendants to respond fully and substantively to all of Plaintiff's discovery within two weeks of the Court's order or by a date certain.

---

[27] To take just one example, during the July 28, 2021 meet and confer call, Broadcom agreed to produce organizational and corporate family tree documents responsive to Broadcom RFP No. 88, *see* Dkt. 96-12 at 2. Yet on October 4, 2021, Broadcom's "supplemental" response simply reiterated all of its prior objections and then requested to meet and confer. Broadcom Supp. Resp. to RFP No. 88. And, in recent meet and confer calls, the parties discussed this issue again, defense counsel agreed to discuss this issue with Broadcom and Brocade, but neither Defendant has agreed to produce even one organizational chart/diagram.

Respectfully submitted,

Dated:  December 9, 2021                By: /s/ John L. Wood
                                        John L. Wood, Esq. (BPR #027642)
                                        Cheryl G. Rice, Esq. (BPR #021145)
                                        Rameen J. Nasrollahi, Esq. (BPR #033458)
                                        EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
                                        900 S. Gay Street, Suite 1400
                                        P.O. Box 2047
                                        Knoxville, TN 37902
                                        (865) 546-0500 (phone)
                                        (865) 525-5293 (facsimile)
                                        jwood@emlaw.com
                                        crice@emlaw.com
                                        rnasrollahi@emlaw.com


Dated:  December 9, 2021                By: /s/ A. Matthew Ashley
                                        A. Matthew Ashley (CA Bar. No. 198235)
                                        Morgan Chu (CA Bar. No. 70446)
                                        David Nimmer (CA Bar. No. 97170)
                                        Olivia Weber (CA Bar. No. 319918)
                                        IRELL & MANELLA LLP
                                        1800 Avenue of the Stars, Suite 900
                                        Los Angeles, California 90067-4276
                                        (310) 277-1010 (phone)
                                        (310) 203-7199 (facsimile)
                                        mchu@irell.com
                                        dnimmer@irell.com
                                        mashley@irell.com

                                        *Attorneys for Plaintiffs*
                                        *SNMP Research International, Inc.*
                                        *SNMP Research, Inc.*