# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF TENNESSEE

### AT KNOXVILLE

| | |
|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., <br><br> Plaintiffs, <br> v. <br><br> BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; and EXTREME NETWORKS, INC. <br><br> Defendants. | Case No. 3:20-cv-00451 |

---

**BROADCOM INC. AND BROCADE COMMUNICATIONS SYSTEMS LLC'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES AND REQUEST FOR COSTS AND COUNSEL FEES UNDER LOCAL RULE 37.2**

---

# TABLE OF CONTENTS

Page

I.   INTRODUCTION .................................................................................................... 1

II.  ARGUMENT ........................................................................................................... 3

    A.   The Court Should Order Plaintiff to Narrow its Definitions of the Entities and SNMP Research Software So That Discovery May Proceed Reasonably. (Category Nos. 3-6, 11) ...................................................... 3

        1.   The Court Should Reject Plaintiff's Proposed Definition of "SNMP Research Software" ................................................................. 4

        2.   The Court Should Reject Plaintiff's Proposed Definition of "Broadcom" and "Brocade" ......................................................... 6

        3.   Defendants' Objections to Other Terms Are Proper ............................... 9

    B.   Defendants' Relevancy Objections Should Be Sustained and the Court Should Order Plaintiff to Narrow its Requests ......................................... 11

    C.   Defendants Should Not Be Required to Conduct Expansive Searches for Documents Until Plaintiff's Facially Overbroad Requests Are Narrowed ...................................................................................... 13

    D.   Plaintiff's Proposed Timeframe Is Overbroad and Must Be Narrowed. (Category No. 3) ............................................................................ 14

    E.   Plaintiff's Motion to Compel Defendants' Production of Source Code Should Be Denied and the Court Should Order Plaintiff to Accept the Source Code Exchange Compromise Offered by Defendants .................................................................................................. 16

    F.   Plaintiff's Request that Defendants Identify All Broadcom Products Containing SNMP Research Software and Respond to All Discovery Requests as Drafted Should Be Denied. (Category Nos. 8, 10, 12) ................................................................................................ 20

    G.   The Court Should Reject Plaintiff's Abusive Attempt to Have Defendants' Objections to 351 Requests Deemed Waived ............................... 22

    H.   Plaintiff's Demand for Defendants to Complete Their Production in Two Weeks Is Preposterous. (Category No. 1) ................................................ 23

    I.   Plaintiff's Request for Discovery Relating to Third Parties Should Be Denied. (Category No. 9) .......................................................................... 24

Page

III.    CONCLUSION..................................................................................................25

Case 3:20-cv-00451-CEA-DCP   Document 119   Filed 12/23/21   Page 3 of 30   PageID #: 4728

5857416

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abarca Health, LLC v. PharmPix Corp.*,
    806 F. Supp. 2d 483 (D.P.R. 2011) ..................................................................... 17, 18, 19

*ACI Worldwide Corp. v. Mastercard Techs., LLC*,
    2016 WL 6462249 (D. Neb. Oct. 27, 2016) ................................................................ 18

*Aikens v. Deluxe Fin. Servs., Inc.*,
    217 F.R.D. 533 (D. Kan. 2003) .................................................................................... 12

*Ameranth, Inc. v. Pizza Hut, Inc.*,
    2013 WL 636936 (S.D. Cal. Feb. 20, 2013) ............................................................... 18

*Coles v. Wonder*,
    283 F.3d 798 (6th Cir. 2002) ......................................................................................... 2

*GCA Servs. Grp., Inc. v. ParCou, LLC*,
    2016 WL 7192175 (W.D. Tenn. Dec. 12, 2016) ......................................................... 11

*Jones v. Am. River Transportation Co., LLC*,
    2020 WL 7865326 (W.D. Tenn. June 17, 2020) ......................................................... 23

*Kelora Sys., LLC v. Target Corp.*,
    2011 WL 6000759 (N.D. Cal. Aug. 29, 2011) ............................................................ 18

*Langenfeld v. Armstrong World Indus., Inc.*,
    2014 WL 287386 (S.D. Ohio Jan. 24, 2014) ................................................................ 6

*Siser N. Am., Inc. v. Herika G. Inc.*,
    325 F.R.D. 200 (E.D. Mich. 2018) .............................................................................. 23

*Strategic Mktg. & Research Team, Inc. v. Auto Data Sols., Inc.*,
    2017 WL 1196361 (E.D. Mich. Mar. 31, 2017) ......................................................... 23

**Statutes**

17 U.S.C. § 411(a) .............................................................................................................. 19

**Rules**

Rule 34 ................................................................................................................................ 13

Fed. R. Civ. P. 34(b)(2)(C) ................................................................................................ 13

Case 3:20-cv-00451-CEA-DCP   Document 119   Filed 12/23/21   Page 4 of 30   PageID #: 4729

# I.    INTRODUCTION

Plaintiff SNMP Research Inc.'s ("SNMP") latest motion to compel is as flawed and premature as its three prior motions to compel against Defendants Broadcom Inc. ("Broadcom") and Brocade Communications Systems LLC ("Brocade") (collectively, "Defendants") (Dkt. Nos. 60, 69, 88), two of which were denied and one of which Plaintiff withdrew as "moot" after the parties spent the time and money fully briefing it.[1]  Strikingly, in its latest "holiday" motion (filed with no prior notice to Defendants and requiring a response on December 23), Plaintiff admits that Broadcom and Brocade have: (1) already provided or agreed to provide wide-ranging discovery in response to *dozens* of separate discovery requests totaling at least 59 separate requests (though, by Defendants' count, it totals 246 requests); (2) met and conferred in good faith for many hours and days with Plaintiffs through which the parties have "made progress on many requests"; and (3) agreed to produce responsive documents on a rolling basis pursuant to and in accordance with the Court's Scheduling Order.

Unfortunately, the concessions made throughout the meet and confer process were entirely one-sided.  Plaintiff openly admitted that it saw no need to compromise on *any* of its discovery requests (despite their obvious overbreadth) given its misguided belief that it is entitled to all the discovery sought.  Plessman Decl. ¶ 32.  Even worse, when Defendants asked Plaintiff to explain how its facially overbroad requests sought relevant information proportional to the needs of the case, it could not do so.  Instead, it would resort to its typical refrain that relevance is a "broad

---

[1] To recap, Plaintiff filed its third motion to compel against Broadcom and Brocade for absolutely no reason.  Defendants Broadcom and Brocade had explained to Plaintiffs they needed more time to supplement their responses to hundreds of discovery requests but fully intended to do so.  Without even notifying Broadcom and Brocade that they planned to file a motion to compel—let alone meeting and conferring about it—Plaintiffs filed a motion to compel only to later withdraw it as moot when Defendants served their responses as promised.  Defendants have sought fees and costs in connection with that motion under Local Rule 37.2.  *See* Declaration of Alison Plessman ("Plessman Decl.") ¶¶ 18-28.

concept" and that it had unidentified "reasons" for its requests. On several occasions, Plaintiff even admitted that the requested discovery was necessary because Plaintiff might have other "claims" against Defendants. Plessman Decl. ¶ 30. This is wholly improper.

With respect to Plaintiff's request for all versions of source code for any product ever containing SNMP Research Software by any Broadcom entity, Plaintiff conveniently neglects to mention its admission during the meet and confers that the software version provided and previously used by Brocade under the License Agreement was not even registered with the Copyright Office. *Id*. ¶ 29. Because registration is a requirement to filing suit, Plaintiff's claims should never have even been brought. *See Coles v. Wonder*, 283 F.3d 798, 801 (6th Cir. 2002) ("[A] cause of action for infringement cannot be enforced until the [plaintiff] actually registers the copyright pursuant to the requirements of the Copyright Act."). In lieu of seeking a protective order, however, Defendants have offered the more-than-reasonable compromise that Plaintiff provide copies of the software and source code it did deposit with the Copyright Office and Brocade will simultaneously provide the source code that SNMP provided to Brocade under the License Agreement so that an initial comparison can take place. Plaintiff rejected this offer and demanded that Brocade provide all versions of the entire source code for all of its products even though only a tiny fraction of that source code ever pertained to SNMP software.

Defendants have no intention of delaying discovery and are diligently collecting and reviewing additional responsive documents for production on a rolling basis. The only thing derailing the process is Plaintiff's compulsive need to file serial motions to compel intended to harass Defendants. Defendants are forced to spend time responding to these frivolous motions instead of reviewing and producing the documents that Plaintiff claims to need. Plaintiff is thus the party responsible for any discovery delay. Indeed, although Plaintiff filed its motion to compel

- 2 -

with a December 23 response date, it recently requested a thirty-day extension for its own discovery responses (which Defendants agreed to without question or condition). It is now clear that Plaintiff, with its "my way or the highway" approach to discovery, never intended to meet and confer in good faith. Plaintiff's transparent strategy[2] is to shoot for the moon and hope to land among the stars—that is, request an absurd amount of information that it is certainly not entitled to and hope that whatever compromise results still inures to Plaintiff's benefit. This strategy has been wasteful of both Defendants' and the Court's time and resources. The Court should deny Plaintiff's motion to compel and sustain Defendants' objections to Plaintiff's discovery requests. Defendants also move for attorneys' fees and costs pursuant to Local Rule 37.2

## II. ARGUMENT

### A. The Court Should Order Plaintiff to Narrow its Definitions of the Entities and SNMP Research Software So That Discovery May Proceed Reasonably. (Category Nos. 3-6, 11)

Plaintiff's motion to compel responses to discovery requests using overbroad definitions of Broadcom, Brocade, SNMP Research, and SNMP Research Software should be denied.

Both "Broadcom," and "Brocade," are defined to include "predecessors, predecessors-in-interest, successors, successors-in-interest, affiliated entities, including all divisions and subsidiaries, and the officers, directors, employees, agents, attorneys, accountants, and representatives, including all other Persons or entities acting or purporting to act on behalf" of them. Dkt. No. 116-4 at 3. "SNMP Research" is similarly defined as to Plaintiffs except without reference to successors or affiliates. *Id*. at 2. "SNMP Research Software" is defined to include "any software created by SNMP Research [defined to include unidentified non-party entities and

---

[2] No rational party could believe that, based on claims for breach of a license agreement and copyright infringement, it is entitled to information from over 150 Broadcom entities across the world, including those entities' proprietary source code and financial information.

5857416

individuals] which was or is in the possession" of Broadcom or Brocade. *Id.* at 3-4. These definitions include hundreds of entities and individuals that have no relevance to the allegations in the Complaint. As previously explained, Broadcom Inc. is a parent holding company which, directly and indirectly, owns more than 150 other companies and corporations across the world, virtually none of which has anything to do with this case. Declaration of Philip Blum ¶ 2. And the definition of "SNMP Research Software" includes all software that has ever been created by Plaintiffs (and other unidentified entities and individuals associated with them) instead of only the software that is listed in the Complaint and registered with the Copyright Office. Defendants' objection to these definitions is unremarkable, as is their requested narrowing. The definitions of Broadcom, Brocade, and SNMP Research should be limited to the parties in the case and the definition of SNMP Research Software should be limited to the software listed in the Complaint.

      1.    The Court Should Reject Plaintiff's Proposed Definition of "SNMP Research Software".

Plaintiff first argues that the term "SNMP Research Software" cannot be vague because it is defined. Plaintiff's Motion to Compel, Dkt. No.116 ("Mot.") at 16-17 ("There should thus be no confusion over the meaning of this defined term."). This argument is conclusory and ignores the substance of Defendants' objection, which is that the term is vague because it pertains to any software provided to any Broadcom entity that was created by "SNMP Research"—a term that is defined to include numerous unidentified entities and individuals unknown to Defendants.

Plaintiff also argues that "Defendants know full well which of their products contain Plaintiff's software," citing to, *inter alia*, Brocade's identification of the products containing EMANATE/Lite Agent Version 16.2.0.9 (which is the software provided under the License Agreement between Brocade and Plaintiff) and Brocade's assertion that its products no longer contain EMANATE/Lite Agent Version 16.2.0.9. Mot. at 17. Brocade is obviously aware of what

software was provided to it by Plaintiff under the License Agreement. But Plaintiff's definition is not limited to only that software or even the other software listed in the Complaint that was never provided to Brocade. Rather, it encompasses *any* software created by Plaintiff (and numerous unidentified entities and individuals) that has been provided to *more than 150 Broadcom entities at any point in time*. Plaintiff could easily limit its definition of "SNMP Research Software" to encompass only the software listed in Table 1 of the Complaint or provided to Brocade under the License Agreement rather than insist on the overbroad and vague definition of "SNMP Research Software," which causes almost every one of their requests to seek irrelevant information that is not proportional to the needs of the case. Lastly, Plaintiff addresses the main thrust of Defendants' objection, arguing that its definition should not be limited to the software at issue because "Plaintiff's definition of 'SNMP Research Software refers to software that is encompassed by the copyrighted works in the Complaint." Mot. at 18. Defendants do not understand what Plaintiff is trying to argue here.

It is no mystery why Plaintiff refuses to reasonably narrow the definition of SNMP Research Software. Indeed, Plaintiff's counsel made clear at the parties' most recent meet and confer why the definition must remain overbroad. Plaintiff seeks overbroad and irrelevant discovery through its defined terms because it is fishing for "other claims" to tack onto the Complaint. At one point during the meet and confer, Plaintiff's counsel speculated that Brocade "may have" received other SNMP Research Software from unidentified third parties. Plessman Decl. ¶ 33. In other words, Plaintiff is insisting on its overbroad and vague definition of "SNMP Research Software" because Brocade "may have" received from third parties unidentified software that is not listed in Table 1 of the Complaint or provided by Plaintiff under the License Agreement to Brocade. Such blatant abuse of the discovery process should not be countenanced, and

- 5 -

Plaintiff's definition of "SNMP Research Software" should be limited to the software listed in Table 1 of the Complaint or provided by Plaintiff to Brocade under the License Agreement.

       2.     The Court Should Reject Plaintiff's Proposed Definition of "Broadcom" and "Brocade".

Plaintiff's definitions of Broadcom and Brocade rope more than 150 corporate entities into this litigation. Plaintiff insists that its definitions only seek relevant information, are not overbroad, and are proportional to the needs of the case for three reasons. Not so.

Plaintiff first argues that "it is a common feature of civil discovery to define entities to include their predecessors, successor, subsidiaries, and officers." Mot. at 21. Other than its say-so, Plaintiff offers no support for this proposition. But even assuming this assertion is accurate, it has little application here. First, the defendant entities are not just defined to include their "predecessors, successor, subsidiaries, and officers"—they are defined to include *all affiliated entities*, which is far broader than the definition Plaintiff claims is routine. Second, the fact that such a definition may be appropriate in certain cases does not render it appropriate here.[3] As courts in this circuit have explained, relevance is assessed relative to the needs of the specific case. *See Langenfeld v. Armstrong World Indus., Inc.*, 2014 WL 287386, at *2 (S.D. Ohio Jan. 24, 2014) ("It goes without saying that relevance must be determined on a case-by-case basis."). The present case concerns the alleged breach of a license agreement and a claim for copyright infringement stemming from the alleged termination of that agreement. There is no need for nearly every discovery request to be directed at every "affiliated entity" and subsidiary of Defendants. Doing

---

[3] For this reason, the fact that Brocade may have defined the defendant entity in an entirely different case to include other entities and individuals (such as predecessors and agents, though still not "affiliated entities") is irrelevant. Even if it were standard practice for entity definitions to be drafted broadly, in Defendants' experience, parties typically reach a reasonable agreement about which entities discovery actually applies to. That has proved impossible here as Plaintiff has categorically refused to narrow its definitions in any way during the meet and confer process.

- 6 -

so is especially burdensome here because Plaintiff has inexplicably and stubbornly named as a defendant Broadcom Inc., a parent holding company of more than 150 entities across the world. To highlight one example of how Plaintiff's requests operate under these definitions, Broadcom RFP No. 45 asks for "[a]ll financial Documents concerning Broadcom's profits and losses from October 1, 2017 continuing to the present." Dkt. No. 60-4 at 14. Under Plaintiff's definition, every Broadcom company—again, more than 150 entities, virtually none of which have anything to do with this case—must produce *all* financial documents detailing their profits and losses.[4]

Plaintiff next argues that directing discovery to every Broadcom company "is particularly relevant in this case because it centers in part on Defendants' predecessor's conduct related to the 2017 merger and divestiture." Mot. at 21. But those predecessors' identities are known to Plaintiff, as is made clear by Plaintiff's motion discussing how Broadcom Limited is the predecessor to Defendant Broadcom Inc. and Brocade Communications Systems, Inc. is the predecessor to Defendant Brocade Communications Systems LLC.[5] Discovery requests asking about those specific predecessors' involvement in the conduct alleged could be proper. But what is not proper is to use the existence of these predecessors as an excuse to seek information from every single Broadcom entity across the world. This is even more true when Plaintiff's only reason for doing so is its unfounded suspicion that other Broadcom entities may have "obtained, used, or distributed products containing Plaintiff's software." Mot. at 22.

---

[4] Other requests rendered absurd by the overbroad entity definition include: (1) Broadcom RFP No. 65, which asks for "[a]ll Documents Relating to any agreements between Broadcom and Extreme" (Dkt. No. 116-5 at 17); (2) Broadcom RFP No. 35, which seeks "[a]ll Communications between Broadcom and any third party concerning SNMP Research, SNMP Research Software, or this litigation" (*id*. at 13); and (3) Broadcom RFP No. 41, which seeks "Broadcom's Document retention policy" (*id*. at 14).

[5] All of the information detailed by Plaintiff is part of the public record as set forth in filings with the Securities & Exchange Commission.

- 7 -

5857416

Last, Plaintiff argues that if it is not allowed to direct its discovery requests to every Broadcom entity, Defendants will "use the named entities to avoid substantive responses." Mot. at 22.[6] Plaintiff has constructed a false dichotomy, claiming that it must either direct virtually all of its discovery requests to more than 150 Broadcom entities *or* Defendants will avoid substantive responses by playing a "shell game." But the third option is that Plaintiff could obtain the information it seeks by propounding discovery requests targeted to the conduct it is concerned about. For instance, Plaintiff could simply ask whether, as part of the merger and divestiture, Broadcom Limited participated in the transfer of Plaintiff's software. Or, it could ask Brocade what other parties (Broadcom or otherwise, corporate or otherwise) were involved in a given event or transaction. But what Plaintiff cannot do—and what Plaintiff attempts to do here—is require Defendants to search for and provide vast amounts of irrelevant information (again, for example, the financial documents for all Broadcom entities).[7]

---

[6] Specifically, Plaintiff cites to Brocade's response to Interrogatory No. 15, which asks Brocade to describe Broadcom's involvement in the transfer from Brocade to Extreme. Reasonably construing the request to seek information about the parties named in this litigation, Brocade responded that Broadcom Inc. was not involved in the transfer.[6] Similarly, for Broadcom RFP No. 85, Broadcom accurately responded that there was no 2017 Form 10-K for Broadcom Inc. Defendants are not attempting to avoid substantive responses but, rather, are preserving their objections to Plaintiff's overbroad entity definitions by limiting their responses to the named parties where appropriate to do so. Plaintiff's argument is all the more nonsensical since information about the merger and divestiture in 2017 is publicly available—*i.e.*, there is nothing to hide.

[7] Plaintiff's definition of "Partner Product," is also overbroad. It is defined to mean "each Product of a third party that now, or has ever, whether in current distribution or not, contains, uses or is otherwise associated with SNMP Research Software either as manufactured or as a result of a software or firmware installation or update where the SNMP Research Software was obtained from" either Broadcom, Brocade, or Extreme, depending on which Defendant the request was propounded on. Dkt. No. 116-7 at 5. This definition incorporates the overbroad definitions of SNMP Research Software and either Broadcom, Brocade, or Extreme. The definition also includes no time limitation, is not limited to the software at issue in this case, and is unclear as to how Plaintiffs' software can be "otherwise associated" with a product separate from being contained in or used by the product. For similar reasons, Defendants maintain that the definition of "Product" is overbroad.

- 8 -

3. <u>Defendants' Objections to Other Terms Are Proper</u>.

Defendants offered to meet and confer with Plaintiff over various other terms used in its requests. Plaintiff's reductive response throughout the meet and confer process (as admitted in its motion) was to tell Defendants to consult a dictionary or consult an engineer. Mot. at 18-19. The problem is that Defendants often do not understand what Plaintiff's terms mean in the context in which they are used. For example, Brocade RFP No. 55 asks for "[a]ll Documents Relating to Broadcom Inc. sharing, either directly or indirectly, in the revenues, profits, or losses from the transfer (by disclosure, license, sale, or otherwise) of SNMP Research Software that was/is in the possession of Brocade to Extreme." Dkt. No. 116-7 at 16. Putting aside that this request seeking "all" documents "Relating to" this topic is already grossly overbroad, vague, and cumulative, during the meet and confers, Defendants asked what Plaintiff meant by "indirectly" sharing of profits. Specifically, Defendants explained that Broadcom Inc. is a holding company and its publicly reported consolidated financial statements include the accounts of Broadcom Inc. and its subsidiaries. When asked whether Plaintiff was intending through this discovery request to seek all documents relating to Broadcom's consolidated financial statements, they gave no clear answer and could not describe what else they believe might be subsumed by their request for all documents relating to Broadcom "indirectly" sharing profits. Plessman Decl. ¶ 31.

Another example concerns Plaintiff's requests for admissions, which ask Defendants to admit, among other things, that Plaintiff's software has been "compiled and linked" into certain products. *See, e.g.*, Brocade Request for Admission No. 5 (Dkt. No. 60-8 at 7) ("Admit SNMP Research Software was compiled and linked into Your Products."). Among other objections,[8]

---

[8] Setting aside the vague term "compiled and linked," this request is problematic for many other reasons. For instance, "Your" is defined to incorporate over 150 Broadcom entities across the
(Continued...)

- 9 -

Defendants objected that these requests were vague and ambiguous as propounded and offered to meet and confer over "what [Plaintiff] means by 'compiled and linked,' " which are not terms defined in the discovery requests. Plaintiff could not explain what these terms meant in the context of Brocade's products during the meet and confers and instructed Defendants to consult with a software engineer. Plessman Decl. ¶ 34. This response misses the point. Plaintiff is seeking the admission of a fact to use against Defendants at trial. In this context, rather than leaving Defendants to guess what Plaintiff means by these terms, it is paramount that Plaintiff propounds targeted requests that are not susceptible to more than one meaning.[9]

Plaintiff also argues that Defendants' objections to other discovery requests seeking "all" documents "Relating to" numerous topics are improper. Defendants' primary objection is that these terms render the requests impermissibly overbroad based on the sheer volume of documents implicated.[10] For example, for Brocade RFP No. 59, Plaintiff requests "All Documents Relating to the March 29, 2017 'Purchase Agreement' with Extreme." (Dkt. No. 116-7 at 16.) Defendants

---

world and SNMP Research Software is defined to encompass any software created by Plaintiff (and numerous unidentified entities and individuals) that has been provided to any of the 150 entities.

[9] Plaintiff also moves the Court to compel production over Defendants' objections to what Plaintiff refers to as "plain" terms such as "transfer," "associated with," or "otherwise." While Plaintiff argues that these terms are commonly understood, Defendants maintain that they are vague and/or ambiguous as used in Plaintiff's requests. For instance, for Brocade Interrogatory No. 1, Plaintiff asks Brocade to identify all products "that contain, use, or are otherwise associated with SNMP Research Software." It is not at all clear how the software can be "otherwise associated with" a product separate from being contained in the product or used by it. Plaintiff has offered no insight on this point during the meet and confer process, leading Defendants to conclude that their intended meaning is impermissibly overbroad.

[10] Other requests, such as Brocade RFP No. 36 (Dkt. No. 116-7 at 13) seeking "All Documents Relating to revenue information for each and every Product Identified in response to Interrogatory numbers 1 and 2" and Brocade RFP No. 58 (*id*. at 16) seeking "[a]ll Documents Relating to any agreements between Brocade and Extreme from January 1, 2017 to present" are rendered facially overbroad by their use of the phrase "relating to" relative to a general category or group of documents. *See Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 538 (D. Kan. 2003) ("[A] request or interrogatory is unduly burdensome on its face if it uses the omnibus term 'relating to' or 'regarding' with respect to a general category or group of documents.").

- 10 -

5857416

explained that they would be willing to produce the purchase agreement itself and a subset of relevant documents agreed to by the parties but not "all documents relating to" the divestiture, as searching for and producing every scrap of paper "relating to" the divestiture is unnecessary and has absolutely no bearing on this case. Plessman Decl. ¶ 39. Plaintiff refused this compromise. *Id*. This problem pervades Plaintiff's requests. *See, e.g.*, Brocade RFP (Dkt. No 116-7) Nos. 1-22, 36-37, 40, 46, 50-51, 55-60, 62, 64, 66, 68-85.[11]

### B. Defendants' Relevancy Objections Should Be Sustained and the Court Should Order Plaintiff to Narrow its Requests. (Category No. 3)

Defendants' relevancy objections should be sustained. In arguing that these objections are meritless, Plaintiff never substantively engages with them. Instead, Plaintiff merely cites a case for the proposition that relevancy is an extremely broad concept and submits several examples of requests that it believes are relevant. Mot. at 13-14. It is insufficient for Plaintiff to point to a handful of requests and then argue, *ipse dixit*, that Defendants' objections are meritless. *Every one* of Plaintiff's requests must be relevant to its claims. And as previously explained, it is Plaintiff's burden to demonstrate that its requests are relevant as framed. *See GCA Servs. Grp., Inc. v. ParCou, LLC*, 2016 WL 7192175, at *3 (W.D. Tenn. Dec. 12, 2016) ("Once a party raises an objection to discovery based on relevance, 'the burden shifts to the party seeking the information

---

[11] Plaintiff also seeks to compel production over Defendants' objections to the definition of "Identify," which Plaintiff refers to (unironically) as "clear and simple." Dkt. No. 115 at 3. The definition is anything but, as the term's definition is five paragraphs long. Plaintiff makes much of the fact that in this case Defendants have propounded discovery with definitions similar to its own for the terms "Identify" and "Relating." But Defendants' requests incorporating these terms are properly tailored. If Plaintiff believes otherwise, Defendants are willing to meet and confer as to those specific requests. *See, e.g.*, Brocade Propounded RFP No. 31 (Dkt. No. 116-17 at 15) (requesting "[d]ocuments sufficient to identify all lawsuits filed by or on behalf of Plaintiffs claiming" copyright infringement).

- 11 -

to demonstrate that the requests are relevant to the subject matter involved in the pending action.' "). Plaintiff has failed to satisfy its burden.[12]

Many of Defendants' relevance objections stem from Plaintiff's overbroad definitions of the parties and SNMP Research Software. For example, Plaintiff cannot show why **_any_** of the information requested from Computer Associates (CAI) de Venezuela, one of the many Broadcom "affiliated entities" Plaintiff seeks discovery from, is relevant to the claims for breach of contract and copyright infringement alleged in the Complaint against Brocade. But even setting aside Plaintiff's definitions, the requests seek irrelevant information. For example, Brocade RFP No. 32 asks for "All Communications concerning SNMP Research or the SNMP Research Software." Dkt. No. 116-7 at 12. Brocade objected to this request on the grounds that, *inter alia*, it "seeks Communications that are irrelevant and not proportional to the needs of the case." Doc. 116-11 at 75-76. Plaintiff has provided no explanation why *every* communication concerning SNMP Research is relevant to its claims or likely to lead discoverable information. Brocade and SNMP Research conducted business together for years, the vast majority of which has no bearing on this matter. Another example is Brocade RFP No. 46, which seeks "All financial Documents Relating to Brocades's [sic] profits and losses from October 1, 2017 continuing to the present."[13] Dkt. No. 116-7 at 14. Plaintiff seeks this information in order to calculate its potential damages under the Copyright Act. But the Complaint alleges that Plaintiff did not terminate the license agreement

---

[12] Plaintiff argues that, because the information sought appears to be relevant, the burden shifts to Defendants to show that the information is not relevant or that its marginal relevance is outweighed by the undue burden. Mot. at 14. As set forth in this Motion, the information sought does not "appear to be relevant," and thus the burden does not shift to Defendants. But even if it did, Defendants have satisfied their burden of showing that any marginal relevance is outweighed by the undue burden.

[13] Note that this request does not just ask for Brocade's profits and loss information—it asks for all documents relating to that information, which, as discussed, is a separate reason why the request is improper. *See Aikens*, 217 F.R.D. at 538.

until July 25, 2019, and thus any revenue information prior to that date is irrelevant. To date, Plaintiff has provided no explanation for why it needs this revenue information.[14] Defendants' relevance objections should be sustained and Plaintiff should be ordered to revise their requests.

### C. Defendants Should Not Be Required to Conduct Expansive Searches for Documents Until Plaintiff's Facially Overbroad Requests Are Narrowed.

Plaintiff complains that Defendants "fail to identify whether any documents or information are being withheld on an objection-by-objection basis." Mot. at 9. As an initial matter, this requirement is only implicated where a party objects to a request and produces some documents responsive to the request. *See* Fed. R. Civ. P. 34(b)(2)(C) advisory committee note to 2015 amendment. Here, where Defendants agree to produce certain documents responsive to Plaintiff's discovery requests notwithstanding Defendants' objections, Defendants explain exactly which documents they are agreeing to produce.[15] Unless a request for production was objectionable in its entirety or so riddled with problems that a meet and confer was necessary to decipher its scope, Defendants' objections to "part of a request" specifies "the part and permit[s] inspection of the rest," exactly as Rule 34 contemplates.

But more importantly, Plaintiff's argument highlights a fundamental disagreement between the parties on how discovery should proceed. Plaintiff believes that Defendants must search for and review all documents responsive to its overbroad and irrelevant requests and then present

---

[14] This is unsurprising. Throughout the parties' the meet and confers, whenever Defendants pressed Plaintiff to explain why the information sought by a specific discovery request was relevant, a substantive response was rarely given. Instead, Plaintiff would reply each time with the same refrain—that relevance is a very broad concept, and thus it was entitled to whatever information it sought. Plessman Decl. ¶ 37. Occasionally Plaintiff would state that it had "reasons" for requesting the information but would not explain what those reasons were. *Id.*

[15] For example, in response to Brocade RFP Nos. 22, 29-31, 36-38, 43-44, 46 and 49, Defendants object that the time period is overbroad but identify the time period for which they are agreeing to provide documents. Or, for Brocade RFP Nos. 59-60, 62, 64, 66, Brocade objected to these on the grounds that they ask for "all documents relating to" a category of documents but agreed to produce the actual documents.

- 13 -

those documents (or categories of documents) to Plaintiff to decide what is and what is not relevant. *See* Mot. at 14. But this puts the cart before the horse. In Defendants' view, Plaintiff's overbroad and irrelevant requests create unduly burdensome search and review obligations on Defendants that are not proportional to the needs of the case. Again, the propounded requests require every Broadcom entity across the world (more than 150 companies) to search for responsive information and documents. Defendants (and all non-parties implicated) should not have to expend the resources necessary to conduct such searches given that the requests are facially overbroad and seek irrelevant information. In short, Defendants cannot state yet whether responsive documents are being withheld until the requests are more narrowly drawn such that a search of reasonable scope and expense may be conducted.[16]

### D. Plaintiff's Proposed Timeframe Is Overbroad and Must Be Narrowed. (Category No. 3)

Plaintiff's proposed timeframe for many of its requests is overbroad. For some requests, the relevant timeframe is eternity. *See, e.g.*, Brocade Interrogatory No. 1 (Dkt. No. 116-6 at 7) ("Identify all Brocade Products that contain, use or are otherwise associated with SNMP Research Software . . . ever at any time."); *see also* Definition of Partner Product (*id*. at 5) ("The term 'Partner Product' means each Product of a third party that now, or has ever, whether in current

---

[16] Throughout this litigation, and again in its motion to compel, Plaintiff claims that Defendants have not explained why such searches would be burdensome. Not so. In Defendants' opposition to Plaintiff's second motion to compel, which this Court denied, they explained: "It should be self-evident that defining a party to include dozens of non-party entities and individuals is overbroad and burdensome, particularly given that Plaintiffs seek information regarding software not at issue in this case. Expanding discovery obligations in such an extraordinary way costs money, takes time, distracts employees from their duties, and invades parties' privacy rights." Dkt. No. 62 at 14. As in the past, Plaintiff will likely argue that these discovery searches are not burdensome because Defendants are "billion-dollar" companies. *See* Dkt. No. 62 at 19 ("Plaintiffs resort to their familiar response (in furtherance of their transparent 'David and Goliath' narrative) that Defendants are 'billion-dollar' companies that possess the sophistication to perform this analysis."). Regardless of its resources, no party should be forced to waste those resources (financial and otherwise) to comply with patently overbroad discovery requests.

distribution or not, contains, uses or is otherwise associated with SNMP Research Software . . . .").

Plaintiff has failed to offer any justification why any product that was *ever* "associated with" its

software at any time for over 150 entities is the proper subject of discovery in this case.[17]

For most other requests, the timeframe is set as January 1, 2017 to the present. Plaintiff

misrepresents the scope of Defendants' objection to this timeframe. Defendants made clear during

the meet and confers that Plaintiff's proposed timeframe for certain requests—specifically those

pertaining to the events of the merger and divestiture that occurred in 2017—was not

objectionable. Only 19 of Defendants' responses expressly state that the information or documents

provided would be limited to the period after July 25, 2019. For each of those, Defendants limited

their responses in this manner because the requested information or documents prior to July 25,

2019 have no relevance to Plaintiff's claims. For example, for Brocade Interrogatory No. 5,

Plaintiff requests that Brocade "Identify each Brocade customer, partner, or other third party who

received each Brocade Product and the quantities of each Product received by quarter for the period

January 1, 2017 to the present." Dkt. No. 118-2 at 25. Brocade responded:

> The requested time period of January 1, 2017 to the present is overbroad and seeks
> information that is irrelevant and not proportional to the needs of the case. The Complaint
> alleges three causes of action against Brocade: (1) breach of contract; (2) direct copyright
> infringement; and (3) contributory copyright infringement. The alleged basis for the breach
> of contract claim is that Brocade improperly transferred Plaintiffs' software to Extreme and
> failed to comply with its post-termination obligations. The identity of Brocade's partners
> and customers has no relevance to this claim and is not proportional to the needs of the
> case. As to the direct copyright infringement claim, the Complaint alleges that Plaintiffs
> terminated Brocade's internal use and redistribution rights on July 25, 2019. The identity
> of Brocade's partners and customers (and quantities sold to such partners and customers)
> prior to this date is irrelevant and not proportional to the needs of the case. And the
> contributory copyright infringement claim against Brocade is based on Extreme's alleged
> copyright infringement and has nothing to do with Brocade's customers or partners.

---

[17] Indeed, when pressed, Plaintiff ultimately let slip its true motives when Plaintiff's counsel
explained that the broad timeframe was required because (and this is a quote) "we may find claims
that go back further." Plessman Decl. ¶ 30. This is the *definition* of a fishing expedition.

- 15 -

For this reason, Brocade reasonably agreed to "produce non-privileged business records for this Interrogatory, if any exist, sufficient to reflect the number of products identified in response to Interrogatory Nos. 1 and 2 that were sold to customers after July 25, 2019." *Id*. at 27. Again, during the meet and confers, Plaintiff could not articulate a *legitimate* reason (i.e., a reason apart from wanting to hunt down other potential claims unrelated to this case) why the identity of Brocade's customers and the number of products sold prior to July 25, 2019 are relevant. In its motion, the best explanation Plaintiff can muster is the conclusory assertion that the information is "relevant to the calculation of Defendants' revenues and costs, and thus Plaintiff's damages." Mot. at 16. But why would such information prior to July 25, 2019 be relevant to Plaintiff's damages? Plaintiff does not allege (and cannot argue) that Defendants lacked internal use and redistribution rights prior to the alleged termination of the License Agreement. Plaintiff's motion to compel responses for their requested timeframe should be denied.

**E.** **Plaintiff's Motion to Compel Defendants' Production of Source Code Should Be Denied and the Court Should Order Plaintiff to Accept the Source Code Exchange Compromise Offered by Defendants. (Category No. 7)**

Plaintiff argues that "Brocade should be ordered to produce all source code for all products identified in the Complaint and for any other products containing Plaintiff's software that are revealed in discovery." Mot. at 23. The Court should not compel this production.

Plaintiff devotes only a paragraph to this argument, citing to five of its Brocade requests for production. *Id*. (citing to Brocade RFP Nos. 25-28 and 53). The brevity of this argument belies the <u>massive</u> scope of Plaintiff's source code requests, which include: (1) "[a]ll install images for all versions of each Product, for each software or firmware version, Identified in response to Interrogatory number 1"; (2) "[a]ll Source Code, including all versions, for each Product Identified in response to Interrogatory numbers 1 and 2"; and (3) "[t]he build environment along with

- 16 -

5857416

instructions for building each Product for all Source Code produced in response to these requests for production."[18]  In sum, Plaintiff requests the *entire* source code (not just the source code for the incorporated SNMP Research Software—the source code for the *entire* product), the install images, the build environment, and instructions for how to build the product for *every* version[19] of *every* product that has *ever* been "associated with" SNMP Research Software (which, again, is defined to other software created by Plaintiff and numerous unidentified entities and individuals well beyond the software provided under the License Agreement to Brocade) by any of the over 150 Broadcom entities that Plaintiff's requests are directed to.

Plaintiff claims that it requires Brocade's entire source code to show "copying" and that the products at issue incorporated Plaintiff's code.[20]  Mot. at 23.  But Plaintiff is not just asking for the portion of the source code in which its software has been incorporated—it is asking for the *entire* source code for Brocade's products, in addition to install images, the build environment, and instructions for how to build Brocade's products.  Plaintiff cannot justify such overbroad requests, which have been denied by courts in analogous circumstances.  For instance, in *Abarca Health, LLC v. PharmPix Corp.*, 806 F. Supp. 2d 483, 488 (D.P.R. 2011), the "[d]efendants challenge[d] both the relevance and the necessity of revealing the entire Source Code as evidence regarding plaintiffs' copyright claim."  In denying the plaintiff's request for all source code, the

---

[18] The relevant universe of products for these requests are those identified in Brocade and Broadcom Interrogatories No. 1 and 2, which are overbroad due to their timeframe and Plaintiff's definitions of Brocade, Broadcom, SNMP Research Software, and Partner Products.

[19] As discussed with Plaintiff during the meet and confer process, it is entirely unclear what Plaintiff means by different versions of the product or why the source code for each "version" is required.

[20] Plaintiff's source code requests are also overbroad because there is no question that Brocade's products incorporated Plaintiff's software as permitted under the License Agreement prior to July 25, 2019.  Thus, any requests for source code, install images, and build environments should be limited to the timeframe after July 25, 2019.

court recognized that the "plaintiffs will have to demonstrate that defendant copied original, protected elements" but explained that nonetheless "[t]hey are not entitled to discovery of information that is irrelevant to their claim or unlikely to lead to the discovery of relevant information." *Id*. at 491.[21] Courts have also found in other intellectual property disputes that compelling the production of a product's entire source code was unwarranted. *See ACI Worldwide Corp. v. Mastercard Techs., LLC*, 2016 WL 6462249, at *2 (D. Neb. Oct. 27, 2016) ("ACI's request now for the entire source code to the MDS is not proportional to the needs of the case, would include information irrelevant to ACI's claims, and would defeat the purpose of the protracted efforts by the parties to reach a compromise regarding production of MDS source code."); *Ameranth, Inc. v. Pizza Hut, Inc*., 2013 WL 636936, at *7 (S.D. Cal. Feb. 20, 2013) ("[T]he court DENIES Ameranth's request to compel production of the entire source code tree and GRANTS Defendants' request to produce select portions of the source codes.").[22]

---

[21] Plaintiff has attempted to distinguish *Abarca* because, in that case, "the allegedly copied source code was derived in part from a third-party program that the plaintiff did not own." Dkt. No. 111 at 21. This is a meaningless distinction as the *Abarca* decision is based on the relevance of the entire source code and the burden on the defendant of producing it (as well as the defendant's proprietary and privacy rights with respect to its source code). *See Abarca*, 806 F. Supp. 2d at 488 (recognizing that because the entire source code has " 'tremendous commercial value' " and that "divulging it would have ruinous consequences," in order for "plaintiffs' request to be granted, the entire Source Code must be relevant to plaintiffs' copyright claim and the benefits of disclosure must outweigh the considerable detriment invoked by defendants"); *id*. at 491 (explaining that the entire "Source Code's relevance is questionable" and that "even if relevant, compelling disclosure of the Source Code . . . would be unnecessary and would merely burden defendants without commensurate benefit").

[22] Courts have also found that defendants were not required to provide build environments without sufficient justification. *See Ameranth*, 2013 WL 636936, at *7 (denying request for the production of a "complete, functional build environment for the source code"); *see also Kelora Sys., LLC v. Target Corp*., 2011 WL 6000759, at *1 (N.D. Cal. Aug. 29, 2011) (holding that "the Accused Infringers do not have to provide a complete, functional build environment for the source code" because "the benefits of making it easier for Kelora to evaluate the Accused Infringers' source code do not outweigh the burdens associated with the proposal" as "[l]iberal discovery is intended to ensure that the requesting party has the information necessary to make its case but . . . does not imply that the requesting party may force the producing party to undertake burdensome measures merely for the convenience of the requesting party").

- 18 -

Plaintiff's request for the entirety of Defendants' source code is even more absurd given that the software at issue in this case has not been registered with the Copyright Office. While the Complaint alleges that Plaintiff's software has been registered with the Copyright Office, Plaintiff admitted during a meet and confer call that the version of the software provided to Brocade pursuant to the License Agreement has not been registered. Plessman Decl. ¶ 29. Yet Plaintiff has refused to provide the parties with a copy of the software deposited with the Copyright Office. It is axiomatic that copyright registration is a pre-requisite to maintaining a claim for copyright infringement. *See* 17 U.S.C. § 411(a). Defendants should not be required to undertake the burden, expense, and risk[23] of providing Plaintiff all of its source code for numerous products when Plaintiff cannot even truthfully allege that the software it provided to Brocade has been registered with the Copyright Office. *See Abarca*, 806 F. Supp. 2d at 493 (denying production of entire source code where plaintiffs "[h]aving as yet failed to flesh out their copyright claim . . . have not made a proper showing that the needs of the case merit the disclosure of an asset central to defendants' business").

Defendants offered a compromise to Plaintiff in which, as an initial source code production, SNMP would provide the source code for the eight copyright registrations listed in Table 1 of the Complaint and Brocade would provide the alleged SNMP source code provided

---

[23] Plaintiff argued during the meet and confer process that Defendants' concerns are unreasonable because a protective order is in place to prevent the disclosure of the source code. This argument misses the point. Plaintiff must still establish that its need for the entire product source code, install images, and build environment for numerous products outweighs the privacy interests of and undue burden on Defendants of producing that code. *See telSPACE, LLC v. Coast to Coast Cellular, Inc.*, 2014 WL 4364851, at *5 (W.D. Wash. Sept. 3, 2014) ("The Court further finds that reliance on the parties' protective order is insufficient to warrant disclosure in light of Plaintiff's inadequate showing of relevance and the burden that disclosure of the source code would place on Defendant."); *Viacom Int'l Inc. v. Youtube Inc.*, 253 F.R.D. 256, 260 (S.D.N.Y. 2008) ("[T]he protections set forth in the stipulated confidentiality order are careful and extensive, but nevertheless not as safe as nondisclosure. There is no occasion to rely on them, without a preliminary proper showing justifying production of the search code.").

5857416

under the License Agreement to the extent available. Plaintiff refused this compromise, even as to an initial exchange with all parties reserving their rights to seek additional source code at a later date. Plessman Decl. ¶ 36. The Court should deny Plaintiff's motion to compel the production of Defendants' entire source code as well as the production of the install images and build environment. It should also order Plaintiff to accept Defendants' source code compromise.

**F.    Plaintiff's Request that Defendants Identify All Broadcom Products Containing SNMP Research Software and Respond to All Discovery Requests as Drafted Should Be Denied. (Category Nos. 8, 10, 12)**

Plaintiff argues that Defendants should be ordered to identify all products containing Plaintiff's software (as broadly and vaguely defined) for over 150 entities and respond to all associated document requests as drafted. This request should be denied, as it is facially overbroad (as described above) and premised on Plaintiff's misrepresentations of what transpired.

After the court denied Plaintiff's motion to compel on June 25, 2021, the parties met and conferred but remained in disagreement over Plaintiff's overbroad and vague definitions in its discovery requests. Plaintiff wanted Defendants to undertake a collection, search, and review effort to identify every product by any Broadcom entity that incorporated any SNMP Research Software as broadly and vaguely defined. Defendants believed that the universe of products should be limited to those developed by Brocade that included the software versions identified in Table 1 of Plaintiff's Complaint, which Plaintiff alleges were registered with the Copyright Office and form the basis of its claims against Brocade and Broadcom. To move past this impasse, Plaintiff proposed the following solution (as summarized by Plaintiff's counsel Olivia Weber):

> In order to move discovery forward we suggested a compromise that, as a preliminary step and reserving all rights, ___**Broadcom/Brocade would limit the products that are responsive**___ ___**to Interrogatory Number 1 to the list of product families identified in paragraph 64 of**___ ___**the complaint**___. . . . Alison thought this could move discovery forward and agreed to check with her client and respond.

- 20 -

Plessman Decl. Ex. A at 1 (emphasis added).

Brocade and Broadcom ultimately agreed with this proposal and that is exactly how Defendants construed Interrogatory No. 1 when they provided their supplemental responses.[24] But Plaintiff now argues Defendants agreed to also include the products listed in paragraph 49 of the complaint in response to Interrogatory Number 1. *See* Dkt. 96-12 at 1. But despite Plaintiff's purported summary of the parties' discussions, counsel for Broadcom and Brocade never agreed to provide information in response to Interrogatory No. 1 for the products listed in Paragraph 49 of the Complaint, nor would it make sense to do so because the products listed in Paragraph 49 of the Complaint were all transferred to Extreme in 2017.[25] Plessman Decl. ¶ 17. Accordingly, Plaintiff is wrong to claim that Brocade contravened the parties' agreement with respect to the

---

[24] Plaintiff objects that, pursuant to the parties' agreement to limit the products at issue in the discovery requests to those listed in Paragraph 64, it did not respond to Brocade Interrogatory No. 7, which asks Brocade to identify each and every Person involved in a search for Brocade Products containing SNMP Research Software. Brocade responded, in good faith, that given the parties' agreement limiting the products to those listed in Paragraph 64, "no search for products was necessary to respond to these interrogatories since the stipulated products are listed in Paragraph 64." For that same reason (as well as others), Brocade did not identify additional products "sold with or as a result of" the Paragraph 64 products in response to Brocade Interrogatory No. 9. Providing information regarding additional products would have rendered the parties' agreement meaningless. Although Plaintiff is free to seek additional information regarding additional products, and Defendants are free to object to such requests if necessary, it is improper for Plaintiffs to suggest that Defendants did something wrong in the first instance by simply abiding by the parties' agreement.

[25] Plaintiff often uses its own counsel's self-serving "summaries" of the parties' discussion as evidence of what was discussed, but Plaintiff's summaries are often inaccurate. Defendants have made clear that they will not endeavor to correct every statement in Plaintiff's notes and that a lack of a response from Defendants does not indicate an agreement with its views. Plaintiff also states in its motion that Defendants would only be in "listening and questioning mode" if a court reporter transcribed the meet and confer calls. Mot. at 8 n.4. What Plaintiff neglects to mention is that Defendants objected to the presence of a court reporter after it became clear that Plaintiff's sole focus during the meet and confer calls was capturing soundbites for its (inevitable) motions to compel instead of trying to reach a compromise on its discovery requests. *See* Dkt. No. 96-12 at 6 (explaining that "negotiating 'on the record' does not facilitate compromise or understanding, it hinders it" and that "spending time trying to land sound bites for motions to compel will be counterproductive").

Paragraph 49 products as no such agreement was reached and there is no relevant information with respect to those products given the divestiture.[26]

Plaintiff claims that Defendants represented during their meet and confers that they would not investigate what other products may contain SNMP Research Software. Mot. at 26. Defendants never made any such representation. Plessman Decl. ¶ 38. That said, it is accurate that Defendants should not be required to conduct such a search based on Plaintiff's overbroad definitions of Broadcom and Brocade (defined to include more than 150 Broadcom entities unrelated to the present dispute) and SNMP Research Software (defined to include any software made by SNMP Research, which in turn is defined to include numerous unidentified entities and individuals, unrelated to the software at issue in this case).[27]

### G. The Court Should Reject Plaintiff's Abusive Attempt to Have Defendants' Objections to 351 Requests Deemed Waived. (Category No. 2)

For the third time now, Plaintiff makes the extraordinary request that the Court deem Defendants' general objections waived, relying on the same caselaw cited in its prior motions to compel, which were denied. Mot. at 10-12. As previously explained, those cases are inapposite

---

[26] Plaintiff complains that Broadcom Inc. failed to respond to Interrogatory No. 1 because it did not also provide information for the products in paragraph 64 of the Complaint. Mot. at 24-25. But none of those products are Broadcom Inc.'s products—they are all products sold by Brocade, which substantively responded as to these products as promised. Defendants never agreed to falsely state in their discovery responses that the products listed in Paragraph 64 were also sold by Broadcom Inc. Plaintiff also complains that Brocade's response to Interrogatory No. 1 does not admit that the Paragraph 64 products contain their software. But Defendants never agreed they would make such an admission.

[27] Plaintiff bafflingly take issue with the fact that Defendants provided "incomplete" answers when Defendants partially respond to a discovery request despite their objections. But in their prior motions to compel, they argued that Defendants were required to provide such partial responses. Similarly, Plaintiff takes issue with Defendants responses to certain requests that they are willing to meet and confer as to the scope of the request. Rather than stand on their objections to a particular request, Defendants chose to offer to meet and confer to see if the parties could reach agreement about what could be produced because, at the time Defendants' supplemented their discovery responses, the parties had not yet met and conferred as to specifics of the vast majority of Plaintiff's requests.

- 22 -

as they involve *actually* boilerplate discovery responses.[28] As Defendants have already shown above, their objections to Plaintiffs' overbroad discovery requests have merit—they are not frivolous or boilerplate. Defendants' "General Objections" are not generalized in the sense that they are boilerplate or non-specific but "general" in the sense that they apply broadly to Plaintiff's discovery requests. Often, the General Objections simply provide longer explanations for Defendants' specific objections to each request. As Defendants have explained, providing the longer explanations once at the beginning of Defendants' responses makes sense to avoid redundancy and reduce the length of the responses overall.[29] The request to have Defendants' objections deemed waived should be denied.

### H. Plaintiff's Demand for Defendants to Complete Their Production in Two Weeks Is Preposterous. (Category No. 1)

Plaintiff asks the Court to require Defendants to fully complete its document production and written discovery responses within two weeks of this Court's decision. Mot. at 8-9. This request is entirely unreasonable given that Plaintiff has served more than 350 requests on Defendants and the Scheduling Order provides a discovery cutoff date of October 18, 2022. Dkt. No. 114 at 2. Defendants have begun producing documents and will continue to do so on a rolling

---

[28] *See, e.g., Strategic Mktg. & Research Team, Inc. v. Auto Data Sols., Inc.*, 2017 WL 1196361, at *3 (E.D. Mich. Mar. 31, 2017) (deeming the following objection boilerplate: "SMART objects because the interrogatory seeks information which is not relevant to any party's claim or defense" (see Dkt. No. 10-8 at 10)); *Siser N. Am., Inc. v. Herika G. Inc.*, 325 F.R.D. 200, 203 (E.D. Mich. 2018) (deeming the following objection boilerplate: "Objection. Overly broad and unduly burdensome." (*see* Dkt. No. 31 at 2)); *Jones v. Am. River Transportation Co., LLC*, 2020 WL 7865326, at *2 (W.D. Tenn. June 17, 2020) (deeming the following objection boilerplate: "Objection. This Interrogatory is overly broad and may seek information which is protected, privileged, and not otherwise discoverable").

[29] Defendants further note that they fully fleshed out their objections during the meet and confers regarding, among other things: Plaintiff's definitions; the relevancy of Plaintiff's requests; the appropriate time period for discovery of certain issues; the production of source code, install images, and the build environment; the issue of third-party confidentiality; and the undue burden on Defendants of complying with Plaintiff's requests. Plaintiff cannot pretend that those conversations never happened simply because Plaintiff disagrees with Defendants' position.

- 23 -

basis in accordance with the Scheduling Order. Collecting and reviewing documents responsive to Plaintiffs' extensive discovery requests takes time. Defendants have participated in good faith in many meet and confer discussions in which Defendants have been the only parties willing to compromise. Meeting and conferring means nothing if Plaintiff is unwilling to compromise on a single request. Plaintiff's unreasonable request for immediate production should be denied.[30]

## I. Plaintiff's Request for Discovery Relating to Third Parties Should Be Denied. (Category No. 9)

Plaintiff demands that Brocade[31] substantively respond to its requests pertaining to third parties. Mot. at 26-27. Brocade objected to these requests on the grounds that, *inter alia*, it does not track the information sought and that responding to the requests would be burdensome in light of third-party confidentiality concerns and the fact that the relevance of the discovery sought is marginal at best. Plaintiff's motion misrepresents its requests by claiming that it "only seeks identification of Defendants' products containing Plaintiff's software that are sold to third parties and the identity of those third parties, but Brocade refused to revise its response." *Id.* at 27. First, Plaintiff does not "only seek[]" this information—its discovery requests related to third parties seek far more, including "all contracts or agreements between Brocade and all third parties to which Brocade has provided, sold, licensed, or transferred (i) any or all of the Products Identified

---

[30] Plaintiff insists in its motion that Defendants provide a date certain for their production. As indicated, Defendants are working on their next production to Plaintiffs and will continue to produce documents on a rolling basis. This is a customary practice of federal litigation and courts routinely approve of or order the rolling production of documents and ESI, especially in complex cases. *See, e.g.*, *Michigan Immigrant Rts. Ctr.*, 2021 WL 855468, at *2 (E.D. Mich. Mar. 8, 2021); *Nat'l Coal. of Ass'n of 7-Eleven Franchisees v. 7-Eleven, Inc.*, 2018 WL 6272919, at *2 (W.D. Tex. Feb. 13, 2018). Defendants have already produced the metadata for all past productions and will do so for future productions.

[31] Plaintiff also complains that "Broadcom"—under Plaintiff's overbroad definition—should be ordered to identify its products and sales to third parties. For the reasons set forth above, Defendants maintain that defining Broadcom to include over 150 entities, virtually none of which have anything to do with this litigation, is grossly overbroad, unduly burdensome, and not proportional to the needs of the case.

in response to Interrogatory numbers 1 or 2 or (ii) SNMP Research Software." Brocade Interrogatory No. 12 (Dkt. No. 116-6 at 10); *see also* Brocade RFP No. 12 (Dkt. No. 116-7 at 9). Second, Brocade has already identified third parties to which it sells its products and explained that, beyond those parties, it "does not track downstream sales by its customers to third-party sellers or resellers or sales by those third-party sellers or resellers to others." Dkt. No. 118-2 at 38. Plaintiff (somehow) believes that the fact that Brocade does not track who its resellers sell to is "irrelevan[t]" to Brocade's ability to respond to this request. Mot. at 26.

As to Brocade's agreements with third-parties, Brocade explained to Plaintiff that these agreements implicate third-party contractual confidentiality and privacy concerns such that producing them would impose an undue burden. Plessman Decl. ¶ 35. When pressed on why these agreements were relevant to their claims, Plaintiff stated that they may contain pricing terms. *Id*. But Brocade has already agreed to produce documents "sufficient to show Brocade's profits and losses for the products" containing the software at issue. Dkt. No. 116-11 at 84. Plaintiff could articulate no reason during the meet and confers as to why, despite this, it still needed all of Brocade's third-party agreements. Plessman Decl. ¶ 35. Defendants have agreed to provide information in response to many discovery requests that will more than adequately allow Plaintiff to calculate their alleged damages. Their requests for all third-party agreements and other requests implicating third-party confidentiality concerns, particularly as framed using their overbroad and vague definitions, should be denied.

## III.    CONCLUSION

Plaintiff's motion should be denied and Defendants' objections should be sustained.

Dated:  December 23, 2021                    HUESTON HENNIGAN LLP


                                            By:  ___/s/ Alison Plessman_____
                                                 Alison Plessman
                                                 Attorneys for Defendants
                                                 Broadcom, Inc.
                                                 Brocade Communications Systems LLC

5857416