# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., | § § § | Case No. 3:20-cv-00451 |
| **Plaintiffs,** | § § | |
| v. | § § | <u>Jury Demand</u> |
| BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; AND EXTREME NETWORKS, INC. | § § § § | ‑ |
| **Defendants.** | § § § | |

---

## PLAINTIFF SNMP RESEARCH, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY RESPONSES FROM DEFENDANTS BROADCOM INC. AND BROCADE COMMUNICATIONS SYSTEMS LLC

---

Plaintiff SNMP Research, Inc. ("Plaintiff" or "SNMP Research") respectfully submits this reply in support of its Motion to Compel Discovery Responses ("Motion" or "Mot."; Dkt. 115) and Memorandum ("Mem."; Dkt. 116), and in response to Defendants Broadcom Inc.'s ("Broadcom") and Brocade Communications Systems LLC's ("Brocade") Opposition ("Opp."; Dkt. 119).

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................1

II.     ARGUMENT ...............................................................................................1

    A.      Defendants' Refusal To Provide A Date Certain For Production Is
        Improper (Section II.H). ...................................................................1

    B.      Defendants' Objections Are Improper And Should Be Overruled Or
        Deemed Waived. ...............................................................................2

        1.      Defendants' "Undue Burden" And "Not Proportional"
                Objections Fail Because They Are Unsupported By Affidavits
                Or Evidence. ..........................................................................2

        2.      Defendants Improperly Fail To Identify Which Objections Are
                Leading To The Withholding Of Documents (Section II.C). ...................3

        3.      Defendants' Boilerplate Objections Should Be Deemed Waived
                (Headings II.A.3 and II.G). ....................................................5

    C.      Defendants' Relevancy Objections Are Meritless. ......................................7

        1.      Defendants Do Not Substantiate Their Relevancy Objections
                (Heading II. B). .....................................................................7

        2.      Defendants Improperly Attempt To Narrow The Governing
                Time Frame To Exclude A Year-And-A-Half Of Relevant
                Material (Heading II.D). .......................................................10

    D.      Defendants' Objections To Defined Terms And Ordinary English
        Language Are Improper. .................................................................12

        1.      Defendants' Objections To "SNMP Research Software" Are
                Meritless (Heading II.A.1). ...................................................12

        2.      Defendants' Objections To The Remaining Defined Terms Are
                Meritless (Heading II.A.2 and II.A.3). ......................................14

        3.      Defendants' Objections To Plain And Unambiguous Terms Are
                Meritless (Heading II.A.3). ...................................................17

    E.      Defendants' Continued Refusal To Produce Source Code Is Improper
        (Heading II.E). .............................................................................18

    F.      Defendants Should Be Ordered To Identify All Products Containing
        Plaintiff's Software And To Answer All Associated Document
        Requests As Propounded (Heading II. F). ...........................................22

    G.      Defendants Should Be Ordered To Substantively Respond To Requests
        Related To Third Parties (Heading II.I). .............................................24

H.     Defendants Should Be Ordered To Respond To Interrogatory No. 7 Seeking Identification Of People. .......................................................................25

I.      Defendants Should Be Ordered To Substantively Respond To Each Request Wherein They Simply Offered To "Meet And Confer" With Plaintiff. .......................................................................................................................25

III.     CONCLUSION...............................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abarca Health, LLC v. PharmPix Corp.*,
806 F. Supp. 2d 483 (D.P.R. 2011) ...................................................................20

*ACI Worldwide Corp. v. Mastercard Techs., LLC*,
No. 8:14CV31, 2016 WL 6462249 (D. Neb. Oct. 27, 2016) .................................21

*Ameranth, Inc. v. Pizza Hut, Inc.*,
No. 11CV1810 JLS NLS, 2013 WL 636936 (S.D. Cal. Feb. 20, 2013) ................21

*Bally v. First Nat'l Bank Omaha*,
No. CV 17-10632, 2018 WL 1558861 (E.D. Mich. Jan. 17, 2018).........................3

*U.S. ex rel. Baltazar v. Warden*,
No. 07 C 4107, 2013 WL 12446467 (N.D. Ill. Feb. 5, 2013).................................21

*Brocade Communications Systems, Inc. v. A10 Networks Inc.*,
Case No. 10-cv-03428-LHK (N.D. Cal. Apr. 27, 2011), Dkt. 139-1, Dkt. 248-
12...............................................................................................6, 16, 19, 20

*Fischer v. Forrest*,
No. 14-CIV-1304-PAE-AJP, 2017 WL 773694 (S.D.N.Y. Feb. 28, 2017) .............6

*Home Fed. Bank of Tenn. v. Home Fed. Bank Corp.*,
No. 3:18-CV-379-JRG-DCP, 2019 WL 11670621 (E.D. Tenn. Sept. 18, 2019) ...............3, 9

*Jones v. Am. River Transp. Co., LLC*,
No. 19-CV-2558-SHM-TMP, 2020 WL 7865326 (W.D. Tenn. June 17, 2020)...............5, 6

*Michigan Immigrant Rts. Ctr.*,
No. 16-14192, 2021 WL 855468 (E.D. Mich. Mar. 8, 2021) ...................................2

*Nat'l Coal. of Ass'n of 7-Eleven Franchisees v. 7-Eleven, Inc.*,
No. 5-18-CV-0064-DAE, 2018 WL 6272919 (W.D. Tex. Feb. 13, 2018)...............2

*Neale v. Coloplast Corp.*,
No. 118-CV-00274-TRM-SKL, 2020 WL 6948361 (E.D. Tenn. Nov. 2, 2020) ........... *passim*

*Siser N. Am., Inc. v. Herika G. Inc.*,
325 F.R.D. 200 (E.D. Mich. 2018) .......................................................................6

*Sobol v. Imprimis Pharms.*,
No. CV 16-14339, 2017 WL 5035837 (E.D. Mich. Oct. 26, 2017) ....................1, 6

*Strategic Mktg. & Rsch. Team, Inc. v. Auto Data Sols., Inc.*,
No. 2:15-CV-12695, 2017 WL 1196361 (E.D. Mich. Mar. 31, 2017) .......................................5

*Wesley Corp. v. Zoom T.V. Prod., LLC*,
No. 17-10021, 2018 WL 372700 (E.D. Mich. Jan. 11, 2018) ...................................................5

**Statutes**

17 U.S.C. § 504(b) ...........................................................................................................................9

**Rules**

Fed. R. Civ. P. 26(b)(2).....................................................................................................................7

Fed. R. Civ. P. 34 ..................................................................................................................1, 3, 4, 5

Fed. R. Civ. P. 34(b)(2)(B) ...............................................................................................................2

Fed. R. Civ. P. 34(b)(2)(C) ......................................................................................................3, 4, 5

**Other Authorities**

https://www.broadcom.com/support/fibre-channel-networking/...................................................16

# I. INTRODUCTION

Plaintiff served its discovery requests over a year ago, and this Court denied Defendants' request for a stay of discovery (Dkt. 75) six months ago. Yet Broadcom has still not produced <u>a single document</u> and Brocade has produced a grand total of 127 documents, the vast majority of which are public documents. Defendants offer a host of excuses, but they are meritless and do not justify Defendants' continued obstruction of discovery. For example, while Defendants have agreed to produce documents for 59 separate discovery requests, they have neither produced responsive materials nor provided a reasonable time period for making that production as Rule 34 requires. The Court should grant Plaintiff's Motion in its entirety according to the numbered list and categories set forth in the Motion, find Defendants' general objections are waived, and order fulsome, substantive responses and document production within two weeks of the Court's order or by a date certain.

# II. ARGUMENT

## A. Defendants' Refusal To Provide A Date Certain For Production Is Improper (Section II.H).[1]

In their October 4, 2021 supplemental responses, Defendants agreed to produce documents and information on a "rolling" basis for 59 of Plaintiff's requests. Three months have now passed since Defendants agreed to a rolling production, and Defendants still have not produced a single additional document. Moreover, Defendants' responses violate both Rule 34 and on-point authority holding that responses invoking a "rolling basis" production violate Rule 34 because they fail to "specify a reasonable time period within which [the defendant] would comply." *Sobol v. Imprimis Pharms.*, No. CV 16-14339, 2017 WL 5035837, at *4 (E.D. Mich. Oct. 26, 2017). Indeed, Rule 34 states that "production must [] be completed <u>no later than the time for inspection specified in the request or</u>

---

[1] Plaintiff has addressed each issue in the same order as the Memorandum except for B.1, which has been added to address the Opposition's unsupported assertions of undue burden. For ease of reference, the parentheses in the headings herein will identify the section(s) addressed in the Opposition.

another reasonable time specified in the response." Fed. R. Civ. P. 34(b)(2)(B) (emphasis added).

Defendants respond by relegating this issue to the end of their brief and ignoring this authority, instead

citing irrelevant authority.[2] Opp. at 23-24. For those 59 requests for which Defendants have agreed to

produce documents, the Court should order Defendants to produce within two weeks or a date certain.

The Court should also order production to be made in strict compliance with the parties' agreed upon

ESI Protocol (Dkt. 52-1), given that Plaintiff had to file the present Motion for Brocade to actually

provide the metadata required under the ESI Protocol (which it provided on the day the Opposition was

due).

> ### B. Defendants' Objections Are Improper And Should Be Overruled Or Deemed Waived.

Defendants' discovery responses violate several settled rules, and nothing in the Opposition

cures these core failings.

> ### 1. Defendants' "Undue Burden" And "Not Proportional" Objections Fail Because They Are Unsupported By Affidavits Or Evidence.

Since the Opposition is replete with assertions of "undue burden" and purported lack of

proportionality to the needs of the case, *see, e.g.*, Opp. at 7, 7 n.4, 12 n.12, 14, 14 n.16, 19, 19 n.23, 23

n.29, 24-25, 25 n.31, Plaintiff is addressing those assertions globally in this Section. The "burden falls

upon [the responding party] to establish the exact nature of such an undue burden in concrete,

meaningful terms." *Neale v. Coloplast Corp.*, No. 118-CV-00274-TRM-SKL, 2020 WL 6948361, at

*2 (E.D. Tenn. Nov. 2, 2020) (quotations omitted) (brackets in original). Accordingly, "[t]he mere

statement by a party that an interrogatory or request for production is overly broad, burdensome,

oppressive and irrelevant is not adequate to voice a successful objection," and the "responding party

---

[2] *See* Opp. at 24 n.30 (citing *Michigan Immigrant Rts. Ctr.*, No. 16-14192, 2021 WL 855468, at *2 (E.D. Mich. Mar. 8, 2021) (addressing motion for fees in a FOIA case); *Nat'l Coal. of Ass'n of 7-Eleven Franchisees v. 7-Eleven, Inc.*, No. 5-18-CV-0064-DAE, 2018 WL 6272919, at *2 (W.D. Tex. Feb. 13, 2018) (addressing a motion to transfer in a third-party subpoena proceeding)).

must show <u>specifically</u> how each discovery request is burdensome and oppressive <u>by submitting affidavits or offering evidence revealing the nature of the burden</u>." *Home Fed. Bank of Tenn. v. Home Fed. Bank Corp.*, No. 3:18-CV-379-JRG-DCP, 2019 WL 11670621, at *2 (E.D. Tenn. Sept. 18, 2019) (quotations omitted) (emphasis added). Having failed to do these things, all of Defendants' "undue burden" and "proportionality" objections fail.

For instance, while Defendants repeatedly invoke that Broadcom has over "150 entities" (Opp. at 3 n.2, 4-10, 14-15, 17, 20, 22, 24 n.31; Blum Decl. ¶ 2), Defendants never explain why they do not already know (or cannot easily ascertain) which of the 150 entities have the documents requested, much less do Defendants submit any sworn statement attesting to this. This is not only Defendants' obligation, it is a simple burden to meet if Defendants are able to so attest under oath. Instead, Defendants talismanically refer to their "150 affiliated entities" as if the sheer number establishes burden or proportionality. It does not, and if anything, it demonstrates that Defendants are in a far better position than Plaintiff to determine which of the supposed "150" Broadcom entities are housing information relevant to this litigation.

### 2. Defendants Improperly Fail To Identify Which Objections Are Leading To The Withholding Of Documents (Section II.C).

As previously noted, Rule 34 requires a responding party to identify whether any documents are being withheld on the basis of an objection. Fed. R. Civ. P. 34(b)(2)(C). Defendants assert that the rule is supposedly "only implicated where a party objects to a request and produces some documents responsive to the request" (and not here, since Defendants produce no documents for scores of the requests). Opp. at 13-14. However, the rule contains no carve-out for parties who refuse to produce any documents at all, and in fact the rule expressly requires that each "objection must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C); *see Bally v. First Nat'l Bank Omaha*, No. CV 17-10632, 2018 WL 1558861, at *1 (E.D. Mich. Jan. 17, 2018) (defendant "must be sanctioned because it relied upon numerous boilerplate objections to [the]

requests for production of documents without indicating whether it was withholding production of any documents.").[3] Indeed, if Defendants' argument were accepted, it would reward parties who <u>completely</u> shirk their discovery obligations (*i.e.*, by producing no documents at all), which is nonsensical. What's more, Defendants' responses are deficient even under their own flawed view of the rule. Specifically, as noted above, for several requests Defendants have agreed to produce documents (though Defendants won't specify when they will produce), and yet even for these requests Defendants still refuse to identify which of their dozens of objections (other than their time frame objection) will lead to the withholding of documents once the production occurs. Opp. at 13 & n.15.[4]

Defendants also invoke the advisory committee note to Rule 34 (Opp. at 13), but it actually undermines their position. That note provides that "[t]he producing party . . . <u>does need to alert other parties to the fact that documents have been withheld</u> and thereby facilitate an informed discussion of the objection. <u>An objection that states the limits that have controlled the search for responsive and relevant materials</u> qualifies as a statement that the materials have been 'withheld.'" Fed. R. Civ. P. 34(b)(2)(C) advisory committee's note to 2015 amendment (emphasis added). The dozens of objections Defendants indiscriminately incorporated into their responses do not state "the limits" controlling Defendants' searches for responsive and relevant materials on a request-by-request basis. Instead, Defendants provide a litany of objections and then state they will produce documents "subject

---

[3] Rule 34(b)(2)(C) contains two distinct requirements: "An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."

[4] For example, in its supplemental response to RFP 29 for "All Communications concerning actual or potential use of SNMP Research Software in Brocade Products," Brocade incorporated all of its "original objections" from its first response, all of its boilerplate "general" objections, and a multitude of additional objections, totaling dozens of objections. Brocade then responded that it would produce communications created after July 25, 2019, but only "subject to and without waiving these objections," Exs. J-K ("Brocade Supp. Resp. to RFP") No. 29, rendering entirely unclear which of its dozens of objections may lead to the withholding of responsive documents. The same deficiency can be found in Brocade's responses to RFP Nos. 1-6, 9, 14, 22, 29-31, 36-40, 43-46, 49-50, 52, 54, 59-65, 68, 86-87, 89, and Broadcom's responses to RFP Nos. 33, 41-42, 51, 90, 92, 94, 96.

to and without waiving these objections," without describing which objections are actually defining Defendants' scope of production (or lack thereof). This is precisely what Rule 34 proscribes, as supported by the case law interpreting it. *See, e.g.*, *Wesley Corp. v. Zoom T.V. Prod., LLC*, No. 17-10021, 2018 WL 372700, at *4 (E.D. Mich. Jan. 11, 2018) ("[A]n objection must state whether any responsive materials are being withheld on the basis of that objection.").

Defendants also argue that they cannot identify which objections are leading to the withholding of documents because that would be "unduly burdensome" and "not proportional to the needs of the case." Opp. at 14. But Defendants never explain why they cannot simply answer whether a particular objection (*e.g.*, their "constitutional right to privacy" general objection) is leading to the withholding of documents responsive to any given request. Indeed, if Defendants did not know the answer to that question, then Defendants should never have raised the objection in the first place. *See Jones v. Am. River Transp. Co., LLC*, No. 19-CV-2558-SHM-TMP, 2020 WL 7865326, at *2 (W.D. Tenn. June 17, 2020) ("[B]oilerplate objections and responses [] violate Rule 34(b)(2)(C)'s requirement to indicate whether any responsive materials are being withheld on the basis of an objection.") (quotation marks omitted). Objections are not supposed to be blanket placeholders. *See Strategic Mktg. & Rsch. Team, Inc. v. Auto Data Sols., Inc.*, No. 2:15-CV-12695, 2017 WL 1196361, at *2 (E.D. Mich. Mar. 31, 2017) ("Boilerplate or generalized objections are tantamount to no objection at all and will not be considered by the Court."). In any event, as demonstrated above, Defendants' claims of "undue burden" and lack of proportionality have no effect as Defendants failed to provide appropriate support, as is required, backing their conclusory assertions. *See, supra*, § II.B.1.

### 3. Defendants' Boilerplate Objections Should Be Deemed Waived (Headings II.A.3 and II.G).

Defendants do not dispute case law within the Sixth Circuit expressly holding that boilerplate objections are waived. Instead, Defendants suggest that their objections are not boilerplate. Opp. at 22-23. Yet, Defendants do not attempt to defend even a single one of the examples set forth in Plaintiff's

Memorandum.  *Compare* Mem. at 6-7 *with* Opp. at 22-23.  Indeed, Plaintiff cited on-point cases that found nearly <u>identical</u> language constituted improper boilerplate.  *See* Mem. at 6-7 (citing *Jones*, 2020 WL 7865326, at *2-3 (objection stating "[t]his Request for Production is overly broad and may seek documents which are protected, privileged, and not otherwise discoverable" was "legally meaningless" and waived); *Sobol*, 2017 WL 5035837, at *4 (objection "that [the requests] are overly broad, burdensome, and oppressive" was waived).  Nor do Defendants explain how their objections that apply "to the extent" a request implicates them[5] could be anything but boilerplate.  *See, e.g.*, *Fischer v. Forrest*, No. 14-CIV-1304-PAE-AJP, 2017 WL 773694, at *2-3 (S.D.N.Y. Feb. 28, 2017) (objections "to the extent that [requests are] overly broad and unduly burdensome" were "meaningless boilerplate" because they did not explain "how" or "why" the requests were overbroad or burdensome).

Finding no support in the case law, the Opposition protests that because Plaintiff's requests sometimes ask for "All Documents Relating to" certain categories of information, they must be unduly burdensome.  *See* Opp. at 10-11; *id.* at 10 n.10.  However, Defendants again do not substantiate their assertions of burden with actual evidence or a declaration, so they are meaningless.  *See, supra*, § II.B.1.  Nor do Defendants address Plaintiff's authority within the Sixth Circuit that compelled "all documents relating to [defendants'] sale of products advertised or sold with plaintiffs' trademarks." *Siser N. Am., Inc. v. Herika G. Inc.,* 325 F.R.D. 200, 211 (E.D. Mich. 2018).  Also, Defendants relegate to a footnote the fact that <u>Defendants' own written discovery in this case</u>[6] uses the same "relating to" language that Defendants' proffer as a basis for refusing to respond to Plaintiff's discovery.  *See* Opp. at 11 n.11.  Defendants' only response to this is that they contend that their use of "relating to" is

---

[5] *See* Brocade Supp. Resp. to RFP General Objection Nos. 6-15, 17-20, 30; Ex. I ("Brocade Supp. Resp. to Interrogatory") General Objection Nos. 5-12, 14-17, 27; Exs. M-N ("Broadcom Supp. Resp. to RFP") General Objection Nos. 6-15, 17-20, 30; Ex. L ("Broadcom Supp. Resp. to Interrogatory") General Objection Nos. 6-12, 14-18, 28.  Unless otherwise noted, all references to "Ex. __" herein shall be to the exhibits to Dkt. 116-1 ("Weber Decl.").

[6] And in other cases as well:  *see Brocade Commc'n Sys., Inc. v. A10 Networks Inc.*, Case No. 10-cv-03428-LHK (N.D. Cal.), Dkt. 139-1 at 6, Dkt. 248-12.

justified because it is tied to specific categories of information (*id.*), but that is true of Plaintiff's discovery as well. *See, e.g.*, Ex. F ("Brocade RFP") Nos. 4, 6, 9, 12-13, 18-21, 36-37, 51, 62, 74-84.

Finally, Defendants assert that they were willing to "compromise" by producing certain documents for certain requests. Opp. at 11. However, Defendants omit the fact that they refused to provide any description of the scope of documents they were neither searching nor producing—leaving them as the sole arbiter of what they would eventually produce. The rules do not grant Defendants such unitary power. *See* Fed. R. Civ. P. 26(b)(2) advisory committee's note to 2006 amendment ("The responding party must also identify, by category or type, the sources containing potentially responsive information that it is neither searching nor producing. The identification should, to the extent possible, provide enough detail to enable the requesting party to evaluate the burdens and costs of providing the discovery and the likelihood of finding responsive information on the identified sources.").

## C. Defendants' Relevancy Objections Are Meritless.

### 1. Defendants Do Not Substantiate Their Relevancy Objections (Heading II. B).

Defendants do not dispute the extremely broad standard for relevancy in discovery, specifically, that "[r]elevance has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Neale*, 2020 WL 6948361, at *2. Nor do Defendants dispute that if requests even "appear[] to be relevant" under this standard, then it is Defendants' burden to show lack of relevance. *Id.* at *2-*3 (emphasis added). In its Memorandum, Plaintiff did not simply rest on the broad standard for relevancy. Instead, Plaintiff grouped its requests to Broadcom[7] into categories and demonstrated the relevancy of each category. *See* Mem. at 9-10; *id.* at 9 n.13. Defendants' Opposition does not dispute the relevance of any of these categories. Instead, the sum total of Defendants' purported showing as to

---

[7] For ease of reference, the Broadcom requests correspond to the Brocade requests as shown in the chart located at Dkt. 60-27.

irrelevancy—an objection Defendants invoked approximately 228 times (and to all but four discovery requests)—is just two "examples." Opp. at 12-13. The "examples" both fail, and even assuming they had any validity, would only mean Defendants had shown lack of relevance for part (not even all) of those two discovery requests.[8]

Defendants argue that RFP No. 32 ("All Communications concerning SNMP Research or the SNMP Research Software") is "irrelevant" because Brocade and Plaintiff have "conducted business together for years" and Plaintiff has provided "no explanation why *every* communication concerning SNMP Research is relevant to its claims or likely to lead to discoverable information." Opp. at 12 (emphasis in original). Defendants ignore that RFP No. 32 is expressly limited to the time period January 1, 2017 (just prior to Brocade's breach; *see* Dkt. 1 ("Cmplt.") ¶¶ 42-50) to the present. Thus, Defendants' statement that the request seeks "*every* communication concerning SNMP Research" is a red herring; in fact, Plaintiff only seeks communications from the year of the breach to the present, an undeniably relevant time period and scope. If there were categories of communications Defendants felt should be excluded because they are not relevant within the broad discovery standard, then Defendants could and should have demonstrated that in their Opposition. Ironically, while complaining about the alleged overbreadth of RFP No. 32, Defendants have asked Plaintiff for all communications between

---

[8] In addition to these two examples, Defendants contend (without explanation) that Plaintiff cannot show why information supposedly requested from one of Broadcom Inc.'s affiliates, Computer Associates de Venezuela, is relevant, Opp. at 12, implying that information as to that entity is wholesale irrelevant because it was not a party to the contract that Brocade breached. As an initial matter, Plaintiff was unaware of the existence of "Computer Associates de Venezuela" until the date of Defendants' Opposition, which results from Defendants' inexplicable refusal to provide their organizational and corporate structure charts. Moreover, the mere fact that a Broadcom "affiliate" did not breach the contract between Brocade and Plaintiff SNMP Research International, Inc. does not make that affiliate "irrelevant." For instance, when Defendants attempted to negotiate a license for their unauthorized use of Plaintiff's software, they did not simply list "Brocade" and "Broadcom" in the license, they included "affiliates" Avago Technologies International Sales Pte. Limited and Avago Technologies U.S. Inc. as licensees. Ex. B. at 5. Therefore, there is no telling which entities Defendants ultimately used to further their breaches and infringement. Consequently, discovery into all of Defendants' "affiliates" is more than justified, and if there were any true burden in responding, then Defendants could and would have put in competent evidence proving the burden (they did not).

Plaintiff and "Brocade, Broadcom, and/or any Broadcom affiliate" for the exact same time period.[9]

Defendants argue that RFP No. 46 ("All financial Documents Relating to Brocades'[] profits and losses from October 1, 2017 continuing to the present.") is irrelevant because Plaintiff did not terminate Brocade's license rights until 2019. However, the fact that Plaintiff attempted to work out a resolution after Brocade's 2017 breach but prior to termination does not preclude it from seeking damages from the date of breach. Nor is the scope of Plaintiff's damages claim something that should be decided at the discovery stage. Even if some portion of Plaintiff's damages claim ultimately is determined by the trier of fact to be limited to 2019 and later, historical evidence as to profitability, expenses, and revenues would still be relevant (at least for discovery purposes) to assess Defendants' positions on how to properly apportion profits from 2019 onward. *See, e.g.*, Mem. 11-12. For instance, Defendants will undoubtedly attempt to include as many expenses as possible in the relevant damage calculation in order to reduce the profits attributable to infringement; and Plaintiff has the right to test those assertions against Defendants' historical figures, practices, and admissions. *See, e.g.*, *Home Fed. Bank of Tenn.*, 2019 WL 11670621 at *1 (compelling "Defendants' historical revenues, expenses, and gross and net yearly profits since the alleged infringing marks have been used by Defendant" so that Plaintiff would have a "complete picture of Defendant's financial information."); *see also* 17 U.S.C. § 504(b) ("In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses[.]").[10] Plaintiff should be permitted to review this information and compare it to

---

[9] Ex. P at 33 ("All Documents and Communications reflecting, discussing, concerning, or constituting Communications, negotiations, and/or discussions Between You and/or SNMP International, on the one hand, and Brocade, Broadcom, and/or any Broadcom affiliate, on the other hand, after January 1, 2017).

[10] The Memorandum also explains that Plaintiff is entitled to seek product-related revenues and costs information that Defendants calculated and/or provided to governmental antitrust entities in connection with the 2017 merger and divestiture, which includes representations about Brocade's historical research and development costs and expenses that are relevant to disgorgement of profits, including but

Defendants' profitability positions taken in this litigation.

        **2.**       **Defendants Improperly Attempt To Narrow The Governing Time Frame To Exclude A Year-And-A-Half Of Relevant Material (Heading II.D).**

The time frame governing Plaintiff's discovery requests is "from January 1, 2017 to the present" unless otherwise indicated. *See, e.g.*, Ex. C ("Broadcom Interrogatories") at 5. Defendants employ this very same time frame in multiple of their own discovery requests; <u>and for the remainder of their discovery requests, Defendants employ no time limitation at all</u>. Weber Decl. ¶ 19 & Ex. P at 7. Moreover, none of the Defendants' discovery requests in this case (Extreme included) employ the time frame that Defendants are trying to impose on Plaintiffs, namely from July 25, 2019 to the date the lawsuit was filed. Under these circumstances, it should be readily apparent that Defendants' attempt to apply a shorter time frame solely for their own discovery responses should be rejected.

As a threshold matter, Defendants' Opposition now makes clear that Defendants' objection as to the time frame of Plaintiff's requests is limited to just nineteen[11] requests. Opp. at 19.[12] Given this concession, this Reply will only address those requests. *See* Brocade Supp. Resp. to Interrogatory Nos. 1, 5-6, 8-9; Brocade Supp. Resp. to RFP Nos. 22, 29-31, 36-38, 43-44, 46, 49; Broadcom Supp. Resp. to RFP No. 33.

Defendants first attack Plaintiff's requests involving "Products" and "Partner Products," claiming the requests span "eternity." Opp. at 14-15. Actually, the scope of these requests is the period just prior to the date of the breach to the present. *See, e.g.*, Ex. E ("Brocade Interrogatory") at 5 & No. 1. In addition, Plaintiff drafted the requests to capture all Products that contained Plaintiff's software

---

not limited to the veracity of any attempt by Defendants to mischaracterize the nature of the profitability of the business. *See* Mem. at 12.

[11] By Plaintiff's count, Defendants' objection applies to actually only seventeen requests.

[12] As explained in the Memorandum, nearly all of Defendants' supplemental objections include an express objection to the purported "unlimited" or "overbroad" time period. Mem. at 11 n.15; *see also* Weber Decl. ¶ 18. Given Defendants' refusal to identify which objections are leading to the withholding of documents, there was no way for Plaintiff to know Defendants' true position until they finally revealed it in their Opposition.

"at any time" during that time frame so that Defendants could not avoid identifying Products that are not currently sold but were sold sometime within that time frame.

As to the requests for which Defendants expressly state they would provide information only for the period after July 25, 2019, Defendants object that communications concerning Brocade and its use of Plaintiff's software prior to the date Plaintiff SNMP Research International ("SNMP International") terminated Brocade's distribution rights (July 25, 2019) are irrelevant. *See* Brocade Supp. Resp. to Interrogatory No. 8; Brocade Supp. Resp. to RFP Nos. 29-31; Broadcom Supp. Resp. to RFP No. 33. This makes no sense. Communications leading up to and after the breach (but before Plaintiff finally terminated after giving Brocade plenty of time and opportunity to cure) certainly "bear[] on" or "reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Neale*, 2020 WL 6948361, at *2. For instance, on September 13, 2017, Brocade's predecessor and Extreme wrote to SNMP International seeking consent to "split" the License Agreement between Extreme and Brocade's predecessor and to assign the Agreement to Broadcom entities. Mem. at 11. SNMP International refused this consent, but Brocade breached the contract anyway, and Extreme began engaging in copyright infringement in 2017. Plaintiff is certainly entitled to investigate what led to Extreme's and Brocade's request, why the denial of the request was ignored, and the scope of any unauthorized transfer or use of Plaintiff's software, including Broadcom's involvement in it (via whichever entity Broadcom chose to use in that involvement), which would extend Plaintiff's infringement claims against Broadcom to 2017. Discovery into these issues is particularly important because they bear directly upon all Defendants' knowledge of the License Agreement and use of Plaintiff's software leading up to the 2017 merger and divestiture, and accordingly, the willfulness of Defendants' subsequent infringement as a result of the unauthorized transfers of Plaintiff's software.

Defendants also contend that product, cost, and revenue information, as well as the identity of

Defendants' partners and customers, only become relevant on the precise date that Plaintiff terminated Brocade's distribution rights (and somehow become irrelevant after the date the Complaint is filed, despite the fact that the breaches and copyright infringement are believed to continue to this day). Opp. at 15-16; *see* also Brocade Rog 1, 5-6, 9; Brocade RFP 22, 36-38, 43-44, 46, 49. However, Defendants offer no support for the idea that Brocade can breach its contract with impunity simply because its distribution rights were not terminated right away. Nor do Defendants take into consideration that the historical profitability of this line of products could be relevant to Defendants' attempt to apportion their profits (which it is their burden to do). *See, supra*, § II.C.1. Defendants further ignore that Plaintiff also has claims in this case against Extreme, who started infringing in 2017 (right after Brocade's breach), including with respect to the same or similar products that Brocade had sold in the past, thus making historical sales/revenues/expense/profit figures for those products undeniably relevant (at least for discovery purposes) to this action.

### D. Defendants' Objections To Defined Terms And Ordinary English Language Are Improper.

#### 1. Defendants' Objections To "SNMP Research Software" Are Meritless (Heading II.A.1).

Plaintiff's definition of "SNMP Research Software"—defined to include software provided or licensed by Plaintiffs to Brocade, and any software created by Plaintiffs that is or was in the possession of Brocade and/or Broadcom—is simple and straightforward. Defendants attempt to manufacture problems with that definition. Opp. at 4-6. However, their arguments all fail, and most of them contradict Defendants' own use of definitions in their propounded discovery.

Defendants argue that the defined term "SNMP Research Software" is too broad because it includes the defined term "Broadcom," which according to Defendants encompasses "150 entities." Opp. at 4. However, Defendants are in a unique position to know which of Broadcom Inc.'s "150 entities" is exploiting, has exploited, or has had anything to do with Plaintiff's software. Given that

Defendants themselves asked for permission to share Plaintiff's software with unidentified affiliates of Broadcom—a request that SNMP International rejected—Defendants' protests over responding on behalf of Broadcom affiliates ring hollow. *See* Ex. A at 2. This is particularly true given that Defendants appear to treat "Brocade" and the generic term "Broadcom" almost interchangeably in public material. *See* Supplemental Declaration of Olivia Weber In Support Of Plaintiff's Motion to Compel ("Weber Supp. Decl.") ¶ 3.

Defendants also argue that the definition of "SNMP Software" is too broad and vague because it includes the named Plaintiffs, their "predecessors, divisions and subsidiaries," and "the officers, directors, employees, agents, attorneys, accountants, and representatives of each of the foregoing, including all other Persons acting or purporting to act on behalf of one or more of them." Brocade RFPs at 1-2. Yet, in its November 23 discovery requests to both Plaintiffs, Brocade itself defined "SNMP Research" and "SNMP Research International" to include their "employees, agents, officers, directors, and anyone acting on SNMP Research, Inc.'s behalf," and it defined "Brocade" and "Broadcom" to include all of these same individuals and agents, plus Brocade's and Broadcom's predecessors. Ex. P at 2. This amply demonstrates that Plaintiff's definition of "SNMP Research" is both a reasonable approach and a customary one in complex civil litigation such as this. In any event, if Defendants truly were confused about whether a particular entity or person was encompassed within the defined term, they could and should have raised it expressly by now and instead of flatly refusing to respond to scores of discovery requests on this basis.

Finally, Defendants argue that "Plaintiff could easily limit its definition of 'SNMP Research Software' to encompass only the software (i) listed in Table 1 of the Complaint or (ii) provided to Brocade under the License Agreement." Opp. at 5. With respect to the software listed in Table 1, as the Memorandum explained (Mem. at 14) and as repeatedly discussed in prior briefing (*e.g.*, Dkt. 96-1 at 14) and during the parties' meet and confer calls, Plaintiff's definition of "SNMP Research

Software" already refers to software encompassed by the copyrighted works in Table 1 of the Complaint.[13] As for Defendants' assertion that Plaintiff could "easily limit" the definition of "SNMP Research Software" to "the software provided to Brocade under the License Agreement" (Opp. at 5), Defendants' proposal would allow Defendants to use any of their own minor changes of the software provided to Brocade under the License Agreement as a basis to avoid providing responsive information and admissions. For these reasons Plaintiff settled on a definition of "SNMP Research Software" that reasonably encompasses software Plaintiffs provided to Defendants or that Plaintiffs created and is in Defendants' possession, so that Defendants cannot simply avoid relevant, discoverable information and material using semantics, which their behavior thus far has demonstrated they can and will do if permitted.

Defendants' attempts to narrow "SNMP Research Software" by removing from the definition "any software created by Plaintiffs that is or was in the possession of Brocade and/or Broadcom" reveals their desire to avoid discovery into the true extent of their infringement. *See* Opp. at 3-5. The allegations in the Complaint were based on Defendants' pre-lawsuit admissions of the products that needed a license to Plaintiff's software, but discovery cannot be limited to just what a defendant admits is infringing or in breach. The fact that, here, Plaintiff went above and beyond referring nebulously to "products" in the Complaint should not and cannot be used as a barrier into discovery of other infringing uses of "SNMP Research Software" to which Defendants have not yet admitted. Defendants call this "fishing for other claims" (Opp. at 3-5); actually, it is discovery into the full scope of infringement of, and breach of contract as to, the copyrighted works identified in the Complaint.

### 2. Defendants' Objections To The Remaining Defined Terms Are Meritless

---

[13] If Defendants are instead proposing that "SNMP Research Software" should be defined literally as "the software listed in Table 1 of the Complaint," that definition would be unworkable and circular because it would allow Defendants to insist on first conducting an infringement analysis of the source code listed in Table 1 before having to produce any of their own product source code.

**(Heading II.A.2 and II.A.3).**

The Memorandum explained why the Court should overrule Defendants' objections to the other defined terms at issue in this Motion, and the Opposition's counter-arguments all fail.

"**Partner Products**": The Memorandum demonstrated, and the Opposition never disputes, that the parties have already agreed to a preliminary compromise as to the meaning of "Partner Products." *See* Mem. at 15-16. Defendants should be held to this agreement.

"**Relating to**" **and** "**Identify**": The Opposition admits that Defendants use "similar" (Defendants' word) defined terms in their own written discovery propounded on Plaintiffs. Opp. at 11 n.11. Actually, Defendants use identical defined terms, word-for word. *See* Mem. at 16. That should end the dispute over these definitions. *Id.* While Defendants claim in a footnote (Opp. at 11 n. 11) that they employ these defined terms in a manner that justifies their use of them while they refuse to respond to them, that footnote provides no evidence or even a single example in support of Defendants' bald assertion.

"**Product**": In another footnote, Defendants claim the defined term "Product" is overbroad, Opp. at 8 n.7 (previously, it was also supposedly unduly burdensome, vague, ambiguous, and not proportional to the needs of the case; *see, e.g.*, Brocade Supp. Resp. to RFPs at 9-10). However, Defendants provide no proper support of this assertion, so it fails. *See supra* § II.B.1. Moreover, Plaintiff demonstrated that this definition is used along with other terms that limit its breadth (Mem. at 16) and the Opposition fails to contest this point. Put simply, any of Defendants' products of any kind that contain Plaintiff's software are and should be subject to discovery. While Defendants' would like to limit the universe of products to only those for which Plaintiff has concrete admissions from Defendants (*i.e.*, those in Paragraphs 49 and 64 of the Complaint), discovery is not limited to just what a defendant has admitted in writing prior to litigation. Mem. at 22.

"**Broadcom**," "**Brocade**," **and** "**SNMP Research**": As demonstrated, *supra*, § II.D.1, the

scope of the defined terms that Defendants complain about matches (or at least nearly matches) the

scope of the same defined terms in the discovery that Defendants have propounded in this case, as well

as in other cases they have brought asserting copyright infringement. *See, e.g.*, *Brocade*

*Communications Systems, Inc. v. A10 Networks Inc.*, Case No. 10-cv-03428-LHK (N.D. Cal.), Dkt.

248-12 at 2 (Brocade defined the defendant entity to include "directors, officers, parents, subsidiaries,

predecessors, successors, assigns, agents, servants, employees, investigators, attorneys, and all other

persons and entities representing it or acting on its behalf"); *see also* Ex. P. at 2. This is because such

scope is customary in complex civil litigation where it is necessary to encompass the wide range of

ways in which information is communicated among companies doing business with each other.

Defendants profess particular umbrage at the use of the word "affiliate" (as it supposedly implicates

"150 entities"), claiming that it renders it "impossible . . . to reach a reasonable agreement about which

entities discovery actually applies to." Opp. at 6 n.3. Yet Plaintiff was able to agree on a definition of

"affiliate" with Extreme. *See* Dkt. 111 at 5-6. Brocade was not at all confused by the word "affiliate"

when it wrote a letter asking SNMP International to consent to assignment of the License Agreement

between "Brocade Communications Systems, Inc. and/or Brocade's **affiliates** . . . and SNMP Research

International, Inc. and/or its **affiliates**." Ex. A (emphasis added). Thus, it appears that Plaintiff is only

unable to resolve the "affiliates" issue with Defendants because Defendants seek to force Plaintiff to

guess which of Broadcom's and Brocade's "150" affiliated entities had a role in the breaches and

infringements that lie at the center of this case.[14] It is unreasonable to require Plaintiff to guess where

---

[14] Broadcom's publicly-available reference manual relating to the operation of simple network management protocol (SNMP) in products identified in the Complaint acknowledges that "Broadcom" provided support for those Brocade products—never identifying the precise Broadcom affiliate doing so. Weber Supp. Decl. Ex. A ("For product support information and the latest information on contacting the Technical Assistance Center, go to https://www.broadcom.com/support/fibre-channel-networking/. **If you have purchased Brocade® product support directly from Broadcom**, use one of the following methods to contact the Technical Assistance Center 24x7.") (emphasis added). In addition, the December 18, 2020 manual states that "[t]he term 'Broadcom' refers to Broadcom Inc. and/or its subsidiaries," again, not identifying which subsidiaries.

discoverable information lies; Defendants know or can reasonably ascertain the answer and should be compelled to respond to the discovery requests accordingly, particularly where they have made no effort to substantiate their assertion that the entity definitions render requests overbroad. *See* Opp. at 7; *id.* at 7 n.4.

Having no viable argument to support their attack on the above-defined terms, Defendants proclaim that Plaintiff "could ask Brocade what other parties (Broadcom or otherwise, corporate or otherwise) were involved in a given event or transaction." Opp. at 8. That is just what Plaintiff asked in Interrogatory 15: "Describe Broadcom's involvement in the transfer (by disclosure, license, sale or otherwise) of SNMP Research Software that was/is in the possession of Brocade to Extreme." While Defendants could and should have responded by identifying the Broadcom entities involved in the transfer of Plaintiff's software from Brocade to Extreme, Broadcom instead construed "Broadcom to mean only the specific entity named as a defendant in this action, Broadcom Inc.," and then called the Interrogatory "nonsensical." Broadcom Supp. Resp. to Interrogatory No. 15. This amply demonstrates that the issue here is not vagueness or undue burden, it is a Defendants' desire to avoid giving straightforward responses to straightforward requests and to delay providing such responses as long as possible.

### 3. Defendants' Objections To Plain And Unambiguous Terms Are Meritless (Heading II.A.3).

Because discovery is not a game of semantics, *Neale*, 2020 WL 6948361, at *4, Defendants can and should consult a dictionary for plain English terms, their own SEC filings for publicly-defined terms, and their software engineers for commonly-understood software terms (Mem. at 14-15). Defendants' only response to this suggestion is that they purportedly do not understand what these terms mean "in the context in which they are used." Opp. at 9. But Defendants fail to demonstrate

why that is supposedly the case.[15]  Moreover, the Memorandum demonstrated that Defendants

expressly agreed in a meet and confer call that they would communicate with Plaintiffs regarding any

terms Defendants felt needed further clarification prior to serving Defendants' supplemental responses.

Mem. at 15; Dkt. 96-12 at 1.  Yet Defendants never contacted Plaintiff to seek clarification as to any of

the terms they now object to (in "context" or otherwise).  While Defendants' Opposition ignores this

point, it speaks volumes regarding the genuineness of Defendants' protestations that they don't

understand common English terms, their own SEC-agreement defined terms, and terms that any of

Defendants' many software engineers would readily understand.

### E.     Defendants' Continued Refusal To Produce Source Code Is Improper (Heading II.E).

It has been over six months since the Court issued its order denying Defendants' requested

discovery stay and over one year since Plaintiff propounded its requests for production of source code

and Defendants have still not produced a single line of source code in this case, despite the fact that all

parties have jointly represented to the Court that the case would require evaluation of thousands of lines

of computer code that would be a "time consuming and tedious task."  Dkt. 46 at 4.  None of

Defendants' proffered arguments justify this delay.

Defendants decry the supposedly "massive scope" of the requests because they include install

images and build environments.  Opp. at 16-17.  But this scope is a necessary consequence of

---

[15] For example, Defendants claim Brocade RFP No. 55 is confusing because it seeks documents relating to Broadcom Inc.'s "sharing, either directly or indirectly, in the revenues, profits, or losses from the transfer" of Plaintiff's software from Brocade to Extreme.  Opp. at 9.  Defendants claim that it is unclear what is meant by direct or indirect sharing.  *Id.*  However, during the parties' November 12, 2021 meet and confer call, Plaintiff's counsel, John Wood, addressed this very issue and explained that this request goes to whether Broadcom Inc. shared at all in the proceeds from the sale/divestiture of Brocade's Data Center Division to Extreme.  Weber Supp. Decl. ¶ 2.  In light of this explanation, Broadcom and Brocade promised on the call to amend their responses to state that there are no agreements between Broadcom Inc. and Brocade to share in profits from the divestiture other than the general parent-subsidiary relationship.  Weber Supp. Decl. ¶ 2.  Plaintiff summarized this correspondence in an email to Defendants, Dkt. 116-16 at 1, which Defendants never disputed.  Now, Defendants are just pretending none of this ever happened.  *See* Opp. at 9.

Defendants' refusal to provide a simple representation. As Plaintiff has repeatedly offered to all Defendants, if Defendants will agree to represent that Plaintiff's software was actually <u>shipped</u> in Defendants' products, then there will be no need for discovery into install images and build environments to confirm that fact. *See also* Dkt. 116-16 at 1. If Defendants want to preserve the argument that the products <u>as shipped</u> did not include the software, then the discovery is undeniably appropriate and necessary. The Opposition ignores Plaintiff's offer.

Defendants also pretend that Plaintiff is seeking production of all source code for all products of all Broadcom entities. *See, e.g.*, Opp. at 17. In fact, Plaintiff seeks only the source code for products containing Plaintiff's software (which include, but are not limited to, the products identified in Paragraphs 49 and 64 of the Complaint). Mem. at 19; *see* Brocade Supp. Resp. to RFP Nos. 25-28, 53; Ex. D ("Broadcom RFP") Nos. 27-30, 50. That is hardly a surprising or overbroad request in a breach of contract and copyright infringement case.

Defendants also complain that Plaintiff requests "the *entire* source code," instead of "just the source code for the incorporated SNMP Research Software." Opp. at 17 (emphasis in original). If this were not the case, Defendants could selectively pick and choose the source code they unilaterally characterize as having "incorporated SNMP Research Software." *Id.* In other words, the accused infringer could decide what code to produce based on its own internal infringement analysis. Plaintiff is not required to accept Defendants' statement as to the scope of their infringement. Indeed, Brocade's own position in a copyright case it brought demonstrates why Defendants' flatly contrary position here is meritless. Moreover, Defendants do not even attempt to substantiate the alleged burden involved in producing the source code for an entire product, because producing the entire source code for a product should be easier than producing only select pieces of the source code. Instead, Defendants continually repeat the phrase "entire source code" as though this somehow implicitly describes a burden.

In *Brocade Communications Systems, Inc. v. A10 Networks Inc.*, Brocade sued A10 Networks

for copyright infringement.  Brocade then sought production of "all" versions of the source code for the alleged infringing products.  *See Brocade Commc'ns Sys.*, No. 10-CV-03428-LHK, (N.D. Cal. Apr. 27, 2011), Dkt. 83 at 8.; *see also* Dkt. 86 at 44-45 ("What [Brocade is] saying is that . . . We've got this huge copyright claim, so you, [defendant], give us every single piece of code from every single product").  When the defendant attempted to selectively produce portions of the source code in its products—which is precisely what Defendants are advocating for here—Brocade objected.  Brocade argued that "it's important we get a complete copy of the code they have implemented" and that Brocade could not limit its request because it could not "easily segregate, without even knowing . . . which functions [the code] perform[s]."  *Id.*, Dkt. 86 at 50-51 (emphasis added).  The district court agreed with Brocade and ordered production of all of the defendant's full source code in the allegedly infringing products, ruling that "I've never heard that the defendant gets to pick and choose what files of the source code they want to produce because based on their own opinion they feel like these particular files are the only ones that are relevant to the plaintiff's patent or copyright case."  *Id.*, Dkt. 86 at 51 (emphasis added).  The same logic applies here.

Defendants ignore their prior admissions and rely instead on irrelevant authority from the District of Puerto Rico.  Opp. at 17-18 (citing *Abarca Health, LLC v. PharmPix Corp.*, 806 F. Supp. 2d 483, 488 (D.P.R. 2011)).  In *Abarca*, the "plaintiff's own pleadings demonstrate that not all of [the plaintiff's program] is copyrightable original expression," *id.* at 491-92, and the court observed that the similarities between the plaintiff's program and defendants' program "derive from a third-party program which both plaintiff[] and defendants allegedly use[.]"  *Id.* at 492.  Based on these findings, the court denied the plaintiff's request for source code production.  *Id.* at 492-93.  Here, by contrast, Plaintiff owns its software, has identified, by name and number, the copyrighted works at issue *(see* Cmplt. ¶ 33), and has alleged detailed facts showing that Brocade unlawfully transferred this copyrighted code to Extreme and that Brocade reproduced and publicly distributed this copyrighted

20

software without license to do so. Dkt. 1 ¶¶ 33, 41-50, 63.[16]  Moreover, as noted above, all parties have represented to the Court that "source code review [] will be required" and that this review will be a "time consuming and tedious task of evaluating thousands of lines of computer code." Dkt. 46 at 4.

Defendants also argue "that the software at issue in this case has not been registered with the Copyright Office," citing their own counsel's misrepresentation of what supposedly was orally stated on a meet and confer call. Opp. at 18.[17]  But Defendants' misrepresentations as to oral statements never made do not define the scope of discovery; the Complaint does.  The Complaint correctly and clearly alleges that "SNMP Research has registered the copyrights for the software at issue in this case (collectively, "Copyrights") set forth in Table 1." Cmplt. ¶ 33. These copyrights reflect the entirety of SNMP Research's copyrighted source code, of which a subset was provided to Brocade.  Defendants' misrepresentations about purported admissions to the contrary are not only false, they are irrelevant to this motion.  A defendant obviously cannot avoid discovery by arguing the merits of the complaint's allegations; otherwise, defendants would never provide discovery.  *See U.S. ex rel. Baltazar v. Warden*, No. 07 C 4107, 2013 WL 12446467, at *2 (N.D. Ill. Feb. 5, 2013) ("The scope of discovery is framed by the issues raised in the pleadings and not by evaluating the merits of the claims.").

Interestingly, Defendants also newly contend that the jointly-agreed Protective Order entered in this case is not sufficient to protect their source code. Opp. at 19 n.23.[18]  Defendants' initial position

---

[16] Defendants' other cited cases do not even involve copyright infringement, so they are irrelevant. *ACI Worldwide Corp. v. Mastercard Techs., LLC*, No. 8:14CV31, 2016 WL 6462249, at *1 (D. Neb. Oct. 27, 2016) (trade secrets case); *Ameranth, Inc. v. Pizza Hut, Inc.*, No. 11CV1810 JLS NLS, 2013 WL 636936, at *3, *7 (S.D. Cal. Feb. 20, 2013) (patent case interpreting local patent rule).

[17] Plaintiff requested that all meet and confer calls be transcribed and Defendants refused (claiming that if calls were transcribed, they'd be in "listening mode" and would ask questions, not answer them). Dkt. 96-12 at 5. Plaintiff has painstakingly documented what transpired on the calls, and Defendants' position in their Opposition is "that they will not endeavor to correct" them when Defendants think they are incorrect. Opp. at 21 n.25. Hopefully, this is enough for the Court to discern who is being straightforward about what transpires during meet and confer calls.

[18] Indeed, Brocade disingenuously asserts that the Stipulated Protective Order in place is insufficient to warrant disclosure of its source code because "Defendants should not be required to undertake the

was that a protective order was required for source code review, and that "[t]he exact mode of production and review is [] something we would want our experts to weigh in on." Dkt. 60-13 at 3 (January 26, 2021 email from Alison Plessman, Defendants' counsel, to John Wood, Plaintiff's counsel). The parties have done just that after negotiating the Stipulated Protective Order for over seven months. The resulting order, which has been entered by the Court, provides extremely strong protections for source code. Dkt. 93, at ¶¶ 17, 26-39. Unsurprisingly, Defendants cite no provision of the Protective Order that is supposedly deficient.

Finally, Defendants assert that they "offered a compromise" in which Plaintiff would provide all of its source code for all of the copyrighted works in the Complaint while Brocade produces only the very code that Plaintiffs provided to Brocade under the License Agreement, and even then only "to the extent available." Opp. at 19-20. This is not a "compromise." It tells Plaintiff nothing about the source code that Defendants actually used or are using in their products, and is simply a means by which Defendants can delay their own source code production, hinging what they produce on their own internal predetermination of infringement. It would also be particularly unfair for Defendants to conduct an infringement analysis first, given that Plaintiff served requests for Defendants' source code on December 26, 2020, Brocade served its first request for source code eleven months later, and Broadcom has never served any request for source code. Plaintiff's generous offer of a simultaneous exchange is the only true "compromise" that has ever been put on the table. *See* Weber Decl. ¶ 6.

### F. Defendants Should Be Ordered To Identify All Products Containing Plaintiff's Software And To Answer All Associated Document Requests As Propounded (Heading II. F).

Interrogatory 1 requests Defendants to identify all "Products that contain, use, or are otherwise

---

burden, expense, and risk" of providing the source code when "Plaintiff cannot even truthfully allege that the software it provided to Brocade has been registered with the Copyright Office." Opp. at 19 n.23. As explained, the assertion that the software provided to Brocade is not encompassed within the registered works listed in the Complaint is utterly meritless.

associated with SNMP Research Software," including any "Products that have ever at any time fit the above description, whether in current distribution or not." In order to move forward with production while the parties continued to negotiate the disputed term "SNMP Research Software," Plaintiff suggested that Defendants could at least list the products alleged in the Complaint, which Defendants had already identified as containing Plaintiff's software in pre-suit negotiations, as responsive to Interrogatory 1 (and all requests referring to it). Mem. at 19-20; Cmplt. ¶¶ 26-27; *see, e.g.*, Ex. B at 26. Defendants accepted Plaintiff's offer. Dkt. 96-12 at 1. However, when Defendants answered the discovery requests, they played semantic games to avoid providing discovery. Broadcom responded by narrowing the request for "Broadcom" products to "Broadcom Inc." products, and then stating that the alleged products "are not Broadcom Inc. products" because "Broadcom Inc. is a holding company and does not have products." Broadcom Supp. Resp. to Interrogatory No. 1. Broadcom then refused to respond to all other product-related requests on the grounds that no products were responsive to Interrogatory No. 1. Brocade also avoided taking any position on whether its products ever contained Plaintiff's software by explicitly refusing to certify as such (Brocade Supp. Resp. to Interrogatory No. 1 ("Brocade does not concede that these products contain any SNMP Research software")). Despite the Opposition's assertions, Opp. at 20-22, these responses plainly contravened the parties' agreement that Defendants would initially "limit the products <u>responsive</u> to Interrogatory Number 1" to the products alleged in the Complaint. Dkt. 96-12 at 1 (emphasis added).

Brocade also twisted the parties' agreement to avoid answering Interrogatory No. 9, which requested Brocade to identify which products or services were sold with the infringing products alleged in the Complaint (such as a power supply sold as part of a router that contains the infringing software). *See* Brocade Supp. Resp. to Interrogatory No. 9. Brocade answered simply that the parties had agreed Brocade would limit its identification of products to the products alleged in the Complaint, and therefore avoided taking any position on what products or services were sold with those products. *Id.*

Defendants' endless word games to avoid identifying products containing Plaintiff's software underscore that the Court should order Defendants to identify all of Defendants' (and their predecessors', subsidiaries', and affiliates') products containing Plaintiff's software and the products sold with them. *See* Mot. Category 8.[19]

### G. Defendants Should Be Ordered To Substantively Respond To Requests Related To Third Parties (Heading II.I).

Plaintiff's requests related to third parties seek identification of products containing Plaintiff's software that were sold to third parties, the number of those products and associated revenues and costs, the identification of those third parties, and any documents giving third parties the right to use, copy, sell, or transfer Plaintiff's software. *See, e.g.*, Brocade Supp. Resp. to Interrogatory Nos. 9-10, 12-18, 23; Brocade Supp. Resp. to RFP No. 88. That is undeniably relevant information (at least for purposes of discovery), and none of Defendants' arguments to the contrary has any merit.

Defendants claim that producing agreements implicating confidentiality and privacy concerns "would impose an undue burden" (Opp. at 25 (citing Plessman Decl. ¶ 35)), but the supporting declaration is wholly conclusory. For instance, it does not even identify how many responsive contracts have confidentiality provisions. *See* Plessman Decl. ¶ 35( "producing information and documents, including contracts, involving third parties implicated third-party confidentiality concerns and would present an undue burden to Defendants.") This is the opposite of substantiating undue burden in "concrete, meaningful" terms. *Neale*, 2020 WL 6948361, *2. Nor does it explain how any supposed confidentiality concerns would not be addressed by the jointly-agreed Protective Order entered in this case. Dkt. 93.

Defendants also claim that the requests ask Broadcom to "identify its products and sales to third parties" with respect to "over 150" entities. Opp. at 24 n.31. Actually, each of the requests are

---

[19] All references to "Categories" are to the categories set forth in the Motion.

expressly tethered solely to products containing Plaintiff's software. *See* Brocade Interrogatory Nos. 9-10, 12-18, 23. Presumably all "150 affiliates" of Broadcom did not sell products containing Plaintiff's software, but if they did do so, then Defendants should identify those products and the third parties to whom they were sold.

### H. Defendants Should Be Ordered To Respond To Interrogatory No. 7 Seeking Identification Of People.

Defendants continue to refuse to identify their personnel who have searched for products containing Plaintiff's software, Opp. at 21 n.24, but have no answer for why they cannot do so, particularly given that Plaintiff had extensive pre-suit discussions with all Defendants regarding their use of Plaintiff's software, <u>during which Defendants identified the products that contained Plaintiff's software</u>. *See, e.g.*, Weber Decl. ¶ 3. <u>Someone</u> did that search. The identity of these people (and anyone else who has done searches at any point in the time period of Plaintiff's requests) will be important for, among other things, determining whom to depose. Defendants should be ordered to immediately provide this readily-obtainable and obviously-relevant information.

### I. Defendants Should Be Ordered To Substantively Respond To Each Request Wherein They Simply Offered To "Meet And Confer" With Plaintiff.

Defendants should also be ordered to respond to the requests to which their only "supplemental" response was that they would "meet and confer" with Plaintiff. *See* Mot. Category 12. Defendants have already substantially delayed their provision of any substantive response to these highly-relevant requests, *see* Mem. at 24-25, and the Opposition makes no indication that they plan to substantively respond at all. Opp. at 22 n.27.

## III. CONCLUSION

For all of the foregoing reasons, the Court should grant Plaintiff's Motion in its entirety according to the list and categories set forth therein, and compel Defendants to respond fully and substantively to all of Plaintiff's discovery within two weeks of the Court's order or by a date certain.

Respectfully submitted,

Dated:  December 30, 2021       By: /s/ *John L. Wood*
                                                 John L. Wood, Esq. (BPR #027642)
                                                 Cheryl G. Rice, Esq. (BPR #021145)
                                                 Rameen J. Nasrollahi, Esq. (BPR #033458)
                                                 EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
                                                 900 S. Gay Street, Suite 1400
                                                 P.O. Box 2047
                                                 Knoxville, TN 37902
                                                 (865) 546-0500 (phone)
                                                 (865) 525-5293 (facsimile)
                                                 jwood@emlaw.com
                                                 crice@emlaw.com
                                                 rnasrollahi@emlaw.com

Dated:  December 30, 2021       By: /s/ *A. Matthew Ashley*
                                                 A. Matthew Ashley (CA Bar. No. 198235)
                                                 Morgan Chu (CA Bar. No. 70446)
                                               David Nimmer (CA Bar. No. 97170)
                                               Olivia Weber (CA Bar. No. 319918)
                                               IRELL & MANELLA LLP
                                               1800 Avenue of the Stars, Suite 900
                                               Los Angeles, California 90067-4276
                                               (310) 277-1010 (phone)
                                               (310) 203-7199 (facsimile)
                                               mchu@irell.com
                                               dnimmer@irell.com
                                               mashley@irell.com

                                               *Attorneys for Plaintiffs*
                                               *SNMP Research International, Inc.*
                                               *SNMP Research, Inc.*