# EXHIBIT 3

**From:** Weber, Olivia <oweber@irell.com>
**Sent:** Thursday, October 7, 2021 5:39 PM
**To:** Demers, Leslie A (NYC) <Leslie.Demers@skadden.com>; Neukom, John (Jay) (PAL) <John.Neukom@skadden.com>; Feirman, Jordan (NYC) <Jordan.Feirman@skadden.com>
**Cc:** Ashley, Matt <MAshley@irell.com>; John L. Wood <JWood@emlaw.com>; Cheryl G. Rice <CRice@emlaw.com>; 'Alison Plessman' <aplessman@hueston.com>; Salvatore Bonaccorso <sbonaccorso@hueston.com>
**Subject:** [Ext] RE: SNMP Research, Inc. et al. v. Extreme Networks, Inc. et al. - Discovery Responses

Hi Leslie,

I am following up on my email below. We've discussed Extreme's requests for all licenses with our client. Despite Plaintiffs' objections noted in their responses to Extreme's first set of discovery requests—in particular the considerable burden that these requests implicate, which we detailed to you during our September 22, 2021 meet and confer—Plaintiffs will agree to produce those licenses we are able to locate after a reasonable search in light of Extreme's firm insistence that it needs all licenses ever executed. We anticipate that we will be able to produce these licenses (or the vast majority) by December 8, 2021.

Best,

Olivia
(949) 760-5146

**From:** Weber, Olivia
**Sent:** Wednesday, September 22, 2021 9:29 PM
**To:** 'Demers, Leslie A' <Leslie.Demers@skadden.com>; Neukom, John (Jay) <John.Neukom@skadden.com>; Feirman, Jordan <Jordan.Feirman@skadden.com>
**Cc:** Ashley, Matt <MAshley@irell.com>; John L. Wood <JWood@emlaw.com>; Cheryl G. Rice <CRice@emlaw.com>; 'Alison Plessman' <aplessman@hueston.com>; Salvatore Bonaccorso <sbonaccorso@hueston.com>
**Subject:** RE: SNMP Research, Inc. et al. v. Extreme Networks, Inc. et al. - Discovery Responses

Hi Leslie and Alison,

Thank you both for your time today. I've noted below the points of discussion from our meet and confer.

- **Third Party Licenses**: The parties discussed Plaintiffs' production of third party licenses. Plaintiffs are of course willing to produce licenses but explained that it is unduly burdensome to go through all licenses ever executed to determine whether notice and consent are required (and then provide notice/obtain consent). Plaintiffs asked if Extreme would consider placing limits on production to alleviate the burden, such as narrowing the range of relevant years and identifying what it is that Extreme wants to see. Extreme's initial position is that it could not agree to limit production to a range of years or narrow the scope of the relevant licenses. We agreed to speak with our client in light of Extreme's position that it needs

1

all agreements ever executed. We also agreed to speak with our client about providing categories of agreements that our client has entered into, in light of Extreme's request for Plaintiffs to identify the categories of agreements at issue.

- o Relatedly, Leslie and Alison both confirmed that to the extent Plaintiffs are going to produce license agreements subject to the recent order on the motion to seal filings (Dkt. 89), those agreements could be produced to all Defendants.

– **Sequencing of Source Code Discovery**: Extreme noted that it set forth its position in writing and asked to hear from Plaintiffs on sequencing. We reiterated that (1) Extreme has confirmed that the SNMP copyright notice is present in its source code; (2) Extreme has every line of copyrighted source code at issue in this case already in its possession; (3) Plaintiffs are entitled to inspect Defendants' source code immediately in light of their discovery requests served in December 2020; and (4) nonetheless, Plaintiffs are willing to produce the copyright deposits subject to a mutual exchange of source code with Defendants. Extreme disagreed with Plaintiffs' statements about Extreme's possession of source code. Extreme stated its belief that source code production is premised on the term "SNMP Research Software," yet that term is not tied to the allegations of infringement in the complaint. Broadcom also asserted that because Plaintiffs request production of all source code for SNMP Research Software, then the act of production might be an implicit admission. Plaintiffs indicated that they are fine with Broadcom stating that an act of production is not an admission; Plaintiffs just need to see the code. Plaintiffs noted that regardless, Defendants did not even provide source code based on the products identified in the complaint, and Plaintiffs reiterated that the code that Defendants have is encompassed by the copyright registrations alleged in the complaint. Extreme stated it will give thought to a workable middle ground and that the issue comes down to not having a meeting of the minds as to what this case is about.

– **Statutory Damages**: Extreme asked whether Plaintiffs are seeking statutory damages, and Plaintiffs stated that they have not yet decided.

– **Royalty Rate**: Plaintiffs asked for Extreme's definition of "royalty rate" given that the term was not defined. Extreme responded that they assumed Plaintiffs would understand what the term meant and did not mean anything different than what is accepted in the industry and how it is typically used in business. Plaintiffs stated that the scope of infringement will inform the response to this request, and that Plaintiffs are standing on their objections.

– **Apportionment Value**: Plaintiffs asked for Extreme's definition of "apportionment value" so that Plaintiffs could better understand the request. Extreme responded that this is the concept of apportionment in damages; the portion of revenue etc. assigned to the source code, such as whether you are saying 100% of the revenues, or 100% of the code is attributable to the copyrighted works. Extreme stated that they understood Plaintiffs' objections that they do not have the information yet to answer that request.

– **Third-Party Production**: Plaintiffs asked whether Defendants would agree to a protocol whereby all documents produced to one party by any other party or third party would be produced to all parties. Extreme's position is that it would agree to the extent Plaintiffs propound such a request.

Best,

Olivia
(949) 760-5146

**From:** Demers, Leslie A <Leslie.Demers@skadden.com>
**Sent:** Wednesday, September 15, 2021 7:19 PM
**To:** Weber, Olivia <oweber@irell.com>; Neukom, John (Jay) <John.Neukom@skadden.com>; Feirman, Jordan <Jordan.Feirman@skadden.com>
**Cc:** Ashley, Matt <MAshley@irell.com>; John L. Wood <JWood@emlaw.com>; Cheryl G. Rice <CRice@emlaw.com>; 'Alison Plessman' <aplessman@hueston.com>; Salvatore Bonaccorso <sbonaccorso@hueston.com>
**Subject:** RE: SNMP Research, Inc. et al. v. Extreme Networks, Inc. et al. - Discovery Responses

Hi Olivia,

At this point we are just speaking into a void, but it bears repeating: (1) you represented to us that SNMP did not register the version of code that it provided under the license agreement at issue here; and (2) SNMP has not provided us - counsel for Extreme - with the purported copyrighted works it is asserting as infringed. Stated differently: We are litigating a copyright infringement dispute without having access to the copyrighted work that is purportedly infringed, and with a representation that the version of code provided for our client's products was not the subject of a separate copyright. It is untenable for an IP plaintiff to file a lawsuit based on IP that is admittedly over-broad, while refusing to share the IP it actually believes is infringed.

We can speak about the issues outlined in my email after our call tomorrow morning (noting that sequencing of source code is a joint issue, as discussed in my separate email, subject to joint meet and confers).

Thanks,
Leslie

**Leslie A. Demers**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**One Manhattan West | New York | NY | 10001**
**T: +1.212.7353493** | **F: +1.917.777.3493**
**leslie.demers@skadden.com**

**From:** Weber, Olivia <oweber@irell.com>
**Sent:** Sunday, September 12, 2021 8:10 PM
**To:** Demers, Leslie A (NYC) <Leslie.Demers@skadden.com>; Neukom, John (Jay) (PAL) <John.Neukom@skadden.com>; Feirman, Jordan (NYC) <Jordan.Feirman@skadden.com>
**Cc:** Ashley, Matt <MAshley@irell.com>; John L. Wood <JWood@emlaw.com>; Cheryl G. Rice <CRice@emlaw.com>; 'Alison Plessman' <aplessman@hueston.com>; Salvatore Bonaccorso

<sbonaccorso@hueston.com>
**Subject:** [Ext] RE: SNMP Research, Inc. et al. v. Extreme Networks, Inc. et al. - Discovery Responses

Hi Leslie,

Thank you for your note. Your response ignores the fact that Extreme has every line of the copyrighted source code at issue in this case already in its possession. Your demand to see the copyrighted source code when you already have it is disingenuous. As we have stated, your client went so far as to confirm that SNMP Research's copyright notice is present in the source code. If counsel for Extreme does not have access to the copyrighted source code it is only because your client has not provided it to you. Indeed, Extreme should have no trouble locating Plaintiffs' code in its possession, especially in light of the fact that it requested a license for Plaintiffs' software prior to litigation. Our understanding of your request for source code is that you want another copy of the same source code you already have that was filed with the copyright office. We are glad to produce that source code—and we have repeatedly offered to do so via a mutual exchange of code, which we first offered in January—but we do not agree Extreme can withhold its production until after it has examined our production.

Contrary to Extreme's belief that it is entitled to one-sided inspection of source code before it ever produces a single line of code to Plaintiffs, it is entirely appropriate for Plaintiffs to be the first to request—and to inspect—Defendants' source code in this copyright infringement action. That is why Plaintiffs served requests for production of source code over eight months ago, at the earliest opportunity available to them.

Moreover, Extreme is not entitled to withhold production of its code (for months), yet simultaneously demand immediate inspection of Plaintiffs' copyrighted works, particularly given that it waited a month and a half after the Court's order denying the discovery stay to request these works. At bottom, what Extreme is really requesting is to conduct its own expert infringement analysis of the deposit copies of SNMP Research's code before deciding what code (if any) Extreme feels it is appropriate to produce. We continue to think that is an unreasonable position. But if you have a case that you believe supports this position, please share it with us so we can consider it.

Regarding availability, we are available to meet and confer over Extreme's responses to SNMP Research's discovery next Thursday, 9/16, between 8-9 a.m. Pacific. I'll send a dial-in.

As to Plaintiffs' responses to Extreme's discovery, we would be happy to discuss the issues identified in your email and any others that you may raise on the call. Please let us know additional days/times after Thursday that Extreme is available.

Best,

Olivia

**Olivia Weber** (she/her)| Irell & Manella LLP | 949.760.5146 | oweber@irell.com

**From:** Demers, Leslie A <Leslie.Demers@skadden.com>
**Sent:** Friday, September 10, 2021 9:24 AM
**To:** Weber, Olivia <oweber@irell.com>; Neukom, John (Jay) <John.Neukom@skadden.com>; Feirman, Jordan <Jordan.Feirman@skadden.com>
**Cc:** Ashley, Matt <MAshley@irell.com>; John L. Wood <JWood@emlaw.com>; Cheryl G. Rice <CRice@emlaw.com>; 'Alison Plessman' <aplessman@hueston.com>; Salvatore Bonaccorso <sbonaccorso@hueston.com>
**Subject:** RE: SNMP Research, Inc. et al. v. Extreme Networks, Inc. et al. - Discovery Responses

Hi Olivia,

Thank you for sending the responses. Given that Extreme took a targeted approach to its discovery – serving only 6 RFPs as compared to SNMP's 70 on Extreme, 5 Interrogatories as compared to SNMP's 16 on Extreme, and 0 RFAs as compared to SNMP's 45 on Extreme – we were disappointed to see that SNMP's responses consist almost entirely of objections, and SNMP has as of today not agreed to produce a single document. That approach is particularly disappointing when viewed against SNMP's overly aggressive stance on what discovery it believes it is entitled to receive from Extreme.

A non-exhaustive list of the deficiencies in SNMP's responses follows:

1. <u>Third Party Licenses</u>. As of today, SNMP appears to be refusing to produce a single license agreement for the copyrighted works at issue in this lawsuit. That is pretty stunning to us given that SNMP's business model as we understand it is licensing such works. And the excuse that SNMP may need to procure sign-off from licensees before producing some of these agreements is not a sufficient reason not to produce the licenses. For any and all licenses for which there is no need to secure third-party sign off, those need to be produced immediately. For all others, SNMP needs to procure permission to produce the licenses to us, and produce them. Or, if SNMP is unable or unwilling to do so, then we will need to move to compel. Extreme's outside counsel needs to see the entirety of SNMP's licensing history for the works at issue, and we think you know that such documents will be vitally important to Extreme's defense.

2. <u>Sequencing of Source Code Discovery</u>. Furthermore, the idea that there should be a mutual or simultaneous production of source code is a little absurd. As of today: SNMP has been asserting copyright claims on 8 works for 11 months, and yet SNMP has been refusing even to show us (counsel for Extreme) the actual copyrighted works at issue. You may not be in the mood to admit it to us, but surely you must recognize privately how offensive it is to common sense that you are accusing our client of infringing copyrighted works and yet are refusing to allow us to see the copyrighted works.

3. <u>Statutory Damages</u>. SNMP's response to Interrogatory No. 1 does not state that it is seeking statutory damages. We are inferring from this response that SNMP is not seeking statutory damages. Please confirm.

4. <u>Royalty Rate</u>. In response to Interrogatory No. 5, SNMP has stated it lacks an understanding of the use of the term royalty rate.

5

Please advise when you are available to meet and confer on these issues. As a response to your separate request for our availability, we can be available next Thursday (9/16) during the window of 8 – 11 AM PT.

Thanks,
Leslie

**Leslie A. Demers**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**One Manhattan West | New York | NY | 10001**
**T: +1.212.7353493** | **F: +1.917.777.3493**
**leslie.demers@skadden.com**

**From:** Weber, Olivia <oweber@irell.com>
**Sent:** Wednesday, September 8, 2021 10:35 PM
**To:** Demers, Leslie A (NYC) <Leslie.Demers@skadden.com>; Neukom, John (Jay) (PAL) <John.Neukom@skadden.com>; Feirman, Jordan (NYC) <Jordan.Feirman@skadden.com>
**Cc:** Ashley, Matt <MAshley@irell.com>; John L. Wood <JWood@emlaw.com>; Cheryl G. Rice <CRice@emlaw.com>; 'Alison Plessman' <aplessman@hueston.com>; Salvatore Bonaccorso <sbonaccorso@hueston.com>
**Subject:** [Ext] SNMP Research, Inc. et al. v. Extreme Networks, Inc. et al. - Discovery Responses

Counsel,

I attach Plaintiffs' responses to Defendant Extreme Networks, Inc.'s discovery requests.

Best,

Olivia

**Olivia Weber** (she/her)| Irell & Manella LLP | 949.760.5146 | oweber@irell.com

PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.

--------------------------------------------------------------------------------
This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the

original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

================================================================================

--------------------------------------------------------------------------------
This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

================================================================================