```
 1                IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF TENNESSEE
 2                    AT KNOXVILLE, TENNESSEE
   _____
 3                                          )
   SNMP RESEARCH, INC. and SNMP             )
 4 RESEARCH INTERNATIONAL, INC.,            )
                                            )
 5      Plaintiffs,                         )
                                            )
 6 vs.                                      ) Case No. 3:20-CV-451
                                            )
 7 BROADCOM, INC, et al.,                   )
                                            )
 8      Defendants.                         )
                                            )
 9 _____)

10

          DIGITALLY-RECORDED TELEPHONE STATUS CONFERENCE
11          BEFORE THE HONORABLE DEBRA C. POPLIN

12                     April 21, 2022
                   3:01 p.m. to 3:29 p.m.
13

14
   APPEARANCES:
15
          ON BEHALF OF THE PLAINTIFFS:
16
          ALVIN MATTHEW ASHLEY, ESQ.
17        Irell & Manella, LLP
          1800 Avenue of the Stars, Suite 900
18        Los Angeles, CA   90067

19        OLIVIA WEBER, ESQ.
          Irell & Manella, LLP
20        840 Newport Center Drive, Suite 400
          Newport Beach, CA   92660
21
          CHERYL G. RICE, ESQ.
22        Egerton, McAfee, Armistead & Davis, P.C.
          P.O. Box 2047
23        Knoxville, TN   37901

24

25
```

```
 1   APPEARANCES:   (Continued)

 2        ON BEHALF OF THE DEFENDANTS:

 3        ALISON PLESSMAN, ESQ.
          Hueston Hennigan, LLP
 4        523 W. 6th Street, Suite 400
          Los Angeles, CA  90014
 5
          JOHN NEUKOM, ESQ.
 6        Debevoise & Plimpton, LLP
          650 California Street
 7        San Francisco, CA  94108

 8        LESLIE A. DEMERS, ESQ.
          Skadden, Arps, Slate, Meagher & Flom, LLP
 9        One Manhattan West
          New York, NY 10001
10

11   REPORTED BY:

12   Kara L. Nagorny, RMR, CRR
     P.O. Box 1121
13   Knoxville, TN  37901
     (865) 264-9628

14

15                                ******

16

17

18

19

20

21

22

23

24

25
```

```
 1              (Proceedings commenced at 3:01 p.m.)

 2              THE COURTROOM DEPUTY:  We are here for a telephone

 3   conference in Case 3:20-CV-451, SNMP versus Broadcom.  Here on

 4   behalf of the plaintiffs are Matt Ashley, Olivia Weber, and

 5   Cheryl Rice.  Are the plaintiffs ready to proceed?

 6              MS. RICE:  Yes, we are.

 7              THE COURT:  Here on behalf of the defendants are

 8   Alison Plessman, Jay Neukom, and Leslie Demers.  Are the

 9   defendants ready to proceed?

10              MS. PLESSMAN:  Yes, we are.

11              THE COURT:  Okay.  All right.

12              MR. NEUKOM:  -- for Extreme Networks.  Pardon me.

13              THE COURT:  That's all right.  I think I have the list

14   of who all's on the line.  This is Judge Poplin, so I understood

15   that there was a dispute earlier today regarding some COVID

16   restrictions, and that has been resolved.  I have been apprised

17   in the last few minutes that we're now dealing with an issue

18   dealing with the source code and the encryption, and I've had a

19   chance to briefly review the plaintiff's brief.  I understand

20   Ms. Plessman has just submitted something.  I've not looked at

21   that, so I guess, Ms. Rice, I'll turn to you.

22              MS. RICE:  Yes, Your Honor.  Mr. Ashley is on the

23   line, and I believe he was going to start for the plaintiffs.

24              THE COURT:  All right.  Mr. Ashley?

25              MR. ASHLEY:  Yes.  Thank you, Judge.  So I don't know
```

1    if Your Honor has had a chance to ever review the provisions of

2    the protective order regarding source code.

3         THE COURT:  I have reviewed some highlighted sections

4    that my law clerk pulled for me based on the indication that we

5    would need to have a phone call about this.

6         MR. ASHLEY:  Yeah.  So the key provisions of paragraph

7    33 through 37, but there's others as well.

8         And just to back up a little bit, the way the source

9    code review works, and these provisions were negotiated

10   literally over several months, every comma was negotiated; and

11   what they entail is that the defendants make their source code

12   available in their offices of their attorneys, their outside

13   counsel, and then we send -- you know, we're the reviewing party

14   in that regard, and we send in our reviewers which are experts

15   as well as our own counsel in this case, John Wood -- he's

16   actually here in California -- to review source code.  And they

17   go into the room, and the computers can't be connected to the

18   internet.  There are reviewers there that make sure that nothing

19   improper is occurring.  In other words, the defendants have

20   reviewers there, but what everybody understood and you can see

21   from the protective order provisions, paragraph 33 through 37,

22   was that these reviewers are going to have to take notes.

23        The source code review is going to take hundreds of

24   hours and weeks, and no one can commit all that work to memory,

25   and that's why they take notes, and no one disputes that the

1  notes are work product and that's not discoverable.  Like I
2  said, one of the people doing the review in taking notes is our
3  counsel, John Wood, and so --

4          THE COURT:  I thought that there was a provision in
5  there is that they're putting encryption software on there for
6  this particular purpose.  Is that, did I read that correctly?

7          MR. ASHLEY:  That's right, and it's the only thing
8  that's encrypted in that regard.  In other words, the notes are
9  encrypted, but then you have to designate them so they know what
10  they are, and so the designation itself is not encrypted but the
11  notes are encrypted.

12          THE COURT:  Yes.

13          MR. ASHLEY:  And then this review takes place, so
14  like, usually you'll have days and days and days of review, and
15  then, and then the experts or the counsel will go back, do some
16  analysis, and then there'll be another set of days of review
17  later.  So when you're done with your first sort of round of
18  review and you ask the other side to produce the notes that are
19  encrypted, and they're supposed to send it to you within two
20  days.

21          Now, you're also not supposed to put source code in
22  those notes, and we have no intention of doing that, and we
23  expect that defendants have no intention of doing it as well.
24  Instead, if you want to actually export source code, then what
25  you do is you designate the parts you want printed to PDF, and

1  you can do up to 60 pages; but then you just meet and confer if
2  you want more, and those are printed and sent to you.

3          And so I think the protective order is crystal clear,
4  when it uses the term "encrypted," it does not mean that the
5  other side ever gets to review your notes at any point, either
6  before or after they're sent, and it -- believe me.  If there
7  was ever a time when our experts and attorney's, attorney work
8  product notes would be reviewable, it would be expressed in this
9  protective order.  It would not be by some, you know, contorting
10  of the words to try to provide that right, and I noticed that in
11  Broadcom's recent brief, they quoted something that Extreme had
12  said and during the meet and confer of this issue.  The fact of
13  the matter is, Extreme agreed with us that this was the proper
14  interpretation of the protective order.

15          Now, everybody agrees that source code is important.
16  We are -- our source code is important to us.  Extreme's is
17  important to it, but that doesn't mean that paragraph 37
18  shouldn't be applied expressly as it states.

19          Now, one of the things that you're going to hear from
20  Broadcom and Brocade is that, well, hey.  You know, we're, we're
21  have this concern and they're not offering any compromises, but
22  we're proceeding by the letter of the protective order, and what
23  Broadcom and Brocade is proposing is either that they review it
24  or that we come up with some other approach that would make them
25  unencrypted.  They're encrypted notes.  Nobody is supposed to

see our attorney work product and our attorney/ client communications.

Now, you know, there's a lot of provisions in this, in this protective order that require you as a counsel, an officer of the court and your experts, to abide by that, but the other side doesn't get to, you know, see your attorney/ client communications or work product protected material to ensure compliance. So for instance, you know, if the other side produces us "attorney eyes only" material, well, we have to treat it as such. That doesn't mean they can come see our emails to see if we're doing that.

And one of the things that Broadcom and Brocade argue is that, well, look. There's, in paragraph 37, it says that you're designating them "highly confidential source code related materials," so that must mean that, you know, if they leave the room, they're going to be treated just like production material, but that's just completely wrong. It's a tortured reading of paragraph 37. What paragraph 37 says is the notes stay encrypted and then you designate them, and you don't encrypt the designations so people at least know they're your notes and they can be sent to you. And the reason why you have that designation even on your notes is that we know when we get our materials, our notes, that we're treating those notes which are from a review of source code as source code related material so we don't share them with people we shouldn't share them with

1    under the protective order.  It does not mean that Broadcom or
2    Brocade is to review our notes or that any third party gets to
3    review our notes.

4          So I think that this protective order is crystal
5    clear, and again, I want to reiterate that we are under
6    significant time pressures, and trying to conduct this source
7    code review over hundreds of hours and weeks while committing
8    stuff to memory and taking no notes, it's probably completely
9    unworkable.  It probably makes it impossible for us to do our
10   job, but even if it doesn't, even if it doesn't rise to that
11   level, it certainly is going to dramatically slow things down
12   for us when we don't have the time.

13         So I think Your Honor should enforce the protective
14   order as it's written.  I think it's crystal clear in paragraph
15   37 and direct that Broadcom and Brocade are not to review our
16   encrypted notes at any point in time, whether before we produce,
17   they produce them to us upon our request or after.

18         Unless you have any questions, I'm happy to tender it
19   over to Broadcom and Brocade.

20         THE COURT:  I do not have any questions, so let me
21   first turn to Mr. Neukom on behalf of Extreme.  Do you in fact
22   agree with the position stated by Mr. Ashley in terms of how the
23   protective order is written?

24         MR. NEUKOM:  Good afternoon.  This is Jay Neukom.  I
25   know you just asked for me, but since we're all by telephone, I

1  find saying my name can be helpful.

2       We -- I read paragraph 37 on this issue the same way,
3  that the reviewing party is allowed to take notes on a document
4  that they create on the source code review machine and that we
5  for Extreme Networks for our source code, we wouldn't be
6  reviewing that.  They would encrypt it, and then that's their
7  notes.

8       We have a respectful disagreement about the issue of
9  whether other notes, like, handwritten notes on note pads are
10 allowed, but I don't think that's yet on the table, so but that
11 also relates to paragraph 37.  So on the issue that my friend
12 Mr. Ashley just raised, whether the producing party that's to
13 review the reviewer's notes document, we are not planning to do
14 that from the Extreme Network side.

15      THE COURT:  Okay.  Thank you, Mr. Neukom.  Can -- next
16 I want to turn to Ms. Plessman on behalf of Broadcom.

17      MS. PLESSMAN:  Yes, Your Honor.  This is Ms. Plessman.
18 As an initial matter, we, I apologize for the rush response.  As
19 I indicated in our brief, we weren't given any notice that this
20 issue was going to be raised today, and we thought that we were
21 in continuing discussions on the topic, so we were a bit rushed
22 moving our schedules around, so I apologize for that.

23      But really what this dispute concerns -- well, I would
24 say as an initial matter, I think there might be some confusion,
25 because we've never suggested that the plaintiff or the

receiving party generally is not permitted to take notes on the
source code, source code computer or that we would review those
encrypted notes on the source code computers; but when they say
that the source code or that the source code provisions in this
respect in paragraph 37 are crystal clear, that's simply not the
case.  And at the end of the day, what this dispute really
concerns are valid competing interests regarding a protection of
the parties' source code and the disclosure of the party work
product.  We want to protect both as we're going to be taking
notes as well, but the issue here is that we're going to be
producing massive amounts of highly proprietary source code
tomorrow, and only a tiny fraction of that has anything to do
with plaintiff's claim.

            And if we look at the actual provision in paragraph 37
and also in paragraph 33, it's not at all clear exactly what a
producing party can do to ensure compliance with the order; but
the order is clear that it's not simply take the other side's
word for it, particularly with respect to the very important
source code matters.

            Paragraph 33 expressly provides that the producing
party can take measures to reasonably ensure compliance with the
order.  Now, of course it needs to also do so in a way that
protects work product, and we're not disputing that; but what
we've been trying to do with plaintiffs is just have a
meaningful discussion about potential alternatives, and we're

not suggesting that necessarily means that we, you know, if the source code with the notes and reports are going to leave the room and be sent to plaintiff that we necessarily have to review all of them and look at their work product; but what we've been trying to come up with is whether there's some other mechanism to ensure that this order has been complied with, because paragraph 37 is very clear that the notes and reports are not to contain source code.

And while they say that there's no need to put source code in those notes because they can request 60 pages of notes through another paragraph, but the problem is that there's no such size limitation at all in the notes and reports, and we would have no way of verifying or ensuring that there was compliance in this respect.

And the source code provisions in the protective order are there for a reason. It -- there's a reason why there's a secure room with all of these restrictions and the source code computers with all these restrictions. It would be completely meaningless if the receiving party can put whatever they note, whatever they want in their notes about any sort of monitoring or review available to ensure compliance with the order and just have everything sent to them without any size limitation or other mechanism.

And so what we've been trying to do is just come up with a potential compromise, frankly just have a discussion

1  about how we might ensure this, and there's a couple potential
2  ways.  One, to get these notes stored on a computer, but we
3  understand that the protective order does offer means to provide
4  the notes and reports to counsel or to the receiving party upon
5  request.  So paragraph 37 also says that, it says, well, "Such
6  notes will be encrypted by the receiving party on the source
7  code computers" -- that's a quote -- "and marked."  They would
8  be, they would be marked "highly confidential source code
9  materials in unencrypted form."  So it only refers to the
10  encrypted form being on the source code computers and then
11  refers to a designation under the protective order that allows
12  sharing with outside counsel and experts for the other party.

13        So I'm not -- while we could dispute all day what the
14  meaning of that is, I don't think it's crystal clear.  It
15  suggests that if the code is, can be provided or taken off the
16  source code computers that it's going to be designated under the
17  protective order which would only be necessary if it's to be
18  provided to the other parties; but again, we're not trying to
19  take an unreasonable position.  I think for our own selves, we
20  want to work something out where if the notes and reports are
21  removed from the source code computers, they're not just
22  reviewed by the opposing party in their entirety and that we
23  would want protection for our work product as well; but we do
24  think there needs to be some mechanism to ensure that there is
25  compliance with the order with this very specific and strict

1  restriction that no source code is to be copied into those

2  notes, and again, if the protective order specifically allows

3  the producing party to ensure compliance with the order.

4        And so, again, at the end of the day, I'm not sure

5  exactly what that mechanism is, and we're feeling a bit rushed

6  because, again, we were trying to talk this out with the

7  defendants and rather than, you know, have a hearing today; but

8  potential solutions could include, for example, a size

9  limitation so such that the notes and the reports, to the extent

10 they're going to be removed from the source code computer, if

11 they're more than 60 pages that, you know, that there's some

12 other sort of check or verification, some, some additional

13 verification by counsel that they've reviewed these notes that

14 are potentially just going to an expert's office to ensure that

15 they do not in fact contain source code material.

16        But you know, again, to just say that this provision

17 is crystal clear and there's just no, that we're not, we're not

18 able to do anything to ensure compliance with the order despite

19 the clear language in paragraph 33 is just not workable given

20 the very highly proprietary information that we're talking

21 about.

22        THE COURT:  Okay.  Thank you, Ms. Plessman.  Do you

23 have any, anything further you want to add, Mr. Ashley?

24        MR. ASHLEY:  Yes, just a couple things, Your Honor.

25 The -- paragraph 37 couldn't be clearer where it says, "Such

1 notes and reports will be encrypted by the receiving party on
2 the source code computers and marked 'Highly confidential source
3 code related materials in unencrypted form.'  The designating
4 party shall provide the notes and the reports to the receiving
5 party within two business days of the request of the receiving
6 party."  That sentence was left out by Broadcom and Brocade in
7 the discussion.  In other words, we expressly negotiated the
8 notes and reports which are encrypted are to be provided within
9 two days of the request.  That is clear, and what you heard was
10 that it wasn't clear and they're trying to work out some other
11 mechanism and they want to work something out; but the source
12 code review begins, that you ordered, begins tomorrow morning.
13 There's no further time to work this out, and they still haven't
14 proffered anything that that's workable.

15          Now if Your Honor needs for us to verify as counsel
16 that which the protective order already requires, I guess we
17 could do that, but I just wouldn't want it to slow down any
18 review; but what you should not order is that anybody gets to
19 review the, either a third party or the other parties, get to
20 review the encrypted notes that are taken by the reviewing
21 parties pursuant to paragraph 37.

22          One more thing.  Counsel has referred to paragraph 33
23 and the right of a designating party to ensure compliance.  Let
24 me read you the part of that sentence that is being left out.
25 It reads quote, "The designating party may monitor the receiving

party's inspection of source code but only as is reasonably
necessary to ensure compliance with its order and in a manner
that will not interfere with receiving party's confidential
communications or otherwise risk invading the receiving party's
work product and that will afford the receiving party's
reviewers adequate privacy to permit the development of such
work product. For example, video surveillance is acceptable,
but only so long as there is no risk that such surveillance
would expose the receiving party's work product."

And all you've heard so far from Broadcom and Brocade
is that apparently they believe that our experts or counsel will
willfully violate a court order just so that we don't have to
come to you for additional pages if 60 pages is not enough. We
will come to you, Your Honor, if we need more than 60 pages, and
we'll be able to make a good cause showing if that's the case.
All you heard from the parties in this case is that the amount
of source code being reviewed is enormous, so if we need more
than what we're already entitled to, we will let you know as
fast as we possibly can because we're the ones who want to get
this review going.

THE COURT: All right. Thank you.

MS. PLESSMAN: Your Honor, may I quickly respond?

THE COURT: Yes. Ms. Plessman?

MS. PLESSMAN: Yes. I just, again, want to clarify
what we're not -- Mr. Wood I believe was referring to paragraph

33 and the language, talking about our ability to ensure
compliance with the order. I think that's exactly what I said.
Of course we have to do it in a way that doesn't unreasonably
impose on the reviewer of the work product, and we don't want
that either. Again, we're going to be creating notes and
reports as well, but the protective order does allow the
designating party to have some means to ensure compliance, and
all we have been proposing is a discussion about what those
means should be in this particular instance because the
protective order doesn't address it.

And again, counsel, plaintiff's counsel is correct
that the paragraph 37 says that the notes and reports should be
provided to the receiving party within two days notice, but it
doesn't say anything about being provided in encrypted form at
all, and in fact, it talks about it being designated again under
the protective order which suggests a sharing but which we are
not insisting upon. We're just looking for what that manner of
ensuring compliance would be, and if it were just the case that
that provision meant we just all take each other's word when
under the source code provision that everybody is being honest,
there would be no need for that sentence in paragraph 33 saying
there are, the designated party is entitled to take measures to
ensure compliance.

All we're trying to do is say there's an ambiguity
here, that what was left out of the protective order is what

those means might be, how we might ensure compliance on a very important point; and there are a lot of different possibilities that we just frankly haven't been able to have any discussion about, and you know, we're pretty willing and pretty open to consider that, because again, this works both ways; but the idea that, that we have this very strict source code protocol but then at the end of the day, without any sort of ability to ensure compliance with the order despite paragraph 33, the notes and reports are sent to the receiving party and they can contain absolutely anything without any ability to ensure just doesn't make sense given the rest of the provisions of the order.

So again, I think what's being confused here, there's a suggestion that we want to review the expert work product or we want to review counsel's notes. We don't want that either. We're simply looking for some sort of discussion on the matter in terms of how to ensure compliance with the order as the order expressly provides.

MR. ASHLEY: Your Honor, if I can address this ambiguity point 'cause it's been raised a couple of times? You should remember that this was a stipulated protective order. It was negotiated. It's not ambiguous to us. It's not ambiguous to Extreme. We were adversary in this case, and Broadcom and Brocade haven't explained why if it was so ambiguous they agreed to it. That's because it's not ambiguous. It's not ambiguous, and a couple -- oh. Okay.

1         THE COURT:  I'm sorry.  I think I've heard everything
2    I need to to make a decision on this point.  I appreciate
3    everyone stating their position, but the protective order, under
4    protective order, the parties and their counsel have
5    obligations.  This was an agreed protective order.  Something
6    like this should not be an issue at this point within 24 hours
7    of their obligation to start the source code review.

8         So I think it appears to the Court that 37 is clear,
9    and I think that the position stated by Broadcom is presuming
10   that there's going to be a violation.  I think the only
11   potential verification that would be needed is counsel's
12   obligation to just ensure that this protective order is
13   followed, and I'm not going to presume that they would act
14   otherwise.  The Court expects all the attorneys to follow the
15   terms of the order and their obligations as officers of the
16   Court.

17        So the Court is going to enforce this agreed
18   protective order as it's written, and the defendant will not be
19   reviewing any of the encrypted notes that are made.  And any
20   verification that counsel needs to do, that will be their
21   obligation as an officer of the court and of the counsel
22   representative for their clients, and the Court deems that is
23   all that will be necessary.

24        Is there anything further before we start the review
25   tomorrow?

1     MR. ASHLEY:  Not from plaintiffs, Your Honor.

2     MR. NEUKOM:  This is Jay Neukom for Extreme, and

3  Mr. Ashley or others, please tell me if I'm behind the times on

4  the state of discussion, 'cause I confess I've had a pretty

5  dramatic morning.

6     My understanding is we had, from Extreme, that we

7  might have had some disagreement or lack of clarity with the

8  plaintiff's counsel about whether it's okay for them to take a

9  note pad into the room and to take notes on that note pad and

10  leave with it, and if -- our position is it is not appropriate

11  nor allowed for notes to be taken and removed from the room in

12  any form other than that encrypted file which is created on the

13  device that's described in paragraph 37.

14     If we do not have a disagreement about that, if we're

15  all agreed that at least with respect to the Extreme review,

16  notes, note pads are not going to be allowed to be removed from

17  the room, then we don't need to discuss that now.  If we do need

18  to discuss it now, respectfully I'd like to address it, and I

19  have just a handful of thoughts to share on it.

20     MR. ASHLEY:  Yes.  This is Matt Ashley.  Our plan,

21  Jay, was just to proceed as Extreme has requested to see if it

22  works, and once we've now resolved this encrypted notes issue,

23  we'll start the review without taking any handwritten notes

24  'cause that's what Extreme has requested.  And if for some

25  reason logistically that becomes an issue, we'll need to confer

1   with you and only if necessary raise it with the Court; but for

2   now, we're going to comply with what Extreme has requested.  We

3   don't agree the protective order bars it, but it may just be a

4   moot issue and not something we have to bother the Court with,

5   so we're going to try to work it out.

6           THE COURT:  All right.  Sounds like you all may want

7   to discuss that a bit further, but the Court is not going to

8   stay on the line for that part of the discussion, so I'm going

9   to disconnect at this point.

10          MR. ASHLEY:  Thank you, Your Honor.

11          MR. NEUKOM:  Thank you to the Court.

12          (Proceedings concluded at 3:29 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2

 3   STATE OF TENNESSEE  )

 4   COUNTY OF KNOX  )

 5           I, Kara L. Nagorny, RPR, RMR, CRR, do hereby certify

 6   that I reported in stenographic machine shorthand the above

 7   digitally-recorded proceedings; that the foregoing pages were

 8   transcribed under my personal supervision and with

 9   computer-aided transcription software and constitute a true and

10   accurate record of the digitally-recorded proceedings.

11           I further certify that I am not an attorney or counsel

12   of any of the parties, nor an employee or relative of any

13   attorney or counsel connected with the action, nor financially

14   interested in the action.

15           Transcript completed and dated this 27th day of May,

16   2022.

17

18

19

20   _____
                    Kara L. Nagorny

21                    Kara L. Nagorny, RPR, RMR, CRR
                      United States District Court Reporter
22                    PO Box 1121
                      Knoxville, TN  37901
23                    (865) 264-9628

24

25
```