# IN THE UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., | § § § | Case No. 3:20-cv-00451-CEA-DCP |
| Plaintiffs, | § § | |
| v. | § § | **Jury Demand** |
| BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; AND EXTREME NETWORKS, INC., | § § § § | |
| Defendants. | § § § | |

## PLAINTIFF'S MOTION TO COMPEL DISCOVERY, ENFORCE ORDER COMPELLING DISCOVERY, DETERMINE SUFFICIENCY OF REQUEST FOR ADMISSION RESPONSES, AND FOR SANCTIONS AS TO DEFENDANTS BROADCOM INC. AND BROCADE COMMUNICATIONS SYSTEMS LLC

Plaintiff SNMP Research, Inc. ("Plaintiff" or "SNMP Research") respectfully submits this Motion to Compel Discovery, Enforce Order Compelling Discovery, Determine Sufficiency of Request for Admission Responses, and For Sanctions ("Motion" or "Mot.") as to Defendants Broadcom Inc. and Brocade Communications Systems LLC ("Brocade") (collectively, "Defendants").

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................... 1

II. RELEVANT BACKGROUND ................................................................................. 2

    A. The April 22 Order, Defendants' Second Supplemental Interrogatory And RFP Responses, And The Court's June 22 Order Regarding Evidentiary Supplements ..................................................................................... 2

    B. Plaintiff's Attempt To Meet And Confer On The Broadcom "Affiliates" Issue ................................................................................................ 3

    C. Defendants' Responses To Plaintiff's RFAs And Other Requests ............... 5

III. ARGUMENT .............................................................................................................. 8

    A. The Broadcom "Affiliates" Issue ................................................................... 8

    B. Discovery Directed To Defendants' Marketing And Sale Of The Accused Products, Including In Tennessee ................................................... 10

    C. Deficient RFA Responses ............................................................................ 13

        1. Improper RFA Objections ................................................................. 13

        2. RFAs Concerning Broadcom Inc. ...................................................... 16

    D. Brocade RFPs 43 and 47 .............................................................................. 17

    E. Brocade Interrogatory 9 ............................................................................... 20

    F. Defendants' Improper Refusal To Provide Information On The Basis That They Do Not "Track" It ..................................................................... 21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Bankers Trust Co.*,
  61 F.3d 465 (6th Cir. 1995) .................................................................................9

*Bessemer & Lake Erie Railroad Company v. Seaway Marine Transport*,
  596 F.3d 357 (6th Cir. 2010) ..............................................................................20

*Bridgestone Americas, Inc. v. Int'l Bus. Machines Corp.*,
  No. 3:13-CV-1196, 2016 WL 11786195 (M.D. Tenn. Oct. 31, 2016), *aff'd*,
  2017 WL 1021291 (M.D. Tenn. Mar. 16, 2017) ...........................................17, 20

*Crawford v. Allenbrooke Nursing & Rehab. Ctr.*,
  2021 WL 3926243 (W.D. Tenn. Sept. 1, 2021)....................................................19

*Eitel v. PNC Bank, N.A.*,
  No. 3:20-CV-00012-RGJ-RSE, 2022 WL 885043 (W.D. Ky. Mar. 24, 2022) ...............9, 23

*Great W. Life Assur. Co. v. Levithan*,
  152 F.R.D. 494 (E.D. Pa. 1994)............................................................................9

*Lynn v. Monarch Recovery Mgmt., Inc.*,
  285 F.R.D. 350 (D. Md. 2012)..............................................................................21

*Milner v. Nat'l Sch. of Health Tech.*,
  73 F.R.D. 628 (E.D. Pa. 1977)..............................................................................23

*Mullins v. Prudential Ins. Co. of America*,
  267 F.R.D. 504 (W.D. Ky. 2010)...............................................................18, 21, 23

*In re Norris*,
  No. 11-61150, 2012 WL 1565602 (Bankr. N.D. Ohio May 2, 2012)....................15

*Nurse Notes, Inc. v. Allstate Ins. Co.*, No. 10-CV-14481,
  2011 WL 2173934 (E.D. Mich. June 2, 2011).....................................................17

*Thompsons Film, LLC v. Does 1-44*,
  No. 1:13 CV 595, 2013 WL 4046404 (N.D. Ohio Aug. 8, 2013) ............................9

*Tustin v. Motorists Mut. Ins. Co.*,
  No. 5:08-CV-111, 2009 WL 3335060 (N.D.W. Va. Oct. 14, 2009), *aff'd*, 668
  F. Supp. 2d 755 (N.D.W. Va. 2009) .....................................................................15

**Statutes**

17 U.S.C. § 504(b) ...................................................................................................19

**Rules**

Fed. R. Civ. Proc. 26 ............................................................................................................20

Fed. R. Civ. Proc. 26(e) .......................................................................................................17

Fed. R. Civ. Proc. 26(e)(1)(A)-(B) .......................................................................................17

Fed. R. Civ. Proc. 33 ............................................................................................................22

Fed. R. Civ. Proc. 33(b)(1)(B) .............................................................................................23

Fed. R. Civ. Proc. 33(b)(3) ..................................................................................................21

Fed. R. Civ. Proc. 33(d) ..................................................................................................18, 21

Fed. R. Civ. Proc. 34 ..............................................................................................................9

Fed. R. Civ. Proc. 36(a)(4)...............................................................................................15, 17

Fed. R. Civ. Proc. 36(a)(6).........................................................................................13, 16, 17

Fed. R. Civ. Proc. 37(c) ...................................................................................................17, 20

Fed. R. Civ. Proc. 37(c)(1)....................................................................................................20

# I.    INTRODUCTION

On April 22, 2022, this Court ordered Defendants to "fully and substantively" respond to Plaintiff's interrogatories and requests for production ("RFP") by May 13, 2022, expressly noting that "it is well past any reasonable time for Defendants to fully respond to Plaintiff's discovery requests." Dkt. 131 (herein, "Order") at 22-23.  As demonstrated below, Defendants have not fully complied with the Order.  Moreover, Defendants' responses to Plaintiff's requests for admission ("RFA") suffer from the very same deficiencies this Court found in the interrogatory and RFP responses.  Yet Defendants refuse to amend those responses to conform with the Order.

The disputes herein include items which are important to the determination of Broadcom Inc.'s motion to dismiss for lack of personal jurisdiction, on which the Court recently directed the parties to present supplemental evidentiary submissions as to particular allegations (Dkt. 147).  Plaintiff repeatedly attempted to resolve the disputes herein with Defendants but was unable to do so. Consequently, Plaintiff brings this motion on the disputed issues ripe for decision, including those most pertinent to the issue of personal jurisdiction.  To the extent the parties cannot resolve other issues with Defendant's discovery responses, Plaintiffs may seek further assistance from the Court in the future. The relief sought in this motion is as follows, which tracks the sub-headings in Section III below:

1.  Order Defendants to supplement all answers to each discovery request for each relevant Broadcom "affiliate."  (III.A)

2.  Order Defendants to fully and substantively respond, without further delay, to discovery directed to Defendants' marketing and sale of accused products:  Brocade Interrogatories 16-20, RFPs 16-20 and 74-77, and RFAs 13-20 and 41-60 (for any RFAs that are not deemed admitted); and Broadcom Inc. Interrogatories 17-22, RFPs 18-22, 70-71, 73-80, 83-84, and RFAs 30-41 (for any RFAs that are not deemed admitted).  (III.B)

3.  Order Defendants to supplement all RFA responses to conform with the Order, except for ones which are deemed admitted.  (III.C.1)

4. Order the following RFAs be deemed admitted: (1) Broadcom Inc.'s response to RFAs 32-47; and (2) Brocade's response to RFAs 24- 27, 29, 31, 33, 35, 37, 39, 42, 44, 46, 48, 50, 52, 54, 56, 58, and 60. (III.C.2)

5. Order: (A) Brocade to produce documents responsive to RFPs 43 and 47; (B) and if Defendants continue to assert that they have no asset and liability information for Brocade from 2017 to present, order Defendants to provide an affidavit from their person(s) most knowledgeable attesting to that assertion; and (C) order that Defendants are precluded from arguing that Brocade is adequately capitalized until Brocade has made the required production and/or Defendants have provided the required affidavit(s) and Plaintiffs have had the opportunity to conduct follow-up discovery. (III.D)

6. Order Defendants to fully and substantively respond to Plaintiff's Interrogatories 5-6, 9-10, 21 to Brocade and Plaintiff's Interrogatory 21 to Broadcom Inc. by providing the information requested. To the extent Defendants rely on documents, Defendants should specify where to find those documents in the production by Bates number, and should provide information as to data fields, data descriptions, and data value descriptions to enable Plaintiff to interpret any referenced or produced document and discern the meaning of abbreviations. If Defendants cannot furnish the requested information, they should state as such under oath, explain why, and detail the efforts used to attempt to obtain the information. (III.E-F)

## II.    RELEVANT BACKGROUND

A.    <u>The April 22 Order, Defendants' Second Supplemental Interrogatory And RFP</u>
<u>Responses, And The Court's June 22 Order Regarding Evidentiary Supplements</u>

The Order directed that "Defendants SHALL fully and substantively respond to Plaintiff's remaining discovery requests in accordance with this opinion within twenty-one (21) days of the entry of this Order," Order at 23, which was May 13, 2022. Early in the morning Eastern Standard Time on

May 14, 2022, Defendants served their responses. Declaration of Olivia Weber ("Weber Decl.") ¶ 12; Ex. N ("Brocade RFPs"); Ex. O ("Broadcom RFPs"); Ex. P ("Brocade Interrogatories"); Ex. Q ("Broadcom Interrogatories").[1] Brocade produced a total of 333 documents on May 14, 2022. Weber Decl. ¶ 13. Broadcom Inc. produced no documents. *Id.* ¶ 20.

About one month later, on June 13-14, 2022, Brocade produced 747,292 pages of documents. *Id.* One month after that, on July 13, 2022, Brocade produced 1,216,953 pages of documents. *Id.* Although Brocade's responses indicate that it is withholding documents on the basis of privilege and/or protection, Brocade has not provided any privilege log at all (not even an incomplete one), despite promising (in writing) to provide a substantially complete privilege log by July 15, 2022. *Id.* ¶ 17. Broadcom Inc. has produced no documents and no privilege log. *Id.* ¶¶ 17, 20.

On June 22, 2022, the Court issued an Order directing Plaintiffs and Defendants to issue an evidentiary supplement relevant to Broadcom Inc.'s motion to dismiss for alleged lack of personal jurisdiction. Dkt. 147.

B.    Plaintiff's Attempt To Meet And Confer On The Broadcom "Affiliates" Issue

In its Order, the Court held that:

[T]he Court will limit the entities subject to Plaintiff's discovery requests to only "Broadcom" and "Brocade" at this time; however, the Court makes no finding as to Plaintiff's entitlement to information that may be held by the other entities Defendants claim are encompassed by "Broadcom" as discovery progresses. Defendants are cautioned that—although the Court is limiting the entities at issue due to the immediate need of getting the parties engaged in a productive discovery process—they must provide more than mere general and boilerplate burden and proportionality objections. For example, to the extent a specific entity may be completely irrelevant to this matter, Defendants must—at a minimum—state as such for the specific entity instead of in a general statement relating that the sheer number of entities makes Plaintiff's request unduly burdensome. Defendants must fully respond to Plaintiff's Category 4 requests as to "Broadcom" and "Brocade." To the extent confusion lingers regarding how the term "Broadcom" should be limited at this stage, the Court ORDERS the parties to meet and confer.

---

[1] All exhibits are to the Weber Decl. filed concurrently with this memorandum.

Order at 17-18.[2]

On May 4, 2022, Plaintiff attempted to meet and confer with Defendants on this issue. In particular, Plaintiff attempted to identify the "affiliates" that Defendants have repeatedly been vaguely referring to (Plaintiff did so using organization charts produced by Defendants; *see* Exs. K-M), and asked questions directed at understanding the basis for Defendants' contention that every one of these entities (other than Broadcom Inc. and Brocade) are completely irrelevant to this action, including asking which affiliates use/used SNMP Research Software, which have the words "SNMP Research" in their source code, and which are engaged in the sale of Brocade products. Specifically, Plaintiff asked Defendants:

1. Which of the affiliates use or have used (which includes but is not limited to leasing or selling any product containing) SNMP Research Software?

2. Which of the affiliates have (or had) in their possession any source code that contains the following language: "SNMP Research"? ███████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

█████████████████████

3. Which of the affiliates are engaged in the sale of Brocade products (or have in the past been so engaged)?

4. Which of the affiliates actually possess (or in the past possessed) any software source code?

5. Which of the affiliates are or were operating entities?

---

[2] In the briefing that led to the Order, Defendants contended that "virtually none" of the Broadcom entities other than defendant Broadcom Inc. and defendant Brocade had "anything to do with this case." *See* Dkt. 119 at 7.

Weber Decl. ¶ 11; Ex. J. Defendants did not respond, so Plaintiffs asked again on May 10. *Id.*

Defendants then stated that they would not answer the questions because "you seem to be seeking

informal discovery regarding Broadcom affiliates despite the Court's order." *Id.*. Defendants further

stated that "each of the 150 affiliates are completely irrelevant" because "[n]one of the affiliates are

parties, none of the affiliates are named in the complaint, and none of the claims asserted in the

complaint relate to unidentified disclosures to Broadcom affiliates." *Id.*

Plaintiff responded, *inter alia*, that if Defendants were standing on their position, Plaintiff

would go back to Court on this issue, so Plaintiff asked for a response to that question by June 7. On

June 8, Defendants responded that they "will respond as soon as we can. All of our attention is

currently focused on preparing additional productions. . . ." *Id.*

In light of the Court's admonition at the March 25, 2022 hearing that in-person meetings often

facilitate resolution of discovery disputes, on June 14, Plaintiff asked for an in-person meet and confer

on this issue, noting that Plaintiff would be happy to either host the meeting or travel to Defendants'

counsel's office. *Id.* Defendants ignored Plaintiff's request for an in-person meeting. *Id.* ¶ 11.

C.    <u>Defendants' Responses To Plaintiff's RFAs And Other Requests</u>

Plaintiff served RFAs on Defendants in December 2020, now over a year and a half ago.

Weber Decl. ¶ 5; Exs. D-E. Defendants moved to stay discovery (based upon their pending motions to

dismiss) and their first responses consisted solely of objections. *Id.* ¶ 6. On June 25, 2021, this Court

denied Defendants' motion to stay discovery. Dkt. 75.

After this Court issued its order denying Defendants' motion to stay discovery, Plaintiff

engaged in multiple meet and confer efforts with Defendants, including regarding Defendants' initial

RFA responses. During this meet and confer process, Defendants confirmed that they were prepared to

substantively respond to the discovery requests concerning personal jurisdiction over Broadcom Inc.,

and that they would contact Plaintiffs should any confusion arise as to plain terms. Weber Decl. ¶ 6;

Ex. F at 3, 5.

5

On October 4, 2021, Defendants served their "first supplemental" responses to the RFAs, which are the RFA responses at issue here. Weber Decl. ¶ 7; Ex. G ("Ex. G." or "Brocade RFAs"); Ex. H ("Ex. H." or "Broadcom RFAs"). Like Defendants' interrogatory responses and RFPs that were the subject of Plaintiff's motion to compel and the April 22 Order, the RFAs: (i) improperly incorporate eight pages of "general objections" into each and every response; (ii) are filled with boilerplate objections; (iii) object to defined terms that are proper and unambiguous (including ones that the parties already met and conferred over); and (iv) object to plain English terms.

On April 22, 2022, the Court issued its Order compelling Defendants to fully and substantively respond to Plaintiff's Interrogatories and RFPs. Because many of the same deficiencies that this Court found in those responses are also present in Defendants' RFA responses, on June 2, Plaintiff asked Defendants to amend/supplement their RFA responses to comply with the Order.[3] Plaintiff raised additional issues in this letter—such as Brocade's failure to produce a balance sheet, as ordered, and Defendants' failure to provide marketing materials and missing product-related services information. Weber Decl. ¶ 14; Ex. R.

On June 28, Defendants responded that they were too focused on document production to address these issues and that future productions could moot some of them. That same day, Plaintiff asked Defendants to identify which issues might be mooted. Rather than directly answering this question, Defendants served a letter that contained, *inter alia*, the repeated generic statement that "we assume this issue is moot" in light of recent financial and other productions. Defendants also asserted

---

[3] The Order already addressed Extreme's deficient RFA responses because Plaintiff had moved to compel them, and Extreme's RFA responses shared many of the same deficiencies used in Broadcom Inc.'s and Brocade's RFA responses. *See, e.g.*, Order at 8 (overruling Extreme's objections to "SNMP Research Software" and ordering Extreme to respond to thirty-seven RFAs); *id.* at 11 (ruling that "Extreme's objections to the 'plain' terms are without merit" and ordering Extreme to fully respond to, *inter alia*, thirty-three RFAs).

that the Court's Order did not require Defendants to amend their responses to Plaintiff's RFAs. Weber Decl. ¶ 15; Exs. S-T.

The parties continued to exchange emails, and on July 7, Plaintiff wrote to inquire about several outstanding issues, including Plaintiff's request for Brocade's balance sheet, the missing product-related services information, and Defendants' failure to substantively respond to requests concerning marketing and selling infringing products to Tennessee. Weber Decl. ¶ 15; Ex. T. On July 12, Plaintiff noted that it had asked Defendants to amend their RFA responses and address numerous other discovery deficiencies more than a month prior (on June 2), and that the Court's order regarding personal jurisdiction evidentiary supplements (Dkt. 147) required that the issues be promptly addressed. Ex. T.

On July 15—after further email exchanges—Defendants ultimately responded by stating that Plaintiff had not moved to compel on the RFAs and that rather than providing supplemental responses to conform to the Court's April 22 Order, Defendants were willing to meet and confer some more to discuss "unresolved objections" that Defendants believed were not resolved by that Order. Defendants took this position despite the fact that more than 18 months have passed since Plaintiff first served its RFAs, and despite the parties' numerous meet and confer calls. Defendants also refused to identify documents that they believe were responsive to Plaintiff's request for a balance sheet by Bates number, and generally referred Plaintiff to the categories of information Brocade listed in its response to the RFP that sought production of the balance sheet. (None of this information was a Brocade balance sheet or showed Brocade's assets and liabilities from 2017 to present.) Among other things, Defendants also stated that they had adequately responded to Plaintiff's discovery directed at marketing and sales to Tennessee and refused to supplement. Ex. T.

Given Defendants' repeated delays, their repeated backtracking from what was agreed upon in prior meet and confers (described above)[4], and the need for prompt resolution of the personal jurisdiction-related issues, Plaintiff files this Motion. Plaintiff has attempted in good faith to meet and confer with Defendants on the issues raised herein.

## III.    ARGUMENT

### A.    The Broadcom "Affiliates" Issue

Plaintiff respectfully requests the Court to order Defendants to answer all requests for each relevant Broadcom "affiliate." Defendants have repeatedly contended that every Broadcom entity other than the two named Defendants is "completely irrelevant" to this case. Weber Decl. ¶ 11; Ex. J. Yet the Court stated:

> Defendants are cautioned that—although the Court is limiting the entities at issue due to the immediate need of getting the parties engaged in a productive discovery process—they must provide more than mere general and boilerplate burden and proportionality objections. For example, to the extent a specific entity may be completely irrelevant to this matter, Defendants must—at a minimum—state as such for the specific entity instead of in a general statement relating that the sheer number of entities makes Plaintiff's requests unduly burdensome.

Order at 17.

Plaintiff asked Defendants five simple and straightforward questions about the "affiliates" of Broadcom Inc. (which claims to be a pure shell entity that is simply a "parent holding company"; *see* Dkt. 119-3), in order to probe Defendants' definition of "completely irrelevant." Ex. J. Defendants would not answer any of the above questions and would not meet and confer with Plaintiffs to discuss the affiliates issue. They did not claim that the information is unknown to them, or too burdensome to ascertain, or protected by any privilege. Instead, Defendants' position was that, if an entity is not

---

[4] For example, Defendants' RFA responses are also inconsistent with an agreement that Defendants made in the summer of 2021, when they committed to initially respond to the RFAs using only the entities named in the complaint in lieu of the defined terms You/Your/Broadcom. Weber Decl. ¶ 6; Ex. F. Yet, their supplemental RFA responses—the ones at issue here—continue to express supposed confusion about the meaning of You/Your/Broadcom as well as "Broadcom Inc."

"named in the complaint," it is completely irrelevant—apparently even if it is currently using Plaintiffs' source code and selling or distributing product (or software) that contains Plaintiffs' copyrighted software (which we now know is simple enough to ascertain by just searching for the words "SNMP Research"); *see, supra*, § II.B, italicized and bolded text. Weber ¶ 4; Ex. C.

Defendants' position is baseless. Discovery is not limited to the parties "named" in a complaint; otherwise there would be no such thing as a third-party deposition subpoena. *Thompsons Film, LLC v. Does 1-44*, No. 1:13 CV 595, 2013 WL 4046404, at *1 (N.D. Ohio Aug. 8, 2013) ("Discovery may involve any person, whether or not that person is identified in the Complaint.") (quotations omitted); *see also In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995) ("A party has control for purposes of Rule 34 if it has the legal right to obtain the requested documents on demand."); *Eitel v. PNC Bank, N.A.*, No. 3:20-CV-00012-RGJ-RSE, 2022 WL 885043, at *8 (W.D. Ky. Mar. 24, 2022) ("A corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls.") (quotations omitted); *Great W. Life Assur. Co. v. Levithan*, 152 F.R.D. 494, 498 (E.D. Pa. 1994) (ordering production of records over individual who was "not a named defendant in this proceeding," noting that "we do not see how this insulates her or her business or her records from the discovery process."). Nor can a Broadcom affiliate use and distribute products (or software) containing Plaintiff's SNMP Research Software without a license, just because that affiliate may have obtained that software by some other mechanism than via Brocade directly disclosing it to the affiliate.[5] Copyright infringement is copyright infringement, regardless of the precise mechanism by which each Broadcom affiliate obtained the SNMP Research Software or which affiliate is doing the actual distribution/sale. The mere fact that Plaintiffs know of one way that infringement occurred (based on

---

[5] Plaintiffs have excluded from the definition of "SNMP Research Software" the "software rightfully distributed to a Broadcom customer under the Amended and Restated Key Distribution Agreement between SNMP Research International, Inc., and Broadcom Corporation[.]" Dkt. 116-5 (Plaintiff's First Set of RFPs to Broadcom) at p. 3.

Defendants' pre-suit admissions) and thus included that one way in the complaint doesn't render other ways infringement is occurring (or has occurred) "completely irrelevant."[6]

Plaintiff respectfully requests the Court to order that Defendants answer all discovery requests for each "affiliate" that (i) has/had Plaintiff's SNMP Research Software, (ii) has/had source code with the words "SNMP Research" in them, or (iii) has distributed or sold products containing Plaintiff's SNMP Research Software. Specifically, those affiliates should be included within the definition of "Broadcom," without waiver to Plaintiff's ability to include additional affiliates based on future discovery. In the alternative, Plaintiff respectfully requests that the Court include all of Broadcom Inc.'s affiliates within the definition "Broadcom," or at the very least, order Defendants to answer the five questions set forth above, so the Court and Plaintiffs will then know all of the entities within the Broadcom family that use/used SNMP Research Software, that have/had source code with the words "SNMP Research" in them, or that distribute/sell products that contain SNMP Research Software. This is hardly too much to ask before any entities are discarded based on Defendants' own say-so that it is "completely irrelevant" to this case.

B. <u>Discovery Directed To Defendants' Marketing And Sale Of The Accused Products, Including In Tennessee</u>

Defendants continue to engage in semantics to avoid providing straightforward responses to discovery regarding the marketing and sale of the accused products, including in Tennessee and in this District. Defendants should be ordered to provide complete responses to the following discovery: (i) Brocade Interrogatories 16-20, RFPs 16-20 and 74-77, and RFAs 41-60 (for any that are not deemed admitted; *see, infra*, Section C.II); and Broadcom Inc. Interrogatories 17-22, RFPs 18-22, 70-71, 73-80, 83-84, and RFAs 30-41 (for any that are not deemed admitted; *see, infra*, Section C.II).

---

[6] The organization charts produced by Defendants show how easy it would be for Defendants to play a shell game with their entities when it comes to unlawful use and distribution of Plaintiff's SNMP Research Software. *See* Exs. K-M.

Broadcom Inc. fails to answer Interrogatories 18-20 and RFPs 19-21 because it does not answer Interrogatory 1, which requested identification of "all Broadcom Products that contain, use or are otherwise associated with SNMP Research Software." Plaintiff defined "Broadcom" to include its subsidiaries (*i.e.* to include Brocade). The Court limited the "the entities subject to Plaintiff's discovery requests to only 'Broadcom' and 'Brocade' at this time," Dkt. 131 at 17, yet Broadcom Inc. interpreted Interrogatory 1 to **<u>exclude</u>** "Brocade." Rather than identify all Brocade products in response to Interrogatory 1 and then respond to the remaining discovery requests accordingly, Broadcom Inc. construed Interrogatory 1 to only encompass "Broadcom Inc." and responded that Broadcom Inc. is a holding company that does not have products or employees. Thus, Broadcom Inc. evaded all the other requests tied to its response to Interrogatory 1 which should, at the very least, have included the Brocade products at issue in this case.

For example, Interrogatory 20 asked Broadcom Inc. to identify all products responsive to Interrogatory 1 for which "Broadcom was directly or indirectly involved in marketing, advertising, selling, servicing, or distributing in the area encompassing all or part of the Eastern Grand Division of Tennessee . . . ." Broadcom Inc. responded to Interrogatory 20 by stating that "[n]o products were identified in response to Interrogatory number 1." Broadcom Inc. therefore did not provide a full and substantive answer about its direct or indirect involvement in the marketing and sale of the Brocade products at issue in this case in the Eastern Grand Division of Tennessee. *See also* Broadcom Inc. Interrogatories 18-20, RFPs 19-21. Likewise, in response to RFPs 22, 70-71, 73-81, 83, and 84, Broadcom Inc. refused to answer because it did not answer Interrogatory 1, or because it self-identifies as a "holding company." These are semantic games, not legitimate reasons to refuse to fully and substantively answer the requests, as the Court has already ordered.

Relatedly, Interrogatory 17 to Broadcom Inc. asks if "Broadcom has ever acted as an agent for Brocade, either directly or indirectly," and to identify the location of where such acts occurred. Broadcom Inc. responded by simply answering that it is "not aware" of instances where it acted as an

agent for Brocade, and cited its familiar refrain that it is a holding company. Broadcom Inc. Interrogatory 17. On June 2, 2022, Plaintiff wrote to Defendants that this response made no sense given the number of times Broadcom Inc. communicated with other entities (including Plaintiffs) on behalf of Brocade with respect to the conduct underlying this case. Ex. R at 3. As one example, Plaintiff asked Broadcom Inc. to explain why it believed that Broadcom Inc.'s August 1, 2019 letter to Defendant Extreme Networks, Inc. was not responsive to this request. (The August 1 letter was written on "Broadcom" letterhead and signed by Broadcom Inc.'s associate general counsel, who informed Extreme that Brocade—which Broadcom Inc. described as a "wholly owned subsidiary of Broadcom Inc."—had not transferred the SNMP Research Software to Extreme as part of the sale of Brocade's Data Center Business. Weber Decl. ¶ 3; Ex. B.) When Defendants responded to Plaintiff on June 28, they refused to directly answer the question and declined to supplement Broadcom Inc.'s response. Weber Decl. ¶ 15; Ex. S.

Relatedly, Brocade answers Interrogatories 16-20 and RFPs 16-20 and 74-77 by stating that Broadcom Inc. is a holding company and not an operating company and thus is not involved in, *e.g.*, sales or licensing. However, the fact that Broadcom Inc. purportedly considers itself a holding company does not mean Broadcom Inc. is not involved in such activities. (Plaintiffs are still reviewing Brocade's recent document productions, the vast majority of which have only been produced within approximately the past month. Plaintiffs will be submitting their Evidentiary Supplement as ordered by the Court (Dkt. 147) on July 22, 2022, which will more fully address the issue of Broadcom Inc.'s assertion that it is a mere holding company that supposedly does nothing.)

Moreover, Brocade has not meaningfully answered RFAs 41–60, and Broadcom Inc. has not meaningfully answered RFAs 30–41, each of which concern the distribution, marketing, or sale of products containing Plaintiff's software. Those RFAs are addressed immediately below in Section C.

C.    Deficient RFA Responses

Plaintiff requests that Defendants be ordered to amend the responses to all RFAs except for the ones that should be deemed admitted, as discussed in Section C.2. For the following RFAs, Plaintiff seeks deemed admissions pursuant to Federal Rule of Civil Procedure 36(a)(6): (1) Broadcom Inc.'s response to RFAs 32-47; and (2) Brocade's response to RFAs 24- 27, 29, 31, 33, 35, 37, 39, 42, 44, 46, 48, 50, 52, 54, 56, 58, and 60. *See* Fed. R. Civ. Proc. 36(a)(6) ("On finding that an answer does not comply with this rule, the court may order either that the matter is admitted. . .").

1.    Improper RFA Objections

Plaintiff propounded its RFAs 18 months ago in December 2020. Defendants' first "responses" contained nothing but boilerplate objections. Weber Decl. ¶ 6. Defendants' "First Supplemental Responses," served in October 2021—the responses at issue here—engage in the same type of behavior that this Court identified in its April 22 Order as an abuse of the discovery process. For instance, Defendants continue to "incorporate by reference" **twenty-five** "General Objections" (encompassing eight pages) into each and every response. Weber Decl. ¶ 7; Ex. H at 3 ("The following general objections apply to all of the Requests and are incorporated by reference into each specific answer as if fully set forth therein."); *see* Order at 5.

Defendants also use the same "boilerplate" objection approach they did in their interrogatory and RFP responses. Plaintiff need not cite specific responses because the Court can simply turn to **any** one of the responses and it is apparent on the face of each one. But as just one example, Plaintiff asked the following simple question of Broadcom Inc., which is relevant to Plaintiff's opposition to Broadcom Inc.'s personal jurisdiction and venue motion: "**Admit that You are relying, either in whole or in part, on the License Agreement as part of Your defense of this action**."[7] Weber Decl.

---

[7] The License Agreement, which lies at the heart of this case, contains a Knoxville exclusive jurisdiction/venue clause. *See* Dkt. 1 ¶ 25.

Ex. H, RFA 50. Broadcom Inc.'s two pages of objections (not to mention the eight pages of "General Objections" incorporated by reference) include, but are not limited to, a contention that the phrases "relying, either in whole or in part" and "defense of this action" are vague and ambiguous. Broadcom Inc. also objects on the basis of various privileges (though Defendants have provided no privilege log despite promising in writing to provide one by July 15, 2022) as well as the "constitutional right to privacy, and the Federal Rules of Civil Procedure." **No admission or denial is provided to this request that is highly relevant to Broadcom Inc.'s assertion of lack of personal jurisdiction.** Notably, Plaintiff also asked Broadcom Inc. the converse of RFA 50 in RFA 51: "Admit that You are not relying, either in whole or in part, on the License Agreement as a part of Your defense of this action." Broadcom Inc. responded identically and also failed to admit or deny this RFA.

Defendants also repeatedly object to the defined terms "SNMP Research Software" and "Product," which this Court has held are unambiguous, appropriate, and not unduly burdensome. Weber Decl. ¶ 7; Exs. G-H; *see* Order at 9, 19. Defendants continue to object to plain English terms, including many of the terms that this Court already has held are unambiguous and which Defendants used in their own propounded discovery. Weber Decl. ¶ 7; Exs. G-H; *see* Order at 18 ("Defendants' feigned ignorance as to some of these terms appears to be disingenuous.").[8] In many instances, after a litany of boilerplate objections and an incorporation by reference of eight additional pages of objections, Broadcom Inc. states that "Broadcom is unable to respond to this Request as framed" and then either does not respond at all or follows that statement with a denial.[9] These responses should be

---

[8] The plain English terms that Defendants object to include but are not limited to: advertise, market, affirmative, agent, attempt, asked, aware, compiled, confidential, contain, consent, defense (your defense of this action), distribute, directed, directly, indirectly, employees, facilitate, found, in connection with, inserted, added, live in, located, makes, provides, permission, received, relying, required, reside in, transfer, work. Weber Decl. ¶ 7; Exs. G-H.

[9] In particular, Broadcom does not admit or deny RFAs 21, 23-29, 44-51. It states that it cannot answer RFAs 3-6, 9-10, 13-20, 22, 30-43 but then denies them. It also refuses to respond to RFAs 7, 8, 11-12 on the grounds that it refused to identify any products in response to Interrogatory 1. Likewise, Brocade does not admit or deny RFAs 3-8, 21-40, 61-62, 67,-68, it denies RFAs 41-60 even after

14

deemed admitted because they do not comply with Rule 36(a)(4). *See, e.g.*, *Tustin v. Motorists Mut. Ins. Co.*, No. 5:08-CV-111, 2009 WL 3335060, at *3-6 (N.D.W. Va. Oct. 14, 2009) (deeming RFAs admitted under Rule 36(a)(6) for failure to comply with 36(a)(4), holding that defendants' "admissions" were improperly qualified, littered with "overly broad, burdensome, oppressive and irrelevant" objections, and improperly objected to plain terms like "reasonable" and "necessary," and that defendants' "denials" were "not a forthright, specific, and unconditional denial"), *aff'd*, 668 F. Supp. 2d 755 (N.D.W. Va. 2009); *In re Norris*, No. 11-61150, 2012 WL 1565602, at *3 (Bankr. N.D. Ohio May 2, 2012) (deeming RFAs admitted under Rule 36(a)(4) because the responses "generally lack[ed] good faith"). Clearly, Defendants' responses to these RFAs fail to meet the requirements of Rule 36(a)(4), which states that "[a] denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." *See Tustin*, 2009 WL 3335060, at *6 ("It is expected that denials will be forthright, specific, and unconditional; and if it is not, it will be treated as an admission.") (quotations omitted).

Defendants issued these discovery responses prior to this Court's Order. However, this Court made clear in the Order that the approach Defendants have taken in these RFA responses is patently inappropriate (*i.e.*, it overruled that approach in the context of their near-identical responses to the RFPs and Interrogatories). Defendants knew this no later than April 22, 2022, when this Court issued its Order, and in fact Defendants knew it when this Court stated essentially the same thing from the bench at the March 25, 2022 hearing. Weber ¶ 9; Ex. I at 92:19-20 (responses were "willfully inadequate").[10]

---

stating that it cannot answer them, and it outright refuses to answer the RFAs regarding whether Plaintiff's copyrighted material was incorporated in shipped Brocade products. Brocade RFAs 13-20.

[10] Plaintiff is using the phrase in the written transcript, but Plaintiff's recollection from the hearing was that the Court used the phrase "woefully inadequate."

Thus, Defendants have had **four months** to address this issue, yet they have refused to do so despite Plaintiff's repeated requests.

Given these circumstances, Plaintiff respectfully requests that the Court order Defendants to immediately amend their responses to all of the RFAs (except those discussed immediately below, for which Plaintiffs seek to have the inappropriate responses deemed admitted) so that they are in strict compliance with the Court's Order.

    2.  RFAs Concerning Broadcom Inc.

For the RFAs concerning Broadcom Inc., Plaintiff seeks deemed admissions under Rule 36(a)(6). *See* Fed. R. Civ. Proc. 36(a)(6) ("On finding that an answer does not comply with this rule, the court may order []that the matter is admitted. . ."). In these requests concerning Broadcom Inc., Defendants not only took, and more importantly have refused to correct, the improper approaches admonished in the April 22 Order, they also intentionally feigned ignorance about the meaning of "Broadcom Inc.," claiming it was an allegedly overbroad and/or vague and ambiguous defined term when it clearly was not. Rather, "Broadcom" is a defined term in the RFAs that includes, *inter alia*, affiliates and subsidiaries. "Broadcom Inc." simply refers to defendant Broadcom Inc. *See* Plaintiff's RFAs to Brocade 25-39, 42-60 (containing identical sets of requests, one using the broader (defined) term "Broadcom," and one simply using "Broadcom Inc.", amply demonstrating these terms are not the same).

Defendants' gamesmanship is especially problematic given that these RFA responses are important to defending against Broadcom Inc.'s pending motion to dismiss on personal jurisdiction grounds. *See, e.g.*, RFA 48 to Brocade ("Admit that Broadcom Inc. has previously been involved in the distribution of Your Products containing SNMP Research Software to Tennessee."). Defendants still refused to amend their RFA responses **even after the Court asked for supplemental evidentiary submissions on the personal jurisdiction issue to be filed by July 22, 2022** (less than one week from now). Weber Decl. ¶ 16; Ex. T; *see* Docket 147.

Defendants have had ample time to correct this issue and have a duty to correct their responses in light of the Court's order. *See* Fed. R. Civ. Proc. 26(e)(1)(A)-(B) ("A party who has . . . responded to [a] . . . request for admission . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect" or "as ordered by the court"); Fed. R. Civ. Proc. 37(b)-(c); *Bridgestone Americas, Inc. v. Int'l Bus. Machines Corp.*, No. 3:13-CV-1196, 2016 WL 11786195, at *9-11 (M.D. Tenn. Oct. 31, 2016), *aff'd*, 2017 WL 1021291 (M.D. Tenn. Mar. 16, 2017) (sanctioning party who failed to supplement as required under Rule 26(e) because the failure was not "substantially justified or harmless"). Their failure to correct the deficiencies in their RFA responses is a failure to make timely supplementation as required by the Rules and, in effect, disregarding this Court's April 22 Order. Moreover, because the personal jurisdiction issue could be ruled upon any day now, Defendants' discovery abuses and failure to do their duty and obey this Court's Order are highly prejudicial to Plaintiffs. Consequently, this Court should deem admitted Broadcom Inc.'s responses to RFAs 32-47, and Brocade's responses to RFAs 24- 27, 29, 31, 33, 35, 37, 39, 42, 44, 46, 48, 50, 52, 54, 56, 58, and 60. *See* Fed. R. Civ. Proc. 36(a)(4), (6); *see also Nurse Notes, Inc. v. Allstate Ins. Co.*, No. 10-CV-14481, 2011 WL 2173934, at *5 (E.D. Mich. June 2, 2011) (deeming RFA that listed "boiler plate" and "unsupportable" objections admitted for non-compliance with Fed. R. Civ. P. 36(a)(4)).

D.     Brocade RFPs 43 and 47

RFP 43 requests that Brocade produce its "financial statements, including but not limited to any balance sheets, income statements, or similar Documents, from October 1, 2017, to the present." RFP 47 requests that Brocade produce: "All financial Documents reflecting Your current assets, liabilities, and income." This Court ordered that Brocade respond in full to these requests. Order at 15-16. Yet, based on Plaintiff's diligent investigation to date, Brocade still has not produced its balance sheet or any other document (even if not titled "balance sheet") reflecting Brocade's current assets and liabilities, or any document reflecting Brocade's assets and liabilities for any year from 2017 to the present.

After months of stonewalling Plaintiffs on this simple request,[11] Brocade's counsel wrote in an email that "[m]y understanding is that Brocade doesn't create documents titled 'balance sheets' or 'income statements,' but we produced MANY documents detailing the same types of financial information. What specifically are you looking for that you believe is relevant to the personal jurisdiction issue?" Weber Decl. ¶ 16; Ex. T at 5. Plaintiff responded by advising of what it was seeking and the relevance—despite the fact that it didn't need to prove relevancy to Defendants **as this Court had already ordered the production of such information**—and asked Defendants to please identify the documents that they assert provided the requested information (among other things, Brocade's assets and liabilities on an annual basis). Weber Decl. ¶ 16; Ex. T at 3. Defendants responded on July 15, and instead of identifying the documents requested, pointed broadly to, *inter alia*, Broadcom Inc.'s financial statements on the SEC's website (which do not break out **Brocade's** assets and liabilities); the publicly-available balance sheet of Brocade's predecessor (a balance sheet **for fiscal year 2016**, i.e. before Broadcom Inc. acquired Brocade, which does **not** answer the information requested and ordered); quarterly PowerPoint "profit and loss presentations" (that provide no Brocade asset and liability data); and "raw data extracts" (that provide no Brocade asset and liability data). Weber Decl. ¶ 16; Ex. T at 1-2. Defendants' response is improper. *See Mullins v. Prudential Ins. Co. of America*, 267 F.R.D. 504, 514 (W.D. Ky. 2010) ("A party who seeks to rely upon [Rule 33(d)] must not only certify that the answer may be found in the records referenced by it, but also "must specify where in the records the answers [can] be found.") (quotations omitted). Notably, Defendants still do not expressly state that asset/liability information for Brocade for the years 2017 to present is unavailable to them. They just keep vaguely directing Plaintiffs to "financial" documents

---

[11] Plaintiffs propounded the request 18 months ago. Just two-and-a-half weeks after Defendants made their first production after being ordered to do so, Plaintiffs noted to Defendants that Defendants had not produced a balance sheet for Brocade. Weber Decl. ¶ 14; Ex. R.

that simply do not provide the requested information as to Brocade's assets and liabilities, as ordered by the Court when it compelled production in response to RFPs 43 and 47.

This information is important because, among other things, Defendants' production of product level revenue information reveals that Brocade's sales of infringing product exceed $1 billion in revenues and potentially far exceed it. Weber Decl. ¶ 18. Under the copyright remedies statute, Defendants face potential disgorgement of the profits associated with these revenues (depending upon apportionment). 17 U.S.C. § 504(b). Brocade made these revenues with full knowledge of its lack of a license (and thus its infringement), and yet Defendants will not produce ordered documents showing the state of Brocade's own assets and liabilities. So left unanswered is the question: what happened to the more than $1 billion in infringing revenues subject to disgorgement? This strongly indicates a potential for inadequate capitalization, which is one factor in analyzing whether or not Broadcom Inc. (which wholly owns Brocade) is subject to personal jurisdiction based on Brocade's contacts with Tennessee, as will be demonstrated in Plaintiff's upcoming (on July 22, 2022) submission to the Court on personal jurisdiction. *See, e.g., Crawford v. Allenbrooke Nursing & Rehab. Ctr.*, 2021 WL 3926243, *8 (W.D. Tenn. Sept. 1, 2021) (one of the factors supporting personal jurisdiction over a parent based on the forum contacts of its subsidiary is whether the subsidiary is "undercapitalized").

Given the District Judge's call for evidentiary submissions relating to personal jurisdiction, the Defendants' jurisdictional motion could be decided any time now, and immediate production of the information is merited. Moreover, if Defendants are really contending that they have no way of ascertaining Brocade's current assets and liabilities (or annual historical assets and liabilities for each year since 2017), then this assertion should come in an affidavit from the person at Brocade and/or Broadcom Inc. with the most knowledge of Brocade's financial information. Plaintiff also respectfully requests an order precluding Defendants from arguing that Brocade is adequately capitalized until it has made the required production and Plaintiffs have had the opportunity to conduct any necessary follow-up discovery (including but not limited to depositions) on that topic. When "a party fails to provide

information . . . the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see Bessemer & Lake Erie Railroad Company v. Seaway Marine Transport*, 596 F.3d 357 (6th Cir. 2010) ("For exclusion of evidence under Rule 37(c) . . . the sanction is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless.") (quotations omitted); *Bridgestone Americas, Inc.*, 2016 WL 11786195, at *7 ("[F]ailure to obey a discovery order may result in the party being prohibited 'from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence.'").

E.  Brocade Interrogatory 9

Brocade Interrogatory 9 provides: "Identify the revenues and costs of any other Products or services (including but not limited to installation or other services) that were sold with or as a result of the purchase of the Products Identified in response to Interrogatories 1 and 2. Please delineate the aforementioned revenues and costs by Product or service name." Brocade's response has not done this. Its response instead generally refers to various documents, such as "raw data extracts" and "profit and loss presentations," which Brocade does not even identify by Bates numbers. Weber ¶ 12; Ex. P.

Despite its best efforts, Plaintiff was not able to identify Brocade's product support revenues, and repeatedly attempted to meet and confer on this issue. On July 11, Brocade pointed Plaintiff to a supposedly exemplar set of responsive spreadsheets, which are not cited in Brocade's response to Interrogatory 9. Weber Decl. ¶ 16; Ex. T at 5. When Plaintiff asked for Brocade to provide all other responsive Bates numbers that identify the revenues and costs of products or services sold with or as a result of the purchase of the accused products, Brocade (1) refused to identify any additional responsive documents and instead (2) backtracked on its prior response by stating that it had actually provided spreadsheets "detailing all product and global services revenue for Brocade going back to January 1, 2017." Weber Decl. ¶ 16; Ex. T at 2. In other words, the documents Brocade referenced do not **tie the requested product services revenue information to the accused products** as was requested and

ordered and there is no apparent way to do that tie-in from the documents that Brocade references in its interrogatory response. Because Brocade has not provided the information requested in the manner requested it has not "fully and substantively" responded (Order at 23) to the actual interrogatory posed. Fed. R. Civ. Proc. 33(b)(3) ("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."); *see Mullins*, 267 F.R.D. at 514 (Rule 33(d) requires certifying that the answer may be found in the referenced records and specifying where the answer can be found); *see generally Lynn v. Monarch Recovery Mgmt., Inc.*, 285 F.R.D. 350, 358 (D. Md. 2012) (defendants' provision of a general list of information of calls made was insufficient where plaintiff had requested that defendant "match each call made to [p]laintiff with the originating office and telephone number.").

Plaintiff respectfully requests the Court to order compliance with the April 22 Order by requiring Brocade to immediately provide a clear and complete answer to Interrogatory 9 that breaks out the revenues and costs of any products or services sold with or as a result of the purchase of the products identified in response to Interrogatories 1 and 2 (i.e., it identifies which products or services were sold with or as a result of the purchase of infringing products), and delineates those revenues and costs by product or service name. In doing so, if Brocade relies to any extent on documents, Brocade should be ordered to specify the documents upon which it is relying, by Bates number, and to provide information as to data fields, data field descriptions, and data value descriptions, which will enable Plaintiff to interpret any referenced or produced financial documents and discern the meanings of abbreviations.

F.    Defendants' Improper Refusal To Provide Information On The Basis That They Do Not "Track" It

Defendants objected to several of Plaintiff's Interrogatories on the basis that Defendants do not "track" or "possess" the information requested. *E.g.*, Brocade Interrogatories 5-6, 9-10, 21; Broadcom Inc. Interrogatory 21. Plaintiff pointed out in its prior motion to compel that Defendants improperly

objected that they do not "track" certain requested information, Dkt. 116 at 22, and the Court ordered Defendants to fully respond. Yet Defendants are doing the same thing again.

In its supplemental responses, Brocade continues to object to many requests "to the extent" that it does not "track," "maintain," or "possess" the information requested. *See* Brocade Interrogatories 5-6, 9-10, 21 to Brocade; *see also* Broadcom Inc. Interrogatory 21. Rather than identifying the information requested, Brocade points generally to documents of its own choosing that do not answer the question asked.[12] Defendants sometimes declined to respond at all.[13] For example, Interrogatory 10 asks Brocade to identify each and every third-party seller/reseller of each iteration of each product identified in response to Interrogatories 1 and 2, and to identify the release of each product sold by each seller/reseller. Brocade's response is substantively identical to its prior, deficient response wherein it merely listed a <u>sampling</u> of its OEMs and then asserted that it does not "track" downstream sales by its customers to third-party sellers or resellers, or sales by those sellers or resellers to others. Weber Decl. ¶ 12; Ex. P.

Defendants' approach is insufficient under this Court's Order and the Federal Rules. Defendants were ordered to "fully and completely" respond to Plaintiff's discovery requests, and Rule 33 also requires responding corporations to provide answers by "any officer or agent, who must furnish

---

[12] For example, Interrogatory 5 seeks information related to identities of partners/customers who received infringing products (plus quantities of products received by quarter), but Brocade responded by generally identifying profit and loss presentations with no customer information, raw extracts from the general ledger with no partner/customer names, and another raw extract without *all* partner/customer names. Additionally, Interrogatory 9 seeks revenues/costs of products and services sold as a result of the infringing products, yet Brocade responded by generally referencing profit and loss presentations that did not identify services sold with infringing products, and by referencing raw extracts that either did not include services information or identified services with no apparent way to connect those services to infringing products. Weber Decl. ¶ 12; Ex. P.

[13] Interrogatory 21 requested Brocade to identify all Brocade partners and distributors marketing and selling products to Tennessee and to organize each answer by Tennessee Grand Division, and Brocade responded that it does not "possess" the information requested. Plaintiff posed the same request to Broadcom Inc. with respect to Broadcom partners or distributors, and Broadcom also responded that it does not "possess" the information requested. *See* Brocade Interrogatory 21; Broadcom Interrogatory 21.

the information available to the party."  Fed. R. Civ. Proc. 33(b)(1)(B); *see also Eitel*, 2022 WL

885043, at *8 (corporate parent must provide documents and information for a subsidiary that it owns

or controls).  It is insufficient for Defendants to simply state that they do not "track" information,

without more.  They are required to conduct a diligent investigation with respect to any and all

information in their possession, custody, or control.  *See Milner v. Nat'l Sch. of Health Tech.*, 73 F.R.D.

628, 632–33 (E.D. Pa. 1977) ("Answers must be complete, explicit and responsive.  If a party cannot

furnish details, he should say so under oath, say why and set forth the efforts he used to obtain the

information.  He cannot plead ignorance to information that is from sources within his control.  If a

party is a corporation, information in the hands of its agents and others within its control must be

supplied."); *see also Mullins*, 267 F.R.D. at 514 (responding party did not adequately respond to

request for identities of individuals by making a "mere general reference to a mass of documents or

records").

Plaintiff respectfully requests that the Court order Brocade to fully and substantively respond to

Plaintiff's Interrogatories 5-6, 9-10, and 21, and for Broadcom Inc. to fully and substantively respond to

Plaintiff's Interrogatory 21.  In the event that Defendants cannot furnish details, they should state as

such under oath, explain why, and detail the efforts used to attempt to obtain the information.


Respectfully submitted,


Dated:  July 19, 2022                   By: /s/ *John L. Wood*
                                        John L. Wood, Esq. (BPR #027642)
                                        Cheryl G. Rice, Esq. (BPR #021145)
                                        Rameen J. Nasrollahi, Esq. (BPR #033458)
                                        EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
                                        900 S. Gay Street, Suite 1400
                                        P.O. Box 2047
                                        Knoxville, TN 37902
                                        (865) 546-0500 (phone)
                                        (865) 525-5293 (facsimile)
                                        jwood@emlaw.com

crice@emlaw.com
rnasrollahi@emlaw.com


By: /s/ A. Matthew Ashley
    A. Matthew Ashley (CA Bar. No. 198235)
    Morgan Chu (CA Bar. No. 70446)
    David Nimmer (CA Bar. No. 97170)
    Olivia Weber (CA Bar. No. 319918)
    IRELL & MANELLA LLP
    1800 Avenue of the Stars, Suite 900
    Los Angeles, California 90067-4276
    (310) 277-1010 (phone)
    (310) 203-7199 (facsimile)
    mchu@irell.com
    dnimmer@irell.com
    mashley@irell.com

    *Attorneys for Plaintiffs*
    *SNMP Research International, Inc.*
    *SNMP Research, Inc.*