# Exhibit 71 to the Olivia Weber Declaration

# UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
**Washington, DC 20549**

_____

# FORM 8-K

_____

**CURRENT REPORT**
**Pursuant to Section 13 or 15(d)**
**of the Securities Exchange Act of 1934**

**Date of Report (Date of earliest event reported)**
**November 17, 2017**

_____

# Brocade Communications Systems, Inc.
**(Exact name of registrant as specified in its charter)**

_____

| | | |
|---|---|---|
| **Delaware** | **000-25601** | **77-0409517** |
| (State or other jurisdiction of incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

**130 Holger Way**
**San Jose, CA 95134-1376**
**(Address of principal executive offices, including zip code)**

**(408) 333-8000**
**(Registrant's telephone number, including area code)**

**Not Applicable**
**(Former name or former address, if changed since last report)**

_____

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☐ Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

Indicate by check mark whether the registrant is an emerging growth company as defined in Rule 405 of the Securities Act of 1933 (§230.405 of this chapter) or Rule 12b-2 of the Securities Exchange Act of 1934 (§240.12b-2 of this chapter).

Emerging growth company ☐

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☐

**Item 1.01 Entry into a Material Definitive Agreement.**

On November 17, 2017, in connection with the Merger (as defined below), Brocade Communications Systems, Inc., a Delaware corporation (the "Company" or "Brocade"), entered into a supplemental indenture dated as of November 17, 2017 (the "Supplemental Indenture") with Wells Fargo Bank, National Association, as trustee ("Wells Fargo"), to the indenture dated as of January 14, 2015 between the Company and Wells Fargo relating to the Company's 1.375% Convertible Senior Notes due 2020 (the "Notes") (as supplemented by the Supplemental Indenture, and as otherwise supplemented or modified prior to the date hereof, the "Indenture"). The Supplemental Indenture provides that, at and after the effective time of the Merger, the right to convert each $1,000 principal amount of the Notes will be changed into the right to convert such principal amount of such Notes solely into cash in an amount equal to the Conversion Rate (as defined in the Indenture) in effect on the Conversion Date (as defined in the Indenture) (as may be increased by any additional shares pursuant to Section 14.03 of the Indenture) multiplied by $12.75.

The foregoing is only a brief description of the Supplemental Indenture and is qualified in its entirety by reference to the Supplemental Indenture, a copy of which is filed as Exhibit 4.1 to this Current Report on Form 8-K.

**Item 1.02 Termination of a Material Definitive Agreement.**

On November 17, 2017, in connection with the consummation of the Merger, the Company repaid all obligations outstanding under its Credit Agreement, dated as of May 27, 2016, by and among the Company, the lenders party thereto and Wells Fargo, as administrative agent for the lenders (as amended by Amendment No. 1, dated August 11, 2017, and as otherwise supplemented or modified prior to the date hereof, the "Brocade Credit Agreement"), and terminated all agreements related thereto. The Company incurred no early termination penalty in connection with the termination of the Brocade Credit Agreement. The foregoing is only a description of the Brocade Credit Agreement and is qualified in its entirety by reference to the full text of the Brocade Credit Agreement, a copy of which is filed as Exhibit 10.1 to the Company's Current Report on Form 8-K, filed on May 27, 2016 and is incorporated herein by reference.

**Item 2.01. Completion of Acquisition or Disposition of Assets.**

As previously reported, on November 2, 2016, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Broadcom Limited, a limited company organized under the laws of the Republic of Singapore ("Ultimate Parent"), Broadcom Corporation, a California corporation, and Bobcat Merger Sub, Inc., a Delaware corporation ("Merger Sub"), pursuant to which Ultimate Parent agreed to acquire the Company through an indirect subsidiary. Broadcom Corporation subsequently assigned all of its rights under the Merger Agreement to LSI Corporation, a Delaware corporation ("Parent"), on December 19, 2016.

On November 17, 2017, Ultimate Parent completed its previously announced acquisition of the Company. Pursuant to the terms of the Merger Agreement, as assigned, Merger Sub merged with and into the Company (the "Merger"), with the Company surviving the Merger as a wholly owned subsidiary of Parent, subject to the terms and conditions set forth therein.

Pursuant to the terms of the Merger Agreement, at the effective time of the Merger (the "Effective Time"), each share of common stock, par value $0.001 per share, of the Company (the "Company Common Stock") that was issued and outstanding immediately prior to such time (other than shares of Company Common Stock that were (i) owned directly by Ultimate Parent, Broadcom Corporation, Parent, Merger Sub or any other direct or indirect subsidiary of Ultimate Parent, (ii) held in treasury of the Company, (iii) held by any subsidiary of the Company or (iv) held by any stockholders of the Company who were entitled to demand and properly demanded appraisals of such shares pursuant to their statutory rights of appraisal in accordance with the General Corporation Law of the State of Delaware) was canceled and converted into the right to receive cash in an amount equal to $12.75 per share, without interest, less any required tax withholding (the "Merger Consideration"). The aggregate consideration paid by Ultimate Parent in the Merger was approximately $6.1 billion, without giving effect to the related transaction fees and expenses.

At the Effective Time, subject to and upon the conditions set forth in the Merger Agreement, each stock option to purchase Company Common Stock (an "Option") with a per share exercise price less than the Merger Consideration (an "In-the-Money Option") that was outstanding and vested as of immediately prior to the Effective Time was cancelled immediately prior to the Effective Time and converted into the right to receive a cash payment ("cashed out"), and each restricted stock unit award covering Company Common Stock (an "RSU Award") that was not assumed (as described below) also was cashed out. The amount of the cash payment for each cashed out Option and cashed out RSU Award equaled the number of shares of Company Common Stock subject to such award multiplied by (i) with respect to a cashed out Option, the excess of the Merger Consideration over the exercise price per share of such Option, or (ii) with respect to a cashed out RSU Award, the Merger Consideration (the "Cash Out Payment").

At the Effective Time, subject to and upon the conditions set forth in the Merger Agreement, each outstanding and unvested In-the-Money Option, each outstanding Option that was not an In-the-Money Option, and each outstanding RSU Award, as of immediately prior to the Effective Time, and, in each case, held by an employee or other service provider of the Company or its subsidiaries who provides service to the Company or its subsidiaries as of immediately following the Effective Time (a "Continuing Service Provider") was assumed by Ultimate Parent and converted automatically into an option (with respect to an assumed Option) or restricted share unit award (with respect to an assumed RSU Award) covering ordinary shares in the capital of Ultimate Parent ("Ultimate Parent Ordinary Shares") having, subject to applicable law, the same terms and conditions as the assumed Option or RSU Award, as applicable (each, an "Assumed Award"), except that (i) each such Assumed Award covers that number of Ultimate Parent Ordinary Shares equal to the number of shares of Company Common Stock subject to such Assumed Award immediately prior to the Effective Time multiplied by 0.0486 (the "Exchange Ratio"), which ratio was determined as the Merger Consideration divided by the volume weighted average price for an Ultimate Parent Ordinary Share for the twenty trading days prior to the closing date of the Merger (the "Closing Date"), and (ii) with respect to an Option that was assumed, the per share exercise price equals the exercise price per share of such Option divided by the Exchange Ratio (the "Assumption Treatment").

At the Effective Time, all other Options not assumed or cashed out pursuant to the Merger Agreement (which includes any Options held by individuals who are not Continuing Service Providers that have a per share exercise price equal to or greater than the Merger Consideration) were cancelled as of immediately prior to the Effective Time in exchange for no consideration.

As of the Closing Date, subject to and upon the conditions set forth in the Merger Agreement, each RSU Award that was subject to performance criteria immediately prior to the Closing Date (a "PSU Award") was treated in accordance with the terms of the applicable PSU Award agreement, including that (i) the PSU Award's performance period was deemed to end on the Closing Date, (ii) the number of units eligible to vest based on performance achievement over the shortened performance period under the PSU Award ("Eligible Units") was determined as of the Closing Date, (iii) 50% of the Eligible Units vested as of immediately prior to the Effective Time, and (iv) the Eligible Units under the PSU Award were treated in the same manner as an RSU Award (whether cashed out or assumed) at the Effective Time, provided that any such Eligible Units that were subject to the Assumption Treatment are scheduled to vest on the one (1) year anniversary of the Closing Date based on continued service through such date, subject to any accelerated vesting as may be specified under any plan, agreement or other arrangement applicable to such PSU Award.

The foregoing description of the effects of the Merger and the Merger Agreement, and the transactions contemplated thereby, is qualified in its entirety by reference to the full text of the Merger Agreement. A copy of the Merger Agreement is incorporated herein by reference as Exhibit 2.1 to this Current Report on Form 8-K.

**Item 2.04 Triggering Events That Accelerate or Increase a Direct Financial Obligation or an Obligation under an Off- Balance Sheet Arrangement.**

*Notes*

The consummation of the Merger constitutes a Fundamental Change and a Make-Whole Fundamental Change under the Indenture (each, as defined in the Indenture). Accordingly, the effective date of the Merger Event and the Effective Date (each, as defined in the Indenture) of the Fundamental Change and the Make-Whole

Fundamental Change is November 17, 2017. The Indenture provides that, as a result of the Fundamental Change, each Holder (as defined in the Indenture) of the Notes shall have the right to either require the Company to purchase its Notes or, alternatively, to surrender its Notes for conversion. In addition, as a result of the Make-Whole Fundamental Change, Holders who convert their Notes during the Make-Whole Fundamental Change Period (as defined below) shall be entitled to convert their Notes at an increased Conversion Rate.

Pursuant to the Indenture, each Holder may, at such Holder's election, surrender Notes for conversion at any time from and after November 17, 2017 and on or prior to 5:00 p.m., New York City time (the "Close of Business"), on January 9, 2018, the business day immediately preceding the Fundamental Change Repurchase Date (as defined below) (the "Make-Whole Fundamental Change Period"). Pursuant to Section 14.03 of the Indenture, the Conversion Rate applicable to Notes that are surrendered for conversion during the Make-Whole Fundamental Change Period, will be increased by 16.1043 shares of Company Common Stock per $1,000 principal amount of Notes to yield a Conversion Rate of 79.8131 shares of Company Common Stock per $1,000 principal amount of Notes. Accordingly, the total amount of consideration to be paid for each $1,000 principal amount of Notes surrendered for conversion during the Make-Whole Fundamental Change Period is expected to be $1,017.62 in cash.

Holders who surrender their Notes for conversion after the Make-Whole Fundamental Change Period will receive solely cash in an amount equal to the applicable Conversion Rate of 63.7088 shares of Company Common Stock per $1,000 principal amount of Notes, multiplied by $12.75, the Merger Consideration. Accordingly, the total amount of consideration to be paid for each $1,000 principal amount of Notes surrendered for conversion after the Make-Whole Fundamental Change Period is expected to be $812.29 in cash.

As an alternative to surrendering Notes for conversion, each Holder has the right, at the Holder's option (the "Repurchase Option"), to require the Company to purchase for cash all of such Holder's Notes, or any portion thereof that is a multiple of $1,000 principal amount, in accordance with the terms, procedures and conditions outlined in the Indenture and the Notes. In order to exercise the Repurchase Option, the Holder must validly tender such Notes from and after November 20, 2017 and on or prior to the Close of Business on January 9, 2018, the business day immediately preceding January 10, 2018 (the "Fundamental Change Repurchase Date").

The Company will purchase such Notes at a price equal to the sum of 100% of the principal amount of such Notes and the accrued and unpaid interest thereon, to, but excluding, the Fundamental Change Repurchase Date. Accordingly, the total amount of consideration to be paid for each $1,000 principal amount of Notes validly tendered pursuant to the Repurchase Option is expected to be $1,000.31 in cash.

In accordance with the Indenture, the Company delivered a notice to Wells Fargo and to the Holders (the "Notice") setting forth the foregoing and containing additional information in relation thereto on November 17, 2017. The foregoing is only a brief description of the Notice and the Indenture and is qualified in its entirety by reference to the Notice, a copy of which is filed as Exhibit 99.1 to this Current Report on Form 8-K, and the Indenture, a copy of which is filed as Exhibit 4.2 to this Current Report on Form 8-K.

*Interest Payments*

Except as provided in the Notes or the Indenture, no payment or adjustment will be made for accrued and unpaid interest in connection with the conversion of any Note. If a Holder surrenders a Note for conversion after the Close of Business on a Regular Record Date (as defined in the Indenture) and prior to 9:00 a.m., New York City time (the "Open of Business"), on the immediately following Interest Payment Date (as defined in the Indenture), then, notwithstanding such conversion, the interest payable with respect to such Note on such Interest Payment Date will be paid, on such Interest Payment Date, to the Holder of record of such Note at the Close of Business on such Regular Record Date. However, if a Holder surrenders Notes for conversion during the period from the Close of Business on any Regular Record Date and prior to the Open of Business on the immediately following Interest Payment Date, then the surrendering Holder must pay to the Conversion Agent, upon surrender of the Notes, an amount equal to the interest payable on such Interest Payment Date on the portion of the Notes being converted.

The Notes bear interest at an annual rate of 1.375%, payable semi-annually in arrears, computed on the basis of a 360-day year of twelve 30-day months. The Interest Payment Dates for the Notes are January 1 and July 1 of each year, and the corresponding Regular Record Date are the immediately preceding December 15 and June 15, respectively.

*Convertible Note Hedge Transactions and Warrants*

In connection with the sale of the Notes, the Company entered into convertible note hedge transactions with respect to Company Common Stock with affiliates of certain initial purchasers and another financial institution, which were intended to reduce potential dilution to Company Common Stock upon any conversion of the Notes and/or offset any cash payments the Company would be required to make in excess of the principal amount of converted Notes. In connection with the Merger, the Company intends to terminate the convertible note hedge transactions.

**Item 3.01. Notice of Delisting or Failure to Satisfy a Continued Listing Rule or Standard; Transfer of Listing.**

The information set forth under Item 2.01 of this Current Report on Form 8-K is incorporated herein by reference.

On November 17, 2017, the Company notified the NASDAQ Global Select Market ("NASDAQ") of the consummation of the Merger. In connection therewith, the Company notified NASDAQ that each outstanding share

of Company Common Stock (except as described in Item 2.01 hereof) was converted pursuant to the Merger Agreement as set forth under Item 2.01. The Company requested that NASDAQ file a notification of removal from listing on Form 25 with the Securities and Exchange Commission ("SEC") with respect to the Company Common Stock and to deregister the Company Common Stock pursuant to Section 12(b) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"). Trading of Company Common Stock on NASDAQ ceased prior to the opening of trading on November 17, 2017. The Company will file with the SEC, on Form 15, a certification and notice of termination of the registration of the Company Common Stock under Section 12(g) of the Exchange Act and suspension of its obligations to file reports under Sections 13 and 15(d) of the Exchange Act.

**Item 3.03. Material Modification to Rights of Security Holders.**

The information set forth under Items 2.01, 3.01 and 5.03 of this Current Report on Form 8-K is incorporated herein by reference.

As a result of the Merger, each share of Company Common Stock that was issued and outstanding immediately prior to the Effective Time (except as described in Item 2.01 hereof) was converted, at the Effective Time, into the right to receive the Merger Consideration. Accordingly, at the Effective Time, the holders of such shares of Company Common Stock ceased to have any rights as stockholders of the Company, other than the right to receive the Merger Consideration.

**Item 5.01. Changes in Control of Registrant.**

The information set forth under Items 2.01, 5.02 and 5.03 of this Current Report on Form 8-K is incorporated herein by reference.

On November 17, 2017, as a result of the Merger, a change in control of the Company occurred, and the Company became a wholly owned subsidiary of Parent.

**Item 5.02. Departure of Directors or Certain Officers; Election of Directors; Appointment of Certain Officers.**

The information set forth under Item 2.01 of this Current Report on Form 8-K is incorporated herein by reference.

In accordance with the terms of the Merger Agreement, from and after the Effective Time, (i) the officers of Merger Sub immediately prior to the Effective Time became the officers of the Company and the directors of Merger Sub immediately prior to the Effective Time became the directors of the Company, in each case until their respective successors are duly elected, appointed or qualified or until their earlier death, resignation or removal in accordance with the certificate of incorporation and bylaws of the Company, (ii) each of Lloyd A. Carney, David L. House, Judy Bruner, Renato A. DiPentima, Alan L. Earhart, John W. Gerdelman, Kim C. Goodman, L. William Krause, David E. Roberson and Sanjay Vaswani ceased to serve as directors of the Company, and (iii) each of Lloyd A. Carney, Daniel W. Fairfax, Jeffrey P. Lindholm, Ken K. Cheng, and Gale E. England ceased to serve as officers of the Company.

Following the Effective Time, Hock E. Tan and Thomas H. Krause, Jr., as directors of the surviving corporation, appointed Jack Rondoni to serve as a director and elected the following officers to serve, in each case until their respective successors are duly elected, appointed or qualified or until their earlier death, resignation or removal in accordance with the certificate of incorporation and bylaws of the Company: (i) Hock E. Tan as President and Chief Executive Officer, (ii) Thomas H. Krause, Jr. as Chief Financial Officer and Secretary, (iii) Jack Rondoni as Vice President and (iv) Jean Samuel Furter as Treasurer.

**Item 5.03. Amendment to Articles of Incorporation or Bylaws; Change in Fiscal Year.**

The information set forth under Item 2.01 of this Current Report on Form 8-K is incorporated herein by reference.

As described in the Merger Agreement, at the Effective Time, the certificate of incorporation and bylaws of the Company were amended and restated.

Copies of the amended and restated certificate of incorporation and bylaws are attached hereto as Exhibit 3.1 and Exhibit 3.2, respectively, and are incorporated herein by reference.

### Item 8.01 Other Events.

The Company intends to provide notice to the trustee of the Company's 4.625% Senior Notes due 2023 ("Senior Notes") of its intent to effect the repurchase of the Senior Notes on or about January 16, 2018 in accordance with the terms of the related indenture governing such Senior Notes.

### Item 9.01. Financial Statements and Exhibits.

(d) Exhibits.

| Exhibit No. | Description |
|---|---|
| 2.1 | Agreement and Plan of Merger, dated as of November 2, 2016, by and among Brocade Communications Systems, Inc., Broadcom Limited, Broadcom Corporation, and Bobcat Merger Sub, Inc. (incorporated by reference to Exhibit 2.1 to the Current Report on Form 8-K filed on November 2, 2016) |
| 3.1 | Fourth Amended and Restated Certificate of Incorporation of Brocade Communications Systems, Inc. |
| 3.2 | Amended and Restated Bylaws of Brocade Communications Systems, Inc. |
| 4.1 | Second Supplemental Indenture, dated November 17, 2017, by and between Brocade Communications Systems, Inc. and Wells Fargo Bank, National Association |
| 4.2 | Indenture (including the form of Notes) dated January 14, 2015, between Brocade Communications Systems, Inc. and Wells Fargo Bank, National Association (incorporated by reference to Exhibit 4.1 to the Current Report on Form 8-K filed on January 14, 2015) |
| 99.1 | Notice of Merger Event and Supplemental Indenture; Notice of Make-Whole Fundamental Change; and Fundamental Change Company Notice, dated November 17, 2017 |

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, as amended, the Registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

**BROCADE COMMUNICATIONS SYSTEMS, INC.**

By: /s/ Thomas H. Krause, Jr.

Thomas H. Krause, Jr.
*Chief Financial Officer and Secretary*

Date: November 17, 2017

Exhibit 3.1

## FOURTH AMENDED AND RESTATED

## CERTIFICATE OF INCORPORATION

## OF

## BROCADE COMMUNICATIONS SYSTEMS, INC.

### FIRST

The name of the corporation (the "Corporation") is Brocade Communications Systems, Inc.

### SECOND

The address of the Corporation's registered office in the State of Delaware is 251 Little Falls Drive, in the City of Wilmington, County of New Castle, 19808. The name of its registered agent at such address is Corporation Service Company.

### THIRD

The purpose of the Corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of the State of Delaware, as the same exists or may hereafter be amended ("DGCL") or any successor statute.

### FOURTH

The total number of shares of all classes of stock that the Corporation shall have authority to issue is 1,000,000 shares, all of which are Common Stock with a par value of $0.001.

### FIFTH

In furtherance and not in limitation of the powers conferred by statute, it is further provided that:

1.  The business and affairs of the Corporation shall be managed by or under the direction of the Board of Directors.

2.  The Board of Directors is expressly authorized to adopt, alter, amend or repeal the bylaws of the Corporation.

## SIXTH

Election of directors need not be by written ballot unless the bylaws of the Corporation shall so provide.

## SEVENTH

To the fullest extent permitted by the DGCL as the same exists or as may hereafter be amended, a director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director.

## EIGHTH

(A)   The Corporation shall indemnify to the fullest extent permitted by law any person made or threatened to be made a party to an action or proceeding, whether criminal, civil, administrative or investigative, by reason of the fact that he, his testator or intestate is or was a director, officer or employee of the Corporation or any predecessor of the Corporation or serves or served at any other enterprise as a director, officer or employee at the request of the Corporation or any predecessor to the Corporation.

(B)   Neither any amendment nor repeal of this Article EIGHTH, nor the adoption of any provision of this Certificate of Incorporation inconsistent with this Article EIGHTH, shall eliminate or reduce the effect of this Article EIGHTH, in respect of any matter occurring, or any action or proceeding accruing or arising or that, but for this Article EIGHTH, would accrue or arise, prior to such amendment, repeal or adoption of an inconsistent provision.

## NINTH

Subject to such limitations as may be from time to time imposed by other provisions of this Certificate of Incorporation, by the bylaws of the Corporation, by the DGCL or other applicable law, or by any contract or agreement to which the Corporation is or may become a party, the Corporation reserves the right to amend or repeal any provision contained in this Certificate of Incorporation, in the manner now or hereafter prescribed by statute, and all rights conferred upon stockholders herein are granted subject to this express reservation.

**Exhibit 3.2**

**AMENDED AND RESTATED BYLAWS**

**OF**

**BROCADE COMMUNICATIONS SYSTEMS, INC.**
(a Delaware corporation)

Adopted as of November 17, 2017

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| ARTICLE I. IDENTIFICATION; OFFICES | | 1 |
| Section 1. | NAME | 1 |
| Section 2. | PRINCIPAL AND BUSINESS OFFICES | 1 |
| Section 3. | REGISTERED AGENT AND OFFICE | 1 |
| Section 4. | PLACE OF KEEPING CORPORATE RECORDS | 1 |
| ARTICLE II. STOCKHOLDERS | | 1 |
| Section 1. | ANNUAL MEETING | 1 |
| Section 2. | SPECIAL MEETING | 1 |
| Section 3. | PLACE OF STOCKHOLDER MEETINGS | 2 |
| Section 4. | NOTICE OF MEETINGS | 2 |
| Section 5. | QUORUM AND ADJOURNED MEETINGS | 2 |
| Section 6. | FIXING OF RECORD DATE | 3 |
| Section 7. | VOTING LIST | 3 |
| Section 8. | VOTING | 4 |
| Section 9. | PROXIES | 4 |
| Section 10. | RATIFICATION OF ACTS OF DIRECTORS AND OFFICERS | 4 |
| Section 11. | INFORMAL ACTION OF STOCKHOLDERS | 4 |
| Section 12. | ORGANIZATION | 5 |
| ARTICLE III. DIRECTORS | | 5 |
| Section 1. | NUMBER AND TENURE OF DIRECTORS | 5 |
| Section 2. | ELECTION OF DIRECTORS | 5 |
| Section 3. | SPECIAL MEETINGS | 5 |
| Section 4. | NOTICE OF SPECIAL MEETINGS OF THE BOARD OF DIRECTORS | 6 |
| Section 5. | QUORUM | 6 |
| Section 6. | VOTING | 6 |
| Section 7. | VACANCIES | 6 |
| Section 8. | REMOVAL OF DIRECTORS | 6 |
| Section 9. | WRITTEN ACTION BY DIRECTORS | 6 |
| Section 10. | PARTICIPATION BY CONFERENCE TELEPHONE | 7 |
| Section 11. | COMPENSATION OF DIRECTORS | 7 |
| ARTICLE IV. WAIVER OF NOTICE | | 7 |
| Section 1. | WRITTEN WAIVER OF NOTICE | 7 |
| Section 2. | ATTENDANCE AS WAIVER OF NOTICE | 7 |

i

ARTICLE V. COMMITTEES 7

Section 1.	GENERAL PROVISIONS 7

ARTICLE VI. OFFICERS 8

Section 1.	GENERAL PROVISIONS 8

Section 2.	ELECTION AND TERM OF OFFICE 8

Section 3.	REMOVAL OF OFFICERS 8

Section 4.	THE CHIEF EXECUTIVE OFFICER 8

Section 5.	THE PRESIDENT 9

Section 6.	THE CHAIRMAN OF THE BOARD 9

Section 7.	VICE CHAIRMAN OF THE BOARD 9

Section 8.	THE VICE PRESIDENT 9

Section 9.	THE SECRETARY 9

Section 10.	THE ASSISTANT SECRETARY 10

Section 11.	THE TREASURER 10

Section 12.	THE ASSISTANT TREASURER 10

Section 13.	OTHER OFFICERS, ASSISTANT OFFICERS AND AGENTS 10

Section 14.	ABSENCE OF OFFICERS 10

Section 15.	COMPENSATION 11

ARTICLE VII. INDEMNIFICATION 11

Section 1.	THIRD PARTY ACTIONS 11

Section 2.	ACTION BY OR IN THE RIGHT OF THE CORPORATION 11

Section 3.	SUCCESSFUL DEFENSE 11

Section 4.	DETERMINATION OF CONDUCT 11

Section 5.	PAYMENT OF EXPENSES IN ADVANCE 12

Section 6.	LIMITATION ON INDEMNIFICATION 12

Section 7.	INDEMNITY NOT EXCLUSIVE 13

Section 8.	INSURANCE INDEMNIFICATION 13

Section 9.	DEFINITIONS 13

Section 10.	EMPLOYEE BENEFIT PLANS 13

Section 11.	CONTINUATION OF INDEMNIFICATION AND ADVANCEMENT OF EXPENSES 13

ARTICLE VIII. CERTIFICATES FOR SHARES 14

Section 1.	CERTIFICATES OF SHARES 14

Section 2.	SIGNATURES OF FORMER OFFICER, TRANSFER AGENT OR REGISTRAR 14

Section 3.	TRANSFER OF SHARES 14

Section 4.	LOST, DESTROYED OR STOLEN CERTIFICATES 14

ARTICLE IX. DIVIDENDS 14

ii

| | | Page |
|---|---|---|
| Section 1. | DECLARATIONS OF DIVIDENDS | 14 |
| Section 2. | REQUIREMENTS FOR PAYMENT OF DIVIDENDS | 15 |
| **ARTICLE X. GENERAL PROVISIONS** | | 15 |
| Section 1. | CONTRACTS | 15 |
| Section 2. | LOANS | 15 |
| Section 3. | CHECKS, DRAFTS, ETC. | 15 |
| Section 4. | DEPOSITS | 15 |
| Section 5. | FISCAL YEAR | 15 |
| Section 6. | SEAL | 15 |
| Section 7. | ANNUAL STATEMENT | 15 |
| **ARTICLE XI. AMENDMENTS** | | 16 |
| Section 1. | AMENDMENTS | 16 |

iii

**AMENDED AND RESTATED BYLAWS**

**OF**

**BROCADE COMMUNICATIONS SYSTEMS, INC.**
(a Delaware corporation)

Adopted as of November 17, 2017


ARTICLE I.
**IDENTIFICATION; OFFICES**

Section 1. NAME. The name of the corporation is Brocade Communications Systems, Inc. (the "<u>Corporation</u>").

Section 2. PRINCIPAL AND BUSINESS OFFICES. The Corporation may have such principal and other business offices, either within or outside of the state of Delaware, as the Board of Directors may designate or as the Corporation's business may require from time to time.

Section 3. REGISTERED AGENT AND OFFICE. The Corporation's registered agent may be changed from time to time by or under the authority of the Board of Directors. The address of the Corporation's registered agent may change from time to time by or under the authority of the Board of Directors, or the registered agent. The business office of the Corporation's registered agent shall be identical to the registered office. The Corporation's registered office may be but need not be identical with the Corporation's principal office in the state of Delaware. The Corporation's initial registered office shall be in the City of Wilmington, County of New Castle, State of Delaware.

Section 4. PLACE OF KEEPING CORPORATE RECORDS. The records and documents required by law to be kept by the Corporation permanently shall be kept at the Corporation's principal office or as the Board of Directors may designate.


ARTICLE II.
**STOCKHOLDERS**

Section 1. ANNUAL MEETING. An annual meeting of the stockholders shall be held on such date as may be determined by resolution of the Board of Directors. At each annual meeting, the stockholders shall elect directors to hold office for the term provided in Section 1 of Article III of these Bylaws.

Section 2. SPECIAL MEETING. A special meeting of the stockholders may be called by the President of the Corporation, the Board of Directors, or by such other officers or persons as the Board of Directors may designate.

Section 3. PLACE OF STOCKHOLDER MEETINGS. The Board of Directors may designate any place, either within or without the State of Delaware, as the place of meeting for any annual meeting or for any special meeting. If no such place is designated by the Board of Directors, the place of meeting will be the principal business office of the Corporation or the Board of Directors may, in its sole discretion, determine that the meeting shall not be held at any place, but will instead be held solely by means of remote communication as provided under Section 211 of the Delaware General Corporation Law.

Section 4. NOTICE OF MEETINGS. Unless waived as herein provided, whenever stockholders are required or permitted to take any action at a meeting, written notice of the meeting shall be given stating the place, if any, date and hour of the meeting, the means of remote communications, if any, by which stockholders may be deemed to be present in person and vote at such meeting and, in the case of a special meeting, the purpose or purposes for which the meeting is called. Such written notice shall be given not less than ten (10) days nor more than sixty (60) days before the date of the meeting to each stockholder entitled to vote at the meeting. If mailed, notice is given when deposited in the United States mail, postage prepaid, directed to the stockholder at the stockholder's address as it appears on the records of the Corporation. If electronically transmitted, then notice is deemed given when transmitted and directed to a facsimile number or electronic mail address at which the stockholder has consented to receive notice. An affidavit of the secretary or of the transfer agent or other agent of the Corporation that the notice has been given by a form of electronic transmission shall, in the absence of fraud, be *prima facie* evidence of the facts stated therein.

When a meeting is adjourned to reconvene at the same or another place, if any, or by means of remote communications, if any, in accordance with Section 5 of this Article II, notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken.

Section 5. QUORUM AND ADJOURNED MEETINGS. Unless otherwise provided by law or the Corporation's Certificate of Incorporation, a majority of the shares entitled to vote, present in person or represented by proxy, shall constitute a quorum at a meeting of stockholders. If a majority of the shares entitled to vote at a meeting of stockholders is present in person or represented by proxy at such meeting, such stockholders may continue to transact business until adjournment, notwithstanding the withdrawal of such number of stockholders as may leave less than a quorum. If less than a majority of the shares entitled to vote at a meeting of stockholders is present in person or represented by proxy at such meeting, a majority of the shares so represented may adjourn the meeting from time to time, to reconvene at the same or another place, if any, or by means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such meeting, and notice need not be given of any such adjourned meeting if the time, date, place, if any, thereof, and the means of remote communications, if any, by which stockholders and proxy holders may be deemed to be present in person and vote at such adjourned meeting are announced at the meeting at which the adjournment is taken; provided, however, that if the adjournment is for more than thirty (30) days a notice of the adjourned meeting shall be given to each stockholder of record entitled to vote at the meeting. At the adjourned meeting the Corporation may transact any business that might have been transacted at the original meeting.

2

Section 6. FIXING OF RECORD DATE.

(a) For the purpose of determining stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board of Directors, and which record date shall not be more than sixty (60) days nor less than ten (10) days before the date of such meeting. If no record date is fixed by the Board of Directors, the record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held. A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting; provided, however, that the Board of Directors may fix a new record date for the adjourned meeting.

(b) For the purpose of determining stockholders entitled to consent to corporate action in writing without a meeting, the Board of Directors may fix a record date, which record date shall not precede the date upon which the resolution fixing the record date is established by the Board of Directors, and which date shall not be more than ten (10) days after the date on which the resolution fixing the record date is adopted by the Board of Directors. If no record date has been fixed by the Board of Directors, the record date for determining stockholders entitled to consent to corporate action in writing without a meeting, when no prior action by the Board of Directors is required by law, shall be the first date on which a signed written consent setting forth the action taken or proposed to be taken is delivered to the Corporation by delivery to its registered office in the State of Delaware, its principal office, or an officer or agent of the Corporation having custody of the book in which the proceedings of meetings of stockholders are recorded. Delivery to the Corporation's registered office shall be by hand or by certified or registered mail, return receipt requested. If no record date has been fixed by the Board of Directors and prior action by the Board of Directors is required by law, the record date for determining stockholders' consent to corporate action in writing without a meeting shall be the close of business on the day on which the Board of Directors adopts the resolution taking such prior action.

(c) For the purpose of determining the stockholders entitled to receive payment of any dividend or other distribution or allotment of any rights or the stockholders entitled to exercise any rights in respect to any change, conversion or exchange of stock, or for the purpose of any other lawful action, the Board of Directors may fix the record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted, and which record date shall be not more than sixty (60) days prior to such action. If no record date is fixed, the record date for determining the stockholders for any such purpose shall be the close of business on the day on which the Board of Directors adopts the resolution relating thereto.

Section 7. VOTING LIST. The officer who has charge of the stock ledger of the Corporation shall prepare and make, at least ten (10) days before every meeting of stockholders, a complete list of stockholders entitled to vote at the meeting, arranged in alphabetical order, and showing the address of each stockholder and the number of shares registered in the name of each stockholder. Such list shall be open to the examination of any stockholder, for any purpose

3

germane to the meeting, for a period of at least ten (10) days prior to the meeting, (i) by a reasonably accessible electronic network, provided that the information required to gain access to such list is provided with the notice of the meeting, or (ii) during ordinary business hours, at the principal place of business of the Corporation. In the event that the Corporation determines to make the list available on an electronic network, the Corporation may take reasonable steps to ensure that such information is available only to the stockholders of the Corporation. If the meeting is to be held at a place, then the list shall be produced and kept at the time and place of the meeting during the whole time thereof and may be inspected by any stockholder who is present. If the meeting is to be held solely by means of remote communication, then the list shall also be open to the examination of any stockholder during the whole time of the meeting on a reasonably accessible electronic network, and the information required to access such list shall be provided with the notice of the meeting. Except as otherwise provided by law, such list shall be the only evidence as to the identity of stockholders entitled to examine the list of stockholders required by this Section 7 or to vote in person or by proxy at any meeting of the stockholders. The Corporation shall not be required to include electronic mail addresses or other electronic contact information on such list.

Section 8. VOTING. Unless otherwise provided by the Certificate of Incorporation, each stockholder shall be entitled to one vote for each share of capital stock held by each stockholder. In all matters other than the election of directors, the affirmative vote of the majority of shares present in person or represented by proxy at the meeting and entitled to vote on the subject matter shall be the act of the stockholders. Directors shall be elected by plurality of the votes of the shares present in person or represented by a proxy at the meeting entitled to vote on the election of directors.

Section 9. PROXIES. Each stockholder entitled to vote at a meeting of stockholders or to express consent or dissent to corporate action in writing without a meeting may authorize another person or persons to act for him by proxy, but no such proxy shall be voted or acted upon after three (3) years from its date, unless the proxy provides for a longer period. A duly executed proxy shall be irrevocable if it states that it is irrevocable and if, and only as long as, it is coupled with an interest sufficient in law to support an irrevocable power. A proxy may remain irrevocable regardless of whether the interest with which it is coupled is an interest in the stock itself or an interest in the Corporation generally.

Section 10. RATIFICATION OF ACTS OF DIRECTORS AND OFFICERS. Except as otherwise provided by law or by the Certificate of Incorporation of the Corporation, any transaction or contract or act of the Corporation or of the directors or the officers of the Corporation may be ratified by the affirmative vote of the holders of the number of shares which would have been necessary to approve such transaction, contract or act at a meeting of stockholders, or by the written consent of stockholders in lieu of a meeting.

Section 11. INFORMAL ACTION OF STOCKHOLDERS. Any action required to be taken at any annual or special meeting of stockholders of the Corporation, or any action which may be taken at any annual or special meeting of such stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be delivered to the Corporation by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take

4

such action at a meeting at which all shares entitled to vote thereon were present and voted. Prompt notice of the taking of the corporate action without a meeting by less than unanimous consent shall be given to those stockholders who have not consented in writing.

A telegram, cablegram or other electronic transmission consenting to an action to be taken and transmitted by a stockholder or proxy holder, or by a person or persons authorized to act for a stockholder or proxy holder, shall be deemed to be written, signed and dated for the purposes of this section, provided that any such telegram, cablegram or other electronic transmission sets forth or is delivered with information from which the Corporation can determine that the telegram, cablegram or other electronic transmission was transmitted by the stockholder or proxy holder or by a person or persons authorized to act for the stockholder or proxy holder and the date on which such stockholder or proxy holder or authorized person or persons transmitted such telegram, cablegram or electronic transmission. The date on which such telegram, cablegram or electronic transmission is transmitted shall be deemed to be the date on which such consent was signed. No consent given by telegram, cablegram or other electronic transmission shall be deemed to have been delivered until such consent is reproduced in paper form and until such paper form shall be delivered to the Corporation by delivery to its principal place of business or to an officer or agent of the Corporation having custody of the book in which the proceedings of meetings of stockholders are recorded. Any copy, facsimile or other reliable reproduction of a consent in writing may be substituted or used in lieu of the original writing for any and all purposes for which the original writing could be used, provided that such copy, facsimile or other reproduction shall be a complete reproduction of the entire original writing.

Section 12. ORGANIZATION. Such person as the Board of Directors may designate or, in the absence of such a designation, the president of the Corporation or, in his or her absence, such person as may be chosen by the holders of a majority of the shares entitled to vote who are present, in person or by proxy, shall call to order any meeting of the stockholders and act as chairman of such meeting. In the absence of the secretary of the Corporation, the chairman of the meeting shall appoint a person to serve as secretary at the meeting.

ARTICLE III.
**DIRECTORS**

Section 1. NUMBER AND TENURE OF DIRECTORS. The number of directors of the Corporation shall be determined from time to time by the Board. Each director shall hold office until such director's successor is elected and qualified or until such director's earlier resignation or removal. Any director may resign at any time upon written notice to the Corporation.

Section 2. ELECTION OF DIRECTORS. Except as otherwise provided in this Bylaws, directors shall be elected at the annual meeting of stockholders. Directors need not be residents of the State of Delaware. Elections of directors need not be by written ballot.

Section 3. SPECIAL MEETINGS. Special meetings of the Board of Directors may be called by or at the request of the Chairman of the Board, the President or at least one-third of the number of directors constituting the whole board. The person or persons authorized to call

special meetings of the Board of Directors may fix any time, date or place, either within or without the State of Delaware, for holding any special meeting of the Board of Directors called by them.

Section 4. NOTICE OF SPECIAL MEETINGS OF THE BOARD OF DIRECTORS. Notice of any special meeting of the Board of Directors shall be given, orally or in writing, by the person or persons calling the meeting to all directors at least one (1) day previous thereto. If mailed, such notice shall be deemed to be delivered when deposited in the United States Mail so addressed, with first-class postage thereon prepaid. If sent by any other means (including facsimile, courier, electronic mail or express mail, etc.), such notice shall be deemed to be delivered when actually delivered to the home or business address, electronic address or facsimile number of the director.

Section 5. QUORUM. A majority of the total number of directors as provided in Section 1 of this Article III shall constitute a quorum for the transaction of business. If less than a majority of the directors are present at a meeting of the Board of Directors, a majority of the directors present may adjourn the meeting from time to time without further notice.

Section 6. VOTING. The vote of the majority of the directors present at a meeting at which a quorum is present shall be the act of the Board of Directors, unless the Delaware General Corporation Law or the Certificate of Incorporation requires a vote of a greater number.

Section 7. VACANCIES. Vacancies in the Board of Directors may be filled by a majority vote of the Board of Directors at a meeting at which a quorum is present or by an election either at an annual meeting or at a special meeting of the stockholders called for that purpose. Any directors elected by the stockholders to fill a vacancy shall hold office for the balance of the term for which he or she was elected. A director appointed by the Board of Directors to fill a vacancy shall serve until the next meeting of stockholders at which directors are elected.

Section 8. REMOVAL OF DIRECTORS. A director, or the entire Board of Directors, may be removed, with or without cause, by the holders of a majority of the shares then entitled to vote at an election of directors; provided, however, that if cumulative voting obtains and less than the entire Board of Directors is to be removed, no director may be removed without cause if the votes cast against such director's removal would be sufficient to elect him if then cumulatively voted at an election of the entire Board of Directors; provided, further, that the directors elected by the holders of a particular class or series of stock may be removed without cause only by vote of the holders of a majority of the outstanding shares of such class or series.

Section 9. WRITTEN ACTION BY DIRECTORS. Unless otherwise restricted by the Certificate of Incorporation or these Bylaws, any action required or permitted to be taken at any meeting of the Board of Directors, or of any committee thereof, may be taken without a meeting if all members of the Board of Directors or committee, as the case may be, consent thereto in writing, and the writing or writings are filed with the minutes of proceedings of the Board of Directors or committee. Without limiting the manner by which consent may be given, members of the Board of Directors may consent by delivery of an electronic transmission when such transmission is directed to a facsimile number or electronic mail address at which the

6

Corporation has consented to receive such electronic transmissions, and copies of the electronic transmissions are filed with the minutes of proceedings of the Board of Directors or committee. Such filing shall be in paper form if the minutes are maintained in paper form and shall be in electronic form if the minutes are maintained in electronic form.

Section 10. PARTICIPATION BY CONFERENCE TELEPHONE. Members of the Board of Directors, or any committee designated by such board, may participate in a meeting of the Board of Directors, or committee thereof, by means of conference telephone or similar communications equipment as long as all persons participating in the meeting can speak with and hear each other, and participation by a director pursuant to Section 10 of this Article III shall constitute presence in person at such meeting.

Section 11. COMPENSATION OF DIRECTORS. Unless otherwise restricted by the Certificate of Incorporation or these Bylaws, the Board of Directors shall have the authority to fix the compensation of directors. The directors may be paid their expenses, if any, of attendance at each meeting of the Board of Directors and may be paid a fixed sum for attendance at each meeting of the Board of Directors or a stated salary as director. No such payment shall preclude any director from serving the Corporation in any other capacity and receiving compensation therefore. Members of special or standing committees may be allowed like compensation for attending committee meetings.

ARTICLE IV.
**WAIVER OF NOTICE**

Section 1. WRITTEN WAIVER OF NOTICE. A written waiver of any required notice, signed by or electronically transmitted by the person entitled to notice, whether before or after the date stated therein, shall be deemed equivalent to notice. Neither the business to be transacted at, nor the purpose of, any regular or special meeting of stockholders, directors or members of a committee of directors need be specified in any written waiver of notice.

Section 2. ATTENDANCE AS WAIVER OF NOTICE. Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting at the beginning of the meeting, and objects, to the transaction of any business because the meeting is not lawfully called or convened.

ARTICLE V.
**COMMITTEES**

Section 1. GENERAL PROVISIONS. The Board of Directors may, by resolution passed by a majority of the whole Board, designate one or more committees, each committee to consist of one or more of the directors of the Corporation. The Board may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee. In the absence or disqualification of a member at any meeting of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not such member or members constitute a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in the place of any such absent or disqualified member. Any such committee, to the extent provided in the

7

resolution of the Board of Directors, shall have and may exercise all the powers and authority of the Board of Directors in the management of the business and affairs of the Corporation, and may authorize the seal of the Corporation to be affixed to all papers which may require it, but no such committee shall have the power or authority in reference to the following matters: (i) approving or adopting, or recommending to the stockholders, any action or matter (other than the election or removal of directors) expressly required by law to be submitted to stockholders for approval or (ii) adopting, amending or repealing any bylaw of the corporation.

## ARTICLE VI.
### OFFICERS

Section 1. GENERAL PROVISIONS. The Board of Directors shall elect a President and a Secretary of the Corporation. The Board of Directors may also elect a Chairman of the Board, one or more Vice Chairmen of the Board, one or more Vice Presidents, a Treasurer, one or more Assistant Secretaries and Assistant Treasurers and such additional officers as the Board of Directors may deem necessary or appropriate from time to time. Any two or more offices may be held by the same person. The officers elected by the Board of Directors shall have such duties as are hereafter described and such additional duties as the Board of Directors may from time to time prescribe.

Section 2. ELECTION AND TERM OF OFFICE. The officers of the Corporation shall be elected annually by the Board of Directors at the regular meeting of the Board of Directors held after each annual meeting of the stockholders. If the election of officers is not held at such meeting, such election shall be held as soon thereafter as may be convenient. New offices of the Corporation may be created and filled and vacancies in offices may be filled at any time, at a meeting or by the written consent of the Board of Directors. Unless removed pursuant to Section 3 of this Article VI, each officer shall hold office until his successor has been duly elected and qualified, or until his earlier death or resignation. Election or appointment of an officer or agent shall not of itself create contract rights.

Section 3. REMOVAL OF OFFICERS. Any officer or agent elected or appointed by the Board of Directors may be removed by the Board of Directors whenever, in its judgment, the best interests of the Corporation would be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the person(s) so removed.

Section 4. THE CHIEF EXECUTIVE OFFICER. The Board of Directors shall designate an individual who will be the Chief Executive Officer of the Corporation. The Chief Executive Officer shall be the principal executive officer of the Corporation and shall in general supervise and control all of the business and affairs of the Corporation, unless otherwise provided by the Board of Directors. The Chief Executive Officer shall preside at all meetings of the stockholders and of the Board of Directors and shall see that orders and resolutions of the Board of Directors are carried into effect. The Chief Executive Officer may sign bonds, mortgages, certificates for shares and all other contracts and documents whether or not under the seal of the Corporation except in cases where the signing and execution thereof shall be expressly delegated by law, by the Board of Directors or by these Bylaws to some other officer or agent of the Corporation. The Chief Executive Officer shall have general powers of supervision and shall be the final arbiter of all differences between officers of the Corporation and his decision as to any matter affecting the Corporation shall be final and binding as between the officers of the Corporation subject only to the Board of Directors.

Section 5. THE PRESIDENT. In the absence of the Chief Executive Officer or in the event of his inability or refusal to act, if the Chairman of the Board or another individual has not been designated Chief Executive Officer, the President shall perform the duties of the Chief Executive Officer, and when so acting, shall have all the powers of and be subject to all the restrictions upon the Chief Executive Officer. At all times the President shall have the active management of the business of the Corporation under the general supervision of the Chief Executive Officer. The President shall have concurrent power with the Chief Executive Officer to sign bonds, mortgages, certificates for shares and other contracts and documents, whether or not under the seal of the Corporation except in cases where the signing and execution thereof shall be expressly delegated by law, by the Board of Directors, or by these Bylaws to some other officer or agent of the Corporation. In general, the President shall perform all duties incident to the office of president and such other duties as the Chief Executive Officer or the Board of Directors may from time to time prescribe.

Section 6. THE CHAIRMAN OF THE BOARD. The Chairman of the Board, if one is chosen, shall be chosen from among the members of the board. If the Chairman of the Board has not been designated Chief Executive Officer, the Chairman of the Board shall perform such duties as may be assigned to the Chairman of the Board by the Chief Executive Officer or by the Board of Directors.

Section 7. VICE CHAIRMAN OF THE BOARD. In the absence of the Chief Executive Officer or in the event of his inability or refusal to act, if the Chairman of the Board or another individual has not been designated Chief Executive Officer, the Vice Chairman, or if there be more than one, the Vice Chairmen, in the order determined by the Board of Directors, shall perform the duties of the Chief Executive Officer, and when so acting shall have all the powers of and be subject to all the restrictions upon the Chief Executive Officer. At all other times, the Vice Chairman or Vice Chairmen shall perform such duties and have such powers as the Chief Executive Officer or the Board of Directors may from time to time prescribe.

Section 8. THE VICE PRESIDENT. In the absence of the President or in the event of his inability or refusal to act, the Vice President (or in the event there be more than one Vice President, the Executive Vice President and then the other Vice President or Vice Presidents in the order designated, or in the absence of any designation, then in the order of their election) shall perform the duties of the President, and when so acting, shall have all the powers of and be subject to all the restrictions upon the President. The Vice Presidents shall perform such other duties and have such other powers as the Chief Executive Officer or the Board of Directors may from time to time prescribe.

Section 9. THE SECRETARY. The Secretary shall attend all meetings of the Board of Directors and all meetings of the stockholders and record all the proceedings of the meetings of the Corporation and of the Board of Directors in a book to be kept for that purpose and shall perform like duties for the standing committees when required. The Secretary shall give, or cause to be given, notice of all meetings of the stockholders and special meetings of the Board of Directors, and shall perform such other duties as may be prescribed by the Board of Directors or

9

the Chief Executive Officer, under whose supervision he shall be. The Secretary shall have custody of the corporate seal of the Corporation and the Secretary, or an Assistant Secretary, shall have authority to affix the same to any instrument requiring it and when so affixed, it may be attested by his signature or by the signature of such Assistant Secretary. The Board of Directors may give general authority to any other officer to affix the seal of the Corporation and to attest the affixing by his signature.

Section 10. THE ASSISTANT SECRETARY. The Assistant Secretary, or if there be more than one, the Assistant Secretaries in the order determined by the Board of Directors (or if there be no such determination, then in the order of their election), shall, in the absence of the Secretary or in the event of his inability or refusal to act, perform the duties and exercise the powers of the Secretary and shall perform such other duties and have such other powers as the Chief Executive Officer or the Board of Directors may from time to time prescribe.

Section 11. THE TREASURER. The Treasurer shall have the custody of the corporate funds and securities and shall keep full and accurate accounts of receipts and disbursements in books belonging to the Corporation and shall deposit all moneys and other valuable effects in the name and to the credit of the Corporation in such depositories as may be designated by the Board of Directors. The Treasurer shall disburse the funds of the Corporation as may be ordered by the Board of Directors, taking proper vouchers for such disbursements, and shall render to the President and the Board of Directors, at its regular meetings, or when the Board of Directors so requires, an account of all his transactions as Treasurer and of the financial condition of the Corporation. If required by the Board of Directors, the Treasurer shall give the Corporation a bond (which shall be renewed every six (6) years) in such sum and with such surety or sureties as shall be satisfactory to the Board of Directors for the faithful performance of the duties of his office and for the restoration to the Corporation, in case of his death, resignation, retirement or removal from office, of all books, papers, vouchers, money and other property of whatever kind in his possession or under his control belonging to the Corporation.

Section 12. THE ASSISTANT TREASURER. The Assistant Treasurer, or if there shall be more than one, the Assistant Treasurers in the order determined by the Board of Directors (or if there be no such determination, then in the order of their election), shall, in the absence of the Treasurer or in the event of his inability or refusal to act, perform the duties and exercise the powers of the Treasurer and shall perform such other duties and have such other powers as the Chief Executive Officer or the Board of Directors may from time to time prescribe.

Section 13. OTHER OFFICERS, ASSISTANT OFFICERS AND AGENTS. Officers, Assistant Officers and Agents, if any, other than those whose duties are provided for in these Bylaws, shall have such authority and perform such duties as may from time to time be prescribed by resolution of the board of directors.

Section 14. ABSENCE OF OFFICERS. In the absence of any officer of the Corporation, or for any other reason the Board of Directors may deem sufficient, the Board of Directors may delegate the powers or duties, or any of such powers or duties, of any officers or officer to any other officer or to any director.

Section 15. COMPENSATION. The Board of Directors shall have the authority to establish reasonable compensation of all officers for services to the Corporation.

## ARTICLE VII.
## INDEMNIFICATION

Section 1. THIRD PARTY ACTIONS. The Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending, or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Corporation) by reason of the fact that such person is or was a director, officer or employee of the Corporation, or is or was serving at the request of the Corporation as a director, officer or employee of another corporation, partnership, joint venture trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by him in connection with such action, suit or proceeding if he acted in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to any criminal action or proceeding, had no reasonable cause to believe his conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he reasonably believed to be in or not opposed to the best interest of the Corporation, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his conduct was unlawful.

Section 2. ACTION BY OR IN THE RIGHT OF THE CORPORATION. The Corporation shall indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the Corporation to procure a judgment in its favor by reason of the fact that he is or was a director, officer or employee of the Corporation, or is or was serving at the request of the Corporation as a director, officer or employee of another corporation, partnership, joint venture, trust or other enterprise against expenses (including attorneys' fees) actually and reasonably incurred by him in connection with the defense or settlement of such action or suit if he acted in good faith and in manner he reasonably believed to be in or not opposed to the best interests of the Corporation and except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable to the Corporation unless and only to the extent that the Delaware Court of Chancery or the court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such expenses which the Delaware Court of Chancery or such other court shall deem proper.

Section 3. SUCCESSFUL DEFENSE. To the extent that a present or former director or officer of the Corporation has been successful on the merits or otherwise in defense of any action, suit or proceeding referred to in Sections 1 and 2 of this Article VII, or in defense of any claim, issue or matter therein, he shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by him in connection therewith.

Section 4. DETERMINATION OF CONDUCT. Any indemnification under Sections 1 and 2 of this Article VII (unless ordered by a court) shall be made by the Corporation

only as authorized in the specific case upon a determination that the indemnification of the director, officer or employee is proper in the circumstances because he has met the applicable standard of conduct set forth in Sections 1 and 2 of this Article VII. Such determination shall be made, with respect to a person who is a director or officer of the Corporation at the time of such determination (1) by a majority vote of the directors who are not parties to such action, suit or proceeding, even though less than a quorum, or (2) by a committee of such directors designated by majority vote of such directors, even though less than a quorum, or (3) if there are no such directors, or if such directors so direct, by independent legal counsel in a written opinion, or (4) by the stockholders.

Section 5. PAYMENT OF EXPENSES IN ADVANCE. Expenses incurred by an officer or director of the Corporation in defending a civil or criminal action, suit or proceeding shall be paid by the Corporation in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of the director or officer to repay such amount if it shall ultimately be determined that he is not entitled to be indemnified by the Corporation as authorized in this Article VII.

Section 6. LIMITATION ON INDEMNIFICATION. Subject to the requirements in Section 3 of this Article VII and the Delaware General Corporation Law, the Corporation shall not be obligated to indemnify any person pursuant to this Article VII in connection with any proceeding (or any part of any proceeding):

(i) for which payment has actually been made to or on behalf of such person under any statute, insurance policy, indemnity provision, vote or otherwise, except with respect to any excess beyond the amount paid;

(ii) for an accounting or disgorgement of profits pursuant to Section 16(b) of the Securities Exchange Act of 1934, as amended (the "1934 Act"), or similar provisions of federal, state or local statutory law or common law, if such person is held liable therefor (including pursuant to any settlement arrangements);

(iii) for any reimbursement of the Corporation by such person of any bonus or other incentive-based or equity-based compensation or of any profits realized by such person from the sale of securities of the Corporation, as required in each case under the 1934 Act (including any such reimbursements that arise from an accounting restatement of the Corporation pursuant to Section 304 of the Sarbanes-Oxley Act of 2002 (the "Sarbanes-Oxley Act"), or the payment to the Corporation of profits arising from the purchase and sale by such person of securities in violation of Section 306 of the Sarbanes-Oxley Act), if such person is held liable therefor (including pursuant to any settlement arrangements);

(iv) initiated by such person, including any proceeding (or any part of any proceeding) initiated by such person against the corporation or its directors, officers, employees, agents or other indemnitees, unless (a) the board of directors authorized the proceeding (or the relevant part of the proceeding) prior to its initiation, (b) the Corporation provides the indemnification, in its sole discretion, pursuant to the powers vested in the Corporation under applicable law, or (c) otherwise required by applicable law; or

12

(v) if prohibited by applicable law, stock exchange rules or Federal or state regulations.

Section 7. INDEMNITY NOT EXCLUSIVE. The indemnification and advancement of expenses provided or granted pursuant to this Article VII shall not be deemed exclusive of any other rights to which those seeking indemnification or advancement of expenses may be entitled under any by-law, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in his official capacity and as to action in another while holding such office.

Section 8. INSURANCE INDEMNIFICATION. The Corporation shall have the power to purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the Corporation, or is or was serving at the request of the Corporation, as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any liability asserted against him and incurred by him in any such capacity, or arising out of his status as such, whether or not the Corporation would have the power to indemnify him against such liability under the provisions of this Article VII.

Section 9. DEFINITIONS. For purposes of this Article VII, references to "the Corporation" shall include, in addition to the resulting Corporation, any constituent corporation (including any constituent of a constituent) absorbed in a consolidation or merger which, if its separate existence had continued, would have had power and authority to indemnify its directors, officers, and employees or agents, so that any person who is was a director, officer, employee or agent of such constituent corporation, or is or was serving at the request of such constituent corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, shall stand in the same position under and subject to the provisions of this Article VII (including, without limitation the provisions of Section 4) with respect to the resulting or surviving corporation as he would have with respect to such constituent corporation if its separate existence had continued.

Section 10. EMPLOYEE BENEFIT PLANS. For purposes of this Article VII, references to "other enterprises" shall include employee benefit plans; references to "fines" shall include any excise taxes assessed on a person with respect to an employee benefit plan; and references to "serving at the request of the Corporation" shall include any service as a director, officer, employee or agent of the Corporation which imposes duties on, or involves services by, such director, officer, employee, or agent with respect to an employee benefit plan, its participants, or beneficiaries; and a person who acted in good faith and in a manner he reasonably deemed to have acted in a manner "not opposed to the best interests of the Corporation" as referred to in this Article VII.

Section 11. CONTINUATION OF INDEMNIFICATION AND ADVANCEMENT OF EXPENSES. The indemnification and advanced of expenses provided by, or granted pursuant to, this Article VII shall, as applicable and, unless otherwise provided when authorized or ratified, continue as to a person who has ceased to be a director, officer or employee and shall inure to the benefit of the heirs, executors and administrators of such person.

13

## ARTICLE VIII.
## CERTIFICATES FOR SHARES

Section 1. CERTIFICATES OF SHARES. The shares of the Corporation shall be represented by certificates, provided that the Board of Directors of the Corporation may provide by resolution or resolutions that some or all of any or all classes or series of its stock shall be uncertificated shares. Any such resolution shall not apply to shares represented by a certificate until such certificate is surrendered to the Corporation. Notwithstanding the adoption of such a resolution by the Board of Directors, every holder of stock represented by certificates and upon request every holder of uncertificated shares shall be entitled to have a certificate signed by, or in the name of the Corporation by the Chairman or Vice Chairman of the Board of Directors, Chief Executive Officer, or the President or Vice President, and by the Treasurer or an Assistant Treasurer, or the Secretary or an Assistant Secretary of the Corporation representing the number of shares registered in certificate form. Any or all the signatures on the certificate may be a facsimile.

Section 2. SIGNATURES OF FORMER OFFICER, TRANSFER AGENT OR REGISTRAR. In case any officer, transfer agent, or registrar who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the Corporation with the same effect as if such person or entity were such officer, transfer agent or registrar at the date of issue.

Section 3. TRANSFER OF SHARES. Transfers of shares of the Corporation shall be made only on the books of the Corporation by the holder of record thereof or by his legal representative, who shall furnish proper evidence of authority to transfer, or by his or her attorney thereunto authorized by power of attorney duly executed and filed with the Secretary of the Corporation, and on surrender for cancellation of certificate for such shares. Prior to due presentment of a certificate for shares for registration of transfer, the Corporation may treat a registered owner of such shares as the person exclusively entitled to vote, to receive notifications and otherwise have and exercise all of the right and powers of an owner of shares.

Section 4. LOST, DESTROYED OR STOLEN CERTIFICATES. Whenever a certificate representing shares of the Corporation has been lost, destroyed or stolen, the holder thereof may file in the office of the Corporation an affidavit setting forth, to the best of his knowledge and belief, the time, place, and circumstance of such loss, destruction or theft together with a statement of indemnity sufficient in the opinion of the Board of Directors to indemnify the Corporation against any claim that may be made against it on account of the alleged loss of any such certificate. Thereupon the Board may cause to be issued to such person or such person's legal representative a new certificate or a duplicate of the certificate alleged to have been lost, destroyed or stolen. In the exercise of its discretion, the Board of Directors may waive the indemnification requirements provided herein.

## ARTICLE IX.
## DIVIDENDS

Section 1. DECLARATIONS OF DIVIDENDS. Dividends upon the capital stock of the Corporation, subject to the provisions of the Certificate of Incorporation, if any, may be

14

declared by the Board of Directors at any regular or special meeting, pursuant to law. Dividends may be paid in cash, in property, or in shares of the capital stock, subject to the provisions of the Certificate of Incorporation.

Section 2. REQUIREMENTS FOR PAYMENT OF DIVIDENDS. Before payment of any dividend there may be set aside out of any funds of the Corporation available for dividends such sum or sums as the directors from time to time, in their absolute discretion, think proper as a reserve fund to meet contingencies, or for equalizing dividends, or for repairing or maintaining any property of the Corporation, or for such other purpose as the directors shall think conducive to the interests of the Corporation, and the directors may abolish any such reserve.

ARTICLE X.
**GENERAL PROVISIONS**

Section 1. CONTRACTS. The Board of Directors may authorize any officer or officers, agent or agents, to enter into any contract or execute and deliver any instrument in the name of and on behalf of the Corporation, and such authority may be general or confined to specific instances.

Section 2. LOANS. No loans shall be contracted on behalf of the Corporation and no evidences of indebtedness shall be issued in its name unless authorized by a resolution of the Board of Directors. Such authority may be general or confined to specific instances.

Section 3. CHECKS, DRAFTS, ETC. All checks, drafts or other orders for the payment of money, notes or other evidences of indebtedness issued in the name of the Corporation shall be signed by one or more officers or agents of the Corporation and in such manner as shall from time to time be determined by resolution of the Board of Directors.

Section 4. DEPOSITS. The funds of the Corporation may be deposited or invested in such bank account, in such investments or with such other depositaries as determined by the Board of Directors.

Section 5. FISCAL YEAR. The fiscal year of the Corporation shall be fixed by resolution of the Board of Directors.

Section 6. SEAL. The corporate seal shall have inscribed thereon the name of the Corporation, the year of its organization and the words "Corporate Seal, Delaware". Said seal may be used by causing it or a facsimile thereof to be impressed or affixed or reproduced or otherwise.

Section 7. ANNUAL STATEMENT. The Board of Directors shall present at each annual meeting, and at any special meeting of the stockholders when called for by vote of the stockholders, a full and clear statement of the business and condition of the Corporation.

15

## ARTICLE XI.
### AMENDMENTS

Section 1. AMENDMENTS. These Bylaws may be altered, amended or repealed or new Bylaws may be adopted by the stockholders or by the Board of Directors, when such power is conferred upon the Board of Directors by the Certificate of Incorporation, at any regular meeting of the stockholders or of the Board of Directors or at any special meeting of the stockholders or of the Board of Directors if notice of such alteration, amendment, repeal or adoption of new Bylaws be contained in the notice of such special meeting. If the power to adopt, amend or repeal Bylaws is conferred upon the Board of Directors by the Certificate of Incorporation it shall not divest or limit the power of the stockholders to adopt, amend or repeal Bylaws.

16

Exhibit 4.1

BROCADE COMMUNICATIONS SYSTEMS, INC.

AND

WELLS FARGO BANK, NATIONAL ASSOCIATION,

as Trustee

SECOND SUPPLEMENTAL INDENTURE

Dated as of November 17, 2017

1.375% Convertible Senior Notes due 2020

SECOND SUPPLEMENTAL INDENTURE, dated as of November 17, 2017 (this "**Supplemental Indenture**"), among Brocade Communications Systems, Inc., a Delaware corporation (the "**Company**"), as issuer, and Wells Fargo Bank, National Association, a national banking association organized under the laws of the United States of America, as trustee (the "**Trustee**"), to the Indenture, dated as of January 14, 2015 (as supplemented or otherwise modified prior to the date hereof, the "**Indenture**"), between the Company and the Trustee.

WHEREAS, the Company has heretofore executed and delivered the Indenture, pursuant to which the Company issued its 1.375% Convertible Senior Notes due 2020 (the "**Notes**") in the original aggregate principal amount of $575,000,000, convertible under certain circumstances into cash and/or shares of the Company's common stock, par value $0.001 per share ("**Company Common Stock**"), at the Company's option;

WHEREAS, the Company has entered into an Agreement and Plan of Merger, dated as of November 2, 2016 (as amended, supplemented, restated or otherwise modified, the "**Merger Agreement**"), by and among the Company, Broadcom Limited, a limited company organized under the laws of the Republic of Singapore ("**Ultimate Parent**"), Broadcom Corporation, a California corporation and indirect subsidiary of Ultimate Parent ("**Parent**"), and Bobcat Merger Sub, Inc., a Delaware corporation and direct wholly owned subsidiary of Parent ("**Merger Sub**");

WHEREAS, on December 19, 2016, Parent assigned all of its rights under the Merger Agreement and transferred all of the issued and outstanding capital stock of Merger Sub to LSI Corporation, a Delaware corporation and an indirect subsidiary of Ultimate Parent ("**LSI**");

WHEREAS, pursuant to the terms of the Merger Agreement, Merger Sub will merge with and into the Company (the "**Merger**") with the Company, as the surviving entity in the Merger, becoming a wholly owned subsidiary of LSI as of the date hereof;

WHEREAS, the Merger constitutes a Merger Event under the Indenture and Section 14.07(a) of the Indenture provides that in the case of any Merger Event, prior to or at the effective time of such Merger Event, the Company shall execute and deliver to the Trustee a supplemental indenture permitted under Section 10.01(i) of the Indenture providing that the right to convert each $1,000 principal amount of Notes shall be changed into a right to convert such principal amount of Notes into Reference Property upon such Merger Event;

WHEREAS, in connection with the Merger, each outstanding share of Company Common Stock will be converted into the right to receive an amount in cash equal to $12.75 in accordance with the terms of the Merger Agreement;

WHEREAS, pursuant to Section 10.01 of the Indenture, the Company and the Trustee may enter into indentures supplemental to the Indenture to, among other things, (i) make any change that does not adversely affect the rights of any Holder or (ii) in connection with any Merger Event, provide that the Notes are convertible into Reference Property, subject to the provisions of Section 14.02, and make such related changes to the terms of the Notes in accordance with Section 14.07;

WHEREAS, the Board of Directors of the Company by resolutions adopted on June 6, 2017 and the Audit Committee of the Board of Directors of the Company by resolutions adopted on November 6, 2017, have duly authorized this Supplemental Indenture, and the entry into this Supplemental Indenture by the parties hereto is permitted by the provisions of the Indenture;

2.

WHEREAS, in connection with the execution and delivery of this Supplemental Indenture, the Trustee has received an Officer's Certificate and an Opinion of Counsel as contemplated by Section 17.05 of the Indenture; and

WHEREAS, the Company has requested that the Trustee execute and deliver this Supplemental Indenture and have satisfied all requirements necessary to make this Supplemental Indenture a valid instrument in accordance with its terms.

WITNESSETH:

NOW THEREFORE, each party agrees as follows for the benefit of the other parties and for the equal and ratable benefit of the Holders:

ARTICLE 1

DEFINITIONS

Section 1.01. *Definitions in the Supplemental Indenture*. Unless otherwise specified herein or the context otherwise requires:

(a) a term defined in the Indenture has the same meaning when used in this Supplemental Indenture unless the definition of such term is amended or supplemented pursuant to this Supplemental Indenture;

(b) the terms defined in this Article and in this Supplemental Indenture include the plural as well as the singular;

(c) unless otherwise stated, a reference to a Section or Article is to a Section or Article of this Supplemental Indenture; and

(d) Article and Section headings herein are for convenience only and shall not affect the construction hereof.

Section 1.02. *Reference Property*. In accordance with Section 14.07(a) of the Indenture and pursuant to the terms of the Merger Agreement, a "unit of Reference Property" shall mean $12.75 in cash.

Section 1.03. *Initial Dividend Threshold*. In accordance with Section 14.07(e)(iii) of the Indenture, the Initial Dividend Threshold, at and after the effective time of the Merger, shall be zero.

ARTICLE 2

EFFECT OF MERGER ON CONVERSION

Section 2.01. *Conversion Right*. In accordance with and subject to Section 14.07 of the Indenture, as a result of the Merger, each $1,000 in principal amount of Notes is, at and after the effective time of the Merger, convertible in accordance with the terms of the Indenture into the right to receive the amount of cash that a holder of a number of shares of Company Common Stock equal to the Conversion Rate immediately prior to the consummation of the Merger would have owned or been entitled to receive upon the Merger. For all conversions that occur after the effective time of the Merger in accordance with and subject to Article 14 of the Indenture, (i) the consideration due upon conversion of each $1,000 principal amount of Notes shall be solely cash in an amount equal to the Conversion Rate in effect on the

3.

Conversion Date (as may be increased by any Additional Shares pursuant to Section 14.03 of the Indenture), multiplied by $12.75, and (ii) the Company shall satisfy the conversion obligation by paying cash to converting Holders on the third Business Day immediately following the relevant Conversion Date.

Section 2.02. *Addresses for Notices, Etc.* The first paragraph of Section 17.03 of the Indenture is hereby amended by deleting such paragraph in its entirety and replacing it with the following:

"Section 17.03. *Addresses for Notices, Etc.* Any notice or demand that by any provision of this Indenture is required or permitted to be given or served by the Trustee or by the Holders on the Company shall be deemed to have been sufficiently given or made, for all purposes if given or served by being deposited postage prepaid by registered or certified mail in a post office letter box addressed (until another address is filed by the Company with the Trustee) to the Company at the address of its principal office at 1320 Ridder Park Drive, San Jose, California 95131, Attention: Rebecca Boyden. Any notice, direction, request or demand hereunder to or upon the Trustee shall be deemed to have been sufficiently given or made, for all purposes, if given or served by being deposited postage prepaid by registered or certified mail in a post office letter box addressed to the Corporate Trust Office or sent electronically in PDF format."

ARTICLE 3

MISCELLANEOUS

Section 3.01. *Ratification of Indenture.* The Indenture, as supplemented by this Supplemental Indenture, is in all respects ratified and confirmed, and this Supplemental Indenture shall be deemed part of the Indenture in the manner and to the extent herein and therein provided.

Section 3.02. *Trustee Not Responsible for Recitals.* The recitals herein contained are made by the Company and not by the Trustee, and the Trustee assumes no responsibility for the correctness thereof. The Trustee makes no representation as to the validity or sufficiency of this Supplemental Indenture. All of the provisions contained in the Indenture in respect of the rights, privileges, immunities, powers, and duties of the Trustee shall be applicable in respect of the Supplemental Indenture as fully and with like force and effect as though set forth in full herein.

Section 3.03 *Successors.* All agreements of the Company and the Trustee in this Supplemental Indenture will bind their respective successors.

Section 3.04. *Governing Law.* THIS SUPPLEMENTAL INDENTURE AND ANY CLAIM, CONTROVERSY OR DISPUTE ARISING UNDER OR RELATED TO THIS SUPPLEMENTAL INDENTURE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK.

Section 3.05. *Headings, Etc.* The titles and headings of the articles and sections of this Supplemental Indenture have been inserted for convenience of reference only, are not to be considered a part hereof, and shall in no way modify or restrict any of the terms or provisions hereof.

Section 3.06. *Execution in Counterparts.* This Supplemental Indenture may be executed in any number of counterparts, each of which shall be an original, but such counterparts shall together constitute but one and the same instrument. The exchange of copies of this Supplemental Indenture and of signature

4.

pages by facsimile or PDF transmission shall constitute effective execution and delivery of this Supplemental Indenture as to the parties hereto and may be used in lieu of the original Supplemental Indenture for all purposes. Signatures of the parties hereto transmitted by facsimile or PDF shall be deemed to be their original signatures for all purposes.

Section 3.07. *Severability*. In the event any provision of this Supplemental Indenture shall be invalid, illegal or unenforceable, then (to the extent permitted by law) the validity, legality or enforceability of the remaining provisions shall not in any way be affected or impaired.

Section 3.08. *Waiver of Jury Trial*. EACH OF THE COMPANY AND THE TRUSTEE HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS SUPPLEMENTAL INDENTURE OR THE TRANSACTIONS CONTEMPLATED HEREBY.

Section 3.09. *Effectiveness*. This Supplemental Indenture shall become effective upon, without further action by the parties hereto, the Effective Time.

[Signature Page Follows]

5.

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed as of the day and year first above written.

BROCADE COMMUNICATIONS SYSTEMS, INC.

By: /s/ Thomas H. Krause, Jr.
    Name: Thomas H. Krause, Jr.
    Title: Chief Financial Officer and Secretary

WELLS FARGO BANK, NATIONAL
ASSOCIATION, as Trustee

By: /s/ Michael Tu
    Name: Michael Tu
    Title: Vice President

SIGNATURE PAGE TO SUPPLEMENTAL INDENTURE

Exhibit 99.1

<u>NOTICE OF MERGER EVENT AND SUPPLEMENTAL INDENTURE</u>
<u>NOTICE OF MAKE-WHOLE FUNDAMENTAL CHANGE</u>
<u>FUNDAMENTAL CHANGE COMPANY NOTICE</u>

To the holders of all outstanding
BROCADE COMMUNICATIONS SYSTEMS, INC.
1.375% Convertible Senior Notes due 2020

(CUSIP No. 111621 AQ1)

Reference is made to the Indenture, dated as of January 14, 2015 (the "<u>Indenture</u>"), by and between Brocade Communications Systems, Inc., a Delaware corporation (together with any successor, the "<u>Company</u>"), as issuer, and Wells Fargo Bank, National Association, a national banking association organized under the laws of the United States of America, as trustee (the "<u>Trustee</u>"), relating to the Company's 1.375% Convertible Senior Notes due 2020 (the "<u>Notes</u>"). This Notice of Merger Event and Supplemental Indenture, Notice of Make-Whole Fundamental Change, and Fundamental Company Change Notice (collectively, the "<u>Joint Notice</u>") is hereby given by the Company, as required by and pursuant to Sections 14.01(b)(iii), 14.03(b), 14.07(b) and 15.02(c) of the Indenture.

**IMPORTANT: The Fundamental Change Purchase Price that you will receive if you validly exercise the Fundamental Change Purchase Right will be <u>less</u> than the value that you would receive upon conversion of the Notes, as described below under "3. Notice of Make-Whole Fundamental Change: Conversion Right and Make-Whole Adjustment."**

Capitalized terms used in this Joint Notice, unless otherwise defined herein, have the meanings ascribed to such terms in the Indenture.

In accordance with Sections 14.01(b)(iii), 14.03(b), 14.07(b) and 15.02(c) of the Indenture, the Company hereby notifies you that:

*1.    Notice of Merger Event*

The Company entered into an Agreement and Plan of Merger, dated as of November 2, 2016 (the "<u>Merger Agreement</u>"), by and among Bobcat Merger Sub, Inc. ("<u>Purchaser</u>"), the Company, Broadcom Limited and Broadcom Corporation. On December 19, 2016, Broadcom Corporation assigned all of its rights under the Merger Agreement to LSI Corporation. Pursuant to the Merger Agreement, among other things, the Purchaser was merged with and into the Company (the "<u>Merger</u>"), with the Company as the surviving corporation and a wholly-owned subsidiary of LSI Corporation. At the time the Merger became effective, each share of common stock of the Company issued and outstanding immediately prior to the effective time ("<u>Common Stock</u>"), other than shares of Common Stock owned by the Purchaser, the Company, any subsidiary of the Company, Broadcom Corporation, Broadcom Limited or any subsidiary of Broadcom Limited, was cancelled and extinguished and automatically converted into the right to receive cash, without interest, in the amount of $12.75 (the "<u>Merger Consideration</u>"). The consummation and effectiveness of the Merger, which occurred on November 17, 2017, constitutes a Fundamental Change and Make-Whole Fundamental Change under the Indenture.

*2.    Notice of Execution of Supplemental Indenture*

Section 14.07 of the Indenture provides that, in connection with and as a result of the Merger, from and after the filing of the certificate of merger with the Delaware Secretary of State on November 17, 2017, the effective time of the Merger (the "<u>Effective Time</u>"), the right to convert each $1,000 in principal amount of Notes shall be changed into a right to convert such principal amount of Notes into the kind and amount of shares of stock, other securities or other property or assets (including cash or any combination thereof) that a holder of a number of shares of Common Stock equal to the Conversion Rate immediately prior to such Merger Event would have owned or been

entitled to receive upon such Merger Event, and that prior to or at the effective time of such Merger Event, the Company or the successor purchasing Person, as the case may be, shall execute with the Trustee a supplemental indenture as permitted under Section 10.01(i) of the Indenture providing for such change in the right to convert each $1,000 principal amount of Notes.

On November 17, 2017, the Company and the Trustee executed a supplemental indenture (the "Supplemental Indenture") permitted under Section 10.01 of the Indenture and required by Section 14.07 of the Indenture as described above. The Supplemental Indenture provides that for all conversions that occur after the Effective Time in accordance with and subject to Article 14 of the Indenture, the consideration due upon conversion of each $1,000 principal amount of Notes shall be solely cash in an amount equal to the Conversion Rate in effect on the Conversion Date (as may be increased pursuant to Section 14.03 of the Indenture, as described below under "3. Notice of Make-Whole Fundamental Change: Conversion Right and Make-Whole Adjustment"), multiplied by the Merger Consideration, less any applicable withholding taxes, and that the Company shall make such cash payment to converting Holders on the third Business Day immediately following the Conversion Date.

A copy of the Supplemental Indenture was filed by the Company with the United States Securities and Exchange Commission as an exhibit to a Current Report on Form 8-K dated November 17, 2017.

*3. Notice of Make-Whole Fundamental Change: Conversion Right and Make-Whole Adjustment*

The effective date of the Make-Whole Fundamental Change resulting from the consummation of the Merger is November 17, 2017 (the "Make-Whole Effective Date"). As an alternative to requiring the Company to purchase a Holder's Notes (which purchase requirement is described in Section 4 below), the Notes may be surrendered for conversion at any time from and after November 17, 2017 until the close of business (5:00 P.M. New York City time) on January 9, 2018, the Business Day immediately preceding the Fundamental Change Repurchase Date, in accordance with Section 14.03 of the Indenture.

In order to validly surrender such Notes for conversion, the Holder must withdraw any previously submitted Fundamental Change Repurchase Notice relating to such Notes in accordance with the terms of the Indenture, pursuant to the requirements of Section 15.02(c)(viii) of the Indenture and the Fundamental Change Repurchase Notice.

*Conversion Rate and Make-Whole Adjustment*

The Conversion Rate in effect immediately prior to the Make-Whole Fundamental Change is 63.7088 shares of Common Stock per $1,000 principal amount of Notes (the "Base Conversion Rate"). The Conversion Rate applicable to Notes that are surrendered for conversion during the period from and including the Make-Whole Effective Date and ending at 5:00 p.m., New York City time, on January 9, 2018, the Business Day immediately preceding the Fundamental Change Repurchase Date (such period, the "Make-Whole Fundamental Change Period"), will be increased pursuant to Section 14.03 of the Indenture (such increased Conversion Rate, the "Make-Whole Conversion Rate"). The number of Additional Shares to be received per $1,000 principal amount of Notes pursuant to Section 14.03 of the Indenture during the Make-Whole Fundamental Change Period is 16.1043 shares of Common Stock. Accordingly, during the Make-Whole Fundamental Change Period, the Make-Whole Conversion Rate is 79.8131 shares of Common Stock per $1,000 principal amount of Notes. **Accordingly, the total amount of consideration to be paid for each $1,000 principal amount of Notes surrendered for conversion during the Make-Whole Fundamental Change Conversion Period is expected to be $1,017.6170.**

The following table illustrates the approximate amount in cash per $1,000 principal amount of Notes that a Holder would receive if its Notes are (a) purchased by the Company through exercise of the Fundamental Change Purchase Right or (b) converted during the Make-Whole Fundamental Change Period at the Make-Whole Conversion Rate from and after the Effective Time.

| Fundamental Change Purchase Price (a) | Conversion at Make-Whole Conversion Rate (b) |
|---|---|
| $1,000.3056 | $1,017.6170 |

The name and address of the Conversion Agent is Wells Fargo Bank, National Association, Corporate Trust Operations, MAC N9300-070, 600 South Fourth Street, Minneapolis, Minnesota 55402 (Brocade Communications Systems, Inc., 1.375% Convertible Senior Notes due 2020). A Holder may exercise its rights to require the Company to convert by completing, manually signing and delivering an irrevocable notice (which shall be in substantially the form attached as Annex A or a facsimile thereof at the office of the Conversion Agent and state in writing therein the principal amount of Notes to be converted, and, in the case of Global Notes, must comply with the procedures of the Depositary in effect at that time), of the exercise of such rights to the Conversion Agent (a "Conversion Notice"). In the case of Physical Notes, the Holder must also surrender such Notes, duly endorsed to the Company or in blank (and accompanied by appropriate endorsement and transfer documents), at the office of the Conversion Agent, if required, furnish endorsements and transfer documents, if required, pay all transfer and similar taxes. If required, holders of both Physical Notes and Global Notes must pay funds equal to the interest payable on the next Interest Payment Date to which such Holder is not entitled.

### 4.  *Fundamental Change Notice: Holder's Right to Have the Company Repurchase Notes; Procedures for Exercising Such Rights*

The effective date of the Fundamental Change resulting from the consummation of the Merger is November 17, 2017. As a result of the Fundamental Change resulting from the consummation of the Merger, each Holder has the right to require the Company to purchase the Notes of such Holder equal to $1,000 principal amount (or an integral multiple number thereof) at the Fundamental Change Repurchase Price on the Fundamental Change Repurchase Date. The Company has set the "Fundamental Change Repurchase Date" as January 10, 2018. The Fundamental Change Repurchase Price is the amount equal to 100% of the principal amount of the Notes to be repurchased, together with accrued and unpaid interest, if any, to, but not including, the Fundamental Change Repurchase Date. We expect that there will be accrued and unpaid interest due as part of the Fundamental Change Repurchase Price equal to approximately $0.3056 per $1,000 principal amount of the Notes tendered for purchase. Accordingly, the total amount of consideration to be paid for each $1,000 principal amount of Notes validly tendered pursuant to the Repurchase Option is expected to be $1,000.3056.

**IMPORTANT: The Fundamental Change Purchase Price that you will receive if you validly exercise the Fundamental Change Purchase Right will be less than the value that you would receive upon conversion of the Notes, as described above under "3. Notice of Make-Whole Fundamental Change: Conversion Right and Make-Whole Adjustment."**

The name and address of the paying agent is Wells Fargo Bank, National Association, Corporate Trust Operations, MAC N9300-070, 600 South Fourth Street, Minneapolis, MN 55402 (Brocade Communications Systems, Inc., 1.375% Convertible Senior Notes due 2020). In accordance with Section 15.02 of the Indenture, a Holder may exercise its rights to require the Company to repurchase for cash all or any portion of the Notes of such Holder by delivering a duly completed notice (which shall be in substantially the form attached as Annex B and which may be delivered by first class mail, and, in the case of Global Notes, may be delivered in accordance with the applicable procedures of the Depositary), of the exercise of such rights to the paying agent on or before the close of business on the Business Day immediately preceding the Fundamental Change Repurchase Date, subject to extension to comply with applicable law (a "Fundamental Change Repurchase Notice") and delivering the Notes to the paying agent at any time after delivery of the Fundamental Change Repurchase Notice (together with all necessary endorsements for transfer) at the Corporate Trust Office of the paying agent, or book-entry transfer of the Notes, if the Notes are Global Notes, in compliance with the procedures of the Depositary.

The Fundamental Change Repurchase Notice must be delivered on or prior to the close of business on the Fundamental Change Repurchase Date and shall state: (A) the certificate number (if such Note is held other than in global form) of the Note which the Holder will deliver to be purchased, or, if the Note is held in global form, any

other items required to comply with the Applicable Procedures, (B) the portion of the principal amount of the Note which the Holder will deliver to be purchased and (C) that such Note shall be purchased as of the Fundamental Change Repurchase Date pursuant to the terms and conditions specified in the Notes and in the Indenture. The delivery of a Note for which a Fundamental Change Repurchase Notice has been timely delivered to any paying agent at the office of such paying agent or in compliance with Applicable Procedures and not validly withdrawn prior to, on or after the Fundamental Change Repurchase Date (together with all necessary endorsements) shall be a condition to the receipt by the Holder of the Fundamental Change Repurchase Price therefor. The Company shall be obliged to purchase a portion of a Note only if the principal amount of such portion is $1,000 or an integral multiple of $1,000.

Unless the Company fails to pay such Fundamental Change Repurchase Price, Notes covered by any Fundamental Change Repurchase Notice will cease to be outstanding and interest will cease to accrue on and after the Fundamental Change Repurchase Date.

Any Holder that delivers a Fundamental Change Repurchase Notice in accordance with the Indenture and this Notice shall have the right to withdraw such Fundamental Change Repurchase Notice in whole or in a portion thereof that is a principal amount of $1,000 or in an integral multiple thereof at any time prior to the close of business on the Business Day immediately preceding the Fundamental Change Repurchase Date by delivery of a written notice of withdrawal to the paying agent that states: (A) the principal amount of the Notes with respect to which such notice of withdrawal is being submitted; (B) the certificate numbers of the Notes in respect of which such notice of withdrawal is being submitted, if Physical Notes have been issued; and (C) the principal amount, if any, of such Note that remains subject to the original Fundamental Change Repurchase Notice, which portion must be in principal amounts of $1,000 or an integral multiple of $1,000; in the case of Global Notes, the notice must comply with appropriate procedures of the Depositary.

*5.* **Miscellaneous**

Please refer to the Indenture for a more complete description of the rights and procedures described herein. In the event of any conflicting information in this Joint Notice and the Indenture, the information in the Indenture will control. Holders should not assume that the information in this Joint Notice is accurate as of any date other than the date hereof.

**This Joint Notice does not constitute any recommendation as to whether you should exercise any rights of conversion or repurchase. Whether you choose to convert your notes or have them repurchased may have materially different tax results for you. You should consult your own financial and tax advisors and must make your own decision as to whether to exercise any rights of conversion or repurchase, as outlined in this Joint Notice and, if so, the amount of Notes for which to exercise such option.**

DATED: November 17, 2017

By BROCADE COMMUNICATIONS SYSTEMS, INC.

[FORM OF NOTICE OF CONVERSION]

BROCADE COMMUNICATIONS SYSTEMS, INC.
1.375% Convertible Senior Notes due 2020

To:   WELLS FARGO BANK, NATIONAL ASSOCIATION
      Corporate Trust Operations
      MAC N9300-070
      600 South Fourth Street
      Minneapolis, MN 55402

The undersigned registered owner of this Note hereby exercises the option to convert this Note, or the portion hereof (that is $1,000 principal amount or an integral multiple thereof) below designated, into cash, shares of Common Stock or a combination of cash and shares of Common Stock, as applicable, in accordance with the terms of the Indenture referred to in this Note, and directs that any cash payable and any shares of Common Stock issuable and deliverable upon such conversion, together with any cash for any fractional share, and any Notes representing any unconverted principal amount hereof, be issued and delivered to the registered Holder hereof unless a different name has been indicated below. If any shares of Common Stock or any portion of this Note not converted are to be issued in the name of a Person other than the undersigned, the undersigned will pay all documentary, stamp or similar issue or transfer taxes, if any in accordance with Section 14.02(d) and Section 14.02(e) of the Indenture. Any amount required to be paid to the undersigned on account of interest accompanies this Note. Capitalized terms used herein but not defined shall have the meanings ascribed to such terms in the Indenture.

Dated: _____

_____

_____
Signature Guarantee

Signature(s) must be guaranteed by an eligible Guarantor Institution (banks, stock brokers, savings and loan associations and credit unions) with membership in an approved signature guarantee medallion program pursuant to Securities and Exchange Commission Rule 17Ad-15 if shares of Common Stock are to be issued, or Notes are to be delivered, other than to and in the name of the registered holder.

Fill in for registration of shares if to be issued, and Notes if to be delivered, other than to and in the name of the registered holder:

_____
(Name)

_____
(Street Address)

_____
(City, State and Zip Code)

Please print name and address

_____

_____
Signature(s)

Principal amount to be converted (if less than all): $_____,000

NOTICE: The above signature(s) of the Holder(s) hereof must correspond with the name as written upon the face of the Note in every particular without alteration or enlargement or any change whatever.

_____
Social Security or Other Taxpayer
Identification Number

[FORM OF FUNDAMENTAL CHANGE REPURCHASE NOTICE]

BROCADE COMMUNICATIONS SYSTEMS, INC.
1.375% Convertible Senior Notes due 2020

To:  WELLS FARGO BANK, NATIONAL ASSOCIATION
Corporate Trust Operations
MAC N9300-070
600 South Fourth Street
Minneapolis, MN 55402

The undersigned registered owner of this Note hereby acknowledges receipt of a notice from Brocade Communications Systems, Inc. (the "Company") as to the occurrence of a Fundamental Change with respect to the Company and specifying the Fundamental Change Repurchase Date and requests and instructs the Company to pay to the registered holder hereof in accordance with Section 15.02 of the Indenture referred to in this Note (1) the entire principal amount of this Note, or the portion thereof (that is $1,000 principal amount or an integral multiple thereof) below designated, and (2) if such Fundamental Change Repurchase Date does not fall during the period after a Regular Record Date and on or prior to the corresponding Interest Payment Date, accrued and unpaid interest, if any, thereon to, but excluding, such Fundamental Change Repurchase Date. Capitalized terms used herein but not defined shall have the meanings ascribed to such terms in the Indenture.

In the case of Physical Notes, the certificate numbers of the Notes to be repurchased are as set forth below:

Dated: _____

_____

| Signature(s) |
| --- |

| Social Security or Other Taxpayer |
| --- |
Identification Number

Principal amount to be converted (if less than all): $_____,000

NOTICE: The above signature(s) of the Holder(s) hereof must correspond with the name as written upon the face of the Note in every particular without alteration or enlargement or any change whatever.