# Exhibit 87 to the Olivia Weber Declaration

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
## Washington, DC 20549
## Form 10-K

(MARK ONE)

**ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the fiscal year ended  November 3, 2019

OR

**TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from        to

# Broadcom Inc.

| Delaware | 1320 Ridder Park Drive | 001-38449 | 35-2617337 |
|---|---|---|---|
| (State or Other Jurisdiction of Incorporation or Organization) | San Jose,   CA   95131-2313 | (Commission File Number) | (I.R.S. Employer Identification No.) |
| | (408)  433-8000 | | |

(Exact Name of Registrant as Specified in Its Charter

Address of Principal Executive Offices

Registrant's Telephone Number, Including Area Code)

**Securities registered pursuant to Section 12(b) of the Act:**

| Title of Each Class | Trading Symbol(s) | Name of Each Exchange on Which Registered |
|---|---|---|
| Common Stock, $0.001 par value | AVGO | The NASDAQ Global Select Market |
| 8.00% Mandatory Convertible Preferred Stock, Series A, $0.001 par value | AVGOP | The NASDAQ Global Select Market |

**Securities registered pursuant to Section 12(g) of the Act: None**

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.     Yes        No

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.     Yes        No

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   Yes     No

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files).    Yes     No

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company, or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act. (Check one):

Large accelerated filer            Accelerated filer            Non-accelerated filer            Smaller reporting company            Emerging growth company

(Do not check if a smaller reporting company)

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act.

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).    Yes     No

The aggregate market value of voting and non-voting common equity held by non-affiliates as of  May 3, 2019, based upon the closing sale price of such shares on The Nasdaq Global Select Market on such date was approximately $122.7 billion.

As of November 29, 2019, the registrant had 397,792,289 shares of its common stock, $0.001 par value per share, outstanding.

**Documents Incorporated by Reference**

Information required in response to Part III of this Annual Report on Form 10-K is hereby incorporated by reference from the registrant's definitive Proxy Statement for its 2020 Annual Meeting of Stockholders. Except as expressly incorporated by reference, the registrant's Proxy Statement shall not be deemed to be a part of this Annual Report on Form 10-K. The registrant intends to file its definitive Proxy Statement within 120 days after its fiscal year ended November 3, 2019.

# PAGE(S) INTENTIONALLY OMITTED

Irell & Manella LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660

| Exhibit No. | Description | Incorporated by Referenced Herein | | Filed Herewith |
|---|---|---|---|---|
| | | Form | Filing Date | |
| 10.17* | Settlement and Patent License and Non-Assert Agreement by and between Qualcomm Incorporated and Broadcom Corporation. | Broadcom Corporation Current Report on Form 8-K/A (Commission File No. 000-23993) | July 23, 2009 | |
| 10.18+ | Avago Technologies Limited 2009 Equity Incentive Award Plan. | Avago Technologies Limited Registration Statement on Form S-1 (Commission File No. 333-153127) | July 27, 2009 | |
| 10.19+ | Second Amended and Restated Employee Stock Purchase Plan. | Broadcom Limited Current Report on Form 8-K (Commission File No. 001-37690) | February 2, 2016 | |
| 10.20+ | Amendment to Broadcom Limited Second Amended and Restated Employee Stock Purchase Plan. | Broadcom Inc. Current Report on Form 8-K12B (Commission File No. 001-38449) | April 4, 2018 | |
| 10.21+ | LSI Corporation 2003 Equity Incentive Plan, as amended. | Avago Technologies Limited Registration Statement on Form S-8 (Commission File No. 333-195741) | May 6, 2014 | |
| 10.22+ | Amendment to the LSI Corporation 2003 Equity Incentive Plan (effective February 1, 2016). | Broadcom Limited Annual Report on Form 10-K (Commission File No. 001-37690) | December 23, 2016 | |
| 10.23+ | Amendment to the LSI Corporation 2003 Equity Incentive Plan (effective April 4, 2018). | Broadcom Inc. Current Report on Form 8-K12B (Commission File No. 001-38449) | April 4, 2018 | |
| 10.24+ | Broadcom Corporation 2012 Stock Incentive Plan. | Broadcom Corporation Annual Report on Form 10-K (Commission File No. 000-23993) | January 29, 2015 | |
| 10.25+ | Amendment to the Broadcom Corporation 2012 Stock Incentive Plan (effective February 1, 2016). | Broadcom Limited Annual Report on Form 10-K (Commission File No. 001-37690) | December 23, 2016 | |
| 10.26+ | Amendment to the Broadcom Corporation 2012 Stock Incentive Plan (effective April 4, 2018). | Broadcom Inc. Current Report on Form 8-K12B (Commission File No. 001-38449) | April 4, 2018 | |
| 10.27+ | Broadcom Corporation 1998 Stock Incentive Plan, as amended and restated November 11, 2010. | Broadcom Corporation Annual Report on Form 10-K (Commission File No. 000-23993) | February 2, 2011 | |
| 10.28+ | Amendment to the Broadcom Corporation 1998 Stock Incentive Plan (effective February 1, 2016). | Broadcom Limited Annual Report on Form 10-K (Commission File No. 001-37690) | December 23, 2016 | |
| 10.29+ | Brocade Communication Systems, Inc. 2009 Stock Plan, as amended and restated April 11, 2017. | Brocade Communication Systems, Inc. Current Report on Form 8-K (Commission File No. 000-25601) | April 12, 2017 | |
| 10.30+ | Amendment to the Brocade Communication Systems, Inc. 2009 Stock Plan (effective November 17, 2017). | Broadcom Limited Registration Statement on Form S-8 (Commission File No. 333-221654) | November 11, 2017 | |
| 10.31+ | Amendment to the Brocade Communication Systems, Inc. 2009 Stock Plan (effective April 4, 2018). | Broadcom Inc. Current Report on Form 8-12B (Commission File No. 001-38449) | April 4, 2018 | |
| 10.32+ | Brocade Communications Systems, Inc. Amended and Restated Inducement Award Plan, effective as of May 24, 2016. | Brocade Communication Systems, Inc. Post-Effective Amendment No. 1 to Form S-4 on Form S-8 Registration Statement (Commission File No. 333-211823) | June 3, 2016 | |
| 10.33+ | Amendment to the Brocade Communication Systems, Inc. Amended and Restated Inducement Award Plan (effective November 17, 2017). | Broadcom Limited Registration Statement on Form S-8 (Commission File No. 333-221654) | November 11, 2017 | |

| Exhibit No. | Description | Incorporated by Referenced Herein | | Filed Herewith |
|---|---|---|---|---|
| | | Form | Filing Date | |
| 10.34+ | Amendment to the Brocade Communication Systems, Inc. Amended and Restated Inducement Award Plan (effective April 4, 2018). | Broadcom Inc. Current Report on Form 8-K12B (Commission File No. 001-38449) | April 4, 2018 | |
| 10.35+ | CA, Inc. 2011 Incentive Plan, as amended and restated as of November 5, 2018. | Broadcom Inc. Registration Statement on Form S-8 (Commission File No. 333-228175 | November 5, 2018 | |
| 10.36+ | Form of Annual Bonus Plan for Executive Employees. | Broadcom Limited Annual Report on Form 10-K (Commission File No. 001-37690) | December 23, 2016 | |
| 10.37+ | Form of Option Agreement Under Avago Technologies Limited 2009 Equity Incentive Award Plan. | Amendment No. 5 to Avago Technologies Limited Registration Statement on Form S-1 (Commission File No. 333-153127) | July 27, 2009 | |
| 10.38+ | Form of Restricted Stock Unit Agreement (Sell to Cover) Under Avago Technologies Limited 2009 Equity Incentive Award Plan. | Avago Technologies Limited Quarterly Report on Form 10-Q (Commission File No. 001-34428) | June 7, 2013 | |
| 10.39+ | Form of Restricted Stock Unit Agreement (Sell to Cover) Under Avago Technologies Limited 2009 Equity Incentive Award Plan (effective February 1, 2016). | Broadcom Limited Quarterly Report on Form 10-Q (Commission File No. 001-37690) | March 10, 2016 | |
| 10.40+ | Form of Restricted Stock Unit Agreement (Sell to Cover) Under Avago Technologies Limited 2009 Equity Incentive Award Plan (effective December 5, 2017). | Broadcom Limited Annual Report on Form 10-K (Commission File No. 001-37690) | December 21, 2017 | |
| 10.41+ | Form of Restricted Stock Unit Award Agreement under Avago Technologies Limited 2009 Equity Incentive Plan (effective April 4, 2018). | Broadcom Inc. Quarterly Report on Form 10-Q (Commission File No. 001-38449) | June 16, 2018 | |
| 10.42+ | Form of Restricted Stock Unit Award Agreement under Avago Technologies Limited 2009 Equity Incentive Plan (effective December 5, 2018). | Broadcom Inc. Annual Report on Form 10-K (Commission File No. 001-38449) | December 21, 2018 | |
| 10.43+ | Form of Agreement for Multi-Year Equity Award of Restricted Stock Unit Award under the Avago Technologies Limited 2009 Equity Incentive Award Plan). | Broadcom Inc. Current Report on Form 8-K (Commission File No. 001-34889) | December 6, 2018 | |
| 10.44+ | Form of Performance Stock Unit Agreement (Relative TSR) under Avago Technologies Limited 2009 Equity Incentive Award Plan. | Broadcom Limited Quarterly Report on Form 10-Q (Commission File No. 001-37690) | March 9, 2017 | |
| 10.45+ | Form of Performance Share Unit Agreement (Relative TSR) under Avago Technologies Limited 2009 Equity Incentive Plan (effective March 13, 2018). | Broadcom Limited Quarterly Report on Form 10-Q (Commission File No. 001-37690) | March 15, 2018 | |
| 10.46+ | Form of Performance Share Unit Agreement (Relative TSR) under Avago Technologies Limited 2009 Equity Incentive Plan (effective April 4, 2018). | Broadcom Inc. Quarterly Report on Form 10-Q (Commission File No. 001-38449) | June 16, 2018 | |
| 10.47+ | Form of Performance Stock Unit Agreement (Relative TSR) under Avago Technologies Limited 2009 Equity Incentive Plan (effective December 5, 2018). | Broadcom Inc. Annual Report on Form 10-K (Commission File No. 001-38449) | December 21, 2018 | |
| 10.48+ | Form of Agreement for Multi-Year Equity Award of Performance Stock Units under the Avago Technologies Limited 2009 Equity Incentive Award Plan). | Broadcom Inc. Current Report on Form 8-K (Commission File No. 001-34889) | December 6, 2018 | |

# PAGE(S) INTENTIONALLY OMITTED

Irell & Manella LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660

EX-10.1 3 d193800dex101.htm EX-10.1

**Exhibit 10.1**

**BROCADE COMMUNICATIONS SYSTEMS, INC.**

**AMENDED AND RESTATED INDUCEMENT AWARD PLAN**

This Brocade Communications Systems, Inc. Amended and Restated Inducement Award Plan amends and restates the Brocade Communications Systems, Inc. 2013 Inducement Award Plan, effective as of May 24, 2016 (the "Effective Date").

1. Purposes of the Plan. The purposes of this Plan are:

- to provide an inducement material to individuals entering into employment with the Company,

- to permit the conversion or replacement of certain equity awards in conjunction with merger and acquisition activity,

- to permit the Company to utilize the acquired share reserve of equity plans acquired in mergers and acquisitions, and

- to promote the success of the Company's business.

Awards granted under the Plan will be Assumed Share Reserve Awards, Inducement Awards, or Replacement Awards. Each such Award may be a Nonstatutory Stock Option, Restricted Stock, Restricted Stock Unit, Stock Appreciation Right, Performance Unit, Performance Share or other stock or cash awards as the Administrator may determine.

2. Definitions. As used herein, the following definitions will apply:

(a) "Administrator" means the Board or any of its Committees that will be administering the Plan, in accordance with Section 4 of the Plan.

(b) "Applicable Laws" means the requirements relating to the administration of equity-based awards under U.S. state corporate laws, U.S. federal and state securities laws, the Code, any stock exchange or quotation system on which the Common Stock is listed or quoted and the applicable laws of any foreign country or jurisdiction where Awards are, or will be, granted under the Plan.

(c) "Assumed Share Reserve Award" means an Award that is granted with respect to an Assumed Share Pool under this Plan attributable to shares available under pre-existing plans acquired by the Company in acquisitions and mergers provided such pre-existing plans satisfied Nasdaq Listing Rule 5635(c). Such Awards shall (i) be granted during the period of time they would have been available under the pre-existing plan, absent the acquisition or merger, (ii) not be granted to individuals who were employed by the Company or its subsidiaries immediately prior to the time the acquisition or merger was consummated, and (iii) be of the same or similar type of award as the pre-existing plan permitted (e.g., if a pre-existing plan permitted only issuance of stock options, the Awards issued with respect to the Assumed Share Pool attributable to that pre-existing plan only could be Options or Stock Appreciation Rights).

(d) "Award" means, individually or collectively, a grant under the Plan of Options, Restricted Stock, Restricted Stock Units, Stock Appreciation Rights, Performance Units, Performance Shares and other stock or cash awards as the Administrator may determine.

(e) "Award Agreement" means the written or electronic agreement setting forth the terms and provisions applicable to each Award granted under the Plan. The Award Agreement is subject to the terms and conditions of the Plan.

(f) "Award Transfer Program" means any program instituted by the Administrator that would permit Participants the opportunity to transfer for value any outstanding Awards to a financial institution or other person or entity approved by the Administrator.

(g) "Board" means the Board of Directors of the Company.

(h) "Change in Control" means the occurrence of any of the following events:

(i) Change in Ownership of the Company. A change in the ownership of the Company which occurs on the date that any one person, or more than one person acting as a group ("Person"), acquires ownership of the stock of the Company that, together with the stock held by such Person, constitutes more than 50% of the total voting power of the stock of the Company; or

(ii) Change in Effective Control of the Company. If the Company has a class of securities registered pursuant to Section 12 of the Exchange Act, a change in the effective control of the Company which occurs on the date that a majority of members of the Board is replaced during any 12 month period by Directors whose appointment or election is not endorsed by a majority of the members of the Board prior to the date of the appointment or election. For purposes of this clause (ii), if any Person is considered to be in effective control of the Company, the acquisition of additional control of the Company by the same Person will not be considered a Change in Control; or

(iii) Change in Ownership of a Substantial Portion of the Company's Assets. A change in the ownership of a substantial portion of the Company's assets which occurs on the date that any Person acquires (or has acquired during the 12 month period ending on the date of the most recent acquisition by such person or persons) assets from the Company that have a total gross fair market value equal to or more than 50% of the total gross fair market value of all of the assets of the Company immediately prior to such acquisition or acquisitions. For purposes of this subsection (iii), gross fair market value means the value of the assets of the Company, or the value of the assets being disposed of, determined without regard to any liabilities associated with such assets.

For purposes of this Section 2(h), persons will be considered to be acting as a group if they are owners of a corporation that enters into a merger, consolidation, purchase or acquisition of stock, or similar business transaction with the Company.

-2-

Notwithstanding the foregoing, a transaction will not be deemed a Change in Control unless the transaction qualifies as a change in control event within the meaning of Code Section 409A, as it has been and may be amended from time to time, and any proposed or final Treasury Regulations and Internal Revenue Service guidance that has been promulgated or may be promulgated thereunder from time to time.

Further and for the avoidance of doubt, a transaction will not constitute a Change in Control if: (i) its sole purpose is to change the state of the Company's incorporation, or (ii) its sole purpose is to create a holding company that will be owned in substantially the same proportions by the persons who held the Company's securities immediately before such transaction.

(i) "Code" means the Internal Revenue Code of 1986, as amended. Reference to a specific section of the Code or Treasury Regulation thereunder will include such section or regulation, any valid regulation or other official applicable guidance promulgated under such section, and any comparable provision of any future legislation or regulation amending, supplementing or superseding such section or regulation.

(j) "Committee" means a committee of Directors or of other individuals satisfying Applicable Laws appointed by the Board in accordance with Section 4 of the Plan.

(k) "Common Stock" means the common stock of the Company.

(l) "Company" means Brocade Communications Systems, Inc., a Delaware corporation, or any successor thereto.

(m) "Consultant" means any person, including an advisor, engaged by the Company or a Parent or Subsidiary to render services to such entity.

(n) "Director" means a member of the Board.

(o) "Disability" means total and permanent disability as defined in Section 22(e)(3) of the Code, provided that in the case of Awards other than Incentive Stock Options, the Administrator in its discretion may determine whether a permanent and total disability exists in accordance with uniform and non-discriminatory standards adopted by the Administrator from time to time.

(p) "Employee" means any person, including Officers and Directors, employed by the Company or any Parent or Subsidiary of the Company. Neither service as a Director nor payment of a director's fee by the Company will be sufficient to constitute "employment" by the Company.

(q) "Exchange Act" means the Securities Exchange Act of 1934, as amended.

-3-

(r) "Fair Market Value" means, as of any date, the value of Common Stock determined as follows:

(i) If the Common Stock is listed on any established stock exchange or a national market system, including without limitation the Nasdaq Global Select Market, the Nasdaq Global Market or the Nasdaq Capital Market of The Nasdaq Stock Market, its fair market value will be the closing sales price for such stock (or the closing bid, if no sales were reported) as quoted on such exchange or system on the day of determination, as reported in *The Wall Street Journal* or such other source as the Administrator deems reliable;

(ii) If the Common Stock is regularly quoted by a recognized securities dealer but selling prices are not reported, the fair market value of a Share of Common Stock will be the mean between the high bid and low asked prices for the Common Stock on the day of determination, as reported in The Wall Street Journal or such other source as the Administrator deems reliable; or

(iii) In the absence of an established market for the Common Stock, the fair market value will be determined in good faith by the Administrator.

(s) "Incentive Stock Option" means an Option intended to qualify as an incentive stock option within the meaning of Section 422 of the Code and the regulations promulgated thereunder.

(t) "Inducement Award" means an Award that constitutes an "inducement grant" within the meaning of Nasdaq Listing Rule 5635(c)(4) and IM 5635-1.

(u) "Nonstatutory Stock Option" means an Option not intended to qualify as an Incentive Stock Option.

(v) "Notice of Grant" means a written or electronic notice evidencing certain terms and conditions of an individual Award grant. The Notice of Grant is part of the Award Agreement.

(w) "Officer" means a person who is an officer of the Company within the meaning of Section 16 of the Exchange Act and the rules and regulations promulgated thereunder.

(x) "Option" means a stock option granted pursuant to the Plan.

(y) "Parent" means a "parent corporation," whether now or hereafter existing, as defined in Section 424(e) of the Code.

(z) "Participant" means the holder of an outstanding Award.

(aa) "Performance Share" means an Award denominated in Shares which may be earned in whole or in part upon attainment of vesting criteria as the Administrator may determine pursuant to Section 13.

(bb) "Performance Unit" means an Award which may be earned in whole or in part upon attainment of vesting criteria as the Administrator may determine and which may be settled for cash, Shares or other securities or a combination of the foregoing pursuant to Section 13.

-4-

(cc) "<u>Period of Restriction</u>" means the period during which the transfer of Shares of Restricted Stock are subject to restrictions and therefore, the Shares are subject to a substantial risk of forfeiture. Such restrictions may be based on the passage of time, the achievement of target levels of performance, or the occurrence of other events as determined by the Administrator.

(dd) "<u>Plan</u>" means this Amended and Restated Inducement Award Plan.

(ee) "<u>Replacement Award</u>" means an Award granted in connection with acquisition or merger activity that converts, replaces or adjusts outstanding options or other equity compensation awards to reflect the acquisition or merger as permitted by Nasdaq Listing Rule 5635(c)(3) and IM 5635-1. To the extent applicable, the number of shares of Common Stock and the exercise price thereof underlying such an Award shall be determined in a manner consistent with United States Treasury Regulation section 1.409A-1(b)(5) (v)(D), unless the Committee determines otherwise. Replacement Awards can be issued as Incentive Stock Options if the award being converted, replaced, or adjusted was intended to be an incentive stock option and the issuance of such an Incentive Stock Option is permitted by the Code.

(ff) "<u>Restricted Stock</u>" means shares of Common Stock acquired pursuant to an Award of restricted stock under Section 10 of the Plan.

(gg) "<u>Restricted Stock Unit</u>" means a bookkeeping entry representing an amount equal to the Fair Market Value of one Share, granted pursuant to Section 11. Each restricted stock unit represents an unfunded and unsecured obligation of the Company.

(hh) "<u>Rule 16b-3</u>" means Rule 16b-3 of the Exchange Act or any successor to Rule 16b-3, as in effect when discretion is being exercised with respect to the Plan.

(ii) "<u>Section 16(b)</u>" means Section 16(b) of the Exchange Act.

(jj) "<u>Service Provider</u>" means an Employee, Director or Consultant.

(kk) "<u>Share</u>" means a share of the Common Stock, as adjusted in accordance with Section 16 of the Plan.

(ll) "<u>Stock Appreciation Right</u>" means an Award, granted alone or in connection with an Option, that pursuant to Section 12 is designated as a Stock Appreciation Right.

(mm) "<u>Subsidiary</u>" means a "subsidiary corporation", whether now or hereafter existing, as defined in Section 424(f) of the Code.

3. <u>Stock Subject to the Plan</u>.

(a) <u>Stock Subject to the Plan</u>. Subject to the provisions of Section 16 of the Plan, the maximum aggregate number of Shares that may be awarded under the Plan is 22,000,000 Shares (the "<u>Share Reserve</u>"). Notwithstanding the foregoing, the Share Reserve shall be increased by the number of shares available under equity plans acquired in acquisitions and mergers (after appropriate adjustment of the number of shares to reflect the transaction) where such plans satisfied

-5-

the requirements of Nasdaq Listing Rule 5635(c) (with each such additional tranche being referred to as an "Assumed Share Pool"); provided, however, that Brocade may decide not to increase the Share Reserve by the full or any amount of an Assumed Share Pool. The Shares may be authorized, but unissued, or reacquired Common Stock. No participant may receive Awards covering more than 3,000,000 Shares under the Plan in any one calendar year, all of which may be Incentive Stock Options, if granted as Replacement Awards. Not more than 10,000,000 Incentive Stock Option Awards shall be issued under the Plan.

(b) Lapsed Awards. If an Award expires or becomes unexercisable without having been exercised in full, or, with respect to Awards other than Options or Stock Appreciation Rights, is forfeited to or repurchased by the Company due to failure to vest, the unpurchased Shares (or for Awards other than Options or Stock Appreciation Rights, the forfeited or repurchased Shares), which were subject thereto will become available for future grant or sale under the Plan (unless the Plan has terminated). With respect to Stock Appreciation Rights, except as otherwise provided herein, all Shares subject to a Stock Appreciation Right will cease to be available under the Plan, other than Shares forfeited due to failure to vest which will become available for future grant or sale under the Plan (unless the Plan has terminated). Shares that have actually been issued under the Plan under any Award, will not be returned to the Plan and will not become available for future distribution under the Plan, except that if Shares issued pursuant to Awards other than Options or Stock Appreciation Rights are repurchased by the Company or are forfeited to the Company, such Shares will become available for future grant under the Plan. Shares used to pay the exercise price of an Award or to satisfy the tax withholding obligations related to an Award will not become available for future grant or sale under the Plan. To the extent an Award under the Plan is paid out in cash rather than Shares, such cash payment will not result in reducing the number of Shares available for issuance under the Plan.

4. Administration of the Plan.

(a) Procedure.

(i) Multiple Administrative Bodies. The Plan may be administered by different Committees with respect to different groups of Service Providers.

(ii) Rule 16b-3. To the extent desirable to qualify transactions hereunder as exempt under Rule 16b-3, the transactions contemplated hereunder will be structured to satisfy the requirements for exemption under Rule 16b-3.

(iii) Other Administration. Other than as provided above, the Plan will be administered by (A) the Board or (B) a Committee, which committee will be constituted to satisfy Applicable Laws.

(b) Powers of the Administrator. Subject to the provisions of the Plan, and in the case of a Committee, subject to the specific duties delegated by the Board to such Committee, the Administrator will have the authority, in its discretion:

(i) to determine the Fair Market Value;

-6-

(ii) to select the Service Providers to whom Awards may be granted hereunder, subject to Section 5;

(iii) to determine the number of shares of Common Stock to be covered by each Award granted hereunder;

(iv) to approve forms of Award Agreements for use under the Plan;

(v) to determine the terms and conditions, not inconsistent with the terms of the Plan, of any Award granted hereunder. Such terms and conditions include, but are not limited to, the exercise price, the time or times when Awards may be exercised (which may be based on performance criteria), any vesting acceleration or waiver of forfeiture restrictions, and any restriction or limitation regarding any Award or the shares of Common Stock relating thereto, based in each case on such factors as the Administrator, in its sole discretion, will determine;

(vi) to construe and interpret the terms of the Plan and Awards granted pursuant to the Plan;

(vii) to prescribe, amend and rescind rules and regulations relating to the Plan, including rules and regulations relating to sub-plans established for the purpose of satisfying applicable foreign laws;

(viii) to modify or amend each Award (subject to Section 20(c) of the Plan), including the discretionary authority to extend the post-termination exercisability period of Awards and to extend the maximum term of an Option;

(ix) to allow Participants to satisfy withholding tax obligations in such manner as prescribed in Section 17;

(x) to authorize any person to execute on behalf of the Company any instrument required to effect the grant of an Award previously granted by the Administrator;

(xi) to allow a Participant to defer the receipt of the payment of cash or the delivery of Shares that would otherwise be due to such Participant under an Award pursuant to such procedures as the Administrator may determine; and

(xii) to make all other determinations deemed necessary or advisable for administering the Plan.

(c) Prohibition Against Repricing. Subject to adjustments made pursuant to Section 16 and notwithstanding anything to the contrary in the Plan, in no event shall the Administrator have the right to amend the terms of any Award to reduce the exercise price of such outstanding Award or cancel an outstanding Award in exchange for cash or other Awards with an exercise price that is less than the exercise price of the original Award without stockholder approval.

(d) Effect of Administrator's Decision. The Administrator's decisions, determinations and interpretations will be final and binding on all Participants.

-7-

5. <u>Eligibility</u>. Awards may be granted to individuals so long as the following requirements are met:

(a) <u>Inducement Awards</u>. The Participant was not previously an Employee or Director, or the Participant is returning to employment of the Company following a bona-fide period of non-employment; and the grant of an Award is an inducement material to the Participant's entering into employment with the Company.

(b) <u>Replacement Awards</u>. The Participant is receiving a Replacement Award.

(c) <u>Assumed Share Reserve Award</u>. The Participant was not employed by the Company or its subsidiaries immediately prior to the time the merger or acquisition was consummated that gave rise to the relevant Assumed Share Pool.

6. <u>Term of Plan</u>. The Plan will become effective upon its adoption by the Board. It will continue in effect for a term of 10 years from May 24, 2016 unless terminated earlier under Section 20 of the Plan.

7. <u>Term of Option</u>. The term of each Option will be 10 years from the date of grant or such shorter term as may be provided in the Award Agreement.

8. <u>Option Exercise Price and Consideration</u>.

(a) <u>Exercise Price</u>. The per share exercise price for the Shares to be issued pursuant to exercise of an Option will be determined by the Administrator, subject to the following:

(i) The per Share exercise price will be determined by the Administrator but will be no less than 100% of the Fair Market Value per Share on the date of grant.

(ii) Notwithstanding the foregoing, Options that are Replacement Awards may be granted with a per Share exercise price of less than 100% of the Fair Market Value per Share on the date of grant pursuant to a transaction described in, and in a manner consistent with Section 424(a) of the Code or United States Treasury Regulation section 1.409A-1(b)(5)(v)(D).

(b) <u>Waiting Period and Exercise Dates</u>. At the time an Option is granted, the Administrator will fix the period within which the Option may be exercised and will determine any conditions which must be satisfied before the Option may be exercised.

(c) <u>Form of Consideration</u>. The Administrator will determine the acceptable form of consideration for exercising an Option, including the method of payment. Such consideration may consist entirely of:

(i) cash;

(ii) check;

-8-

(iii) other Shares which have a Fair Market Value on the date of surrender equal to the aggregate exercise price of the Shares as to which said Option will be exercised and provided that accepting such Shares, in the sole discretion of the Administrator, will not result in any adverse accounting consequences to the Company;

(iv) net issue exercise, whereby Participant surrenders an Option at the principal office of the Company (or such other office or agency as the Company may designate) together with a properly completed and executed exercise notice reflecting such election, in which event the Company will issue to the Participant that number of Shares computed using the following formula:

$$X = \frac{Y(A-B)}{A}$$

Where:

X = The number of Shares to be issued to Participant;

Y = The number of Shares subject to the Option or, if only a portion of the Option is being exercised, the portion of the Option being cancelled (at the date of such calculation);

A = The Fair Market Value of one Share (at the date of such calculation);

B = The exercise price per Share of the Option (as adjusted to the date of the calculation);

(v) consideration received by the Company under a cashless exercise program implemented by the Company in connection with the Plan;

(vi) a reduction in the amount of any Company liability to the Participant, including any liability attributable to the Participant's participation in any Company-sponsored deferred compensation program or arrangement;

(vii) any combination of the foregoing methods of payment; or

(viii) such other consideration and method of payment for the issuance of Shares to the extent permitted by Applicable Laws.

9. Exercise of Option.

(a) Procedure for Exercise; Rights as a Stockholder. Any Option granted hereunder will be exercisable according to the terms of the Plan and at such times and under such conditions as determined by the Administrator and set forth in the Award Agreement. An Option may not be exercised for a fraction of a Share.

An Option will be deemed exercised when the Company receives: (i) written or electronic notice of exercise (in accordance with the Award Agreement) from the person entitled to exercise

-9-

the Option, and (ii) full payment for the Shares with respect to which the Option is exercised (together with any applicable tax withholdings). Full payment may consist of any consideration and method of payment authorized by the Administrator and permitted by the Award Agreement and the Plan. Shares issued upon exercise of an Option will be issued in the name of the Participant or, if requested by the Participant, in the name of the Participant and his or her spouse. Until the Shares are issued (as evidenced by the appropriate entry on the books of the Company or of a duly authorized transfer agent of the Company), no right to vote or receive dividends or any other rights as a stockholder will exist with respect to the Shares subject to any Option, notwithstanding the exercise of the Option. The Company will issue (or cause to be issued) such Shares promptly after the Option is exercised. No adjustment will be made for a dividend or other right for which the record date is prior to the date the Shares are issued, except as provided in Section 16 of the Plan.

Exercising an Option in any manner will decrease the number of Shares thereafter available, both for purposes of the Plan and for sale under the Option, by the number of Shares as to which the Option is exercised.

(b) <u>Termination of Relationship as a Service Provider</u>. If a Participant ceases to be a Service Provider, other than upon the Participant's death or Disability, the Participant may exercise his or her Option within such period of time as is specified in the Award Agreement to the extent that the Option is vested on the date of termination (but in no event later than the expiration of the term of such Option as set forth in the Award Agreement). In the absence of a specified time in the Award Agreement, the Option will remain exercisable for 3 months following the Participant's termination. Unless otherwise provided by the Administrator, if on the date of termination, the Participant is not vested as to his or her entire Option, the Shares covered by the unvested portion of the Option will revert to the Plan. If, after termination, the Participant does not exercise his or her Option within the time specified by the Administrator, the Option will terminate, and the Shares covered by such Option will revert to the Plan.

(c) <u>Disability of Participant</u>. If a Participant ceases to be a Service Provider as a result of the Participant's Disability, the Participant may exercise his or her Option within such period of time as is specified in the Award Agreement to the extent the Option is vested on the date of termination (but in no event later than the expiration of the term of such Option as set forth in the Award Agreement). In the absence of a specified time in the Award Agreement, the Option will remain exercisable for 12 months following the Participant's termination. Unless otherwise provided by the Administrator, if on the date of termination, the Participant is not vested as to his or her entire Option, the Shares covered by the unvested portion of the Option will revert to the Plan. If, after termination, the Participant does not exercise his or her Option within the time specified herein, the Option will terminate, and the Shares covered by such Option will revert to the Plan.

(d) <u>Death of Participant</u>. If a Participant dies while a Service Provider, the Option may be exercised within such period of time as is specified in the Award Agreement (but in no event later than the expiration of the term of such Option as set forth in the Notice of Grant), by the Participant's estate or by a person who acquires the right to exercise the Option by bequest or inheritance, but only to the extent that the Option is vested on the date of death. In the absence of a specified time in the Award Agreement, the Option will remain exercisable for 12 months following the Participant's termination. Unless otherwise provided by the Administrator, if at the time of

-10-

death, the Participant is not vested as to his or her entire Option, the Shares covered by the unvested portion of the Option will immediately revert to the Plan. The Option may be exercised by the executor or administrator of the Participant's estate or, if none, by the person(s) entitled to exercise the Option under the Participant's will or the laws of descent or distribution. If the Option is not so exercised within the time specified herein, the Option will terminate, and the Shares covered by such Option will revert to the Plan.

(e) <u>Buyout Provisions</u>. Subject to Section 4(c), the Administrator may at any time offer to buy out for a payment in cash or Shares an Option previously granted based on such terms and conditions as the Administrator will establish and communicate to the Participant at the time that such offer is made.

10. <u>Restricted Stock</u>.

(a) <u>Grant of Restricted Stock</u>. Subject to the terms and provisions of the Plan, the Administrator, at any time and from time to time, may grant Restricted Stock to Service Providers in such amounts as the Administrator, in its sole discretion, will determine.

(b) <u>Restricted Stock Agreement</u>. Each Award of Restricted Stock will be evidenced by an Award Agreement that will specify the Period of Restriction, the number of Shares granted, and such other terms and conditions as the Administrator, in its sole discretion, will determine. Unless the Administrator determines otherwise, the Company as escrow agent will hold shares of Restricted Stock until the restrictions on such Restricted Stock has lapsed.

(c) <u>Transferability</u>. Except as provided in this Section 10, Restricted Stock may not be sold, transferred, pledged, assigned, or otherwise alienated or hypothecated until the end of the applicable Period of Restriction.

(d) <u>Other Restrictions</u>. The Administrator, in its sole discretion, may impose such other restrictions on Restricted Stock as it may deem advisable or appropriate.

(e) <u>Removal of Restrictions</u>. Except as otherwise provided in this Section 10, Restricted Stock covered by each Restricted Stock grant made under the Plan will be released from escrow as soon as practicable after the last day of the Period of Restriction or at such other time as the Administrator may determine. The Administrator, in its discretion, may accelerate the time at which any restrictions will lapse or be removed.

(f) <u>Voting Rights</u>. During the Period of Restriction, Participants holding Restricted Stock granted hereunder may exercise full voting rights with respect to those Shares, unless the Administrator determines otherwise.

(g) <u>Dividends and Other Distributions</u>. During the Period of Restriction, Service Providers holding Restricted Stock will be entitled to receive all dividends and other distributions paid with respect to such Shares unless otherwise provided in the Award Agreement. If any such dividends or distributions are paid in Shares, the Shares will be subject to the same restrictions on transferability and forfeitability as Restricted Stock with respect to which they were paid.

-11-

(h) <u>Return of Restricted Stock to Company</u>. On the date set forth in the Award Agreement, the Restricted Stock for which restrictions have not lapsed will revert to the Company and again will become available for grant under the Plan.

11. <u>Restricted Stock Units</u>.

(a) <u>Grant</u>. Restricted Stock Units may be granted at any time as determined by the Administrator. Each Restricted Stock Unit grant will be evidenced by an Award Agreement that will specify such other terms and conditions as the Administrator, in its sole discretion, will determine, including all terms, conditions, and restrictions related to the grant, the number of Restricted Stock Units and the form of payout, which, subject to Section 11(d), may be left to the discretion of the Administrator.

(b) <u>Vesting Criteria and Other Terms</u>. The Administrator will set vesting criteria (which may include performance objectives based upon the achievement of Company-wide, departmental or individual goals, Company performance relative to selected other companies, or any other basis determined by the Administrator) in its discretion, which, depending on the extent to which the criteria are met, will determine the number of Restricted Stock Units that will be paid out to the Participant. After the grant of Restricted Stock Units, the Administrator, in its sole discretion, may reduce or waive any restrictions for such Restricted Stock Units. Each Award of Restricted Stock Units will be evidenced by an Award Agreement that will specify the vesting criteria, and such other terms and conditions as the Administrator, in its sole discretion, will determine.

(c) <u>Earning Restricted Stock Units</u>. Upon meeting the applicable vesting criteria (including without limitation, achievement of any applicable performance objectives), the Participant will be entitled to receive a payout as specified in the Award Agreement. Notwithstanding the foregoing, at any time after the grant of Restricted Stock Units, the Administrator, in its sole discretion, may reduce or waive any vesting criteria that must be met to receive a payout.

(d) <u>Form and Timing of Payment</u>. Payment of earned Restricted Stock Units will be made as soon as practicable after the date(s) set forth in the Award Agreement. The Administrator, in its sole discretion, may pay earned Restricted Stock Units in cash, Shares or a combination thereof.

(e) <u>Cancellation</u>. On the date set forth in the Award Agreement, all unearned Restricted Stock Units will be forfeited to the Company.

12. <u>Stock Appreciation Rights</u>.

(a) <u>Grant of Stock Appreciation Rights</u>. Subject to the terms and conditions of the Plan, a Stock Appreciation Right may be granted to Service Providers at any time as will be determined by the Administrator, in its sole discretion.

(b) <u>Number of Shares</u>. The Administrator will have complete discretion to determine the number of Stock Appreciation Rights granted to any Participant.

-12-

(c) <u>Exercise Price and Other Terms</u>. The Administrator, subject to the provisions of the Plan, will have complete discretion to determine the terms and conditions of Stock Appreciation Rights granted under the Plan; provided, however, that the exercise price will be not less than 100% of the Fair Market Value of a Share on the date of grant, unless the Stock Appreciation Right is a Replacement Award in which case, to the extent applicable, the number of shares of Common Stock and the exercise price thereof underlying such Award shall be determined in a manner consistent with United States Treasury Regulation section 1.409A-1(b)(5)(v)(D), unless the Committee determines otherwise.

(d) <u>Stock Appreciation Right Agreement</u>. Each Stock Appreciation Right grant will be evidenced by an Award Agreement that will specify the exercise price, the term of the Stock Appreciation Right, the conditions of exercise, and such other terms and conditions as the Administrator, in its sole discretion, will determine.

(e) <u>Expiration of Stock Appreciation Rights</u>. A Stock Appreciation Right granted under the Plan will expire upon the date determined by the Administrator, in its sole discretion, and set forth in the Award Agreement; provided, however, that the term will be no more than 10 years from the date of grant thereof. Notwithstanding the foregoing, the rules of Section 9 will also apply to Stock Appreciation Rights.

(f) <u>Payment of Stock Appreciation Right Amount</u>. Upon exercise of a Stock Appreciation Right, a Participant will be entitled to receive payment from the Company in an amount determined by multiplying:

(i) The difference between the Fair Market Value of a Share on the date of exercise over the exercise price of that Stock Appreciation Right; times

(ii) The number of Shares with respect to which the Stock Appreciation Right is exercised.

At the discretion of the Administrator, the payment upon Stock Appreciation Right exercise may be in cash, in Shares of equivalent value, or in some combination thereof.

13. <u>Performance Units and Performance Shares</u>.

(a) <u>Grant of Performance Units/Shares</u>. Performance Units and Performance Shares may be granted to Service Providers at any time and from time to time, as will be determined by the Administrator, in its sole discretion. The Administrator will have complete discretion in determining the number of Performance Units and Performance Shares granted to each Participant.

(b) <u>Value of Performance Units/Shares</u>. Each Performance Unit will have an initial value that is established by the Administrator on or before the date of grant. Each Performance Share will have an initial value equal to the Fair Market Value of a Share on the date of grant, unless the Performance Share is a Replacement Award, in which case the Performance Share shall have an initial value intended to comply with the applicable requirements of Internal Revenue Code Section 409A.

-13-

(c) <u>Performance Objectives and Other Terms</u>. The Administrator will set performance objectives or other vesting provisions (including, without limitation, continued status as a Service Provider) in its discretion that, depending on the extent to which they are met, will determine the number or value of Performance Units/Shares that will be paid out to the Service Providers. Each Award of Performance Units/Shares will be evidenced by an Award Agreement that will specify the performance period, and such other terms and conditions as the Administrator, in its sole discretion, will determine. The Administrator may set performance objectives based upon the achievement of Company-wide, divisional, or individual goals, applicable federal or state securities laws, or any other basis determined by the Administrator in its discretion.

(d) <u>Earning of Performance Units/Shares</u>. After the applicable performance period has ended, the holder of Performance Units/Shares will be entitled to receive a payout of the number of Performance Units/Shares earned by the Participant over the performance period, to be determined as a function of the extent to which the corresponding performance objectives or other vesting provisions have been achieved. After the grant of a Performance Unit/Share, the Administrator, in its sole discretion, may reduce or waive any performance objectives or other vesting provisions for such Performance Unit/Share.

(e) <u>Form and Timing of Payment of Performance Units/Shares</u>. Payment of earned Performance Units/Shares will be made as soon as practicable after the expiration of the applicable performance period. The Administrator, in its sole discretion, may pay earned Performance Units/Shares in the form of cash, in Shares (which have an aggregate Fair Market Value equal to the value of the earned Performance Units/Shares at the close of the applicable performance period) or in a combination thereof.

(f) <u>Cancellation of Performance Units/Shares</u>. On the date set forth in the Award Agreement, all unearned or unvested Performance Units/Shares will be forfeited to the Company, and again will be available for grant under the Plan.

14. <u>Leaves of Absence/Transfer Between Locations</u>. Unless the Administrator provides otherwise, vesting of Awards granted hereunder will be suspended during any unpaid leave of absence or period of time for a transfer between locations of the Company or between the Company, its Parent, or any Subsidiary. A Participant will not cease to be an Employee in the case of (i) any leave of absence approved by the Company or (ii) transfers between locations of the Company or between the Company, its Parent, or any Subsidiary. For purposes of Incentive Stock Options, no such leave may exceed 3 months, unless reemployment upon expiration of such leave is guaranteed by statute or contract. If reemployment upon expiration of a leave of absence approved by the Company is not so guaranteed, then 6 months following the 1st day of such leave, any Incentive Stock Option held by the Participant will cease to be treated as an Incentive Stock Option and will be treated for tax purposes as a Nonstatutory Stock Option.

15. <u>Transferability</u>.

(a) <u>Non-Transferability of Awards</u>. Unless determined otherwise by the Administrator, an Award may not be sold, pledged, assigned, hypothecated, transferred, or disposed of in any manner other than by will or by the laws of descent or distribution and may be exercised,

-14-

during the lifetime of the Participant, only by the Participant. If the Administrator makes an Award transferable, such Award will contain such additional terms and conditions as the Administrator deems appropriate.

(b) <u>Prohibition Against an Award Transfer Program</u>. Notwithstanding anything to the contrary in the Plan, in no event will the Administrator have the right to determine and implement the terms and conditions of any Award Transfer Program without stockholder approval.

16. <u>Adjustments Upon Changes in Capitalization, Dissolution, Change in Control</u>.

(a) <u>Changes in Capitalization</u>. Subject to any required action by the stockholders of the Company, the number of shares of Common Stock covered by each outstanding Award, and the number of shares of Common Stock which have been authorized for issuance under the Plan but as to which no Awards have yet been granted or which have been returned to the Plan upon cancellation or expiration of an Award, as well as the price per share of Common Stock covered by each such outstanding Award, shall be proportionately adjusted for any increase or decrease in the number of issued shares of Common Stock resulting from a stock split, reverse stock split, stock dividend, reorganization, merger, consolidation, split-up, spin-off, combination or reclassification of the Common Stock, repurchase, or exchange of Shares or other securities of the Company, or any other change in the corporate structure of the Company affecting the Shares occurs such that an adjustment is determined by the Board (in its sole discretion) to be appropriate in order to prevent dilution or enlargement of benefits of potential benefits to be made available under the Plan. Such adjustment shall be made by the Board, whose determination in that respect shall be final, binding and conclusive. Notwithstanding the preceding, the number of Shares subject to any Award will always be a whole number. Except as expressly provided herein, no issuance by the Company of shares of stock of any class, or securities convertible into shares of stock of any class, shall affect, and no adjustment by reason thereof shall be made with respect to, the number or price of shares of Common Stock subject to an Award.

(b) <u>Dissolution or Liquidation</u>. In the event of the proposed dissolution or liquidation of the Company, the Administrator will notify each Participant as soon as practicable prior to the effective date of such proposed transaction. In addition, the Administrator may provide that any Company repurchase option applicable to any Shares purchased upon exercise of an Award will lapse as to all such Shares or, with respect to Restricted Stock Units, all Shares will vest, provided the proposed dissolution or liquidation takes place at the time and in the manner contemplated. To the extent it has not been previously exercised, an Award will terminate immediately prior to the consummation of such proposed action.

(c) <u>Change in Control</u>. In the event of a merger or a Change in Control, each outstanding Award will be assumed or an equivalent option or right substituted by the successor corporation or a Parent or Subsidiary of the successor corporation. In the event that the successor corporation refuses to assume or substitute for the Award, the Participant will fully vest in and have the right to exercise all his or her outstanding Options and Stock Appreciation Rights, including Shares as to which it would not otherwise be vested or exercisable, all restrictions on Restricted Stock will lapse, all outstanding Restricted Stock Units will fully vest, and, with respect to Awards with performance-based vesting, all such vesting criteria will be deemed achieved at 100% of target

-15-

level and all other terms and conditions met unless otherwise expressly provided for in the Award Agreement. If an Award becomes fully vested and exercisable in lieu of assumption or substitution in the event of a merger or sale of assets, the Administrator will notify the Participant in writing or electronically that the Award will be fully vested and exercisable for a period of time determined by the Administrator, and the Award will terminate upon the expiration of such period. For the purposes of this paragraph, the Award will be considered assumed if, following the Change in Control, the Award confers the right to purchase or receive, for each Share subject to the Award immediately prior to the merger or sale of assets, the consideration (whether stock, cash, or other securities or property) received in the merger or sale of assets by holders of Common Stock for each Share held on the effective date of the transaction (and if holders were offered a choice of consideration, the type of consideration chosen by the holders of a majority of the outstanding Shares); provided, however, that if such consideration received in the Change in Control is not solely common stock of the successor corporation or its Parent, the Administrator may, with the consent of the successor corporation, provide for the consideration to be received upon the exercise of an Option or Stock Appreciation Right or upon the payout of a Restricted Stock Unit, Performance Unit or Performance Share, for each Share subject to such Award, to be solely common stock of the successor corporation or its Parent equal in fair market value to the per share consideration received by holders of Common Stock in the Change in Control.

Notwithstanding anything in this Section 16(c) to the contrary, an Award that vests, is earned or paid-out upon the satisfaction of one or more performance-based vesting goals will not be considered assumed if the Company or its successor modifies any of such performance-based vesting goals without the Participant's consent; provided, however, a modification to such performance-based vesting goals only to reflect the successor corporation's post-Change in Control corporate structure will not be deemed to invalidate an otherwise valid Award assumption.

17. Tax Withholding.

(a) Withholding Requirements. Prior to the delivery of any Shares or cash pursuant to an Award (or exercise thereof), the Company will have the power and the right to deduct or withhold, or require a Participant to remit to the Company, an amount sufficient to satisfy federal, state, local, foreign or other taxes (including the Participant's FICA obligation) required to be withheld with respect to such Award (or exercise thereof).

(b) Withholding Arrangements. The Administrator, in its sole discretion and pursuant to such procedures as it may specify from time to time, may permit a Participant to satisfy such tax withholding obligation, in whole or in part by (without limitation) (a) paying cash, (b) electing to have the Company withhold otherwise deliverable cash or Shares having a Fair Market Value equal to the amount required to be withheld, (c) delivering to the Company already-owned Shares having a Fair Market Value equal to the amount required to be withheld, or (d) selling a sufficient number of Shares otherwise deliverable to the Participant through such means as the Administrator may determine in its sole discretion (whether through a broker or otherwise) equal to the amount required to be withheld. The amount of the withholding requirement will be deemed to include any amount which the Administrator agrees may be withheld at the time the election is made, not to exceed the amount determined by using the maximum federal, state or local marginal income tax rates applicable to the Participant with respect to the Award on the date that the amount of tax to be withheld is to be determined. The Fair Market Value of the Shares to be withheld or delivered will be determined as of the date that the taxes are required to be withheld.

-16-

18. <u>No Effect on Employment or Service</u>. Neither the Plan nor any Award will confer upon a Participant any right to continuing the Participant's relationship as a Service Provider with the Company, nor will the Plan or any Award interfere in any way with the Participant's right or the Company's right to terminate such relationship at any time, with or without cause, to the extent permitted by Applicable Laws.

19. <u>Date of Grant</u>. The date of grant of an Award will be, for all purposes, the date on which the Administrator makes the determination granting such Award, or such other later date as is determined by the Administrator. Notice of the determination will be provided to each Participant within a reasonable time after the date of such grant.

20. <u>Amendment and Termination of the Plan</u>.

(a) <u>Amendment and Termination</u>. The Board or the Compensation Committee of the Board may at any time amend, alter, suspend or terminate the Plan.

(b) <u>Stockholder Approval</u>. The Company will obtain stockholder approval of any Plan amendment to the extent necessary and desirable to comply with Applicable Laws.

(c) <u>Effect of Amendment or Termination</u>. No amendment, alteration, suspension or termination of the Plan will impair the rights of any Participant, unless mutually agreed otherwise between the Participant and the Administrator, which agreement must be in writing and signed by the Participant and the Company. Termination of the Plan will not affect the Administrator's ability to exercise the powers granted to it hereunder with respect to Awards granted under the Plan prior to the date of such termination.

21. <u>Conditions Upon Issuance of Shares</u>.

(a) <u>Legal Compliance</u>. Shares will not be issued pursuant to the exercise of an Award unless the exercise of such Award and the issuance and delivery of such Shares will comply with Applicable Laws and will be further subject to the approval of counsel for the Company with respect to such compliance.

(b) <u>Investment Representations</u>. As a condition to the exercise of an Award, the Company may require the person exercising such Award to represent and warrant at the time of any such exercise that the Shares are being purchased only for investment and without any present intention to sell or distribute such Shares if, in the opinion of counsel for the Company, such a representation is required.

22. <u>Inability to Obtain Authority</u>. The inability of the Company to obtain authority from any regulatory body having jurisdiction, which authority is deemed by the Company's counsel to be necessary to the lawful issuance and sale of any Shares hereunder, will relieve the Company of any liability in respect of the failure to issue or sell such Shares as to which such requisite authority will not have been obtained.

-17-

23. <u>Reservation of Shares</u>. The Company, during the term of this Plan, will at all times reserve and keep available such number of Shares as will be sufficient to satisfy the requirements of the Plan.

24. <u>Recoupment</u>. The Company is committed to the principle of strong corporate governance and the integrity of its financial statements. In the event that material accounting errors occur that require correction of the Company's issued financial statements, whether or not such errors result from fraud or intentional misconduct by Executives (as defined below), the intent of this policy is for the Compensation Committee to seek repayment of all cash-based incentive compensation or performance-based equity compensation ("<u>Incentive Compensation</u>") erroneously paid or granted to the CEO and any of the executives of the Company who report directly to the CEO (collectively, "<u>Executives</u>") based on the material accounting error, if the amount of such Incentive Compensation would have been lower had the Incentive Compensation been calculated based upon financial statements free of any material accounting errors. In determining whether to pursue such repayment, the Compensation Committee will take into account certain considerations including but not limited to the feasibility and expense of recoupment, any pending legal action, and the passage of time since the occurrence of the accounting error requiring the correction. Following such determination, the Company shall disclose in its next annual proxy statement any decision by the Compensation Committee to pursue such repayment as well as any decision by the Compensation Committee not to pursue such repayment and the reasons therefor. The Company shall amend this recoupment provision, as appropriate, following the implementation of final rules to be promulgated by the U.S. Securities and Exchange Commission under the Dodd-Frank Wall Street Reform and Consumer Protection Act.

-18-

EX-10.13 9 d562806dex1013.htm EX-10.13

**Exhibit 10.13**

**AMENDMENT TO THE**
**BROCADE COMMUNICATIONS SYSTEMS, INC.**
**AMENDED AND RESTATED INDUCEMENT AWARD PLAN**

April 4, 2018

This Amendment (this "Amendment") to the Brocade Communications Systems, Inc. Amended and Restated Inducement Award Plan, as amended (as amended, the "Plan") is effective as of the date first set forth above, such amendment being approved by the Board of Directors of Broadcom Inc., a Delaware corporation (the "Company"), pursuant to Section 20(a) of the Plan. The Plan is hereby amended as follows:

1. The following will replace Section 2(k) of the Plan in its entirety:

   "(k) "Common Stock" means the common stock of the Company."

2. The following will replace Section 2(l) of the Plan in its entirety:

   "(l) "Company" means Broadcom Inc., a Delaware corporation."

3. All references to "ordinary shares" or other similar terms in the Plan shall refer to shares of the common stock of the Company.

4. Except as provided in this Amendment, the Plan shall remain in full force and effect.

\* \* \* \* \*