# Exhibit 1

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF TENNESSEE

```
------------------------------------------------------- x
                                            :
SNMP RESEARCH, INC. and SNMP                :    Case No. 3:20-cv-00451-CEA
RESEARCH INTERNATIONAL, INC.,               :
                                            :    U.S. District Judge Charles E. Atchley, Jr.
              Plaintiffs,                   :
                                            :
        v.                                  :
                                            :
BROADCOM INC.; BROCADE                      :
COMMUNICATIONS SYSTEMS LLC; and             :
EXTREME NETWORKS, INC.,                     :
                                            :
              Defendants.                   :
                                            :
------------------------------------------------------- X
```

## EXTREME NETWORKS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL MEDIATION

Extreme Networks, Inc. ("Extreme") respectfully requests that the Court exercise its inherent authority and/or rule under Local Rule 16.4 to order Extreme and SNMP Research, Inc. and SNMP Research International, Inc. (together, "SNMPR") to participate in mediation before a neutral third-party mediator to be identified and agreed-upon by the parties, with the mediation to occur (i) on a mutually-agreeable date within three weeks after the Court enters its ruling on Extreme's pending Motion to Compel the Production of License Agreements from SNMPR (ECF No. 136) and (ii) if that timing is not possible based on mediator availability, then as soon thereafter as practicable. While Extreme would be pleased to participate in the Federal Mediation Program as set forth in Local Rule 16.4, Extreme respectfully believes that the parties would be well served if they were granted flexibility to choose a mediator outside of that program. In any event, from Extreme's perspective, it is high time for the parties to be ordered to mediate and find a reasonable path forward.

## I.  INTRODUCTION

SNMPR filed this action against Extreme and its co-defendants Broadcom Inc. ("Broadcom) and Brocade Communications Systems LLC ("Brocade") (collectively, "Defendants") on October 26, 2020 (ECF No. 3-1), asserting one singular claim for copyright infringement against Extreme.  (*Id.* at 16.)  Soon after SNMPR filed its Complaint, Defendants moved to dismiss or, in the alternative, to transfer this case to the Northern District of California. (*See* ECF Nos. 38 and 40, hereinafter referred to as "Defendants' Motions to Dismiss or Transfer"). Defendants' Motions to Dismiss or Transfer have been pending for 19 months.

In those 19 months, Extreme has been required to respond to discovery requests from SNMPR and, because of that, engaged in eye-wateringly expensive source code and document discovery.  Discovery has been disproportionally burdensome, with Extreme's employees spending hundreds of hours collecting source code for this litigation, and with Extreme's attorneys spending thousands of hours on document discovery, whereas SNMPR has not responded to inquiries into its own discovery for several months (*see* Demers Decl. at ¶ 3)[1] and resisted certain discovery altogether on the grounds that it would require attorney time to review and make the relevant documents available for production on, at most, the order of hundreds (not thousands) of hours (*see* ECF No. 143 at 3 n.1, 8; ECF No. 143-1 at ¶¶ 6-8).  For context, Extreme has produced over 715,000 pages of documents and more than 120 <u>million</u> files of source code, while SNMPR has produced just over 29,000 pages of documents and only a couple of hundred thousand files of source code (which SNMPR appears to have maintained in a production-ready state).  (*See* Demers Decl. at ¶ 2.)

---

[1]  "Demers Decl." refers to the Declaration of Leslie A. Demers filed in support of Extreme's Motion to Compel Mediation.

Nevertheless, the little discovery that SNMPR has provided supports the conclusion that the litigation spend in this case has already far, far outpaced the value of the alleged copyrighted works. Specifically, SNMPR has produced hundreds of agreements that it entered into with third parties, licensing the exact works that it is asserting in this case. When assessing the value of this case by the typical royalties and lump sum values from those agreements, that value appears to be in the ███████████████████. (*See* ECF No. 3 at License Agreement pp. 10-11, 14, 17; ECF No. 51-3 at License Agreement pp. 10, 12; *see also* Demers Decl. at ¶ 4 (explaining that multiplying the approximate number of units of the accused products sold over several years (20,000) by a single-figure royalty such as █ leads to ██████).) To be sure, SNMPR may argue at a future juncture of this case that Extreme should pay some enormous sum of money. At this stage, Extreme is not trying to convince the Court to the contrary. But Extreme is observing for the Court that (i) the copyrighted works at issue in this case have a deep, wide, and extensive history of being licensed on commercial terms, and (ii) having reviewed so far hundreds of commercial-term licenses that SNMPR executed on these same works in years past, the average license fee is a small fraction of the amount of money SNMPR's litigation has thus far put on the parties for attorney's fees.

Extreme has moved to compel production of SNMPR's complete licensing history, but from the limited information SNMPR provided, Extreme has confirmed its suspicion that litigation costs and fees have already well outpaced the arguable value of the alleged copyrighted works (with the value assessed based on the amount that SNMPR has repeatedly agreed to license these exact works to other parties). Extreme also recognizes the burden that the numerous past and pending motions and hearings and the scheduled three-week jury trial (ECF No. 149) have on the

3

Court. Accordingly, Extreme respectfully asks for the Court's assistance in bringing the parties together to mediate this case.

## II.     BACKGROUND

### A.     Discovery in this Case Has Been Exceedingly Expensive and Time-Consuming

As explained in more detail below, source code discovery and other fact discovery have demanded a significant amount of time and resources from Extreme and this Court:

*Source Code Discovery:* The parties traveled to Tennessee for a multi-hour hearing in front of Magistrate Judge Poplin in March 2022. After the hearing, Magistrate Judge Poplin issued a ruling directing the parties to engage in a mutual and simultaneous exchange of source code on or before April 22, 2022. (*See* ECF No. 124.) Extreme complied with this directive. But in order to make the source code available to SNMPR by the deadline, Extreme's outside counsel, in-house counsel, engineers, and contractors worked (literally in some instances) around the clock, devoting hundreds of hours to this project. (*See, e.g.,* ECF No. 136-8 at ¶¶ 18-20.) Extreme ultimately produced several terabytes of code, which, pursuant to SNMPR's demands, had to be viewed on specialty, custom computers built to specification and purchased by Extreme.

*Other Fact Discovery:* Here too, Extreme's efforts to comply with SNMPR's remaining discovery requests have been notable. Extreme's representatives, employees, and counsel have already logged ***multiple thousands*** of hours reviewing and producing over 715,000 pages of documents, provided a privilege log, responded to 139 discovery requests, exchanged dozens of emails with SNMPR's counsel, and participated in countless meet and confers. Not only has this been incredibly costly, but has also been especially burdensome for Extreme's employees, who have had to take on new, litigation-related responsibilities in addition to their day jobs working for a public company.

4

Furthermore, despite Extreme's best efforts at resolving discovery disputes outside of court, SNMPR has filed a total of ***seven motions to compel*** against Extreme, Broadcom, and/or Brocade, and sent multiple unilateral emails to the Court's Paralegal/Judicial Assistant. Oftentimes, SNMPR has done so while the parties were in the midst of working towards an agreement on the matter in dispute. From Extreme's perspective, this has imposed an unnecessary burden on both Extreme and this Court.

For its part, SNMPR has not had nearly the same burden in prosecuting this case. For example, Extreme's own inquiries regarding supplements to responses to its discovery requests have been unanswered by SNMPR for over two months now. (Demers Decl. at ¶ 3.) As another example, SNMPR has refused to produce some of the most critical documents in the case: agreements into which SNMPR has entered licensing the exact same alleged copyrighted works that it is asserting against Extreme. According to SNMPR, it is currently withholding hundreds (if not thousands) of license agreements that are responsive to Extreme's requests, citing as burdensome at most a few hundred hours of attorney time to review and make the relevant documents available for production. (*See* ECF No. 143 at 3 n.1, 8; ECF No. 143-1 at ¶¶ 6-8.)

The license agreements Extreme has been able to review, however, show that SNMPR licenses its software for fees that pale in comparison to what Extreme has already spent litigating this case. SNMPR's production shows that it routinely entered into license agreements for the alleged copyright works consistent with a ███████████████████████ for the value of its software. Indeed, two agreements SNMPR chose to file with this Court support this valuation. For instance, the license agreement between SNMPR and Brocade Communications System, Inc. (ECF No. 3) provides that the licensee shall pay SNMPR ██████████████████████ ███████████████████████████████████. (*See id.*

5

at License Agreement pp. 10-11, 14, 17.) Another license agreement between SNMPR and Cabletron Systems, Inc. (ECF No. 51-3) provides for ████████████████████████████████ ████████████████████. (*See id.* at License Agreement pp. 10, 12.) In short, the agreements that SNMPR filed support a valuation of its software in the ████████████████████████████████, when considering SNMPR's licensing history for the exact works it is asserting here as a proxy for the value of those works.

### B. Extreme's Efforts to Seek Court-Ordered Mediation Prior to this Motion

Recognizing that legal fees were already far exceeding Extreme's perspective of the damages at stake in this case, on May 11, 2022, Extreme raised the prospect of mediating on a teleconference with Magistrate Judge Poplin. Judge Poplin directed Extreme and SNMPR to meet and confer on this issue. In the parties' subsequent meet and confer, counsel for SNMPR did not agree to mediation, but stated that he would discuss with his client. Extreme never heard back from SNMPR and the parties have not discussed mediation any further.

## III. ARGUMENT

This case is well-suited for mediation at this time. As explained above, Extreme strongly believes that SNMPR's claim is premised on inexpensive software inserts that, when compared to the time, effort, and expense incurred in the litigation thus far, makes this case seem absurdist. Moreover, Extreme recognizes the burden this discovery process has placed on the Court due to numerous motions to compel and the hours of hearings and teleconferences that Magistrate Judge Poplin has held in an effort to resolve the parties' differences. Thus, if Extreme and SNMPR were to reach a settlement through mediation, Extreme's absence from this case would conserve judicial resources.

Second, Extreme is hopeful that the parties can reach a settlement with the help of mediation. SNMPR has asserted only one claim against Extreme. Extreme sees no reason why—

with the help of a neutral third-party mediator—the parties cannot reach a settlement, or at the very least narrow the issues in dispute.

Lastly, the current case schedule affords plenty of time for mediation and thus no stay is needed. Pursuant to the Second Amended Scheduling Order (ECF No. 149), the discovery period is not set to expire until nearly one year from now, on May 17, 2023. (*Id.* at 1.) As such, Extreme expects that mediation can proceed without disrupting any of the deadlines set in this case.

Extreme is aware that a motion to compel mediation is not a routine event. And even if the current motion is granted, thus the Court orders Extreme and SNMPR to mediate with a neutral, Extreme is aware that any resulting mediation process may be for naught unless all participants act in good faith. For its part, Extreme is willing to do that. And Extreme is hoping that an order from this Court forcing the parties into professionally-mediated settlement discussions may be helpful to all sides.

## IV.    CONCLUSION

For all of the foregoing reasons, Extreme respectfully requests that this Court grant its motion and compel mediation between Extreme and SNMPR before a neutral third-party mediator to occur (i) on a mutually-agreeable date within three weeks after the Court enters its ruling on Extreme's pending Motion to Compel the Production of License Agreements and (ii) if that timing is not possible based on mediator availability, then as soon thereafter as practicable.

7

DATED:      July 27, 2022
             New York, New York

Respectfully Submitted,

*/s/ Leslie A. Demers*

John M. Neukom (*admitted pro hac vice*)
DEBEVOISE & PLIMPTON LLP
650 California Street
San Francisco, California 94108
jneukom@debevoise.com
(415) 738-5700

Leslie A. Demers (*admitted pro hac vice*)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
leslie.demers@skadden.com
(212) 735-3000

*Attorneys for Extreme Networks, Inc.*

8