# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF TENNESSEE

# AT KNOXVILLE

| | |
|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., <br><br>     Plaintiffs, <br><br> v. <br><br> BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; and EXTREME NETWORKS, INC. <br><br>     Defendants. | Case No. 3:20-cv-00451 |

**BROADCOM INC. AND BROCADE COMMUNICATIONS SYSTEMS LLC'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY, DETERMINE SUFFICIENCY OF REQUEST FOR ADMISSION RESPONSES, AND FOR SANCTIONS AS TO DEFENDANTS BROADCOM INC. AND BROCADE COMMUNICATIONS SYSTEMS LLC**

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ....................................................................................4

II.    RELEVANT BACKGROUND ...............................................................7

III.   ARGUMENT ........................................................................................10

    A.    Defendant Will Amend Their RFA Responses, Mooting Plaintiffs'
         Requests ....................................................................................10

    B.    Broadcom Is Not Required to Provide Discovery for Non-Party
         Affiliates ...................................................................................12

         1.    Plaintiffs' Requests for the Over 150 Non-Party Subsidiaries
                Are Overbroad and Not Proportional to this Case ...................13

         2.    The Court Already Ruled on the Affiliate Questions Raised
                by Plaintiffs ..............................................................................16

    C.    Defendants Have Provide Sufficient Discovery as to Defendants'
         Marketing and Sale of the Accused Products, including in Tennessee
         ...................................................................................................18

    D.    Brocade Produced Responsive, Non-Privileged Documents for RFP
         43 and 47....................................................................................21

    E.    Brocade Fully Answered Interrogatory 9 ........................................23

    F.    Defendants Cannot Provide Information It Does Not Have .............25

IV.   CONCLUSION....................................................................................27

Case 3:20-cv-00451-CEA-DCP   Document 177   Filed 08/03/22   Page 2 of 28   PageID #: 10962

**Cases**

*In re Bankers Tr. Co.*

    61 F.3d. 465 (6th Cir. 1995) ........................................................................ 14

*Eitel v. PNC Bank, N.A.*,
2022 WL 885043 (W.D. Ky. Mar. 24, 2022) ........................................... passim

*Great West Life Assur. Co. v. Levithan*,
152 F.R.D. 494 (E.D. Pa. 1994) ........................................................... 13, 14, 16

*Hamilton v. Spurling*,
2013 WL 1165034 (S.D. Ohio Mar. 20, 2013) ............................................... 11

*Milner v. Nat'l School of Health*,
*Tech.*, 73 F.R.D. 628 (E.D. Pa. 1977) ........................................... 6, 7, 8, 23, 27

*React Presents, Inc. v. Eagle Theater Ent., LLC*,
2018 WL 3819055 (E.D. Mich. Aug. 10, 2018) ............................................. 12

*Siser N. Am., Inc. v. Herika G. Inc.*,
325 F.R.D. 200 (E.D. Mich. 2018) .................................................................. 12

*Stephenson v. Fam. Sols. of Ohio, Inc.*,
2021 WL 681403 (N.D. Ohio Feb. 22, 2021) ................................................. 11

*U.S., ex rel. Englund v. Los Angeles Cnty.*,
235 F.R.D. 675 (E.D. Cal. 2006) ................................................................. 6, 23

*United States v. One Tract of Real Prop. Together With all Bldgs.*,
95 F.3d 422 (6th Cir. 1996) ............................................................................ 11

*United States. v. Petroff-Kline*,
557 F. 3d, 285 (6th Cir. 2009) ........................................................................ 11

Case 3:20-cv-00451-CEA-DCP   Document 177   Filed 08/03/22   Page 3 of 28   PageID #: 10940

# I. INTRODUCTION

Broadcom Inc. ("Broadcom") and Brocade Communications Systems LLC ("Brocade") (collectively, "Defendants") have worked around the clock to provide the discovery the Court ordered on April 22, 2022, which covered virtually every aspect of Brocade's business and required the production of non-public, proprietary, and highly confidential information belonging not only to Defendants but also to third parties. Declaration of Alison Plessman ("Plessman Decl.") ¶ 2. To date, Defendants have collectively produced over **2 million** pages of documents and responded to **384 discovery requests**. *Id*. Brocade has also produced over **30 million** files containing its source code, binary code, and the entire build environments for its products. *Id.*

In contrast, Plaintiffs have produced under 30,000 pages, most of which were produced on July 15, 2022. Plessman Decl. ¶ 3. They also continue to assert frivolous boilerplate objections to numerous categories of highly relevant information, completely ignoring the Court's guidance in its April 22, 2022 Order and their own accusations. *See, e.g.*, Plessman Decl. at Ex. A (SNMPRI's Supplemental Responses to Brocade's Requests for Production Nos. 2, 10, 12, 19, 20, 21). And despite their criticisms of Broadcom and Brocade, they too have not yet produced a privilege log despite asserting numerous privilege objections. *Id.*

Brocade's motion to compel against Plaintiffs is forthcoming. But when considering Plaintiffs' latest motion to compel, proportionality and fairness factors must be considered. Defendants have spent thousands of hours and substantial resources responding to Plaintiffs' discovery requests, motions, multi-page letters, and emails, even though this case actually presents a relatively straightforward set of facts. Plessman Decl. 8. It is becoming increasingly clear that Plaintiffs' litigation strategy is to make discovery as burdensome and painful as possible for Defendants, so that the spotlight never lands on them.

- 4 -

Not coincidentally, Plaintiffs filed their motion to compel against Broadcom and Brocade the same week the parties' personal jurisdiction evidentiary supplements were due. Dkt. 147. It is evident from the timing and content of Plaintiffs' motion to compel that the motion's true purpose is to blame on Broadcom and Brocade for Plaintiffs' inability to cite any evidence showing this Court has personal jurisdiction over Broadcom. But Plaintiffs' inability to support their claims has nothing to do with the adequacy of Defendants' discovery responses or productions. Plaintiffs' motion should be denied for at least the following reasons.

*First*, Broadcom and Brocade did not refuse to amend their Requests for Admission ("RFAs"), as Plaintiffs suggest. They asked Plaintiffs to meet and confer because certain objections were not addressed in the Court's April 22, 2022 Order. This is because Plaintiffs did not move to compel further RFA responses from Broadcom and Brocade in their December 9, 2021 motion to compel, even though they now conveniently claim the responses are critically important to the personal jurisdiction issues. Dkt. 116; Plessman Decl. 9. The parties have never meaningfully met and conferred about the RFA responses and it would be more efficient to amend them only once. Nevertheless, to put this issue to rest, Broadcom and Brocade will amend their RFA responses by August 19, 2022 as they would have done without a motion to compel.

*Second*, the Court has already correctly ruled on the "affiliates issue" and there is no reason to revisit the ruling now. Broadcom and Brocade reasonably interpreted the terms "Brocade" and "Broadcom" to mean Brocade Communications Systems LLC and Broadcom Inc., respectively, consistent with the Court's Order, and explained to Plaintiffs why seeking discovery from 150 non-party affiliates was improper and unnecessary. Plessman Decl. ¶ 6. Moreover, Brocade agreed to produce additional documents responsive to Plaintiffs' new discovery requests asking about affiliates. *Id.* ¶ 7. Compelling Broadcom and Brocade to respond to 384 discovery requests

- 5 -

on behalf of 150 non-party entities is not proportionate to the needs of the case, particularly where Broadcom and Brocade alone have produced over 2 million pages of documents and 30 million files of source code, binary code, and build environments.  Plessman Decl. ¶ 2.

*Third*, Defendants have explained again and again that Broadcom Inc., a parent holding company, does not have employees or products, and "has not provided, sold, licensed, or transferred SNMP Research Software," in Tennessee or elsewhere.  *See* Brazeal Decl. ¶¶ 10-15, at Ex. D (Responses to Interrogatory ("Rog") 1, 12). They have provided sworn discovery responses *and* declarations describing their discovery efforts to reach this answer. No matter what requests Plaintiffs make, their answers will not change.

*Fourth*, as discussed above and below, Brocade and Broadcom took this Court's April 22, 2022 Order seriously and worked very hard to provide full and substantive discovery responses, including in response to RFP 43 and 47 and Interrogatory 9.  Defendants have met their burden for these requests.  *U.S., ex rel. Englund v. Los Angeles Cnty.*, 235 F.R.D. 675, 680-81 (E.D. Cal. 2006) ("[W]here the information is contained in business records and answering the question would require the responding party to engage in burdensome or expensive research, the responding party may answer by specifying the records from which the answer may be obtained and making them available for inspection by the party seeking discovery.").

*Finally*, it is well established that neither Broadcom nor Brocade can be compelled to produce information that they do not have.  *See Milner v. Nat'l School of Health Tech.*, 73 F.R.D. 628, 632-633 (E.D. Pa. 1977) ("[W]here the answer states that no record exists, the court cannot compel the impossible."). Defendants' *sworn* statements describing their discovery efforts, stating that they do not have this information and, where applicable, providing citations to specific documents more than meet their burden.  There is nothing for the Court to compel.

- 6 -

In sum, for the foregoing and below reasons, Plaintiffs' motion should be denied.

## II.     RELEVANT BACKGROUND

This case involves an agreement between Brocade and SNMP Research International, Inc. ("SNMPRI") through which Brocade obtained a license to SNMPRI's implementation of the publicly-available standard known as the Simple Network Management Protocol ("SNMP"). Declaration of Martin Skagen to Defendants' Evidentiary Supplement (Dkt. No. 160-12) ("Skagen Decl.") ¶ 2. ████████████████████████████████

████████████████████████████████████████████████

████████████████████ Complaint, Exhibit A at section 24(c). Even so, Brocade has replaced SNMPRI's software with a free, open source implementation of SNMP called Net SNMP, which is available on the internet. Skagen Decl. ¶ 5, Ex. C.

On October 4, 2021, Broadcom and Brocade served their First Supplemental Responses to Plaintiffs' First and Second Sets of Interrogatories, Requests for Production ("RFPs"), and Requests for Admission ("RFAs"). Plessman Decl. ¶ 9. The parties never meaningfully met and conferred regarding Broadcom's or Brocade's responses and objections to the RFAs. *Id.* On December 9, 2021, Plaintiffs filed a motion to compel against Broadcom and Brocade asking the Court to order Defendants to amend their responses and objections to Plaintiffs' Interrogatories and RFPs. (Dkt. 115). Plaintiffs did not move on Defendants' RFA responses. *Id.*

On March 28, 2022, the Court ordered the parties to produce specified source code on or by April 22, 2022. (Dkt. 124). Brocade expended substantial time and resources to provide many millions of highly proprietary source code files by April 22, 2022. Plessman Decl. ¶ 11. Without being ordered to do so, Brocade also voluntarily produced millions of its binary code files on April 22, 2022. *Id.* On April 22, 2022, the Court ruled on Plaintiffs' motion to compel and ordered

Defendants to amend their responses to fully respond to Plaintiffs' Interrogatories and RFPs by May 13, 2022. (Dkt. 131). The order also limited the term "Brocade" as used in the discovery requests to mean "Brocade Communications Systems LLC" and the term "Broadcom" as used in the discovery requests to mean "Broadcom Inc." *Id*. at 1-2, 17. The Court also advised the parties to meet and confer regarding those terms if there was any additional confusion regarding them. *Id*. at 17-18. Although the order indicated that Defendants needed to provide a substantial completion date for their production, the order did not provide a specific date by which all productions needed to be completed. *See id*. The order also did not address the parties' privilege reviews or logs. *Id*. Broadcom and Brocade's RFA responses were not addressed because Plaintiffs did not move to compel amended RFA responses from Broadcom or Brocade. *Id*.

Given the number and extremely broad nature of Plaintiffs' discovery requests, which spanned several years going back to January 1, 2017 and covered virtually every aspect of Brocade's business (including its most sensitive and confidential information), responding to Plaintiffs' discovery requests was an enormous undertaking. Plessman Decl. ¶ 2. Nevertheless, Broadcom and Brocade fully responded to Plaintiffs' written discovery by midnight on May 13, 2022 (working right up to the wire). Plessman Decl. ¶ 6. Their written discovery responses were extremely detailed and provided Plaintiffs with even more information than they requested. Weber Decl. at Exs. N-Q. Although certain financial information from the pre-merger time period in 2017 was not initially located as it was not maintained with the post-merger data, it was ultimately found in Brocade's archives and produced to Plaintiffs. Plessman Decl. 12.

Broadcom and Brocade also endeavored to produce the documents and other information they believed Plaintiffs wanted most by May 13, 2022, and stated in their RFP responses they anticipated substantial completion by May 27, 2022. Shortly after May 13, 2022, Brocade also

- 8 -

produced millions of highly sensitive files containing the entire build environments for its products. Plessman Decl. ¶ 13. In the midst of this all-consuming document review and production, Plaintiffs served *more* discovery requests on May 23, 2022 and June 2, 2022. Plessman Decl. Exs. B-D. This new discovery included over thirty new requests for production. Over the course of the next month, Plaintiffs also sent several emails and/or letters making unfounded accusations and demanding answers to their questions immediately. *See, e.g.*, Weber Decl. Exs. J, R, T. It was clear from Plaintiffs' questions that they had not yet looked in Defendants´ productions for the very information they demanded. [1] Plessman Decl. ¶ 15.

Plaintiffs also repeatedly demanded that Defendants provide detailed information about all of their affiliates under the guise of "meeting and conferring" pursuant to the Court's April 22, 2022, informally demanding the very discovery the Court had just ordered Broadcom and Brocade did not need to provide. (*See* Dkt. 131.) Moreover, when Defendants asked Plaintiffs why the requests were relevant, Plaintiffs never provided anything more than unfounded speculation. Weber Decl. at Ex. T. Although counsel for Defendants explained Defendants' approach several times (*i.e.*, that they interpreted the defined terms consistent with the Court's order but, as a practical matter, did not withhold otherwise responsive documents simply because they involved other entities, including predecessors), Plaintiffs would not relent and continued to demand answers to their questions exactly as they framed them.

---

[1] To date, as noted above, Broadcom and Brocade have collectively responded to nearly 400 discovery requests and produced over 2 million pages of documents. Plessman Decl. ¶ 2. Brocade has also produced over 30 million files of source code, binary code, and build environments. Plessman Decl. Defendants have clearly acted in good faith, including to comply with the Court's order, and sanctions are not warranted.

- 9 -

5857416

## III.    ARGUMENT

### A.    Defendant Will Amend Their RFA Responses, Mooting Plaintiffs' Requests.

Plaintiffs argue for the first time that Broadcom and Brocade have not "meaningfully answered" their RFAs and seek the extreme remedy of admission for some responses.  Because Defendants plan to supplement its RFA responses, the Court should deny these requests as moot.

Plaintiffs now claim that some of the RFAs are "highly relevant" or "important to" Broadcom Inc.'s assertion of lack of personal jurisdiction." (Dkt. 153 at 12, 14, 16).  Tellingly, Broadcom and Brocade served the relevant responses and objections nearly a year ago and Plaintiffs did not move to compel any further responses to the RFAs.  (*See* Dkt. 116).  Moreover, when Plaintiffs curtly asked Broadcom and Brocade to amend their supplemental RFA responses in their June 2, 2022, letter (among their many other demands), they provided no explanation as to why the responses were deficient or which ones should be amended.  Weber Decl. at Ex. R (Dkt. 151-19) at 8.  Counsel for Broadcom and Brocade asked Plaintiffs to provide that information given that Plaintiffs served 119 RFAs and Plaintiffs had answered most of them. *See* Weber Decl. at Ex. S (Dkt. 151-20) at 10.  But Plaintiffs did not provide that information and instead merely said Defendants failed to answer several RFAs and claiming the parties met and conferred on these responses. *See* Weber Decl. at Ex. T (Dkt. 151-21) at 5.  This is not true.  The parties had never meaningfully met and conferred about Broadcom and Brocades's supplemental RFA responses. *See id.* at 3 (explaining meaningful discussions did not occur and confirming Defendants responded to the RFAs at issue).  Notably, here, while Plaintiffs vaguely reference "numerous meet and confer calls" on the RFA responses, Plaintiffs cite to nothing. *See* Dkt. 153 at 8.  The absence of these discussions is not surprising given Plaintiffs elected not to move on them in

5857416

December, despite moving on Extreme Networks' RFA responses. (*See* Dkt. 116). Either way, Plaintiffs moving on the RFA Responses is premature as Defendants will amend their response.[2]

Plaintiffs also point to an RFA asking whether Broadcom intends to rely on the license agreement between Brocade and Broadcom in its defense of this action as highly relevant to the personal jurisdiction issues. This request is premature as Defendants' motion to dismiss is pending and they have not even served their answers to the complaint yet. It also calls for the legal theories and counsel's mental impressions of Broadcom's counsel, *see United States v. One Tract of Real Prop. Together With all Bldgs.*, 95 F.3d 422, 427-28 (6th Cir. 1996) (concluding work product objection was sufficient basis for refusal to substantively answer certain requests for admission).

Moreover, there is no reason why Defendants' RFAs responses concerning Broadcom should be deemed admitted. Even under extreme circumstances, courts in this Circuit have regularly refused to take this extraordinary step. *See United States. v. Petroff-Kline*, 557 F. 3d, 285, 293 (6th Cir. 2009) (noting that "failure to respond in a timely fashion does not require the court automatically to deem all matters admitted" particularly where a "serious question" exists as to appropriateness of the underlying requests); *Stephenson v. Fam. Sols. of Ohio, Inc.*, 2021 WL 681403, at *8 (N.D. Ohio Feb. 22, 2021) (refusing to deem certain requests admitted in light of valid objections asserted by non-moving parties); *React Presents, Inc. v. Eagle Theater Ent., LLC*, 2018 WL 3819055, at *1 (E.D. Mich. Aug. 10, 2018) (compelling supplemental responses to RFAs

---

[2] Plaintiffs claim they needed to move to compel without meeting and conferring because the responses were "highly relevant" to the personal jurisdiction issues, which begs the question why they did not move on them before. Further, even if Plaintiffs are missing information as to the RFAs, this should not matter for personal jurisdiction because RFAs are not designed as a discovery tool. *See Hamilton v. Spurling*, 2013 WL 1165034, at *1 (S.D. Ohio Mar. 20, 2013) ("Requests for admissions are not a general discovery device . . . Rule 36's proper use is as a means of avoiding the necessity of proving issues which the requesting party will doubtless be able to prove.") (internal citations omitted).

5857416

in lieu of deeming same admitted). Only in the most egregious cases, involving unequivocal violations of Rule 36 without a reasonable attempt to amend, have courts applied this "disfavored" sanction. *See Siser N. Am., Inc. v. Herika G. Inc.*, 325 F.R.D. 200, 208-209 (E.D. Mich. 2018).

Finally, Plaintiffs neglect to mention in their motion that their RFAs define "Broadcom Inc." synonymously with "Broadcom" and as encompassing, *inter alia*, all affiliates and subsidiaries. Thus, Defendants' objections to these extraordinarily broad defined terms in the RFAs were not "gamesmanship." Dkt. 153 at 16. In any event, Defendants actually answered twenty-two of the "Broadcom Inc." RFAs referenced in Plaintiffs' Motion to Compel. Specifically, Broadcom answered RFAs 32 through 43 by denying them. Brocade likewise responded to RFAs 42, 44, 46, 48, 50, 52, 54, 56, 58, and 60 by denying them. Even if Defendants were to amend these requests to remove certain objections, they would continue to deny them. Weber Decl. at Ex. T. Nonetheless, given Plaintiffs' seem to now be taking the position that "Broadcom Inc." means only "Broadcom Inc." and no other entities, despite their contrary position just a few weeks ago, Defendants' will amend these responses.

## B. Broadcom Is Not Required to Provide Discovery for Non-Party Affiliates.

Plaintiffs ask the Court to reverse its April 22, 2022 Order and order both Broadcom and Brocade to now answer nearly 400 discovery requests on behalf of more than 150 Broadcom indirect and direct subsidiaries. To be clear, the issue before the Court (which the Court has already addressed) is *not* whether *any* discovery about one or more of these other companies might be relevant or appropriate. The issue is whether Broadcom and Brocade should have to answer all discovery requests *as though they were those affiliates*. As Broadcom and Brocade have explained time and time again— in their discovery responses, oppositions to Plaintiffs' prior motions to compel, and

- 12 -

meet and confers with Plaintiffs—it is one thing to ask Brocade whether it has disclosed Plaintiffs' software to Broadcom Inc. or any of its affiliates, but it is quite another to ask Brocade (and Broadcom) to step into the shoes of over 150 other non-party companies to make representations *on their behalf* in response to hundreds of discovery requests. This is especially true when Plaintiffs' complaint is completely devoid of any alter ego allegations with respect to any of these subsidiaries.

1. *Plaintiffs' Requests for the Over 150 Non-Party Subsidiaries Are Overbroad and Not Proportional to this Case.*

As an initial matter, Brocade has already provided or agreed to provide documents reasonably relating to the allegations in this case concerning its affiliates. In fact, Plaintiffs' new discovery requests, served on May 23, 2022, included requests asking Brocade about its disclosures of Plaintiffs' software to its affiliates and seeking documents regarding affiliates' involvement in the development, production, servicing, sale, creation, and/or distribution of Brocade's products. Plessman Decl. ¶¶ 7, 15. Brocade agreed to provide documents responsive to those requests. *Id.* Brocade has also declared several times that it has not shared the source code it received from SNMPRI under the License Agreement with Broadcom Inc. or any of Broadcom Inc.'s subsidiaries or affiliates. Skagen Decl. ¶ 4, Ex. B (Response to Rog 1). Plaintiffs' insistence that they need *more* discovery demonstrates their requests are overboard and unduly burdensome, *see Great West Life Assur. Co. v. Levithan*, 152 F.R.D. 494, 497-98 (E.D. Pa. 1994), and not in good faith as Rule 26(g)(1)(B) requires.

Broadcom and Brocade do not disagree with Plaintiffs' general point that discovery is not limited to parties named in a complaint. Dkt. 153 at 9 (arguing "otherwise there would be no such thing as a third-party deposition subpoena."). However, as Plaintiffs point out, non-party discovery

5857416

may be obtained through third-party deposition subpoenas, not compelling a named party to produce documents for over 150 entities that have little to no relevance to this case. *See Great West Life Assur. Co.*, 152 F.R.D. at 497-98 ("To require the defendant to produce all of the documents pertaining to these six companies regardless of whether they deal with the transfer of [the at-issue entity] or indicate that [the defendant] participated in business transactions would be unduly burdensome.")

The cases Plaintiffs cite do not support the grossly overbroad discovery they seek. (Dkt. 153 at 9.) In fact, the court in *Great West Life Assurance Co. v. Levithan* squarely rejected discovery requests seeking corporate documents from several entities that were not relevant to the case as "overbroad" and "unduly burdensome." 152 F.R.D. at 497-98. The court in *Eitel v. PNC Bank, N.A.*, similarly concluded that not all documents or information possessed by the named parties' subsidiaries were discoverable through the parent company. *See* 2022 WL 885043, at *8 (W.D. Ky. Mar. 24, 2022). The *Eitel* court also rejected many of the proposed discovery requests relating to the defendant's subsidiaries as "overbroad" and "largely irrelevant," noting the plaintiff's failure to explain "why the information requested is relevant and proportional to the needs of the case." *Id.* at *8-9. Moreover, the *Eitel* case is inapposite as it does not address the burden of an entity being compelled to provide discovery on behalf of 150 non-party affiliates and/or subsidiaries. *In Re Bankers Trust Co.* is not applicable here because it concerned discovery obligations of *that company's* business records. 61 F.3d 465, 468-69 (6th Cir. 1995).

Plaintiffs' requests also do not meet the proportionality requirement and are unduly burdensome. *See Great West Life Assur. Co.*, 152 F.R.D. at 497-98. Ordering Broadcom and Brocade to answer hundreds of discovery requests, including investigating and reviewing proprietary source code, for over 150 separate non-party subsidiaries would be extremely

- 14 -

5857416

expensive and time consuming and wildly disproportionate to the needs of the case. *See* Dkt. 153 at 10 (requesting the Court to order Defendants to "answer all discovery requests *for* each 'affiliate'" (emphasis added)). This would be the equivalent of serving approximately 57,600 discovery requests on Defendants (multiplying the 384 already-served discovery requests by 150 entities) to result in the *production* of over 300,000,000 pages of documents (multiplying 2,000,000 pages already produced by 150), not to mention the additional documents Defendants would need to review. Plaintiffs may argue that this would only be an issue if these entities in fact have or use SNMP Research Software, but that is not the case. Many of Plaintiffs' discovery requests are not tied to its software, and even if they were, Defendants would still need to conduct an extensive review and investigation just to prove a negative. Further, this case involves a ██████████████████████████████████ and software that Brocade has replaced for free. *See Eitel*, 2022 WL 885043, at *9 (rejecting discovery requests when plaintiffs cannot explain how they are proportional to the case).

Plaintiffs further argue that a Broadcom affiliate cannot "use or distribute products (or software) containing Plaintiff's SNMP Research Software without a license, just because that affiliate may have obtained that software by some other mechanism than via Brocade directly disclosing it to the affiliate." Dkt. 153 at 9. But even if Plaintiffs' new indirect disclosure theory had some relevance to the allegations in this case (it does not), it still would not justify requiring Broadcom and Brocade to answer discovery on behalf of 150 entities and expend boundless resources simply to prove a negative. Plaintiffs also skip over that it has admitted that other subsidiaries have separate license agreements with SNMP Research for their software not at issue in this case. *See* Dkt. 153 at 9 n.5; *see also* Dkt. 48-1 (Declaration of Jeffrey Case in Opposition to Motion to Dismiss) at Ex. I. Likewise, Plaintiffs' suggestion that Defendants' organizational

- 15 -

charts "show how easy it would be for Defendants to play a shell game with their entities," (*see* Dkt. 153 at 10 n.6), is rank speculation and makes no sense when affiliates can simply download SNMP software from the internet for free if they need it for their products. Skagen Decl. ¶ 5.

2.    *The Court Already Ruled on the Affiliate Questions Raised by Plaintiffs.*

The questions Plaintiffs list in their Motion for Broadcom and Brocade to answer are no more contained than the discovery requests they have already served.

Plaintiffs' first question asks Broadcom and Brocade to answer "[w]hich of the affiliates use or have used (which includes but is not limited to leasing or selling any product containing) SNMP Research Software." Dkt. 153 at 4. Here, Plaintiffs seek to go beyond the allegations in this case and have Brocade and Broadcom provide answers *on behalf* of over 150 non-party entities[3] regarding whether they use or have ever used Plaintiffs' software regardless of whether that software came from Brocade. Plaintiffs want the Court to treat these entities as alter egos of Broadcom or Brocade, without having to establish first that they are in fact alter egos. As discussed above, even if Plaintiffs could bring these entities into this litigation through the back door of discovery, which should not be permitted, they still must show why their requests are proportional and relevant to this case. *See Great West Life Assur. Co.*, 152 F.R.D. at 497-98; *Eitel*, 2022 WL 885043, at *9.

The same is true for Plaintiffs' second question: "Which of the affiliates have (or had) in their possession any source code that contains the following language: 'SNMP Research'?" Dkt.

---

[3] Although Plaintiffs treat the subsidiaries as one and the same for purposes of its expansive and irrelevant discovery, Plaintiffs take a completely different view when it comes to its own license agreements. Plaintiffs have acknowledged other Broadcom subsidiaries have license agreements with Plaintiffs not at issue in this case. If they were not separate entities, there would be no need for separate license agreements.

5857416

153 at 4. This question is not limited to whether Brocade disclosed any source code containing that language to any affiliate, which Brocade has already answered in the negative. *See* Skagen Decl. ¶ 4, at Ex. B. Instead, this question seeks to force Broadcom and Brocade *to review the confidential source code of over 150 other non-party entities* to see if those entities' source code contains Plaintiffs' name. They then misleadingly suggest that, because Brocade was able to locate this language in a version of Brocade's Fabric Operating System ("FOS") (as it should since Brocade has had its perpetual license since 2001), it should be easy and appropriate for Brocade to do this for over 150 *other* entities. Dkt. 153 at 4. That is nonsensical. Brocade has twice declared, under oath, that it did not disclose Plaintiffs' software to the other entities, and it would be improper to force Defendants to search of the source code of irrelevant non-party entities to get to the same answer. Further, if any of the entities had Plaintiffs' software in its source code, it likely came from Plaintiffs under another license agreement. Plessman Decl. ¶ 16. Lastly, Plaintiffs' review of Brocade's millions of files of source code started on April 22, 2022 and is still ongoing. It would be wildly disproportionate to the needs of this case (and practically impossible) to order the collection and review of source code for the non-party entities.

Plaintiff's third question asks which of the affiliates are engaged in the sale of Brocade products. Brocade has already agreed to provide that information to the extent it has not already before Plaintiffs' filed this motion. There is nothing further for the Court to order here.

Possibly most confusing are Plaintiffs' fourth and fifth questions, asking Broadcom and Brocade to identify which affiliates "actually possess (or in the past possessed) *any* software source code," Dkt. 153 at 4 (emphasis added) and "[w]hich of the [over 150] affiliates are or were operating entities." *Id.* These incredibly overbroad questions seeking potentially confidential

- 17 -

information from over 150 non-party entities untethered to anything in this litigation is wholly irrelevant, unproportionally burdensome, and improper.

### C.  Defendants Have Provide Sufficient Discovery as to Defendants' Marketing and Sale of the Accused Products, including in Tennessee.

Broadcom and Brocade have provided accurate, unambiguous answers explaining that Broadcom Inc., a parent holding company, does not have employees or products, including products containing Plaintiffs' software, and "has not provided, sold, licensed, or transferred SNMP Research Software," in Tennessee or elsewhere. *See, e.g.*, Brazeal Decl. ¶¶ 10-15, at Ex. D (Interrogatory Responses to 1, 12).  Yet, Plaintiffs argue in their motion that Broadcom and Brocade have failed to provide "straightforward responses to discovery regarding the marketing and sale of accused products, including in Tennessee and in this District." Dkt. 153 at 10.  Plaintiffs simply do not like Defendants' answers or wish they had asked different questions.  Their characterizations of Defendants' responses and the parties' communications are also nonsensical, inconsistent with the April 22, 2022, Order, and highly misleading.

For example, Plaintiffs claim Broadcom "evaded" all requests tied to its response to Interrogatory 1, Dkt. 153 at 11, which asked Broadcom to identify all "Broadcom Products" that contain Plaintiffs' software.  But Broadcom answered Interrogatory 1 truthfully by explaining that it does not have products.  *See* Brazeal Decl. at Ex. D (Broadcom's Response to Rog 1); *see also* Brazeal Decl. ¶¶ 6, 10.  When Plaintiffs' later interrogatories then asked for information about the "Products Identified in response to Interrogatory number 1," Broadcom answered accordingly, i.e. incorporating that there were no Broadcom products to identify for Interrogatory 1.  These responses are not evasive.  They are truthful and responsive to the questions asked.

Plaintiffs now contend that *Broadcom* should have answered these interrogatories *as though it were Brocade* and vice versa.  *See* Dkt. 153 at 11.  This makes no sense because identical

- 18 -

interrogatories were served on Brocade. *Compare* Dkt. 116-4 (Broadcom rogs) *with* 116-6 (Brocade rogs). What Plaintiffs really want to do is manufacture admissions that Broadcom engaged in various activities when, in reality, such activities—if they were undertaken at all—were actually undertaken by Brocade. The April 22, 2022, Order reasonably construed the term "Broadcom" in Plaintiffs' discovery requests to mean "Broadcom Inc." and "Brocade" to mean "Brocade Communications Systems LLC," *see* Dkt. 131 at 1-2, 17, and that is how Broadcom and Brocade responded to Plaintiffs' Rogs and RFPs. Thus, in accordance with this Court's Order, Broadcom fully answered Interrogatories 18-20 and RFPs 19-21 on behalf of itself and it should not be forced to artificially answer the interrogatories as though it were Brocade, especially when Brocade separately provided answers for itself. Moreover, to the extent Plaintiffs had any remaining questions about Broadcom's involvement in the marketing and sale of the Brocade products at issue in this case in Tennessee, which is unlikely, Defendants' Evidentiary Supplement answers all of those questions in the negative. Brazeal Decl. ¶¶ 10-15; Skagen Decl. ¶¶ 6-10.

Broadcom also truthfully answered Interrogatory 17 that it is not aware of any instances in which Broadcom ever acted as an agent for Brocade. Brazeal Decl. at Ex. D (Broadcom's Response to Rog 17). Plaintiffs dispute this response, and it asserts that Broadcom communicated with other entities (including Plaintiffs) on behalf of Brocade regarding conduct underlying this case. Dkt. 153 at 10. Plaintiffs cite to an August 1, 2019, letter from Simone Yew to Extreme Networks as purported evidence. Dkt. 153 at 12; Dkt. 48-1, Exhibit E. As counsel for Broadcom and Brocade explained to Plaintiffs in a letter on June 28, 2022, directly addressing this agency issue, Weber Decl. at Ex. S at 7-8, and as Mark Brazeal stated in his declaration in support of the Evidentiary Supplement (Brazeal Decl. ¶ 18), Simone Yew is an attorney who represents Brocade, as well as other Broadcom companies. Thus, when Ms. Yew sent the August 1, 2019, letter,

- 19 -

Broadcom Inc. was not acting as an "agent" for Brocade. *Id.*; Weber Decl. at Ex. S at 7-8. Counsel for Broadcom and Brocade also did not "refuse[] to answer the question directly"; in fact, she did the opposite. Weber Decl. at Ex. S at 7-8 (in a section titled "Agency," addressing the August 1, 2019 letter, explaining "Ms. Yew is an attorney who represents both Brocade and Broadcom Inc.," and requesting more information so Defendants could address Plaintiffs' agency inquiry). Once again, Plaintiffs simply do not like or disagree with the answer they received, and there is nothing for Broadcom to supplement in its response to Interrogatory 17.

Plaintiffs similarly criticize Brocade's answers to Interrogatories 16-20 and RFPs 16-20 and 74-77. Brocade explained in these responses that Broadcom is a holding company with no products or employees and therefore does not have products or relevant activities to identify or relevant documents to produce. Weber Decl. at Ex. N at 25-30, 101-105; Ex. P at 30-33. This is not a "semantic game" as Plaintiffs suggest (*see* Dkt. 153 at 10); it is a truthful answer explaining why there is not additional responsive information to identify or produce. It is unclear how Plaintiffs would like Brocade to amend its responses when there is nothing more to provide.[4] There is also no other information to compel from Brocade.

As a last point, Defendants have never suggested that Broadcom Inc. does nothing at all. Rather, Defendants have explained that Broadcom Inc. is not a sales operating entity and does not have products or employees and has not engaged in various activities concerning the alleged infringing products in Tennessee or elsewhere. Brazeal Decl. ¶¶ 11-15. To argue Broadcom's involvement in the marketing or sale of Brocade's products, Plaintiffs rely almost entirely on

---

[4] Plaintiffs vaguely claim in their motion to compel that they will "more fully address the issue of Broadcom Inc.'s assertion that it is a mere holding company that supposedly does nothing" in their Evidentiary Supplement. Dkt. 153 at 12. Plaintiffs have now filed their Evidentiary Supplement and nothing in it suggests Brocade or Broadcom need to change their discovery responses.

- 20 -

5857416

Brocade's products featured on www.broadcom.com. To give the appearance of substance, Plaintiffs' counsel goes through an extensive recitation of her activities on the website. But this is all just smoke and mirrors. Putting aside that there is nothing in that recitation connecting Broadcom Inc. to Tennessee (or even Brocade to Tennessee),[5] Plaintiffs sweep under the rug that the website plainly and prominently states at the bottom that the "term 'Broadcom' refers to Broadcom Inc. and/or its subsidiaries." www.broadcom.com (last visited August 2, 2022); *see* Brazeal Decl. ¶ 16. Moreover, where the website refers to Brocade's products, it very clearly identifies such products as *Brocade's* products. *See, e.g.*, www.broadcom.com/products/fibre-channel-networking/switches/g630-switch (last visited Aug. 2, 2022). In any event, Defendants already mention the www.broadcom.com website in their discovery responses. *See, e.g.*, Weber Decl. at Ex. P at 10-11 (Brocade's Response to Rog 1).

Additionally, as expected, Plaintiffs misleadingly cite to a number of communications from Defendants' productions they claim somehow show Broadcom Inc.'s involvement in Brocade's sales or marketing, but *all* of these communications are from or to *Brocade* employees. *See* Brazeal Decl. ¶ 19 (explaining that using "Broadcom Inc." email addresses simply means an employee works for a Broadcom subsidiary). Thus, there is nothing for Broadcom and Brocade to supplement in their responses.

### D. Brocade Produced Responsive, Non-Privileged Documents for RFP 43 and 47.

Brocade agreed to produce non-privileged docs responsive to RFP 43 and 47. Brocade did exactly that, producing consolidated financial statements (which is typical of multi-national corporations); dozens of quarterly and annual presentations containing detailed financial

---

[5] The only connection to Tennessee's on the website comes from a pull down menu where you can pick any state. Further, having end users in Tennessee is not enough for personal jurisdiction.

information from 2017 to Q2 2022; comprehensive extracts from the general ledger and subledger detailing Brocade's product revenue, costs, quantities, customer information, global support revenue, and net income from 2017 to Q2 2022, among other information (which include spreadsheets with millions of entries and identify Brocade's customers as well as end users to the extent that information is known to Brocade).[6] Gleason Decl. ¶ 5, 6. But as Defendants' counsel explained to Plaintiffs, and confirmed recently by declaration, Brocade no longer creates balance sheets or income statements because it is a subsidiary of a publicly traded parent company that files consolidated financial statements with the SEC. (Gleason Decl. ¶ 5). This is typical for multi-national corporations. (*Id.*) To generate an individual balance sheet solely for the purpose of this litigation, Broadcom Inc. or Brocade would need to engage in an artificial exercise and perform an analysis to determine how to incorporate line items and/or transactions that are not reported or relevant to the consolidated financial statements, which is not prepared in accordance with generally accepted accounting principles in the United States. *Id.* For these reasons, there are no further documents for Defendants to produce for this request.

Plaintiffs also accuses Defendants of "months of stonewalling" regarding their request for a balance sheet for Brocade, but then admit they first raised the issue on July 12, 2022. Weber Decl. ¶ at Ex. T at 5. Amongst reviewing and producing millions of pages of highly sensitive and proprietary information, Defendants' counsel looked into the issues raised by Plaintiffs, explained why Brocade no longer creates balance sheets and income statements specifically and produced many other documents detailing Brocade's financial information. Plessman Decl. ¶ 12; *see also* Gleason Decl. ¶ 5.

---

[6] If Brocade provided support services to any end users in Tennessee who purchased a Brocade product third hand, they would be listed on the "Global Support Revenue" spreadsheets. Gleason Decl. ¶ 8.

Plaintiffs now take issue with Defendants' productions. For example, they claim the Broadcom Inc.'s financial statements on the SEC's website do not break out Brocade's assets and liabilities, but 2018 10-K did just that. *See* Gleason Decl. ¶ 2. Moreover, the dozens of "profit and loss presentations" that were produced contain expansive, highly sensitive, non-public information, as do the product and global support spreadsheets which collectively contain millions of entries, *id.* ¶ 6, but also detailed summaries. *Mullins v. Prudential Ins. Co. of America*, which Plaintiffs cite, does not support Plaintiffs' position here. *See* 235 F.R.D. at 680–81 ("[W]here the information is contained in business records and answering the question would require the responding party to engage in burdensome or expensive research, the responding party may answer by specifying the records from which the answer may be obtained and making them available for inspection by the party seeking discovery." (internal quotation marks omitted)). Brocade has more than met its burden by identifying information for Plaintiffs. *Cf.* 267 F.R.D. at 514 (rejecting a party's "passing reference to the existence of the administrative record" as sufficient) Further, Plaintiffs' reliance on Rule 33(d) is misplaced because that rule does not require Defendants to "furnish information [*un*]available to the party." Finally, although Brocade is not required to provide "an affidavit" every time documents responsive to an RFP simply do not exist, the Declaration of Steve Gleason ISO evidentiary supplement addresses these very issues. Gleason Decl. ¶¶ 2-8. For the reasons stated above, Plaintiffs' request should be denied.

### E. Brocade Fully Answered Interrogatory 9.

Brocade has more than fully responded to Interrogatory 9. When the parties discussed the meaning of this request on a meet and confer call, Plaintiffs explained that they were seeking information about accessory items like power cords if they were sold with the alleged infringing products. Plessman ¶ 18. In its response, Brocade relied on Rule 33(d) and identified the

documents from which Plaintiffs would be able to derive the answers to Plaintiffs' onerous multi-party interrogatory. The burden of deriving the answer is substantially the same for either party, and will require expert analysis. *See Mullins*, 267 F.R.D. at 514.

After Brocade served its second supplemental responses, Plaintiffs noted that Brocade's product revenue spreadsheets did not include revenue for support services. Although Plaintiffs' new request for this support revenue was inconsistent with their prior representations on the parties' meet and confer call regarding the scope of Interrogatory 9, and although such support revenue is irrelevant to the infringement analysis regarding Brocade's products (i.e. support services do not contain source code or software), Brocade agreed to provide its global support revenue information anyway. *See* Weber Decl. at Ex. T at 2. As Plaintiffs know, the global support revenues were not "cited" in Brocade's May 13, 2022, supplemental responses because Plaintiffs requested them *after* the responses were served. *See id.* When Plaintiffs said they could not find them in the production, Defendant identified them by bates number. *See id.* Brocade also located pre-merger revenue information that had been archived after the merger, and provided that information as well. *See id.* Interrogatory 9 was intended to encompass the revenue derived by Brocade for providing support services to end users, and such services are irrelevant to the infringement analysis regarding Brocade's products agreed.

Plaintiffs now argue Brocade "(1) refused to identify additional responsive documents and instead (2) backtracked on its prior response by stating that it had actually providing spreadsheets detail all product and global services revenue for Brocade going back to January 1, 2017." (Dkt. 153 at 20.) Brocade does not know what additional responsive documents or "backtracking" Plaintiffs are referring to. *See* Gleason Decl. ¶ 6 (providing the requested information again with the Evidentiary Supplement). Brocade simply confirmed that it had produced the global support

- 24 -

service revenue that Plaintiffs had requested as well as archived revenue information from 2017. Thus, there was no additional documents to provide in response Interrogatory 9.

At bottom, Plaintiffs are really complaining that Brocade has provided too much information rather than too little because it produced *all* global service and product revenue for the relevant time period. But Defendants have met their burden here, including Brocade voluntarily creating a "glossary" to help Plaintiffs understand the data fields and descriptions in the revenue spreadsheets, Dkt. 153 at 21; Plessman Decl. ¶ 2, and they have nothing left to provide.

### F. Defendants Cannot Provide Information It Does Not Have.

Plaintiffs criticize Defendants for not providing information that they do not track or possess in response to Brocade Interrogatories 5-6, 9-10, 21 and Broadcom Interrogatories Interrogatory 21, but it is unclear how Defendants are supposed to provide information they do not have. Plaintiffs suggest that the Court ordered Defendants to fully respond even if they do not track certain requested information, but the Court's order says nothing of the kind. (Doc. 131 at 21 (discussing that Defendants need to provide further details if relying on certain general objections).) While the Court ordered Defendants to provide full responses, it did not order Defendants to provide information they do not have. While Defendants may not have been able to produce the exact information Plaintiffs requested exactly as they requested it, Defendants still tried to identify substantially similar information that they do have wherever possible. Defendants did not just identify random documents of their "own choosing" that did not answer the question asked. Rather, Brocade provided comprehensive revenue, cost, and customer data, among other data, from the general ledger, subledger, and pre-merger archives for 2017 to the present. These are Brocade's best sources for information responsive to Plaintiffs' requests. Despite their vague and disingenuous claims that the spreadsheets do not contain "all" customer data or include certain

- 25 -

5857416

"services information," *see* Dkt. 153 at 22 n.12, Plaintiffs have never identified what particular information is missing or why it is material. And their experts seem to be analyzing the data provided with no problem. *See* Dkt. 157-26 ¶ 7-10. Plaintiffs simply want to sling mud in every direction in the hopes that will help them obtain more and more confidential information from Defendants without having to provide any themselves.

For Brocade Interrogatory 21 and Broadcom Interrogatory 21, Plaintiffs criticize Defendants for responding that they do not possess the information requested. But Plaintiffs do not explain how Defendants can provide information they do not have or explain why the answers were improper. It appears they simply do not like the answers. To the extent Plaintiffs needs more clarity as to what Broadcom and Brocade not "possess[ing]" this information means, Broadcom and Brocade provided additional information, including what searches it conducted, in its recent declarations. (Brazeal Decl. ¶¶ 11-15; Skagen Decl. ¶¶ 6-10).)

Plaintiffs also refer to Brocade Interrogatory 10, which Plaintiffs misleadingly summarize in their motion. The Interrogatory is broader and requests Brocade to "[i]dentify each and every third-party seller or reseller of *each version, release, software or firmware release, and* iteration of every Product and also [i]dentify the releases of each Product sold by each seller or reseller." Brocade included in its response that it primarily sells to OEMs (and identified a number of them) to explain that Brocade does not track downstream sales by its customers to third-party sellers or resellers or sales by those third-party sellers or resellers to others, and thus cannot provide this information. The list of the OEMs was not exhaustive because it is not information directly responsive to Interrogatory 10. At bottom, Plaintiffs again criticize Brocade for not providing information about sales of its products made by third parties to other third parties, which it simply does not possess. Plaintiffs cannot seriously complain, however, that it does not know who

- 26 -

5857416

Brocade's customers are because the subledger spreadsheets that Brocade produced contains that information as well as revenue and cost information by product. Skagen Decl. ¶ 8 (explaining the FOS data produced and attaching excerpts of the spreadsheets), at Ex. D.

Finally, *Milner v. National School of Health Technology*, which Plaintiffs cite, supports the sufficiency of Defendants' responses. In that case, the court was explicit that "where the answer states that no record exists, the court cannot compel the impossible." 73 F.R.D. 628, 632-633 (E.D. Pa. 1977). Brocade has stated in its verified interrogatory responses that it does not possess the information Plaintiffs seek, explained why this is so, and, where applicable, described its efforts to locate this information, including identifying several specific documents for Plaintiffs. *See id.* ("[A] sworn answer indicating a lack of knowledge and no means of obtaining knowledge is not objectionable."); Weber Decl. Ex. P at Rogs 17-21, 23-25, 33; Weber Decl. Ex. Q at Rog 21; *see also* Brazeal Decl. ¶¶ 11-15; Skagen Decl. ¶¶ 6-10. Brocade also went as far as identifying specific documents for Plaintiffs in an effort to provide a complete response (which qualifies as more than a "mere reference to mass documents" as Plaintiffs contend). *See Mullins*, 267 F.R.D. at 514; *see* Dkt. 154 at 3-7 (relying on documents produced by Brocade); Dkt. 157 ¶¶ 20, 33-34, 37, 40-50, 52-53, 59-60, 62-65, 67, 69, 73-76, 81-82, 92, 94 (same). As discussed above, Rule 33(d) does not apply. *See supra.* In short, there is nothing left for this Court to compel.

## IV. CONCLUSION

For the foregoing reason, Plaintiffs' motion to compel discovery, determine sufficiency of request for admission responses and for sanctions should be denied.

5857416

Dated:  August 2, 2022                          HUESTON HENNIGAN LLP


                                                By:    _/s/ Alison Plessman_
                                                       Alison Plessman
                                                       Attorneys for Defendants
                                                       Broadcom, Inc.
                                                       Brocade Communications Systems LLC

5857416