# IN THE UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC.,** | § § § § | **Case No. 3:20-cv-00451-CEA-DCP** |
| Plaintiffs, | § § | |
| v. | § § | **Jury Demand** |
| **BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; AND EXTREME NETWORKS, INC.,** | § § § § § | |
| Defendants. | § § | |

## PLAINTIFFS' EVIDENTIARY SUPPLEMENT PURSUANT TO DOCKET 147

## I. BROADCOM INC.'S DIRECT MARKETING, SALES, AND LICENSING

Broadcom Inc. directly markets, sells and licenses infringing products/software in Tennessee through: (A) Broadcom Inc.'s highly interactive website; (B) direct actions of Broadcom Inc. personnel; and (C) Broadcom Inc. spearheading an attempt to secure licenses from Plaintiffs.

**A. Broadcom Inc.'s Website:** "A defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Neogen Corp. v. Neo Gen Screening,* 282 F.3d 883, 890 (6th Cir. 2002) (reversing dismissal). Typing www.brocade.com automatically takes you to www.broadcom.com, which contains a "Sales" webpage for "Broadcom Inc." that asks potential purchasers to provide information in order to make purchases of the infringing products. ¶¶5-10. **(Unless a witness name is identified, references to "¶ __" and "Ex.__" refer to the concurrently-filed Declaration of Olivia Weber.)** The information requested includes the purchaser's state of residence, <u>with a pull down menu that expressly includes Tennessee</u>. ¶¶11-18. This constitutes purposeful availment/direction to Tennessee. *Neogen*, 282 F.3d at 891 (interactive website was purposefully directed at Michigan when it offered services "in any state" and enabled Michigan residents to print an order form and send it in with a payment); *Lexmark v. Laserland, Inc.*, 304 F. Supp. 2d 913, 918 (E.D. Ky. 2004); *see also Meridian Enterp. v. Bank of America*, 2007 WL 2363518, *1 (E.D. Mo. Aug. 16, 2007) ("JNR's website also includes an interactive drop down menu which allows users to select their state of origin, including Missouri. In other words, the website was specifically designed to attract Missouri residents.").

Indeed, the Eastern District of Texas recently held that www.broadcom.com is a "<u>highly interactive website</u>" and that it therefore subjected Broadcom Ltd. (Broadcom Inc.'s predecessor) to personal jurisdiction in Texas. *Godo Kaisha v. Broadcom Ltd.*, 2017 WL 970383, *5-7 (E.D. Tex. March 1, 2017); affirmed 2017 WL 1154921 (denying motion to dismiss). *Broadcom Limited* focused on the fact that www.broadcom.com (and a sister website) contained a submission form for technical support, marketing

11122295
2203663.5
- 1 -
Case 3:20-cv-00451-CEA-DCP Document 149 Filed 05/23/22 Page 2 of 29 PageID #: 6559
Case 8:20-cv-00451-CEA-DCP Document 154-1 Filed 06/28/22 Page 2 of 9 PageID #: 10748

videos and downloadable product guides/whitepapers, and a client support portal with information about the accused products. All of these characteristics (and more) are present here. ¶¶5-38.

In addition to the "Broadcom Inc. Sales" page and pull down menu, the infringing products are advertised (with product guides and white papers), and for each advertisement,[1] prospective purchasers who click on the link "contact sales" are directed to the "Broadcom Inc. Sales" page. ¶¶16-27; *Bridgeport v. Still n the Water,* 327 F.3d 472, 481 (6th Cir. 2003) ("[A]dvertising is among the activities that constitute 'reaching out' to forum state residents."). The website also acts as a portal for operating system software downloads. ¶¶ 28-33. After requiring registration (which includes the creation of an online account and password) and acceptance of terms and conditions and an End User License Agreement, the website allows customers to download updated versions of the "Fabric Operating System" (FOS) software, (*id.*), which contains Plaintiff's copyrighted software. *Id.*, *see also* Steve Waldbusser Decl. ("Waldbusser Decl.")*.*; *Neogen*, 282 F.3d at 890-91 (website was "interactive" when it provided users with passwords and solicited signing of contracts in order to download materials); *SAS Institute v. S&H Comp.*, 605 F. Supp. 816, 822, 829 (M.D. Tenn. 1985) ("[A]ny use whatsoever of [infringing software] following the lawful termination of the license agreement . . . constitute[s] copyright infringement."); *Northbrook v. Vendio*, 625 F. Supp. 2d 728, 751-52 (D. Minn. 2008) ("[W]here users in the forum state download and use software published by the defendant, there is sufficient proof that the defendant purposefully directed its activities into the form state."). Numerous Tennessee ▮▮▮▮▮▮ ▮▮▮▮▮▮ entities have downloaded the infringing software from Broadcom Inc.'s website, including the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ¶¶34-38, 94; Waldbusser Decl.; *see Precision Software v. Fortune*, 1998 WL 1759759, *6 (M.D. Fla. Nov. 9, 1998)

---

[1] Every page features the legend "Broadcom refers to Broadcom Inc. and/or its subsidiaries." ¶6.

(jurisdiction proper where defendant sold to a company knowing it would sell to forum residents and infringement would occur at that time). Finally, Broadcom Inc.'s website provides **extensive** technical and other support services to purchasers/downloaders, including a "chat" feature. ¶¶21-33; *see Helicopter Transp. v. Sikorsky*, 253 F. Supp. 3d 1115, 1128 (D. Or. 2017) (parent entity's website that allowed forum "businesses and consumers to coordinate with [the parent] and . . . to receive technical support services online" supported jurisdiction over the parent). Finally, as shown below, Broadcom Inc. was/is running this website with full knowledge of its infringement and that Plaintiffs are located in Knoxville, TN. *See Lifestyle Lift v. Maryland Plastic*, 2008 WL 482695, *5 (E.D. Mich. Nov. 5, 2008) (interactive website along with willful infringement knowing the victim is in the forum state supports jurisdiction).

**B. Direct Actions Of Broadcom Inc. Personnel:** Defendants' recently-produced records[2] show that people holding themselves out as Broadcom Inc. personnel marketed and sold the infringing products to ▉▉▉▉▉▉ entities in Tennessee in 2018 and 2019 (the two years immediately prior to suit). ¶¶39-58. For instance, Defendants' records show that Jack Rondoni—the "Senior Vice President and General Manager for the Brocade Storage Networking Division of Broadcom" (emphasis added)— reviewed and approved ▉▉▉▉▉ for OEM product sales **to Tennessee customers**, sales that amounted to ▉▉▉▉▉▉ per product. ¶¶39-46, 94; *see Neogen*, 282 F.3d at 886-87, and 891 (jurisdiction based on 14 of 215,000 tests—.000065—in forum); *Air Products v. Safetech*, 503 F.3d 544, 551 (6th Cir. 2007) (jurisdiction based on "purchased goods cumulatively worth hundreds of thousands of dollars"). Indeed, Broadcom Inc.'s CEO, Hock Tan, who is one of the three officers of Brocade,[3] stated that "Broadcom" uses Brocade products to induce other Broadcom sales, and that he has met with "quite a few" of the "largest end-user customers of Brocade as well, which is SAN switching." ¶51; *see*

---

[2] Plaintiffs are still reviewing Brocade's recent massive document productions.

[3] The other two officers are Charlie Kawwas (a top Broadcom Inc. executive) and Jack Rondoni. In 2021, Kawwas replaced Thomas Krause, Broadcom Inc.'s former CFO. ¶¶54-58.

*also* ¶¶50, 52-53 (end users). The products in Complaint ¶64 are SAN (storage area network) switches.

**C. Spearheading An Attempt To Secure Licenses From Plaintiffs:** Knowing that licenses from Plaintiffs were necessary to make sales, Broadcom Inc. spearheaded license negotiations. *See* Dkt. 51-2, at §III. Despite its assertions (Dkt.56 (Reply) at 8), Broadcom Inc.'s communications were not "in response to communications initiated by the plaintiff." *See* Declaration of Dr. Jeffrey Case Pursuant to Docket 147 ("Case Decl.") ¶2. Moreover, no one "disputed" that Defendants needed licenses from Plaintiffs. *Id.* For instance, Brocade's and Extreme's predecessors mailed a September 13, 2017 letter to Plaintiffs (in Knoxville) requesting that they agree to an assignment of rights under their license agreement with Brocade, which prohibited assignments without Plaintiffs' approval. Broadcom Limited, Broadcom Inc.'s predecessor, was identified as the party to whom "notices" should be sent, and the letter also requested that the license could be assigned to other unidentified "Brocade Parties," including "Brocade assets acquired and retained by Broadcom," which would create new license rights for these unnamed entities. Case Decl. ¶3 and Ex. A thereto. Plaintiffs rejected the proposal and asked for additional information. Defendants did not provide the requested information or even respond. Case Decl. ¶3. Instead, they proceeded with the unauthorized disclosure of Plaintiffs' source code to Extreme.[4]

Extreme later reached out to Plaintiffs in a second attempt to secure license rights. Broadcom Inc. personnel knew this was occurring and worked with Extreme in the background as Extreme expressed concern about its need for a license. ¶¶59-62. When Extreme later disclosed to Plaintiffs that other Broadcom entities would also need licenses, Broadcom Inc. stepped in to handle those negotiations with Plaintiffs. Case Decl. ¶4. In doing so, Broadcom Inc. spoke for itself and its affiliates, and unsuccessfully tried to secure Plaintiffs' agreement that Broadcom Inc.'s affiliates could sell products containing

---

[4] Broadcom Inc. argues that the sale to Extreme occurred prior to Broadcom Inc. acquiring Brocade. But as the September 13, 2017 letter shows, sale preparations (which Broadcom personnel were involved in) were underway long before Broadcom Inc. closed its merger with Brocade.

11122295
- 4 -
2203663.5
Case 3:20-cv-00451-CEA-DCP Document 154 Filed 06/28/22 Page 5 of 9 PageID #: 6562
Case 3:20-cv-00451-CEA-DCP Document 159-1 Filed 07/20/22 Page 5 of 9 PageID #: 10751

Plaintiffs' software without a license while the negotiations were ongoing. *Id.* ¶¶4-5. Brocade also recently produced "OEM" (original equipment manufacturer) contracts showing Broadcom Inc. subsidiaries other than Brocade (including one that Broadcom Inc. had unsuccessfully sought to obtain a license for) engaged in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in Tennessee, namely Knoxville, Memphis, and Nashville. ¶¶64-66.

## II. BROADCOM INC.'S INDIRECT MARKETING, SALES, AND LICENSING

Broadcom Inc. indirectly markets, sells and licenses the infringing products/software through Brocade. Brocade does not contest personal jurisdiction in Tennessee. It is registered to do business in Tennessee. ¶68. It is also a party to the license agreement that lies at the heart of this case, which provides for exclusive jurisdiction/venue in Knoxville. Moreover, although Brocade has not yet disclosed the total amount of its sales of infringing products in Tennessee despite a court order to do so,[5] the evidence discussed above shows that such sales have occurred. Moreover, Defendants have service contracts for numerous Tennessee entities, including but not limited to the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ¶¶69, 73, 94; Wallace Decl. ¶¶8-9. Although the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ it is reasonable to infer that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ¶¶70-76. In addition, as demonstrated above, Jack Rondoni (of the Brocade "division" of Broadcom Inc.) reviewed and approved ▮▮▮▮ for OEM product sales to Tennessee customers for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. ¶¶39-46.

In *Third National v. Wedge Group*, 882 F. 2d 1087, 1091-91 (6th Cir. 1989), the Sixth Circuit held that a parent company, Wedge, had "never directly conducted business, held title to property, or retained employees in Tennessee." *Id.* at 1091. Yet it still determined that personal jurisdiction in Tennessee was

---

[5] Defendants claim not to "track" this information but do not claim its inascertainable. ¶¶70-2.

11122295
- 5 -
2203663.5

Case 3:20-cv-00451-CEA-DCP Document 154 Filed 06/28/22 Page 6 of 9 PageID #: 10752

proper because Wedge was the 100% owner of a subsidiary (TRC) who conducted business in Tennessee, and Wedge "was not a mere passive owner" of TRC, but instead had its officers served as TRC directors (who met regularly in Tennessee).[6] *Id.* at 1090-91. Wedge had also "interject[ed] itself in negotiations between Third National and TRC" regarding a key contract at issue in the case. *Id.* Similar circumstances exist here. As shown above, Brocade does business in Tennessee, including with respect to the key contract at issue in this case and through sales of infringing products and services in Tennessee. Broadcom Inc. wholly owns Brocade. ¶61. Moreover, when Broadcom Inc. acquired Brocade, it sold Brocade's offices, dismissed Brocade's senior officers and directors and replaced them with Broadcom Inc.'s senior officers, and ran/runs Brocade like its "division." ¶¶54-58, 77-86. As further demonstrated above, Broadcom Inc. is not a "mere passive owner" of Brocade (such as a pure investor), and, like the parent in *Third National*, Broadcom Inc. interjected itself into the negotiations over the key contract at issue in this case (a contract with a Knoxville exclusive venue/jurisdiction clause).[7]

Indeed, the facts here are even stronger than in *Third National*. Broadcom Inc. actively markets and sells the infringing Brocade products through Broadcom Inc.'s website, and in doing so, Broadcom Inc. treats Brocade as a "**division**" of Broadcom and expressly refers to it as such. ¶¶31-32, 39-40, 78, 83, 95; *Valentine v. SSC Newport*, 2020 WL 7018265, *5 (E.D. Tenn. March 30, 2020) (imputing contacts where subsidiaries acted "more like divisions [of the parent] . . . than a separate entity"). Moreover, Brocade

---

[6] Physical presence is not necessary for personal jurisdiction. *Air Products,* 503 F.3d at 551. *Third National* also considered a tax sharing agreement and money deposited into a Tennessee account. *Id.*

[7] Defendants argue that imputation of contacts requires Broadcom Inc. and Brocade to be alter egos. Reply at 3 (citing *Estate of Thomson v. Toyota*, 545 F.3d 357 (6th Cir. 2008)). But *Thomson* does not hold that "alter ego" is the only way to impute a subsidiary's contacts to its parent, and it is a general jurisdiction case. *Third National*, which turned on specific jurisdiction (at issue here), did not even mention "alter ego." 882 F. 2d 1087, 1090-92; *see also id.* at 1093-94 (concurrence discussing alter ego, but also "merger" and "attribution"). And even if alter ego were the sole test, Plaintiffs have met their "relatively slight burden," *Hardaway v. Quince Nursing*, 2020 WL 4106440, *9 (W.D. Tenn. July 20, 2020), at this stage of the case. *See Hitachi v. Branch,* 2010 WL 816344, *5 (N.D. Ohio March 4, 2010) ("[T]he exercise of personal jurisdiction over an alleged alter ego requires application of a less onerous standard than that necessary for piercing the corporate veil for liability purposes.").

personnel repeatedly self-identify as employees/personnel of Broadcom Inc. *E.g.* ¶¶ 40, 46-47, 95; *Moore v. Westgate*, 2020 WL 6814666, *8 (E.D. Tenn. Nov. 18, 2020) (imputing contacts where "CFI shares a logo and brand name with its subsidiaries" and "employees of these subsidiaries self-identify as working for the brand."); *IP Innovation v. RealNetworks*, 310 F. Supp. 2d 1209, 1212 (W.D. Wash. 2004) (imputation proper "where the subsidiary was established for, or is engaged in activities that the parent would have to undertake if not for the subsidiary's involvement."). ▮

▮

▮ (¶¶87-90), supporting the inference that Broadcom Inc. controls/uses Brocade to serve Broadcom Inc.'s own purposes. *Valentine,* 2020 WL 7018265, *4 ("Tennessee allows alter ego jurisdiction when . . . the subsidiary corporation is merely an instrumentality, agent, conduit, or adjunct of the parent.").

Finally, Broadcom Inc. maintains "consolidated" financials, wrapping Brocade's revenues/profits into Broadcom Inc.'s and not reporting them separately, including revenues/profits from Brocade's sale of the infringing products and software. ¶84. And despite being *ordered* to produce its balance sheet, Brocade has failed to do so. ¶93; Dkt. 131. The complaint alleges hundreds of millions of dollars in infringement; there is thus a potential for a massive profits disgorgement award against Brocade, *see* 17 U.S.C. § 504(b), rendering Brocade's ability to pay and adequacy of capitalization a significant concern.[8] Particularly at this early stage of the case and with Defendants' continued failure to provide personal jurisdiction discovery (*see* Dkt. 151), it would be premature to dismiss Broadcom Inc., the ultimate beneficiary of the infringement and Brocade's "practical partner" under copyright law.

---

[8] Organizational charts produced by Defendants shows Brocade Communications Systems, LLC below several other layers of entities owned by Broadcom Inc. ¶92. In addition, despite the fact that Brocade has produced massive returns for Broadcom Inc., it is not listed as a "significant" subsidiary in Broadcom Inc.'s Form 10-K filed with the SEC. ¶91.

Case 8:20-cv-00451-CEA-DCP Document 154 Filed 07/28/22 Page 8 of 9 PageID #: 6565
10754

Respectfully submitted,

Dated: July 22, 2022

By: /s/ *Cheryl G. Rice*
John L. Wood, Esq. (BPR #027642)
Cheryl G. Rice, Esq. (BPR #021145)
Rameen J. Nasrollahi, Esq. (BPR #033458)
EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
900 S. Gay Street, Suite 1400
P.O. Box 2047
Knoxville, TN 37902
(865) 546-0500 (phone)
(865) 525-5293 (facsimile)
jwood@emlaw.com
crice@emlaw.com
rnasrollahi@emlaw.com

By: */s/ A. Matthew Ashley*
A. Matthew Ashley (CA Bar. No. 198235)
Morgan Chu (CA Bar. No. 70446)
David Nimmer (CA Bar. No. 97170)
Olivia Weber (CA Bar. No. 319918)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
(310) 277-1010 (phone)
(310) 203-7199 (facsimile)
mchu@irell.com
dnimmer@irell.com
mashley@irell.com

*Attorneys for Plaintiffs*
*SNMP Research International, Inc.*
*SNMP Research, Inc.*