# IN THE UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC.,** | § § § | **Case No. 3:20-cv-00451-CEA-DCP** |
| **Plaintiffs,** | § § | |
| **v.** | § § | **Jury Demand** |
| **BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; AND EXTREME NETWORKS, INC.,** | § § § § § | |
| **Defendants.** | § § | |

## PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY, ENFORCE ORDER COMPELLING DISCOVERY, DETERMINE SUFFICIENCY OF REQUEST FOR ADMISSION RESPONSES, AND FOR SANCTIONS AS TO DEFENDANTS BROADCOM INC. AND BROCADE COMMUNICATIONS SYSTEMS LLC

Plaintiff SNMP Research, Inc. ("Plaintiff" or "SNMP Research") respectfully submits this Reply in Support of its Motion to Compel Discovery, Enforce Order Compelling Discovery, Determine Sufficiency of Request for Admission Responses, and For Sanctions ("Motion" or "Mot.") as to Defendants Broadcom Inc. and Brocade Communications Systems LLC ("Brocade") (collectively, "Defendants").

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION.................................................................................................1

II.     ARGUMENT......................................................................................................2

     A.     The Broadcom "Affiliates" Issue................................................................2

     B.     Discovery Directed To Defendants' Marketing And Sale Of The Accused Products, Including In Tennessee ................................................8

     C.     Deficient RFA Responses .........................................................................9

     D.     Brocade RFPs 43 And 47 ........................................................................14

     E.     Brocade Interrogatory 9 ..........................................................................15

     F.     Defendants' Improper Refusal To Provide Information On The Basis That They Do Not "Track" It........................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Eitel v. PNC Bank, N.A.*,
2022 WL 885043 (W.D. Ky. Mar. 24, 2022) ....................................................6, 17

*Home Fed. Bank of Tenn. v. Home Fed. Bank Corp.*,
No. 3:18-CV-379-JRG-DCP, 2019 WL 11670621 (E.D. Tenn. Sept. 18, 2019) .....................5

*Milner v. Nat'l Sch. of Health Tech.*,
73 F.R.D. 628 (E.D. Pa. 1977)................................................................17

*Mullins v. Prudential Ins. Co. of Am.*,
267 F.R.D. 504 (W.D. Ky. 2010)..............................................................18

*Neale v. Coloplast Corp.*,
No. 1:18-cv-00274, 2020 WL 6948361 (E.D. Tenn. Nov. 2, 2020)....................................3, 5

*Nelson-Salabes, Inc. v. Morningside Dev., LLC*,
284 F.3d 505 (4th Cir. 2002) ................................................................4

*React Presidents, Inc. v. Eagle Theatre Entmt.*,
2018 WL 3819055 (E.D. Mich. Aug. 10, 2018) ...................................................12

*Stephenson v. Family Sols.*,
2021 WL 681403 ( N.D. Ohio Feb. 22, 2021).....................................................13

*United States v. One Tract of Real Prop.*,
95 F.3d 422 (6th Cir. 1996) .................................................................12

*United States v. Petroff-Kline*,
557 F.3d 285 (6th Cir. 2009) ................................................................13

**Statutes**

17 U.S.C. § 504(b) ..........................................................................5

**Rules**

Fed. R. Civ. P. 26 ..............................................................12, 13, 14, 15

Fed. R. Civ. P. 33 ...............................................................17, 18

Fed. R. Civ. P. 36 ...............................................................9, 10, 11, 13

Fed. R. Civ. P. 37 ...............................................................13, 15

Fed. R. Civ. Proc. 33(b)(1)(B) ..............................................................6

Rule 36(a)(4) ..............................................................................10, 14

## I. INTRODUCTION

Defendants' opposition (Dkt. 177 ("Opposition" or "Opp.")) essentially duplicates the flaws in Defendants' responses to the discovery at issue.

With respect to the Broadcom Inc. affiliates issue, Defendants have no answer to the obvious fact that the identity of the Broadcom Inc. affiliates who are selling or have sold products with SNMP Research Software is undeniably relevant to this case, particularly under the "extremely broad" (Dkt. 131 ("April 22 Order") at 3) standard of relevance for discovery purposes. Unable to dispute this, Defendants once again claim "undue burden" and disproportionality. However, Defendants do not adduce any affidavit or evidence showing any burden at all in providing the identity of these affiliates and the products they are selling or previously sold. Indeed, Defendants do not even claim that they don't know the answer to this question. Instead, Defendants simply make attorney argument that it would be an "undue burden" because Broadcom Inc. has "150 affiliates and/or subsidiaries." This Court already warned Defendants this was insufficient to meet their burden to show undue burden on the affiliates issue. April 22 Order at 17 ("[Defendants] must provide more than mere general and boilerplate burden and proportionality objections").

With respect to the RFAs, Defendants essentially admit the impropriety of their responses by claiming they will "voluntarily" supplement them (again), and they claim this "moots" the issue. It does not. Plaintiff moved to have several RFAs deemed admitted, and Defendants do not even attempt to address the authority Plaintiff cited on this subject in its moving brief, nor does the Opposition justify the responses that were given and the failure to supplement after this Court's Order made clear that Defendants' responses were woefully inadequate.

Finally, with respect to the other items in dispute, Defendants' excuses ring hollow. This Court's Order was clear, and as to these responses, Defendants simply ignored it. The Motion made several requests for relief, and Defendants do not challenge this Court's discretion to order that relief;

J1129810
2213494.10

indeed, Defendants' own proffered authority confirms the Court's broad discretion. The Court should order the relief requested.

## II.    ARGUMENT

### A.    The Broadcom "Affiliates" Issue

With respect to Broadcom Inc.'s affiliates, Defendants' Opposition is far more revealing in what it fails to argue (much less show) than in what it does argue. Defendants never dispute that, in addition to Brocade, there are other affiliates of Broadcom Inc. who are in fact selling/distributing or have sold/distributed products containing SNMP Research Software. Defendants also never argue or even attempt to show that they do not <u>already know</u> who those affiliates are and which products contain the SNMP Research Software. Nor do Defendants argue or even attempt to show that they cannot readily obtain the information. Indeed, after Plaintiffs terminated Brocade's use/distribution rights under the License Agreement, Broadcom Inc. expressly asked Plaintiffs for licenses for at least two such affiliates, namely Avago Technologies International Sales Pte. Limited and Avago Technologies U.S. Inc., which shows that this information is known or readily available to Defendants. *See* Dkt. 157-30 at 3 of document entitled "License Agreement." Plaintiffs have uncovered evidence that at least one of those two affiliates engaged in the sale/distribution of products containing Plaintiffs' software without a license. *See* Dkt. 157-19 at 1.

If Defendants could have made any of these arguments or showings that they do not already know who the affiliates are that are selling/distributing or have sold/distributed product containing SNMP Research Software, they undoubtedly would have. And while the Opposition cites to numerous affidavits filed in connection with Defendants' supplemental brief as to personal jurisdiction (*see, e.g.*, Opp. at 6-7, 22), <u>none</u> of those affidavits provides any showing (or even any assertion) that it would be unduly burdensome for Defendants to simply identify the affiliates who are selling or have sold

products containing SNMP Research Software. Instead, Defendants' Opposition just invokes "150 Broadcom indirect and direct subsidiaries" and claims, in attorney argument not actual evidence, that answering these simple questions would be "overbroad and unduly burdensome." Opp. at 12, 14.

As this Court already has stated:

> Defendants are cautioned that—although the Court is limiting the entities at issue due to the immediate need of getting the parties engaged in a productive discovery process—they must provide more than mere general and boilerplate burden and proportionality objections. <u>For example, to the extent a specific entity may be completely irrelevant to this matter, Defendants must—at a minimum—state as such for the specific entity instead of in a general statement relating that the sheer number of entities makes Plaintiff's requests unduly burdensome.</u>

April 22 Order at 17 (emphasis added). Defendants are thus doing exactly what this Court directed them not to do.

The standard for discovery relevance is "extremely broad and has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." April 22 Order at 3 (quoting *Neale v. Coloplast Corp.*, No. 1:18-cv-00274, 2020 WL 6948361, at *2 (E.D. Tenn. Nov. 2, 2020)). The identity of the Broadcom Inc. affiliates and subsidiaries who are selling/distributing or have sold/distributed product containing SNMP Research Software, as well as the identity of the products themselves, undoubtedly meets this extremely broad standard. This is true regardless of whether the entities or products are identified by name in the complaint, or whether the Broadcom affiliate obtained the SNMP Research Software from Brocade or someone else. *Cf.* April 22 Order at 9 ("Extreme argues that 'SNMP Research Software' is an overbroad term . . . The Court disagrees that it is an overbroad term, as Plaintiff's discovery requests relate to Extreme's products—whether or not they are specifically identified in the Complaint—that Plaintiff alleges are improperly incorporating its software. This goes to the heart of Plaintiff's

copyright infringement claim. . . . Extreme must fully respond to . . . [requests] related to Extreme's products and product lines that use SNMP Research Software.").[1]

Moreover, Defendants have admitted that Broadcom Inc. is the ultimate parent, *i.e.* "holding company" for the Broadcom family of companies. *See* Dkt. 119-3 ¶ 2 ("Broadcom Inc. is a parent holding company that has over 150 direct and indirect subsidiaries globally."); Exs. K-M.[2] Broadcom Inc. is where the money generated by this corporate family ultimately goes, and consequently, under copyright law's "practical partner" doctrine, Broadcom Inc. is jointly and severally liable for profits its subsidiaries make via infringing sales. *See, e.g., Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 517 (4th Cir. 2002) ("When a court finds the existence of a partnership or a 'practical partnership,' the 'partners' thereof are jointly and severally liable for any profits that they collectively derived from the acts of . . . infringement."). Thus, the lenient standard for discovery relevance is easily met here, and Defendants do not even argue otherwise. Defendants also do not claim privilege over the information they are withholding.

Instead, Defendants refuse to provide this relevant and non-privileged information on the sole asserted basis that it would be "unduly burdensome" or "disproportionate." Opp. at 13, 15. Yet, as demonstrated above, Defendants never submit any evidence or affidavit that they don't already know which affiliates are selling/distributing or have sold/distributed products with SNMP Research Software, or that Defendants cannot ascertain that information with reasonably diligent efforts. As the party asserting "undue burden," it was Defendants' obligation to make such a showing with evidence

---

[1] The requests at issue defined "Extreme" to include for example, predecessors, successors, affiliated entities, all divisions and subsidiaries, and its officers, directors, and employees acting on its behalf. *See* Dkt. 96-6 at 2.

[2] All citations to "Ex." are to Exhibits to the Declaration of Olivia Weber, Dkt. 151-1 filed with Plaintiff's moving brief.

and affidavits, not just attorney argument about supposedly having to "prove a negative" (*id.* at 15) coupled with the same naked invocation of "150 entities" (*id.* at 14) that this Court already told Defendants they could not rely upon to satisfy their obligation of showing undue burden. April 22 Order at 17; *see Home Fed. Bank of Tenn. v. Home Fed. Bank Corp.,* No. 3:18-CV-379-JRG-DCP, 2019 WL 11670621, at *2 (E.D. Tenn. Sept. 18, 2019) ("A responding party must show specifically how each discovery request is burdensome and oppressive by submitting affidavits or offering evidence revealing the nature of the burden.") (internal quotation marks omitted); *Neale*, 2020 WL 6948361, at *2 (The "burden falls upon [the responding party] to establish the exact nature of such an undue burden in concrete, meaningful terms.") (internal quotation marks omitted) (brackets in original). Again, Defendants have not provided affidavits or evidence showing that it would be unduly burdensome to search their source code repository for the words "SNMP Research."

As for Defendants' attempt to use a mischaracterized license fee (*see* Opp. at 7, mentioning one fee but not all fees under the license) as the supposed value of this case and thereby support their "disproportionality" argument, Defendants ignore the fact that they face a profits disgorgement remedy under the copyright statute which is calculated by their infringing product and related goods/services revenues, not a license fee. 17 U.S.C. § 504(b) ("The copyright owner is entitled to recover . . . any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."). As the Motion noted—and Defendants do not dispute—just based on the revenue numbers provided to date (which do not even include other Broadcom Inc. affiliates' sales of products

containing SNMP Research Software), the revenues at issue are well over one billion dollars. Dkt. 151-1 ("Weber Decl.") ¶ 18. Breaking the law is often considerably more expensive than obeying it.

Defendants also proffer meaningless purported differentiations of Plaintiff's authority. In its moving brief, Plaintiff cited authority (Mot. at 9) holding that:

> [A] parent corporation has a sufficient degree of ownership and control over a wholly-owned subsidiary that it must be deemed to have control over documents located within that subsidiary. . . . A corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls.

*Eitel v. PNC Bank, N.A.*, 2022 WL 885043, *8 (W.D. Ky. Mar. 24, 2022) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. Proc. 33(b)(1)(B) (corporations must provide answers by "any officer or agent, who must furnish the information available to the party."). Defendants do not dispute that this is the law. Instead, they argue that *Eitel* "is inapposite as it does not address the burden of an entity being compelled to provide discovery on behalf of 150 non-party affiliates and/or subsidiaries." Opp. at 14. However, this Court already admonished Defendants that it was not enough for them to simply invoke "undue burden" based on 150 entities, so this purported distinction is irrelevant. Moreover, Plaintiffs have not asked for discovery from 150 entities. They have asked for discovery to encompass (and for Defendants to identify) those Broadcom affiliates who have sold/distributed or are selling/distributing products with SNMP Research Software. That is not asking too much.

Finally, Defendants also argue that "Plaintiffs ask the Court to reverse its April 22, 2022 Order" (Opp. at 12), but Plaintiff isn't asking the Court to reverse itself. The Court expressly noted it was not finally deciding the affiliates issue but was just limiting it for the time being "due to the immediate need of getting the parties engaged in a productive discovery process," April 22 Order at 17, and that the Parties were to meet and confer further on the issue, *id.* at 18. Plaintiff tried to meet and confer with Defendants to find a reasonable limitation on Broadcom Inc. "affiliates" that at the very least encompassed the entities that are actually selling/distributing or have sold/distributed products with

SNMP Research Software. *See* Ex. J at 2. But Plaintiff's request was met with an invocation of "a fishing expedition" and the assertion that the "150 affiliates" are "completely irrelevant to the claims asserted in Plaintiffs' complaint," *id.* at 3.

For all of these reasons, the Court should order Defendants to answer all discovery requests for each "affiliate" that (i) has/had Plaintiff's SNMP Research Software, (ii) has/had source code with the words "SNMP Research" in them, or (iii) is now or has distributed or sold products containing Plaintiff's SNMP Research Software.[3] Specifically, those affiliates should be included within the defined term "Broadcom," without waiver to Plaintiff's ability to include additional affiliates based on future discovery. In the alternative, Plaintiff respectfully requests that the Court include all of Broadcom Inc.'s affiliates within the definition "Broadcom." Or at the very least, the Court should order Defendants to: (i) answer the five questions identified in the Motion (Mot. at 4) so that the Court and Plaintiffs will then know all of the entities within the Broadcom family that use/used SNMP Research Software, that have/had source code with the words "SNMP Research" in them, or that now or in the past have distributed/sold products that contain SNMP Research Software; and (ii) order such entities to be included in the defined term "Broadcom" and for Defendants to supplement their responses to Plaintiff's discovery requests accordingly.

B.      Discovery Directed To Defendants' Marketing And Sale Of The Accused Products,
        Including In Tennessee

Broadcom Inc. admits that when answering discovery directed at its role in the sale and marketing of products containing SNMP Research Software, Broadcom Inc. excluded the very

_____

[3] As Plaintiffs have repeatedly informed Defendants (including in the discovery requests themselves), Defendants need not include "software rightfully distributed to a Broadcom customer under the Amended and Restated Key Distribution Agreement between SNMP Research International, Inc. and Broadcom Corporation effective as of February 21, 2019, for which it is undisputed that all license fees and royalties are fully paid." Ex D. at 3.

Brocade products identified in the Complaint because, instead of interpreting the defined term "Broadcom" to include both Broadcom Inc. and Brocade (as Plaintiff had defined it), it excluded Brocade. Broadcom Inc.'s unilateral narrowing has resulted in Broadcom Inc. answering no discovery at all as to its role in the marketing and sale of the Brocade products at issue in this case (not to mention its role in connection with other Broadcom affiliates' sale/distribution of products containing SNMP Research Software (*see, supra*, Section II.A)).

Brocade in turn admits that the approach it took was to answer only as to its own products and then, when answering with respect to Broadcom Inc.'s role, it deemed Broadcom Inc. a "holding company" with no "employees" and therefore provided no information as to Broadcom Inc.'s role (including through representatives who may not be "employees" or through other affiliates) in the sale and marketing of the Brocade products at issue in this case. Opp. at 6.

The Court can now see for itself how much involvement Broadcom Inc. had in Brocade product marketing and sales even based on just the public record and Defendants' constrained document production to date. *See* Dkt. 157 ¶¶ 4-51 (documenting Broadcom Inc.'s extensive marketing of infringing products on its website and via people holding themselves out to be personnel of Broadcom Inc., and documenting downloads of infringing software from Broadcom Inc.'s website). So contrary to Defendants' assertions, this is not about Plaintiff "not lik[ing] or disagree[ing]" with the answers it received. It is about Defendants' failure to provide discovery into Broadcom Inc.'s role in the marketing and sale of products containing SNMP Research Software just because Broadcom Inc. chooses to act through its subsidiaries/officers/directors/agents/representatives, rather than people to whom Broadcom Inc. gives the title "employee."

The Court should not permit this. It should order Broadcom Inc. to answer all discovery as to its role in the sale and marketing of products containing SNMP Research Software and in doing so

11129810
2213494.10

include its role with respect to the Brocade products at issue in this case as well as any other products containing SNMP Research Software. Moreover, the Court should make clear that Defendants cannot avoid providing this discovery because a person or entity is an agent, representative or affiliate of Broadcom Inc. rather than what Defendants deem an "employee" of Broadcom Inc.

C.     Deficient RFA Responses

Defendants do not dispute that their RFA responses violate several directives from the Court in its Order. Instead, they claim that "Defendant[s] will amend their RFA responses, mooting Plaintiffs' requests." Opp. at 10. However, far from "mooting" Plaintiff's requested relief of deemed admissions under Rule 36(a)(4) and (6), Defendants' Opposition confirms why the relief is appropriate.

Defendants first argue that: "Tellingly, Broadcom and Brocade served the relevant responses and objections nearly a year ago and Plaintiffs did not move to compel any further responses to the RFAs." Opp. at 10. First, this argument demonstrates a fundamental flaw in Defendants' approach to discovery—Plaintiff is not supposed to have to move to compel for Defendants to comply with their discovery obligations. Second, Defendants are wrong on their facts. While Defendants agreed to provide supplemental responses a year ago, they then reneged on that agreement. *See* Dkt. 88-1 at 1. That forced Plaintiff to move to compel the RFA responses that Defendants had agreed to provide but failed to provide. *Id*. Only after that motion to compel was filed (and on the very same day that Plaintiff's reply was due) did Defendants serve supplemental responses, arguing in a now-familiar refrain that this "mooted" Plaintiff's motion to compel. Dkt. 94 at 9. Plaintiff did not press that issue further because the prior motion was to compel discovery, including RFA responses, that had been promised but not provided. In contrast, this Motion is to have certain responses deemed admitted under Rule 36(a)(4) and (a)(6), which Defendants cannot unilaterally moot. Nor can Defendants moot this Motion as to the RFAs encompassed within Section II.B *supra* (*i.e.* Brocade RFAs 41-60 and

Broadcom RFAs 30-41), or to Broadcom RFAs 50-51, which concern Broadcom Inc.'s reliance on the License Agreement with the exclusive jurisdiction and venue clause, or to the RFAs listed in footnote 9 of the Motion, for which Defendants' responses violated Rule 36(a)(4).[4]  As to all remaining RFA responses, which included multiple objections the Court already overruled in the context of Defendants' responses to Plaintiff's Requests for Production and Interrogatories, Defendants cannot unilaterally moot this Motion either to evade an order.

Defendants do not dispute that under Rule 36(a)(4) and (a)(6) a court can deem admitted an RFA response that does not "fairly respond to the substance of the matter."  Fed. R. Civ. Proc. 36(a)(4), (6).  Defendants also do not address the authority the Motion cited where courts deemed admitted RFA responses that were not made in "good faith," were improperly qualified and/or littered with "overly broad, burdensome, oppressive and irrelevant" objections and objections to plain terms, and where the responding party's "denials" were "not a forthright, specific, and unconditional denial."  *Compare* Mot. at 15, 17 (citing *Tustin v. Motorists Mut., In re Norris*, and *Nurse Notes v. Allstate*); *with* Opp. (addressing none of this authority).  Indeed, the Opposition does not even mention Rule 36(a)(4) or 36(a)(6).

Nor does the Opposition tackle the inherent inconsistencies in Defendants' RFA responses which show the lack of Rule 36(a)(4) compliance, including with respect to those RFAs that the Motion seeks to have deemed admitted (namely Broadcom Inc.'s responses to RFAs 32-47, and Brocade's responses to RFAs 24- 27, 29, 31, 33, 35, 37, 39, 42, 44, 46, 48, 50, 52, 54, 56, 58, and 60),

---

[4] Plaintiff also did not believe it was necessary to add the RFA responses to the motion to compel as to Defendants' RFP and interrogatory responses, given that the discovery requests and responses contained the same disputed terms and objections.  Instead, Plaintiffs expected that Defendants would conform their responses to the RFAs to however the Court ruled on the interrogatories and RFPs.  That expectation turned out to be wrong, which is why Plaintiff had to bring this motion.

11129810
2213494.10

and with respect to the requests listed in footnote 9 of the Motion. For instance, the Motion showed that Broadcom Inc. states that it "cannot answer" RFAs 30-43 but then in the same response "denies" them, and for RFAs 44-47 (among many others), Broadcom Inc. did not admit or deny the requests. Mot. at 14, n.9. Similarly, Brocade claims that it cannot answer RFAs 41-60 but then in the same response denies them, and for RFAs 21-40 (among many others), Brocade does not admit or deny the requests at all. *Id.* The Opposition just ignores all of this.

The Opposition also pretends that Defendants were somehow confused and thought that Broadcom Inc. referred to the defined term "Broadcom." Yet Defendants never explain how they were confused given that the discovery requests used "Broadcom" and "Broadcom Inc." separately (in pairs of requests making it abundantly obvious the terms were not one and the same; Ex. D at 9), not to mention the fact that "Broadcom Inc." is not in the section of the requests containing the defined terms. The Motion pointed this out, Mot. at 16, and Defendants just ignore it. Defendants also ignore the written record where they agreed to at least respond to the RFAs as to the named plaintiffs—which of course would include "Broadcom Inc." *See* Ex. F at 5. In short, there was no confusion over whether "Broadcom Inc." meant the defined term "Broadcom"; Defendants simply did not want to fairly respond to the requests.

As for the RFAs asking Broadcom Inc. to admit that it is relying on the License Agreement (between SNMP Research International, Inc. and Brocade) as a defense in this case, the only argument Broadcom Inc. offers for its failure to admit or deny this request is that it is supposedly "work product." Opp. at 11 (citing *United States v. One Tract of Real Prop.*, 95 F.3d 422, 427-28 (6th Cir. 1996)). However, *United States v. One Tract* involved a party asking the United States Attorney's office which federal charges it might bring against non-parties in the future, which is undeniably work product. In stark contrast, the defenses a party is asserting in the case at issue and the documents in support of them

are not work product; they are required initial disclosures. Rule 26(a)(1)(A)(ii) (party must produce a copy of all documents that it "may use to support its claims or defenses"); *see also* Dkt. 46 at 2 (Joint Rule 26(f) Report disclosing numerous "potential defenses"). Moreover, while Broadcom Inc. claims it has not filed its answer to the complaint yet, Rule 26 is not limited to after a defendant submits its answer, and this case has been pending for nearly two years. In addition, Broadcom Inc. has asserted a defense of personal jurisdiction it its motion to dismiss and has moved to transfer this case to a purportedly "more convenient" forum, namely the Northern District of California. Broadcom Inc. cannot simultaneously assert these jurisdiction and venue defenses yet shield from discovery whether it is asserting a license defense that is flatly contrary to its jurisdiction and venue defenses given the exclusive jurisdiction and venue clause in favor of Knoxville in the License Agreement.

Nor do Defendants' cited cases support them. Defendants argue that "[e]ven under extreme circumstances, courts in this Circuit have regularly refused to take this extraordinary step [*i.e.* of deeming admitted RFAs]." Opp. at 11. But none of the cases Defendants cite involve a party who already had clear notice of the deficiency of its responses (which this Court's Order provided months ago), yet still refused to supplement its answers. Nor did Defendants' proffered authority involve "extreme circumstances." *Id.* For example, *React Presidents, Inc. v. Eagle Theatre Entmt.*, 2018 WL 3819055, *1 (E.D. Mich. Aug. 10, 2018) involved a party who was withholding an answer on its requests for admission until the court first ruled on its motion to strike. When the court did rule on the motion to strike, it then directed an answer. Here, this Court ruled on Defendants' motion to stay discovery over a year ago, and yet Defendants "supplemented" with responses deploying discovery tactics that this Court made clear in its Order (albeit in the context of other discovery responses by Defendants) was an abuse of discovery. Then after this Court's Order was rendered, Defendants refused to correct these deficiencies unless Plaintiffs filed a motion to compel.

Moreover, *United States v. Petroff-Kline*, 557 F.3d 285, 293 (6th Cir. 2009) did not involve RFA responses that were improper under Rule 36(a)(4) and (a)(6). It involved a circumstance in which a party was "a few days" late in serving its response. And even there, the Sixth Circuit stated that "we look to the understandable discretion vested in district courts"—when in that case the district court exercised that discretion to permit the denials (which were not challenged as defective or deficient other than being "a few days' delay[ed]") to stand. *Id.* Further, *Stephenson v. Family Sols.*, 2021 WL 681403, *6 ( N.D. Ohio Feb. 22, 2021) is also inapposite, as it involved a request under Rule 37(c)(2) to deem RFAs admitted because they had allegedly "been proven true through discovery." *Id.* That is irrelevant to the issues before this Court.

Finally, this is not a situation in which Defendants are being unfairly surprised.[5] After the Order, Plaintiff <u>repeatedly</u> attempted to get Defendants to voluntarily supplement their plainly deficient RFA responses. Defendants refused, in violation of their duty under Rule 26(e)(1)(A)-(B). *See* Mot. at 17. Defendants' duty to supplement under Rule 26(e)(1)(A)-(B) undeniably was triggered months ago by this Court's Order. Defendants' Opposition ignores this rule as well.

In short, the Court should deem admitted Broadcom Inc.'s responses to RFAs 32-47, and Brocade's responses to RFAs 24- 27, 29, 31, 33, 35, 37, 39, 42, 44, 46, 48, 50, 52, 54, 56, 58, and 60. Plaintiff also respectfully requests the Court to issue an order for Defendants to respond fully and

---

[5] *See* Ex. R at 8 (June 2, 2022 letter from Ms. Weber to Ms. Plessman) (requesting supplementation of RFAs on or before June 13, 2022); Ex. T at 6 (July 11, 2022 email from Ms. Weber to Ms. Plessman) ("[W]e will need to move to compel on the issues noted below"); Ex. T at 4 (July 12, 2022 email from Ms. Weber to Ms. Plessman) ("Please provide the information requested above by noon EST/9 a.m. PST tomorrow, or Plaintiff will need to move to Compel."); Ex. T at 3 (July 12, 2022 email from Ms. Weber to Ms. Plessman) ("while you state that you have not looked at the RFAs recently because we did not move to compel on those, we asked you more than a month ago (on June, 2, 2022) to update your clients' responses to the RFAs given that the Court's April 22 Order flatly rejected the positions that your clients took in the RFA responses in the identical context of their responses to Plaintiff's interrogatories and RFPs.").

substantively to all remaining RFAs, in accordance with Rule 36(a)(4) and with the Court's prior rulings on general objections and the definitions of "Product" and "SNMP Research Software."

D.    Brocade RFPs 43 And 47

Brocade RFP 43 requests Brocade's financial statements, including but not limited to any balance sheets, income statements, or similar Documents, from October 1, 2017 to the present, and Brocade RFP 47 requests all of Brocade's financial documents reflecting its current assets, liabilities, and income. Defendants claim Brocade "no longer creates balance sheets or income statements because it is a subsidiary of a publicly traded parent company that files consolidated financial statements with the SEC. (Gleason Decl. ¶ 5)." Opp. at 22. However, Defendants never claim that Brocade asset and liability information is not contained within their general ledger. And while in response to this Motion they claim they do not know Brocade's assets and liabilities, in their personal jurisdiction supplement filed on July 22, 2022, they assert the following: "This is not a company that is undercapitalized." Dkt. 156 at 7. However, this statement is accompanied by a declaration that only discusses one year (2018) of asset/liability information. There is no discussion of Brocade's current assets and liabilities (or of years other than 2018), which is what was requested and ordered and which is essential to determining adequate capitalization.

That is why the Motion requested that if Defendants continue to assert that they do not have the requested and ordered asset and liability information, the Court should order Defendants to: (i) provide an affidavit from their person(s) most knowledgeable attesting to that assertion; and (ii) order that Defendants are precluded from arguing that Brocade is adequately capitalized until Brocade has made the required production and/or Defendants have provided the required affidavit(s) and Plaintiffs have had the opportunity to conduct follow-up discovery. Mot. at 2; *id.* at 19-20 ("When "a party fails to provide information . . . the party is not allowed to use that information . . . to supply evidence on a

motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." (quoting Fed. R. Civ. P. 37(c)(1) and also citing *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transport*, 596 F.3d 357, 370 (6th Cir. 2010) ("For exclusion of the evidence under Rule 37(c) . . . the sanction is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless.")). Defendants' Opposition ignores this authority and never disputes that this Court has the discretion to order the relief requested. This Court should therefore order it.

E.     Brocade Interrogatory 9

The products at issue in this case (which can cost hundreds of thousands of dollars each) require service, and customers pay for those services. *See, e.g.,* Dkt. 157 ¶¶ 69, 73, 94. Interrogatory 9 reads:

> Identify the revenues and costs of any other Products or services (including but not limited to installation or other services) that were sold with or as a result of the purchase of the Products Identified in response to Interrogatory numbers 1 and 2. Please delineate the aforementioned revenues and costs by Product or service name.

Dkt. 153-6. This Court directed Defendants to "fully respond" to this interrogatory. April 22 Order at 2. Defendants did not provide this information, and the arguments in Defendants' Opposition are meritless.

First, Defendants claim that "on a meet and confer call, Plaintiffs explained that they were seeking information about accessory items like power cords if they were sold with the alleged infringing products." Opp. at 23 (citing Plessman Decl. ¶ 18). Defendants then claim that because of this, Plaintiffs request for service revenue in Interrogatory 9 is a "new request for [] support revenue that was inconsistent with their prior representations on the parties' meet and confer call regarding the scope of Interrogatory 9." Opp. at 24. That is not at all what happened. Instead, when Defendants claimed they were confused about what Interrogatory 9 meant, Plaintiffs gave them the power cord

example as an illustration.[6]  Plaintiff never said that the illustration erased the word "service" from the request and from this Court's Order directing Defendants to respond "in full" to the request as written. Second, Defendants claim that "[a]t bottom, Plaintiffs are really complaining that Brocade has provided too much information rather than too little because it produced *all* global service and product revenue for the relevant time period."  Opp. at 25.  This is highly misleading.  Defendants are implying with this argument that Plaintiffs' can use the data provided to ascertain which of the "global" service revenue pertains to the at-issue products (as opposed to products not at issue in the case).  But this cannot be done because, as Plaintiffs explained, the "service" spreadsheets that Defendants provided are not each linked to the at-issue products.  That in turn means that Defendants have not answered Interrogatory 9 as to services associated with the at-issue products.  Defendants never argue or even attempt to show that they cannot provide this information.  They should be ordered <u>again</u> to provide it.  And as demonstrated in the following section, Defendants cannot refuse to answer an interrogatory on the basis that they do not have a document already created that they can produce in lieu of doing the analysis necessary to answer the interrogatory as posed.

      F.     <u>Defendants' Improper Refusal To Provide Information On The Basis That They Do Not "Track" It</u>

Section III.F of the moving brief demonstrated that Defendants responded to interrogatories by claiming that they do not "track" certain information, or do not "possess" it.  Defendants' Opposition just does more of the same.  Defendants continue to fail to provide the required certification that the

---

[6] Nearly a year ago in September 2021, Plaintiff sent an email summarizing one of the many meet and confer discussions of Interrogatory 9 for Defendants. *See* Dkt. 96-17 (email from Ms. Weber to Ms. Demers (counsel for Extreme) and Ms. Plessman (counsel for Broadcom Inc.)) ("Plaintiffs explained, as they have previously, that products and services might constitute products like a power cord sold with a switch, for example, or additional memory, and so the request seeks all the revenue and costs associated with those add-ons.").

information requested is not within Defendants' possession, custody or control, including the knowledge of "any officer or agent, who must furnish the information available to the party." Fed. R. Civ. Proc. 33(b)(1)(B); *see also Eitel*, 2022 WL 885043, at *8 (corporate parent must provide documents and information for a subsidiary that it owns or controls); *Milner v. Nat'l Sch. of Health Tech.*, 73 F.R.D. 628, 632–33 (E.D. Pa. 1977) (Defendants' proffered authority) ("Answers must be complete, explicit and responsive. If a party cannot furnish details, he should say so under oath, say why and set forth the efforts he used to obtain the information. He cannot plead ignorance to information that is from sources within his control. If a party is a corporation, information in the hands of its agents and others within its control must be supplied.").

Defendants cite *Milner* for the proposition that "a sworn answer indicating lack of knowledge and no means of obtaining knowledge is not objectionable." Opp. at 27. But "a sworn answer indicating . . . no means of obtaining knowledge" is precisely what is lacking from Defendants' responses and verifications. This would be problem enough if this were the first motion to compel as to these interrogatories, but it is not, as this Court already ordered Defendants to respond to them "fully and substantively." April 22 Order at 23.

Defendants also appear to assume that whenever they cannot find a document in their files that directly answers an interrogatory, Defendants are relieved from having to investigate further. But that is not the law. Instead, if a document exists that actually answers an interrogatory as posed, then a party can point to it (specifically) in its interrogatory response. *See Mullins v. Prudential Ins. Co. of Am.*, 267 F.R.D. 504, 514 (W.D. Ky. 2010) ("A party who seeks to rely upon [Rule 33(d)] must not only certify that the answer may be found in the records referenced by it, but also must specify where in the records the answers [can] be found.") (internal quotation marks omitted). But that does not mean that anytime such a document does not exist, the answering party's obligation to respond to the

11129810
2213494.10

interrogatory just evaporates, again, particularly so here given that this Court already ordered Defendants to respond "fully and substantively" to these interrogatories.

Consequently, Plaintiff respectfully requests that the Court order Brocade to fully and substantively respond to Plaintiff's Interrogatories 5-6, 9-10, and 21, and for Broadcom Inc. to fully and substantively respond to Plaintiff's Interrogatory 21.  In the event that Defendants cannot furnish details, they should state as such under oath, explain why, and detail the efforts used to attempt to obtain the information.

Respectfully submitted,


Dated:  August 10, 2022            By: /s/ *John L. Wood*
                                                     John L. Wood, Esq. (BPR #027642)
                                                     Cheryl G. Rice, Esq. (BPR #021145)
                                                     Rameen J. Nasrollahi, Esq. (BPR #033458)
                                                     EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
                                                     900 S. Gay Street, Suite 1400
                                                     P.O. Box 2047
                                                     Knoxville, TN 37902
                                                     (865) 546-0500 (phone)
                                                     (865) 525-5293 (facsimile)
                                                     jwood@emlaw.com
                                                     crice@emlaw.com
                                                     rnasrollahi@emlaw.com


                                         By: /s/ *A. Matthew Ashley*
                                                     A. Matthew Ashley (CA Bar. No. 198235)
                                                     Morgan Chu (CA Bar. No. 70446)
                                                     David Nimmer (CA Bar. No. 97170)
                                                     Olivia Weber (CA Bar. No. 319918)
                                                     IRELL & MANELLA LLP
                                                     1800 Avenue of the Stars, Suite 900
                                                     Los Angeles, California 90067-4276
                                                     (310) 277-1010 (phone)
                                                     (310) 203-7199 (facsimile)
                                                     mchu@irell.com
                                                     dnimmer@irell.com

mashley@irell.com

*Attorneys for Plaintiffs*
*SNMP Research International, Inc.*
*SNMP Research, Inc.*