# IN THE UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC.,** | § § § | **Case No. 3:20-cv-00451-CEA-DCP** |
| Plaintiffs, | § § | |
| v. | § § | **Jury Demand** |
| **BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; AND EXTREME NETWORKS, INC.,** | § § § § § | |
| Defendants. | § § | |

### SNMP RESEARCH, INC.'S AND SNMP RESEARCH INTERNATIONAL, INC.'S OPPOSITION TO EXTREME NETWORKS, INC.'S MOTION TO COMPEL MEDIATION

Plaintiffs SNMP Research, Inc. and SNMP Research International, Inc. ("SNMP Research" or "Plaintiffs") respectfully submit this Memorandum of Law in Opposition to Extreme Networks, Inc.'s ("Extreme") Motion to Compel Mediation, Dkt. 165-1, ("Motion" or "Mot.")

.

# TABLE OF CONTENTS

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | FACTS | | 2 |
| | A. | The Parties' Prior Mediation | 2 |
| | B. | The Parties' Discovery Motions | 3 |
| | | 1. Plaintiffs' Discovery Motions | 3 |
| | | 2. Extreme's Discovery Motion | 5 |
| III. | ARGUMENT | | 6 |
| | A. | The Motion Reveals that the Parties Are Far Apart With Respect to Damages. | 6 |
| | B. | Information on Additional Products with SNMP Research Software Has Not Been Produced. | 7 |
| IV. | CONCLUSION | | 8 |

I.      **INTRODUCTION**

Extreme says it "is aware that a motion to compel mediation is not a routine event." Mot. at 7. That is putting it mildly, particularly given that Extreme fails to disclose to the Court that Plaintiffs and Extreme have already mediated, using a mediator proposed by Extreme. Extreme also fails to disclose to the Court that Plaintiffs have never refused to further mediate with Extreme.

This is not the first time that Extreme has requested an "order" compelling mediation. At a May 2022 discovery hearing over Extreme's failure to produce source code in the manner required by this Court's Protective Order, Extreme's counsel made an oral request for an "order" compelling mediation. But like the Motion, Extreme's oral request came out of the blue. Extreme did not disclose to Magistrate Judge Poplin that the parties had already mediated. Extreme also did not disclose that it had never even mentioned to Plaintiffs a request to mediate again, much less had that request been refused. Instead, like it does here, Extreme used its May request for an "order" compelling mediation as an excuse to attack the merits of Plaintiffs' case, right after saying it wasn't getting into the merits (just as Extreme does in its Motion).[1]

So in addition to not being "routine," the Motion is not even what Extreme calls it. Indeed, if anything, all the Motion shows is that the parties are worlds apart on their view of the value of this case. Also, Extreme has failed to disclose the full list of its products that contain SNMP Research software and for the products it has disclosed it has failed to provide complete financial information. Because of Extreme's incomplete discovery and the parties' completely divergent views of value of the case, the Motion is premature and should be denied.

---

[1] *See, e.g.,* Dkt. at 23:11-20 ("And I'm not trying to persuade you that I'm right on that, but I can tell you that . . . ."); Mot. at 3 ("At this stage, Extreme is not trying to convince the Court to the contrary. But Extreme is observing for the Court that . . .").

## II. FACTS

### A. The Parties' Prior Mediation

On April 1, 2021, a little more than five months after the case was filed, Plaintiffs and Extreme had a mediation before Richard Chernick of JAMS (whom Extreme proposed as a mediator). Wood Decl. ¶ 2. No settlement was reached at the mediation. *Id.* ¶ 2. After the mediation, neither Extreme nor its counsel ever asked Plaintiffs to have a further mediation, either with Mr. Chernick or anyone else. *Id.* ¶ 3.

Over a year after the mediation, at a May 11, 2022 telephonic hearing over Extreme's failure to provide source code computers and a source code manifest in compliance with the Protective Order in this case (discussed more below), Extreme's counsel (Mr. Neukom) asked Magistrate Judge Poplin to "force" Extreme and Plaintiffs to mediate. Dkt. 144, at 24:2. In doing so, Extreme argued—much like it does in this Motion—that it believes Plaintiffs' case is not worth very much. *Id.* at 23:11-20. Extreme did not inform Magistrate Judge Poplin of the April 1, 2021 mediation, or the fact that Extreme had never even requested Plaintiffs to have a further mediation, with either Mr. Chernick or anyone else. Wood Decl. ¶¶ 3, 4. Plaintiffs were utterly blindsided by the request. Dkt. 144 at 24:16-19.

After the telephonic hearing, the parties agreed to discuss the topic of mediation on a call scheduled for Saturday, May 14, 2022. Mr. Neukom, who had asked Magistrate Judge Poplin to order mediation, did not participate in the call. Wood Decl. ¶ 5. During the call, counsel for Broadcom and Brocade (Ms. Plessman) indicated that, while Broadcom and Brocade would not refuse to participate in mediation if all other parties agreed, she had her doubts that the parties were in the right place for mediation. *Id.* ¶ 6. Plaintiffs' counsel (Mr. Wood) then asked Extreme whether anything had changed since the prior settlement discussions and also asked whether Extreme would provide a written settlement offer. *Id.* ¶ 7. Counsel for Extreme (Ms. Demers) stated that she would take that request

back to her client. *Id.* ¶ 8. Mr. Wood then stated he would take the mediation request back to his client, too. *Id.* Counsel for Plaintiffs (Ms. Weber) then asked if Extreme had a mediator it wanted to use, and Ms. Demers replied that Mr. Neukom had a "strong preference." *Id.* ¶ 9.

Plaintiffs discussed the mediation issue with their clients, but never heard back from Extreme on any of the mediation topics discussed on the May 14 call, including whether anything had changed from Extreme's standpoint since the last mediation, whether Extreme would provide a written settlement offer, or which mediator was the one whom Mr. Neukom strongly preferred. *Id.* ¶ 10. And, while Extreme writes in its Motion that "Extreme never heard back from SNMPR and the parties have not discussed mediation further," (Mot. at 6), Extreme never mentions that—as the party asking for mediation to occur—Extreme never raised the topic again after the parties' call or even reported back on the things that Extreme said it would take back to its client. *Id.* ¶ 10. This Motion was the next time Extreme mentioned mediation to Plaintiffs. *Id.* ¶ 11.

B.  The Parties' Discovery Motions

Much of Extreme's "Background" for its Motion mischaracterizes what has transpired in discovery in this case. The correct facts are set forth below.

1.  Plaintiffs' Discovery Motions

At the March 25, 2022 hearing on Plaintiffs' motions addressing Defendants' supplemental discovery responses, Magistrate Judge Poplin repeatedly stated that Defendants' approach to discovery had been "woefully inadequate." Dkt. 128 at 92:18-20, 97:1-2.[2] Moreover, given that time was quickly running out under the then-applicable Scheduling Order, Judge Poplin ordered the parties to simultaneously exchange their source code on April 22, 2022 (a compromise position Plaintiffs had offered Defendants over a year earlier). Dkt. 128 at 20:19-23, 170:20-23; *see also* Dkt. 124.

---

[2] The transcript says "willfully inadequate," but Plaintiffs believe the actual phrase used was "woefully inadequate."

Two issues quickly arose concerning the source code exchange with Extreme. Just prior to the April 22, 2022 source code inspection, Plaintiffs learned that Extreme would not have the source code ready for inspection on the source code computers. Extreme was attempting to use laptops without the required amount of space to which the parties had all agreed and which did not comply with the Agreed Protective Order (*i.e.*, at least 32GB of RAM and 200GB of free disk space, Dkt. 93 ¶ 26).[3] Plaintiffs attempted to conduct their review on April 22, but the non-compliant computers made it extremely inefficient. Wood Decl. ¶ 13. After multiple subsequent hearings and after Plaintiffs located compliant computers that were available for purchase in a store near Extreme, Extreme was ordered to provide those compliant computers as soon as it could purchase them and load its source code onto them (which Extreme represented was by the end of May). Dkt. 150 at 8:11-14. As a result, Plaintiffs' inspection of Extreme's source code—which was supposed to begin on April 22—was delayed by a month. Also, Extreme did not produce the manifests in the manner required by the Agreed Protective Order until the end of May after being ordered to do so by the Court.

On April 22, 2022, Magistrate Judge Poplin issued the remainder of her ruling on Plaintiffs' motions to compel (Dkt. 131). Among other things, Judge Poplin held that Defendants—including Extreme— "relied on general and boilerplate objections that this Circuit has repeatedly found to be insufficient under the Federal Rules of Civil Procedure." Dkt. 131 at 23. Judge Poplin further held that Defendants, including Extreme, refused to provide discovery on "obviously relevant" topics that were not unduly burdensome, and Defendants also disingenuously claimed that plain English terms and

---

[3] Extreme told Magistrate Judge Poplin multiple times in the briefing and argument over source code exchange that it had 12 terabytes of source code. Dkt. 144 ("Extreme explained to SNMP on multiple occasions that standard computers are not large enough to hold 12 terabytes of code."); 5/11/22 HT at 15:22-23 ("we're talking about 12 terabytes of data."). But, ultimately, Extreme only produced 7 terabytes. Wood Decl. ¶ 14. After repeatedly ignoring Plaintiffs' requests for an explanation for several weeks, Extreme finally stated its production "totaled roughly 7 terabytes of data" and that the 12 terabyte figure had only been an "estimate." *Id.* ¶ 14.

certain defined terms were "vague and ambiguous" when they clearly were not. *Id.* at 7, 11 ("Extreme's objections as to the 'plain' terms are without merit"), 14; *see also id.* at 8-9. After noting numerous other deficiencies with Defendants' discovery responses, Judge Poplin then held that "Defendants rely on general arguments concerning relevancy, overbreadth, proportionality, ambiguity of terms, and other unsubstantiated arguments, which has stagnated the discovery schedule and forced the Court to intervene," and that "[t]he discovery process in this case has been unduly arduous." *Id.* at 23.

Defendants served supplemental discovery responses on May 13, 2022 (but produced very few documents). There are numerous deficiencies in Defendants' (including Extreme's) supplemental responses, but Plaintiffs are still trying to work them out and will not go into them now, with the exception of one item below that is relevant to Extreme's attacks on Plaintiffs' copyright remedies.

    2.    <u>Extreme's Discovery Motion</u>

Broadcom and Brocade have not filed any motions to compel as to Plaintiffs' discovery responses. Extreme has filed one motion to compel that is currently pending (Dkts. 136–136-8, 143–143-5, 146–146-1), but Extreme mischaracterizes Plaintiffs' position on the singular issue in that motion, which is what to do with license agreements that are either extremely dated and/or that have disclosure restrictions in favor of nonparties. Extreme has sought production of all of Plaintiffs' licenses for Plaintiffs' entire three decade existence relating to the copyrighted works and any other software regarding networking technology. Plaintiffs have produced hundreds of licenses back to 1990 that do not have confidentiality requirements precluding their disclosure, and Plaintiffs have proposed that for all licenses that have disclosure prohibitions, the parties propose to the non-party licensees the ability to redact their names from the produced licenses. Extreme would not agree to this or any other compromise with respect to those licenses which prohibit disclosure, so the issue is now before Magistrate Judge Poplin.

As for Extreme's contention that there are supposedly other problems with Plaintiffs' discovery responses, Plaintiffs do not believe Extreme's positions are meritorious. Nevertheless, Plaintiffs have supplemented their discovery responses in order to avoid having to burden the Court with the issues. Wood Decl. ¶ 15.

## III. ARGUMENT

The first two pages of the Motion's "Background" section appears to be Extreme voicing its outrage over Magistrate Judge Poplin's discovery orders. However, as Judge Poplin noted, the difficulty in discovery in this case is due to Extreme's (and the other Defendants') own behavior. Dkt. 131 at 23. Moreover, if Extreme believed the discovery rulings were in error, it should have appealed them rather than using this Motion to attack them.

### A. The Motion Reveals that the Parties Are Far Apart With Respect to Damages.

The rest of the "Background" section is thinly disguised argument over damages. For instance, Extreme refers to certain "fees" in a license agreement to which Extreme is not even a party (and in the process does not even accurately set forth the full fees). Mot. at 5; *see* Wood Decl ¶ 16. Yet Extreme ignores the fact that it faces a profits disgorgement remedy under the copyright statute which is calculated by Extreme's infringing product and related goods/services revenues, not Plaintiffs' license agreement. 17 U.S.C. § 504(b) ("The copyright owner is entitled to recover . . . any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expense and the elements of profit attributable to factors other than the copyrighted work."). Based only on the financial records produced thus far, Extreme's revenues from infringing products is in the hundreds of

millions of dollars. The fact that Extreme continues to willfully infringe will only cause that disgorgement remedy to grow.[4]

      B.    <u>Information on Additional Products with SNMP Research Software Has Not Been Produced.</u>

Moreover, it has come to Plaintiffs' attention that Extreme has failed to identify additional products that contain Plaintiffs' copyrighted software (identified in Plaintiffs' discovery as "SNMP Research Software"). Plaintiffs confronted Extreme with this last month and, after dodging the issue for several weeks, Extreme finally admitted that it has failed to identify some products containing SNMP Research Software because Extreme now apparently contends it has a license (through a company it acquired called Enterasys) to use SNMP Research Software for those products. However, as Plaintiffs have informed Extreme, Magistrate Judge Poplin did not give Extreme the right to disregard what she ordered to be identified and produced based on Extreme's claim that it has a defense to infringement. Instead, Judge Poplin ordered that Extreme identify **all** of its products that contain SNMP Research Software, regardless of whether the products are identified in the complaint and without any carve-out for products for which Extreme may claim it has a defense against infringement, license or otherwise:

> Extreme argues that "SNMP Research Software" is an overbroad term, as it appears to seek discovery concerning software outside the alleged, asserted copyrighted works listed in the Complaint. <u>The Court disagrees that it is an overbroad term, as Plaintiff's discovery requests relate to Extreme's products—whether or not they are specifically identified in the Complaint—that Plaintiff alleges are improperly incorporating its</u>

---

[4] Extreme previously argued to Magistrate Judge Poplin that it did not know which of its products had Plaintiffs' software and it would be too burdensome to provide that information in discovery. Judge Poplin rightly rejected that argument, noting, among other things, that Extreme had no problem identifying products containing Plaintiffs' software during pre-suit discussions. Dkt. 131 at 9 ("Extreme appears to have little trouble in identifying specific products that contain SNMP Research Software"); *see also* Dkt. 157-16 (pre-suit identification by Extreme). Once Extreme produced its source code for the products identified in the complaint, it became abundantly clear why Extreme previously had no problem identifying the products—the source code Extreme produced has SNMP Research's copyright notice in it. Wood. Decl. ¶ 17 & Ex. A at 2 (*see* bracketed text).

> software. This goes to the heart of Plaintiff's copyright infringement claim. . . . Extreme appears to have little trouble in identifying specific products that contain SNMP Research Software, and Extreme has not established undue burden on any other grounds. Therefore, the Court finds that "SNMP Research Software" is not an inherently ambiguous term, and Extreme's objections are overruled. <u>Extreme must fully respond to Plaintiff's Category 3 requests to the extent the requests seek information, documents, and admissions related to Extreme's products and product lines that use SNMP Research Software</u>.

Dkt. 131 at 9 (emphasis added); *see also id.* at 11, 13. In the face of this crystal-clear language, when Plaintiffs asked Extreme to identify <u>all</u> products and product lines that use SNMP Research Software, Extreme's position was that it does not have to because it claims a "license" (through Enterasys) to use the software in some products and because the Complaint does not identify those products by name. Although Plaintiffs are still meeting and conferring with Extreme on this issue, it may soon be the subject of another discovery dispute, this time for refusal to comply with the April 22, 2022 Order. But suffice it to say here that the scope of Extreme's revenues at stake for disgorgement could be **<u>multiples</u>** above the hundreds of millions of dollars in revenues that Extreme's deficient production to date evidences.

Plaintiffs note all of this regarding profits disgorgement not because the Court should or even could render a decision on that issue at this stage of the case, but because it puts in proper perspective Extreme's substantive attacks in its Motion under the guise of moving to "compel mediation." Moreover, if Extreme were truly interested in mediating effectively, it would immediately produce information showing the full scope of its sale/distribution of **<u>all</u>** products containing SNMP Research Software rather than continuing to refuse to produce that information, which is pivotal to any possibility of settlement.

## IV. <u>CONCLUSION</u>

Plaintiffs are not averse to mediating this case, which is why they mediated once already with Extreme. But Extreme seems less interested in mediating than in trying to unfairly tar Plaintiffs' case. That is both counter-productive to settlement and a waste of party and judicial resources. Moreover,

Extreme has provided incomplete discovery which is necessary to provide before settlement negotiations can be meaningful and successful. Extreme's motion also shows that Plaintiffs and Extreme remain far apart on both the theory of damages and the magnitude of the value of the case. For these reasons, Extreme's motion should be denied.

Respectfully submitted,

Dated: August 10, 2022

By: /s/ *John L. Wood*
John L. Wood, Esq. (BPR #027642)
Cheryl G. Rice, Esq. (BPR #021145)
Rameen J. Nasrollahi, Esq. (BPR #033458)
EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
900 S. Gay Street, Suite 1400
P.O. Box 2047
Knoxville, TN 37902
(865) 546-0500 (phone)
(865) 525-5293 (facsimile)
jwood@emlaw.com
crice@emlaw.com
rnasrollahi@emlaw.com


By: /s/ *A. Matthew Ashley*
A. Matthew Ashley (CA Bar. No. 198235)
Morgan Chu (CA Bar. No. 70446)
David Nimmer (CA Bar. No. 97170)
Olivia L. Weber (CA Bar. No. 319918)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
(310) 277-1010 (phone)
(310) 203-7199 (facsimile)
mchu@irell.com
dnimmer@irell.com
mashley@irell.com
oweber@irell.com

*Attorneys for Plaintiffs
SNMP Research International, Inc. and
SNMP Research, Inc.*