IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TENNESSEE

```
----------------------------------------------------------- x
                                                            :
SNMP RESEARCH, INC. and SNMP                                :   Case No. 3:20-cv-00451-CEA
RESEARCH INTERNATIONAL, INC.,                               :
                                                            :   U.S. District Judge Charles E. Atchley, Jr.
                        Plaintiffs,                         :
                                                            :
            v.                                              :
                                                            :
BROADCOM INC.; BROCADE                                      :
COMMUNICATIONS SYSTEMS LLC; and                             :
EXTREME NETWORKS, INC.,                                     :
                                                            :
                        Defendants.                         :
                                                            :
----------------------------------------------------------- X
```

### EXTREME NETWORKS, INC.'S REPLY IN SUPPORT OF ITS
### MOTION TO COMPEL MEDIATION

Extreme Networks, Inc. ("Extreme") respectfully submits this reply in support of its Motion to Compel Mediation ("Motion") (ECF No. 164) between Extreme and the named plaintiffs ("SNMPR"), and in response to SNMPR's opposition thereto ("Opposition" or "Opp.") (ECF No. 194).

**I.      INTRODUCTION**

In moving to compel mediation, Extreme is asking the Court to exercise its authority to force the parties to pursue settlement in a context in which (i) the Court is not listening, and (ii) a third-party expert in alternative dispute resolution is listening, and is present to oversee and guide the process. In doing so, Extreme's opening brief in support of its Motion (ECF No. 166) included no vitriol or name-calling—not against SNMPR nor its counsel. Instead, Extreme has noted the facts that (i) discovery against Extreme has become increasingly (if not abnormally) expensive, including data exchanges that must be measured in terabytes and cannot be measured

in pages, and (ii) such expenses appear to dwarf the amount-at-stake for SNMPR's claim against Extreme, if judged by the small amounts of money SNMPR appears to have collected from hundreds of third parties for the very same intellectual property at-issue here.

In its Opposition, SNMPR does not actually take the position that it is opposed to mediation. (*See* Opp. at 8 ("Plaintiffs are not averse to mediating this case . . . .").) In fact, SNMPR never responded directly to Extreme's request for relief—that the Court order mediation to occur before a neutral third-party mediator (i) on a mutually-agreeable date within three weeks after the Court enters its ruling on Extreme's pending Motion to Compel the Production of License Agreements from SNMPR (ECF No. 136), and (ii) if that timing is not possible based on mediator availability, then as soon thereafter as practicable.

Instead, SNMPR's Opposition appears to be focused on making accusations against Extreme and its outside counsel. That accusatory habit does not weigh against compelled mediation. If anything, Extreme hopes that the Court's review of the substance and tone of SNMPR's Opposition helps explain ***why*** Extreme felt the need to file a (relatively novel) motion asking the Court to force the parties to retain and pay for a hired-gun mediator. Extreme and SNMPR need a proverbial "adult in the room"—other than the Court—who can brush aside counsel accusations and speak truths (even if harsh, on either side) to the principals.

Other than making accusations against Extreme and its counsel, SNMPR's Opposition includes a handful of arguments that are not persuasive. For example, SNMPR claims that mediation may be premature because (i) Extreme must provide more discovery, and (ii) the parties' damages positions do not align. (*See* Opp. at 8-9.) And yet: Extreme has already produced a huge amount of discovery in this case. (*See* ECF No. 166 at 2; ECF No. 166-1 at ¶ 2.) Plus, of course, one benefit of a successful mediation is to resolve a case before subjecting

2

the Court, the jurors, and the parties to a full-scale, multi-, multi-year litigation. Further, even assuming *arguendo* that the parties' private damages assessments do not align, one of the benefits of a skilled mediator is to reduce if not eliminate that very dynamic.

## II. ARGUMENT

### A. Routine *Ad Hominem* Attacks on Individual Counsel Are Not Productive and Support the Need to Compel Mediation

SNMPR's Opposition includes many accusations directed at Extreme and its counsel. For example, SNMPR calls out Defendants' attorneys by name (*see* Opp. at 2-3) and accuses Extreme of "mischaracterize[ing]" the facts (*id.* at 3-4), acting "disingenuously" (*id.* at 4), launching "substantive attacks in its Motion under the guise of moving to 'compel mediation'" (*id.* at 8), "unfairly tar[ring] Plaintiffs' case" (*id.*), "dodging" issues (*id.* at 7), and somehow "voicing its outrage" over discovery rulings (*id.* at 6).

While those accusations are not fair or accurate,[1] it is worth noting that SNMPR's Opposition is representative of behavior that has now become quite regular for this case. For example, in written filings, SNMPR has taken the following (untrue) positions:

- At least four times, SNMPR has accused Extreme of "misconduct" (ECF No. 60-1 at 2, 24; ECF No. 65 at 1; ECF No. 70-1 at 1);

- On February 15, 2021, SNMPR accused Extreme of "purposeful delay" and "feign[ing] confusion" (ECF No. 60-1 at 2, 21);

---

[1] Extreme has little interest in climbing into a sandbox with SNMPR on these accusations, which have no bearing on the present motion to compel mediation. Nevertheless, Extreme addresses certain of these accusations in the accompanying declaration filed in support of this reply. (*See, e.g.*, Demers Declaration at ¶¶ 6-7 (pointing out that, despite SNMPR's accusation that Extreme produced "very few documents" in its May 13, 2022 production, that production actually included over 685,000 pages of documents and approached 40,000 documents in total, as compared to SNMPR's total production to date of approximately 31,000 pages and 5,000 documents).)

3

- On May 19, 2021, SNMPR accused Extreme (and its co-defendants) of taking a "distract, dodge, defer" approach to litigation and "ignor[ing] their legal obligations based on their own *ipse dixit*" (ECF No. 70-1 at 5-6);

- On October 4, 2021, SNMPR stated that "Extreme does not want to reach a resolution and instead prefers to delay and avoid production" (ECF No. 101 at 1); and

- On August 10, 2022, SNMPR accused Extreme of "mak[ing] misleading arguments" (ECF No. 190 at 2, n.1).

Aside from SNMPR's written accusations over the life of this case, the same has occurred during live hearings before Magistrate Judge Poplin. During an in-person hearing on March 25, 2022, SNMPR's counsel claimed Extreme was trying to employ a "trick" (ECF No. 128 at 29:8-18), "create ambiguity" (*id.* at 35:11-18), and engage in "game playing" (*id.* at 46:15-19). The conduct at that hearing become bad enough that the undersigned counsel asked on the record for counsel for all parties to be mindful of the mud-slinging and name-calling. (*See id.* at 168:6-169:7.) Unfortunately, that does not seem to have changed any tendencies to make accusations against counsel. On a telephonic hearing on May 11, 2022, SNMPR's counsel once again chose to make accusations of unprofessional conduct, claiming incorrectly that Extreme made "multiple misrepresentations" to the Court. (ECF No. 144 at 25:8-10.)

To be frank, this accusatory history is part of the reason why Extreme chose to ask this Court to compel mediation. In turn, Extreme hopes the Court recognizes that this kind of accusatory rhetoric is not productive and in fact ***supports*** Extreme's Motion. The parties and their counsel need help from a third party, not more accusations of misconduct made against counsel of record, and Extreme is hopeful that being put in front of a mediator may provide a productive path forward.

### B. The Parties' Prior Mediation is Not Relevant to Extreme's Motion

SNMPR suggests that Extreme is purposefully trying to hide the parties' prior mediation from the Court. That is an odd position. There is nothing unethical, misleading, or problematic about Extreme not having told the Court about a remote, half-day mediation session that occurred over 16 months ago. Moreover, Extreme and SNMPR signed a confidentiality agreement in connection with those settlement discussions pursuant to Rule 408 of the Federal Rules of Evidence. SNMPR has even relied on that confidentiality agreement when refusing to produce documents to Brocade Communications Systems Inc. ("Brocade"), and has done so without identifying that agreement by name for Brocade.[2] In light of that history from SNMPR, Extreme is surprised to see SNMPR fault it for not publicly disclosing information concerning their previous mediation in a public filing.

Indeed, simply because the parties attempted a private, confidential, remote, half-day mediation 16 months ago does not mean they should not try again (and be forced to do so by Order of this Court, if necessary). The parties and this litigation are in a different place now than they were then. The parties are now, collectively, over a million pages into document discovery and, perhaps more importantly, Extreme has now reviewed a subset of SNMPR's licensing history. In any event, it is not uncommon for settlement discussions to span more than one, half-day session and successfully resolve disputes.

To the extent that SNMPR wants this Court to know about the half-day mediation session 16 months ago, as a basis to infer that a court-ordered mediation now would be futile, Extreme

---

[2] (*See* ECF No. 177-2 at Supplemental Responses to Request Nos. 18, 20, 21, 22, 51, 52, 62, 63, 64, 112, 126, 135 ("Plaintiff . . . objects to this Request because it calls for production of materials protected by an agreement that requires Extreme's consent for the production of the documents (withholding [documents]).").)

5

disagrees. While Extreme will respect the confidentiality of the prior mediation session, from Extreme's perspective, that session facilitated meaningful conversations. In fact, it was productive enough that the parties continued to discuss settlement topics for a period of time thereafter. However, to the best of Extreme's counsel's memory, there have not been any such settlement discussions for a year or more. During that time, (i) SNMPR has furthered a habit of making unproductive accusations against Extreme, and (ii) the line of settlement communications has gone silent. That this is the state of affairs today is in part why Extreme is requesting compelled mediation at this time.

### C. SNMPR is Incorrect to Treat This Case as Being Ripe For Mediation Only When Ready For Trial

SNMPR suggests that settlement negotiations can be successful only when discovery is closed. (*See* Opp. at 1, 8-9.) If that position were to stand, however, it would defeat the substantial possible benefits of alternative dispute resolution. Parties can and frequently do settle cases before the close of discovery—and one benefit of a mediated resolution is to help the parties avoid the costs of such litigation proceedings.

SNMPR's "Argument" section sets forth two specific points for why this case is not ripe for mediation: (1) that, based primarily on the revenues produced by Extreme and ignoring cost information also produced by Extreme, the parties are "far apart" with respect to damages; and (2) because Extreme has not identified additional products that are licensed to it through a separate agreement not at issue in this case. (Opp. at 6-8.) Extreme does not agree that these issues should bar mediation at this time—not only in light of what has been revealed throughout discovery with respect to SNMPR's licensing history, but also because Extreme is hopeful that by putting this case in front of a neutral, third party mediator, any potential gaps in the parties'

6

view of the case will begin to close such that they may reach a resolution (or, at minimum, a narrowing of the issues).

Additionally, SNMPR's claim that Extreme purportedly "failed to identify additional products that contain Plaintiffs' copyrighted software" (Opp. at 7) should not form a basis for denying Extreme's Motion. First and foremost, to be abundantly clear, Extreme did ***not*** acquire these products as part of the transaction that is the subject of this case, and in any event, these products fall under a separate license agreement with SNMPR. Furthermore, despite SNMPR's suggestions to the contrary (*see id.*), Extreme has not been trying to hide the existence of these products from SNMPR. (*See* Demers Declaration at ¶¶ 2-5.) To the contrary, Extreme had been asking to schedule a meet and confer to discuss this dispute for almost a month before SNMPR responded. Not to mention: The Extreme products that SNMPR cites to as a reason to delay mediation are not even included in SNMPR's complaint. Therefore, even though Extreme does not see how this information is relevant to its Motion, Extreme is hopeful that the parties can resolve this issue outside of court and in the near term.

### III. A NOTE ON THE REQUESTED RELIEF

Given that SNMPR in its Opposition has continued a practice of making accusations against counsel—accusations that are neither fair nor productive—Extreme asks the Court to consider two adjustments to Extreme's requested form of relief. Specifically, Extreme asks that if the Court orders the parties to attend mediation, it also specify that such mediation (i) occur in person, and (ii) include principals from the respective clients with decision-making authority for settlement purposes. Extreme hopes that such adjustments may increase the chance of a productive mediation session, and lessen whatever motivations may linger for counsel to insert unproductive accusations into the process.

## IV. **CONCLUSION**

For all of the foregoing reasons, and those stated in Extreme's opening brief, Extreme respectfully requests that this Court grant its Motion and compel mediation between Extreme and SNMPR. Extreme reiterates its request that the Court order mediation to occur before a neutral third-party mediator (i) on a mutually-agreeable date within three weeks after the Court enters its ruling on Extreme's pending Motion to Compel the Production of License Agreements from SNMPR, and (ii) if that timing is not possible based on mediator availability, then as soon thereafter as practicable, and furthermore as indicated in the preceding section that (iii) such mediation occur in person, and (iv) be attended by principal(s) from the clients who have decision-making authority for settlement purposes.

| | | |
|---|---|---|
| DATED: | August 17, 2022<br>New York, New York | Respectfully Submitted,<br><br>*/s/ Leslie A. Demers*<br><br>John M. Neukom (*admitted pro hac vice*)<br>DEBEVOISE & PLIMPTON LLP<br>650 California Street<br>San Francisco, California 94108<br>jneukom@debevoise.com<br>(415) 738-5700<br><br>Leslie A. Demers (*admitted pro hac vice*)<br>SKADDEN, ARPS, SLATE,<br> MEAGHER & FLOM LLP<br>One Manhattan West<br>New York, New York 10001<br>leslie.demers@skadden.com<br>(212) 735-3000<br><br>*Attorneys for Extreme Networks, Inc.* |