# IN THE UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., | § § § § § | Case No. 3:20-cv-00451 |
| Plaintiffs, | | |
| v. | § § | **Jury Demand** |
| BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; AND EXTREME NETWORKS, INC. | § § § § § | |
| Defendants. | § § § | |

## PLAINTIFFS SNMP RESEARCH, INC.'S AND SNMP RESEARCH INTERNATIONAL, INC.'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

Come now the Plaintiffs, SNMP Research, Inc. ("SNMP Research") and SNMP Research International, Inc. ("SNMP International") (collectively, "Plaintiffs"), by and through counsel, and pursuant to Federal Rule of Civil Procedure 15(a), Local Rule 15.1 of this Court, and this Court's Second Amended Scheduling Order (Dkt. 149), move for leave to amend the Complaint ("Motion").

## I. INTRODUCTION

Plaintiffs seek leave to amend the Complaint (Dkt. 1) to add additional claims for breach of contract and for fraud against defendant Extreme Networks, Inc. ("Extreme"). The proposed amended complaint (herein, "Amended Complaint") is attached hereto as Exhibit 1 (clean) and Exhibit 2 (redlined against the Complaint). Under the Scheduling Order (Dkt. 149), the deadline for seeking amendment of pleadings is March 8, 2023. This Motion is thus timely.

Plaintiffs first learned of the basis for the proposed new claims within the last few months. Plaintiffs have not previously amended their Complaint. No answers have been filed, and no depositions have been scheduled or taken. Defendants will suffer no prejudice from the amendment. Indeed, the Complaint's copyright claim against Extreme (including the copyright registration certificates identified in Table 1 of the Complaint) already encompasses the products at issue in the proposed Amended Complaint, because those products unlawfully contain copies of Plaintiffs' copyrighted works already listed in Table 1. Under these circumstances, amendment is appropriate.

Plaintiffs are aware of the Court's order on mediation and intend to participate in that mediation (which is scheduled to begin on January 19, 2023) in good faith. However, given upcoming deadlines—including the deadline to amend pleadings—Plaintiffs bring this Motion now to be as prompt as possible.

The Motion should be granted.

## II. FACTS

The Complaint in this action is for breach of contract against Brocade and for copyright infringement against all Defendants. The Complaint, as well as the proposed Amended Complaint, are centered on Defendants' actions with respect to Plaintiffs' software implementation of the Simple Network Management Protocol from which Plaintiffs take their name. The copyrighted works at issue in both the Complaint and the proposed Amended Complaint are set forth in Table 1 of the Complaint.

The proposed new breach of contract claim alleges that Extreme breached an October 22, 2001 license agreement with plaintiff SNMP Research International (herein, the "2001 Extreme License") by: a) failing to report and pay royalties; b) using and redistributing Plaintiffs' software beyond the scope of the use and redistribution rights granted by the 2001 Extreme License; c) using and redistributing Plaintiffs' software after Extreme's right to do so was terminated under the 2001 Extreme License; d) failing to satisfy its obligations with respect to use, copying, transference, protection, and security of the Program Source[1] provided to Extreme under the 2001 Extreme License; e) failing to provide information that Extreme was required to provide under the 2001 Extreme License; f) failing to maintain SNMP Research's copyright notice in the software; g) failing to give required notice in supporting documentation that copying and distribution is by permission of SNMP International; and h) failing to return or provide certification of the destruction of Program Source provided under the 2001 Extreme License. *See* Exhibit 1, ¶¶ 68-86. The use and redistribution of Plaintiffs' software beyond the scope of use and redistribution rights and after such rights were terminated also constitute copyright infringement. *Id.* ¶¶ 75-76.

The proposed new fraud claim against Extreme alleges that Extreme's royalty reports were false because those royalty reports reported royalties only on a single product, yet Extreme has now admitted that it was actually using Plaintiffs' software it had obtained under the 2001 Extreme License for scores of other products. *See* Exhibit 1, ¶¶ 87-99. Extreme also made misrepresentations in email communications with SNMP Research International. *Id.* ¶¶ 94, 96, 99, 149.

Plaintiffs discovered Extreme's breach of contract and fraud through discovery in this case. As

---

[1] Under the 2001 Extreme License: "'Source' refers to both the source code and any and all associated developer documentation in human-readable or machine-readable media which are components of versions of NETMON, associated applications, and libraries." Under the 2001 Extreme License: "Program" refers to "versions of NETMON, associated applications, and libraries which are implementations based on the Simple Network Management Protocol . . ." *See* Exhibit 1 and Exhibit C thereto at p. 1.

pled in the proposed Amended Complaint, prior to this lawsuit, Extreme represented that it only sold one product under the 2001 Extreme License. This made sense to Plaintiffs because the 2001 Extreme License only provides use and redistribution rights as to "a single product." *Id.* ¶¶ 70-71. Extreme was ordered by Magistrate Judge Poplin to identify *all* of its products that contain Plaintiffs' software. Dkt. 131 at 7-9, 11 (ordering Extreme to "fully respond" to Interrogatories 1-2, and ruling that "Plaintiff's discovery requests relate to Extreme's products—whether or not they are specifically identified in the Complaint—that Plaintiff alleges are improperly incorporating its software. This goes to the heart of Plaintiff's copyright infringement claim."). Despite this order, Extreme indicated in its written discovery responses that it was refusing to disclose products that it sold (and apparently was still selling) containing Plaintiffs' software on the purported ground that Extreme had a "license" to do so. *See* Exhibit 1, ¶¶ 87-90. Given Extreme's prior express representations to the contrary (including in royalty reports and emails from Extreme to SNMP Research International), Extreme's discovery response aroused Plaintiffs' suspicion in mid-2022. Plaintiffs ordered a few of Extreme's non Brocade-line of products (at a cost to Plaintiffs of thousands of dollars) and found Plaintiffs' software in the products, including Plaintiffs' copyright notice. When Plaintiffs confronted Extreme with this, Extreme first claimed it had a "license" to sell these products that it had obtained when it acquired a company called Enterasys Networks, Inc. ("Enterasys"). *See* Exhibit 1, ¶¶ 91-92. When Plaintiffs confronted Extreme with Extreme's pre-suit representation to Plaintiffs that the Enterasys-licensed products went "end of sale" in 2011, Extreme changed its story and claimed to be selling products pursuant to the 2001 Extreme License instead. SNMP International sent Extreme a notice of breach of the 2001 Extreme License on September 19, 2022. *Id.* ¶¶ 80, 93. SNMP International then gave Extreme time to cure (under both the five day and thirty day cure provisions provided in the 2001 Extreme License). *Id.* ¶ 81. Extreme did not cure within either the five-day or the thirty-day period. *Id.* ¶ 82.

Instead, on October 19, 2022, Extreme disclosed, for the first time, that it was selling products under the 2001 Extreme License. *Id.* ¶ 72. Extreme identified more than 40 "product classes" (Extreme's phrase) that contained Plaintiffs' software that Extreme had obtained under the 2001 Extreme License but had never reported or paid royalties on.

The day after Extreme made this disclosure, Plaintiffs sent Extreme a letter that, *inter alia*, terminated Extreme's internal use and redistribution rights under the 2001 Extreme License, to the extent those internal use and redistribution rights were not already terminated pursuant to the express terms of the agreement. *Id.* ¶ 84.

In addition, at Extreme's request, Dr. Jeffrey Case (who owns and runs Plaintiffs) met with several members of Extreme's management on November 1, 2022 (the first day Extreme said it was available to have the meeting it had requested) in an attempt to resolve the dispute. *Id.* ¶¶ 83, 85. The dispute was not resolved. *Id.* ¶ 85. Plaintiffs therefore filed this Motion.

## III. ARGUMENT

As this Court has recognized, the Sixth Circuit approach to amendment of pleadings is one of "manifest liberality," and absent a showing by Defendants of "significant prejudice" from the proposed amendment, a court is required to permit leave to amend. *See Swift Enterps. v. Trunworth Warranty Plans of N. Am., LLC*, Case No. 1:21-cv-146-CEA, 2022 WL 989397, *4 (E.D. Tenn. Jan. 25, 2022) (quoting *Moore v. City of Paducah*, 790 F.2d 557, 561 (6th Cir. 1986); *see also PFS HR Sols., LLC v. Black Wolf Consulting, Inc.*, Case No. 1:17-cv-277-JRG-SKL, 2018 WL 5263031, *1 (E.D. Tenn. June 28, 2018) ("[T]he Sixth Circuit has expressed a strong preference in favor of granting leave to amend."); Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). Here, there is no prejudice to any Defendant from the proposed amendment, much less "significant prejudice." As set forth above, Plaintiffs' request is being made well within the time period permitted under the Court's Scheduling Order which is a schedule that all Parties proposed to the Court. Dkt.

10420
2267234

4

149, ¶ 2(a) ("If any party wishes to join one or more additional parties or amend its pleadings, a motion for joinder or for leave to amend shall be filed on or before **March 8, 2023**").  Because this motion is being timely made under this Court's Scheduling Order and Defendants cannot show "significant prejudice" (or any prejudice at all for that matter), this Motion should be granted.

Some courts consider additional factors in deciding a motion for leave, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, and futility of amendment.  *PFS HR Solutions*, 2018 WL 5263031, at *1.  There was no undue delay here.  As the proposed Amended Complaint states, Plaintiffs did not learn of the basis for the breach and fraud claims until very recently during discovery in this action.  *See* Exhibit 1, ¶¶ 88-96; *see also Tucker v. Union of Needletrades*, 407 F.3d 784, 788 (6th Cir. 2005) ("And if a plaintiff decides to advance a new claim as a result of such discovery, liberal amendment of the complaint is provided for by Rule 15(a).").  There is also no bad faith or dilatory motive:  Plaintiffs simply seek to assert claims for Extreme's admitted breaches, as well as its multiple misrepresentations made to Plaintiffs.  There have been no prior amendments, so there has been no failure to cure prior deficiencies.  There is also no futility of amendment—the breach of contract and fraud claims are straightforward and properly pled.  Moreover, as this Court has recognized, "[s]everal courts have wisely declined to engage in a futility analysis at the motion to amend phase."  *Swift*, 2022 WL 989397, at *4 (quoting *Christison v. Biogen Idec Inc.*, No. 2:11-CV-01140-DN-DBP, 2016 WL 354262, at *4 (D. Utah June 23, 2016 (collecting cases)); *see also PFS HR Sols.*, 2018 WL 5263031, at *3 ("[T]he most practical and efficient course of action is to defer ruling on Defendants' challenges to the sufficiency of the proposed pleading, allow the amendment, and consider any *Iqbal* and *Twombly* argument in the context of a motion to dismiss . . .").  Consequently, if Extreme challenges this Motion on purported futility grounds, that issue should be reserved for after leave to amend is granted.

Finally, none of the proposed amendments concern any of the issues raised by the Defendants

in their motions to dismiss the Complaint.  The only issues Defendants raised in their motions to dismiss were:  (1) jurisdiction and venue challenges (which were rejected in Dkt. 205); (2) a contention that Plaintiffs' copyright registrations are invalid under 17 US.C. § 411(b)(1); and (3) a "preemption" argument that Brocade made as to the breach of contract claim against it.  Consequently, while Extreme can challenge the new claims on a motion to dismiss, Defendants should not be permitted to raise new challenges to the claims in the Amended Complaint that were already in the Complaint.  *See* Fed. R. Civ. P. 12(g)(2) ("[A] party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.").

## IV.     CONCLUSION

For all of the foregoing reasons, the Court should grant Plaintiffs' Motion..

Respectfully submitted,

Dated:  December 2, 2022			By: /s/ *John L. Wood*
				John L. Wood, Esq. (BPR #027642)
				Cheryl G. Rice, Esq. (BPR #021145)
				Rameen J. Nasrollahi, Esq. (BPR #033458)
				EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
				900 S. Gay Street, Suite 1400
				P.O. Box 2047
				Knoxville, TN 37902
				(865) 546-0500 (phone)
				(865) 525-5293 (facsimile)
				jwood@emlaw.com
				crice@emlaw.com
				rnasrollahi@emlaw.com

Dated:  December 2, 2022			By: /s/ *A. Matthew Ashley*
				A. Matthew Ashley (CA Bar. No. 198235)
				Morgan Chu (CA Bar. No. 70446)
				David Nimmer (CA Bar. No. 97170)
				Olivia Weber (CA Bar. No. 319918)

2267234

IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
(310) 277-1010 (phone)
(310) 203-7199 (facsimile)
mchu@irell.com
dnimmer@irell.com
mashley@irell.com
oweber@irell.com

*Attorneys for Plaintiffs*
*SNMP Research International, Inc.*
*SNMP Research, Inc.*