IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., <br><br> Plaintiffs, <br><br> v. <br><br> BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; and EXTREME NETWORKS, INC., <br><br> Defendants. | Case No. 3:20-cv-00451-CEA-DCP |

### EXTREME NETWORKS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR LIMITED RECONSIDERATION AND TO MODIFY A SINGLE SENTENCE OF THE DECEMBER 22, 2022 ORDER REGARDING DISCOVERY

Pursuant to this Court's inherent authority to modify its interlocutory orders, Extreme Networks, Inc. ("Extreme") respectfully requests that the Court reconsider and modify a single phrase of the Order dated December 22, 2022 (ECF No. 229, the "December Order").

To be clear, Extreme is **not** asking for any relief from the immediate consequences of the Court's decision on the parties' discovery dispute; Extreme will be producing the information-at-issue in the Court's December Order without further dispute. In addition to ordering further information sharing, however, the December Order also rules that "the Court has previously ordered Extreme to produce . . . information" relating to "unidentified products" in an Order dated April 22, 2022 (ECF No. 131, the "April Order"). (ECF No. 229 at 2.) This specific portion of the December Order rests on a clearly erroneous interpretation of the April Order and (but-for

correction) threatens Extreme with follow-on consequences that Extreme does not believe the Court intended.

As set forth in further detail below, Extreme respectfully requests that the Court reconsider and modify the December Order in a manner that removes the portion of the ruling holding that "the Court has previously ordered Extreme to produce . . . information" relating to "unidentified products" in the April Order. (ECF No. 229 at 2.) Extreme does not seek reconsideration of any other portion of the December Order, *i.e.*, it does not challenge the Court-ordered production of documents on or before January 9, 2023.

## I. INTRODUCTION

When the Court granted Extreme's Motion to Compel Mediation (ECF No. 164), Extreme understood it to direct the parties to stop the *ad hominem* attacks and begin to "meaningfully negotiate their disputes in a more cooperatively-focused forum, without the specter of additional motion practice." (ECF No. 205 at 45.) Extreme has made every effort to comply with this directive in advance of the mediation scheduled to begin on January 19, 2023, and continues to focus its efforts on preparing for mediation. Unfortunately, and notwithstanding the Court's guidance, Extreme has been faced with various motions and new discovery requests in the months since mediation was ordered—including a motion to compel additional responses to **116 discovery requests**, and a motion to amend the pleadings and significantly expand the scope of this case—necessitating this motion by Extreme in order to preserve its rights in the event that mediation is unsuccessful.

SNMP Research, Inc. and SNMP Research International, Inc. (collectively, "Plaintiffs") brought the present copyright infringement claim against Extreme and set the bounds on a specifically-pled case: As alleged in the operative pleading, Plaintiffs provided software to co-

2

Case 3:20-cv-00451-CEA-DCP   Document 232-1   Filed 01/05/23   Page 2 of 8   PageID #: 12059

defendant Brocade Communications Systems LLC ("Brocade") for use in data center products pursuant to a license agreement (*see, e.g.*, ECF No. 3-1 at ¶¶ 7, 8, 34-36, 41, 47, 69); Extreme acquired the data center products from Brocade in 2017 and did not acquire rights under the Brocade license (*see, e.g.*, *id.* at ¶¶ 42-47, 65, 71, 87, 96); and Extreme's subsequent sales of the Brocade-acquired data center products supposedly constitute copyright infringement (*see, e.g.*, *id.* at ¶¶ 16, 48, 50, 88, 91, 97, 99). The operative pleading does not disclose that Extreme and Plaintiffs have a corporate history, separate and apart from Brocade, dating back more than two decades and including license agreements under which Plaintiffs provided software for use in Extreme's non-Brocade-acquired products.

Despite that this pleading alleged that only the Brocade-acquired products improperly incorporated Plaintiffs' asserted copyrighted works, Plaintiffs sought and received through the instant December Order a ruling that effectively finds that two decades' worth of information pertaining to nearly 50 or more additional, unidentified Extreme products was found to be discoverable in the April Order. Yet the December Order is based on a clearly erroneous interpretation of the language of the April Order, and constitutes a manifest injustice for Extreme. Accordingly, Extreme seeks a reconsideration and modification of the December Order that removes the erroneous holding regarding the breadth of the April Order.

## II. LEGAL STANDARD FOR RECONSIDERATION OF INTERLOCUTORY ORDERS

In the Sixth Circuit, "[d]istrict courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment. A district court may modify, or even rescind, such interlocutory orders." *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) (citations omitted). "Generally, reconsideration of an interlocutory order is appropriate when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a

3

need to correct a clear error or prevent manifest injustice." *Young v. Olympus Am., Inc.*, No. 07-2547-STA, 2011 WL 13272344, at *1 (W.D. Tenn. Jan. 27, 2011) (citing *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004)).

### III. PLAINTIFFS SOUGHT AND RECEIVED AN INTERPRETATION OF THE APRIL ORDER THAT IS CLEARLY ERRONEOUS AND CONSTITUTES A MANIFEST INJUSTICE TO EXTREME

Plaintiffs have asserted that the April Order compelled Extreme to produce information related to **all** of Extreme's products containing **any** software originating from Plaintiffs from the date of first sale of each product. (*See, e.g.*, ECF No. 215-1 at 9-10.) The December Order endorsed Plaintiffs' erroneous interpretation of the April Order, stating that the "Court has previously ordered Extreme to produce" information related to, *inter alia*, "any software created by SNMP Research which is or was in the possession of Extreme" regardless of whether Plaintiffs had alleged in this case that such products improperly incorporate their software (as opposed to, for example, products not mentioned at all in the operative pleading, including products incorporated under separate license agreements between the parties for which no dispute was even hinted at in Plaintiffs' complaint). (ECF No. 229 at 2.)

That ruling is clearly erroneous because it is contrary to the plain language of the April Order. The April Order required Extreme to respond to the discovery requests which "relate to Extreme's products—whether or not they are specifically identified in the Complaint—**that Plaintiff alleges are improperly incorporating its software**." (ECF No. 131 at 9 (emphasis added).) Extreme interpreted the April Order (correctly, Extreme believes) as calling for the production of information related to the products that Extreme acquired from defendant Brocade in 2017, which are the **only** products that Plaintiffs "alleg[e] are improperly incorporating [their] software" in their operative pleading. (*Id.*) By contrast, Plaintiffs' interpretation of the April Order

4

is clearly erroneous because it inexplicably interprets it as mandating the production of material related to products that Plaintiffs have **not** "allege[d] are improperly incorporating [their] software." (ECF No. 131 at 9.) And—to be excessively clear—Plaintiffs had made no such allegation prior to or in connection with the April Order. For that reason, the December Order should be modified to exclude the ruling that the "Court has already ordered Extreme to produce" material related to "unidentified products." (ECF No. 229 at 2.)

Under Extreme's interpretation of—and in response to—the April Order, Extreme has already produced a monumental amount of discovery related to the products that Extreme acquired from defendant Brocade in 2017, including more than 700,000 pages of documents. Under the interpretation of the April Order that Plaintiffs now urge, and that the December Order adopted, Extreme may in the future (after mediation) be required to collect and produce numerous categories of information related to nearly 50 **additional** products and spanning multiple decades. The volume of data that would be required to be produced and the burden on Extreme to do so—despite that the operative pleading does not allege these products improperly incorporate software—cannot be overstated.

These potential discovery obligations are far in excess of what is provided by law. The scope of discovery ordered is inconsistent with the Federal Rules of Civil Procedure, which provide only for discovery that is "relevant to any party's claim or defense and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), and well-established case law, which limits discovery where the "information sought is overly broad or would prove unduly burdensome to produce." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007). A requirement that Extreme produce, presumably in short order, numerous categories of information related to nearly 50 additional products over the course of a nearly 20-year period is plainly an irrelevant

and burdensome exercise that will likely necessitate millions of additional pages of document production. Extreme is not aware of any case granting such broad and burdensome discovery as pertains to subject matter that is not currently encompassed by the allegations in the complaint. It **is** aware of cases where such efforts were rejected. *See, e.g.*, *01 Communique Lab'y, Inc. v. Citrix Sys., Inc.*, No. 1:06CV253, 2014 WL 2506250, at *4 n.6 (N.D. Ohio June 3, 2014) (noting, in the context of discovery in a patent infringement action, that "a plaintiff is not entitled to accuse certain products of infringement, and then ask for discovery on every other product on a mere suspicion that other products might infringe as well"). Accordingly, an interpretation of the April Order as calling for such production is clearly erroneous.

Allowing Plaintiffs' interpretation of the April Order to remain in the December Order would also constitute a manifest injustice. Extreme fully expects Plaintiffs to attempt to use this single sentence from the December Order to argue that Extreme behaved incorrectly in its discovery obligations. Indeed, Plaintiffs have already threatened to use the April Order for later (post-mediation) purposes in the case to argue that Extreme's earlier discovery responses were in violation of a Court Order.

The issue that needed to be decided in the December Order was whether the Court was to order additional information to be produced before the mediation. Extreme accepts the Court's ruling on that issue. However, there is no need to also rule that the specific information Plaintiffs are requesting now was called for in April, which provides unwarranted fodder to Plaintiffs for potentially serious motion practice. Allowing Plaintiffs to utilize an erroneous interpretation of a discovery order as a weapon in this litigation would be manifestly unjust.

## IV. CONFOUNDING VARIABLES AFFECTING DISCOVERY GOING FORWARD

Finally, Extreme is filing the instant motion in order to enforce and preserve its rights as against a discovery order that it believes is clearly erroneous. However, Extreme recognizes that the scope of permissible discovery in this case may be altered in the near future. For example: (i) the upcoming mediation could dispose of the case completely; (ii) claims could be dismissed for insufficient or inconsistent pleadings (including on the issue of the invalidity of Plaintiffs' copyrights, which was effectively held open by the Court's ruling on the Rule 12(b)(6) motion to dismiss (*see* ECF No. 205 at 43)); and (iii) Extreme's product lines that predate the acquisition of Brocade's data center products could get pulled into the case through amended pleadings, even beyond a ruling on the scope of the April Order.[1]

As such, through this motion, Extreme is not asking for a finding that products that are not identified in the operative pleading are not discoverable in this case. Instead, Extreme is asking to correct the record in one limited respect to clarify that the Court's April Order did not by itself make the finding that any-and-all unnamed products are discoverable under the operative pleading.

## V. CONCLUSION

For the aforementioned reasons, Extreme requests that the December Order be reconsidered and modified to remove the ruling that "the Court has previously ordered Extreme to produce [information related to unidentified products] as explained in its Memorandum and Order [Doc. 131 pp. 8-9]," (ECF No. 229 at 2 (second alteration in original)). This statement is clearly erroneous and imposes a manifest injustice on Extreme.

---

[1] In fact, Plaintiffs' proposed Amended Complaint would assert claims based on one separate license agreement, and is subject to an (opposed) motion for leave (ECF No. 222). It is notable that Plaintiffs are attempting to amend the pleading to identify additional product lines.

7

DATED: January 5, 2023　　　　　　　　　Respectfully Submitted,
New York, New York

　　　　　　　　　　　　　　　　　　　　　　*/s/ Leslie A. Demers*

　　　　　　　　　　　　　　　　　　　　　　John M. Neukom (*admitted pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　DEBEVOISE & PLIMPTON LLP
　　　　　　　　　　　　　　　　　　　　　　650 California Street
　　　　　　　　　　　　　　　　　　　　　　San Francisco, California 94108
　　　　　　　　　　　　　　　　　　　　　　jneukom@debevoise.com
　　　　　　　　　　　　　　　　　　　　　　(415) 738-5700

　　　　　　　　　　　　　　　　　　　　　　Leslie A. Demers (*admitted pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　　SKADDEN, ARPS, SLATE,
　　　　　　　　　　　　　　　　　　　　　　　MEAGHER & FLOM LLP
　　　　　　　　　　　　　　　　　　　　　　One Manhattan West
　　　　　　　　　　　　　　　　　　　　　　New York, New York 10001
　　　　　　　　　　　　　　　　　　　　　　leslie.demers@skadden.com
　　　　　　　　　　　　　　　　　　　　　　(212) 735-3000

　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Extreme Networks, Inc.*