UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TENNESSEE

AT KNOXVILLE

| | |
|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC.,<br><br>    Plaintiffs,<br>v.<br><br>BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; and EXTREME NETWORKS, INC.<br><br>    Defendants. | Case No. 3:20-cv-00451 |

**MEMORANDUM OF FACTS AND LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Plaintiffs filed this copyright infringement action against nonresident Defendants Broadcom Inc. ("Broadcom"), Brocade Communications Systems LLC ("Brocade," and together with Broadcom, "Defendants"), and Extreme Networks, Inc. On March 2, 2023, Plaintiffs filed their Amended Complaint. (ECF No. 244.) Plaintiffs' copyright infringement claims should be dismissed because Plaintiffs' copyright registrations contain material inaccuracies and are therefore invalid. Furthermore, Plaintiffs' breach of contract claim must be dismissed because it is preempted by the Copyright Act.

It is evident from the face of the Amended Complaint that its copyright registrations are invalid pursuant to 17 U.S.C. § 411. The Amended Complaint shows that the copyrights at issue in this case were registered as unpublished in 2011. (Am. Compl. ¶ 33, Table 1, and Ex. B

(showing registration numbers with the prefix "TXu," which applies to unpublished works)). But Plaintiffs allege they entered into the original license agreement with Brocade ten years earlier, in 2001, and they attach the license agreement and subsequent amendments to the Amended Complaint revealing the same. (Am. Compl. ¶ 34, Ex. A.)

It is well established that software is "published" when it is distributed pursuant to a license agreement. *See, e.g.*, U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices* (3d ed. 2017) § 612.2 ("Software is distributed when copies are distributed by purchase or license[.]"); *Bruhn NewTech, Inc. v. United States*, 144 Fed. Cl. 755, 811 (2019); *see also McLaren v. Chico's FAS, Inc.*, 2010 WL 4615772, at *2 (S.D.N.Y. Nov. 9, 2010). Thus, Plaintiffs knowingly included inaccurate information on their applications for copyright registration, and the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration. 17 U.S.C. § 411(b). Plaintiffs' submission to the Register of Copyrights included factual inaccuracies and their Amended Complaint rely on "a legal position that egregiously misapplies a clear statute." *See Unicolors, Inc. & H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1069 (9th Cir. 2022) (determining no intent to defraud because of lack of law regarding "single unit issue"). Here, the claim for copyright infringement must be dismissed. *McLaren*, 2010 WL 4615772, at *4 (granting motion to dismiss with prejudice because copyright registration was shown to be invalid).

In addition, the Court should dismiss Plaintiffs' breach of contract claim against Brocade as preempted by the Copyright Act. A state law claim is preempted by the Copyright Act if: (1) the work involved is within the scope of the subject matter of copyright; and (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright. *See Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001); 17 U.S.C.

§ 301. The breach of contract claim here is based on the alleged unauthorized distribution of, preparation of derivative works based upon, and reproduction of Plaintiffs' software and source code. (*See* Am. Compl. ¶ 14.) As such, the claim is preempted by the Copyright Act.

## I. BACKGROUND

On March 10, 2001, Brocade and SNMP Research International, Inc. ("SNMPRI") entered into a license agreement for SNMPRI's software, which was amended five times over the subsequent 14 years (hereafter, the "License Agreement"). (Am. Compl. ¶ 34.) As of June 2015, Brocade had fully paid for the license and no further amounts were due and payable. (*Id.*, Ex. A at 40–41 (Amendment 5 ¶ 9) ("In return for the rights granted herein and in addition to the previously paid fees, Licensee shall pay to SNMP a license fee of $706,532.00 (U.S.) . . . . No further license fees shall be due and payable for the licenses granted under the Agreement.").) Plaintiffs allege that their software was incorporated into two of Brocade's product lines: the Brocade Fibre Channel SAN Switching products and the Brocade IP Networking business (a/k/a Data Center) products. (Am. Compl. ¶ 41.)

In September 2017, Plaintiffs allege that Brocade and Extreme notified Plaintiffs that Brocade intended to divest its IP Networking (a/k/a Data Center) business to Extreme Networks Inc. ("Extreme") (*Id.* ¶¶ 27, 43–44.) Plaintiffs further allege that Brocade and Extreme requested SNMPRI's consent to an assignment of Brocade's license to Extreme for the products that would be transferred pursuant to the transfer of ownership. (*Id.* ¶¶ 27, 44.) Plaintiff alleges that it declined to consent to the assignment. (*Id.* ¶ 45.) Plaintiffs allege that Brocade distributed their source code and software to Extreme through the transfer of ownership, infringing their copyrights and breaching the License Agreement. (*Id.* ¶¶ 43, 46, 55.) After Brocade's divestiture to Extreme, Broadcom acquired Brocade. (*Id.* ¶ 42.)

Plaintiffs allege they waited nearly two years after receiving the assignment notice from Extreme and Brocade to send notices of breach and termination to Brocade. (*Id*. ¶¶ 51, 58.) Then, more than a year later, Plaintiffs filed this lawsuit without warning.

On December 20, 2020, Defendants filed a Joint Motion to Dismiss, or, in the Alternative, to Transfer Venue. (ECF No. 40.) They asserted defenses based on improper venue, lack of personal jurisdiction with respect to Broadcom, and Plaintiffs' failure to state a claim. (*Id.*) Nearly two years later, on September 26, 2022, the Court denied the motion to dismiss for lack of personal jurisdiction and to transfer. (ECF No. 205.) In addition, the Court denied without prejudice Defendants' motion to dismiss for failure to state a claim. (*Id.*) On the same day, the Court ordered all parties to mediation. (ECF No. 206.)

In January 2023, the parties participated in mediation, with Plaintiffs and Defendants reaching a settlement in principle on January 30, 2023. On March 2, 2023, after the Court granted their motion to amend their complaint, Plaintiffs filed the Amended Complaint. (ECF No. 244.) Although Plaintiffs and Defendants continue to work diligently to document their settlement in principle, Defendants file this motion in an abundance of caution.

II. ARGUMENT

For the reasons set forth below, this case should be dismissed. *First*, Plaintiffs' claims for copyright infringement and contributory copyright infringement must be dismissed because their copyright registrations are invalid. *Second*, these same claims must be dismissed because the version of Plaintiffs' software they allege was used by Brocade is not registered. *Third*, Plaintiffs' claim for breach of contract must be dismissed because it is preempted by the Copyright Act.

### A. Plaintiffs' Copyright Registrations Are Invalid.

Plaintiffs' claims for copyright infringement and contributory copyright infringement must be dismissed because Plaintiffs' copyright registrations for its software are invalid under 17 U.S.C. § 411(b). Civil copyright infringement actions are permitted only if "preregistration or registration of the copyright claim has been made in accordance with" the Copyright Act. 17 U.S.C. § 411(a). "A copyright-infringement claim must establish: (1) ownership of a valid copyright, and (2) the fact that the defendant copied protectable elements of the work." *RJ Control Consultants, Inc. v. Multiject, LLC*, 2020 WL 6878106, at *4 (6th Cir. Nov. 23, 2020) (internal quotation marks omitted). Here, Plaintiffs cannot satisfy even the first element of this test. Because it is clear from the caselaw and the facts alleged in the Amended Complaint that Plaintiffs' copyright registrations are invalid, the Court should dismiss Plaintiffs' claims for copyright infringement. Alternatively, at a minimum, the Court should refer the issue under 17 U.S.C. § 411(b)(2) to the Register of Copyrights to determine whether it would have refused Plaintiffs' copyright registration had it known about the inaccuracies in Plaintiffs' application.

### 1. Plaintiffs' Software Products Are Registered as Unpublished Works.

Plaintiffs registered their software products as unpublished works. Each of the copyright registration numbers alleged by Plaintiffs begins with the prefix "TXu." *See* Am. Compl. ¶ 33, Table 1, Ex. B. This indicates that those copyrights were registered as unpublished works. *See Family Dollar Stores, Inc. v. United Fabrics Int'l., Inc.*, 896 F.Supp.2d 223, 225 (S.D.N.Y. 2012) ("The 'u' represents that the works are unpublished."); U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices (3d)* § 1807.4(A) (2017) ("Compendium (3d)") (noting that unpublished registration "should have been numbered in series TXu" rather than "TX"); U.S. Copyright Office, https://www.copyright.gov/eco/help-supplementary.html

Case 3:20-cv-00451-CEA-DCP   Document 261-1   Filed 03/17/23   Page 5 of 16   PageID #: 12684
6376471

(explaining that published registration numbers begin "with a prefix of TX, VA, PA, or SR" whereas unpublished registration numbers begin "with a prefix of TXu, VAu, PAu, or SRu"); *see also* 37 C.F.R. § 202.3. In the event Plaintiffs dispute that their copyright registrations are for unpublished works, the Court may take judicial notice of the meaning of the prefixes used with copyright registration numbers. *See Application of Yardley*, 493 F.2d 1389, 1393 (C.C.P.A. 1974).

> 2. <u>Plaintiffs' Software Products Were Already Published When Plaintiffs Registered Them as Unpublished Works.</u>

Plaintiffs admit in their Amended Complaint that they licensed their software to Brocade in 2001, ten years before they registered the software products as *unpublished* works with the Copyright Office in 2011. *See* Am. Compl. at ¶¶ 33-34; *id*. Ex. A. The Copyright Act defines "publication" to mean "the distribution of copies . . . of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 101. In the software context, issuing a "license" constitutes "distribution" and thus publication. Compendium (3d) at § 612.2 ("Software is distributed when copies are distributed by purchase or license[.]").[1]

The relevant case also establishes that licensing software to customers equals publication. *See, e.g.*, *Daimler-Chrysler Servs. N. Am., LLC* v. *Summit Nat., Inc.*, 289 F. App'x 916, 922–23 (6th Cir. 2008) (holding that software was licensed where it was licensed to "a variety of banks, financial institutions, utilities, and other corporations willing to pay for it"); *Bruhn NewTech, Inc.* v. *United States*, 144 Fed. Cl. 755, 811 (2019) (recognizing that computer software products are published when distributed by license); *McLaren* v. *Chico's FAS, Inc.*, No. 10 CIV. 2481

---

[1] "Courts routinely cite the Compendium as a prominent authority on copyright law, giving it weight beyond that of a typical secondary source." *Urban Textile, Inc. v. Rue 21, Inc.*, 2017 WL 1201751, at *2 n.1 (C.D. Cal. Mar. 31, 2017), aff'd, 764 F. App'x 603 (9th Cir. 2019) (citations omitted).

JSR, 2010 WL 4615772, at *2 (S.D.N.Y. Nov. 9, 2010) (concluding that licensing of an illustration constituted publication within the meaning of the Copyright Act). With this circuit, *Daimler-Chrysler* considered whether licensing software constituted publication under the Copyright Act. The case turned on whether the licensed software had been "published" because, under the Copyright Act in effect at that time, a copyright notice was required for publicly distributed works to be protected and the plaintiff's software lacked such notice. 289 F. App'x at 922–23. Referring to the Copyright Act's definition of "publication," the Sixth Circuit held that, because the software had been advertised and licensed to customers, it had been published, and therefore distributed publicly, under the Copyright Act. *Id*.

It is undisputed from the face of the Amended Complaint and the attached license agreement that Plaintiffs licensed their software to Brocade in 2001. Thus, Plaintiffs published their work prior to applying for an unpublished copyright. *See Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd*., 288 F. Supp. 2d 544, 556 (S.D.N.Y. 2003) ("A distribution of a work to [even] one person constitutes a publication.").

### 3. Plaintiffs Knowingly Included Inaccurate Information in the Registrations That Would Have Caused the Register of Copyrights to Refuse Registration.

Under 17 U.S.C. § 411(b)(1), a certificate of registration does not satisfy the requirements of instituting a civil action for infringement when "(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1); *see also Unicolors, Inc.*, 52 F.4th at 1067 ("[A] registration is invalid under § 411(b) if the registrant perpetrated fraud on the Copyright Office by knowingly misrepresenting material facts."). Plaintiffs' copyright registrations are invalid under 17 U.S.C. § 411(b).

i. *Plaintiffs included inaccurate information on their copyright application with knowledge that it was inaccurate.*

Plaintiffs had "actual, subjective" knowledge that they submitted their applications for copyright registration with inaccurate information. *See Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 142 S. Ct. 941, 947 (2022); *see also Bruhn NewTech, Inc.*, 144 Fed. Cl. at 815 ("An applicant for a copyright registrant will have knowledge of inaccurate information in a copyright application when the applicant is 'aware' of the facts underlying the inaccuracy."); *Nason Homes, LLC v. Singletary Constr., LLC*, 2016 WL 6952257, at *6 (M.D. Tenn. Jan. 29, 2016) (holding fraud not necessary to invalidate registration).

In the present matter, Plaintiffs knew they had licensed out their software prior to registering the copyright. The amended complaint alleges that SNMP International entered into a license agreement with Brocade in 2001 and several amendments thereafter. Am. Compl. at ¶ 34. Copies of the license agreement and amendments thereto are appended to the Amended Complaint and signed by SNMP International's chief executive officer. Am. Compl. Ex. A at 13.

The law was also clear on this point. Like the Compendium (3d), the Compendium of U.S. Copyright Office Practices in force at the time of SNMP Research's registration provided that "[p]ublication occurs by the sale or other transfer of ownership of copies or phonorecords or by their rental, lease, or lending." U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices (2d)* § 905.04 (1984) ("Compendium (2d)"), *available at* https://www.copyright.gov/history/comp/compendium-two-1988-chap1600-1900.pdf. This is a simple rule. Indeed, SNMPR was not new to copyright registrations when it registered submitted the relevant registrations to the Copyright Office: based on the Copyright Office's public catalog, SNMPRI registered five published works in 2002 and another published work in 2005. Thus,

SNMP Research knew that the software products were published when they registered them as unpublished in 2011.  *See Unicolors, Inc.*, 142 S. Ct. at 948 ("Circumstantial evidence, including the significance of the legal error, the complexity of the relevant rule, the applicant's experience with copyright law, and other such matters, may [] lead a court to find that an applicant was actually aware of, or willfully blind to, legally inaccurate information.").

      ii. *The Register of Copyrights would have refused registration.*

Had the Register of Copyrights known that Plaintiffs' software products were published when Plaintiffs submitted their copyright application, she would have refused registration of Plaintiffs' unpublished copyright. *See Urban Textile*, 2017 WL 1201751, at *2 ("The Court finds that Urban published the works prior to registering them as part of unpublished collections, therefore making the registrations invalid."); *Determined Prods., Inc. v. Koster*, 1993 WL 120463, at *1 (N.D. Cal. Apr. 13, 1993) ("Wrongly identifying a number of published individual works as an unpublished collection is a fundamental registration error, which deprives this court of jurisdiction over the copyright claim."). Indeed, the Copyright Office has stated in similar circumstances that it would have refused to register a work if it had known that a purportedly unpublished work had, in fact, been previously published. *See, e.g.*, Response of the Register of Copyrights to Request at 8, *Lieb* v. *Korangy Publishing Inc.*, No. 2:15-cv-40-AYS (E.D.N.Y. Aug. 24, 2022), ECF No. 57-1, *available at* https://www.copyright.gov/rulings-filings/411/lieb-v-korangy-publishing-inv-no-215cv00040.pdf ("Had the Office been aware that the HuffPost Article incorporated a prior published version and that the prior version constituted a substantial portion of the second work, it would not have registered the claim as submitted."); Response of the Register of Copyrights at 2, *Bueno* v. *Benhamou*, No. 2:21-cv-04595-JVX (SPx) (C.D. Cal. June 30, 2022), ECF No. 74-1, *available at* https://www.copyright.gov/rulings-filings/411/bueno-v-

[benhamou-no-2-21-cv-04595.pdf](benhamou-no-2-21-cv-04595.pdf) ("Had the Office known that the Blue-Lit Walkway photograph was published prior to the submission of the May 21, 2021 registration application, the Office would have refused to register that work as part of a group registration for unpublished photographs."); Response of the Register of Copyrights at 8, *King-Devick Test Inc.* v. *NYU Langone Hospitals*, No. 17-cv-9307-JPO (S.D.N.Y. Oct. 4, 2019), ECF No. 108-1, *available* at [https://www.copyright.gov/rulings-filings/411/king-devick-test-inc.-nyu-langone-hospitals-no.17-cv-9307-jpo-sdny-oct-4-2019.pdf](https://www.copyright.gov/rulings-filings/411/king-devick-test-inc.-nyu-langone-hospitals-no.17-cv-9307-jpo-sdny-oct-4-2019.pdf) ("[O]ffering copies of a work to a group of persons for the purpose of licensing those copies for further distribution constitutes publication of that work."); Response of the Acting Register of Copyrights at 8, *Jeon* v. *Anderson*, No. SACV 17-1709 JVS (KES) (C.D. Cal. Mar. 6, 2019), ECF No. 52-1, *available at* [https://www.copyright.gov/rulings-filings/411/jeon-v-anderson-no-8-17-cv-01709-jvs-jde.pdf](https://www.copyright.gov/rulings-filings/411/jeon-v-anderson-no-8-17-cv-01709-jvs-jde.pdf) ("[H]ad the Office been aware that the Works had been published prior to the date Plaintiff submitted its applications, the Office would have refused to register these works as part of an unpublished collection."). Moreover, the Compendium in existence at the time SNMP Research registered the software products provides that "[w]here the applicant seeks registration as an unpublished work and provides the Office with a statement of facts which clearly show that publication has occurred, the Office will not register a claim to copyright in the work as unpublished." Compendium (2d) § 904(4)

Here, consistent with its own guidelines, the Copyright Office would have refused registration of Plaintiffs' copyrights had it known that Plaintiffs' works were previously published.

> 4. <u>The Court Should Refer the Matter to the Register of Copyrights and Dismiss Plaintiffs' Copyright Infringement Claims.</u>

Because Plaintiffs' copyright registrations are invalid, they cannot sustain causes of action for copyright infringement and contributory copyright infringement as a matter of law. 17 U.S.C.

§ 411(a) (valid registration is a precondition for instituting a civil action for copyright infringement). The process of determining invalidation is governed by 17 U.S.C. § 411(b)(2) and 37 C.F.R. § 205.14. Section 411(b)(2) requires that [i]n any case in which inaccurate information described under paragraph (1) is alleged, the court *shall* request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(2) (emphasis added); see also 37 C.F.R. § 205.14 (the request should be sent to the General Counsel of the Copyright Office via email to 411filings@copyright.gov). Thus, the Court is required to request the Register to advise whether the inaccurate information contained in Plaintiffs' registrations, if known, would have caused the Register to refuse registration.

If the Register indicates that she would have refused registration, the Court must dismiss Plaintiffs' copyright infringement and contributory copyright infringement claims. The Court may do so at this stage because all the facts necessary for such a dismissal are apparent on the face of the Amended Complaint. *See McLaren*, 2010 WL 4615772, at *2-4 (dismissing the complaint with prejudice because "[b]ased on the allegations of the complaint alone, it cannot be disputed that McLaren published some of the illustrations in the Collection"); *Rawls v. Paradise Artists, Inc.*, 2020 WL 1493610, *6-7 (M.D. Tenn. March 27, 2020 ) (dismissing claims and holding plaintiff could not cure its registration failure by amending its pending complaint); *Xclusive-Lee, Inc. v. Hadid*, 2019 WL 3281013, at *4-5 (E.D.N.Y. July 18, 2019) (dismissing copyright infringement and contributory infringement claims for lack of valid registration).

### B. Plaintiffs' Copyright Infringement Claims Fail Because the Software Version Used by Brocade Was Not Registered.

Although Plaintiffs allege they have registered the copyrights for the software at issue in

this case, and purport to list them in Table 1 of the Amended Complaint, the software version actually used by Brocade pursuant to the License Agreement—EMANATE/Lite v 16.2.0.9—is curiously missing from the list. Plaintiffs carry the burden of establishing that Brocade improperly copied one or more of their registered works. *See* 17 U.S.C. § 411, 501 (2012). But Plaintiffs do not even allege that EMANATE/Lite v16.2.0.9 was registered.

Plaintiffs' failure to allege registration of the software actually provided to and used by Brocade is fatal to their claims. *VBConversions, LLC* v. *Exida.com, LLC*, No. CV138306PSGJEMX, 2014 WL 12560807, at *11–12 (C.D. Cal. Apr. 1, 2014) (dismissing copyright infringement claim where plaintiff "pleaded registration of versions 1.0 and 2.0 of the Software, leaving the Court no indication of the registration status" of the versions plaintiffs allege defendants used without authorization). Thus, Plaintiffs cannot meet their burden to prove that Brocade infringed the copyrighted works listed in Table 1 of the Amended Complaint

### C. Plaintiffs' Breach of Contract Claim Is Preempted by the Copyright Act.

The Court should dismiss Plaintiffs' claim for breach of contract against Brocade because it is preempted by the Copyright Act. *See* 17 U.S.C. § 301. In the Sixth Circuit, a "state common law or statutory claim is preempted [by the Copyright Act] if: (1) the work is within the scope of the 'subject matter of copyright,' as specified in 17 U.S.C. §§ 102, 103; and, (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001). As to the second prong, the *Wrench* court elaborated that "[e]quivalency exists if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights. Conversely, if an extra element is required instead of or in addition to the acts of reproduction, performance, distribution or display in order to constitute a state-

created cause of action, there is no preemption, provided that the extra element changes the nature of the action so that it is qualitatively different from a copyright infringement claim." *Id.* at 456 (internal citation omitted).

Here, the subject of the contract—computer software—generally falls within the subject matter of the Copyright Act. *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 779 (9th Cir. 2002) ("Computer programs are works of authorship entitled to protection under the Copyright Act."). This is true even if it turns out that Plaintiffs' specific software products are ultimately not protected by copyright. *See ATC Distribution Grp., Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700, 713 (6th Cir. 2005).

Regarding equivalency, the Sixth Circuit has expressly recognized that breach of contract claims are subject to preemption under certain circumstances. *See Wrench LLC*, 256 F.3d at 457 ("[W]e do not embrace the proposition that all state law contract claims survive preemption simply because they involve the additional element of promise."); *see also Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 48-49 (2nd Cir. 2019) ("[P]reemption cannot be avoided simply by labeling a claim 'breach of contract.'") (citation omitted). For example, if the promise in the contract "amounts only to a promise to refrain from reproducing, performing, distributing or displaying the work, then the contract claim is preempted. The contrary result would clearly violate the rule that state law rights are preempted when they would be abridged by an act which in and of itself would infringe one of the exclusive rights of § 106." *Wrench LLC*, 256 F.3d at 457-58.

Here, the rights Plaintiffs seek to vindicate through their breach of contract claim are identical to those rights exclusively protected by the Copyright Act. Plaintiffs allege that "Brocade's unauthorized disclosure of the source code, as well as Brocade's continued use,

reproduction, preparation of derivative works based upon, and public distribution of products containing Plaintiffs' copyrighted software constitute a breach of the License Agreement." Am. Compl. ¶ 14. Plaintiffs expressly allege these *exact* same acts "constitute[] copyright infringement and material contribution to or inducement of infringement by Brocade's partners, resellers, and/or customers." *Id.*; *see also id.* ¶ 71 (indicating conduct supporting breach of contract is described in Sections IV.B and C of the Amended Complaint); *id.* ¶ 77 (indicating same conduct constitutes copyright infringement: "As set forth in Sections IV.B and C above, Brocade, without authorization, copied, reproduced, prepared derivative works based upon, and publicly distributed Plaintiffs' copyrighted software."); *id.* ¶¶ 43, 46 (under heading for breach of contract *and* copyright infringement, Plaintiffs allege that Brocade distributed source code and software to Extreme through transfer of ownership); *id.* ¶ 55 ("Plaintiffs repeatedly wrote to Brocade expressly stating that Brocade had breached the License Agreement by *transferring and/or disclosing* the software to Extreme without the right to do so.") (emphasis added).

These actions are undeniably exclusive rights expressly protected by the Copyright Act. *See* 17 U.S.C. § 106 (listing the exclusive rights as the right to (1) reproduce; (2) prepare derivative works; and (3) distribute copies by sale or transfer of ownership). Moreover, unlike in *Wrench*, Plaintiffs' breach of contract claim is not based on a breach of Brocade's "promise to pay." In *Wrench*, the Sixth Circuit held that because the breach of contract claim was based on a breach of "an actual promise to pay" for the copyrighted work, the claim was not preempted. *See Wrench LLC*, 256 F.3d at 456. The court explained that the promise to pay was the "extra element" that changed "the nature of the action so that it is qualitatively different from a copyright infringement claim." *Id.*

Here, it is undisputed that Brocade fully paid for the license in 2015. *See* Am. Compl.

Ex. A, Amendment 5, ¶ 9. Thus, Plaintiffs' breach of contract claim is based solely on a "promise to refrain from reproducing, performing, distributing or displaying" the allegedly copyrighted works, not a breach of a promise to pay. *Wrench LLC*, 256 F.3d at 457. Because the "extra element" of promise to pay is missing, Plaintiffs' contract claim is preempted. *Id*. at 459.

The Second Circuit addressed this very question in *Universal Instruments Corp. v. Micro Systems Engineering, Inc*., 924 F.3d 32 (2nd Cir. 2019). In *Universal*, like here, the plaintiff did not allege that defendants violated the agreement by failing to pay for use of the intellectual property. *Id*. at 49. Rather, Universal's contract claim was based on an allegation that defendants' use of the source code exceeded the scope of the license contained in the agreement. *Id*. The Second Circuit concluded that the claim did not include an "extra element" that was different from Universal's copyright infringement claim. *Id*. The same conclusion should apply here where Plaintiffs' contract claim amounts to nothing more than allegations that Brocade's use of Plaintiffs' software and source code exceeded the scope of the license.

Accordingly, the Court should dismiss Plaintiffs' breach of contract claim in its entirety as preempted by the Copyright Act. Alternatively, if the Court concludes that there is an "extra" element to Plaintiffs' contract claim that is not protected by the Copyright Act with respect to some but not all of Plaintiffs' breach of contract allegations, the Court should still dismiss the claim to the extent it is preempted. *See ATC Distribution Grp., Inc*., 402 F.3d at 713-14 (finding that a state law claim for misappropriation was "partially preempted").

### III. CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' claims for copyright infringement and breach of contract.

Dated: March 16, 2023　　　　　　　　　　HUESTON HENNIGAN LLP

　　　　　　　　　　　　　　　　　　　　By:　　*/s/ Alison L. Plessman*
　　　　　　　　　　　　　　　　　　　　　　　Alison L. Plessman
　　　　　　　　　　　　　　　　　　　　　　　Attorneys for Defendants
　　　　　　　　　　　　　　　　　　　　　　　Broadcom Corporation
　　　　　　　　　　　　　　　　　　　　　　　Brocade Communications Systems LLC