# Exhibit 1

UNITED STATES COPYRIGHT OFFICE

# COMPENDIUM OF
# U.S. COPYRIGHT OFFICE PRACTICES

THIRD EDITION

JANUARY 2021

Case 3:20-cv-00451-CEA-DCP   Document 263-4   Filed 03/20/23   Page 2 of 13   PageID #: 12733

Introduction to the Third Edition of the

# COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES

The *Compendium of U.S. Copyright Office Practices, Third Edition* (the "*Compendium*" or "*Third Edition*") is the administrative manual of the Register of Copyrights concerning Title 17 of the United States Code and Chapter 37 of the Code of Federal Regulations. It provides instruction to agency staff regarding their statutory duties and provides expert guidance to copyright applicants, practitioners, scholars, the courts, and members of the general public regarding institutional practices and related principles of law. *See* 37 C.F.R. § 201.2(b)(7).

**Effective Date of the *Third Edition***

The *Compendium, Third Edition* was released and became effective on December 22, 2014.

The *Compendium, Third Edition* is a living, electronic document accessible on the official website of the U.S. Copyright Office. The Office publishes regular revisions, as appropriate, to reflect changes in the law and/or practices, which customers may access, download, or print. The most recent update was released on January 28, 2021. The version posted on the Office's website at any given time should be consulted as the current official version. The Office maintains an archive of all revisions so released, as well as prior versions.

**Citing to the *Compendium***

The full title of this manual is the "*Compendium of U.S. Copyright Office Practices, Third Edition*." The full title may be abbreviated as the "*Compendium*." The manual may be cited as follows:

Full citation:

- U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 101 (3d ed. 2021).

Short form citation:

- COMPENDIUM (THIRD) § 101.1(A).

**What the *Compendium* Covers**

The *Compendium* documents and explains the many technical requirements, regulations, and legal interpretations of the U.S. Copyright Office with a primary focus on the registration of copyright claims, documentation of copyright ownership, and recordation of copyright documents, including assignments and licenses. It describes the wide range of services that the Office provides for searching, accessing, and

Case 3:20-cv-00451-CEA-DCP   Document 263-4   Filed 03/20/23   Page 3 of 13   PageID #: 12734

retrieving information located in its extensive collection of copyright records and the associated fees for these services. The *Compendium* provides guidance regarding the contents and scope of particular registrations and records. And it seeks to educate applicants about a number of common mistakes, such as providing incorrect, ambiguous, or insufficient information, or making overbroad claims of authorship.

The *Compendium* does not cover every principle of copyright law or detail every aspect of the Office's administrative practices. The Office may, in exceptional circumstances, depart from its normal practices to ensure an outcome that is most appropriate.

**Standard of Deference for the *Compendium***

The *Compendium* does not override any existing statute or regulation. The policies and practices set forth in the *Compendium* do not in themselves have the force and effect of law and are not binding upon the Register of Copyrights or Copyright Office staff. However, the *Compendium* does explain the legal rationale and determinations of the Copyright Office, where applicable, including circumstances where there is no controlling judicial authority.

The Supreme Court recognized that courts may consider the interpretations set forth in administrative manuals, policy statements, and similar materials "to the extent that those interpretations have 'the power to persuade.'" *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (internal citations omitted); *Georgia v. Public.Resource.Org, Inc*., 140 S. Ct. 1498, 1510 (2020) (applying "power to persuade" standard to the *Compendium*). The weight of [the agency's] judgment . . . in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade . . . ." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

Courts have cited the *Compendium* in numerous copyright cases. *See, e.g.*, *Olem Shoe Corp. v. Washington Shoe Corp*., 2015 U.S. App. LEXIS 434, at *20-21 (11th Cir. Jan 12, 2015) (finding that the *Compendium's* construction of the Copyright Act's requirements for disclaiming preexisting works during registration "merits deference"); *Alaska Stock, LLC v. Houghton Mifflin Harcourt Publishing Co.*, 747 F.3d 673, 684 (9th Cir. 2014) (finding the *Compendium* "persuasive" concerning the registration requirements for databases); *Metropolitan Regional Information Systems, Inc. v. American Home Realty Network, Inc*., 888 F. Supp. 2d 691, 706-07 (D. Md. 2012) (deferring to the *Compendium* concerning the registration requirements for collective works); *Rogers v. Better Business Bureau of Metropolitan Houston, Inc*., 887 F. Supp. 2d 722, 732 (S.D. Tex. 2012) ("The Copyright Office's 'policy statements, agency manuals, and enforcement guidelines' do not carry 'the force of law,' but they are entitled to some deference given the 'specialized experience and broader investigations and information' of the agency."); *McLaren v. Chico's FAS, Inc*., 2010 U.S. Dist. LEXIS 120185, at **9-10 (S.D.N.Y. Nov. 9, 2010) (concluding that the Office's interpretation of the unit of publication regulation "is particularly compelling"). A complete list of cases citing the first, second, and third editions of the *Compendium* is provided in the Table of Authorities.

### 612.2 What Constitutes Publication?

For purposes of U.S. copyright law, "[p]ublication is the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 101 (definition of "publication").

For instance, a book is published when copies of the work are distributed online or in bookstores. A newspaper is distributed when copies are sold at newsstands or delivered to subscribers' doorsteps. A song is distributed when print copies or phonorecords are sold (*e.g.*, on sheet music or in mp3 format). Software is distributed when copies are distributed by purchase or license, whether in CD-ROM format or online (provided that the copies are actually downloaded and not merely accessed online). On the other hand, a draft dissertation or other manuscript that is sent to a dozen people for peer review with a note stating that the copy should not be shared with other parties is not considered publication.

Likewise, "offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication." *Id*. For example, when a motion picture distribution company offers copies of a motion picture to movie theaters for public showing in the theater, the movie is published.

"A public performance or display of a work does not of itself constitute publication." *Id.* This is true regardless of the number of people who viewed the performance or display.

As a general rule, the U.S. Copyright Office will accept the applicant's determination that a work has been published.

For a general discussion of publication and for specific guidance on determining whether a particular work has been published, see Chapter 1900.

### 612.3 Determining whether the Work Is Published or Unpublished

The applicant — not the U.S. Copyright Office — must determine whether the work is published or unpublished. This determination should be based on the facts that exist at the time the application is filed with the Office, and it should be based on the definition of publication under U.S. copyright law, even if the work was created or published in another country.

As a general rule, the Office will accept the applicant's representation that the work is published or unpublished, unless that statement is implausible or is contradicted by information provided elsewhere in the registration materials or in the Office's records or by information that is known to the registration specialist.

Upon request, the registration specialist will provide the applicant with general information about the provisions of the Copyright Act, including the statutory definition of publication, and will identify the relevant practices and procedures for registering a work with the Office. However, the Office will not give specific legal advice on whether a particular work has or has not been published or make that determination for the applicant.

provide the name of the claimant who owns the copyright in that version. When completing an online application the applicant should provide this information on the Author and Claimant screens; when completing a paper application the applicant should provide this information in spaces 2 and 4 of Form TX.

For guidance on completing this portion of the application, see Chapter 600, Sections 613 and 619. For guidance on identifying the author of a work made for hire, see Chapter 600, Section 614.

### 721.9(D) Year of Completion

The applicant should identify the year that the author completed the specific version of the program that the applicant intends to register. As a general rule, the applicant should provide a year of completion only for the specific version of the program that will be submitted for registration. The applicant should not provide a year of completion for the first version of the program or any other version of the program that is not included in the application.

For the purpose of copyright registration, each version of a computer program is considered a separate work. Each version of a program is considered complete when that version has been fixed in a tangible medium of expression for the first time. When a program is prepared over a period of time, the portion that has been fixed at any particular time constitutes the version that has been completed as of that date. *See* 17 U.S.C. § 101 (definition of "created"); *see also* 37 C.F.R. § 202.3(c)(4) (explaining that the year of completion means "the latest year in which the creation of any copyrightable element was completed").

When completing an online application, the applicant should provide the year of completion on the Publication/Creation screen; when completing a paper application the applicant should provide this information in space 3(a) of Form TX. For guidance on completing this portion of the application, see Chapter 600, Section 611.

If the year specified in the application does not match the year that is specified in the copyright notice for the program (if any) or if the copyright notice contains multiple dates (*e.g.*, © Lionel Software 2010, 2011, 2012), the registration specialist may communicate with the applicant if he or she is unable to identify the specific version that the applicant intends to register.

### 721.9(E) Date of Publication

If the version that the applicant intends to register has been published as of the date that the application is filed with the U.S. Copyright Office, the applicant should provide the month, day, and year that the version being registered was published for the first time. As a general rule, the applicant should provide a date of first publication only for the specific version that will be submitted for registration. The applicant should not provide a date of publication for the first version of the program or any other version of the program that is not included in the application.

A computer program is considered published when copies of the program are distributed "to the public by sale or other transfer of ownership, or by rental, lease, or

lending" or when copies of the program are offered "to a group of persons for purposes of further distribution, public performance, or public display." 17 U.S.C. § 101 (definition of "publication"). As a general rule, a program is considered published if there has been a general distribution of the program code, regardless of whether the copies are distributed by purchase or license and regardless of whether the copies are distributed on a CD-ROM, DVD, or downloaded online. Likewise, a program is considered published even if the copies contained object code rather than source code and even if the source code has not been disclosed to the public. *See Midway Manufacturing Co. v. Strohon*, 564 F. Supp. 741, 751 (N.D. Ill. 1983) ("the object code is nothing other than a direct transformation of a computer program, composed... in source code").

When completing an online application, the applicant should provide the date of first publication on the Publication/Completion screen. When completing a paper application the applicant should provide this information on space 3(b) of Form TX. For guidance on completing this portion of the application, see Chapter 600, Section 612.

For a general discussion of publication and for specific guidance on determining whether a particular work has been published, see Chapter 1900.

### 721.9(F)  Asserting a Claim to Copyright in a Computer Program

The applicant should identify the copyrightable authorship that the applicant intends to register and should assert a claim to copyright in that authorship. The information provided in the application defines the claim that is being registered, rather than the information given in the deposit copy(ies) or elsewhere in the registration materials.

When completing an online application, the applicant should provide this information on the Author screen in the field marked Author Created. When completing a paper application, the applicant should provide this information on space 2 of the application under the heading Nature of Authorship. For guidance on completing this portion of the application, see Chapter 600, Section 618.4.

"Computer program" is the most appropriate term for registering a claim in this type of work. If this term does not fully describe the copyrightable material that the applicant intends to register, the applicant should provide a more specific description in the Author Created/Other field using the procedure described in Chapter 600, Section 618.4(A). For a representative list of other terms that may be acceptable, see Section 721.9(H).

"Revised computer program" is the most appropriate term for registering a claim in a derivative computer program. If this term does not fully describe the copyrightable material that the applicant intends to register, the applicant should provide a more specific description using the procedures described in Chapter 600, Section 621.8(C)(1) and 621.8(C)(2). For a representative list of other terms that may be acceptable, see Section 721.9(H).

As discussed in Section 721.7, an applicant may assert a claim in executable code as well as the nonexecuting comments that appear in the source code for a computer program. Both claims may be registered with the same application. To register a claim in

The system will generate a brief statement that describes the eligibility requirements for this application. If these requirements have been met, the applicant should check the box that appears next to the following statement: "I agree that I have read, understood, and meet all eligibility requirements described above for filing a Supplementary Registration."

### 1802.8(A)(2) Identifying the Basic Registration

The applicant must identify the basic registration that will be corrected or amplified by the supplementary registration. 17 U.S.C. § 408(d). Specifically, the applicant must provide the following information on the Original Registration screen:

- *Registration number for the basic registration*. This number appears on the certificate for the basic registration, and it typically begins with two or three letters, such as "VA" or "VAu." The applicant should provide this number in the field marked "Registration Number of Basic Registration (e.g. TXu003234533)."

- *Year of registration for the basic registration*. This information appears on the certificate for the basic registration under the heading marked effective date of registration. The applicant should provide this information in the field marked "Year of Basic Registration (YYYY)."

If the applicant fails to complete these fields, the application will not be accepted by the electronic registration system.

When providing the registration number for the basic registration, the U.S. Copyright Office strongly encourages applicants to use the format described below. This will facilitate the examination of the claim and prevent unnecessary delays.

Specifically, the registration number should consist of a twelve-character string without spaces or hyphens. For published registration numbers, enter two letters followed by ten digits. For unpublished registration numbers, enter three letters followed by nine digits. Every letter of the alphabetic prefix should be capitalized and zeroes should be inserted between the prefix and the numerical portion of the registration number so that it contains a total of twelve characters.

For instance, the proper format for a registration for a published sound recording consisting of the prefix "SR" and the numbers "123-4-567" would be "SR0001234567."

*Examples:*

- VAu 123-456 should be entered as VAU000123456.

- VA 1-357-911 should be entered as VA0001357911.

If the applicant includes spaces, hyphens, or other punctuation in the registration number (instead of using the format described above), the Office will remove these characters and convert the number to the preferred format, which may delay the registration decision.

### 1904.2 Facts Stated in the Application

As a general rule, the U.S. Copyright Office will not conduct its own factual investigation to determine whether a work is published or unpublished or to confirm the truth of the statements made in the application concerning publication.

Ordinarily, the Office will accept the facts stated in the application, unless they are implausible or conflict with information provided elsewhere in the registration materials, the Office's records, or other sources of information that are known by the Office.

### 1904.3 Claim in a Published or Unpublished Work Contradicted by Information Provided Elsewhere, such as in the Registration Materials

As a general rule, if the applicant affirmatively states that the work is unpublished or fails to provide a date of first publication in the application, the Office will register the work as an unpublished work, unless the information provided in the deposit copy or in other sources of information known by the Office clearly indicate that the work has been published.

Likewise, if the applicant affirmatively states that the work has been published and provides a date of first publication in the application, the Office generally will register the work as a published work, unless information provided in the deposit copies or in other sources of information known by the Office clearly suggest that the work is unpublished.

If the deposit copy(ies) or other information known by the Office clearly suggest that the work is published or unpublished and if it appears that the applicant provided or failed to provide a date of publication by mistake, the registration specialist may communicate with the applicant. For examples of situations that may prompt a communication concerning publication, see Chapter 600, Sections 612.7(A) and 612.7(B).

### 1905 Distribution of Copies or Phonorecords of a Work

As discussed in Section 1902, publication occurs when one or more copies or phonorecords of a work are distributed to the public by or with the authority of the copyright owner. These issues are discussed in Sections 1905.1 through 1905.3 below.

### 1905.1 Distribution to the Public

Section 101 of the Copyright Act states a work is published when copies or phonorecords of that work are distributed "to the public." 17 U.S.C. § 101. Specifically, publication occurs when one or more copies or phonorecords are distributed to a member of the public who is not subject to any express or implied restrictions concerning the disclosure of the content of that work. If a work exists only in one copy – such as a painting embodied solely in a canvas – the work may be considered published if that copy is distributed to the public with the authorization of the copyright owner. H.R. REP. NO. 94-1476, at 61, 138 (1976), *reprinted in* 1976 U.S.C.C.A.N. at 5754, 5675 (stating that "[t]he reference to 'copies and phonorecords,' although in the plural, are intended . . . to include the singular.").

*Examples:*

- Selling copies of a textbook to a local school board constitutes publication of that work.

- Selling a product with copyrightable artwork on the packaging and label constitutes publication of that artwork.

- Mailing copies of a catalog to potential customers constitutes publication of that catalog and any unpublished works revealed in that work.

- Distributing copies of a leaflet on a street corner constitutes publication of that work.

- Transmitting a copy of an illustration to a client constitutes publication of that work, if the copyright owner authorized the client to use that image and did not impose any restrictions on the client's ability to disclose that work to the public.

- Giving away copies of a photograph without further restriction constitutes publication of that work.

- Lending, renting, or leasing copies of a work constitutes publication of that work.

- Distributing copies of a motion picture through a retail service constitutes publication of that work.

- Selling the original copy of a painting at an auction.

If an actual distribution has not occurred, the work is considered unpublished. Likewise, a work is considered unpublished if the copies or phonorecords were not distributed to a member of the public, but instead were much more restricted, including an exchange between family members or social acquaintances.

The courts created the doctrine of "limited publication" to distinguish certain distributions from a "general publication" and to avoid the divestive consequences of publication without notice when it was clear the author (or copyright proprietor) restricted both the purpose and the recipients of the distribution. Generally, a limited publication is the distribution of copies of a work to a definitely selected group with a limited purpose and without the right of diffusion, reproduction, distribution, or sale. A limited publication is not considered a distribution to the public and, therefore, is not publication. *See White v. Kimmell*, 193 F.2d 744, 746-47 (9th Cir. 1952) (explaining that a publication is limited if it "communicates the contents of a [work] to a definitely selected group and for a limited purpose, and without the right of diffusion, reproduction, distribution or sale … [and is] restricted both as to persons and purpose.").

*Examples:*

- Sending copies of a manuscript to prospective publishers in an effort to secure a book contract does not constitute publication (regardless of whether the copies are returned).

- Distributing copies of a research paper that are intended solely for the use of the participants at a seminar generally does not constitute publication if there was no right of further diffusion, reproduction, distribution, or sale by the participants.

- Distributing copies of a speech that are intended solely to assist the press in covering that event has been deemed a limited publication under the Copyright Act of 1909 (*i.e.,* not a publication). However, under the current statutory definition, offering to distribute copies to different news outlets for the purpose of further distribution, public performance, or public display could constitute publication.

Moreover, a work may be considered unpublished if, in addition to communicating a work to a definitely selected group and for a limited purpose, the copyright owner imposed any express or implied restrictions concerning the disclosure of the content of that work, such as placing a statement on the copies or phonorecords indicating that distribution of the work is limited or restricted in some way, such as "Confidential— these specifications are for internal office use only."

### 1905.2 The Means of Distribution

As discussed in Section 1902, publication occurs when copies or phonorecords are distributed to the public by means of a sale or other transfer of ownership, such as giving copies away. Likewise, publication occurs when copies or phonorecords are distributed by means of rental, lease, or lending (*i.e.*, where the copies or phonorecords change hands, but there is no change in the ownership of those copies or phonorecords).

Distributing copies or phonorecords by any other means does not constitute publication. In particular, the legislative history states that "any form or dissemination in which a material object does not change hands… is not a publication no matter how many people are exposed to the work." H.R. Rep. No. 94-1476, at 138 (1976), *reprinted in* 1976 U.S.C.C.A.N. at 5754.

### 1905.3 Deposit for Registration in the U.S. Copyright Office

Depositing unpublished copies or phonorecords with the U.S. Copyright Office for the purpose of registering a claim to copyright does not constitute publication.

### 1906 Offering to Distribute Copies or Phonorecords of a Work

As discussed in Section 1902, offering to distribute copies or phonorecords to a group of persons for the purpose of further distribution, public performance, or public display constitutes publication, provided that the offer is made by or with the authority of the copyright owner. These issues are discussed in Sections 1906.1 through 1906.3 below.

Case 3:20-cv-00451-CEA-DCP   Document 263-4   Filed 03/20/23   Page 11 of 13   PageID #: 12742

### 2306.4 Registration Numbers Listed in the Recorded Document

When indexing a document, the recordation specialist will include all the registration numbers that are listed in the document or the electronic title list for that document (if any). If the remitter submits a document together with an electronic title list, the specialist will transcribe the registration numbers using the format specified in the electronic title list, even if the registration numbers are presented in a different format in the actual document. For information concerning the proper format for preparing an electronic title list, see Section 2309.13(A)(4).

Registration numbers typically appear in the online public record for a particular document as part of the title field (where they are listed after the title of each work) as well as in a separate field titled "Registration Number Not Verified." In the case of a document involving more than one work, registration numbers typically appear in the title and registration number fields of the online public records for those works, and those records typically are linked to the online public record for the document.

To search for a registration number in the Office's online database, the registration number must be entered in a twelve-character string, with every letter of the alphabetic prefix capitalized and with zeroes inserted between the alphabetic prefix and the numerical portion of the registration number. For example, the prescribed format for a registration for a published visual art work consisting of the alphabetic prefix "VA" and the numbers "999-9-999" would be "VA0009999999." By contrast, the prescribed format for a registration for an unpublished visual art work consisting of the alphabetic prefix "VAu" and the numbers "999-9-999" would be "VAU009999999."

Often times, registration numbers are presented in documents using formats that do not follow the prescribed format for searching the online public record. If a registration number appears in a document with spaces, hyphens, or other punctuation (instead of following the prescribed format), the recordation specialist will remove those characters when he or she indexes the document. For example, if a registration number is written in a document as "VAu 9-999-999" the specialist will remove the hyphens, capitalize the letter "u," insert zeroes, and index the registration number as VAU009999999 (rather than "VAu 9-999-999").

To speed the indexing of documents submitted for recordation, the Office strongly encourages parties to use the prescribed format when including registration numbers in a document that will be submitted for recordation. The following examples illustrate the prescribed format for searching for a registration number consisting of the numerals 9999999.

*Published Literary Works:*

Correct format: TX0009999999
Incorrect format: TX 999-9-999

*Published Work of the Performing Arts:*

Correct format: PA0009999999
Incorrect format: PA 9999999


*Unpublished Work of the Visual Arts:*

Correct format: VAU009999999
Incorrect format: VAu 999 9 999


*Renewal Registration:*

Correct format: RE0009999999
Incorrect format: RE9999999


*Musical Work Published Before January 1, 1978:*

Correct format: E00009999999
Incorrect format: Registration No. E 999-9-999


*Unpublished Dramatic Work Registered Before January 1, 1978:*

Correct format: DU0009999999
Incorrect format: Registration Number Du 9999999


*Preregistration:*

Correct format: PRE009999999
Incorrect format: Preregistration PRE 999-9-999


**NOTE**: Currently, when searching the online public record for recorded documents that contain a particular registration number, the user must conduct a "keyword" search rather than a "registration number" search. A search by "registration number" will retrieve the online public record for that registration and any other registration numbers that have been cross-referenced with that registration, such as a supplementary registration. However, a "registration number" search will not retrieve any recorded documents pertaining to that registration number.

### 2306.5 Parties Named in the Recorded Document

As a general rule, the recordation specialist will include the names of all the parties that are listed in the recorded document, even if one or more of those parties did not execute the document.