# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., | § § § | Case No. 3:20-cv-00451-CEA-DCP |
| Plaintiffs, | § § | |
| v. | § § | **Jury Demand** |
| BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; AND EXTREME NETWORKS, INC., | § § § § | |
| Defendants. | § § § | |

## PLAINTIFFS SNMP RESEARCH, INC.'S AND SNMP RESEARCH INTERNATIONAL, INC.'S OPPOSITION TO EXTREME NETWORKS, INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT

11210902

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    THE AMENDED COMPLAINT ....................................................................... 3

III.   ARGUMENT ....................................................................................................... 5

     A.     Extreme's Statute Of Limitations Argument Fails ................................ 5

          1.     The Discovery Rule Applies And The Discovery Allegations
               Are Unchallenged ..................................................................... 5

          2.     *Petrella* Did Not Reverse The Sixth Circuit (And Eight Other
               Circuits) *Sub-Silencio* ............................................................. 6

     B.     Extreme's Argument Directed At One Portion Of Section 16 Of The
          2001 Extreme License Fails Both Procedurally And On The Merits ........ 13

     C.     Extreme's Attack On The ▇▇▇ Provision In The 2001 Extreme
          License Is Both Premature And Wrong ....................................................... 19

     D.     Extreme's Economic Loss Doctrine Argument Is Wrong, And Now Is
          Not The Time To Decide It ............................................................................ 23

# TABLE OF AUTHORITIES**

**Page(s)**
**\*\*All emphasis herein added unless otherwise noted**

**Cases**

*Allied Sound, Inc. v. Neely*,
909 S.W.2d 815 (Tenn. Ct. App. 1995)...................................................................25

*Bachour v. Mason*,
2013 WL 2395027 (Tenn. Ct. App. May 30, 2013) .................................................20

*BedRoc Ltd., LLC v. United States*,
541 U.S. 176 (2004).....................................................................................................7

*Bilek v. Fed. Ins. Co.*,
8 F.4th 581 (7th Cir. 2021) .......................................................................................14

*BP Prods. v. Premier Oil Co.*,
No. 2:11-cv-2162-JPM, 2013 WL 1908061 (W.D. Tenn. May 7, 2013) ...............20

*Bridgeport Music, Inc. v. Rhyme Syndicate Music*,
376 F.3d 615 (6th Cir. 2004) ................................................................................5, 6

*Brunson v. Capitol CMG, Inc.*,
No. 3:20-CV-01056, 2022 WL 3691022 (M.D. Tenn. Aug. 25, 2022)...............6, 21

*Commercial Painting Company v. The Weitz Company*,
2022 WL 3149615 (Tenn. Aug. 4, 2022).............................................................24, 25

*Commercial Painting Company v. The Weitz Company*,
2022 WL 737468 (Tenn. App. Ct. Mar. 11, 2022) .............................................24, 25

*Davis v. Lincoln Nat'l Life Ins. Co.*,
1998 WL 22824 (Tenn. Ct. App. March 10, 1988) .................................................20

*DeNune v. Consol. Cap.*,
2004 WL 1474653 (N.D. Ohio May 21, 2004)........................................................19

*Design Basics, LLC v. Forrester Wehrle Homes, Inc.*,
305 F. Supp. 3d 788 (N.D. Ohio 2018).....................................................................11

*Driscoll Firm v. Fed. City L. Grp.*,
2023 WL 2375218 (N.D. Ill. Mar. 6, 2023)..............................................................14

*Fam. Loan Co. of Nashville v. Hickerson*,
73 S.W.2d 694 (1934)................................................................................................22

*Frank Betz Assocs., Inc. v. J.O. Clark Const., L.L.C.*,
No. CIV.A 3:08-CV-00159, 2010 WL 2253541 (M.D. Tenn. May 30, 2010)..........6

*Guesthouse Int'l v. British Am. Props.*,
   No. 3:07-0814, 2009 WL 278214 (M.D. Tenn. Feb. 5, 2009)..................................................20

*Guiliano v. Cleo, Inc.*,
   995 S.W. 2d 88 (Tenn. 1999).........................................................................................20

*Hale v. Hale*,
   41 Tenn. 233 (1860)......................................................................................................23

*Hall v. Eichenlaub*,
   559 F. Supp. 2d 777 (E.D. Mich. 2008).........................................................................12

*Hamilton v. Moore*,
   26 Tenn. 35 (1846)........................................................................................................22

*Harris v. Coles*,
   60 S.W.3d 848 (Tenn. Ct. App. 2001)............................................................................23

*Hinman v. Brightview Landscape Dev., Inc.*,
   2023 WL 2254525 (M.D. Tenn. Feb. 7, 2023)................................................................24

*Kelso Oil Co., v. East West Truck Stop, Inc.*,
   102 S.W.3d 655 (Tenn. Ct. App. 2002)..........................................................................23

*Kingsport Pavilion, LLC v. Crown Enterprises, Inc.*,
   No. 2:08-CV-114, 2008 WL 11322220 (E.D. Tenn. Nov. 5, 2008)................................19

*Local 96 Am. Postal Workers Union, v. City of Memphis*,
   361 F.3d 898 (6th Cir. 2004) ...................................................................................21, 22

*Milan Supply Chain Solutions, Inc. v. Navistar*
   627 S.W. 3d 125 (Tenn. 2021) .............................................................................23, 24, 25

*Mitchell v. Capitol Recs.*,
   LLC, 287 F. Supp. 3d 673 (W.D. Ky. 2017) .................................................................11

*Moratorium Now! v. Detroit 300 Conservancy*,
   2015 WL 11005026 (E.D. Mich. July 22, 2015) ............................................................19

*Morgan v. Wayne Cnty.*,
   33 F.4th 320 (6th Cir. 2022) .........................................................................................24

*Morris v. Medtronic, Inc.*,
   2023 WL 2387497 (E.D. Mo. March 7, 2023) ...............................................................14

*N. Am. Dismantling Corp. v. AEP Generation Res., Inc.*,
   2018 WL 4690791 (S.D. Ohio Sept. 28, 2018) ..............................................................19

*Navarro v. Procter & Gamble Co.*,
   515 F. Supp. 3d 718 (S.D. Ohio 2021) ..........................................................................12

Case 3:20-cv-00451-CEA-DCP   Document 281   Filed 04/06/23   Page 4 of 31   PageID #: 13284

*Nealy v. Warner Chappell Music, Inc.*,
    60 F.4th 1325 (11th Cir. 2023) .................................................................11, 12, 13

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    572 U.S. 663 (2014) .................................................................................. *passim*

*In re Pyramid Operating Auth., Inc.*,
    144 B.R. 795 (Bankr. W.D. Tenn. 1992) .................................................................17

*In re River City Resort, Inc. v. Henry*,
    No. 1:14-bk-107450, 2022 WL 2445422 (Bankr. E.D. Tenn. July 5, 2022) .........................20

*Ross v. Kirkpatrick*,
    No. 3:20-CV-00536, 2021 WL 533753 (M.D. Tenn. Feb. 12, 2021) .....................................19

*In re Skymark Prop.*,
    597 B.R. 363 (Bankr. E.D. Mich. 2019) .............................................................20, 22

*Sohm v. Scholastic, Inc.*,
    959 F.3d 39 (2d Cir. 2020) .............................................................................10, 12

*Starz Ent., LLC v. MGM Domestic Tele. Distrib.*,
    39 F.4th 1236 (9th Cir. 2022) ...................................................................9, 10, 11, 12

*Tallent v. Fox*,
    141 S.W.2d 485 (1940) ......................................................................................25

*United States v. Wehunt*,
    230 F. Supp. 3d 838 (E.D. Tenn. 2017) ....................................................................12

*United Tel. Se., LLC v. Bristol Tennessee Essential Servs.*,
    No. 2:14-CV-242, 2015 WL 13186245 (E.D. Tenn. Aug. 5, 2015) .......................................13

*Venezia v. 12th & Div. Prop.*,
    685 F. Supp. 2d 752 (M.D. Tenn. 2010) ....................................................................21

*Wischerman Partners, Inc. v. Nashville Hospitality Capital, LLC*,
    2022 WL 2231934 (6th Cir. June 21, 2022) ................................................................23

**Statutes**

17 U.S.C. § 507(b) .................................................................................. *passim*

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................... *passim*

Fed. R. Civ. P. 56 ....................................................................................20

Case 3:20-cv-00451-CEA-DCP   Document 281   Filed 04/06/23   Page 5 of 31   PageID #: 13285

Plaintiffs SNMP Research, Inc. ("SNMP Research") and SNMP Research International, Inc. ("SNMP International") (collectively, "Plaintiffs") respectfully submit this Memorandum of Law in Opposition to Defendant Extreme Networks, Inc.'s ("Extreme") Motion to Dismiss the Amended Complaint ("Motion"), Dkt. 277.

## I.    INTRODUCTION[1]

During discovery in this matter, Plaintiffs learned that Extreme has been distributing Plaintiffs' software that was licensed to Extreme in over 40 of Extreme's product families for more than 20 years, while only reporting and paying royalties for a single product.  Based on discovery to date, Extreme reported and paid Plaintiffs for the distribution of only ███ total units of that one product (Ex. D to the Amended Complaint, Dkt. 246-3), while the actual number of product units Extreme has distributed containing Plaintiffs' software is approximately ██████, and even that may understate the full scope of Extreme's prior breach and infringement.  Moreover, despite the termination of its use and redistribution rights under the license, Extreme has refused to return Plaintiffs' source code and kept right on using and redistributing Plaintiffs' copyrighted software.  Extreme's Motion does not dispute any of this, and it also does not dispute that Plaintiffs have properly alleged facts showing entitlement to relief under each claim that Plaintiffs have brought.  Instead, Extreme's Motion improperly attacks portions of claims, which is procedurally improper, based on arguments and proffered contract interpretations that are both meritless and not properly the subject of a Rule 12(b)(6) motion to dismiss. The Motion thus fails both procedurally and substantively and should be denied in its entirety.

Extreme's first attack, a statute of limitations attack on a portion of Plaintiffs' copyright claim, fails procedurally because, even if it were accepted, it would not resolve an entire claim as Rule 12(b)(6) requires.  It also fails substantively under binding Sixth Circuit precedent and well-reasoned

---

[1] All capitalized terms not defined herein are defined in the Amended Complaint (Dkt. 244, "AC").

precedent from the Ninth and Eleventh Circuits, which hold that the discovery rule applies to copyright infringement claims. Given that Extreme does not challenge Plaintiffs' pleading of the discovery rule (*see* AC ¶¶ 87-99), the Motion's statute of limitations attack fails.

Extreme's second attack asks the Court to interpret one paragraph of one section of the October 22, 2001 License Agreement between Extreme and SNMP International ("2001 Extreme License," Dkt. 246-2, Ex. C to Amended Complaint) which states that Extreme owes "any amount received" on account of "unauthorized use or distribution of" the licensed software. First, this requested piecemeal interpretation would not completely resolve any claim, so it is not a proper use of Rule 12(b)(6). It also fails on the merits because Extreme's contract interpretation is wrong.

Extreme's third attack asks for an advance opinion on how to calculate amounts owed in the event the jury finds in favor of Plaintiffs on their claim for breach of the 2001 Extreme License. Extreme asserts that certain amounts (but not all amounts) owed under the 2001 Extreme License constitute either "usury" and/or are liquidated damages that are "against public policy." Like Extreme's other attempts "to limit [Plaintiffs'] claims," this requested advance opinion regarding one portion of one provision of the 2001 Extreme License would not completely resolve any claim for relief and is thus an improper use of Rule 12(b)(6). Extreme's argument also fails substantively because it is based on a flawed contractual interpretation.

Extreme's final attack argues that Plaintiffs' fraud claim is barred by the "economic loss doctrine." However, the Tennessee Supreme Court has <u>never</u> applied that doctrine outside of the products liability context. Extreme relies on a Tennessee Court of Appeals case that extended the doctrine outside of products liability to a construction defect case. However, the Tennessee Supreme Court has granted review of that decision. As other courts have done when faced with dispositive motions asserting the economic loss doctrine outside the products liability context, this Court should

wait until the Tennessee Supreme Court has rendered its pending opinion before addressing this issue.

For all of these reasons and those discussed below, the Motion should be denied in its entirety.

## II. THE AMENDED COMPLAINT[2]

As noted above, SNMP International and Extreme are parties to the 2001 Extreme License (which Extreme refers to as the "Legacy License"), wherein SNMP International granted Extreme a limited license with respect to particular portions of Plaintiffs' software. AC ¶ 68, Ex. C. The 2001 Extreme License limited Extreme's internal use and binary redistribution rights to a "single product developed at several coordinated development sites using a single particular combination of target processor, operating system, and development tools platform." *Id.* ¶ 70. Extreme elected to pay royalties on a per-unit basis, meaning as quantities rose, the total payment owed rose. *Id.* ¶ 87.

Consistent with the "single product" limitation, for eleven years Extreme reported royalties on a single product, namely, the BlackDiamond 10808 10-Slot Chassis product. *Id.* ¶ 71. Extreme never reported or paid royalties on any other product under the 2001 Extreme License. *Id.* Multiple times during the parties' relationship, Extreme confirmed in writing that it was only selling, and had only sold, units of a single product that contained Plaintiffs' software (*i.e.*, the BlackDiamond 10808 10-Slot Chassis product). *Id.* ¶ 73. Unbeknownst to Plaintiffs, while Extreme was reporting and paying royalties on just one product (which was all that was licensed), Extreme was in fact using Plaintiffs' software, according to Extreme's own admissions, in approximately 40 "product families" (each family could contain multiple products) and not paying any royalties on any of that usage. *Id.* ¶¶ 71-74.

Plaintiffs also licensed a portion of their software to Extreme's former co-defendant, Brocade. *Id.* ¶ 34. Brocade breached that agreement by disclosing Plaintiffs' source code to Extreme, and both

---

[2] Plaintiffs have settled with defendants Broadcom Inc. ("Broadcom") and Brocade Communications Systems LLC ("Brocade") and all claims against them have been dismissed with prejudice. Dkt. 268. Consequently, the Amended Complaint is now solely against Extreme.

Brocade and Extreme then sold products built from that source code (and Extreme is still selling those products). *Id.* ¶¶ 41-50. As explained in Plaintiffs' previous filings in this matter, Plaintiffs only discovered this state of affairs when Broadcom, Brocade, and Extreme asked Plaintiffs to consent to a purported "assignment" of the Brocade license, which consent was never given. *Id.* ¶¶ 44-45. After efforts to resolve the Brocade assignment issue failed, Plaintiffs filed the original complaint in this action. Dkt. 1. At the time of the filing of that complaint, Plaintiffs did not know about Extreme's breach of the 2001 Extreme License or its fraudulent statements hiding its true scope of use of the software provided under that license. AC ¶¶ 72, 87-97.

On April 22, 2022, Magistrate Judge Poplin ordered Extreme to identify all of its products that contain Plaintiffs' software. *Id.* ¶ 89.[3] Despite this order, Extreme's written discovery responses refused to disclose products that Extreme had sold (and was still selling) which contain Plaintiffs' software on the purported ground that Extreme had a "license" to do so. *See id.* ¶¶ 87-90. Given Extreme's presuit representations to the contrary, Extreme's discovery responses, which violated Judge Poplin's order, aroused Plaintiffs' suspicion in mid-2022. *Id.* ¶ 90.[4] As a result, Plaintiffs purchased some of Extreme's products (at a cost to Plaintiffs of thousands of dollars) and found Plaintiffs' software in the products—right down to the inclusion of Plaintiffs' copyright notice. *Id.* ¶ 91.

When Plaintiffs confronted Extreme with these blatant contradictions, Extreme first claimed it had acquired a "license" to sell these products when it acquired a company called Enterasys Networks, Inc. ("Enterasys"). *Id.* ¶¶ 91-92. When Plaintiffs reminded Extreme of its own pre-suit representation

---

[3] Dkt. 131 at 7-9, 11 (ordering Extreme to "fully respond" to Interrogatories 1-2, and ruling that "Plaintiff's discovery requests relate to Extreme's products—whether or not they are specifically identified in the Complaint—that Plaintiff alleges are improperly incorporating its software. This goes to the heart of Plaintiff's copyright infringement claim.").

[4] On December 22, 2022, Judge Poplin ordered Extreme, for the second time, to identify all of its products that contain Plaintiffs' software. Dkt. 229 at 2 ("[T]he Court has previously ordered Extreme to produce this information as explained in its Memorandum and Order.").

to Plaintiffs that the Enterasys-licensed products went "end of sale" in 2011, Extreme changed its story and claimed to be selling products pursuant to the 2001 Extreme License, which flatly contradicted Extreme's pre-suit representations. *Id.* ¶¶ 92-93. SNMP International sent Extreme a notice of breach of the 2001 Extreme License on September 19, 2022. *Id.* ¶¶ 80, 93. SNMP International then gave Extreme time to cure. *Id.* ¶ 81. Extreme failed to cure. *Id.* ¶ 82. Plaintiffs then filed their motion for leave to amend the complaint to add the cause of action for breach of the 2001 Extreme License and the cause of action for fraud. Dkt. 222. This Court granted that motion on March 1, 2023. Dkt. 243.

## III.    ARGUMENT

### A.    Extreme's Statute Of Limitations Argument Fails

#### 1.    The Discovery Rule Applies And The Discovery Allegations Are Unchallenged

The statute of limitations for copyright infringement actions is set forth in 17 U.S.C. § 507(b): "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." Thus, the salient question here is when an infringement claim has "accrued" under the operative statute. The Sixth Circuit has answered that question:

> A civil action under the Copyright Act must be "commenced within three years after the claim accrued." 17 U.S.C. § 507(b). <u>A cause of action accrues when a plaintiff knows of the infringement or is chargeable with such knowledge.</u>

*Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004). This is the same discovery rule applied by courts across the country. Although the Supreme Court "ha[s] not passed on the question, nine Court of Appeals have adopted, as an alternative to the incident of injury rule, a 'discovery rule,' which starts the limitations period when 'the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis of the claim.'" *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 n.4 (2014).

Extreme's acts of infringement associated with the Brocade transfer all took place within three

years of the filing date of the Complaint, so they are not at issue with respect to Extreme's statute of limitations argument. *See* AC ¶¶ 41-50. As for Extreme's other acts of infringement (*i.e.*, unauthorized use and redistribution of Plaintiffs' software licensed under the 2001 Extreme License), which have been taking place since approximately 2004, the Amended Complaint contains detailed allegations setting forth: (i) how Extreme hid that infringement and made affirmative misrepresentations to Plaintiffs about it, upon which Plaintiffs relied; and (ii) how and when Plaintiffs discovered Extreme's infringement thanks in part to Court-ordered discovery during this litigation and just a few months before the Amended Complaint was filed, thus well within three years of discovery, *i.e.*, "accrual." *Id.* ¶¶ 87-99. These allegations are far more than sufficient to invoke the discovery rule. *See Bridgeport Music*, 376 F.3d at 621 (discovery rule means "when a plaintiff knows of the infringement or is chargeable with such knowledge"); *Brunson v. Capitol CMG*, 20-CV-01056, 2022 WL 3691022, at *5 (M.D. Tenn. Aug. 25, 2022) (the discovery rule is the default rule in copyright cases, and so a plaintiff is not "required to affirmatively plead the date of discovery to avoid a statute-of-limitations defense.").

Indeed, the Motion does not challenge any of these allegations as being insufficient to invoke the discovery rule, nor does the Motion dispute that the discovery rule applies in the Sixth Circuit. *See* Mot. at 2 n.2 ("The Sixth Circuit has traditionally applied the discovery rule."). *See also Frank Betz Assocs., Inc. v. J.O. Clark Const., L.L.C.*, No. CIV.A 3:08-CV-00159, 2010 WL 2253541, at *17 (M.D. Tenn. May 30, 2010) ("there is simply no doubt that the Sixth Circuit has repeatedly and unambiguously held that the discovery rule applies to the Copyright Act's statute of limitations."). Consequently, under binding Sixth Circuit precedent, SNMP's copyright infringement claim was filed within three years of its accrual and is thus timely. That ends the statute of limitations inquiry.

### 2. *Petrella* Did Not Reverse The Sixth Circuit (And Eight Other Circuits) *Sub-Silencio*

Without even saying so outright, Extreme contends that the Supreme Court in *Petrella* reversed

the Sixth Circuit and eight other Circuits by gutting the <u>statute of limitations</u>' discovery rule (a) without

even articulating that result and (b) in the context of addressing the different issue of <u>laches</u>.[5]

According to Extreme, this Court should interpret *Petrella* as imposing a bar on all damages occurring

more than three years prior to the filing of a complaint, even if the complaint was filed within three

years of accrual in a discovery rule case, *i.e.*, within three years of discovery of the infringement.

Extreme is wrong, as demonstrated by the governing statute, two well-reasoned Circuit Court of

Appeals opinions, and the overwhelming majority of district courts to have addressed the issue.

The statute is straightforward and unambiguous: "No civil action shall be maintained . . .

unless it is commenced within three years after the claim **accrued**." 17 U.S.C. § 507(b); *see also*

*BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory

interpretation requires [courts] to 'presume that the legislature says in a statute what it means and

means in a statute what it says.'"). The parties agree that, under Sixth Circuit precedent, a copyright

infringement action does not "accrue" until discovery. *See, e.g.*, Mot. at 7 n.2 ("The Sixth Circuit has

traditionally applied the discovery rule."). Consequently, under a plain reading of the governing statute

and application of binding Sixth Circuit precedent, if a civil action for copyright infringement is

brought within three years of discovery (*i.e.*, "accrual"), it is timely. Period. There is no separate

statutory or other bar based on how far back damages go compared to the filing date of the complaint.

*Petrella* did not change this result; indeed, it did not even address the statute of limitations for

copyright infringement in a discovery rule case. In *Petrella,* the copyright holder was aware that MGM

had engaged in numerous acts of infringement over nearly two decades, which was obvious given that

the work at issue was the famous movie *Raging Bull*. 572 U.S. at 674-75. Given her awareness of the

---

[5] As discussed in more detail below, *Petrella* expressly stated it was <u>not</u> addressing the discovery rule.
*See* 572 U.S. at 670 n.4.

infringement, the plaintiff (Petrella) did not dispute that she had constructive knowledge of each act of infringement as it occurred, meaning each claim "accrued" immediately upon the act of infringement giving rise to it; injury and discovery were simultaneous. *See id.* at 675-76. But because each new act of infringement gave rise to a new claim, Petrella argued that she could sue for the acts of infringement that had occurred within three years of filing suit. In response, MGM contended that because Petrella had elected not to sue for earlier acts of infringement, the doctrine of laches barred all claims, even those accruing during the three years right before the complaint was filed (and the only ones that Petrella sued over given her constructive knowledge of all prior acts).

The Supreme Court rejected MGM's argument, holding that a copyright holder has three years from the date on which each individual claim accrues to bring suit on that particular claim, and that the doctrine of laches cannot be used to shorten the three year statutory period. *Id.* at 667. *Petrella* was thus <u>not</u> about the discovery rule. Indeed, laches and the discovery rule are polar opposites. In a discovery rule case, the plaintiff is unaware of infringing acts prior to discovery. In a laches case, the plaintiff is by definition aware of infringing acts, as it is that very awareness (and failure to sue despite it) that gives rise to laches in the first place. In a laches case, both injury and discovery occur at the same time. In a discovery rule case, injury occurs first and discovery occurs later. Thus, in *Petrella*, the Supreme Court had no occasion to address the discovery rule at all, much less to effectively eviscerate it (despite saying it was not addressing it and despite expressly recognizing that nine Circuits apply it), and Extreme's contrary position is untenable.

Indeed, the Ninth Circuit has already effectively disposed of Extreme's argument:

Since [*Petrella*], defendants accused of copyright infringement have seized upon certain language in *Petrella* to argue that the Court also did away with the discovery rule. Most courts, including the district court here, have rejected that argument, reasoning that *Petrella* addressed only the availability of laches in cases where the copyright owner is seeking damages for infringing acts that occurred during the three-year window before a claim is filed. Moreover, because *Petrella* noted, but did not

pass upon, the discovery rule, any language in that opinion discussing relief beyond that window is dicta and did not affect the viability of the discovery rule. Because we agree with the district court that the discovery rule of accrual of copyright claims is alive and well, we affirm.

*Starz Ent., LLC v. MGM Domestic Tele. Distrib.*, 39 F.4th 1236, 1238 (9th Cir. 2022). *Starz* then systematically exposed the numerous failings in the argument Extreme now makes.

The Ninth Circuit started with the language of the governing statute, which bars copyright actions unless they are "commenced within three years after the claim accrued." *Id.* at 1239. It then analyzed prior jurisprudence concerning when a copyright claim "accrues" under the statute, and determined (as have eight other Circuits, including the Sixth) that "§ 507(b) does not prohibit the recovery of damages for infringing acts that occurred outside the three-year window so long as 'the copyright plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances.'" *Id.* at 1240. "In other words, a claim for copyright infringement may accrue when a copyright owner discovers, or reasonably should have discovered the infringement." *Id.* at 1240-41.

The Ninth Circuit then addressed the contention that Extreme makes here, which is that the discovery rule that the Ninth Circuit and eight other Circuits apply was supposedly reversed, *sub-silencio*, by *Petrella*. *Starz* first noted that, in *Petrella*, the plaintiff (who was at all times aware of the infringement in that case, of the famous movie *Raging Bull*) had not even invoked the discovery rule. Instead, the plaintiff only sought to recover for infringing acts that occurred three years prior to the filing date of the complaint. The only issue in *Petrella* was the defendant's contention that the doctrine of laches barred that relief (again sought only for the three-year period prior to filing of the complaint), which the Supreme Court rejected. Consequently, the Ninth Circuit held that "[t]he discovery rule had no place in the [*Petrella*] Court's laches analysis, nor could it[,]" *id.* at 1241, and further that:

> because the *Petrella* Court was solely concerned with laches—a doctrine addressing concerns about delay when plaintiffs know of their claims, but sleep on their legal rights—it could not have intended its language to address the situation where a copyright holder does not know about the infringing act to which the discovery rule,

not the incident of injury rule, applies.

*Id.* at 1242.

The Ninth Circuit then addressed *Sohm v. Scholastic, Inc.*, 959 F.3d 39 (2d Cir. 2020), upon which Extreme relies. In *Sohm*, the Second Circuit (in a two-page portion of its opinion) held that, under *Petrella*, the discovery rule applies to copyright claims; but that there is a separate three-year damages "lookback period" which is "explicitly dissociated" from the limitations period in 17 U.S.C. § 507(b). *Sohm*, 959 F.3d at 51-52. The only authority the Second Circuit cited in support of its holding were rulings from a S.D.N.Y. district judge and magistrate judge, which the Second Circuit recognized "conflict[ed]" with a ruling from a different S.D.N.Y. district judge. *Id.*

*Starz* rejected *Sohm*. The Ninth Circuit explained that *Sohm*'s approach cannot be reconciled with the governing statute, which expressly states that a claim is timely if it accrued less than three years before the complaint was filed:

> Section 507(b)'s limitation period is not based on the date the complaint is filed, but instead limits civil actions to "three years after the claim accrued". . . . Nowhere in § 507(b), or anywhere else in the Copyright Act, is there any reference to a separate three-year damages bar based on the complaint's filing date. The [Supreme] Court did not disregard the plain text of the Copyright Act and invent a third time prescription for damages in a case where the issue was not before it.

*Starz*, 39 F.4th at 1245-46. Moreover:

> applying a separate damages bar based on a three-year "lookback period" that is "explicitly dissociated" from the Copyright Act's statute of limitations in § 507(b) would eviscerate the discovery rule. There is no reason for a discovery rule if damages for infringing acts of which the copyright owner reasonably becomes aware years later are unavailable. This case presents a textbook example of the absurdity of such a rule. . . . Moreover, recognizing a damages bar would render the "discovery rule" functionally identical to the "incident of injury rule."

*Id.* at 1244.

The Ninth Circuit is not alone in rejecting *Sohm*'s interpretation of *Petrella*. Less than two months ago, the Eleventh Circuit, in a detailed opinion dedicated just to this issue, rejected *Sohm*'s

approach and sided with the Ninth Circuit. *Nealy v. Warner Chappell Music, Inc.*, 60 F.4th 1325, 1331 (11th Cir. 2023) ("We agree with the Ninth Circuit and hold that a copyright plaintiff may recover retrospective relief for infringement occurring more than three years before the lawsuit's filing so long as the plaintiff's claim is timely under the discovery rule."). Among other things, the Eleventh Circuit noted that the Court in *Petrella* expressly "preserved the question of whether the discovery rule governs the accrual of claims . . . [a]nd recognized that nine of our sister circuits apply the discovery rule . . . It would be inconsistent with *Petrella's* preservation of the discovery rule to read *Petrella* to bar damages for claims that are timely under the discovery rule." *Id.* at 1333. The Eleventh Circuit further noted:

> There is no escaping the conclusion that the defendants' position would gut the discovery rule by eliminating any meaningful relief for timely claims, even though the [Supreme] Court expressly left open whether a discovery rule applies to copyright claims. In short, the defendants' reading of *Petrella* ignores the question presented, conflates the Court's discussion of claim accrual under the injury rule with the availability of damages under the discovery rule, and cannot be squared with the Court's express preservation of the discovery rule. For these reasons, we believe the Supreme Court in *Petrella* did not bar copyright damages in actions that are timely under the discovery rule.

*Id.* at 1334.

Although this Court need look no further than *Starz* and *Nealy* to reject Extreme's position, a host of other considerations yield the same conclusion. There is also authority to the same effect within the Sixth Circuit. *See, e.g.*, *Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, 305 F. Supp. 3d 788, 794 n.2 (N.D. Ohio 2018); *Mitchell v. Capitol Recs.*, LLC, 287 F. Supp. 3d 673, 678 (W.D. Ky. 2017). In addition, "[t]he **overwhelming majority** of district courts in discovery rule circuits has rejected the concept of a damages bar in discovery rule cases." *Starz*, 39 F.4th at 1244 & n.4 (collecting cases). And most importantly, as demonstrated above, the Sixth Circuit has held in binding precedent that the discovery rule applies to copyright claims. It would be patently inappropriate—especially in light of *Starz* and *Nealy*—for any district court within the Sixth Circuit to presume that *Petrella* silently reversed the Sixth Circuit (and eight other Circuits) by, in the words of the Eleventh Circuit, "gut[ting]"

the discovery rule.  *See United States v. Wehunt,* 230 F. Supp. 3d 838, 846 (E.D. Tenn. 2017) (a district

court must "be extremely careful in concluding that circuit precedent is no longer good law," and must

be "powerfully convinced that the circuit will overrule itself at the next available opportunity. . . . *[S]ub*

*silentio* overruling of a Court of Appeals decision by a Supreme Court case resting on different facts is

a rare occurrence[.]") (citations omitted); *see Hall v. Eichenlaub*, 559 F. Supp. 2d 777, 781-82 (E.D.

Mich. 2008) ("Absent a clear directive from the Supreme Court . . . a district court, is not at liberty to

reverse the circuit's precedent.  In the absence of Supreme Court precedent directly on point, a district

court should decline to 'underrule' established circuit court precedent.") (citations omitted).

In its Motion, Extreme cites *Navarro v. Procter & Gamble Co.,* 515 F. Supp. 3d 718 (S.D.

Ohio 2021) and claims that it "explicitly rejected the reasoning of these cases" (Mot. at 8), pointing to

*Nealy* and *Starz*.  Actually, *Navarro* was decided in 2021, before either *Starz* or *Nealy* were decided.

So, neither *Navarro* nor any of the other decisions that Extreme cites had the benefit of either the Ninth

Circuit or the Eleventh Circuit's decisions rejecting *Sohm*.  Moreover, the *Navarro* court

"<u>acknowledg[ed] that [its] result is at odds . . . with pre-*Petrella* Sixth Circuit law</u>."  515 F. Supp. 3d at

762.**6**  As demonstrated above, it is not the role of a district court to assume that the Supreme Court

reversed the Sixth Circuit unless it is crystal clear that happened in a directly on-point case, and that is

not the case here, especially post-*Starz* and *Nealy*.

_____

**6** *Navarro* also acknowledged that:  (i) "Settled Sixth Circuit precedent holds that a discovery rule
applies to copyright infringement actions.  What is more, every circuit court to consider the issue has
reached the same result," 515 F. Supp. 3d at 757-58; (ii) "*Petrella* is not really a case directed at the
statute of limitations.  Rather it principally addresses whether the equitable doctrine of laches can bar
relief on a copyright infringement claim even when that claim is brought within the limitations period. .
. . Thus, to read *Petrella* as abrogating the discovery rule would conflict with the Supreme Court's own
understanding of its decision," *id.*at 758-59; and (iii) "This Court acknowledges that, thus understood, it
would appear that *Petrella* functionally overrules the discovery rule, even if the *Petrella* Court in
footnote four declines to do so explicitly," *id.* at 761.  *Navarro*'s decision to nevertheless hold that
*Petrella* essentially overruled the Sixth Circuit was insufficiently deferential to the Sixth Circuit.

In summary, under 17 U.S.C. § 507(b), if an action is filed within three years of "accrual," it is timely, and the Sixth Circuit has long held that the discovery rule applies to determine the date of accrual. The Motion does not even argue that the Amended Complaint's discovery allegations, which show discovery (and thus accrual) occurred just a few months before the Amended Complaint was filed, are deficient. Consequently, the Motion's statute of limitations argument should be denied.

### B.    Extreme's Argument Directed At One Portion Of Section 16 Of The 2001 Extreme License Fails Both Procedurally And On The Merits

To plead a claim for breach of contract, a plaintiff must plead, in a plain and concise manner, the existence of a contract, its breach, and damages. *See United Tel. Se., LLC v. Bristol Tennessee Essential Servs.*, No. 2:14-CV-242, 2015 WL 13186245, at *2 (E.D. Tenn. Aug. 5, 2015). Extreme's Motion does not contend that SNMP International has failed to plead any of these elements. For instance, Extreme does not dispute that it sold products containing Plaintiffs' software under the 2001 Extreme License without paying royalties that it owed, and has refused to return Plaintiffs' software, and that these breaches (as well as others identified in the Amended Complaint) have caused Plaintiffs damages. Instead, Extreme challenges a "subset of the breach of contract claim" (Mot. at 11 n.4) to preclude a portion of one remedy/monetary right under the 2001 Extreme License (*id.* at 10). In particular, Extreme's Motion asks the Court to interpret a portion of one paragraph of the contract (Section 16, *see* Mot. at 10-14), apparently because Extreme believes Plaintiffs' interpretation is an "aggressive overreach[]." Mot. at 1. However, interpreting isolated provisions of a contract, none of which completely resolve a claim for relief, is not a proper function of a Rule 12(b)(6) motion. As one court held just last month:

> Defendant concedes Plaintiff stated a claim for negligence (manufacturing defect) but asks the Court to opine on *all* theories sufficient to state a negligence claim. It is not the Court's role on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) to issue piecemeal dismissals of parts of claims.

*Morris v. Medtronic, Inc.*, 2023 WL 2387497, *1 (E.D. Mo. March 7, 2023) (emphasis in original);

*Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587 (7th Cir. 2021) ("Since '[a] motion to dismiss under Rule

12(b)(6) doesn't permit piecemeal dismissal of parts of claims,' our inquiry is limited to only whether

[the] complaint 'includes factual allegations that state a plausible claim for relief.'") (citation omitted);

*Driscoll Firm v. Fed. City L. Grp.*, 2023 WL 2375218, at *8 (N.D. Ill. Mar. 6, 2023) ("[d]ismissal of a

claim pursuant to Rule 12(b)(6) is an all-or-nothing proposition; we cannot rule on parts of a claim like

we can at summary judgment . . . [plaintiff] has stated a breach-of-contract claim based on [the] alleged

breach of the Agreement itself.  That is all that is necessary for the entire claim to proceed.").[7]

Consequently, Extreme's Motion regarding Section 16 fails without even getting to the merits.

      In any event, Extreme's proffered interpretation of Section 16 of the 2001 Extreme License is

wrong and most certainly cannot be adopted as a matter of law on a motion to dismiss.  In pertinent

part, Section 16 reads:

> If Licensee fails to observe, keep, or perform any Source confidentiality provisions of
> this License Agreement required to be observed, kept, or performed by Licensee . . .
> SNMP Research shall have the right to exercise any one or more of the following
> remedies:
>
> (a) To terminate the Internal Use and Redistribution Rights found in paragraph 2 . . .
>
> (b) In the event of unauthorized use or distribution of the Program Source, SNMP
> Research shall have the right in addition to its other remedies, to recover from Licensee
> an amount not less than the sum that Licensor would have charged the person or
> persons obtaining the benefit of such unauthorized use of the Program Source, plus any
> amount received by Licensee on account of such unauthorized use;
>
> (c) To have any threatened or actual breach by Licensee enjoined;
>
> (d) To pursue any other remedy at law or in equity.

---

[7] Extreme cites one case in a footnote that it claims supports its request that this Court interpret one
provision of a contract that will not resolve a breach of contract claim.  Mot. at 11 (citing *In re Nat'l
Century Fin. Enters., Inc. Inv. Litig.*, 2006 WL 2849784 (S.D. Ohio Bkr. Oct. 3, 2006)).  However, in
*National Century*, the defendants did not move to interpret a phrase in the contract at issue, they moved
to dismiss the entire claim for breach of contract.  *Id.* at *3-4.

2001 Extreme License, § 16.[8]  Extreme's Motion asks this Court to opine on what is necessary to give SNMP International the right to obtain "any amount received by Licensee on account of such use."

The first question is thus whether Plaintiffs have pled that Extreme has failed "to observe, keep, or perform any Source confidentiality provisions of [the] License Agreement required to be observed, kept, or performed by Licensee."  2001 Extreme License, § 16.  The answer is yes.

In paragraphs 68 through 72, the Amended Complaint alleges that the 2001 Extreme License only permitted Extreme—including its employees and contractors—to use Plaintiffs' software (which includes the "Program Source") for a "single product" and with respect to a specific combination of target processor, operating system, and development tools, and that any other use is prohibited.  AC ¶¶ 68-71 (citing, among other provisions, 2001 Extreme License, § 2).[9]

In paragraph 77, the Amended Complaint pleads that, under Section 8 of the 2001 Extreme License (entitled "Confidentiality and Non-Disclosure"), Extreme is obligated to "take appropriate action with its employees and consultants, by agreement or otherwise, to satisfy its obligations under this License Agreement with respect to use, copying, transference, protection, and security of the Program Source[.]"  AC ¶ 77 (quoting excerpt of § 8) (emphasis added).  In other words, Extreme's "Confidentiality and Non-Disclosure" obligations include not using—including through Extreme's own employees and consultants—the Program Source beyond the license's permitted scope.

Finally, in paragraph 78, the Amended Complaint alleges that "Extreme breached its Confidentiality and Non-Disclosure obligations by, among other things, using (which includes

_____

[8] Unless otherwise indicated, all references to "subsections" of Section 16 are to the first four subsections (a-d) appearing in the top half of Section 16.

[9] Section 2, entitled "Internal Use Rights," provides that:  SNMP grants Licensee [a] . . . license to use . . and distribute internally, copies of the Licensed Modules in either Source or Software forms, for Licensee's Network Switch project[.]"  2001 Extreme License, § 2 (emphasis added).  The 2001 Extreme License later states that "Licensee's Network Switch project" is "a single product developed at several coordinated development sites . . ."  *Id.* at Attachment A (emphasis added).

distributing internally within Extreme and to Extreme's contractors) and copying the Program Source outside the authorized use and copying permitted by the 2001 Extreme License, which was limited to 'a single product' and a specific combination of target processor, operating system, and development tools." *Id.* ¶ 78. The Amended Complaint even identifies the approximately 40 product "families" (Extreme's term) in which Extreme engaged in the unauthorized use. *Id.* ¶ 72.

In summary, the Amended Complaint alleges that one of Extreme's "Source confidentiality" obligations was to ensure that its own use of Program Source (including via its own employees and contractors) did not exceed the scope of use permitted under the license, and that Extreme breached that "Source confidentiality" obligation by exceeding its authorized scope of use.

In its Motion, Extreme tries to manufacture a false conflict in the contractual language as interpreted by Plaintiffs. Specifically, Extreme argues that:

> "unauthorized use or distribution" is the ***second*** condition required for Section 16(b) remedies. To the extent SNMPR contends that unauthorized use itself constitutes breach of the confidentiality provision and meets the ***first*** condition, that reading would render superfluous the first paragraph of Section 16.

Mot. at 13 (emphasis in original). However, Extreme fails to recognize that there are multiple ways to trigger the "first condition" (breach of the Source confidentiality requirements). The fact that the 2001 Extreme License ties special monetary rights to one of those ways but not to others does not render the contract language "superfluous." Instead, it logically provides an additional monetary right—*i.e.*, monies received from unauthorized use or distribution—when there is a particular type of confidentiality breach that is directly tied to that additional monetary right—*i.e.*, unauthorized use or distribution of the source code.

For instance, the 2001 Extreme License requires Extreme to take "appropriate action" with respect to "protection" and "security" of the Program Source. 2001 Extreme License, § 8. Failure to do so is a breach of Extreme's "Source confidentiality" obligations and would give SNMP

International the right to terminate Extreme's contractual rights and obtain injunctive relief under subsections (a) and (c) of Section 16. However, that particular type of breach of a Source confidentiality obligation would not give SNMP International the automatic monetary rights under subsection (b) of Section 16, which are triggered only by unauthorized use or distribution of Program Source. That makes sense because Extreme's breach of a security obligation (for instance, and just by way of example, failure to have proper security procedures in place) does not mean that Extreme is using or distributing program source without authorization and making money from it. If, on the other hand (and as is the case here), Extreme breaches its "Source confidentiality" obligations by using or distributing the Program Source without authorization, then subsection (b) is triggered and SNMP International is automatically entitled to, among other things, "any amount received by Licensee on account of such use." This makes perfect sense—it ties the automatic monetary right in subsection (b) (monies received from unauthorized use or distribution) to the type of confidentiality breach that is directly related to that monetary right (unauthorized use or distribution), as opposed to other potential ways to breach the Source confidentiality requirements.

Indeed, it is Extreme's position that makes no sense. According to Extreme, if a prohibited act is referenced in subsection (b) of Section 16, it cannot also constitute a breach of Source confidentiality requirements under the license. However, Extreme forgets that subsection (b) says "unauthorized use or distribution," not just "unauthorized use." Consequently, under Extreme's proffered interpretation, even "unauthorized distribution" of Program Source to third parties would not be a breach of Extreme's Source confidentiality obligations simply because it is also mentioned in subsection (b). That would be nonsensical, given that unauthorized distribution of Program Source to third parties is the quintessential violation of Source confidentiality. *See In re Pyramid Operating Auth., Inc.*, 144 B.R. 795, 814 (Bankr. W.D. Tenn. 1992) ("An interpretation which gives reasonable meaning to all of its provisions

will be preferred to one which leaves a portion of the writing useless, meaningless, or inexplicable.").[10]

The same logical flaw applies to Extreme's argument that Plaintiffs' interpretation would render the second paragraph of Section 16 "superfluous." Extreme argues that, if "breach of Source confidentiality" includes "unauthorized use or distribution of the Program Source," then the second paragraph of Section 16 (which covers "any confidential, proprietary, intellectual, payment or other financial provisions of the License Agreement, other than breach of Source confidentiality") is rendered superfluous. Mot. at 13. It is not. There are numerous confidential, proprietary, intellectual and payment provisions, such as (and not by way of limitation):

- "Licensee agrees to preserve and reproduce the copyright notices contained in the Program Source and Software in the same form and location as any legend appearing on or in the original from which the copies are made." [2001 Extreme License, § 7, at p. 5]

- "Notice shall be given in the supporting documentation that copying and distribution is by permission of SNMP Research International, Inc.[.]" [*Id.*]

- "In the event that Licensee produces similar products, Licensee shall provide information to SNMP to authenticate that it was independently produced." [*Id.* § 10]

A breach of any of the above provisions would fall within the second paragraph of Section 16 governing breaches "other than breach of Source confidentiality," and thereby trigger the rights in the second paragraph of Section 16. Those rights logically do not include the right to "any amount received by Licensee on account of such unauthorized use," because they do not involve "unauthorized use or distribution"—that is logically covered by the first paragraph of Section 16 which governs breach of Source confidentiality provisions. So contrary to Extreme's assertion, there is nothing about

---

[10] Indeed, in attempting to differentiate what it did with what Brocade did, Extreme points to the fact that Brocade distributed SNMP Research's source code to Extreme. Mot. at 12. Yet, under Extreme's proffered interpretation of Paragraph 16, even if Extreme distributed SNMP Research's source code to a third party, it would not constitute a breach of the Source confidentiality provision simply because "unauthorized distribution" is also encompassed within subsection (b) of Section 16.

Plaintiffs' proffered interpretation of Section 16 that renders anything in the contract "superfluous." In any event, this is not an issue that the Court can resolve at the <u>pleading</u> stage. *See DeNune v. Consol. Cap.*, 2004 WL 1474653, at *2 (N.D. Ohio May 21, 2004) ("Contract interpretation is inappropriate for a motion to dismiss."); *see also Ross v. Kirkpatrick*, No. 3:20-CV-00536, 2021 WL 533753, at *5 (M.D. Tenn. Feb. 12, 2021) ("A court should not choose between reasonable interpretations of ambiguous contract provisions" on a motion to dismiss) (internal quotation marks omitted).

In summary, Extreme's argument as to Section 16 of the 2001 Extreme License fails both procedurally and substantively, and the Motion as to it should be denied.

### C.     Extreme's Attack On The ███ Provision In The 2001 Extreme License Is Both Premature And Wrong

Extreme attacks one paragraph of Section 24 of the 2001 Extreme License (entitled "Payment Terms"), asking this Court to find that the provision providing for a ███ monthly charge on unpaid amounts owed is "usurious" and/or "unenforceable as against public policy." Mot. at 15. First, a Rule 12(b)(6) motion for failure to state a claim is not the proper vehicle to seek advance opinions on how to calculate portions of amounts owed in the event breach is found to have occurred. *See, e.g., Kingsport Pavilion, LLC v. Crown Enterprises, Inc.*, No. 2:08-CV-114, 2008 WL 11322220, at *8 (E.D. Tenn. Nov. 5, 2008) (stating that deciding the propriety of amounts owed "is not a matter for a motion to dismiss pursuant to Rule 12(b)(6)," as "Defendants' request would require interpreting and deciding amounts owed and "not whether a claim for breach of contract has been stated to survive a motion to dismiss"); *see also N. Am. Dismantling Corp. v. AEP Generation Res., Inc.*, 2018 WL 4690791, at *4 (S.D. Ohio Sept. 28, 2018) (denying motion to dismiss breach of contract claim and reasoning that "[t]he enforceability and applicability of" a liquidated damages provision "does not impact the fact that [plaintiff] has sufficiently alleged that it has suffered damages" stemming from breach); *Moratorium Now! v. Detroit 300 Conservancy*, 2015 WL 11005026, at *2 (E.D. Mich. July 22, 2015) ("demand for

damages is irrelevant to the Rule 12(b)(6) issue of whether a claim for relief has been stated.").[11]  For

this reason alone, Extreme's Motion should be denied.  But Extreme is also wrong on the merits:

<u>Liquidated Damages</u>:  Extreme's contention that the ███ monthly charge is an "unenforceable

as against public policy" liquidated damages clause is wrong.  The clause expressly provides that the

charge will be either the ███ per month amount compounded "or the maximum allowed by law,

whichever is less."  Consequently, by definition, the clause operates such that it cannot be against

public policy; there is no public policy against charging the maximum amount <u>allowable by law</u>.  *See,*

*e.g.*, *In re Skymark Prop.*, 597 B.R. 363, 390 (Bankr. E.D. Mich. 2019) (charging the "maximum

amount permitted by law" is legally permissible).  None of Extreme's liquidated damages and

"unenforceable by public policy" authority involves a contractual clause that expressly provides for the

<u>lesser of</u> a certain amount or the maximum amount allowable by law, so Extreme's cited authority is

irrelevant.[12]  In addition, according to Extreme, in order to determine whether the contractual clause is

"unenforceable as against public policy," there must be evidence of "a windfall far exceeding any

amount the parties expected SNMP would receive" under the contract, and that "is not a reasonable

prediction of potential damages SNMP could suffer."  *See* Mot. at 17-18.  These are fact issues that

---

[11] Virtually all of Extreme's proffered authority on this issue was decided at trial or on summary judgment (which is a procedure that, unlike a motion to dismiss, permits adjudication on "part of each claim"; Fed. R. Civ. P. 56(a)).  *See, e.g.*, *Bachour v. Mason,* 2013 WL 2395027 (Tenn. Ct. App. May 30, 2013) (bench trial); *BP Prods. v. Premier Oil Co.*, No. 2:11-cv-2162-JPM, 2013 WL 1908061 (W.D. Tenn. May 7, 2013) (summary judgment); *Davis v. Lincoln Nat'l Life Ins. Co.*, 1998 WL 22824 (Tenn. Ct. App. March 10, 1988) (summary judgment); *Guesthouse Int'l v. British Am. Props.*, No. 3:07-0814, 2009 WL 278214 (M.D. Tenn. Feb. 5, 2009) (summary judgment); *Guiliano v. Cleo, Inc.*, 995 S.W. 2d 88 (Tenn. 1999) (summary judgment);  *In re River City Resort, Inc. v. Henry*, No. 1:14-bk-107450, 2022 WL 2445422 (Bankr. E.D. Tenn. July 5, 2022) (summary judgment).

[12] Moreover, Extreme cites *N.H. ex rel. Hernandez v. Sequoyah Council* for the proposition that Judge Greer granted a motion to dismiss a "demand for damages that were not available under Tennessee law."  Mot. at 19 n.10 (citing 2012 WL 2126863, at *3 (E.D. Tenn. Apr. 30, 2012)).  That case does not help Extreme; Judge Greer merely dismissed a claim for punitive damages in a personal injury case because the plaintiff failed to plead facts showing acts that were intentional, fraudulent, malicious, or reckless, as required by Tennessee law.  *Sequoya Council*, 2012 WL 2126863 at *2-3.

cannot be decided on the pleadings. *See, e.g., Venezia v. 12th & Div. Prop.*, 685 F. Supp. 2d 752, 769 (M.D. Tenn. 2010) ("whether the liquidated damages sum was a reasonable estimate of potential damages" and whether damages were "difficult to measure" at the time of contracting is a fact issue). Even more importantly, Extreme points to no authority requiring Plaintiffs to anticipate this defense and plead around it. The law holds the opposite. *See Local 96 Am. Postal Workers Union, v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004) ("A complaint need not anticipate every defense and accordingly need not plead every response to a potential defense."); *Brunson*, 2022 WL 3691022, at *5 (a plaintiff is "not required to anticipate and plead around all potential defenses.") (citations omitted). Consequently, there is no reason for the Amended Complaint to plead facts regarding (in Extreme's words) the "amount the parties expected SNMP would receive" under the 2001 Extreme License or to plead facts showing (in Extreme's words) "a reasonable prediction of potential damages SNMP could suffer." Instead, as demonstrated above, Plaintiffs were required to plead, in a clear and concise manner, facts satisfying the elements of a breach of contract claim, none of which encompass the issue Extreme raises here.

As for Extreme's proffered interpretation that the amount it owes under the 2001 Extreme License is somehow capped at ██████, Extreme is wrong and, again, this is not an issue resolvable on a motion to dismiss. As demonstrated above, the 2001 Extreme License is for a "single product." For that product, Extreme owed a license fee plus royalties, where the royalties could be either "Per-Copy" or a "Paid-Up Royalty Option" (the latter of which was ██████ for the single product licensed). 2001 Extreme License, § 24(a)-(b). Extreme chose the Per-Copy option. AC ¶ 87. Moreover, while Extreme could have at some point switched to the "Paid-Up Royalty Option," that required advance notice to SNMP International. 2001 Extreme License, § 24 ("Licensee may switch between royalty options upon prior notice to SNMP. Until such notice is received by SNMP, the

provisions of the Per-Copy Royalty Option shall be in force.") (emphasis added). As the Amended Complaint alleges—which must be accepted as true on a motion to dismiss—not only did Extreme not give notice electing the "Paid-Up Royalty Option," Extreme for years hid and made affirmative misrepresentations about the products and quantities it was selling. Consequently, even putting aside for the moment Extreme's breach by exceeding its use and redistribution rights (*e.g.*, for going beyond a single product, for which Extreme owes all amounts it received from the unauthorized use and distribution), the per-unit royalties and other fees Extreme owes to SNMP International just kept accruing as Extreme surreptitiously sold more and more quantities of products. So, while Extreme pretends that somehow there is ▇▇▇▇ cap on amounts owed, Extreme knows full well that even just applying the royalty waterfall in the 2001 Extreme License (which again, does not even take into account other fees as well as Extreme exceeding the license's "single product" limitation) amounts to many millions in royalties owed. And this is a direct result of Extreme hiding and making misrepresentations about the enormous quantities of products it was selling for nearly two decades. But again, none of this is the proper subject of a motion to dismiss anyway.

Usury: As noted above, the provision at issue provides for a ▇▇▇ per month charge (compounded monthly) or "the maximum amount allowable by law, whichever is less." Given this "maximum amount allowable by law" provision, no matter what, the clause cannot be usurious. *See In re Skymark Prop.*, 597 B.R. at 390. Moreover, as noted, Plaintiffs are not required to plead around defenses, *see Local 96 Am. Postal Workers Union*, 361 F.3d at 902, and the Court should not be deciding the precise amounts owed at the pleading stage. *See Hamilton v. Moore*, 26 Tenn. 35, 36 (1846) ("usury is not an inference of law . . . but, on the contrary, is a question of intention, to be made out by the proof of facts."); *Fam. Loan Co. of Nashville v. Hickerson*, 73 S.W.2d 694, 697 (1934) (usury is "always a question of fact"). For instance, courts have upheld charges at 18% per annum.

*See, e.g.*, *Kelso Oil Co., v. East West Truck Stop, Inc.*, 102 S.W.3d 655, 660-61 (Tenn. Ct. App. 2002) (after trial, upholding rate as non-usurious). Similarly, Extreme's Motion seems to assume that it cannot owe compounded interest. However, the 2001 Extreme License expressly provides for compounding, which is just interest owed on interest. *See* 2001 Extreme License, § 24 (referring to '██ percent of the amount due, compounded monthly, or the maximum allowed by law"). Parties can agree in their contract to pay interest on interest, *i.e.*, to compounding. *Harris v. Coles*, 60 S.W.3d 848, 850 (Tenn. Ct. App. 2001) (stating that parties may expressly agree that the obligor will pay compound interest and that "this question was settled well over a hundred years ago"); *Hale v. Hale*, 41 Tenn. 233, 237–38 (1860) ("[I]f it be assumed that it was stipulated in the original contract that the interest should be compounded if not punctually paid, we hold that there is nothing illegal, or immoral, or contrary to policy in such an agreement."). Finally, none of this fully resolves any <u>claim for relief</u>, and therefore none of it is a proper subject of a Rule 12(b)(6) motion.

### D. Extreme's Economic Loss Doctrine Argument Is Wrong, And Now Is Not The Time To Decide It

Extreme's Motion does not challenge any of the pleaded elements in Plaintiffs' Sixth Cause of Action for Fraud. Instead, Extreme's sole attack on that claim is that it is supposedly barred by the "economic loss doctrine."

Now is not the time to decide this issue. In *Milan Supply Chain Solutions, Inc. v. Navistar*, the Tennessee Supreme Court stated that "<u>this Court has never applied the economic loss doctrine outside the products liability context, in which it originated</u>." 627 S.W. 3d 125, 153 (Tenn. 2021); *see also Wischermann Partners, Inc. v. Nashville Hospitality Capital, LLC*, 2022 WL 2231934, *5 n.3 (6th Cir. June 21, 2022) ("Wischermann and WPI claim the 'economic loss doctrine' bars NHC's breach-of-fiduciary-duty counterclaim. We note however, that so far the Tennessee Supreme Court has applied this doctrine only in 'the products liability context' and to some varieties of fraud claims."). Extreme

cites *Commercial Painting Company v. The Weitz Company*, 2022 WL 737468, *20-21 (Tenn. App. Ct. Mar. 11, 2022), which was a construction defect action, for the proposition that the economic loss doctrine now applies beyond the product liability context. Mot. at 20. However, the Tennessee Supreme Court has granted review of *Commercial Painting*. *See Com. Painting Co. v. The Weitz Co.*, 2022 WL 3149615, *1 (Tenn. Aug. 4, 2022) ("The application is granted [on] . . . [w]hether the Court of Appeals erred in applying this Court's holding in *Milan Supply Chain Solutions Inc. v. Navistar, Inc.*, 627 S.W. 3d 125 (Tenn. 2021), and expanding the application of the economic loss doctrine to the circumstances of this case.").

Consequently, this Court should await the decision of the Tennessee Supreme Court before proceeding further on the issue of the economic loss doctrine. If the Tennessee Supreme Court finds that the economic loss doctrine has no application (or limited application) to cases outside the products liability context, then the issue is resolved without the need for further briefing or any analysis or ruling by this Court. If the Tennessee Supreme Court instead finds, for the first time ever, that the economic loss doctrine can have application outside the products liability context, then presumably the Tennessee Supreme Court will provide some guidance to the parties and the Court on the circumstances that justify its application in such cases. At that point, the parties can brief the issue if the Court desires. But to do so now in advance of the Tennessee Supreme Court's upcoming ruling would not make sense. *See, e.g.*, *Hinman v. Brightview Landscape Dev., Inc.*, 2023 WL 2254525, *20 (M.D. Tenn. Feb. 7, 2023) (refusing to consider or grant summary judgment given the pending Tennessee Supreme Court appeal in *Commercial Painting*); *see also Morgan v. Wayne Cnty.*, 33 F.4th 320, 330 (6th Cir. 2022) ("When applying state law, we must anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court.") (internal quotation marks omitted).

In any event, even if this Court were not to await the Tennessee Supreme Court ruling and

instead rely on the Court of Appeals' decision under review in *Commercial Painting*, Extreme's motion would still fail. First, Tennessee courts have long recognized that breach of contract and fraud claims, even those allegedly arising out of some of the same underlying facts, are permissible to bring together and are not "repugnant or antagonistic to each other." *See, e.g.*, *Tallent v. Fox*, 141 S.W.2d 485, 490 (1940); *Allied Sound, Inc. v. Neely*, 909 S.W.2d 815, 822 (Tenn. Ct. App. 1995). Second, *Commercial Painting* did not decide the fact-driven issue of whether the economic loss doctrine applied to a claim on the pleadings; it decided it after a full trial on the merits. Third, *Commercial Painting* expressly recognized that the Tennessee Supreme Court does not apply the economic loss doctrine in certain instances involving fraud. *Commercial Painting*, 2022 WL 737468 at *22-24 (discussing *Milan*). Here, the Amended Complaint alleges fraud, including fraudulent inducement. *See, e.g.*, AC ¶ 152 ("SNMP International reasonably relied on Extreme's material misrepresentations. For example, and not by way of limitation, . . . SNMP International would not have provided Extreme with software updates had SNMP International known of Extreme's improper use of Plaintiffs' software[.]"). Fourth, the *Commercial Painting* court was troubled by the fact that the party asserting fraud was seeking damages (including punitive damages) that it had expressly waived in the contract. *Commercial Painting*, 2022 WL 737468 at *21, 25-26. In contrast here, SNMP International did not waive any remedies at all, punitive damages or otherwise, only Extreme did. *See* 2001 Extreme License, § 6. Finally, the *Commercial Painting* Court expressly recognized that Tennessee law allows for recovery of punitive damages in connection with a breach of contract claim if the defendants' conduct was "intentional, fraudulent, malicious, or reckless[.]" *Commercial Painting*, 2022 WL 737468 at *24. Plaintiffs have alleged such conduct. AC ¶¶ 154-55. Consequently, even if this Court were to rule that the fraud claim is barred by the economic loss doctrine, Plaintiffs are still entitled to seek punitive damages under the breach of contract claim.

Respectfully submitted,

Dated:  April 6, 2023          By: /s/ *John L. Wood*
                              _____
                              John L. Wood, Esq. (BPR #027642)
                              Cheryl G. Rice, Esq. (BPR #021145)
                              Rameen J. Nasrollahi, Esq. (BPR #033458)
                              EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
                              900 S. Gay Street, Suite 1400
                              P.O. Box 2047
                              Knoxville, TN 37902
                              (865) 546-0500 (phone)
                              (865) 525-5293 (facsimile)
                              jwood@emlaw.com
                              crice@emlaw.com
                              rnasrollahi@emlaw.com


                              By: /s/ *A. Matthew Ashley*
                              _____
                              A. Matthew Ashley (CA Bar. No. 198235)
                              Morgan Chu (CA Bar. No. 70446)
                              David Nimmer (CA Bar. No. 97170)
                              Olivia L. Weber (CA Bar. No. 319918)
                              IRELL & MANELLA LLP
                              1800 Avenue of the Stars, Suite 900
                              Los Angeles, California 90067-4276
                              (310) 277-1010 (phone)
                              (310) 203-7199 (facsimile)
                              mchu@irell.com
                              dnimmer@irell.com
                              mashley@irell.com
                              oweber@irell.com

                              *Attorneys for Plaintiffs*
                              *SNMP Research International, Inc. and*
                              *SNMP Research, Inc.*

11210902                                  - 26 -