# EXHIBIT 14

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGE BUENO,<br>    Plaintiff,<br>    vs.<br>IGAL BENHAMOU, et al.,<br>    Defendants. | CASE NO.: 2:21-cv-04595-JVS (SPx)<br><br>RESPONSE OF THE REGISTER OF COPYRIGHTS TO REQUEST PURSUANT TO 17 U.S.C. § 411(b)(2) |

On March 16, 2022, pursuant to 17 U.S.C. § 411(b)(2), the Court requested advice from the Register of Copyrights (the "Register") on the following questions:

> [W]hether the Copyright Office would have refused registration had it known that at the time it was submitted, (1) Blue-Lit Walkway had been previously published; (2) Bueno did not author or hold any rights to Blue-Lit Walkway; and (3) Bueno did not author or hold any rights to JUNGL Interior.[1]

The Register hereby submits her response. Based on the legal standards and examining practices set forth below, the U.S. Copyright Office ("Copyright

---

[1] Order Regarding Mot. for Summ. J. at 1, 13, ECF No. 58 ("Order").

1
RESPONSE OF THE REGISTER OF COPYRIGHTS

Office" or "Office") would have acted as follows with respect to the identified photographs, if it had known the facts identified by the Court.

### Blue-Lit Walkway

(1) Had the Office known that the Blue-Lit Walkway photograph was published prior to the submission of the May 21, 2021 registration application, the Office would have refused to register that work as part of a group registration for unpublished photographs.

(2) Had the Office known that Serge Bueno did not author or hold any rights to Blue-Lit Walkway at the time he submitted the May 21, 2021 registration application, the Office would have refused to register his copyright claim in that work.

Subsequent amendments to the registration were made via two supplementary registrations. Neither supplementary registration amended the classification of the Blue-Lit Walkway from unpublished to published, the inaccuracy described in (1) above. Regarding the inaccuracy regarding authorship and ownership, the second supplementary registration amended the identity of the author and claimant of Blue-Lit Walkway.

### JUNGL Interior

(3) Had the Office known that Serge Bueno did not author or hold any rights to the JUNGL Interior photograph, the Office would have refused to register his copyright claim in this photograph.

Because Mr. Bueno subsequently amended the registration to exclude JUNGL Interior from the claim to copyright, however, questions regarding the registration for this photograph appear moot.

2
RESPONSE OF THE REGISTER OF COPYRIGHTS

# BACKGROUND

**I.  Examination History**

A review of the records of the U.S. Copyright Office ("Copyright Office" or "Office") reveals the following:

A. <u>Original Registration Application</u>

On May 21, 2021, the Copyright Office received an application to register a group of unpublished photographs titled "Club Photography."  This group contained a total of thirty-two photographs, including two photographs identified as file name "bx3i2403" ("Blue-Lit Walkway") and file name "c7532d92-ba5d-4cf2-a7bc-9c1492966d5d" ("JUNGL Interior"), which are the photographs at issue in the Order.  The application identified Serge Bueno as the sole author of, and copyright claimant for, all thirty-two photographs.  The application stated that the photographs were completed in 2021, and that they were unpublished.  Based on the representations that all thirty-two photographs were unpublished, created by the same author, and owned by the same copyright claimant, the Office registered them as a group of unpublished photographs on May 21, 2021, under registration number VAu001431601 with an effective date of registration ("EDR")[2] of May 21, 2021.  The Office had no reason to question the representations in the application and accepted them as true and accurate.

B. <u>First Supplementary Registration Application</u>

On May 31, 2021, the Copyright Office received an application for supplementary registration to remove twenty-three photographs from the VAu001431601 registration, thereby limiting the claim to nine photographs, which

---

[2] The EDR is the date that the Office received a completed application, the correct deposit copy, and the proper filing fee.

included Blue-Lit Walkway and JUNGL Interior. The supplementary registration application continued to identify Mr. Bueno as the sole author of, and copyright claimant for, all nine photographs, and to state that the photographs were completed in 2021 and were unpublished. On June 2, 2021, the Office approved the supplementary registration application and assigned registration number VAu001432334.[3]

C. <u>Second Supplementary Registration Application</u>

On December 7, 2021, the Office received an additional application for supplementary registration to correct the original VAu001431601 registration.[4] Initially, the applicant sought to make the following changes: (i) to limit the claim to a single photograph, Blue-Lit Walkway, (ii) to identify Ludovic Nortier as the sole author of that photograph, and (iii) to add a transfer statement to explain how Mr. Bueno obtained copyright ownership of the work.

After corresponding with a Senior Copyright Specialist, however, the applicant amended the application to make the following changes: (i) to exclude only JUNGL Interior from the claim to copyright, leaving Blue-Lit Walkway and seven other photographs in the group, and (ii) to identify Mr. Nortier as the sole author of, and copyright claimant for, all eight remaining photographs.[5] On

---

[3] *See* 17 U.S.C. § 408(d) (noting that an application for supplementary registration may be used "to correct an error in a copyright registration or to amplify the information given in a registration").

[4] There is no limit on the number of supplementary registrations that can be made.

[5] The Senior Copyright Specialist clarified that when the Office registers multiple works under a registration accommodation, it will not accept a supplementary registration application that seeks to reclassify the works under a different registration option. For example, a supplementary registration cannot be used to change a registration for a group of unpublished photographs into a

4
RESPONSE OF THE REGISTER OF COPYRIGHTS

1   January 28, 2022, the Office approved the second supplementary registration
2   application and assigned registration number VAu001454594.

3   **II.   The Litigation and the Court's Request**

4       Plaintiff Serge Bueno commenced this action on June 3, 2021, alleging,
5   among other claims, infringement of the copyrights in Blu-Lit Walkway and
6   JUNGL Interior based on his group registration (number VAu001431601) with an
7   EDR of May 21, 2021.

8       In a March 16, 2022 Order, the Court found that Mr. Bueno "knew the
9   information he provided on his Application as to Blue-Lit Walkway and JUNGL
10  Interior was inaccurate or, at the least had no reasonable, plausible, or good faith
11  basis to believe the information was correct."[6]  First, the Court found that Mr.
12  Bueno knew that Mr. Nortier had taken and licensed the Blue-Lit Walkway
13  photograph before he filed the application, making the statements in the
14  application that Mr. Bueno was the author of the work and that it was unpublished
15  inaccurate.[7]  Second, the Court determined that "[defendant Matthew] Rosenberg,

---

registration for a single work. Email from Senior Copyright Specialist, U.S. Copyright Office, to Michael O'Brien (Dec. 15, 2021); see U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 1802.4 (3d ed. 2021) ("COMPENDIUM (THIRD)"). The Senior Copyright Specialist also explained that any correction involving the identification of the copyright claimant should be based on the facts that existed at the time when the original registration was made; a supplementary registration application cannot be used to reflect a change in the ownership of the copyright that occurred on or after the EDR for the original registration. Email from Senior Copyright Specialist, U.S. Copyright Office, to Michael O'Brien (Jan. 13, 2022); see 37 C.F.R. § 202.6(d)(4)(i); COMPENDIUM (THIRD) §§ 1802.6(F), 1802.7(B).

[6] Order at 12.  The Court identifies the "Application" at issue as having been submitted to the Office on March 20, 2021.  According to the Office's records, the application was submitted to the Office on May 21, 2021.

[7] *Id.* at 8–9.

not Bueno, took the JUNGL Interior photograph," making the statement in the application that Mr. Bueno was the author of the work inaccurate.[8] Thus, in accordance with section 411(b)(2), the Court requested that the Register advise on "whether the Copyright Office would have refused registration had it known that at the time it was submitted, (1) Blue-Lit Walkway had been previously published; (2) Bueno did not author or hold any rights to Blue-Lit Walkway; and (3) Bueno did not author or hold any rights to JUNGL Interior."[9]

## ANALYSIS

### I. Relevant Statute, Regulation, and Agency Practice

An application for copyright registration must comply with the requirements of the Copyright Act set forth in 17 U.S.C. §§ 408(a), 408(d), 409, and 410. Regulations governing applications for registration are codified at 37 C.F.R. §§ 202.1 to 202.24. Further, principles that govern how the Office examines registration applications are set out in the *Compendium of U.S. Copyright Office Practices*, an administrative manual that instructs agency staff regarding their statutory and regulatory duties and provides expert guidance to copyright applicants, practitioners, scholars, courts, and members of the general public regarding Office practices and related principles of law.[10] Because Mr. Bueno submitted his initial application for registration in May 2021, the applicable Compendium version is the *Compendium of U.S. Copyright Office Practices, Third Edition* ("COMPENDIUM (THIRD)"), which was released in January 2021.

---

[8] *Id.* at 12.
[9] *Id.* at 13.
[10] The Office publishes regular revisions of the *Compendium of U.S. Copyright Office Practices* to reflect changes in the law and/or Office practices, which are provided for public comment prior to finalization.

### a. Publication

In pertinent part, the statutory requirements for copyright registration dictate that "if the work has been published," an application for registration shall include "the date and nation of its first publication."[11] The Copyright Act defines "publication" as:

> [T]he distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication.[12]

As the COMPENDIUM (THIRD) explains, under the first sentence of this definition (the "distribution" prong), "publication occurs when one or more copies or phonorecords are distributed to a member of the public who is not subject to any express or implied restrictions concerning the disclosure of the content of that work."[13] For example, "[t]ransmitting a copy of an illustration to a client constitutes publication of that work, if the copyright owner authorized the client to use that image and did not impose any restrictions on the client's ability to disclose that work to the public."[14]

The second sentence of the statutory definition of "publication" (the "offering to distribute" prong) provides a limited exception to the general rule requiring actual distribution of the work. Under this sentence, the mere "offering" of copies of a work to "a group of persons" for "further distribution, public

---

[11] 17 U.S.C. § 409(8).
[12] *Id.* § 101 (defining "publication").
[13] COMPENDIUM (THIRD) § 1905.1.
[14] *Id.*

performance, or public display" constitutes publication; distribution itself is not required.[15] For example, COMPENDIUM (THIRD) advises that "[p]ublication occurs when copies of a photograph are offered to clients, including but not limited to newspapers, magazines, agencies, wire services, and websites with a license permitting further distribution or display of the photograph."[16]

### b. Registration Requirements for a Group of Unpublished Photographs

The Office permits applicants to register a group of no more than 750 unpublished photographs with one application and filing fee in certain circumstances.[17] Among the requirements for this group registration option are that the photographs must all be unpublished; an applicant cannot submit one application to register a group of photographs that includes both published and unpublished photographs.[18] Additionally, the photographs must have been created by the same author and the copyright claimant for each photograph must be the same person or organization.[19]

### c. Identifying the Author and Copyright Claimant, and Who May Submit an Application for Copyright Registration

The Copyright Act provides that "the owner of copyright or of any exclusive right in the work may obtain registration of the copyright claim" if it provides a deposit, application, and fee.[20] An application for registration must include "the

---

[15] COMPENDIUM (THIRD) § 1906.1.
[16] Id.
[17] See 37 C.F.R. § 202.4(h).
[18] Id. § 202.4(h)(6); COMPENDIUM (THIRD) § 1114.1.
[19] 37 C.F.R. § 202.4(h)(3)–(4); COMPENDIUM (THIRD) § 1114.1.
[20] 17 U.S.C. § 408(a).

name of the copyright claimant,"[21] "the name . . . of the author or authors,"[22] and "if the copyright claimant is not the author, a brief statement of how the claimant obtained ownership of the copyright."[23]

Copyright Office regulations define a proper claimant as either the "author of a work" or "[a] person or organization that has obtained ownership of all rights under the copyright initially belonging to the author."[24]  When completing the "author" field of the application, the applicant should "only provide the name(s) of the author(s) who created the copyrightable material that the applicant intends to register."[25]

Before the Office issues a copyright registration, it resolves several "essential issues," including whether the correct author has been named and whether the claimant appears to have the right to claim copyright under the relevant requirements.[26]  If the registration specialist examining the application determines that "[t]he applicant is not authorized to register a claim in the work" or that "[t]he claimant named in the application is not a proper copyright claimant," the Office "will refuse to register" the claim.[27]

Additionally, COMPENDIUM (THIRD) explains that only certain parties, including "[t]he author of the work[,] [t]he owner of all the exclusive rights in the work[,] [t]he owner of one or more—but less than all—of the exclusive rights in

---

[21] *Id.* § 409(1).
[22] *Id.* § 409(2).
[23] *Id.* § 409(5).
[24] 37 C.F.R. § 202.3(a)(3).  *See also* COMPENDIUM (THIRD) § 404 (discussing who may be a "copyright claimant").
[25] COMPENDIUM (THIRD) § 613.3.
[26] *Id.* § 602.3.
[27] *Id.* § 608.

the work[,] or [a] duly authorized agent of any of the foregoing parties," may submit an application to the Office.[28]

### d. The Role of Supplementary Registration

A supplementary registration may be used to correct certain errors or amplify the information provided in a copyright registration.[29] COMPENDIUM (THIRD) provides that a supplementary registration can be used to correct an error or omission in a basic registration involving the identification of the author(s) or copyright claimant(s) of the work.[30] A supplementary registration can also be used to excise works from the original claim to copyright.[31] A supplementary registration cannot, however, be used to reclassify a work under a different registration option.[32]

Only certain parties may correct or amplify the information in a registration record. After the Office has issued a basic registration, "any author or other copyright claimant of the work, or the owner of any exclusive right in the work, or the duly authorized agent of any such author, other claimant, or owner, who wishes to correct or amplify the information given in the basic registration for the work may file an application for supplementary registration."[33] If an application to correct or amplify the registration record is approved, the Office will prepare a certificate of supplementary registration that contains pertinent information from

---

[28] *Id.* § 402.
[29] 17 U.S.C. § 408(d); 37 C.F.R. § 202.6; COMPENDIUM (THIRD) § 1802.
[30] COMPENDIUM (THIRD) § 1802.6(D).
[31] *Id.* § 1802.6(J).
[32] *Id.* § 1802.4. For example, a supplementary registration cannot be used to change a registration for a group of unpublished photographs into a registration for a compilation or a photographic database.
[33] 37 C.F.R. § 202.6(c).

the application, create a public record for the supplementary registration that identifies and describes the changes or revisions that have been made to the registration record, and assign a separate registration number and EDR[34] to the supplementary registration.[35] The Office will not cancel or replace the basic registration or the public record for that registration. Likewise, the Office will not change the information or EDR set forth in the basic registration. Instead, the basic registration and the supplementary registration, including their EDRs, coexist with each other in the public record because the "information contained in a supplementary registration augments but does not supersede that contained in the earlier registration."[36] COMPENDIUM (THIRD) explains:

> The Office maintains both records to allow court to decide (i) whether the changes made by the supplementary registration are material, and (ii) whether those changes should or should not be deemed effective as of the date that the basic registration was made or the date that the supplementary registration was made.[37]

## II. Other Copyright Office Regulations and Practices

The Copyright Office's regulations require applicants to make a "declaration . . . that the information provided within the application is correct to the best of [the

---

[34] The EDR for the supplementary registration "is the day on which an acceptable application and filing fee, which are later determined by the Register of Copyrights or by a court of competent jurisdiction to be acceptable for supplementary registration, have all been received in the Copyright Office." COMPENDIUM (THIRD) § 1802.12.

[35] COMPENDIUM (THIRD) § 1802.10. The Office will also place a note in the public record for the supplementary registration that cross-references the registration number and the year of registration for the basic registration. *Id.* § 1802.11.

[36] 17 U.S.C. § 408(d); COMPENDIUM (THIRD) § 1802.10.

[37] COMPENDIUM (THIRD) § 1802.12.

applicant's] knowledge."[38]  Generally, the Office "accepts the facts stated in the registration materials, unless they are contradicted by information provided elsewhere in the registration materials or in the Office's records."[39]

When the Office determines that all of the "legal and formal requirements" of title 17 have been met, it will register the copyright claim and issue a certificate of registration under its seal.[40]  If the Office becomes aware of an error at the time of application, such as one relating to whether the application appropriately identified each author who contributed copyrightable authorship to the work, or has questions about facts asserted in the application, it provides the applicant an opportunity to correct the error or verify the facts within a specified period of time.  If the applicant responds in a timely fashion to the satisfaction of the Office, the Office can proceed with the registration.

### **REGISTER'S RESPONSE TO THE COURT**

Based on the foregoing statutory and regulatory standards, and the Office's examining practices, the Register responds to the Court's questions as follows:

<u>Publication Status of Blue-Lit Walkway</u>

The first part of the Court's question asks whether the Register would have refused registration if she had known that "Blue-Lit Walkway had been previously published" at the time the May 21, 2021 application was submitted.[41]  As discussed

---

[38] 37 C.F.R. § 202.3(c)(3)(iii).
[39] COMPENDIUM (THIRD) § 602.4(C).
[40] 17 U.S.C. § 410(a); COMPENDIUM (THIRD) § 602.
[41] Order at 12–13.  The Court determined that the work had been previously published based on Mr. Nortier's statement that "he 'licensed the picture for what [he] was getting paid'" some time before Mr. Bueno submitted the May 21, 2021 application containing the copyright claim for Blue-Lit Walkway.  *Id.* at 8 (*quoting*

EXHIBIT A
13

above, a group registration for unpublished photographs can only include photographs that are unpublished.[42]  Thus, if the registration specialist who had examined the May 21, 2021 registration application had known that Blue-Lit Walkway had been previously published, the specialist would not have permitted that photograph to be included in a group registration with the remaining thirty-one unpublished photographs.  Instead, she would have advised the applicant to register the published photograph separately.  Because this is an error that makes this photograph ineligible for registration as part of a group registration of unpublished works, the registration option under which the work was registered, a supplementary registration cannot correct this error.[43]

Identifying the Author and Copyright Claimant

The second and third parts of the Court's question ask whether the Register would have refused registration if she had known that "Bueno did not author or hold any rights to Blue-Lit Walkway . . . [and] JUNGL Interior" at the time the

---

Declaration of Trevor McCann in Supp. Of Def.'s Mot. for Summ. J. 2, ECF No. 32-2).  The Register would like to clarify that while licensing of a work can constitute publication as defined by the Copyright Act in some circumstances, it does not necessarily do so.  Licensing of a work to a definitely selected group for a limited purpose is typically considered only a limited publication.  *See, e.g., National Broadcasting Co., Inc. v. Sonneborn*, 630 F. Supp. 524, 536 (D. Conn. 1985) (licensing of Peter Pan musical to foreign broadcasters was limited, not general, publication); *FurnitureDealer.net Inc. v. Amazon.com, Inc.*, Case No. 18-232, 2022 WL 891473 *10 (D. Minn. Mar. 25, 2022) (licensing agreements with four retailers that limited the right to reproduce, distribute or sell the copyrighted works were limited, not general, publication).  We note that the record suggests that Mr. Nortier distributed copies of Blue-Lit Walkway to Members, LLC with the qualification that it could only be used for marketing and advertising for JUNGL.

[42] 37 C.F.R. § 202.4(h)(6); COMPENDIUM (THIRD) § 1114.1.

[43] COMPENDIUM (THIRD) § 1802.4.

May 21, 2021 application was submitted. The Office addresses the Court's question in regards to each application below.

First, had the registration specialist been aware that "Bueno did not author or hold any rights" to Blue-Lit Walkway and JUNGL Interior at the time he submitted the May 21, 2021 application, she would have asked him how he qualified to submit an application to register the copyright claim. As noted above, the only parties who are eligible to file an application for copyright registration are the author of the work, the owner of all or any exclusive right in the work, or an agent of the foregoing parties.[44]

At the time Mr. Bueno submitted the May 21, 2021 application, it does not appear that he met the eligibility criteria to file an application to register a claim in either Blue-Lit Walkway or JUNGL Interior. According to the Court, Mr. Bueno did not author or, as of May 21, 2021, hold any exclusive right in Blue-Lit Walkway or JUNGL Interior. Nor was he an agent for any of the parties eligible to submit a copyright claim in the works. Had the registration specialist known that information, she would have asked Mr. Bueno whether he authored or owned exclusive rights in any of the remaining thirty photographs included in his group application. Upon confirmation that he lacked any authorship and/or copyright ownership, she would have excluded Blue-Lit Walkway, JUNGL Interior, and any other photographs for which he was not eligible to submit a claim, and included only the photographs for which he was eligible, if any. If, at the time of the May 21, 2021 application, Mr. Bueno was not eligible to obtain a registration for any of the photographs submitted for registration, the Office would have refused the entire registration.

---

[44] 37 C.F.R. § 202.3(c)(1); COMPENDIUM (THIRD) § 402.

The only change made in Mr. Bueno's May 31, 2021 application for supplementary registration was the removal of twenty-three photographs from the original registration, limiting the claim to nine photographs, including Blue-Lit Walkway and JUNGL Interior. Based on the corrections later made in the December 7, 2021 application for supplementary registration and the information provided in this litigation, the Office is now aware that Mr. Bueno was not the author of, or owner of any exclusive rights in, Blue-Lit Walkway, JUNGL Interior, or any of the remaining seven photographs at the time he submitted the May 31, 2021 application. If the registration specialist had been aware of that information at that time, she would have refused the registration.

It does appear, however, that Mr. Bueno became the owner of all the exclusive rights in a number of works (including Blue-Lit Walkway) on or about November 20, 2021, before he submitted the December 7, 2021 application for supplementary registration.[45] That second supplementary registration: (i) excises JUNGL Interior from the claim to copyright; (ii) removes Mr. Bueno as the sole author and claimant; and (iii) correctly identifies Mr. Nortier as the sole author and copyright claimant of the eight remaining works (including Blue-Lit Walkway).

At the time Mr. Bueno submitted the second application for supplementary registration, it appears that he was eligible to correct the original basic registration as the copyright owner of those eight works. Further, based on the information provided in this litigation, that supplementary registration identifies the correct author and claimant for the eight works (including Blue-Lit Walkway). Therefore, had the registration specialist known that Mr. Bueno did not become the copyright owner of Blue-Lit Walkway until November 20, 2021, and did not author or hold

---

[45] Order at 3.

any rights to JUNGL Interior, she would have proceeded to approve the December 7, 2021 application for supplementary registration, which appears to correctly augment the original basic registration.

Nevertheless, as noted above, it must be determined whether the changes made by the December 7, 2021 supplementary registration concerning Blue-Lit Walkway should be deemed effective as of that date or the date that the basic registration was made.[46] Because of the substantive nature of the errors in the basic registration, the Court may find that the changes should be deemed effective only as of the date the second supplementary registration was made, rather than the EDR of the basic registration.

The Register further notes that, pursuant to section 411(a) of the Copyright Act, registration (or a refusal to register) is a prerequisite to filing a lawsuit for copyright infringement involving a United States work.[47] Because Mr. Bueno excised JUNGL Interior from the claim in the December 7, 2021 supplementary registration and has not alleged that any other registration for this work exists, he does not satisfy section 411(a)'s requirement as it relates to JUNGL Interior.

## CONCLUSION

After review of the available facts in this action and application of the relevant law, regulations, and the Office's practices, the Register hereby advises the Court that had the Office known that Serge Bueno did not author or hold any rights to Blue-Lit Walkway or JUNGL Interior at the time he submitted the May 21, 2021 registration application, the Office would have refused to register his

---

[46] COMPENDIUM (THIRD) § 1802.12.  A supplementary registration cannot be used to correct or amplify information in a prior supplementary registration, *id*. at § 1802.4, so only the second supplementary registration remains relevant.

[47] 17 U.S.C. § 411(a).

copyright claims in those works. However, amendments made via the second supplementary registration adequately corrected the inaccuracies in the original application related to Mr. Bueno's lack of authorship and ownership with respect to one photograph, Blue-Lit Walkway. The substantive nature of the amendments made in the second supplementary registration suggests that this would likely be the date of that registration—December 7, 2021.

That leaves the issue of the effect of the statement in the original application that Blue-Lit Walkway was unpublished. Accepting for this purpose the Court's determination that Blue-Lit Walkway had been published prior to May 21, 2021, the Office would have refused registration of that photograph in a group registration for unpublished works, and the question would be whether Mr. Bueno included this photograph in his original application "with knowledge that it was inaccurate."[48] In *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, the Supreme Court clarified that an applicant's lack of actual knowledge of either fact or law can preclude a finding that the registration is invalid.[49]

Dated:   June 30, 2022

*Shira Perlmutter* (signature)

Shira Perlmutter

Register of Copyrights and Director

of the U.S. Copyright Office

---

[48] *See* 17 U.S.C. § 411(b)(1)(A).

[49] *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*,___U.S. ___, 211 L.Ed.2d 586 (Feb. 24, 2022).

17
RESPONSE OF THE REGISTER OF COPYRIGHTS