# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**

----------------------------------------------------------- x

| | | |
|---|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., | : | Case No. 3:20-cv-00451-CEA-DCP |
| | : | |
| Plaintiffs, | : | U.S. District Judge Charles E. Atchley |
| | : | |
| v. | : | |
| | : | |
| BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; and EXTREME NETWORKS, INC., | : | |
| | : | |
| Defendants. | : | |

----------------------------------------------------------- x

### DEFENDANT EXTREME NETWORKS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................1

II.   THE COURT SHOULD DISMISS SNMPR'S CLAIM FOR COPYRIGHT
      DAMAGES BEYOND *PETRELLA'S* THREE-YEAR LIMIT.................................2

      A.    SNMPR Cannot Escape *Petrella's* Clear Ruling That It Cannot Recover
            Copyright Damages Going Back More Than Three Years...................................3

            1.    The Court Should Join Multiple Others in Applying a Damages
                  Limitation....................................................................................................4

            2.    SNMPR's Attempts to Cabin *Petrella* to a Narrow Set of Facts Fail..........5

            3.    *Petrella's* Damages Limitation Is Consistent with the Discovery
                  Rule .............................................................................................................6

      B.    Right Now, the Court Can and Should Dismiss All Claims for Damages
            Barred by Supreme Court Interpretation of the Copyright Act ..............................9

III.  SNMPR'S CLAIM TO "ANY AMOUNT RECEIVED" MUST BE DISMISSED
      FOR FAILURE TO PLAUSIBLY ALLEGE ANY SUPPORTING BREACH .................9

      A.    SNMPR Cannot Prevent the Court from Granting the Motion Now.....................10

      B.    None of SNMPR's Allegations Relate to "Source Confidentiality" .....................12

      C.    SNMPR Misconstrues Extreme's Positions ........................................................15

IV.   THE COURT SHOULD FIND THAT THE LEGACY AGREEMENT'S ▇▇▇
      MONTHLY PENALTY IS USURIOUS AND UNENFORCEABLE..............................16

      A.    SNMPR Fails to Argue that the ▇▇▇▇▇ Rate, Compounded Monthly,
            is Non-Usurious or Enforceable Under Public Policy ...........................................17

      B.    Extreme's Request to Dismiss Claims Based on the ▇▇▇▇▇ Rate,
            Compounded Monthly, is Properly Before the Court............................................18

V.    THE COURT SHOULD NOT WAIT TO RULE THAT THE ECONOMIC LOSS
      DOCTRINE BARS SNMPR'S FRAUD CLAIM .........................................................20

      A.    SNMPR Cannot Escape Existing Precedent That Makes Clear the
            Economic Loss Doctrine Bars Its Fraud Claim ...................................................21

      B.    That an Economic Loss Doctrine Case Is Pending Before the Tennessee
            Supreme Court Is No Basis to Delay Ruling on Extreme's Motion.....................23

      C.     SNMPR Is Not Entitled to Punitive Damages for Its Contract Claims ................25

VI.    CONCLUSION.................................................................................................................25

Case 3:20-cv-00451-CEA-DCP   Document 290-1   Filed 04/13/23   Page 4 of 34   PageID #: 13593

# TABLE OF AUTHORITIES

## CASES

*Allied Sound, Inc. v. Neely,*
  909 S.W.2d 815 (Tenn. Ct. App. 1995) ........................................................23

*Alvarado Orthopedic Research, L.P. v. Linvatec Corp.,*
  No. 11-CV-246, 2011 WL 3703192 (S.D. Cal. Aug. 23, 2011) ......................21

*Amini v. Oberlin College,*
  259 F.3d 493 (6th Cir. 2001) ......................................................................14

*Bates v. Green Farms Condominium Ass'n,*
  958 F.3d 470 (6th Cir. 2020) ......................................................................22

*Bilek v. Federal Insurance Co.,*
  8 F.4th 581 (7th Cir. 2021) ....................................................................11, 12

*Caudle v. Hard Drive Express, Inc.,*
  No. 19-CV-11445, 2020 WL 13615436 (E.D. Mich. Aug. 21, 2020) ..............10

*Center for Bio-Ethical Reform, Inc. v. Napolitano,*
  648 F.3d 365 (6th Cir. 2011) ......................................................................25

*Clark v. Martinez,*
  543 U.S. 371 (2005) ...................................................................................5

*Commercial Painting Co. v. Weitz Co.,*
  No. 02089-COA-R3-CV, 2022 WL 737468
  (Tenn. Ct. App. Mar. 11, 2022) ..................................................21, 22, 24, 25

*Design Basics, LLC v. Forrester Wehrle Homes, Inc.,*
  305 F. Supp. 3d 788 (N.D. Ohio 2018) ..........................................................7

*Dick Broadcasting Co. of Tenn. v. Oak Ridge FM, Inc.,*
  395 S.W.3d 653 (Tenn. 2013) .....................................................................13

*DirecTV, Inc. v. Treesh,*
  487 F.3d 471 (6th Cir. 2007) ......................................................................25

*Drake v. JPS Elastomerics Corp.,*
  No. W2003-01579-COA-R3-CV, 2004 WL 1908798
  (Tenn. Ct. App. Aug. 23, 2004) ..................................................................15

*Driscoll Firm, P.C. v. Federal City Law Group, PLLC,*
  No. 22-cv-1536, 2023 WL 2375218 (N.D. Ill. Mar. 6, 2023) .........................12

iii

*Family Loan Co. of Nashville v. Hickerson,*
    73 S.W.2d 694 (Tenn. 1934) ........................................................................20

*Fulwood Construction Co., LLC v. McGil Holdings, LLC,*
    No. 20-cv-02524, 2020 WL 7090686 (W.D. Tenn. Dec. 3, 2020) ..............22, 23

*Haight v. Thompson,*
    763 F.3d 554 (6th Cir. 2014) ........................................................................6

*Hamilton v. Moore,*
    26 Tenn. 35 (Tenn. 1846) ............................................................................20

*Healthbanc International., LLC v. Synergy Worldwide, Inc.,*
    435 P.3d 193 (Utah 2018) ............................................................................24

*Hinman v. Brightview Landscape Development, Inc.,*
    No. 19-cv-00551, 2023 WL 2254525 (M.D. Tenn. Feb. 7, 2023) ...................24

*Kelso Oil Co., Inc. v. East West Truck Stop, Inc.,*
    102 S.W.3d 655 (Tenn. Ct. App. 2002) ........................................................17

*Kingsport Pavilion, LLC v. Crown Enterprises, Inc.,*
    No. 08-CV-114, 2008 WL 11322220 (E.D. Tenn. Nov. 5, 2008) ...................19

*Ladd Landing, LLC v. Tennessee Valley Authority,*
    874 F. Supp. 2d 727 (E.D. Tenn. 2012) ........................................................21

*LF Centennial Ltd. v. Z-Line Designs, Inc.,*
    No. 16-cv-929, 2019 WL 13136765 (S.D. Cal. Jan. 8, 2019) ..........................21

*McPherson v. Kelsey,*
    125 F.3d 989 (6th Cir. 1997) ..........................................................................9

*Milan Supply Chain Solutions, Inc. v. Navistar, Inc.,*
    627 S.W.3d 125 (Tenn. 2021)............................................20, 22, 23, 24

*Mitchell v. Capitol Records, LLC,*
    287 F. Supp. 3d 673 (W.D. Ky. 2017) ............................................................7

*Moratorium Now! v. Detroit 300 Conservancy,*
    No. 15-CV-10373, 2015 WL 11005026 (E.D. Mich. July 22, 2015) ...............19

*Morris v. Medtronic, Inc.,*
    No. 22-cv-643-MTS, 2023 WL 2387497 (E.D. Mo. Mar. 7, 2023) .................11

*N.H. ex rel. Hernandez v. Sequoyah Council, Inc.,*
    No. 11-CV-171, 2012 WL 2126863 (E.D. Tenn. Apr. 30, 2012) .....................19

iv

*In re National Century Financial Enterprises, Inc., Investment Litigation,*
 No. 03-md-1565, 2006 WL 2849784 (S.D. Ohio Oct. 3, 2006) ........................................11

*Navarro v. Procter & Gamble Co.,*
 515 F. Supp. 3d 718 (S.D. Ohio 2021) ....................................................................4, 5, 6, 7

*Nealy v. Warner Chappell Music, Inc.,*
 60 F.4th 1325 (11th Cir. 2023) ...............................................................................6, 7

*North American Dismantling Corp. v. AEP Generation Resources, Inc.,*
 No. 17-cv-809, 2018 WL 4690791 (S.D. Ohio Sept. 28, 2018) ..........................................19

*Petrella v. Metro-Goldwyn-Mayer, Inc.,*
 572 U.S. 663 (2014) ..................................................................................1, 3, 5, 7, 8

*Preez v. Benchmark Maid, LLC,*
 No. 22-cv-00144, 2022 WL 16842054 (M.D. Tenn. Nov. 9, 2022)......................................23

*Raymond James & Associates, Inc. v. 50 North Front Street TN, LLC,*
 No. 18-cv-02104, 2020 WL 4366091 (W.D. Tenn. July 30, 2020)...................................12

*Richardson v. Kharbouch,*
 No. 19-cv-02321, 2023 WL 2711480 (N.D. Ill. Mar. 30, 2023) ..........................................5

*Ross v. Kirkpatrick,*
 No. 20-cv-00536, 2021 WL 533753 (M.D. Tenn. Feb. 12, 2021)...................................12

*Ross, Brovins & Oehmke, P.C. v. Lexis/Nexis Group,*
 No. 03-cv-74474, 2007 WL 1584210 (E.D. Mich. May 31, 2007) ...........................10, 11

*Sohm v. Scholstic Inc.,*
 959 F.3d 39 (2d Cir. 2020)....................................................................................4, 6, 7

*Starz Entertainment, LLC v. MGM Domestic Television Distribution,*
 39 F.4th 1236 (9th Cir. 2022) ...............................................................................6

*Tallent v. Fox,*
 141 S.W.2d 485 (Tenn. App. Ct. 1940) .................................................................23

*Woolsey v. Citibank, N.A. (In re Woolsey),*
 696 F.3d 1266 (10th Cir. 2012) .............................................................................6

## STATUTES

Tenn. Code Ann. § 47-14-103 ...............................................................................20

Tenn. Code Ann. § 47-14-110(a) ...........................................................................20

v

# OTHER AUTHORITIES

3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.05[B][2][c][ii]
(2022) ............................................................................................................................... 3, 8

3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.05[B][2][c][iii]
(2022) ................................................................................................................................... 8

3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.05[B][2][d][ii]
n.66.28 (2022) ..................................................................................................................... 8

Case 3:20-cv-00451-CEA-DCP   Document 290-1   Filed 04/13/23   Page 8 of 34   PageID #: 13597

# I.  INTRODUCTION

SNMPR confirms that it intends to seek hundreds of millions of dollars in damages from Extreme (Opp.[1] at 1) for products that it had licensed for ▮ per unit (*see* ECF No. 246-2 at Attachment C).  Extreme's Motion would drastically reduce the scope of the case, eliminating SNMPR's four most egregious overreaches:

1.  Nearly two decades' worth of copyright damages, which are prohibited by the Supreme Court's three-year limitation on copyright damages;

2.  The "amount received" by Extreme (*i.e.*, hundreds of millions of dollars) for the sale of products allegedly including SNMPR's software, which are only available through a contract provision that is not implicated by Extreme's alleged conduct;

3.  Loan-shark interest, which is prohibited by usury laws and Tennessee public policy; and

4.  Punitive damages for a fraud claim that is nothing more than a contract claim in disguise, which is prohibited by the economic loss doctrine.

SNMPR attempts to use the targeted nature of Extreme's Motion as an escape hatch, arguing that the Court may not partially dismiss claims or limit relief on a motion to dismiss.  But that is not the law, and SNMPR does not even attempt to address Extreme's cases confirming this.

SNMPR's arguments also fail on the merits.  <u>First</u>, in advocating against the three-year copyright damages limitation, SNMPR does not address the Supreme Court's plain language in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 672 (2014), that plaintiffs can "gain retrospective relief running only three years back from the date the complaint was filed." <u>Second</u>, SNMPR concedes that (1) it may be entitled to "any amount received" by Extreme pursuant to Section 16 of the Legacy Agreement only if it alleges that Extreme has breached the source code confidentiality provisions of the agreement, and (2) it has not alleged that Extreme disclosed

---

[1] SNMPR's Opposition to Extreme's Motion, filed under seal at ECF No. 283, is cited herein as "Opposition" and "Opp."  "Motion" herein means Extreme's instant Motion to Dismiss the Amended Complaint.

SNMPR's source code. Rather, SNMPR argues that (1) the Court cannot interpret contracts on a motion to dismiss, which is incorrect as a matter of law, and (2) the Court should interpret the parties' contract to equate "unauthorized use" with a violation of "Source confidentiality provisions" (*see* Opp. at 14-19), which contradicts the plain meaning of the agreement. <u>Third</u>, SNMPR effectively concedes that its contractual ██████ monthly, compounding interest rate is not "allowed by law." (*See id.* at 19-23.) Yet it argues that it should be allowed to maintain claims applying that rate because a motion to dismiss is premature. <u>Fourth</u>, SNMPR asks the Court to delay applying the economic loss doctrine to bar its fraud claim. (*See id.* at 23-25.) It then argues that, even if the Court dismisses its fraud claim, it can seek punitive damages under a breach of contract theory. (*See id.*) But SNMPR cites no allegations that support punitive damages here—especially when such damages generally are not recoverable for breach of contract.

## II. THE COURT SHOULD DISMISS SNMPR'S CLAIM FOR COPYRIGHT DAMAGES BEYOND *PETRELLA'S* THREE-YEAR LIMIT

SNMPR fails to confront the express language from *Petrella* that clearly limits recovery to three years before the filing of a lawsuit. Instead, SNMPR asserts that *Petrella* should be limited to its facts and that its clear language can be ignored because the discovery rule applies. (*See* Opp. at 6-13.) But the ruling in *Petrella* is not so limited. Nor does the application of the discovery rule negate this limit on retrospective relief. Thus, SNMPR's arguments are unavailing, and this Court should join the other courts that have imposed a three-year limit on retrospective relief, consistent with *Petrella*. Furthermore, SNMPR's perfunctory statement that now is not the time for the Court to consider Extreme's statute of limitations argument is without support (*see* Opp. at 1-2) and can be deemed waived.

2

## A.    SNMPR Cannot Escape *Petrella's* Clear Ruling That It Cannot Recover Copyright Damages Going Back More Than Three Years

In *Petrella*, the Supreme Court was clear that copyright plaintiffs can "gain retrospective relief running only three years back from the date the complaint was filed." 572 U.S. at 672; (*see also* Opening Br.[2] at 6 (collecting six explicit references in *Petrella* to this limitation on retrospective relief).) SNMPR's counsel explained in his treatise:

> . . . Justice Ginsburg wrote, "Under the Act's three-year provision, an infringement is actionable within three years, and only three years, of its occurrence. And the infringer is insulated from liability for earlier infringements of the same work." If any ambiguity remained, the succeeding observation would seem to have dispelled it: "§ 507(b)'s limitations period . . . allows plaintiffs . . . to gain retrospective relief running only three years back from the date the complaint was filed."

3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.05[B][2][c][ii] (2022) [hereinafter 3 *Nimmer on Copyright*] (footnotes omitted) (quoting *Petrella*, 572 U.S. at 671, 672). SNMPR does not grapple with how its position that it is entitled to damages going back to the early 2000s can be squared with *Petrella's* explicit language.

Instead, SNMPR asserts that "under binding Sixth Circuit precedent, SNMP's copyright infringement claim was filed within three years of its accrual and is thus timely," "end[ing] the statute of limitations inquiry." (Opp. at 5-6.) That is misleading at best. The "binding Sixth Circuit authority" SNMPR cites (*see id.*) stands for the proposition that the discovery rule applies, which Extreme does not (and need not) dispute. SNMPR's contention that its claims are "timely" under the discovery rule are thus irrelevant to whether it can recover damages more than three years before filing suit. (*Id.* at 6.) There is not a single Sixth Circuit decision post-*Petrella* allowing recovery of damages more than three years pre-suit when the discovery rule applies.

---

[2] Extreme's opening memorandum of law in support of its Motion, filed under seal at ECF No. 277, is cited herein as "Opening Brief" and "Opening Br."

3

More importantly, SNMPR fails to distinguish cases holding a three-year damages limitation applies even in discovery rule jurisdictions. And its other arguments against the limitation fail; *Petrella*'s holding is not limited to its narrow facts, and the three-year limitation can easily be reconciled with the discovery rule.

1. <u>The Court Should Join Multiple Others in Applying a Damages Limitation</u>

SNMPR fails to undermine *Sohm v. Scholastic, Inc.*, 959 F.3d 39 (2d Cir. 2020), and *Navarro v. Procter & Gamble Co.*, 515 F. Supp. 3d 718 (S.D. Ohio 2021), which both confirmed that *Petrella* created a three-year damages limitation period. (*See* Opp. at 10, 12; Opening Br. at 7-9.) SNMPR claims that "the only authority the Second Circuit [in *Sohm*] cited in support of its holding were rulings from a S.D.N.Y. district judge and magistrate judge." (Opp. at 10.) But SNMPR ignores the fact that *Sohm* relies on express language from the Supreme Court of the United States. *See Sohm*, 959 F.3d at 52 ("[T]he three-year limitation on damages was necessary to the result in *Petrella* and thus binding precedent."); *see also Navarro*, 515 F. Supp. 3d at 762 ("[T]he language of *Petrella*, including language that motivated the ultimate holding in that case, nonetheless expressly limits damages to those that arose in the three years before filing suit.").

As to *Navarro*, SNMPR argues that it is unpersuasive because it issued before the Ninth and Eleventh Circuit opinions on which SNMPR relies. (Opp. at 12.) However, *Navarro* conducted a detailed analysis of the same reasoning that was repeated by the Ninth and Eleventh Circuits. *See, e.g.*, 515 F. Supp. 3d at 762 (rejecting that the discovery rule prevents the application of the three-year lookback from *Petrella*, *i.e.*, reasoning from the Ninth and Eleventh Circuit opinions). *Navarro* rightfully disagreed with the flawed reasoning, adopting the three-year lookback given "*Petrella's* express language." *Id.* In a footnote, SNMPR also claims that *Navarro* "was insufficiently deferential to the Sixth Circuit." (Opp. at 12 n.6.) And yet *Navarro* was careful to maintain the Sixth Circuit's discovery rule while giving effect to the ruling from the Supreme

4

Court of the United States. *See* 515 F. Supp. 3d at 759 ("reject[ing] the argument that *Petrella* overturned use of the discovery rule as to copyright infringement cases"). SNMPR's position is the one that is "insufficiently deferential" to controlling precedent, *Petrella*.

Consistent with *Petrella*, *Sohm*, and *Navarro*—and contrary to SNMPR's recent arguments—two weeks ago, the Northern District of Illinois joined the courts endorsing the Supreme Court's damages limitation. *See Richardson v. Kharbouch*, No. 19-cv-02321, 2023 WL 2711480, at *13 (N.D. Ill. Mar. 30, 2023) (favorably citing *Petrella's* statement that "infringement is actionable within three years, and only three years of its occurrence" on summary judgment). SNMPR fails to explain why these cases are wrong.

### 2. SNMPR's Attempts to Cabin *Petrella* to a Narrow Set of Facts Fail

SNMPR argues that *Petrella* does not apply because (1) the case is limited to injury rule cases, and (2) it arose in the context of a laches defense. (*See* Opp. at 6-10.) Both arguments fail.

First, SNMPR's contention that *Petrella* is inapplicable because the parties did not invoke the discovery rule in that case (Opp. at 7-9) is both mistaken and irrelevant. *Petrella* was appealed from the Ninth Circuit, which applies the discovery rule. Further, the Supreme Court never limited its holding regarding retrospective relief to cases arising under the injury rule. *See* 572 U.S. at 672. Instead, the Court specifically indicated that its findings were not limited to the occurrence rule cases by "not pass[ing] on the question" of whether the discovery rule applies. *Id.* at 670 n.4. In fact, the Court referenced the statute generally in its findings. *See, e.g., id.* at 672 ("§ 507(b)'s limitations period . . . allows plaintiffs during that lengthy [copyright] term to gain retrospective relief running only three years back from the date the complaint was filed"). The *Petrella* Court's interpretation of the statute is thus not dependent on the rule that applies. *See Clark v. Martinez*, 543 U.S. 371, 378 (2005) (interpreting words in statute differently depending on circumstances would be akin to "invent[ing] a statute rather than interpret[ing] one"); *see also Haight v.*

5

*Thompson*, 763 F.3d 554, 569 (6th Cir. 2014) ("Where possible . . . courts avoid treating statutes like chameleons that turn green in some setting but not others."); *Woolsey v. Citibank, N.A.* (*In re Woolsey*), 696 F.3d 1266, 1277 (10th Cir. 2012) ("Not only is the rule against multiple interpretations of the same statute well entrenched, it is of special importance[,]" without it, citizens would be left at sea "only and always guessing at what the law might be held to mean in the unique 'fact situation' of the next case.").

Second, SNMPR argues *Petrella* is inapplicable because it addressed a laches defense. (*See* Opp. at 7-10.) However, the Court's construction of the Copyright Act's statute of limitations provision was integral to its holding regarding laches. (*See* Opening Br. at 7-8 (citing *Navarro*, 515 F. Supp. 3d at 762 ("[T]he language of *Petrella*, including language that motivated the ultimate holding in that case . . . expressly limits damages to those that arose in the three years before filing suit."); *Sohm*, 959 F.3d at 52 ("The *Petrella* Court partially based its determination that laches was inapplicable to actions under the Copyright Act on the conclusion that the statute 'itself takes account of delay' by limiting damages to the three years prior to when suit is filed." (citation omitted)).) SNMPR does not seriously respond to this argument. And lower courts are "bound 'not only [by] the result [of a Supreme Court opinion,] but also those portions of the opinion necessary to that result.'" *Sohm*, 959 F.3d at 52 (citation omitted). Thus, SNMPR cannot escape *Petrella*'s holding.

3.  *Petrella's* Damages Limitation Is Consistent with the Discovery Rule

SNMPR next argues that the Ninth and Eleventh Circuits have held that *Petrella* did not create a three-year damages limitation period because such a rule would be inconsistent with the discovery rule. (*See, e.g.*, Opp. at 8-11 (citing *Starz Ent., LLC v. MGM Domestic Tele. Distrib.*, 39 F.4th 1236 (9th Cir. 2022) and *Nealy v. Warner Chappell Music, Inc.*, 60 F.4th 1325 (11th Cir.

6

2023)).) [3] As an initial matter, neither of these cases, nor SNMPR, explains how allowing recovery for damages more than three years before the lawsuit could ever be squared with *Petrella's* finding that plaintiffs can "gain retrospective relief running only three years back from the date the complaint was filed," 572 U.S. at 672. It cannot.

In any event, SNMPR is wrong that the "discovery rule" cannot be reconciled with *Petrella's* three-year damages limitation. (*See* Opp. at 6-13.) Indeed, courts like the Southern District of Ohio in *Navarro* and the Second Circuit in *Sohm* have reconciled the two by reading *Petrella* as a limitation on ***damages*** and the discovery rule as governing whether claims may be ***maintained*** in the first place. *See Navarro*, 515 F. Supp. 3d at 760 (explaining that the Supreme Court in *Petrella* indicated that, "independent of what triggers a statute of limitations, the statutory period may also provide a limitation on the available damages period"); *Sohm*, 959 F.3d at 52 ("[W]e must apply the discover[y] rule to determine when a copyright infringement claim accrues, but a three-year lookback period from the time a suit is filed to determine the extent of relief available."). In fact, *Petrella* itself was on appeal from a discovery rule jurisdiction. And SNMPR's argument that *Petrella* "had not even invoked the discovery rule" (Opp. at 9) changes nothing. As SNMPR concedes, the *Petrella* plaintiff "was at all times aware of the infringement in that case" (*id.*) and thus could not have invoked the discovery rule to recover damages more than three years before filing her complaint. Ultimately, the Supreme Court found that plaintiffs are limited to damages "three years back from the date the complaint was filed"—without deciding whether the occurrence rule or discovery rule applies when determining whether a claim can be

---

[3] SNMPR also includes a bare string cite to *Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, 305 F. Supp. 3d 788, 794 n.2 (N.D. Ohio 2018) and *Mitchell v. Capitol Recs.*, LLC, 287 F. Supp. 3d 673, 678 (W.D. Ky. 2017). The cited footnote in *Design Basics* relies solely on pre-*Petrella* cases. And *Mitchell* relied on a finding that a three-year look-back would "effectively obliterate[] the discovery rule." 287 F. Supp. 3d at 678. But, as explained here, that is not the case.

7

maintained in the first instance (for any period of damages). *Petrella*, 572 U.S. at 672 (discussed in Opening Br. at 9).

Further, SNMPR's counsel has confirmed that plaintiffs bringing claims for purported infringing acts that took place more than three years before the lawsuit are not necessarily left empty-handed even if *Petrella's* three-year limit applies. As an initial matter, plaintiffs can obtain damages for acts of infringement that occur ***during*** the limitations period as well as injunctive relief to prevent ***future*** infringing acts. *See* 3 *Nimmer on Copyright* §§ 12.05[B][2][c][iii], 12.05[B][2][d][ii] n.66.28 (2022). Moreover, plaintiffs can also obtain both (1) out-of-pocket damages that accrue within three years of the lawsuit that are predicated on infringing acts that occurred ***before*** the limitations period, and (2) any profits the defendant receives within the limitations period that are directly attributable to infringement that occurred ***before*** the limitations period. *See id.* at § 12.05[B][2][c][ii]. Thus, *Petrella's* three-year damages limitation does not "eviscerate" the discovery rule as SNMPR contends. (*See* Opp. at 8.) Nor does Extreme's Motion require a finding that the Supreme Court "reversed" the discovery rule. (*Cf.* Opp. at 6-13.) Extreme only seeks to enforce the plain edict from the Supreme Court, that SNMPR can "gain retrospective relief running only three years back from the date the complaint was filed," *Petrella*, 572 U.S. at 672.

If anything, this very case shows why *Petrella's* three-year damages limitation is perfectly consistent with the discovery rule. Here, SNMPR has alleged that (1) Extreme started infringing its copyrights over 20 years ago (*see* FAC ¶¶ 68-99, 137-155; Opp. at 1); and yet (2) SNMPR supposedly did not discover that until relatively recently (*see* FAC ¶¶ 80, 89-91).[4] Thus—applying

---

[4] SNMPR has produced documents showing that its complaint was not in fact timely; it had the requisite knowledge long before 2017. (*See* Opening Br. at 9 n.3.)

8

the discovery rule instead of the injury rule—SNMPR's copyright claim would not be time-barred if SNMPR filed suit less than three years after "discovering" its claim. And yet, SNMPR would be permitted to seek only three years' damages.

**B.      Right Now, the Court Can and Should Dismiss All Claims for Damages Barred by Supreme Court Interpretation of the Copyright Act**

SNMPR makes a passing remark in the introduction of its Opposition that Extreme's copyright argument "fails procedurally because, even if it were accepted, it would not resolve an entire claim" (Opp. at 1), but it never mentions this argument again for the copyright claim in its brief. (*see id.* at 5-13). Nor does SNMPR attempt to distinguish the seven cases that Extreme cited in its Opening Brief supporting that dismissal of pre-October 2017 copyright infringement claims would be appropriate. (*See* Opening Br. at 9-10.) Accordingly, the Court may resolve this issue now, and SNMPR has waived any argument that this motion is not ripe. *See, e.g.*, *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (citation omitted)).

**III.   SNMPR'S CLAIM TO "ANY AMOUNT RECEIVED" MUST BE DISMISSED FOR FAILURE TO PLAUSIBLY ALLEGE ANY SUPPORTING BREACH**

The parties agree that Section 16 of the Legacy Agreement requires SNMPR to allege a breach of the agreement's "Source confidentiality provision" and "unauthorized use or distribution" of source code in order to recover "any amount received" by Extreme. (*See, e.g.*, Opp. at 14-15.) There also is no dispute that SNMPR has ***not*** alleged—and it admitted in the parties' meet and confer that it cannot allege—that Extreme failed to "keep the Program Source received from SNMP, and the Sources of any Derivative Works . . . in the strictest confidence" or to "exercise the highest degree of care to safeguard the confidentiality of the Program Source and the Sources of any Derivative Works," as the Source confidentiality provision requires. (ECF No. 246-2 § 8;

9

Opening Br. at 11-12; *see generally* Opp. (failing to point to any allegation that the confidentiality of its source code was violated); *see also Caudle v. Hard Drive Express, Inc.*, No. 19-CV-11445, 2020 WL 13615436, at *4 (E.D. Mich. Aug. 21, 2020) ("When a party fails to respond to an argument, it is generally deemed to be unopposed and conceded." (citation omitted)).) Based on the plain reading of the Legacy Agreement, this should end the inquiry: SNMPR's claim for "any amount received" by Extreme must be dismissed because SNMPR has not adequately alleged a breach of Section 16.[5]

To escape this conclusion, SNMPR argues that (1) the Court may not interpret contracts or grant partial dismissal of contract claims on a motion to dismiss (*see* Opp. at 13-14), and (2) SNMPR's allegations (*e.g.*, of "unauthorized use" of its source code) implicate the "Source confidentiality provisions" (*see id.* at 14-18). The first argument is wrong on the law, while the second argument is contrary to the clear language of the Legacy Agreement.

## A. SNMPR Cannot Prevent the Court from Granting the Motion Now

SNMPR argues that the Court may not dismiss SNMPR's claim that is premised on a purported breach of Section 16 of the Legacy Agreement, but instead may only grant a motion that "completely resolve[s] a claim for relief" (*i.e.*, dismisses *each and every allegation of breach* in the FAC). (Opp. at 13-14.) As an initial matter, Extreme's Motion would completely resolve SNMPR's claim for breach of Section 16(b).

Furthermore, courts routinely dismiss breach of contracts claims that are premised on certain allegations. For example, in *Ross, Brovins & Oehmke, P.C. v. Lexis/Nexis Group*, No. 03-74474, 2007 WL 1584210 (E.D. Mich. May 31, 2007), the court found that only breach of contract

---

[5] SNMPR asserts in this section that "Extreme does not dispute" certain allegations in the FAC. (Opp. at 13.) That is not true. But disputing the truth of allegations in the complaint is not the purpose of a motion to dismiss, and Extreme will answer the complaint at the appropriate juncture.

claims arising from two sets of alleged acts—(1) misappropriation of content, and (2) improper sale of content after the agreement terminated—could proceed. *Id.* at *2. The court then considered the plaintiff's allegations "in groups based upon subject matter," and dismissed breach claims premised on allegations outside those two sets of acts. *Id.* at *3-6. Similarly, in *In re National Century Financial Enterprises, Inc., Investment Litigation*, No. 03-md-1565, 2006 WL 2849784 (S.D. Ohio Oct. 3, 2006), the court dismissed breach claims premised on certain sections of an agreement (but not others). So too here, SNMPR alleges that Extreme breached various sections of the Legacy Agreement, including Section 16. While SNMPR dismisses *National Century* in a footnote in part for ruling on a request "to dismiss the entire claim for breach of contract" (Opp. at 14 n.7), SNMPR does not dispute that the court dismissed only claims for breach of certain sections of an agreement. Thus, this Court can, and should, consider whether SNMPR has adequately pled that claim.

SNMPR cites three inapposite cases for the proposition the Court cannot decide Extreme's Motion. (*See* Opp. at 13-14.) First, in *Morris v. Medtronic, Inc.*, No. 22-cv-643, 2023 WL 2387497 (E.D. Mo. Mar. 7, 2023), the defendant "concede[d]" that the plaintiff had "stated a claim for negligence," but sought to dismiss alternative *legal theories* of negligence. *Id.* at *1. The court denied the motion, noting that the question at the motion to dismiss stage "is simply to determine whether the Complaint includes factual allegations that state a plausible claim for relief." *Id.* That is exactly what Extreme is asking the Court to decide here: Has SNMPR stated a plausible claim for breach of Section 16 of the Legacy Agreement?

Second, in *Bilek v. Federal Insurance Co.*, 8 F.4th 581 (7th Cir. 2021), the plaintiff's complaint advanced three different *legal theories* of agency based on the same underlying factual allegations. *Id.* at 587. The Seventh Circuit held that the plaintiff's factual allegations were

11

sufficient to sustain at least *one theory* of agency, so it "start[ed] and end[ed] there" and sustained the complaint on that ground. *Id.* Here, SNMPR makes no allegations to sustain any theory of breach of Section 16.

Third, in *Driscoll Firm, P.C. v. Federal City Law Group, PLLC*, No. 22-cv-1536, 2023 WL 2375218 (N.D. Ill. Mar. 6, 2023), the defendants moved to dismiss plaintiff's breach of contract claim because they contended that the claim was based, in part, on a modified version of the agreement relied upon in the pleading. *Id.* at \*8. The court found that the plaintiff had sufficiently stated a breach claim of the original agreement. *Id.* Here, Extreme seeks a ruling that SNMPR's claim for breach of Section 16 is unsupported by *any* facts alleged in SNMPR's pleading. SNMPR's out-of-circuit cases thus cannot save its claim.

SNMPR also asserts that "'[c]ontract interpretation is inappropriate for a motion to dismiss.'" (Opp. at 19 (citation omitted).) But the very next case SNMPR cites holds that "[w]hen a contract is unambiguous, a court may determine the interpretation on a motion to dismiss as a matter of law." *Ross v. Kirkpatrick*, No. 20-cv-00536, 2021 WL 533753, at \*5 (M.D. Tenn. Feb. 12, 2021); *see also Raymond James & Assocs., Inc. v. 50 N. Front St. TN, LLC*, No. 18-cv-02104, 2020 WL 4366091, at \*2 (W.D. Tenn. July 30, 2020) (applying "principles of contract interpretation" to disputed provisions to grant a motion to dismiss). While a court should not interpret the contract at the motion to dismiss stage "when a contract is ambiguous," *Ross*, 2021 WL 533753, at \*5, SNMPR does not argue that the Legacy Agreement is ambiguous. Thus, the Court can both interpret Section 16 and dismiss SNMPR's inadequately pled breach claims premised on it.

## B. None of SNMPR's Allegations Relate to "Source Confidentiality"

Because SNMPR did not—and cannot—allege that Extreme failed to keep SNMPR's source code "in the strictest confidence" or to "exercise the highest degree of care to safeguard the

12

confidentiality" of that code, SNMPR attempts to redefine "Source confidentiality provisions." It argues that this language includes not only failing to protect the confidentiality of source code, but also *using* source code in ways that were not licensed. (Opp. at 15 (citing FAC ¶¶ 68-72, 77-78 and exclusively relying on Extreme's alleged use); *id.* at 16 ("Extreme breached that 'Source confidentiality' obligation by exceeding its authorized scope of use").) Indeed, every single one of the allegations SNMPR points to concerns Extreme's alleged violation of limitations on *use*. (Opp. at 15-16 (citing FAC ¶¶ 68-72 (limits on how Extreme was permitted "to use Plaintiffs' software"); FAC ¶ 77 (arguing Extreme's obligations included "not using . . . the Program Source beyond the license's permitted scope"); FAC ¶ 78 (arguing Extreme exceeded "authorized use").)[6] But this improperly conflates "use" with "Source confidentiality."

As a matter of plain English, that makes no sense; "confidentiality" is one issue, "use" is another. *See, e.g., Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013) ("[t]he literal meaning of the contract language controls if the language is clear and unambiguous"). Indeed, SNMPR does not dispute that Extreme's alleged unauthorized use did not impact the confidentiality of the human-readable source code (beyond its argument that everything within Section 8 automatically counts for confidentiality of source code). While SNMPR is correct that *distribution* of source code may also destroy its confidentiality (*see* Opp. at 16-17), that is only true if the distribution results in *disclosure*. Here, SNMPR does not allege that Extreme's purported use or distribution of SNMPR's source code resulted in *disclosure* of the

---

[6] SNMPR points to Section 8 but that section only requires that Extreme "*take appropriate action* with its employees and consultants, by agreement or otherwise, to satisfy its obligations under [the Legacy Agreement] . . . ." (ECF No. 246-2 § 8 (emphasis added).) As an initial matter, this requirement goes to appropriate actions—regardless of whether obligations under the agreement are ultimately satisfied. SNMPR does not dispute that it has not adequately alleged that Extreme failed to take appropriate actions. (*See* Opening Br. at 14.)

13

source code itself. This make sense, as Extreme's customers receive networking equipment that runs Extreme's software in *binary form*; customers do not actually have access to Extreme's (or SNMPR's) source code (any more than a user of Microsoft Windows is able to access the program's source code, or a user of google.com is able to access the site's searching algorithm), which SNMPR did not dispute. (*See* Opening Br. at 14.)

SNMPR's argument that the "Source confidentiality provisions" encompass all improper "use" of source code is also belied by the language of SNMPR's agreements with other entities, including with former co-defendant Brocade. That agreement instead require a violation of "any confidentiality, proprietary, *or intellectual rights* provisions" as the predicate for a Section 16 breach—far broader than a violation of "Source confidentiality provisions." (ECF No. 246-1 § 16(a) (emphasis added); *see also* FAC ¶ 40.)[7] Clearly, SNMPR was capable of drafting a provision that extended beyond Source confidentiality—and included unauthorized use—but it chose not to do so here.

Further, the Legacy Agreement lays out source code confidentiality provisions—in the *first* paragraph of Section 8. Yet, SNMPR argues that it has adequately pled a violation of "Source confidentiality provision" because it has pled a violation of the *fourth* paragraph of Section 8—which has nothing to do with source code confidentiality. (*See* Opp. at 15.) SNMPR's attempt to argue that the entirety of Section 8 is the Source confidentiality provision fails for three reasons. First, Section 16 does not predicate the recovery of "any amounts received" on a violation of Section 8 (entitled "Confidentiality and Non-Disclosure") generally. (*See* ECF No. 246-2 § 16.) Rather, Section 16 predicates that recovery on a "fail[ure] to observe, keep, or perform any *Source*

---

[7] The Court may consider this agreement because SNMPR attached it to the FAC. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (court may consider "exhibits attached to the complaint" in ruling on a Rule 12(b)(6) motion).

*confidentiality provisions* of [the Legacy Agreement]" specifically. (*Id.* (emphasis added).) Interpreting the "Source confidentiality provisions" referenced in Section 16 and Section 8's prohibitions against "violations of Confidentiality and Non-Disclosure" as identical would render the phrase "Source confidentiality provisions" meaningless, as it would have no independent meaning or effect. *See Drake v. JPS Elastomerics Corp.*, No. W2003-01579-COA-R3-CV, 2004 WL 1908798, at *4 (Tenn. Ct. App. Aug. 23, 2004) (courts must "interpret [a] contract in a way that gives effect to every term, so far as is reasonable, and avoids internal conflicts"). Further, Section 8 includes other provisions that plainly do not impact "Source confidentiality." (*See* ECF No. 246-2 § 8 (reciting, *inter alia*, obligations regarding use and copying of "any *other materials* provided to the Licensee" beyond source code) (emphasis added).) Because SNMPR's allegations of unauthorized use and a violation of the fourth paragraph of Section 8 do not relate to breaches of the Source confidentiality provisions of Section 8, SNMPR's claim for breach of Section 16—which is predicated on violations of Source confidentiality provisions—fails.

### C. SNMPR Misconstrues Extreme's Positions

SNMPR misses the mark in recounting Extreme's position on rendering the contract superfluous. SNMPR argues that "[t]he fact that the [Legacy Agreement] ties special monetary rights to one [breach] . . . but not to others does not render the contract language 'superfluous.'" (Opp. at 16.) Extreme agrees. What would render the contract language superfluous is a finding that "unauthorized use . . . of Program Source" automatically counts as a breach of "Source confidentiality provisions," without considering whether the confidentiality of the source code was actually violated. In addition, if the "unauthorized use" alone were enough to trigger SNMPR's entitlement to "any amount received" without any consideration of whether there has been a breach of "Source confidentiality provisions," there would be no need to separate Section 16 into two parts. But the contract explicitly sets out remedies that can be exercised when there has been a

15

breach of Source confidentiality provisions (paragraph one) and remedies that can be exercise when a breach of Source confidentiality has not occurred (paragraph two). (*See* ECF No. 246-2 § 16.) Therefore, that SNMPR identifies other provisions that fall within the second paragraph of Section 16 does not rebut Extreme's argument. SNMPR has failed to identify any purported breach of the Source confidentiality provision itself, and its claim for breach of Section 16 must be dismissed.

Likewise, SNMPR's argument that "under Extreme's proffered interpretation, even 'unauthorized distribution' of Program Source to third parties" would not constitute a breach of "Source confidentiality obligations[,] simply because it is also mentioned in subsection (b)" (Opp. at 17) misconstrues Extreme's position. Extreme is not arguing that the act that breaches a "Source confidentiality provision" must be a different act than one that constitutes "unauthorized use or distribution of the Program Source." Extreme is only arguing that there must be an act that actually violates the "Source confidentiality provision." Here, SNMPR has alleged none.

## IV. THE COURT SHOULD FIND THAT THE LEGACY AGREEMENT'S ███ MONTHLY PENALTY IS USURIOUS AND UNENFORCEABLE

SNMPR does not attempt to argue that a ███ monthly, compounding interest rate is in fact allowed by law. Rather, SNMPR argues that (1) it might choose to seek a lower interest rate (*see* Opp. at 19-23) and (2) "a Rule 12(b)(6) motion for failure to state a claim is not the proper vehicle" to dismiss its claim (*id.* at 19). The former argument only reinforces the need to dismiss SNMPR's claims based on the unlawful rate now.

16

## A. SNMPR Fails to Argue that the ███ Rate, Compounded Monthly, is Non-Usurious or Enforceable Under Public Policy

SNMPR seems to concede that: (1) the ███ rate, compounded monthly, would result in an effective interest rate of ███ per annum; (2) such an interest rate is usurious;[8] and (3) that amount is unenforceable under the applicable public policy limitations that Extreme set forth in its Opening Brief. (*See* Opp. at 19-23.) SNMPR relies instead throughout on the Legacy Agreement's savings clause, which provides that the penalty will be either the ███ rate, compounded monthly, or "the maximum allowed by law, whichever is less." (*Id.* at 20, 22.) To be clear, Extreme does not dispute that a contract may set an interest rate at the "maximum amount allowable by law" (which is simply a truism). The purpose of Extreme's Motion is to seek a ruling from this Court dismissing SNMPR's claim to recover based on the ███ rate, compounded monthly, precisely because it exceeds the maximum rate allowable by law.

Unable to address Extreme's actual argument, SNMPR attacks strawmen. First, SNMPR claims that Extreme has argued that there is an "███ cap on amounts owed" under the Legacy Agreement. (Opp. at 21-22.) But Extreme refers to the ███ amount twice as a "hypothetical" claim for missed royalty payments for illustration purposes. (Opening Br. at 15, 18.) Extreme does not contend that the ███ amount has any other relevance to the instant Motion.

---

[8] SNMPR cites to a single case in support of the ███ effective rate charged by the Legacy Agreement, a case which SNMPR contends demonstrates that "courts have upheld charges at 18% per annum." (Opp. at 22-23 (citing *Kelso Oil Co. v. E. W. Truck Stop, Inc.*, 102 S.W.3d 655, 660-61 (Tenn. Ct. App. 2002)).) SNMPR inaccurately claims that the court in *Kelso Oil* upheld the rate charged in that case "as non-usurious." (*Id.* at 23 (same).) In fact, the court held that the charges in question did not constitute interest because they were "not made as consideration for an extension of time for payment"—therefore, the 18% rate set by the contract was not governed by the usury laws at all. *Kelso Oil*, 102 S.W.3d at 661. Here, SNMPR does not argue that the ███ rate, compounded monthly, charged by the Legacy Agreement is not interest. (*See, e.g.*, Opp. at 23 (referring to the compounding nature of the ███ rate as "interest on interest.").)

17

Second, SNMPR posits that "Extreme's Motion . . . assume[s] that [Extreme] cannot owe compounded interest." (Opp. at 23.) But Extreme recognizes that parties to a contract may generally agree to a compounded rate of interest where that rate is otherwise lawful. However, here, the compounded interest rate called for in the Legacy Agreement, on its face, far exceeds the maximum effective rate of interest set by the Tennessee Department of Financial Institutions (*i.e.*, 9.93% per annum).[9] (*See* Opening Br. 15-16.) Assuming the royalty rate of ■ per unit laid out in the Legacy Agreement and the ■■■■■ product units that SNMPR claims Extreme sold (Opp. at 1), the ■■■ interest, compounded monthly, spread across 2002 to the present, would lead to an *additional* ■■■■■ in interest alone (*see* ECF No. 246-2 at Attachment C).[10] SNMPR does not even try to argue (as it could not with any sincerity) that this outcome is anything but unlawful.

**B.     Extreme's Request to Dismiss Claims Based on the ■■■■■ Rate, Compounded Monthly, is Properly Before the Court**

SNMPR argues that Extreme's Motion is "premature" because Extreme purportedly seeks an "advance opinion on how to calculate portions of amounts owed in the event breach is found to have occurred." (Opp. at 19.) But Extreme *does not* seek a ruling from this Court that calculates or decides "the precise amounts owed" in the event that SNMPR manages to prevail on its claims. (*See* Opp. at 22.) Rather, Extreme asks the Court to rule, as a matter of law, that a contractual rate of ■■, compounded monthly, cannot legally constitute the basis for a claim of damages because that rate is both usurious and void as against public policy. (*See* Opening Br. at 19 (requesting that

---

[9] Even if the Legacy Agreement did not call for a compound rate of interest, a ■■ rate of interest assessed monthly (but not compounded) would still result in an effective interest rate of ■■ per annum, which exceeds the maximum allowable formula rate set by Tennessee at the time the Legacy Agreement was executed.

[10] In addition to exceeding the maximum amount allowable by law, this extravagant sum also allows SNMPR to stymie any fair and reasonable resolution of this matter by positioning its case as seeking damages akin to a winning Powerball ticket.

18

the Court dismiss any "claims for relief that apply the ▇ monthly rate").) Extreme's request is thus unlike the cases SNMPR cites, where the defendants sought a ruling as to exactly how much was owed pursuant to an agreement. *N. Am. Dismantling Corp. v. AEP Generation Resources, Inc.*, No. 17-cv-809, 2018 WL 4690791, at *3 (S.D. Ohio Sept. 28, 2018) (movant sought a ruling that "Owner's damages are limited to $120,000 pursuant to the Agreement's liquidated damages clause"); *Kingsport Pavilion, LLC v. Crown Enters., Inc.*, No. 08-CV-114, 2008 WL 11322220, at *8 (E.D. Tenn. Nov. 5, 2008) (defendants asking the Court to "interpret[] . . . the liquidated damages clause" to determine the maximum the plaintiff could recover).

SNMPR's other cases are also inapposite. For example, in *Moratorium Now! v. Detroit 300 Conservancy*, No. 15-CV-10373, 2015 WL 11005026 (E.D. Mich. July 22, 2015), the defendant sought dismissal of the plaintiffs' complaint in its entirety based on defendant's argument "that plaintiffs' allegations do not support their request for punitive or compensatory damages." *Id.* at *1. The *Moratorium Now* court noted that dismissal of the ***claim*** at issue was improper where the request for dismissal was based on an argument that the plaintiffs' allegations "do not support the amount or type of damages demanded." *Id.* at *2. Here, Extreme is not seeking dismissal of the breach of contract claim because of the unlawfulness of the ▇ rate. Instead, Extreme is seeking dismissal, as a matter of law, for SNMPR's pleaded claim for ***damages*** based on that rate.[11]

---

[11] SNMPR's attempt to distinguish *N.H. ex rel. Hernandez v. Sequoyah Council, Inc.*, No. 11-CV-171, 2012 WL 2126863 (E.D. Tenn. Apr. 30, 2012), fails for the same reason. There, the defendant moved to dismiss any claim for punitive damages. *Id.* at *1. As SNMPR notes, Judge Greer granted the motion "because the plaintiff failed to plead facts showing acts that were intentional, fraudulent, malicious, or reckless, as required by Tennessee law" to establish entitlement to punitive damages. (Opp. at 20 n.12.) Similarly, here, Extreme seeks a ruling that SNMPR cannot, as a matter of law, plead entitlement to ***damages*** based on the ▇ rate, compounded monthly.

19

SNMPR also cites case law (some centuries old) which long predates Tenn. Code Ann. § 47-14-103(2), the usury statute invoked by Extreme here. These cases characterize usury as a "fact question" because the applicable principles of usury in effect at the time required that the contracting party *intend* to evade usury laws in setting the contractual interest rate. *See Fam. Loan Co. of Nashville v. Hickerson*, 73 S.W.2d 694, 697 (Tenn. 1934) ("Whether the contract between the borrower and lender *was designed to evade laws that forbid usury* is always a question of fact . . ." (emphasis added)); *Hamilton v. Moore*, 26 Tenn. 35, 35-36 (Tenn. 1846) (usury is a "question of intention" requiring a "purpose to avoid or evade the statutes against usury"). Tennessee's current usury statute does not have such a requirement of usurious intent—the law provides that a party "may avoid the excess over lawful interest by pleading usury," with no regard for the parties' intentions in setting a contractual rate above "the maximum effective rate[] of interest." Tenn. Code Ann. §§ 47-14-103; 47-14-110(a). Thus, the Court should hold that the ██████ rate, compounded monthly, is usurious and constitutes a penalty unenforceable as against public policy, and should dismiss any claims for relief based on such a rate.

## V.   THE COURT SHOULD NOT WAIT TO RULE THAT THE ECONOMIC LOSS DOCTRINE BARS SNMPR'S FRAUD CLAIM

SNMPR does not dispute that its fraud claim is on all fours with its breach of contract claim (*see* Opening Br. at 21-22), which violates the economic loss doctrine by seeking recovery for "purely economic or commercial losses associated with the contract relationship," *Milan Supply Chain Sols., Inc. v. Navistar, Inc.*, 627 S.W.3d 125, 142 (Tenn. 2021). Nor, as detailed below, is SNMPR able to distinguish the cases Extreme cites, which apply the economic loss doctrine in similar contexts. (*See* Opening Br. at 22-23.) Instead, SNMPR's leading argument is that this Court should not render an opinion now because the Tennessee Supreme Court *might* overturn one of those cases. (*See* Opp. at 23-25.) Aside from being speculative, that argument is

20

unsupported by the law and futile, since the Tennessee Supreme Court is unlikely to change the law. Finally, apparently recognizing that its fraud claim is likely to be dismissed, SNMPR attempts to resuscitate its punitive damages claim by pointing to its contract claim; but that also fails.

### A.    SNMPR Cannot Escape Existing Precedent That Makes Clear the Economic Loss Doctrine Bars Its Fraud Claim

SNMPR does not even attempt to distinguish the majority of the cases Extreme cited that dismiss fraud claims under the economic loss doctrine at this stage. (*See* Opening Br. at 22-23 (citing *LF Centennial Ltd. v. Z-Line Designs, Inc.*, No. 16-cv-929, 2019 WL 13136765 (S.D. Cal. Jan. 8, 2019); *Alvarado Orthopedic Rsch., L.P. v. Linvatec Corp.*, No. 11-CV-246, 2011 WL 3703192 (S.D. Cal. Aug. 23, 2011))); *see also Ladd Landing, LLC v. TVA*, 874 F. Supp. 2d 727, 729 (E.D. Tenn. 2012) (rejecting argument that "economic loss rule is inapplicable . . . because under Tennessee law, that rule is limited to claims for products liability or claims involving the sale of goods").

SNMPR fails to distinguish *Commercial Painting Co. v. Weitz Co*, No. W2019-02089-COA-R3-CV, 2022 WL 737468, at *20-21 (Tenn. Ct. App. Mar. 11, 2022)—in which the Tennessee Court of Appeals adopted the economic loss doctrine in the breach of contract context. First, SNMPR argues that the court there applied the economic loss doctrine after trial. But Extreme's challenge is based on the FAC's failure to state a claim for fraud that is not distinct from its alleged breach of contract claim—exactly the sort of pleading deficiency motions to dismiss resolve.[12]

---

[12] SNMPR appears to also attempt to distinguish *Commercial Painting* with an argument that the party asserting fraud in that case had purportedly waived its rights to punitive damages, whereas SNMPR has not waived those rights. (Opp. at 25.) *Commercial Painting* does not have limited applicability with respect to the economic loss doctrine where the party did not waive rights to punitive damages—nor are the other cases cited in the Opening Brief and unaddressed by SNMPR so limited.

21

Second, SNMPR is just plain wrong that "the Tennessee Supreme Court does not apply the economic loss doctrine in certain instances involving fraud" (Opp. at 25). In *Milan Supply Chain*, the Tennessee Supreme Court considered whether there was a "fraud exception" to the economic loss doctrine, and declined to "exempt[] all fraud claims from the economic loss rule" or even rule on whether "there may ever be a fraudulent inducement exception to the economic loss rule." 627 S.W.3d at 153, 155 (citation omitted). Instead, *Milan Supply Chain* "affirm[ed] the . . . decision holding that the economic loss doctrine bars [the] fraudulent inducement claim," ruling that "for situations such as this one, involving a contract between sophisticated commercial business entities and a fraudulent inducement claim seeking recovery of economic losses only, the economic loss doctrine applies if 'the only misrepresentation[s] by the dishonest party concern[] the quality or character of the goods sold.'" *Id.* at 153-54, 155 (citation omitted); *see also Com. Painting*, 2022 WL 737468, at *24 (concluding that "fraud claim is barred by the economic loss rule and must be dismissed").

In any event, SNMPR is also wrong that it has pled "fraudulent inducement." (Opp. at 25.) The FAC has only attempted to plead "fraud." (*See* FAC, Count VI ("Fraud").) SNMPR cannot "amend [its] complaint in an opposition brief" to concoct a fraudulent inducement claim. *Bates v. Green Farms Condominium Assoc.*, 958 F.3d 470, 483 (6th Cir. 2020).[13] Nor does the single paragraph it cites from the FAC regarding software updates (Opp. at 25 (citing FAC ¶ 152)) come close to meeting Rule 8—let alone Rule 9—of the Federal Rules of Civil Procedure on a "fraudulent inducement" claim. *See, e.g., Fulwood Constr. Co., LLC v. McGil Holdings, LLC*, No.

---

[13] For this same reason, SNMPR's citations to material outside of the FAC should be disregarded. (*E.g.*, Opp. at 1 (claiming that Extreme distributed ███████ products containing Plaintiffs' software); *id.* at 6 (claiming that Extreme's supposed unauthorized sales have been occurring since 2004).)

22

20-cv-02524, 2020 WL 7090686, at \*5-6 (W.D. Tenn. Dec. 3, 2020) (dismissing claim of fraudulent inducement because the pleading "fail[ed] to allege [the claim] with particularity," as required by Rule 9(b)).

Finally, SNMPR cites two cases for the proposition that the Tennessee Court of Appeals has allowed fraud and breach of contract claims to be brought together. (*See* Opp. at 25.) But neither case confronted whether the economic loss doctrine applied. Rather, the defense asserted in each was that the plaintiff's contract claims were barred by the "election of remedies" doctrine. *See Tallent v. Fox*, 141 S.W.2d 485, 491 (Tenn. Ct. App. 1940); *Allied Sound, Inc. v. Neely*, 909 S.W.2d 815, 822 (Tenn. Ct. App. 1995). In fact, *Tallent* was decided before the economic loss doctrine was first introduced by the California Supreme Court in 1965, and *Allied Sound* was decided prior to the doctrine's express adoption in Tennessee in 2009. *See Milan Supply Chain*, 627 S.W.3d at 142, 152 (recounting history of "judicially-created rule of relatively recent vintage"). These cases did not consider the economic loss doctrine at all, and thus have no bearing here. Thus, SNMPR cannot escape the fact that the economic loss doctrine bars its fraud claim.

### B. That an Economic Loss Doctrine Case Is Pending Before the Tennessee Supreme Court Is No Basis to Delay Ruling on Extreme's Motion

Although SNMPR argues that this Court should "await the decision of the Tennessee Supreme Court" in the appeal of *Commercial Painting* (Opp. at 24), pending appeals do not serve as a shelter from dismissal; SNMPR should not be able to continue to assert an inapt fraud claim against Extreme because the law may change at some point in the future. *See Preez v. Benchmark Maid, LLC*, No. 22-cv-00144, 2022 WL 16842054, at \*7-8 (M.D. Tenn. Nov. 9, 2022) (recognizing that *Commercial Painting* is pending before the Tennessee Supreme Court, but also that "this court's duty is to apply the law in the manner that it believes the Tennessee Supreme

23

Court would" and analyzing application of economic loss doctrine under existing law).[14]

In any event, the best "prediction" is that the Tennessee Supreme Court will join the "many jurisdictions" that "now apply the economic loss doctrine in a wide array of circumstances beyond the products liability context." *Milan Supply Chain*, 627 S.W.3d at 145. As the Tennessee Court of Appeals found, the "reasoning employed by the Tennessee Supreme Court in *Milan Supply Chain* hews most closely to the reasoning of those jurisdictions that have extended the economic loss rule beyond its origination." *Com. Painting*, 2022 WL 737468, at *21; *see generally Milan Supply Chain*, 627 S.W.3d at 153 (adopting the rule set out in *Healthbanc International, LLC v. Synergy Worldwide, Inc.*, 435 P.3d 193, 194 (Utah 2018), which was a dispute over a royalty agreement, not a products liability case). What is more, "while the Tennessee Supreme Court has not *applied* the economic loss doctrine outside the products liability context, it has mentioned the doctrine outside this context." *Com. Painting*, 2022 WL 737468, at *19 (collecting cases).

Finally, the rationale for applying the economic loss doctrine makes sense here. For example, the parties' negotiated contract is "sufficient to make wronged parties whole." *Milan Supply Chain*, 627 S.W.3d at 155. And to the extent SNMPR contends that the parties failed to negotiate sufficient remedies, "it seems problematic for a court to make a better contract for them than the one they negotiated—by importing tort remedies into the deal." *Id.* (quoting *Healthbanc*, 435 P.3d at 198)). Allowing SNMPR to dress its contract claim up as a fraud claim would inappropriately import tort remedies into the parties' negotiated-for deal.

---

[14] Nor does *Hinman v. Brightview Landscape Dev., Inc.*, No. 19-cv-00551, 2023 WL 2254525 (M.D. Tenn. Feb. 7, 2023), save SNMPR's claims from dismissal, as the court did not need to rely on the economic loss doctrine to evaluate the sufficiency of the claims at summary judgment, *id.* at *20 (finding fact issues existed as to certain elements, and disposing of other elements of claims).

24

## C.     SNMPR Is Not Entitled to Punitive Damages for Its Contract Claims

SNMPR hedges against the proper application of the economic loss doctrine by claiming that "even if this Court were to rule that the fraud claim is barred by the economic loss doctrine, Plaintiffs are still entitled to seek punitive damages under the breach of contract claim." (Opp. at 25.)  Yet, punitive damages are "typically 'not available in a breach of contract case,'" and "are to be awarded only in the most egregious of cases" such as conduct that was committed "intentional[ly], fraudulent[ly], malicious[ly], or reckless[ly]." *Com. Painting*, 2022 WL 737468, at *24 (citations omitted).   SNMPR claims that it has alleged such conduct by citing two paragraphs of the FAC:

> 154.  Extreme acted fraudulently or recklessly in making its misrepresentations.

> 155.  Due to Extreme's malicious, intentional, fraudulent, and reckless behavior, Plaintiffs are entitled to punitive damages pursuant to TENN. CODE ANN. § 29-39-104(a)(1) (2021).

(cited in Opp. at 25).   These are not factual allegations that make plausible an inference that Extreme acted "intentionally, fraudulently, maliciously, or recklessly."   These are not factual allegations at all; they are bare legal conclusions that are given no credence on a motion to dismiss. *See, e.g.*, *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (in evaluating a Rule 12(b)(6) motion, a court "need not accept as true legal conclusions" (citation omitted)); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 377-78 (6th Cir. 2011) (affirming dismissal of claims premised on "conclusory allegations," as "'conclusory' allegations . . . 'without reference to [a] factual context' are deficient" (citation omitted)).   Because SNMPR cannot muster any plausible factual allegations that this is "the most egregious of cases" for which punitive damages are available for breach of contract claims, its claim for punitive damages should be dismissed.

## VI.     CONCLUSION

The Court should dismiss the challenged claims with prejudice.

25

DATED:     April 13, 2023

Respectfully Submitted,

*/s/ Leslie A. Demers*

J. Chadwick Hatmaker, BPR# 018693
Kaitlyn E. Hutcherson, BPR# 035188
WOOLFE, MCLANE, BRIGHT,
  ALLEN & CARPENTER, PLLC
Post Office Box 900
Knoxville, Tennessee 37901-0900
Tel:  (865) 215-1000
Fax:  (865) 215-1001
chatmaker@wmbac.com
khutcherson@wmbac.com

John M. Neukom (*admitted pro hac vice*)
Barbara N. Barath (*admitted pro hac vice*)
DEBEVOISE & PLIMPTON LLP
650 California Street
San Francisco, California 94108
jneukom@debevoise.com
bnbarath@debevoise.com
(415) 738-5700

Leslie A. Demers (*admitted pro hac vice*)
Chris J. Coulson (*admitted pro hac vice*)
Anthony P. Biondo (*admitted pro hac vice*)
Ryan P. Bisaillon (*admitted pro hac vice*)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
leslie.demers@skadden.com
chris.coulson@skadden.com
anthony.biondo@skadden.com
ryan.bisaillon@skadden.com
(212) 735-3000

*Attorneys for Extreme Networks, Inc.*