# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., | § | Case No. 3:20-cv-00451-CEA-DCP |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | **Jury Demand** |
| | § | |
| BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; AND EXTREME NETWORKS, INC., | § | |
| | § | |
| | § | |
| | § | |
| Defendants. | § | |
| | § | |

## PLAINTIFFS SNMP RESEARCH, INC.'S AND SNMP RESEARCH INTERNATIONAL, INC.'S OPPOSITION TO EXTREME NETWORKS, INC.'S MOTION TO REFER QUESTIONS TO THE REGISTER OF COPYRIGHTS

# TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................... 1

II.     ARGUMENT .............................................................................................................. 3

        A.      Overview Of Copyright Registration And 17 U.S.C. § 411 ........................... 3

        B.      Section 411 Requires A Showing Of Fraud On The Copyright Office ......................... 6

        C.      A Referral To The Register Of Copyrights Should Not Be Made
                Unless And Until Extreme Has Proven Fraud ............................................... 10

        D.      Extreme Has Not Satisfied Its Burden Of Proving Fraud On The
                Copyright Office ........................................................................................... 11

                1.      SNMP Research Did Not Knowingly Provide Any False
                        Information To The Copyright Office ................................................. 11

                2.      The Question Of Whether Licensing Of Computer Software
                        Constituted Publication Was Unclear At The Time Of SNMP
                        Research's Registration ..................................................................... 14

Case 3:20-cv-00451-CEA-DCP    Document 296    Filed 04/14/23    Page 2 of 29    PageID #: 13824

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advisers, Inc. v. Wiesen-Hart, Inc.*,
238 F.2d 706 (6th Cir. 1956) ............................................................4, 8, 9

*Archie MD v. Elsevier, Inc.*,
261 F. Supp. 3d 512 (S.D.N.Y. 2017)..............................................20, 22

*Bruhn Newtech Inc. v. United States*,
144 Fed. Cl. 755 (Fed. Ct. Cl. 2019)................................................19, 21

*Bueno v. Benhamou*,
2022 WL 1592593 (C.D. Cal. March 16, 2022) ..............................19, 21

*Covertrus Inc. v. Actian Corp.*,
2022 WL 17417289 (D. Me. Dec. 2, 2022) ............................................5

*Daimler-Chrysler Servs. v. Summit Nat'l, Inc.*,
289 F. App'x 916 (6th Cir. 2008) ...........................................................19

*DBT Group v. FMC Corp.*,
2001 WL 1105077 (N.D. Ill. Sept. 19, 2001) ........................................17

*DeliverMed Holdings, LLC v. Schaltenbrand*,
734 F.3d 616 (7th Cir. 2013) ..................................................................10

*Eckes v. Card Prices Update*,
736 F.2d 859 (2d Cir. 1984)......................................................................8

*Energy Intel. Grp. v. Kayne Anderson*,
948 F.3d 261 (5th Cir. 2020) ..................................................................10

*Fashion Avenue Sweater Knits, LLC v. Poof Apparel Corp., et al.*,
2:19-cv-06302-CJC-JEM, (C.D. Cal. Feb. 8, 2021), Dkt. 129-1 ....................3, 6, 22

*Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*,
3:17-CV-42, 2019 WL 4647305 (S.D. Ohio Sept. 24, 2019) .................11

*Frerck v. John Wiley & Sons, Inc.*,
11-CV-2727, 2014 WL 3512991 (N.D. Ill. July 14, 2014) ......................4

*Furniture Dealer.net, Inc. v. Amazon.com, Inc.*,
2022 WL 891473 (D. Minn. March 25, 2022)................................20, 21

- ii -

*Glob.-Tech Appliances, Inc. v. SEB S. A.*,
   563 U.S. 754 (2011)............................................................................7, 8

*Hall v. Eichenlaub*,
   559 F. Supp. 2d 777 (E.D. Mich. 2008)...................................................9

*HealtheState, LLC v. United States*,
   160 Fed. Cl. 91 (2022) ............................................................................11

*Hubco Data Prods. v. Mgmt. Assistance Inc.*,
   1983 WL 1130 (D. Idaho Feb. 3, 1983).................................................17

*Intel Corp. Inv. Policy Comm. v. Sulyma*,
   140 S. Ct. 768, 776 (2020).......................................................................7

*Jeon v. Anderson*,
   2019 WL 2949033 (C.D. Cal. June 14, 2019) ......................................21

*King-Devick Test Inc. v. NYU Langone Hosps.*,
   .” 2019 WL 3071935 (S.D.N.Y. July 15, 2019).....................................11

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   568 U.S. 519 (2013)..................................................................................9

*Lieb v. Korangy Publ'g Inc.*,
   2022 WL 1124850, *13 (E.D.N.Y. Apr. 14, 2022) ...............................20

*McLaren v. Chico's FAS, Inc.*,
   2010 WL 4615772 (S.D.N.Y. Nov. 9, 2010)..........................................19

*Metro. Reg'l Info. v. Am. Home Realty Network*,
   948 F. Supp. 2d 538 (D. Md. 2013)..................................................17, 20

*Olem Shoe Corp. v. Wash. Shoe Co.*,
   No. 1:09-cv-23494 (S.D. Fla. Oct. 14, 2010) ....................................5, 10

*Oliver v. Meow Wolf, Inc.*,
   No. CV 20-237.........................................................................................13

*One Treasure Ltd. v. Richardson*,
   202 Fed. Appx. 658 (5th Cir. 2006).........................................................8

*Original Appalachian Artworks v. Toy Loft, Inc.*,
   684 F.2d 821 (11th Cir. 1982) ..................................................................8

*PRC Realty Sys. v. Nat'l Ass'n of Realtors, Inc.*,
   766 F. Supp. 453 (E.D. Va. 1991) ..............................................16, 17, 18

*ReportHost LLC v. Spectora Inc.*,
    22-cv-00457-DDD (D. Co. March 29, 2023), Dkt. 27 .......................................................20

*Roberts v. Gordy*,
    877 F.3d 1024 (11th Cir. 2017) ...........................................................................................3, 8

*Schenck v. Orosz*,
    105 F. Supp. 3d 812 (M.D. Tenn. 2015)..............................................................8, 11, 15, 16

*SellPoolSuppliesOnline.com LLC v. Ugly Pools Arizona Inc.*,
    2018 WL 4565900 (D. Ariz. Sept. 24, 2018)......................................................................21

*Sheets v. Moore*,
    97 F.3d 164 (6th Cir.1996) ..................................................................................................19

*Unicolors, Inc. v. H&M Hennes & Mauritz*,
    142 S. Ct. 941 (2022) ..................................................................................................... *passim*

*Unicolors, Inc. v. H&M Hennes & Mauritz*,
    52 F.4th 1054 (9th Cir. 2022) ....................................................................................... *passim*

*United States v. Wehunt*,
    230 F. Supp. 3d 838 (E.D. Tenn. 2017) ................................................................................9

*Unix System Labs. v. Berkeley Software Design, Inc.*,
    1993 WL 414724 (D.N.J. Mar. 3, 1993) ..............................................................................19

*Varsity Brands, Inc. v. Star Athletica, LLC*,
    799 F.3d 468 (6th Cir. 2015), *aff'd on other grounds*, 580 U.S. 405 (2017)...........................4

**Statutes**

17 U.S.C. § 101...................................................................................................................14

17 U.S.C. § 411 ........................................................................................................... *passim*

17 U.S.C. § 411(b)(1) .................................................................................................. *passim*

17 U.S.C. § 411(b)(2) .....................................................................................................5, 6, 10

**Other Authorities**

Benjamin Kaplan, *Publication in Copyright Law: The Question of Phonograph
    Records*, 103 U. PA. L. REV. 469, 488-89 (1955) ................................................................22

Compendium of U.S. Copyright Office Practices (2d ed. 1978) ...................................... 15-18, 21

Compendium of U.S. Copyright Office Practices (3d ed. 2017) ..................................................15

- iv -

Melville B. Nimmer, *Copyright Publication*, 56 COLUM. L. REV. 185, 185 (1956).....................22

Peter S. Menell, *In Search of Copyright's Lost Ark: Interpreting the Right to Distribute in the Internet Age*, 59 J. Copr. Soc'y 201, 233 (2011)..........................................22

*Unicolors, Inc. v. H&M Hennes & Mauritz*, Oral Argument Transcript Dkt. No. 20-915, *available at* https://www.supremecourt.gov/oral_arguments/argument_transcripts/2021/20-915_g3bi.pdf .................................................................................................................9

U.S. Copyright Office, *Annual Report of the Register of Copyrights*, at 12-13 (2008).........................................................................................................................................8

- v -

Plaintiffs SNMP Research, Inc. ("SNMP Research") and SNMP Research International, Inc. ("SNMP International") (collectively, "Plaintiffs") submit this Memorandum of Law in Opposition to Defendant Extreme Networks, Inc.'s ("Extreme") Motion to Refer Questions to the Register of Copyrights ("Motion"). Dkt. 293.

## I. INTRODUCTION

Two years ago, Extreme joined a motion to dismiss filed by its former co-defendants seeking dismissal of SNMP Research's copyright claims based on the purported invalidity issue now raised in the Motion. That prior motion to dismiss argued that SNMP Research had made a legal mistake on its copyright applications (when it identified the works as unpublished rather than published), relying on Ninth Circuit authority that, at the time, held that legal mistakes were irrelevant to the question of whether there is "knowing" inaccuracy on a copyright application. After the motion to dismiss was fully briefed, the United States Supreme Court reversed that prior Ninth Circuit authority. *Unicolors, Inc. v. H&M Hennes & Mauritz*, 142 S. Ct. 941, 948 (2022). The Ninth Circuit on remand made clear that the statute on which Extreme relies codifies the fraud on the Copyright Office doctrine, the same doctrine that the Sixth Circuit applies. In other words, controlling precedent is and has been clear that Extreme must prove that SNMP Research defrauded the Copyright Office in order to prevail on Extreme's invalidity argument.

Extreme's prior motion to dismiss requested the very same relief the Motion now seeks—*i.e.,* referral to the Register of Copyrights, Dkt. 42 at 21, and was dismissed by this Court with leave to refile. Dkt. 205 at 43. Extreme did not re-file its motion to dismiss on this issue despite the leave to do so granted by this Court. Dkt. 260. Instead, Extreme has filed this Motion in which Extreme mainly repackages the same arguments it made before. Moreover, Extreme ignores the Ninth Circuit's decision that just issued on remand from the Supreme Court (which recognized that fraud-on-the-

Copyright Office is the applicable standard) and then proffers an approach to deciding the issue of a "knowing" inaccuracy that would turn the Supreme Court's decision into a nullity.

As demonstrated below, the owner and operator of Plaintiffs, Dr. Jeffrey Case, personally filled out SNMP Research's applications for its copyright registrations. Extreme will have to show that (i) Dr. Case mistakenly identified SNMP Research's software as "unpublished" when submitting the copyright registration applications (ii) when he actually knew that the software in the registrations was published. Extreme will not be able to prove either one. Based on the fact that SNMP Research consistently restricts the use of its software through confidentiality agreements when licensing to customers, in completing SNMP Research's applications, Dr. Case selected unpublished. That choice reflected that he did not think SNMP International's licensing of its software to some companies on restricted terms constituted "publication" to the general public. **Indeed, the very excerpt of source code that Dr. Case sent to the Copyright Office with the applications says on its face, nearly two dozen times:  "This software is furnished under a license and may be used and copied only in accordance with the terms of such license and with the inclusion of the above copyright notice. . . This software is an unpublished work subject to a confidentiality agreement and is protected by copyright and trade secret law**." The Copyright Office corresponded with Dr. Case about his source code deposit, but never raised any contention that there was somehow an inconsistency regarding prior licensing (under restriction) and the software still remaining "unpublished." Thus, even if Dr. Case made a mistake by selecting unpublished on the application, that mistake cannot possibly justify invalidating SNMP Research's copyright registrations, particularly where there is no dispute or challenge that SNMP Research was the proper copyright claimant and that SNMP Research's work of authorship is protectable by copyright. In the recent words of the Register of Copyrights:

- 2 -

> [D]etermining whether a work has been published can raise complex legal questions for which there are not always straightforward answers. Varied individuals and groups have expressed frustration to the [Copyright] Office regarding difficulties in determining whether a work has been published when completing copyright application forms. . . . A number of courts have determined that ambiguity in the definition of the term "publication" prevented a finding that an applicant provided inaccurate information with knowledge that it was inaccurate when it mischaracterized the publication status of a work. Particularly when there is no question of whether the applicant was a proper claimant or that the work is protectable by copyright, a copyright registration should not be invalidated—and the copyright owner's ability to enforce the copyright compromised—when the application was submitted in good faith based on a reasonable interpretation of the law.

*Fashion Avenue Sweater Knits, LLC v. Poof Apparel Corp., et al.,* Case No. 2:19-cv-06302-CJC-JEM,

C.D. Cal. (Feb. 8, 2021), Dkt. 129-1; Weber Decl., Ex. A at 17-18.[1]

In addition, every Circuit-level court to have addressed the issue has held that before referring to the Register, a court should wait until the party asserting an inaccuracy in a copyright application proves that the registrant made an inaccurate statement with knowledge of its falsity. Specifically under Sixth Circuit precedent, this means Extreme must prove fraud on the Copyright Office before any referral is ever made to the Register. As demonstrated below, Extreme has not come close to meeting its heavy burden.

Extreme's Motion should be denied.

## II.     ARGUMENT

### A.     Overview Of Copyright Registration And 17 U.S.C. § 411

Registration of a copyright with the Copyright Office is not a condition of copyright protection; however, a United States copyright plaintiff still must register his or her copyright in order to bring an infringement lawsuit. *Roberts v. Gordy*, 877 F.3d 1024, 1028-29 (11th Cir. 2017) ("A copyright inheres in authorship . . . While registration is a prerequisite to an infringement suit . . . a 'registration is not a condition of copyright protection.'") (citations omitted). If the Copyright Office issues a

---

[1] Citations to the "Weber Decl." are to the Declaration of Olivia L. Weber and accompanying exhibits, which are filed contemporaneously herewith.

- 3 -

certificate of registration, as occurred here (Dkt. 244, Amended Complaint ("AC") ¶ 33, Ex. B), then the registration is presumptively valid. *Varsity Brands, Inc. v. Star Athletica, LLC*, 799 F.3d 468, 477 (6th Cir. 2015), *aff'd on other grounds*, 580 U.S. 405 (2017).

For decades, courts, including the Sixth Circuit, have recognized that copyright applications may on occasion contain inaccuracies. But the goal of copyright law is not to allow infringers to sidestep the consequences of their infringement based on a technicality. Consequently, as the Sixth Circuit has held, "an innocent misstatement, or a clerical error, in the affidavit and certificate of registration, <u>unaccompanied by fraud or intent to extend the statutory period of copyright protection</u>, does not invalidate the copyright, nor is it thereby rendered incapable of supporting an infringement action." *Advisers, Inc. v. Wiesen-Hart, Inc.*, 238 F.2d 706, 707-08 (6th Cir. 1956) (emphasis added).

In 2008, Congress passed the Prioritizing Resources and Organization for Intellectual Property Act (the "PRO-IP Act") codifying the fraud on the Copyright Office rule that *Advisers* had long applied. A key purpose of the PRO-IP Act was to limit loopholes that infringers could assert regarding the registration process in an attempt to avoid the consequences of their infringement. *Frerck v. John Wiley & Sons, Inc.*, 11-CV-2727, 2014 WL 3512991, at *3 (N.D. Ill. July 14, 2014) (by amending Section 411, "Congress codified the result in the majority of cases that had previously decided that copyright registration should not be a trap for the unwary and that copyright infringers are not permitted to defeat registrations on technicalities."). The PRO-IP Act dictates that a copyright registration certificate is valid even if it contains inaccurate information and may only be held invalid if it contains inaccurate information <u>and</u> two supplementary conditions are also both satisfied:

(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and

(B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

- 4 -

17 U.S.C. § 411(b)(1).  As demonstrated in more detail in section II.B, below, 17 U.S.C. § 411 was

essentially a codification of the fraud on the Copyright Office doctrine.  *Unicolors, Inc. v. H&M*

*Hennes & Mauritz*, 52 F.4th 1054, 1066-67 (9th Cir. 2022) ("[T]he PRO-IP Act was intended to codify

the fraud on the Copyright Office doctrine.").  Moreover, according to the United States Supreme

Court, Congress meant for this statute "to make it easier, not more difficult, for nonlawyers to obtain

valid copyright registrations."  *Unicolors*, 142 S. Ct. at 948.

Thus, Section 411(b)(2) requires that, before deciding whether to invalidate a copyright

registration on the basis of a supposed misrepresentation in a copyright application, a court "shall

request the Register of Copyrights to advise the court whether the inaccurate information, if known,

would have caused the Register of Copyrights to refuse registration."  17 U.S.C. § 411(b)(2).  In other

words, even if a court has already found that a knowingly false statement was made on an application,

the court still cannot invalidate the copyright registration unless the court first asks the Register of

Copyrights if the misstatement was material to the registration decision.  "The Register has explained

that [this] referral process was instituted by Congress to ensure that no court holds that a certificate is

invalid due to what it considers to be a misstatement on an application without first obtaining the input

of the Register as to whether the inaccurate information, if known, would have caused the Register . . .

to refuse registration."  *Covertrus Inc. v. Actian Corp.*, 2022 WL 17417289, at *3 (D. Me. Dec. 2,

2022) (quoting Response of the Register of Copyrights to Request Pursuant to 17 U.S.C. § 411(b)(2) at

10-11, *Olem Shoe Corp. v. Wash. Shoe Co.*, No. 1:09-cv-23494 (S.D. Fla. Oct. 14, 2010) (internal

quotation mark omitted)).  Just two years ago, in another case wherein an infringer alleged that the

registrant's application had a "misstatement" regarding the issue of publication, the Register of

Copyrights stated that "particularly when there is no question of whether the applicant was a proper

claimant or that the work is protectable by copyright, a copyright registration should not be

invalidated—and the copyright owner's ability to enforce the copyright compromised—when the

- 5 -

application was submitted in good faith based on a reasonable interpretation of the law." *Fashion Avenue Sweater Knits,* Case No. 2:19-cv-06302-CJC-JEM, C.D. Cal. (Feb. 8, 2021), Dkt. 129-1; Weber Decl., Ex. A at 17-18. Neither Extreme's Motion, nor its motion to dismiss, challenges SNMP Research as the proper copyright claimant or that its software is protectable by copyright (*i.e.* that it constitutes an original work of authorship).

Although Section 411(b)(2) mentions referral to the Register in "any case in which inaccurate information described under paragraph (1) is alleged," as demonstrated below, every United States Circuit Court to have addressed this language has held that a court should await proof of a knowingly false statement (*i.e.* fraud) before asking the Register to opine on materiality.

## B. Section 411 Requires A Showing Of Fraud On The Copyright Office

Section 411(b)(1)(A) states that the registrant must have provided "inaccurate information . . . with knowledge that it was inaccurate." 17 U.S.C. § 411(b)(1)(A). The United States Supreme Court recently held that "knowledge that [information] was inaccurate" includes not just knowledge of the facts but also knowledge of the law, as well as knowledge of the law as applied to the facts. *Unicolors*, 142 S. Ct. at 947. As noted above, Extreme and Broadcom/Brocade argued in their prior motion to dismiss that actual knowledge did not include knowledge of the law, relying mainly on two Ninth Circuit opinions, the *Unicolors* case which the Supreme Court soon reversed, and another case called *Gold Value* (and cases that rely on *Gold Value*), Dkt. 42 at 18-21; Dkt. 57 at 18-19. After the Supreme Court flatly rejected this assertion in *Unicolors*, 142 S. Ct. 941, Plaintiffs updated the Court with the decision. Dkt. 121. In response, Defendants argued that the Supreme Court's opinion in *Unicolors* somehow supported their motion to dismiss and that it was inconsistent with having to prove fraud on the Copyright Office. Dkt. 122 at 3-4. But nine months later, the Ninth Circuit rendered its decision on remand in *Unicolors*, rejecting Defendants' arguments. *See Unicolors*, 52 F.4th at 1066 ("*Gold Value* and our previous decision in this case took a different tack because the statute employed the word

- 6 -

'knowledge' rather than 'fraud' . . . However, because we now know § 411(b) requires knowledge of both mistakes of law and of fact, there is no daylight between a court's determination that a party had knowledge of the legal and factual inaccuracies and a finding that the party committed fraud on the Copyright Office.").**2**

In holding that knowledge of inaccuracy includes knowledge of the law as applied to the facts, the Supreme Court in *Unicolors* recognized that "cases decided before Congress enacted § 411(b) overwhelmingly held that inadvertent mistakes on registration certificates [did] not invalidate a copyright and thus did not bar infringement actions[,]" and that "[w]e can find no indication that Congress intended to alter this well-established rule when it enacted § 411(b). *Unicolors*, 142 S. Ct. at 947-48 (citing, among other authority, the Sixth Circuit's opinion in *Advisers* which articulated this Circuit's standard of fraud on the Copyright Office).

Moreover, the Supreme Court held that the party asserting invalidity must prove <u>actual knowledge</u> (which would include willful blindness), not a lesser standard such as reason to know or recklessness. *Id.* (citing *Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 776 (2020) (citing *Glob.-Tech Appliances, Inc. v. SEB S. A*., 563 U.S. 754, 769 (2011))). The Supreme Court has described the "willful blindness" standard as requiring: (1) a person's subjective belief that there is a "high probability that a fact exists"; and (2) that person's "deliberate actions to avoid learning of that fact." *Glob.-Tech Appliances*, 563 U.S. at 769. These requirements "surpass[] recklessness and negligence," meaning that willful blindness requires "one who takes deliberate actions to avoid confirming a high probability of wrongdoing and who can almost be said to have actually known the critical facts." *Id.*

---

**2** In Extreme's Motion, it still cites authority that relies on *Gold Value*. *See, infra,* footnote 10.

- 7 -

As noted, on remand from the Supreme Court in *Unicolors*, the Ninth Circuit held that "the clear implication of the Supreme Court's holding" is that Section 411 "was intended to codify the fraud on the Copyright Office Doctrine." *Unicolors*, 52 F.4th at 1066-67. The Copyright Office has said the same thing. *See* U.S. Copyright Office, *Annual Report of the Register of Copyrights*, at 12-13 (2008) ("[S]ection 411 of the copyright law [was amended] to codify the doctrine of fraud on the Copyright Office in the registration process."); *see* Weber Decl., Exhibit B at 13. And, as noted above, the fraud on the Copyright Office doctrine is the standard that the Sixth Circuit employed in *Advisers*, 238 F.2d at 708 ("[A]n innocent misstatement . . . unaccompanied by fraud or intent to extend the statutory period of copyright protection, does not invalidate the copyright"), which remains binding precedent. *See also Schenck*, 105 F. Supp. 3d at 819 (Sixth Circuit standard is the fraud standard articulated in *Advisers*). Moreover, numerous other Circuit Courts of Appeal in addition to the Ninth and Sixth Circuits have employed the fraud on the Copyright Office standard both pre- and post-Section 411. *See, e.g., Roberts v. Gordy*, 877 F.3d at 1030 ("The scienter necessary for invalidating a registration is also clear and well settled . . . the applicant must have the required scienter of intentional or purposeful concealment.").[3] And although some courts have quibbled over whether Section 411(b) requires proof of "intent to defraud," as Justice Kagan noted from the bench during oral argument in *Unicolors*: "There might be a difference between knowledge and intent to defraud in other contexts. But, in this context, I mean, how is it that a registrant knowingly misrepresents information on the application and

---

[3] *See also Eckes v. Card Prices Update*, 736 F.2d 859, 862 (2d Cir. 1984) ("[W]e agree with the district court that the presumption . . . was not overcome because of fraud."); *One Treasure Ltd. v. Richardson*, 202 Fed. Appx. 658, 661 (5th Cir. 2006) ("Even if Richardson is correct that the works are derivative, failure to register them as such . . . does not invalidate a registration without fraudulent intent."); *Original Appalachian Artworks v. Toy Loft, Inc.*, 684 F.2d 821, 828 (11th Cir. 1982) ("[O]missions or misrepresentations in a copyright application can render the registration invalid, [only when there] has been intentional or purposeful concealment of relevant information. Where this element of 'scienter' is lacking, courts generally have upheld the copyright.").

- 8 -

does not intend to defraud?"  Transcript of Oral Arg., *Unicolors, Inc. v. H&M Hennes & Mauritz*, Dkt. No. 20-915, *available at* https://www.supremecourt.gov/oral_arguments/argument_transcripts/ 2021/20-915_g3bi.pdf.

Accordingly, fraud on the Copyright Office is the standard that applies in this Circuit via the *Advisers* binding precedent.  *See, e.g.*, *United States v. Wehunt*, 230 F. Supp. 3d 838, 846 (E.D. Tenn. 2017) (a district court "should only deviate from [Sixth Circuit] authority where it is powerfully convinced that the circuit will overrule itself at the next available opportunity.") (internal quotation marks omitted); *see also Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 538 (2013) ("When a statute covers an issue previously governed by the common law, we must presume that Congress intended to retain the substance of the common law" unless statutory purpose to the contrary is evident.).  As one court within the Sixth Circuit has aptly put it, "[a]bsent a clear directive from the Supreme Court . . . a district court, is not at liberty to reverse the circuit's precedent.  In the absence of Supreme Court precedent directly on point, a district court should decline to 'underrule' established circuit court precedent."  *Hall v. Eichenlaub*, 559 F. Supp. 2d 777, (E.D. Mich. 2008) (citations omitted).

After recognizing that Section 411 codified the fraud on the Copyright Office doctrine, the Ninth Circuit on remand in *Unicolors* then applied the "actual knowledge" requirement to the case before it.  In finding that the infringer had not proven actual knowledge (including "willful blindness"), the Ninth Circuit noted that the plaintiff copyright holder had not "egregiously misapplie[d] a clear statute"; there was no on-point binding circuit court precedent on the issue in question at the time of registration; and the manual published by the Copyright Office in existence at the time of registration "did not provide meaningful guidance to registrants" on the issue but instead "simply restated the statute using different wording."  *Unicolors,* 52 F.4th at 1069.

- 9 -

In summary, in order to invalidate SNMP Research's copyright registrations, Extreme bears the heavy burden of proving a knowingly false statement, *i.e.* fraud, on the Copyright Office. As demonstrated below, Extreme has not come close to meeting that burden, and unless and until it does so, there should be no referral to the Register of Copyrights.

### C.  A Referral To The Register Of Copyrights Should Not Be Made Unless And Until Extreme Has Proven Fraud

Every United States Circuit Court of Appeal to have addressed the issue has held that, prior to referring an issue to the Register of Copyrights under Section 411(b)(2), a court can and should first require the party challenging validity to prove a knowingly false statement in the copyright application.

Specifically, the Seventh Circuit, relying in part on the Copyright Office itself, has held that:

> Given its obvious potential for abuse, we must strongly caution both courts and litigants to be wary of using this device in the future. . . . <u>[C]ourts can demand that the party seeking invalidation first establish that the other preconditions to invalidity are satisfied before obtaining the Register's advice on materiality.</u>  In other words, a litigant should demonstrate that (1) the registration application included inaccurate information; and (2) the registrant knowingly included the inaccuracy in his submission to the Copyright Office. . . Aside from minimizing the risk that parties would use this provision as a delay tactic, <u>this approach has the added benefit of an endorsement from the Register.</u>

*DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 625 (7th Cir. 2013) (emphasis added) (citing Response of the Register of Copyrights to Request Pursuant to 17 U.S.C. § 411(b)(2) at 12, *Olem Shoe*, No. 1:09-cv-21494 ("[B]efore asking the Register whether she would have refused to register a copyright . . . a court should feel free to determine whether there is in fact a misstatement of fact.")).  The Fifth Circuit agreed with the Seventh Circuit in *Energy Intel. Grp. v. Kayne Anderson*, 948 F.3d 261, 278 (5th Cir. 2020) ("[C]ourts can demand that the party seeking invalidation first establish that the other preconditions to invalidity are satisfied before obtaining the Register's advice on materiality.") (quoting *DeliverMed Holdings*).  The Ninth Circuit is in accord with the Fifth and Seventh Circuits.  It held just last year in *Unicolors* (after remand by the Supreme Court) that "[b]efore

- 10 -

making a request [to the Copyright Office], a court must first establish whether the registrant had the proper 'knowledge' of the inaccuracy under § 411(b)1(A)." *Unicolors,* 52 F.4th at 1064.

Finally, although the Sixth Circuit has not yet spoken on this issue, district courts within it have ruled that a referral is not necessary unless "there is an evidentiary basis" for each element under Section 411(b). *See Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*, No. 3:17-CV-42, 2019 WL 4647305, at *9 (S.D. Ohio Sept. 24, 2019) ("The facts in this case do not warrant referral to the Copyright Office to answer any of the three questions posed by [defendant] . . . because the facts do not show that [plaintiff] included the inaccurate [information] 'with knowledge that it was inaccurate.'"); *Schenck v. Orosz*, 105 F. Supp. 3d 812, 823 (M.D. Tenn. 2015) (denying summary judgment and denying referral to the Register).[4]

This Court should follow the approach of these well-reasoned authorities and the suggestion of the Copyright Office itself by withholding any referral until such time, if ever, as Extreme has satisfied its burden of proving fraud on the Copyright Office.

### D.    Extreme Has Not Satisfied Its Burden Of Proving Fraud On The Copyright Office

#### 1.    SNMP Research Did Not Knowingly Provide Any False Information To The Copyright Office

Dr. Jeffrey Case, who owns and operates SNMP Research, personally filled out the copyright applications for SNMP Research.  Declaration of Dr. Jeffrey D. Case ("Case Decl.") ¶¶ 1-2.  He also

---

[4] Extreme's cited authority does not help it.  Mot. at 20-21.  In *HealtheState, LLC v. U.S.*, the referral motion was not made until fact discovery closed and evidence was presented demonstrating that the plaintiff had knowingly altered lines of software code to remove copyright notices that showed the plaintiff was not the original author of the software.  160 Fed. Cl. 91, 95-97 (2022).  Nothing like that has been shown in this case.  Similarly, in *King-Devick Test Inc. v. NYU Langone Hosps.*, the motion to refer was not made until after fact discovery closed and the court expressly noted that "it will often be prudent for a court to delay referral pending a factual determination that a challenged copyright application does indeed contain inaccuracies that have been knowingly introduced."  2019 WL 3071935, at *9 (S.D.N.Y. July 15, 2019).

personally submitted the deposit copies of SNMP Research's source code to the Copyright Office, and

he personally corresponded by phone and email with personnel at the Copyright Office. *Id.* ¶¶ 3-4.

Dr. Case believes in the accuracy of what he wrote in SNMP Research's copyright applications, and he

certainly never wrote anything on the applications that he knew or believed or even suspected to be

incorrect. *Id.* ¶ 5. In completing the application, he selected the option indicating the works were

unpublished rather than published because he did not think SNMP Research had "published" the

software to the general public just by having licensed it to various entities (and with restrictions). *Id.*

¶¶ 5-8. Nor did he try to mislead the Copyright Office about his prior licensing. *Id.* ¶¶ 5-7.

In fact, each and every copy of SNMP Research source code that Dr. Case deposited with the

Copyright Office for each and every one of the eight copyright registrations at issue contains the

following statement:

> **This software is furnished under a license and may be used and copied only**
> **in accordance with the terms of such license and with the inclusion of the**
> **above copyright notice.** This software or any other copies thereof may not be
> provided or otherwise made available to any other person. . . . **This software is an**
> **unpublished work subject to a confidentiality agreement** and is protected by
> copyright and trade secret law. Unauthorized copying, redistribution or other use
> of this work is prohibited. The above notice of copyright on this source code
> product does not indicate any actual or intended publication of such source code.

*Id.* ¶ 6 (emphasis added). This language is repeated nearly two-dozen times throughout the excerpted

source code copies that Dr. Case submitted with his applications to the Copyright Office. *See, e.g.*,

Weber Decl. ¶ 4, Ex. C at 2, 6-7, 9, 11, 13, 15, 17-18, 21, 23, 42096, 42101-104, 42106, 42108, 42110,

42112, and 42114. Moreover, Dr. Case had numerous communications with the Copyright Office

about his copies of source code which contained the above-quoted language, and at no time did the

Copyright Office ever suggest there was any inconsistency between the prior licensing (plainly

disclosed repeatedly throughout the source code sent to the Copyright Office with the application

materials) and selecting "unpublished" on SNMP Research's copyright applications. Case Decl. ¶ 9.

- 12 -

*See Oliver v. Meow Wolf, Inc.*, No. CV 20-237 KK/SCY, 2022 WL 3682936, at *7 (D.N.M. Aug. 25, 2022) (referral under Section 411(b) unwarranted where the plaintiff disclosed in her application correspondence to the Copyright Office that her painting and sculpture works had been distributed to others for sale or display—the very facts that defendant claimed rendered her "unpublished collection" classification a knowing misstatement).

Dr. Case has also acted consistently with his selecting "unpublished" on SNMP Research's copyright application. For instance, for over two decades prior to registration with the Copyright Office as well as post-registration, it was Plaintiffs' custom and practice to include the above block-quoted language in SNMP Research source code provided to customers such as Brocade and also many others. Case Decl. ¶¶ 8-9. Similarly, SNMP International's license agreement with Extreme, entered into about ten years before registration of the software, refers to the licensed software (identified in the license as the "Program") as unpublished. Dkt. 246-2 ¶ 20 ("The Program is unpublished commercial computer software, which has been developed exclusively at private expense and is subject to restricted rights."). Extreme never contended or even hinted that there was any inconsistency between SNMP International licensing its software to Extreme (including Extreme's incorporation of that software into products to be sold) yet the software still being unpublished. Case Decl. ¶ 10. The same holds true for prior defendant Brocade's license agreement with SNMP International. *Id.* ¶ 11. Those parties as well as other licensees of course knew of their own non-exclusive licenses, yet no one ever claimed or even suggested that there was any inconsistency between the existence of SNMP International's licenses and its software still remaining unpublished, despite the fact that over the years many lawyers were involved in those licensing negotiations. *Id.* ¶ 12.

Extreme also suggests that SNMP Research's co-plaintiff, SNMP International, had previously registered *other* works as "published." *See* Mot. at 19-20 (citing TX0006257219; TX0005682300; TX0005666512; TX0005666513; TX0005666514; TX0005666507). Extreme is incorrect; while it

- 13 -

cited these registration numbers (Mot. at 20 n.7), it neither submitted copies of those registrations nor

disclosed that SNMP International was not the registrant and that these works were registered by

another entity entirely. **SNMP International did not register these works—IBM did**. Dr. Case was

not even aware that these works had been registered at all until this litigation. Case Decl. ¶ 13. While

IBM's works presumably may have included third-party material from SNMP International, IBM's

works say nothing about Dr. Case's or SNMP Research's state of knowledge in 2011 or at any time for

that matter.

In short, even assuming it was "inaccurate" to select unpublished on SNMP Research's

copyright registration applications, Extreme has not come close to meeting its burden of proof that it

was a knowing, fraudulent inaccuracy.

### 2. The Question Of Whether Licensing Of Computer Software Constituted Publication Was Unclear At The Time Of SNMP Research's Registration

17 U.S.C. § 101 defines "publication" as:

> the distribution of copies or phonorecords of a work to the public by sale or other
> transfer of ownership, or by rental, lease, or lending. The offering to distribute
> copies or phonorecords to a group of persons for purposes of further distribution,
> public performance, or public display, constitutes publication. A public
> performance or display of a work does not of itself constitute publication.

Extreme asserts that the law on publication in the context of licensing and distribution of computer

software was so crystal clear at the time of SNMP Research's registration that SNMP Research must

have engaged in "willful blindness" to have identified its software as unpublished rather than published

on its copyright application. Extreme is wrong on the facts and the law. Even more fundamentally,

Extreme's approach would impose the very "mistakes of law do not count" requirement that the

Supreme Court flatly rejected in *Unicolors* just last year.

Extreme points to language in the Copyright Office's Third Compendium ("Compendium III"),

which says "Software is distributed when copies are distributed by purchase or license" and that "[a]

- 14 -

program is considered published even if the copies contained object code rather than source code and even if the source code has not been disclosed to the public." Compendium III, §§ 612.2 and 721.9(E); *see* Mot. at 11.[5] However, Compendium III was released in 2014; it did not even exist at the time of SNMP Research's 2011 registration.

> **[I]nformation can only be "inaccurate" if it violated the Copyright Office's prevailing standards at the time the Register approved the application**. Unless the defendants can make a good faith fact-based contention that plaintiffs violated the unit of publication rule in effect at the time (*i.e.* under the Second Compendium), it is difficult to see how the defendants could prevail on this argument.

*Schenck*, 105 F. Supp. 3d at 820 (emphasis added). Indeed, the Compendium III expressly acknowledges its inapplicability to cases such as the one at bar. Compendium III, at p. 5 (3d ed. 2017) ("As a general rule, Compendium II continues to be the relevant administrative manual for registrations, renewals, and recordations issued by the Office between January 1, 1978 and December 22, 2014.").

The operative Compendium at the time of SNMP Research's 2011 registration was the Second Compendium ("Compendium II"), and it did not contain the language in Compendium III (or equivalent language) on which Extreme relies.[6] In fact, Compendium II provided no discussion at all as to whether or when licensing of software (or for that matter delivery of software, or sale of computers/devices containing software) constitutes "publication" to the general public. Thus, there was

---

[5] The Compendium III is available at https://www.copyright.gov/comp3/docs/compendium.pdf. It also provides that "publication occurs when one or more copies or phonorecords are distributed to a member of the public who is not subject to any express or implied restrictions concerning the disclosure of the content of that work." Compendium III, § 1905.1 (emphasis added). As discussed below, the license agreements at issue here are subject to express restrictions on disclosure.

[6] The Compendium II is available at https://www.copyright.gov/history/comp/compendium-two.pdf. The only language from Compendium II that Extreme cites in its Motion is that "for registration purposes, the claim is in the computer program rather than in any particular representation of the program." Mot. at 6 (quoting Compendium II, at § 321.03). But this says nothing about what constitutes publication and it says nothing about licensing at all. Section 900 of the Compendium II addresses the issue of publication, and it also says nothing about either licensing or computer software.

no statute, regulation, or even a Compendium provision setting forth the law, rule, or even the standard on publication of computer software for SNMP Research to "know" back in 2011. Under these circumstances, the information SNMP Research provided, even if assumed to be inaccurate <u>now</u>, was not inaccurate when SNMP Research provided it, because "**<u>information can only be 'inaccurate' if it violated the Copyright Office's prevailing standards at the time the Register approved the application.</u>**" *Schenck*, 105 F. Supp. 3d at 820 (emphasis added).

Indeed, what little that SNMP Research could have gleaned from the Compendium II is entirely consistent with SNMP Research's registration of its software as unpublished. Compendium II provides that: "In order for publication to occur by the distribution of copies or phonorecords, such distribution must be 'to the public' rather than a more limited distribution. Generally, members of the public are persons who are under <u>no implied or express restriction with respect to disclosure of the work's contents</u>. *See* H.R. Rep. 94-1476, 94th Cong., 2d Sess. 138 (1976)." Compendium II, § 905.02 (emphasis added). A review of extant case law would have led to the same conclusion. *See, e.g.*, *PRC Realty Sys. v. Nat'l Ass'n of Realtors, Inc.*, 766 F. Supp. 453, 461 (E.D. Va. 1991) ("The work was not made available to the general public without restriction . . . [and] occurred under tightly restricted terms, *e.g.*, confidentiality and restrictions on sublicensure to a competitor, and on release of source codes. This is not publication."); *Hubco Data Prods. v. Mgmt. Assistance Inc.*, 1983 WL 1130, *6 (D. Idaho Feb. 3, 1983) ("The operating systems were only offered to owners of MAI computers. Under these circumstances, the distribution would remain limited and it would not constitute a general distribution to the public invalidating copyright protection."); *see also Metro. Reg'l Info. v. Am. Home Realty Network*, 948 F. Supp. 2d 538, 559 (D. Md. 2013) (computer database was properly registered as unpublished because it was "only made available to subscribers under restrictive licensing terms").[7]

---

[7] *See also DBT Group v. FMC Corp.*, 2001 WL 1105077, *4 (N.D. Ill. Sept. 19, 2001) (denying motion to dismiss asserting that software license agreement was a "publication" because

- 16 -

The license agreements at issue contain numerous "express restriction[s] with respect to disclosure of the work's contents," Compendium II, § 905.02. *See, e.g.,* Brocade Agreement (AC, Ex. A) § 2 (limiting "internal use rights" to the "Brocade Fabric operating system and the PowerPC hardware platform"); § 3 (same limitation regarding binary "redistribution rights," and also prohibiting disclosure of source code); 2001 Extreme License (AC, Ex. C) § 2 (limiting "internal use rights" to "Licensee's Network Switch project using the Red Hat Linux operating system and the MIPS hardware platform."); § 3 (same limitation regarding binary "redistribution rights," and also prohibiting disclosure of source code). Consequently, far from being a "knowing" misstatement for SNMP Research to have registered its software as unpublished, that course of action complied with the Copyright Office's own guidance at the time of registration as well as numerous cases.

Extreme's only response to authorities such as *DBT*, *Hubco*, *PRC Realty*, and *Metropolitan Realty* (all of which found licensing of software not to constitute publication) is that the licenses at issue in those cases are in some ways different (for instance, that they supposedly have "more restrictive terms" (Mot. at 14)) than the licenses at issue here. But such hair splitting over the precise details of the licenses at issue in the cases misses the point: SNMP Research's licenses have meaningful restrictions. So allegedly getting the "publication" answer wrong just because, in Extreme's opinion (twelve years after registration) the restrictions were not strong enough, is not "willful blindness." Moreover, Extreme's contention that SNMP granted licensees "the right to sublicense . . . to its customers without restriction as to who those customers are" (Mot. at 15) also misses the point. SNMP International's licenses restricted how the software could be used, including limiting the "target processor, operating system, and development tools platform" on which they can be used, and limiting the disclosure of

---

"[i]information that is distributed to parties who are restricted in their use of the information is unpublished whether it is sold, leased, or given").

- 17 -

source code. *See, e.g.*, AC ¶ 70. These are "express restrictions with respect to disclosure of the work's contents," Compendium II, § 905.02, and therefore at least arguably render the works unpublished. Indeed, in *PRC Realty*, the license at issue gave the licensee (the National Association of Realtors) access to source code for a 30-year period "during which [NAR] could do anything it wanted with the software," except sublicense it to a competitor, use certain names for the software, and release the source code. *PRC Realty*, 766 F. Supp. at 457. The restrictions in the license agreements extant here are thus even more significant than the restrictions in *PRC Realty*, where the court held there was no publication.

In addition to citing the wrong Compendium, Extreme also cherry picks from trial court opinions (mostly unpublished), none of which are binding precedent or on-point on the issue at hand. *See Unicolors,* 52 F.4th at 1069 ("Given that our prior holding was new binding precedent and that the issue was truly unsettled at the time . . . we can draw a sensible inference that Unicolors did not know that its '400 Registration application would run afoul of the single unit requirement."). Moreover, there is no rule that SNMP Research was required to scour trial court opinions throughout the country and dissect whether, when cobbled together, they created or implied a rule or standard SNMP Research had to follow in deciding whether to identify its licensed software as "published" on its copyright applications.

In any event, Extreme's cited case law does not support it. Several of the cases Extreme cites regarding what supposedly constitutes "publication" in the context of computer software were decided after the 2011 registration, so those cases are irrelevant for that reason alone.[8] As for the pre-2011 case law that Extreme cites, it is of no help to Extreme either. *Daimler-Chrysler Servs. v. Summit Nat'l,*

---

[8] *See, e.g.,* Mot. at 11 (citing one sentence from a 60+ page decision in *Bruhn Newtech Inc. v. U.S.*, 144 Fed. Cl. 755, 815 (Fed. Ct. Cl. **2019**)); *see also* Mot. at 10 (citing *Bueno v. Benhamou*, 2022 WL 1592593, *5 (C.D. Cal. **March 16, 2022**)).

- 18 -

*Inc.,* 289 F. App'x 916, 923 (6th Cir. 2008) is unpublished, so it does not constitute precedent at all, much less binding precedent that SNMP was required to have been aware of and to have interpreted as Extreme now does. *See Sheets v. Moore*, 97 F.3d 164, 167 (6th Cir.1996) (unpublished opinions "carry no precedential weight. . . [and] have no binding effect on anyone other than the parties to the action."). Moreover, the software in *Daimler-Chrysler* "was aggressively marketed through mass mailings, solicitations, and advertisements in trade journals," *Daimler*, 289 F. App'x at 923, and there is no evidence of that occurring in this case. *Daimler-Chrysler* was also analyzing a "notice" requirement applicable to pre-1988 published works that has no application here.[9]

Extreme also cites an unpublished decision by Judge Rakoff holding that the licensing of a mannequin illustration for the express purpose of creating mannequins from that illustration for public consumption constituted publication. *McLaren v. Chico's FAS, Inc.*, 2010 WL 4615772, at *2 (S.D.N.Y. Nov. 9, 2010). However, there is no indication in *McLaren* of any restrictions on disclosure in the license that was at issue in that case, as compared to the licenses at issue here. Much more salient is a published decision by Judge Rakoff involving a computer animation technology license. At the time of registration in 2005, the opinion held it was unclear whether "licensing" of any kind constituted publication. *Archie MD v. Elsevier, Inc.*, 261 F. Supp. 3d 512, 520 (S.D.N.Y. 2017); *see also Metro. Reg'l Info*, 948 F. Supp. 2d at 559 (computer database "only made available to subscribers under restrictive licensing terms" was properly registered as unpublished). In addition, Judge Rakoff held that:

> knowledge of the fact that the animations were licensed does not entail that the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate. <u>That conclusion would require another premise:  that Levine knew licensing constituted publication.</u>

---

[9] The same holds true for another case that Extreme cites, *Unix System Labs. v. Berkeley Software Design, Inc.*, 1993 WL 414724, *12-14 (D.N.J. Mar. 3, 1993).

*Archie*, 261 F. Supp. 3d at 520 (emphasis added) (denying defense summary judgment motion); *see also Furniture Dealer.net, Inc. v. Amazon.com, Inc.,* 2022 WL 891473, * (D. Minn. March 25, 2022) (finding that Section 411(b) "did codify the affirmative defense of fraud on the Copyright Office and requires a showing of intent-to-defraud," and denying summary judgment because "whether the FDN Descriptions were published is unclear . . . [and] the state of the law at the time FDN submitted its copyright registration was uncertain and conflicting"); *ReportHost LLC v. Spectora Inc.*, 22-cv-00457-DDD (D. Co. March 29, 2023), Dkt. 27 (reasoning that the complexity of what constitutes publication in the context of software licensing weighed "in favor of finding that [the plaintiff] did not act with actual knowledge or willful blindness," noting that the Copyright Office guidance was "hazy at best" and that there is a "relative lack of consensus among courts" concerning publication).

Extreme also cites an unreported decision in the Eastern District of New York for the proposition that "the word 'published' is 'not [a] nuanced legal term[.]." Mot. at 17 (quoting *Lieb v. Korangy Publ'g Inc.*, 2022 WL 1124850, *13 (E.D.N.Y. Apr. 14, 2022)). In that case, an attorney sought to register a copyright for his HuffPost article that was "virtually identical" to his prior article that had been posted on another publication's website. The issue concerned whether the attorney should have disclosed the originally-posted article to the Copyright Office and labeled the second, virtually identical HuffPost adaptation as a derivative work. The judge reviewed the form the applicant filled out ("Form TX"), the Compendium at issue at the time of registration, and the Copyright Office's "Help" page, and found that all of them had specific direction on the precise publication question at issue in that case (namely, that if you publish an article without registering it and put it in the public domain, you have to disclose that prior article, and disclaim the portions published, when you subsequently try to register a derivative work). *Id.* at *8-10. Here, Compendium II gave no direction at all on the issue at hand (as demonstrated above), and the Form TX and "Help" pages available at the time both simply regurgitated the statutory definition of "publication." *See* Weber Decl. ¶¶ 5-7, Exs.

- 20 -

D-E; *see Unicolors*, 52 F.4th at 1069 (finding no willful blindness where "the version of the internal manual published by the Copyright Office in existence at the time Unicolors submitted its '400 Registration application did not provide meaningful guidance to registrants . . . because it simply restated the statute using different wording.").[10]

And despite Extreme's argument to the contrary, the issue of publication, especially in the context of licensing and computer software, is in fact a nuanced legal issue, as demonstrated by cases such as *Archie, Furniture Dealer,* and *ReportHost*.  Legal scholarship has also observed that courts have grave difficulty navigating "the complex jurisprudence relating to 'publication'."  Peter S. Menell, *In Search of Copyright's Lost Ark: Interpreting the Right to Distribute in the Internet Age*, 59 J. Copr. Soc'y 201, 233 (2011).  And this problem is a longstanding one.  *See, e.g.*, Benjamin Kaplan, *Publication in Copyright Law: The Question of Phonograph Records*, 103 U. PA. L. REV. 469, 488-89 (1955) ("The concept of publication has been seriously distorted and now bedevils much of the law of copyright."); Melville B. Nimmer, *Copyright Publication*, 56 COLUM. L. REV. 185, 185 (1956) ("The concept of publication has acquired an importance and complexity in the American law of copyright far

---

[10] Extreme continues to cite cases that rely on the Ninth Circuit's now-overruled and abrogated decisions employing a watered-down knowing inaccuracy test.  *See, e.g., Bruhn Newtech.*, 144 Fed. Cl. at 815 (relying extensively on *Gold Value*); *Bueno*, 2022 WL 1592593 at *4 (relying on *Gold Value* and stating "the Ninth Circuit has clarified that a showing of fraud is not required to invalidate a registration."); *Jeon v. Anderson*, 2019 WL 2949033, at *5 (C.D. Cal. June 14, 2019) (relying on *Gold Value* to rule that "[w]ith respect to Jeon's arguments regarding a requirement for an intent to defraud the Copyright Office, the Ninth Circuit has since clarified that such intent is not required."); *SellPoolSuppliesOnline.com LLC v. Ugly Pools Arizona Inc.*, 2018 WL 4565900, at *12 (D. Ariz. Sept. 24, 2018) (relying on *Gold Value* to rule that "the Ninth Circuit has found that 'a showing of fraud is not required when the inaccurate information was knowingly included on the application, as opposed to being an inadvertent mistake.'").  *Compare with Unicolors*, 52 F.4th at 1065 n.3 ("[T]o the extent that [*Gold Value*'s] holding concluded that a party's knowledge of the law is irrelevant under § 411(b), it is 'clearly irreconcilable' with the Supreme Court's analysis here and is thereby abrogated. . . . "), and *id.* at 1067 ("[T]he PRO-IP Act was intended to codify the fraud on the Copyright Office doctrine. . . . [T]here is no daylight between a court's determination that a party had knowledge of the legal and factual inaccuracies and a finding that the party committed fraud on the Copyright Office.").

- 21 -

greater than in any foreign jurisdiction.  It has, indeed, become a legal word of art, denoting a process much more esoteric than is suggested by the lay definition of the term.").  In the words of the current Register of Copyrights:

> [D]etermining whether a work has been published can raise complex legal questions for which there are not always straightforward answers.  Varied individuals and groups have expressed frustration to the [Copyright] Office regarding difficulties in determining whether a work has been published when completing copyright application forms. . . . A number of courts have determined that ambiguity in the definition of the term "publication" prevented a finding that an applicant provided inaccurate information with knowledge that it was inaccurate when it mischaracterized the publication status of a work.

*Fashion Avenue Sweater Knits,* Case No. 2:19-cv-06302-CJC-JEM, C.D. Cal. (Feb. 8, 2021), Dkt. 129-1; Weber Decl., Ex. A at 17.

In summary, the point of the United States Supreme Court's reversal of the first Ninth Circuit decision in *Unicolors* was to reject the notion that legal mistakes somehow do not count in determining actual knowledge of an inaccuracy on a copyright application.  Extreme's argument boils down to an assertion that SNMP Research got the law wrong when it filled out its application and supposedly selected the wrong answer as to whether the works were published vs. unpublished.  But even if that were true, it does not constitute fraud on the Copyright Office.  Instead, it is precisely the type of legal mistake that the Supreme Court expressly held does not constitute a knowingly inaccurate statement to the Copyright Office.

Respectfully submitted,

Dated:  April 3, 2023
By: /s/ *John L. Wood*
_____
John L. Wood, Esq. (BPR #027642)
Cheryl G. Rice, Esq. (BPR #021145)
Rameen J. Nasrollahi, Esq. (BPR #033458)
EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
900 S. Gay Street, Suite 1400
P.O. Box 2047
Knoxville, TN 37902
(865) 546-0500 (phone)
(865) 525-5293 (facsimile)
jwood@emlaw.com

- 22 -

crice@emlaw.com
rnasrollahi@emlaw.com

By: */s/ A. Matthew Ashley*
A. Matthew Ashley (CA Bar. No. 198235)
Morgan Chu (CA Bar. No. 70446)
David Nimmer (CA Bar. No. 97170)
Olivia L. Weber (CA Bar. No. 319918)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
(310) 277-1010 (phone)
(310) 203-7199 (facsimile)
mchu@irell.com
dnimmer@irell.com
mashley@irell.com
oweber@irell.com

*Attorneys for Plaintiffs*
*SNMP Research International, Inc. and*
*SNMP Research, Inc.*

- 23 -