# EXHIBIT 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:09-cv-23494-CIV-HUCK/O'SULLIVAN

OLEM SHOE CORP.,

    Plaintiff,

v.

WASHINGTON SHOE CO.,

    Defendant.

_____/

RESPONSE OF THE REGISTER OF COPYRIGHTS
TO REQUEST PURSUANT TO 17 U.S.C. § 411(b)(2)

On September 3, 2010, the Court issued a request to the Register of Copyrights pursuant to 17 U.S.C. § 411(b)(2). When an allegation is made in legal proceedings that inaccurate information has been knowingly included on an application for copyright registration, a court is required by 17 U.S.C. § 411(b)(2) to seek the Register's advice about "whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." The request from the Court presents three questions for the Register, requesting a response by October 15, 2010.

**QUESTIONS PRESENTED**

The first question relates to Washington Shoe Company's August 9, 2007 registration for 2-dimensional art work applied to 3-dimensional rain boots entitled *Ditsy Dots.* (Registration Number VAu000756950). The court has inquired whether the

Register of Copyrights ("Register") would have refused registration for *Ditsy Dots* if she had known that, although Washington Shoe characterized the work as unpublished, Washington Shoe displayed the boots at a public trade show before submitting the application for registration. *Request to the Register of Copyrights Pursuant to 17 U.S.C. § 411(b)(2)* at 1.

The second question presented relates to Washington Shoe's January 8, 2010 registration for 2-dimensional art work applied to 3-dimensional rain boots entitled *Zebra Supreme-Olem.* (Registration Number VAu001007893). The court has inquired whether the Register would have refused registration for *Zebra Supreme-Olem* if she had known that, although Washington Shoe characterized the work as unpublished, Washington Shoe displayed the *Zebra Supreme-Olem* boots at a public trade show and sold the *Zebra Supreme-Olem* boots in retail stores before submitting the application for registration. *Id.* at 1.

The final question presented relates to Washington Shoe's registration for 2-dimensional art work applied to 3-dimensional rain boots entitled *Ditsy Dots.* (Registration Number VAu000756950). The court has inquired whether the Register would have refused registration for *Ditsy Dots* if she had known that, although Washington Shoe did not identify the work as being a derivative work, Washington Shoe created the artwork by altering a work, *Rose Zebra Supreme,* which had previously been registered. (Registration No. VAu000988278, filed May 21, 2009). *Id.* at 2.

## BACKGROUND

The Copyright Office ("Office") is an office of public record without enforcement or investigative authority. One of its primary responsibilities is to examine applications to register copyright claims to determine whether they satisfy the requirements of the copyright law. Applications are the primary basis for the public record established and maintained by the Office, and they must meet the statutory requirements outlined in 17 U.S.C. §§ 408(a), 409, and 410. Regulations governing submission of applications are codified in title 37 of the *Code of Federal Regulations*. Guidelines and procedures for internal examination practices are in *The Compendium of Copyright Office Practices II* (hereafter, *Compendium II*). See chapter 100, *Compendium II*.

The statutory requirements for copyright registration dictate that applications shall include the date and nation of a work's first publication if the work has been published. 17 U.S.C. § 409(8); *Compendium II* § 701.02(8). Works may be published via the distribution of copies or phonorecords of the work to the public by sale or other transfer of ownership, or by rental, lease, or lending. Additionally, the offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication. However, a public performance or public display of a work does not of itself constitute publication. 17 U.S.C. § 101 (definition of "publication"); *Compendium II* §§ 902, 905, 905.02, 905.05. The statutory requirements for copyright registration also dictate that in the case of a compilation or

derivative work, an application shall include an identification of any preexisting work or works that the work being registered is based on or incorporates and a brief, general statement of the additional material covered by the copyright claim being registered. 17 U.S.C. § 409(9); *Compendium II* §§ 701.02(8)-(9).

A fundamental examining principle is that review for compliance with legal requirements does not, "subject to certain exceptions, extend beyond the material deposited to make that registration." *Compendium II* § 108.04. An additional examining principle is that the Office does not usually make findings of fact when examining applications. *Compendium II* § 108.05. However, there are two instances in which the Office will contact an applicant to make inquiries: (1) where there are statements or other evidence within the scope of the application documents that require explanation or clarification, such as an apparent inconsistency, and (2) when the Office takes administrative notice of matters of general knowledge to question applications that appear to contain inaccurate information. *Compendium II* §§ 108.05(a), 108.05(b), 605.01.

The Office will not ordinarily attempt to decide whether or not publication has occurred but will generally leave this decision to the applicant. *Compendium II* § 904(1). However, where the Office has information which is at variance with a statement concerning publication provided by the applicant, or where the appearance of the copy or phonorecord deposited seems clearly inconsistent with such a statement, the Office will correspond with the applicant. *Id.* at § 904(6). Furthermore, where the applicant seeks

4

registration as an unpublished work and provides the Office with a statement of facts which clearly shows that publication has occurred, the Office will not register a claim to copyright in the work as unpublished. *Id.* at § 904(5). In a situation in which the Office would refuse to register a claim to copyright because of an error or omission on the application, in the course of corresponding with the applicant the Office may annotate or amend an application (e.g., to state the date of publication), which may then allow for registration of copyrightable authorship. *Id.* at § 605.03(4).

**ANALYSIS**

Question One

If the Register had known that, although Washington Shoe characterized *Ditsy Dots* as unpublished, Washington Shoe displayed the boots at a public trade show before submitting that application for registration of the copyright, the Register *would not* have refused registration.

Information regarding Washington Shoe displaying the *Ditsy Dots* boots at a public trade show before submitting its application for registration would not be at variance with the statement concerning publication provided by Washington Shoe, because a public display of a work does not of itself constitute publication. 17 U.S.C. § 101 (definition of "publication"); *Compendium II* §§ 904(6), 902. Therefore, the Office

5

would follow its general practice of accepting the applicant's determination as to whether publication has occurred. *Compendium II* § 904(1).

Question Two

If the Register had known that, although Washington Shoe characterized *Zebra Supreme-Olem* as unpublished, Washington Shoe displayed the boots at a public trade show and sold the boots in retail stores before filing the registration, the Register most likely *would have refused* registration of the work as unpublished.

As indicated above, information regarding Washington Shoe displaying the *Zebra Supreme-Olem* boots at a public trade show before submitting its application for registration would not lead the Office to deviate from its general practice of leaving determinations as to whether publication has occurred to the applicant. However, information regarding Washington Shoe selling the *Zebra Supreme-Olem* boots in retail stores before submitting the application would be at variance with a statement concerning publication provided by Washington Shoe, because retail sales generally constitute "distribution of copies or phonorecords of the work to the public by sale or other transfer of ownership, or by rental, lease, or lending." *Compendium II* §§ 904(6), 902; 17 U.S.C. § 101. As such, the Office would follow its established practice and correspond with the applicant regarding such information. *Compendium II* § 904(6). If correspondence with the applicant resulted in a statement of facts that revealed that Washington Shoe sold the

6

*Zebra Supreme-Olem* boots to the public in retail stores, such facts would indicate that publication had occurred, and the Office would follow its established practice and refuse to register a claim to copyright in the work as unpublished. *Id.* at § 904(5).

While in such a situation the Office would have refused to register a claim to copyright in *Zebra Supreme-Olem* as unpublished, in the course of corresponding with the applicant the Office could annotate or amend the application to indicate that the work had indeed been published on the date of the first retail sales. *Id.* at § 605.03(4). Correction of such inaccurate information would then allow for registration of the work as a published work.

### Question Three

If the Register had known that, although Washington Shoe did not identify *Ditsy Dots* as being a derivative work, Washington Shoe created *Ditsy Dots* by altering its previously registered work *Rose Zebra Supreme*, the Register would have refused registration of *Ditsy Dots* as a non-derivative work unless Washington Shoe included information about the preexisting work and a brief, general statement of the additional material covered by the copyright claim in the appropriate spaces on the application for copyright registration.

Title 17 and the Office's practices clearly require that in the case of a compilation or derivative work, applications shall include an identification of any preexisting work or works that it is based on or incorporates, as well as a brief, general statement of the

additional material covered by the copyright claim being registered. 17 U.S.C. § 409(9); *Compendium II* § 701.02(9).

While the Office would, under the circumstances described in Question Three, be compelled to refuse to register a claim to copyright in the work as a non-derivative work if the Office were aware the work actually was a derivative work, the usual practice of the Office under such circumstances would be to contact the applicant to question the inaccurate information. *Id.* at 108.05(b). In the course of corresponding with the applicant, the Office might annotate or amend the application to include an identification of any preexisting work or works on which it is based or which it incorporates and a brief, general statement of the additional material covered by the copyright claim being registered. *Compendium II* § 605.03(4). Correction of such inaccurate information may then allow for registration of any copyrightable authorship in the work.

Based on the Register's review of the court's *Order on Motion for Issuance of Request to Register of Copyrights*, it seems apparent to the Register that court intended to pose a different Question Three – a question based on the assumption that Washington Shoe created the artwork for *Zebra Supreme-Olem* (Registration Number VAu001007893), rather than *Ditsy Dots* (Registration Number VAu000756950), by altering its previously registered work *Rose Zebra Supreme* (Registration No. VAu000988278). Regardless of the works at issue, the applicable law as well as the Register's practices dictate that the Office would be compelled to refuse to register a claim to copyright in the work as a non-derivative work if the Office were aware the

8

work actually was a derivative work. As indicated above, in such a circumstance the Office would contact the applicant to question the inaccurate information. *Id.* at 108.05(b). In the course of corresponding with the applicant, the Office might annotate or amend the application to include an identification of any preexisting work or works on which it is based or which it incorporates and a brief, general statement of the additional material covered by the copyright claim being registered. *Compendium II* § 605.03(4). Correction of such inaccurate information may then allow for registration of any *copyrightable* authorship in the work.

If a corrected application for registration for *Zebra Supreme-Olem* had identified *Rose Zebra Supreme* as a previously existing work on which *Zebra Supreme-Olem* is based or which it incorporates, and if the accompanying brief, general statement identified the additional material covered by the copyright claim as (1) removal of the rose designs and (2) addition[1] and/or removal of silver lining from the zebra stripes, the Register would have refused registration, because the additional material, viewed alone or in combination, would fall short of constituting original authorship.[2] The mere removal of the rose designs does not constitute original authorship. The same is true with

---

[1] Washington Shoe has asserted to the Court that creation of *Zebra Supreme-Olem* began from an original design referred to as "Zebra Supreme Silver," which included a pattern of roses placed over the zebra background. The next steps in creation of *Zebra Supreme-Olem* involved (1) removing the silver lining from the stripes and (2) removing the roses and replacing the silver lining. See D.E. 79-1, Affidavit Of Roel Salonga at ¶ 3. However, based on the Register's review of the deposits for *Zebra Supreme-Olem* and *Rose Zebra Supreme*, the creation of *Zebra Supreme-Olem* appears to have entailed removal of the roses from *Rose Zebra Supreme* and the mere addition of the silver lining to *Zebra Supreme-Olem*. In any event, the Register would not find sufficient derivative work authorship in *Zebra Supreme-Olem* whether it included a silver lining that was not present in *Rose Zebra Supreme* or whether it deleted a silver lining that had been present in *Rose ZebraSupreme*, or whether both steps were part of the creation. The addition or the subtraction of a silver lining that simply follows the contours of the preexisting black stripes is insufficiently original to constitute copyrightable authorship.

[2] Such a decision to refuse registration for *Zebra Supreme-Olem* would not affect the registration or copyright protection for *Rose Zebra Supreme*.

regard to the addition and/or removal of the silver lining, which is not the result of the authorship choices but rather is dictated by the available space between the black zebra stripes and by the preexisting contours of those stripes.

## ISSUES REGARDING 411(b)(2) REFERRALS IN GENERAL

The Register notes the court's concern regarding the structure of 17 U.S.C. § 411(b)(2) and the potential that the provision might be abused by litigants. See, Footnote 4 of the *Order on Motion for Issuance of Request to Register of Copyrights*. Since the Office played an instrumental role in the amendment of 17 U.S.C. § 411(b)(2) as part of the Prioritizing Resources and Organization for Intellectual Property Act of 2008, the Register takes this opportunity to relay its insight regarding the provision. The amendment to 17 U.S.C. § 411(b)(2) was adopted in order to address situations in which courts of appeals have misunderstood Copyright Office registration practices and came to erroneous conclusions about alleged misstatements on applications for registration. See *Raquel v. Education Management. Corp.*, 196 F.3d 171, 177 (3d Cir. Pa. 1999), *vacated and remanded*, 531 U.S. 952 (2000)[3]; See also *Greenberg v. National Geographic Society*, 244 F.3d 1267, 1273 (11th Cir. Fla. 2001).[4] As a result of these decisions, 17 U.S.C. § 411(b)(2) was amended to ensure that no court holds that a certificate is invalid

---

[3] In *Raquel*, the Supreme Court vacated the Third Circuit's decision that concluded that a statement regarding the "nature of this work" on an application was inaccurate and would have occasioned the rejection by the Register of Copyrights of Raquel's application for copyright registration if the Register had realized it was inaccurate. The case was remanded for further consideration in light of the position asserted by the Solicitor General in his brief for the United States, as amicus curiae, filed September 20, 2000, and the Copyright Office's July 5, 2000, Statement of Policy, 65 Fed. Reg. 41508, both of which identified the Third Circuit's misunderstanding of longstanding Copyright Office registration practices

[4] In that case, the Eleventh Circuit misunderstood the Copyright Office's longstanding registration practices regarding identification of authorship identified in an application for registration.

due to what it considers to be a misstatement on an application without first obtaining the input of the Register as to whether the application was properly filed or, in the words of § 411(b)(2), "whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." The Register readily admits that in many, and perhaps even most, cases in which it is alleged that there is a misstatement on an application that might lead a court to conclude that the registration cannot be relied upon as satisfying the statutory prerequisite for an infringement suit, there may be little need for the assistance of the Register because the answer will be apparent. However, 17 U.S.C. § 411(b)(2) was enacted because a court will not always know what information would or would not make a difference in the Register's determination whether to register a copyright.

While 17 U.S.C. § 411(b)(2) requires the court to seek the Register's advice when there is an allegation that an application contains inaccurate information, the Register observes that the statute says nothing about the timing of the request. The Register suggests that, at a minimum, the court retains the power to delay the request until a factual record has been developed, e.g., through affidavits or discovery. The Register believes that if a court concludes that the bare allegations are unsupported by any facts, the court would be free to refrain from issuing requests to the Register. The court could, for example, entertain a motion for partial summary judgment prior to referring certain questions to the Register. If the court concludes that there is no factual basis for certain allegations, such as an allegation that the plaintiff is not the author or copyright owner of the work in question, the court might come to a conclusion on such

issues as a matter of law, in which case there may be no need to refer the question to the Register. In other words, before asking the Register whether she would have refused to register a copyright if she had known about a particular alleged misstatement of fact on an application, a court should feel free to determine whether there is in fact a misstatement of fact.[5]

In addition, the Register agrees with the Court's conclusion that a court will not be bound by the Register's response to a request made pursuant to § 411(b). However, since the issue is whether the inaccuracy of the misstatement on the application would have caused the Register to refuse registration, the Register respectfully submits that it would be appropriate for the court to give deference to the Register's response in such matters, since the Register is in the best position to state what the Register would or would not do under the stated circumstances.

Dated: October 14, 2010

_____
MARYBETH PETERS
Register of Copyrights

---

[5] The Register cautions, however, that if that issue depends even in part on interpretation or understanding of the Copyright Office's registration practices, the more prudent practice – and the practice anticipated in § 411(b) – would be to refer the question to the Register. For example, in *Raquel, supra*, the court misunderstood the purpose of the "Nature of this Work" space on the copyright registration application and concluded that the copyright claimant had made a false statement of fact in completing that part of the application. The court's conclusion was based on an misunderstanding of the function of the "Nature of this Work" space on the application, a misunderstanding that could have been corrected if the court had sought the guidance of the Register.