# EXHIBIT 16

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| HEALTHeSTATE, LLC,<br><br>　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>　　　　Defendant,<br><br>and<br><br>ASM RESEARCH, LLC,<br><br>　　　　Third-Party Defendant. | Case No. 1:18-cv-34C<br>Hon. Kathryn C. Davis |

**RESPONSE OF THE REGISTER OF COPYRIGHTS
TO REQUEST PURSUANT TO 17 U.S.C. § 411(b)(2)**

On May 10, 2022, pursuant to 17 U.S.C. § 411(b)(2), the Court requested advice from the Register of Copyrights ("Register") on the following questions:

1. Would the Register of Copyrights have rejected the '425 Registration had she known any one or any combination of the following:
    a) The claimed software was not first published on February 28, 2013;
    b) The claimed software was not completed in 2013;
    c) The claimed software is derived from undisclosed other works, including prior published versions of HealtheState[]'s own software; and
    d) The source code submitted as the deposit copy included material added after February 28, 2013, and was altered to remove third-party copyright notices and insert notices attributing rights to HealtheState.
2. Would the Register of Copyrights have rejected the '391 Registration had she known any one or any combination of the following:
    a) The claimed software was not first published on January 1, 2006;
    b) The claimed software was not completed in 2006;
    c) The claimed software is derived from undisclosed other works, including prior published versions of HealtheState's own software; and

1

      d) The source code submitted as the deposit copy included material added after January 1, 2006, and was altered to remove third-party copyright notices and insert notices attributing rights to HealtheState.[1]

The Register hereby submits her response. In sum, based on the legal standards and examining practices set forth below, if the U.S. Copyright Office ("Copyright Office" or "Office") had been aware that the works claimed in the '425 and '391 Registrations (1) were not first published or completed on the dates provided in the applications, (2) were derived from and contained an appreciable amount of copyrightable material from undisclosed prior published versions, and/or (3) included material added and/or altered after the publication dates indicated in the application, it would not have registered the works.

## BACKGROUND

### I. Examination History

A review of the records of the Office reveals the following:

<u>Original Registrations</u>

On February 28, 2018, the Office received an application to register a computer program titled "HEALTHeSTATE." The application identified HEALTHeSTATE, LLC ("Plaintiff") as the work made for hire author and copyright claimant of the work. It stated that the work was completed in 2013 and first published in the United States on February 28, 2013. It did not identify the software as a derivative work or disclose that it incorporated preexisting material. Based on the information provided in the application, the Office had no reason to question the applicant's representations and accepted them as true and accurate. The Office registered the

---

[1] Referral of Copyright Registration Questions to the Reg. of Copyrights, ECF No. 176 at 2.

Case 3:20-cv-00451-CEA-DCP   Document 301-8   Filed 04/17/23   Page 3 of 19   PageID #: 14235

claim with an effective date of registration ("EDR")[2] of March 13, 2018, and assigned registration number TX0008498425 (the "'425 Registration").

On March 1, 2018, the Office received an application to register a computer program titled "HeVEMR." The application identified Plaintiff as the work made for hire author and copyright claimant of the work. It stated that the work was completed in 2006 and first published in the United States on January 1, 2006. It did not identify the software as a derivative work or disclose that it incorporated preexisting material. Based on the information provided in the application, the Office had no reason to question the applicant's representations and accepted them as true and accurate. The Office registered the claim with an EDR of March 13, 2018, and assigned registration number TX0008498391 (the "'391 Registration").

<u>Pending Supplementary Registration Applications</u>

On June 3, 2022, the Office received two applications for supplementary registration to augment the information contained in the '425 and '391 Registrations. For the '425 Registration, Plaintiff seeks to change the year of completion from 2013 to 2007 and the date of first publication from February 28, 2013, to August 15, 2007. Plaintiff also seeks to limit its claim by identifying the material excluded from the claim as "computer program," and the material included in the claim as "computer program."

For the '391 Registration, Plaintiff seeks to change the year of completion from 2006 to 2013 and the date of first publication from January 1, 2006, to September 20, 2013. Plaintiff also seeks to limit its claim by identifying the material excluded from the claim as "computer

---

[2] The EDR is the date the Office received a completed application, the correct deposit copy, and the proper filing fee.

3

program," and the material included in the claim as "computer program." In addition, Plaintiff identifies the '425 Registration as a previous registration.

As noted below, the Office has stayed its consideration of these two supplementary registration applications due to the ongoing litigation regarding the underlying registrations and the Court's May 10, 2022 request to the Office.

## II. The Court's Request

In its April 15, 2022 Order, the Court found that ASM Research, LLC ("ASM") "has sufficiently alleged an inaccuracy described in § 411(b)(1)" such that referral to the Register pursuant to section 411(b)(2) is proper.[3] Specifically, ASM alleged that Plaintiff's applications for the '425 and '391 Registrations each contained four inaccuracies:

1. The first two inaccuracies concern both the date of publication and the year of completion for each of the works. ASM alleged "that the only copyrighted software at issue in this litigation . . . was completed and published in 2011," and not 2013 and 2006 as indicated on Plaintiff's two applications, respectively.[4]

2. ASM also alleged that Plaintiff failed to "identify and disclaim previously published works of authorship on which the software at issue was allegedly based."[5]

3. Finally, ASM alleged that the deposit copies Plaintiff submitted with its application materials "did not correspond to the software that Plaintiff attempted to register."[6] Specifically, ASM presented evidence that the deposit copies had lines of code edited

---

[3] Op. and Order, ECF No. 173 at 9 ("Order"). The United States separately filed a notice joining ASM's motion to refer questions to the Register. *See* Def. U.S.'s Notice of Joinder in Third-Party Def. ASM Research LLC's Mot. to Refer Questions to the Reg. of Copyrights, ECF No. 147.
[4] Order at 3.
[5] *Id.*
[6] *Id.*

to remove copyright references to third parties and contained numerous source code files reflecting edits from no earlier than 2016, well after the dates of completion identified in Plaintiff's application.[7]

Plaintiff denied that the first and second alleged inaccuracies were "submitted as *knowingly* inaccurate."[8] In response to the third alleged inaccuracy, Plaintiff challenged whether the Office requires applicants to identify preexisting works as prior derivative works.[9] Regarding the fourth alleged inaccuracy, Plaintiff argued that any changes to the deposit copies were the result of Plaintiff converting the files from an .asp/.aspx to a .docx format to comply with the Office's requirements.[10]

Finding that ASM had met the requirements for referral under section 411(b)(1) of the Copyright Act, the Court asked the Register to consider whether the alleged inaccuracies, if known, would have caused the Office to refuse registration of Plaintiff's applications.

## ANALYSIS

### I. Relevant Statutes, Regulations, and Agency Practice

An application for copyright registration must comply with the requirements of the Copyright Act set forth in 17 U.S.C. §§ 408(a), 408(d), 409, and 410. Regulations governing applications for registration are codified at 37 C.F.R. §§ 202.1 to 202.24. Further, principles that govern how the Office examines registration applications are set out in the *Compendium of U.S. Copyright Office Practices*, an administrative manual that instructs agency staff regarding their

---

[7] *Id.* at 3–4.
[8] *Id.* at 5.
[9] Pl. HealtheState, LLC's Sealed Opp'n to Def.'s Mot. to Refer Questions to the Reg. of Copyrights, ECF No. 170 at 14–17.
[10] *Id.* at 18. The Office is unaware of any technical convention that would cause a file conversion from an .asp/.aspx to .docx to alter the text in the manner alleged by ASM.

5

statutory and regulatory duties and provides expert guidance to copyright applicants, practitioners, scholars, courts, and members of the general public regarding Office practices and related principles of law. The Office publishes regular revisions of the *Compendium of U.S. Copyright Office Practices* to reflect changes in the law and/or Office practices, which are provided for public comment prior to finalization. Here, Plaintiff filed the relevant applications in 2018. Therefore, the governing principles the Office would have applied at that time are set forth in the version of the *Compendium of U.S. Copyright Office Practices*, *Third Edition* ("COMPENDIUM (THIRD)") that was first released in September 2017.[11]

### A.   Year of Completion and Date of Publication

Under the Copyright Act, an application must include "the year in which creation of the work was completed."[12] In defining when a work is "created," the statute states: "[W]here a work is prepared over a period of time, the portion of [the work] that has been fixed at any particular time constitutes the work as of that time, and where the work has been prepared in different versions, each version constitutes a separate work."[13] And finally, under the governing regulation, "year of completion" means "the latest year in which the creation of any copyrightable element was completed."[14]

The statutory requirements for copyright registration also dictate that applications shall include the date and nation of a work's first publication if the work has been published.[15] COMPENDIUM (THIRD) requires applicants to identify the date on which a published work was

---

[11] The Copyright Office published a new version of the COMPENDIUM (THIRD) in January 2021. The 2017 version cited in this Response is available at https://www.copyright.gov/comp3/2017version/docs/compendium.pdf.
[12] 17 U.S.C. § 409(7).
[13] *Id.* § 101 (defining "created").
[14] 37 C.F.R. § 202.3(c)(4).
[15] 17 U.S.C. § 409(8).

first published with the authorization of the copyright owner.[16] Publication is defined as the "distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending."[17] Likewise, "[t]he offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication," provided that the offer is made by or with the authority of the copyright owner and copies of the work exist at the time the offer is made.[18]

COMPENDIUM (THIRD) instructs an applicant to "provide the year of completion for the specific version that is being registered."[19] Likewise, when submitting an application for a published work, an applicant should provide the specific month, day, and year that copies of the specific work deposited for registration were distributed for the first time or were first offered to a group of persons for further distribution, public performance, or public display.[20] If the date of creation or date of first publication provided in the application is inconsistent with other dates appearing on the application or the deposit, COMPENDIUM (THIRD) provides that the registration specialist will communicate with the applicant regarding the inconsistency.[21]

### B.   Deposit Copy for Computer Programs

The Copyright Act generally requires two complete copies of the best edition of published works to be deposited with the application, but authorizes the Register to permit the deposit of only one copy of a work or identifying material in certain circumstances.[22] For computer programs, the Office has enacted regulations requiring applicants to deposit only "one

---

[16] COMPENDIUM (THIRD) § 612.4.
[17] 17 U.S.C. § 101 (defining "publication").
[18] *Id.*; COMPENDIUM (THIRD) §§ 1906, 1906.3.
[19] COMPENDIUM (THIRD) § 611.1(B).
[20] *Id.* §§ 612.6(A), 612.7(G).
[21] *Id.* §§ 603.2(C), 721.9(D), (E).
[22] 17 U.S.C. §§ 408(b)(2), (c).

copy of identifying portions of the program, reproduced in a form visually perceptible without the aid of a machine or device."[23] The Office defines "identifying portions" as the first and last twenty-five pages of the source code for the version being registered if the computer program is over fifty pages, or the entire source code if the computer program is less than fifty pages.[24] Office regulations also permit redactions for trade secret material as long as the deposit reveals an appreciable amount of original computer code.[25] In all cases, COMPENDIUM (THIRD) provides that the applicant should submit the page of the source code that contains the copyright notice (if any) for the specific version that it intends to register.[26]

The Office permits applicants to submit deposit copies of published computer programs electronically through the online registration system.[27] An applicant must, however, submit the deposit copies in an acceptable file format that can be opened and examined by a registration specialist.[28] The file formats that are currently accepted are listed on the Office's website.[29] At the time Plaintiff submitted its applications, the Office did not (and does not currently) accept .asp or .aspx files.[30]

---

[23] 37 C.F.R. § 202.20(c)(2)(vii)(A).
[24] *Id.* § 202.20(c)(2)(vii)(A)(1).
[25] *Id.* § 202.20(c)(2)(vii)(A)(2).
[26] *Id.* § 202.20(c)(vii)(A)(1); COMPENDIUM (THIRD) § 1509.1(F).
[27] COMPENDIUM (THIRD) § 204.3(A).
[28] *Id.*
[29] U.S. COPYRIGHT OFFICE, *eCO Acceptable File Types*, https://www.copyright.gov/eco/help-file-types.html (last visited June 23, 2022).
[30] U.S. COPYRIGHT OFFICE, *eCO Acceptable File Types*, https://web.archive.org/web/20180221051717/https://www.copyright.gov/eco/help-file-types.html (archived Feb. 21, 2019).

### C. Registration of Multiple Versions of a Computer Program

As an overarching principle, the Office generally requires that separate works be registered separately.[31] The Copyright Act states: "where the work has been prepared in different versions, each version constitutes a separate work."[32] The Office will register multiple versions of a published work, provided that each version contains a sufficient amount of copyrightable authorship that does not appear in the other versions, if the applicant submits "a separate application, a separate filing fee, and a separate set of deposit copies for each version."[33]

The Copyright Office will register different versions of a computer program as derivative works provided that each version contains "new material" that is "original" and "contain[s] a sufficient amount of copyrightable authorship."[34] This requirement is not satisfied by "[m]aking only a few minor changes or revisions to a preexisting work, or making changes or revisions of a rote nature that are predetermined by the functional considerations of the hardware."[35]

COMPENDIUM (THIRD) illustrates these principles through two relevant examples. The first example involves source code for two versions of the same video game, developed for two different consoles, where the code is "substantially different, and not simply the result of

---

[31] *See* COMPENDIUM (THIRD) § 511. There are limited exceptions to this rule, including for registration of collective works, published works using the "unit of publication" option, and group registration for serials, newspapers, newsletters, contributions to periodicals, unpublished photographs, published photographs, databases, short online literary works, musical works published on the same album, and secure test items. *See* 37 C.F.R. §§ 202.3(b)(5), 202.4; COMPENDIUM (THIRD) §§ 511, 512.2 n.2.
[32] 17 U.S.C. § 101 (defining "created").
[33] COMPENDIUM (THIRD) § 512.2. Depending on which version is the "most complete" and when each version is published with respect to the other versions, the COMPENDIUM (THIRD) outlines specific application procedures. *See id.* §§ 512.2(A)–(C).
[34] *Id.* § 721.8.
[35] *Id.*

interoperability or hardware compatibility."[36]  In such a case, both versions of the software must be registered separately because each version contains different copyrightable authorship and the works are therefore separate works.[37]  In the second example, where software is merely "adapted" to run on a different operating system, the different adaptations should not be registered separately.

### D. Identification and Exclusion of Unclaimable Material, Including Preexisting Material

The statutory requirements for copyright registration also dictate that an application for registration of a compilation or derivative work must include "an identification of any preexisting work or works that it is based on or incorporates, and a brief, general statement of the additional material covered by the copyright claim being registered."[38]  Identifying the new or revised material the author has contributed to a work and any material that is not claimed "is essential to defining the claim that is being registered" and "ensures that the public record will be accurate."[39]

As stated earlier, a registration for a specific version of a computer program covers the new material that the author contributed to that version, including any copyrightable changes, revisions, additions, or other modifications that the author made to that version.[40]  A registration for a specific version of a computer program, however, does not cover any unclaimable material that may appear in that version.  COMPENDIUM (THIRD) defines "unclaimable material" as

---

[36] *Id.*
[37] *Id.*
[38] 17 U.S.C. § 409(9).
[39] COMPENDIUM (THIRD) § 621.1.
[40] *Id.* § 721.8; *see* H.R. REP. NO. 94-1476, at 57 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5670; S. REP. NO. 94-473, at 55 (1975) (explaining that "[c]opyright in a 'new version' covers only the material added by the later author, and has no effect one way or the other on the copyright or public domain status of the preexisting material").

10

previously published material, material that has been previously registered with the Copyright Office, material that is in the public domain, and copyrightable material that is owned by a third party, including the U.S. Government.[41] If the program contains an appreciable amount of unclaimable material, COMPENDIUM (THIRD) requires applicants to identify that material in the application and exclude it from the claim.[42]

Significantly, the requirement to exclude preexisting material from the copyright claim only applies when the preexisting material is "appreciable."[43] COMPENDIUM (THIRD) defines "appreciable" to mean that the preexisting material represents an "appreciable portion of the work."[44] COMPENDIUM (THIRD) points to a derivative program containing a total of 5,000 lines of program text, fifty of which were previously published, as an example of a work in which the preexisting material was not an appreciable portion of the work as a whole.[45]

### E. Each Published Version of a Computer Software Program That Contains New Copyrightable Authorship Should Be Registered Separately

A registration for a specific version of a computer program covers only the new material that the author contributed to that version.[46] It does not cover material that was previously published.[47] COMPENDIUM (THIRD) provides the example of an application to register a program titled *Clothing Maker version 3.0*, which contains an appreciable amount of code that appeared in versions 1.0 and 2.0 of the same program. Because the applicant distributed copies of versions 1.0 and 2.0 of the program to the public before it filed its application to register version

---

[41] COMPENDIUM (THIRD) § 721.8.
[42] *Id.* §§ 721.8, 721.9(G).
[43] *Id.* § 721.8.
[44] *Id.*
[45] *Id.*
[46] *Id.*
[47] COMPENDIUM (THIRD) § 721.8. Publication is defined as "the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 101.

11

3.0, versions 1.0 and 2.0 are considered previously published. The application to register version 3.0 of the program therefore covers only new material that appears in version 3.0 and the material that had been previously published in versions 1.0 and 2.0 should be excluded from the claim.[48]

      F.      **The Role of Supplementary Registration**

A supplementary registration may be used to correct certain errors or amplify the information provided in a copyright registration.[49] The current version of the COMPENDIUM (THIRD) provides that a supplementary registration can be used to correct an error or omission in a basic registration involving the year of completion and date of publication for the version of the work submitted with the basic registration.[50] A supplementary registration can also be used to "correct or amend the information that appears on the certificate of registration in the fields/spaces marked Author Created, Limitation of Copyright Claim, Nature of Authorship, and/or Material Added to This Work."[51] The Office will not, however, issue a supplementary registration to correct an error in the deposit copy or copies submitted with the application for basic registration.[52]

If an application to correct or amplify the registration record is approved, the Office will prepare a certificate of supplementary registration that contains pertinent information from the application, create a public record that identifies and describes the changes or revisions that have

---

[48] COMPENDIUM (THIRD) § 721.8.
[49] 17 U.S.C. § 408(d); 37 C.F.R. § 202.6; U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 1802 (3d ed. 2021) ("2021 COMPENDIUM (THIRD)").
[50] 2021 COMPENDIUM (THIRD) §§ 1802.6(G), (I).
[51] *Id.* § 1802.6(J).
[52] 37 C.F.R. § 202.6(d)(4)(ii); 2021 COMPENDIUM (THIRD) § 1802.7(D).

been made to the registration, and assign a separate registration number and EDR.[53] to the supplementary registration.[54] The Office will not cancel or replace the basic registration or the public record for that registration. Likewise, the Office will not change the information or EDR set forth in the basic registration. Instead, the basic registration and the supplementary registration, including their EDRs, coexist with each other in the public record because the "supplementary registration augments — but does not supersede — the information set forth in the basic registration."[55] The current version of the COMPENDIUM (THIRD) explains:

> The Office maintains both records to allow courts to decide (i) whether the changes made by the supplementary registration are material, and (ii) whether those changes should or should not be deemed effective as of the date that the basic registration was made or the date that the supplementary registration was made.[56]

The Office may decline to issue a supplementary registration when it is aware that there is actual or prospective litigation involving a basic registration (1) if the proposed change would be directly at issue in the litigation, and (2) if the proposed amendment may confuse or complicate the pending dispute.[57] In such cases, the Office typically stays its consideration of the supplementary registration application until the applicant confirms in writing that the dispute has been resolved.[58]

---

[53] The EDR for the supplementary registration "is the day on which an acceptable application and filing fee, which are later determined by the Register of Copyrights or by a court of competent jurisdiction to be acceptable for supplementary registration, have all been received in the Copyright Office." 2021 COMPENDIUM (THIRD) § 1802.12.
[54] *Id.* § 1802.10. The Office will also place a note in the public record for the supplementary registration that cross-references the registration number and the year of registration for the basic registration. *Id.* § 1802.11.
[55] *Id.* § 1802; 17 U.S.C. § 408(d).
[56] 2021 COMPENDIUM (THIRD) § 1802.12.
[57] *Id.* § 1802.9(G).
[58] *Id.*

### G. Other Copyright Office Regulations and Practices

The Copyright Office's regulations require applicants to make a "declaration . . . that the information provided within the application is correct to the best of [the applicant's] knowledge."[59] Generally, the Office "accepts the facts stated in the registration materials, unless they are contradicted by information provided elsewhere in the registration materials or in the Office's records."[60]

When the Office determines that all of the "legal and formal requirements" of title 17 have been met, it will register the copyright claim and issue a certificate of registration under its seal.[61] There may be instances during the application process, however, where communication between the applicant and the Office is required. For example, it is not unusual for a registration specialist to correspond with an applicant about factual assertions if the assertions appear to conflict with other information provided in the application materials.[62]

In responding to the Court's question, the Register applies the foregoing governing statutory and regulatory standards and examining principles.

## II. Register's Responses to Court's Questions

Based on the foregoing statutory and regulatory standards, and its examining practices, the Register responds to the Court's questions as follows:

Questions 1(a), 2(a), 1(b), and 2(b)

Had the Office been aware, prior to registration, that the claimed software for the '425 and '391 Registrations were not first published or completed on the dates indicated on their

---

[59] 37 C.F.R. § 202.3(c)(3)(iii).
[60] COMPENDIUM (THIRD) § 602.4(C).
[61] 17 U.S.C. § 410(a); COMPENDIUM (THIRD) § 602.
[62] COMPENDIUM (THIRD) § 603.2(C).

respective applications, the Office would have refused registration unless the errors were cured. As explained above, the applicant must provide the date of first publication (month, day, and year) and year of completion for the specific version of the work that is being deposited and registered. If, as alleged, the deposit copies provided for the '425 and '391 Registrations were not first published or completed on the dates indicated on their respective applications, then the Office would not have granted the registrations based on the applications that were submitted.

If the Office had known that the dates were incorrect, it would have corresponded with Plaintiff to request that it amend its applications. If the Plaintiff refused to do so, the examiner would have refused both applications. One option that may have been available to Plaintiff would have been to submit new deposit copies that contained the versions of the works that were actually completed and published on the dates indicated in the applications (if such versions existed), upon receipt of which the Office could have registered the works. In that instance, the EDRs for the respective registrations would be the date the Office received the new acceptable deposit copies.[63] Alternatively, if Plaintiff sought registration for the versions of the software it submitted with the '425 and '391 Registrations, it could have provided the correct years of completion and dates of first publication for the submitted versions of the software.

Questions 1(c) and 2(c)

Questions 1(c) and 2(c) ask the Register whether she would have refused registration had the Office been aware that the claimed software for the '425 and '391 Registrations were derived from undisclosed other works, including prior published versions of its own software. As discussed above, an applicant is generally required to identify any preexisting work or works that a derivative work is based on or incorporates and provide a general statement of the additional

---

[63] *Id.* § 625.2.

15

material covered by the copyright being registered.[64] Preexisting material, however, should be excluded only if that material is sufficiently original and represents an appreciable portion of the work.[65]

If the Office had been aware that Plaintiff's works were based on or incorporated undisclosed other works, including prior published versions of their own software, that constituted an appreciable portion of Plaintiff's works, it would not have registered the claims as submitted. Instead the registration specialists would have corresponded with the applicant to request that it disclaim the preexisting material and clarify what material Plaintiff had added to the prior works. If the applicant refused to exclude the preexisting material, the Office would have refused the applications.

<u>Questions 1(d) and 2(d)</u>

The final set of questions asks the Register whether she would have refused registration had the Office been aware that the deposit copies provided for the '425 and '391 Registrations included material added after the publication dates identified on the applications, and were altered to remove third-party copyright notices and insert notices attributing rights to Plaintiff. As noted above, the deposit copy provided must depict all elements of the work that the applicant seeks to register, which is the specific work for which the applicant has provided the year of completion and date of first publication. If, as alleged, the deposit copies provided for the '425 and '391 Registrations were not the versions published on February 28, 2013 and January 1, 2006, respectively, as indicated on the applications, then the Office would not have registered the claims.

---

[64] 17 U.S.C. § 409(9).
[65] COMPENDIUM (THIRD) § 721.8.

June 3, 2022 Supplementary Registrations

As explained above, a supplementary registration may be used to correct an error or omission in a basic registration involving the year of completion, dates of publication, or claim limitations. Issues involving the deposit copy, however, cannot be cured via supplementary registration. If the applicant submitted the incorrect deposit copy for the version of software it sought to register, then it would be required to submit a new application for a basic registration with a deposit copy consisting of the correct version.

Plaintiff submitted applications for supplementary registration after the Court referred its questions to the Register. Plaintiff seeks to change the year of completion and date of publication for each registration, and seeks to limit its claims by excluding previously published computer programs. While these types of issues can generally be addressed through a supplementary registration, the Office stayed its consideration of Plaintiff's applications for supplementary registration due to the ongoing litigation regarding these registrations and the submission of the Register's response to the Court's questions.[66] Absent contrary direction from the Court within 60 days, the Office will decline to consider the supplementary registrations until resolution of the dispute, consistent with its guidance in COMPENDIUM (THIRD).

## CONCLUSION

After review of the available facts in this action and application of the relevant law, regulations, and the Office's practices, the Register hereby advises the Court that the Office would have refused registration if the Office had been aware that the works claimed in the '425 and '391 Registrations (1) were not first published or completed on the dates provided in the applications, (2) were derived from and contained an appreciable amount of copyrightable

---

[66] *See* 2021 COMPENDIUM (THIRD) § 1802.9(G).

17

material from undisclosed prior published versions, and/or (3) included material added and/or altered after the publication dates indicated in the application.

Dated: June 27, 2022

*Shira Perlmutter*
Shira Perlmutter
Register of Copyrights and Director of the
U.S. Copyright Office
(202) 707-8350
sperlmutter@copyright.gov