<pre>
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF TENNESSEE
 2                     AT KNOXVILLE, TENNESSEE
   _____
 3                                         )
   SNMP RESEARCH, INC. and SNMP            )
 4  RESEARCH INTERNATIONAL, INC.,          )
                                           )
 5       Plaintiffs,                       )
                                           )
 6  vs.                                    )  Case No. 3:20-CV-451
                                           )
 7  EXTREME NETWORKS, INC.,                )
                                           )
 8       Defendant.                        )
                                           )
 9  _____)

10
                TELEPHONE DISCOVERY CONFERENCE
11           BEFORE THE HONORABLE DEBRA C. POPLIN

12                      May 3, 2023
                        10:05 a.m.
13

14
    APPEARANCES:
15
         ON BEHALF OF THE PLAINTIFFS:
16
         OLIVIA WEBER, ESQ.
17       Irell & Manella, LLP
         840 Newport Center Drive, Suite 400
18       Newport Beach, CA  92660

19       CHERYL G. RICE, ESQ.
         Egerton, McAfee, Armistead & Davis, P.C.
20       P.O. Box 2047
         Knoxville, TN  37901
21

22

23  REPORTED BY:

24  Kara L. Nagorny, RMR, CRR
    P.O. Box 1121
25  Knoxville, TN  37901
    (865) 264-9628
</pre>

1    APPEARANCES:   (Continued)

2        ON BEHALF OF THE DEFENDANT:

3        BARBARA BARATH, ESQ.
         JOHN NEUKOM, ESQ.
4        Debevoise & Plimpton, LLP
         650 California Street
5        San Francisco, CA  94108

6        LESLIE A. DEMERS, ESQ.
         Skadden, Arps, Slate, Meagher & Flom, LLP
7        One Manhattan West
         New York, NY 10001

8
         J. CHAD HATMAKER, ESQ.
9        Woolf, McClane, Bright, Allen & Carpenter, PLLC
         900 S. Gay Street
10       Knoxville, TN  37901

11

12                                    * * * * * *

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1            (Proceedings commenced at 10:05 a.m.)

 2            THE COURTROOM DEPUTY:  We are here for a discovery

 3   conference in Case 3:20-CV-451, SNMP Research versus Extreme.

 4   Here on behalf of the plaintiffs are Olivia Weber and Cheryl

 5   Rice.  Are the plaintiffs ready to proceed?

 6            MS. WEBER:  We are, Your Honor.

 7            MS. RICE:  We are.

 8            THE COURTROOM DEPUTY:  And here on behalf of the

 9   defendants are John Neukom, Leslie Dimmers, Chad Hatmaker, and

10   Barbara Barath.  Are the defendants ready to proceed?

11            MS. BARATH:  Yes, Your Honor.

12            THE COURT:  All right.  Good morning.  This is Judge

13   Poplin.  Could I ask the parties who will be making their

14   presentations on the client's behalf?  First for plaintiff?

15            MS. WEBER:  Yes.  Olivia Weber will be primarily

16   handling the argument today.

17            THE COURT:  And for defendants?

18            MS. BARATH:  That would be me, Your Honor, Barbara

19   Barath.

20            THE COURT:  All right.  Thank you.  Okay.  So I've had

21   an opportunity to review your position statements, and there is

22   (inaudible) to the issue, and I've been able to have time to

23   consider those, so I do not need you to reiterate with

24   (inaudible) what is in your position statement.  So I would like

25   to ask you to limit your presentations in this conference to
```

4

approximately 5 minutes.  So I'll recognize you, Ms. Weber.

MS. WEBER:  Thank you, Your Honor.  Again, this is Olivia Weber on behalf of plaintiffs.  May it please the Court, we are as you know respectfully requesting a ruling that each plaintiff constitute one party for purposes of Rule 33's numerical limit and that as such each plaintiff may serve 25 interrogatories on Extreme.  Extreme has refused to answer SNMP International's Interrogatory 6 on the grounds that the plaintiffs should be treated as one party for purposes of Rule 33 and that the parties have at this point exceeded the 25 interrogatory numerical limit when you count together their separately served sets of interrogatories and tally them up.

As Your Honor has requested, I'm not going to repeat argument in plaintiff's submission.  I will instead emphasize a few overarching points and then respond to a few of Extreme's arguments in its position statement.

First, the plain language of Rule 33(a)(1) sets a numerical limit per party and not per side.  The Supreme Court in approving the federal rules differentiated between limits per side and per party.  For example, Rule 30 sets a deposition limit per side, but Rule 33 sets the numerical limit per party, and it is plaintiff's position that the federal rules should be taken at face value, particularly where there are plain differences in the language used.

Second, plaintiffs have served separate sets of

discovery from the very beginning of this case in December of 2020 and up until about two months ago when Extreme responded to SNMP International's Interrogatory Number 6. Plaintiffs have no notice that Extreme was counting the interrogatory limit by combining the separately propounded sets of interrogatories.

I'd like to also briefly respond to a couple of points that Extreme made in its position statement, and then I would be happy to answer any questions that the Court may have or address plaintiffs in the alternative requests for 25 additional interrogatories.

Extreme claims that plaintiffs have somehow recognized that they should be treated as single entities throughout this case including by responding to Extreme's interrogatories together. That's incorrect, and I wanted to flag for Your Honor that plaintiffs responded together to Extreme's interrogatories because Extreme propounded its interrogatory request on both plaintiffs together. In fact, it propounded all of its discovery that way, and furthermore, Extreme's interrogatories repeatedly use the terms "SNMP" and "your" which were defined to include both plaintiffs.

Another one of Extreme's arguments in its position statement is that some of plaintiff's separately served discovery requests have overlapped, but Rule 33 speaks in terms of parties plain and simple without regard to overlap. Particularly, that's the case where plaintiff's claims as here

arise from the same or related course of conduct, and
plaintiff's position is that Rule 33's plain language should be
enforced.

They also note that sometimes SNMP International's
rogs will refer to rogs served by SNMP Research including SNMP
Research Rog. 1, and I just wanted to take a moment to explain
that that is because SNMP Research's Interrogatory 1 is
essentially a seminal rog.  It's an identification of all
Extreme products containing SNMP Research software, and so
referring to Extreme's response to SNMP Research Rog. 1 is
simply a shorthand for referring to the thousands of accused
products that Extreme has identified in this case.

Lastly, Extreme relies upon Your Honor's decision in
*Knox Trailers*.  That decision in plaintiff's view did not
address whether related entities should be counted as one party
due to their close relationship.  Despite the plain language of
Rule 33, our reading, Your Honor, observed the split of
authority in district courts but reasoned that because the
plaintiffs served their first 24 discovery requests together as
a unified entity, the Court would not require the defendant to
respond to additional interrogatories above that.  And as we
noted in the position statement, here plaintiffs did not serve
their interrogatories together.  By contrast, we have propounded
our interrogatories separately since December of 2020.

I'd be happy to answer any questions at this point or

1    to discuss our alternative request for relief, but otherwise I'm
2    ready to hand it over.
3              THE COURT:  I do have one question in terms of the
4    privilege log that was noted in Extreme's position statement was
5    that the plaintiff responded to that as one, but here you
6    explained that the response to their discovery was that was
7    given in that way because of the way it was propounded.  I just
8    want to clarify whether that was the same issue with respect to
9    how the privilege log was assembled.
10             MS. WEBER:  Yes.  That's correct, Your Honor.  The,
11   the discovery request, both interrogatories and RFPs did not --
12   they were served together, propounded together upon both
13   plaintiffs, and both plaintiffs together served a privilege log
14   in return.
15             THE COURT:  Okay.  Thank you, Mrs. Weber.
16             MS. WEBER:  You're welcome.
17             THE COURT:  All right.  At this point I would like to
18   turn to Ms. Barath for Extreme's presentation, and then if
19   necessary, we'll go back to the issue of going beyond the 25.
20   So Ms. Barath?
21             MS. BARATH:  Thank you, Your Honor.  Based on the
22   presentation we've heard, it seems clear that plaintiffs
23   actually are not entitled to more than 25 rogs, and they have
24   not even attempted to make the particularized showing that's
25   necessary to exceed that number.

1            So on the first point, are they entitled to more than

2 25.  The Court in *Knox*, this Court, recognized that the typical

3 rule when you're dealing with closely-related parties is to

4 treat them as one party, and here there's no dispute that the

5 parties are closely related.  While the parties may have

6 different names, they are both managed by the same person based

7 on the same farm where that person lives, share the same

8 counsel, and they've acted in a coordinator manner in this

9 litigation from the very beginning.

10            So if you look back at the Rule 26(f) statement that

11 the parties submitted, they actually argue that the plaintiffs

12 collectively should serve a certain number of rogs.  Granted

13 they asked for more at that point, but the Court never ruled in

14 that.  My point there is just that they were, then collectively

15 the plaintiffs should get a certain number.

16            As we mentioned in our papers, they collectively

17 responded not just to discovery but to motions to basically

18 everything that's happened in this court, and even now they're

19 arguing on behalf of both plaintiffs, and I believe counsel

20 mentioned that the reason they responded to discovery

21 collectively was that Extreme propounded requests to them

22 collectively.  While that's true, I think that just reiterates

23 the facts that they were on notice of the fact that Extreme

24 considered them to be one entity and treated them as one entity,

25 and beyond the fact that they were responding together, they

1  actually talked about themselves collectively.

2       So we mentioned this in our papers, but the damages
3  interrogatory, we asked them, you know, what damages plaintiffs
4  contend that they're entitled to, and they responded
5  collectively that plaintiffs together intend to seek
6  such-and-such type of damages based on plaintiff's software.  So
7  it wasn't, you know, both of them responded to these rogs.  They
8  were taking a unified position.

9       And with respect to the privilege log, it's not just
10 that they served, you know, one privilege log where each entity
11 had, you know, a separate line for their separate documents.
12 They made no differentiation between the parties on that log as
13 is if they were one party.

14      And in the rogs they served on us, while it's true
15 that they said, okay, this set is from one entity and this other
16 set is from another entity, if you look at the actual substance
17 of the rogs, they didn't actually differentiate between the
18 entities at all.

19      So first of all, they define SNMP Research to mean
20 both entities, and then if you look at the rogs themselves, they
21 use that definition.  Same thing for SNMP software.  They're
22 basically saying the software is created by these two entities.
23 Respond to us about this software collectively.

24      So it's not just -- it wasn't clear to us, let me put
25 it that way, that even though SNMP-I, for example, was serving a

1  set of rogs that those were specific to SNMP-I in some

2  particular way.  In fact, plaintiffs haven't pointed to any rogs

3  that pertain to one party versus another given the subject

4  matter of the rogs.

5  So as far as the case law, plaintiffs have attempted

6  to differentiate this Court's holding in *Knox* by arguing that

7  there the interrogatories were served, were propounded

8  collectively, but as I just said, I think that's basically true

9  in this case as well.  While the caption may be slightly

10  different, the actual substance of the rogs was collectively on

11  behalf of the plaintiffs, and there was no differentiation

12  between them.

13  And besides that, as this Court noted, the rule was

14  that when parties are just nominally separate, they should be

15  treated as one side.  Notwithstanding the language in Rule 33,

16  the word "party" basically means to be construed to cover both

17  entities when there's really no difference between the entities.

18  The cases that plaintiff cited actually confirm this

19  position.  They cited this case *Adlerstein*.  That case

20  recognized the rule and found that several defendants that

21  cooperated and worked closely together should be considered one

22  party under the rule, but the same thing is true here, and

23  plaintiffs haven't cited to a single case that I'm aware of

24  where related parties were not treated as a single party for

25  purposes of the Rule 25 limit.  So that's entitlement.

1       What -- how many rogs should by default plaintiffs get

2   here, the answer is 25 because they're acting collectively as

3   one party, not just differentiating between themselves from the

4   very beginning of this case.

5       And then I guess I did also want to make the point

6   that to the extent that they're seeking more rogs, they haven't

7   even attempted to make a particularized showing.  They've made

8   some general statements about the complexity of this case, but

9   that's, this Court recognized both in the *Knox Trailers* case and

10  in the *Glasswall* case, *Glasswall* that we cited in our papers,

11  that you can't just say there are a lot of claims at play, that

12  there are a lot of documents at play.  You actually need to

13  point to specific discovery that you need, and in most cases,

14  parties will actually serve the rogs that they're intending the

15  Court to give them leave to serve so that the Court can actually

16  review them and decide, okay.  You cannot get this discovery in

17  a better way, then that's why you need additional rogs.

18      Here we're talking about one rog that they have served

19  that we've looked at, and for that one the parties are actually

20  already negotiating a stipulation to obviate the need for that

21  rog, so hopefully that one will be resolved; but on top of that,

22  they're actually asking for 24 additional rogs that they haven't

23  even told us what the subject matter is let alone identified

24  individual rogs that they intend to serve.

25      So they have a ton of discovery already in this case.

We're talking nearly a million pages of documents. They've

served well over 150 discovery requests. They're getting all of

our source code. Their existing rogs cover all of their accused

products. They've already started asking discovery about issues

that are related to their new claims, and so we're just not

understanding what they even need, but they can't get the

additional RFPs, the RFAs which aren't limited or depositions

for that matter.

So given that they haven't even attempted to make a

particularized showing for additional rogs, we would ask that

you deny their motion.

THE COURT: Okay. Thank you, Ms. Barath. All right.

Ms. Weber, back to you. I'll give you an opportunity to respond

as you wish for a few minutes, but I do have one particular

question. Ms. Barath has noted that while the discovery was

propounded separately, in looking to the form of the substance

of the request in the interrogatory was the same, so that is one

particular question I would like for you to address.

MS. WEBER: Thank you, Your Honor. I would be happy

to address. I'll start by addressing that, and then I will

address a few points from Ms. Barath's argument.

First of all, as Your Honor noted in *Knox Trailer*,

form is important, and plaintiffs painstakingly adhered to

separate forms by separately propounding the interrogatories.

As to the substance, I'd be happy to submit as an

example the request that each plaintiff served on Extreme, but
if you -- I can take -- I'm just opening this now, and I can
take a couple of examples 'cause I'm not, I'm not exactly sure
how Ms. Barath is making this contention.

For example, Interrogatory Number 1 from SNMP Research
asks for as I mentioned identification of all Extreme products
that contain, use, or otherwise associated with SNMP Research
software, either as manufactured or as a result of a software or
firmware installation or update.  So that's framed at the
accused products, and Interrogatory Number 2 asks for any
Extreme partners who are selling these products.

Interrogatory Number 3 is similarly product related.
It asks for the version number of plaintiff's software in those,
in the accused products identified in Rog. 1, and so on and so
forth.  All of these interrogatories are framed with respect to
the accused products and Extreme's conduct in relation thereto.

And it is correct that -- so SNMP Research owns the
copyright registration for these copyrighted works, and as
co-plaintiff, SNMP International is the licensor of these
copyrighted works.  So there's certainly some overlap or at
least some of the responses to SNMP Research, Research's
interrogatories are certainly relevant to SNMP International's
claims, but that doesn't change the fact that we have served
separate sets of discovery requests.  We've been careful to do
so, and I certainly disagree with the broad brush stroke that

1 just because the subject matter of the discovery responses is
2 relevant to both of the plaintiff's claims that now somehow
3 plaintiff has, have waived the right to serve 25 rogs each as
4 they're entitled to under Rule 33.

5 Does Your Honor have any further questions on this in
6 particular? Because if not, I will move on.

7 THE COURT: No. Thank you. You can proceed with your
8 brief comments.

9 MS. WEBER: Okay. Thank you. I'll keep it brief.
10 Ms. Barath began by noting that Your Honor's decision in *Knox*
11 *Trailers* recognized that the typical rule is that when the
12 parties are closely related, you treat them as one party for
13 purposes of Rule 33. I don't think I should try to tell Your
14 Honor what Your Honor ruled, and I, I'll just keep it short by
15 saying that if you go and look at the decision in *Knox Trailer*,
16 it does not make that holding or observation anywhere. As we
17 noted in the brief, *Knox Trailer* observed a split of authority,
18 but it does not make that, that fine tooth comb holding there's
19 a typical rule that somehow the parties are closely related, the
20 Court will not follow the plain language of Rule 33.

21 Secondly, Ms. Barath noted that plaintiffs made an
22 offer in the Rule 26(f) report that they should get 75 rogs
23 collectively per defendant. Plaintiffs -- I think that's
24 consistent with the fact that plaintiffs gave notice to Extreme
25 from the very outset of the case that they were going to seek to

increase the numerical limit of a lot of interrogatories, and
their request to serve the 50, more than the 50 interrogatories
to which plaintiffs were already entitled was in no way a waiver
of plaintiff's right to each serve 25 interrogatories on each
defendant.  And that's demonstrated by the fact that just a few
days, I think two days after plaintiffs met for purposes of Rule
26(f), plaintiffs then served their separate sets of discovery
on plaintiffs or on Extreme on December 26.

With respect to negotiating a stipulation on SNMP
International Rog. 6 and the assertion that that will obviate
the need for that rog, this is the first time we've heard that
Extreme will agree to provide that information absent an
interrogatory request on that topic, and if that is correct, if
I'm understanding them correctly, that is good news.

I will briefly also respond to the assertion that we
have not made a particularized showing of the need for
additional interrogatories, and I will keep this very brief
because I think our papers explain why 25 interrogatories would
be adequate if Your Honor does not agree with plaintiff's
interpretation of Rule 33's numerical limit.

The -- I can go through a couple, at least a couple of
topics for which plaintiffs would like to serve interrogatories.
That includes Extreme's, the factual basis for Extreme's
affirmative defenses, the course of alleged fraudulent conduct
and Extreme's breaches, and I can get more specific in that

regard. We are hoping to serve interrogatories regarding the
number of misrepresentations that Extreme has made dating back
to at least 2015. These underlie the claim for fraud, and that
would, those interrogatories would go to what Extreme was
selling, how much it was selling and when, and its position on
those things. In a recent motion, Extreme has also hinted that
plaintiff's software is somehow not copyrightable, so we'd
inquire additional interrogatories as to Extreme's position on
that.

In recent motions filed just last month, Extreme is
also apparently asserting a statute of limitations and discovery
rule defense, and so we would need to pin them down on their
position in that regard. We would also use interrogatories to
pin Extreme down on their positions regarding breach and which
products were in their view sold under which contract.

Extreme's positions on their authority to sell certain
products have shifted throughout this litigation. First it was,
they claim that they had authority to sell accused products
under a license called Enterasys, and then later they changed
their position to having authority to sell those products under
a separate license, the 2001 license with Extreme. And so we
would like to pin Extreme down on exactly what it is contending
it had authority to sell and when down to the very target
processor, the operating system, and the development tools and
the basis for that belief.

1          As just another example, Extreme has contended that

2   plaintiff's software is published, and that's, their

3   registrations are somehow invalid.  We would like to clarify and

4   pinpoint the basis for Extreme's assertion in that regard, and

5   an additional 25 interrogatories is an approximation of what we

6   believe we need, and it is our attempt at a compromised position

7   with Extreme.

8          As Extreme noted, we requested 75 interrogatories per

9   defendant initially.  This is our comprised position.  It's very

10  difficult at this stage with little more than a year left of

11  discovery and additional claims for fraud and breach and

12  expanded scope of infringement to prognosticate exactly how many

13  we will need, and 25 additional is a fair and reasonable amount

14  and comprised position in our view, especially in a complex case

15  such as this because the interrogatories will help simplify and

16  clarify what's actually in dispute and focus the remainder of

17  the discovery period.

18         And that's all I have unless Your Honor has additional

19  questions for me.

20         THE COURT:  All right.  No.  Thank you, Ms. Weber.

21  All right.  I need sort of a few moments to consider the

22  presentation, so I'll be right back with you, but I'm, but I am

23  going to put you on hold for just a few moments.

24         MS. WEBER:  Okay.  Thank you.

25         (Recess taken.)

1    THE COURT:  All right.  Thank you for holding for just
2    a moment.  The Court has considered the parties' position
3    statements and the additional presentation during this morning's
4    conference, so I'm prepared to go ahead and rule on this matter.

5    Rule 33(a)(1) by its terms does not limit multiple
6    plaintiffs or multiple defendants in a case to a combined total
7    of only 25 interrogatories.  As discussed, the rule provides
8    that a party may serve on the other party no more than 25
9    written interrogatories including theirs to the parties.

10   In light of the rule's specific reference to "parties"
11   as opposed to "sides," the Court is going to enforce the 25
12   interrogatory limit per party unless there's reason to depart
13   from this general rule including any of the reasons enumerated
14   in Rule 26(b)(2)(C).  Both parties here have acknowledged case
15   law departing from the reading of this rule including my
16   decision in *Knox Trailers*.

17   Here Extreme argues that there is reason to depart
18   from the rule because the plaintiffs are only nominally
19   separate.  Several cases have explained that parties may be
20   considered nominally separate when represented by similar
21   attorneys, when there is a unity of action, or when there is a
22   legal relationship between the parties.  Extreme argues that
23   that is the case here.

24   While plaintiffs are certainly related entities, the
25   Court will decline to treat them as the same for purposes of

1  Rule 33.  The Court recognizes that while they have been
2  coordinated in presenting motions throughout the litigation,
3  plaintiffs have separately served interrogatories on the
4  defendant making this a different situation than what's
5  presented to the Court in the *Knox Trailers* case.

6          Extreme references the Rule 26(f) report in support of
7  its position, but the Court does not find this is persuasive
8  given that the plaintiffs specifically noted the complexity of
9  the issues and the proposal to serve 75 interrogatories
10  collectively as to each defendant.

11          I've also reviewed the amended complaint, and it
12  states that SNMP Research is primarily the research and
13  development company that creates the license and supports the
14  products, but SNMP International is primarily responsible for
15  sales and marketing.

16          While the same person runs those companies, plaintiffs
17  have set forth different causes of action in the amended
18  complaint against Extreme.  SNMP Research, for example, they're
19  just the registered owner of the copyright and therefore alleges
20  copyright infringement while SNMP International is alleging
21  breach of contract in this cause of action.

22          So in light of the different companies, the fact that
23  they've not acted as a single entity during discovery and the
24  different causes of action alleged in the amended complaint, the
25  Court will not treat them as a single entity for the purposes of

1 Rule 33.

2          So the Court has also considered the proportionality

3 of such discovery and finds that to be reasonable under the

4 circumstances presently before the Court, so I'll be putting

5 down a brief order reflecting that that I just reviewed.

6          Is there any further matters to be taken up at this

7 time?  Ms. Weber, on behalf of plaintiffs?

8          MS. WEBER:  Thank you, Your Honor.  There are no

9 further issues to be taken up at this time.  We are negotiating

10 a few remaining issues as to hopefully a negotiated field

11 environment stipulation.  Your Honor ordered Extreme to produce

12 the build environment last year, and we're trying, we're working

13 to try to obviate the need for Extreme to have to do that, and

14 we think we're really close to reaching a stipulation on that.

15 We're also negotiating hopefully some, getting some information

16 on Extreme's forthcoming source code production so that we can

17 handle that without need for court intervention, but at this

18 time there's nothing else we need to slide for Your Honor, and

19 thank you for your attention to this matter today.

20          THE COURT:  All right.  Ms. Barath, anything further

21 on behalf of Extreme?

22          MS. BARATH:  No, nothing further.  Thank you, Your

23 Honor.

24          THE COURT:  All right.  I hope you all have a good

25 day.  Thank you.

1            (Proceedings concluded at 10:41 a.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3    STATE OF TENNESSEE   )

4    COUNTY OF KNOX   )

5            I, Kara L. Nagorny, RPR, RMR, CRR, do hereby certify

6    that I reported in stenographic machine shorthand the above

7    proceedings; that the foregoing pages were transcribed under my

8    personal supervision and with computer-aided transcription

9    software and constitute a true and accurate record of the

10   proceedings.

11           I further certify that I am not an attorney or counsel

12   of any of the parties nor an employee or relative of any

13   attorney or counsel connected with the action nor financially

14   interested in the action.

15           Transcript completed and dated this

16   15th day of May, 2023

17

18

19

20   _____

21           Kara L. Nagorny, RPR, RMR, CRR
             United States District Court Reporter
22           P.O. Box 1121
             Knoxville, TN  37901
23           (865) 264-9628

24

25