UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) | No. 3:20-CV-451-CEA-DCP |
| EXTREME NETWORKS, INC., | ) ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is the Motion for Limited Reconsideration and to Modify a Single Sentence of the December 22, 2022, Order Regarding Discovery [Doc. 232], filed by Extreme Networks, Inc. ("Extreme"). Plaintiffs responded in opposition to the motion [Doc. 233], and Extreme replied [Doc. 234]. The motion is therefore ripe for consideration. For the reasons explained below, the Court **DENIES** the motion [**Doc. 232**].

### I. BACKGROUND

Citing to the Court's inherent authority to modify interlocutory orders, Extreme requests that the Court reconsider and modify a single sentence in the Court's Order [Doc. 229] ("December Order"). Specifically, Extreme requests that the following sentence be modified: "the Court has previously ordered Extreme to produce . . . information" relating to "unidentified products" ("Sentence") [Doc. 229 p. 2 (citing Doc. 131 pp. 8–9)]. By way of background, the parties' underlying disagreement was addressed at a motion hearing on March 25, 2022. Specifically,

Plaintiffs served Extreme with discovery requests containing a definition of "SNMP Research Software" that Extreme argued was overbroad. The definition of "SNMP Research Software" is set forth in the Court's Order dated April 22, 2022 ("April Order") [Doc. 131 p. 8]. The third prong of "SNMP Research Software" is defined as "any software created by SNMP Research which is or was in the possession of Extreme" [*Id*.]. "Extreme object[ed] to the term 'SNMP Research Softeware[]' as being ambiguous and/or defined in a manner that makes these requests overbroad" [*Id*.]. Extreme stated, as defined, "it appears to seek discovery concerning software outside the alleged, asserted copyrighted works listed in the Complaint" [*Id*. at 9]. The Court disagreed "that it is an overbroad term, as Plaintiff's discovery requests relate to Extreme's products—whether or not they are specifically identified in the Complaint—that Plaintiff alleges are improperly incorporating its software" [*Id*.]. While Extreme argued "that these requests potentially implicate[] a great number of products," the Court noted that Extreme "appear[ed] to have little trouble in identifying the specific products that contain SNMP Research Software[.]" [*Id*.]. The Court therefore determined that "SNMP Research Software" was not ambiguous, and it overruled Extreme's objections [*Id*.].

At the December 22 hearing, the parties disputed the products at issue pursuant to the April Order [Doc. 131]. Extreme noted the following sentence in the April Order: "The Court disagrees that it is an overbroad term, as Plaintiff's discovery requests relate to Extreme's products—whether or not they are specifically identified in the Complaint—that Plaintiff alleges are improperly incorporating its software" [Doc. 230 p. 16 (quoting Doc. 131 p. 9]. Extreme acknowledged the Court's April Order directed discovery on additional products that are not referenced in the Complaint, but at that time, there were no "allegations that the parties' business relationship back from the early 2000s" was in dispute [Doc. 230 p. 16]. Extreme therefore

disagreed with Plaintiffs' interpretation of the April Order [*Id.*]. Plaintiffs responded that Extreme's argument "reads out the third prong of the definition of 'SNMP Research Software,' which the Court referenced in its April Order [*Id.* at 21–22]. During the hearing, the Court concluded as follows:

> In order to have a constructive mediation with any potential for a global settlement, the Court finds that this information on the unidentified products is essential and necessary. Moreover, the Court did previously order the same information to be produced in its April 22 order, so the Court is again ordering that it be produced and setting a production date of January the 9th. The information is to be in a form similar to that as provided for the identified products.

[*Id.* at 48–49]. Following the hearing, the Court entered the December Order containing the Sentence that Extreme objects to:

> The Court finds information regarding the unidentified products is essential and necessary in order to have a constructive mediation with any potential for global settlement. Moreover, the Court has previously ordered Extreme to produce this information as explained in its Memorandum and Order [Doc. 131 pp. 8–9].

[Doc. 229 p. 2].

## II. ANALYSIS

The Court has considered the parties' arguments and declines to modify the December Order. The Court therefore **DENIES** Extreme's motion [**Doc. 232**].

Extreme states, "[T]his specific portion of the December order rests on a clearly erroneous interpretation of the April Order and (but-for correction) threatens [it] with follow-up consequences that Extreme does not believe the Court intended" [Doc. 232-1 p. 2]. Extreme states, "Plaintiffs have asserted that the April Order compelled [it] to produce information related to all of Extreme's products containing any software originating from Plaintiffs from the date of first sale of each product" [*Id.* at 4 (citation omitted)]. According to Extreme, "The December Order

3

endorsed Plaintiffs' erroneous interpretation of the April Order" by including the Sentence [*Id*. at 3]. Extreme states that the Sentence in the December Order is contrary to the April Order and that it interpreted the April Order "as calling for the production of information related to the products that [it] acquired from defendant Brocade in 2017, which are the only products that Plaintiffs 'allege are improperly incorporating their software' in their operative pleading" [*Id*. (quoting Doc. 131 p. 9)]. Extreme argues that it has already produced a significant amount of discovery and that the potential discovery obligations created by the December Order "are far in excess of what is provided by law" [*Id*. at 5]. Further, Extreme states that allowing the Sentence to remain as is constitutes manifest justice as Plaintiffs will use it to argue it behaved incorrectly. Explaining that it filed this motion to enforce and preserve it rights, Extreme states that it is simply asking the Court to correct the record, and it "is not asking for a finding that products that are not identified in the operative pleading are not discoverable in this case" [*Id*. at 7].

Plaintiffs state that Extreme's motion is a rehash of what the parties presented at the hearings on March 25, 2022, and December 21, 2022. Plaintiffs further argue that the motion does not make any sense given that it states that the Court erred in interpreting its own order. Plaintiffs submit that there is no manifest justice if the Court denies the motion.

Extreme replies that Plaintiffs do not rebut the crux of its argument—that is, the December Order contained a mistaken interpretation of the April Order. Extreme argues that it not making a re-argument and that "Plaintiffs ignore the courts are empowered to—and do—revise discovery or other interlocutory orders when convinced that certain aspects of those decision were clearly erroneous" [Doc. 234 p. 3]. Extreme states that the issue now before the Court "is a real one given that" in April 2022, Plaintiffs identified "a relatively narrow list of products" and in December 2022, they sought to add new products in their Amended Complaint [*Id*.]. According to Extreme,

4

"Plaintiffs had indicated they wanted to target a broader set of products, including those having nothing to do with the 'Broadcade/Broadcom' history that this Court is by now familiar with" [*Id.*]. With respect to manifest injustice, Extreme states that it complied with the April Order, but the December Order expands it "in a manner that unjustly suggests that [it] has not been in compliance with Plaintiffs' interpretation of discovery obligations for over eight months" [*Id.* at 4].

"[I]t is a well-established principle that a court possess the inherent authority to modify its interlocutory orders at any time before final decree." *Burket v. Hyman Lippitt, P.C.*, No. 05-72110, 2006 WL 901696, at *1 (E.D. Mich. Apr. 3, 2006) (citation omitted). "Generally, reconsideration of an interlocutory order is appropriate when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Young v. Olympus Am., Inc.*, No. 07-2547-STA, 2011 WL 13272344, at *1 (W.D. Tenn. Jan. 27, 2011) (citing *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004)).

The Court finds no basis to modify the December Order as Extreme requests. The parties litigated this issue, and the Court declines to address it again. Further, Extreme fears that Plaintiffs may use the December Order to file "serious motion practice[.]" [Doc. 232-1 p. 6]. The potential for future motion practice does not constitute manifest injustice. The Court understands Extreme's interpretation of the April Order [Doc. 131], and therefore, should Plaintiffs engage in such motion practice, the Court will take into consideration this interpretation. But the Court finds no manifest injustice by declining to modify the December Order.

5

Case 3:20-cv-00451-CEA-DCP   Document 312   Filed 05/19/23   Page 5 of 6   PageID #: 14378

## III. CONCLUSION

For the reasons explained above, the Court **DENIES** Motion for Limited Reconsideration and to Modify a Single Sentence of the December 22, 2022, Order Regarding Discovery [**Doc. 232**].

**IT IS SO ORDERED.**

ENTER:

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge