# Exhibit D

# ASSET PURCHASE AGREEMENT

by and among

## LSI CORPORATION,

## EXTREME NETWORKS, INC.

and

solely for purposes of <u>Section 9.2</u> hereof,
## BROADCOM CORPORATION

Dated as of March 29, 2017

**3.5 Purchased Assets**.

(a) The Company or its Subsidiaries have, or at the Closing will have, and Purchaser or the Purchaser Designees will at the Closing acquire, good and valid title to, or a valid leasehold interest in, or a valid license to use the Purchased Assets, free and clear of all Liens, except Permitted Liens.

(b) The equipment included in the Purchased Assets that is material to the operation of the Business as currently conducted taken as a whole is in operating condition and repair (normal wear and tear excepted) and in all material respects is suitable for the purposes for which they are currently used, but are otherwise transferred as a "where-is" and, as to condition, "as-is" basis.

(c) The Purchased Assets, together with the Licensed Business Intellectual Property and the other rights, licenses, services and benefits to be provided to Purchaser or the Purchaser Designees pursuant to this Agreement and the other Transaction Documents, constitute all of the assets, properties and rights owned, leased or licensed by the Company and its Subsidiaries used to conduct the Business in all material respects as currently conducted and will enable Purchaser and the Purchaser Designees to operate the Business immediately after the Closing in substantially the same manner as it is currently operated other than the effect thereon of (i) the Excluded Assets, (ii) any Contracts or other assets or rights that pursuant to Section 2.7 are not transferred to Purchaser or a Purchaser Designee, (iii) Shared Contracts that are covered pursuant to Section 5.15(a) hereof, (iv) any Business Employee who does not commence employment with Purchaser or one of its Subsidiaries immediately after the Closing Date, and (v) as provided in Section 3.5 of the Disclosure Schedule. Section 3.5(c) of the Disclosure Schedule lists each Shared Contract with respect to which the Company has Knowledge as of the date hereof (which list shall be updated as contemplated by Section 5.15(a)). Nothing in this Section 3.5(c) shall be deemed to constitute a representation or warranty as to the adequacy of the amounts of working capital, including cash and cash equivalents, of the Business as of the Closing or the availability of the same.

**3.6 Financial Statements**. Section 3.6 of the Disclosure Schedule sets forth an unaudited statement of revenues for the Business for the fiscal year ended October 29, 2016. The statement of revenues is derived from and has been prepared in accordance with the books and records of the Company and its Subsidiaries, consistent with GAAP (except for the omission of footnotes and normal year-end adjustments and any potential adjustments relating to taxes and tax adjustments) and presents fairly in all material respects the revenues of the Business for such period.

Case 3:20-cv-00451-CEA-DCP   Document 323-4   Filed 09/01/23   Page 3 of 7   PageID #: 14427

EXTREME-00007989

be solely responsible for coordinating all such requests and all access permitted hereunder. It is further agreed that neither Purchaser nor any of its Affiliates or Representatives shall contact any of the employees, customers (including dealers and distributors), suppliers or joint venture partners of Seller, the Company or any of their Subsidiaries regarding the transactions contemplated hereby, whether in person or by telephone, electronic or other mail or other means of communication, without the specific prior authorization of such Representatives of Seller. Notwithstanding the foregoing, neither Seller nor any of its Subsidiaries shall be required to provide access to or disclose information where such access or disclosure would waive the attorney-client privilege or contravene any Law or Contract to which Seller or any of its Subsidiaries is a party. The Parties shall use commercially reasonable efforts to make appropriate substitute disclosure arrangements under the circumstances in which the restrictions of the preceding sentence apply.

(c) The Parties expressly acknowledge and agree that this Agreement and its terms and all information, whether written or oral, furnished by either Party to the other Party or any Subsidiary or representative of such other Party in connection with this Agreement shall be treated as "Evaluation Material," as defined in the Confidentiality Agreement. The Parties acknowledge and agree that effective upon the Closing, the Confidentiality Agreement shall terminate and be of no further force and effect.

**5.3** **Necessary Efforts**.

(a) Each of Seller and Purchaser shall use reasonable best efforts to: (i) take, or cause to be taken, all appropriate actions and do, or cause to be done, and to assist and cooperate with the other parties hereto and their respective Affiliates in doing all things necessary, proper or advisable under applicable Law or otherwise to consummate and make effective the transactions contemplated by this Agreement as promptly as practicable; (ii) obtain from any Governmental Authority any consents, licenses, permits, waivers, approvals, authorizations or orders required to be obtained by Seller or Purchaser or any of their respective Subsidiaries, or to avoid any Proceeding by any Governmental Authority, in connection with the authorization, execution and delivery of this Agreement and the consummation of the transactions contemplated herein; and (iii) as promptly as reasonably practicable (and in any event within 10 Business Days after the date hereof with respect to the HSR Act), make all necessary registrations, declarations, submissions and filings, and thereafter make any other required registrations, declarations, submissions and filings, and pay any fees due in connection therewith, with respect to this Agreement and the transactions contemplated by this Agreement required under the Exchange Act, any other applicable federal or state securities laws, the HSR Act, any applicable Competition Laws, and any other applicable Law; provided that the Parties shall cooperate with each other in connection with (x) determining whether any action by or in respect of, or filing with, any Governmental Authority is required, in connection with the consummation of the transactions contemplated by this Agreement and (y) seeking any such actions, consents, approvals or waivers or making any such filings. The Parties shall furnish to each other all information required for any application or other filing under the rules and regulations of any applicable Law in connection with the transactions contemplated by this Agreement. Notwithstanding anything to the contrary herein, nothing in this Section 5.3(a) shall require or obligate (i) Seller or any of its Affiliates to take any action pursuant to the Merger Agreement or with respect to or in connection with the transactions contemplated thereby, (ii)

977062.09-CHISR01A - MSW
US-DOCS\82398937.10

EXTREME-00008008

either Party to perform, satisfy or discharge any obligations of any other Party under this Agreement or otherwise or (iii) Seller or any of its Affiliates to expend any money other than for filing fees or expenses or reasonable and customary costs or expenses or agree to any restriction in order to obtain any consents.

(b) In connection with the efforts referenced in Section 5.3(a), the Parties shall, and shall cause their respective Subsidiaries to, cooperate and use their reasonable best efforts and take all actions necessary to (i) respond as promptly as practicable to any requests for information from any Governmental Authority, and to avoid or overcome any action, including any legislative, administrative or judicial action, and (ii) have vacated, lifted, reversed or overturned any judgment, injunction or other Order (whether temporary, preliminary or permanent) that restricts, prevents or prohibits, or could restrict, prevent or prohibit, the consummation of the transactions contemplated by this Agreement; provided, however, that in no event shall Seller or any of its Subsidiaries be required or expected to retain any of the Purchased Assets (including assets that would be Purchased Assets but for the inability to obtain a consent) in order to comply with its obligations in respect of the foregoing. Each Party shall furnish to the other such necessary information and assistance as the other Party may reasonably request in connection with the preparation of any necessary filings or submissions by it to any Governmental Authority. Except as prohibited or restricted by Law or any Competition Laws, each Party or its attorneys shall provide the other Party or its attorneys with copies of all correspondence, filings or communications (or memoranda setting forth the substance thereof) which are made after the filing of the Hart Scott Rodino Notification and Report Form between such Party or its representatives, on the one hand, and any Governmental Authority, on the other hand, with respect to this Agreement, the Transaction Documents or the transactions contemplated hereby or thereby, subject to redaction or other similar approach (including sharing on an outside counsel only basis) as reasonably necessary of documents filed pursuant to Item 4(c) of the Hart Scott Rodino Notification and Report Form. Without in any way limiting the foregoing, the Parties shall consult and cooperate with one another, and consider in good faith the views of one another, in connection with any analyses, appearances, presentations, memoranda, briefs, arguments, opinions and proposals made or submitted by or on behalf of either Party in connection with Proceedings under or relating to the HSR Act or any other Competition Law. In addition, except as may be prohibited by any Governmental Authority or by applicable Law, in connection with any request, inquiry, investigation, action or legal proceeding by or before any Governmental Authority with respect to the transactions contemplated by this Agreement, each Party will permit authorized Representatives of the other Party to be present at each meeting, conference or telephone call relating to such request, inquiry, investigation, action or legal proceeding and to have access to and be consulted in connection with any document, opinion, proposal or other communication made or submitted to any Governmental Authority in connection with such request, inquiry, investigation, action or legal proceeding.

(c) Notwithstanding anything to the contrary in this Agreement, in connection with the receipt of any necessary approvals or clearances of a Governmental Authority in respect of the transactions contemplated by this Agreement, neither Seller nor Purchaser (nor any of their respective Subsidiaries or Affiliates) shall be required to sell, hold separate or otherwise dispose of or conduct their business in a specified manner, or agree to sell, hold separate or otherwise dispose of or conduct their businesses in a specified manner, or enter

55
977062.09-CHISR01A - MSW
US-DOCS\82398937.10

Case 3:20-cv-00451-CEA-DCP   Document 323-4   Filed 09/01/23   Page 5 of 7   PageID #: 14429

EXTREME-00008009

IN WITNESS WHEREOF, the Parties have caused this Asset Purchase Agreement to be duly executed as of the date first written above.

LSI CORPORATION

By: _____
Name: Thomas H. Krause, Jr.
Title: President

BROADCOM CORPORATION, solely for purposes of Section 9.2 hereof

By: _____
Name: Thomas H. Krause, Jr.
Title: Chief Financial Officer

[Signature Page to Asset Purchase Agreement]

IN WITNESS WHEREOF, the Parties have caused this Asset Purchase Agreement to be duly executed as of the date first written above.

        **Extreme Networks, Inc.**

By: _K. Mobley_
Name: Katy Mobley
Title: Chief Administrative Officer - HR, General Counsel + Secretary

[Signature Page to Asset Purchase Agreement]

EXTREME-00008039