IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

---------------------------------------------------------- x
                                                           :
SNMP RESEARCH, INC. and SNMP                               :    Case No. 3:20-cv-00451-CEA-DCP
RESEARCH INTERNATIONAL, INC.,                              :
                                                           :    U.S. District Judge Charles E. Atchley
                      Plaintiffs,                          :
                                                           :
              v.                                           :
                                                           :
BROADCOM INC., BROCADE                                     :
COMMUNICATIONS SYSTEMS LLC, and                            :
EXTREME NETWORKS, INC.,                                    :
                                                           :
                      Defendants.                          :
---------------------------------------------------------- x

**DEFENDANT EXTREME NETWORKS, INC.'S RESPONSE TO
PLAINTIFFS' BRIEF PROVIDING SUPPLEMENTAL AUTHORITY IN
OPPOSITION TO EXTREME'S MOTION TO DISMISS**

On September 28, 2023, the Tennessee Supreme Court issued its opinion in *Commercial Painting Co. Inc v. Weitz Co. LLC*, 2023 WL 6304838 (Tenn. Sept. 28, 2023). Plaintiffs SNMP Research, Inc. and SNMP Research International, Inc. (collectively, "SNMPR") argue that the opinion is "legal precedent directly relevant to this Court's determination of Extreme's Motion to Dismiss" SNMPR's fraud claim. *See* ECF 328. SNMPR is mistaken. In *Commercial Painting*, the Tennessee Supreme Court did not address the central issue in Extreme's Motion to Dismiss SNMPR's fraud claim: whether the economic loss doctrine applies to tort claims arising from goods contracts. *See* ECF 277 at 20–23 (Extreme's memorandum in support of motion to dismiss); ECF 291 at 20–24 (Extreme's reply memorandum in support of motion to dismiss).

*Commercial Painting* involved a dispute over a services contract between a general contractor, the Weitz Company, and its subcontractor, Commercial Painting Company. *Commercial Painting*, 2023 WL 6304838, at *1. After Weitz refused to make payments to Commercial Painting, Commercial Painting sued, alleging breach of contract, unjust enrichment,

and intentional misrepresentation. *Id.* at *1–3. The jury awarded compensatory damages on each of the three claims and punitive damages. *Id.* at *3. Weitz appealed and the Tennessee Court of Appeals reversed, holding that the economic loss doctrine "applied outside the products liability context" and that the punitive damages award, which was unsupported under contract law, was therefore improper. *See Commercial Painting Co. Inc. v. Weitz Co. LLC*, 2022 WL 737468, at *24–28 (Tenn. Ct. App. Mar. 11, 2022).

The Tennessee Supreme Court granted Commercial Painting permission to appeal on the issue of whether the Court of Appeals erred in "expanding the application of the economic loss doctrine ***to the circumstances of this case.***" *Commercial Painting*, 2023 WL 6304838, at *4 (emphasis added); *see also id.* ("The question of whether the economic loss doctrine applies ***in this case*** is a matter of law which we review de novo." (emphasis added)). The Supreme Court explained that the case involved "a ***contract for services***" and that the "contract was not for the sale of goods." *See id.* at *6 (emphasis added). Given those circumstances, the court concluded that the economic loss doctrine should not have barred Commercial Painting's claims. Specifically, it held: "[T]he economic loss doctrine should only apply in products liability cases. We decline to extend the doctrine to services contracts." *Id.* at *11.

SNMPR seizes onto the first sentence. But in its reliance on select quotations, SNMPR does not address a crucial component of the *Commercial Painting* opinion: the Supreme Court did not decide how the economic loss doctrine would apply to ***a non-products liability claim arising from a goods contract***. That is what is at issue here, as there is a "consensus among courts that [software license] agreements constitute transactions involving the sale of 'goods' under the Uniform Commercial Code ('UCC')." *Axios, Inc. v. Thinkware, Inc.*, 2015 WL 5029227, at *4 (S.D. Ohio Aug. 26, 2015) (collecting cases).

2

As noted above, the question before the Tennessee Supreme Court was whether it should extend the economic loss doctrine "to the circumstances of this case"—in which the plaintiff's claims were centered on a services contract. Declining to do so, the court began by discussing the doctrine's origins in "the products liability context" and its justifications in cases where the plaintiff's tort claim "concerns pre-contractual misrepresentations and nondisclosures about the quality, reliability, and character of the goods" under contract. *Commercial Painting*, 2023 WL 6304838, at *4–5 (citation and quotation marks omitted). After reviewing this background, the court turned its attention to the application of the doctrine to ***services contracts*** like the one between Weitz and Commercial Painting. *See id.* at *5 ("Here, we are not presented with claims of defective products or buildings. . . . [T]he description of the scope of Commercial Painting's work on the project clearly shows it is a contract for services[,] . . . ***not for the sale of goods***." (emphasis added)). In doing so, the court considered how other jurisdictions had "applied the economic loss doctrine to ***services contracts***"; noted how, in its view, "applying the economic loss doctrine outside the products liability context to ***services contracts*** necessitates finding and justifying very numerous and confusing exceptions"; discussed how federal courts applying Tennessee law had found that "the economic loss doctrine does not extend to ***services contracts***" but "is applicable to the sale of goods"; and concluded, following this review, that "there is no compelling reason to extend the economic loss doctrine to ***services contracts***." *Id.* at *5–9 (emphasis added).

Throughout the entire analysis, the court was focused on only two situations in which the economic loss doctrine might apply: products liability claims (where it held that it does) and claims based on services contracts (where it held that it does not). The court did not address a third

3

possible situation, which is the situation here: a tort claim **based on a goods contract** outside of products liability claims.

If read properly, the opinion assumes that the economic loss doctrine *does* apply to goods contracts. The decision is clear that it "does not change the current state of Tennessee law regarding the application of the economic loss rule" and that the court was only addressing and rejecting "a material change in Tennessee law [that would result from] extending the economic loss doctrine to **services contracts**." *Id.* at *9 (emphasis added). In its explanation of why the doctrine does not apply to services contracts, the court contrasted such contracts from contracts governed by the UCC (*i.e.* goods contracts), which "sets forth the full series of rights and remedies available to an aggrieved [party] who suffers only economic losses." *Id.* at *7 (quoting *Ham v. Swift Transp. Co.*, 694 F. Supp. 2d 915, 922–23 (W.D. Tenn. 2010) (citation omitted)); *see also id.* at *10 ("[T]he ubiquitous adoption of the [UCC] means that there is a carefully crafted statutory mechanism available for resolving economic loss claims." (quoting Vincent R. Johnson, *The Boundary-Line Function of the Economic Loss Rule*, 66 Wash. & Lee L. Rev. 523, 551 (2009))); *id.* at *7 (noting that the Wisconsin Supreme Court held that the economic loss doctrine did not extend to services contracts because "the built-in warranty provisions that the U.C.C. may provide in a contract for the sale of products or goods would not apply in a contract for services" (citation omitted)). The court reasoned that "applying the economic loss doctrine in cases beyond product liability actions would threaten contracting parties for services, who are not covered by the significant protections afforded by the Uniform Commercial Code." *Id.* at *13. This reasoning on its face does not apply to parties contracting for goods, who *are* covered by the UCC. Further, distinguishing a case Weitz relied on to urge the court to extend the doctrine to services contracts, the court observed that the case was inapplicable because the dispute there "involve[ed] a sale of goods, and **the economic**

4

*loss doctrine applied because a claim based on a contract for the sale of goods is governed by the UCC.*" *Id.* at \*10 (emphasis added). The court did not qualify this observation or limit it to products liability cases—rather, it stated plainly that the economic loss doctrine extends to goods contracts.

These observations about goods contracts and the UCC make clear that the Tennessee Supreme Court did not hold that the economic loss doctrine is inapplicable to goods contracts. Focused primarily on the distinction between products liability cases and services contracts, the court did not change Tennessee law relating to goods contract-based claims like the one at issue here. To the extent the court referenced this third kind of claim, its position would support Extreme and confirms that the economic loss doctrine continues to apply to these claims. *Commercial Painting* therefore should not affect this Court's analysis of Extreme's motion to dismiss, and SNMPR's fraud claim should still be dismissed under the economic fraud doctrine because it concerns a license agreement, which is a contract for the sale of goods. *See Axios, Inc.*, 2015 WL 5029227, at \*4.

| | |
|---|---|
| DATED: October 19, 2023 | Respectfully Submitted, |
| | */s/ John M. Neukom* |
| Charles B. Lee, BPR# 011570<br>Jessica Malloy-Thorpe, BPR# 035234<br>Jordan B. Scott, BPR# 037795<br>MILLER & MARTIN, PLLC<br>832 Georgia Avenue<br>1200 Volunteer Building<br>Chattanooga, Tennessee 37402<br>Tel: (423) 756-6600<br>Fax: (423) 785-8293<br>clee@millermartin.com<br>jessica.malloy-thorpe@millermartin.com<br>jordan.scott@millermartin.com | John M. Neukom (*admitted pro hac vice*)<br>Abraham A. Tabaie (*admitted pro hac vice*)<br>Barbara N. Barath (*admitted pro hac vice*)<br>Saurabh Prabhakar (*admitted pro hac vice*)<br>Alicia J. Ginsberg (*admitted pro hac vice*)<br>DEBEVOISE & PLIMPTON LLP<br>650 California Street<br>San Francisco, California 94108<br>jneukom@debevoise.com<br>atabaie@debevoise.com<br>bnbarath@debevoise.com<br>sprabhakar@debevoise.com<br>ajginsberg@debevoise.com<br>(415) 738-5700 |

Leslie A. Demers (*admitted pro hac vice*)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
leslie.demers@skadden.com
(212) 735-3000

*Attorneys for Extreme Networks, Inc.*

6

Case 3:20-cv-00451-CEA-DCP   Document 329   Filed 10/19/23   Page 6 of 6   PageID #: 14489