IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

------------------------------------------------------------ x
                                                    :

SNMP RESEARCH, INC. and SNMP         :    Case No. 3:20-cv-00451-CEA-DCP
RESEARCH INTERNATIONAL, INC.,       :

                                                    :    U.S. District Judge Charles E. Atchley

                Plaintiffs,              :

                                                    :

                      v.                        :

                                                    :

BROADCOM INC.; BROCADE               :
COMMUNICATIONS SYSTEMS LLC; and  :
EXTREME NETWORKS, INC.,               :

                                                    :

                Defendants.           :
------------------------------------------------------------ X

## DECLARATION OF SAURABH PRABHAKAR

      I, Saurabh Prabhakar, pursuant to 28 U.S.C. § 1746, declare as follows:

      1.      I am an attorney at Debevoise & Plimpton LLP. I have personal knowledge of the facts set forth in this declaration and can and will testify thereto under oath if called to do so.

**Preparation of Extreme's Supplemental Response to SNMPR's Interrogatory No. 8**

      2.      I supervised the preparation of Extreme's supplemental response to SNMPR's Interrogatory No. 8. I participated in the meet and confers with SNMPR's counsel about Extreme's Original Response to Interrogatory No. 8. Both parties agreed that Extreme's supplemental response would identify non-privileged documents by Bates number and privileged documents by reference to privilege log entry numbers.

      3.      Counsel for Extreme worked to supplement its response to Interrogatory No. 8 between mid-July 2023 and August 8, 2023, the date when Extreme served its supplemental response to Interrogatory No. 8. Preparation of Extreme's supplemental response involved two workflows. The first workflow identified documents that were called for in Interrogatory No. 8.

This work included reviewing both non-privileged and privileged documents. By mid-July 2023, Extreme had produced around 84,928 documents comprising around 1,281,828 pages. Therefore, our team had to work through an enormous volume of documents to identify communications related to the subject matter of Interrogatory No. 8.

4. To provide a timely supplement and to reduce the burden of reviewing a large volume of documents, attorneys and paralegals working under my direction used search terms to narrow the volume of documents that had to be reviewed and to locate communications called for in Interrogatory No. 8. Once the team had identified a narrower set of documents from the search terms, between two to three hundred documents, they reviewed the documents to determine that the documents contained internal communications about the subject matter of Interrogatory No. 8. The team's review focused on the subject matter of the interrogatory—not to assess privilege. The team was not focused on assessing privilege because Extreme's supplemental response had to identify both privileged and non-privileged communications, and therefore, the team expected to see privilege communications in the set it was reviewing.

5. During this workflow, Extreme's counsel was unaware that Extreme had produced potentially privileged communications with former-party Brocade Communications, LLC ("Brocade") or any other non-party. During the time Extreme's counsel was preparing its response to Interrogatory No. 8, I participated in several meet and confers with SNMPR's counsel on Extreme's assertion of privilege and common interest protection over certain communications with Brocade. During the meet and confers, SNMPR's counsel never claimed that Extreme had waived privilege by producing potentially privileged communications with Brocade. For this additional reason, I had no reason to alert the team to look for inadvertently produced privileged documents.

2

6. When the first workflow concluded, Extreme's counsel identified 106 communications that related to the subject matter of Interrogatory No. 8.

7. The second workflow involved placing communications that had to be identified in Extreme's response into two buckets: non-privileged and privileged communications. The second workflow was based entirely on document identifiers, such as Bates numbers and internal document identifiers. This workflow did not require reviewing the content of the 106 documents as that was done in the first workflow. Communications in the non-privileged bucket were readily classified because they had been produced with a Bates number stamp. Classifying entirely withheld communications into the privileged bucket required additional work. Documents that were entirely withheld on the basis of privilege did not have associated Bates numbers—they had internal control numbers. The team had to review Extreme's prior privilege logs and associated work-product that mapped internal control numbers to privilege log entry numbers. By the end of the second workflow, Extreme had a list of 33 Bates numbers for non-privileged communications and 77 privilege log entry numbers for privileged communications.

8. By August 8, 2023, Extreme had inserted the two lists in an interrogatory response and served it on SNMPR—all without any additional privilege screening.

**Claw Back of Inadvertently Produced Protected Communications With Brocade**

9. On September 1, 2023, Extreme's counsel had received SNMPR's opening submission on the Brocade Privilege/common interest issue, I supervised my team's efforts to look for potentially privileged communications between Extreme and Brocade that SNMPR had vaguely referenced in its submission. Through that work, we identified eight privileged documents that had been inadvertently produced. We reviewed our interrogatory responses and found three of those eight documents were wrongly identified in the non-privileged bucket in Extreme's

3

response to Interrogatory No. 8. We then prepared a supplemental response to Interrogatory No. 8 that deleted the Bates number associated with those documents from the bucket of non-privileged communications.

10. On September 7, Extreme clawed back those documents under the claw back provision of the Stipulated Protective Order ("PO") (ECF No. 93). The next day, on September 8, Extreme served a supplemental response to Interrogatory No. 8.

### Claw Back of Inadvertently Produced Attorney-Client Privileged Communications Related to Avaya's Networking Business

11. In August-September 2023, I had supervised the preparation of Extreme's privilege log associated with the production of 36,693 documents (372,072 pages) that Extreme had produced on July 14, 2023. On Friday, September 8, I conducted quality checks over communications identified in the privilege log that Extreme had planned to serve that day. I identified that nine documents containing attorney-client privileged communications of Avaya Inc.'s ("Avaya") networking business had been inadvertently produced because emails similar to produced documents had been properly withheld and logged in Extreme's privilege log that was being prepared. I logged the nine email chains in the privilege log served on September 8 and then on Monday, September 11, Extreme clawed back the nine emails pursuant to the PO.

12. Because we learned of the inadvertent production of privileged communications late-Friday night on September 8, the following week we continued to review Extreme's July 2023 production to determine whether other privileged communications related to Avaya's networking business had been inadvertently produced. We identified an additional 91 attorney-client privileged documents related to Avaya had been inadvertently produced in Extreme's July 2023 production. The 100 Avaya-related inadvertently produced documents constituted four email chains, three of which shared a single origin email. By September 20, 2023, within two weeks of

4

first detecting inadvertent production of privileged communications, Extreme clawed back the 100 inadvertently privileged communications related to Avaya's networking business.

### Claw Back Provision In The PO For This Case

13. I have reviewed communications with SNMPR's counsel from early 2021 relating to the drafting of the agreed-upon PO. Those documents show that on January 21, 2021, SNMPR's counsel had drafted a proposed Protective Order ("Proposed PO") that they sent to counsel for Extreme and then-defendants Broadcom Inc. and Brocade.

14. The claw back provision in SNMPR's Proposed PO is substantively identical to the claw back provision in the final PO entered in this case. ECF No. 93. I have attached to my declaration a true and correct copy of SNMPR's proposed Protective Order from January 21, 2021 as **Exhibit 20** and a redline comparison of the claw back provision in the Proposed PO and the PO entered in this case as **Exhibit 21**.

### Exhibits To Extreme's Supplemental Brief

15. Pursuant to Eastern District of Tennessee's ECF Rules & Procedure, I will file excerpts of Exhibit 1 to Daren Dulac's declaration that appear directly germane to the matter under consideration by the Court. *See* Rule 4.7 ("E-filers shall submit as exhibits . . . only those excerpts of the referenced documents that are directly germane to the matter under consideration by the Court."). Should the Court require the complete exhibit, I have them in my custody and I shall file them promptly on ECF.

16. Pursuant to Eastern District of Tennessee's ECF Rules & Procedure and to avoid filing exhibits under seal, I will file excerpts of Exhibit 2 to Daren Dulac's declaration that appear directly germane to the matter under consideration by the Court. *See* Rule 4.7. Should the Court require the complete exhibit, I have them in my custody and I shall file them promptly on ECF.

17. Pursuant to Eastern District of Tennessee's ECF Rules & Procedure, I will file excerpts of Exhibit 3 to Daren Dulac's declaration that appear directly germane to the matter under consideration by the Court. *See* Rule 4.7. Should the Court require the complete exhibit, I have them in my custody and I shall file them promptly on ECF.

18. Attached hereto as **Exhibit 1** is a true and correct copy of claw back emails sent by Counsel for Extreme to Counsel for SNMP, dated in September of 2023.

19. Attached hereto as **Exhibit 2** is a true and correct copy of Plaintiffs' Reply re Issues Raised in August 24, 2023 Email, submitted informally on September 7, 2023.

20. Attached hereto as **Exhibit 3** are true and correct excerpts of Extreme's 8th Supplemental Responses and Objections to SNMPR's First Set of Interrogatories, served on May 31, 2023.

21. Attached hereto as **Exhibit 4** are true and correct excerpts of Extreme's 7th Supplemental Responses and Objections to SNMPR's First Set of Interrogatories, served on April 28, 2023.

22. Attached hereto as **Exhibit 5** are true and correct excerpts of Extreme's 9th Supplemental Responses and Objections to SNMPR's First Set of Interrogatories, served on August 8, 2023.

23. Attached hereto as **Exhibit 6** are true and correct excerpts of Extreme's 10th Supplemental Responses and Objections to SNMPR's First Set of Interrogatories, served on September 8, 2023.

24. Attached hereto as **Exhibit 7** are true and correct excerpts of the certified transcript of proceedings from the parties' November 1, 2023 discovery conference.

6

Case 3:20-cv-00451-CEA-DCP Document 334-1 Filed 11/15/23 Page 6 of 8 PageID #: 14615

25. Attached hereto as **Exhibit 8** are true and correct excerpts of a Confidentiality Agreement between Extreme and Brocade, dated February 14, 2017, produced in this action bearing beginning Bates number EXTREME-00008090.

26. Attached hereto as **Exhibit 9** are true and correct excerpts of Extreme's Privilege Log, served on September 8, 2023.

27. Attached hereto as **Exhibit 10** are true and correct excerpts of Avaya Inc.'s Form 8-K, submitted to the United States Securities and Exchange Commission ("SEC") on January 19, 2017, which is available for download on the SEC's official website.

28. Attached hereto as **Exhibit 11** are true and correct excerpts of Avaya Holdings Corp.'s Form 10-K, submitted to the SEC on December 21, 2018, which is available for download on the SEC's official website.

29. Attached hereto as **Exhibit 12** is a true and correct copy of Plaintiffs' Position Statement re Extreme's New Privilege Assertions, submitted informally on September 7, 2023.

30. Attached hereto as **Exhibit 13** is a true and correct copy of an Avaya Notice of Duplication Agreement and Consent to Agreement, dated June 14, 2017, produced in this action bearing beginning Bates number EXTREME-01383707.

31. Attached hereto as **Exhibit 14** are true and correct excerpts of a Transaction Services and Limited Agency Agreement between Avaya and Extreme, dated July 17, 2017, produced in this action bearing beginning Bates number EXTREME-01383508.

32. Attached hereto as **Exhibit 15** are true and correct excerpts of Extreme's Supplemental Privilege Log, served on September 26, 2023.

33. Attached hereto as **Exhibit 16** are true and correct excerpts of a "Notice of Duplication of Agreement and Consent to Assignment," dated June 14, 2017 Master Services

Agreement between Luxoft Global Operations GmbH ("Luxoft") and Avaya, dated January 1, 2014, produced in this action bearing beginning Bates numbers EXTREME-01383711 and EXTREME-00881685 respectively.

34. Attached hereto as **Exhibit 17** are true and correct excerpts of a Statement of Work Agreement between Luxoft and Extreme, produced in this action bearing beginning Bates number EXTREME-00881653, dated November 17, 2017.

35. Attached hereto as **Exhibit 18** is a true and correct copy of an email chain produced in this action bearing beginning Bates number EXTREME-01079442, dated June 15, 2018.

36. Attached hereto as **Exhibit 19** is a true and correct copy of an email chain produced in this action bearing beginning Bates number EXTREME-01076335, dated July 18, 2017.

37. Attached hereto as **Exhibit 22** is a true and correct copy of Extreme's Brief re Common Interest Communications and SNMPR's Issue Nos. 2 And 3, submitted informally on September 1, 2023.

38. Attached hereto as **Exhibit 23** is a true and correct copy of Extreme's Responsive Brief re Common Interest Communications, submitted informally on September 7, 2023.

39. Attached hereto as **Exhibit 24** is a true and correct copy of Extreme's Response to Plaintiffs' Position Statement re: Extreme's New Privilege Assertions, submitted informally on October 12, 2023.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on November 15, 2023 in Fremont, CA.

                                                         _/s/ Saurabh Prabhakar_
                                                         Saurabh Prabhakar