# Exhibit 2

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., | § § § § § § | Case No. 3:20-cv-00451-CEA-DCP |
| Plaintiffs, | § | |
| v. | § § | **Jury Demand** |
| BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; AND EXTREME NETWORKS, INC., | § § § § § § § | |
| Defendants. | | |

**PLAINTIFFS' REPLY RE ISSUES RAISED IN AUGUST 24, 2023 EMAIL**

Extreme and Brocade have failed to meet their burden of establishing the existence and non-waiver of any privilege in the documents at issue. The 13 emails at issue should be ordered unredacted.

**1) Any Underlying Attorney-Client Privilege Held By Brocade Has Been Waived.** Plaintiffs demonstrated in their opening brief that Brocade's and Extreme's delay and inconsistent positions on privilege compel a finding of waiver, even before getting to whether they share a "common interest privilege." Brocade's submission does not answer any of the salient questions, including why Brocade did not preserve the September 26, 2017 email (if it is in fact irretrievably deleted) and why Brocade did not log it when Extreme identified it during this case. Consequently, because there is no valid, unwaived, underlying privilege, all of the 13 emails in dispute must be unredacted.

**2) There Is No Common Interest Privilege.** An independent basis to grant Plaintiffs' motion is the lack of any common interest here. Extreme claims the common interest agreement on which its argument depends is contained in the February 2017 Confidentiality Agreement and the March 2017 Asset Purchase Agreement ("APA").[1] The Confidentiality Agreement contains boilerplate language (Plaintiffs' Ex. 1 at ¶ 6) and Extreme does not contend (much less prove) that there was anything requiring joint legal analysis when this agreement was made. Despite its 89 page length, the March 2017 APA (Extreme Ex. D) says nothing about common interest, joint defense, or any similar doctrine.

Extreme argues that the communications at issue (which Extreme defines as the "Disputed Communications") were "part of the parties' joint effort to finalize the Brocade acquisition," that they shared a "common interest in understanding and protecting the legal interest of the Brocade Business," and that "the Disputed Communications were made in furtherance of that interest—in response to SNMPR counsel's statement that the 2001 License could not be assigned to Extreme." Extreme Br. at 3. ***However, Extreme never explains how the February and March 2017 agreements could possibly be in response to an email from SNMP's counsel that was not sent until September 22, 2017***.[2] Notably, even though another APA was apparently entered into in October 2017 (Plaintiffs' Ex. 2), it also says *nothing* about SNMP, the September 22, 2017 email, or the issue of assignability, nor does it contain any reference to common interest or joint defense, or to any joint legal analysis on any issue at all.

Consequently, at its core, Extreme argues that it and Brocade shared a common interest in Extreme completing its acquisition of a portion of Brocade's business. Neither Extreme nor Brocade have pointed to a single *legal issue* that they agreed to jointly analyze, much less one that they agreed to jointly analyze because of actual or potential litigation. To permit such an expansion of the common interest privilege would mean it would apply in virtually every commercial transaction since all dealmakers (buyer, seller, renter, landlord, etc.) have an "interest" in consummating their deal.

Extreme argues that "SNMPR has relied on [*Adkisson v. Jacobs*] to argue that the common interest doctrine can apply only when privileged information is disclosed 'due to actual or anticipated litigation[,]'" but that *Adkisson* was a diversity jurisdiction case and this case is federal question case. Extreme Br. at 3-4. Yet Extreme itself cited *Adkisson* in its meet and confer correspondence over the common interest privilege (Plaintiffs' Opening Br. at 3 n. 2), and Extreme's Brief cites to multiple

---

[1] When Plaintiffs asked Extreme to identify the precise "common interest agreement" at issue, Extreme wrote in an August 7, 2023 email that it was the February 2017 Confidentiality Agreement and an October 2017 APA (not the March 2017 APA to which Extreme now refers).

[2] The precipitating email in 11 of the 13 emails at issue is a September 22, 2017 email from John Wood (SNMP's counsel) to Extreme and Brocade stating the Brocade license agreement "is not assignable."

diversity jurisdiction cases. *See FM Generator v. MTU*, 2016 WL 8902603 (D. Mass. Aug. 25, 2016); *ContiTech v. McLaughlin*, 2021 WL 6618846 (S.D. Iowa, Nov. 24, 2021). In any event, as SNMP demonstrated in its opening brief, federal question cases (including within the Sixth Circuit) hold the same thing as *Adkisson*, and *Adkisson* states that "the federal common law standards appear to be in line with the Tennessee privilege." *Adkisson v. Jacobs*, 2021 WL 149841, * 2 n.1 (E.D. Tenn. Jan. 15, 2021).

Indeed, several cases that Extreme cites for its claim that litigation need not be actual or anticipated involved just that. *See, e.g., Elvis Presley Enters. v. City of Memphis*, 2020 WL 4015476, at *8 (W.D. Tenn. July 16, 2020) (communications "related to the defense of . . . lawsuits"); *Cooey v. Strickland*, 269 F.R.D. 643 (S.D. Ohio 2010) (joint legal analysis of lethal injection policy); *Fresenius Med. v. Roxane Lab'ys,* 2007 WL 895059, at *3 (S.D. Ohio Mar. 21, 2007) (common interest in obtaining a strong and enforceable patent); *In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1390 (Fed. Cir. 1996) (same); *MPT, Inc. v. Marathon Labels*, 2006 WL 314435 (N.D. Ohio Feb. 9, 2006), at *7-8 (same); *William F. Shea v. Bonutti Rsch.*, 2013 WL 1386005, at *3 (S.D. Ohio Apr. 4, 2013) (same); *Dura Glob. v. Magna Donnelly Corp.*, 2008 WL 2217682, at *3 (E.D. Mich. May 27, 2008) (avoiding liability for patent infringement); *Broessel v. Triad Guar.*, 238 F.R.D.215, 220 (W.D. Ky. 2006) (common interest as to matters "in litigation or which could lead to litigation."); *FM Generator*, 2016 WL 8902603, at *7 (common interest established because "work was done in anticipation and/or avoidance of litigation").[3]

In any event, this Court need not decide whether actual or anticipated litigation is necessary. Even Extreme's authority holds that a mere "commercial interest" is insufficient. Instead, there must at the very least be an actual agreement to jointly undertake a particular legal analysis of a particular legal issue. *See, e.g., Fresenius*, 2007 WL 895059, at *3 (joint legal analysis of patent prosecution); *U.S. v. BDO Seidman*, 492 F.3d 806, 816 (7th Cir. 2007) (joint legal analysis of legality of tax shelters). There is nothing like that here, and if there was, it was Extreme and Brocade's burden to prove it, s*ee Doe v. Hamilton Bd.*, 2018 WL 542971, at *2 (E.D. Tenn. Jan. 24, 2018), which they have not done.

Finally, Extreme's Brief admits that, after SNMP's counsel told Extreme and Brocade that the Brocade license was not assignable, "Extreme's in-house counsel . . . asked Mr. Fitterer [counsel for Brocade] to help respond to Mr. Wood's questions. (*Id.* at 4). **Extreme has not withheld any of these communications.**" Extreme Br. at 1 (emphasis added). But Extreme cannot withhold some emails dealing with the assignment issue as "privileged" and disclose others. *In re Columbia*, 293 F.3d 289, 302-03 (6th Cir. 2002) (rejecting "any form of selective waiver"); *Wolpert v. Branch Banking Tr. & Co*, 2023 WL 2731083 (E.D. Tenn. Mar. 30, 2023) (finding party did not meet burden of proving "inadvertent" disclosure and ordering disclosure of communications on the same subject). Plaintiffs attach hereto **Exhibit 4** as an example. Plaintiffs were prepared to submit more examples, but just hours before this brief was due, Extreme suddenly claimed that they were "inadvertently disclosed." In addition to being contrary to the bolded admission above (showing intentional non-withholding), Extreme expressly identified several of the documents in a sworn interrogatory response just last month. There is no "inadvertent disclosure here"; Extreme just no longer likes the consequences of its strategic litigation choices. If the Court does not rule in Plaintiffs' favor on the lack of any underlying, unwaived attorney-client privilege or "common interest," the Court should review the redacted material and compare it against Exhibit 4 and the rest of the material that Extreme has suddenly clawed back as purportedly "inadvertently disclosed."

---

[3] Several of Extreme's cases do not involve the common interest privilege at all. *See, e.g., In re Teleglobe Commc'ns*, 493 F.3d 345, 364-365 (3d Cir. 2007) (dispute involved affiliated entities' use of common attorneys); *Regents*, 101 F.3d at 1389-1390 (parties deemed clients of the same attorneys).

**RESPECTFULLY SUBMITTED** this 7th day of September, 2023,

By: /s/ *John L. Wood*
    John L. Wood, Esq. (BPR #027642)
    Cheryl G. Rice, Esq. (BPR #021145)
    Rameen J. Nasrollahi, Esq. (BPR #033458)
    EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
    900 S. Gay Street, Suite 1400
    P.O. Box 2047
    Knoxville, TN 37902
    (865) 546-0500 (phone)
    (865) 525-5293 (facsimile)
    jwood@emlaw.com
    crice@emlaw.com
    rnasrollahi@emlaw.com


By: */s/ A. Matthew Ashley*
    A. Matthew Ashley (CA Bar. No. 198235)
    Morgan Chu (CA Bar. No. 70446)
    David Nimmer (CA Bar. No. 97170)
    Olivia L. Weber (CA Bar. No. 319918)
    IRELL & MANELLA LLP
    1800 Avenue of the Stars, Suite 900
    Los Angeles, California 90067-4276
    (310) 277-1010 (phone)
    (310) 203-7199 (facsimile)
    mchu@irell.com
    dnimmer@irell.com
    mashley@irell.com
    oweber@irell.com

    *Attorneys for Plaintiffs*
    *SNMP Research International, Inc. and*
    *SNMP Research, Inc.*