# Exhibit 7

```
 1              IN THE UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF TENNESSEE
 2                  AT KNOXVILLE, TENNESSEE
   _____)
 3                                  )
   SNMP RESEARCH, INC. and SNMP     )
 4 RESEARCH INTERNATIONAL, INC.,    )
                                    )
 5              Plaintiffs,          )
                                    )
 6 vs.                              ) Case No. 3:20-cv-451
                                    )
 7 EXTREME NETWORKS,                )
                                    )
 8              Defendant.          )
   _____)
 9
        ELECTRONICALLY-RECORDED DISCOVERY CONFERENCE
10        BEFORE THE HONORABLE DEBRA C. POPLIN

11            Wednesday, November 1, 2023
              1:30 p.m. to 4:05 p.m.
12
   APPEARANCES:
13
          ON BEHALF OF THE PLAINTIFFS:
14
          OLIVIA WEBER, ESQ.
15        IRELL & MANELLA, LLP
          1800 Avenue of the Stars
16        Suite 900
          Los Angeles, CA 90067
17
          JOHN L. WOOD, ESQ.
18        EGERTON, MC AFEE, ARMISTEAD & DAVIS, PC
          P.O. Box 2047
19        Knoxville, TN 37901-2047

20

21

22
   TRANSCRIBED BY:
23
   Teresa S. Grandchamp, RMR, CRR
24 P.O. Box 1362
   Knoxville, Tennessee 37901
25 (865) 244-0454
```

1    **APPEARANCES:** (Continued)

2         **ON BEHALF OF THE DEFENDANTS:**

3         JOHN NEUKOM, ESQ.
          SAURABH PRABHAKAR, ESQ.
4         DEBEVOISE & PLIMPTON, LLP
          650 California Street
5         San Francisco, CA 94108
                    and
6         CHARLES B. LEE, ESQ.
          MILLER & MARTIN, PLLC (Chattanooga)
7         832 Georgia Avenue
          1200 Volunteer Building
8         Chattanooga, TN 37402
          Defendant:  Extreme Networks, Inc.;
9
          ALISON PLESSMAN, ESQ.
10        HUESTON HENNIGAN, LLP
          523 West 6th Street, Suite 400
11        Los Angeles, CA 90014
          Terminated Defendants:  Broadcom, Inc.,
12        and Brocade Communications Systems, LLC

13                   *  *  *  *  *  *  *  *

14

15

16

17

18

19

20

21

22

23

24

25

```
 1    It hasn't made a statement about this.  And I think that
 2    all goes to Extreme's burden and failure to carry it.
 3    So that goes all to one e-mail between Avaya and its
 4    attorney.
 5            The rest of the e-mails that Extreme is
 6    withholding, all of them are between Extreme employees
 7    and Avaya and Luxoft employees.  None of them are
 8    lawyers.  And, so, to keep these out of evidence, the
 9    argument is that the Avaya employees were acting as
10    Extreme's agent and, at bottom, the agency argument
11    isn't applicable.  It only applies if there is
12    attorney/client privilege on that underlying e-mail
13    which we believe there is no privilege.  It was waived
14    when Avaya disclosed it.
15            But, also, we believe that Extreme is wrong as
16    a legal matter; that Avaya was somehow acting as an
17    agent in connection with the privilege or work product
18    communications.
19            The privilege -- we cited the *Hosea Project*
20    *Movers* case that says the privilege only extends to
21    agents of a lawyer who are employed to provide legal
22    advice.  I think one of Extreme's cases backs that up.
23    This is the *Cooey v. Strickland* case out of the Southern
24    District of Ohio.  There it observed that privilege
25    includes all the persons who act as the attorney's
```

1  agents, like secretaries, file clerks, telephone

2  operators, messengers, etcetera, and I think that fits

3  perfectly with the idea in *Hosea* that privilege only

4  extends to agents of lawyers who are employed to provide

5  legal advice.  And I don't think there is any reasonable

6  argument that Avaya was employed to provide legal advice

7  on behalf of a lawyer for Extreme.

8      So, Extreme's agency argument not only fails to

9  track the case law, but I think it also fails to track

10  how the agreements that they've pointed to define

11  Avaya's agency role.

12      So, the only agency agreements that Extreme

13  invokes set forth a, quote, "limited agency," end quote.

14  And this expressly carved out the sharing of information

15  that would result in the disclosure of privilege.

16  That's Exhibits 12 and Exhibit 13.

17      In these limited agency agreements, the work

18  was also defined only to include things like processing

19  orders, invoicing, delivering product.  And, so,

20  it's -- I think it's clear just from looking at the

21  papers that Avaya's contemplated agent role was just

22  helping smooth over the transition of the sale of one

23  part of Avaya to Extreme.

24      Extreme also invoked the asset purchase

25  agreement, but if you take a look at that, it makes

1   clear in Section 5.02(c) that this particular sale did

2   not obligate either party to waive privilege.  I think

3   that's a common -- common term.  And it also made clear

4   that each party had to use commercially-reasonable

5   efforts, including by entering into a joint defense or

6   common-interest agreement to permit the disclosure of

7   privileged information.  And Extreme and Avaya have not,

8   to our knowledge, ever entered into any such agreement

9   and Extreme did not identify one to us.

10          So, the disclosure of the internal Avaya e-mail

11  between Avaya and its attorney, Richard Hamilton, III,

12  constituted a waiver of the attorney/client privilege.

13  And Extreme has articulated no reason, we believe, why

14  any of the other non-attorney communications between

15  Extreme and two third parties would be subject to any

16  claim of privilege or work product.

17          That's all I have on those two issues.  But I

18  can answer any question on this second one that you

19  have.

20          THE COURT:  Okay.

21          MS. WEBER:  Okay.  Thank you, Your Honor.

22          THE COURT:  Before you sit down, Ms. Weber, so,

23  I want to go back to, I guess, the three documents you

24  said Extreme for the first time had argued that it had

25  inadvertently produced documents ending in 693, 891 and

```
 1   860.  And then they had pointed out that they had
 2   referenced those in a sworn interrogatory response.
 3   Then 30 days later, those were subject, I guess, to the
 4   claw back.
 5            So, I guess my question with regard to that, as
 6   brought up, whether 502(a) comes into play if there has
 7   been an intentional disclosure.  If there has, then do
 8   we need to look at whether there is the same subject
 9   matter; do we need to look at the fairness argument?
10   And, so, I just wanted to raise that question while I
11   had you all here today.
12            MS. WEBER:  I appreciate it, Your Honor.
13            I think that -- well, I know we're not making
14   an inadvertent disclosure argument.  We -- we've noted
15   that it appears that they have selectivity waived, and
16   based on their intentional citation of three documents
17   pursuant to Rule 33(d) and their disclosure of a letter
18   between -- I think it was Brocade and Broadcom to
19   Extreme stating that the SNMP Research license was not
20   assignable, that's also legal analysis pertaining to
21   SNMP Research that has now been disclosed.  And it
22   sounds like that type of contract analysis is also the
23   type of analysis underlying other clawed-back
24   communications based on Extreme's description in the
25   briefing.
```

1    We'd certainly be happy to brief for Your Honor

2    further whether subject matter waiver is warranted, but

3    I think, at least to the license -- or, sorry; excuse

4    me -- legal analysis regarding the scope of the SNMP

5    license and whether it's assignable, we would -- we do

6    believe that that's been selectively disclosed and the

7    rest should be produced.

8            THE COURT:  Okay.

9            MS. WEBER:  Thank you.

10            MR. NEUKOM:  Good afternoon, Your Honor.

11            THE COURT:  Good afternoon.

12            MR. NEUKOM:  I do have a few remarks to share

13    before I -- and I can open myself up to questions at the

14    beginning or at the end.  Does the Court have a

15    preference?

16            THE COURT:  I have my questions, but if you

17    want to go ahead and state your position, that's fine as

18    well.

19            MR. NEUKOM:  Okay.  I'll try to be brief.

20            As an initial matter, I'd like to provide the

21    Court just a little bit of factual background on this

22    issue, including the claw-back issue, and, more broadly,

23    the disputes that the Court has heard about today.

24            This Court has dealt with an awful lot of

25    discovery dealings in this case going back a couple of

1  has been done, we are aware of Your Honor's decision in

2  the Wolpert case from, I think, about a week ago.  There

3  is a very helpful discussion of what does and doesn't

4  constitute selective disclosure.

5         And as I read Your Honor's writing -- I may be

6  on thin ice.  As I read Your Honor's writing, there is a

7  discussion of selective disclosure that says, in effect,

8  one is guilty -- those are my words, not the Court's.

9  One is guilty of selective disclosure in a way that

10  you'll be held accountable for, not if you necessarily

11  mention or acknowledge the existence of something, but

12  if you rely upon it for -- and here I am quoting the

13  Court -- "tactical advantage."

14         The idea that we produced documents because we

15  were asked to or we were forced to, the idea that we

16  cited them in an interrogatory answer, in an

17  interrogatory fashioned by opposing counsel in the

18  subject of ongoing demands for greater content, volume,

19  clarity, nothing about that has secured -- I can assure

20  you, nothing about that has secured my client a tactical

21  advantage in this case, and it's pretty distinguishable

22  from that kind of a scenario.

23         THE COURT:  So, would it be your position that

24  they were not produced in any way that would go to a

25  defense you're going to assert?

         1              MR. NEUKOM:  That's right.

         2              THE COURT:  Okay.

         3              MR. NEUKOM:  And, look, just to try to salvage

         4    a teeny bit of credibility, I will say this:  In many

         5    cases that line of questioning from the Court could open

         6    up some sometimes awkward discussions about the timing

         7    of production and the timing of the claw back.

         8              In this case, due to the terms of the

         9    protective order, we don't have that debate.  The

        10    parties here have mutually agreed and the Court has

        11    ordered that when there is going to be a snapback --

        12    right? -- we're not going to get into those other

        13    questions.

        14              But that doesn't go to the selective disclosure

        15    question.  That might go to a diligence or a timeliness

        16    question, which thankfully here, due to the protective

        17    order, both sides specifically are protected from those

        18    kinds of questions.

        19              THE COURT:  Okay.  Thank you.

        20              MR. NEUKOM:  Thank you, Your Honor.

        21              MS. PLESSMAN:  Your Honor.

        22              THE COURT:  Yes, Ms. Plessman.

        23              MS. PLESSMAN:  There have been a number of

        24    questions and oral argument relating to Broadcom or

        25    Brocade's waiver.

1   view of the law, we think they haven't met their burden

2   to show the common-interest doctrine is extended here.

3          THE COURT:  Okay.

4          MS. WEBER:  Thank you.

5          THE COURT:  All right.  Well, I'm going to take

6   a brief recess to see if there is any other questions I

7   need to ask before we conclude today.  So, we'll stand

8   in a brief recess.

9          THE COURTROOM DEPUTY:  All rise.  This

10  honorable court stands in recess.

11         (A brief recess was taken.)

12         THE COURT:  Okay.  Before we recess for the

13  day, I do want to request supplemental briefing on three

14  topics, and I want all three topics addressed in

15  one -- your one briefing document that for each side is

16  a limit of 25 pages.

17         So, these are the three issues:  First, whether

18  Extreme, in responding to the interrogatory request,

19  whether that operated as an intentional waiver of the

20  privilege, and, of course, if so, go through the 502(a)

21  factors, include that.  Second, whether there was a

22  transfer of privilege from Avaya to Extreme.  And,

23  third, I want you to address the claim of privilege with

24  respect to Avaya's employee communications because I

25  didn't -- I feel like I didn't hear enough about that

```
 1              MR. LEE:  Your Honor, procedurally -- or, go
 2   ahead.
 3              MR. NEUKOM:  Sorry.  Is this the stuff that we
 4   discussed?
 5              MR. LEE:  Yes.
 6              MR. NEUKOM:  I'm comfortable with that for now.
 7              MR. LEE:  Okay.  All right.
 8              MR. NEUKOM:  I have one question, which is:  I
 9   think I have a very clear understanding of what Your
10   Honor would like us to address with points one and
11   number two.
12              THE COURT:  Yes.
13              MR. NEUKOM:  If you asked me to repeat back
14   what we should address on point number three, I don't
15   think I could do a very good job of it.  So, may I ask
16   the Court just to -- even if it's saying the same thing
17   all over again --
18              THE COURT:  Yes, it's with respect to the
19   employee communications.  As the way I understood from
20   the position statements, I need to consider perhaps
21   whether those communications between the employees were
22   done at the direction of or for information that was
23   going to go back to Mr. Hamilton as legal counsel.  And,
24   so, I need to -- I need to understand more about the
25   communications amongst the employees and why those were
```

1    taking place.

2          MR. NEUKOM:  Understood.  So, is it scenario

3    one, two employees, non-lawyers, e-mailing about a new

4    product launch that's not privileged?

5          THE COURT:  Right.

6          MR. NEUKOM:  Is it, instead, two employees

7    doing something covered by privilege?

8          THE COURT:  Collecting -- were they directed to

9    collect information that was going back to be used by

10   legal counsel.

11         MR. NEUKOM:  Understood.  Thank you.

12         THE COURT:  Okay.  All right.  Anything further

13   on behalf of SNMP?

14         MR. WOOD:  Nothing from plaintiffs, Your Honor.

15         THE COURT:  Okay.  All right.  Thank you for

16   your presentations today.

17         MR. WOOD:  Thank you.

18         MR. NEUKOM:  Thank you.

19         MR. LEE:  Thank you, Your Honor.

20         THE COURTROOM DEPUTY:  All rise.  This

21   honorable court stands adjourned.

22         (Which were all the digitally-recorded

23          proceedings had and herein transcribed.)

24             * * * * * * *

25

```
 1                    C-E-R-T-I-F-I-C-A-T-E
 2    STATE OF TENNESSEE
 3    COUNTY OF KNOX
 4            I, Teresa S. Grandchamp, RMR, CRR, do hereby
 5    certify that I reported in machine shorthand the above
 6    digitally-recorded proceedings; that the foregoing pages
 7    were transcribed, to the best of my ability to hear and
 8    understand the recorded file, under my personal
 9    supervision, and constitute a true and accurate record
10    of the digitally-recorded proceedings.
11            I further certify that I am not an attorney or
12    counsel of any of the parties, nor an employee or
13    relative of any attorney or counsel connected with the
14    action, nor financially interested in the action.
15            Transcript completed and signed on Tuesday,
16    November 7, 2023.
17
18
19
20
21    _____
22         TERESA S. GRANDCHAMP, RMR, CRR
           Official Court Reporter
23
24
25
```