# Exhibit 8



February 14, 2017

**BROCADE COMMUNICATIONS
SYSTEMS, INC.**
130 Holger Way
San Jose, CA 95134-1376

**BROADCOM CORPORATION**
1320 Ridder Park Drive
San Jose, CA 95131

Re: Confidentiality Agreement by and among Brocade Communications Systems, Inc., a Delaware corporation ("Brocade"), Broadcom Corporation, a California corporation ("Broadcom"), and Extreme Networks, Inc. (the "Company" or "Extreme Networks") (with each of Brocade, Broadcom and the Company hereinafter referred to individually as a "Party" and collectively as the "Parties")

Ladies and Gentlemen:

In connection with the Parties' consideration of a possible negotiated transaction (any such transaction being hereinafter referred to as a "Possible Transaction") involving the Data Center Switching, Routing and Analytics business (the "Business") of Brocade and its subsidiaries, each of Brocade, Broadcom, and Extreme Networks is prepared to make available to each other, including their Representatives (as defined below), certain information concerning, but not limited to, financial conditions, operations, assets and liabilities.

As a condition to such information being furnished to a party receiving information (each such party, a "Receiving Party") and its Representatives, each Receiving Party agrees that it will, and will cause its Representatives to, treat the Confidential Information in accordance with the provisions of this letter agreement and to otherwise comply with the terms set forth herein. The term "Representatives" shall mean the subsidiaries, members, directors, officers, employees, agents and advisors (including, without limitation, attorneys, accountants, consultants, bankers and financial advisors) of a Party and those of its subsidiaries; provided, that, notwithstanding anything to the contrary contained herein, any potential source of financing, including, without limitation debt, equity, co-investment partners or otherwise, shall not be considered a Representative of the Company hereunder unless and until Brocade and Broadcom has given its prior written consent that such person may be deemed a Representative of the Company. The term "person" as used in this letter agreement shall be broadly interpreted to include the media

CONFIDENTIAL

EXTREME-00008090

and any governmental representative or authority, corporation, company, partnership, joint venture, group, limited liability company, other entity or individual.

1. <u>Confidential Information</u>. "<u>Confidential Information</u>" shall include, but not be limited to, all information relating, directly or indirectly, to either a party disclosing information (each such party, a "<u>Disclosing Party</u>") or its affiliates or the business, products, markets, condition (financial or other), operations, assets, liabilities, results of operations, cash flows or prospects of a Disclosing Party or its affiliates (whether prepared by such Disclosing Party, its advisors or otherwise) which is delivered, disclosed or furnished by or on behalf of such Disclosing Party to a Receiving Party or to its Representatives before, on or after the date hereof, regardless of the manner in which it is delivered, disclosed or furnished, or in which a Receiving Party or its Representatives otherwise learn or obtain, through observation or through analysis of such information, data or knowledge, and shall also be deemed to include all notes, analyses, reports, compilations, studies, forecasts, models, interpretations, records, memoranda, bids, offers, contract terms, discussion (whether oral, written, or in electronic format), agreements, or other documents that contain, reflect or are derived from, based upon or refer to, in whole or in part, any such information. For purposes hereof, the term "<u>Confidential Information</u>" shall also include the existence of this letter agreement, the fact that the Confidential Information has been made available to a Receiving Party, that discussions or negotiations specifically involving the Parties are taking place concerning a Possible Transaction and any of the terms, conditions or other facts with respect thereto (including the status thereof), except it may disclose such information solely to the extent it has determined in good faith based on the advice of counsel that such disclosure is required to avoid a violation of any law, rule, regulation or stock exchange requirement (in which case the Party seeking to disclose such information agrees to use its reasonable best efforts to give the other Parties at least 24 hours advance notice of such planned disclosure, with a copy of the proposed text of the disclosure). For purposes hereof, the term "<u>Confidential Information</u>" shall not include information that (i) is or becomes generally available to the public other than as a result of a disclosure by a Receiving Party or its Representatives in breach of this letter agreement, (ii) was within a Receiving Party's possession prior to it being furnished to such Receiving Party or its Representatives pursuant hereto, <u>provided</u> that the source of such information was not known by such Receiving Party to be bound by a confidentiality agreement with, or other contractual, legal or fiduciary obligation of confidentiality to, a Disclosing Party or its affiliates with respect to such information, (iii) becomes available to a Receiving Party on a non-confidential basis from a source other than a Disclosing Party or any of its Representatives, <u>provided</u> that such source is not known by such Receiving Party to be bound by a confidentiality agreement with, or other contractual, legal or fiduciary obligation of confidentiality to, a Disclosing Party or its affiliates with respect to such information, or (iv) is independently developed by a Receiving Party without use of, reliance upon or reference to any Confidential Information of a Disclosing Party.

2. <u>Ownership, Use and Disclosure of Confidential Information</u>. As between a Disclosing Party and a Receiving Party, all Confidential Information (including, without limitation, all copies, extracts and portions thereof) is and shall remain the sole property of such Disclosing Party. A Receiving Party does not acquire (by license or otherwise, whether express or implied) any intellectual property rights or other rights under this letter agreement or any disclosure hereunder, except the limited right to use such Confidential Information in accordance with the express provisions of this letter agreement. All rights of a Disclosing Party relating to

Case 3:20-cv-00451-CEA-DCP   Document 334-9   Filed 11/15/23   Page 3 of 11   PageID #: 14676

CONFIDENTIAL

EXTREME-00008091

the Confidential Information that are not expressly granted hereunder to a Receiving Party are reserved and retained by such Disclosing Party. Except as otherwise provided in this letter agreement, each Receiving Party hereby agrees that such Receiving Party and its Representatives shall use the Confidential Information solely for the purpose of evaluating, negotiating or advising with respect to a Possible Transaction between two or more of the Parties hereto, that the Confidential Information will be kept confidential and that, except as otherwise provided herein, such Receiving Party and its Representatives will not disclose any of the Confidential Information in any manner whatsoever; provided, however, that (i) such Receiving Party may make any disclosure of such information to which the Disclosing Party gives its prior written consent; and (ii) any of such information may be disclosed to such Receiving Party's Representatives who need to know such information for the purpose of evaluating, negotiating or advising with respect to a Possible Transaction, are informed by such Receiving Party of the confidential nature of such Confidential Information and agree to be bound by this paragraph 2 and the other confidentiality terms of this letter agreement as if they were the Receiving Party under this letter agreement. A Receiving Party shall be responsible for any breach of this letter agreement by any of its Representatives, and such Receiving Party agrees, at its sole expense, to take all reasonable measures to restrain its Representatives from prohibited or unauthorized disclosure or use of the Confidential Information.

3. <u>Legally Required Disclosure</u>. In the event that a Receiving Party or any of its Representatives is requested or required (by oral questions, interrogatories, requests for information or documents in legal proceedings, subpoena, civil investigative demand or other similar process, or by the rules or regulations of any regulatory authority having jurisdiction over such Receiving Party or a stock exchange on which its securities are traded) to disclose any of the Confidential Information, such Receiving Party shall, except as prohibited by law, provide the Disclosing Party with prompt written notice of any such request or requirement so that such Disclosing Party may seek, at such Disclosing Party's expense, a protective order or other appropriate remedy and/or waive compliance with the provisions of this letter agreement. If, in the absence of a protective order or other remedy or the receipt of a waiver by the Disclosing Party, the Receiving Party or any of its Representatives determines in good faith based on the advice of counsel that it is nonetheless legally required to disclose Confidential Information, such Receiving Party or its Representatives may, without liability hereunder, disclose only that portion of the Confidential Information which such Receiving Party determines in good faith based on the advice of counsel is legally required to be disclosed, provided that such Receiving Party exercises its reasonable best efforts to preserve the confidentiality of the Confidential Information, including, without limitation, by cooperating with the Disclosing Party, at such Disclosing Party's expense, to obtain an appropriate protective order or other reliable assurance that confidential treatment will be accorded the Confidential Information, it being understood that such Receiving Party shall not be required to initiate any litigation or other judicial process to protect such Confidential Information pursuant to this letter agreement.

4. <u>Return and Destruction of Confidential Information</u>. If a Receiving Party decides that it does not wish to proceed with a Possible Transaction, it will promptly inform the other Parties of that decision. In that case, or at any time upon the written request of a Disclosing Party for any reason, such Receiving Party will promptly deliver to each Disclosing Party or destroy all such Confidential Information (and all copies thereof) furnished to such Receiving Party or its Representatives by or on behalf of such Disclosing Party pursuant hereto and such

Case 3:20-cv-00451-CEA-DCP   Document 334-9   Filed 11/15/23   Page 4 of 11   PageID #: 14677

CONFIDENTIAL

EXTREME-00008092

Receiving Party and its Representatives shall not retain any copies, extracts or other reproductions in whole or in part of such material. In the event of such a decision or request, except as described below, all Confidential Information prepared by a Receiving Party or its Representatives shall be destroyed and no copy thereof (including that stored in any computer or similar device) shall be retained and such destruction shall, upon a Disclosing Party's written request, be certified in writing to such Disclosing Party by an authorized officer supervising such destruction. Notwithstanding the foregoing, (i) a Receiving Party and its Representatives may retain data or electronic records containing Confidential Information solely for the purposes of backup, recovery, contingency planning or business continuity planning so long as such data or records, to the extent not permanently deleted or overwritten in the ordinary course of business, are not accessible in the ordinary course of business and are not accessed except as required for backup, recovery, contingency planning or business continuity purposes (it being understood that, if such data or records are restored or otherwise become accessible, they must be permanently deleted); (ii) a Receiving Party's outside legal counsel may retain one copy of Confidential Information solely for use in documenting such Receiving Party's compliance with its obligations hereunder; and (iii) a Receiving Party's Representatives that are accounting firms or regulated financial institutions may retain copies of the Confidential Information in accordance with policies and procedures implemented by such persons in order to comply with applicable law, regulation or professional standards. Notwithstanding the return or destruction of the Confidential Information, a Receiving Party and its Representatives will continue to be bound by its obligations of confidentiality and other obligations hereunder.

5. <u>Material Non-Public Information</u>. Each Receiving Party acknowledges and agrees that it is aware (and that its Representatives are aware or, upon receipt of any Confidential Information, will be advised by such Receiving Party) that (i) the Confidential Information being furnished to it or its Representatives may contain material, non-public information regarding a Disclosing Party and (ii) the United States securities laws prohibit any person who has received from an issuer material, non-public information from purchasing or selling securities of such issuer or from communicating such information to any person under circumstances in which it is reasonably foreseeable that such person is likely to purchase or sell such securities in reliance upon such information.

6. <u>Attorney/Client Privilege</u>. To the extent that any Confidential Information includes materials or other information subject to the attorney-client privilege, work product doctrine or any other applicable privilege, the Parties understand and agree that they have a commonality of interest with respect to such matters and it is their mutual desire, intention and understanding that the sharing of such material is not intended to, and shall not, waive or diminish in any way the confidentiality of such material or its continued protection under the attorney-client privilege, work product doctrine or other applicable privilege. All Confidential Information that is entitled to protection under the attorney-client privilege, work product doctrine and other applicable privilege shall remain entitled to such protection under these privileges, this letter agreement, and under the joint defense doctrine.

7. <u>Nonsolicitation of Employees</u>. In consideration of the Confidential Information being furnished to it, the Company hereby agrees that, for a period of 12 months from the date hereof, neither it nor any of its affiliates, nor any of its Representatives acting on its behalf or direction, will solicit to employ any officer or management level employee of the Business to

Case 3:20-cv-00451-CEA-DCP   Document 334-9   Filed 11/15/23   Page 5 of 11   PageID #: 14678

CONFIDENTIAL

EXTREME-00008093

whom the Company has first been introduced or who first became known to the Company in connection with the Company's evaluation of a Possible Transaction, so long as they are employed by Brocade or its subsidiaries, without obtaining the prior written consent of Brocade and Broadcom; provided; however, that the foregoing shall not prohibit the Company from: (i) soliciting employees through general job advertisements or similar notices that are not targeted specifically at the employees of Brocade or its subsidiaries; or (ii) engaging any recruiting firm or similar organization to identify or solicit persons for employment on its behalf, as long as such recruiting firm or organization is not instructed to target any such employees.

8. <u>No Agreement; No Representations and Warranties</u>. Each Party understands and agrees that no contract or agreement providing for any Possible Transaction shall be deemed to exist unless and until a final definitive agreement regarding a Possible Transaction has been executed and delivered. Except as set forth in that certain Agreement and Plan of Merger, dated November 2, 2016, by and among Brocade, Broadcom Limited, Broadcom, and Bobcat Merger Sub, Inc. (the "<u>Merger Agreement</u>"), which shall apply to Brocade and Broadcom only, each of Brocade and Broadcom, as against the Company, and the Company, as against Brocade and Broadcom, hereby waives, in advance, any claims (including, without limitation, claims for breach of contract) in connection with any Possible Transaction involving the other Parties unless and until the Parties shall have entered into a final definitive agreement regarding a Possible Transaction. Each Receiving Party acknowledges that neither Disclosing Party nor any of their respective Representatives makes any express or implied representation or warranty as to the accuracy or completeness of the Confidential Information or of any other information concerning a Disclosing Party, the Business or any use thereof. Each Disclosing Party hereby expressly disclaims all such warranties, including any implied warranties of merchantability and fitness for a particular purpose, non-infringement and accuracy, and any warranties arising out of course of performance, course of dealing or usage of trade. Neither a Receiving Party nor its Representatives shall be entitled to rely on the accuracy or completeness of any Confidential Information or of any other information concerning a Disclosing Party or the Business, and no Disclosing Party or any of its respective Representatives shall have any liability to a Receiving Party or any of its Representatives resulting from a Receiving Party's or any of its Representatives' use of any Confidential Information or any such other information concerning a Disclosing Party or the Business. Each Party hereto and its Representatives expressly disclaim any duty (express or implied) to update, supplement or correct any information disclosed under this letter agreement regardless of the circumstances. A Receiving Party shall only be entitled to rely on such representations and warranties as may be made to it in a definitive agreement relating to a Possible Transaction, when, as and if it is executed, subject to the terms and conditions of any such agreement. Notwithstanding the foregoing, nothing in this letter agreement shall be deemed to limit any representation, warranty, right, remedy or obligation of a Party under any definitive agreement entered into by the Parties (or any rights of any Party in respect of any of the foregoing).

Each Party also agrees that unless and until a final definitive agreement regarding a Possible Transaction has been executed and delivered, no Party will be under any legal obligation of any kind whatsoever with respect to such a Possible Transaction by virtue of this letter agreement or any other written or oral expression with respect to such Possible Transaction, except for the matters specifically agreed to herein. Each Party acknowledges and agrees that the other Parties hereto reserve the right, in their sole discretion, to reject any and all

Case 3:20-cv-00451-CEA-DCP   Document 334-9   Filed 11/15/23   Page 6 of 11   PageID #: 14679
CONFIDENTIAL                                                                                    EXTREME-00008094

proposals with regard to a Possible Transaction, and each Party reserves the right to terminate discussions and negotiations at any time and for any reason or no reason. For the purposes of this paragraph, the term "definitive agreement" shall not include this letter agreement, an executed letter of intent or any other preliminary written agreement, nor does it include any written or verbal acceptance by any Party of any offer or bid on another Party's part.

9. Procedures. The Company acknowledges that (i) Brocade, Broadcom and their respective Representatives are free to conduct the process relating to a Possible Transaction as they and their respective Representatives, in their sole discretion, determine (including, without limitation, conduct of the due diligence process, negotiating with one or more prospective parties and entering into a preliminary or definitive agreement to effect a Possible Transaction) without prior notice to the Company or any other person; and (ii) each of Brocade and Broadcom reserve the right, in its sole discretion, to (A) change the procedures for considering a Possible Transaction at any time without prior notice; (B) reject any and all proposals made by the Company or any of its Representatives with respect to a Possible Transaction; and (C) suspend or terminate discussions and negotiations with the Company at any time and for any reason.

10. Contacts. Unless otherwise agreed by both Broadcom and Brocade in writing, the Company and its Representatives agree to submit or direct to Barclays Capital Inc. (a) all communications; (b) requests for additional information and due diligence; (c) requests for facility tours or management meetings or discussions; or (d) questions regarding the Possible Transaction. It is understood that, without the prior written consent of both Broadcom and Brocade, the Company and its Representatives will not, directly or indirectly, contact or communicate with any person (including, without limitation, any stockholder, director, officer, employee, affiliate, customer or supplier of the Business) regarding any Confidential Information or any of the facts or other matters relating to a Possible Transaction. The Company understands and agrees that, without the express prior written consent of both Broadcom and Brocade, the Company and its Representatives are strictly prohibited from (i) acting as a broker or an agent using any of the Confidential Information, (ii) discussing with or offering to any third party an equity participation in a Possible Transaction and (iii) approaching, entering into discussions with or contacting any other person with a view to or otherwise in respect of forming a consortium or carrying out a joint bid for a Possible Transaction. Without both Broadcom's and Brocade's prior written consent, the Company shall not, and shall cause its Representatives acting on its behalf not to, enter into any exclusive arrangement or agreement with any bank or other financial institution regarding the provision of financing or banking facilities for a Possible Transaction, other than restrictions to confidentiality and customary "tree" arrangements.

11. Waiver of Rights. It is understood and agreed that no failure or delay by a Party in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or future exercise thereof or the exercise of any other right, power or privilege hereunder.

12. Remedies. It is further understood and agreed that money damages would not be a sufficient remedy for any breach of this letter agreement by the Receiving Party or its Representatives and that a Disclosing Party shall be entitled to equitable relief, including injunction and specific performance, as a remedy for any such breach. Such remedies shall not be deemed to be the exclusive remedies for a breach of this letter agreement but shall be in

Case 3:20-cv-00451-CEA-DCP    Document 334-9    Filed 11/15/23    Page 7 of 11    PageID #: 14680
CONFIDENTIAL                                                                                    EXTREME-00008095

addition to all other remedies available at law or equity. Each Receiving Party further agrees not to raise as a defense or objection to the request or granting of such relief that any breach of this letter agreement is or would be compensable by an award of money damages, and agrees to waive any requirements for the securing or posting of any bond in connection with such remedy.

13. <u>Governing Law</u>. This letter agreement shall be governed by and construed in accordance with the laws of the State of Delaware, applicable to agreements made and to be performed entirely within the State of Delaware, without regard to the conflict of law provisions thereof. Each Party hereby irrevocably and unconditionally consents to submit to the exclusive jurisdiction of the courts of the State of Delaware and of the United States of America located in the State of Delaware for any actions, suits or proceedings arising out of or relating to this letter agreement and the transactions contemplated hereby (and each Party agrees not to commence any action, suit or proceeding relating thereto except in such courts, and further agree that service of any process, summons, notice or document by registered mail or delivered by an internationally recognized courier service to the address set forth herein shall be effective service of process for any action, suit or proceeding brought against a Party in any such court). Each Party hereby irrevocably and unconditionally waives any objection which it may now or hereafter have to the laying of venue of any action, suit or proceeding arising out of this letter agreement or the transactions contemplated hereby in the courts of the State of Delaware and of the United States of America located in the State of Delaware, and hereby further irrevocably and unconditionally waives and agrees not to plead or claim in any such court that any such action, suit or proceeding brought in any such court has been brought in an inconvenient forum.

14. <u>No Assignment</u>. This letter agreement shall inure solely to the benefit of and be binding upon each of the Parties and the respective successors and permitted assigns, and no Party may assign this Agreement or any of its rights and obligations hereunder without the prior written consent of the other Parties; <u>provided, however</u>, that a Party may assign this letter agreement without the prior written consent of any other Party to any purchaser of the Business or substantially all of the assets of the Business. Except as expressly stated in the preceding sentence, any attempted assignment by a Party without the other Parties' prior written consent will be void and of no force or effect.

15. <u>Entire Agreement; No Modification</u>. This letter agreement contains the entire agreement among the Parties concerning the subject matter hereof, and no provision in this letter agreement can be waived, modified or amended except by written consent of each of the Parties, which consent shall specifically refer to the provision to be waived, modified or amended and shall explicitly make such waiver, modification or amendment. This letter agreement supersedes the Confidential Agreement, dated as of January 25, 2017, by and among the Company, Broadcom and Brocade. Solely as between Brocade and Broadcom, in the event of any conflict or inconsistency between the terms of the Merger Agreement and the terms of this letter agreement, the terms of the Merger Agreement shall in all events control, govern and prevail.

16. <u>Severability; Third Party Beneficiaries; and Counterparts</u>. If any provision of this letter agreement is found to violate any statute, regulation, rule, order or decree of any governmental authority, court, agency or exchange, such invalidity shall not be deemed to affect any other provision hereof or the validity of the remainder of this letter agreement, and such invalid provision shall be deemed deleted herefrom to the minimum extent necessary to cure

Case 3:20-cv-00451-CEA-DCP   Document 334-9   Filed 11/15/23   Page 8 of 11   PageID #: 14681

CONFIDENTIAL

EXTREME-00008096

such violation. Each Party agrees that, except for the Parties hereto, nothing herein expressed or implied is intended to confer upon or give any rights or remedies to any other person under or by reason of this letter agreement. This letter agreement may be executed in one or more counterparts, each of which shall be deemed to be an original of this letter agreement and all of which, taken together, shall be deemed to constitute one and the same instrument. No such counterpart need contain the signatures of all Parties to this letter agreement and the exchange of signed counterparts by each of the Parties, including exchange by facsimile transmission or similar electronic means, shall constitute effective execution and delivery of this letter agreement.

17. <u>Term</u>. The obligations of each of the Parties under this letter agreement shall remain in effect for a period of two years from the date of its execution, except as otherwise stated herein.

*(The remainder of this page is intentionally left blank)*

CONFIDENTIAL

EXTREME-00008097

Please confirm your agreement with the foregoing by signing and returning one copy of this letter agreement to the undersigned, whereupon this letter agreement shall become a binding agreement between the Parties.

Very truly yours,

EXTREME NETWORKS, INC.

By: _____
Name: Katy Motley
Title: Chief Administrative Officer – HR, General Counsel & Secretary


Accepted and agreed as of the date first written above:

BROCADE COMMUNICATIONS SYSTEMS, INC.

By: _____
Name: Ellen A. O'Donnell
Title: Senior Vice President and General Counsel


BROADCOM CORPORATION

By: _____
Name: Thomas H. Krause, Jr.
Title: Chief Financial Officer

Case 3:20-cv-00451-CEA-DCP   Document 334-9   Filed 11/15/23   Page 10 of 11   PageID #: 14683
CONFIDENTIAL
EXTREME-00008098

Please confirm your agreement with the foregoing by signing and returning one copy of this letter agreement to the undersigned, whereupon this letter agreement shall become a binding agreement between the Parties.

Very truly yours,

EXTREME NETWORKS, INC.

By: *K. Motiey* (signature)
Name: Katy Motiey
Title: Chief Administrative Officer – HR, General Counsel & Secretary


Accepted and agreed as of the date first written above:

BROCADE COMMUNICATIONS SYSTEMS, INC.

By: _____
Name: Ellen A. O'Donnell
Title: Senior Vice President and General Counsel


BROADCOM CORPORATION

By: *(signature)*
Name: Thomas H. Krause, Jr.
Title: Chief Financial Officer

CONFIDENTIAL

EXTREME-00008099