# Exhibit 12

# IN THE UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., | § § § § § § § § § § § § § § § | Case No. 3:20-cv-00451-CEA-DCP |
| Plaintiffs, | | |
| v. | | **Jury Demand** |
| BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; AND EXTREME NETWORKS, INC., | | |
| Defendants. | | |

## PLAINTIFFS' POSITION STATEMENT RE EXTREME'S NEW PRIVILEGE ASSERTIONS

After Plaintiffs filed their September 1, 2023 Position Statement (herein the "Motion") Extreme asserted privilege as to additional Extreme/Brocade communications as well as communications between Extreme and another entity (Avaya). All of these privilege assertions lack merit, and Extreme should be ordered to disclose them.

**BACKGROUND:** On September 7, 2023, the day the Motion reply briefs were due, Extreme asserted privilege on the basis of common interest for the first time as to eight documents (mostly communications between Extreme and Brocade) it had produced long ago, claiming they were "inadvertently produced."[1] This included 3 emails (EXTREME-00693693, 00693891, and 00693860) that Extreme had *expressly referenced in a sworn interrogatory response (No. 8) just 30 days earlier,* which asked Extreme to "Identify all internal Communications in which there was any discussion or Communication whatsoever concerning: (1) whether Extreme had a right to use SNMP Research Software in Extreme Products, including but not limited to any particular Extreme Product; and (2) payment obligations of Extreme for the use of SNMP Research Software*."* Ex. 6.

Four days later, Extreme asserted privilege for the first time as to another eight documents it had previously produced, which included communications between Extreme and Brocade and between Extreme and Avaya. Nine days later, Extreme asserted privilege for the first time as to 101 more documents, 100 of which are between Extreme and Avaya and one is between Extreme and Brocade. Plaintiffs asked Extreme the basis for its assertion of "privilege" as to communications between it and Avaya, and during a September 20 meet and confer call, Extreme claimed the communications were protected by the common interest privilege. When Plaintiffs asked Extreme to identify the purported common interest agreement between it and Avaya, Extreme said it was still looking for it. Ex. 7.

As this Court was already addressing the common interest privilege issue, Plaintiffs raised the new privilege assertions with the Court on September 21, 2023, and on September 22, 2023, the Court issued a briefing schedule. Five days later, Extreme changed its position. Extreme now disclaimed any reliance on the common interest privilege as to the Extreme-Avaya communications, and instead asserted that: 1) Avaya's privilege for some of the documents "transferred" to Extreme due to an asset sale that had occurred (with Avaya as seller and Extreme as Buyer); and 2) the rest of the communications between Extreme and Avaya were privileged or work product because Avaya was acting as Extreme's "agent." *See* Ex. 8 at 4-5. Plaintiffs requested detailed information about the privilege assertion, including a log that identified each communication (rather than lumping many communications together). Extreme did not provide the itemized log requested, but did provide the purported basis for its broad assertions.[2]

**EXTREME-BROCADE EMAILS:** There are now a total of 22 emails between Extreme and Brocade that Extreme is claiming are protected by the common interest privilege.[3] For all of the reasons explained in Plaintiffs' Motion, which are incorporated herein by reference, Extreme's privilege assertion fails. As for Extreme's contention that its prior productions were "inadvertent" (as opposed to selective), Extreme would not provide any detail as to what the supposed accident was during the parties' meet and confer, and it was and is Extreme's burden to show that it is not engaged in selective disclosure. *See First Tech. v. JPMorgan*, 2013 WL 7800409, at *5 (E.D. Ky. Dec. 10, 2013) (party claiming inadvertence bears burden of proof); *see also Wolpert v. Branch Banking*, 2023 WL 2731083, at *6 (E.D. Tenn. Mar.

---

[1] Extreme's claw back notice (along with two others, discussed below) is at collective Ex. 5.

[2] The privilege log Extreme provided is at Ex. 9.

[3] **App. E** is excerpts of the privilege logs with disputed Extreme-Brocade log entries highlighted yellow.

30, 2023) (disclosure was selective, not "inadvertent"). Nor does Extreme's vague reference to "inadvertence" explain how Extreme "accidentally" identified three of the emails (EXTREME-00693693, 00693891, and 00693860) *in its verified response to Interrogatory 8* (its fourth amendment of the response after meet and confer over deficiencies in the prior amendments). In any event, the Court need never get to the issue of selective waiver, because the privilege fails for all of the other reasons set forth in the Motion. All of the withheld Extreme-Brocade communications should be ordered produced.

**EXTREME-AVAYA EMAILS**: Extreme admits that the only attorney-client communication(s) in the withheld Extreme-Avaya emails was between Avaya and its own lawyer (Richard Hamilton). However, Extreme contends that Avaya's privilege "transferred" to Extreme when Avaya sold certain of its assets to Extreme in 2017. *See* Ex. 8 at 1 (relying on *Lynx Services v. Horstman*, 2016 WL 4565895 (N.D. Ohio Sept. 1, 2016)). However, the relevant sale was an *asset* sale (*see* Ex. 10), and *Lynx* itself holds that the attorney client privilege is waived when an asset seller discloses its privileged communications to the asset buyer. *Lynx*, 2016 WL 4565898, *2-3; *see also Yosemite Inv. v. Floyd Bell, Inc.*, 943 F.Supp. 882, 883 (S.D. Ohio 1996). It also holds that the asset buyer has no standing to assert the asset seller's privilege. *Lynx*, 2016 WL 4565898, *3. So the only privilege that could be asserted here would have to be asserted by Avaya (not Extreme), and even if Avaya could have ever asserted it, the privilege was waived by Avaya's disclosure to Extreme.

According to Extreme, the rest of the Avaya/Extreme emails that Extreme is withholding are all emails between Extreme employees (who are not lawyers) and Avaya employees (who are not lawyers), that Extreme contends are instances in which Avaya employees were acting as Extreme's "agent." However, as noted above, there is no underlying, non-waived privileged email, so emails forwarding/discussing/etc. it cannot be privileged or protected. Setting aside that fundamental failing, Extreme's contention that Avaya was acting as its "agent" in connection with acting on privileged or work product communications is wrong. *See* Ex. 8 at 1 (relying on *Hosea Project Movers v. Waterfront Assocs.*, 2017 WL 4682384 (S.D. Ohio Oct. 18, 2017*)*. As *Hosea* explains, the privilege applies only "to agents of a lawyer who are employed in order to provide legal advice." *Id.* at *6. Avaya was not employed to provide legal advice. The only "agent" agreements that Extreme invokes (*see* Ex. 8 at 1) deal with a "limited agency" that has nothing to do with sharing attorney-client or work product communications.[4] Indeed, those agreements expressly carve out from their "limited" agency work any disclosure that would "result in the disclosure of information or materials subject to any applicable privilege (including the attorney-client or similar privilege)." Ex. 12 at § 1.3; *see also* Ex. 13 at § 1.8(a) ("Receiving Party shall not be required to provide any information or documentation if the provisions of such information or documentation would . . . result in the disclosure of information or materials subject to any applicable privilege[.]"). Instead, the "limited" agency work was for things such as "processing orders" and "delivering product." *See* Ex. 12 at EXTREME-01383271. Indeed, Section 5.02(c) of the Asset Purchase Agreement between Avaya and Extreme expressly called out that nothing obligated either party to "waive any legal or similar privileges" and that "each party shall use commercially reasonable efforts, including by entering into a joint defense or common interest agreement . . . to permit the disclosure of such information without causing any breach or waiver." Ex. 10. The problem for Extreme is, as it now admits, Extreme and Avaya never entered into any such agreement. All of the withheld Extreme-Brocade communications should be ordered produced.

---

[4] 59 of the Extreme-Avaya emails were also shared with Luxoft, a third party with which Extreme claims to have an agency relationship. *See* Ex. 8. However, the agreement with Luxoft is similarly silent regarding sharing attorney-client or work product communications. *See* Ex. 11.

**RESPECTFULLY SUBMITTED** this 5th day of October, 2023,

By: /s/ *John L. Wood*
    John L. Wood, Esq. (BPR #027642)
    Cheryl G. Rice, Esq. (BPR #021145)
    Rameen J. Nasrollahi, Esq. (BPR #033458)
    EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
    900 S. Gay Street, Suite 1400
    P.O. Box 2047
    Knoxville, TN 37902
    (865) 546-0500 (phone)
    (865) 525-5293 (facsimile)
    jwood@emlaw.com
    crice@emlaw.com
    rnasrollahi@emlaw.com

By: */s/ A. Matthew Ashley*
    A. Matthew Ashley (CA Bar. No. 198235)
    Morgan Chu (CA Bar. No. 70446)
    David Nimmer (CA Bar. No. 97170)
    Olivia L. Weber (CA Bar. No. 319918)
    IRELL & MANELLA LLP
    1800 Avenue of the Stars, Suite 900
    Los Angeles, California 90067-4276
    (310) 277-1010 (phone)
    (310) 203-7199 (facsimile)
    mchu@irell.com
    dnimmer@irell.com
    mashley@irell.com
    oweber@irell.com

    *Attorneys for Plaintiffs*
    *SNMP Research International, Inc. and*
    *SNMP Research, Inc.*