# Exhibit 23

| | | |
|---|---|---|
| **SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC.,** | § § § | **Case No. 3:20-cv-00451-CEA-DCP** |
| **Plaintiffs,** | § § | |
| v. | § § | |
| **BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; AND EXTREME NETWORKS, INC.,** | § § § § § | |
| **Defendants.** | § § § | |

# EXTREME'S RESPONSE BRIEF RE COMMON INTEREST COMMUNICATIONS[1]

---

[1] The citation to Email 12 (Privilege Log Entry #820) in SNMPR's Appendix C in incorrect. The correct citation to Email 12 is EXTREME-00708025, not EXTREME-00708205.

SNMPR does not dispute that the Brocade Communications were privileged when first sent. Brocade did not waive privilege by sending them to Extreme because the common interest doctrine applies; anticipation of litigation is not required and the parties shared a common legal interest. Neither Brocade nor Extreme waived privilege in any other way.

## I. The Common Interest Doctrine Applies

Contrary to SNMPR's argument, anticipated litigation is not required for the common interest doctrine to apply. As Extreme explained in its opening brief, *Adkisson* and *Boyd* are distinguishable *inter alia* because (as SNMPR itself recognizes) those two cases applied state law—not federal common law, which applies here. *Gammons v. Adroit Med. Sys., Inc.* relied on *Boyd* and did not decide a common interest issue since there was "no evidence . . . that Mr. Patten was seeking legal advice" at all. 2023 WL 2531479, at *4-5 (E.D. Tenn. Mar. 15, 2023) (citing *Boyd*). The other cases SNMPR cites require merely a common legal interest. *See Libbey Glass v. Oneida*, 197 F.R.D. 342, 348 (N.D. Ohio 1999) ("common interest doctrine does not encompass a joint business strategy");[2] *N. Am. Rescue v. Bound Tree*, 2010 WL 1873291, *4-5 (S.D. Ohio May 10, 2010) ("parties must have a common legal, as opposed to commercial, interest").

That requirement is met here since Extreme and Broadcom shared a common legal interest in ensuring that Extreme had the necessary licenses to the Brocade Business. (Extreme Br. at 1.) SNMPR argues that neither the parties' confidentiality agreement nor their Asset Purchase Agreement "involve[] anything other than common *business* interests." (SNMPR Br. at 4.) But that misses the point. The agreements establish that the parties had a common goal: to proceed with the Brocade Business acquisition and keep their communications confidential. *See, e.g.*, *Fresenius Med. Care Holdings, Inc. v. Roxane Lab'ys, Inc.*, 2007 WL 895059, at *3 (S.D. Ohio Mar. 21, 2007) (considering whether parties had a common interest as a result of purchase agreement). In addition to the parties' common business interest, they also had a related and relatively narrow set of common *legal* interests, including a mutual understanding of the licensing rights associated with the business being purchased. The communications themselves—in response to SNMPR's outside counsel's email announcing that the 2001 License could not be assigned to Extreme—show that shared legal interest. That Extreme and Brocade also shared a commercial interest is irrelevant: even if "both commercial and legal interests are intertwined, the legal interest is sufficient to establish the legal requisite community of interest." *Id.*; *Dura Glob. Techs., Inc. v. Magna Donnelly Corp.*, 2008 WL 2217682, at *3 (E.D. Mich. May 27, 2008), objections overruled, 2008 WL 2695668 (E.D. Mich. July 2, 2008) (overlap between legal issues and larger business venture "does not 'negate the effect of the legal interest in establishing a community of interest'").

*Libbey* is inapposite. There, Oneida received legal advice regarding the consequences of its planned purchase from Pasabahce of glassware that Libbey claimed infringed its trade dress, and shared that advice with Pasabahce during the negotiation of a supplier agreement. The court found the common interest doctrine inapplicable since "only Oneida involved an attorney directly"; Oneida took no steps "to ensure that the privileged communications . . . would remain confidential"; and Oneida shared the privileged communications to seek "commercial gain, not legal advantage." *Libbey Glass, Inc.*, 197 F.R.D. at 348. Here, Extreme and Brocade took steps to ensure confidentiality by entering into multiple confidentiality agreements (Exs. C-E); the disputed communications were between attorneys (Fitterer from Brocade and Sipes from Extreme); and Brocade shared them to facilitate the parties' legal

---

[2] In fact, *Libbey* recognized the same three instances of common interest identified in Extreme's brief, *see* 197 F.R.D. at 347 (discussing "joint client," "joint litigant," and "common interest" arrangement)—the third of which exists outside the litigation context (Extreme Br. at 2-3.)

evaluation of Brocade's contracts. (Brocade Decl. ¶ 4; *see Dura*, 2008 WL 2217682, at *2-3 (common interest applied where communications were between attorneys, parties took steps to keep them confidential, and they dealt with intellectual property issues).)

## II. There Was No Privilege Waiver

**Neither Brocade Nor Extreme Waived the Underlying Privilege.** SNMPR's argument that Brocade waived privileged by failing to log the Brocade Communications—despite not having them—makes no sense. (Extreme Br. at 2.) While SNMPR argues Brocade should have logged the communications because Extreme logged them, a party "does not have to log those documents that it does not have the power to produce itself, since it cannot be compelled to produce them." *Weber v. Paduano*, 2003 WL 161340, at *12 (S.D.N.Y. Jan. 22, 2003) (no waiver where party did not log documents in possession of other parties). SNMPR's suggestion that Brocade (who is no longer a party) may have improperly destroyed the communications is pure conjecture, and SNMPR does not explain how—even if true—that would result in waiver. Finally, SNMPR identifies no documents to support its suggestion that Extreme waived privilege by selectively producing other privileged documents.[4] (SNMPR Br. at 3.) To the extent SNMPR does identify any documents to support its purported selective waiver argument, Extreme reserves the right to respond.

**Extreme Did Not Waive the Common Interest Doctrine by Not Logging It.** Extreme added the common interest doctrine to its log in response to SNMPR's claim that any "privilege was waived when the communications were shared with Extreme" (SNMPR Br. at 1) and request for further detail. That Extreme did not invoke the doctrine in its initial log is irrelevant. As SNMPR notes, "[t]he 'common interest privilege' is not actually a privilege, it is a doctrine that permits sharing of attorney-client privileged material in certain circumstances." (SNMPR Br. at 3.) Thus, Extreme was not required to include it on its log. *See DC Comics v. Pac. Pictures Corp.*, 2012 WL 12878651, at *1 (C.D. Cal. Feb. 15, 2012) (rejecting argument that defendants waived common interest privilege because they invoked only the attorney-client privilege); *Zurich Am. Ins. Co. v. Keating Bldg. Corp.*, 2006 WL 8457156, at *5 (D.N.J. Dec. 29, 2006) ("failure to assert 'common interest' on the log does not waive the privilege"); *Kamatani v. BenQ Inc*., 2006 WL 47554, at *4 (E.D. Tex. Jan. 6, 2006) (no waiver where log clearly indicated that communications marked "attorney client privilege" were between different parties and thus "would require a common-interest privilege in order to be protected").[5]

---

[4] Without ever raising the issue during meet and confer, SNMPR argues for the first time in its opening brief that Extreme waived privilege through selective waiver. (SNMR Br. at 4.) As SNMPR identified no purported evidence of selective waiver and had not previously notified Extreme of any inadvertently produced privileged documents (ECF No. 93, ¶ 51 (*inter alia*, requiring party receiving information that it believes may be subject to privilege to promptly identify the information to the designating party), Extreme searched its productions upon receiving SNMPR's brief and found a handful of inadvertently produced privileged documents. Extreme immediately clawed them back pursuant to the Protective Order. (*Id.*)

[5] *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont*. is inapposite; the court found waiver because the log was late. 408 F.3d 1142, 1149 (9th Cir. 2005). Here, Extreme's log was not late; contrary to SNMPR's suggestion, there was no May 2022 log deadline, and Extreme was diligent in preparing its log and informing SNMPR about its anticipated service date. In contrast, SNMPR did not provide a compliant log until March 2023, after months of prodding from Extreme.

DATED: September 7, 2023

Respectfully Submitted,

*/s/ John M. Neukom*

Charles B. Lee, BPR# 011570
Jessica Malloy-Thorpe, BPR# 035234
Jordan B. Scott, BPR# 037795
MILLER & MARTIN, PLLC
832 Georgia Avenue
1200 Volunteer Building
Chattanooga, Tennessee 37402
Tel: (423) 756-6600
Fax: (423) 785-8293
clee@millermartin.com
jessica.malloy-thorpe@millermartin.com
jordan.scott@millermartin.com

John M. Neukom (*admitted pro hac vice*)
Abraham A. Tabaie (*admitted pro hac vice*)
Barbara N. Barath (*admitted pro hac vice*)
Saurabh Prabhakar (*admitted pro hac vice*)
Alicia J. Ginsberg (*admitted pro hac vice*)
DEBEVOISE & PLIMPTON LLP
650 California Street
San Francisco, California 94108
jneukom@debevoise.com
atabaie@debevoise.com
bnbarath@debevoise.com
sprabhakar@debevoise.com
ajginsberg@debevoise.com
(415) 738-5700

Leslie A. Demers (*admitted pro hac vice*)
SKADDEN, ARPS, SLATE,
 MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
leslie.demers@skadden.com
(212) 735-3000

*Attorneys for Extreme Networks, Inc.*