# Exhibit 24

# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., | § § § | Case No. 3:20-cv-00451-CEA-DCP |
| Plaintiffs, | § § | |
| v. | § § | |
| BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; AND EXTREME NETWORKS, INC., | § § § § | |
| Defendants. | § § § | |

### EXTREME'S RESPONSE TO PLAINTIFFS' POSITION STATEMENT RE: EXTREME'S NEW PRIVILEGE ASSERTIONS

**Extreme-Brocade Communications.** This latest dispute over nine additional Extreme-Brocade emails is a waste of Court resources, because Extreme has already agreed that its privilege claim over these emails will rise and fall with the Court's ruling on the already-pending motion on the common interest doctrine.

SNMPR's argument that the Court should find a waiver by Extreme for having clawed back inadvertently produced privileged documents violates the Protective Order ("PO"). The PO, when addressing claw-backs, states: "[n]o one shall use the fact or circumstances of production of the information . . . to argue that any privilege or protection has been waived." ECF No. 93, ¶ 51. The PO also states "[t]he production . . . of any . . . documents . . . that a Designating Party later claims should have not been produced due to a privilege . . . shall not be deemed to waive any such privilege . . . nor shall it prejudice any claim that the disclosed or related information is privileged." *Id.* **SNMPR drafted** that provision (*see* Ex. A), it was then agreed to by the parties, and then ordered by the Court. In any event, Extreme inadvertently produced the nine Extreme-Brocade emails, which does not waive privilege. *See Wolpert v. Branch Banking Tr. & Co.*, 2023 WL 2731083, at *4-5 (E.D. Tenn. Mar. 30, 2023) (citing Fed. R. Evid. 502(b)(1)). These emails were produced with voluminous productions; eight were produced along with 14,250 documents comprising 190,428 pages, and a ninth was a single page in a production of 1,611 documents comprising 20,989 pages. *See id.* at *8. Extreme clawed back these emails within a week of first learning about their possible disclosure in SNMPR's September 1 submission.[1] Def.'s Resp. Re. Common Interest 9/7/23 at 2 n.4.

Extreme also did not waive its privilege by selective disclosure. Courts find waiver by selective disclosure to prevent unfairness when a party intentionally discloses selected privileged documents to use affirmatively while privilege-shielding other documents about the same subject matter. *See Wolpert*, 2023 WL 2731083, at *9. Extreme did not selectively disclose three emails by citing them in its interrogatory response[2] "because referencing [a document by] the bates numbers is not an independent disclosure of the actual document" that waives privilege. *See Synopsys, Inc. v. Siemens Indus. Software Inc.*, 2023 U.S. Dist. LEXIS 169557, *4 (N.D. Cal. Sept. 22, 2023). Extreme did not produce the nine emails intentionally or use them in a court filing to gain an advantage in this case. SNMPR cannot identify any unfairness because there is none. Therefore, SNMPR's claims that Extreme waived privilege over these communications are wrong and violate the PO. Whatever way the Court rules on the earlier set of Extreme-Brocade communications should apply here.

**Extreme-Avaya Communications.** For the communications prior to Extreme's acquisition of Avaya, the attorney-client privilege Avaya held transferred to Extreme along with its business. Courts in this Circuit and across the country—including those cited by SNMPR—agree that while privilege might not transfer when a company merely purchases the assets of another, it certainly does in a transaction that "involves the transfer of control or management." *See e.g.*, *Lynx Servs. Ltd. v. Horstman*, 2016 WL 4565895, at *2 (N.D. Ohio Sept. 1, 2016). Whether a particular transaction involved a transfer of control depends on "the practical consequences rather than the formalities" of the transaction. *Soverain Software LLC v. Gap, Inc.*, 340 F. Supp. 2d 760, 763 (E.D. Tex. 2004) (cleaned up). "If the practical consequences of the transaction result in the transfer of control of the business and the continuation of the business

---

[1] Under the PO, at least as of May 8, 2023 when SNMPR became aware that Extreme believed these Extreme-Brocade emails were privileged, it was duty bound to inform Extreme about them; it shouldn't have used them offensively. *See* PO ¶ 51.

[2] Extreme has since updated its response to delete the cites to the clawed back emails.

1

under new management, the authority to assert or waive the attorney-client privilege will follow as well." *Id.* The cases SNMPR cites are not to the contrary: both recognize that attorney-client privilege transfers in acquisitions. *See Yosemite Inv., Inc. v. Floyd Bell, Inc.*, 943 F. Supp. 882, 883 (S.D. Ohio 1996); *Lynx*, 2016 WL 4565895, at *2. Here, the Extreme-Avaya Purchase Agreement makes clear that the practical consequence of the transaction was to transfer Avaya's entire networking business to Extreme. Avaya and Extreme agreed to transfer not just Avaya's assets, but also the majority of Avaya's employees, who were guaranteed "continuity of employment"; Avaya's existing customers and customer records; leases, equipment, and intellectual property; existing permits, goodwill, and business accounts; and existing and ongoing contracts. *See* Ex. C at ¶¶ 1.03, 1.05, 3, 6. Simply put, Extreme "acquired" Avaya's networking business, not just its assets. *Cf. Parus Holdings, Inc. v. Banner & Witcoff, Ltd.*, 585 F. Supp. 2d 995, 1002–03 (N.D. Ill. 2008) (acquisition where "entire division" of company was transferred, including employees).

**The Post-Acquisition Avaya-Related Communications Are Also Protected.** Extreme's assertion of privilege over communications between Extreme and Avaya employees following the acquisition rests on basic agency principles. As SNMPR recognizes, attorney-client privilege applies to agents of the client, if the communications are in connection with legal advice. *Oro BRC4, LLC v. Silvertree Apartments, Inc.*, 2023 WL 2785743, at *5 (S.D. Ohio Feb. 10, 2023). It is also well-established that communications among non-attorneys can be privileged "if made at the direction of counsel, to gather information to aid counsel in providing legal services." *Adkisson v. Jacobs Eng'g Grp., Inc.*, 2021 WL 149841, at *5 (E.D. Tenn. Jan. 15, 2021) (citation omitted); *see also McCall v. Procter & Gamble Co.*, 2019 WL 3997375, at *4-5 (S.D. Ohio Aug. 22, 2019) (non-legal employees gathering information to assess possible copyright claims).

Here, after the Avaya acquisition closed, Avaya and Luxoft continued to act as Extreme's agents. Ex. D; Exs. E-1 ¶¶ 2, 5; E-2; E-3 ¶ C; E-4 ¶¶ 2-3. Each agent acted within the scope of its agency agreement with Extreme: Avaya and Luxoft both had responsibilities related to Avaya software that was transferred to Extreme, and both agents, with the involvement of Avaya's counsel Richard Hamilton, facilitated the rendering and implementation of legal advice related to that software. *Cf. Graff v. Haverhill N. Coke Co.*, 2012 WL 5495514, at *7 (S.D. Ohio Nov. 13, 2012) ("The attorney-client privilege extends to factual investigations conducted by an attorney at the request of the corporate client for purposes of providing legal advice to the corporate client."). The communications over which Extreme asserts privileged were between Extreme and its agents and were necessary to provide legal advice.[3] Extreme has lawfully withheld them.

//

//

//

//

//

---

[3] Extreme has consistently asserted attorney-client privilege and work product doctrine over the Avaya communications in its privilege logs. *See* Ex. B (Entry Nos. 1331-1337); Ex. F (Entry Nos. 1338-1430).

2

DATED:   October 12, 2023

Respectfully Submitted,

*/s/ John M. Neukom*

Charles B. Lee, BPR# 011570
Jessica Malloy-Thorpe, BPR# 035234
Jordan B. Scott, BPR# 037795
MILLER & MARTIN, PLLC
832 Georgia Avenue
1200 Volunteer Building
Chattanooga, Tennessee 37402
Tel:  (423) 756-6600
Fax:  (423) 785-8293
clee@millermartin.com
jessica.malloy-thorpe@millermartin.com
jordan.scott@millermartin.com

John M. Neukom (*admitted pro hac vice*)
Abraham A. Tabaie (*admitted pro hac vice*)
Barbara N. Barath (*admitted pro hac vice*)
Saurabh Prabhakar (*admitted pro hac vice*)
Alicia J. Ginsberg (*admitted pro hac vice*)
DEBEVOISE & PLIMPTON LLP
650 California Street
San Francisco, California 94108
jneukom@debevoise.com
atabaie@debevoise.com
bnbarath@debevoise.com
sprabhakar@debevoise.com
ajginsberg@debevoise.com
(415) 738-5700

Leslie A. Demers (*admitted pro hac vice*)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
leslie.demers@skadden.com
(212) 735-3000

*Attorneys for Extreme Networks, Inc.*

3