# EXHIBIT M



**Debevoise & Plimpton LLP**
650 California Street
San Francisco, CA 94108
+1 415 738 5700

July 17, 2023

Olivia Weber
Irell & Manella LLP
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
oweber@irell.com

Re: *SNMP Research Inc., et al. v. Broadcom Inc., et al.,*
     *Case No. 3:20-cv-00451.*

Dear Olivia:

We write in response to SNMPR's July 11, 2023 email about discovery in this case. We appreciate SNMPR's willingness to give Extreme more time to respond to its requests. We have been actively gathering the information or answers that you have requested. As we informed you previously that Extreme had a quarter closing at the end of June and with the July 4th holidays many relevant employees were unavailable. Therefore, it has taken some time to get the answers to your questions. Please find responses to your requests below:

**Financials**

On EXOS and EOS financials prior to 2004, we note that the spreadsheet (produced with bates number EXT-00722451) contains data from Extreme's *Financial Year* 2004, which actually begins in July 2003. After conducting a reasonable investigation, we confirm that Extreme does not have EXOS and EOS financials prior to FY 2004. Information prior to FY 2004 for EXOS and EOS products is neither in the database from where the information contained in the spreadsheet was populated nor in another location. It is not the case, as you inquire, that previous year sales were not tagged as EXOS or EOS in the database. The EXOS line of products was first released in February 2004 and the EOS products came from the Enterasys acquisition in 2013.

For supplementation of Extreme's financials, we are generally in agreement with your timeline except for supplementation at the end of each financial year and after the trial. We will agree to supplement once at the end of the current financial year, 60 days before expert reports are due, and 60 days before trial. At this time, we cannot commit to supplement after the trial. But if necessary based on the posture of the case, we will not refuse to supplement.

www.debevoise.com

Your remaining questions about the financial documents are substantive questions about those documents. Your questions are appropriate topics for a deposition or an interrogatory, but not for discovery correspondence. In the spirit of cooperation, we have answered narrow and ministerial questions about the form of the documents, like providing definitions of certain fields. But we cannot engage in substantive discussions about the contents of the documents outside of a deposition or interrogatory response. To the extent your question is about blanks, we can confirm that the blanks exist in the database as it is maintained in the ordinary course of business.

**Product/Software/Shipment Correlation**

We can confirm that Extreme maintains some information about downloads of software from its support websites. We are collecting the information as it is maintained in the ordinary course of business. We will produce the collected information and update our responses to the interrogatories that seek this kind of information.

**RFAs**

Extreme will provide a supplementation to its RFA responses identified in SNMPR's fall motion to compel. To be clear, we will not supplement responses to RFAs 38-43 based on SNMPR's admission that these are no longer necessary. We expect to provide the supplementation during the week of July 17.

**Second Set of RFIs**

At this time Extreme is unwilling to produce the latest version of ExtremeCloud IQ product in response to your second set of RFIs for the following reasons:

During the meet and confer, plaintiffs confirmed that Extreme's monitoring solutions are not accused products in the case. Therefore, SNMPR did not articulate any relevance of the monitoring solution to the liability issues. SNMPR claimed that it intends to use the monitoring solution to monitor the number of times SNMP is called in a network. (Although not expressly discussed, we understand this network that SNMPR referred to would be set up using the products Extreme will provide to SNMPR in response to RFI Set One.) SNMPR explained that this exercise is relevant to damages. We explained that there are free monitoring solutions, like WhatsUp Gold, that are available to SNMPR for the purpose of this exercise. SNMPR stated that it wants to use Extreme's solution only because that is what Extreme's customers presumably use. We agreed to discuss SNMPR's position with Extreme.

Upon further investigation, we have found that Extreme's monitoring solutions have little to no relevance to this case because a majority of Extreme's clients, almost three-fourths of them, do not use Extreme's monitoring solutions. They use monitoring software from other vendors, like SolarWinds. The low usage of

Extreme's solutions by its own customers further diminishes the already diminutive relevance of this solution to this case. We reiterate that free solutions, like WhatsUp Gold and other free solutions identified at the following URL https://www.comparitech.com/net-admin/network-server-application-mon-smbs/ are available to SNMPR for experiments that SNMPR's counsel or experts may wish to pursue.

Any remaining relevance of Extreme's monitoring solution is outweighed by the burden on Extreme in providing plaintiffs access to Extreme's Cloud IQ monitoring solution. First, SNMPR likely would require Extreme's assistance in getting the solution to work with the network SNMPR builds with the switches that Extreme will provide. Besides taking Extreme's support staff's time away from customer issues, under FRCP 34, Extreme has no obligations to provide support to setup the product beyond making ExtremeCloud IQ available for inspection to SNMPR. Additionally, ExtremeCloud IQ runs as a service on Amazon web services platform and Extreme has to pay Amazon for use of their cloud. If SNMPR uses the ExtremeCloud IQ service, Extreme will have to foot the bill. For at least these reasons, it is unduly burdensome for Extreme to provide a monitoring solution when SNMPR can simply download a free solution from the Internet to achieve its goals and the free solution does not impose any burden on Extreme.

In view of this information, to the extent SNMPR still contends that it cannot use the free monitoring solutions available to them, please articulate why SNMPR needs Extreme's monitoring solutions when (a) those solutions are not used by a majority of Extreme's customers and (b) supplying those solution would impose an undue burden on Extreme. Extreme is willing to reconsider its position based on SNMPR's explanation.

## Install Images

We do not agree that the parties necessarily have a dispute over the production of install images. Rather, the parties are close to an agreement on providing Plaintiffs access to seven Extreme products that will contain installed images of SLX-OS, NOS, EXOS, and EOS. Also, the parties are close to filing a stipulation on build environment(s) for SLX and VDX products that would obviate the need for install images. Extreme is willing to consider negotiating a similar stipulation for its EXOS and EOS products.

Please let us know if access to Extreme products and stipulations regarding build environment will resolve this issue.

## Resolved Issues

We confirm the list of resolved issues and appreciate SNMPR's willingness to work with us.

Very truly yours,

*/s/ Saurabh Prabhakar*
Saurabh Prabhakar