<pre>
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF TENNESSEE
 2                   AT KNOXVILLE, TENNESSEE
   _____
 3                                  )
   SNMP RESEARCH, INC. and SNMP     )
 4 RESEARCH INTERNATIONAL, INC.,    )
                                    )
 5              Plaintiffs,         )
                                    )
 6 vs.                              ) Case No. 3:20-cv-451
                                    )
 7 EXTREME NETWORKS,                )
                                    )
 8              Defendant.          )
   _____ )
 9

10      ELECTRONICALLY-RECORDED DISCOVERY CONFERENCE
           BEFORE THE HONORABLE DEBRA C. POPLIN

11              Thursday, December 21, 2023
                  11:00 a.m. to 11:39 a.m.
12

13 APPEARANCES:


14         ON BEHALF OF THE PLAINTIFFS:


15         ALVIN MATTHEW ASHLEY, ESQ.
           IRELL & MANELLA, LLP
16         1800 Avenue of the Stars
           Suite 900
17         Los Angeles, CA 90067


18         JOHN L. WOOD, ESQ.
           EGERTON, MC AFEE, ARMISTEAD & DAVIS, PC
19         P.O. Box 2047
           Knoxville, TN 37901-2047
20

21

22

23 TRANSCRIBED BY:


24 Teresa S. Grandchamp, RMR, CRR
   P.O. Box 1362
25 Knoxville, Tennessee 37901
   (865) 244-0454
</pre>

1    **APPEARANCES:** (Continued)

2            **ON BEHALF OF THE DEFENDANT:**

3            ABRAHAM TABAIE, ESQ.
             SAURABH PRABHAKAR, ESQ.
4            DEBEVOISE & PLIMPTON, LLP
             650 California Street
5            San Francisco, CA 94108

6            JESSICA MALLOY-THORPE, ESQ.
             MILLER & MARTIN, PLLC (Chattanooga)
7            832 Georgia Avenue
             1200 Volunteer Building
8            Chattanooga, TN 37402

9                    * * * * * * * *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          THE COURT:  All right.  Good morning.  This is

2    Judge Poplin.

3          So, we are here to address a recent e-mail sent

4    to chambers, and this is addressing the 30(b)(6) Notice,

5    and I want to find out what the current status is.  What

6    it appears from the communications sent to chambers was

7    that the parties were addressing the number of topics

8    and had several meet and confers to address those, and

9    then also trying to set a particular date.  The initial

10   date was November 17th as a placeholder, and then there

11   was to be discussions about setting the deposition in

12   mid January.

13         So, I -- the last correspondence received, I

14   believe, was from Mr. Lee, and I understand he is not on

15   the line.  So, let me ask:  Who from Extreme will be

16   addressing the current status?

17         MR. TABAIE:  This is Abraham Tabaie, Your

18   Honor.

19         THE COURT:  All right.  Mr. Tabaie, what is the

20   current status from Extreme's perspective?

21         MR. TABAIE:  Sure.  Thank you, Your Honor.

22         So, the current status from Extreme's

23   perspective, we finished meeting and conferring on the

24   topics.  Yesterday we informed -- and after that, we

25   went back to our client to go over SNMPR's positions,

```
 1    and we informed SNMPR that we're in agreement on 19
 2    topics and not in agreement on 21.  And then SNMPR
 3    responded and noted that they were okay with two other
 4    topics as we had limited it.
 5          So, as of right now, there isn't -- we met and
 6    conferred successfully and have agreed on 21 of the
 7    topics, and there is 19 still in dispute.
 8          That meet and confer process was long.  There
 9    were five different sessions and, in total, with over
10    six hours.  That finished in December, on December 12th.
11          We are now -- we now have a dispute about the
12    topics.  We don't know how many topics are in dispute
13    because -- and not as a criticism because we sent the
14    e-mail to them yesterday, but we had not heard back from
15    SNMPR about which topics they're willing to drop.  We
16    don't know if it's 19 or some other amount.
17          But we have an issue where we have presumably a
18    handful or a number of topics that either are going to
19    be dropped by SNMPR or that are going to require the
20    Court's input to determine whether they're proper topics
21    that need to be adjudicated.
22          And we don't think we're being nitpicky here.
23    Your Honor, one of the topics is the complete basis for
24    all of the affirmative defenses.  And, so, you know,
25    these are the kind of topics that we don't think are
```

1    reasonably particular.

2          And, so, we're in a position now, we're trying

3    to go identify potential dates for depositions for the

4    topics that we've agreed to, and we're working on that

5    very diligently.

6          We had told -- before they reached out to the

7    Court, we had told SNMPR that we would get them proposed

8    dates for the topics that we agreed to by tomorrow.  Our

9    inhouse counsel has been sick since the 16th of

10   December, and, so, we are trying diligently to do that.

11         So, we are in a position where we proposed that

12   timeline to SNMPR, and they decided to go to court

13   instead of work with us a few more days to get proposed

14   dates.

15         We think we're going to be able to start this

16   deposition process in mid January with some of the

17   topics, but we have five or six witnesses that we're

18   going to need to identify just to cover the topics that

19   we've agreed to.

20         At least one of those witnesses is on a

21   once-in-a-lifetime trip to Cambodia and Vietnam in

22   January.  And, so, we just need a couple more days to

23   provide proposed dates for these witnesses on the topics

24   that we've agreed to.

25         And then there is the separate issue of we need

1  to figure out a way to adjudicate the topics of which

2  there is disagreement.  And we have some proposals for

3  that, but I think that's getting ahead of it.

4          THE COURT:  Okay.

5          MR. TABAIE:  I'll stop there.

6          THE COURT:  Okay.  Let me ask this question:

7  On the topics that you have been able to reach

8  agreement, so, those -- that number is 21 -- you say

9  that you are working towards deposition dates for the

10 witnesses on those particular topics for mid January;

11 correct?

12         MR. TABAIE:  No, Your Honor.  We are -- we

13 think those are going to begin in mid January.  We can

14 see ourselves having one or two depositions starting

15 around the 15th.

16         But we do think that for some of these topics,

17 especially some of the topics that are going to require

18 significant, significant prep for, that those

19 depositions would be in February.  And not -- we're not

20 talking about February 27th; we're just talking about

21 the first half of February is what we're aiming for,

22 depending on witness availability.

23         THE COURT:  Okay.  And based on the agreed-upon

24 topics, Extreme has identified five to six potential

25 witnesses for those topics; is that correct?

1          MR. TABAIE:  That's correct.  That's right.

2          THE COURT:  Okay.  And one of the five or six

3    is going to be on a trip in January?

4          MR. TABAIE:  That's what we've been able to

5    identify thus far.  It's the holidays.  We just

6    agreed -- we just agreed on these topics yesterday, but

7    we had been working for days to figure out availability.

8    It's just difficult.

9          These topics are not the kind of thing where

10   one person just has the knowledge and they're looking

11   for the person that knows the most.  They're going to

12   require preparation for those folks to get prepared.

13   And, so, you know, with -- it's been some work

14   identifying topics for that.

15         And I've just been reminded that we're

16   definitely going to have more than one or two or a few

17   limited, but we're still -- we're still identifying the

18   exact number.  So, that's a correction on my part.

19         THE COURT:  Okay.  Thank you.

20         All right.  Mr. Wood, what is the status from

21   plaintiffs' perspective?

22         MR. WOOD:  Thank you, Your Honor.  Mr. Ashley

23   is going to be addressing our side of the argument.

24         THE COURT:  All right.  Mr. Ashley.

25         MR. ASHLEY:  So, first of all, thank you, Your

1   Honor, for having this hearing on short notice.

2           With respect to the 30(b)(6), what we -- what

3   we want and what we need is actual dates, and we do need

4   them around mid January. We don't want this to bleed

5   into February.

6           You know, we noticed this depo at the end of

7   October. We told them then, let's start securing dates.

8   We can keep meeting and conferring, but we need to start

9   securing dates for marketing people, financial people,

10   because they do fill up.

11           You know, our request that they have -- we have

12   depos taking place by January 15th, that's

13   two-and-a-half months after we served this notice. So,

14   we think that request is reasonable. And, you know,

15   this is not something that should have come as a

16   surprise to Extreme.

17           And the predicament that we face without

18   dates -- and you're still not hearing actual dates or

19   actual witnesses. The predicament that we face is:

20   This is going to be a heavy expert case. I think the

21   parties have indicated to the Court on multiple

22   occasions they're expecting ten or more total. We

23   expect to have five or more. And obviously the other

24   side's corporate depo provides key foundational

25   information for that work. And these experts aren't

doing isolated work.  I mean, some are considering the
work of others.  So, it takes a lot of coordination and
a lot of time.  And that's why we noticed this back in
October.

          And we would have noticed it even earlier, but
you might remember we had some trouble getting Extreme
to comply with some discovery requests and prior court
orders.  We had to move on ten issues in the fall, and
it wasn't until we moved that we finally got some
traction with Extreme.  So, that put us behind.  You add
on top of that that they would not give us any dates,
not even placeholder dates.  It's not like they don't
know who their financial people are and their marketing
people are.  So, we're in this predicament.

          And it really affects plaintiffs the most
because we have opening reports due April 2nd, which,
you know, even at mid January, that would be, like,
two-and-a-half months to take all these depos, get the
foundational information, figure out how it affects
experts, how it might affect what they can opine as to
and how they do it, and that's not enough time, and it
affects us asymmetrically.

          So, we do think that they should have to
produce in January.  We think they can do that.  There
may be one witness that is out of the country.  I would

1  want to know when they were out of the country in

2  January, the actual dates, but I'd also want to know why

3  they have to be the witness.  This is a corporate

4  designee.  So, it seems to me they should be able to

5  provide hard dates.

6       Now, if they want a couple more days to do

7  that, I suppose that's okay.  But I think they should

8  have to report to the Court those dates, or at least

9  report to us.

10      You know, they say that we jumped the gun in

11  asking for this call, but they never said they were

12  going to give us dates.  What they said was they would

13  give us their response.

14      And, so, we have been asking for dates for a

15  long time.  I think this is a problem of Extreme's own

16  making and I think they should have to fix it.

17      We respectfully request that you order them to

18  give actual dates, at least for the topics already

19  agreed on.  We can talk about the other topics, you

20  know, as well.  But at least for those topics, they

21  should have to give dates.  They should have to give

22  them in January.

23      And we really do need to, you know, extend our

24  date for the opening report deadline to the same as

25  their date.  We -- you know, it's just 28 days.  We

1  think, you know, at this point, we're looking at, you

2  know, three-and-a-half months after we noticed their

3  depo that we finally get somebody.  We shouldn't have

4  had to anticipate that.

5       And it's no prejudice to Extreme.  We're not

6  asking them to change one of their deadlines.  We're

7  just moving our deadline up to theirs so it's

8  simultaneous openings, simultaneous rebuttal, which is

9  what the federal rules provide by default.  It's

10  actually what Extreme itself suggested to the Court in

11  the very first 26(f) report.

12       So, that will help us a little bit, but I still

13  think if they -- if they're not required to give actual

14  dates now, we're -- it's just going to drag this process

15  out again.  And we don't want to lose our trial date.

16  We don't think the district court is in any mood to

17  change the trial date again.

18       And, so, I just think, you know, specific dates

19  for the depo and moving our reports to the same deadline

20  as theirs, I think that's going to have another effect,

21  which is going to -- it's going to reduce the delays

22  going forward when both sides face the same risk from

23  delays.  So, we would ask that Your Honor order that,

24  too.

25       THE COURT:  Okay.  Thank you.

1    All right.  We do need to keep this case on

2  track and get everything completed so that you can move

3  to your trial date.

4    So, what I would like to do is to ask Extreme,

5  if you will try to come to your identified witnesses for

6  the 21 topics that are currently agreed on and work

7  diligently in securing some dates in mid January.  And I

8  would like to have a joint statement from the parties by

9  next Thursday, which will be the 28th, advising as to

10  the witness and the dates for the deposition.

11    I want the parties to continue to work on the

12  topics that are in dispute and work towards getting that

13  completed, along with the identification of witnesses

14  for those topics.  I would like that to be included,

15  what your efforts are in that regard, in that joint

16  report to the Court on the 28th.

17    In working towards that, if it does look like

18  that is going to impact the opening report dates of

19  April, I want you to meet and confer on that and submit

20  a joint motion if that's agreed upon.  If not, I do want

21  you to contact my chambers and I'll get you back on the

22  call to discuss that as well.

23    But I'm not certain at this point, without

24  hearing what the deposition dates are and the

25  availability of witnesses, whether that needs to be

addressed at this moment.  But I do understand that it
could become something that needs to be addressed in
January.  So, please continue to discuss that and try to
reach some agreement.  And, again, that would need to be
under a joint motion.  So, that is the deadline set in
the scheduling order.

MR. TABAIE:  Your Honor, may I make two points
of clarification or requests regarding that?

THE COURT:  Yes.

MR. TABAIE:  The first concern I have is:  You
know, we're already going to be putting up a number of
witnesses for this 30(b)(6).  There are likely going to
be, you know, ruling on the objections to topics, and
these topics are very broad and very burnt and brush
tipped to prepare for.

It would be very difficult for us to agree to
dates and then have a ruling maybe a couple days or a
few days before, or even a week before that deposition,
that some of these other topics are appropriate for
testimony.

And, so -- so, to us, on our side, it's -- it's
hard to not -- to plan out our deposition planning
without having certainty on what the topics are.

And, so, is there a way we can put in place a
process for adjudicating these objections to topics?

1   And we've met and conferred.  It appears we have a

2   dispute about these other topics.  And, in the meantime,

3   we'll get dates, but with enough time so that we can

4   prepare folks on the topics that Your Honor rules are

5   appropriate 30(b)(6) topics.  So, that's point one.

6           And then point two is:  You know, in talking to

7   folks, I don't think -- and in looking at our own

8   availability, I don't think we're going to be able to

9   provide dates in mid January for all of our witnesses,

10  or even, you know, all but one who is traveling.  And,

11  so, can I ask for a little flexibility on the mid

12  January piece of this?

13          THE COURT:  Well, what I would like to see as

14  to that point, on the 28th, I would like to see that you

15  have talked to the witnesses and you have identified

16  some dates.  If they are not in mid January, you know,

17  an explanation of why it needs to be at a later time.

18          And, again, this is a joint statement.  So,

19  this will require you to have the discussions with

20  Mr. Wood, explain to him, and then that be in the joint

21  statement to the Court.  Are persons traveling, or due

22  to schedule -- your schedule and that of the witness,

23  you do not have sufficient time to prep the witness;

24  whatever the reason is, I would like to see that noted

25  and know that the parties have had a discussion about

1   that.

2           And right now, it sounds like, with there just

3   being agreement on 21 topics, that's what I was trying

4   to get you to go ahead and start depositions on as you

5   continue to try to work through it.  And it sounds like

6   you may not be able to, and I would anticipate receiving

7   information about that to have an informal conference to

8   address those.

9           But is there some reason that you cannot go

10  forward with the agreed-upon topics as the parties first

11  tried to address with or without the Court's assistance

12  on the remaining topics?

13          I mean, it may be that -- and this is a

14  question I have:  Would that -- because it's on a

15  certain topic, would that be opening up the deposition

16  of a particular witness, if they are deposed in, say,

17  mid January and then the dispute as to the topic is

18  resolved, is it a possibility that that witness needs to

19  be redeposed?

20          MR. TABAIE:  That's the issue, Your Honor.

21  And, so, you know, there is going to be -- I suspect,

22  but I don't know, that if -- say that we put up three or

23  four witnesses, that the other side is going to use 21

24  to 28 hours.  So, seven hours for each.

25          Then if we put up -- if we were to put up that

1   same witness on -- you know, for example, we are

2   agreeing to produce -- to -- to one topic about a

3   license that is Extreme's license, but with other

4   licenses, we're not willing to put up a witness.  If

5   Your Honor rules that those two licenses are

6   appropriate, the witness may be the same for all three.

7   And yet the time -- you know, there is going to be real

8   time issues and efficiency issues of having witnesses

9   deposed twice.  And that's my concern here.

10          THE COURT:  All right.  And I understand that

11  concern.  Is that then a point of your discussions?

12          MR. TABAIE:  We have discussed -- my

13  understanding -- and, you know, I'm sure Mr. Ashley will

14  correct me if I'm wrong.  My understanding is we have

15  discussed, like, signing, but until we have, like, the

16  amount of hours, until we have the total number of

17  topics decided and the -- a number of witnesses we're

18  going to have for those total number of topics, it's

19  difficult for both sides, I think, to determine how much

20  time is necessary.

21          And, so, for example, Your Honor, if we end up

22  putting up five or six witnesses, we think that it's

23  inappropriate to take 35, 40 hours of 30(b)(6)

24  testimony.  We just think that's burdensome.  But we

25  sort of need to understand -- and I think both sides

1   need to understand what the quantum of topics are going

2   to be for us to -- that Extreme is going to have to

3   testify about before we get into the nitty-gritty of,

4   you know, how much time is available, when the witnesses

5   are going to be deposed, you know, so they don't need to

6   be deposed again.

7         And that's why I was suggesting that we'll work

8   on availability, you know, from mid January

9   through -- I'm just throwing out a number -- into, like,

10   mid February, and that gives us enough time for the --

11   for us to adjudicate the topics in order -- in order to

12   get finality on that.

13         For example, we're agreeing to produce somebody

14   on -- on the financial topics, our finances.  That's the

15   kind of deposition that could go in mid January because

16   we probably wouldn't put the finance person up again for

17   the objected-to topics.

18         But the later ones, you push back a little bit

19   so you can figure out the topics and which topics we

20   have to provide witnesses on first so they're not having

21   to go twice.

22         THE COURT:  Okay.  So, with regards to the

23   finance person, you feel that if the topics are agreed

24   to for that person, there would not be a need to

25   redepose based on the topics that are in dispute?

1          MR. TABAIE:  That's my view.  And that is one

2    of -- that is correct, and that is one of the topics

3    that we understand -- although, we could be wrong -- we

4    understand SNMPR is most focused on in advance of their

5    expert reports.  So, we do that one in mid January.

6    That one won't need -- that person wouldn't be needing

7    to be redeposed again.  We get that one done.

8          And then for the later topics, we push it out a

9    little bit so we have enough time to figure out which

10   ones Your Honor thinks are appropriate 30(b)(6) topics

11   and which ones Your Honor thinks are not.

12          THE COURT:  All right.  Let me turn to

13   Mr. Ashley and ask:  What would be your position on that

14   proposal to go ahead and depose the finance person in

15   mid January and then in the interim work towards the

16   agreement on the topics and at the same time with

17   Extreme working on getting dates in late January, first

18   of February?

19          MR. ASHLEY:  So, Your Honor, a couple issues

20   with that.  First of all, finances is one.  Another key

21   issue that we need to depose somebody on is their

22   marketing person.  So, I'd first want to hear if the

23   same is true for marketing from them.

24          THE COURT:  Okay.  Let's stop right there and

25   ask Mr. Tabaie.  How about the marketing person?  Is

1   there agreement on all the topics for your marketing

2   person?

3         MR. TABAIE:  I'd have to do that at -- not yet,

4   Your Honor, is what I'm being told; in all truthfulness,

5   texted by both sides.  I don't know if you'd like them

6   to go --

7         MR. ASHLEY:  Here is the problem, Your Honor;

8   this is the problem:  So, they know we need marketing

9   and finance and a couple other of these depos that are

10  very important.  So, I think they should have to

11  articulate to you right now what it is about marketing

12  that says they can't give us a date in mid January.

13        THE COURT:  Well, Mr. Ashley --

14        MR. TABAIE:  Your Honor --

15        THE COURT:  No, stop.  Okay.  So, Mr. Ashley, I

16  want you to just limit your response to my question of

17  what would be a problem with going ahead with the

18  deposition of the finance person in mid January.

19        MR. ASHLEY:  The difficulty is:  That's only

20  one of the depositions that we sorely need to start

21  early.

22        THE COURT:  Right --

23        MR. ASHLEY:  That's why I focused on the other

24  ones.

25        THE COURT:  -- but why can you not take that

1  one?

2          MR. ASHLEY:  We would.

3          THE COURT:  Are you saying you cannot take it

4  in isolation?

5          MR. ASHLEY:  No, we would.  We would be happy

6  to take that deposition.  That's why I'm just asking if

7  there is one other that they could do as well.

8          And that -- in other words, we will work with

9  them.  As long as we're getting them all done, you know,

10 quickly after January 15th, even if it's not January

11 15th, we'll work with them, but it is very important

12 that we can get a marketing person.  And that's one of

13 the ones that was expressly agreed to.  It's one of the

14 21 topics.

15         And, so, we've been trying to set dates, mainly

16 because that's what we need; we need a marketing person

17 now.  And they have never said they -- last night, what

18 they did, they sent us an e-mail last night, after

19 telling us on November 20th in writing they would

20 produce a marketing person, and they somewhat narrowed

21 the topic and we agreed to that.  On December 12th, we

22 said fine.  Last night, after having agreed, they

23 revoked it.

24         MR. TABAIE:  No.

25         MR. ASHLEY:  I then responded and said, wait,

1  we do have an agreement on that.  And I thought at the

2  beginning of this call, Mr. Tabaie said we have

3  agreement on 21 topics.  Well, the 21 topics include

4  marketing.

5          And, so, that's my biggest concern is that that

6  is one of the foundational depositions that we need, and

7  I -- I think it would really be detrimental to us if we

8  just put it off for a while if there wasn't a reason to.

9          THE COURT:  Okay.  If you can stop right there

10  a second.

11          Mr. Tabaie, so --

12          MR. TABAIE:  Sure.

13          THE COURT:  -- what I'm hearing is that

14  Mr. Ashley is stating that he felt there was agreement

15  within those 21 topics that those covered the marketing

16  topics.  So, here, the question is why the marketing

17  person cannot be set in January along with the finance

18  person.  So, how many of the 19 disputed topics are

19  marketing?

20          MR. TABAIE:  So, there is one topic that says

21  marketing, Your Honor, but we -- we would be probably

22  putting up the same witness for the marketing topic as

23  we would on topics 15 and 17 that go -- that we think

24  are objectionable.

25          So, it's not the issue of the marketing topic

1   itself; it's the fact that topics 15, which is the
2   revenue cost and profit from the sale of the products
3   that -- that are -- it's basically why -- why are
4   those -- why is the sale of those profits not
5   attributable to the copyrighted work, which overlaps
6   with the marketing.  And then topic 17 is the value of
7   the research software in the products, which also goes
8   to the marketing topics.

9           So, this all goes to a portion, Your Honor,
10  which would probably be the same person that's doing the
11  marketing.  And, so, this is my point of, yeah, we go
12  forward with one topic in mid January.  Then we're going
13  to have to redepose that person again if Your Honor
14  rules in the other side's favor for two topics that we
15  think are inappropriate.

16          THE COURT:  Okay.  Well, with respect to that,
17  if that person is ready to testify just as to the
18  marketing and not as to topics 15 and 17 which are
19  overlaps, can you not go forward with the -- I'm going
20  to say marketing portion of that deposition, both
21  understanding that once you work through these other
22  topics, that particular person may need to be redeposed
23  on 15 and 17?

24          MR. TABAIE:  And, Your Honor, I mean, will
25  this -- that is something we can -- that's something we

can work on, but if they spend seven hours talking with the person about marketing, then, you know, we would say that their time is up on the other topics that we would propose the witness for.

MR. ASHLEY: Your Honor, we could agree to do both in seven hours total.

MR. TABAIE: Both finance and marketing?

MR. ASHLEY: No, we could agree to do -- you said that topics 15 and 17, which are in dispute, the same witness might go to that -- those two topics that is going to marketing. So, if that turns out to be the case, then you should let us know in advance so we know that. We will make sure to limit our marketing and topics 15 and 17 total to seven hours.

MR. TABAIE: And -- and I apologize, Your Honor. I know this is inappropriate to have a meet and confer on a -- on an informal discovery conference.

But would -- could we agree that one or -- or one of those depositions could be remote? If it's -- if the person has to come back a second time.

MR. ASHLEY: I -- I don't know. If it means that -- if it's that, or the fact that we don't get the marketing person mid January, then we would probably agree to it. But I don't know why we would have to agree to that.

1          MR. TABAIE:  Well, I think --

2          MR. ASHLEY:  If that's what the judge orders,

3    we would be fine.  We just don't want to not have the

4    marketing depo in mid January because of an issue with

5    total hour count for topics 15 and 17 combined with

6    marketing.

7          MR. TABAIE:  So, Your Honor, why don't we on

8    the -- my suggestion would be on the Extreme side for us

9    to work the phones today and tomorrow to figure out if

10   we can get a finance person and a person on the

11   marketing topic, which is -- for clarity, is topic 13,

12   in mid January.  And then from there we will work on

13   providing dates later for the remaining topics so we can

14   work out the disputed topics.

15         THE COURT:  Okay.  I think that's reasonable

16   and what I was trying to work towards.  So, I do want

17   you to do that.  And I would like to have a joint status

18   report on the 28th as to your efforts.

19         MR. ASHLEY:  And one question, Your Honor:  I

20   know that we're really focused on finance and marketing

21   and topics 15 and 17 right now, but I'm assuming that

22   your order earlier that we -- that they give us dates,

23   even if it's not mid January, that they give us actual

24   dates for the 21 agreed-upon topics, not just marketing

25   and finance.  They're still supposed to do that so we

1  can let them know --

2          THE COURT:  And I understood Mr. Tabaie saying

3  that he would work on that, and those would be past mid

4  January, though, into the end of January, first of

5  February.  And he was going to get --

6          MR. ASHLEY:  Uh-huh.

7          THE COURT:  -- those dates, and I wanted you to

8  further consider, you know, how that would impact that

9  opening report and have discussions about that as well

10  and see if it's necessary to file a joint motion to

11  alter the dates.

12          MR. ASHLEY:  Yes, Your Honor.  Thank you.

13          MR. TABAIE:  Yes, Your Honor.  We're going to

14  work on that.  The only thing -- and it's just because I

15  don't want to be limited to a promise that I can't keep.

16  Like, for example, I know one of our witnesses that

17  we've identified is gone for the month of January.  It's

18  not going to be the first of February; it's going to be

19  in the first half of February that we would put as those

20  dates is what my thought was, if it's okay with you.

21          And I'm not saying all of them will be at the

22  end of February.  I'm saying -- or the end of that time

23  frame.  It's just that if we could have that window to

24  go find the rest of our witnesses.  Because it's not

25  like we could have these one after another.  They're

1  very, very involved topics that's going to involve a lot

2  of prep.

3          THE COURT:  Yes.  And that's what I was

4  explaining that I want to see in that joint statement;

5  that you've made efforts, and if there is a reason that

6  that person cannot be available in January for whatever

7  reason, or cannot be ready, I want to understand that as

8  well; that at least you've made the effort and you've

9  had the discussion.

10          MR. TABAIE:  Okay.  Your Honor, only because it

11  is going to be over the holidays and I may have

12  challenges getting back to employees during next week,

13  could we give us -- ourselves one more day to the 29th

14  to get in that joint status report?

15          THE COURT:  That will be fine.

16          MR. TABAIE:  Thank you, Your Honor.

17          THE COURT:  Okay.  Well, I'll expect to receive

18  that on the 29th.  Right now, I would anticipate seeing

19  that there will be a date in mid January for the finance

20  person and a marketing person for topic 13, and

21  hopefully see that progress is being made on getting and

22  securing dates for the additional witnesses and more

23  efforts on the meet and confers regarding the 19 topics

24  that are in dispute and discussions regarding the

25  opening state for reports.

1          MR. TABAIE:  Thank you, Your Honor.

2          MR. ASHLEY:  Thank you, Your Honor.

3          THE COURT:  Okay.  So, I hope you all do have a

4   good holiday over the next two weeks, and I will be back

5   with you at the first of the year.

6          MR. TABAIE:  Thanks.

7          MR. ASHLEY:  Thank you.  Happy holidays, Your

8   Honor.

9          THE COURT:  Thank you.

10          (Which were all the digitally-recorded

11           proceedings had and herein transcribed.)

12                    * * * * * * *

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    C-E-R-T-I-F-I-C-A-T-E

 2    STATE OF TENNESSEE

 3    COUNTY OF KNOX

 4             I, Teresa S. Grandchamp, RMR, CRR, do hereby

 5    certify that I reported in machine shorthand the above

 6    digitally-recorded proceedings; that the foregoing pages

 7    were transcribed to the best of my ability to hear and

 8    understand the recorded file under my personal

 9    supervision and constitute a true and accurate record of

10    the digitally-recorded proceedings.

11             I further certify that I am not an attorney or

12    counsel of any of the parties, nor an employee or

13    relative of any attorney or counsel connected with the

14    action, nor financially interested in the action.

15             Transcript completed and signed on Wednesday,

16    December 27, 2023.

17

18

19

20

21    _____
                 TERESA S. GRANDCHAMP, RMR, CRR
22               Official Court Reporter

23

24

25
```