UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., <br><br>Plaintiffs, <br><br>v. <br><br>EXTREME NETWORKS, INC. <br><br>Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 3:20-CV-451-CEA-DCP <br> ) <br> ) <br> ) <br> ) <br> ) |

## **MEMORANDUM AND ORDER**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

The parties appeared before the Court on February 26, 2024, for an informal discovery dispute conference. Attorneys Cheryl Rice, John Wood, and Olivia Webber appeared on behalf of SNMP Research, Inc. ("SNMPR") and SNMP Research International ("SNMPRI") (collectively, "Plaintiffs"). Attorneys Saurabh Prabhakar and Charles Lee appeared on behalf of Extreme Networks, Inc. ("Extreme"). Prior to the hearing, the parties submitted position statements outlining their discovery disputes. Specifically, Extreme claimed that (1) Plaintiffs had not produced responsive documents to certain Requests for Production ("RFP"); (2) Plaintiffs improperly refused to answer subparts to interrogatories; and that (3) Plaintiffs' Rule 30(b)(6) deposition topics were too broad and/or irrelevant. The parties also disputed how much time to afford Plaintiffs to take Extreme's Rule 30(b)(6) witnesses' depositions. In addition, Plaintiffs sought an extension of their expert disclosure deadline and sought leave to take more than ten fact depositions.

The Court will address these issues in order.

1

## I. PLAINTIFFS' DOCUMENT PRODUCTION

With respect to RFP Nos. 50–55, and 58, Extreme seeks documents from Plaintiffs relating to the previous litigations by Plaintiffs against Avaya Inc. ("Avaya") and Nortel Networks Inc. ("Nortel"). Extreme claimed that the information it seeks from the previous litigations is relevant and proportional to the needs of the case. Plaintiffs responded that much of the information Extreme seeks is protected by protective orders entered in those cases and that Extreme must seek relief in the courts that adjudicated those cases. Plaintiffs also stated that the information sought is not relevant or proportional to the needs of this case. Plaintiffs acknowledged at the hearing that the previous lawsuits against Avaya and Nortel involved the same copyrighted software and copyright registrations at issue in this case.

During the hearing, Extreme noted that it was not seeking the source code of the non-parties, nor did it need any information regarding how the third parties infringed on Plaintiffs' copyright.[1] Plaintiffs noted that they had proposed to create a list of the subject documents so that the parties could work on narrowing the information Extreme seeks. After hearing from the parties, the Court **ORDERED** Plaintiffs to provide Extreme with a list of the subject documents included in the previous litigations against Avaya and Nortel and responsive to these RFPs **within fourteen (14) days**. Plaintiffs shall also make an effort to determine whether their local counsel in the Avaya and Nortel cases have the discovery responses exchanged in those cases. The parties are thereafter **ORDERED** to meet and confer to review the list and determine what items are

---

[1] With respect to the source code, Extreme stated that if there is a reference in the abstract to source code, then redactions are not necessary. But Plaintiffs noted that it may be difficult to review the documents and determine whether substantive source code information needs to be redacted. Until the parties identify the universe of documents, however, it is not clear to the Court whether this process is too burdensome.

2

relevant and proportional to the needs of this case. Should the parties reach an impasse, they **SHALL** contact Chambers.

With respect to RFP No. 57, Extreme seeks Plaintiffs' licensing negotiations that it believes are similarly situated to it. Extreme argued that its request seeks relevant information that is proportional to the needs of the case. Plaintiffs responded that they have produced 1,000 licensing agreements and produced the licensing negotiations for Cisco Systems, which they claim, is a good comparison to Extreme. Plaintiffs noted that Extreme has not shown how the companies that are identified in RFP No. 57 are similarly situated entities.

During the hearing, Plaintiffs stated that there are two entities identified in RFP No. 57 that do not have license agreements with Plaintiffs. After hearing from the parties, the Court **ORDERED** them to meet and confer to review the list of companies identified in RFP No. 57 and determine the entities that are of a similar size and that pay similar royalties as Extreme. Once these are identified, Extreme may choose three entities and Plaintiffs shall produce the licensing negotiations with those three entities.

Extreme RFP Nos. 156, 158, and 161 seek documents and communications about software products that compete with Plaintiffs' software at issue in this litigation. Extreme argues that the information it seeks is relevant and proportional to the needs of the case. Plaintiffs argued that they had produced non-privileged documents and that the requests are overbroad.

During the hearing, Plaintiffs explained that in order to produce documents responsive to this request they reviewed their online file directory and their paper files, which are the two places that such information is stored. Extreme argued that an email search is also appropriate. Plaintiffs noted that they previously proposed to run search terms if the parties could agree to a list of search

terms.  During the hearing, the Court **ORDERED** the parties to meet and confer to determine appropriate search terms and custodians in response to these RFPs.

Next, Extreme argued that Plaintiffs refused to produce licensing agreements that relate to the software at issue and that predates the formation of Plaintiff SNMPRI.  Extreme argued that the information it seeks is relevant and proportional to the needs of the case.  Plaintiffs responded that they had produced 1,000 licensing agreements and that these licensing agreements incorporated the pre-1994 terms that Extreme claims it needs.

During the hearing, Extreme argued that it does not know whether the licensing agreements Plaintiffs produced incorporate the pre-1994 terms and that it needed to review how the agreements matured over time.  In addition, Extreme claimed that several licenses did not transfer in 1994 because the licensees were no longer clients at that time.  During the hearing, the Court **ORDERED** Plaintiffs to produce a list of the name and date for all of the pre-1994 license agreements, and Extreme can select up to five of the license agreements to be produced.  Plaintiffs **SHALL** provide this list to Extreme **within fourteen (14) days.**

## II. INTERROGATORIES

Extreme claimed that Plaintiff SNMPR refuses to respond to Extreme's Interrogatory Nos. 9–17 and part of No. 8, noting that it claimed that Nos. 6–8 had discrete subparts.  Extreme argued that each interrogatory is a single interrogatory and that they should be answered fully.  Plaintiffs argued that the subparts are additional interrogatories.

"In the Sixth Circuit, courts employ the 'related question' test when deciding whether subparts are factually or logically related to the principle question." *Robinson v. Mathis*, No. 220CV02435SHLATC, 2021 WL 6804133, at *8 (W.D. Tenn. Sept. 14, 2021) (citations omitted).  After hearing from the parties and reviewing the subject interrogatories, the Court finds as follows:

(1) Interrogatory No. 6 is one interrogatory,

(2) Interrogatory No. 7 is three interrogatories,

(3) Interrogatory Nos. 8–10 are each one interrogatory,

(4) Interrogatory No. 11 is two interrogatories, and

(5) Interrogatory Nos. 12–17 are each one interrogatory.

The Court therefore **ORDERS** Plaintiff SNMPR to respond to these interrogatories within **twenty-one (21) days.**[2]

### III.  SCOPE OF PLAINTIFFS' RULE 30(B)(6) NOTICE

The parties disputed 18 topics out of the 40 topics in the notice.  With respect to Topic Nos. 2 and 3, regarding the Brocade License Agreement and the 2001 Extreme License Agreement, Plaintiffs noted that Extreme intends to rely on these agreements in defense of this case.  Plaintiffs stated that they only wanted the negotiation history on the Brocade License Agreement to the extent that Extreme worked with Brocade on transferring the license to Extreme.  Extreme responded that the topics are duplicative of other topics, they are not reasonably particular, and any such testimony calls for a legal analysis.  The Court **SUSTAINED IN PART** Extreme's objection to Topic No. 2 and the Court limits this topic to Extreme's negotiation history on the Brocade License Agreement to the extent Extreme worked with Brocade on transferring the license to Extreme.  The **OVERRULES** Extreme's objection to Topic No. 3.  *See Barnett v. Stafford Transp. of Louisiana*, No. 1:20-CV-280, 2021 WL 2768848, at *5 (E.D. Tex. Mar. 8, 2021) ("While the court may ultimately be responsible for contract interpretation, CEI's understanding of the contract and its application to CEI's operations is an appropriate line of questioning for a corporate representative.").

---

[2]  The parties also raised an issue as to whether Extreme could withdraw its interrogatories to Plaintiff SNMPRI.  The parties resolved this issue during the hearing.

Topic Nos. 5 and 6 seek information about the Enterasys License. During the hearing, Extreme noted that its counsel referred to this license in a letter to Plaintiffs, but this was in error and that the correct license that it is relying on in defense of this matter is the 2001 Extreme License. In light of Extreme's representation, the Court **SUSTAINS** its objections to Topic Nos. 5 and 6 and **STRIKES** them from the notice.[3]

With respect to Topics No. 10 and 11, they seek testimony on agreements that Extreme believes are comparable to the Brocade Licensee Agreement and the 2001 Extreme License. To the extent these topics seek a comparability analysis, Extreme argued such testimony is for an expert. Extreme stated that the factual component of these topics is not reasonably particular because it is unclear if they seek all agreements in the market or just the agreements of which Extreme has knowledge. And here, Extreme argued "comparability" is not defined. Plaintiffs responded that if Extreme does not have factual testimony, then the issue is moot but that they are seeking agreements that Extreme wants to rely on. After hearing from the parties, the Court finds Topic Nos. 10 and 11 not reasonably particular, **SUSTAINS** Extreme's objections, and **STRIKES** them from the notice.

Topic Nos. 15 and 17 seek testimony regarding the revenues, costs, and profits from Extreme's sale of certain products, the profit attributed to other elements than the alleged copyrighted work, and the value of Plaintiffs' products in Extreme's products. Extreme argued these topics are duplicative; Topic No. 15 uses the term "complete basis," which is not reasonably particular; and that any testimony regarding value should be reserved for an expert. Plaintiffs denied that the topics seek duplicative discovery and that the information the topics seek is relevant

---

[3] Should Extreme's position change such that the Enterasys License becomes relevant, Plaintiffs may bring this issue to the Court's attention, if necessary.

to the value of Plaintiffs' software contained in Extreme's products. After hearing from the parties, the Court **OVERRULES** Extreme's objections to Topic Nos. 15 and 17.

Topic No. 18 seeks Extreme's company-level financial information from 2001 to present. Extreme argued this topic is overbroad, noting that it could not prepare a witness on information spanning twenty-three years. Plaintiffs state that it provided additional guidance on what information it seeks but that they need to understand how Extreme's filings with the Securities Exchange Commission relate to the information already provided. After hearing from the parties, the Court **SUSTAINS** Extreme's objection to Topic No. 18 as it is overly broad and **STRIKES** it from the notice.

With respect to Topic Nos. 19, 20, 27, 28, 29, 30, they generally seek the complete factual basis for Extreme's defenses in this case. Extreme argued that these topics are overbroad, unduly burdensome, and not reasonably particular. Plaintiffs responded that they are entitled to explore the factual basis for Extreme's defenses. After hearing from the parties, the Court **OVERRULES** Extreme's objections to these topics. *White v. City of Cleveland*, 417 F. Supp. 3d 896, 910 (N.D. Ohio 2019) ("[N]umerous courts have held that a party may use a Rule 30(b)(6) deposition to inquire into the factual bases for another party's claims or defenses." (collecting cases)); *Waldrop v. City of Johnson City*, No. 2:19-CV-00103-JRG, 2020 WL 13830612, at *2 (E.D. Tenn. Aug. 27, 2020) ("[C]aselaw provides that a party may seek the factual basis for another party's claims or defenses via a Rule 30(b)(6) deposition. (collecting cases)).[4]

Topic No. 30 seeks testimony regarding information on what Extreme has done with Plaintiffs' copyrighted code. Extreme claimed that this topic is too broad, stating that it could not prepare a witness to testify about what it had done with non-specific bookkeeping information

---

[4] During the hearing, the Court noted that Plaintiffs had re-written Topic No. 20.

spanning 1,200 copies of source code over twenty years. Plaintiffs stated that this topic relates to how Extreme handled their source code. After hearing from the parties, the Court **SUSTAINS** Extreme's objection to this topic as it is overly broad and **STRIKES** it from the notice.

With respect to Topic No. 37, it seeks information regarding the development of Management Information Base ("MIBs") objects. Extreme objected based on relevancy, noting that MIBs are not mentioned in the pleadings, nor have they been referenced in discovery. At the hearing, Plaintiffs explained the function of MIBs and that they can show how Extreme used their products. Plaintiffs noted that the number of MIBs in the EXOS products have grown over time. Extreme asserted that Topic No. 37 does not seek how MIBs have changed over time but instead seeks everything about MIBs. After hearing from the parties, the Court **SUSTAINS** Extreme's objection to Topic No. 37 as overly broad and **STRIKES** it from the notice.

Topic No. 40 seeks the identity of persons at Extreme with the most knowledge regarding the subject. Plaintiffs clarified that this topic does not require one witness to memorialize all persons most knowledgeable about the other topics. Instead, this topic simply requires that each designee disclose the persons most knowledge at Extreme for the topics that the particular designee was covering. At the hearing, Extreme noted that in the previous Rule 30(b)(6) witnesses' depositions, Plaintiffs have asked each deponent the identity of the person(s) with knowledge about the designated topics. Plaintiffs noted that the deponents have been responding to this question. But Extreme argued that this question seeks inherently subjective determinations about who is most knowledgeable. After hearing from the parties, the Court **OVERRULES** Extreme's objections to this topic as clarified by Plaintiffs.

8

Case 3:20-cv-00451-CEA-DCP   Document 357   Filed 02/28/24   Page 8 of 9   PageID #: 16605

### IV. HOURS ALLOTTED TO RULE 30(B)(6) DEPOSITIONS

During the hearing, the parties reached an agreement regarding the number of hours Plaintiffs had to depose Extreme's Rule 30(b)(6) witnesses. The parties reported that Plaintiffs will have eleven (11) hours to depose Extreme's Rule 30(b)(6) witnesses, and Extreme intends to designate two or three witnesses.

### V. REMAINING ISSUES

Plaintiffs seek an extension of their expert disclosure deadline. The Court directed Plaintiffs to file a motion should they believe an extension is necessary. Plaintiffs also sought leave to take additional depositions. Plaintiffs explained that they needed to take sixteen (16) additional fact witnesses, and they requested that the Court set the fact deposition limit at 140 hours of time per side with no specific limit on the number of witnesses each side may depose.

Under Rule 30(a)(2), if a party seeks more than ten depositions, the party must seek leave of court, making a particular showing of why additional depositions are necessary. Fed. R. Civ. P. 30(a)(a). *Knox Trailers, Inc. v. Clark*, No. 3:20-CV-137-TRM-DCP, 2022 WL 55535, at *2 (E.D. Tenn. Jan. 5, 2022). The Court directs the parties to take their ten depositions, and to the extent they need additional depositions, they may file an appropriate motion. *San Francisco Health Plan v. McKesson Corp.*, 264 F.R.D. 20, 21 (D. Mass. 2010). ("[T]he purpose of the limitation in [Rule 30(a)] is to force counsel to think long and hard about who they want to depose and to depose only those who are really important.").

**IT IS SO ORDERED.**

ENTER:

Debra C. Poplin
United States Magistrate Judge

9