IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

---------------------------------------------------------- x
:
SNMP RESEARCH, INC. and SNMP : Case No. 3:20-cv-00451-CEA-DCP
RESEARCH INTERNATIONAL, INC., :
:
                Plaintiffs, :
:
         v. :
:
BROADCOM INC., BROCADE :
COMMUNICATIONS SYSTEMS LLC, and :
EXTREME NETWORKS, INC., :
:
                Defendants. :
:
---------------------------------------------------------- x

**DEFENDANT EXTREME NETWORKS, INC.'S**
**SUPPLEMENTAL BRIEF REGARDING AVAYA ACQUISITION AND PRIVILEGE**

In its Memorandum and Order dated February 23, 2024 ("Order"), the Court ordered supplemental briefing on two questions related to Defendant Extreme Networks, Inc.'s ("Extreme") assertion of privilege over communications involving Avaya, Inc.'s ("Avaya") employees:

1) To the extent the Court finds that Extreme acquired Avaya's networking business, does Extreme hold the privilege only with respect to Avaya's networking business, as opposed to over Avaya as a whole? Mem. & Ord, at 26, 28, ECF No. 355; and

2) Do the communications at issue relate to Avaya's networking business? *Id.* at 28.

The answer to both questions is yes. When Extreme acquired Avaya's networking business, it acquired the authority to assert privilege over communications related to the networking business but did not acquire (and Extreme does not claim) the authority to assert privilege over communications relating to other businesses or divisions of Avaya. Here, the communications at issue all concern the networking business—including Avaya's networking products and the software in those products—and Extreme thus holds the privilege over them. The Court should therefore find that the communications at issue are protected by Extreme's attorney-client privilege.

## I. Extreme Holds Privilege over Avaya's Attorney-Client Communications and Work Product Regarding Its Networking Business Only.

Extreme asserts that when it acquired Avaya's networking business, it acquired the authority to assert privilege *over communications regarding that business*. *See* Extreme's Supp. Br. in Supp. of Priv. Assertions at 1-2, 14, ECF No. 334. Extreme does not claim that it holds privilege over communications regarding any other business or division within Avaya—including the Unified Communications business and the Contact Center and Private Cloud Solutions business that Avaya controlled prior to its bankruptcy. *See* Avaya Inc. Form 8-K at 12, ECF No. 334-11 (outlining Avaya's three distinct business segments); Decl. of Daren Dulac at ¶ 6, ECF No. 334-26 ("Extreme was interested in acquiring Avaya's networking business in its entirety. Extreme had no intention to enter into any kind of ongoing collaboration or joint venture or partnership

related to the networking business with the remainder of Avaya's business."). Throughout its exchanges with opposing counsel and briefing before the Court on this issue, Extreme has consistently maintained that same position: Extreme is asserting privilege only over communications about Avaya's networking business. *See, e.g.*, Ex. A, Email re SNMP Research Inc., et al. v. Broadcom Inc., et al. – Production at 1 ("Extreme contends that these emails reflect Avaya privileged communications and work product that transferred to Extreme after Extreme acquired Avaya's networking business."); Extreme's Response to Plaintiffs' Position Statement Re: Extreme's New Privilege Assertions at 2–3, ECF No. 335-25 (noting that Extreme acquired Avaya's networking business and that "the attorney-client privilege Avaya held transferred along with its business"); Extreme's Supp. Br. in Supp. of Priv. Assertions at 14 ("Extreme holds the privilege over attorney-client communications within Avaya networking business made prior to Extreme's March 2017 acquisition of that business.").

Extreme's position is well supported by caselaw. Multiple courts have recognized that a party that acquires a division of or business within a company also acquires privilege *over communications related to that division or business*, though not necessarily over other parts of the company. In *Parus Holdings, Inc. v. Banner Witcoff, Ltd.*, 585 F. Supp. 2d 995 (N.D. Ill. 2008), for example, the court considered whether the plaintiff had inherited the attorney-client privilege of "the division of [a larger telephony company] responsible for development and marketing of" a technology referred to as "the System." *Id.* at 1001, 1003. Finding that the plaintiff acquired the entire division, the court concluded that the acquisition "include[d] the transfer of the attorney-client privileges and relationships that had existed between Vail and [the attorneys it had retained prior to the acquisition], which only pertained to the System." *Id.* at 997, 1003. In other words, by virtue of its acquisition of the division, the plaintiff held the attorney-client privilege over the

3

communications and relationships related to that division. Similarly, in *Soverain Software, LLC v. Gap, Inc.*, 340 F. Supp. 2d 760 (E.D. Tex. 2004), the plaintiff purchased a software business called Transact from two larger parent companies, Divine and Open Market, that filed for bankruptcy. The court found that, because the plaintiff acquired the entire Transact business, the plaintiff could "assert the privilege as to communications pertaining to the Transact business between Open Market, Divine, and their respective attorneys." *Id.* at 763–64.[1] As in those cases, by acquiring control over Avaya's networking business—including its existing employees, records, equipment, contracts, and permits—Extreme gained the authority to assert privilege over communications and documents related to Avaya's networking business only. Extreme's Supp. Br. in Supp. of Priv. Assertions at 17-18. That authority does not extend to Avaya communications unrelated to the networking business.

## II. The Communications Over Which Extreme Asserts Privilege Relate to the Networking Business.

All of the communications at issue—four email chains comprising 100 individual documents—relate to and were part of Avaya's networking business.

Three of the four chains originate with a July 7, 2017 email to Richard Hamilton III, an in-house attorney for Avaya. Michael Fitzgerald, a former Product Manager for Avaya's networking business who became an Extreme employee after Extreme acquired Avaya's networking business, confirms that Mr. Hamilton regularly provided legal advice related to Avaya's networking

---

[1] *Am. Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.*, 240 F.R.D. 401 (N.D. Ill. 2007), which Plaintiffs raised for the first time at the November 1 Hearing and relied on in their December 1 brief, is not to the contrary. As Extreme explained in its supplemental brief, the parties attempting to assert privilege in that case obtained only some assets formerly held by "Old Fruit of the Loom," which did not suffice to transfer control of Old Fruit of the Loom's business or of any privilege once held by it. *See id.* at 407; Extreme's Supp. Br. in Supp. of Priv. Assertions at 19–20.

4

business. *See* Fitzgerald Decl. ¶ 4. In July 2017, Mr. Fitzgerald authored a memorandum for Matthew Roman, his new supervisor at Extreme, in preparation for transfer of control of Avaya's networking business to Extreme. *Id.* at ¶ 5; *id.* Ex. 1, EXTREME-01076296. Mr. Fitzgerald's memorandum identified Avaya networking products that were being transferred to Extreme and were impacted by Avaya's settlement with SNMP Research, Inc. (collectively with SNMPR Research International, Inc., "SNMPR"). *Id.* at EXTREME-01076301. In that memorandum, Mr. Fitzgerald identified Mr. Hamilton as the "legal contact responsible for verifying that Avaya networking products containing SNMPR software did not transfer to Extreme." *Id.*

As previously stated, Extreme clawed back four email chains comprising privileged communications related to Avaya's networking business. *See* Extreme's Supp. Br. in Supp. of Priv. Assertions, at 2. Mr. Fitzgerald was copied on emails on the four email chains and has reviewed unredacted emails from each chain; the specific emails Mr. Fitzgerald reviewed cover the same subjects as the other emails on that chain. *See* Extreme's Supp. Priv. Log, Priv. Entry Nos. 1331 (EXTREME-01079442); 1334 (EXTREME-01076396); 1336 (EXTREME-01076335); and 1388 (EXTREME-01077082), ECF No. 334-16. Mr. Fitzgerald has confirmed that the emails he reviewed were about Avaya's networking products and software, which were transferred to Extreme when it bought Avaya's networking business. *See* Fitzgerald Decl. ¶¶ 6–9. An email from the first clawed back email chain (corresponding to privilege log entry 1331) relates to transfer of software for Avaya networking products to Extreme. *Id.* at ¶ 6. Emails from the second and third clawed back email chains (corresponding to privilege log entries 1334 and 1338, respectively) relate to the BOSS software that was used in Avaya's networking products, which were transferred to Extreme after the acquisition. *Id.* at ¶¶ 7, 9. Finally, an email from the fourth clawed back email chain (corresponding to privilege log entry 1336) relates to the BOSS and VOSS software that

5

Avaya used in its networking products and that is now used by Extreme in its switching products. *Id.* at ¶ 8. In sum, the communications at issue all relate to Avaya's networking business.

SNMPR's arguments to the contrary do not change the fact that the documents at issue are privileged communications concerning Avaya's networking business. SNMPR first points to Mr. Hamilton's title, noting that in his email signature he identified himself as the legal director for "Avaya Inc.," not the networking business specifically. *See* Plaintiffs' Opp. to Extreme's Supp. Br. in Supp. of Priv. Assertions at 21, ECF No. 339. As explained above, Mr. Hamilton provided legal advice related to Avaya's networking business, including advice about the transfer of Avaya networking products inventory and software to Extreme during the acquisition. *See* Fitzgerald Decl. ¶ 5; *Id.* Ex. 1 at EXTREME-01076301. That Mr. Hamilton also offered legal advice to other business divisions within Avaya is beside the point because Extreme is not asserting that it holds privilege over those communications. *See, e.g.*, *Grae v. Corr. Corp. of Am.*, 2020 WL 3035915, at *7 (M.D. Tenn. June 5, 2020) (noting that that "the validity of an assertion of privilege will depend on the role played by the lawyer in a particular conversation"); *Pearlstein v. BlackBerry Ltd.*, 2019 WL 1259382, at *4 (S.D.N.Y. Mar. 19, 2019) (same). What is germane to this dispute is that in the communications at issue, Avaya employees sought Mr. Hamilton's legal advice related to Avaya's networking business.

SNMPR also claims that the communications could not have involved the networking business because the settlement agreement between SNMPR and Avaya was not among the contracts transferred to Extreme in the acquisition.[2] Plaintiffs' Opp. to Extreme's Supp. Br. in

---

[2] Despite claiming here that communications among Avaya employees could not have involved privileged discussions of the networking business that then transferred to Extreme, SNMPR has asked Extreme 30(b)(6) witnesses about Avaya's networking products, whether they contained SNMPR software, and whether they were transferred to Extreme when it acquired Avaya's

*(cont'd)*

Supp. of Priv. Assertions at 21. That argument is irrelevant to this dispute. What is relevant is that the communications at issue were in fact related to Avaya's networking business. Mr. Fitzgerald's memorandum and declaration confirm that fact. *See* Fitzgerald Decl. ¶¶ 5–9; *id.* Ex. 1 at EXTREME-01076301.

* * *

Extreme acquired Avaya's networking business in 2017 and, in doing so, acquired the authority to assert privilege *over communications regarding that business*. The communications here all involve employees seeking and providing legal advice about the networking business specifically. For these reasons, and the reasons articulated in Extreme's earlier briefing on this issue, the Court should find that the communications are protected by Extreme's attorney-client privilege.

DATED: March 11, 2024

Respectfully Submitted,

*/s/ John M. Neukom*

Charles B. Lee, BPR# 011570
Jessica Malloy-Thorpe, BPR# 035234
Jordan B. Scott, BPR# 037795
MILLER & MARTIN, PLLC
832 Georgia Avenue
1200 Volunteer Building
Chattanooga, Tennessee 37402
Tel: (423) 756-6600
Fax: (423) 785-8293
clee@millermartin.com
jessica.malloy-thorpe@millermartin.com
jordan.scott@millermartin.com

John M. Neukom (*admitted pro hac vice*)
Abraham A. Tabaie (*admitted pro hac vice*)
Barbara N. Barath (*admitted pro hac vice*)
Saurabh Prabhakar (*admitted pro hac vice*)
Alicia J. Ginsberg (*admitted pro hac vice*)
DEBEVOISE & PLIMPTON LLP
650 California Street
San Francisco, California 94108
jneukom@debevoise.com
atabaie@debevoise.com
bnbarath@debevoise.com
sprabhakar@debevoise.com
ajginsberg@debevoise.com
(415) 738-5700

---

networking business. Ex. B, Fitzgerald Dep., 31:1-14; 33:17-35:3; Ex. C, DeBacker Dep., 21:14-22:21.

Leslie A. Demers (*admitted pro hac vice*)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
leslie.demers@skadden.com
(212) 735-3000

Sy Damle (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
(202) 637-2200

*Attorneys for Extreme Networks, Inc.*