# Exhibit A

# Plaintiffs' Notice of Deposition of Extreme Networks, Inc. Pursuant to Rule 30(b)(6)

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC.,** | § § § § § § § § § § § § § § | **Case No. 3:20-cv-00451-CEA-DCP** |
| **Plaintiffs,** | | |
| v. | | **Jury Demand** |
| **BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; AND EXTREME NETWORKS, INC.,** | | |
| **Defendants.** | | |

## PLAINTIFFS' NOTICE OF DEPOSITION OF EXTREME NETWORKS, INC. PURSUANT TO RULE 30(b)(6)

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs SNMP Research, Inc. ("SNMP Research") and SNMP Research International, Inc. ("SNMP International" and collectively "Plaintiffs") will depose Defendant Extreme Networks, Inc. ("Extreme") on November 17, 2023, beginning at 9:00 a.m. Eastern Daylight Time, and continuing from day-to-day thereafter (excluding Saturdays, Sundays, and holidays) until completed. This deposition shall take place at Egerton McAfee Armistead & Davis P.C., 1400 Riverview Tower, 900 S. Gay St., Knoxville, TN 37902.

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Extreme shall designate one or more of its officers, directors, managing agents, or other persons who are most knowledgeable, and competent to testify on its behalf, as to all matters known or reasonably available to Extreme with respect to the subjects set forth in Attachment A. Pursuant to Federal Rule of Civil Procedure 30(b)(6), the person(s) designated should be prepared to testify as to such matters known or reasonably available to Extreme. At least ten

business days before the date set for the deposition, Extreme shall identify, by name and position, each person so designated and shall set forth the matters on which that person will testify. Plaintiffs may serve Extreme with additional notices pursuant to Rule 30(b)(6) on additional topics as this litigation progresses and as further evidence is produced.

Please take further notice that the deposition will be taken before a person duly authorized to administer oaths. The testimony will be recorded by stenographic, audio, video and/or real-time transcription means. We further reserve the right to utilize the following: (1) to record the deposition utilizing audio or video technology; (2) to use instant visual display such that the reporter's writing of the proceeding will be available to all who are a party to this proceeding to request and receive it in realtime; and (3) to conduct this deposition utilizing a paperless exhibit display process called Exhibit Share or a similar paperless virtual display platform. The parties are advised that, in lieu of a paper set of exhibits, the exhibits may be provided and displayed digitally to the deposition officer, deponent, parties, and counsel. The exhibits will be compiled by the deposition officer for the purposes of exhibit stamping, and ultimate production of the final certified transcript.

Respectfully submitted,

Dated: October 31, 2023

By: /s/ *John L. Wood*
John L. Wood, Esq. (BPR #027642)
Cheryl G. Rice, Esq. (BPR #021145)
Rameen J. Nasrollahi, Esq. (BPR #033458)
EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
900 S. Gay Street, Suite 1400
P.O. Box 2047
Knoxville, TN 37902
(865) 546-0500 (phone)
(865) 525-5293 (facsimile)
jwood@emlaw.com

crice@emlaw.com
rnasrollahi@emlaw.com


By: */s/ A. Matthew Ashley*
A. Matthew Ashley (CA Bar. No. 198235)
Morgan Chu (CA Bar. No. 70446)
David Nimmer (CA Bar. No. 97170)
Olivia L. Weber (CA Bar. No. 319918)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
(310) 277-1010 (phone)
(310) 203-7199 (facsimile)
mchu@irell.com
dnimmer@irell.com
mashley@irell.com
oweber@irell.com

*Attorneys for Plaintiffs*
*SNMP Research International, Inc. and*
*SNMP Research, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on October 31, 2023 a copy of the foregoing was served to all counsel of record.

/s/ Olivia Weber

# ATTACHMENT A

# DEFINITIONS

Unless the context indicates otherwise, the following words and phrases have the meanings given:

1. The term "SNMP Research" means SNMP Research, Inc. and SNMP Research International, Inc., their predecessors and predecessors-in-interest, including all divisions and subsidiaries, and the officers, directors, employees, agents, attorneys, accountants, and representatives of each of the foregoing, including all other Persons acting or purporting to act on behalf of one or more of them.

2. The terms "You," "Your," and "Extreme" means Extreme Networks, Inc., its predecessors, predecessors-in-interest, successors, successors-in-interest, affiliated entities, including all divisions and subsidiaries, and the officers, directors, employees, agents, attorneys, accountants, and representatives, including all other Persons or entities acting or purporting to act on behalf of it.

3. The term "Brocade" means Brocade Communications Systems LLC, its predecessors, predecessors-in-interest, successors, successors-in-interest, affiliated entities, including all divisions and subsidiaries, and the officers, directors, employees, agents, attorneys, accountants, and representatives, including all other Persons or entities acting or purporting to act on behalf of it.

4. The term "Broadcom" means Broadcom Inc., its predecessors, predecessors-in-interest, successors, successors-in-interest, affiliated entities, including all divisions and subsidiaries, and the officers, directors, employees, agents, attorneys, accountants, and representatives, including all other Persons or entities acting or purporting to act on behalf of it.

5. The term "Brocade License Agreement" shall mean the license agreement, dated March 10, 2001, as amended, between Brocade Communications Systems LLC and SNMP Research International, Inc.

6. The term "2001 Extreme License" means the License Agreement dated October 22, 2001, as amended, between SNMP Research International, Inc. and Extreme.

7. The term "Enterasys License" means the license agreement dated December 8, 1999, as amended, between SNMP Research International and Extreme.

8. The term "License" means licenses to, sublicense to, interests in, rights in, and options to license, an agreement providing or limiting an amount of money that a party may be obligated to pay, and releases or covenants not to sue.

9. Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34. A draft or non-identical copy is a separate Document within the meaning of this term.

10. The term "SNMP Research Software" means any of the following: (i) software provided by SNMP Research to Brocade or Extreme, (ii) software licensed by SNMP Research to Brocade or Extreme, or (iii) any software created by SNMP Research which is or was in the possession of Extreme. The foregoing categories include Source Code, compiled code, binary code, configuration files and data, associated documentation, and Derivative Works thereof.

11. "Source Code" means Documents that reflect human-readable text written using a computer programming language that are nominally capable of being used to generate an executable software program.

12. The term "Derivative Work" means (i) any program or documentation in Source Code form or binary form which (A) has been or is developed by Extreme through the use of SNMP Research Software, or (B) includes any features, provisions, algorithms, or other portions of SNMP Research Software, or (ii) derivative works as defined in the Copyright Act.

13. "Communicate" or "Communication" shall mean any transmission of information by oral, graphic, written, pictorial, or other perceptible means, including, but not limited to, telephone

conversations, letters, Documents, memoranda, notes, telegrams, facsimile transmissions, electronic mail, meetings, and personal conversations.

14. The unqualified term "Person" shall mean an individual, corporation, firm, company, sole proprietorship, partnership, unincorporated association, business association, or governmental entity.

15. "Identify," "Identifying," or "Identity" means:

   a. When used in reference to a Person, to state his/her full name, present or last known address, present or last known telephone number, present or last known email address, present or last known place of employment and position held, and place of employment and position held at the time period covered by this notice.

   b. When used in reference to a Document, to state the date, author, type of Document (e.g., letter, memorandum, photograph, telegram, tape recording, email, etc.); the Person or Persons to whom either copies of it were sent, received, or otherwise distributed and their addresses or email addresses; and the present or last known location and custodian of the original of the Document and any copies thereof. If any such Document was, but is no longer, in Your possession or custody or subject to Your control, state what disposition was made of it, the date, by whom, and at whose direction;

   c. When used in reference to a Communication, to state the type of Communication (e.g., letter, personal conversation, meeting, email etc.), and whether the Communication was oral or in writing. If the Communication was oral, state the date of the Communication, the parties thereto, the place and approximate time thereof, the substance of what was said by each party, and the Identity of all other Persons present; if the Communication was written, produce the writing;

   d. When used in reference to an act, fact, or event, to state the substance of the act or event, the date, time, and place of performance, and the Identity of the actor and/or all other Persons present;

   e. When used in reference to an omission, to state the substance of the act which You contend should or would have been performed, the time and date when such act should or would have been performed, and the Person who should or would have performed such act.

16. The term "Product" means each item that can be or has at any time been able to be separately ordered or distributed (or provided as an update to an existing Product), whether sold, leased,

licensed, sublicensed, whether enabled or not, whether revenue bearing or not, including, but not limited to, hardware, software, services, or combinations of hardware, software, or services.

17. The term "Partner Product" means each Product of a third party that now, or has ever, whether in current distribution or not, contains, uses or is otherwise associated with SNMP Research Software either as manufactured or as a result of a software or firmware installation or update where the SNMP Research Software was obtained from Extreme by such third party.

18. "Relates to" and "Relating to" means evidences, supports, connects, constitutes, contains, records, discusses, summarizes, analyzes, discloses, and/or refers to, in whole or in part.

19. "And" and "or" each shall be construed either conjunctively or disjunctively as necessary to bring within the scope of these topics any information or Document that might otherwise be construed to be outside its scope.

20. "Complete Basis" means and refers to the identity and comprehensive description of legal and factual bases, including the Identity of all Persons with knowledge of the factual bases and the Identity of all evidence, including Documents (by production number), oral statements, and witnesses that relate to it.

## TOPICS FOR EXAMINATION

1. The sale of Brocade's data center business to Extreme, including but not limited to any discussion or analysis Relating to SNMP Research and/or SNMP Research Software in connection with that sale.

2. The Brocade License Agreement, including but not limited to Your interpretation of it (including §§ 2-3 & Amendment 3 § 7), the performance and alleged breach of it, and the negotiation history for it. This includes without limitation Plaintiffs' notices of breach and termination.

3. The 2001 Extreme License, including but not limited to Your interpretation of it (including §§ 2-3, 7-8, 10, 16, 24-25, & Attachment A), the performance and alleged breach of it, and

the negotiation history for it.  This includes without limitation SNMP Research International, Inc.'s notices of breach and termination.

4. Your analyses and/or Communications (internal or external) Relating to which Products are encompassed by the 2001 Extreme License, and any research, testing or analysis done in connection with that issue.

5. The Enterasys License, including but not limited to Your interpretation of it (including §§ 2-3), the performance and alleged breach of it, and the negotiation history for it.  This includes without limitation SNMP Research International, Inc.'s notices of breach and termination.

6. Your analyses and/or Communications (internal or external) Relating to which Products are encompassed by the Enterasys License, and any research, testing or analysis done in connection with that issue.

7. Your analyses and/or Communications (internal or external) Relating to which Products contain or might contain SNMP Research Software and any research, testing or analysis done in connection with that issue.

8. Your request(s) for Licenses or assignments/transfers/amendments of Licenses from SNMP Research, including without limitation why You made the requests, which Persons were involved in the requests, and any research, testing or analysis done in connection with the requests or any of SNMP Research's responses to the requests.

9. Extreme's responses to written discovery propounded by SNMP Research in this case, including the scope of Extreme's collection of Documents in response to the written discovery.

10. All agreements You believe are comparable to the Brocade License Agreement, the basis for this contention, and all factual circumstances You contend are relevant to the determination of comparability.

11. All agreements You believe are comparable to the 2001 Extreme License, the basis for this contention, and all factual circumstances You contend are relevant to the determination of comparability.

12. The organization, management and control of Extreme, including without limitation in connection with: the marketing, advertising, or sale of the Products identified in Extreme's responses to SNMP Research Inc.'s Interrogatory numbers 1, 2, and 9.

13. The marketing and advertising of the Products identified in Extreme's responses to SNMP Research Inc.'s Interrogatory numbers 1, 2 and 9. This includes, without limitation:

    a. to whom the Products are marketed (including but not limited to any target audience(s));

    b. how they are marketed (e.g., marketing channels, website and social media marketing, etc.);

    c. which, if any, features/characteristics/customer needs are emphasized or targeted in any marketing;

    d. any analysis and/or tracking of any of the above or of the effectiveness of the marketing;

    e. information about competing products (names of providers, prices of products, distribution of competing products, etc.);

    f. talking points or other messaging that Extreme sales and marketing staff uses to communicate with customers and potential customers (may be captured by "how they are marketed");

    g. information about points of parity and points of difference between Extreme products on the one hand and competing products on the other hand;

    h. the sales and marketing process (e.g., are there RFPs, a quoting process, a list of approved sellers, who at the customer is involved in the purchase decision, etc.); and

    i. whether there are individually-negotiated terms in purchases (discounts, warranties, rebates, additional services and technical support).

14. Revenues, costs, and profits from the sale of the Products identified in Extreme's responses to SNMP Research Inc.'s Interrogatory numbers 1, 2 and 9. This includes, without

limitation, all Documents and information provided and referenced in Extreme's responses to SNMP Research Inc.'s Interrogatory numbers 1, 2, 5, 6, and 9 (such as EXTREME-0072245, EXTREME-00871500, EXTREME-01290742, EXTREME-01290743, EXTREME-01290744, EXTREME-00722448, EXTREME-01290741, EXTREME-00722446, EXTREME-00722447, EXTREME-01290740, EXTREME-00871501, and all similar financial documents). It also includes, without limitation:

a. Your systems and methods for tracking, recording, and maintaining revenues, costs, and profits;

b. The number of units sold each quarter since the date of first sale.

c. The gross revenue and net revenue each quarter since the date of first sale.

d. Cost of revenue each quarter since the date of first sale, including the method for recording and allocating revenues and related costs of revenues, and the difference between burdened costs of revenues and unburdened costs of revenues.

e. Gross margin each quarter since the date of first sale.

f. Sales and marketing, general and administrative, and research and development expenses and how they are calculated and allocated to the Product sale, by quarter, including such expenses incurred for any company, subsidiary, division, group, department, etc. that manufactured or sold the Product, for each quarter since the date of first sale.

g. Other expenses incurred by Extreme allocated to the manufacturing and sales of the Product which have not been identified above but are included by Extreme as a cost to manufacture and sell the Product, for each quarter since the date of first sale.

h. Income before income taxes for the Product after all expenses allocated to the manufacture and sale of the Product have been accounted for, since the date of first sale.

i. Net income from the sale of the Product after Extreme has assigned an income tax to the Product, since the date of first sale.

j. How Product revenues (including, without limitation, the service revenues in the documents and information provided by and referenced in Extreme's response to SNMP Research Inc.'s Interrogatory number 9) are identified as to each Product.

k. For each item listed above, whether Extreme further calculates a break-down by geographic region, and the process by which those calculations are made.

15. For all revenues, costs and profits from the sale of the Products identified in Extreme's responses to SNMP Research Inc.'s Interrogatory numbers 1, 2 and 9, provide the Complete Basis for any assertion by You as to the elements of profit attributable to factors other than the copyrighted work (within the meaning of 17 U.S.C. § 504(b)).

16. For all Products identified in Extreme's responses to SNMP Research Inc.'s Interrogatory numbers 1 and 2, the shipment numbers for each Product by quarter from the date of first sale and by geographic region and customer, and the method for calculating the shipment numbers.

17. The value of SNMP Research Software in your Products, including the Products identified in Extreme's responses to SNMP Research Inc.'s Interrogatory numbers 1, 2, and 9.

18. Extreme's company-level financial information (including but not limited to its income, assets, and liabilities) from 2001 to the present. This includes, without limitation:

   a. The identity of, process of preparing, and source of information for Extreme's periodic financial statements. This includes statements such as balance sheets, income statements, cash flow statements, profit and loss statements, sales reports, cost reports, and customer account summaries for any of the Products identified in Extreme's responses to SNMP Research Inc.'s Interrogatory numbers 1, 2, and 9.

   b. The standards and methods used by Extreme's accounting system, including any charts of accounts used in Extreme's financial reporting, profit definitions (at all levels of the Income Statement) used by Extreme in the ordinary course of business, and any variation of the term "profit" by the accounting system.

19. The Complete Basis for any defense, including any affirmative defense, You may assert.

20. The Complete Basis for any challenge You may make as to SNMP Research, Inc.'s copyrights and/or copyright registrations, including without limitation the validity and/or accuracy of the registrations and the ownership and/or authorship of the copyrights.

21. Your Communications with Broadcom or Brocade about SNMP Research, its software, its Licenses, and/or this lawsuit. This includes without limitation any discussions relating to actual or potential indemnification or defense.

22. Your Communications with any third party about SNMP Research, its software, its Licenses, and/or this lawsuit. This includes without limitation any Communications with Your customers, direct or indirect.

23. The search You conducted to ascertain which Products at Extreme contain SNMP Research Software, including without limitation the Persons involved and what their roles were.

24. The authenticity of Documents produced by You in discovery in this action.

25. Your efforts to preserve and search for Documents relevant to this action and/or responsive to Plaintiffs' requests for production of Documents. This includes without limitation, from 2001 to the present, Your Document (including email) retention policy(ies), the identities of Your custodians likely to have relevant Documents, and the destruction, deletion, or failure to retain relevant Documents including Communications of Your custodians (such as Paul Segalini and Yeeping Zhong).

26. The process of creating any financial reports made by Extreme for production in this litigation, including the source(s) of information in such reports, the completeness of the data, the meaning of the data, and the process by which the accuracy of the data was verified.

27. The Complete Basis for why You contend that You are not infringing the copyrighted works identified in the Amended Complaint.

28. The Complete Basis for why You contend that You did not breach the 2001 Extreme License as alleged in the Amended Complaint.

29. The Complete Basis for why You contend that You did not commit fraud as alleged in the Amended Complaint.

30. The Complete Basis for your contention that SNMP Research should have known that Extreme was using SNMP Research Software in more than one EXOS product.

31. Your Source Code for the operating system software contained in the Products identified in Extreme's responses to SNMP Research Inc.'s Interrogatory numbers 1 and 2, including without limitation when, where and how it is maintained, developed, and inserted into the Products and subsequently updated.

32. The source, possession, and custody of every copy (including without limitation every identical copy) of Source Code containing SNMP Research Software. This includes, without limitation:

   a. All electronic devices and optical media on which every copy of this Source Code is or was ever stored at Extreme or by an Extreme employee or contractor, including hard drives, thumb drives, CDs, DVDs, PDAs, smartphones, tablets, personal and work computers, personal or work email accounts, in addition to the corresponding custodian of each device;

   b. All servers, source code repository systems, and databases in which this Source Code is or was stored;

   c. When and by whom this Source Code was first copied, created, or obtained at Extreme;

   d. All Extreme employees, past and present, who accessed, transferred, copied, or modified any of this Source Code at any time;

   e. When, by whom, and under what circumstances this Source Code was copied or deleted;

   f. The existence and contents of any log information showing the creation, editing, metadata accessing, metadata editing, and/or deletion of this Source Code.

33. All steps that You have taken, if any, to remove any SNMP Research Software from the Products identified in Extreme's responses to SNMP Research Inc.'s Interrogatory numbers 1, and 2, including but not limited to all instances when You or anyone acting on Your behalf removed SNMP Research Inc.'s copyright notice.

34. Any plans or intention You have or have had to remove any of Plaintiffs' software from the Products identified in Extreme's responses to SNMP Research Inc.'s Interrogatory numbers 1, and 2.

35. The royalty system used to track royalty amounts owed for your Products and your policies, practices, and procedures for determining and reporting royalties for shipped Products and efforts to do so, including but not limited to, all efforts taken to determine and report royalties for the Products identified in response to SNMP Research Inc.'s Interrogatory number 1 and 2.

36. Your policies, practices, and procedure for identifying third party code in your products.

37. The development of Management Information Base objects in each release of EXOS software.

38. All facts and circumstances regarding the decision to use SNMP Research Software in EXOS products other than the Black Diamond 10808.

39. All facts and circumstances regarding the royalty reports delivered by Extreme to SNMP Research under the 2001 Extreme License.

40. For each of the above subjects (1-39), the Identity of the persons at Extreme with the most knowledge regarding that subject.