# Exhibit D

# Joint Statement on
# Extreme Networks, Inc.'s
# Motion for Protective Order on
# Rule 30(b)(6) Topics
# (January 5, 2024)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

------------------------------------------------------------ x
                                                  :

SNMP RESEARCH, INC. and SNMP               :     Case No. 3:20-cv-00451-CEA-DCP
RESEARCH INTERNATIONAL, INC.,              :

          Plaintiffs,                                    :

               v.                                   :

BROADCOM INC., BROCADE                     :
COMMUNICATIONS SYSTEMS LLC, and        :
EXTREME NETWORKS, INC.,                    :

          Defendants.                                :
------------------------------------------------------------ x

## JOINT STATEMENT ON EXTREME NETWORKS, INC.'S MOTION FOR PROTECTIVE ORDER ON RULE 30(B)(6) TOPICS

**Plaintiffs' Inserts To The Joint Statement**

I. **Plaintiffs' Rule 30(b)(6) Topics Are Reasonably Particular And Proper**

Extreme refuses to produce a witness for 18 of 40 topics in Plaintiffs' 30(b)(6) notice: Topics 2-3, 5-6, 10-11, 15, 17-20, 27-30, 32, 37, and 40. As the party opposing that notice, Extreme bears the burden of obtaining a protective order, *New England Carpenters v. First DataBank, Inc.*, 242 F.R.D. 164, 166 (D. Mass. 2007), and of showing good cause for that protective order, *Brown v. Norfolk S. Ry.*, No. 3:18-CV-205-TRM-DCP, 2020 WL 265280, at *4 (E.D. Tenn. Jan. 17, 2020). "[T]o justify a protective order, one of Rule 26(c)(1)'s enumerated harms must be illustrated with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012) (emphasis added).

To address Extreme's written objections, Plaintiffs offered to narrow 13 of the 18 disputed topics. Plaintiffs also repeatedly made clear on meet and confer calls that they only seek percipient testimony about ***facts***, not expert opinion and not a memory test requiring recitation of "all" documents. Following their December 8 call, Plaintiffs emailed narrowed language for Topics 2-3, 5, 20, 32, and 37, which Plaintiffs had already read aloud to Extreme and to which Extreme expressed no concerns. Ex. A. Plaintiffs also narrowed the definition of "Complete Basis" to exclude any request for "legal" bases, which narrowed Topics 15, 19-20, 27-30. *Id.* Not only did Extreme wait to respond to Plaintiffs' December 8 narrowing until the night before Christmas Eve, Extreme flatly rejected Plaintiffs' compromises and failed to propose any narrowing of its own, contending simply that "Extreme believes the topics are inappropriate as written." This is not how the meet and confer process is supposed to work, and it underscores that Extreme's goal is not to reach a reasonable compromise on the scope of topics, but instead is to avoid the topics wholesale. Extreme also took the position during the meet and confer calls (and in its portion of this statement) that several topics called for expert testimony. But when Plaintiffs asked Extreme to represent that its testimony regarding these topics would be limited to expert (rather than percipient) testimony, Extreme would not agree. Extreme cannot have it both ways.

As demonstrated below, the disputed topics easily satisfy Rule 26's broad standard of relevance. *See Allen v. Wyndham Vacation Resorts, Inc.*, No. 3:18-CV-259-TAV-DCP, 2021 WL 2434355, at *3 (E.D. Tenn. Mar. 18, 2021) ("the scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad"). They inquire into, *inter alia,* facts about: Extreme's use of Plaintiffs' copyrighted code, its understanding of and admissions about the contract it breached, and its knowledge of which products contain(ed) Plaintiffs' copyrighted software. These topics are entirely appropriate—including the topics seeking the factual bases for Extreme's defenses and positions. *See, e.g.*, *Invacare Corp. v. Respironics, Inc.*, No. 1:04 CV 1580, 2006 WL 8430767, at *2 (N.D. Ohio Dec. 29, 2006) (Rule 30(b)(6) depositions can inquire about facts regarding "nature and extent" of party contentions). Extreme asserts that Plaintiffs are inquiring about legal theories. But during the meet and confer process, Plaintiffs agreed in writing to limit their questions to ***facts***, even though courts have held it is proper to ask about a party's legal contentions. *Id.* (30(b)(6) deposition covers "both factual and legal" contentions); Ex. A at 10.

The disputed topics are reasonably particular and give Extreme ample notice as to how to prepare its witnesses. *Oak Point Partners v. Blue Cross Blue Shield of Mich.*, 2020 WL 6939667, at *1 (E.D. Mich. Nov. 25, 2020) (topics describing defendant's own factual knowledge and evidence in support of its defenses were reasonably particular). Rule 30(b)(6) expressly requires "reasonable particularity" in the notice, not "painstaking specificity" as Extreme claims. Its own cited case rejects the "painstaking" standard, reasoning it is "antithetical to the reasonable particularity language of Rule 30(b)(6)" and is "ill-suited as a useful judicial tool for resolving discovery disputes." *Green v. Platinum Restaurants Mid-Am.*, 2017 WL 11682937, at *7, *16,

1

n.22 (W.D. Ky. Oct. 24, 2017) ("reasonable" suggests "a certain amount of flexibility."). Despite Extreme's bald assertion, none of its cited cases hold that "complete basis" is improper for a 30(b)(6) topic. Plaintiffs also discussed their topics in detail during the meet and confer calls, and counsel for Extreme stated that he understood what information Plaintiffs sought in each disputed topic and never claimed he could not prepare a witness. *Id.* at *19 ("reasonable particularity" merely requires "it is not impossible for the organization deponent to meaningfully respond" given that "courts [] afford significant breadth in the draftsmanship of" topics."); *see id.* at *17-*21.

Plaintiffs remain willing to compromise, but compromise is a two-way street, and Extreme has offered nothing. When Plaintiffs give examples of information they seek, Extreme complains they are seeking too much (or implies it will limit its witnesses' preparation to just those subtopics as if they are a deposition on written questions). When Plaintiffs do not employ subtopics, Extreme complains.[1] Under no scenario should Extreme be able to wholesale avoid any of the topics; at most, this Court can order a narrowing, but Extreme should participate rather than ask for concessions, receive them, and ask for more without offering any constructive solution of its own.

**TOPICS 2-3:** These topics cover Extreme's knowledge about the Brocade License (Topic 2) and the 2001 Extreme License (Topic 3), which includes Extreme's interpretation of these licenses, the facts underlying the performance and alleged breach of the licenses, their negotiation history, and SNMP Research International Inc.'s ("SNMPRI") notices of breach and termination of these licenses. For context, this case arose from former defendant Brocade's unauthorized transfer of Plaintiffs' copyrighted software to Extreme during an asset sale. Brocade obtained that software pursuant to the Brocade License which prohibited Brocade from disclosing SNMPRI's source code to Extreme. Brocade disclosed it anyway, and Extreme used Plaintiffs' copyrighted software (including the source code) without authorization, leading to this lawsuit (Dkt. 1).

Separately, Extreme had entered into two licenses with SNMPRI: the 2001 Extreme License and a 1999 Enterasys License, each of which gave Extreme very limited use and distribution rights as to the copyrighted software. During discovery in this case, Plaintiffs uncovered that Extreme was not just improperly using Plaintiffs' copyrighted code that Extreme improperly obtained from Brocade: Extreme was *also* improperly using Plaintiffs' copyrighted code from the two license agreements (i.e., Extreme was exceeding the scope of the license grants). Plaintiffs amended their complaint to add a 2001 Extreme License breach claim, and a claim for fraud. Dkt. 244 ("AC").

Topics 2 and 3 concern the Brocade License and the 2001 Extreme License, which are plainly relevant to all three of Plaintiffs' claims: copyright infringement, breach of the 2001 Extreme License; and fraud. For instance, Extreme admitted in response to RFA 44 that it would be relying on the Brocade License in defense of this action. And Plaintiffs explained to Extreme that if it is going to rely on any fact testimony about either of these two licenses in its defense, then Plaintiffs are entitled to ask questions about Extreme's corporate knowledge regarding them, including its interpretation. Extreme would not confirm whether it would rely on such fact testimony. Topics 2 and 3 are also relevant because Extreme has produced emails concerning these two licenses, including its employees' interpretations of them. As to many of these emails, Extreme has relied upon them in a sworn response to an interrogatory (Interrogatory 8), which is discussed in a pending motion regarding Extreme's improper assertion of privilege. Indeed, during the meet and confer calls, Extreme's sole concern about Topics 2-3 was limited to privilege. But future privilege

---

[1] While Extreme complains about breadth, it unilaterally recrafted topics to its own liking, using language broader than anything Plaintiffs proffered. *See* Extreme's Obj. to Topic 26 ("Extreme will designate a witness knowledgeable about Extreme's finance software and financial records.").

objections do not show good cause for a protective order. *See, e.g.*, *EEOC v. Cracker Barrel Old Country Store*, No. 3:07-CV-376, 2009 WL 10694952, at *2 (E.D. Tenn. Feb. 5, 2009) ("blanket and preemptive privilege objections are premature" and should be raised with "specificity" at the deposition). Extreme's own cited case applies this rule. *Green*, 2017 WL 11682937 at *19. Plaintiffs are entitled to ask Extreme about its own disclosed emails (which are opposing party statements, not hearsay) concerning its rights and obligations under these licenses.

**TOPICS 5-6:** Topics 5-6 parallel Topics 2-3 and concern Extreme's knowledge about the 1999 Enterasys License, plus Extreme's analysis/testing of which products are encompassed by it. For context, Plaintiffs served Interrogatory 1 in December 2020, which asked Extreme to identify all products containing Plaintiffs' copyrighted software. Extreme refused to respond, and on April 22, 2022, the Court granted Plaintiffs' motion to compel and ordered Extreme to "fully respond" and identify all products containing the copyrighted software by May 13, 2022. Dkt. 131 at 9. Extreme violated that Order. It refused to identify what Plaintiffs later discovered were dozens of product families (and scores of actual products) containing the copyrighted software under the guise that Extreme need not identify any products for which it believed it had a "separate license agreement" from Plaintiffs. AC ¶ 90. Plaintiffs immediately conferred with Extreme, who finally informed Plaintiffs in July 2022 that the "separate license" was the "Enterasys License." *Id.* Yet Extreme had not paid royalties under that license for years and had previously represented in writing that its use under that license ended in 2011. *Id.* ¶¶ 90, 92. So Plaintiffs sent Extreme a notice of breach. Extreme then changed its story again and claimed that the "separate license" referred to in response to Interrogatory 1 was the 2001 Extreme License, not the Enterasys License.

Extreme argues that Topics 5-6 are "irrelevant" because Plaintiffs have not brought a breach claim for the 1999 Enterasys License. But Plaintiffs asserted a copyright claim that encompasses any product Extreme is using without a license, and *Extreme* initially invoked the 1999 Enterasys License as a purported license to use Plaintiffs' software. Extreme's change to its story doesn't immunize its prior assertion from discovery, as it could very well be that Extreme's current story is false (or that both conflicting stories are false). Also, when Plaintiffs asked during the meet and confer process if Extreme would argue that the 1999 Enterasys License gave it the right to use any of the copyrighted software, counsel for Extreme refused to take a position and invited Plaintiffs to serve an interrogatory. (Plaintiffs did serve an interrogatory on November 28, and now Extreme is refusing to answer it as purportedly "premature."). These topics most certainly meet the broad standard for discovery relevance this Court has repeatedly recognized. *See, e.g.*, Dkt. 131 at 6.

**TOPICS 10-11:** These topics concern which agreements Extreme believes are comparable to the Brocade License (Topic 10) and the 2001 Extreme License (Topic 11), including the factual basis for this contention, and all factual circumstances that Extreme contends are relevant to the determination of comparability. This goes to the issue of damages, at the very least. Indeed, Extreme has repeatedly invoked "comparable" licenses in its briefing to this Court. *See, e.g.,* Dkt. 135 at 7, 15, 16. Contrary to Extreme's argument in this statement, these topics are reasonably particular, as they are limited to the agreements that ***Extreme believes*** are comparable, using a descriptor ("comparable") that Extreme has invoked. Having no relevancy argument, Extreme claimed during the calls that this issue would be addressed by experts. But when Plaintiffs asked Extreme to represent that it is limited to an expert showing on comparability (in return for withdrawing this topic), Extreme would not agree. Ex. B at 2. Extreme cannot have it both ways.

**TOPICS 15, 17:** Topic 15 states: "For all revenues, costs and profits from the sale of the Products identified in Extreme's responses to SNMP Research Inc.'s Interrogatory numbers 1, 2 and 9, provide the Complete [factual] Basis for any assertion by You as to the elements of profit

attributable to factors other than the copyrighted work (within the meaning of 17 U.S.C. § 504(b))." Similarly, Topic 17 covers: "The value of SNMP Research Software in your Products, including the Products identified in Extreme's responses to SNMP Research Inc.'s Interrogatory numbers 1, 2, and 9." Again, Extreme does not dispute the undeniable relevance of these topics to, at the very least, damages. During the parties' calls, Plaintiffs gave Extreme examples of questions falling under these topics, such as whether Extreme has conducted competitive intelligence and Extreme's view of the importance of certain product features. Plaintiffs also repeatedly explained that they were only interested in the complete basis for *Extreme's* views on profits and value, and that their goal was not to get early expert testimony, but to close out Extreme on its *factual* positions. Extreme's only response during the parties' meet and confer was that Extreme would be providing expert testimony as to these topics. But when Plaintiffs asked whether Extreme would represent that it is limited to an expert showing on profits attributable (in return for Plaintiffs withdrawing Topic 15), Extreme would not agree. Ex. B at 2. Again, Extreme cannot have it both ways.

  **TOPIC 18**: Topic 18 covers Extreme's company-level financial information (including its income, assets, and liabilities) from 2001 to the present. As Plaintiffs explained on the December 8 call with Extreme, Plaintiffs need to understand the relationship between the financial representations in the publicly-reported financials (e.g. 10-Ks) and how those representations compare to the product level financials that Extreme produced for the infringing products. Plaintiffs made clear they are not expecting a memory test, and that they need someone who is already familiar with the company financials at a high level. *See FDIC v. Butcher*, 116 F.R.D. 196, 199 (E.D. Tenn. 1986), *aff'd*, 116 F.R.D. 203 (E.D. Tenn. 1987) (corporation "must make a conscientious good-faith endeavor to designate the persons having knowledge"). Extreme's argument on Topic 18 ignores these representations from Plaintiffs and frustrates the hours spent conferring. And while Extreme argues this topic requires a witness to know "voluminous and detailed company records," when it suited Extreme for other topics, it had no problem proffering a witness with knowledge on something even broader. *Supra* n.1 (designating witness knowledgeable about "financial records"). Extreme has also identified "financial information as reported in its SEC filings" in its sworn response to a key financial interrogatory, and Plaintiffs must be able to ask about such filings. Finally, Plaintiffs agreed to provide Extreme with more detail *before the deposition*, which they prepared over the holidays and sent this week. Ex. E.

  **TOPICS 19-20, 27-30:** Topic 19 requests a designee on the "Complete [factual] Basis for any defense, including any affirmative defense" that Extreme may assert. Relatedly, Topics 20 and 27-30 seek designees regarding the "Complete [factual] Basis" for why Extreme contends: that any of the copyrights are unenforceable against Extreme (Topic 20); that it is not infringing the copyrights identified in the complaint (Topic 27); that it did not breach the 2001 Extreme License as alleged (Topic 28); that it did not commit fraud as alleged (Topic 29); and that SNMPRI should have known that Extreme was using SNMP Research Software in more than one product (Topic 30). Plaintiffs are entitled to explore the full factual bases for all of Extreme's defenses. *Waldrop v. Johnson City*, No. 2:19-CV-00103-JRG, 2020 WL 13830612, at *2 (E.D. Tenn. Aug. 27, 2020) ("caselaw provides that a party may seek the factual basis for another party's claims or defenses via a Rule 30(b)(6) deposition"). Extreme invokes a Colorado document, but that is not national guidance, and courts in that very district disagree. *Erickson v. Lakewood*, 2021 WL 4947231 (D. Colo. Sept. 23, 2021) (using 30(b)(6) to "obtain[] the factual bases for a defendant's asserted position statements or affirmative defenses is not novel."). It is of no moment that Extreme has not answered the complaint. (Moreover, Extreme's claim that Plaintiffs have not provided their own contentions because they have not produced documents in response to RFPs 90 and 129

is incorrect, and Extreme did not even raise this issue during any calls.) The Court just stated that it "does not agree that the absence of an answer by Extreme makes it 'difficult (if not impossible) for Plaintiffs to take depositions and prepare expert reports' at this time." Dkt. 241 at 3. We are over 3 years into this case. Extreme knows what its defenses are, including their factual bases.

**TOPIC 32**: Topic 32 seeks testimony on what Extreme has done with Plaintiffs' copyrighted code, which impacts the copyright claim (given that every act of reproduction, preparation of derivative works, and distribution constitutes infringement) and the breach claim because the contract limited Extreme's use to specific circumstances. Plaintiffs provided detailed subcategories *to help Extreme prepare its witness*, and the topic is already limited to code containing SNMP Research Software. During the parties' calls, Extreme contended that if this topic required testimony as to the specific content of the code, it was improper. Plaintiffs confirmed this topic was not meant to address specific content, but instead addresses what Extreme has done with the code, when and where. Extreme still refused to produce a witness for the topic (or subcategories). It now argues this topic is a trap, which ignores the parties' lengthy discussions as well as reality. Extreme has "version history" showing who accessed the code and why:

> Version History
> 62.0   4/3/2015 9:07 PM   Vig, Dee   219.8 KB   Fixed formatting of monthly counters on top row.

*See* EXTREME-01082965. Extreme responded long ago to RFP 95 that it had produced this version history and was not withholding, but other than producing sporadic version history attached to emails, it still has not produced version history for the copyrighted code. Plaintiffs will move the Court if Extreme does not produce this history forthwith; its designee should be free to use this history at the deposition. Also, Extreme is well aware of its corporate practices for handling its highly-confidential source code, and the idea that it would be difficult to prepare a witness regarding who had access to the code, when, what they did with it, and where they stored it is just wrong. Extreme should not be permitted to hold back a designee on this key topic concerning its copying, breaches, and fraud.

**TOPIC 37**: This topic concerns "the development of Management Information Base objects in each release of EXOS software that contains SNMP Research Software." During the parties' meet and confer, Extreme never raised any issue with respect to the relevance of this topic (MIBs are tied to the use of SNMP; *see, e.g.,* Ex. C); and Extreme's counsel agreed that it "does not seem difficult to designate a witness here, but I want to identify and locate the right person who knows about it." Extreme should be ordered to designate a witness.

**TOPIC 40:** This topic states: "For each of the above subjects (1-39), the Identity of the persons at Extreme with the most knowledge regarding that subject." Extreme's sole request during the meet and confer was for "clarification" that this request did not require one witness to memorize all persons most knowledgeable for the other topics, but instead just required each designee to disclose the persons most knowledgeable at Extreme for the topics that the particular designee was covering. Plaintiffs provided this clarification in writing. Ex. A at 8. Yet Extreme still refused to produce a witness, without explanation. This is improper. *See generally Reynolds v. Knox Cnty. Gov't*, No. 3:17-CV-79-HSM-DCP, 2018 WL 5023323, at *3 (E.D. Tenn. Oct. 16, 2018) (denying protective order where topics asked for the names of employees "who had knowledge" of certain conduct relevant to the case""). Indeed, if Extreme's 30(b)(6) witnesses do not know who at the company has the most knowledge regarding the subjects they are purporting to cover, then the witnesses (and Extreme) are not adequately preparing.

## II. Extreme's Request To Limit Its 30(b)(6) Depositions To 21 Hours Should Be Denied

Extreme's requested 21-hour limit (for which Extreme bears the burden of showing good cause) is counter to the Federal Rules, disregards the complexity of this case and the concomitant number of 30(b)(6) topics at issue, and is premature given that Extreme has yet to designate deponents for nearly half of Plaintiffs' 30(b)(6) topics.

Extreme has already identified four 30(b)(6) deponents, and that only covers 21 of Plaintiffs' 40 topics. Under the Federal Rules, those four deponents may each be deposed for seven hours, and an additional seven hours is provided for each additional designated witness (absent agreement or an order finding good cause). *See* Fed. R. Civ. P. 30(d)(1) (Adv. Comm. Notes 2000 Am.) ("For purposes of [the seven-hour] durational limit, the deposition of each person designated under Rule 30(b)(6) should be considered a separate deposition" and altering this time limit requires "good cause"); *see also Patterson v. N. Cent. Tel.*, 2013 WL 5236645, at *4 (M.D. Tenn. Sept. 17, 2013) ("[E]ach separate witness who is designated to testify under this deposition notice should be considered to be a separate deposition for purposes of this durational limit."); *United States ex rel. Bibby v. Mortg. Invs. Corp.*, No. 1:12-CV-4020-AT, 2017 WL 8222659, at *2 (N.D. Ga. Oct. 12, 2017) (adopting Adv. Comm. Note); Wright & Miller, Federal Practice and Procedure § 2104.1 (3rd Ed. 2023) (citing Adv. Comm. Note). But Extreme has proposed a durational limit that would override Rule 30 and restrict Plaintiffs to a total of **31.5 minutes per 30(b)(6) topic**. This is an arbitrary and insufficient limit, particularly in a complex case where the issues span multiple contracts, numerous claims, and more than two decades of misconduct. *See, e.g., Esso Expl. & Prod. v. Nigerian Nat'l Petroleum Corp.*, 2018 WL 11217859, at *1 (S.D.N.Y. Oct. 12, 2018) ("NPC offers two witnesses: Witness I, who will testify for up to seven hours in one day on four topics, and Witness II, who will testify for up to seven hours in one day on 14 topics. That leaves Petitioners with an average of 30 minutes to question Witness II about each topic. That is insufficient."). Extreme has repeatedly emphasized the complexity of this case, the long time period at issue, and the extensive discovery this necessitates. *See e.g.* Dkt. 148 at 8 ("This is a complex case involving extensive written and document discovery to propound, respond to, and review; massive amounts of source code to analyze; and likely a large number of expert witnesses who will need to prepare detailed written reports and be deposed."). Extreme urges the Court to follow *Smith v. Smith*, 2020 WL 1933820, at *6 (E.D. Mich. Apr. 22, 2020). But *Smith* is not informative because it does not discuss the size and complexity of the case (it appeared to be a fairly simple dispute over purported "excessive compensation" paid to executives), so it tells the Court nothing about the appropriate scope of 30(b)(6) depositions here.

Plaintiffs have no intention to, or incentive to, unnecessarily drag out 30(b)(6) depositions or to inconvenience Extreme's witnesses (for instance, the four 30(b)(6) witnesses Extreme has agreed to produce are being offered in Boston, San Francisco, and Kansas City, necessitating extensive travel by Plaintiffs' counsel despite the fact that the key contract at issue in this case has an exclusive venue/jurisdiction clause in Knoxville). Plaintiffs will be efficient in taking the 30(b)(6) depositions and indeed must be given the very limited time between these depositions and Plaintiffs' opening expert report deadline (currently April 2). And if after the first few 30(b)(6) depositions take place Extreme believes otherwise, it can seek a protective order at that time and make the required good cause showing. But imposing a 21 hour time limit now in a complex case like this would be arbitrary and would unduly restrict discoverability of highly relevant and certainly-discoverable information.

### III. Plaintiffs' Opening Expert Report Deadline

Plaintiffs respectfully request a brief extension of their opening report deadline from April 2, 2024 to April 30, 2024—the same expert report deadline as Extreme. As this Court is aware, it has had to order Extreme to provide written discovery on multiple occasions. *See, e.g.,* Dkts. 131, 229. Yet Extreme still delayed in producing significant discovery and continued to produce more documents well into the Fall of 2023. Plaintiffs eventually had to move for relief on September 1, 2023, and only after the Court agreed to hear the issues did Extreme finally agree to resolve most of them. *See* Ex. D (Plaintiffs' September 1, 2023 letter brief, Ex. 3 at pp. 2-4). This delayed Plaintiffs' ability to notice a 30(b)(6) deposition.

On October 31, 2023, Plaintiffs served a 30(b)(6) deposition notice and sought to meet and confer over any available dates Extreme had in November, December and the beginning of January. However, Extreme ignored Plaintiffs until November 17, and after that, it delayed meeting and conferring. Extreme also would not reserve dates with its witnesses while the meet and confer was being conducted. Extreme also waited until the week before Christmas to indicate that it intended to seek relief from the Court on 18 topics, despite having never once indicated it would do so in several hours of meet and confer calls. All of this delay has led to 30(b)(6) depositions occurring well into February, and there are still 18 more topics to address. That leaves Plaintiffs too little time to take the necessary depositions, have their experts formulate opinions based upon the information disclosed, and then coordinate those opinions (Plaintiffs have five experts, with overlap in work). Just as an example, even if all 30(b)(6) depositions (including the 18 disputed topics) are completed by the end of February, Plaintiffs' experts will have just one month to assimilate the information on forty topics into five expert reports that overlap in work. The disputed topics include Extreme's handling of the copyrighted source code, its defenses, and its understanding of the licenses at issue (including its employees' emails discussing the licenses). Each and every one of the disputed topics touch and concern Plaintiffs' expert report fact gathering and affect how their experts will draft the reports.

There is no prejudice to Extreme from a simultaneous exchange of opening and rebuttal expert reports. Indeed, that is precisely what Rule 26 contemplates. Extreme contends it is prejudiced because it is entitled to see Plaintiffs' expert reports first on the purported basis that Plaintiffs "carry the burden." That is incorrect. Courts routinely order simultaneous exchanges for opening expert reports (and Extreme initially agreed to simultaneous report deadlines in this case; *see* Dkt. 46 at 5). Moreover, Extreme already has the opportunity to respond to Plaintiffs' positions via its rebuttal reports. Additionally, there are a variety of issues for which ***Extreme*** actually carries the burden, including but not limited to its deductible expenses and profits attributable under the Copyright Act and each and every one of its affirmative defenses, such as statute of limitations and purported copyright unenforceability. In any event, Plaintiffs have undeniably been prejudiced by Extreme's delay, and that prejudice far outweighs any prejudice Extreme could possibly suffer simply by having Plaintiffs' opening expert report deadline extended 28 days to the very same day Extreme's opening expert reports are due.

**Extreme's Inserts To The Joint Statement**

SNMPR served a Rule 30(b)(6) Notice on Extreme with 40 topics. Ex. A. Nearly every topic was improper and required painstaking negotiation in an attempt to arrive at a reasonably particular scope of examination, as required by Rule 30(b)(6). Eventually, the parties agreed on 22 topics. *See* Appendix A.[2] The current dispute is limited to 18 topics. Extreme requests a protective order against taking a deposition of Extreme on each of these topics.

**Legal Standards:** Rule 30(b)(6) requires that the party seeking to depose a corporation must, *in its deposition notice*, "describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). For Rule 30(b)(6) to function, areas of inquiry in the notice must be designated with "painstaking specificity." *Georgia-Pacific Consumer Prods., LP v. NCR Corp.*, 2015 WL 11236844, at *1 (W. D. Mich. Feb. 23, 2015). The "reasonable particularity" requirement ensures that a corporation can designate a witness (or witnesses) and prepare them to testify adequately about those topics. *Mitchell v. Arnold*, 2023 WL 7711478, at *5 (W.D. Ky. Nov. 15, 2023). "The test for reasonable particularity is whether the request places the [deponent] upon reasonable notice of what is called for and what is not." *Alvey v. State Farm Fire & Cas. Co.*, 2018 WL 826379, at *7 (W.D. Ky. Feb. 9, 2018). Courts routinely reject 30(b)(6) topics that seek "all facts," ask for the "complete basis" of a claim, or include language like "including but not limited to," as such overbroad, expansive topics do not "describe with reasonable particularity the matters for examination." *See, e.g.*, *Green v. Platinum Restaurants Mid-Am., LLC*, 2017 WL 1168297, at *19 (W.D. Ky. Oct. 24, 2017) (striking "including but not limited to" from all 30(b)(6) topics); *Alvey*, 2018 WL 826379, at *7 (striking "all facts, information, and documents" from 30(b)(6) topics).

Courts applying Rule 30(b)(6) also disapprove of "demands that a corporate designee be prepared to speak with encyclopedic authority." *CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, 322 F.R.D. 350, 361 (N.D. Ia. 2017). "[D]epositions under 30(b)(6) are not meant to be traps in which the lack of encyclopedic memory commits an organization to a disadvantageous position." *Walls v. Union Pac. R.R. Co.*, 2022 WL 4082143, at *5 (D. Neb. Sept. 6, 2022). A topic that can be answered only with encyclopedic knowledge and immediate recall is overbroad, unduly burdensome, and not the appropriate subject of a 30(b)(6) deposition. *Cf. Adkisson v. Jacobs Eng'g Grp., Inc.*, 2020 WL 8254453, at *5–6 (E.D. Tenn. Nov. 23, 2020) (finding 30(b)(6) topics seeking detailed financial information and internal reports were better addressed through written interrogatories).

Contentions and conclusions are also considered beyond the proper scope of 30(b)(6) depositions. "Depositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories." *JPMorgan Chase Bank v. Winget*, 2016 WL 7242136, at *4 (E.D. Mich. Dec. 15, 2016); *see also Wilmington Trust, Nat'l Assoc. v. Samcom 48 (DE) LLC*, 2022 WL 17977499, at *5 (E.D.N.Y. Dec. 28, 2022) (finding that defendants' "thinly veiled attempts . . . to discern plaintiff's legal theories . . . constitute[d] an improper use of a Rule 30(b)(6) deposition"). There

---

[2] Plaintiffs' claim that Extreme stated that it "understood what information [they] sought in *each* disputed topic" and did not raise concerns with Plaintiffs' proposed narrowing is inaccurate and mischaracterizes hours of meet and confers. In fact, Plaintiffs acknowledged during the meet and confers that many of their topics were overbroad and offered to narrow them. Yet Plaintiffs' proposed revisions were merely cosmetic, for example changing "including but not limited to" to "including" or requesting the "complete" factual basis on a topic rather than the complete factual *and* legal basis. *See* Ex. B (Prabhakar 12/22 Eml. to Weber). At the last hour, Plaintiffs claimed for the first time in months that they "remain willing to compromise," and "Extreme has offered nothing." On many disputed topics, Extreme offered meaningful narrowing (*e.g.* 18 and 32) and alternatives (*e.g.,* Topics 2, 3, 40), which Plaintiffs rejected.

are at least two sound reasons for this limitation. First, a 30(b)(6) designee, who "is typically not a lawyer, is not well-suited to answer questions about the legal consequences of certain facts." *Cook v. Lynn & William, Inc.*, 344 F.R.D. 149, 157 (D. Mass. 2023). Second, "[a]ny such testimony also runs a substantial risk of disclosing protected attorney work product." *Id.*

**Topic Nos. 2 and 3:** These topics seek testimony about practically everything having to do with two licenses entered in 2001—one of which Extreme is not even a party to (the SNMPR-Brocade license)—including the licenses' "interpretation," "performance," "alleged breach," and "termination." If this were a breach of contract case concerning these licenses, the topics would be fairly characterized as "everything." Plaintiffs do not identify with the "painstaking specificity" courts require, *E.E.O.C. v. Thorman & Wright Corp.*, 243 F.R.D. 421, 426 (D. Kan. 2007), what fact testimony they seek about the licenses over a 21-year period. Preparing a witness on all facts concerning anything about the licenses would be enormously burdensome, if not impossible.

Furthermore, by using legal terms like "performance," "breach," and termination, these topics also improperly seek from a lay witness legal interpretations of and conclusions about the licenses. Therefore, these topics "run[] a substantial risk" of either disclosing privileged information or producing no usable testimony at all. *See Cook*, 344 F.R.D. at 157. Practically speaking, at best these topics might mine an ounce of facts from tons of privileged information, inviting instructions not to answer and all but guaranteed motion practice thereafter. A fact witness is not well-positioned to provide information on fundamentally legal questions, and the information Plaintiffs may seek is obtainable through less burdensome and more convenient forms of discovery, such as an interrogatory request. *See Adkisson*, 2020 WL 8254453, at *5–6.[3]

During the meet and confers, Plaintiffs said they are interested in exploring non-privileged emails about the two licenses exchanged between Extreme employees. If so, then Plaintiffs could have narrowed these topics substantially, but refused to do so. Further, if Plaintiffs want to ask what someone meant in an email, they should depose the witnesses involved in those emails. A corporate designee should not be required to provide testimony that would bind Extreme based on the designee's interpretation of communications they did not send. *Cf. Cooley v. Lincoln Elec. Co.*, 693 F. Supp. 2d 767, 791-92 (N.D. Ohio 2010) (corporate designee cannot offer hearsay testimony).

**Topic Nos. 5 and 6:** These two topics seek testimony related to a license between SNMPRI and Enterasys, a company Extreme acquired in 2014, and products covered under that respective license. In addition to all of the problems present in Topics 2 and 3 that are also present with respect to these two topics, Topics 5 and 6 are also plainly irrelevant. The Amended Complaint does not include a single allegation against Extreme having to do with the Enterasys license. Furthermore, although Plaintiffs have had all the source code, install images, and document discovery relating to the Enterasys products for months now, they have neither asserted a claim nor identified any facts in their initial disclosures (which Plaintiffs just amended on December 15, 2023) or interrogatory responses that reflect any claim based on the Enterasys license.[4] These topics about the Enterasys License and products are improper because they seek testimony that has no relevance to any claim in this case. *Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 123 (E. D.

---

[3] The scope of privilege between Extreme and Brocade over communications about the Brocade license is currently before the Court. A deposition on Topic 2 at this stage will inevitably lead to objections and further motion practice. This uncertainty is another basis for a Protective Order.

[4] Plaintiffs' argument that Extreme may "change" its "current story" to rely on the Enterasys license is not just entirely speculative, but contradicted by the record. Extreme has already made clear to Plaintiffs that any previous invocation of the license was in error. *See* Ex. C.

Mich. 2019) (rejecting speculative topics not important to resolve issues in the case).

**Topic Nos. 10, 11, 15, and 17:** Topics 10 and 11 seek testimony on "All agreements [Extreme] believe[s] are comparable" to the Brocade License and the Extreme License respectively, the basis for any such comparison, "and all factual circumstances [Extreme] contend[s] are relevant to the determination of comparability." These topics are not reasonably particular because, in inquiring about "all agreements" that are "comparable" to the Brocade or Extreme License without any further definition or explanation of what constitutes a "comparable" agreement, Plaintiffs seek testimony on a virtually limitless range of unknown agreements that would require more than encyclopedic knowledge from any witness Extreme might designate.

Comparing licensing agreements (Topics 10 and 11), apportioning profits to "factors other than the copyrighted work" (Topic 15), and determining the "value of SNMP Research Software" in Extreme products (Topic 17[5]) quintessentially calls for either legal or expert opinion. 30(b)(6) depositions "are designed to discover facts, not contentions or legal theories," *Winget*, 2016 WL 7242136, at *4. The question of what agreements might be "comparable" to the licenses at issue in this case and why is a matter of contract interpretation that ultimately calls for legal or expert opinions, not fact testimony of a lay employee. Plaintiffs can learn what Extreme contends are relevant to these topics by reviewing Extreme's expert reports and deposing Extreme's experts.[6]

Topic 15 is further problematic because it demands the "Complete Basis" of any assertion by Extreme that profits from Extreme's products are "attributable to factors other than the copyrighted work (within the meaning of 17 U.S.C. § 504(b))." Plaintiffs' demand for "Complete Basis" alone renders this topic unreasonable. Rule 30(b)(6) depositions are not intended to be "memory tests" in which a deponent is asked to recall every single detail related to a topic. *Gebremedhin v. Am. Family Mut. Ins. Co.*, 2015 WL 4272716, at *10 n.6 (D. Colo. July 15, 2015). To prepare a witness adequately would require that witness to learn the meaning and import of 17 U.S.C. § 504(b) and then memorize the "comprehensive description of [Extreme's] factual bases," which encompasses (1) "Identity of *all* evidence," including Bates numbers, dates, and recipients of all documents, and (2) "Identity of *all* Persons with knowledge," including detailed information about each person. *See* Ex. A, at 8 ("Complete Basis"). Court have found that topics requiring this kind of information lack reasonably particularity. *Alvey*, 2018 WL 826379, at *7.

**Topic No. 18:** The topic demands testimony about "Extreme's company-level financial information (including but not limited to its income, assets, and liabilities)" over a 22-year period. It therefore lacks reasonable particularity and calls for irrelevant information. The topic contains multiple "includes, without limitation" and "including but not limited to" phrases that open the door to any number of subtopics and fails to identify the outer limits of the subject matter at issue. *See Green,* 2017 WL 1168297, at *19. The topic also requires a witness to memorize and recall voluminous and detailed company records. *See Adkisson*, 2020 WL 8254453, at *5-6.

The topic also seeks irrelevant testimony. The accused products in this case are a subset of Extreme's wired switches. Extreme sells numerous other products and services that are not wired switches and are outside the scope of this case. By seeking financial information at the "company-

---

[5] The factual portion of Topics 15 and 17 that relates to value of SNMP Research software overlaps with Topic 13 (*e.g.*, features . . . are emphasized or targeted in any marketing; talking points; info. about competing products; points of parity and difference with competing products).

[6] Because of the striking breadth of the topics, *as written by Plaintiffs*, Extreme cannot bind itself to the position that there will be no relevant fact testimony on these subjects.

level," the topic sweeps in large amounts of information that is irrelevant to this case. And any financial information that is relevant to this case is already covered by other financial topics for which a witness has been designated. For example, Topics 14 and 16 seek testimony about financial information directly relevant to Extreme's products at issue in this case, like revenues, profits, sales volumes, and methods for calculating them. *See, e.g.*, Topics 14 and 16. After agreeing (in writing) to narrow this topic weeks ago, only yesterday Plaintiffs sent a page-long email listing nine subparts to "help prepare [Extreme's] witness," without actually narrowing the topic. Ex. D (Weber 1/4/24 Eml. re. Topic 19).

**Topic No. 19:** Of all of the Topics in dispute, this one is the most improper. Topic No. 19 asks for "The Complete Basis for any defense, including any affirmative defense, [Extreme] may assert."[7] Extreme objects to this Topic as overbroad, unduly burdensome, and inconsistent with Rule 30(b)(6)'s reasonable particularity requirement because it asks Extreme to articulate the "complete basis" of "any defense." The problems with this topic are numerous. First, a topic asking a witness to testify about any and all defenses a defendant plans to assert lacks reasonable particularity on its face. *See, e.g.*, *Elsherif v. Mayo Clinic*, 2020 WL 5015825, at *2 (D. Minn. Aug. 25, 2020) (finding that a topic requesting "[t]he factual and legal bases for [the defendant's] affirmative defenses" was "exactly the type of overbroad discovery inquiry rejected by this and other courts" under Rule 30(b)(6)); *Cesari S.rL. v. Peju Province Winery L.P.*, 2020 WL7261105, at *3 (S.D.N.Y. Dec. 10, 2020) (finding that a topic on "the affirmative defenses set forth in the Answers" was "simply too vague to comply with Rule 30(b)(6)'s" reasonable particularity requirement). In fact, "All facts and documents, as well as the identity of all persons with knowledge of facts which support your affirmative defenses" is the very first example that Colorado district court judges use when listing "problematic" 30(b)(6) subjects. *See* Ex. E ("What to Know About Rule 30(b)(6) Depositions"). Second, Extreme's motion to dismiss hasn't been ruled on, so Extreme has not yet determined its affirmative defenses—which will depend in large part on whether its motion is granted. This renders the topic overbroad and impermissibly vague when Extreme does not know what claims will remain in the case and what its affirmative defenses will be. Third, no human being could ever identify each and every fact, document, and/or person that may be germane to each of Extreme's defenses (see definition of "Complete Basis" & and *infra at* Topics 10, 11, and 15), which would call for the "memory test" requiring "encyclopedic authority" that courts prohibit.

**Topic No. 20:** Topic 20 seeks the "Complete Basis for [Extreme's] contention" that Plaintiffs' "copyrights and/or copyright registrations are unenforceable against Extreme." It is not reasonably particular and calls for expert opinion, not fact testimony. Plaintiffs use of "Complete Basis" alone renders this topic not reasonably particular. *See* Topics 10, 11, and 15, *supra*. And while Plaintiffs' copyright registrations are discernable, Plaintiffs have not identified with specificity any other unregistered "copyrights." That further renders the topic non-particular. Moreover, the Topic does not seek Extreme fact testimony; at best it seeks expert opinion. No Extreme designee would even have the factual knowledge of Plaintiffs' copyrights and copyright registrations to testify on this Topic, much less the legal knowledge it calls for.

**Topic Nos. 27-30:** These topics seek the "Complete Basis" for Extreme's contentions related to various claims in this case. Plaintiffs use of "Complete Basis" alone renders these topics not

---

[7] In the notice of deposition, Plaintiffs defined "Complete Basis" as including a "comprehensive description of legal and factual bases" of the topic at issue. *See* 30(b)(6) Notice to Extreme ¶ 20. In a subsequent meet and confer, Plaintiffs agreed to strike only "legal" from this definition.

reasonably particular. *See* Topics 10, 11, and 15, *supra*. These topics have other incurable problems. Plaintiffs, who bear the burden of proof on the issues addressed in these topics, have not provided their contentions and document discovery on these issues. Requiring Extreme to produce a witness before Plaintiffs have provided their contentions impermissibly and unfairly shifts the burden of proof on Extreme. Furthermore, Plaintiffs have not produced documents in response to Extreme's document requests on these topics. *See, e.g.*, Extreme RFP Nos. 90, 129. If Extreme designates witnesses on these topics before Plaintiffs produce the requested documents, the testimony of Extreme's witness would be incomplete, creating admissibility issues later in the case.

These topics are also not reasonably particular and unduly burdensome to prepare a witness for. The factual information relevant to Topic No. 27 encompasses three different product lines (comprising over 50 products), three license agreements, only one of which Extreme was a party to, and thousands of source code versions spanning over 22 years. Topics 28 and 29 implicate legal and expert opinion about the scope of the 2001 Extreme License. The factual information relevant to this topic also encompasses testimony about engineering and royalty reporting, for which Extreme has already designated three witnesses. For example, Topics 4, 36, and 38, cover facts about Extreme's products, and Topics 35 and 39 cover facts about Extreme's royalty payments and reporting, all of which also relate to Topics 28, 29, and 30.

**Topic No. 32:** This topic seeks information on the "source, possession, and custody of every copy (including without limitation every identical copy) of Source Code containing SNMP Research Software." For context, Extreme has produced around 1200 copies of source code in this case, some developed over 20 years ago, and some developed decades ago by other companies before Extreme acquired them. The topic has six subtopics that demand encyclopedic knowledge from a witness—information regarding *every* hard drive, thumb drive, CD, DVD, PDA, smartphone, tablet, computer, server, repository, database, and email where the Source Code was ever stored; about any action (i.e., access, transfer, copy, or modification) any employee past or present took related to any Source Code copy, and when and why each employee performed that action. The topic is a litigation trap. *Walls*, 2022 WL 4082143, at *5 (a 30(b)(6) deposition is not a trap in which the lack encyclopedic knowledge disadvantages a corporation). No human could learn and testify about what was done with the non-specific book-keeping information spanning 1200 copies of source code spread over 20 years, which is what this topic demands. *Gebremedhin,* 2015 WL 4272716, at *10 n.6 (D. Colo. July 15, 2015) (30(b)(6) depositions are not memory tests).

**Topic No. 37:** This topic seeks information about the "development of Management Information Base objects" (MIB object), which have no relevance to this case as Extreme asserted in its written objections and during meet and confers: Plaintiffs have no copyright registration for MIB objects, and MIB objects are not even mentioned in the complaint, Plaintiffs' recently supplemented initial disclosures, or their interrogatory responses. The topic also seeks testimony about developing MIB objects generally, without tailoring the topic to any issue in this case. *Edwards*, 331 F.R.D. at 123 (burden of preparing a witness on a speculative topic outweighs the likely benefit).

**Topic No. 40:** Topic No. 40 requests that Extreme designate a witness who can speak to the "Identify of the persons at Extreme with the most knowledge" regarding all of the other topics. This is yet another textbook example of an improper 30(b)(6) topic. *See* Ex. E, at 4.E. Plaintiffs' purported "clarification" simply shifts the burden of this topic from one witness to multiple witnesses, without addressing the inherently subjective determination about "persons . . . with most knowledge" about already overbroad deposition topics. Unlike *Reynolds*, where the topics asked for persons with knowledge about specific conduct, here Plaintiffs ask for people with most knowledge about broad areas of examination.

# Extreme's Inserts To The Joint Statement

## Cumulative Time Limit on Plaintiffs' 30(b)(6) Notice

Depositions under Plaintiffs' 30(b)(6) Notice should be subject to a cumulative time limit of 21 hours, with the 21 hours covering the 21 topics for which depositions have already been scheduled and any of the 18 topics before the Court for which Extreme may be ordered to designate a witness.

Federal courts, including courts in this circuit, routinely limit cumulative testimony under a Rule 30(b)(6) notice for good cause regardless of the number of witnesses designated by a corporation. *See, e.g.*, *Smith v. Smith*, 2020 WL 1933820, at *6 (E.D. Mich. Apr. 22, 2020) (limiting cumulative testimony of four designees to not exceed 14 hours); *Buie v. District of Columbia*, 327 F.R.D. 1, 15 (D.D.C. 2018) (limiting cumulative testimony under the notice to 18 hours regardless of the number of designees); *Unknown Party v. Arizona Bd. of Regents*, 2021 WL 2291380, at *8 (D. Ariz. June 4, 2021) (limiting cumulative testimony under the notice to 14 hours regardless of the number of designees); *In Re Rembrandt Techs.*, 2009 WL 1258761, at *14 (D. Colo. May 4, 2009) (limiting cumulative testimony under the notice to 10 hours regardless of the number of designees). One district has even set a local rule that limits the duration of 30(b)(6) testimony for all corporate designees to not exceed 7 hours. *See* D. Utah Civ. L.R 30-2(a)(2)(B). "A blanket rule permitting a seven-hour deposition of each designated deponent is unfair because it rewards broader deposition notices and penalizes corporate defendants who regularly maintain business information in silos." *In Re. Rembrandt Techs.*, 2009 WL 1258761, at *14. Courts have discretion under Rule 30(d)(1) to set a cumulative time limit on 30(b)(6) depositions, and in setting these limits courts have given no weight to the Advisory Committee notes indicating that each deposition of each designee under Rule 30(b)(6) is considered a separate deposition in the first instance. *See, e.g.*, *Smith*, 2020 WL 1933820, at *6 (permitting a seven-hour deposition of each of the four designees will render the Rule 30(b)(6) deposition excessively long); *In Re. Rembrandt Techs.*, 2009 WL 1258761, at *14.

Extreme requests a time limit of 21 hours for cumulative 30(b)(6) testimony under Plaintiffs' subpoena. Though Plaintiffs emphasize the general complexity of this case and the number of overlapping topics they have proposed, Plaintiffs' deposition topics ultimately concern three kinds of business information: finance, sales and marketing, and engineering. The limit of 21 hours allows Plaintiffs up to 7 hours of deposition testimony on each kind of business information. The proposed limit is flexible because Plaintiffs can allocate the 21 hours across depositions in whatever way they deem appropriate for their case. The proposed limit also does not penalize Extreme for maintaining business information in silos nor does it reward Plaintiffs for serving an enormously broad deposition notice on Extreme.

Plaintiffs have proposed 40 hours of cumulative time for the first seven designees, but this is unreasonable and unworkable for at least four reasons. First, a week of potential deposition testimony is excessively long and burdensome. *See Smith*, 2020 WL 1933820 (permitting a seven-hour examination of each of four designees renders the 30(b)(6) deposition excessively long). Second, Plaintiffs seem to suggest they get 40 hours even if Extreme designates four witnesses (and the possibility that each deposition day may last for up to ten hours); this makes no sense. Third, none of the courts Extreme has surveyed that has set a cumulative limit on Rule 30(b)(6) testimony has allowed up to 40 hours of deposition testimony or has set the time limit contingent on the number of designees as Plaintiffs' proposal does. Courts have in fact done the opposite; that is, they have set a cumulative time limit regardless of the number of designees. Finally, Plaintiffs' demand for 40 hours for seven designees would encourage Plaintiffs to be inefficient in examining the witnesses and rewards them for serving an overbroad notice with numerous topics.

Extreme's proposed limit of 21 hours is fair and reasonable for both sides.

**Extreme's Inserts To The Joint Statement**

**Extreme's Statement Plaintiffs' Expert Report Deadline**

During the December 21, 2023 discovery conference, the Court did not order briefing on this dispute. 12/21 Hr'g. Tr. at 12:17-22. The parties also could not come to an agreement on briefing this issue now. Extreme's December 29, 2023 submission to the Court (recited below) stated the several reasons—none of which has materially changed—for why this issue is not ripe for briefing yet:

> Extreme asked Plaintiffs for specific reasons why they needed more than two months' time to incorporate 30(b)(6) testimony into expert reports. All Plaintiffs have said is that "this timing prejudices Plaintiffs substantially. It delays the investigation and preparation of Plaintiff's expert reports and sets back this process by months."
> The premise of Plaintiffs' requested extension is that Extreme has acted inappropriately somehow, which Extreme has not. Plaintiffs' requested schedule change prejudices Extreme because, among other things, Plaintiffs want to decrease Extreme's time to review and assess Plaintiffs' expert reports by 28 days in advance of submitting its own reports, which would unilaterally undo their agreement with Extreme on a case schedule, including having staggered expert reports, that the parties had negotiated and proposed to the Court less than a year ago. See ECF No. 238, at ¶ 24.

Extreme maintains that it is improper for Plaintiffs to impose informal briefing that the Court has not ordered and the parties have not agreed upon. Should the Court order briefing on this issue, Extreme will set forth its position.

Respectfully submitted,

Dated: January 5, 2024         By: /s/ *John L. Wood*
                                   John L. Wood, Esq. (BPR #027642)
                                   Cheryl G. Rice, Esq. (BPR #021145)
                                   Rameen J. Nasrollahi, Esq. (BPR #033458)
                                   EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
                                   900 S. Gay Street, Suite 1400
                                   P.O. Box 2047
                                   Knoxville, TN 37902
                                   (865) 546-0500 (phone)
                                   (865) 525-5293 (facsimile)
                                   jwood@emlaw.com
                                   crice@emlaw.com
                                   rnasrollahi@emlaw.com


                               By: /s/ *A. Matthew Ashley*
                                   A. Matthew Ashley (CA Bar. No. 198235)
                                   Morgan Chu (CA Bar. No. 70446)
                                   David Nimmer (CA Bar. No. 97170)
                                   Olivia L. Weber (CA Bar. No. 319918)
                                   IRELL & MANELLA LLP
                                   1800 Avenue of the Stars, Suite 900
                                   Los Angeles, California 90067-4276
                                   (310) 277-1010 (phone)
                                   (310) 203-7199 (facsimile)
                                   mchu@irell.com
                                   dnimmer@irell.com
                                   mashley@irell.com
                                   oweber@irell.com

                                   *Attorneys for Plaintiffs*
                                   *SNMP Research International, Inc. and*
                                   *SNMP Research, Inc.*

Respectfully Submitted,

/s/ *Abraham A. Tabaie*

| | |
|---|---|
| Charles B. Lee, BPR# 011570<br>Jessica Malloy-Thorpe, BPR# 035234<br>Jordan B. Scott, BPR# 037795<br>MILLER & MARTIN, PLLC<br>832 Georgia Avenue<br>1200 Volunteer Building<br>Chattanooga, Tennessee 37402<br>Tel: (423) 756-6600<br>Fax: (423) 785-8293<br>clee@millermartin.com<br>jessica.malloy-thorpe@millermartin.com<br>jordan.scott@millermartin.com | John M. Neukom (*admitted pro hac vice*)<br>Abraham A. Tabaie (*admitted pro hac vice*)<br>Barbara N. Barath (*admitted pro hac vice*)<br>Saurabh Prabhakar (*admitted pro hac vice*)<br>Alicia J. Ginsberg (*admitted pro hac vice*)<br>DEBEVOISE & PLIMPTON LLP<br>650 California Street<br>San Francisco, California 94108<br>jneukom@debevoise.com<br>bnbarath@debevoise.com<br>(415) 738-5700<br><br>Leslie A. Demers (*admitted pro hac vice*)<br>SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP<br>One Manhattan West<br>New York, New York 10001<br>leslie.demers@skadden.com<br>(212) 735-3000<br><br>Sy Damle (*admitted pro hac vice*)<br>LATHAN & WATKINS LLP<br>555 Eleventh Street NW, Suite 1000<br>Washington, DC 20004<br>(202) 637-2200<br><br>*Attorneys for Extreme Networks, Inc.* |