# Exhibit F

# Excerpts of the Rule 30(b)(6) Deposition of Mr. DeBacker

```
 1            IN THE UNITED STATES DISTRICT COURT
 2           FOR THE EASTERN DISTRICT OF TENNESSEE
 3    _____
                                      )
 4    SNMP RESEARCH, INC. and SNMP    )
      RESEARCH INTERNATIONAL, INC.,   )
 5                                    )
              Plaintiffs,             )
 6                                    )
         vs.                          ) Case No.
 7                                    ) 3:20-cv-00451-
      BROADCOM INC., BROCADE          ) CEA-DCP
 8    COMMUNICATIONS SYSTEMS LLC,     )
      and EXTREME NETWORKS, INC.,     )
 9                                    )
              Defendants.             )
10    _____)
11
12
13
14               HIGHLY CONFIDENTIAL
15      VIDEORECORDED DEPOSITION OF DANIEL DeBACKER
16             San Francisco, California
17           Wednesday, February 14, 2024
18                   Volume I
19
20
21    Reported by:
      CHRIS TE SELLE
22    CSR No. 10836
23    Job No. 6394359
24
25    PAGES 1 - 228
```

                                              Page 1

                       Veritext Legal Solutions
                   Calendar-CA@veritext.com 866-299-5127
Case 3:20-cv-00451-CEA-DCP   Document 364-7   Filed 03/19/24   Page 2 of 28   PageID #:
                                    16918

1      Q.   And are you here today for number 9, topic

2   number 9?

3      A.   Yes.

4      Q.   And are you here today for topic number

5   21?

6      A.   Yes.

7      Q.   And are you here today for topic number

8   25?

9      A.   Yes.

10      Q.   And are you here today for topic number

11   31?

12      A.   Yes.

13      MR. PRABHAKAR:  For the record, plaintiffs have

14   modified topics number 1 and 8, and Mr. DeBacker is

15   prepared today subject to Extreme's objections to

16   the topics 1, 8, 9, 21, 25, and 31.

17      MR. WOOD:  And plaintiffs do not necessarily

18   agree with Extreme's changes, but we're proceeding.

19   BY MR. WOOD:

20      Q.   Have you spoken with anyone regarding your

21   deposition?

22      A.   No.

23      Q.   Did you speak with counsel?

24      A.   Oh, yes.

25      Q.   Have you spoken with anyone besides

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
1   counsel?
2       A.   No.
3       Q.   How long did you speak to counsel about
4   your deposition?
5       A.   We met yesterday for, probably, four
6   hours, give or take.
7       Q.   Any other prep time for this deposition,
8   other than the four hour session yesterday?
9       A.   No.
10      Q.   And did you speak with your counsel that's
11  here today?
12      A.   Yes.
13      Q.   That's who you met with?
14      A.   Yes.
15      Q.   Did you review any documents during that
16  session?
17      A.   Yes.
18      Q.   Can you tell me what documents you
19  reviewed.
20      A.   There were several different documents
21  that we reviewed, so I can't, I can't go through
22  every, I couldn't tell you every single document
23  that we reviewed.
24      Q.   Do you remember any of the documents?
25      A.   Reviewed a document similar to this one.
```

Page 16

```
 1       Q.   Do you know of any oral conversations
 2  where Extreme communicated its need for a license
 3  for the EXOS products?
 4       A.   No, I was not part of any oral
 5  conversations.
 6       Q.   Put all that away.  Let's look at topic
 7  number 9.
 8            So, topic, and this is back on
 9  Exhibit 120, topic number 9 is Extreme's responses
10  to written discovery propounded by SNMP Research in
11  this case, including the scope of Extreme's
12  collection of documents in response to the written
13  discovery.
14            What did you do to prepare for this topic?
15       MR. PRABHAKAR:  So, for the record, the witness
16  is prepared to testify based on Extreme's response
17  to topic 9, which is, Extreme will designate a
18  witness knowledgeable about the scope of Extreme's
19  efforts to collect documents in response to the
20  written discovery.
21       You can answer the question.
22       THE WITNESS:  As far as collecting of
23  information, I believe all the documents that were
24  collected for this specific discovery were either
25  asked for or created or collected.  I think it was,
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

Case 3:20-cv-00451-CEA-DCP   Document 364-7   Filed 03/19/24   Page 5 of 28   PageID #:
16921

```
 1    I was approached about some information, hence, I
 2    created the spreadsheet.
 3         I'm not sure what, what document number that
 4    was, but the spreadsheet didn't exist.  I created
 5    that spreadsheet.  So, if documentation didn't
 6    exist, it was created, similar to the spreadsheet
 7    that I was just referring to earlier, which is
 8    Exhibit 124, that type of information was created.
 9         If there was information, other information, it
10    was provided, or, I believe, then, you know, all of
11    these, these e-mails were retrieved through a
12    search.
13    BY MR. WOOD:
14         Q.   Do you know which custodians did Extreme
15    search e-mails for?
16         A.   I do not know.
17         Q.   And you said Extreme's using Office 365 as
18    its e-mail server?
19         A.   We are now.  We weren't back in 2017.
20    Didn't exist in 2017.
21         Q.   What was Extreme using for e-mail in 2017?
22         A.   Outlook.
23         Q.   Okay, so, a on-premise exchange server?
24         MR. PRABHAKAR:  Objection.  Form.
25         THE WITNESS:  I would assume so, yes.
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

BY MR. WOOD:

    Q.   Do you know what type of e-mail system was Extreme using in the 2000s?

    A.   That predates me being part of Extreme. No, I don't know.

    Q.   And did you ask anybody what type of e-mail system?

    A.   I did not.

    Q.   Do you know if that, the e-mails from that e-mail system have been retained?

    A.   I do not know.

    Q.   Do you know if Extreme was able to search e-mails from the 2000s?

    A.   Don't know.

    Q.   So, how, how do you know what Extreme did to collect documents if you don't know what happened in the 2000s?

    A.   I believe they searched and collected all the documents that were available.

    Q.   But you don't, but you said you don't --

    A.   I don't have any personal knowledge as to what documents were available.

    Q.   I'm not asking about your personal knowledge.  I'm asking about Extreme's knowledge, which you can get from talking to other people.

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
 1              So, what did Extreme do to search for
 2    e-mails in the 2000 time frame?
 3         A.   I don't know.
 4         Q.   Did you try and obtain that information?
 5         A.   I did not.
 6         Q.   How did you think you were going to be
 7    prepared to answer questions on this topic if you
 8    didn't know what Extreme did regarding e-mails in
 9    the 2000s?
10         A.   Don't have that information.
11         Q.   And you didn't do anything to try and
12    obtain that information either, did you?
13         A.   I did not.
14         Q.   Let's see.  So, let's look at Exhibit 123.
15         MR. WOOD:  Just for the record, we don't agree
16    with Extreme's limitations on this topic 9, but I
17    understand your objections.
18         MR. PRABHAKAR:  Well, you agreed to depose the
19    witness subject to Extreme's responses and
20    objections, so, as far as we are concerned, you
21    agreed to how we scoped the topics.  If you
22    disagreed, you should have moved for a protective
23    order, asking for a witness to be prepared on the
24    full scope.  You did not.
25         MR. WOOD:  No.  I think it's Extreme's
```

Page 199

```
1    responsibility to move for a protective order.  If
2    you want a limitation on the deposition, you have
3    to, Extreme has to move for a protective order, not
4    us.  That's not, it's your burden to move for the
5    protective order, not ours.
6          MR. PRABHAKAR:  So, we met and conferred after
7    we served our responses.  During the meet and
8    confers, SNMPI represented that for topics on which
9    Extreme had offered to produce witnesses, it was
10   fine with witnesses being produced subject to our
11   responses.
12         MR. WOOD:  We, we don't agree.  You can have
13   your objection, and I'm just, I'm stating for the
14   record our position.
15   BY MR. WOOD:
16         Q.   So, so, do you have Exhibit 123?
17         A.   Yeah.
18         Q.   Okay.  So, if you could look at
19   interrogatory 1.
20              Do you see that interrogatory,
21   interrogatory number 1 says, identify all Extreme
22   products that contain, use, or are otherwise
23   associated with SNMP Research software, either as
24   manufactured or as a result of a software or
25   firmware installation or update.
```

Page 200

```
 1            Is that correct?
 2       A.   Yes, that's what it says.
 3       Q.   Okay.  Do you know if Extreme has fully
 4  and completely answered interrogatory number 1?
 5       A.   No.
 6       MR. PRABHAKAR:  Objection.  Out of scope.  So,
 7  first, so, objection, out of scope.  Objection.
 8  Improper under the federal rules, because discovery
 9  is not closed, and today plaintiffs have noted
10  issues with interrogatory number 1, so I don't know
11  what the --
12       MR. WOOD:  You're doing it, you're getting into
13  a speaking objection.
14       MR. PRABHAKAR:  So, okay, I'm going to stop.
15       MR. WOOD:  Yeah.
16       MR. PRABHAKAR:  But, really, it's an improper
17  question to ask a fact witness, when discovery
18  hasn't closed.
19  BY MR. WOOD:
20       Q.   You can go ahead and answer.
21       A.   To my knowledge, this is the information
22  that's been provided.
23       Q.   What was your role in answering
24  interrogatory number 1?
25       MR. PRABHAKAR:  Objection.  Out of scope.
```

Page 201

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127
Case 3:20-cv-00451-CEA-DCP   Document 364-7   Filed 03/19/24   Page 10 of 28   PageID #: 16926

```
 1        THE WITNESS:  My role was the spreadsheet that
 2   I produced.
 3   BY MR. WOOD:
 4        Q.   Okay.  So, if you look at the answer to
 5   interrogatory number 1, can you, which says,
 6   identify the Extreme products, can you show me any
 7   Extreme products identified in response to
 8   interrogatory number 1?
 9        MR. PRABHAKAR:  Objection.  Mischaracterizes
10   the response, and I'm not going to testify for the
11   witness, but you are asking the witness to testify
12   as to his legal understanding of the document, and
13   this is out of scope.
14        THE WITNESS:  So, the information provided here
15   is the documents that correspond to the spreadsheet.
16   These are the release documents that correspond to
17   the releases that were detailed out in Exhibit 127.
18        MR. PRABHAKAR:  And, for the record, I note
19   that Extreme has responded rightfully under
20   FRCP-33(D), and it does not have an obligation to --
21        MR. WOOD:  That's not --
22        MR. PRABHAKAR:  -- provide a narrative
23   response.
24        MR. WOOD:  -- even an objection.
25        (Cross-talk, reporter clarification.)
```

Page 202

```
 1        MR. WOOD:  That's not even an --

 2        MR. PRABHAKAR:  Okay.

 3        MR. WOOD:  -- objection.  You're just making a

 4   speech now.

 5        MR. PRABHAKAR:  Well, I mean, at this point in

 6   time, you're so far off from fact witness

 7   testimony --

 8        MR. WOOD:  No.  This is about written

 9   discovery.

10        MR. PRABHAKAR:  Yeah, so, you can ask about the

11   response.

12        MR. WOOD:  And he's -- yeah, that's what I'm

13   asking about.

14        MR. PRABHAKAR:  No, but you are asking --

15        MR. WOOD:  You need to let me ask my questions,

16   and let's --

17        MR. PRABHAKAR:  And, but you stopped --

18        MR. WOOD:  -- finish the deposition.  You can

19   object.

20        MR. PRABHAKAR:  Your deposition is for

21   developing fact information.  You want to go on a

22   discovery fishing expedition about him, you know,

23   whether a response is deficient or not, you can talk

24   to the attorneys.

25        MR. WOOD:  You can instruct him not to answer.
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

1  It's not attorney-client privilege.  I get to -- and
2  he also contributed to this.
3      MR. PRABHAKAR:  And you can ask him about his
4  contribution to the response, which is totally out
5  of scope.
6      MR. WOOD:  So, you just need, you can object,
7  you object, if you want to, but you got to stop with
8  the speaking --
9      MR. PRABHAKAR:  Okay.
10     MR. WOOD:  -- objections.  You're getting,
11  you're getting out of control again --
12     MR. PRABHAKAR:  Okay --
13     MR. WOOD:  -- and you need to stop.
14     MR. PRABHAKAR:  -- John, this is the same
15  situation as the finance deposition, where you were
16  so far off the scope.  We objected to the time limit
17  for the testimony to 21 hours.  We are now wasting
18  time asking out of --
19     MR. WOOD:  You're wasting --
20     MR. PRABHAKAR:  -- scope questions.
21     MR. WOOD:  -- time.  You need to let me, let me
22  finish.  I'll ask my questions.  He can answer.  You
23  can object.
24     MR. PRABHAKAR:  Okay.
25     MR. WOOD:  You need to stop keeping me from

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
 1   asking my questions.
 2        MR. PRABHAKAR:  You are asking --
 3        MR. WOOD:  So, I'm going to keep going.
 4        MR. PRABHAKAR:  Okay.
 5   BY MR. WOOD:
 6        Q.   Let's look at interrogatory number 4.
 7        MR. PRABHAKAR:  Objection.  Out of scope.
 8        MR. WOOD:  I haven't even asked a question.
 9        MR. PRABHAKAR:  Well, anything about our
10   response was very clear that this is related to
11   document collection efforts.  We made a clear record
12   in meet and confers that witnesses will not be
13   testifying on interrogatory responses, which is what
14   you're doing now after agreeing to our scope.
15        Otherwise, we would have moved for a protective
16   order that you will not ask witnesses, under the
17   guise of general discovery, for correctness of
18   interrogatory responses.
19        You have deposed a witness on interrogatory
20   number 4.
21   BY MR. WOOD:
22        Q.   All right.  So, in the fourth paragraph of
23   the response to interrogatory number 4, you are
24   identified as the product manager of the SLX VDX
25   products; is that correct?
```

Page 205

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127
Case 3:20-cv-00451-CEA-DCP   Document 364-7   Filed 03/19/24   Page 14 of 28   PageID #:
16930

```
 1        MR. PRABHAKAR:  Objection.  Out of scope.
 2   BY MR. WOOD:
 3        Q.   Do you see that?  It's on page 8, the
 4   second paragraph on page 8, the second sentence.
 5             Do you see that, where it says, Daniel
 6   DeBacker --
 7        A.   Uh-huh.
 8        Q.   -- is the product --
 9        A.   I do.
10        Q.   -- manager of the SLX and VDX series?
11        A.   Yes.
12        Q.   Is that correct?
13        A.   Yes.
14        Q.   Is that correct today that you're the
15   product manager of the SLX and VDX series?
16        A.   No.  I'm the --
17        MR. PRABHAKAR:  Objection.  Out of scope.
18        THE WITNESS:  -- senior vice president of
19   product management.
20   BY MR. WOOD:
21        Q.   Right.  So, who's --
22        A.   I have product managers across all the
23   products.
24        Q.   Who is the product manager of the SLX and
25   VDX series?
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
 1              (Reporter clarification.)
 2        MR. PRABHAKAR:  Objection.  Out of scope.
 3        THE WITNESS:  So, there is no product manager
 4   for VDX, because it's end of life, or, SLX, I have a
 5   manager and a product manager under that manager.
 6   Two people.
 7   BY MR. WOOD:
 8        Q.   Who are they?
 9        A.   Kris Orjada and Gaurav Sharma.
10        Q.   Okay, thank you.
11             Also says, Daniel DeBacker oversees build
12   or tool chain engineers of the SLX and VDX series,
13   and source code control systems personnel for these
14   products.
15        MR. PRABHAKAR:  Objection.  Out of scope.
16   BY MR. WOOD:
17        Q.   Is that correct?
18        A.   At that point in time, yes.  So, if you
19   remember my LinkedIn profile, where I was managing
20   engineering, it was during that time frame.
21        Q.   Who's, who's fulfilling that role now?
22        MR. PRABHAKAR:  Objection.  Out of scope.
23        THE WITNESS:  We have a, an engineering manager
24   that oversees.  Again, the VDXs is not in play any
25   longer, but we have an engineering manager for SLX,
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
1    and he has development teams underneath him.
2    BY MR. WOOD:
3         Q.   And, who is that?
4         MR. PRABHAKAR:  Objection.  Out of scope.
5         THE WITNESS:  Krishnan.  I need to look up his
6    last name.  I apologize.  It escapes me at the
7    moment.  But, he's the engineering leader for, for
8    multiple things, and this is one of them.
9    BY MR. WOOD:
10        Q.   And it also says you're, you, Dan DeBacker
11   oversees build or tool chain engineers, the SLX and
12   VDX series, and source code control systems
13   personnel for these products.
14             Who are the source code control systems
15   personnel?
16        A.   Those would be --
17        MR. PRABHAKAR:  Objection.  Out of scope.
18        THE WITNESS:  Those would be people within the
19   engineering organization that do dev ops.
20   BY MR. WOOD:
21        Q.   Who are, what are their names?
22        A.   I don't know who they are now.  I'm sure
23   it's changed since I've moved on.
24        Q.   Who was it when you were doing the job?
25        MR. PRABHAKAR:  Objection.  Out of scope.
```

Page 208

```
 1         THE WITNESS:  So, it would be Tom Bombara for
 2   at that point in time.
 3   BY MR. WOOD:
 4         Q.   Okay.  And you, do you know if he's still
 5   doing that job?
 6         MR. PRABHAKAR:  Objection.  Out of scope.
 7         THE WITNESS:  I do not know if he's still doing
 8   that job.
 9   BY MR. WOOD:
10         Q.   Okay.  If you could turn over to
11   interrogatory number 7.  And the answer is on page
12   11.  So, interrogatory number 7 is, identify each
13   and every person who is or has been involved in any
14   search for Extreme products containing SNMP Research
15   software, whether in response to these
16   interrogatories or otherwise, including each product
17   and every software system that was searched.
18              If you look at the first paragraph, you
19   are identified as an individual that was involved in
20   searching for Extreme products that contain software
21   that appears to originate from SNMPR?
22         A.   That is correct.
23         MR. PRABHAKAR:  Objection.  Out of scope.
24   BY MR. WOOD:
25         Q.   You may have already covered this, but,
```

Page 209

```
1    just to be complete, what did you do to search for
2    SNMP Research software in Extreme products?
3         MR. PRABHAKAR:  Objection.  Out of scope.  And,
4    for the record, so far off the scope of Mr.
5    DeBacker's deposition.  For the record, SNMPR is now
6    wasting Extreme's time with this deposition.
7         You have already had an opportunity to ask the
8    deponent.
9         MR. WOOD:  You're making a speaking --
10        MR. PRABHAKAR:  Yes, because I want to make a
11   record clear when we go before the judge of --
12        MR. WOOD:  You're wasting time.
13        MR. PRABHAKAR:  -- how much time you're
14   wasting.
15        MR. WOOD:  You're --
16        MR. PRABHAKAR:  You're not --
17        MR. WOOD:  -- wasting time.  You're just
18   wasting time.  Let me ask my questions, and I'll
19   finish.
20        MR. PRABHAKAR:  This is all out of scope.  This
21   deposition should have ended 30 minutes ago.
22        MR. WOOD:  No.  Then make the objection.  Let's
23   keep going.  This is not out of scope at all.
24        MR. PRABHAKAR:  This is entirely out of
25   scope --
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
 1        MR. WOOD:  No.

 2        MR. PRABHAKAR:  -- and you can continue.

 3   BY MR. WOOD:

 4        Q.   Okay, go ahead.  What did you, what did

 5   you do to search?

 6        A.   As I mentioned, I've created this

 7   spreadsheet.

 8        Q.   Okay, thank you.  Rog 12.

 9        A.   Page 12, did you say?

10        Q.   Interrogatory 12, so that's on page 16,

11   and this is identify all products responsive to

12   interrogatory number 1 that were sold, licensed,

13   transferred, or otherwise disclosed to Extreme.

14             And, if you look on the next page, page

15   17, the second paragraph, this says, Extreme states

16   the only contractor of Extreme that has had access

17   to the source code for the products identified in

18   response to interrogatory number 1 was HCL

19   Technologies.

20             Do you see that?

21        MR. PRABHAKAR:  Objection.  Out of scope.

22        THE WITNESS:  I do see that, yes.

23   BY MR. WOOD:

24        Q.   Is that the, when you were referring to

25   India developers, are those the India developers
```

Page 211

1    that you were referring to earlier?

2         A.    There's a combination of both Extreme

3    employees and HCL employees in the U.S. and in

4    India.

5         Q.    Okay.  So, HCL has employees in the U.S.?

6         A.    Yes.

7         Q.    As well?

8         A.    Absolutely.

9         MR. PRABHAKAR:  Objection.  Out of scope.

10   BY MR. WOOD:

11        Q.    Do you know how many employees Extreme

12   uses from HCL?

13        A.    No --

14        MR. PRABHAKAR:  Objection.

15        THE WITNESS:  -- I do not.

16        MR. PRABHAKAR:  Out of scope.

17   BY MR. WOOD:

18        Q.    And then what is, who is TCS --

19        MR. PRABHAKAR:  Objection.  Out of scope.

20   BY MR. WOOD:

21        Q.    -- in the next paragraph?

22        A.    That's another contractor, contracting

23   house.  I don't know what TCS stands for.

24        Q.    It says, helps with builds.

25        A.    Yeah.  That was part of the, part of the

                                    Page 212

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127
Case 3:20-cv-00451-CEA-DCP   Document 364-7   Filed 03/19/24   Page 21 of 28   PageID #:
16937

```
 1    engineering team.  So, I'm sure you understand
 2    that's not just one person that does all this work.
 3         Q.   Right.
 4         A.   It's a team of people that do this work.
 5              (Exhibit 161 was marked for identification
 6    by counsel.)
 7    BY MR. WOOD:
 8         Q.   Right.  Right.  Right.  Okay.
 9              Let's look at, I'm going to introduce,
10    this will be Exhibit 160.  This is Extreme Network,
11    Inc's Responses and Objections to SNMP Research
12    International, Inc.'s Third Set of Interrogatories
13    to Extreme Networks, Inc.
14         THE COURT REPORTER:  I think 160 was the
15    attachment to 159.
16    BY MR. WOOD:
17         Q.   Oh, I'm sorry.  So this will be 161.  I'll
18    just introduce it.  Exhibit 161 is Extreme Networks,
19    Inc.'s Responses and Objections to SNMP Research
20    International, Inc.'s Third Set of Interrogatories
21    to Extreme Networks, Inc.
22              Did you have any involvement in preparing
23    these --
24         MR. PRABHAKAR:  Objection.  Out of scope.
25    BY MR. WOOD:
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
 1        Q.   -- responses?
 2        A.   I did not have any involvement in creating
 3   the responses, it would appear.  Seems like this was
 4   all done by the legal counsel.
 5        Q.   Okay.  And under topic 8, you're
 6   designated for request for licenses, assignments
 7   transfers, amendment to licenses from SNMP Research.
 8             And interrogatory number 7 is for each
 9   product identified in response to SNMP Research,
10   Inc.'s Interrogatory number 1, identify on a
11   product-by-product basis the license agreement,
12   including the amendment number, if applicable, that
13   Extreme contends licenses the SNMP Research software
14   in each product to Extreme.
15             Do you see that in interrogatory number 7?
16        A.   Yes.
17        MR. PRABHAKAR:  Objection.  Out of scope.
18   BY MR. WOOD:
19        Q.   Did Extreme identify any products that are
20   licensed in response to interrogatory number 7?
21        MR. PRABHAKAR:  Objection.  Out of scope.
22        And you can answer, if you know.
23        THE WITNESS:  I don't know specific to this
24   interrogatory.  I'm trying to understand what
25   exactly this is.
```

Page 214

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127
Case 3:20-cv-00451-CEA-DCP   Document 364-7   Filed 03/19/24   Page 23 of 28   PageID #:
16939

```
 1   BY MR. WOOD:
 2        Q.   So, this is to, on a product-by-product
 3   basis, identify the license agreement that Extreme
 4   contends licenses the SNMP Research software in each
 5   product to Extreme.
 6        MR. PRABHAKAR:  Objection.  Out of scope.
 7   Mischaracterizes the interrogatory and Extreme's
 8   response.
 9   BY MR. WOOD:
10        Q.   So, take your time and read the response.
11        A.   Okay.  This is a lot of legal terms.  I'm
12   still not, so, it looks like -- I don't even, I
13   mean, I can read this response three more times, and
14   I'm probably still not going to understand what all
15   this terminology is.
16        Q.   I don't understand it either.
17        MR. PRABHAKAR:  Well, objection.
18   BY MR. WOOD:
19        Q.   My question is, did Extreme identify any,
20   any product, any licenses for any products.
21        MR. PRABHAKAR:  Objection.  Out of scope.
22   BY MR. WOOD:
23        Q.   Did you, were you involved in collecting
24   any documents that showed Extreme had licensed any
25   products?
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
1        A.   I was not involved in collecting any
2   documents on licenses or license agreements, no.
3        Q.   Do you know if Extreme tried to collect
4   any documents in, to respond to this interrogatory
5   that showed that there were licenses for products?
6        A.   I don't know --
7        MR. PRABHAKAR:  Objection.  Out of scope.
8        THE WITNESS:  -- if Extreme did that.
9             (Cross-talk, reporter clarification.)
10       MR. PRABHAKAR:  And, Dan, just give me a few
11   seconds to object.
12       THE WITNESS:  Yeah.
13   BY MR. WOOD:
14       Q.   Could you turn over to page 9.  The last
15   paragraph, this is in Extreme's response to
16   interrogatory number 10.
17            Do you see the first sentence there,
18   Extreme makes the statement, plaintiffs' business
19   model is primarily licensing its software using
20   ambiguous, confusing, or unclear license terms, and
21   then extracting royalties from licensees, claiming
22   that they exceed the scope of their license.
23            Do you see that?
24       A.   I do.
25       Q.   Do you, do you agree with that statement?
```

Page 216

1     MR. PRABHAKAR:  Objection.  Out of scope.

2     You can answer in your personal capacity.

3     THE WITNESS:  Since I've not looked through the

4 entire license agreement, I can't really comment on

5 that one way or another.

6 BY MR. WOOD:

7     Q.   Did, you looked at the license agreement

8 that Extreme was negotiating with SNMP.

9          Was --

10    A.   This, this document you're referring to,

11 Exhibit 158?

12    Q.   Yes.

13    A.   The 29-page document?

14    Q.   Yeah.  Wasn't Extreme able to make

15 extensive changes to that document?

16    MR. PRABHAKAR:  Objection.  Out of scope.

17 Misstates the record.  Misstates the document.

18    THE WITNESS:  Perhaps it was to make it less

19 ambiguous and less confusing and more clear.

20 BY MR. WOOD:

21    Q.   Yeah.  Is Extreme in the habit of agreeing

22 to terms that it thinks are ambiguous in licensing

23 agreements?

24    MR. PRABHAKAR:  Objection.  Out of scope.

25 Objection.  Argumentative.

Page 217

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127
Case 3:20-cv-00451-CEA-DCP   Document 364-7   Filed 03/19/24   Page 26 of 28   PageID #:
16942

```
 1        THE WITNESS:  Actually, we don't, because we
 2    redlined this document.
 3        MR. WOOD:  Thank you.  Let's take a break.
 4        THE VIDEOGRAPHER:  This marks the end of media
 5    number 4.  We are going off the record.  The time is
 6    3:37 p.m.
 7            (Recess:  3:37 p.m. to 4:01 p.m.)
 8        THE VIDEOGRAPHER:  This marks the beginning of
 9    media number 5.  We are going back on the record.
10    The time is 4:01 p.m.
11        MR. WOOD:  So, we're going to finish up.  I
12    just have a few things to say in closing.  We are
13    reserving all of our rights regarding this
14    deposition.  I think the record will show the
15    witness was completely unprepared on several topics,
16    and so we're reserving our rights to reopen those
17    topics and either get a new witness or have this
18    witness be prepared, and I have no further
19    questions.
20        MR. PRABHAKAR:  And, just so we understand
21    plaintiffs' positions, are there specific topics
22    that you are claiming that the witness was
23    unprepared on?
24        MR. WOOD:  I think parts of a lot of topics he
25    was unprepared on.  We'll give you a list as we
```

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127

```
1    review the record.
2         MR. PRABHAKAR:  Okay.  And, to complete the
3    record, we disagree, and we request identification
4    of topics so that we can assess what topics
5    specifically you think the witness was unprepared
6    for, because we disagree with that representation.
7         But, if you pass the witness, then I have a
8    brief redirect.
9         MR. WOOD:  Okay.  Yes.  No further questions
10   from me.
11        THE VIDEOGRAPHER:  Before we start, sir, can I
12   ask you to reattach your microphone.  It looks like
13   it fell.
14        MR. PRABHAKAR:  Can we go off the record.
15        THE VIDEOGRAPHER:  You've got it.
16        THE WITNESS:  Is that all right?  Can you hear?
17        THE VIDEOGRAPHER:  I can.
18        MR. PRABHAKAR:  Oh, there's a separate mike
19   down there.
20        THE WITNESS:  Yeah, there's two mikes.
21        MR. PRABHAKAR:  Got you.  All right, we're
22   ready to go back on the record.
23        THE VIDEOGRAPHER:  We never went off.
24        MR. PRABHAKAR:  We never went off.  Thank you.
25        THE WITNESS:  I'll just hold it.  I don't know,
```

Page 219

Veritext Legal Solutions
Calendar-CA@veritext.com 866-299-5127
Case 3:20-cv-00451-CEA-DCP   Document 364-7   Filed 03/19/24   Page 28 of 28   PageID #:
16944