# IN THE UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC.,** | § § § § | **Case No. 3:20-cv-00451-CEA-DCP** |
| Plaintiffs, | § § | |
| v. | § § | **Jury Demand** |
| **BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; AND EXTREME NETWORKS, INC.,** | § § § § § | |
| Defendants. | § § | |

**PLAINTIFFS SNMP RESEARCH, INC.'S AND SNMP RESEARCH INTERNATIONAL, INC.'S OPPOSITION TO EXTREME NETWORKS, INC.'S SECOND SUPPLEMENTAL BRIEF REGARDING PRIVILEGE ASSERTIONS AS TO AVAYA**

Pursuant to the Court's Order dated February 23, 2024 (Dkt. 355, "Order"), Plaintiffs SNMP Research, Inc. ("SNMP Research") and SNMP Research International, Inc. ("SNMP International") (collectively, "Plaintiffs") hereby submit this Opposition to Defendant Extreme Networks, Inc.'s ("Extreme") Second Supplemental Brief in Support of Extreme's Privilege Assertions as to Avaya. *See* Dkt. 359 ("Extreme 2nd Supp. Br.").

## I.  INTRODUCTION

The Court requested supplemental briefing about Extreme's assertion of privilege over four sets of email chains amongst Extreme and two third parties (Avaya Inc. and Luxoft) involving communications about Avaya Inc.'s settlement and license with Plaintiffs. *See* Order at 24-28. The Court focused the parties on two questions: (1) whether Extreme's assertion of privilege "extends only to communications relating to the networking business" that Extreme purchased from Avaya Inc. in 2017, and if so, (2) "whether the communications at issue actually relate to the networking business." Order at 28. As Extreme concedes, the answer to the first question is clearly "yes" because Extreme did *not* acquire the attorney-client privilege of Avaya Inc. as a whole when it purchased Avaya's networking division. Extreme 2nd Supp. Br. at 2-4.

As to the second question, the record reflects that Extreme has not carried its burden to prove that the four email threads at issue actually relate to the networking business that Extreme purchased from Avaya, rather than to Avaya's settlement with Plaintiffs that was expressly excluded from Extreme's acquisition of Avaya. While Extreme urges the Court to find that attorney-client privilege broadly transferred[1] from Avaya to Extreme by virtue of Extreme's purchase of the networking division, noticeably absent (again) from Extreme's second supplemental brief on this issue is any

---

[1] Extreme has expressly disclaimed reliance on any common-interest agreement and is maintaining that the privilege *transferred* from Avaya to Extreme by virtue of the networking division sale.

declaration from Avaya or other evidence supporting the conclusion that Extreme urges this Court to adopt. To the contrary, as Extreme has acknowledged, the substance of the emails at issue concerned advice about a settlement between Avaya Inc. and Plaintiffs, and the asset purchase agreement governing Extreme's purchase of Avaya's networking division expressly *excluded* this settlement and associated license from the sale.

Plaintiffs respectfully request that the Court find that Extreme has not carried its burden to prove that it holds the privilege with respect to these four email chains, and that accordingly, Avaya Inc.'s disclosure of its privileged communications to third parties (here, Extreme and Luxoft) waived any such privilege. Extreme should be ordered to produce these email chains in unredacted form.

## II.    ARGUMENT

Extreme has not carried its burden to show this Court that Extreme holds attorney-client privilege as to the four sets of clawed-back email chains between Avaya Inc., Extreme, and Luxoft. As the Court recognized in the Order, "[t]he person asserting the privilege has the burden of establishing its existence" and "[d]isclosure to a third party generally waives the attorney-client privilege." Order at 8 (quoting *In re Columbia/HCA Healthcare Corp.*, 192 F.R.D. 575, 577 (M.D. Tenn. 2000), *aff'd sub nom. by In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289 (6th Cir. 2002)).

Extreme has not met its burden to show that Avaya's privilege over certain correspondence with its legal director, Richard Hamilton III, "transferred" to Extreme when Extreme purchased Avaya Inc.'s networking business division during Avaya Inc.'s bankruptcy in 2017. In other words, Extreme has not shown that the clawed-back email chains were the privileged communications of the networking division that Extreme purchased, as opposed to the privileged communications of the parent company (Avaya Inc.) that Extreme did not purchase. Nor can it. As Extreme's own brief makes clear, all of the clawed-back communications ultimately concern Mr. Hamilton's efforts to render legal advice related to a settlement and license between *Avaya Inc.* and Plaintiffs. As described

in Plaintiffs' prior brief (Dkt. 347 at 21), the sale agreement governing Extreme's purchase of the networking division from Avaya Inc. expressly *excluded* from the sale the settlement and license between Avaya Inc. and Plaintiffs.[2] Any "privilege" with respect to Mr. Hamilton's rendering of legal advice would have necessarily involved Avaya Inc., and such privilege thus did not transfer to Extreme when it purchased the networking division.

Extreme now presents a declaration from one of its current employees, Michael Fitzgerald, but it only underscores that the at-issue communications relate to Avaya Inc.'s settlement and license with Plaintiffs and necessarily concern Avaya Inc. Mr. Fitzgerald came over from Avaya's networking division to Extreme as part of the 2017 sale. Extreme 2nd Supp. Br. at 4-5. Extreme notes that around the time of the sale, Mr. Fitzgerald authored a memo which characterizes Plaintiffs' settlement following litigation with Avaya Inc. and states that "Extreme Networks will not get distribution rights for any of the software images which contain SNMPR software . . . Avaya legal (Richard Hamilton) is verifying that this inventory is not coming to Extreme. Also, Extreme employees cannot give any images to customers. Should all be deleted." Dkt. 359-6 (Ex. 1 to Fitzgerald Decl.) at 7. Based on Mr. Fitzgerald's declaration that emails from each of the four at-issue chains concerned "Avaya's networking products and software," Extreme argues that "the communications at issue all relate to Avaya's networking business." Extreme 2nd Supp. Br. at 5-6. But the record plainly shows that Mr. Hamilton's legal advice was not limited to the networking division and was provided in the context of ***Avaya Inc.'s*** litigation settlement and license with Plaintiffs, which was *excluded* from the sale of Avaya's networking division. As set forth in Extreme's November supplemental brief, for example:

---

[2] *See* Dkt. 347-21 (EXTREME-01383274 (APA) § 1.03(b) (defining "Excluded Assets" to include "Excluded Contracts"); § 1.05(b) (defining "Retained Liabilities" to include "All Liabilities of Avaya or any of its affiliates related to Excluded Assets")); Dkt. 347-22 (EXTREME-01383376 at -3493) (Disclosure Schedule to APA setting forth the "Excluded Contracts," which listed the settlement and license between Avaya Inc. and Plaintiffs).

> These communications involved (1) pre-acquisition internal communications within Avaya's networking business *for the purpose of gathering information requested by Avaya's in-house counsel to render and implement legal advice (related to Avaya's litigation and settlement with SNMPR)*.

Dkt. 334 (Extreme 1st Supp. Brief) at 2-3 (emphasis added). The at issue-communications concerned Avaya Inc.'s settlement and license with Plaintiffs and thus necessarily concerned not just the networking division sold to Extreme, but Avaya Inc. writ large.

Furthermore, as Plaintiffs also described in their first supplemental brief (Dkt. 347 at 21-22), two of the one hundred clawed-back Avaya emails that Plaintiffs can read (insofar as these emails are only partially redacted rather than fully redacted) also support the conclusion that Mr. Hamilton was rendering legal advice on behalf of Avaya Inc. Both email chains begin with a January 5, 2018 email from Dan Regan, an Avaya employee, to Sunil Ramu, an Extreme employee. *See* Dkt. 347-23 (Extreme-01078470 at -8473); Dkt. 347-24 (Extreme-01079442 at -9446). This email was half a year *after* Extreme bought Avaya's networking division. Moreover, Mr. Regan contacted Extreme regarding "Possible SNMPRI content in Bangalore," expressing concern about files that had been flagged for "containing the SNMP Research Copyright." These emails plainly reflect communications initiated by Avaya half a year after the sale to Extreme, which related to Avaya's apparent concerns about its settlement and license with Plaintiffs (which were excluded from the sale to Extreme).

Extreme continues to invoke cases it has cited before that do not help it. *See* Extreme 2nd Supp. Br. at 3-4. For example, Extreme cites *Parus Holdings* for the proposition that the plaintiff in that case inherited the privilege of a company division responsible for technology called "the System." Extreme 2nd Supp. Br. at 3. As noted in Extreme's brief, the *Parus Holdings* court concluded that privilege did indeed transfer as to the privileges and relationships "which *only* pertained to the System." *Id.* at 3 (citing *Parus Holdings, Inc. v. Banner Witcoff, Ltd.*, 585 F. Supp. 2d 995, 997, 1003 (N.D. Ill. 2008)) (emphasis added). Here, the clawed-back communications do not pertain *only* to the

networking business that Extreme purchased; they also pertain to Avaya Inc.'s (the parent company's) settlement and license with Plaintiffs, which were expressly excluded from the sale to Extreme.[3]  It is of no moment that Mr. Fitzgerald attests that the communications also concerned software in the networking products.  Extreme 2nd Supp. Br. at 5-6.

The Court correctly observed that the record reveals "contrary information" regarding "whether the subject documents are within the scope of [the networking] business."  Order at 26.  As Extreme has already acknowledged repeatedly (*e.g.* Dkt. 334 at 2-3), the subject documents concerned Avaya Inc.'s settlement and license expressly excluded from the networking business, and thus by definition those documents—and communications about them—concern Avaya Inc.  Avaya Inc. held the privilege over Mr. Hamilton's legal advice pertaining to its settlement and license with Plaintiffs, and when that legal advice was disclosed to multiple third parties (Extreme and Luxoft) without an appropriate joint privilege or common interest agreement, that privilege was waived.  The four email chains at issue should be produced in unredacted form.

Respectfully submitted,

Dated:  March 25, 2024    By: /s/ *John L. Wood*
　　　　　　　　　　　　　　John L. Wood, Esq. (BPR #027642)
　　　　　　　　　　　　　　Cheryl G. Rice, Esq. (BPR #021145)
　　　　　　　　　　　　　　Rameen J. Nasrollahi, Esq. (BPR #033458)
　　　　　　　　　　　　　　EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
　　　　　　　　　　　　　　900 S. Gay Street, Suite 1400
　　　　　　　　　　　　　　P.O. Box 2047
　　　　　　　　　　　　　　Knoxville, TN 37902
　　　　　　　　　　　　　　(865) 546-0500 (phone)
　　　　　　　　　　　　　　(865) 525-5293 (facsimile)
　　　　　　　　　　　　　　jwood@emlaw.com

---

[3] Extreme writes that Plaintiffs claim "that the communications could not have involved the network business[.]"  Extreme 2nd Supp. Br. at 6.  Plaintiffs' argument is that the legal advice about the litigation and settlement between Avaya Inc. and Plaintiffs **is on behalf of** Avaya Inc.  *See, e.g.*, Dkt. 347 at 1.

crice@emlaw.com
rnasrollahi@emlaw.com


By: */s/ A. Matthew Ashley*
   A. Matthew Ashley (CA Bar. No. 198235)
   Morgan Chu (CA Bar. No. 70446)
   David Nimmer (CA Bar. No. 97170)
   IRELL & MANELLA LLP
   1800 Avenue of the Stars, Suite 900
   Los Angeles, California 90067-4276
   (310) 277-1010 (phone)
   (310) 203-7199 (facsimile)
   mchu@irell.com
   dnimmer@irell.com
   mashley@irell.com

   *Attorneys for Plaintiffs*
   *SNMP Research International, Inc. and*
   *SNMP Research, Inc.*