IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

---

SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC.,

    Plaintiffs,

v.

BROADCOM INC., BROCADE COMMUNICATIONS SYSTEMS LLC, and EXTREME NETWORKS, INC.,

    Defendants.

Case No. 3:20-cv-00451-CEA-DCP

---

# DEFENDANT EXTREME NETWORKS, INC.'S
# REPLY BRIEF REGARDING AVAYA ACQUISITION AND PRIVILEGE

On February 23, 2024, this Court ordered supplemental briefing on two questions related to Defendant Extreme Networks, Inc.'s ("Extreme") acquisition of Avaya, Inc.'s ("Avaya") networking business. Both parties agree on the answer to the Court's first question. Extreme explained in its opening brief that Extreme acquired the authority to assert privilege over communications relating to the networking business, not any other businesses or divisions of Avaya. Extreme's Supp. Br. ("Extreme Br."), at 1, ECF No. 359. Plaintiffs SNMP Research Inc. and SNMP Research International, Inc. (collectively, "SNMPR") take no issue with Extreme's assertion. The dispute then turns on the resolution of the second question: do "the communications at issue actually *relate to* the networking business"? Mem. & Order, at 28, ECF No. 355 (emphasis added). The answer to that question is also "yes." As Extreme showed in its opening brief, each communication at issue contains legal advice related to the networking products and networking division of Avaya. Extreme Br., at 4–6. Nowhere in its brief does SNMPR dispute that the communications at issue are about Avaya's networking products and networking division. *See, e.g.*, Pls.' Opposition to Extreme's Supp. Br. ("SNMPR Br."), at 3, ECF No. 374 ("Mr. Hamilton's legal advice was not limited to the networking division."). Therefore, Extreme has explained and SNMPR has conceded (for the purposes of this motion) that the answer to the Court's both questions is "yes."

\* \* \*

Extreme should be able to end its reply here, but SNMPR attempts to distract from the issue at hand by answering a question the Court did not ask: Do the communications at issue involve the settlement agreement between Avaya and SNMPR? SNMPR Br. at 2. This argument is a red herring. As Extreme has already explained, the settlement agreement Avaya entered with SNMPR *affected Avaya's networking products*, and the communications at issue discuss how the

transfer of *Avaya's networking products* to Extreme was affected by the settlement agreement. *See* Decl. of M. Fitzgerald, Ex. 1 at 7, ECF No. 359-6 ("Avaya was sued by SNMPR due to carry-over issues from Nortel . . . . *Networking products effected included* ERS 2500, [], 4500 [], 5500, 5600, [], [WLAN] 8100. . . . As a result, Extreme cannot own or distribute any RMA/replacement hardware that has SNMPR software installed. Includes ERS 2500, 4500, 5600, WLAN 8100." (emphasis added)). Avaya's networking products formed the basis of Avaya's networking business. *See* Decl. of M. Fitzgerald at ¶ 2, ECF No. 359-5 ("At Avaya, I was a Product Manager in Avaya's networking business with responsibilities for networking products, including Avaya's router portfolio."). SNMPR has thus created a false binary: even if the communications at issue referenced or involved the settlement agreement, *that settlement was about Extreme's networking products, and therefore its networking business*. That the communications at issue "relate to" the networking business cannot be disputed. Therefore, the legal advice in the communications was attached to the networking business, and when that business transferred to Extreme, so did the legal advice.

The fact that the settlement agreement between Avaya and SNMPR did not transfer to Extreme has no bearing on the privilege determination here because the communications at issue were not about the settlement agreement itself. That is, the communications were not about the legal considerations in settling the dispute with SNMPR, the terms of the settlement agreement, or what products should be covered as part of the settlement; if they were, Avaya, as the holder of the settlement agreement, would also be the holder of the privilege over those communications. Here, though, the communications took place over a year *after* Avaya and SNMPR signed the settlement agreement and therefore could not have been not about the terms of the settlement or the legal considerations that informed it. *See* Decl. of M. Fitzgerald, Ex. 1 at

3

7 ("Avaya settled with SNMPR on May 6, 2016.").[1] Rather, the communications were about how the products of the networking division were affected by the settlement; any legal advice given about those products is legal advice to the party that owns the networking division—which SNMPR and Extreme agree is Extreme.

Accepting SNMPR's argument would overturn well-established authority, in the Sixth Circuit and nationwide, that an acquisition that involves the transfer of control or management of a business also transfers the privilege. *See, e.g., Lynx Servs. Ltd. v. Horstman,* 2016 WL 4565895, at *2 (N.D. Ohio Sept. 1, 2016); *Parus Holdings, Inc. v. Banner Witcoff, Ltd.*, 585 F. Supp. 2d 995, 1002-1003 (N.D. Ill. 2008). As SNMPR sees it, even a complete transfer of control or management of a business would not result in a transfer of privilege *unless* the acquiring company acquired each and every settlement agreement (and all liabilities resulting from the settlement) that affected that business. SNMPR has cited no case in support of this broad and impractical proposition; indeed, the existing caselaw clearly establishes that transfer of a company's liabilities is *not* a prerequisite for transfer of the authority to assert privilege over that company's communications. *See Soverain Software LLC v. Gap, Inc.*, 340 F. Supp. 2d 760, 764 (E.D. Tex. 2004) ("The desire of the purchaser of a bankrupt's assets to not acquire the bankrupt's liabilities should not lead, by that fact, to the waiver of all privileges attendant to the

---

[1] In its brief, SNMPR cites two email threads from January 2018 and claims that the fact that these emails were sent after Extreme's acquisition of the networking division supports its position that Avaya holds the privilege. As an initial matter, the unredacted portion of these emails demonstrate that the communications at issue relate to the networking business that transferred to Extreme. *See, e.g.*, EXTREME-01079442, at -9446, ECF No. 347-24 ("The GA release files belong to Data Networking (DN) and have to be moved to Extreme."). Moreover, to the extent SNMPR is questioning Avaya's role in the post-acquisition communications with Extreme, Extreme has already explained that Avaya (and Luxoft) acted as Extreme's agents facilitating the provision of legal advice during this period. *See* Extreme's Supp. Br. in Supp. of Privilege Assertions, at 21–25, ECF No. 334. To the extent SNMPR is attempting to relitigate this issue, its arguments are beyond the scope of the Court's order.

4

assets. . . . [I]f this were the rule, the attorney-client privilege would never survive in bankruptcy even if all of the assets were transferred without the use of an intermediary."); *United States v. Adams*, 2018 WL 1255003, at *4 (D. Minn. Mar. 12, 2018) ("Apollo's retention of liabilities does not undermine the conclusion that Scio is a successor for privilege purposes.").

SNMPR is not disputing in this motion that Extreme acquired control over Avaya's networking division. SNMPR is not disputing in this motion that the communications at issue relate to—that is, that they provide legal advice concerning—the networking business. SNMPR's only argument—that the dispute turns on who owns the settlement agreement—is irrelevant, contrary to the law, and impractical. The Court should, therefore, find that when Extreme acquired Avaya's networking business, it acquired the authority to assert privilege over communications regarding that business, and, consequently, that the communications at issue are protected by Extreme's attorney-client privilege.

DATED: April 1, 2024

Respectfully Submitted,

 */s/ John M. Neukom*

| | |
|---|---|
| Charles B. Lee, BPR# 011570 | John M. Neukom (*admitted pro hac vice*) |
| Jessica Malloy-Thorpe, BPR# 035234 | Abraham A. Tabaie (*admitted pro hac vice*) |
| Jordan B. Scott, BPR# 037795 | Barbara N. Barath (*admitted pro hac vice*) |
| MILLER & MARTIN, PLLC | Saurabh Prabhakar (*admitted pro hac vice*) |
| 832 Georgia Avenue | Alicia J. Ginsberg (*admitted pro hac vice*) |
| 1200 Volunteer Building | DEBEVOISE & PLIMPTON LLP |
| Chattanooga, Tennessee 37402 | 650 California Street |
| Tel: (423) 756-6600 | San Francisco, California 94108 |
| Fax: (423) 785-8293 | jneukom@debevoise.com |
| clee@millermartin.com | atabaie@debevoise.com |
| jessica.malloy-thorpe@millermartin.com | bnbarath@debevoise.com |
| jordan.scott@millermartin.com | sprabhakar@debevoise.com |
| | ajginsberg@debevoise.com |
| | (415) 738-5700 |

Leslie A. Demers (*admitted pro hac vice*)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
leslie.demers@skadden.com
(212) 735-3000

Sy Damle (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
sy.damle@lw.com
(202) 637-2200

Michael Powell (*admitted pro hac vice*)
David Lamb (*admitted pro hac vice*)
GISH PLLC
41 Madison Avenue, Floor 31
New York, NY 10010
michael@gishpllc.com
david.lamb@gishpllc.com
(212) 518-2000

*Attorneys for Extreme Networks, Inc.*