IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

---

SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC.,

Plaintiffs,

v.

BROADCOM INC., BROCADE COMMUNICATIONS SYSTEMS LLC, and EXTREME NETWORKS, INC.,

Defendants.

Case No. 3:20-cv-00451-CEA-DCP

---

# DEFENDANT EXTREME NETWORKS, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO REOPEN RULE 30(B)(6) DEPOSITION

1

Plaintiffs SNMP Research, Inc. and SNMP Research International, Inc. (collectively "SNMPR") seek this Court's permission to reopen the Rule 30(b)(6) testimony of Defendant Extreme Networks, Inc. ("Extreme") to permit them to ask a fact witness wide-ranging and detailed questions about the accuracy, completeness, substance of, and process of preparing every Interrogatory response Extreme has served to date, as well as factual questions on subjects related to each response. As written and as apparently interpreted by SNMPR, Topic 9 of SNMPR's 30(b)(6) Notice to Extreme,[1] which covers without limitation "Extreme's responses to written discovery propounded by" both plaintiffs, is not reasonably particular, cumulative and duplicative of other deposition topics, and requires preparing a witness with encyclopedic knowledge.

By the time Extreme's designee on Topic 9 was scheduled to sit for his deposition, SNMPR had served upon Extreme 31 interrogatories, 196 document requests, and 45 requests for admissions. As to the 31 interrogatories, Extreme had supplemented its responses to several interrogatories a dozen times. The subject matter of the interrogatories and Extreme's responses covers not only every aspect of the case but is duplicative of a majority of topics in SNMPR's 30(b)(6) deposition notice (duplicative topics shown in parenthesis): Extreme's products and use of SNMPR's software in the products (topics 4, 6, 7, 23); MIBs used in Extreme's products (37); financial information and royalty reporting (14, 16, 26, 35); apportionment (12, 13, 17); license agreements (1-4); contention interrogatories (20, 28, 29, 30); and persons with knowledge (40). As written, Topic 9 was objectionable on several grounds, including its lack of reasonable

---

[1] SNMPR spends considerable space in its brief addressing topics on which Extreme has already agreed to produce additional witnesses. *See* Pls.' Br. ISO Mot. to Reopen at 4, 7–9, ECF No. 364. To be clear, the only issue actually in dispute is whether SNMPR can reopen Extreme's 30(b)(6) testimony to require Extreme to designate a witness to answer questions on or related to the substance of every Interrogatory response it has served to date. *See id.* at 2 n.1.

particularity, cumulativeness, and likelihood of capturing privileged information. Preparing a witness to testify authoritatively about each and every interrogatory response provided by Extreme was and remains impossible.

Indeed, Extreme objected on exactly these grounds in its initial response to SNMPR's Notice and would have included Topic 9 among the eighteen other topics on which it sought a protective order had SNMPR not previously agreed to limit the topic's scope during the parties' extensive meet and confer efforts. ***During the meet and confer, the parties agreed that Topic 9 would be limited to the process of collecting documents cited in Extreme's Interrogatory Responses.*** SNMPR agreed in a meet and confer on December 8, 2023, to this limitation and Extreme consented to produce a witness on Topic 9 only subject to that agreement. But during the deposition, SNMPR reneged on its agreement, expanding Topic 9 beyond its agreed-upon narrowed scope. Extreme has already agreed to produce an additional 30(b)(6) witness to answer questions regarding document collection in response to SNMPR's written discovery. Any additional questions about the facts recited in Extreme's Interrogatory responses have already been or will be addressed by witnesses on the other 30(b)(6) witnesses. The Court should therefore deny SNMPR's motion to reopen the 30(b)(6) testimony for even further, extremely burdensome, and not particularized 30(b)(6) testimony.

**FACTUAL BACKGROUND**

SNMPR served on Extreme a Notice of Deposition Pursuant to Rule 30(b)(6). *See* Decl. of J. Wood ISO Mot. to Reopen, Ex. A ("30(b)(6) Notice"), ECF No. 364-2. Among the forty Topics for Examination in SNMPR's Notice was Topic 9, which sought testimony on "Extreme's responses to written discovery propounded by SNMP Research in this case, including the scope of Extreme's collection of Documents in response to the written discovery."

3

*Id.* at 9. Extreme served its responses and objections to the Notice on November 20, 2023. *See* Declaration of Saurabh Prabhakar ("Prabhakar Decl."), Exhibit 1 ("30(b)(6) Responses and Objections"). Extreme objected to Topic 9 and agreed to provide a witness on a more sensible and particular scope of the topic:

> Extreme objects to Topic No. 9 to the extent it calls for information regarding matters protected by the attorney-client privilege, the work product doctrine, and/or any other applicable privilege or protections against discovery. Extreme objects to Topic No. 9 as ***overly broad, unduly burdensome, and failing to describe with reasonable particularity*** the matter for examination as required by Rule 30(b)(6) insofar as the topic includes Extreme's written discovery responses besides requests for production of documents and **it would require a witness to be prepared to testify about all of Extreme's written discovery responses without any limitation to a specific subject matter**.
>
> Subject to and without waiver of the foregoing objections, ***Extreme will designate a witness knowledgeable about the scope of Extreme's efforts to collect of Documents in response to the written discovery.***

*Id.* at 12–13 (emphases added).

During a meet and confer on December 8, where the parties discussed Topic 9 specifically, Extreme explained that it was impossible to prepare a witness on the full scope of the topic insofar as it includes all of the responses to discovery. Prabhakar Decl. at ¶ 3. Extreme explained that facts underlying its Interrogatory Responses were already covered by other topics in the deposition notice. *Id.*, at ¶ 4. With respect to the process of collecting documents cited in Extreme's Interrogatory Responses, Extreme agreed to produce a witness. But Extreme made it clear that it would not, and could not, agree to prepare a witness about the substance of each and every interrogatory response provided by Extreme because the responses cover a large number of discrete, substantive subjects, were prepared with the involvement of attorneys, and in many cases involved legal topics and objections. *Id.*, at ¶ 3. SNMPR, in Extreme's understanding, agreed to this limitation, stated that it understood Extreme's rationale for it, and asked to move

4

on to the next topic at issue. *Id.*, at ¶ 4. Indeed, the entire point of the parties' meet and confer on the topics was to agree upon the scope of the topics where possible or otherwise raise them with the Court.

On December 20, 2023, Extreme wrote to SNMPR identifying 19 topics on which Extreme agreed to designate witnesses "[b]ased on the parties' meet and confers . . . and [Plaintiffs'] proposed narrowing of certain deposition topics" and "subject to Extreme's objections and scope." Decl. of J. Wood ISO Mot. to Reopen, Ex. B at 1, ECF No. 364-3. Among these topics was Topic 9. SNMPR responded that, for Topic 9, it "expect[ed] Extreme to abide by what [the parties] discussed on the meet and confer calls." *Id.* Extreme understood that the parties' agreement on the meet and confer was that SNMPR could ask the witnesses designated on the substantive 30(b)(6) topics about the facts underlying the related Interrogatory responses and could ask the Topic 9 witness about the process of collecting documents cited in Extreme's interrogatory responses. Consistent with the parties' agreement, SNMPR questioned Extreme's finance designee about Extreme's responses to SNMP Research, Inc.'s Interrogatory no. 6 (Prabhakar Decl., Exhibit. 2, Freeman Tr. at 39:13-41:25) and Extreme's designees on technical topics about SNMP Research, Inc.'s Interrogatory nos. 1, 2, 6, 11, and 15. (Prabhakar Decl., Exhibit 3, Fitzgerald Tr. at 83:18-89:24; 98:7-101:20; Prabhakar Decl., Exhibit 4, DeBacker Tr. at 33:18-35:1).

Extreme designated Dan DeBacker to testify on Topic 9, and the parties scheduled his deposition for February 14, 2024. *See* Decl. of J. Wood ISO Mot. to Reopen, Ex. C, ECF No. 364-4. In the meantime, for the topics for which it did not agree to designate a witness, Extreme moved the Court for a protective order. *See* Decl. of J. Wood ISO Mot. to Reopen, Ex. D, ECF No. 364-5. Because Extreme understood SNMPR to have agreed to limit the scope of Topic 9

during the parties' meet and confer to the process of collecting documents, Extreme did not include Topic 9 in this motion. Prabhakar Decl, at ¶ 5.

On February 14, 2024, Mr. DeBacker's deposition proceeded as scheduled. Though the deposition began at 8:30 in the morning, SNMPR did not turn to Topic 9 until after 3 p.m. Once it did, it quickly became clear that SNMPR's questions far exceeded the parties' agreed-upon limitations. For instance, SNMPR asked Mr. DeBacker if Extreme had "fully and completely answered interrogatory number 1," disregarding the fact that discovery is still open. Decl. of J. Wood ISO Mot. to Reopen, Ex. F ("DeBacker Tr.") at 10, ECF No. 364-7. SNMPR also asked a number of questions that were based on the substance of Extreme's Interrogatory responses but requested additional information not in those responses. For example, Interrogatory No. 4 asked Extreme to "[I]dentify the name, title, role, and dates of responsibility with respect to each Product and each release of all Persons who architected, defined, developed, tested, built, released, and/or managed the Source Code for each Product." Prabhakar Decl, Exhibit 5, at 7. SNMPR used this Interrogatory to ask Mr. DeBacker questions about his current role and the roles of others at Extreme, going beyond Extreme's response to the Interrogatory. DeBacker Tr. at 14–18. Similarly, Interrogatory No. 7 asked Extreme to "identify each and every person who is or has been involved in any search for Extreme products containing SNMP Research software." Prabhakar Decl., Ex. 5, at 7. Extreme identified these individuals in its response to this Interrogatory, but SNMPR in its questioning of Mr. DeBacker went well beyond that response, asking him *what* he did to search for SNMP Research software. DeBacker Tr. at 18–19. SNMPR used Extreme's response to Interrogatory No. 7, in which Extreme identified contractors who had access to source code for Extreme products, to ask Mr. DeBacker general questions about the contractors and whether these were the same contractors Mr. DeBacker referred to *in his*

*response to another topic. Id.* at 20. SNMPR perhaps went furthest with Interrogatory No. 10, asking Mr. DeBacker whether "[he] agree[d] with" Extreme's response to the Interrogatory; whether Extreme was "able to make extensive changes" to its 2001 license with SNMPR, which was not remotely within the scope of the Interrogatory of the response; and whether "Extreme [is] in the habit of agreeing to terms that it thinks are ambiguous in licensing agreements," which was similarly completely beyond the scope of the response and taunted the witness. *Id.* at 25–26.

Extreme promptly objected to each of these questions during the deposition, explaining that they were out of the scope of Topic 9 as agreed to by the parties at their earlier meet and confer. *See id.* at 14. Following the deposition, the parties met and conferred about a number of outstanding discovery issues, including whether Extreme would "provide a witness to discuss its ROG responses for Topic 9." *See* Decl. of J. Wood ISO Mot. to Reopen, Ex. G, ECF No. 364-8. Extreme did not agree to do so, and the present motion followed.

## ARGUMENT

**I.     Topic 9, as SNMPR Now Interprets It, Is Not Reasonably Particular and Requires Preparing A Witness with Encyclopedic Authority**

Both as originally written before the parties' agreement and as now interpreted by SNMPR, Topic 9 is objectionable on a number of grounds. The Topic seeks testimony about "Extreme's responses to written discovery propounded by SNMP Research in this case, including the scope of Extreme's collection of Documents in response to the written discovery." 30(b)(6) Notice at 9. As explained, Topic 9 as written covers nearly 200 document requests, 31 interrogatories, and 45 RFPs.

Therefore, accepting Topic 9 as written, Extreme would have had to designate a representative "prepared to speak with encyclopedic authority" about every subject—finance, engineering, licensing, royalty reporting, marketing—relevant to the case and provide

7

information about Extreme's operations going back decades. *CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, 322 F.R.D. 350, 361 (N.D. Iowa. 2017). Yet "depositions under 30(b)(6) are not meant to be traps in which the lack of encyclopedic memory commits an organization to a disadvantageous position." *Walls v. Union Pac. R.R. Co.*, 2022 WL 4082143, at *5 (D. Neb. Sept. 6, 2022). To the contrary, Rule 30(b)(6) requires that the party seeking to depose a corporation must, *in its deposition notice,* "describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). The "reasonable particularity" requirement ensures that a corporation can designate a witness (or witnesses) and prepare them to testify adequately about those topics. *Mitchell v. Arnold,* 2023 WL 7711478, at *5 (W.D. Ky. Nov. 15, 2023). A topic that can be answered only with encyclopedic knowledge and immediate recall is overbroad, unduly burdensome, and not the appropriate subject of a 30(b)(6) deposition. *Cf. Adkisson v. Jacobs Eng'g Grp., Inc.*, 2020 WL 8254453, at *5–6 (E.D. Tenn. Nov. 23, 2020) (finding 30(b)(6) topics seeking detailed financial information and internal reports were better addressed through written interrogatories). Extreme objected on this very basis in its initial response to SNMPR's Notice. *See* 30(b)(6) Responses and Objections at 9.

Additionally, as written Topic 9 is not only cumulative of discovery already propounded by SNMPR (i.e. the interrogatory responses themselves), but it is also cumulative and duplicative of a majority of topics in SNMPR's deposition notice. *Adkisson*, 2020 WL 8254453, at *5 ("Applicable 'rules of discovery require a court to consider whether a Rule 30(b)(6) deposition would be cumulative, duplicative, unreasonably burdensome, and disproportionate to the needs of the case.'").

The lack of reasonable particularity of Topic 9 is facially obvious. Which then begs the question: Why would Extreme agree to designate a witness on an improper topic when Extreme

was already seeking a protective order on 18 other topics? Extreme agreed to designate a witness based on the parties' agreement during meet and confers: that SNMPR could ask witnesses designated on other topics about the Interrogatory responses that relate to those topics and could ask the designee on Topic 9 about how documents cited in the Interrogatory responses were collected. Prabhakar Decl., ¶ 4. Extreme lived up to its end of that agreement, and other 30(b)(6) designees were prepared for and did answer questions on Extreme's various interrogatory responses that overlapped with the subject matter of their designated 30(b)(6) deposition topics. *See, e.g.*, Prabhakar Decl., Exs. 2-4. SNMPR should be bound by its agreement as well.

## II. Extreme Agreed to Designate a Witness on Topic 9 Because SNMPR Agreed to Limit Its Scope.

Had Extreme understood that SNMPR would refuse to narrow Topic 9 and in fact adopt an even broader interpretation of it during the deposition, Extreme would have included Topic 9 in its motion for a protective order and refused to designate a witness.[2] But far from revealing this breadth, prior to the designation SNMPR actually agreed to *narrow* the Topic as written. As discussed above, during a meet and confer on December 8, Extreme detailed the basis of its objection to Topic 9 and explained that while it would agree to designate a witness on the facts underlying its Interrogatory responses and the process of collecting documents to prepare those responses, it would not agree to answer questions regarding the substance of the Responses themselves. Prabhakar Decl., ¶ 3. SNMPR stated that it understood Extreme's reasoning and

---

[2] Extreme made this position clear at Mr. DeBacker's deposition. *See* DeBacker Tr. at 14 ("We made a clear record in meet and confers that witnesses will not be testifying on interrogatory responses, which is what you're doing now after agreeing to our scope. Otherwise, we would have moved for a protective order that you will not ask witnesses, under the guise of general discovery, for correctness of interrogatory responses.").

9

agreed to this narrowed version of the topic. *Id.*[3] SNMPR reiterated its consent again in writing on December 20, 2023. While it rejected the proposed limitation Extreme initially offered in its Responses and Objections to the Notice, it "expect[ed] Extreme to abide by what [the parties] discussed on the meet and confer calls." Decl. of J. Wood ISO Mot. to Reopen, Ex. C. In light of this representation, Extreme proceeded to prepare for Mr. DeBacker's deposition in good faith. SNMPR either mischaracterizes or misremembers the agreement it reached with Extreme during the December 8 meet and confer—an agreement without which Extreme never would have consented to Topic 9.

Yet SNMPR now accuses Extreme not just of failing to prepare Mr. DeBacker for his deposition, but also of making improper "speaking objections." Pls.' Br. ISO Mot. to Reopen at 10. As an initial matter, the objections were centered on SNMPR's disregard for the agreed-upon scope of Topic 9 and Extreme's pending motion for a protective order limiting 30(b)(6) testimony to 21 hours. *See* DeBacker Tr. at 8, 14. The so-called objections were "colloquy "between counsel, and not implicit instructions to [the witness] on how to answer a specific question." *Lofgren v. Polaris Indus., Inc.*, 2018 WL 10152545, at *2 (M.D. Tenn. Apr. 30, 2018). Moreover, Extreme objected because SNMPR repeatedly asked improper questions that went beyond not just the parties' agreed narrowing of Topic 9, but also Topic 9 as written. Extreme was justified in making a record of its objections and of their basis in the parties' earlier agreement, particularly when SNMPR made clear that it "d[id] not agree" with Extreme's

---

[3] SNMPR claims that if Extreme "believed that any portion of Topic 9 was improper for any reason, Extreme was required to move for a protective order pursuant to Rule 26(c)." Pls.' Br. ISO Mot. to Reopen at 10. This is not the case. During the parties' many meet and confers, they mutually agreed to limit the scope of a number of SNMPR's Topics. For example, Topics 13 and 14, incredibly broad as written and with multiple subparts, were narrowed and honed through this process and Extreme therefore did not find it necessary to move for a protective order on those Topics. Decl. of J. Wood ISO Mot. to Reopen, Ex. B at 1–2, ECF No. 364-3.

10

understanding of the scope of the Topic, DeBacker Tr. at 9, and continued to ask improper questions, many of which were objectionable on several grounds. Mr. DeBacker had traveled to San Francisco from Montana to sit for his deposition, at Extreme's expense and at the personal cost of leaving his wife who was recovering from surgery. *See* Decl. of J. Wood ISO Mot. to Reopen, Ex. C. After questioning him for most of the day, SNMPR unnecessarily and unproductively extended his deposition by asking improper questions, many of which were barely even based in the Interrogatory responses in question. Extreme was justified in its objections, and SNMPR accusations are both not well taken and irrelevant to the current motion.

### III. SNMPR Has Not Shown Any Cause to Reopen Extreme's 30(b)(6) Deposition.

This Court should deny SNMPR's request to reopen the 30(b)(6) deposition to allow further questioning on Topic 9 (other than the questions about document collection Extreme has already agreed to, *see* n.1 *infra*). As explained above in Section I, this Topic—both as written and certainly in SNMPR's even more expansive interpretation—lacks reasonable particularly as required by Rule 30(b)(6), is overbroad, unduly burdensome, and requires imparting encyclopedic knowledge upon a witness.

Moreover, all of the Interrogatories on which SNMPR sought additional information through Mr. DeBacker's deposition are better—and in some cases already—addressed through other forms of discovery. *See Adkisson v. Jacobs Eng'g Grp., Inc.*, 2020 WL 8254453, at *5–6 (E.D. Tenn. Nov. 23, 2020) (finding that certain 30(b)(6) topics were better addressed through written interrogatories). Specifically:

- Interrogatory No. 1: In his 30(b)(6) deposition, Mike Fitzgerald already testified on how Extreme prepared the list of products in Interrogatory No. 1. Prabhakar Decl., Ex. 3, Fitzgerald Tr. at 85:17-91:10.

11

- Interrogatory No. 4: Interrogatory No. 4 already asks for a list of the names and positions of a variety of people who worked on the products at issue in this suit; if SNMPR seeks the identity of additional people, an Interrogatory is both the most convenient way for Extreme to respond and the way that ensures the most complete answer.

- Interrogatory No. 7: Mr. Fitzgerald has already testified on the exact subject SNMPR sought information on through its questions on Interrogatory No. 7, namely Extreme's search for SNMP Research Software in Extreme products (*i.e.* Topic 23).

- Interrogatory No. 12: Detailed questions regarding the number of contractors Extreme employs and where they are located are more conveniently and more completely answered through a written Interrogatory response.

- Interrogatory No. 7: The answer to the question "Did Extreme identify any products that are licensed in response to interrogatory number 7" is answered by Extreme's response to Interrogatory No. 7.

- Interrogatory No. 10: Questions regarding "changes" made to the 2001 license between Extreme and SNMPR and the licensing terms Extreme typically agrees to are already encompassed by Topic 8.

Rather than expecting Extreme to prepare a witness who can testify to any subject related to "Extreme's responses to written discovery," SNMPR can obtain the information it seeks through Topic 9 through other, less burdensome forms of discovery—and in a number of cases already has. For this reason, too, SNMPR's request should be denied.

\*   \*   \*

Extreme has already provided 24 hours of 30(b)(6) depositions and has agreed to provide a cumulative 35 hours of 30(b)(6) testimony. SNMPR now seeks an unspecified number of hours of testimony on a single topic that as written is overbroad, unduly burdensome, and not reasonably particular. Extreme never agreed to produce a witness on this Topic either as written or as SNMPR understands it and should not be penalized for its objections to questions that were out of scope, improper, and either already answered or more easily answered through other forms of discovery. To be clear, no single person could possibly be prepared to engage with counsel on 31 interrogatories and 45 requests for admission, covering the entire gamut of this case. The Court should deny SNMPR's motion.

DATED: April 2, 2024

Respectfully Submitted,

 */s/  John M. Neukom*

Charles B. Lee, BPR# 011570
Jessica Malloy-Thorpe, BPR# 035234
Jordan B. Scott, BPR# 037795
MILLER & MARTIN, PLLC
832 Georgia Avenue
1200 Volunteer Building
Chattanooga, Tennessee 37402
Tel: (423) 756-6600
Fax: (423) 785-8293
clee@millermartin.com
jessica.malloy-thorpe@millermartin.com
 jordan.scott@millermartin.com

John M. Neukom (*admitted pro hac vice*)
Abraham A. Tabaie (*admitted pro hac vice*)
Barbara N. Barath (*admitted pro hac vice*)
Saurabh Prabhakar (*admitted pro hac vice*)
Alicia J. Ginsberg (*admitted pro hac vice*)
DEBEVOISE & PLIMPTON LLP
650 California Street
San Francisco, California 94108
jneukom@debevoise.com
atabaie@debevoise.com
bnbarath@debevoise.com
sprabhakar@debevoise.com
ajginsberg@debevoise.com
(415) 738-5700

Leslie A. Demers (*admitted pro hac vice*)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

One Manhattan West
New York, New York 10001
leslie.demers@skadden.com
(212) 735-3000

Sy Damle (*admitted pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, DC 20004
sy.damle@lw.com
(202) 637-2200

Michael Powell (*admitted pro hac vice*)
David Lamb (*admitted pro hac vice*)
GISH PLLC
41 Madison Avenue, Floor 31
New York, NY 10010
michael@gishpllc.com
david.lamb@gishpllc.com
(212) 518-2000

*Attorneys for Extreme Networks, Inc.*