# EXHIBIT B

**Appendix A to Parties' Joint Statement titled "Agree-Upon Topics from Plaintiff's Rule 30(b)(6) Deposition Notice**

# APPENDIX A

## AGREED-UPON TOPICS FROM PLAINTIFF'S RULE 30(B)(6) DEPOSITION NOTICE[1]

**Topic No. 1:** The sale of Brocade's data center business to Extreme, including ~~but not limited to~~ any discussion or analysis Relating to SNMP Research and/or SNMP Research Software in connection with that sale.

**Topic No. 4:** Your analyses and/or Communications (internal or external) Relating to which Products are encompassed by the 2001 Extreme License, and any research, testing or analysis done in connection with that issue.

**Topic No. 7:** Your analyses and/or Communications (internal or external) Relating to which Products contain or might contain SNMP Research Software and any research, testing or analysis done in connection with that issue.

**Topic No. 8:** Your request(s) for Licenses or assignments/transfers/amendments of Licenses from SNMP Research, including ~~without limitation~~ why You made the requests, which Persons were involved in the requests, and any research, testing or analysis done in connection with the requests or any of SNMP Research's responses to the requests.

**Topic No. 9:** Extreme's responses to written discovery propounded by SNMP Research in this case, including the scope of Extreme's collection of Documents in response to the written discovery.

**Topic No. 12:** The organization, management and control of Extreme, including without limitation in connection with: the marketing, advertising, or sale of the Products identified in Extreme's responses to SNMP Research Inc.'s Interrogatory numbers 1, 2, and 9.

**Topic No. 13:** The marketing and advertising of the Products identified in Extreme's responses to SNMP Research Inc.'s Interrogatory numbers 1, 2 and 9. This includes, without limitation:
    a. to whom the Products are marketed (including but not limited to any target audience(s));
    b. how they are marketed (e.g., marketing channels, website and social media marketing, etc.);
    c. which, if any, features/characteristics/customer needs are emphasized or targeted in any marketing;
    d. any analysis and/or tracking of any of the above or of the effectiveness of the marketing;
    e. information about competing products (names of providers, prices of products, distribution of competing products, etc.);
    f. talking points or other messaging that Extreme sales and marketing staff uses to communicate with customers and potential customers (may be captured by "how they are marketed");
    g. information about points of parity and points of difference between Extreme

---

[1] The text in redline reflect edits to the topics proposed by Plaintiffs.

products on the one hand and competing products on the other hand;

h. the sales and marketing process (e.g., are there RFPs, a quoting process, a list of approved sellers, who at the customer is involved in the purchase decision, etc.); and

i. whether there are individually-negotiated terms in purchases (discounts, warranties, rebates, additional services and technical support).

**Topic No. 14:** Revenues, costs, and profits from the sale of the Products identified in Extreme's responses to SNMP Research Inc.'s Interrogatory numbers 1, 2 and 9. This includes, without limitation, all Documents and information provided and referenced in Extreme's responses to SNMP Research Inc.'s Interrogatory numbers 1, 2, 5, 6, and 9 (such as EXTREME-0072245, EXTREME-00871500, EXTREME-01290742, EXTREME-01290743, EXTREME-01290744, EXTREME-00722448, EXTREME-01290741, EXTREME-00722446, EXTREME-00722447, EXTREME-01290740, EXTREME-00871501, and all similar financial documents). It also includes, without limitation:

a. Your systems and methods for tracking, recording, and maintaining revenues, costs, and profits;

b. The number of units sold each quarter since the date of first sale.

c. The gross revenue and net revenue each quarter since the date of first sale.

d. Cost of revenue each quarter since the date of first sale, including the method for recording and allocating revenues and related costs of revenues, and the difference between burdened costs of revenues and unburdened costs of revenues.

e. Gross margin each quarter since the date of first sale.

f. Sales and marketing, general and administrative, and research and development expenses and how they are calculated and allocated to the Product sale, by quarter, including such expenses incurred for any company, subsidiary, division, group, department, etc. that manufactured or sold the Product, for each quarter since the date of first sale.

g. Other expenses incurred by Extreme allocated to the manufacturing and sales of the Product which have not been identified above but are included by Extreme as a cost to manufacture and sell the Product, for each quarter since the date of first sale.

h. Income before income taxes for the Product after all expenses allocated to the manufacture and sale of the Product have been accounted for, since the date of first sale.

i. Net income from the sale of the Product after Extreme has assigned an income tax to the Product, since the date of first sale.

j. How Product revenues (including, without limitation, the service revenues in the documents and information provided by and referenced in Extreme's response to SNMP Research Inc.'s Interrogatory number 9) are identified as to each Product.

k. For each item listed above, whether Extreme further calculates a break-down by geographic region, and the process by which those calculations are made.

**Topic No. 16:** For all Products identified in Extreme's responses to SNMP Research Inc.'s

3

Interrogatory numbers 1 and 2, the shipment numbers for each Product by quarter from the date of first sale and by geographic region and customer, and the method for calculating the shipment numbers.

**Topic No. 21:** Your Communications with Broadcom or Brocade about SNMP Research, its software, its Licenses, ~~and/or~~ this lawsuit, and/or any ~~This includes without limitation any discussions relating to~~ actual or potential indemnification or defense.

**Topic No. 22:** Your Communications with any third party about SNMP Research, its software, its Licenses, ~~and/or~~ this lawsuit, and/or any ~~. This includes without limitation~~ any Communications (direct or indirect) with Your customers~~, direct or indirect~~.

**Topic No. 23:** The search You conducted to ascertain which Products at Extreme contain SNMP Research Software, including ~~without limitation~~ the Persons involved, ~~and~~ what their roles were, ~~and~~ what they did to search, the results of the search(es), and how, when and to whom the results were communicated.

**Topic No. 24:** The authenticity of Documents produced by You in discovery in this action. [PLAINTIFF'S AGREED TO DROP THIS TOPIC because the parties have agreed to negotiate a stipulation on authenticity of documents in lieu of this topic]

**Topic No. 25:** Your efforts to preserve and search for Documents relevant to this action and/or responsive to Plaintiffs' requests for production of Documents. This includes without limitation, from 2001 to the present, Your Document (including email) retention policy(ies), the identities of Your custodians likely to have relevant Documents, and the destruction, deletion, or failure to retain relevant Documents including Communications of Your custodians (such as Paul Segalini and Yeeping Zhong).

**Topic No. 26:** The process of creating any financial reports made by Extreme for production in this litigation, ~~including~~ the source(s) of information in such reports, the completeness of the data, the meaning of the data, and the process by which the accuracy of the data was verified.

**Topic No. 31:** Your Source Code for the operating system software contained in the Products identified in Extreme's responses to SNMP Research Inc.'s Interrogatory numbers 1 and 2, ~~including without limitation~~ when, where and how it is maintained, developed, and inserted into the Products and subsequently updated.

**Topic No. 33:** All steps that You have taken, if any, to remove any SNMP Research Software from the Products identified in Extreme's responses to SNMP Research Inc.'s Interrogatory numbers 1, and 2, including but not limited to all instances when You or anyone acting on Your behalf removed SNMP Research Inc.'s copyright notice.

**Topic No. 34:** Any plans or intention You have or have had to remove any of Plaintiffs' software from the Products identified in Extreme's responses to SNMP Research Inc.'s Interrogatory numbers 1, and 2.

**Topic No. 35:** The royalty system used to track royalty amounts owed for your Products and your policies, practices, and procedures for determining and reporting royalties for shipped Products and efforts to do so, including but not limited to, all efforts taken to determine and report royalties for the Products identified in response to SNMP Research Inc.'s Interrogatory number 1 and 2.

**Topic No. 36:** Your policies, practices, and procedure for identifying third party code in your products.

**Topic No. 38:** All facts and circumstances regarding the decision to use SNMP Research Software in EXOS products other than the Black Diamond 10808.

**Topic No. 39:** All facts and circumstances regarding the royalty reports delivered by Extreme to SNMP Research under the 2001 Extreme License.

Case 3:20-cv-00451-CEA-DCP   Document 382-4   Filed 04/09/24   Page 6 of 6   PageID #: 17174