UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| **SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC.,** | § § § § § | **Case No. 3:20-cv-00451-CEA-DCP** |
| **Plaintiffs,** | § § | |
| v. | § § | **Jury Demand** |
| **BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; AND EXTREME NETWORKS, INC.,** | § § § § § | |
| **Defendants.** | § § | |

**PLAINTIFFS' REPY IN FURTHER SUPPORT OF THEIR
MOTION TO CHALLENGE EXTREME'S CONFIDENTIALITY DESIGNATIONS**

**COME NOW** the Plaintiffs, SNMP Research, Inc. ("SNMP Research") and SNMP Research International, Inc. ("SNMP International" and together with SNMP Research, "Plaintiffs"), by and through counsel, pursuant to the Amended and Restated Protective Order entered in this case (Dkt. 335) (the "Protective Order"), the Local Rules of this Court, and the Court's direction of October 27, 2023, and hereby submit the following Reply in Further Support of Plaintiffs' Motion to Challenge Extreme's Confidentiality Designations (the "Motion").

**I.      INTRODUCTION**

Plaintiffs seek to compel Extreme to redesignate certain documents produced in discovery designated as "Outside Counsel Eyes Only" (or "OCEO") pursuant to the Amended and Restated Protective Order (*see* Dkt. 335, the "Protective Order").   In its Opposition to Plaintiffs' Motion to Challenge Extreme's Confidentiality Designations (Dkt. 380, the "Opposition"), Extreme argues that the

documents at issue (the "Financial Documents")[1] should remain designated as OCEO because: (1) it has met its burden to show that the Financial Documents meet the standard for OCEO designation; (2) Extreme will risk "substantial harm" by disclosure to Plaintiffs; and (3) Plaintiffs cannot show harm by the designations. In support, Extreme has submitted affidavits from its counsel and its Senior Manager of Sales Operations in support of its motion. However, Extreme fails to meet its burden to present any specific, non-conclusory evidence that disclosure of the Financial Documents will result in harm to it or third parties and, accordingly, the Financial Documents, at best, qualify for designation as "Highly Confidential" under the Protective Order. Additionally, Extreme's insinuations that Plaintiffs or their owner, Dr. Jeffrey D. Case, will not comply with the Protective Order is mere conjecture and unsubstantiated by the record. Furthermore, Extreme fails to articulate how the financial information in many of these documents are not historical or support its position that Plaintiffs must show a particular harm in being unable to view the information at issue. Finally, the OCEO designations continue to harm Plaintiffs' ability to participate in and evaluate their case against Extreme. The designations are especially onerous given that Plaintiffs do not compete with Extreme. Accordingly, Plaintiffs' Motion should be granted, and Extreme should be compelled to redesignate the Financial Documents as "Highly Confidential."

## II. ARGUMENT

Extreme's Opposition attempts to convince the Court that it need only analyze certain factors spelled out in *Stout v. Remetronix* to determine whether the Financial Documents are properly designated as OCEO. *See* Opposition at 6. However, "[t]he party seeking an AEO protective order must identify with sufficient particularity the harm it will suffer." *Daycab Company, Inc. v. Praire Technology, LLC*,

---

[1] The documents' Bates numbers and a short description of each document were provided in conjunction with Plaintiffs' motion. *See* Dkt. 366 at 4-5.

No. 3:20-CV-63-TRM-DCP, 2021 WL 6275628, at *2 (E.D. Tenn. Dec. 21, 2021). As the parties here jointly agreed and as is enshrined in the Protective Order, "the burden of persuasion shall be on the Designating Party." Dkt. 335 ¶ 47.

When the movant seeking an AEO designation is a business, "such a showing requires specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm." *Diamond Resorts*, , 2021 WL 8443797 at *6 (quoting *Stout v. Remetronix, Inc.*, 298 F.R.D 531, 535 (S.D. Ohio 2014) (internal quotations omitted)). "Further, 'the court must balance the difficulties imposed upon [a party] against the need to protect information from abuse by competitors.'" *Id.* (quoting *U.S. ex rel. Daugherty v. Bostwick Labs.*, No. 1:08-CV-354, 2013 WL 3270355, at *2 (S.D. Ohio June 26, 2013) (other quotations omitted)). Extreme's Opposition ignores this law and, instead, attempts to support its OCEO designations based upon generalized claims of harm and baseless insinuations regarding Plaintiffs' conduct.

> **A.** **Extreme's Citation To The *Stout* Factors Does Not Change Its Burden To Show That The Financial Documents Are Properly Designated As OCEO.**

Extreme cites *Stout v. Remetronix, Inc.* for the proposition that this Court must review six factors laid out in that case to determine whether the Financial Documents qualify for OCEO protection.[2] Extreme also argues that it has properly shown that each of the six factors are in its favor and, therefore, the Financial Documents qualify to be designated as OCEO. However, this argument ignores that the factors set out in *Stout* are not the exclusive analysis required to determine whether information qualifies

---

[2] Extreme correctly points out that Plaintiff's Memorandum in support of the instant motion, Dkt. 366, incorrectly quotes this Court's decision in *Home Federal Bank of Tennessee v. Home Federal Bank Corporation*, 2020 WL 12863501. Although the citation is erroneous, this Court has stated the quoted language in other decisions. *See Diamond Resorts US Collection Dev., LLC v. Wesley Financial Group*, LLC, 2021 WL 8443797, at *6 (E.D. Tenn. Jul. 20, 2021); *Daycab Company, Inc. v. Praire Technology, LLC*, No. 3:20-CV-63-TRM-DCP, 2021 WL 6275628, at *2 (E.D. Tenn. Dec. 21, 2021); *Knox Trailers, Inc. v. Clark, No. 3:20-CV-137-TRM-DCP, 2021 WL 2688643* , at *4 (E.D. Tenn. Jan. 11, 2011). The Opposition claims that this language is inapplicable to the case before this Court, but it fails to show why.

- 3 -

for OCEO or "Attorney's Eyes Only" ("AEO") protection. Rather, these factors merely relate to whether a protective order pursuant to Federal Rule of Civil Procedure 26 is appropriate at all.

The *Stout* factors Extreme cites to have their origins in much older caselaw. *Stout* quotes the factors at issue from *U.S. ex rel. McDonough v. Symphony Diagnostic Services*. *See Stout v. Remetronix, Inc.*, 298 F.R.D. 531, 535 (S.D. Ohio 2014) (quoting *U.S. ex rel. McDonough v. Symphony Diagnostic Services*, No. 2:08-cv-114, 2013 WL 5467830, at *3 (S.D. Ohio Sep. 30, 2013). In *McDonough*, the United States District Court for the District of Ohio applied these factors to determine whether certain information should be protected from disclosure at all pursuant to Federal Rule of Civil Procedure 26. *See U.S. ex rel. McDonough v. Symphony Diagnostic Services*, 2013 WL 5467830, at *3 (S.D. Ohio Sep. 30, 2013). The *McDonough* Court quoted these factors in the context of whether a party had waived privilege, and ultimately determined that it did not have a sufficient record before it to determine whether privilege had been waived. The *McDonough* Court did not apply these factors in the context of reviewing the proper treatment under an existing protective order of a document designated OCEO or AEO.

*McDonough*, in turn, relied upon *U.S. v. International Business Machines Corp.*, which also listed these factors to determine whether a customer list would be "subject to protection under" Federal Rule of Civil Procedure 26(c). *U.S. v. International Business Machines Corp.*, 67 F.R.D. 40, 47 (S.D.N.Y. 1975). Similar to *McDonough*, the *International Business Machines* Court was not applying the *Stout* factors to the question of whether information should be designated as OCEO or AEO; it was evaluating whether a customer list would be protected under Rule 26 at all. *See generally, id.* Accordingly, Extreme's argument that it need only show that the *McDonough* factors weigh in its favor to meet its burden to show that the Financial Documents qualify for an OCEO designation is incorrect.

Even a reading of *Stout* alone reveals that the *McDonough* factors are not the only consideration when a party has the burden of showing that information is correctly designated as AEO or OCEO. As

- 4 -

*Stout* directs, a party "seeking an AEO Protective Order must identify with sufficient particularity the harm it will suffer." *Stout v. Remetronix, Inc.*, 298 F.R.D 531, 535 (S.D. Ohio 2014). "AEO designation can be justified upon a specific factual showing that 'especially sensitive information is at issue or the information is to be provided to a competitor.'" *Id.* (quoting *U.S. ex rel. Daugherty v. Bostwick Labs.*, No. 1:08-cv354, 2013 WL 3270355, at *2 (S.D. Ohio June 26, 2013)); *see also Diamond Resorts US Collection Dev., LLC v. Wesley Financial Group, LLC*, No. 3:20-Cv-251-DCLC-DCP, 2021 WL 8443797, at *6 (E.D. Tenn. Jul. 20, 2021). Additionally, this Court has ordered that Extreme must show that the disclosure of the information in the Financial Documents would "create a substantial risk of serious injury to [Extreme] or third parties or significant competitive advantage to [Plaintiffs]." Dkt. 335 ¶ 6. Accordingly, Extreme must make a particularized showing that either it, or a third party, will suffer "serious injury" or "significant competitive disadvantage" if the Financial Documents are disclosed to one person at Plaintiffs, such that a Highly Confidential designation (already a heightened designation under the Protective Order) will not sufficiently protect that information.

### B. Extreme Has Not Shown That the Financial Documents Contain Information Meeting The Standard Required For An OCEO Designation.

Extreme submitted the Declaration of Saurabh Prabhakar (Dkt. 380-1, the "Prabhakar Declaration"), excerpts of the transcript of Daniel DeBacker (Dkt. 380-2, the "DeBacker Deposition"), and the Declaration of Antony Hutchins (Dkt. 380-3, the "Hutchins Declaration") in support of its opposition. However, while the Hutchins Declaration shows that Extreme considers the information in the Financial Documents to be proprietary information worthy of protection under Rule 26 and the Protective Order, Extreme's submissions do not demonstrate any "serious injury" or "significant competitive disadvantage" that Extreme will suffer if the designation of this material is Highly Confidential rather than OCEO. Accordingly, Extreme should be compelled to redesignate the Financial Documents as Highly Confidential.

### 1. The Hutchins Declaration Only Speaks In Generalities And Hypotheticals.

The Hutchins Declaration presents conclusory statements and hypotheticals, many of which do not demonstrate harm to Extreme, but rather suggest misconduct by unknown, individual third parties and, therefore, do not meet the particularized showing required. *See Home Fed. Bank of Tenn.*, 2020 WL 12863501, at *10 (E.D. Tenn. Mar. 12, 2020)(citing *Arvco Container Corp. v. Weyerhaeuser Co.*, No. 1:08-CV-548, 2009 WL 311125, at *7-8 (W.D. Mich. Feb. 9, 2009)("A litigant's vague feeling of discomfort or its desire to hobble its opponent in litigation do not establish good cause.")) The declaration only provides one generalized example of harm that may befall Extreme if the Financial Documents are redesignated, and the other potential "harms" it raises are even more attenuated. While Plaintiffs do not dispute that the Financial Documents may contain some information that qualifies for protection under Rule 26 and the Protective Order, the Hutchins Declaration does not provide the Court with an example of *particularized* harm as required by law, nor does it demonstrate how a Highly Confidential designation is not sufficient to protect Extreme or third parties as required by the Protective Order. Accordingly, the Hutchins Declaration does not support Extreme's burden to show particularized harm.

The Hutchins Declaration alleges that the Financial Documents will empower Extreme's competitors who "could use th[e] information about Extreme's customers and products to compete more effectively against Extreme by focusing their efforts on those customers and products."[3] However, the Hutchins Declaration does not point to any particular product that might be at issue, or which of Extreme's competitors could make use of such information. Given that the Hutchins Declaration acknowledges that the information at issue stretches "over a lengthy time period of more than 20 years" (*id.* at ¶ 15, *see also id.* at ¶ 6), Mr. Hutchins' generalized, blanket statement that this information will

---

[3] Ironically, Extreme's own cited caselaw, *Nanjing CIC International Co., Ltd. v. Schwartz*, 2023 WL 6958787 (W.D.N.Y. Oct. 20, 2023), provides examples of an affidavit that articulates specific harm.

somehow empower Extreme's competitors remains unsupported.[4]  Furthermore, a designation of Highly Confidential already restricts Plaintiffs' viewing of such material to two Party Representatives, *see* Dkt. 335 ¶ 16(c), and the Hutchins Declaration does not show that permitting any one of Plaintiffs' representatives to view the Financial Documents will cause Extreme serious injury or significant competitive disadvantage.

The Hutchins Declaration's other statements regarding Extreme's potential harm are mere distractions.  The declaration alleges that an "individual" could gain an "advantage over other investors" by having "extra insight not available to the general public" and that "trading while in possession of such…information may constitute a violation of the federal securities laws." *Id.* ¶ 15.  The Hutchins Declaration also generally states that individuals with access to the Financial Documents "could also glean insights into the business of Extreme's customers and distributors…which could similarly be leveraged to make investments decisions or to compete with those third parties." *Id.* ¶ 16.  The only vague example the Hutchins Affidavit provides is that "[s]uch information *combined with other information or analysis* might therefore indicate to that individual that said customer's financial condition was poor, ahead of that customer publicly closing such information." *Id.* (emphasis added).

Extreme's hypothetical generalities do not constitute a "particularized showing."  Rather, these statements conjure up the ghost of unidentified "individuals" and their use of the Financial Documents in violation of the Protective Order to commit securities violations.  Tellingly, Extreme is unable to present any evidence that these hypothetical situations have occurred, are occurring or would occur, or why they would occur given that Plaintiffs do not even compete with Extreme.  Furthermore, Extreme does not explain how an "individual" could compete with Extreme's competitors using this information.

---

[4] Extreme alludes to other specific harms that could possibly befall it in the Opposition, however, none of them are supported by evidence in the record.

Rather, it relies on the conclusory statement that competition could occur. Finally, the Hutchins Declaration's hypothetical regarding an Extreme customer "ramp[ing] down" is even more in the realm of the hypothetical because it specifically relates that an individual with access to such information would need to combine the information with "other information or analysis." *Id.* ¶ 16. Extreme does not explain what this other information or analysis is, and, even then, the Hutchins Declaration provides that an individual only "might" be able to use such combined information to commit unspecified investing misconduct.

Simply put, the Hutchins "Declaration simply states that the exchange of information will create an unfair advantage, the information is not public, and Defendant[] take[s] steps to maintain the information's confidentiality." *Daycab Co., Inc. v. Praire Technology, LLC*, No. 3:20-CV-63-TRM-DCP, 2021 WL 6275628, at *4 (E.D. Tenn. Dec. 21, 20221). "[T]hese statements are too conclusory to justify the need for an [OCEO] provision." *Id.* Extreme has not presented any evidence showing harm if the Financial Documents are subject to disclosure.

### 2. Extreme's Insinuations Regarding Plaintiffs' Handling Of Documents Designated Under The Protective Order Are Unsupported And Improper.

Extreme argues that Plaintiffs' Motion should be denied because Plaintiffs, and their owner Dr. Jeffrey D. Case, have not affirmatively stated that they will not use the information in the Financial Documents to compete with Extreme. This argument is based solely upon insinuation and Extreme has no basis to suggest that Plaintiffs or Dr. Case will, essentially, violate the Protective Order in this matter.

However, a "suggestion of a potential sinister motive is insufficient to warrant anything more than a Confidential designation." *Home Federal Bank of Tennessee v. Home Federal Bank Corp.*, No. 3:18-CV-379-JRG-DCP, 2020 WL 12863501, at *10 (E.D. Tenn. Mar. 12, 2020) (*citing Arvco Container Corp. v. Weyerhaeuser Co.*, No. 1:08-CV-548, 2009 WL 311125, at *7–8 (W.D. Mich. Feb. 9, 2009) ("A litigant's vague feeling of discomfort or its desire to hobble its opponent in litigation do not

- 8 -

Case 3:20-cv-00451-CEA-DCP   Document 383   Filed 04/10/24   Page 8 of 15   PageID #: 17237
7490249.10

establish good cause. '[V]ague and conclusory allegations of confidentiality and competitive harm are insufficient. The movant must make "a particularized showing that the information sought is confidential' and come forward with "specific examples" of competitive harm.")). Accordingly, without any evidentiary support to show that Plaintiffs or Dr. Case will use the Financial Documents in a manner inconsistent with the Protective Order, Extreme's unfounded allegations are conclusory and should be ignored. *Id.*

Extreme also argues that the Financial Documents should remain OCEO because there have been inadvertent disclosures of information designated under the Protective Order in this matter. Extreme points to the filing of certain information subject to Federal Rule of Evidence 408 in this matter or when Plaintiffs' counsel used a document designated OCEO by former defendants Broadcom or Brocade to one of Extreme's 30(b)(6) witnesses. Regarding the filing of information subject to Federal Rule of Evidence 408, Plaintiffs did not agree with Extreme's position but still took steps to correct this issue after it was raised by Extreme. *See* Prabhakar Declaration ¶ 13; Dkt. 343. Tellingly, Extreme has not presented any evidence regarding the harm it suffered from this disclosure.

Regarding the alleged use of documents marked OCEO by Broadcom at the deposition of Daniel DeBacker, Exhibits 128 and 129 are an email and attachment sent by Extreme to Broadcom. Document 130 is the responsive email to 128. Both emails were sent in 2017 and the only disclosure was to Extreme's corporate representative, Mr. Debacker. Accordingly, Extreme already had possession of those documents, and no violation of the Protective Order took place. Additionally, while Extreme claims it does not know whether Plaintiffs alerted Broadcom to the "disclosure", it does not state whether it has undertaken to alert Broadcom of the "disclosure" either.

Furthermore, Extreme's vague concerns about misuse of information designated for protection under the Protective Order are overblown. This Court has previously found that an inadvertent disclosure

of confidential information does not support an argument that a party is not abiding by the protective order in a case. *Home Federal Bank of Tennessee v. Home Federal Bank Corp.*, 2020 WL 12863501, at *10 (E.D. Tenn. Mar. 12, 2020)("The Court does not find that Plaintiff's one, inadvertent disclosure, which was quickly corrected, raises questions as to Plaintiff's ability to manage Highly Confidential or Confidential documents"). Accordingly, Extreme's allegations regarding Plaintiffs' use of the Financial Documents should not be taken into account in the Court's decision.

### 3. Plaintiffs And Extreme Are Not "Uniquely Intertwined" Or Otherwise Acting As Competitors.

Extreme argues that, even if Plaintiffs and Extreme are not direct competitors, they are so "uniquely intertwined" that the Court should consider disclosure of information from Extreme to Plaintiffs as a disclosure between competitors. However, the caselaw cited by Extreme is inapplicable to the facts before this Court, and Extreme has not placed any evidence in the record showing that Extreme competes with Plaintiffs. Accordingly, this argument also fails.

In keeping with its various, unsupported insinuations regarding Plaintiffs' ability to comply with the Protective Order, Extreme cites *Mahavisno v. Compendia Bioscience, Inc.* to argue that a Court should not redesignate OCEO material if the party seeking redesignation could potentially use the information for a competitive purpose. However, Extreme misstates *Mahavisno*. The *Mahavisno* Court determined that a parties' source code would remain designated as AEO because the stipulated protective order in that matter permitted the parties to produce source code as AEO. *See Mahavisno v. Compendia Bioscience, Inc.*, No. 13-12207, 2015 WL 248798, at *14 (E.D. Mich. Jan. 20, 2015). Specifically, the *Mahavisno* Court held that "when a party willingly accedes to the entry of a stipulated protective order, the Court will be hesitant to relieve that party of its obligations, particularly when the other party produced discovery in reliance on their agreement." *Id.* (internal citations and quotations omitted). While the Protective Order in this matter does provide for a Source Code designation, there is not a specific category

- 10 -

for financial documents.  Accordingly, Extreme cannot claim to have relied upon a particularly agreed-upon designation for the Financial Documents.

Extreme also cites *Stout v. Remetronix, Inc.* and *3 Sigma Corp. v. NuCoat, Inc.* to argue that parties who are not in direct competition, but who could become competitors, sell information to a party's competitors, or are employed by competitors, are so "uniquely intertwined" that the Court should consider them competitors.  Opposition at 8, 10.  However, Extreme does not, and cannot, show that it and Plaintiffs have any of the relationships discussed in *Stout* or *3 Sigma Corp.* and, therefore, this argument should be ignored.

### C.  Extreme's Own Evidence Shows That The Information At Issue Is Historical And Stale, And, Regardless, It Has Not Articulated What Harm Disclosure Will Cause.

Extreme argues that the information contained in the Financial Documents is not historical or stale, and, therefore, should remain designated as OCEO because many of the documents contain information running through 2023 or 2024.  Opposition at 12.  However, Extreme admits that eleven out of the 16 sixteen documents at issue do not contain information running through 2023 or 2024 (and conveniently omits which documents are not current).  Additionally, the Hutchins Declaration identifies the Financial Documents as containing "information…spanning more than twenty years" and "information about Extreme's business over a lengthy time period of more than 20 years."  Hutchins Declaration ¶¶ 6, 15.  Furthermore, while Extreme cites caselaw attempting to show that recent financial information is proper for designation as OCEO, *see* Opposition at 12 (citing *Bostwick Laboratories*, 2013 WL 3270355 (S.D. Ohio Jun. 26, 2013); *Worldwide Distrib., LLLP v. Everlotus Indus. Corp.,* No. 1:16 MC 67, 2017 WL 553305 (N.D. Ohio Feb. 10, 2017), these cases only hold that a court cannot formulate a bright line to conclude that financial information is automatically stale or does not qualify for OCEO designation based upon the information's age.  *Worldwide Distribution* is particularly unhelpful given
- 11 -

that the party seeking a protective order in the case was a non-party. *See Worldwide Distrib., LLLP v. Everlotus Indus. Corp.,* 2017 WL 553305 (N.D. Ohio Feb. 10, 2017)

As stated by this Court, when historical information is commingled with more recent financial data, "[e]stablishing hard and fast rules in this area is difficult, *which is all the more reason to require that the injury in terms of competitive disadvantage be shown with specificity.*" *Home Fed. Bank of Tenn.,* 2020 WL 12863501, at *5 (emphasis added). As discussed above, Extreme has completely failed to show what harm could befall it if the Financial Documents are disclosed, much less shown why a Highly Confidential designation is not sufficient to protect the Financial Documents. Additionally, Extreme does not dispute that historical data is commingled with more recent data. Accordingly, Extreme cannot merely rely on the fact that some of the information in the Financial Documents is current because it has failed to show that disclosure will cause it to suffer harm.[5] Because it has failed to do so, its opposition fails, and the Motion should be granted.

### D. Plaintiffs Have Encountered Difficulty Imposed By Extreme's AEO Designations.

Extreme argues that Plaintiffs have not articulated any reason why these AEO designations impose difficulties upon them in litigating this case. However, the Court "must balance the difficulties imposed upon [a party] against the need to protect information from *abuse by competitors*.'" *Diamond Resorts*, 2021 WL 8443797, at *6. (quoting *Bostwick Laboratories*, 2013 WL 3270355, at *2)(emphasis added). While Extreme cites caselaw wherein courts have refused to permit a competitor to view information designated as AEO, *see* Opposition at 14-15, it does not cite any support for imposing the hardship of an OCEO designation upon a party that is not a competitor. As discussed in Plaintiffs'

---

[5] Extreme also makes reference to the Plaintiffs' designations of their own financial documents. However, those documents are not the subject of the Motion, and, therefore, discussion of them is irrelevant. It remains Extreme's burden to show that its own documents are correctly designated as OCEO, regardless of how Plaintiffs designate their own information.

- 12 -

7490249.10

Case 3:20-cv-00451-CEA-DCP   Document 383   Filed 04/10/24   Page 12 of 15   PageID #: 17241

Memorandum in Support of this Motion (Dkt. 366 at 7-8) and above, Plaintiffs do not compete with Extreme. When a party cannot show the harm they will suffer by disclosure "with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements", OCEO designations are not appropriate. *See id.* Extreme has failed to make such a showing, and, therefore, Plaintiffs need not show they have suffered harm by Extreme's use of the OCEO designations.

Should the Court conclude that the harm to Plaintiffs is an issue, however, Plaintiffs' inability to access the information in the Financial Documents will continue to hamper Plaintiffs' ability to understand their case. Even in cases where the defendant considers the plaintiff a competitor, a Court may find that information or documents should not be designated as AEO when the documents or information are at the "heart" of a plaintiff's claim. *See K&M Intern., Inc. v. NDY Toy, L.L.C.*, No. 1:13CV771, 2015 WL 520969, at *5 (N.D. Ohio Feb. 9, 2015). In this case, Extreme's financial information, contained in the Financial Documents, relates to the number of units of certain products sold, the services provided in conjunction with those products, and Extreme's revenues and profits arising from the sale of those products and services. Extreme's profits related to those products and services are certainly at the heart of this case, especially with respect to Plaintiffs' copyright infringement claim.

Furthermore, Plaintiffs continue to be hindered by the improper OCEO designations. Plaintiffs were unable to provide any insight to their experts prior to Plaintiffs' April 2, 2024 expert disclosure deadline regarding how Extreme's financial information could be used to calculate damages. Plaintiffs are also unable to attend or review depositions designated OCEO or coordinate with counsel about their damages in this matter. Furthermore, without access to the Financial Documents, Plaintiffs are unable to evaluate their claims. Instead, Plaintiffs are forced to rely on counsel for such evaluations. Extreme's claim that Dr. Case simply is "curious" about Extreme's internal financials is completely inaccurate. Accordingly, the Motion should be granted.

- 13 -

## III.  CONCLUSION

The Motion should be granted because Extreme has failed to meet its burden to show that the Financial Documents qualify for protection as information designated OCEO.  Extreme has failed to show that disclosure of the Financial Documents will result in any harm to it or third parties, presenting only conclusory statements and vague accusations regarding whether Plaintiffs will abide by the terms of the protective order.  Extreme's arguments regarding the age of the information at issue or whether Plaintiffs have need of the information are unsupported by caselaw and, in any event, do not overcome Extreme's failure to meet its burden to prove that the Financial Documents contain OCEO information.  Accordingly, the Motion should be granted, and Extreme should be compelled to redesignate the Financial Documents as "Highly Confidential."

Respectfully submitted,

Dated: April 10, 2024

By: */s/ Rameen J. Nasrollahi*
John L. Wood, Esq. (BPR #027642)
Cheryl G. Rice, Esq. (BPR #021145)
Rameen J. Nasrollahi, Esq. (BPR #033458)
EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
900 S. Gay Street, Suite 1400
P.O. Box 2047
Knoxville, TN 37902
(865) 546-0500 (phone)
(865) 525-5293 (facsimile)
jwood@emlaw.com
crice@emlaw.com
rnasrollahi@emlaw.com

By: */s/ A. Matthew Ashley*
A. Matthew Ashley (CA Bar. No. 198235)
Morgan Chu (CA Bar. No. 70446)
David Nimmer (CA Bar. No. 97170)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
(310) 277-1010 (phone)
(310) 203-7199 (facsimile)
mchu@irell.com
dnimmer@irell.com
mashley@irell.com

By: */s/ Olivia L. Weber*
Olivia L. Weber (CA Bar. No. 319918)
BIENERT KATZMAN LITTRELL WILLIAMS, LLP
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
(949) 369-3700 (phone)
(949) 369-3701 (facsimile)
oweber@bklwlaw.com

*Attorneys for Plaintiffs*
*SNMP Research International, Inc. and*
*SNMP Research, Inc.*