IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., <br><br> Plaintiffs, <br><br> v. <br><br> EXTREME NETWORKS, INC., <br><br> Defendant. | Case No. 3:20-cv-00451 <br><br> U.S. District Judge Charles E. Atchley, Jr. |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION
TO EXCLUDE THE TESTIMONY OF MAHDI ESLAMIMEHR**

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| I. | SUMMARY OF ARGUMENT | 1 |
| II. | LEGAL BACKGROUND | 2 |
| III. | ARGUMENT | 2 |
|   | A. Dr. Eslamimehr Is Not Qualified As A Survey Expert And His Critique Of Dr. Dhar Is Baseless | 2 |
|   | B. Dr. Eslamimehr's Response To Mr. Bradner Is Conclusory And Unfounded | 5 |
|   | C. Dr. Eslamimehr's Valuation Opinions Are Not Supported By Any Adequate Methodology, Evidence, or Qualifications | 8 |
| IV. | CONCLUSION | 12 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkins v. Marathon Petroleum Co, LP*,
   105 F.4th 841 (6th Cir. 2024) ........................................................................................*passim*

*Alexander v. CareSource*,
   576 F.3d 551 (6th Cir. 2009) ................................................................................................... 2

*Bucklew v. Hawkins*,
   329 F.3d 923 (7th Cir. 2003) ................................................................................................... 8

*Chapman v. Maytag Corp.*,
   297 F.3d 682 (7th Cir. 2002) ......................................................................................... 4, 7, 11

*Cosby v. KPMG, LLP*,
   2020 WL 3548643 (E.D. Tenn. June 29, 2020) ...................................................................... 2

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993) .................................................................................................... 1, 2, 5, 12

*Endless River Tech. v. Transunion*,
   LLC, 2024 WL 5156249 (6th Cir. Dec. 18, 2024) ........................................................ 8, 10, 12

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ....................................................................................................... 2, 6, 9

*McLean v. 988011 Ontario, Ltd.*,
   224 F.3d 797 (6th Cir. 2000) ................................................................................................... 2

*In re Scrap Metal Antitrust Litig.*,
   527 F.3d 517 (6th Cir. 2008) ............................................................................................. 3, 11

*Thomas v. City of Chattanooga*,
   398 F.3d 426 (6th Cir. 2005) ................................................................................................... 2

*Tovey v. Nike, Inc.*,
   2014 WL 3510636 (N.D. Ohio July 10, 2014) .................................................................. 7, 10

*U.S. v. Gissantaner*,
   990 F.3d 457 (6th Cir. 2021) ................................................................................................. 12

**Rules**

Fed. R. Civ. P. 37(c)(1) ................................................................................................................ 7

Federal Rules of Evidence Rule 702..................................................................................1, 2, 12

Rule 26 ........................................................................................................................................ 6

Plaintiffs SNMP Research, Inc. ("SNMPR") and SNMP Research International, Inc. ("SNMPRI") (together, "Plaintiffs") hereby file this brief in support of their Motion to Exclude the Testimony of Dr. Mahdi Eslamimehr, pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

## I. SUMMARY OF ARGUMENT

Dr. Mahdi Eslamimehr is a technical expert for Extreme with three distinct rebuttal opinions on damages-related topics. Ex. 17 ("Report")[1]. Each is improper and should be excluded.

First, Dr. Eslamimehr critiques an aspect of the survey analysis performed by Plaintiffs' expert, Dr. Ravi Dhar. *Id.* ¶¶ 14-15. However, Dr. Eslamimehr has no expertise in conducting or analyzing surveys of this type. And his conclusion—that some categories in Dr. Dhar's survey are ▓▓▓▓▓▓—is both irrelevant and unsupported by any valid evidence or methodology.

Second, Dr. Eslamimehr briefly faults the selection of network management stations and networking products that Plaintiffs' technical expert Mr. Scott Bradner tested. *Id.* ¶¶ 16-18. These opinions are entirely conclusory (comprising under a page) and devoid of reasoned analysis or evidentiary support. Moreover, they ignore that Mr. Bradner did not select the network management stations and products to be tested; rather, it was Extreme that identified and agreed to those products.

Third, Dr. Eslamimehr offers unsupported opinions on the value of the copyrighted SNMP agent that Extreme copied. *Id.* ¶¶ 19-57. Dr. Eslamimehr claims to derive a "▓▓▓▓▓▓" percentage of the value of the accused products that is attributable to Plaintiffs' software, but does not articulate any reliable methodology that would render his numbers relevant or helpful. He also offers conclusory opinions on supposed ▓▓▓▓▓▓ to SNMP and that the value attributable to Plaintiffs' software is

---

[1] Unless otherwise noted, all cited Exhibits are to the Olivia Weber Declaration.

zero. These opinions are all unsupported by objective evidence, contrary to law, and should be excluded.

## II. LEGAL BACKGROUND

A court must determine that "an expert's opinion [is] supported by 'more than subjective belief and unsupported speculation' and should be supported by 'good grounds,' based on what is known." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800–01 (6th Cir. 2000) (citations omitted); *see Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993). "Furthermore, the court must examine the expert's conclusions in order to determine whether they can reliably follow from the facts known to the expert and the methodology used." *Cosby v. KPMG, LLP*, 2020 WL 3548643, at *10 (E.D. Tenn. June 29, 2020).

*Ipse dixit* testimony is impermissible. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (excluding opinions "connected to existing data only by the *ipse dixit* of the expert"). "Conclusory statements unadorned with supporting facts are insufficient." *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009). Experts must also be qualified to render the opinions offered and the opinions must be relevant. Fed. R. Evid. 702; *Thomas v. City of Chattanooga*, 398 F.3d 426 (6th Cir. 2005) (expert report was inadequate where unsupported by any meaningful rationale).

## III. ARGUMENT

### A. Dr. Eslamimehr Is Not Qualified As A Survey Expert And His Critique Of Dr. Dhar Is Baseless

The first section of Dr. Eslamimehr's report responds to part of the opening report of Plaintiff's survey expert, Dr. Dhar. Dr. Dhar's survey asked respondents to evaluate the relative importance of 55 distinct capabilities of wired LAN switches including six capabilities relating to Plaintiffs' copyrighted code. In response, Dr. Eslamimehr opines that the six infringing capabilities are ▮▮▮▮▮ ▮▮▮▮▮ Report ¶ 14, though he conceded at deposition that they are all distinct. Ex. 18

("Eslamimehr Dep.") at 198:6-19 ██████████ see also Report ¶ 15 (admitting that the six features are ██████████.

At the outset, Dr. Eslamimehr's rebuttal opinions must be excluded because he is not "qualified by knowledge, skill, experience, training, or education" in the field of survey analysis or methodology. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008). The opinions to which he purports to respond were specifically prepared in light of Dr. Dhar's extensive expertise and experience in the field of marketing surveys. A tenured Yale professor who also serves as Director of the Yale Center for Customer Insights, Dr. Dhar has published "more than 90 papers" in "leading marketing, psychology, and management journals." Ex. 19 ("Dhar Rpt.") ¶¶ 1, 4. His doctoral dissertation was in the area of "consumer decision-making." *Id.* ¶ 6. During his career as a marketing professor and consultant, Dr. Dhar has "conducted, supervised, and/or evaluated more than 1,000 surveys relating to different aspects of consumer behavior." *Id.* ¶ 6; *see also id.* Appx. A.

By contrast, Dr. Eslamimehr has no expertise or experience in marketing surveys. His curriculum vitae does not reflect any relevant training or experience, Report at Ex. A, and he conceded at deposition that he has ██████████ a survey ██████████ ██████████ Eslamimehr Dep. at 221:14-22. At most, Dr. Eslamimehr tried to hedge by claiming some experience ██████████ the technical features of software products, but he ultimately admitted, ██████████ *Id.* at 219:3-13. Simply put, Dr. Eslamimehr does not have the necessary "knowledge, skill, experience, training, or education" to rebut Dr. Dhar. *In re Scrap Metal*, 527 F.3d at 529.

Separately, Dr. Eslamimehr's ██████████ opinions should be excluded as unreliable and entirely subjective. Dr. Eslamimehr's report does not define ██████████ or explain how to objectively evaluate such a condition, *see* Eslamimehr Dep. at 186:5-8, nor does he cite any

industry standard or similar objective source to anchor his determination. *See Chapman v. Maytag Corp.*, 297 F.3d 682, 688 (7th Cir. 2002) (excluding opinions "unsupported by any article, text, study, scientific literature or scientific data produced by others" and where expert "presented no proof that his theory is generally accepted in the scientific community"). When asked to identify his methodology, Dr. Eslamimehr simply claimed that his conclusions were ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉ Report ¶ 14; Eslamimehr Dep. at 191:8-21. Notably, Dr. Eslamimehr made no attempt to consider whether the other 49 capabilities cited by Dr. Dhar were ▉▉▉▉▉▉ Eslamimehr Dep. at 182:2-183:3, 185:6-8 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉ 185:9-21 ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

In any event, Dr. Eslamimehr's opinions regarding ▉▉▉▉▉▉ categories are irrelevant to this case and unhelpful (and likely confusing) to the trier of fact. Dr. Eslamimehr acknowledges in his report that the six categories he considers ▉▉▉▉▉▉ are not actually ▉▉▉▉▉▉ from a marketing perspective. Report ¶ 15 (admitting that the six features are "▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉". Since Dr. Eslamimehr is critiquing a marketing survey and acknowledged that from a marketing perspective the categories are distinct, Dr. Eslamimehr's unsupported opinion that the categories are ▉▉▉▉▉▉ in some sense other than marketing has no relevance.

Indeed, Dr. Eslamimehr's report does not explain any alleged relevance of his opinions to this case. He does not explain how the purportedly ▉▉▉▉▉▉ nature of these categories should affect Dr. Dhar's survey in any way. No other Extreme expert relies upon these opinions, including Extreme's survey expert, Mr. Philip Johnson, whose critiques of the Dhar Report notably omit any mention of Dr. Eslamimehr's ▉▉▉▉▉▉ analysis. Simply put, Dr. Eslamimehr's opinions do not "fit" this case, as there is no evidence that ▉▉▉▉▉▉ categories impact the results or reliability of

Dr. Dhar's survey analysis. Accordingly, Dr. Eslamimehr's free-floating opinions are invalid as there is no indication that they will actually "aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591.

### B. Dr. Eslamimehr's Response To Mr. Bradner Is Conclusory And Unfounded

The second section of Dr. Eslamimehr's report is a brief critique of product testing performed by one of Plaintiffs' technical experts, Mr. Bradner. Report ¶¶ 16-18. Dr. Eslamimehr limits his opinions to Mr. Bradner's selection of network management stations ("NMS") and tested products, arguing that they were too ████ too ██████ in number, and/or insufficiently ████████ to ███████ ████████████████████████████████████████████████████████████████████████ *Id.* ¶¶ 17-18. The entirety of Dr. Eslamimehr's opinions here comprises less than a single page. *Id.* ¶¶ 16-18.

Dr. Eslamimehr's report neglects to mention the reason that Mr. Bradner gave for selecting the NMS and products that he selected—Extreme produced those products in discovery and stipulated in a filing with this Court that it would not claim that other products would yield a different result in testing. Dkt. 327 ("***Extreme agrees that it will not argue that the Representative Product or OS Version is not representative of what Extreme's customers received in aspects that are relevant to this litigation***") (emphasis added). Thus, Dr. Eslamimehr is arguing exactly what Extreme agreed ***not*** to argue in a joint stipulation filed with this Court. Similarly, Mr. Bradner used the NMSs that Extreme either (1) produced in discovery pursuant to Court order, *see* Dkt. 332 at 2, or (2) expressly identified as third party NMSs that Extreme's customers use and/or that "are available for SNMPR for experiments that SNMPR's counsel or experts may wish to pursue," Ex. 24 (2023-07-17 Letter) at 2-3. So, again, Dr. Eslamimehr's vague critique of the use of those NMS contradict his own client's position during discovery.

In any event, Dr. Eslamimehr's opinions in this section are utterly conclusory and should be rejected on that basis as well. He does not offer any reasoning or analysis to support his critique of the

NMS or tested products used in Mr. Bradner's testing environment. Eslamimehr Dep. at 133:14-22 (claiming it was ███████████████████████ the products cited by Mr. Bradner). Nor does Dr. Eslamimehr attempt to support his conclusions by citing to any documentation or other evidence relating to the NMS or products tested by Mr. Bradner. Report ¶¶ 16-18; *see also* Eslamimehr Dep. 132:18-133:13 (examples of citations that Dr. Eslamimehr ███████████████ ).[2] Courts regularly exclude opinions such as these that are supported "only by the ipse dixit of the expert." *Joiner*, 522 U.S. at 146; *Adkins v. Marathon Petroleum Co, LP*, 105 F.4th 841, 850 (6th Cir. 2024) (excluding unsupported opinions that do "not meet the level of rigor and detail that Rule 26 requires").

Moreover, unlike Mr. Bradner, Dr. Eslamimehr did not attempt any product testing. When asked if he had ███████████████████████████████████████ he responded, ███████████████████████████ Eslamimehr Dep. at 178:17-23; *see also id.* at 180:15-24 ███████████████████████████████ ). Indeed, Dr. Eslamimehr did not inspect any ███████████ or ███████████ as part of his analysis, nor did he ███████████████████████ *Id.* at 172:20-24, 173:22-25, 174:9-14.

In an attempt to make up for this complete absence of support, Dr. Eslamimehr claimed during his deposition that he considered Extreme's source code in preparing his opinions. *See, e.g., id.* 135:11-18, 139:13-21. However, his report does not set forth ***any*** actual source code analysis and does not disclose that he performed any such analysis. No source code is identified in the list of materials he considered (Report at Ex. B), and his report does not mention or analyze any source code files in particular. *See* Eslamimehr Dep. at 165:12-17, 168:5-9 ███████████████████████████

---

[2] Paragraph 17 includes a footnote to a product website, but this corresponds to a product that Dr. Eslamimehr says Mr. Bradner did not use. Report ¶ 17.

Case 3:20-cv-00451-CEA-DCP    Document 471-1    Filed 01/03/25    Page 10 of 17
PageID #: 19999

6

███. At deposition, Dr. Eslamimehr admitted he couldn't ███ what source code files he supposedly analyzed out of the ███ that he claimed were made available to him. Eslamimehr Dep. at 164:15-165:6. The failure to timely disclose any of this alleged code analysis is reason alone to exclude the opinions on which it is based. Fed. R. Civ. P. 37(c)(1); *Tovey v. Nike, Inc.*, 2014 WL 3510636, *16 (N.D. Ohio July 10, 2014) (excluding report that failed to disclose the "basis and reasons" for its opinions); *Chapman*, 297 F.3d at 688.

Dr. Eslamimehr's opinions are also defective because they are not based on an objective methodology. Dr. Eslamimehr simply asserted that Mr. Bradner used an insufficient number and variety of devices in his testing, but never (1) identified "███" Eslamimehr Dep. at 222:4-6; (2) ███ ███" *id.* at 222:7-16 ███ or (3) attempted to identify ███ *id.* at 223:3-10. Of course, there was nothing stopping Dr. Eslamimehr (or any other Extreme expert) from ███ ███ *Id.* at 223:13-20. Dr. Eslamimehr's only explanation for why he failed to do so here was that Extreme ███ *Id.* at 223:13-20. Thus, Dr. Eslamimehr's conclusions are both untested and untestable, and should be excluded as wholly unreliable and unhelpful to the fact-finder.

    **C.    Dr. Eslamimehr's Valuation Opinions Are Not Supported By Any Adequate Methodology, Evidence, or Qualifications**

The final section of Dr. Eslamimehr's report purports to offer a technical assessment of the valuation of Plaintiff's SNMP agent as a percentage of the total value of Extreme's infringing products. He presents three primary opinions in this section of his report, each of which is unsupported and unhelpful to the finder of fact.

***First***, Dr. Eslamimehr offers the conclusory opinion that the value attributable to Plaintiffs' SNMP agent is "███ on the theory that ████████████████████████████████████████████████████████ ████████████████████████████ Report ¶ 24. But Dr. Eslamimehr admitted at deposition that he did not actually ██████████████████████████████████████████████ Eslamimehr Dep. at 156:15-157:25; *Adkins*, 105 F.4th at 850 (excluding unsupported opinions)

Moreover, even if Dr. Eslamimehr had undertaken such an analysis, his opinion would still be invalid as it depends on a fundamentally mistaken legal premise. A proper apportionment of damages in a copyright case "is not between the creative and derived features of the plaintiff's work, but between the infringing and the noninfringing features of the defendant's work." *Bucklew v. Hawkins*, 329 F.3d 923, 932 (7th Cir. 2003). Here, Dr. Eslamimehr alleges that the "value" of Plaintiffs' SNMP agent is entirely ***derived*** from the SNMP standard as opposed to "any alleged ***creativity***" in the SNMP implementation itself. This is exactly the kind of apportionment that is forbidden by well-established law. *Id.*; *see also Endless River Tech. v. Transunion*, LLC, 2024 WL 5156249, *5 (6th Cir. Dec. 18, 2024) (excluding opinion that failed to apply "legally relevant" test).

***Second***, Dr. Eslamimehr presents a chart that purports to identify "Alternatives to SNMP" for each of the six "infringing" capabilities from Dr. Dhar's survey. Report ¶ 26. One of these ("Syslog") is not disputed as an alternative to one feature of SNMP, as Plaintiffs' expert (Mr. Bradner) also identified it as an option that a switch could use to "send alerts." Ex. 20 ("Bradner Rpt.") ¶ 286; *see also id.* ¶¶ 246-256. However, Dr. Eslamimehr identifies two other (disputed) alternatives to SNMP in his chart: a pair of technologies known as "REST" and "NetConf." Report ¶ 26.

Dr. Eslamimehr's opinions on these two "alternatives" are entirely conclusory and should be excluded. He fails to provide any evidence or analysis regarding "REST" or "NetConf" that could possibly show they are viable alternatives to SNMP or that these technologies are actually used. He


does not cite here to any technical documents, industry-standard sources, or other objective evidence. When asked if his report explains or cites evidence on these issues, Dr. Eslamimehr responded: ▮

▮ Eslamimehr Dep. at 234:15-236:3; *see also id.* at 70:12-19. Dr. Eslamimehr is incorrect that it would be "enough" for him to "explain" his opinions without providing adequate evidentiary support. *Adkins*, 105 F.4th at 850 ("An expert opinion must set forth facts and … outline a line of reasoning arising from a logical foundation.") (cleaned up). But in any event, Dr. Eslamimehr's claim is factually incorrect because his report makes no attempt to "explain" his conclusions. *Cf.* Report ¶ 26. He does not analyze how "REST" and "NetConf" compare to SNMP. He does not even attempt to describe what "REST" and "NetConf" are or what they do, much less how they allegedly provide the same functionality as SNMP. Instead, he simply claims that ▮ (Eslamimehr Dep. at 67:3-10), and that his conclusions should be accepted as from an alleged expert in that field. This is classic "ipse dixit" testimony that cannot go before a jury. *Joiner*, 522 U.S. at 146.

***Third***, Dr. Eslamimehr spends the remainder of this section responding to Mr. Bradner's assessment that six of the capabilities in Dr. Dhar's survey were attributable in whole or in part to SNMP. Report ¶¶ 19-20. Dr. Eslamimehr criticizes Mr. Bradner for ▮ ▮ purports to present a ▮ valuation. *Id.* ¶¶ 24, 31. But unlike Mr. Bradner, Dr. Eslamimehr did not perform any testing or other analysis to support his valuation. Instead, he simply walks through the six "infringing" capabilities and claims to identify 10 to 12 additional factors that contribute to each, resulting in final valuation percentages between ▮ *Id.* ¶¶ 33-57; *see also* Eslamimehr Dep. at 275:15-277:7.

Dr. Eslamimehr's valuation methodology is fundamentally flawed on multiple levels. For example, Dr. Eslamimehr's entire discussion of allegedly contributing factors (Report ¶¶ 33-57) fails to

cite even a single piece of outside supporting evidence, which itself is sufficient basis to exclude it. *See Adkins*, 105 F.4th at 850. At his deposition, Dr. Eslamimehr claimed that ███████████ of his report, he ███████████████████████ Eslamimehr Dep. at 163:21-23; *see also id.* at 163:3-11. But as detailed above, the "information" that Dr. Eslamimehr supposedly gleaned from his supposed code review is not disclosed in his report. He does not even identify the source code in his list of materials considered (Report at Ex. B), much less discuss any particular code as part of his valuation "analysis." *Tovey*, 2014 WL 3510636, *16 (excluding report that failed to disclose the "basis and reasons" for its opinions); *Endless River*, 2024 WL 5156249, at *4 (excluding testimony "supported by nothing more than 'speculative jumps'") (citation omitted). This is in stark contrast to Mr. Bradner, whose analysis was predicated on extensive testing and analysis of actual networking systems and products using SNMP. *See, e.g.*, Bradner Rpt. ¶¶ 114-306.

Nor can Dr. Eslamimehr properly rely on his supposed "experience" to support his opinions, as he is clearly not an expert on the topic of SNMP. His curriculum vitae makes no mention of SNMP whatsoever. *See* Eslamimehr Rpt. at Ex. A; Eslamimehr Dep. at 72:2-4. He has never spoken or published on the topic. *Id.* at 114:1-116:1 ███████████████████████████ He has no patents or patent applications relating to SNMP. *Id.* at 116:2-7. Nor has he ever developed his own SNMP agent or implementation. *Id.* at 116:8-12. In fact, Dr. Eslamimehr has never previously consulted on a matter relating to SNMP. *Id.* at 39:22-40:17.

At his deposition, Dr. Eslamimehr claimed prior work experience at two companies (Ericsson and Clarity Global) that made products that could be used with SNMP. *Id.* at 50:5-51:24; Eslamimehr Rpt. ¶¶ 5, 8. But he admitted that Clarity Global actually ███████████████ Eslamimehr Dep. at 75:11-13. And he could not remember ███████████████████████ or even whether he was personally responsible for any SNMP functionality. *Id.* at 104:24-105:7 ███████

█████████████████ The only other background he cited during his deposition (but not in his report) was that the topic of SNMP came up in two classes out of ███████████ during his time as a student. *Id.* at 117:16-118:19, 146:7-147:4. This paltry showing does not come close to the experience necessary to properly opine on the valuation of the SNMP protocol or SNMP products as an expert in federal court. *In re Scrap Metal*, 527 F.3d at 529.

Dr. Eslamimehr also failed to use any reliable methodology to value SNMP, which led to inherently unreliable results. When asked ████████████████████████████████████ ████████████████████████████████ he could not identify any particular methodology and merely pointed to his alleged experience as someone who ████████████████████████ ████████████████ Eslamimehr Dep. at 267:9-269:24; *Chapman*, 297 F.3d at 688 (excluding opinions lacking valid methodology). He further conceded that ████████████████████████ ████████████████████████████████████████████ could very well come up with a *different* number of features than he did. Eslamimehr Dep. at 271:11-24 ████████████ ████████████████ He also testified that he ████████ added more features, but decided to ██████ ████████████████ a metric that is unmentioned and unexplained in his report. *Id.* at 283:2-14 ████████████████████████████████████████████████ Dr. Eslamimehr's subjective and untestable approach is thus fundamentally unscientific. *U.S. v. Gissantaner*, 990 F.3d 457, 463 (6th Cir. 2021) (excluding "untestable scientific theory" as "all theory and no science").

Dr. Eslamimehr's valuation analysis is also riddled with inconsistent assumptions and unexplained conclusions. For example, his report ████████ that each of the additional features he identified, together with SNMP, ████████████ to each of the cited capabilities he purportedly considered. Report ¶¶ 36, 40, 44, 48, 52, 56. Yet he went on to opine that ████████████████████ ████████████████████████████ than the other features. Report ¶¶ 36, 40, 44, 48, 52, 56. By contrast, at

his deposition he conceded that SNMP could be more valuable than other features he had identified, and that the answer "depends" on context. *See, e.g.*, Eslamimehr Dep. at 287:21-289:23. *Endless River*, 2024 WL 5156249, at *4 (expert's "inconsistent and speculative testimony necessitates" exclusion). Dr. Eslamimehr ultimately admitted that he ▬▬▬▬▬ on whether ▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Eslamimehr Dep. at 274:8-22 (emphasis added); *see also id.* at 291:13-23 ▬▬▬▬▬ ▬▬▬▬ (emphasis added). This failure to ▬▬▬▬ is yet another fatal defect in these opinions, all of which should be excluded as unreliable and unhelpful to the jury. *Adkins*, 105 F.4th at 850 ("The expert's report must include the 'how' and 'why,' not just his conclusions."); *Endless River*, 2024 WL 5156249, at *8 (expert's failure to "independently verify" assumptions "cloaks unexamined assumptions in the authority of expert analysis") (citation omitted).

## IV. CONCLUSION

Dr. Eslamimehr's opinions fail to meet the requirements of *Daubert* and Rule 702, so they should be excluded.

Respectfully submitted,

Dated: January 3, 2025

By: /s/ *John L. Wood*
John L. Wood, Esq. (BPR #027642)
Cheryl G. Rice, Esq. (BPR #021145)
EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
900 S. Gay Street, Suite 1400
P.O. Box 2047
Knoxville, TN 37902
(865) 546-0500 (phone)
(865) 525-5293 (facsimile)
jwood@emlaw.com
crice@emlaw.com

A. Matthew Ashley (CA Bar. No. 198235)
David McPhie (CA Bar. No. 231520)
Morgan Chu (CA Bar. No. 70446)
David Nimmer (CA Bar. No. 97170)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
(310) 277-1010 (phone)
(310) 203-7199 (facsimile)
mchu@irell.com
dnimmer@irell.com
mashley@irell.com
dmcphie@irell.com

Olivia Weber (CA Bar. No. 319918)
BIENERT KATZMAN LITTRELL WILLIAMS LLP
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
(949) 369-3700 (phone)
(949) 369-3701 (facsimile)
oweber@bklwlaw.com

Rameen J. Nasrollahi (BPR# 033458)
LOWE YEAGER & BROWN, PLLC
920 Volunteer Landing Lane
(865) 312-8746 (phone)
rjn@lyblaw.net

*Attorneys for Plaintiffs*
*SNMP Research International, Inc.*
*SNMP Research, Inc.*

- 13 -