# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | | |
|---|---|---|
| SNMP RESEARCH, INC. and SNMP RESEARCH INTERNATIONAL, INC., | § § § | Case No. 3:20-cv-00451-CEA-DCP |
| Plaintiffs, | § § | Jury Demand |
| v. | § § | |
| BROADCOM INC.; BROCADE COMMUNICATIONS SYSTEMS LLC; AND EXTREME NETWORKS, INC., | § § § § § | |
| Defendants. | § § | |

**PLAINTIFFS SNMP RESEARCH, INC.'S AND SNMP RESEARCH INTERNATIONAL, INC.'S REPLY IN SUPPORT OF THEIR MOTION TO EXCLUDE THE TESTIMONY OF MALDI ESLAMIMEHR**

## TABLE OF CONTENTS

|  |  |  | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | ARGUMENT | | 1 |
| | A. | Dr. Eslamimehr Is Not Qualified To Rebut Professor Dhar, And His Opinions Are Unreliable And Irrelevant | 2 |
| | B. | Dr. Eslamimehr's Rebuttal To Mr. Bradner Is Entirely Unsupported | 6 |
| | C. | Dr. Eslamimehr's Valuation-Related Opinions Are Legally Erroneous, Unreliable, And Highly Prejudicial | 9 |
| | | 1. Dr. Eslamimehr's "0%" Valuation | 9 |
| | | 2. Dr. Eslamimehr's "Alternatives to SNMP" | 10 |
| | | 3. Dr. Eslamimehr's "Corrected" Attribution Percentages | 12 |
| III. | CONCLUSION | | 15 |

# TABLE OF AUTHORITIES[*]

**Page(s)**

**Cases**

*3A Composites USA, Inc. v. United Indus., Inc.*,
   2015 WL 11121362 (W.D. Ark. Nov. 10, 2015) ..................................................................... 7

*Adkins v. Marathon Petroleum Co, LP*,
   105 F.4th 841 (6th Cir. 2024) ................................................................................................. 7

*Berry v. City of Detroit*,
   25 F.3d 1342 (6th Cir. 1994) ................................................................................................ 14

*Brainard v. Am. Skandia Life Assur. Corp.*,
   432 F.3d 655 (6th Cir. 2005) .................................................................................................. 7

*Branche v. Zimmer*,
   2009 WL 8750012 (E.D. Tenn. Mar. 9, 2009) ........................................................................ 7

*Bucklew v. Hawkins*,
   329 F.3d 923 (7th Cir. 2003) ............................................................................................. 9, 10

*Cospelich v. Hurst Boiler & Welding Co.*,
   2009 WL 8599064 (S.D. Miss. July 7, 2009) ......................................................... 6, 11, 13, 14

*Daubert v. Merrell Dow Pharms., Inc.*,
   43 F.3d 1311 (9th Cir. 1995) ................................................................................. 5, 6, 7, 8, 12

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ............................................................................................................. 13

*In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*,
   348 F. Supp. 3d 680 (S.D. Ohio 2016) ...................................................................... 8, 12, 14

*GeigTech E. Bay LLC v. Lutron Elecs. Co.*,
   2023 WL 6614486 (S.D.N.Y. Sept. 20, 2023) ........................................................................ 7

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) .................................................................................................. 4, 11, 12

*Gibson Brands, Inc. v. Armadillo Distrib. Enters., Inc.*,
   2021 WL 231752 (E.D. Tex. Jan. 22, 2021) ........................................................................... 3

---

[*] All emphasis added unless otherwise noted.

*Hartle v. FirstEnergy Generation Corp.*,
    2014 WL 899358 (W.D. Pa. Mar. 7, 2014) ......................................................................... 2

*Jones v. Varsity Brands, LLC*,
    2024 WL 457173 (W.D. Tenn. Feb. 6, 2024) ........................................................... 1, 5, 6, 11

*Kerns v. Beam*,
    2017 WL 3584921 (W.D. Ky. Aug. 18, 2017) ..................................................................... 14

*Kudos Inc. v. Kudoboard LLC,*
    2021 WL 5415258 (N.D. Cal. Nov. 20, 2021). .................................................................. 3, 4

*Mannacio v. LG Elecs. U.S.A., Inc.*,
    2020 WL 4676285 (D. Minn. Aug. 12, 2020) ....................................................................... 3

*Mayer v. Louisville Ladder*,
    2024 WL 3106900 (W.D. Ky. June 24, 2024) ....................................................................... 7

*Moisenko v. Volkswagenwerk Aktiengesellschaft*,
    198 F.3d 246 (Table), 1999 WL 1045075 (6th Cir. 1999) ............................................. 2, 12

*Navarro v. Procter & Gamble Co.*,
    2021 WL 868586 (S.D. Ohio Mar. 8, 2021) ......................................................................... 5

*Neal v. Fort*,
    2017 WL 455499 (M.D. Tenn. Jan. 20, 2017) ..................................................... 4, 6, 11, 13

*Rondor Music Int'l v. TVT Recordings*,
    2006 WL 5105272 (C.D. Cal. Aug. 21, 2006). ................................................................... 13

*Schechner v. Whirlpool Corp.*,
    2019 WL 978934 (E.D. Mich. Feb. 28, 2019) ...................................................................... 3

*Sci. Components Corp. v. Sirenza Microdevices*,
    2008 WL 4911440 (E.D.N.Y. Nov. 13, 2008) ...................................................................... 7

*Thomas v. City of Chattanooga*,
    398 F.3d 426 (6th Cir. 2005) ......................................................................................... 7, 11

**Rules**

Fed. R. Civ. P. 26 .......................................................................................................................... 7

Fed. R. Evid. 702 ................................................................................................................. *passim*

SNMP Research, Inc. ("SNMPR") and SNMP Research International, Inc. ("SNMPRI") (collectively, "Plaintiffs") respectfully submit this Reply in response to Extreme's opposition (Dkt. 501, "Opp.") to the Motion to Exclude the Testimony of Maldi Eslamimehr (Dkt. 475, "Mot.").

## I. INTRODUCTION

Extreme's opposition fails to justify the conclusory and unreliable opinions offered by Dr. Eslamimehr in response to the detailed damages analysis performed by Plaintiffs' experts. As previously explained (*see* Dkt. No. 509-13), Plaintiffs' survey expert (Professor Dhar) carried out a survey to assist the jury in apportioning Extreme's profits from infringing products, asking respondents to evaluate the relative importance of dozens of wired LAN switches capabilities. *Id.* at 6-9. Plaintiffs' technical expert (Mr. Bradner) in turn performed an extensive set of tests on Extreme's products and technical analysis to identify which of these capabilities were attributable to Plaintiffs' copyrighted code (the "Infringing Capabilities") and to what extent. *Id.* at 12-14.

Although Extreme relies upon Dr. Eslamimehr to undermine this analysis, his report is highly conclusory, has no foundation in any relevant expertise, and is untethered to any reliable methodology. Faced with these fundamental deficiencies, Extreme's opposition simply tries to deflect and distract. However, Extreme does not and cannot show that any of the three sections of Dr. Eslamimehr's report is admissible under Rule 702. Accordingly, Plaintiffs' motion should be granted.

## II. ARGUMENT

As an initial matter, it is the proponent of expert testimony—here Extreme—who bears the burden of showing its admissibility. *Jones v. Varsity Brands, LLC*, 2024 WL 457173, at *2 (W.D. Tenn. Feb. 6, 2024) (citing Fed. R. Evid. 702 advisory committee's note to the 2023 amendments). Extreme incorrectly assumes the opposite. *See, e.g.*, Opp. at 15 ("Plaintiffs have failed to meet their burden under Rule 702."). As detailed below, Extreme simply fails to meet its burden here.

- 1 -

11414766 Case 3:20-cv-00451-CEA-DCP    Document 524    Filed 02/21/25    Page 5 of 20
PageID #: 31917

### A. Dr. Eslamimehr Is Not Qualified To Rebut Professor Dhar, And His Opinions Are Unreliable And Irrelevant

The Court should exclude the first section of Dr. Eslamimehr's report—opining that the six Infringing Capabilities surveyed by Professor Dhar are "overlapping categories"—for at least the three distinct reasons set forth in Plaintiffs' motion.

*First*, Dr. Eslamimehr is not qualified as an expert in consumer survey design. *See* Mot. at 3. Extreme protests that Dr. Eslamimehr's survey-related opinions are not "from a consumer survey design perspective," claiming that he simply uses "his technical background" to "assess what the six capabilities at issue actually do in a wired switch and how they relate to each other." Opp. at 4. This claim is clearly belied by Extreme's argument (a few pages later in its opposition) that the entire point of Dr. Eslamimehr's opinion is to criticize Professor Dhar's survey design:

> ***Assuming that the capabilities are indeed overlapping and practically inextricable from each other, Dr. Dhar's survey design would tend to overvalue the importance of Plaintiffs' software***, by prompting respondents to spread the limited 'points' they were asked to assign to capabilities that they consider important in purchasing a switch over six separately listed capabilities that should have been consolidated ….

Opp. at 9. That Dr. Eslamimehr's report does not expressly "extend his critique to Dr. Dhar's survey results," *id.*, is irrelevant. Extreme's argument makes clear that Dr. Eslamimehr is critiquing the survey's ***design***. The belated attempt by Extreme's counsel to connect the dots here utterly undermines its claims that Dr. Eslamimehr's opinions are purely "technical" in nature. Worse yet, it reveals that Extreme's counsel intends to invite the jury to speculate on the meaning and import of Dr. Eslamimehr's opinions to the validity of Professor Dhar's survey. That is improper. *See Hartle v. FirstEnergy Generation Corp.*, 2014 WL 899358, at *5 (W.D. Pa. Mar. 7, 2014) (excluding expert testimony that "invite[d] rank speculation and would not be helpful to the jury"); *Moisenko v. Volkswagenwerk Aktiengesellschaft*, 198 F.3d 246 (Table), 1999 WL 1045075 at *4 (6th Cir. 1999) (unsupported expert opinions may "tend[] to mislead the jury" due to expert's "aura of reliability").

Extreme also contends that Dr. Eslamimehr's testimony is appropriate because Professor Dhar relied on a technical expert (Mr. Bradner) to validate survey design. Opp. at 6. But this just illustrates the problem: there is no competent expert testimony tying Dr. Eslamimehr's analysis to a proper evaluation of consumer survey design. Professor Dhar, an eminently qualified expert in consumer research, relied on a technical expert to validate his methodology. Extreme, on the other hand, did not use Dr. Eslamimehr's "technical" testimony to support a qualified survey expert's opinion. Extreme cannot now attempt to criticize Professor Dhar's survey design through a back door, using mere attorney argument that relies on Dr. Eslamimehr's opinions.

Extreme cites a few cases for the general proposition that "non-survey experts" may "highlight inaccurate or misleading survey designs." Opp. at 5. However, none of the cited cases bear any resemblance to this one. For example, in *Schechner v. Whirlpool Corp.*, the court permitted a non-survey expert with "education and experience in economics" to rebut a survey expert precisely because the non-survey expert "did *not* do so from a consumer survey design perspective." 2019 WL 978934, at *10, *12 (E.D. Mich. Feb. 28, 2019). Here, the only claimed relevance of Dr. Eslamimehr's opinions is that they purport to undermine the validity of Professor Dhar's survey design (*see* Opp. at 9)—a topic on which Dr. Eslamimehr has disclaimed any expertise.[1] By contrast, the expert in *Schechner* was an economist who (unlike Dr. Eslamimehr) was qualified to discuss "attributes that were relevant to consumers purchasing" the products and "realistic product choices on the market." 2019 WL 978934, at *12. Similarly, the expert in *Gibson Brands, Inc. v. Armadillo Distribution Enterprises, Inc.* testified about "consumer recognition" of guitar brands based on "decades in the music industry" and thus was

---

[1] Indeed, the expert in *Schechner* had his testimony excluded in at least one other case where it crossed this line. *See Mannacio v. LG Elecs. U.S.A., Inc.*, 2020 WL 4676285, at *8 (D. Minn. Aug. 12, 2020) ("Ugone is admittedly not a survey design expert, and he is not qualified to render opinions on CBC design. Accordingly, the Court will exclude this opinion.").

indisputably qualified to discuss consumer decision-making. *See* 2021 WL 231752, at *2 (E.D. Tex. Jan. 22, 2021). And *Kudos Inc. v. Kudoboard LLC* is also of no help to Extreme, as the rebuttal expert in that case was a "recognized expert in consumer behavior and consumer surveys." 2021 WL 5415258, at *11 (N.D. Cal. Nov. 20, 2021). Thus, these cases only underscore how Dr. Eslamimehr's lack of expertise makes him unqualified to offer his opinions here.

*Second*, Dr. Eslamimehr fails to identify any methodology to objectively evaluate whether one capability of a wired switch "overlaps" with another. *See* Mot. at 3-4. Extreme responds to a strawman, arguing that "overlap" is a "commonly used word" (citing a dictionary). Opp. at 6-7. This argument is difficult to square with Extreme's assertion that "[t]hese capabilities … are highly technical," *id*. at 4, but more fundamentally, it is a red herring. Whether or not "overlapping wired LAN switch capabilities" is a "commonly" understood concept or has any effect on the survey itself (which it does not, as discussed below), Dr. Eslamimehr never describes any methodology or procedure for how he gets to his conclusion that the capabilities are, in fact, "overlapping." *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (excluding opinions "connected to existing data only by the *ipse dixit* of the expert"). This problem is only further compounded by the deposition testimony Extreme cites, where Dr. Eslamimehr asserts that the Infringing Capabilities are "not identical" but "very similar" and that "they share the same capabilities or sub-capabilities or functionalities"—again without explaining how he reached that determination. Opp. at 7 (quoting Eslamimehr Dep. at 185:22–186:12, 198:06–19).

The closest Dr. Eslamimehr gets to at least trying to provide support for his opinions is when he explains that they are "[b]ased on my education and years of experience in the field, I believe that these are overlapping categories." Dkt. 475-37 ("Eslamimehr Rpt.") ¶ 14. But an expert relying "primarily on experience … must explain how [his] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R.

Evid. 702 (advisory committee's note to 2000 amendments). Dr. Eslamimehr simply fails to do so here. *Neal v. Fort*, 2017 WL 455499, at *4 (M.D. Tenn. Jan. 20, 2017) (excluding report that "contain[ed] no explanation of how [expert]'s experience informed his conclusions"; "Without such an explanation, there is simply too great an analytical gap between the facts of the case and the proffered opinion to permit [his] testimony to go to the jury."); *Jones*, 2024 WL 457173, at *3-4 (excluding expert opinions that did "not connect the dots between his opinions and his prior experience; he simply offers his opinions without any rationale to support his conclusions"); *Navarro v. Procter & Gamble Co.*, 2021 WL 868586, at *10 (S.D. Ohio Mar. 8, 2021) ("[W]ithout a better understanding of the methodology [expert] employed based on [his] 'knowledge and expertise,' there is nothing to ensure that [his] opinion is a reliable interpretation of the facts, as opposed to his mere subjective speculation.").

**Third**, Dr. Eslamimehr's "overlapping categories" testimony is unhelpful and will only prove confusing to the trier of fact because he does not explain how his critique should affect Professor Dhar's survey (or how it is even relevant at all). *See* Mot. at 4-5. Extreme's opposition does not even attempt to identify any disclosure in Dr. Eslamimehr's report (or any other Extreme expert report) that purports to make this connection. Accordingly, there is no evidentiary basis that could enable these opinions to "aid the jury in resolving a factual dispute" to be presented to them at trial. *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995).

Extreme instead tries to change the subject, arguing that "[h]ow the capabilities may be described in marketing materials has no bearing" on the "relative value that consumers place on different capabilities[.]." Opp. at 8. In other words, Extreme's position is that "marketing" is irrelevant to consumer decision-making. It cites nothing for this (facially dubious) proposition, and Professor Dhar—who is actually qualified in this area—plainly disagreed. *See, e.g.*, Dkt. 489-14 (Dhar Rpt.) ¶ 15 ("I also reviewed various Extreme marketing and internal documents, industry publications, and

deposition testimony from Extreme's executives and found that the importance of the Allegedly Infringing Monitoring Capabilities … is corroborated by these documents in that management capabilities in general, and monitoring capabilities specifically, are important purchase factors ….").

In short, Mr. Estlamimehr's opinions regarding "overlapping" categories are inadmissible on multiple grounds, and should not be permitted before the jury here.

### B. Dr. Eslamimehr's Rebuttal To Mr. Bradner Is Entirely Unsupported

The second section of Dr. Eslamimehr's report—an attempt to criticize Mr. Bradner's selection of products for testing—should likewise be excluded as it is conclusory and devoid of evidentiary support or reasoned analysis. *See* Mot. at 5-7. For clarity, the **entirety** of Dr. Eslamimehr's testimony in this section is set forth in three short paragraphs (comprising less than a single page of text in all) lacking even a shred of evidentiary support. Eslamimehr Rpt. ¶¶ 16-18.

Extreme tries to defend Dr. Eslamimehr's bare-bones testimony by asserting that it is "[i]nformed by his extensive background in the field of network management and his experiences with NMS and SNMP software specifically." Opp. at 11. However, it is well-established that expert testimony is inadmissible when "presented with only the experts' qualifications, their conclusions and their assurances of reliability." *Daubert*, 43 F.3d at 1319. Even if Dr. Eslamimehr were qualified on the basis of experience with SNMP (which he is not, *see* Mot. at 10-11 & Section II.C.3 below), he still fails to "explain how [his] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 (advisory committee's note to 2000 amendments); *Neal*, 2017 WL 455499, at *4 (excluding report that "contain[ed] no explanation of how [expert]'s experience informed his conclusions" because "there is simply too great an analytical gap between the facts of the case and the proffered opinion to permit [his] testimony to go to the jury."); *Jones*, 2024 WL 457173, at *4 (excluding expert that failed to "connect the dots between his opinions and his prior experience" and "simply offers his opinions

- 6 -

without any rationale to support his conclusions."); *Cospelich v. Hurst Boiler & Welding Co.*, 2009 WL 8599064, at *1 (S.D. Miss. July 7, 2009) (excluding opinions where expert did "not describe how his engineering experience or learning was used in … reaching his conclusions").

Extreme further argues that Dr. Eslamimehr did not need to "perform his own testing" or source code analysis, particularly as he is a rebuttal expert. Opp. at 11-14.[2] This is another red herring. Regardless of whether an expert opinion is supported by product testing or otherwise, there must be ***some*** kind of support. Even rebuttal "commentary still must be rooted in some sort of analysis or expertise," *GeigTech E. Bay LLC v. Lutron Elecs. Co.*, 2023 WL 6614486, at *1 (S.D.N.Y. Sept. 20, 2023), and all experts—rebuttal or not—must do more than "suppl[y] … a bottom line[.]" *See Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 664 (6th Cir. 2005) (excluding expert testimony that was "absen[t] of meaningful analysis or reasoning[.]"); *Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005) ("[B]ecause [expert]'s affidavits provide no rationale for his conclusions, appellants are asking that we take their expert's 'word for it.' We cannot."); *Adkins v. Marathon Petroleum Co, LP*, 105 F.4th 841, 850 (6th Cir. 2024) (excluding opinions that do "not meet the level of rigor and detail that Rule 26 requires").

In other words, Dr. Eslamimehr was required to provide foundation of ***some*** kind, whether it was product testing, source code analysis, or other articulated reasoning tied to objective evidence.[3] The scant narrative in his report provides none of these things. And though Extreme cites numerous cases holding that rebuttal experts may "critique or shed light on the deficiencies of another expert's report,"

---

[2] Extreme has elsewhere argued that "failure to conduct any testing in support of [an] opinion" is a "red flag" that "supports exclusion of that opinion as unreliable." Dkt. 452 at 10 (citing cases).

[3] Extreme now disclaims that Dr. Eslamimehr's opinions "relied upon or drew on his knowledge of Extreme's source code specifically." Opp. at 14. This is hardly surprising as his report indisputably contains no analysis of source code whatsoever. In any event, this backtracking again underscores the lack of objective support for Dr. Eslamimehr's opinions.

- 7 -

Opp. at 12-13, none hold that rebuttal experts are excused from Rule 702 or that they may present conclusory, unsupported, and unexplained testimony.[4] Such a proposition would be manifestly incorrect. *See In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 348 F. Supp. 3d 680, 695 (S.D. Ohio 2016) ("This Court has never held that defense rebuttal experts … need not meet the same admissibility standard that applies to an expert who testifies in support of the party who has the burden of proof. Indeed, that is a misstatement of the law. *Daubert* and Evidence Rule 702 require that a trial judge 'ensure that ***any and all*** scientific testimony or evidence admitted is not only relevant, but reliable.'") (emphasis in original, citation omitted).

      Finally, Dr. Eslamimehr's criticism is not only unfounded but also conflicts with representations made by Extreme during discovery in this case. As previously noted, Mr. Bradner selected the switches and NMSs that he tested based on Extreme's own productions, positions, and stipulations during discovery, and he tested the NMSs that Extreme either produced or identified to Plaintiffs as relevant third-party NMSs. Mot. at 5. Extreme's opposition does not dispute any of this. Instead, it now tries to argue that the representative products it identified during discovery were "a limited number of NMS[s]" that "skewed" Mr. Bradner's results. Opp. at 13-14. But when Extreme produced those "Representative Products" and "Operating System Versions," it specifically stipulated that it would "not argue that the Representative Product or OS Version is not representative of what Extreme's customers received in aspects that are relevant to this litigation." Dkt. 327 at 3. Extreme

---

[4] *See, e.g., Mayer v. Louisville Ladder*, 2024 WL 3106900, at *7 (W.D. Ky. June 24, 2024) (admitting opinion "based on an inspection of the physical evidence"); *Sci. Components Corp. v. Sirenza Microdevices*, 2008 WL 4911440, at *2-3 (E.D.N.Y. Nov. 13, 2008) (not a *Daubert* case, only concerned the "scope of rebuttal" under Rule 26); *Branche v. Zimmer*, 2009 WL 8750012, at *7 (E.D. Tenn. Mar. 9, 2009) (allowing expert's specific "application of basic engineering principles"); *3A Composites USA, Inc. v. United Indus., Inc.*, 2015 WL 11121362, at *2 (W.D. Ark. Nov. 10, 2015) (rebuttal expert could testify if "a proper foundation has been laid"; citing authority in which "rebuttal experts sufficiently applied their expertise to the facts").

attempts to side-step that stipulation by arguing Dr. Eslamimehr focuses only on "diverse scenarios" and "capabilities that would be required [for] network management[,]" Opp. at 14, but those are precisely the "aspects that are relevant to this litigation" contemplated by the stipulation, *see* Dkt. 327 at 3. Also, Dr. Eslamimehr does not explain why if Mr. Bradner used more switches, it would have yielded any different results. Mr. Bradner was simply evaluating whether SNMPR's software was used for a feature in each switch, and having more switches could not have changed the result.

Accordingly, the opinions in the second section of Mr. Eslamimehr's report are likewise inadmissible for multiple, independent reasons.

### C. Dr. Eslamimehr's Valuation-Related Opinions Are Legally Erroneous, Unreliable, And Highly Prejudicial

Extreme similarly fails to overcome the deficiencies in Mr. Eslamimehr's valuation-related opinions in the final section of his report.

#### 1. Dr. Eslamimehr's "0%" Valuation

Dr. Eslamimehr's opinion that Plaintiffs' software is worth 0% because its value "is entirely tied to the function of SNMP," Eslamimehr Rpt. ¶ 24, is impermissible as a matter of copyright law because apportionment must be based on the value of the infringing features of the accused products. *Bucklew v. Hawkins*, 329 F.3d 923, 932 (7th Cir. 2003); Mot. at 8. Extreme does not dispute this black-letter law and cites no contrary authority suggesting how Dr. Eslamimehr's contrary valuation methodology could be an appropriate measure of damages in a copyright case (which it is not).

Instead, Extreme asserts that Dr. Eslamimehr's testimony here is "an appropriate topic for a rebuttal expert" and is not "based on any particular interpretation of the law on apportionment." Opp. at 16. But this is simply incorrect. Extreme's own description of Dr. Eslamimehr's testimony only underscores that he is attempting to apportion between the creative and derived features of Plaintiff's software, an approach expressly forbidden by copyright law. *Id.* And in any event, Extreme concedes

- 9 -

1141426 Case 3:20-cv-00451-CEA-DCP   Document 524   Filed 02/21/25   Page 13 of 20
PageID #: 31925

that Dr. Eslamimehr did not even analyze the creativity of Plaintiffs' software. *See* Opp. at 16. Extreme fails to cite any authority holding an expert may testify as to the value of a feature without analyzing that feature, and nor could it.

Extreme's opposition also tries to sow confusion by proposing a distinction between the SNMP standard and the software implementing that standard. Opp at 16; *see also id.* at 1 n.1. This distinction is entirely contrived and is of no moment here. As Plaintiffs have previously explained, Mr. Bradner determined that Extreme's products use Plaintiffs' software as their only SNMP implementation, meaning any SNMP-based functionality in those products ***relies exclusively on Plaintiffs' software***. Dkt. 475-40 (Bradner Rpt.) ¶¶ 277, 280. Second, he determined that the switches exclusively used Plaintiffs' software for five of the Infringing Capabilities, so he attributed 100% of those capabilities to Plaintiffs' software. *Id.* For the sixth, he identified one other mechanism that could enable it, so he attributed 50% of the capability to Plaintiffs' software. *Id.* In other words, there is no dispute that the way Extreme's products obtain the benefit of the SNMP standard is by using Plaintiffs' software. And as shown above, to the extent that any of the benefits of Plaintiffs' software are attributable to the SNMP standard, the law forbids any attempt to apportion "between the creative and the derived features of the plaintiffs' work," as Dr. Eslamimehr attempts to do here. *See Bucklew*, 329 F.3d at 932.

### 2. Dr. Eslamimehr's "Alternatives to SNMP"

Dr. Eslamimehr's report further includes a table identifying purported "Alternatives to SNMP," Eslamimehr Rpt. ¶ 26, two of which ("REST" and "NetConf") are at issue here. Despite calling them "Alternatives," Dr. Eslamimehr never actually explains how these technologies actually work, let alone how they are "alternatives" to SNMP. *See* Mot. at 8-9.

Extreme appears to concede that Dr. Eslamimehr offers no evidence or analysis for his assertion that "REST" and "NetConf" are viable alternatives to SNMP. *See* Opp. at 17 (admitting "Dr. Eslamimehr does not provide the 'analysis' or third-party citations that Plaintiffs apparently expect").

Instead, Extreme again falls back on its claim that Dr. Eslamimehr "relied on his extensive experience with switches and network management technology" to come up with these purported alternatives. Opp. at 17. Notably, Extreme does not identify any evidence that Dr. Eslamimehr is actually an expert on the subjects of REST or NetConf. But in any event, as Plaintiffs have now repeatedly shown, mere alleged expertise is not an adequate substitute for the type of reasoned explanation and analysis required for admissibility of expert opinions. *See, e.g.*, *Neal*, 2017 WL 455499, at *4 (excluding report that "contain[ed] no explanation of how [expert]'s experience informed his conclusions" because "there is simply too great an analytical gap between the facts of the case and the proffered opinion to permit [his] testimony to go to the jury"); *Jones*, 2024 WL 457173, at *4 (excluding expert that failed to "connect the dots between his opinions and his prior experience" and provide "any rationale to support his conclusions"); *Cospelich*, 2009 WL 8599064, at *1 (excluding opinions where expert did "not describe how his engineering experience or learning was used in … reaching his conclusions").

Extreme maintains that Dr. Eslamimehr adequately explained these technologies, Opp. at 16, but one need only read the report to see that this is not remotely true. For example, the term "NetConf" appears just twice outside of Dr. Eslamimehr's "Alternatives" table, and neither instance even purports to assess how "NetConf" could replace SNMP in a wired LAN switch. *See* Eslamimehr Rpt. ¶¶ 46(d); 50(c). And "REST" never appears outside of the table, though there are vague references to "RESTCONF," "RESTful APIs," and "Rest API" that again do not explain how they could function as alternatives to SNMP (or even how they relate to "REST" at all). *See, e.g.*, *id*. ¶¶ 46(d); 50(b). In fact, the only place in his report that even says "REST" and "NETCONF" are alternatives to SNMP is his chart, which simply lists them as "Alternatives" without any explanation. Dr. Eslamimehr's say-so is an insufficient basis for admission of this testimony. *Gen. Elec.*, 522 U.S. at 146.

Tellingly, Extreme never contends that Dr. Eslamimehr did analyze whether REST and

NETCONF were viable alternatives to SNMP, instead positing that "[a]t trial, Plaintiffs are free to interrogate what those alternatives are and whether they can truly replace the SNMP standard." *See* Opp. at 16-17. This argument has things backwards—it is Extreme that bears the burden of proving admissibility under Rule 702, and all it does here is "ask[] that [the court] take their expert's 'word for it.'" *Thomas*, 398 F.3d at 432. "The trial court's gatekeeping function requires more than [that]." *Id.* (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendments).

### 3. Dr. Eslamimehr's "Corrected" Attribution Percentages

Finally, Dr. Eslamimehr's "corrected" attribution percentages should be excluded as they are wholly unsupported and unscientific. *See* Mot. at 9-12. Notably, Extreme does not attempt to explain the origin of these figures, other than another (inadequate) reference to Dr. Eslamimehr's purported "years of experience, education, training, and knowledge[.]" *See* Eslamimehr Rpt. ¶ 31; *see also* Dkt. 475-38 (Eslamimehr Dep.) at 267:9-269:24; *Gen. Elec.*, 522 U.S. at 146 (excluding opinions "connected to existing data only by the *ipse dixit* of the expert").

Instead, Extreme's primary response is to argue that Dr. Eslamimehr's analysis merely highlights "directional error" in Mr. Bradner's analysis. Opp. at 18. Extreme conveniently neglects to mention that it ***affirmatively uses the exact numbers*** provided by Dr. Eslamimehr to derive ***Mr. Johnson's attribution analysis and damages valuation***. Dkt. 456-16 (Johnson Rpt. ¶ 72) (using the "attribution percentages from Extreme Networks' technical expert, Dr. Mahdi Eslamimehr," to calculate that the Infringing Capabilities account for "less than 1% of the value of the wired LAN switch."). In other words, far from simply highlighting "directional error," Extreme seeks to use Dr. Eslamimehr's arbitrary, speculative, and unsupported percentages to place grossly reduced damages estimates in front of the jury. It is precisely for this reason that the Sixth Circuit has consistently cautioned (echoing *Daubert*) that "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *See Moisenko*, 1999 WL 1045075, at *4 ("Given the absence

- 12 -

of a reliable methodology to support [expert's] opinions[,]" "[p]ermitting [him] to give his opinion … would have created an 'aura of reliability' tending to mislead the jury.").

In any event, Extreme cites no authority holding that a rebuttal expert need not be scientific when highlighting "directional error." *See du Pont*, 348 F. Supp. 3d at 695 (rebuttal experts must "meet the same admissibility standard that applies to an expert who testifies in support of the party who has the burden of proof."); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993) (Rule 702 applies to "any and all scientific testimony").

*Rondor Music International v. TVT Recordings* is instructive. In that case, a rebuttal expert "assign[ed] specific percentages to … album sales attributable to the radio airplay of [a song]." 2006 WL 5105272, at *3 (C.D. Cal. Aug. 21, 2006). By "assign[ing] specific percentages to her conclusions[,]" the expert "invited inquiry into the precise method that she used to come to her conclusions." *Id.* Yet her percentages "were not based on any mathematical conclusions" and "did not have a statistical basis …." *Id.* at *4. Because the expert "was unable to articulate a specific process or methodology by which she reached her conclusions," the court excluded her testimony as unreliable. *Id.* at *3, *5.

Extreme again argues that Dr. Eslamimehr did not need to perform tests, analyze code, cite industry standards or documentation, or use any methodology at all, because of his alleged experience. As demonstrated repeatedly above, that is simply incorrect. *See*, *e.g.*, *Neal*, 2017 WL 455499, at *4 (excluding testimony as "facially unreliable" where report was "virtually devoid of any methodology" or "identifiable method of reasoning" and "has not cited a single engineering principle, or indeed *any* principles."); *Cospelich*, 2009 WL 8599064, at *1.

In any event, Dr. Eslamimehr is not qualified by "experience" to offer these "corrected" attribution percentages, because he is not an expert on the subject of SNMP. Plaintiffs previously

11414266 Case 3:20-cv-00451-CEA-DCP   Document 524   Filed 02/21/25   Page 17 of 20
PageID #: 31929

pointed to (1) the lack of any relevant experience working with SNMP functionalities on Dr. Eslamimehr's vita, (2) the fact that he has never published or consulted on the subject, and (3) that while he claimed to have relevant work experience at his deposition, he was unable to describe any specific work that he actually performed. Mot. at 10. Extreme does not meaningfully contest any of those deficiencies, instead reciting Dr. Eslamimehr's general qualifications in computer science and software engineering and providing a string cite of Dr. Eslamimehr's deposition testimony in which he generally asserted, "I have years of experience building software solution around SNMP using SNMP" and alluded to "hands-on experience working with SNMP" or "running teams of engineers working with SNMP, building software using SNMP." Opp. at 10-11. But "[t]he issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994). The vague and self-serving deposition testimony cited by Extreme does not satisfy this standard.

Indeed, Extreme does not point to ***any*** objective evidence that could qualify Dr. Eslamimehr to apportion the contribution of SNMP to the Infringing Capabilities based on supposition alone, and general assertions of "years of experience" do not supply that link. *See Kerns v. Beam*, 2017 WL 3584921, at *5 (W.D. Ky. Aug. 18, 2017) (excluding expert who "merely state[d] that he applied his 'years of experience [in the field]' when reviewing the case materials and forming his conclusions[,]" but "fail[ed] to explain how his experience … led to the conclusions he reached, why his experience was a sufficient basis for his opinion, and how he applied his experience to the facts of this case."); *Cospelich*, 2009 WL 8599064, at *1.

In short, far from an "unduly narrow approach" to expert qualifications, Opp. at 20, Plaintiffs are simply insisting that Dr. Eslamimehr must meet "the same admissibility standard that applies to" all

- 14 -

experts, *du Pont*, 348 F. Supp. 3d at 695. Because Extreme failed to meet its burden of satisfying that standard, this last set of opinions from Dr. Eslamimehr must be excluded as well.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion and exclude the unfounded opinions of Dr. Eslamimehr in their entirety.

Dated: February 21, 2025		By: */s/ John Wood*
John L. Wood, Esq. (BPR #027642)
Cheryl G. Rice, Esq. (BPR #021145)
EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
900 S. Gay Street, Suite 1400
P.O. Box 2047
Knoxville, TN 37902
(865) 546-0500 (phone)
(865) 525-5293 (facsimile)
jwood@emlaw.com
crice@emlaw.com

A. Matthew Ashley (CA Bar. No. 198235)
Morgan Chu (CA Bar. No. 70446)
David Nimmer (CA Bar. No. 97170)
David McPhie (CA Bar No. 231520)
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
(310) 277-1010 (phone)
(310) 203-7199 (facsimile)
mchu@irell.com
dnimmer@irell.com
dmcphie@irell.com
mashley@irell.com

Olivia Weber (CA Bar. No. 319918)
BIENERT KATZMAN LITTRELL WILLIAMS LLP
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
(949) 369-3700 (phone)
(949) 369-3701 (facsimile)
oweber@bklwlaw.com

Rameen J. Nasrollahi (BPR# 033458)
LOWE YEAGER & BROWN, PLLC
920 Volunteer Landing Lane
Knoxville, TN 39715
(865) 312-8746 (phone)
rjn@lyblaw.net

*Attorneys for Plaintiffs*
*SNMP Research International, Inc.*
*SNMP Research, Inc.*

- 16 -