# Exhibit 38

in support of the Declaration of Olivia L. Weber

Unredacted Copy Filed at Dkt. 509-8

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

SNMP RESEARCH, INC. and SNMP
RESEARCH INTERNATIONAL, INC.,

      Plaintiffs,

v.

EXTREME NETWORKS, INC.,

      Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§

Case No. 3:20-cv-00451

U.S. District Judge Charles E. Atchley, Jr.

## SNMP RESEARCH INTERNATIONAL, INC.'S RESPONSES TO EXTREME NETWORKS, INC.'S THIRD SET OF INTERROGATORIES

Pursuant to Rules 33 of the Federal Rules of Civil Procedure, Plaintiff SNMP Research International, Inc. ("SNMPRI" or "Plaintiff") hereby submits the following responses (collectively, "Responses") to Defendant Extreme Network Inc.'s ("Extreme") Third Set of Interrogatories (the "Requests"). References to "SNMPR" refer to the co-plaintiff SNMP Research, Inc., and references to "Plaintiffs" shall refer to both plaintiffs.

## PRELIMINARY STATEMENT

These Responses, while based on diligent inquiry and investigation by Plaintiff, necessarily reflect only the current state of Plaintiff' knowledge, understanding, and belief based upon the information reasonably available to Plaintiff at this time. As this action proceeds, further information and/or documents may be discovered, or their significance better understood. Without in any way obligating itself to do so, Plaintiff reserves the right to change, amend or supplement these Responses. Plaintiff accordingly reserves the right to change any and all responses herein with facts or information that it learns were omitted, including by inadvertence, mistake, or excusable neglect, as additional facts are ascertained, analyses are made, legal research is completed, and contentions are investigated. Plaintiff reserves the right to object to discovery into

7527951

overly broad and unduly burdensome in scope as it would require Plaintiffs to review the licensing files of every customer of the Plaintiffs over the entire period of Plaintiffs' existence.

**INTERROGATORY NO. 16**

Identify all harm SNMPRI or SNMPR has sustained from Extreme's alleged conduct at issue in this Lawsuit and specify to which claim(s) asserted in the Amended Complaint such harm relates.

**RESPONSE TO INTERROGATORY NO. 16:**

Plaintiff objects to this Interrogatory to the extent it seeks disclosure of any information, documents, or other tangible things that are protected by any applicable privilege or protection, including without limitation the attorney-client privilege and the attorney work product doctrine.

Documents not required to be produced pursuant to the Federal Rules of Civil Procedure as well as the draft reports, communications, notes, presentations, and preliminary work delineated in the Agreed Protective Order (Dkt. 335 ¶ 44) will not be produced or identified.

Plaintiff objects to this Interrogatory as duplicative and repetitive of information and material sought by Extreme's other discovery requests, including without limitation Interrogatory Nos. 1 and 2, and Request for Production Nos. 3 and 144 directed to both Plaintiffs.

Subject to and without waiving the foregoing objections, Plaintiff SNMPRI hereby refers Extreme to Plaintiffs' expert reports. Plaintiff has not duplicated herein the substance set forth in Plaintiffs' expert reports and instead refer Extreme to those reports, particularly given that Extreme has marked much of its financial information Outside Counsel Eyes Only under the Agreed Protective Order.

The 2001 Extreme License granted a limited license to Extreme with respect to particular portions of Plaintiffs' software. Among other things, the 2001 Extreme License gave Extreme expressly limited (i) "Internal Use Rights" and (ii) "Binary Redistribution Rights," and with these

rights came the obligation not to exceed the contractual limitations on them. Under the 2001 Extreme License, Extreme's internal use and binary redistribution rights were limited to the "Licensee's Network Switch project," which was defined as "a single product developed at several coordinated development sites using a single particular combination of target processor, operating system, and development tools platform." The 2001 Extreme License only allows use and redistribution as to "a single product," but Extreme exceeded the scope of the "Internal Use Rights" by using and copying Plaintiffs' software in multiple classes of products totaling scores of products. Moreover, the authorized combination of target processor, operating system, and development tools platform were a MIPS processor and a Red Hat Linux operating system and development tools. Extreme has used and copied the Program Source[1] provided pursuant to the 2001 Extreme License for products that do not conform with the authorized combination of target processor, operating system, and development tools platform allowed under the 2001 Extreme License. Extreme exceeded the scope of authorized use for those products even before those products were sold in light of the fact that Extreme was using and copying the Program Source provided pursuant to the 2001 Extreme License for those products beyond the single licensed product and that did not conform to the authorized combination of target processor, operating system, and development tool platform noted above. Furthermore, Extreme exceeded the scope of the "Binary Redistribution Rights" by using and redistributing Plaintiffs' software in multiple classes of products, totaling scores of products. These include at least the following Extreme product families: 7520; 7720; Summit X440; BD 12K; BD 20K; BD 8800; BD X; Bundle BD X8; E4G-200; E4G-400; Ericsson;

---

1 The 2001 Extreme License provides that: "'Source' refers to both the source code and any and all associated developer documentation in human-readable or machine-readable media which are components of versions of NETMON, associated applications, and libraries." In addition, the 2001 Extreme License provides that "Program" refers to "versions of NETMON, associated applications, and libraries which are implementations based on the Simple Network Management Protocol . . . ."

7527951

ExtremeSwitching 5320; ExtremeSwitching 5420; ExtremeSwitching 5520; ExtremeSwitching 5720; ExtremeSwitching X435; ExtremeSwitching X465; ExtremeSwitching X590; ExtremeSwitching X695; Summit X150; Summit X250; Summit X350; Summit X430; Summit X440-G2; Summit X450; Summit X450-G2; Summit X460; Summit X460-G2; Summit X480; Summit X620; Summit X650; Summit X670; Summit X670-G2; Summit X690; Summit X770; Summit X870.

The 2001 Extreme License required Extreme to submit quarterly royalty reports to SNMP International that showed the product quantities sold each fiscal quarter because royalties owed under the 2001 Extreme License were tied to quantities sold. Extreme submitted these reports from 2001 to 2018 and reported royalties on the single product licensed under the 2001 Extreme License (which Extreme later elected to name and identify that one product as the BlackDiamond 10808 10-Slot Chassis). The vast majority of these royalty reports (i.e., all of the ones that showed only sales of the BlackDiamond 10808 10-Slot Chassis at a time when Extreme was selling other products that contained Plaintiffs' software provided to Extreme under the 2001 Extreme License) were false because they represented that units of just one product had been sold when in fact Extreme had sold, was selling, and is still selling, multiple classes of products totaling scores of other products that contain Plaintiffs' software provided to Extreme under the 2001 Extreme License, not just "a single product" as authorized. Extreme also confirmed in writing that its royalty reports included all units of product sold under the 2001 Extreme License. *See, e.g.*, SNMP-0046885.

SNMPRI reasonably relied on Extreme's material misrepresentations. For example, Extreme sent SNMPRI emails attesting to the accuracy of its royalty reporting, which only reported sales on a single product. That attestation and the royalty reports themselves were consistent with the 2001 Extreme License, which only provided license rights as to "a single product developed at

7527951

several coordinated development sites using a single particular combination of target processor, operating system, and development tools platform."

Only after this case was filed, Plaintiffs learned that Extreme had made false statements in the above-referenced royalty reports and emails. On April 22, 2022, the Court ordered Extreme to identify all products containing Plaintiffs' software and to produce financial and other information regarding those products. Dkt. 131. When Extreme served its supplemental written discovery responses on May 13, 2022, Extreme included a cryptic reference in them, stating that it was not identifying products that contained Plaintiffs' software that were "utilizing" that software under a "separate" license agreement with SNMPRI. However, Extreme had previously represented to Plaintiffs, on multiple occasions—including in a November 20, 2015 email—that its use under other licenses with Plaintiffs had ended many years ago. Nor had Extreme paid any royalties under those other licenses (including the 2001 Extreme License) for many years. Consequently, Extreme's vague reference to its inclusion of Plaintiffs' software in products pursuant to "a separate" license agreement aroused Plaintiffs' suspicion.

Plaintiffs thereafter began their own independent investigation. In mid-2022, Plaintiffs purchased some of Extreme's products and analyzed the code therein. The purchases were not small expenditures and often amounted to thousands of dollars per product. After receiving these products, Plaintiffs located their software, including finding SNMP Research, Inc.'s own copyright notices embedded in them. For some products, Plaintiffs found indicia that Plaintiffs' software was in the Extreme products, but the copyright notice which is required to be present appears to have been removed. This investigation represents the first time Plaintiffs learned that Extreme is improperly currently selling, and apparently has been selling for many years, Extreme products with Plaintiffs' copyrighted software other than the "single product" permitted by the 2001 Extreme License and those Extreme products that Extreme had obtained from its prior co-defendant,

7527951

Brocade Communications Systems LLC, in 2017 or those that were derivative works of the products Extreme had obtained from Brocade.

While Plaintiffs' independent investigation was ongoing, Plaintiffs also asked Extreme to identify the separate "license" that Extreme nebulously referenced in its supplemental discovery responses. In a June 17, 2022 letter to Plaintiffs, Extreme first claimed that the license was one entered into between SNMPRI and a company called Enterasys Networks, Inc. ("Enterasys"). Enterasys is a company that Extreme had acquired and stepped into the shoes of for purposes of Enterasys' license with SNMPRI (herein, "Enterasys License"). But this assertion by Extreme flatly contradicted a prior representation from Extreme, made in writing on June 11, 2020. In that email from Paul Segalini, of Extreme, to John Wood (counsel for Plaintiffs), Mr. Segalini represented in writing that: "We can confirm that the legacy Entersys [sic] products went End of Sale in July 2006 and then End of Support in July 2011."

Once Plaintiffs confronted Extreme about its prior representation, Extreme changed its story. Extreme next claimed that the separate "license" it had referred to in its supplemental discovery responses was actually not the Enterasys License (as Extreme previously represented), but instead it was the 2001 Extreme License. *See* SNMP-0054099. In the process, Extreme also admitted that it had sold scores of product classes containing Plaintiffs' software provided to Extreme under the 2001 Extreme License. However, this new "license" assertion (like Extreme's prior and now abandoned assertion about the Enterasys License) flatly contradicted Extreme's prior representations, including (i) Extreme's royalty reports that it had submitted to SNMPRI under the 2001 Extreme License, which only reported and paid royalties on a single product, which Extreme chose to identify and name as the BlackDiamond 10808 10-Slot Chassis product, and (ii) a November 20, 2015 email from Fiona Nolan, of Extreme, to Patti Sams and Mary Gibson, of SNMP International, which expressly stated that the single product licensed under the 2001 Extreme

License went "end of sale" in 2011 and reported no other product sales. Extreme also represented in a November 20, 2015 email that "We have tracked all shipments by Extreme to End Customers for all locations."

In Extreme's communication claiming that Extreme had a supposed right under the 2001 Extreme License to use and redistribute Plaintiffs' software for scores of "product classes," Extreme did not dispute, and has never disputed, that it failed to report or pay any royalties for any of these "product classes" other than the single product intended under the 2001 Extreme License— which Extreme later named and identified as the BlackDiamond 10808 10-Slot Chassis product. Also, in its communication claiming that it had a supposed right under the 2001 Extreme License, Extreme admitted that it has known of its failure to report and pay royalties, and thus the falsity of its repeated misrepresentations to Plaintiffs, for many years (though Extreme has not yet specified for precisely how many years). *See, e.g.,* SNMP-0054131. In other words, in claiming its purported "license" right under the 2001 Extreme License for scores of "product classes" that it never reported or paid royalties on, Extreme has effectively admitted: (i) to years of breach and infringement which are ongoing, and (ii) that Extreme's written representations to SNMPRI in Extreme's royalty reports under the 2001 Extreme License, as well as its November 20, 2015 email, were knowingly false.

The harm suffered also specifically includes the following breaches of the 2001 Extreme License, delineated below:

Failure to pay and report royalties: The 2001 Extreme License required Extreme to prepare and submit quarterly royalty reports to SNMPRI showing the product quantities that Extreme sold each fiscal quarter, as royalties owed were tied to quantities. Extreme did so from 2001-2018 and reported royalties on the one product licensed under the 2001 Extreme License (which Extreme later chose to identify and name that one product as the BlackDiamond 10808 10-Slot Chassis).

7527951

*See* SNMP-0046885.  This was a breach because Extreme had actually sold, and is still selling, multiple classes of products totaling scores of other products that contain Plaintiffs' software provided to Extreme under the 2001 Extreme License, not just "a single product" as authorized, and thus Extreme continues to use Plaintiffs' valuable intellectual property without authorization.

Exceeding scope of permitted use and redistribution rights:  As described above, the 2001 Extreme License granted a limited license to Extreme with respect to particular portions of Plaintiffs' software.  Among other things, the 2001 Extreme License gave Extreme expressly limited (i) "Internal Use Rights" and (ii) "Binary Redistribution Rights," and with these rights came the obligation not to exceed the contractual limitations on them.  Under the 2001 Extreme License, Extreme's internal use and binary redistribution rights were limited to the "Licensee's Network Switch project," which was defined as "a single product developed at several coordinated development sites using a single particular combination of target processor, operating system, and development tools platform."  The 2001 Extreme License only allows use and redistribution as to "a single product," but Extreme exceeded the scope of the "Internal Use Rights" by using and copying Plaintiffs' software in multiple classes of products totaling scores of products, thereby using Plaintiffs' valuable intellectual property without authorization.  Moreover, the authorized combination of target processor, operating system, and development tools platform were a MIPS processor and a Red Hat Linux operating system and development tools.  Extreme has used and copied the Program Source[2] provided pursuant to the 2001 Extreme License for products that do not conform with the authorized combination of target processor, operating system, and

2 The 2001 Extreme License provides that:  "'Source' refers to both the source code and any and all associated developer documentation in human-readable or machine-readable media which are components of versions of NETMON, associated applications, and libraries."  In addition, the 2001 Extreme License provides that "Program" refers to "versions of NETMON, associated applications, and libraries which are implementations based on the Simple Network Management Protocol . . . ."

7527951

development tools platform allowed under the 2001 Extreme License. Extreme also exceeded the scope of authorized use for those products even before those products were sold in light of the fact that Extreme was using and copying the Program Source provided pursuant to the 2001 Extreme License for those products that did not conform to the authorized combination of target processor, operating system, and development tool platform noted above. Furthermore, Extreme has also breached the terms of the 2001 Extreme License by exceeding the scope of the "Binary Redistribution Rights" by using and redistributing Plaintiffs' software in multiple classes of products, totaling scores of products. These include at least the following Extreme products: 7520; 7720; Summit X440; BD 12K; BD 20K; BD 8800; BD X; Bundle BD X8; E4G-200; E4G-400; Ericsson; ExtremeSwitching 5320; ExtremeSwitching 5420; ExtremeSwitching 5520; ExtremeSwitching 5720; ExtremeSwitching X435; ExtremeSwitching X465; ExtremeSwitching X590; ExtremeSwitching X695; Summit X150; Summit X250; Summit X350; Summit X430; Summit X440-G2; Summit X450; Summit X450-G2; Summit X460; Summit X460-G2; Summit X480; Summit X620; Summit X650; Summit X670; Summit X670-G2; Summit X690; Summit X770; Summit X870.

Using and redistributing software after rights to do so terminated: The 2001 Extreme License provides that: "If the license fee and royalties are not paid in a timely fashion as provided herein, the internal use and redistribution rights granted the Licensee under this License Agreement shall be terminated." Consequently, Extreme's use and redistribution rights under the 2001 Extreme License were automatically terminated when Extreme failed to timely pay royalties, which (based on Extreme's records produced to date) appears to have occurred at least during fiscal year 2005, and repeatedly thereafter, and Extreme's failure to timely pay royalties could have been earlier than fiscal year 2005. Additionally, Extreme's internal use and redistribution rights were expressly terminated (to the extent not already terminated automatically by failure to timely pay)

on October 20, 2022.  Extreme's use and redistribution of Plaintiffs' software has continued after termination and still continues today, and Extreme is thereby using Plaintiffs' valuable intellectual property without authorization.

Failure to satisfy obligations with respect to use, copying, transference, protection, and security of Program Source:  The 2001 Extreme License requires Extreme, as part of its "Confidentiality and Non-Disclosure" obligations, to "take appropriate action with its employees and consultants, by agreement or otherwise, to satisfy its obligations under this License Agreement with respect to use, copying, transference, protection, and security of the Program Source, and any other materials provided to the Licensee by SNMP as a result of this License Agreement."  Extreme breached its obligations by, among other things, using (which includes distributing internally within Extreme as well as use by and distribution externally to Extreme's consultants and manufacturing partners) and copying the Program Source outside the authorized use and copying permitted by the 2001 Extreme License, which was limited to "a single product" and a specific combination of target processor, operating system, and development tools.  Extreme failed to satisfy its obligations with respect to use, copying, transference, protection, and security of the Program Source, in light of the fact that Extreme copied and used the Program Source for products that were not authorized.  Additionally, Extreme has sold, was selling, and is still selling, multiple classes of products totaling scores of other products that contain Plaintiffs' software provided to Extreme under the 2001 Extreme License, thereby using Plaintiffs' valuable intellectual property without authorization.

Failure to provide required information:  The 2001 Extreme License provides that "Nothing shall prevent Licensee from independently producing, selling, and distributing similar products without obligation to SNMP.  In the event that Licensee produces similar products, Licensee shall provide information to SNMP to authenticate that it was independently produced."  On September

7527951

19, 2022, SNMPRI asked Extreme to "provide a list of each [Extreme] product that uses SNMP and sufficient information to [SNMPRI] so that [SNMPRI] can authenticate that the SNMP implementation was independently produced." SNMP-0054101. Extreme did not provide (and has still not provided) that information, which is part of Extreme's use of Plaintiffs' valuable intellectual property without authorization.

Failure to maintain SNMPR's copyright notice in the software: Please refer to the opening expert report and supplemental report of Steve Waldbusser for identification of source code that has had the SNMP Research copyright notice removed. *See also* EXTREME-01398916. Extreme's failure to maintain SNMP Research, Inc.'s copyright notice is part of Extreme's use of Plaintiffs' valuable intellectual property without authorization.

Failure to give required notice that copying and distribution is by permission of SNMP International: The 2001 Extreme License requires that "Notice shall be given in the supporting documentation that copying and distribution is by permission of SNMP Research International, Inc. and the relevant third parties." Plaintiff is not aware of any Extreme products that meet this requirement as observed in the products Extreme produced in this litigation, and this conduct is part of Extreme's use of Plaintiffs' valuable intellectual property without authorization.

Failure to return Program Source or provide certification of destruction of it: On October 20, 2022, SNMPRI terminated Extreme's internal use and redistribution rights under the 2001 Extreme License to the extent they were not already terminated for non-payment of royalties under Section 24 of the 2001 Extreme License. SNMP-0054135. SNMPRI also demanded, pursuant to Section 16 of the 2001 Extreme License, that Extreme return or provide written certification of the destruction of all copies of the Program Source provided by SNMPRI to Extreme and all copies

thereof and all Derivative Works[3] of the Program Source in all forms. *Id.* Extreme has not done either, and is still using Plaintiffs' valuable intellectual property without authorization.

For SNMPRI's breach of contract claim, SNMPRI has calculated its damages by determining the amount of monies Extreme should have paid to SNMPRI had it adhered to the terms of the 2001 Extreme License between SNMPRI and Extreme dated October 22, 2001, including payment of all license fees for each product group or product platform containing Plaintiffs' software, payment of all royalties for each product unit that Extreme sold containing Plaintiffs' software, any applicable late fees as provided for in the Extreme License Agreement, and interest. The aforementioned product groups or platforms include at least the following Extreme product families: 7520; 7720; Summit X440; BD 12K; BD 20K; BD 8800; BD X; Bundle BD X8; E4G-200; E4G-400; Ericsson; ExtremeSwitching 5320; ExtremeSwitching 5420; ExtremeSwitching 5520; ExtremeSwitching 5720; ExtremeSwitching X435; ExtremeSwitching X465; ExtremeSwitching X590; ExtremeSwitching X695; Summit X150; Summit X250; Summit X350; Summit X430; Summit X440-G2; Summit X450; Summit X450-G2; Summit X460; Summit X460-G2; Summit X480; Summit X620; Summit X650; Summit X670; Summit X670-G2; Summit X690; Summit X770; Summit X870. SNMPRI has also calculated "the sum that [SNMPRI] would have charged the person or persons obtaining the benefit of such unauthorized use of the Program Source, plus any amount received by [Extreme] on account of such unauthorized use." *See* Extreme License Agreement ¶¶ 16, 17, 24. Plaintiffs' calculations are set forth in its expert reports. *See, e.g.*, Opening Expert Report of Michael J. Wallace, § VII. Before interest, the unpaid license fees and royalties due under the 2001 Extreme License amount to over $66 million. SNMPRI has subtracted any payments Extreme previously made for the BD10K product from this amount.

3 Per the 2001 Extreme License, "Derivative Work" means "any program or documentation in Source form or Software form which (i) is developed by Licensee through use of the Program, or (ii) includes any features, provisions, algorithms, or other portions of the Program."
7527951

SNMPRI will rely upon the Extreme License Agreement and other documents as identified by its experts to compute these damages, including the following categories of exemplar documents that Extreme may rely on for computing these damages: SNMP-0044352; SNMP-0044484; SNMPR-0044633; EXTREME-00722451; EXTREME-00871500; EXTREME-01290744; EXTREME-01407578; SNMP-0054131. SNMPRI also intends to seek an award of reasonable attorneys' fees and costs pursuant Section 17 of the Extreme License Agreement. Plaintiffs will also seek prejudgment interest to the extent such interest is not provided for in the License Agreement.

Extreme has also harmed SNMPR in light of its infringement and continued unauthorized copying, reproduction, preparation of derivative works, and distribution of SNMPR's copyrighted software. Prior to the filing of the Amended Complaint, on October 19, 2022, as described above Extreme admitted it was using the software and/or source code provided to it under the 2001 Extreme License in at least the following: "ExtremeSwitching 5320, ExtremeSwitching 5420, ExtremeSwitching 5520, ExtremeSwitching 5720, 7520, 7720, ExtremeSwitching X695, Summit X670, BD 10K, BD 12K, BD 20K, BD 8800, BD X, Bundle BD X8, E4G-200, E4G-400, Ericsson (OEM family), ExtremeSwitching X435, ExtremeSwitching, X465, Summit X460-G2, Ericsson (Summit family), ExtremeSwitching X590, ExtremeSwitching X695, Summit X150, Summit X250, Summit X350, Summit X430, Summit X440, Summit X440-G2, Summit X450, Summit X450-G2, Summit X460, Summit X460-G2, Summit X480, Summit X620, Summit X650, Summit X670, Summit X670-G2, Summit X690, Summit X770, and Summit X870." Extreme subsequently admitted in sworn discovery responses in this action that Extreme is using Plaintiffs' software and/or source code in dozens of products. *See, e.g.*, Extreme's Third through Fourteenth Supplemental Responses to SNMP Research, Inc.'s Interrogatory No. 1; *see also* EXTREME-00871502; EXTREME-00871503; EXTREME-00722450; EXTREME-00722451;EXTREME-00722449; EXTREME-00722452; EXTREME-00503993, EXTREME-00531084, EXTREME-

00527792; EXTREME-00722215; EXTREME-00722448; materials on the source code computer; and materials referenced in the reports of Plaintiffs' experts. Extreme's infringement, and profits attributable to that infringement, are demonstrated by, among other things, Extreme's discovery responses in this action, deposition testimony, written communications between the parties, as well as Extreme's request for a license for Plaintiffs' software, which request identified several of Extreme's products and product lines using Plaintiffs' software. *See, e.g.*, EXTREME-00681388; SNMP-0004998; SNMP-0005005; SNMP-0008376; SNMP-0026653; SNMP-0026656; SNMP-0026693; EXTREME-00699398; SNMP-0028027; EXTREME-00008086; SNMP-0004459; SNMP-0004660; SNMP-0004531; EXTREME-00965264; EXTREME-000965273; EXTREME-00527550; EXTREME-00529008; EXTREME-00696047; EXTREME-00696051; EXTREME-00696052; EXTREME-00696053; EXTREME-00631516.

As a result of Extreme's infringement, SNMPR intends to seek, at a minimum, disgorgement of Extreme's profits attributable to its infringement, for all products that contain Plaintiffs' software for which Extreme does not have a valid and applicable written license to use or distribute the software or products containing the software. Those products include at least the following Extreme Product families (as identified in the opening expert report of Michael J. Wallace): 7520; 7720; Summit X440; BD 12K; BD 20K; BD 8800; BD X; Bundle BD X8; E4G-200; E4G-400; Ericsson; Extreme 8520; Extreme 8720; Extreme 8820; ExtremeSwitching 5320; ExtremeSwitching 5420; ExtremeSwitching 5520; ExtremeSwitching 5720; ExtremeSwitching X435; ExtremeSwitching X465; ExtremeSwitching X590; ExtremeSwitching X695; SLX-9030; SLX-9140; SLX-9150; SLX-9240; SLX-9250; SLX-9540; SLX-9640; SLX-9740; SLX-9850; Summit X150; Summit X250; Summit X350; Summit X430; Summit X440-G2; Summit X450; Summit X450-G2; Summit X460; Summit X460-G2; Summit X480; Summit X620; Summit X650; Summit X670; Summit X670-G2; Summit X690; Summit X770; Summit X870; VDX-6740;

VDX-6940; VDX-8770. SNMPR will also seek disgorgement of Extreme's profits related to any products/software/services that are reasonably related to Extreme's infringing activity. The products/software/services that are related to Extreme's infringing activity are identified in Extreme's response to SNMPR's Interrogatory No. 9, and in Extreme's response to SNMPR's Interrogatory No. 6. *See, e.g.*, EXTREME-00722448; EXTREME-01290741, EXTREME-00722446; EXTREME-00722447; EXTREME-01290740; *see also* Opening Expert Report of Mike Wallace, Schedule 11.3 (revenues for Accessory, OS License, Switch Module, Appliance, Optic, No PLM Model, and Services). Under the copyright remedies statute, SNMPR's burden is to show gross revenues from the infringement. It is not SNMPR's burden to show deductible expenses and apportionment, but SNMPR reserves the right to do so and to rely upon the materials, information and computations identified in its expert reports, which include at least the following categories of exemplar documents that SNMPR may rely on for showing deductible expenses and apportionment: Extreme's 10-Ks, *e.g.*, EXTREME-00007033; EXTREME-00722451; EXTREME-00871500; EXTREME-01290744; EXTREME- 01407578; and EXTREME-01407580; Deposition of Ms. Freeman dated January 15, 2024 (and all exhibits save for the late-produced cost files).

In addition and as noted, under the copyright remedies statute, SNMPR's burden is to show gross revenues from the infringement. For gross revenues, at a minimum SNMPR will use the revenues produced to date identified in the following documents referenced in Extreme's sworn interrogatory responses: EXTREME-00722446 to EXTREME-00722448, EXTREME-00871500, EXTREME-01290740, EXTREME-01290741, EXTREME-01290744, EXTREME-01407578, and EXTREME-01407580, which, by Plaintiffs' calculation, total over ███████ after accounting for returns and discounts. This number continues to grow and does not include prejudgment interest. Plaintiffs also intend to seek an award of reasonable attorneys' fees and

7527951

costs.

As to the fraud claim, as described above, the 2001 Extreme License required Extreme to prepare and submit quarterly royalty reports to SNMPRI showing the product quantities that Extreme sold each fiscal quarter, as royalties owed were tied to quantities. Extreme did so from 2001-2018 and reported royalties on the one product licensed under the 2001 Extreme License (which Extreme later chose to identify and name as the BlackDiamond 10808 10-Slot Chassis). *See* SNMP-0046885. But Extreme had actually sold, and is still selling, multiple classes of products totaling scores of other products that contain Plaintiffs' software provided to Extreme under the 2001 Extreme License, not just "a single product" as authorized.

The 2001 Extreme License granted a limited license to Extreme with respect to particular portions of Plaintiffs' software. Among other things, the 2001 Extreme License gave Extreme expressly limited (i) "Internal Use Rights" and (ii) "Binary Redistribution Rights," and with these rights came the obligation not to exceed the contractual limitations on them. Under the 2001 Extreme License, Extreme's internal use and binary redistribution rights were limited to the "Licensee's Network Switch project," which was defined as "a single product developed at several coordinated development sites using a single particular combination of target processor, operating system, and development tools platform." The 2001 Extreme License only allows use and redistribution as to "a single product," but Extreme exceeded the scope of the "Internal Use Rights" by using and copying Plaintiffs' software in multiple classes of products totaling scores of products. Moreover, the authorized combination of target processor, operating system, and development tools platform were a MIPS processor and a Red Hat Linux operating system and development tools. Extreme has used and copied the Program Source[4] provided pursuant to the 2001 Extreme

_____

[4] The 2001 Extreme License provides that: "'Source' refers to both the source code and any and all associated developer documentation in human-readable or machine-readable media which are

7527951

License for products that do not conform with the authorized combination of target processor, operating system, and development tools platform allowed under the 2001 Extreme License. Extreme exceeded the scope of authorized use for those products even before those products were sold in light of the fact that Extreme was using and copying the Program Source provided pursuant to the 2001 Extreme License for those products beyond the single licensed product and that did not conform to the authorized combination of target processor, operating system, and development tool platform noted above. Furthermore, Extreme exceeded the scope of the "Binary Redistribution Rights" by using and redistributing Plaintiffs' software in multiple classes of products, totaling scores of products. These include at least the following Extreme product families: 7520; 7720; Summit X440; BD 12K; BD 20K; BD 8800; BD X; Bundle BD X8; E4G-200; E4G-400; Ericsson; ExtremeSwitching 5320; ExtremeSwitching 5420; ExtremeSwitching 5520; ExtremeSwitching 5720; ExtremeSwitching X435; ExtremeSwitching X465; ExtremeSwitching X590; ExtremeSwitching X695; Summit X150; Summit X250; Summit X350; Summit X430; Summit X440-G2; Summit X450; Summit X450-G2; Summit X460; Summit X460-G2; Summit X480; Summit X620; Summit X650; Summit X670; Summit X670-G2; Summit X690; Summit X770; Summit X870.

The 2001 Extreme License required Extreme to submit quarterly royalty reports to SNMP International that showed the product quantities sold each fiscal quarter because royalties owed under the 2001 Extreme License were tied to quantities sold. Extreme submitted these reports from 2001 to 2018 and reported royalties on the single product licensed under the 2001 Extreme License (which Extreme later elected to name and identify that one product as the BlackDiamond 10808

components of versions of NETMON, associated applications, and libraries." In addition, the 2001 Extreme License provides that "Program" refers to "versions of NETMON, associated applications, and libraries which are implementations based on the Simple Network Management Protocol . . . ."

7527951

10-Slot Chassis). The vast majority of these royalty reports (i.e., all of the ones that showed only sales of the BlackDiamond 10808 10-Slot Chassis at a time when Extreme was selling other products that contained Plaintiffs' software provided to Extreme under the 2001 Extreme License) were false because they represented that units of just one product had been sold when in fact Extreme had sold, was selling, and is still selling, multiple classes of products totaling scores of other products that contain Plaintiffs' software provided to Extreme under the 2001 Extreme License, not just "a single product" as authorized. Extreme also confirmed in writing that its royalty reports included all units of product sold under the 2001 Extreme License. *See, e.g.*, SNMP-0046885.

SNMPRI reasonably relied on Extreme's material misrepresentations. For example, Extreme sent SNMPRI emails attesting to the accuracy of its royalty reporting, which only reported sales on a single product. That attestation and the royalty reports themselves were consistent with the 2001 Extreme License, which only provided license rights as to "a single product developed at several coordinated development sites using a single particular combination of target processor, operating system, and development tools platform."

Only after this case was filed, Plaintiffs learned that Extreme had made false statements in the above-referenced royalty reports and emails. On April 22, 2022, the Court ordered Extreme to identify all products containing Plaintiffs' software and to produce financial and other information regarding those products. Dkt. 131. When Extreme served its supplemental written discovery responses on May 13, 2022, Extreme included a cryptic reference in them, stating that it was not identifying products that contained Plaintiffs' software that were "utilizing" that software under a "separate" license agreement with SNMPRI. However, Extreme had previously represented to Plaintiffs, on multiple occasions—including in a November 20, 2015 email—that its use under other licenses with Plaintiffs had ended many years ago. Nor had Extreme paid any royalties under

those other licenses (including the 2001 Extreme License) for many years. Consequently, Extreme's vague reference to its inclusion of Plaintiffs' software in products pursuant to "a separate" license agreement aroused Plaintiffs' suspicion.

Plaintiffs thereafter began their own independent investigation. In mid-2022, Plaintiffs purchased some of Extreme's products and analyzed the code therein. The purchases were not small expenditures and often amounted to thousands of dollars per product. After receiving these products, Plaintiffs located their software, including finding SNMP Research, Inc.'s own copyright notices embedded in them. For some products, Plaintiffs found indicia that Plaintiffs' software was in the Extreme products, but the copyright notice which is required to be present appears to have been removed. This investigation represents the first time Plaintiffs learned that Extreme is improperly currently selling, and apparently has been selling for many years, products with Plaintiffs' copyrighted software other than the "single product" permitted by the 2001 Extreme License and those products that Extreme had obtained from its prior co-defendant, Brocade Communications Systems LLC, in 2017 or those that were derivative works of the products Extreme had obtained from Brocade.

While Plaintiffs' independent investigation was ongoing, Plaintiffs also asked Extreme to identify the separate "license" that Extreme nebulously referenced in its supplemental discovery responses. In a June 17, 2022 letter to Plaintiffs, Extreme first claimed that the license was the Enterasys License (referenced above). But this assertion by Extreme flatly contradicted a prior representation from Extreme, made in writing on June 11, 2020. In that email from Paul Segalini, of Extreme, to John Wood (counsel for Plaintiffs), Mr. Segalini represented in writing that: "We can confirm that the legacy Entersys [sic] products went End of Sale in July 2006 and then End of Support in July 2011."

Once Plaintiffs confronted Extreme about its prior representation, Extreme changed its

7527951

story.  Extreme next claimed that the separate "license" it had referred to in its supplemental discovery responses was actually not the Enterasys License (as Extreme previously represented), but instead it was the 2001 Extreme License.  *See* SNMP-0054099.  In the process, Extreme also admitted that it had sold scores of products containing Plaintiffs' software provided to Extreme under the 2001 Extreme License.  However, this new "license" assertion (like Extreme's prior and now abandoned assertion about the Enterasys License) flatly contradicted Extreme's prior representations, including (i) Extreme's royalty reports that it had submitted to SNMPRI under the 2001 Extreme License, which only reported and paid royalties on a single product, which Extreme chose to identify and name as the BlackDiamond 10808 10-Slot Chassis product, and (ii) a November 20, 2015 email from Fiona Nolan, of Extreme, to Patti Sams and Mary Gibson, of SNMP International, which expressly stated that the single product licensed under the 2001 Extreme License went "end of sale" in 2011 and reported no other product sales.  Extreme also represented in a November 20, 2015 email that "We have tracked all shipments by Extreme to End Customers for all locations."

In Extreme's communication claiming that Extreme had a supposed right under the 2001 Extreme License to use and redistribute Plaintiffs' software for scores of "product classes," Extreme did not dispute, and has never disputed, that it failed to report or pay any royalties for any of these "product classes" other than the single product intended under the 2001 Extreme License—which Extreme later named and identified as the BlackDiamond 10808 10-Slot Chassis product. Also, in its communication claiming that it had a supposed right under the 2001 Extreme License, Extreme admitted that it has known of its failure to report and pay royalties, and thus the falsity of its repeated misrepresentations to Plaintiffs, for many years (though Extreme has not yet specified for precisely how many years).  *See, e.g.,* SNMP-0054131.  In other words, in claiming its purported "license" right under the 2001 Extreme License for scores of "product classes" that it

never reported or paid royalties on, Extreme has effectively admitted: (i) to years of breach and infringement which are ongoing, and (ii) that Extreme's written representations to SNMPRI in Extreme's royalty reports under the 2001 Extreme License, as well as its November 20, 2015 email, were knowingly false.

Evidence in support of fraud claim and resulting harm is shown by at least the following: Extreme's assertion in emails and royalty reports that it was not shipping any products with Plaintiffs' software (with such documents being contained in Exhibit D to Plaintiffs' Amended Complaint for Breach of Contract, Copyright infringement, and Fraud [Dkt. 244]), the continued presence of SNMPR's copyright notice in Extreme's source code, the source code that Extreme has produced to date, and Extreme's internal emails demonstrating that Extreme was well aware of its use of Plaintiffs' software both before and after SNMPRI inquired whether Extreme was using Plaintiffs' software in its products. *See also* EXTREME-01082028; EXTREME-01082022; EXTREME-00681388; SNMP-0004998; SNMP-0005005; SNMP-0008376; SNMP-0026653; SNMP-0026656; SNMP-0026693; EXTREME-00699398; SNMP-0028027; EXTREME-00008086; SNMP-0004660; SNMP-0004531; EXTREME-00681455; EXTREME-00681458; SNMP-0054525; SNMP-0054616; SNMP-0027246; EXTREME-00604435; EXTREME-00706203; EXTREME-00631516; SNMP-0044352; SNMP-0044484; SNMPR-0044633; EXTREME-00722451; EXTREME-00871500; EXTREME-01290744; EXTREME-01407578; SNMP-0054131; SNMP-0023051; SNMP-0023717; SNMP-0023910; SNMP-0023940; SNMP-0023947; SNMP-0023960; SNMP-0023965; SNMP-0023992; SNMP-0023999; SNMP-0024004; SNMP-0024009; SNMP-0024015; SNMP-0024038; SNMP-0024063; SNMP-0024068; SNMP-0024086; SNMP-0024091; SNMP-0024095; SNMP-0024099; SNMP-0023471; SNMP-0020726; SNMP-0029242; SNMP-0023538; SNMP-0023494; SNMP-0023473; SNMP-0024667; SNMP-0024547; SNMP-0023569; SNMP-0023550; SNMP-0023547; SNMP-0023544; SNMP-0023536;

SNMP-0023535; SNMP-0023531; SNMP-0023529; SNMP-0023524; SNMP-0023517; SNMP-0023514; SNMP-0023508; SNMP-0023500; SNMP-0023494; SNMP-0023492; SNMP-0023480; SNMP-0029012; Extreme's Third Supplemental Responses to SNMP Research, Inc's First Set of Interrogatories; Deposition of Paul Segalini (and all exhibits); Deposition of David Carson (and all exhibits); Deposition of Daniel DeBacker (and all exhibits); Depositions of Michael Fitzgerald (and all exhibits); Dkts. Nos. 321 & 375.

SNMPRI has calculated its damages by determining the position it would have been in had Extreme's fraud not occurred. Extreme's fraud resulted in Extreme not paying for license fees that would have been required to incorporate Plaintiffs' software in the numerous product groups or product platforms where it is or has been present in Extreme's products without a license. Those product groups or platforms include at least the following: 7520; 7720; Summit X440; BD 12K; BD 20K; BD 8800; BD X; Bundle BD X8; E4G-200; E4G-400; Ericsson; ExtremeSwitching 5320; ExtremeSwitching 5420; ExtremeSwitching 5520; ExtremeSwitching 5720; ExtremeSwitching X435; ExtremeSwitching X465; ExtremeSwitching X590; ExtremeSwitching X695; Summit X150; Summit X250; Summit X350; Summit X430; Summit X440-G2; Summit X450; Summit X450-G2; Summit X460; Summit X460-G2; Summit X480; Summit X620; Summit X650; Summit X670; Summit X670-G2; Summit X690; Summit X770; Summit X870. Extreme's fraud also resulted in Extreme not paying royalties on the millions of product units Extreme sold to its customers. Extreme's fraud also permitted it to receive annual software updates. Plaintiffs' calculations are set forth in its expert reports. *See, e.g.*, Opening Expert Report of Michael J. Wallace, § VII. SNMPRI identifies the following categories of exemplar documents that it may rely on for computing these damages: SNMP-0044352; SNMP-0044484; SNMPR-0044633; EXTREME-00722451; EXTREME-00871500; EXTREME-01290744; EXTREME-01407578; SNMP-0054131. In addition, Extreme's fraud was malicious, intentional, fraudulent, and reckless,

and, therefore, SNMPRI seeks punitive damages pursuant to Tennessee Code Annotated Section 29-39-104.

In addition to the materials and information already identified above and in Plaintiffs' expert reports, SNMPRI further identifies the following documents that it may rely on in support of the aforementioned claims and resulting harm: SNMPR-0044633; SNMP-0041832; SNMP-0044819; SNMP-0047069; SNMP-0047103; SNMP-0020859; SNMP-0004178 – SNMP-0004429; SNMP-0005303 – SNMP-00165556; SNMP-0020295 – SNMP-0020430; SNMP-0004178; SNMP-0004226; SNMP-0004233; SNMP-0004240; SNMP-0004243; SNMP-0004268; SNMP-0004415; SNMP-0004429; SNMP-0008376; SNMP-0023473; SNMP-0044352; SNMP-0044484; SNMP-0054097—SNMP-0054146; Rule 30(b)(6) Deposition of Kaylee Freeman, January 15, 2024 (and all exhibits save for the late-produced cost files); Depositions of Michael Fitzgerald, February 1, 2024 and April 23, 2024 (and all exhibits); Deposition of Robert Reason, February 28, 2024 (and all exhibits); Rule 30(b)(6) Deposition of Antony Hutchins, May 7, 2024 (and all exhibits); EXTREME-00722446 to EXTREME-00722448; EXTREME-00871500; EXTREME-01290740; EXTREME-01290741; EXTREME-01290744; EXTREME-01407578; EXTREME-01407580; 2023-11-15 Extreme 11th Supp. Resp. to SNMP Research, Inc.'s Interrogatory Nos. 5-6 & Appendices E-1, F-1, G-1; EXTREME-00722451; EXTREME-00722452; Extreme's 6th Supplemental Responses to SNMP Research Inc.'s First Set of Interrogatories, Interrogatory No. 1; Extreme's 12th Supplemental Responses to SNMP Research Inc.'s First Set of Interrogatories, Interrogatory No. 9; EXTREME-01356276; EXTREME-00556975; EXTREME-00705422; SNMP-0047121—SNMP-0054049; SNMP-0006573, SNMP-0006600, SNMP-0006602, SNMP-0006610, SNMP-0006614, SNMP-0006619, SNMP-0006624, SNMP-0006630, SNMP-0006636, SNMP-0006642, SNMP-0006647, SNMP-0006652, SNMP-0006656, SNMP-0006660, SNMP-0006664, SNMP-0006667, SNMP-0006670, SNMP-0006673,

SNMP-0006676, SNMP-0006680, SNMP-0006683, SNMP-0006687, SNMP-0006692, SNMP-0006699, SNMP-0006717, SNMP-0006728, SNMP-0006731, SNMP-0006732, SNMP-0006733, SNMP-0006736, SNMP-0006745, SNMP-0006746, SNMP-0006747, SNMP-0006764, SNMP-0006768 , SNMP-0007846, SNMP-0007867, SNMP-0007899, SNMP-0007904, SNMP-0007906, SNMP-0007911, SNMP-0007914, SNMP-0007918, SNMP-0007922, SNMP-0007925, SNMP-0007928, SNMP-0007932, SNMP-0007935, SNMP-0007938, SNMP-0007941, SNMP-0007944, SNMP-0007947, SNMP-0007950, SNMP-0007954, SNMP-0007964, SNMP-0007970, SNMP-0007989, SNMP-0007994, SNMP-0007998, SNMP-0008004, SNMP-0008021, SNMP-0008028, SNMP-0008036, SNMP-0008040, SNMP-0008042, SNMP-0008049, SNMP-0008065, SNMP-0008067, SNMP-0008085, SNMP-0008089, SNMP-0008092, SNMP-0008095, SNMP-0008100, SNMP-0008103, SNMP-0008110, SNMP-0008144, SNMP-0008147, SNMP-0008150, SNMP-0008154, SNMP-0008158, SNMP-0008162, SNMP-0008166, SNMP-0008179, SNMP-0008181, SNMP-0008184, SNMP-0008190, SNMP-0008193, SNMP-0008196, SNMP-0008201, SNMP-0008205, SNMP-0008286, SNMP-0008321, SNMP-0008325, SNMP-0008332, SNMP-0008349, SNMP-0011998, SNMP-0012029, SNMP-0012036, SNMP-0012038, SNMP-0012040, SNMP-0012725, SNMP-0012741, SNMP-0012758, SNMP-0012777, SNMP-0012795, SNMP-0012811, SNMP-0012832, SNMP-0012834, SNMP-0012837, SNMP-0012840, SNMP-0012844, SNMP-0012847, SNMP-0012850, SNMP-0012853, SNMP-0012856, SNMP-0012866, SNMP-0012868, SNMP-0012869, SNMP-0012870, SNMP-0012872, SNMP-0012874, SNMP-0012878, SNMP-0012881, SNMP-0012886, SNMP-0012891, SNMP-0012893, SNMP-0012895, SNMP-0012900, SNMP-0012902, SNMP-0012904, SNMP-0012909, SNMP-0012911, SNMP-0012916, SNMP-0012921, SNMP-0012926, SNMP-0012931, SNMP-0012933, SNMP-0012935, SNMP-0012940, SNMP-0012945, SNMP-0012950, SNMP-0012955, SNMP-0012960, SNMP-0012963, SNMP-0012968, SNMP-0012973, SNMP-0012975, SNMP-0012978, SNMP-0012980, SNMP-0012982,

7527951

SNMP-0012984, SNMP-0012986, SNMP-0012989, SNMP-0012992, SNMP-0012996, SNMP-0013000, SNMP-0013003, SNMP-0013005, SNMP-0013010, SNMP-0013012, SNMP-0013014, SNMP-0013016, SNMP-0013019, SNMP-0013021, SNMP-0013023, SNMP-0013026, SNMP-0013028, SNMP-0013030, SNMP-0013032, SNMP-0013037, SNMP-0013039, SNMP-0013041, SNMP-0013043, SNMP-0013045, SNMP-0013050, SNMP-0014463 , SNMP-0014480, SNMP-0014499, SNMP-0014502, SNMP-0020726, SNMP-0023051, SNMP-0023471, SNMP-0023473, SNMP-0023480, SNMP-0023492, SNMP-0023494, SNMP-0023500, SNMP-0023508, SNMP-0023514, SNMP-0023517, SNMP-0023524, SNMP-0023529, SNMP-0023531, SNMP-0023535, SNMP-0023536, SNMP-0023538, SNMP-0023544, SNMP-0023547, SNMP-0023550, SNMP-0023569, SNMP-0023717, SNMP-0023910, SNMP-0023940, SNMP-0023947, SNMP-0023960, SNMP-0023965, SNMP-0023992, SNMP-0023999, SNMP-0024004, SNMP-0024009, SNMP-0024015, SNMP-0024038, SNMP-0024063, SNMP-0024068, SNMP-0024086, SNMP-0024091, SNMP-0024095, SNMP-0024099, SNMP-0024547, SNMP-0024667, SNMP-0027246, SNMP-0029242, SNMP-0035574, SNMP-0035592, SNMP-0035595, SNMP-0035598, SNMP-0035602, SNMP-0036851, SNMP-0036869, SNMP-0036872, SNMP-0036874, SNMP-0036879, SNMP-0036894, SNMP-0036898, SNMP-0036900, SNMP-0036917, SNMP-0036932, SNMP-0036934, SNMP-0036936, SNMP-0036952, SNMP-0036964, SNMP-0036981, SNMP-0036984, SNMP-0037002, SNMP-0037017, SNMP-0037033, SNMP-0037034, SNMP-0037036, SNMP-0037038, SNMP-0037054, SNMP-0037055, SNMP-0037071, SNMP-0037089, SNMP-0037092, SNMP-0037561, SNMP-0037578, SNMP-0037585, SNMP-0037588, SNMP-0037591, SNMP-0037595, SNMP-0037602, SNMP-0037621, SNMP-0037625, SNMP-0037628, SNMP-0037632, SNMP-0044236, SNMP-0046885, SNMP-0054525; SNMP-0054616;  June 20, 2023 discovery letter from Extreme (S. Prabhakar) to Plaintiffs (O. Weber); EXTREME-00631516.  Plaintiffs also identify Extreme's annual Form 10-Ks, *see, e.g.*, EXTREME-00007033; SNMP-0061291; as well as the

Respectfully submitted this 1st day of July, 2024,

By: /s/ *John L. Wood*

John L. Wood, Esq. (BPR #027642)
Cheryl G. Rice, Esq. (BPR #021145)
EGERTON, McAFEE, ARMISTEAD & DAVIS, P.C.
900 S. Gay Street, Suite 1400
P.O. Box 2047
Knoxville, TN 37902
(865) 546-0500 (phone)
(865) 525-5293 (facsimile)
jwood@emlaw.com
crice@emlaw.com

A. Matthew Ashley (CA Bar. No. 198235)
Morgan Chu (CA Bar. No. 70446)
David Nimmer (CA Bar. No. 97170)IRELL &
MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
(310) 277-1010 (phone)
(310) 203-7199 (facsimile)
mchu@irell.com
dnimmer@irell.com
mashley@irell.com

Olivia Weber (CA Bar. No. 319918)
BIENERT KATZMAN LITTRELL WILLIAMS LLP
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
(949) 369-3700 (phone)
(949) 369-3701 (facsimile)
oweber@bklwlaw.com

Rameen J. Nasrollahi (BPR# 033458)
LOWE YEAGER & BROWN, PLLC
920 Volunteer Landing Lane
(865) 312-8746 (phone)
(865) 312-XXX (facsimile)
rjn@lyblaw.net

*Attorneys for Plaintiffs*
*SNMP Research International, Inc.*
*SNMP Research, Inc.*

7527951

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the July 1, 2024, a true and accurate copy of the foregoing was served on counsel of record for all Defendants in this matter electronically.

/s/ *Olivia Weber*

## VERIFICATION

I, Jeffrey D. Case, hereby verify, under penalty of perjury, that the factual information contained in SNMP Research International, Inc.'s Responses to Extreme Network, Inc.'s Third Set of Interrogatories, which were delivered to Defendant on July 1, 2024, is, to the best of my knowledge, true and correct. I am limited in my review of materials cited in certain responses because of Extreme's designation of certain materials Outside Counsel Eyes Only.

By: _____

Name: Jeffrey D. Case

Title: COO of SNMP Research International, Inc.